*IN THE UNITED STATES DISTRICT COURT*
*FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA*

*CHARLESTON DIVISION*


IN RE:  AMERICAN MEDICAL SYSTEMS, INC., MDL NO. 2325
IN RE:  BOSTON SCIENTIFIC CORP., MDL NO. 2326
IN RE:  ETHICON, INC., MDL NO. 2327

PELVIC REPAIR SYSTEMS
PRODUCTS LIABILITY LITIGATION

-----------------------------------------------------------------


*INITIAL CASE MANAGEMENT CONFERENCE*
*HELD ON APRIL 13, 2012*
*BEFORE THE HONORABLE JOSEPH R. GOODWIN, CHIEF JUDGE*
*AND THE HONORABLE MARY E. STANLEY, MAGISTRATE JUDGE*


Court Reporter:       Teresa L. Harvey, RMR, RDR, CRR


Proceedings recorded by mechanical stenography;
transcript produced by computer.

*APPEARANCES*

<u>Plaintiffs' Counsel:</u>

Erin Copeland
**FIBICH HAMPTON LEEBRON BRIGGS & JOSEPHSON**
1150 Bissonnet St.
Houston, TX 77005

Julie B. Isen
Pete Miller
**The Miller Firm**
108 Railroad Ave.
Orange, VA 22960

Carl N. Frankovitch
**FRANKOVITCH, ANETAKIS, COLANTONIO & SIMON**
337 Penco Road
Weirton, WV 26062

Gary B. Blasingame
Henry G. Garrard, III
Josh B. Wages
James B. Matthews
**BLASINGAME, BURCH, GARRARD & ASHLEY**
P. O. Box 832
Athens, GA 30603

Bryan F. Aylstock
D. Renee Baggett
Neil D. Overholtz
Douglass Alan Kreis
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ**
17 E. Main, St., Suite 200
Pensacola, FL 32502

David Lee Augustus
**THE SPENCER LAW FIRM**
4635 Southwest Freeway, Ste. 900
Houston, TX 77027

Martin Daniel Crump
**DAVIS & CRUMP**
1712 15th Place, Third Floor
Gulfport, MS 39501

*APPEARANCES*

<u>**Plaintiffs' Counsel:**</u> (continues)


Aubrey Le
**(Appearing for Lisa Blue)**
2049 Century Park East, Ste. 1940
Los Angeles, CA  90067

Taheena Thompson
**COHEN & MALLAD**
One Indiana Square, Ste. 1400
Indianapolis, IN  46204

Mark R. Mueller
Andres Pereira
Breanne M. Vandermeer
**MUELLER LAW**
404 West 7th St.
Austin, TX  78701

Shireen Mohsenzadegan
Paul D. Stevens
**MILSTEIN ADELMAN**
2800 Donald Douglas Loop North
Santa Monica, CA  90405

Karen H. Beyea-Schroeder
Laura Yaeger
Robert Bench
David Hobbs
**FLEMING NOLEN JEZ**
2800 Post Oak Blvd., Ste. 4000
Houston, TX  77056

Andrew J. Geiger
**ALLAN BERGER & ASSOCIATES**
4173 Canal St.
New Orleans, LA  70119

Victoria Maniatis
**SANDERS VIENER GROSSMAN**
100 Herricks Road
Mineola, NY  11501

*APPEARANCES*

<u>**Plaintiffs' Counsel:**</u> (continues)

Jim M. Perdue, Jr.
**PERDUE KIDD VICKERY**
510 Bering Dr., Ste. 550
Houston, TX 77057

Dianne M. Nast
**RODANAST**
801 Estelle Drive
Lancaster, PA 17601

Alyson Oliver
**KRESCH OLIVER**
24100 Southfield Rd., Ste. 305
Southfield, MI 48075

Jonathan D. Orent
**MOTLEY RICE**
321 S. Main St., Second Floor
Providence, RI 02903

Joseph A. Osborne
**BABBITT, JOHNSON, OSBORNE & LE CLAINCHE**
1641 Worthington Road, Ste. 100
West Palm Beach, FL 33409

P. Leigh O'Dell
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES**
P. O. Box 4160
Montgomery, AL 36103-4160

Michelle A. Parfitt
**ASHCRAFT & GEREL**
2000 L St., Ste. 400
Washington, DC 20036

Jerrold S. Parker
**PARKER WAICHMAN ALONSO**
111 Great Neck Road
Great Neck, NY 11021-5042

Bryan A. Pfleeger
**MICHAEL HINGLE & ASSOCIATES**
P. O. Box 1129
Slidell, LA 70459

*APPEARANCES*

**Plaintiffs' Counsel:**   (continues)


Stephen D. Phillips
**PHILLIPS LAW OFFICES**
161 North Clark St., Ste. 4925
Chicago, IL  60601

Christopher M. Placitella
**COHEN, PLACITELLA & ROTH**
127 Maple Avenue
Red Bank, NJ  07701

Jacob Plattenberger
**TOR HOERMAN LAW**
101 West Vandalia, Ste. 350
Edwardsville, IL  62025

Derek H. Potts
**THE POTTS LAW FIRM**
908 Broadway, Third Floor
Kansas City, MO  64105

Robert E. Price
**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR**
316 South Baylen Street, Ste. 400
Pensacola, FL  32502

John M. Restaino
**THE RESTAINO LAW FIRM**
1550 Larimer St., #527
Denver, CO  80202

Julie L. Rhoades
**MATTHEWS & ASSOCIATES**
2905 Sackett Street
Houston, TX  77098

Bill Robins, III
**HEARD ROBINS CLOUD & BLACK**
300 Paseo de Peralta, Ste. 200
Santa Fe, NM  87501

Amanda Robinson
**ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS**
19 Corporate Plaza Drive
Newport Beach, CA  92660

*APPEARANCES*

<u>Plaintiffs' Counsel:</u> (continues)


Karen Barth Menzies
**ROBINSON, CALCAGNIE & ROBINSON**
620 Newport Center Dr., Ste. 700
Newport Beach, CA  92660

Beth S. Rose
**SILLS, CUMMIS & GROSS**
One Riverfront Plaza
Newark, NJ  07102

Robert L. Salim
P. Ann Trantham
**LAW OFFICES OF ROBERT L. SALIM**
1901 Texas Street
Natchitoches, LA  71457

Laurel Simes
Rachel Beth Abrams
**LEVIN SIMES**
353 Sacramento St., 20th Floor
San Francisco, CA  94111

Fred Thompson, III
Donald A. Migliori
**MOTLEY RICE**
P. O. Box 1792
Mount Pleasant, SC  29465

Tim K. Goss
John P. Harloe, III
**FREESE & GOSS**
3031 Allen St., Ste. 200
Dallas, TX  75204

Dori A. Milner
**NAPOLI BERN RIPKA SHKOLNIK**
Empire State Building
350 Fifth Avenue
New York, New York 10118

Andrew J. Cross
**CAREY DANIS & LOWE**
8235 Forsyth Blvd., Ste. 1100
St. Louis, MO  63105

*APPEARANCES*

<u>**Plaintiffs' Counsel:**</u> (continues)

Rachel Beth Abrams
**LEVIN SIMES**
353 Sacramento St., 20th Floor
San Francisco, CA  94111

