1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
2                         AT CHARLESTON

3                    TRANSCRIPT OF PROCEEDINGS


4
      ----------------------------------------
5

6    IN RE:  C.R. BARD, INC., PELVIC REPAIR       MDL NO.
     SYSTEM PRODUCTS LIABILITY LITIGATION         2:10-MD-2187
7

8    ----------------------------------------

9    IN RE:  AMERICAN MEDICAL SYSTEMS, INC.,      MDL NO.
     PELVIC REPAIR SYSTEM PRODUCTS                2:12-MD-2325
10   LIABILITY LITIGATION

11   ----------------------------------------

12   IN RE:  BOSTON SCIENTIFIC CORPORATION        MDL NO.
     PELVIC REPAIR SYSTEM PRODUCTS                2:12-MD-2326
13   LIABILITY LITIGATION

14   ----------------------------------------

15   IN RE:  ETHICON INC., PELVIC REPAIR SYSTEM  MDL NO.
     PRODUCTS LIABILITY LITIGATION                2:12-MD-2327
16

17   ----------------------------------------

18   IN RE:  COLOPLAST CORP. PELVIC SUPPORT       MDL NO.
     SYSTEMS PRODUCTS LIABILITY LITIGATION        2:12-MD-2387
19

20   ----------------------------------------

21                    STATUS CONFERENCE

22                    December 6, 2012

23
        BEFORE THE HONORABLE **JOSEPH R. GOODWIN,** Chief Judge
24                            AND
        THE HONORABLE **MARY E. STANLEY,** Magistrate Judge
25

1                              **APPEARANCES**

2     **For the Plaintiffs:**

3

4     **MR. HENRY G. GARRARD, III**
      Blasingame, Burch, Garrard, Ashley, P.C.
5     P.O. Box 832
      Athens, GA  30603
6

7     **MR. CLAYTON A. CLARK**
      Clark, Love & Hutson
8     440 Louisiana, Suite 1600
      Houston, TX  77002
9

10    **MR. FRED THOMPSON, III**
      Motley Rice, LLC
11    28 Bridgeside Boulevard
      Mt. Pleasant, SC  29464
12

13    **MR. HARRY F. BELL, JR.**
      The Bell Law Firm, PLLC
14    P.O. Box 1723
      Charleston, WV  25326-1723
15

16    **MR. BRYAN F. AYLSTOCK**
      Aylstock, Witkin, Kreis & Overholtz, PLLC
17    17 East Main Street, Suite 200
      Pensacola, FL  32502
18

19    **MS. AIMEE H. WAGSTAFF**
      Andrus, Hood & Wagstaff, PC
20    1999 Broadway, Suite 4150
      Denver, CO  80202
21

22    **MS. AMY ESKIN**
      Hersh & Hersh
23    601 Van Ness Avenue, Suite 2080
      San Francisco, CA  94102-6388
24

25

<pre>
 1                         APPEARANCES

 2                         (Continued)

 3   For the Plaintiffs:

 4   MS. FIDELMA FITZPATRICK
     Motley Rice, LLC
 5   28 Bridgeside Blvd.
     Mt. Pleasant, SC  29464

 6

 7   MR. CARL N. FRANKOVITCH
     Frankovitch, Anetakis, Colantonio & Simon
 8   337 Penco Road
     Weirton, WV  26062

 9

10   MR. PAUL FARRELL, JR.
     Greene, Ketchum, Bailey, Walker, Farrell & Tweel
11   P.O. Box 2389
     Huntington, WV  25724-2389

12

13   MR. DEREK H. POTTS
     The Potts Law Firm, LLP
14   908 Broadway, 3rd Floor
     Kansas City, MO  64105

15

16   MS. RENEE BAGGETT
     Aylstock, Witkin, Kreis & Overholtz
17   Suite 200, 17 East Main Street
     Pensacola, FL  32502

18

19   MR. THOMAS P. CARTMELL
     Wagstaff & Cartmell, LLP
20   4740 Grand Avenue, Suite 300
     Kansas City, MO  64112

21

22   MR. RILEY BURNETT
     Law Offices of Riley L. Burnett, Jr.
23   Suite 1600
     440 Louisiana
24   Houston, TX  77002

25
</pre>

**APPEARANCES**

(Continued)

**For the Plaintiffs:**

**MR. ROBERT SALIM**
Law Offices of Robert L. Salim
1901 Texas Street
Natchitoches, LA   71457

**MR. MARK MUELLER**
Mueller Law
404 West 7th Street
Austin, TX   78701

**For the Defendants:**

**MR. MICHAEL BONASSO**
Flaherty, Sensabaugh, Bonasso, PLLC
P.O. Box 3843
Charleston, WV   25338-3843

**MR. ROBERT T. ADAMS**
Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas City, MO   64108-2613

**MR. DAVID B. THOMAS**
Guthrie & Thomas, PLLC
500 Lee Street, East
Suite 800, P.O. Box 3394
Charleston, WV   25333-3394

**MS. CHRISTY D. JONES**
Butler Snow
P.O. Box 6010
Ridgeland, MS   39158

1 **APPEARANCES**

2 (Continued)

3 **For the Defendants:**

4 **MR. MICHAEL J. FARRELL**
Farrell, White & Legg, PLLC
5 P.O. Box 6457
Huntington, WV  25772-6457
6

7 **MS. BARBARA R. BINIS**
Reed Smith, LLP
8 2500 One Liberty Place
1650 Market Street
9 Philadelphia, PA  19103

10

11 **MR. RICHARD B. NORTH, JR.**
Nelson, Mullins, Riley & Scarborough, LLP
12 201 17th Street, NW Suite 1700
Atlanta, GA  30363
13

14 **MS. DEBORAH A. MOELLER**
Shook, Hardy & Bacon, LLP
15 2555 Grand Boulevard
Kansas City, MO  64108
16

17 **MR. MARC E. WILLIAMS**
Nelson, Mullins, Riley & Scarborough, LLP
18 949 Third Avenue, Suite 200
Huntington, WV  25701
19

20 **MR. PAUL COSGROVE**
Ulmer & Berne, LLP
21 600 Vine Street, Suite 2800
Cincinnati, OH  45202
22

23

**MR. JON STRONGMAN**
24 Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
25 Kansas City, MO  64108

1                          **APPEARANCES**

2                              (Continued)

3    **For the Defendants:**

4    **MS. LANA K. VARNEY**
     Fulbright & Jaworski, LLP
5    98 San Jacinto Boulevard
     Suite 1100
6    Austin, TX  78701-4255

7

8    **MR. RONN B. KREPS**
     Fulbright & Jaworski, LLP
9    2100 IDS Center
     80 South Eighth Street
10   Minneapolis, MN  55402-2112

11

12   **MR. DUSTIN B. RAWLIN**
     Tucker Ellis
13   925 Euclid Avenue
     Suite 1150
14   Cleveland, OH  44115

15

16

17

18

19

20   Court Reporter:              Lisa A. Cook, RPR-RMR-CRR-FCRR
                                  (304)347-3198
21                               lisa_cook@wvsd.uscourts.gov

22

23   Proceedings recorded by mechanical stenography; transcript
     produced by computer.
24

25

1              P R O C E E D I N G S

2         CHIEF JUDGE GOODWIN:  Good afternoon.  Everybody

3    check your cell phones.  Turn them off.

