1           IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
2                    AT CHARLESTON

3              TRANSCRIPT OF PROCEEDINGS

4

5

6    ----------------------------------------

7

8    IN RE:  ETHICON, INC., PELVIC REPAIR          MDL NO.
     SYSTEM PRODUCTS LIABILITY LITIGATION          2:12-MD-2327
9

10   ----------------------------------------

11

12

13              TELEPHONIC MOTIONS HEARING

14                   May 14, 2013

15

         BEFORE THE HONORABLE **CHERYL A. EIFERT**
16                  MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

1                            **APPEARANCES**

2    **For the Plaintiffs:**

3

4    **MR. THOMAS P. CARTMELL**
     Wagstaff & Cartmell, LLP
5    4740 Grand Avenue, Suite 300
     Kansas City, MO  64112
6

7    **MR. BRYAN F. AYLSTOCK**
     Aylstock, Witkin, Kreis & Overholtz, PLLC
8    17 East Main Street, Suite 200
     Pensacola, FL  32502
9

10   **MS. RENEE BAGGETT**
     Aylstock, Witkin, Kreis & Overholtz
11   Suite 200, 17 East Main Street
     Pensacola, FL  32502
12

13

14   **For the Defendants:**

15

16   **MR. DAVID B. THOMAS**
     Guthrie & Thomas, PLLC
17   500 Lee Street, East
     Suite 800, P.O. Box 3394
18   Charleston, WV  25333-3394

19

20   **MR. PHILIP J. COMBS**
     Thomas, Combs & Spann, PLLC
21   P.O. Box 3824
     Charleston, WV  25338
22

23

24

25

```
 1                    APPEARANCES (Continued)

 2    For the Defendants:

 3

 4    MR. BENJAMIN M. WATSON
      Butler, Snow, O'Mara, Stevens and Cannada, PLLC
 5    Renaissance at Colony Park
      1020 Highland Colony Parkway
 6    Suite 1400
      Ridgeland, MS  39157
 7

 8    MR. CHAD R. HUTCHINSON
      Butler, Snow, O'Mara, Stevens and Cannada, PLLC
 9    Renaissance at Colony Park
      1020 Highland Colony Parkway
10    Suite 1400
      Ridgeland, MS  39157
11

12

13

14

15

16

17

18

19

20    Court Reporter:            Lisa A. Cook, RPR-RMR-CRR-FCRR
                                 (304)347-3198
21                               lisa_cook@wvsd.uscourts.gov

22

23    Proceedings recorded on an audio machine and transcribed
      with the use of computer-aided transcription
24

25
```

```
 1                     P R O C E E D I N G S

 2            MAGISTRATE JUDGE EIFERT:  Hello.  Can you tell me

 3    who all is on the phone, please?

 4            MR. CARTMELL:  Tom Cartmell.

 5            MR. ALYSTOCK:  Bryan Alystock is here, Your Honor.

 6            MS. BAGGETT:  Renee Baggett.

 7            MR. THOMAS:  Good afternoon, Your Honor.  David

 8    Thomas.  On the phone with me is Ben Watson from Butler

 9    Snow; Chad Hutchinson from Butler Snow; and Phil Combs from

10    Thomas Combs.

11            MAGISTRATE JUDGE EIFERT:  All right, great.

12        Okay.  I have read both of the briefs that have been

13    filed.  And it looks to me as though there is even some

14    disagreement as to what's outstanding.

15        So, let me ask the plaintiffs to start off since it's

16    their motion to compel and tell me -- what topics do you

17    still have disagreement about?

18            MR. CARTMELL:  Your Honor, this is Tom Cartmell.

19    I apologize, first of all.  I'm on a cell phone.  I'm

20    traveling and in a parking lot at, at Dunkin' Donuts.  So,

21    if you can't hear me, just let me know.

22        But I did read the response and I do believe that there

23    were documents that, that were produced after we filed our

24    motion.  But I do think that on -- and, of course, we have

25    not had a chance to, obviously, get and see the documents
```

1    that were produced today and, and Friday.

2         But I, I do believe that with respect to the SOPs,

3    which is A, and the design history file testimony, I think

4    there's still -- I think there are maybe some disagreements

5    about what is outstanding.  But from our perspective, I do

6    believe that most of these still have issues outstanding.

7              MAGISTRATE JUDGE EIFERT:  Okay.  So, the topics,

8    then, that -- the topics that I have down here as, as having

9    some disagreements would be A, B, C, I, S, and KK.  Is that

10   correct?  A, B, C, I, S, and KK?

11             MR. CARTMELL:  I think on C, members of the

12   product development team, there's, there's an issue about

13   whether or not the witness will be able to testify related

14   to that versus just a production of a list.

15        On B, project names for the device, the issue's the

16   same, I believe.

17        I think patents maybe there is not an issue, which is

18   E.

19             MAGISTRATE JUDGE EIFERT:  Okay.  I, I tell you

20   what I'm looking at.  I'm looking at Exhibit A that was

21   attached to the deposition notice.  And I am looking at the

22   deposition subject matter.

23        I have A as being the SOPs; B as being the design

24   history file; C as being the members of the product

25   development team.  I would be the project names.  S would be

1   patents.  And KK would be design controls and validation.

2        So, those are the letters that I'm using.  Are you

3   using a different set of letters?

4            MR. CARTMELL:  I think I was looking at the

5   response from the defense.  I apologize.  But, yes, I'll use

6   those letters.  I apologize.

7            MAGISTRATE JUDGE EIFERT:  Okay.  So, starting with

8   A, which is the SOPs, you believe there are still some

9   outstanding issues.  Is that correct?

10           MR. CARTMELL:  Yes.

11           MAGISTRATE JUDGE EIFERT:  All right.  Tell me what

12  the issues are.

13           MR. CARTMELL:  Well, we -- if I can just give you

14  a little bit of history and clarify, Your Honor, because I

15  am a little concerned based on, you know, the response that,

16  that I read that there may be, you know, some feeling that

17  we have not met our, our obligation to meet and confer.

18       And I want to be, you know -- you know, this is the

19  first motion for, to compel that we have filed, and we did

20  not take it lightly at all.  And I want to be very clear

21  that before we filed our motion, and especially with respect

22  to the Standard Operating Procedures, we had never been told

23  that those procedures would be produced to us before the

24  deposition.  We didn't know that.  And I now know that

25  they've done that.

