# EXHIBIT A

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | |
|---|---|
| *Plaintiff* <br> v. <br> In re: Ethicon, Inc. Pelvic Repair Systems Product Liability Litigation <br> *Defendant* | Civil Action No.  MDL No. 2327 <br> (If the action is pending in another district, state where: <br> Southern District of West Virginia ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Jill Rathbun
624 S Highland St., Arlington, VA 22204-2435

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit A attached.

| Place: Ashcraft & Gerel, LLP <br> 2000 L Street, NW, Suite 400 <br> Washington, DC  20036 | Date and Time: <br> 08/30/2013 9:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  08/01/2013

*CLERK OF COURT*

OR

_____        /s/ P. Leigh O'Dell
*Signature of Clerk or Deputy Clerk*         *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Plaintiffs , who issues or requests this subpoena, are:

P. Leigh O'Dell, Beasley, Allen, Crow, Methvin, Portis, & Miles, P.C., 234 Commerce St., Montgomery, AL 36104; leigh.odell@beasleyallen.com; 334-269-2343.

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   MDL No. 2327

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT A TO SUBPOENA FOR PRODUCTION OF DOCUMENTS TO JILL RATHBUN

## DEFINITIONS

1. For purposes of this subpoena and the Requests contained herein, the following terms shall have the following meanings:

   a. "Jill Rathbun," "You," and/or "Your," refers to Jill Rathbun.

   b. "The Pelvic Health Coalition," "PHC," "Prolapse Working Group," "Prolapse Repair Coalition," and/or "Prolapse Reimbursement Coalition," refers to The Pelvic Health Coalition, and any of its predecessors in interest, successors in interest, parent-companies, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including attorneys and accountants.

   c. "Ethicon" refers to Ethicon, Inc. and any of its predecessors in interest, successors in interest, parent companies, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including attorneys and accountants.

   d. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

   e. "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

   f. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic data or computerized data compilations including all information that serves to

identify, locate, or link such material, such as file inventories, file folders, indices, and Metadata. This term also refers, without limitation, to the original and all copies, prior drafts and translations, written, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications, data compilations, or representations of every kind, whether comprised of letters, words, numbers, pictures, sounds, or symbols, whether prepared by manual, mechanical, electronic, magnetic, photographic, or other means, as well as audio, video or other recordings of communications, oral statements, conversations, or events. Furthermore, this term includes, but is not limited to, any and all of the following: correspondence, notes, minutes, records, messages, memoranda, telephone memoranda, diaries, contracts, agreements, invoices, orders, acknowledgements, receipts, bills, statements, appraisals, reports, forecasts, compilations, schedules, studies, summaries, analyses, pamphlets, brochures, advertisements, news articles, tables, tabulations, financial statements, working papers, tallies, maps, drawings, diagrams, pictures, film, microfilm, microfiche, computer-stored or computer-readable data, computer programs, computer printouts, telegrams, telexes, facsimiles, tapes, transcripts, recordings, and all other sources or formats from which data, information, or communications can be obtained. A draft or non-Identical Copy is a separate document within the meaning of this term.

      g. "Electronic data" or "data" means the original (or identical duplicate when the original is not available), and any non-Identical Copies of writings and data compilations in any form, and of every kind and description, including electronically stored information or "ESI", whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, but is not limited to, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program,

including word processing files generated using programs such as Word or WordPerfect; spreadsheets and tables such as Excel or Lotus 123 worksheets; accounting application data such as QuickBooks, Money, or Peachtree data; databases such as Access, Oracle, SQL Server data, or SAP; charts, graphs and outlines; electronic mail and other digital communications such as e-mail, voicemail and instant messaging; images and facsimile files; sound recordings such as .WAV and .MP3 files; video and animation such as AVI and .MOV files; contact and relationship management data such as Outlook and ACT; calendar and diary application data such as Outlook PST and blog entries; online access data such as Temporary Internet Files, History and Cookies; presentations such as PowerPoint and Corel Presentations; network access and server activity logs; project management application data; computer aided design/drawing files; backup and archival files such as VERITAS, Zip and .GHO; operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data also includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, e-mail server stores such as Lotus Domino .NSF or Microsoft Exchange .EDB, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal. Furthermore, the term electronic data includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

h. "Electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices include, but are not limited to, computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

i. "Identical Copy" means:

i. A full and complete copy of the original Document that does not differ from the original paper Document because of highlights, comments, annotations, marks, transmission notations, underlining, marginalia, total pages, attachments, notes, markings or other alterations of any kind. Each such differing copy shall itself be considered an original paper Document and not an Identical Copy. For example, where there are two documents with identical content but one has highlighting and the other does not, in such a situation, the two documents shall not be considered identical.

ii. An electronic Document that is a copy of the original electronic Document including Metadata. Identical copies of the original electronic Document will generate the same MD5 Hash value. For example, and Identical Copy would include copies of the same Document saved on an individual custodian's local hard drive or an accessible network shared drive. An Identical Copy would not include copies of the same Document found in two individual custodians' produced Documents.

j. "Including" or "includes" means including, without limitation.

k. "IFU" means Information for Use.

l. "Metadata" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

m. "Person" means any natural person or any business, legal, or governmental entity or association.