C. Todd Alley
**ALLEY CLARK & GREIWE**
P. O. Box 3127
Tampa, FL  33601

Thomas R. Anapol
**ANAPOL SCHWARTZ**
1710 Spruce St.
Philadelphia, PA  19103

Benjamin H. Anderson
**ANDERSON LAW OFFICES**
1360 West 9th St., Ste. 200
Cleveland, OH  44113

Richard J. Arsenault
**NEBLETT BEARD & ARSENAULT**
2220 Bonaventure Court
Alexandria, LA  71301

Lee B. Balefsky
**KLINE & SPECTER**
1525 Locust St. 19th Floor
Philadelphia, PA  19102

Harry F. Bell, Jr.
**THE BELL LAW FIRM**
P. O. Box 1723
Charleston, WV  25326

Derriel C. McCorvey
**The Law Office of Derriel C. McCorvey**
115 W. Main St., Ste. 14
Lafayette, LA  70502

Aimee H. Wagstaff
**ANDRUS HOOD & WAGSTAFF**
1999 Broadway, Ste. 4150
Denver, CO  80202

*APPEARANCES*

**Plaintiffs' Counsel:** (continues)


C. Michael Bollinger
**NEBLETT, BEARD & ARSENAULT**
P. O. Box 1190
Alexandria, LA  71301

Shelley V. Hutson
**HUTSON LAW FIRM**
440 Louisiana St., Suite 1600
Houston, TX  77002

Koren L. Cohen
**MORELLI RATNER**
950 Third Ave.
New York, NY  10022

A. Donald C. Discepolo
**DISCEPOLO, LLP**
111 S. Calvert St., Suite 1950
Baltimore, MD  21202

C. F. Jeb Wait, M.D., J.D.
**WAIT & ASSOCIATES**
205 Swede Creek
Boerne, TX  78006


Daniel Leathers
**LIEFF CABRASER HEIMANN & BERNSTEIN**
250 Hudson St., 8th Floor
New York, NY  10013-1413

Paul J. Hanly, Jr.
Jayne Conroy
**HANLY, CONROY, BIERSTEIN, SHERIDAN, FISHER & HAYES**
112 Madison Avenue
New York, NY  10016-7416

Joseph H. Saunders
**SAUNDERS & WALKER**
3491 Gandy Blvd. N, Ste. 200
Pinellas Park, FL  33781

*APPEARANCES*

**Plaintiffs' Counsel:**  (continues)


Adam M. Evans
**THE HOLLIS LAW FIRM**
5100 West 9th Street
Prairie Village, KS  66207

A. J. De Bartolomeo
**GIRARD GIBBS**
601 California St., 14th Floor
San Francisco, CA  94108

Ed Blizzard
**BLIZZARD, McCARTHY & NABERS**
440 Louisiana Street
Houston, TX  77002

Lee B. Balefsky
Lisa Dagostino
Mark A. Hoffman
**KLINE & SPECTER**
1525 Locust St., 19th Floor
Philadelphia, PA  19102

Margaret Thompson, MD, JD
**MUELLER LAW**
404 W. 7th Street
Austin, TX  78701

Mallory J. Mangold
**TAYLOR MARTINO**
51 Saint Joseph St.
Mobile, AL  36602

Adam Pulaski
**PULASKI & MIDDLEMAN**
4615 Southwest Fwy, Ste. 850
Houston, TX  77027

*APPEARANCES*

**<u>Plaintiffs' Counsel:</u>**   (continues)


David Matthews
**MATTHEWS & ASSOCIATES**
3905 Sackett Street
Houston, TX  77098

James M. Gallagher
**JAMES MICHAEL GALLAGHER & ASSOCIATES**
8100 Penn Avenue, South, Ste. 117
Minneapolis, MN  55431

Chris W. Cantrell
**DOYLE LOWTHER**
10200 WillowCreek Rd., Ste. 150
San Diego, CA  92131

Michael H. Bowman
**WEXLER WALLACE**
55 W. Monroe St., Ste 3300
Chicago, IL  60603

Amy Erskin
Mark E. Burton, Jr.
**HERSH & HERSH**
601 Van Ness Ave., Ste. 2080
San Franciso, CA  94102

Thomas P. Cartmell
**WAGSTAFF & CARTMELL**
4740 Grand Ave., Ste. 300
Kansas City, MO  64112

Eric T. Chaffin
**CHAFFIN LUHANA**
600 Third Ave., 12th Floor
New York, NY  10016

Clayton A. Clark
Scott A. Love
Michael W. Moreland
**CLARK, LOVE & HUTSON**
440 Louisiana St., Ste 1600
Houston, TX  77002

*APPEARANCES*

**Plaintiffs' Counsel:**   (continues)


Kevin J. Davidson
**ZEVAN & DAVIDSON**
1 North Taylor Ave.
St. Louis, MO  63108

Kevin Edwards
Peter de la Cerda
**EDWARDS & DE LA CERDA**
3031 Allen St., Ste. 100
Dallas, TX  75204

Steve M. Faries
**KABATEC BROWN KELLNER**
644 S. Figueroa St.
Los Angeles, CA  90017

Paul T. Farrell, Jr.
**GREENE, KETCHUM, BAILEY, WALKER, FARRELL & TWEEL**
P. O. Box 2389
Huntington, WV  25724-2389

Yvonne M. Flaherty
**LOCKRIDGE GRINDAL NAUEN**
100 Washington Ave., S, Ste. 2200
Minneapolis, MN  55401

Peter J. Flowers
**FOOTE MEYERS MIELKE & FLOWERS**
3 North Second St., Ste. 300
St. Charles, IL  60174

Eric H. Gibbs
**GIRARD GIBBS**
601 California St., 14th Floor
San Francisco, CA  94108

Michael Goetz
**MORGAN & MORGAN**
201 N. Franklin St., 7th Floor
Tampa, FL  33602

*APPEARANCES*

**Plaintiffs' Counsel:**   (continues)

James Francis Green
**ASHCRAFT & GEREL**
2000 L. Street, NW, Ste. 400
Washington, DC  20036

W. Todd Harvey
**BURKE HARVEY & FRANKOWSKI**
2151 Highland Ave., Ste. 120
Birmingham, AL  35205

Stacy K. Hauer
**JOHNSON BECKER**
33 S. Sixth St., Ste. 4530
Minneapolis, MN  55402-4123

Andrea Solomon Hirsch
**HERMAN GEREL**
230 Peachtree St., Ste. 2260
Atlanta, GA  30303

Patrick Hillary Hufft
**HUFFT & HUFFT**
635 St. Charles Ave.
New Orleans, LA  70130

Anthony D. Irpino
**IRPINO LAW FIRM**
2216 Magazine St.
New Orleans, LA  70130

David Kuttles
Richard D. Meadow
**THE LANIER LAW FIRM**
126 East 56th St., Sixth Floor
New York, NY  10022

Chad A. McGowan
**McGOWAN, HOOD & FELDER**
1539 Health Care Dr.
Rock Hill, SC  29732

*APPEARANCES*

**Plaintiffs' Counsel:** (continues)

Candice Lynn McNabb
**THE POTTS LAW FIRM**
4615 Southwest Freeway, Ste. 850
Houston, TX  77027

Trent B. Miracle
**SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD**
One Court Street
Alton, IL  62002

Douglas C. Monsour
**THE MONSOUR LAW FIRM**
P. O. Box 4209
Longview, TX  75606

Willard J. Moody, Jr.
**THE MOODY LAW FIRM**
P. O. Box 1138
Portsmouth, VA  23705