4         THE CLERK:  The matter before the Court is *In Re:*

5    *C.R. Bard, Inc., MDL Number 2187; In Re: American Medical*

6    *Systems, Inc., MDL Number 2325; In Re: Boston Scientific*

7    *Corporation, MDL Number 2326; In Re: Ethicon Inc., MDL*

8    *Number 2327; In Re: Coloplast Corporation, MDL Number 2387,*

9    *Pelvic Repair System Products Liability Litigation.*

10        CHIEF JUDGE GOODWIN:  Well, the first item on the

11   proposed agenda deals with proposals for additional trials

12   for AMS cases, J&J/Ethicon, and BSC, Boston Scientific.

13        On November 26th, 2012, the parties submitted position

14   papers in response to a PTO that I had entered that asked

15   that they identify their positions on when bellwether trials

16   should begin in 2013 in MDLs 22 -- 2325, 2326, and 2327.

17        It also asks for the size of the initial trial pool;

18   justification for that trial pool size; the make-up of the

19   trial pool, the percentage, for example, of SUI, POP, or

20   combination cases; fourth, whether they would like to make

21   oral presentations about those selections; and, finally,

22   whether the MDL trial pool cases -- which, which trial pool

23   cases should go first, second, third, fourth.

24        The defendants asked for time to submit a joint

25   proposal.

1    I've, I've considered what I've got before me now and

2    let me tell you what I think.  I appreciate the considerable

3    work that all the parties are doing.  I realize that I have

4    multiple MDLs going and they're all my children.  I do not

5    favor any of them.  They all will be treated equally and

6    fairly and move along together.

7    To that end, some of what I'm doing is to accomplish

8    that, to see that no one MDL is favored over the other.

9    Bard's got a big head start on the other MDLs, but that's

10   not to say that we can't make adjustments to Bard to allow

11   some other things to catch up.

12   Now, all of these things can run on parallel tracks

13   even -- except for the trials because I've only got one of

14   me.  So, the -- there's lots of lawyers, and I realize that

15   there are lawyers that have cross-cutting responsibilities.

16   And I respect and need those lawyers to perform their roles

17   in those cross-, on those cross-cutting issues.  So, I'll be

18   sensitive to that.

19   But I digress.  First, let me tell you that I want to

20   know if any of the parties want to make additional comments

21   right now about the trials.  Anything?

22   Mr. Garrard.

23   MR. GARRARD:  Your Honor, I think that in the

24   presentation we have made in writing, it sets out where we

25   are.  We'd be happy to respond to questions or concerns of

1   the Court.

2          CHIEF JUDGE GOODWIN:  All right.

3          MR. ADAMS:  On behalf of the defendants, Your

4   Honor, I would say that I think Ms. Binis's letter set out

5   our positions accurately.

6       The one thing that I would want to emphasize is that

7   all of the defendants are in agreement that whatever case is

8   tried first should be an SUI case and, again, for the

9   reasons stated in the letter.

10      We think it's really important, based upon the Court's

11  inventory, that an SUI case be tried first because it's

12  really reflective of the volume of cases that are before the

13  Court.

14         CHIEF JUDGE GOODWIN:  I think that's going to

15  happen because the Bard cases I'm going to try in the first

16  wave are all POP cases, are they not?

17         MR. GARRARD:  They, they are, Your Honor.

18         CHIEF JUDGE GOODWIN:  Yeah.

19      Anything else?

20      Well, let me just run through what I've tentatively

21  decided to do.  And by "tentatively" it means I've decided

22  it, but if there's some really good reason, I'm not rigid.

23  Well, I wouldn't go that far.

24      I, I first adopt the concept that the plaintiffs put

25  forward regarding the approach to trial pool size with some

1    substantial modifications of my own.  I'm going to set it up

2    as that three-step process.  And, and the reason I like it

3    is I'm not sure in Bard that there was sufficient

4    development and sufficient information to allow the

5    defendants to have what they needed.

6         So, I like this from my view of the circumstance, from

7    the defendants' perspective, and apparently the plaintiffs

8    like it because they proposed it.  But there will be a

9    three-step process wherein the parties are responsible for

10   determining the selections for the initial pool in each MDL.

11        Now, the parties, I hope, will submit an agreed order

12   describing this process in greater detail based on your very

13   careful notes that you'll now be taking.  I'll set it out

14   briefly.

15        In each MDL, the initial pool will be comprised of 80

16   cases, rather than 100 as the plaintiff suggests, with the

17   plaintiffs choosing 40 cases, the defendants choosing 40.

18        This group of 80 will complete the plaintiffs' profile

19   form only.  And the final date for filing of eligible cases

20   for this process will be cases filed on or before January 1,

21   2013.

22        The discovery pool will be made up of 30 cases rather

23   than 40 cases with the plaintiffs choosing 15 and the

24   defendants choosing 15.  So, you're going to cut it from 80

25   to 30.

1      These cases will then proceed through limited discovery

2  including what I think you want in fact depositions,

3  treating physician depositions, implanting and, where

4  applicable, explanting physician depositions, and

5  depositions of sales reps.  There may be something else, but

6  I'm not sure.  That sounds pretty close to what I think you

7  need.  I'll listen to you.  If you can't agree, Judge

8  Stanley and I will listen to you.

9      The trial pool will then be 16.  Plaintiffs choose

10  eight.  Defendants choose eight.  All of these cases will be

11  worked up for trial.

12      I will choose five bellwether cases from that, from

13  those 16 in each MDL.  I will hear oral presentations in

14  each MDL about those proposed trial pool selections because

15  I realize by that point, a balanced approach to selection

16  will be very important.  So, I will hear from the parties on

17  that.

18      Now, I hope that I'm not making this too complicated.

19  And you're allowed to groan at this next part.

20      Bellwether trials will begin in the next -- in the, in

21  the three newer MDLs beginning on December 3rd, 2013.  The

22  plaintiffs sought a date in September.  The defendants

23  wanted February.  December 3rd.

24      I have -- and I advised Ms. Binis and Mr. Garrard this

25  morning, or Ms. Moeller this morning that I have decided to

1    move the second group of the Bard trials for now, and

2    they're going to go into rotation.  So that the first trial

3    will be from an MDL -- and we'll talk a little more about

4    which one will go first -- on December 3rd.  Then the second

5    trial will immediately follow that.  It will be from the

6    second MDL, and then the third MDL trial, and then a Bard

7    second tier trial, and then back to the beginning and one,

8    two, three, four again until we all get sick of it and go

9    home.

10        I've decided to try an AMS case first, assuming that an

11   AMS case is submitted that's representative and appropriate.

12   And as to that December 3rd case, I think we've got to have

13   at least two cases ready to go on that date.  I don't want

14   one to go away and then we won't have another one ready.

15        I'll try them in sequence, as I've suggested.  But by

16   then, I have -- hope to have a better idea of how long I'm

17   going to allow these trials to take.  It's up to the

18   parties -- and you-all have been doing a terrific job.  It's

19   up to you to continue with what you're doing.

20        You will make up the initial pool, the discovery pool,

21   the trial pool.  And I hope you'll choose representative

22   cases that allow me and, most importantly, you and your

23   clients to draw conclusions as a result of these bellwether

24   trials.