1      I will tell you that we, we cannot have those

2   downloaded in time, Crivella West has told us, for this

3   deposition.

4      And, you know, as far as sort of the background, this

5   started in July of last year with our request for these

6   SOPs.  In January as we were serving our regulatory and our

7   design and development 30(b)(6) and then realizing that the

8   SOPs with the date and revision history was not there.  We

9   then met and conferred over and over and over again.

10      And the way that sort of things have happened is

11   they've told us that they will produce Standard Operating

12   Procedures -- or, or what they told us is they'd produce us

13   an index.

14      And we got that index.  It was attached to this motion.

15   I responded to it.  I was told that that was a partial list

16   of Standard Operating Procedures, and that it only included

17   some of the procedures.  And it did include, I think, a

18   thousand procedures.

19      And we took the time to send it to our experts and, you

20   know, try to pare it down for them.  We never told them that

21   we believed that, you know, we should not get the specific

22   Standard Operating Procedures that were requested in the

23   design notice.  And to this day, we have never received any

24   of those, of those.

25      I guess now they are in this production that we will

1    not get until after the deposition has started.  So, we

2    don't know exactly what's there, although we have been --

3    the way we have been doing it -- because we kept saying,

4    "Look, we don't want to happen what happened with the Lin,

5    Susan Lin deposition."  And, that is, we went two days of

6    the deposition and we did not have a production of the

7    relevant Standard Operating Procedures with the revisions

8    and things like that.  That was in March, March 12th and

9    13th.

10       We then came back on May 2nd and 3rd for two more days

11   of those depositions.  And they had produced to us some of

12   the relevant procedures, including revision dates.  But the

13   way they would be produced is that we would send an e-mail

14   and say, "Look, we need this for Susan Lin.  We need them

15   all, but we especially need this one and we're going to have

16   to move this deposition if we can't get them."

17       So, one by one -- and I believe before the May 2nd and

18   3rd deposition we got a few of them.  We did not get them

19   all.  We do not still have the regulatory SOPs.

20       With respect to the design 30(b)(6) notice that is now

21   set for tomorrow and the next day, way back during the Lin

22   period we were saying with respect to the design, "We also

23   expect those as far as the version and the effective date of

24   the, each of the policies."

25       We didn't hear anything.  We didn't hear anything.  I

1    started sending e-mail after e-mail saying, "Look, we're

2    getting closer to that.  We need these.  And I especially

3    need this."  I responded to that index, but never intended

4    for that to be all of the policies because they told us that

5    that was only part of the list.  So, I kept saying, "Where's

6    the other half?" or, "Is there another part of this index?

7    We need to look at that too."

8        We decided, look, we really can't move back these

9    depositions.  We're already in May.  And we've been arguing

10   about this since, you know, February when Dan Smith's

11   deposition was originally scheduled to go in March.  But we

12   pushed it back.

13       Now we're at the point where we have a part list of the

14   policies.  We know that some of the policies have not been

15   produced, and we've told them that.  We're going on an

16   e-mail by e-mail basis where they will produce things.  I

17   kept saying, "Just -- when you get them all, just send them

18   to us."

19       And by the time we filed our motion, we had never heard

20   anything but, "We're working on it."  I've never -- I know

21   their motion seems to reflect that they had told us they

22   were coming, but we had never been told they were coming.

23   And I promise you faithfully I would not have filed the

24   motion if they had called.

25       And we sent the motion over to them before we filed it

1    and said, "Hey, take a look at this.  We're going to file

2    this.  But, you know, we want to give you a chance to talk

3    about it.  The Dan Smith deposition is coming up.  People,

4    we've got to get ready for this.  We can't have happen again

5    what happened the first time."  And we didn't hear anything

6    back from them.

7         But if they had said, "Tom, we're getting ready to dump

8    on you, you know, two complete productions of 180 policies,"

9    then I would not have filed that, although I will say we're

10   still unclear on whether or not that is everything and

11   whether or not they're going -- they're still objecting to

12   letting the witness testify, I guess, to, to different

13   versions and things like that.

14        And I will say, Your Honor, that's the other thing

15   that, that sort of put us in a, in a crummy position.  And,

16   that is, ten days before this deposition -- I think it was

17   like five or six or seven days before Susan Lin's

18   deposition, after weeks of meeting and conferring on topics

19   and us agreeing to amend the topics, we get in both cases

20   objections and responses to our notice where there is an

21   objection to every single one of our topics and every single

22   one of the document requests.  And these always come right

23   before the deposition when we've had meet-and-confers for

24   ages before that.

25        So, I said to them, "Listen, I don't feel like we can

1    go forward with a deposition with all these objections here

2    because how do I know your witness or you are not going to

3    fall back on, even though (recording inaudible) on these

4    objections when you didn't -- how do I know that your

5    production is complete when you have all these objections?"

6    They wouldn't, they wouldn't withdraw those.  So, we decided

7    we can't wait.  We have to go forward.

8         But with respect to the SOPs, I guess what we would

9    request the Court is for an order compelling them to produce

10   the SOPs related to the design and development.  And I know

11   their motion says that they've produced 180 SOPs, but that's

12   just not true.

13        That 180 SOPs that I asked them -- agreed to look

14   through and tear down and asked them for included regulatory

15   SOPs, quality assurance SOPs, pharmacovigilance SOPs, and

16   SOPs from all different types of departments.

17        So, there's really only 30 or 40 I would estimate -- I

18   haven't counted -- SOPs for the design and development

19   deposition that, you know, we would like to have.  And we'd

20   like to have the dates because what happens is when we don't

21   have the dates and the effective dates and the revision

22   dates, then we say, "This happened in 2005.  Which policy

23   applies?"  And the witness says, as in New Jersey, you know,

24   "I don't know if that was the policy in effect at the time."

25        And they told us they were only going to let their

1    witnesses talk about the current policies.  We said, "We

2    can't, we can't do that.  We need all of them."

3         So, I guess we'd ask for an order compelling them to

4    produce the relevant design and development policies.  We're

5    obviously not going to have them by the time of the

6    deposition because we can't -- Crivella cannot get them

7    downloaded in time and we won't be able to review them.  But

8    an order telling them that the part list is not sufficient.