2. The following rules of construction apply to all discovery requests:

a. The terms "all" and "each" shall be construed as all and each;

b. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

c. The use of the singular form of any word includes the plural and vice versa; and

d. Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

## INSTRUCTIONS

1. Each Request refers to documents in the custody, control, and possession of Jill Rathbun, as well as in the custody, control, and possession of or known to Jill Rathbun's counsel, representatives, agents, servants, investigators, contractors, and consultants, and unless

otherwise privileged, their counsel, employees, representatives, agents, servants, investigators, contractors, and consultants.

2. If any document responsive to these requests is unavailable, because it was lost, altered, deleted, or destroyed by Jill Rathbun, or her agents, or for any other reason, Jill Rathbun shall fully identify the document and also state:

    a. When and where it was lost, altered, deleted, or destroyed, or why it is otherwise unavailable;

    b. The name and address of each person who lost, altered, deleted, or destroyed it, or who otherwise caused it to be unavailable;

    c. The name and address of each person who directed, approved, or knew of its alteration, deletion, or destruction, and

    d. The name and address of each person who has knowledge of this document.

3. If you cannot produce a document that is responsive to these requests for any other reason, please respond to the extent possible, stating each reason why you cannot respond in full.

4. These requests shall be deemed to be continuing, to the full extent required or permitted under the Federal Rules of Civil Procedure, so as to require supplementary production when Jill Rathbun or her agents obtain access, custody, possession, or control of any document not previously produced, which is responsive to any of these Requests.

5. Pursuant to FRCP 26(b)(5), any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in writing and must include: a statement of the ground alleged for withholding such document; the Bates range of the document; its date; the identity of its author, recipients,

6

and signatories; the type of document (e.g., letter); a summary of its contents; its present location; and, its custodian(s). Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

6. Documents are to be produced in full and in their unexpurgated form. Redacted documents shall not constitute compliance with these Requests, unless such documents are properly redacted pursuant to a valid claim of privilege or work product as set forth in paragraph 5 above.

7. All documents produced in response to these Requests shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.

8. Unless otherwise set forth, the relevant time-period for each Request is from the beginning of time to the present.

## DOCUMENTS TO BE PRODUCED

1. Policies, procedures, rules and/or guidelines regarding Your document and record management, including the retention, storage and/or destruction of relevant (or potentially relevant) documents for such time that there exists a reasonable expectation of foreseeable litigation in connection with such documents.

2. Any and all documents, communications, invoices, agreements, or other documents between You and Ethicon related to products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

7

3. Any and all documents, communications, invoices, agreements, or other documents between You and the American Congress of Obstetricians and Gynecologists (ACOG) on the behalf of and/or for PHC and/or Ethicon.

4. Any and all documents or communications between You and the PHC and/or Ethicon regarding ACOG Practice Bulletin no. 79 (February 2007), ACOG Practice Bulletin no. 85 (September 2007), and/or any other ACOG publications regarding procedures and/or products used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

5. Any and all documents, communications, invoices, agreements, or other documents that relate to You and the PHC and/or Ethicon and concern hospital reimbursement for procedures and/or products used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

6. Any and all documents that relate to Your efforts or activities on behalf of the PHC and/or Ethicon to influence hospital reimbursement for procedures and/or products used in the treatment of pelvic organ prolapse and/or stress urinary incontinence. This requests includes both in-patient and out-patient procedures.

7. Any and all rosters, lists, registers, or indexes that identify the entities and/or individuals who comprise the PHC from formation to the present day.

8. Any and all documents, notes, minutes, memoranda, presentations, agendas, or summaries, relating to, or in any way pertaining to, meetings of the PHC. This request includes, but is not limited to, in-person meetings, video conferences, and/or telephone conference calls.

9. Any and all documents, notes, minutes, memoranda, presentations, agendas, or summaries, relating to, or in any way pertaining to a meeting of the PHC which took place on May 10, 2006.