David E. Tuszynski
**GARLAND, SAMUEL & LOEB**
3151 Maple Drive, N.E.
Atlanta, GA  30305-2500

Edward A. Wallace
**WEXLER TORISEVA WALLACE**
55 Monroe St., Ste. 3300
Chicago, IL  60603

Kimberly R. Wilson
**LEWIS & ROBERTS**
P. O. Box 17529
Raleigh, NC  27619

O. Mark Zamora
**MARK ZAMORA ATTORNEYS**
P. O. Box 660216
Atlanta, GA  30366

Joseph J. Zonies
**REILLY POZNER**
1900 16th St., Ste. 1700
Denver, CO  8020

*APPEARANCES*

**Plaintiffs' Counsel:**  (continues)

C. Anthony Graffeo
**WATSON GRAFFEO**
P. O. Box 467
Huntsville, AL  35804

**DEFENSE COUNSEL:**

S. DeAnn Bomar
**SWIFT, CURRIE, McGHEE & HIERS**
1355 Peachtree St. NE, Suite 300
Atlanta, GA  30309

Melissa Foster Bird
**NELSON, MULLINS, RILEY & SCARBOROUGH**
949 Third Ave., Suite 200
Huntington, WV  25701

Ressie L. Ragland
**PATTON, TIDWELL & SCHROEDER**
P. O. Box 5398
Texarkana, TX  75505-5398

Carrie R. Guest
**MARTIN & JONES**
410 Glenwood Ave., Suite 200
Raleigh, NC  27603

Robert T. Adams
Jon A. Strongman
**SHOOK, HARDY & BACON**
2555 Grand Blvd.
Kansas City, MO  64108-2613

Ronn B. Kreps
**FULBRIGHT & JAWORSKI**
2100 IDS Center
80 South Eighth St.
Minneapolis, MN  55402-2112

*APPEARANCES*

**Defense Counsel:**  (continues)


William M. Gage
**BUTLER, SNOW, O'MARA, STEVENS & CANNADA**
1020 Highland Colony Parkway, Ste. 1400
Ridgeland, MS  39157

Barbara R. Binis
Tracy G. Weiss
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia. PA 19103

David B. Thomas
Philip J. Combs
Sarah L. Martin
**GUTHRIE & THOMAS**
P. O. Box 3394
Charleston, WV 25333-3394

Michael Farrell
**FARRELL, WHITE & LEGG PLLC**
P.O. Box 647
Huntington, WV 25772

Michael Bonasso
Elizabeth Taylor
**FLAHERTY, SENSABAUGH & BONASSO**
P. O. Box 3843
Charleston, WV  25338-3843

Deborah A. Moeller
Bryan Pratt
Matthew D. Keenan
**SHOOK, HARDY & BACON**
2555 Grand Boulevard
Kansas City, MO  64108

Daniel Leathers
**LIEFF CABRASER HEIMANN & BERNSTEIN**
250 Hudson St., 8th Floor
New York, NY  10013-1413

*APPEARANCES*

**Defense Counsel:**   (continues)

Kelly S. Crawford
**RIKER DANZIG SCHERER HYLAND & PERRETTI**
P. O. Box 1981
Morristown, NJ  07962-1981

Richard B. North, Jr.
**NELSON MULLINS RILEY & SCARBOROUGH**
201 17th St., NW, Ste. 1700
Atlanta, GA  30363

Erik W. Legg
**FARRELL, FARRELL & FARRELL**
P. O. Box 6457
Huntington, WV  25772-6457

David B. Thomas
**GUTHRIE & THOMAS**
P. O. Box 3394
Charleston, WV  25333-3394

```
 1        PROCEEDINGS had before Chief Judge Joseph R. Goodwin and

 2   Magistrate Judge Mary E. Stanley, United States District Court

 3   for the Southern District of West Virginia, in Charleston, West

 4   Virginia, on April 13, 2012:

 5                THE COURT:   Good morning.

 6                COURTROOM DEPUTY CLERK:   The matter before the court

 7   is In re American Medical Systems, Inc., MDL 2325; In re Boston

 8   Scientific Corp., MDL 2326; and In re:Ethicon, Inc., MDL 2327,

 9   Pelvic Repair System Products Liability Litigation.

10                CHIEF JUDGE GOODWIN:   Good morning.  I'm

11   Judge Goodwin.  Joining me on the bench is Judge Mary Stanley.

12   This is quite a group.  Impressive.  Intimidating.  Wealthy.

13   Let me -- come use the jury box for places to sit.  Any chairs

14   you can find you're welcome to use.  There are chairs over

15   there behind that table as well.

16        Let me introduce the law clerks:  My law clerk, Angie

17   Volk, and Judge Stanley's law clerk, Kate Fife.  You'll find

18   that our staff, law clerks, and the people who work in the

19   clerk's office are friendly and helpful.  I hope you've already

20   found that out, if you've had occasion to deal with them.  If

21   you have occasion to complain, let me know.

22        I want to thank you on behalf of the Charleston economy.

23   The bartenders at the Embassy Suites and the Marriott are

24   grateful.

25        I'm sure that most of you have done your homework and
```

1   gotten the book on me, and some of you have heard these remarks

2   at least once before, and sometimes twice.  For those who have

3   not, let me give you my side of it.  I graduated from law

4   school in 1970.  I tried lawsuits for 25 years, and that was

5   back when trial lawyers tried lawsuits.  I tried dog bite --

6   for those of you who are joining us on the phone, be sure you

7   put your phones on mute.  As I started to say, I tried dog

8   bites, drunk driving, murder cases, many car wrecks, products

9   cases, securities cases, commercial cases, and to my

10  everlasting regret, a few boundary disputes.  Now, I'm here to

11  tell you that I loved most of those years in the practice of

12  law, but quite candidly, by 1995, some 17 years ago, I was

13  growing tired of some of the trends in the practice of law.  I

14  was becoming exasperated with unpredictable schedules and an

15  increasing deficit of common courtesy among members of the

16  bar - even common decency.  I'd begun to yearn for those

17  long-ago days of handshake settlements, agreed-upon schedules,

18  and just plain good humor.  I'm sure deposition rooms filled

19  with choking smoke and road trips where opposing counsel met

20  for too many drinks and high fat dinners would not appeal to

21  all of you, but we had a good time and I'd come to miss them.

22  This is not just nostalgia.  I was actually revolted -- I hear

23  someone on the phone that needs to turn their phone on mute

24  because I can hear the chatter in the background.  I was

25  revolted by the rise of -- I'm going to turn the phone off if

1   we can't make sure that your phones are on mute.  I still hear

2   somebody saying, "We have also. . ."

3        *(Laughter in courtroom.)*

4        *CHIEF JUDGE GOODWIN:*  All right.  It seems to have

5   quieted down.

6        *MAGISTRATE JUDGE STANLEY:*  No.

7        *UNIDENTIFIED TELEPHONIC SPEAKER:*  Ma'am, I'm not sure

8   if you realize, but you're dictating into the phone conference.

9        *UNIDENTIFIED FEMALE TELEPHONIC SPEAKER:*  Oh, my gosh.