25        I will not, even though the plaintiffs very much want

1    me to, choose multi-manufacturer, multi-product cases for

2    bellwether trials.  I -- for a number of reasons, which I'm

3    not going to elaborate on, I find those to be problematic.

4    Bellwether cases are intended to allow the sophisticated

5    lawyers in this room to draw conclusions that lead to

6    settlement or to further decision-making.

7         I recognize, and if I didn't recognize, Mr. Garrard

8    told me in a meeting we had with defense on some other

9    matter this morning, that I'm going to hear about other

10   products in any single product case I do anyway.  But be

11   that as it may, for right now we're not going to try two

12   products at once.

13             MR. GARRARD:  Your Honor, may I ask a quick

14   question?

15             CHIEF JUDGE GOODWIN:  Yes, sir.

16             MR. GARRARD:  I understand the Court saying they

17   won't -- you won't try multi-manufacturer cases.  But in

18   terms of multi-product, many, many, many cases have more

19   than one product of a single defendant.  The Court's not

20   saying, are you, that that would not be a candidate for

21   bellwether if there is both -- well, for example, a prolapse

22   product and an SUI product from the same defendant.

23             CHIEF JUDGE GOODWIN:  I'm going to let the defense

24   respond and then I'll answer you, although I think I know

25   what I'm going to say.

1     Who wants to answer that?

2           MR. ADAMS:  I will, Your Honor.

3     I think that they, they definitely have to be single

4     product cases.  Again, you know, it's part of the whole

5     bellwether process that we're trying to pick cases that are

6     going to be predictive of the outcome for future cases.  If

7     there are multiple cases, that doesn't do it.  So, I think

8     it has to be confined to a single product case.

9           CHIEF JUDGE GOODWIN:  I've spent a lot of -- this

10    is where I go off the reservation.

11    That's right, you get to close.  Go ahead.

12          MR. GARRARD:  Well, the only thing I'm going to

13    say, Judge, is that when you look at the inventories of

14    cases, the majority of the cases are not single product

15    cases.

16    The, the SUI plus the POP are in lots and lots of

17    cases.  And there will be some SUI cases that don't have POP

18    in them.  But if we are restricted to POP only cases, a

19    significant number of the prolapse cases would not be

20    candidates.  And I don't think that would be representative

21    to the Court.

22          CHIEF JUDGE GOODWIN:  Might as well.

23          MS. BINIS:  Your Honor, in our inventory,

24    60 percent of cases are SUI only cases.  About 20 percent of

25    the inventory is POP cases.  And then the remaining -- it's

1    a little less than 20 percent, so my numbers might not be

2    exactly right -- are combination cases.  But the --

3           CHIEF JUDGE GOODWIN:  Are they combination cases

4    from the same manufacturer?

5           MS. BINIS:  That's -- I'm talking about only AMS

6    cases.  I'm not talking about multi-manufacturer cases.

7           CHIEF JUDGE GOODWIN:  So, 80 percent are not those

8    kind.

9           MS. BINIS:  That's correct.  And, and the whole

10   idea of trying an SUI case is because we believe that the

11   SUI trial is a very different trial.  And if you make a

12   combination bellwether, that confuses the whole SUI issue.

13       So, for us, it would be very important that the SUI

14   cases be single-product cases.

15          CHIEF JUDGE GOODWIN:  I'm going to hold at this

16   time that we're going to stick to single product, single

17   manufacturer.  But I recognize this is December, 2012, and

18   the trial is December, 2013.

19       But in terms of your planning, your selection of cases,

20   your development for trial, that's going to be the order of

21   the Court.  Something may happen.  There may be agreements

22   that occur.  I don't know.

23       The whole purpose of having bellwether trials is to

24   inform you and your clients so that you can better know what

25   you're doing.  It's not going to help me a whole lot.  I've

1   thought of focus groups and mock trials and I've toyed with

2   all those things.  And I'm not ruling out any of, any

3   innovative tricks absolutely.

4        But my general view is if you have skin in the game and

5   it's real and you know what that relates to, that is, how

6   much money is a red car/blue car case worth where I got

7   rear-ended and I've got a myofascial ligamentous trial --

8   you know, back when people used to actually try cases, you

9   could say, well, that's a three-thousand-dollar case.  And

10  you knew it because they were trying them all the time in

11  the courthouse.

12       Now we have bellwether trials not only because of the

13  multiplicity of actions that we have to try in this kind of

14  litigation, but because nobody else tries cases and we don't

15  have anything to look at.

16       I will give you bellwether cases that have 12 products

17  if necessary, although someone said this morning if you do

18  that, there's malpractice clearly involved.  But we'll,

19  we'll get there.  We'll get there.

20       I will try all these cases if I can breathe.  And I

21  will -- and I should tell you this now.  I will follow these

22  cases to the end of the earth as long as I'm on the bench.

23  I will ask for the permission of the Chief Judge of this

24  circuit and of the circuit where they're remanded to, if

25  there are and there's no settlement, to follow the case.

1  And I will be there with you even unto always until these

2  cases are over.

3      I may take a while, but I learned the lesson from

4  private practice and from observation from asbestos, Mr.

5  Garrard, that if you don't keep a handle on cases, they fall

6  into a black hole.  These cases are not going -- that's not

7  going to happen.  So, anyway, we're going to do that.

8      So, what I'm trying to lay out now is how we're going

9  to pick the cases and how we're going to try them.  That's

10  the outline.  I'm not saying we'll never try a two-product

11  case as a bellwether case.  I'm not saying we might not slip

12  it in sometime.  I don't know that yet.  Right now, no.

13  Right now, no.

14      Let me move -- what -- let me ask you what you want to

15  do in terms of submitting a joint proposed scheduling order.

16  Can you -- based on everything I've told you, how soon do

17  you think you could accomplish that?

18          MR. GARRARD:  Your Honor, we would -- from the

19  plaintiffs' side, we would like to be able to do it within

20  three weeks.

21          CHIEF JUDGE GOODWIN:  Can you-all do that, Mr.

22  Adams?

23          MR. ADAMS:  How about 30 days, Your Honor?

24          CHIEF JUDGE GOODWIN:  Well, just remember you're

25  always just shoving it back, and then you're telling me you

1    don't have enough time because you wanted more time on the

2    other end.

3              MR. GARRARD:  I started to say two, Judge.

4              CHIEF JUDGE GOODWIN:   Huh?

5              MR. GARRARD:  I started to say two weeks.

6              MR. ADAMS:  Three is fine.

7              CHIEF JUDGE GOODWIN:  Three's fine.  Thank you,

8    Mr. Adams.

9         I will ask that in that scheduling order you allow for

10   the completion of the *Daubert* motions first, followed by the

11   dispositive motions, and you provide me a decent amount of

12   time to deal with these motions.

13        I realize that with the short amount of time, all these

14   deadlines are short.  But my law clerks are really smart and

15   I'm sure the next year's clerks, based on the interviews,

16   will be smart.  And Kate is very good at cracking the whip.

17   But I'd still like a little time so that I can give you good

18   rulings.

19        While I'm talking about that and slightly out of order,

20   and I'll try to remember this, there are motions pending

21   that I'm aware of, remand motions and so forth.  I will get,

22   I will get them done.  I have not been in a hurry as to some

23   of them deliberately.  I'm sorry.  I just haven't been.  But

24   I will do them.

25        Let's go to the plaintiff profile form issues.  Those

1    were due on the 3rd I think.  What's the status of those?  I

2    want to know from the defendants.  Did you get them?