9         We need to see the rest of the list of the policies,

10   and then an order, I guess, that the witness can testify

11   about the policies, or they can definitely name somebody

12   else.

13        And I've always said to them, "Look, you have

14   designated Dan Smith for 30 subjects and on literally seven

15   products.  And it's more than that because then you have the

16   TVT-L and TVT-Blue and things like that.

17        So, I agree that it's extremely difficult for one human

18   being to memorize and know all this.  And I said to them,

19   "I'm surprised that you really want to put one person up.

20   We will take the depositions of multiple people and we'll,

21   we'll get dates to you and we'll do this."

22        But they've insisted on Dan Smith to do it all.  And,

23   and now their argument is that it's so, such a big job

24   because there's so many policies for seven products and

25   different time periods stemming from 1998 to 2013 that they

1    can't do it.

2        So, I guess that's our request with respect to the

3    SOPs.

4            MAGISTRATE JUDGE EIFERT:  Okay.  Just to make my

5    position clear, this motion was filed just a few days ago, a

6    few work days ago.  It required an expedited hearing because

7    the deposition is tomorrow.  I am not prepared sitting here

8    today to address motions to compel documents in the future.

9    That can be taken up at a later time.  What I'm here today

10   at a quarter till five to do is figure out how I can help

11   you with your deposition tomorrow.

12       Now, I don't think what you're telling me is getting to

13   the crux of what I want to hear today.  I understand you

14   haven't gotten documents you believe you're entitled to get.

15   And perhaps you are entitled to get them all and perhaps

16   that's the way the Court will order it to be done.

17       But let's talk about the deposition tomorrow.  Is that

18   deposition going to go forward?

19           MR. CARTMELL:  Yes.

20           MAGISTRATE JUDGE EIFERT:  All right.  So, looking

21   at the SOPs and where you sit with them this afternoon for a

22   deposition that's tomorrow, tell me what I can do to help at

23   least narrow the issues or identify the issues so that when

24   you have someone testify tomorrow, we all know what they're

25   going to be testifying about.  Let's start with A which is

1   the SOPs.

2          MR. CARTMELL:  I, I guess to the extent that we

3   are able to, to find SOPs that the witness can testify about

4   the revisions -- I think the argument that they've made is

5   there's too much to talk about multiple revisions over

6   multiple years.  That would be our only request, Your Honor.

7          MAGISTRATE JUDGE EIFERT:  Okay.  And, and I've got

8   to tell you when I look at your notice, I do think that is a

9   very broad category, a very broad area, subject area.  And I

10  don't, I don't really know exactly what it is you're aiming

11  for when you say you want someone to testify about the SOPs.

12     If you have the SOPs and you can read the SOPs, then

13  I'm certain that there are some things you don't need a

14  person to testify about.  And maybe you can narrow your

15  questions a little bit more.

16     I think what I can do with that one is order the

17  witness to testify, to the extent the witness can, about the

18  SOPs that have already been produced.  I don't know what

19  else I can do.  I mean, it's a very broad, it's a very broad

20  topic.

21          MR. THOMAS:  Your Honor, this is David Thomas.

22  And Ethicon is prepared to do that as long as the lack of

23  knowledge or perhaps even incorrect answers by the witness

24  about documents that he hasn't seen or hasn't been shown or

25  hasn't had a reasonable definition of what he's expected to

1    testify about, that that can't be imputed to the company as

2    a lack of knowledge or an incorrect answer.

3         We, we want Dan Smith to be able to help them as best

4    as we can tomorrow.  But the problem is with 181 SOPs and

5    with revision histories, it's thousands and thousands of

6    pages of documents.  He's not going to know the answer to

7    all the questions.  And we just don't want the company to

8    have to live with his answers on those questions.

9         And what I was going to ask for on this one and all the

10   others is because the way these depositions are taken, as

11   corporate representatives, these witnesses are being shown

12   documents and asked questions.  And, obviously, their

13   answers bind the company.

14        And I think -- I believe, and the law requires, that

15   they describe with reasonable particularity those issues

16   they want this witness to be prepared to address so that he

17   can be prepared to address them.  And the, the number of

18   documents in A and all the following categories are so

19   general in nature that no witness can be prepared on them.

20        And, so, if we can help them with Dan Smith and not

21   bind the company to things where he just doesn't know,

22   because we just don't know what he's going to be asked about

23   them, that would be something we'd like to do.

24             MAGISTRATE JUDGE EIFERT:  Well, I don't, I don't

25   really -- I don't really know all of the history as to why

1  these SOPs haven't been produced before.  I don't know if

2  they were asked to be produced at some point in the past or

3  whether the first time they ever came up was with these

4  notices of deposition.  So, I don't really know the history.

5          MR. CARTMELL:  Your Honor, I can answer that.

6          MAGISTRATE JUDGE EIFERT:  But before you answer

7  that, I think for tomorrow's purpose I cannot -- I certainly

8  cannot sit here and say that your corporate representative

9  is not going to bind the corporation.  Obviously, the

10  corporate representative will bind the corporation.

11      That doesn't mean that you can't supplement answers or

12  have a supplemental deposition at which things are

13  clarified.  But I think when he testifies about something,

14  he's going to bind the corporation.

15      I don't know how useful his testimony is going to be on

16  these SOPs tomorrow if the plaintiff hasn't received them in

17  time to even read them and there is 180 of them with 20 plus

18  revisions to each one.  I, I really don't know how useful

19  this deposition is going to be.

20      But I'm not really hearing anything from you-all as to

21  how I can help make it anymore useful.  I mean, I certainly

22  don't know what to tell you to do.  It's -- you're,

23  you're -- I can tell you -- I can tell you, Mr. Cartmell,

24  your topics are very broad.  And I think you're going to

25  have to narrow them down in some way.  There's -- they

1   could, they just could cover virtually anything.  I think

2   they're too broad.

3        Maybe part of the problem is you haven't read through

4   all of these SOPs yet and don't really know where your

5   questions are going to be.  But that's going to have to

6   happen in the future.

7        Now, tomorrow I think maybe you can just muddle through

8   the best you can and we can deal with the consequences of it

9   later because I don't -- I'm not hearing anything that's

10  going to help on, on topic A.

11       MR. CARTMELL:  Okay.  And I do think -- you have

12  helped and I, I think you're right.  We, we will -- we're

13  not going to be able to see all the policies.  I'm glad --

14  we did not know when we filed this if they were going to

15  produce those.  And now they have been produced, so we do

16  have to look at them.