10. Any and all documents that relate to communications between You and Galileo Consulting, Inc. concerning the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

11. Any and all documents related to agreements, contracts, invoices, or purchase orders between You and Galileo Consulting, Inc. in relation to the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

12. Any and all documents related to communications, agreements, contracts, invoices, or purchases orders between You and Gail Daubert in relation to the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

13. Any and all documents related to communications, agreements, contracts, invoices, or purchases orders between You and Reed Smith LLP in relation to the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

14. Any and all documents that relate to communications between You and Vincent R. Lucente, M.D. concerning the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

15. Any and all documents that relate to communications between You and G. Willy Davila, M.D. concerning the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

16. Any and all documents that relate to communications between You and Steven Siegel, M.D. concerning the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

17. Any and all documents that relate to communications between You and Patrick Culligan, M.D. concerning the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

18. Any and all documents that relate to communications between You and Robert Harris, M.D. concerning the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

19. Any and all documents that relate to communications between You and Dennis Miller, M.D. concerning the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

20. Any and all documents that relate to communications between You and Edward Stanford, M.D. concerning the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

21. Any and all documents that relate to communications between You and Kristinell Keil, M.D. concerning the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

22. Any and all documents related to communications between You and the Centers for Medicare & Medicaid Services related to the PHC, Ethicon, and/or products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence. This request includes, but is not limited to, letters, emails, or drafts of letters and/or emails.

23. Any and all documents related to the PHC's ICD-9 Procedure Code Application that was submitted to the Centers for Medicare & Medicaid Services on or about July 28, 2006.

24. Any and all documents related to the PHC's and/or Ethicon's comments on the Centers for Medicare & Medicaid Services hospital IPS proposed rule for fiscal year 2008.

25. Any and all documents related to the PHC's and/or Ethicon's efforts to encourage or urge the implementation of the Centers for Medicare & Medicaid Services new ICD-9-CM procedure codes which went into effect on October 1, 2007.

26. Any and all documents related to the drafting, editing, revision, or finalization of training, educational, or informational materials on behalf of and/or for the PHC and/or Ethicon for physicians concerning the reimbursement for products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

27. Any and all documents related to the drafting, editing, revision, or finalization of talking points on behalf of and/or for the PHC and/or Ethicon concerning the reimbursement for products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

28. Any and all documents related to the drafting, editing, revision, or finalization of presentations (including PowerPoint presentations) on behalf of and/or for the PHC and/or Ethicon concerning the reimbursement for products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence

29. Any and all communications, invoices, agreements, or other documents related to the funding, facilitating, sponsorship, writing, and/or distribution of round table discussions on behalf of and/or for the PHC and/or Ethicon concerning reimbursement for products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

30. Any and all documents related to the drafting, editing, revision, or finalization of the PHC's October 17, 2008 letter to the Food and Drug Administration regarding the Public Heath Notice which described serious complications associated with the transvaginal placement of surgical mesh in repair of pelvic organ prolapse and stress urinary incontinence.

31. Any and all documents related to the drafting, editing, revision, or finalization of an advisory on behalf of and/or for the PHC and/or Ethicon providing guidance to physicians regarding informed consent in relation to the placement of transvaginal mesh for the repair of pelvic organ prolapse and/or stress urinary incontinence.

32. Any and all documents related to the drafting, editing, revision, finalization, or distribution of a patient authorization and consent form regarding procedures related to the repair of pelvic organ prolapse and/or stress urinary incontinence on behalf of and/or for the PHC and/or Ethicon.

33. Any and all documents related to the drafting, editing, revision, or finalization of an article entitled, "Best Options, Techniques, and Coding Tips for Pelvic Prolapse Repair," published in the September 2007 supplement of *OBG Management*. This request includes, but is not limited to, any and all communications between you and the PHC and/or Ethicon regarding this article.

34. Any and all documents related to the drafting, editing, revision, or finalization of an article entitled, "Pelvic repair:  Update on correct coding – CPT codes that cover many aspects of pelvic prolapse surgery have changed – in ways that significantly influence how payers reimburse you.  Here are the details." Published in October 2010 supplement of *OBG Management*. This request includes, but is not limited to, any and all communications between you and the PHC and/or Ethicon regarding this article.

35. Any and all documents related to agreements, contracts, invoices, or purchases orders between You and Dowden Health Media in relation to the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

36. Any and all documents that relate to communications between You and representatives of Dowden Health Media concerning Media in relation to the PHC and/or Ethicon and products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence.

37. Any and all documentation, information, analysis, communications, memorandum, data, summaries, reports, emails or other documents regarding services performed by You on behalf of and/or for the PHC and/or Ethicon and relating to publications concerning reimbursement for products and/or procedures used in the treatment of pelvic organ prolapse and/or stress urinary incontinence. Publications for purposes of this request include peer-review scientific literature, scientific literature, professional publications, or lay publications.

38. Any and all documents pertaining to confidentiality or non-disclosure agreements between You and the PHC and/or Ethicon.

39. Any and all documents evidencing any indemnification agreements between You and the PHC and/or Ethicon.