10  Is that not on mute?  I'm so sorry.  *(Laughter in courtroom.)*

11       *CHIEF JUDGE GOODWIN:*  The culprit has been

12  identified, but not by name.  *(Laughter.)*

13       *CHIEF JUDGE GOODWIN:*  All right.  I got to the point

14  where I didn't want to open another letter from opposing

15  counsel misconstruing a telephone conversation deliberately

16  that we'd had the day before and sending a copy to the judge

17  for their education.  I dreaded the next time some lawyer was

18  going to question my integrity in a statement to the court,

19  usually in writing.  Rarely did anybody have the guts to do it

20  in person.  So when Senator Byrd came to see me and suggested

21  he might persuade the President to give me this job, it took me

22  very little time to warm to the idea.  Don't get me wrong, I

23  love the law.  I believed then -- I believed then as I do now

24  that lawyers are the best company in the world.  But this job

25  seemed like a good idea 17 years ago, and it's proved to be

1    over those 17 years.  I think it's the best job in the world.

2    This introduction is only by way of explaining to you that you

3    will find in this little corner - it's not so little today;

4    it's pretty big -- corner of the legal world civility and good

5    humor are not only encouraged, but they are required.

6         *(Telephone background noise.)*

7         Please put -- please put your -- it sounds like somebody

8    was blowing their horn.  Please put your phone on mute.

9         Let's just put it this way:  I don't put up with meanness.

10   I don't put up with meanness.  I treasure a good legal

11   argument.  It's a lot of fun.  But I have high hopes that you

12   have no occasion to learn how low my tolerance is for petty

13   disputes.  By its nature, this litigation is complicated, it's

14   difficult, and because of its size, it will make everybody's

15   life a lot easier if we adopt a common commitment to courtesy

16   and the highest professional standards.  I expect both.  I know

17   you will pledge yourselves to cooperation and civility.

18        I have two more expectations.  I almost want you to take

19   notes on this because, believe it or not, it has become common

20   for lawyers not to read the orders or not to read the rules.  I

21   expect you to invariably read carefully and follow the Civil

22   Rules of Procedure, our local rules, and our orders.  Orders

23   are not suggestions.  Failure to comply with a court order is

24   a violation of law.  I would say -- and I'll let Judge Stanley,

25   when we get to her part here in a little bit, tell you what

1  percentage of the discovery disputes could be resolved by

2  simply picking up the rule book and reading the rule.

3      All right.  Three separate agendas for this meeting were

4  submitted to the Court.  I've combined the common issues into

5  one agenda and have included issues raised by individual

6  defendants or the plaintiffs in these cases as additional

7  agenda items as necessary.  I will give counsel and each of you

8  adequate time as we move through the agenda and at the end of

9  this hearing to discuss any matters that I miss or you feel

10  need to be brought to my attention.

11      The first item on the agenda is the introduction of

12  counsel.  Some of you I'm familiar with; most of you I don't

13  know.  I look forward to getting to know you.  For those of

14  you who have taken the time in accordance with Pretrial Order

15  No. 1 to appear for this hearing, either individually or as a

16  representative of parties with similar interests, your

17  appearance will be noted.  I think there was a sign-up out

18  front and that will be entered with the clerk as an appearance

19  in the case.  All of the names from the sign-in sheets that

20  were available out there will be given to the court reporter.

21  If you did not have a chance to sign in prior to the beginning

22  of the hearing, please see my law clerk, Angie Volk, after the

23  hearing and your name will be added.

24      After I select lead counsel I'm going to ask them to

25  introduce themselves.  Some counsel for the plaintiffs

1  submitted to the Court a proposed counsel organizational

2  structure.  It is my information that the proposal for that

3  structure and the people proposed enjoys a broad consensus

4  among the plaintiffs' lawyers across the country that

5  participated in the efforts to organize, for want of a better

6  word, this litigation.  Each of the attorneys on the proposed

7  slate - that's what we call it in West Virginia, a slate -

8  except one submitted an individual application, in accordance

9  with procedures outlined in Pretrial Orders No. 1 and No. 2.

10 There were also applications by eight other individuals not

11 included on the proposed slate.  No objections were received by

12 the Court as to the appointment of any person who applied.  I

13 have reviewed the proposed slate of attorneys, the applications

14 submitted, the memorandum in support, looked at the individual

15 applications, and I find it to be in the best interests of the

16 litigation to appoint the attorneys recommended as the slate

17 submitted to the Court, except for the one that didn't submit

18 an application.

19     A coordinated and unified plaintiffs' leadership team that

20 spans the four related pelvic repair mesh MDLs before this

21 Court is essential to the efficient, effective prosecution and

22 defense of this case.  The names of the individuals appointed

23 to the rather large PSC will be forthcoming in a pretrial

24 order.  Got your pencils?  Coordinating co-lead counsel for the

25 plaintiffs will be Bryan Aylstock, Henry Garrard and Fred

1  Thompson.   The Plaintiffs' Executive Committee will be made up

2  of these three lawyers, as well as Tom Cartmell, Clayton Clark,

3  Amy Eskin, Derek Potts, and Aimee Wagstaff.   Mr. Garrard will

4  continue as lead counsel in the Bard MDL and Derek Potts will

5  join him as co-lead counsel in that group of cases.   Amy Eskin

6  and Fidelma Fitzpatrick will be co-lead counsel in MDL 2325;

7  Clayton Clark and Aimee Wagstaff will be co-lead counsel in MDL

8  2326; and Renee Baggett and Tom Cartmell will be co-lead

9  counsel in MDL 2327.

10      From this point forward it is my present intention to deal

11  essentially through the coordinating co-lead counsel.   I will

12  hold them and the rest of the Executive Committee responsible

13  for coordinating the efforts of the members of the PSC.

14      Plaintiffs' counsels, some of the group, have jointly

15  recommended the following people as co-liaison counsel:

16  Harry Bell, Paul Farrell and Carl Frankovitch.   All of these

17  individuals submitted the required applications.   Based on my

18  experience and my review of their applications, I accept the

19  recommendation and appoint those three as co-liaison counsel

20  for the plaintiffs.   Normally I would have one person I could

21  go to as liaison counsel, but this is a pretty good-sized group

22  to liaison with, so I think I'll always be able to get my hands

23  on one of those three and they will be able, theoretically, to

24  get their hands on all of you.

25      Barbara Binis of Reed Smith was recommended as lead

1   counsel for defendant American Medical Systems in MDL 2325.

2   Having read the requested application, I appoint her as lead

3   defense counsel in MDL 2325.

4        Mr. Robert Adams of Shook, Hardy & Bacon was recommended

5   as lead counsel for the defendant Boston Scientific in

6   MDL 2326.   Having read and reviewed the requested application

7   materials, Mr. Adams is hereby appointed as lead defense

8   counsel in MDL 2326.

9        Ms. Christy Jones of Butler Snow was recommended as lead

10  counsel for defendants Ethicon and Johnson & Johnson in

11  MDL 2327.   It is my understanding that she could not be present

12  today because she is actually in trial in front of Judge Higbee

13  in New Jersey.   I had that verified by my law clerk calling to

14  be sure that that was in fact the case.   She notified the Court

15  of this conflict.   Her partner, Mr. William Gage, is present on

16  her behalf.   Having read the requested application materials,

17  Ms. Jones is appointed as lead defense counsel in MDL 2327.   I

18  would note that actually being in trial or in intensive care

19  are the only good excuses for lead counsel to fail to appear.

20       Recommendations were also received by defense counsel for

21  the position of defendants' liaison counsel.   Boston Scientific

22  recommended Michael Bonasso of the law firm of Flaherty,

23  Sensabaugh & Bonasso.   Ethicon recommended Mr. David Thomas of

24  the local firm of Guthrie & Thomas, and American Medical

25  System -- Systems recommended Mr. Michael Farrell of Farrell,

1  White & Legg.   The Court received no other nominations.

2  Mr. Marc Williams of Nelson Mullins was previously appointed as

3  liaison counsel in the Bard MDL and he will continue in that

4  role.   I propose these three gentlemen as nominated be

5  appointed.   I accept my own proposal, and they are.