3        Ms. Jones.

4            MS. JONES:  Your Honor, we have gotten a

5    substantial number of them.  My recollection is that we've

6    gotten 1300 in the Ethicon.  The vast majority of those we

7    got on the 3rd.  We have 185, roughly, requests for

8    extensions that have been given.

9        And what we did with those, Your Honor, frankly, is

10   that we have told the plaintiffs that while we would

11   normally agree, that we were anticipating that Your Honor

12   might do something kind of like you've done and we might be

13   on a tight schedule, and that we would -- we were willing to

14   give them 30 days provided we got a reciprocal amount to the

15   extent that we needed to, but that we needed those fact

16   sheets in.

17       The one issue that -- I speak only for Ethicon and Mr.

18   Thomas will speak more in detail -- is that we have -- out

19   of the ones that we, that we have and have looked at, one

20   out of five of those fact sheets is deficient.

21           MR. THOMAS:  Christy, that's backwards.

22   Eighty percent of them are deficient.  Only 20 percent are

23   good.

24           CHIEF JUDGE GOODWIN:  Well, that's a very big

25   problem.

1    MS. JONES:  And it's a problem.  And, and the way

2 we have dealt with it this morning thus far is that, that in

3 our -- in the original order we had ten days to get

4 deficiency letters out.

5    CHIEF JUDGE GOODWIN:  Uh-huh.

6    MS. JONES:  Clearly, it takes much more time to

7 process a deficiency if you've got problems with it.

8    So, we had talked with Mr. Aylstock this morning and we

9 had an agreement, with the Court's permission, that we would

10 at least have until -- rather than the ten days to get the

11 deficiency letters out, assuming that, that the, that the

12 rate of deficiencies continues at the same pace, that we

13 would have until January the 15th to get all of those out.

14    We, we are moving on an every-day basis processing them

15 and sending them out immediately.  But ten days, if they are

16 at that, if they continue to be deficient at the same rate

17 is --

18    CHIEF JUDGE GOODWIN:  Let me hear from the other

19 people about how, what their percentage of deficiencies are.

20    Ms. Binis.

21    MS. BINIS:  Your Honor, as of the 3rd, we've got

22 900 PPFs, but many of those, again, are deficient, or we're

23 estimating half.  We have 130 requests for extensions.  And,

24 like Ms. Jones, we said to plaintiffs, "We're happy to give

25 you 30 days if we get a reciprocal 30 days."  And we did not

1    get 800 PPFs.

2            CHIEF JUDGE GOODWIN:  You're missing 800.

3            MS. BINIS:  We're missing 800.

4            CHIEF JUDGE GOODWIN:  As you remember, the order

5    allows me to dismiss those cases.  Okay.

6            MR. ADAMS:  Boston Scientific's substantially the

7    same.  We're missing about 600.

8            CHIEF JUDGE GOODWIN:  All right.

9            MR. ADAMS:  And as far as deficiencies, we haven't

10   had time to give you that number, but --

11           CHIEF JUDGE GOODWIN:  As far as I'm concerned, the

12   train can't move out of the station until we put fuel in

13   the, in the coal box.  Boy, am I old.  That's number one

14   priority for the plaintiffs and the plaintiffs' liaison

15   counsel to fix.

16           MR. GARRARD:  Your Honor, we are, we are working

17   at that.

18       In terms of the deficiencies, though, the Court needs

19   to know that -- and I'll use my office as an example.  We

20   haven't gotten a lot of deficiency letters from my office,

21   but the majority of the deficiency letters we have gotten

22   are because somebody's maiden name was not put on the form

23   or somebody didn't initial a page of the PFS or you didn't

24   put the Social Security number here while we've got it over

25   here in one of the medical releases, but you didn't put it

1   on the form or you didn't put "NA" in a portion of the form

2   where it would be NA.  That's the type of deficiencies we

3   are getting.  And one of the things that --

4        CHIEF JUDGE GOODWIN:  Well, I want to concentrate

5   on substantial deficiencies.  And I will take into account

6   when motions to dismiss for late and deficient filings are

7   filed whether or not the deficiency was a substantive

8   matter.

9        MR. GARRARD:  Well, that's kind of my point,

10  Judge.  But there are a couple issues that I would like to

11  raise with the Court.  And this is -- I take responsibility

12  for this.

13      When we worked it out with the PPF form, it has a

14  provision requiring that the signature of the plaintiff be

15  notarized.  It also has a provision that the plaintiff has

16  to initial each page.

17      And in talking to lawyers throughout the country, it is

18  a real problem getting folks to get signatures notarized.

19  It becomes a real logistical problem.

20      It also becomes a problem when you go through these

21  forms with your clients -- and most of that's done by

22  telephone -- that you have to make changes.  Well, if you've

23  already sent a profile form to them and you make changes,

24  then you've got to send it all back again to have it re-done

25  and re-initialed, et cetera.

1      The Federal Rules -- and it's in there and I, and I

2  didn't object to it.  But the Federal Rules don't require in

3  interrogatory answers that you notarize the plaintiff's

4  signature.

5          CHIEF JUDGE GOODWIN:  Let, let me make this

6  simple.

7          MR. GARRARD:  Yes, sir.

8          CHIEF JUDGE GOODWIN:  I'm waiving the notary

9  requirement.  I will hold each and every lawyer responsible

10  who sends one of these things in under Rule 11 for the good

11  faith truthfulness and accuracy of the matters contained on

12  the sheet.

13          MR. GARRARD:  Could, could we have the same relief

14  from the initialing, Your Honor?

15          CHIEF JUDGE GOODWIN:  Sure, sure.

16          MR. GARRARD:  And, and we are working at trying

17  to --

18          CHIEF JUDGE GOODWIN:  I think Rule 11 is under

19  used.  And I don't mean that in an *in terrorem* fashion.  I

20  just think it's under used.  And I, I've got sense enough to

21  know what's serious and what's not serious.  But I don't

22  want Micky Mouse as a plaintiff without some lawyer standing

23  behind it to say, "On my oath as a lawyer and on my license

24  which I treasure, this is a good faith offering."

25          MR. GARRARD:  I understand that, Your Honor.

1          CHIEF JUDGE GOODWIN:  And I like the reciprocal

2     idea that you've got going informally.  That's fine.  But

3     we've got to get it moving.  We'll never meet these

4     deadlines that you-all have proposed, which I've come down

5     in the middle of, unless we get it moving.

6          MR. GARRARD:  Yes, sir.

7          CHIEF JUDGE GOODWIN:  Now, in addition, because

8     lawyers are busy and some of them haven't learned to use

9     computers and because they can't follow directions or they

10    would have done something more useful than what all of us

11    are doing, we've had lawyers that have trouble filling out

12    profile sheets.  And, so, they call the Clerk's Office.  And

13    then they complain to us that liaison counsel won't return

14    their phone calls.

15         I am suggesting to liaison counsel -- where are

16    you-all?  I'm suggesting to liaison counsel that even if you

17    have to hire a paralegal to do it that you return the phone

18    calls of these people that you will have to be back in touch

19    with at some time in the future on more important matters.