17       And the only thing I'll say, Your Honor, is that we

18  have tried to specifically say, you know, B, design control

19  policies, I believe.  And that is a limited number of things

20  like the policy on the SMEA, the DBSA.  And those are the

21  only ones we want.  And those are the ones that I know that

22  Dan Smith is very well familiar with.

23       MAGISTRATE JUDGE EIFERT:  Okay.  Now, Mr., --

24       MR. THOMAS:  Your Honor, --

25       MAGISTRATE JUDGE EIFERT:  -- Mr. Thomas, have you

1    now produced all of the SOPs that have been requested or are

2    there still some out there?

3              MR. THOMAS:  Can I give you a little bit of

4    history and give you a little longer answer than that?

5              MAGISTRATE JUDGE EIFERT:  If you don't make it too

6    long.

7              MR. THOMAS:  I won't.  I want to go home too.

8        At plaintiffs' request, we gave them a spreadsheet of

9    documents on March the 28th of 891 documents from our

10   database that we were able to search and retrieve.  And from

11   that, plaintiffs identified on April the 23rd, less than

12   three weeks ago, three weeks ago, a list of 181.

13       So, it's been in the last three weeks that we've been

14   gathering the 181 documents and with all the history and all

15   the revisions that have been produced in the last two days,

16   Friday and Monday.

17       So, that's the history.  It's been -- really, in the

18   last three weeks we've had a list to work from to make the

19   production.

20       I'm advised today that we're confirming that we

21   produced all 181 and that there may be some that are

22   missing.  And we're trying to confirm which are missing, and

23   we hope to follow up on that right away.  But we, we cannot

24   confirm that all 181 that the plaintiffs requested have been

25   produced.  There may be a few short.  But we're trying to

1  fix that immediately.

2          MAGISTRATE JUDGE EIFERT:  Have they now seen the

3  index for all of the ones that exist?  Because I heard –– I

4  thought I heard Mr. Cartmell say that what you, what you

5  sent to him, this index or spreadsheet, didn't include all

6  of the SOPs that are out there.  It was half of them or

7  something to that effect.

8          MR. THOMAS:  I think that it's quite a bit more

9  than half.  Here's the way it's been explained to me, Your

10  Honor.  There's a database of documents at the company

11  called the adaptive database that contains almost 100,000

12  documents.  The company does not maintain these documents

13  as, quote, SOPs.  They have a bunch of different names.

14      So, in order to generate a list from which plaintiffs

15  could select the –– Mr. Watson can probably speak to this

16  better –– enter search terms in the database that would

17  generate the list of 891.  And that was our best effort to

18  identify the universe of documents that might contain the

19  documents Mr. Cartmell would be interested in.  And it's

20  from that list of 891 that we gave on March the 28th that

21  Mr. Cartmell on April 23rd gave us a list of 181.

22          MAGISTRATE JUDGE EIFERT:  Okay.

23          MR. THOMAS:  And, so, that's how we did it.

24          MAGISTRATE JUDGE EIFERT:  All right.  Well, I

25  think, then, on that particular issue, as far as whether

1    there are still documents that haven't been produced, you

2    two are going to have to talk a little further on that and

3    decide what, if anything, is still out there.

4        As far as the deposition tomorrow, I think the witness

5    needs to try to answer to the best, to the, to the best

6    extent that he can the questions that are asked about the

7    SOPs that the plaintiff has reviewed and feels capable of

8    asking questions about.

9        So, we'll have to leave that one at that.  And then

10   we'll just have to pick it up later as far as whether it

11   needs to be narrowed and, and that sort of thing.  I, I

12   don't think there's anything else we can do for tomorrow.

13       So, let's move on to B, which is the design history

14   files.  What, what is the dispute that remains with that?

15            MR. CARTMELL:  Your Honor, the dispute is we've

16   asked the witness to give testimony about the contents of

17   the design history file and to confirm that there is a

18   document that is a complete design history file.

19       And the reason we've asked specifically for that is

20   because we know from testimony that there is a file that

21   they keep in a, in a central file room that is called the

22   design history file for each product.  Now, when we get it

23   produced to us, it comes all over the place.  We don't get

24   it produced to us in consecutive Bates numbers in most

25   instances.

1    And, so, what we'd like to do is simply have a witness

2    who can testify, "Here's the design history file for TVT-O.

3    This is the contents of that."  And they have checklists.

4    And, so, literally it would not be as burdensome as

5    saying, you know -- go through the checklist, but just to

6    say, "Is this the checklist?"  Put a sticker on it.  Say,

7    "This is the design history file for TVT-O."  That exhibit

8    can then be -- that's an admission by the company that that

9    is it.  That can then be used as an exhibit in all the

10   depositions.

11   Obviously, there's a clip that can be played if we need

12   to at trial related to that so that we know because what

13   happens, we also know, is that with fact witnesses and

14   things, they will say, "I don't know that that's everything.

15   I don't know that that's, whether that's a draft or not."

16   And, and we get, we get produced multiple drafts of things.

17   But we just want to nail down.  That's all we're trying

18   to do.  And we think it will promote judicial, you know,

19   efficiency and limit resources and we won't have to go take

20   as many depositions primarily if we can just get a corporate

21   witness to say, "This is the design history file for each of

22   the products."

23   MAGISTRATE JUDGE EIFERT:  Well, that seems

24   reasonable.

25   What's wrong with that, Mr. Thomas?

1          MR. THOMAS:  Well, we've agreed to identify under

2     a sworn affidavit discovery response that this is the design

3     history file.  What we don't want to have happen and what

4     we're trying to seek protection from is questions about the

5     entire design history file for this one witness because the

6     design history file is not something you're going to put one

7     bull clip on and mark and attach to a deposition.  It's,

8     it's boxes and boxes of documents in a design history file.

9     And a design history file varies from product to product.

10    It's not going to be the same for each product.

11         And, so, we will identify for them the Bates range of

12    documents that go in each design history file that we have.

13    And we think that is sufficient to identify that without a

14    witness being questioned about the contents of that file for

15    all of these products -- because for the same reason you

16    can't be prepared on the, the previous documents in category

17    A, a witness can't be prepared without anymore reasonable

18    particularity about all the documents in the design history

19    file.