6       Although an organized counsel structure is now in place, I

7  want to emphasize that all lawyers representing plaintiffs in

8  this litigation, regardless of their role or lack thereof in

9  the management structure, and regardless of my designation of

10 lawyers as lead counsel, members of the executive committee,

11 liaison counsel, et cetera, or members of the PSC, the

12 individual lawyers continue to bear full responsibility to

13 represent their individual client or clients.   It seems like

14 an unnecessary reminder, but I've had enough MDL experience to

15 know that it's worth a reminder.

16      The third and fourth items on the agenda include an

17 overview of the separate MDL litigations, including the

18 products of each defendant, the federal cases in current

19 MDL transfer status, the court coordinated proceedings for each

20 in state courts, the discovery pending to date, and pending

21 motions.   I have received and reviewed the requested position

22 statements and multiple attachments received from each of the

23 defendants, as well as the plaintiffs.   I feel I have enough

24 information on the status of those matters at this time.

25 Judge Stanley is going to be asking you for much more

1  information at a later time, and as we'll discuss in a few

2  minutes, we'll have another meeting before long with counsel.

3  I did note the coordinated proceedings of state cases involving

4  Ethicon and American Medical Systems in New Jersey before

5  Judge Higbee, as well as the centralization of Boston

6  Scientific cases in Massachusetts before Judge Kottmyer.  I

7  have already communicated with Judge Higbee about the

8  possibility of coordinating the MDLs with the state litigation.

9  She's open to doing so and I think that will be a process that

10  develops.  I will, but have not yet, made similar efforts with

11  Judge Kottmyer and other state court judges with consolidated

12  cases.  And if I can, I'll even find the individual state cases

13  out there where there is no coordination in trial to get the

14  state judges involved in a cooperative endeavor.

15      Let me say to you that my experience with state judges has

16  been a very good one.  No matter what the Judicial Conference

17  of the United States posts on its website, the truth is state

18  judges are much busier than we are and they have proved to be

19  very -- and they have limited resources.  Sometimes they don't

20  have travel budgets.  They can't -- they're not as flexible in

21  what they can do.  So we will work with the individual state

22  judges in coordinated cases, and to the extent possible, the

23  others to make the entire process efficient.  It is much too

24  early to decide what efficiencies can be gained through the

25  cooperation with the state cases.  As all of you as experienced

1  MDL lawyers and plaintiffs' lawyers and defense lawyers know,

2  it has not been uncommon in some of the MDLs to have *Daubert*

3  hearings conducted with a state judge on the bench and a

4  federal judge.  They reach separate decisions, maybe opposite

5  decisions, but it's only one day, or two days, or whatever it

6  takes, and only happens once.  We're going to try to cut down

7  on duplicative proceedings to the extent that it's possible and

8  can be done without interfering with every party's legitimate

9  gripe to pursue their claims in the forum of their choice.

10       The fifth and sixth agenda items included a number of

11  procedural and discovery issues.  While Judge Stanley will

12  address certain discovery issues with counsel in a few minutes,

13  a number of these items I expect that counsel for the parties

14  will confer upon now that I have determined a counsel

15  structure.  While they are important foundational issues, it

16  simply doesn't make sense at this point to address them

17  individually in the context of today's hearing.  It's my hope

18  to resolve and have proposals pertaining to these issues from

19  counsel by the time we have our next status conference.  That

20  would include a proposed order, hopefully an agreed proposed

21  order, to cover the following topics:

22       Master complaints, short form complaints, and defendants'

23  answers thereto, factsheets, preliminary motions, production of

24  documents, medical records, privilege log protocols, protective

25  orders, preservation of evidence, redaction protocols, ESI

1  protocols, amendments of proceedings, issues as to the proper

2  party defendant, and service of process issues.

3       I'm going to ask Angie to post those on the website, as I

4  notice some of you just gave up in the middle and decided you

5  couldn't possibly get them all written down.

6       One item that the parties have exchanged ideas on and are

7  specifically working on is a proposed order for the Court on

8  the issue of direct filing of additional actions, and that's

9  happening every day.  While venue is not proper, certain

10  plaintiffs have been and will continue to file cases directly

11  into these MDLs or into this district.  In an effort to

12  simplify the process for filing cases, while preserving all

13  rights and defenses which the parties might otherwise possess,

14  the Court is ready, willing and may be able to entertain a

15  direct filing order.  I will simply ask does counsel have a

16  proposed order for the Court on that yet?

17            *MR. GARRARD:*  Your Honor, we have exchanged ideas; we

18  have exchanged some orders.  We have not come to a consensus

19  yet.  We hope we will be able to do so within the next week or

20  so.  We are all diligently working at it with some converging

21  ideas, but I think we all have the same purpose, and we will

22  get it to the Court.

23            *CHIEF JUDGE GOODWIN:*  All right.  Is that correct,

24  Mr. Thomas?

25            *MR. GAGE:*  Yes, sir.  William Gage.  Yes, sir.

1     *CHIEF JUDGE GOODWIN:*  All right.  The seventh general

2     item on the agenda is a scheduling status conference.  We have

3     held the status conference in the Bard MDL -- have held those

4     about every 45 to 60 days, depending on what is going on.  That

5     schedule has worked well thus far.  The complications ensuing

6     from having four MDLs may require more frequent meetings.  I

7     won't know that until we get into this.  I would like to have

8     a status conference with coordinating co-lead counsel for the

9     plaintiffs and defendants' lead counsel in all four cases in

10    one month to follow up on the issues that I've raised with you

11    today, the ones we've postponed that you suggested for today.

12    Any attorney representing any party, or any unrepresented

13    party, may attend any status conference, of course, but only

14    the -- I forget what it's called now, the lead counsel --

15    co-lead --

16          *LAW CLERK VOLK:*  Coordinating.

17          *CHIEF JUDGE GOODWIN:*  The coordinating lead counsel,

18    and the lead counsel for the defendants, and liaison counsel

19    may actively participate in the conference.  Lead counsel is

20    expected to attend each status conference in person.  My law

21    clerk will communicate with you concerning proposed dates and

22    times.  Judge Stanley and I have tried, with considerable

23    success in the past, to accommodate the schedules of counsel

24    to the extent possible, but surprisingly, this is sometimes

25    difficult to do, but we'll do our best to work with you.

1    Does anyone have anything at this point on future status

2    conferences, other than the rather nebulous statement that

3    Angie will be in touch with lead counsel concerning a date?

4        Okay.  The last thing I want to address before turning

5    things over to Judge Stanley are the pro hac vice motions and

6    so forth.  Before I do that, let me simply kind of call the

7    roll again of lead counsel and ask them to stand, because those

8    of you who didn't find them in the bar last night may not know

9    all of them.

10       Page 2:  Coordinating co-lead counsel for the plaintiffs:

11   Bryan Aylstock.

12           *MR. AYLSTOCK:*  Good morning, Your Honor.

13           *CHIEF JUDGE GOODWIN:*  Henry Garrard.

14           *MR. GARRARD:*  Your Honor.

15           *CHIEF JUDGE GOODWIN:*  Fred Thompson.