20    And be sure to be able to answer their questions.

21         My Clerk's Office, I think you'll find, is very helpful

22    and they will try really hard to cooperate.  And they are

23    not complaining bitterly.  They're just telling me they're

24    getting a lot of questions.

25         MR. GARRARD:  We do too, Judge, --

1              CHIEF JUDGE GOODWIN:  I'm sure.

2              MR. GARRARD:  -- my office.  And we do respond to

3    them.

4              CHIEF JUDGE GOODWIN:  I ask that, as you've done,

5    that in these profile form issues that in terms of disputes

6    about them that you do it informally by letter.  If it comes

7    to a motion to dismiss, then it does and I'll deal with it

8    then.  But I don't want to referee any disputes short of a

9    motion to dismiss.  And I assume I speak for Judge Stanley

10   on that.

11       I have about six motions to remand pending.  I'm

12   working on two of them.  The others I think were filed in

13   maybe September.  We'll get to them.

14       One of the, one of the things that 18 years on the

15   district bench has taught me is that I've written an awful

16   lot of remand orders, and I live in fear that I will write a

17   remand order that directly contradicts a remand order I've

18   issued in the past.

19       So, as a consequence, the longer I go, the longer it

20   takes to decide remand motions.  And it seems to me -- and,

21   again, this is probably unfair, but I hope you'll take it in

22   a good spirit.  And I hope if you report it to any law

23   professors, they take it in good spirits.  It seems to me

24   they're not teaching jurisdiction and procedure very well in

25   law schools anymore.  But maybe it's just me.

1    But I'll get, get to those because I'm sure that some

2    of you have had calls about them from the lawyers who have

3    them pending and I will deal with them.

4    Mr. Garrard has indicated on the deposition protocol

5    that the parties are very close on that issue, but I'll let

6    Judge Stanley deal with that topic.

7        MR. GARRARD:  Your Honor, we have orders that we

8    have agreed upon with Boston Scientific, with American

9    Medical Systems, and with Ethicon.  The Ethicon one is

10   slightly different.  That was explained to Your Honor

11   earlier today.  And we will have those submitted to the

12   Court within the next couple of days.

13       MAGISTRATE JUDGE STANLEY:  Okay.  Thank you.

14       CHIEF JUDGE GOODWIN:  Next, I had a stay in

15   Pre-Trial Order Number 1.  Some of the non-MDL defendants –

16   Caldera comes to mind – have asked me if that stay is going

17   to stay, stay's going to stay.  There's a song like that.

18   Unless I hear objections from all of you, it seems to

19   me to be most convenient at this time without setting a

20   deadline to leave the stay in place that allows those folks

21   not to answer or plead in defense.

22   Hearing no objection, so ordered.

23       MS. WAGSTAFF:  Your Honor, --

24       CHIEF JUDGE GOODWIN:  Somebody had something to

25   say.

1          MS. WAGSTAFF:  Yes.

2          CHIEF JUDGE GOODWIN:  I'm sorry.

3          MS. WAGSTAFF:  That's all right.  This is jumping

4    forward a little bit to the motion to amend in Boston

5    Scientific.  But I would request leave from that stay to

6    conduct some jurisdictional discovery on Proxy Biomedical

7    and it's agreement between the parties.

8          CHIEF JUDGE GOODWIN:  I don't -- we'll get to

9    that.

10          MS. WAGSTAFF:  We'll get to that later?

11          CHIEF JUDGE GOODWIN:  Yeah.

12          MS. WAGSTAFF:  Okay.

13          CHIEF JUDGE GOODWIN:  I've entered a severance

14    order in Ethicon.  And severance orders in AMS and Coloplast

15    are, as I understand it, in the process.  I have, I have not

16    received a severance order in Bard or Boston Scientific.  I

17    mentioned that to Mr. Garrard this morning as to Bard.  When

18    can I expect that?

19          MR. GARRARD:  I think we can have that --

20          CHIEF JUDGE GOODWIN:  How about Boston Scientific?

21          MR. STRONGMAN:  Jon Strongman.  We have a

22    severance order agreed to that I thought was, was done.  So,

23    we can, we can get it.

24          CHIEF JUDGE GOODWIN:  Okay.  Just be sure I get

25    it, would you.

1          MR. STRONGMAN:  Yes.

2          CHIEF JUDGE GOODWIN:  Now, let's talk about the

3     amending of the short form complaints to add -- wait a

4     minute.

5          Judge Stanley, there's, there's still parties filing

6     multi-party complaints primarily in transferred cases.

7          Watch for those.  Leadership, if you'd watch for those

8     so we can monitor those and submit severance orders.

9          MR. AYLSTOCK:  Your Honor, on the severance order

10     issue, it was brought to my attention after we worked with

11     our counterparts at Ethicon and submitted ours to Ms. Fife

12     that some of those actions that are coming to this court are

13     class actions that might have some subclasses.  And, so, I

14     guess I just want to bring that to your attention.

15          CHIEF JUDGE GOODWIN:  Do you want to call them up

16     and give them an education on class actions?

17          MR. AYLSTOCK:  Yes, Your Honor, we can do that.

18          CHIEF JUDGE GOODWIN:  All right.

19          The plaintiffs wish to amend the short form complaints

20     to add Coloplast and submit a master complaint and plaintiff

21     profile form in Coloplast.

22          It may be easier for us to make changes in the existing

23     short form complaints but require Coloplast to submit their

24     short form complaint.  What do you think?

25          MR. GARRARD:  As to the, the existing MDLs, Your

1    Honor, Bard, Boston Scientific, AMS, and Ethicon, it seems

2    to me the simplest thing is if we have the Court's

3    permission to add Coloplast to the short form complaint.

4        As to the other, I thought that Coloplast and the

5    plaintiffs had reached some agreements as to master

6    complaints, short form complaints and I would let them speak

7    to that.

8            MR. SALIM:  Yes, Your Honor.  We filed yesterday a

9    joint master complaint and a short form complaint.

10           CHIEF JUDGE GOODWIN:  We haven't got it yet.  If

11   you filed it yesterday, it hasn't hit the docket.  But Mrs.

12   Fife has been quite busy getting ready for this hearing.

13   So --

14           MR. SALIM:  Okay.  We have a receipt that it was

15   received, Your Honor.  So, we'll follow up.

16           CHIEF JUDGE GOODWIN:  Kate will be in touch with

17   you.  She thinks it will be easier if we do the short form

18   complaint so that we -- so that it doesn't get messed up.

19   She didn't use the word, she didn't use the word "messed

20   up."

21           MR. GARRARD:  I know what she's talking about

22   because there have been some technical issues that we have

23   had to deal with.  And I understand what she's saying.

24           CHIEF JUDGE GOODWIN:  All right.

25       We need to hear from Ms. Varney about the agreed master

1    complaint in Coloplast.

2         MS. VARNEY:  I agree.  Your Honor, we have reached

3    an agreement on the master complaint.  And we appreciate the

4    Court's efforts in trying to short-circuit and make sure

5    it's done correctly in amending the master complaints in the

6    other MDLs.

7         CHIEF JUDGE GOODWIN:  Thank you very much.

8         MS. VARNEY:  Thank you.

9         CHIEF JUDGE GOODWIN:  Okay.  And you will now tell

10   me about early case assessment?