20         MR. CARTMELL:  Can I respond, Your Honor?

21         MAGISTRATE JUDGE EIFERT:  Yes.

22         MR. CARTMELL:  It, it shifts -- it -- there is a

23    design history file.  It is not boxes and boxes and boxes of

24    things.  I've seen them say that it's 10,000 pages.  That is

25    true if you put every design history file together.

1      It's so frustrating because the design history file is

2   something that the FDA can come in and audit at any time.

3   And it's not in boxes and boxes of documents.  It is a file.

4   It is in binders.  It can be found like that.  We can

5   identify it and put on a, a sticker on it.  We know exactly

6   what is in it.

7      And we don't want to ask Mr. Smith about every single

8   page of those.  That's not our plan.  Our plan is to get a

9   document that the company who has by regulatory law the

10   responsibility to be able to identify the file.  That's it.

11           MAGISTRATE JUDGE EIFERT:  I don't -- yeah.  I

12   don't --

13           MR. THOMAS:  And I don't, I don't see where we're

14   different.

15           MAGISTRATE JUDGE EIFERT:  Well, I, I think what

16   he's saying, Mr. Thomas, is he wants a witness to verify

17   what is the file for the record.  He wants that to be

18   identified.  He doesn't want to have to have 12 different

19   witnesses talk about what they think the file consists of.

20      He wants, he wants a corporate representative to say,

21   "This is the design history file.  It's Bates numbers this

22   to this.  And this is the file."  And I don't think that's

23   unreasonable.  They have, they have the right to know what

24   the corporation considers to be the design history file.

25           MR. THOMAS:  And, and we're prepared to do that,

1    Your Honor.  We're prepared to give them a corporate

2    representation that these Bates numbers of documents

3    constitute the design history file for each of these

4    products.

5              MAGISTRATE JUDGE EIFERT:  All right.

6         Mr. Cartmell, why is that not acceptable?

7              MR. CARTMELL:  Well, I, I think it's different.  I

8    don't think they want somebody on a video to say, "This is

9    the file."  They want to give us an interrogatory and they

10   want to say, "That's match number X through X, and that's

11   match number X through X," so that we can maybe, yeah, take

12   that interrogatory response and try to use it with fact

13   witnesses.

14        And, so, they have not given a corporate binding

15   statement of what it is because what happens there is that

16   we have to jump through all kinds of hoops.  And what the

17   fact witnesses say is, "Look, I haven't looked through that.

18   I don't know if that's it.  And, yeah, maybe they --

19   somebody signs that.  I don't know who signs that.  But in

20   order to say that that's it, I'd have to look through it."

21             MAGISTRATE JUDGE EIFERT:  Well, I thought, I

22   thought I just heard Mr. Thomas saying their witness would

23   be prepared to do this tomorrow.

24             MR. CARTMELL:  Oh, no.  I think he's saying they

25   want to give us an interrogatory (recording inaudible).

1          MAGISTRATE JUDGE EIFERT:  No, I'm talking about --

2    what I'm talking about, I'm talking about the witness

3    tomorrow.  That's all I'm talking about is what the witness

4    is going to be prepared to do tomorrow.

5        Now, Mr. Thomas, will your witness be prepared to say

6    what are the design history files?

7          MR. THOMAS:  No, he will not be able to identify

8    the Bates range of documents for the design history files

9    for the products at issue.

10          MAGISTRATE JUDGE EIFERT:  And why can he not do

11    that?

12          MR. THOMAS:  Can I defer to Mr. Combs on that

13    issue?  He's been working with the witness on that today.

14          MR. COMBS:  Judge, he would not be able to do that

15    because of the voluminous nature of it.  I mean, it's,

16    it's -- you know, Mr. Smith as the corporate representative

17    for research and design is an engineer.  He was not involved

18    in collecting these documents, Bates stamping these

19    documents, or producing these documents.

20          MAGISTRATE JUDGE EIFERT:  Mr. Combs, he doesn't

21    have to be --

22          MR. COMBS:  We don't object to doing what, what

23    the plaintiffs are asking, but it's going to be somebody

24    else.  It's going to be, you know, someone like a litigation

25    paralegal who is going to sit there and who is going to

1   compare the Bates ranges and the produced versions and --

2   for each of the design history files.

3       We're talking about six files, all of which are going

4   to have multiple volumes.  We're talking about a very large

5   project.  It's very -- you know, it's just not going to be

6   an easy thing.  It's going to be thousands of pages of

7   material.

8           MAGISTRATE JUDGE EIFERT:  Did somebody --

9       Mr. Cartmell, did you ever ask in a request for

10  production of documents for the design history file?

11          MR. CARTMELL:  Yeah, we, we have asked for it, I

12  believe, in the attached *duces tecum* to this deposition.

13          MAGISTRATE JUDGE EIFERT:  I mean prior to this

14  deposition, prior to the notice.

15          MR. ALYSTOCK:  Your Honor, Bryan Aylstock.  Yes,

16  in our -- we did a comprehensive request for production back

17  in July shortly after the discovery stay was lifted and we

18  asked for the complete design history file on every product

19  specifically.

20      We also asked for the complete SOP with revision

21  histories.  We've asked for complete IFUs, and we don't even

22  have the first IFU for the TVT.

23      So, everything that we're talking about here has been

24  asked for since July.  And that's what's so frustrating.

25          MAGISTRATE JUDGE EIFERT:  Well, then, I'm having

1   some, I'm having some trouble understanding why the

2   corporate representative is unable to say what Bates number

3   ranges are the design files.  Somebody had to have collected

4   those and stamped them at some time in the past.  It doesn't

5   have to be the witness who actually did it himself or

6   herself.  The witness just has to know what they are.

7           MR. THOMAS:  And, Your Honor, we're prepared to do

8   that, just not with this witness.  We will give them an

9   affidavit saying, "This is the design history file.  These

10  are the Bates ranges and numbers that are covered by that."

11  And that's the corporate representation that that's the

12  design history file for these products.

13          MAGISTRATE JUDGE EIFERT:  Well, I don't understand

14  why the witness can't do that.  Now, I'm hearing you say the

15  witness is not going to be prepared to do that tomorrow.

16  And I think that is something that we'll have to address

17  later as far as whether that is going to mean that your

18  witness is not properly prepared because to me that doesn't

19  sound like it was an overwhelming task.