16           *MR. THOMPSON:*  Good morning.

17           *CHIEF JUDGE GOODWIN:*  Plaintiffs' Executive Committee

18   includes these three gentlemen, as well as Tom Cartmell,

19   Clayton Clark, Amy Eskin, Derek Potts, Aimee Wagstaff.

20       Co-liaison counsel for the plaintiffs:  Harry Bell, Paul

21   Farrell, Carl Frankovitch.

22       The lead counsel on each MDL are as follows:  Mr. Garrard

23   in the Bard MDL will be joined by Derek Potts, Amy Eskin and

24   Fidelma Fitzpatrick --

25           *MR. GARRARD:*  Your Honor, Ms. Fitzpatrick is out of

1  the country and I don't know whether she notified the Court or

2  not, but she's not here.

3      *CHIEF JUDGE GOODWIN:*  She did not and if she misses

4  the opportunity in the future I'll send her to intensive care.

5     *(Laughter.)*

6      *CHIEF JUDGE GOODWIN:*  Clayton Clark and Aimee

7  Wagstaff will be co-lead counsel in MDL 2326.  Renee Baggett

8  and Tom Cartmell will be co-lead counsel for MDL 2327.  Barbara

9  Binis of Reed Smith will be lead counsel in MDL 2325.  Robert

10  Adams of Shook, Hardy & Bacon will be the lead defense counsel

11  in MDL 2326.

12     Did I leave anybody out?

13      *MAGISTRATE JUDGE STANLEY:*  Of course, Mr. Gage.

14      *CHIEF JUDGE GOODWIN:*  Mr. Gage is also with Ethicon's

15  MDL.

16      *MR. GAGE:*  Yes, sir.

17      *MAGISTRATE JUDGE STANLEY:*  And Mike Bonasso and Dave

18  Thomas.

19      *CHIEF JUDGE GOODWIN:*  And Mike Bonasso and Dave

20  Thomas are with which MDL?  Boston Scientific?  Is that right?

21      *MR. THOMAS:*  That's correct.

22      *MR. BONASSO:*  Yes, Your Honor.  And Ethicon.

23      *CHIEF JUDGE GOODWIN:*  And Ethicon.  All right.  Thank

24  you.  You can see why I didn't name any more people.

25     The last thing, as I said, I will address before

1   Judge Stanley are pro hac vice motions and the necessity of

2   local counsel, which is a proposed agenda item.   PTO No. 1,

3   paragraph 12, clearly states that attorneys admitted to

4   practice and in good standing in any United States district

5   court are admitted pro hac vice in this litigation and the

6   requirements of Local Rules of Civil Procedure 83.6 are waived.

7   Association of local counsel is not required.   Counsel in each

8   newly filed or transferred action will be required - and all

9   of you all are if you haven't done it yet - to complete the

10   ECF Registration Form, the Notice of Attorney Appearance, and

11   Counsel Contact Form.   These forms are available on the court's

12   website.   Anything further on that matter?

13        Let me -- since I mentioned the website, I will note that

14   there is a link for every individual MDL on that site.   There

15   is what I believe to be a lot of useful information on those

16   sites, including every pretrial order that is entered, contact

17   information for counsel and the court, necessary forms, and

18   notices and information regarding any upcoming court

19   proceedings.   I encourage you to review the information on the

20   MDL websites frequently.   The question that you attempted to

21   call the Court and ask may very well have been answered by

22   information on the website.   If you will please look at that

23   first before calling, I would appreciate it.

24        We're faced with a unique situation, one that I think

25   looking at the fine faces before me will prove to be rewarding,

1 of having four MDLs -- similar MDLs in this court.  In its

2 most simplistic form, we have similar pelvic mesh products

3 manufactured by different defendants that allegedly caused a

4 variety of injuries to women.  We suspect and we hope that

5 there are commonalities among the four MDLs, and Judge Stanley

6 and I believe that the most efficient way to handle the four

7 MDLs, particularly for discovery purposes, is to coordinate

8 them as much as possible.

9             *UNIDENTIFIED TELEPHONIC SPEAKER:*  Good morning.

10            *TELEPHONIC RECORDED MESSAGE:*  Your call is being

11 recorded.

12            *CHIEF JUDGE GOODWIN:*  All right.  Welcome to the

13 call.  You're 37 -- 38 minutes late.

14        I believe that the most efficient way to handle the four

15 MDLs is to consolidate as much as possible.  To that end, we

16 need to understand the issues -- we need to understand the

17 issues in a global way and be educated by the parties about

18 what factual and legal issues that the four MDLs have in

19 common.  We need to know if there are common witnesses that

20 are likely to be deposed.  We need to know if there are common

21 documents.  We understand that there will be case specific

22 and/or manufacturer specific discovery that won't be taken

23 care of by this common discovery, but we do anticipate a

24 procedure --

25            *UNIDENTIFIED TELEPHONIC SPEAKER:*  Apparently the

 1  hearing did start at nine, but for some reason we haven't been

 2  hooked in yet, so hopefully they're working on it.

 3                *CHIEF JUDGE GOODWIN:*  You are in.  Can you hear me?

 4                *UNIDENTIFIED FEMALE TELEPHONIC SPEAKER:*  Thank you.

 5                *UNIDENTIFIED FEMALE TELEPHONIC SPEAKER:*  Thank you.

 6                *CHIEF JUDGE GOODWIN:*  We anticipate a procedure

 7  whereby the parties engage in common discovery and then revisit

 8  the case in manufacturer specific discovery which is to be

 9  completed.  I would ask for the parties to work together to

10  identify common issues of fact, law, witnesses, documents,

11  et cetera, and to educate the Court about these and work to

12  devise a discovery plan which first implements common discovery

13  and then is followed by manufacturer or case specific

14  discovery.  Our goal - and we are flexible - is to help the

15  parties accomplish discovery in the most economical and

16  efficient way.  Both Judge Stanley and I have a number of

17  questions that will help us better understand where

18  commonalities can be found.  Judge Stanley will talk about some

19  of those.  Some of the questions on her list we have talked

20  about before, but we anticipate that you may identify areas

21  that we've not thought of and we encourage you to do so.  Till

22  we understand the full picture, we can't maximize the

23  efficiencies and make this as easy on the parties and clients

24  as we can.  We want to arrive at a workable, efficient and

25  logical approach to discovery in these cases.  Now, I've never

1  done this before, but I need to tell you Judge Mary Stanley is

2  one of the best magistrate judges in the United States.   She is

3  now long-serving, as witnessed by her gray hair and youthful

4  demeanor, but she is very experienced in dealing with

5  complicated cases and complicated discovery.   She only has one

6  flaw, she's going to retire in about a year, which I do not

7  approve of and have tried to dissuade her from doing, but you

8  will find her and her staff to be most helpful.   As I'm sure

9  you will learn, she doesn't want to wait until after you've

10  blacked each other's eyes and broken ribs that there's a

11  dispute.   If you have a dispute, you will usually be able to

12  get her on the phone and she will resolve the dispute.   Unlike

13  me, she'll get it right.   I'm often in error, but never in

14  doubt.   We'll keep -- we'll keep the ball rolling and I think

15  you will enjoy dealing with Judge Stanley.

16       Let me say this, and this is really fair, and I don't say

17  it to create an in terrorem situation, but you don't want me

18  for a discovery judge.