11        MS. VARNEY:  I certainly could, Your Honor.  We're

12   moving forward.  We've been working well with the

13   plaintiffs' counsel in terms of acquiring their medical

14   records so that we can begin the process of assessing them.

15        CHIEF JUDGE GOODWIN:  Have we covered all the

16   issues on Agenda Item 2(a) as far as you're concerned?

17        MS. VARNEY:  Yes, Your Honor.

18        CHIEF JUDGE GOODWIN:  And 2(b)?

19        MS. VARNEY:  Yes, Your Honor.

20        MAGISTRATE JUDGE STANLEY:  How fast do you think

21   you'll be moving along?

22        MS. VARNEY:  With great consistency and

23   forthrightness.

24        CHIEF JUDGE GOODWIN:  Yeah.  We gave you 60 days

25   and we're past that.  All right.  Thank you.

1          MS. VARNEY:  Thank you, Your Honor.

2          CHIEF JUDGE GOODWIN:  Number 3 is in the AMS.

3          MR. GARRARD:  I think we dealt with --

4          CHIEF JUDGE GOODWIN:  I think we dealt with that

5    this morning.

6          MR. GARRARD:  Yes, sir.

7          CHIEF JUDGE GOODWIN:  All right.  And --

8          MAGISTRATE JUDGE STANLEY:  We have --

9          CHIEF JUDGE GOODWIN:  Have you dealt with this or

10   do you want to deal with that after?

11         MAGISTRATE JUDGE STANLEY:  I have received a

12   letter from Ms. Binis, but you omitted the exhibits.  There

13   were no exhibits attached to it.  And I need to know what

14   the plaintiffs want to do about responding to this.

15         MS. BINIS:  I apologize for the omission, Your

16   Honor.  I was out of town.  I will send that to you.  I have

17   brought with me today my partner from Los Angeles who is in

18   charge of all the discovery issues in our litigation.  And

19   if you have any questions, she'd be happy to respond or

20   answer what our position is.

21         MAGISTRATE JUDGE STANLEY:  Well, let me hear from

22   Ms. Fitzpatrick.

23         MS. FITZPATRICK:  Your Honor, we had an

24   opportunity to meet with AMS this morning to try to work

25   through some of these issues.  We got the letter yesterday

1    afternoon, so we haven't been able to get the whole way

2    through.

3        We've agreed that we are going to meet and confer in

4    the middle to end of next week to see how many of these

5    issues we can agree on and what we can do about the timing

6    of the production.

7        So, I think that for right now there's no need for the

8    Court to do anything while we work through this process.

9            MAGISTRATE JUDGE STANLEY:  Excellent.  I'll be

10   available when you just can't -- get stuck.

11           MS. FITZPATRICK:  Thank you, Your Honor.

12           CHIEF JUDGE GOODWIN:  There's a motion to amend

13   the master long form complaint in Boston Scientific.

14   Whose -- who will report on that?

15           MS. WAGSTAFF:  Your Honor, Amy Wagstaff.  The

16   parties have agreed to conduct some jurisdictional discovery

17   with respect to Proxy Biomedical with the Court's

18   permission.  And, therefore, we don't seek Court assistance

19   at this time.

20           CHIEF JUDGE GOODWIN:  How about 45 days?

21           MS. WAGSTAFF:  That sounds great.

22           MR. GARRARD:  Your Honor, may I, may I address

23   that?

24           CHIEF JUDGE GOODWIN:  Huh?

25           MR. GARRARD:  May I address that?

1          CHIEF JUDGE GOODWIN:  Yes.

2          MR. GARRARD:  Part of the issue there -- and

3   counsel for Proxy and I have talked about it yesterday and

4   today -- is that there is a jurisdictional motion that has

5   been filed in one of my cases which was originally filed in

6   Georgia and is in this court.

7      We have agreed to do some limited jurisdictional

8   discovery.  That plays into the issue of putting off ruling

9   on the motion because that's going to have some impact

10  potentially on that.

11         CHIEF JUDGE GOODWIN:  Let me just go over a few

12  things about this and see if I can be of some help.

13     I find it almost impossible to believe that there's no

14  Federal Court in the United States that does not have

15  personal jurisdiction over Proxy.  I'm sure there is one.

16  And I'm sure Proxy has at some time been sued in this

17  country.  Is that a fair assumption?

18         MS. WAGSTAFF:  I would assume, but counsel for

19  Proxy is here.

20         CHIEF JUDGE GOODWIN:  If so, where?  And was there

21  a jurisdictional finding?  I suspect --

22         MAGISTRATE JUDGE STANLEY:  Maybe Proxy's counsel

23  can tell us.

24         CHIEF JUDGE GOODWIN:  Well, maybe I should talk to

25  Proxy's counsel.

1          MR. COSGROVE:  Your Honor, P.J. Cosgrove for --

2     specially appearing for Proxy.

3          CHIEF JUDGE GOODWIN:  You were thinking you were

4     going to duck this, weren't you?

5          MR. COSGROVE:  I tried as hard as I could.  I am

6     actually not aware of any other suits against Proxy

7     Biomedical Limited, the Irish company.

8          CHIEF JUDGE GOODWIN:  No, no, no, by anybody

9     that's sued them in the United States of America ever.

10         MR. COSGROVE:  As I sit here, I'm not aware of any

11    other litigation.

12         CHIEF JUDGE GOODWIN:  I'm sure somebody has.  If

13    personal jurisdiction, let's say, were found in

14    Massachusetts or Minnesota, for example, then a plaintiff

15    could file in their home district.  Then it would go to the

16    MDL panel.  Then it would end up back here.

17        These things are meant to make it -- make the

18    processing of these matters more efficient.  I don't see any

19    reason to get all hung up on it.  Let's find out.

20        If there is such a state and if there is jurisdiction

21    in the United States, why is it in your interest for me to

22    dismiss -- and I understand your arguments on it.  I'm just

23    saying, why is it in your interest -- and you don't have to

24    answer this, this could even be rhetorical -- to have me

25    dismiss a directly filed case only to have it filed

1    somewhere else where there is personal jurisdiction and then

2    have it returned here?

3            MR. COSGROVE:  Your Honor, to begin with, we do

4    not disagree with your, what I'll characterize as your

5    assessment of this as a forum-by-forum analysis.

6        The problem is in the context of a mass tort, we're

7    dealing with a precedent setting situation and the potential

8    creation of a situation whereby the checking of a box, you

9    know, we could be subjecting ourselves to, to nationwide

10   jurisdiction.  And --

11           CHIEF JUDGE GOODWIN:  I don't, I don't see it that

12   way.  But you certainly have the right, your company does,

13   if they want to, to go through that process and have the

14   suits filed wherever they can be filed, and then they'll be

15   transferred here.  But I will not look kindly on it.  Could

16   you tell them that?

17           MR. COSGROVE:  I will relay that message.  And Mr.

18   Garrard and his colleagues and I have conferred about it and

19   that's where we ended up with in regards to this.  The hope

20   is and the intention is that this limited jurisdictional

21   discovery can inform everyone's position.

22           CHIEF JUDGE GOODWIN:  Okay.  Do 45 days suit you

23   then?

24           MR. COSGROVE:  Sixty would be better, Your Honor.

25           CHIEF JUDGE GOODWIN:  You know, because you've

1    been very polite in the face of what wasn't a very nice

2    attack on your company and your general demeanor and all

3    kinds of things, let's make it 50.