20      If somebody put these things together almost a year

21  ago, somebody ought to be able to tell this man which files

22  are the design history files.  I just don't understand why

23  this is so difficult.

24      So, I don't know what to tell you about tomorrow.  I, I

25  can't hardly compel him to have that information for you if

1    he doesn't have it tomorrow.  I mean, I'm hearing Mr. Thomas

2    say he's not going to have it tomorrow.

3        What I ultimately am going to need to hear from you-all

4    is whether that had been asked for in, in advance, whether

5    that is something they had enough time to put together.  I

6    can't tell from topic B here whether, you know, that was

7    even within the, the range of what it was you were asking

8    for.

9        So, I think you've got some problems with these, these

10   topics being overly broad.  I don't know how much time

11   you've given them to put this together.  I think, though,

12   that the plaintiffs have every right to have a human being

13   say, "These numbers, these Bates stamp numbers are the

14   design file."  I think they have every right.  And they can

15   do it that way rather than have it done in an interrogatory

16   if that's the way they want to do it.  I don't think that's

17   that unreasonable.

18       So, I'll tell you how I feel about that and that I

19   think we'll have to take up later what will happen about

20   this witness not being prepared to do it.

21       Let's move on, then, to C, members of the product

22   development team.

23            MR. CARTMELL:  Your Honor, this is the same thing.

24   They, they don't want -- it just comes down to this.  And we

25   have met and conferred about this until our, you know, your

1    head is blue, but we can't come to an agreement.

2         They don't want to have somebody on the record testify

3    and bind the company that these are people -- this is the

4    list of people that was involved with the product

5    development.

6         Now, their responses said that we're asking for, you

7    know, dozens of names over dozens of years.  And we're only

8    asking for product development team, which is a very narrow

9    period of time in each of these products, so that we don't

10   have to go from witness to witness and they tell us they

11   don't know or they give us one name and we try to figure out

12   who are the key people to depose.

13        Our only interest in this is trying to narrow the scope

14   so we don't spin our wheels so we save time, efficiency

15   because we're trying to prepare seven cases for trial.

16             MAGISTRATE JUDGE EIFERT:  Mr. Thomas.

17             MR. THOMAS:  Your Honor -- thank you, Your Honor.

18   We have produced the file information that identifies

19   everybody associated with the product.  The problem is

20   "team" is overly broad.  If they will allow us to identify

21   the key people, as they say, that's something we can do.

22        The, the problem is binding the company to everybody on

23   the team.  When people come in and out on projects over a

24   twelve-year period, it is really impossible to do.  And we

25   could go through the documents just like the plaintiffs

1    could and list everybody who ever touched the product.  I

2    don't think that's what the plaintiffs want.

3        We've given them the project leaders for each of the

4    products.  They can identify from those people the people

5    who had relevant knowledge about the development or product

6    at a particular time.

7        But for us to be compelled to have a witness list all

8    the people that ever touched a product and bind the company

9    or have to testify about what each of those people did with

10   respect to the product in a particular time is, is

11   unreasonable.  And unless they narrow it to a specific area

12   or specific responsibility, then it's, it's difficult or

13   impossible for Dan Smith or anybody to do.

14            MAGISTRATE JUDGE EIFERT:  I think, I think --

15            MR. CARTMELL:  Your Honor, --

16            MAGISTRATE JUDGE EIFERT:  I think what you're

17   going to need to do with this one tomorrow is ask Mr. Smith

18   questions about how the team -- who comprises the team,

19   whether the team changes, just basic questions like that so

20   that there is some foundation to understand.

21       You know, frankly, it seems, it seems odd to me that

22   you don't know who would be the members of a team that works

23   on your product.  But I don't really know how complicated

24   this whole process is, and we don't have any testimony about

25   that at this point.

1       So, why don't you go ahead, Mr. Cartmell, and ask

2    questions about that tomorrow and see what you can get.  And

3    then --

4            MR. CARTMELL:  I will do that.  I appreciate that.

5    I would -- I'm sorry.  Go ahead.

6            MAGISTRATE JUDGE EIFERT:  Then you can come back.

7    I'm sure we're going to have to have another deposition.  I

8    mean, obviously this witness is not going to be able to

9    answer all these questions.  So, if you can't work out these

10   things before the next deposition, then you need to come

11   back sooner.  Don't wait until three days before the

12   deposition.  Come back sooner and then we can talk about

13   what to do.

14           MR. CARTMELL:  Okay.  And I will say just with

15   respect to Susan Lin, I asked the same thing.  We asked the

16   same thing.  "Who are the members of the project teams from

17   the regulatory standpoint?"  They gave us a list.  I said,

18   "That's fine."  We put a sticker on it.  We marked it.  I

19   said, "Is this the list?"  She said, "Yes."  And I moved on.

20           MR. COMBS:  Well, Judge, -- this is Phil Combs.  I

21   just want to point out that's very, very different to ask

22   who, who were the people from a specific department that

23   worked on a project -- product.  That's very different than

24   asking Dan Smith who's everyone from the company that worked

25   on it which could involve multiple departments.  You're

1  talking about, you're talking about a long list of people

2  that would have involvement, and that's why it's hard.  It's

3  a lot of people.

4          MR. CARTMELL:  It's just product development.

5          MAGISTRATE JUDGE EIFERT:  I think what I'm

6  hearing, though, is that perhaps a lot of these issues will

7  be resolved when you get some testimony about them.  You may

8  just be talking about completely different things.  And, you

9  know, it's hard for me to tell that.  But I'd say take a

10  stab at it tomorrow and then we'll see what else needs to be

11  done after this deposition is over.

12      Now, the next one is I which would be all project names

13  of TVT-O.  Is that one resolved?

14          MR. CARTMELL:  We -- they've produced to us -- you

15  saw in the motion today, the response today or yesterday,

16  that for the first time, they gave us a list.  They had told

17  us they would give us a list.  I said, "Phil or Ben, please,

18  we need --" same thing.  "We need to have a live witness who

19  will tell us these are the names that can bind the company

20  and be able to tell us why, you know, why they're named this

21  or what it's for because that's discoverable.  That's all we

22  want.  We're not going to spend a lot of time on it."