19       Judge Stanley.

20            *MAGISTRATE JUDGE STANLEY:*   Before I really get into

21  my remarks perhaps you-all will squeeze together a little bit

22  and let these folks who have been standing up for a while have

23  a seat.   Also, you can use these chairs over here against this

24  wall.   This is a lesson to all of you, we start hearings on

25  time and you can expect that if a status conference starts at

1  9:00 it's going to start at 9:00, and you'd better be there in

2  advance, because sometimes it starts early.

3      Just to give you a little bit of information about myself,

4  I've been on the bench for almost 20 years.  Before that I was

5  an assistant United States attorney for 15 years.  I tended to

6  enjoy trying and prosecuting complicated cases, the ones that

7  were document heavy and put the jury to sleep, but for some

8  reason it was such a challenge to figure out ways to make it

9  interesting and present the case.  I enjoyed that very much.

10      I have three children, two of whom are lawyers and one of

11  whom -- the other one who is not a lawyer is way more

12  successful, and two granddaughters, and I need granddaughter

13  fixes, so let me just say that in West Virginia family is

14  important.  And getting along with each other and helping each

15  other out are important values, and you can start putting that

16  to work right now.  And one of the things that I tell lawyers

17  in difficult cases, particularly those where we are going to

18  have periodic status conferences, is that I am very much in

19  favor of scheduling them out well in advance, and I believe

20  that lawyers should share their family issues with each other

21  to the extent that co-lead counsel may want to seriously

22  consider scheduling family vacations for the same weeks.  I'm

23  serious.  Talk to each other.  If all of a sudden somebody's

24  sick and has to have surgery, tell each other.  This is no time

25  to be macho.  This is no time to neglect your family; however,

1   this case has got to move and the discovery process has to move

2   for the benefit of the clients, the patients, the doctors, the

3   corporations, who are people too, and that means you really are

4   going to have to work together.  Judge Goodwin's vacations are

5   going to be honored, my vacations are going to be honored, and

6   so it would be wise for you to honor each other's and to

7   schedule them in such a way that nobody has to cancel.

8       Now, Judge Goodwin asked about how many of my discovery

9   disputes can be resolved by reading the rules, and the answer

10  is:  A lot.  I have a friend who used to read to his child at

11  night and the book that he chose to read to his child was the

12  Federal Rules of Civil Procedure.  It's a guaranteed soporific.

13  If you start with Rule 1, which is probably only as far as he

14  ever got, I'll remind you that the rules are to be construed

15  and administered to secure the just, speedy and inexpensive

16  determination of every action and proceeding.  Well, we're

17  going to try to do this with all deliberate speed.  It is not

18  going to be inexpensive, but we are going to do our very best

19  to make it just.  So I have spent time during the past week

20  studying your documents and other materials, such as before

21  the FDA, trying to devise approaches to discovery that will

22  accomplish our purpose without undue burden and expense.  And

23  this is a unique and challenging series of cases, so I

24  encourage you to contemplate the big picture portrayed by the

25  plaintiffs' allegations, to be creative, starting now, and to

1   propose discovery procedures which are not necessarily focused

2   on your client.  Given the underlying theory of the plaintiffs'

3   case that pelvic mesh and its incorporation into the body's

4   tissues is problematic, that seems to me a fair place to start.

5       I do have a series of questions, and I'm not expecting

6   answers now, but I hope that these questions will start you

7   thinking.  So if the issue about pelvic mesh is the beginning

8   point, does it make sense to investigate that theory by

9   category rather than product -- than by product by product or

10  manufacturer by manufacturer?  In other words, to develop an

11  overarching discovery of pelvic mesh treatment of stress

12  urinary incontinence and pelvic organ prolapse?  I wonder

13  whether we should possibly break that down as to the affected

14  organ, whether it be bladder, uterus, vagina, rectum or

15  combinations of them.  I wonder whether the main division

16  should be as between polypropylene mesh versus porcine dermis.

17  We don't know whether there are differences among the coatings

18  on the mesh.  We don't know whether there are differences in

19  how the mesh is woven.  We don't know whether differences in

20  patients' bodies that can be categorized have an important

21  effect.  Such an approach would not focus primarily on the

22  size or shape of the product or the method of implantation, but

23  those may be important considerations.  We don't know enough

24  yet.  But back in September when the FDA had its hearings,

25  they chose not to focus on a particular project, and I'm

1   wondering -- product, and I'm wondering whether we should.

2   Now, of course, you lawyers know more about this --

3       *(Unintelligible telephonic comment.)*

4       *MAGISTRATE JUDGE STANLEY:* . . .these facts that I

5   do, but I hope you'll consider these matters very seriously and

6   propose some creative approaches, particularly --

7       *UNIDENTIFIED MALE TELEPHONIC SPEAKER:* Hello. Can

8   you hear this?

9       *MAGISTRATE JUDGE STANLEY:* We can hear you.

10     *(More unintelligible telephonic comments.)*

11       *MAGISTRATE JUDGE STANLEY:* Mute your phones, please.

12     It makes little sense for an expert witness --

13       *UNIDENTIFIED FEMALE TELEPHONIC SPEAKER:* Should

14   someone else call the port, also?

15       *TELEPHONIC SPEAKER:* This is Regina *(unintelligible*

16   *comments.)* Do you want me to call the Court's -- the judge's

17   chambers? The gentleman at *(unintelligible)* acted like it was

18   the first time he has heard that this call is not being

19   connected. He said if we heard the text we should have been

20   connected.

21       *CHIEF JUDGE GOODWIN:* Well, the judge that's got this

22   case is speaking to you now --

23       *TELEPHONIC SPEAKER:* -- and we're not.

24       *CHIEF JUDGE GOODWIN:* -- and it has been connected,

25   at least I've heard many of you join the call, and I assume

1    some of you can hear me.   Could I maybe hear a "hoorah" from

2    anybody that can hear me?

3              *MAGISTRATE JUDGE STANLEY:*   Well, if their phones are

4    muted they won't be speaking up.

5              *CHIEF JUDGE GOODWIN:*   Maybe there is a problem with

6    the connection.   Well, deregulation of the phone companies has

7    been the bane of my existence.

8         Since it's not working, turn it off.

9         And, Judge Stanley, go ahead.

10             *MAGISTRATE JUDGE STANLEY:*   What I was saying is that

11   it makes little sense for an expert witness or a Rule 30(b)(6)

12   witness to be subjected to endless and repetitive questions

13   about one product after another which differ only in their size

14   or their shape when those facts may not be material to the

15   issues.   We don't know to what extent trade secrets or

16   proprietary information are going to interfere with a unified

17   approach to discovery, but aren't these products patented?

18   Isn't that sufficient protection?   Aren't these designs on the

19   public record, perhaps at the FDA?

20        We have a lot of issues to address and for you-all to

21   educate us.   We had an excellent education session in the Bard

22   case and they provided examples of some of their products.   I

23   expect the other manufacturers to do the same.   We may or may

24   not need a full educational session, but we've looked at the

25   products, we've touched them, we've examined them, and I think

1    it will be educational for us to be able to compare them one to

2    another.

3         Please know that in all of the MDLs that Judge Goodwin and

4    I have worked on we keep the case on the top of the stack of

5    virtual files on our desks.  We try very hard to assist the

6    parties in achieving agreement as issues arise so that the case

7    moves forward.  If that doesn't work, we've got the briefing

8    that we need and we'll issue rulings promptly.

9         Now, on the website you will see that there are already a

10   lot of agreed orders that have been entered in the Bard MDL.