4              MR. COSGROVE:  Thank you, Your Honor.

5              MR. GARRARD:  Your Honor, may, may we have until

6    two weeks thereafter to respond to that jurisdictional

7    motion?

8              CHIEF JUDGE GOODWIN:  I cannot even keep track of

9    the deadlines which you have to meet, Mr. Garrard.  But if

10   you say so, yes.

11             MR. GARRARD:  Thank you, Your Honor.

12             CHIEF JUDGE GOODWIN:  I'll give you two more

13   weeks.  Again, again, you are the plaintiff.  And every time

14   you ask for time, you're slowing the train down as it moves

15   down the track to a conclusion.  And I know you're well

16   aware of that.

17             MR. GARRARD:  I'm very well aware of that.

18             CHIEF JUDGE GOODWIN:  Having been on the defense

19   side, you've no doubt thrown cross ties across in front of

20   trains.

21             MR. GARRARD:  I don't want cross ties, Your Honor,

22   but I also don't want to lose the motion.  I don't think we

23   will --

24             CHIEF JUDGE GOODWIN:  All right.

25             MR. GARRARD:  -- but I want to be fair.

1           CHIEF JUDGE GOODWIN:  You have something else and

2    I'd like to hear it.

3           MS. WAGSTAFF:  Yes, Your Honor.

4       May I request that the parties file simultaneous

5    supplemental briefs on jurisdiction on our motion to amend

6    two weeks after the completion --

7           CHIEF JUDGE GOODWIN:  Yes.

8           MS. WAGSTAFF:  Okay.  Thank you.

9           CHIEF JUDGE GOODWIN:  But an agreement would be

10   even better.

11          MS. WAGSTAFF:  Excellent.  Thank you.

12          MR. GARRARD:  I can assure you that Mr. Cosgrove

13   and I will have some further discussions, Your Honor.

14          CHIEF JUDGE GOODWIN:  Okay.

15      Judge Stanley, the 30(b)(6) deposition update is yours.

16          MAGISTRATE JUDGE STANLEY:  It's my understanding

17   that there had been a dispute during the 30(b)(6) deposition

18   of Ethicon, and apparently it got resolved.

19          MS. JONES:  There really was not a dispute.  I

20   think this is just a carry-over from last, the last agenda

21   and so forth.  We have 30(b)(6) depositions scheduled for

22   plaintiffs and I don't think there's anything to be taken

23   care of on that.

24          MR. AYLSTOCK:  We, we were able to resolve the

25   dispute during the deposition.  We appreciate this Court's

1   willingness.  And it will be in the, in the Court's protocol

2   simply to be available.  But everything got worked out.  It

3   had to do with some notes that this 30(b)(6) witness had.

4       Additional 30(b)(6)s are being scheduled and we're

5   moving forward with all due haste on those, Your Honor.

6           MAGISTRATE JUDGE STANLEY:  Great.  And the

7   subpoena thing apparently is not ready for resolution yet.

8           MR. AYLSTOCK:  It's -- Your Honor, Bryan Aylstock.

9   AdvaMed is the trade group for the medical device

10  corporations and there is a subpoena issued and it's a

11  jurisdictional issue.  So, there are a couple of things that

12  we need to clear up.

13      But I do expect very shortly that there will be a

14  discovery dispute about the production of those documents,

15  but it's not ready for resolution yet.

16          MS. JONES:  And just so the Court is clear, that's

17  not a discovery dispute with Ethicon or J&J.  That's a third

18  party subpoena which we're not involved with.

19          MR. AYLSTOCK:  It was, it was served in the

20  Ethicon litigation in the Ethicon MDL on this third party,

21  although I think your medical affairs person spoke on behalf

22  of it.  So, they're all together, but we'll work that out.

23          MAGISTRATE JUDGE STANLEY:  All right.  I did

24  understand that it was AdvaMed that was objecting to the

25  subpoena.

1          MR. AYLSTOCK:  Yes, Your Honor, absolutely.

2          CHIEF JUDGE GOODWIN:  Let me speak to everybody

3    about State Court cases.

4       The next item on the agenda has to do with New Jersey

5    state update.

6       Judge Higbee attended the Federal Judges' MDL

7    conference and explained to me over a beverage that she had

8    not in the past had joint hearings on *Daubert* matters, but

9    that she was open to the idea.  I remember somebody saying

10   that she was adamantly opposed to that.  She is no longer

11   adamantly opposed to that.  Judge Kottmyer was there as

12   well.  Kottmyer?  Is that right?

13          MS. WAGSTAFF:  Kottmyer.

14          CHIEF JUDGE GOODWIN:  I believe that's her name.

15   Anyway, but there are -- and I mentioned this to Ms. Binis

16   and Mr. Garrard this morning I believe.  There are a number

17   of cases set for trial in 2013 across the country.  AMS has

18   a lot.  Somebody else has a good many.

19       To the extent that the lawyers involved in those cases

20   also have federal cases in this MDL, I would ask you to be

21   considerate of the MDL process.  And the defendants who are

22   defending those state cases, I would ask that you be

23   considerate of the MDL process.

24       Sovereign states with good judges may do as they

25   please, but they rarely are so lacking in business that they

1    want to proceed where there's a joint motion for delay.  I

2    would like to keep us all somewhat close together.

3         It will not be really helpful to have trials in eight

4    or ten state jurisdictions before we even get to bellwether

5    trials in this.  And I would, would like to know, and I will

6    find out, who has those state cases.  And maybe we could get

7    a report on those from those lawyers at the next status

8    conference.

9               MR. CLARK:  Your Honor, --

10              CHIEF JUDGE GOODWIN:  Yes.

11              MR. CLARK:  -- Clayton Clark.

12              CHIEF JUDGE GOODWIN:  Yes, sir.

13              MR. CLARK:  I probably have the majority or more

14   of the State Court cases than anyone else here.  So, I think

15   a report to you briefly might be in order at this time.

16        Where we have found that lawyers have filed State Court

17   cases, we've attempted to get with them and become involved

18   in the cases in a number of different situations or filed

19   them with them when they plan on going and filing the cases.

20        I thought what might be helpful is if we could gather a

21   list of judges in those various state courses, state cases,

22   get their phone numbers, their names, phone numbers, et

23   cetera, where if you chose to get with them -- I mean, for

24   instance, we just had a case that got set in October,

25   October of 2013, next year, with Ethicon in South Texas.

1   That judge, Judge Delgado, wanted to set it in September.

2   Ethicon argued for November.  We argued for October.  And

3   the Judge went and moved it out to October.

4       So, I think that Judge Delgado and these other judges

5   in St. Louis and elsewhere would probably be open to

6   discussing any of your concerns and possibly moving cases

7   around where it's appropriate.

8       CHIEF JUDGE GOODWIN:  I'll be happy to do that.

9   I've actually found state judges very receptive.  And I'm

10  anxious to be helpful to them.  I have in past MDLs gotten

11  on an airplane and gone to their state and sat with them on

12  joint hearings.  And I'm prepared to do that kind of thing

13  and I'll -- I would love to have that information.

14      MR. CLARK:  If we start out with a communication

15  with them, I think we'd probably know a lot better than just

16  a report from us.