23      And the response was, "We'll give you a list.  We don't

24  want anybody live binding the corporation on a video saying,

25  'Here's the names of the products.'"  The only reason we're

1  doing this is to save time so we know our reviewers can look

2  and say, "Oh, the TVT-Star is actually the TVT-O, or TVT-U

3  is actually the TVT-Secur and here's what it means and here

4  are all the names."  That's all we want."  And they don't

5  want to have somebody on video bind the corporation on that.

6        MR. THOMAS:  I think we've said so in our

7  response.  We've given you the list and we've said that the

8  corporate (recording inaudible) summary is the (recording

9  inaudible) accurate.  That's what you want, isn't it?

10        MR. CARTMELL:  Well, now, but then over multiple

11  meet-and-confers that I would like to be able to say to the

12  witness, "TVT-Secur used to be called TVT-Universal.  Why is

13  that, or what does that stand for?"  Because what we've

14  found in these cases is that sometimes there's meaning

15  behind those, the names that are given.  That's all I want.

16        MAGISTRATE JUDGE EIFERT:  Okay.  Well, let's,

17  let's see how that goes tomorrow.  You know, I, I don't, I

18  don't quite understand the reservation on the part of the

19  defendant to bind the corporation.  The corporation is going

20  to have to have a position, and somebody's going to have to

21  testify to that position.  I don't think you're going to be

22  able to defend the case by producing a document every time

23  there's an issue that comes up.  I mean, there's going to

24  have to be testimony.  And that's the whole purpose of the

25  30(b)(6) deposition.

1       So, I don't, I do not understand why you're not going

2   to be prepared to have this person say, "These are the names

3   of the projects."  I mean, honestly, that just doesn't make

4   any sense to me.  But maybe, maybe your witness will be

5   ready to do that.

6           MR. THOMAS:  Your Honor, I think you misunderstood

7   me.  The witness will testify that those are the names of

8   the product.  He will bind the company to that tomorrow.

9           MAGISTRATE JUDGE EIFERT:  All right.  Why don't

10  we, why don't we start with that and see where that goes.

11      Let's move on, then, to S which is the patents.  And if

12  I understood you, that one you think you have worked out.

13  Is that correct?

14          MR. CARTMELL:  I think there will be maybe an

15  issue later, Your Honor, but I think we should do like you

16  have suggested and see what comes up.  And if it is an issue

17  later and can't be worked out, we'll take that up later.

18          MAGISTRATE JUDGE EIFERT:  Yeah.  Let me say this

19  to the defendants.  I do agree with you that these topics

20  are extremely broad.  I, I understand the position the

21  plaintiff is in because they probably don't have enough

22  discovery yet to make these, these topics more narrow.  But

23  these are very broad topics and I can understand the problem

24  the defendant is having with these topics.

25      Having said that, that's really only important when it

1    comes down to sanctions for offering a witness who's not

2    prepared.  That's why I'd like to go tomorrow and see how

3    much you can (recording inaudible).

4        And if there are some really obvious things that your

5    witness should have been prepared to answer and couldn't,

6    then that's going to be a different story.  If there's just

7    some confusion about what all these topics involve, then I'm

8    going to take that into consideration as well.

9            MR. CARTMELL:  Okay.  And we will seek to --

10   because of what you've said, we're going to try to narrow it

11   down.  And I think patents is one place we already have

12   narrowed it, you might have seen from the response, but

13   we'll do it further.

14           MAGISTRATE JUDGE EIFERT:  Yes.  I think it needs

15   to be narrowed on your notice because the witness -- they

16   have to identify the best witness to represent the

17   corporation.  They have to know what you're going to ask

18   about.  If there is a universe of 5,000 sub topics under one

19   of these topics, then there's no way they can have someone

20   adequately prepared to cover all of those things.  So, I

21   think there's going to have to be some work on both sides

22   here is kind of what I'm seeing.

23       All right.  The last --

24           MR. CARTMELL:  Then you're saying, Your Honor, --

25   pardon me.  Just to clarify, are you saying we need to

1    re-issue the notice?  Because what we have been doing is

2    just sort of by agreement from letters saying, "We will

3    narrow these topics."  But we're fine with re-issuing --

4            MAGISTRATE JUDGE EIFERT:  Yeah.  I think what you

5    ought to do is take this deposition tomorrow, figure out how

6    these, how these topics can be (recording inaudible) or at

7    least how you can state them with a little more

8    particularity so that the defendant can pin down what it is

9    you're actually looking for, and re-issue them for the next

10   deposition because that way, we'll all be on the same page.

11           MR. CARTMELL:  Okay.

12           MAGISTRATE JUDGE EIFERT:  The last, the last

13   category that I have as there being an issue is the design

14   control and validation manufacturing processes.  Where are

15   we with that one?

16           MR. CARTMELL:  I, I believe from plaintiffs'

17   perspective, same thing, Your Honor.  We should go take the

18   deposition and the -- it's a degree issue.  They, they have

19   said Dan Smith will only be prepared to talk about it from a

20   10,000-foot perspective, and they may need somebody else to

21   talk in more detail about it.  That's where our argument

22   was.

23       I just wanted to know -- and if there was another

24   designee, I wanted them to designate that because if we get

25   into this and our expert reports are due, we're sort of

1     running out of time.

2               MAGISTRATE JUDGE EIFERT:  I understand.  I

3     realize, you know -- I, I sympathize with you people because

4     you are on such a tight schedule and there is so much work

5     to do.  I don't know how you're doing it.  And I feel really

6     badly for you.  But, having said that, you know, I want to

7     try to do what I can to move the discovery on.

8          If you go ahead, Mr. Cartmell, and take this deposition

9     tomorrow, maybe you'll be in a better position and you two

10    will be able to work out a lot of these issues.

11              MR. CARTMELL:  I do too.  If you don't mind, I'd

12    like to say one thing because it just, it's -- look -- and I

13    think we're working well together and I don't blame -- you

14    know, there's nothing here that I'm saying, nor any of us

15    are saying, that is the fault of, of counsel.  You know, a

16    lot of stress is really going into this issue of deposition

17    scheduling.

18         And, you know, for example, because we have seven

19    products that we're trying to cover with Dan Smith.  And

20    they've identified him for 30 topics and we thought we would

21    get, you know, a different witness on each topic.