11   We cannot have conflicting ESI protocols, protective orders,

12   and other similar documents.  Please do not spend a lot of time

13   and energy renegotiating such matters.  We need to have a

14   unified series of orders.  I'm not smart enough to be able to

15   keep them all straight and that will just be unworkable.

16   Similarly, I would expect the plaintiffs' factsheets to be the

17   same in each of the MDLs.

18        Now, let me mention a couple of matters that have the

19   potential for causing problems.  One is the marking of

20   documents as confidential.  If a document is available on the

21   public record, it's not confidential, even if your client

22   thinks it is.  Do not over mark documents as confidential.

23   Please review the protective order on the court's website and

24   the local rule on sealing documents.  We, of course, are

25   dealing with women's most private body areas and it will

1  have -- we will be dealing with a lot of private medical

2  records, but you can devise ways of addressing such medical

3  records in ways that they don't have to be sealed from public

4  view, unless, of course, a particular case goes to trial.  So,

5  for example, if you -- just keep these kinds of things in the

6  back of your head and think of them as ways to creatively deal

7  with the problems presented by this case.  If, for example, on

8  the five cases that are in the first discovery group, if those

9  people are named as Plaintiff A, B, C and D, or by their

10  initials, then you can take depositions talking about the

11  initials or the letter of the alphabet or whatever without

12  using the person's name, and that means the deposition doesn't

13  have to be sealed.  These MDLs are of national importance and

14  the public has a right to understand and know about these

15  products.  And the judges of this district have made it very

16  clear that they are resistant to sealing documents from the

17  public record.

18      I'm looking forward to getting to know those of you who I

19  don't know already and in assisting you in achieving justice in

20  these MDLs.  Thank you.

21      *CHIEF JUDGE GOODWIN:*  Thank you, Judge Stanley.

22  Echoing one part of her remarks, we don't shove MDLs aside and

23  treat them as second-class cases only to be picked up

24  occasionally and looked at.  The fact that there are hundreds

25  of similar cases doesn't mean that each case isn't considered

1  by us as an important matter.  I offer as evidence of

2  Judge Stanley's statement that we keep it on top of the virtual

3  file -- or stack on our desk the fact that we have closed, or

4  shortly will close, three MDLs.  You can look through the other

5  MDLs around the country and see how many judges have closed

6  three MDLs within a reasonable span of time.

7       It will be the case that individual lawyers with a lot of

8  cases will need the attentions of lead counsel and the steering

9  committee members.  Based on what information I had before I

10 made these appointments, I'm confident that I've done a good

11 job in selecting lead counsel.  I am confident they will be

12 responsive to you, but I do invite you that if you have a

13 complaint about lead counsel not being responsive, let me know.

14 And it's a matter we will discuss at our meetings, which will

15 be frequent.

16      I don't know what time the first flight is out of

17 Charleston, but that might determine how long this next part

18 goes.  Any other matters counsel want to discuss at this time?

19      *(Laughter.)*

20          *CHIEF JUDGE GOODWIN:*  Mr. Garrard?

21          *MR. GARRARD:*  Your Honor, I do have one clarification

22 question.  When the defendants presented their position papers

23 they listed pending motions, and my interpretation of the rules

24 is that that starts dates running for responses and action on

25 those motions and I would ask of the Court if in fact that's a

1  correct interpretation, and if it is, may we have some

2  direction from the Court that changes that and delays that

3  timing as we get this organization going?

4        *CHIEF JUDGE GOODWIN:*  Is there objection?

5        *MR. GAGE:*  No objection, Your Honor.

6        *CHIEF JUDGE GOODWIN:*  Work it out.

7        *MR. GAGE:*  We will do that.

8        *UNIDENTIFIED SPEAKER:*  Yes, sir.

9        *MR. GARRARD:*  Thank you.

10        *CHIEF JUDGE GOODWIN:*  Anything else?

11        *MS. BINIS:*  Your Honor.

12        *CHIEF JUDGE GOODWIN:*  Yes, ma'am.

13        *MS. BINIS:*  Barbara Binis for AMS.

14        *CHIEF JUDGE GOODWIN:*  Yes, ma'am.

15        *MS. BINIS:*  How are you, Your Honor?  Just a point of

16  clarification, Your Honor.  You had said earlier that AMS was

17  consolidated in New Jersey under Judge Higbee.  In fact, we

18  are in two or three cases there, but we are consolidated in

19  Delaware before Judge Mary Johnson --

20        *CHIEF JUDGE GOODWIN:*  I stand corrected.

21        *MS. BINIS:*  -- and in Minnesota before Judge Ronald

22  Abrams, just so you know that.

23        *CHIEF JUDGE GOODWIN:*  Thank you.  Keeping track of

24  the state cases is going to require each of you, and not just

25  lead counsel, but each of you through your liaison counsel to

1    let me know what's going on in the state cases.

2        I didn't, you know, just get off the pickle boat.  I have

3    been doing this business of practicing law for a while, so I

4    know there are advantages to having two bites at the apple, one

5    in federal court, one in state court, and maybe three bites in

6    another state court.  I'm going to try to cut down the amount

7    of apple munching, insofar as I can without impinging upon

8    anybody's fundamental interests in a case.  All of the clients

9    deserve a reasonably speedy resolution.  Defendants,

10   plaintiffs, each deserve a reasonably speedy resolution.  The

11   size of the litigation and the number of courts that these kind

12   of cases are in should not slow things down.  In fact, it's

13   supposed to be -- you're supposed to get some kind of economies

14   at scale here and I'm hoping we can do that, because that's in

15   the best interests of each of your clients.

16       I really look forward to working with the counsel I have

17   appointed.  I look forward and encourage each lawyer to stay up

18   to date with this litigation.  Just because you're not on the

19   Plaintiffs' Steering Committee, or you're not on the Lead

20   Counsel Executive Committee, or whatever all the other names

21   were that I said, doesn't mean that you don't have an

22   obligation to stay abreast of the case at all times.  You can

23   get in dutch, you can get malpractice -- I didn't -- I hate to

24   say that word.  You can get malpractice claims filed against

25   you in these cases, because the individual lawyer remains

1   responsible.   And I can tell you, just so you know in advance,

2   that once you bring a case it is not easy in my court to get

3   out of it.   If your client doesn't have another lawyer, you're

4   going to find it difficult with hearings and so forth to get

5   out, so be careful what cases you bring.

6          Welcome to Charleston, and I hope you come back often.

7   I'll look forward to seeing many of you in the future.   Any

8   questions should go through the structure.   Let me make a

9   recommendation that you stay here for a few moments and talk

10  to the people I've appointed and let them address whatever

11  matters.   We won't get all of you together again.   That's not

12  going to likely happen.

13         I hope each of you got the 20 percent discount on motels

14  that I arranged.   *(Laughter.)*

15         Again, thank you very much.   Court is adjourned.

16         *(Proceeding adjourned at 10:02 a.m., April 13, 2012.)*

17

18  *CERTIFICATION:*

19         I, Teresa L. Harvey, Registered Diplomate Reporter, hereby
    certify that the foregoing is a correct transcript from the
20  record of proceedings in the matters of In re American Medical
    Systems, Inc., MDL No. 2325; In re Boston Scientific Corp.,
21  MDL No. 2326; and in re Ethicon, Inc., MDL No. 2327, as
    reported on April 13, 2012.

22

23  s/Teresa L. Harvey, RDR, CRR            April 23, 2012

24

25