17      CHIEF JUDGE GOODWIN:  That would be great.

18      MR. CLARK:  All right.

19      CHIEF JUDGE GOODWIN:  Have we -- we talked about

20  the Bard trials.  Is there anything more on that?

21      MR. GARRARD:  No, sir, I don't think so.

22      CHIEF JUDGE GOODWIN:  The next status conference

23  is January 10th at 1:00.

24      MR. GARRARD:  Yes, sir.

25      CHIEF JUDGE GOODWIN:  Anything further to come

1    before the Court?

2              MR. GARRARD:  Your Honor, --

3              CHIEF JUDGE GOODWIN:  Mr. Garrard.

4              MR. GARRARD:  -- as the plaintiffs' lawyers, and

5    desiring to move matters as rapidly as we can, we've got

6    some ideas of potentially some innovative approaches.  Would

7    the Court be receptive to that perhaps being on the agenda

8    at the next hearing and hearing from us as to some

9    innovative ways that we might work together with the Court

10   towards moving cases along that perhaps have some approaches

11   in addition to or other than simply full-blown jury trials?

12             CHIEF JUDGE GOODWIN:  Yes.  We talked about that

13   briefly in the meeting this morning with a couple of the

14   defendants.  Yeah, I'm always interested in it, but

15   everything short of a trial in the case is only as helpful

16   as the enthusiasm of both parties for the process.

17        That's why you can go back for 18 years that I've been

18   on the bench and you will never find that I ordered

19   mediation.  If the parties want to mediate, they should

20   mediate.  If they want to settle, they should settle if they

21   want to do things.

22        Now, having said that, I'm not going to -- I'm not

23   inclined to order things that the parties object to that are

24   out of the ordinary.  Well, that's not true.  You're

25   following me.  I'm meandering.

1   I encourage innovation.  I encourage you to do and to

2   come up with ideas that we can explore with the parties that

3   may be helpful to the Court and each of the parties.

4   I thought our informal science presentations were

5   extremely helpful.  It was a good way for us to find out

6   some stuff and start.  And nobody had to be on the defensive

7   because nothing was on the record.  Nothing was usable.

8   Stuff like that is very helpful to the Court.

9   You know, I had a misspent youth in politics.  I -- you

10  know, focus groups and things like that are entertaining to

11  me.  I -- mock trials, which we mentioned this morning, I'm

12  not ruling that out.  All I'm saying is if the defendants

13  are saying, "Hell, no," then it's unlikely that I'm going to

14  say we've got to do it.

15  Now, -- I'm sorry.  I'm not letting you talk.

16  MR. GARRARD:  I'm sorry.

17  CHIEF JUDGE GOODWIN:  But, but ideas for

18  innovation that would streamline discovery, for example,

19  that you feel like would be best handled by an order, great

20  idea.  I'm happy to, happy to consider that and I know Judge

21  Stanley would be, all of those things.  I'll be glad to put

22  it on the agenda.

23  Now, you had something else.

24  MR. GARRARD:  What I was going to say was, number

25  one, our proposal would not be mediation.  I've never liked

1    mediation.  I've never found it to be all that helpful.

2        But the defendants, or at least some of them, have said

3    to me there must be some innovative way to approach all of

4    this because they have problems and we have problems, and we

5    both know that.  And they have all said to me, "You know,

6    we've got to figure out what's the value of these cases.

7    How do we evaluate them?"

8        So, from those sorts of ideas I think there are things

9    that perhaps would be helpful to them as well as us, and

10   we'd simply like to bring some of that to the Court.

11        CHIEF JUDGE GOODWIN:  I'd be glad to hear from

12   both sides on any such thing.  I will tell you that in this

13   district it is fairly commonplace that in bench trial

14   matters or in matters where there are multiple parties and

15   they're not comfortable with the trial judge conducting

16   shuttle diplomacy between rooms for settlement, the judges

17   frequently will work for each other.

18        Judge Stanley many times has helped the District Judge

19   settle cases.  Judge Chambers and I frequently help settle

20   each other's cases.  Not mediation, but at the pleasure of

21   the parties, we help, try to help.

22        I think that willingness to help could even go so far

23   as to have another judicial officer hear an argument and

24   give you a read on what they think.  It wouldn't necessarily

25   tell you what I thought but, I mean, any kinds of things

1   like that I am open to.

2            MR. GARRARD:  Thank you.

3            CHIEF JUDGE GOODWIN:  Yes, sir.

4            MR. ADAMS:  I had one other issue, Your Honor.

5            CHIEF JUDGE GOODWIN:  Yes, sir.

6            MR. ADAMS:  Robert Adams for Boston Scientific.

7            CHIEF JUDGE GOODWIN:  Yes, sir.

8            MR. ADAMS:  On the, on the trials, you gave us the

9    first day of the trial December 3rd, and then talked about a

10   second, third trial.  Should we assume that you'll provide

11   us dates and parties for the second trial?

12           CHIEF JUDGE GOODWIN:  Well, here's what I plan to

13   do.  I want, I want two trials ready to go on the 3rd

14   because one, one will blow up sure in molasses, sure in --

15   you know what I mean.

16       I am not going to set a date for the second trial yet.

17   It's going to come right after the first trial.  As we get

18   closer, we can get together and we can come to an order of

19   how long you're going to take.  I don't know now.  If I told

20   you today you get seven days, seven trial days to try these

21   cases, that might be wrong.  I was just being arbitrary.

22   I'm not informed enough to know.

23       Let me say this.  This is just of interest to you.  For

24   whatever reason, and I don't do anything different than any

25   other judge I know, although I haven't been in court for

1    many years, my cases go faster than any other judge I know.

2    And I don't know why.  I truly do not know why.  I've

3    thought about it.  I've speculated about it.  Maybe because

4    I don't talk like this during trials.  But they will go

5    faster than you think.

6        I will share a couple things.  One is, I, I don't allow

7    cumulative evidence.  I don't allow the same question to be

8    asked more than once.  I don't allow lawyers to make

9    arguments on objections unless I don't understand what the

10   heck the objection is about.  I don't allow lawyers to

11   repeat the answers that somebody just gave that they think

12   that the jury was deaf and couldn't hear.

13       Maybe those are some of the things.  And I don't take

14   breaks.  I take a 15-minute break in the morning, an hour

15   for lunch, a 15-minute break in the afternoon.  That's it.

16   I don't schedule any other matters.  I don't take phone

17   calls.  So, I don't know what else, but they go fast.

18       And in case I forget it, which I absolutely won't, if

19   you run out of witnesses, you rest.  The fact your expert is

20   on a flight from Cleveland and got stuck in fog in

21   Pittsburgh won't work.  You've got to bring them in a day

22   early.

23       It's nice to see all of you.  I hate to think how much

24   this costs.  I see nobody here that's worth less than -- I'm

25   not even going to give a number.

1      Court's adjourned.

2      (Proceedings concluded at 2:10 p.m.)

3                        *  *  *  *  *

4

5

6

7

8

9           I, Lisa A. Cook, Official Reporter of the United

10    States District Court for the Southern District of West

11    Virginia, do hereby certify that the foregoing is a true and

12    correct transcript, to the best of my ability, from the

13    record of proceedings in the above-entitled matter.

14

15

16      s\Lisa A. Cook                      December 12, 2012

17          Reporter                              Date

18

19

20

21

22

23

24

25