22         We're never going to get done with this witness in four

23    days.  I mean, I can just tell you -- I know in New Jersey,

24    Scott Ciarrocca, who was their 30(b)(6) on a lot of these

25    same topics, one product was a three-day deposition.

1          And you have expressed, Your Honor, and I totally

2    understand it, that you're concerned about these, the length

3    of these depositions.  And I, I guess I'm just bringing it

4    up because I'm so concerned and nervous that we're going to

5    be in a situation when we are supposed to, as fiduciaries on

6    behalf of these thousands of cases across America, be trying

7    to complete these depositions on six topics, six cases the

8    people around America have, and we're going to finish this

9    two days -- and I've sent them probably four e-mails saying,

10   "Can you get me two more days for Dan Smith?" because I know

11   what's going to happen.  We're not going to get Dan Smith

12   day three and four until July.  Then we're not going to

13   finish with Abbrevo and Exact.  And we're not going to get

14   days five and six until August and our reports are due.

15         And I'm just so -- I've got to be honest with you.  I'm

16   freaked out about this.  Our scheduling is a major problem

17   for this.  And maybe it's something we can talk to you when

18   we come to West Virginia about next week.

19         But I do want to have this sort of the center of the

20   universe in the MDL, Bryan and Renee and I do.  We have

21   other lawyers from state courts saying, "Let us take these,

22   you know, depositions here, you know, if they're going to

23   not give you dates there."  And we're trying like crazy to

24   avoid that.

25         We don't -- we agree with Judge Goodwin that two bites

1    of the apple is not good.  But we're also concerned as heck

2    that -- from your perspective, I understand.  It can look

3    like four days with one witness is crazy.  But from our

4    perspective, it's seven cases and 30 topics.

5              MAGISTRATE JUDGE EIFERT:  Well, I understand,

6    yeah.

7              MR. THOMAS:  Your Honor, just to shortcut this --

8       Tom, you need to read your e-mails.  We've, we've

9    offered you two days in early June for, to come back and

10   complete Mr. Smith.

11             MAGISTRATE JUDGE EIFERT:  And, you know, maybe,

12   maybe tomorrow you'll figure out that there are some other

13   people that you need as well and you can get those

14   scheduled.  I definitely think we ought to talk about this

15   next week because you are on such a tight schedule.

16       And I realize that there is a lot of information out

17   there.  There's a lot of work on both sides to get the

18   documents produced.  And it's a crazy, crazy schedule, no

19   doubt about it.  But maybe if we sit down, we can try to

20   figure out some ways to expedite it.

21       I understand the depositions are going to be long but,

22   you know, four days, I don't know how you're ever going to

23   use that when the whole trial is only going to be twelve.

24   So, --

25             MR. CARTMELL:  Well, no, I know.  And, you know,

1    when you think about it, less than -- you're talking about

2    one trial.  We're talking about trying to discover seven

3    trials --

4              MAGISTRATE JUDGE EIFERT:  Right, right.

5              MR. ALYSTOCK:  We don't yet know what product it

6    is.  And we had talked about narrowing the products and

7    kicking some of the products down the line.

8              MAGISTRATE JUDGE EIFERT:  Right.

9              MR. ALYSTOCK:  But that -- we weren't able to

10   reach an agreement on that.  So, I think the idea of maybe

11   just sitting down with your help -- I think this call was

12   very helpful, Judge, and I appreciate you doing that on

13   short notice.

14             MAGISTRATE JUDGE EIFERT:  Well, certainly.  I want

15   to help you.  And you'll have to understand that I, I'm not

16   going to have the history that you-all have had and I

17   don't -- so, it's harder for me to judge whether somebody's

18   not working as well as they should or, you know, whether

19   somebody's just asking for more than anybody could provide.

20        So, it helps me to hear some of this history.  But it's

21   hard to do that when we're, when we're trying to do it, you

22   know, this late in, in the deposition schedule.

23        So, why don't you --

24             MR. CARTMELL:  I apologize.  We probably -- I

25   mean, in retrospect -- we've talked about it.  It was three

1    days before.  I honestly thought we'd send it over there and
2    we'd maybe dialogue some more and maybe some of the things
3    wouldn't come up.
4        But I personally may have made statements that I'm
5    going to file a motion to compel, and they -- probably
6    multiple times.  And they probably thought I was such a
7    wussy, and I did.  And I probably -- you know, we've worked
8    on this.  I'm glad we did because we got some documents
9    today.  But I hear you loud and clear that it cannot be a
10   situation when it's this close to the deposition.  I get
11   that.
12            MAGISTRATE JUDGE EIFERT:  Well, and, you know, I
13   mean, under the case law, if you hadn't filed the motion to
14   compel and they showed up and they weren't prepared, then
15   they would have had a problem because they didn't file a
16   motion for protective order.  So, --
17            MR. CARTMELL:  I know.  And I've seen your case
18   law on that.
19            MAGISTRATE JUDGE EIFERT:  Yes.  So, I think -- I'm
20   not sure of the strategy to file the motion to compel is
21   good if you really want to have a useful deposition.  And I
22   think with the time frame, you have to do that.  You know,
23   on the flip side, if you just want to set up the defendants,
24   you just don't say anything and let them not be prepared.
25   But I'm glad you're not doing that because I think it's

1  better to try to work this out ahead of time so that these

2  depositions do, are, are useful in some way.  You don't have

3  the time to take them four and five times, do you?

4          MR. CARTMELL:  No, we don't.

5          MAGISTRATE JUDGE EIFERT:  Okay.

6          MR. CARTMELL:  We don't have the stamina, Judge.

7          MAGISTRATE JUDGE EIFERT:  Well, I will be around

8  tomorrow.  If something comes up at the deposition and you

9  need help, you can just call me.

10          MR. CARTMELL:  Okay.  Thank you very much for your

11  time.  We appreciate it.

12          MAGISTRATE JUDGE EIFERT:  Thank you.  Thank

13  you-all.  Bye-bye.

14          (Proceedings concluded)

15

16

17

18

19

20

21

22

23

24

25

1          I, Lisa A. Cook, Official Reporter of the United

2   States District Court for the Southern District of West

3   Virginia, do hereby certify that the foregoing is a true and

4   correct transcript, to the best of my ability, from the

5   record of proceedings in the above-entitled matter.

6

7

8        s\Lisa A. Cook                    May 24, 2013

9           Reporter                           Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25