# EXHIBIT 2


Paul Courts

```
 1                      CAUSE NO. DC-12-14350
 2
 3    LINDA BATISTE,                  §  IN THE DISTRICT COURT
                                      §
 4              Plaintiff,            §
                                      §
 5    v.                              §  95TH JUDICIAL DISTRICT
                                      §
 6    JOHN ROBERT MCNABB, M.D.,       §
      JOHNSON & JOHNSON, and          §
 7    ETHICON, INC.,                  §
                                      §
 8              Defendants.           §  DALLAS COUNTY, TEXAS
 9
10
11              ORAL AND VIDEOTAPED DEPOSITION
12                      PAUL COURTS
13                 TUESDAY, JULY 16, 2013
14
15
16         ORAL AND VIDEOTAPED DEPOSITION OF PAUL COURTS,
17   produced as a witness at the instance of the Plaintiff,
18   and duly sworn, was taken in the above-styled and
19   numbered cause on the above-referenced date from
20   9:20 a.m. to 6:11 p.m., before Deana Tarver, CSR,
21   Certified Shorthand Reporter in and for the State of
22   Texas, reported by realtime stenographic method, at the
23   offices of Thompson & Knight, LLP, 1722 Routh Street,
24   Suite 1500, Dallas, Texas, pursuant to the Texas Rules of
25   Civil Procedure.
```

```
 1      A.    -- because we went to a computer system that
 2   allowed us to e-mail and do things like that.
 3      Q.    And you have that -- you have that same access
 4   today?
 5      A.    Uh-huh.  But it's not a primary product now,
 6   so I focus on other products.  I'm at a different
 7   company.
 8      Q.    What company are you at now?
 9      A.    Ethicon Surgical Care.  We have several
10   different products.  TVT is not the primary product, but
11   it is my product.  So me sending out studies on TVT this
12   year, that's not happening.
13      Q.    All right.  All right.  Other than the
14   studies, the -- the CDs, what else did you ever have in
15   your possession from Ethicon relating to marketing or
16   training of TVT products?
17            MR. HEWES:  Objection.
18            THE WITNESS:  We used to have visual aids,
19   but we don't have -- we don't do those anymore.
20   BY MR. FREESE:
21      Q.    What kind of visual aids?
22      A.    We used to have hard copies back in 2009.
23      Q.    What did you do with the visual aids that you
24   had in 2009?
25      A.    We use the iPads and computers now.
```

| | | |
|---|---|---|
| 1 | Q. | Oh, I -- what did you do -- |
| 2 | A. | They were -- they were -- |
| 3 | Q. | -- with the visual aids that you had in 2009? |
| 4 | A. | They were left with -- with the company at |
| 5 | meetings. | |
| 6 | Q. | You -- you left them with doctors? |
| 7 | A. | They collected -- no, with the company at |
| 8 | meetings, at national meetings.  They were collected when |
| 9 | we went to digital, to computers and stuff. |
| 10 | Q. | So Ethicon collected visual aids that you had |
| 11 | at 2- -- in 2009? |
| 12 | A. | At -- at a meeting. |
| 13 | Q. | What -- |
| 14 | A. | Either 2009 or 2010, one of the two years. |
| 15 | Q. | Where was the meeting? |
| 16 | A. | I don't recall. |
| 17 | Q. | Were you told to bring everything in your |
| 18 | possession dealing with TVT training aids to that |
| 19 | meeting? |
| 20 | A. | With all -- all products that we carried |
| 21 | visual aids in our hand to the meeting, yes. |
| 22 | Q. | Who told you to do that? |
| 23 | A. | I don't recall. |
| 24 | Q. | And do you know what happened to them? |
| 25 | A. | No. |

```
 1      Q.    Do you know if they were destroyed?

 2      A.    I doubt it.

 3            MR. HEWES:  Objection.

 4  BY MR. FREESE:

 5      Q.    Do you know if they were preserved?

 6      A.    I don't know.

 7            MR. HEWES:  Hold on.  Asked and answered.

 8  Objection.

 9  BY MR. FREESE:

10      Q.    Well, they certainly would fall under the --

11  the category of all the litigation holds that I showed

12  you earlier, wouldn't they?

13            MR. HEWES:  Objection.

14            THE WITNESS:  I don't know.

15  BY MR. FREESE:

16      Q.    Well --

17      A.    I mean, yes.  Yes.

18      Q.    Yeah.  I mean, I can show you ones back to

19  2003.  I mean, we can go over the categories if you want.

20      A.    You understand that you're asking me a

21  question and you feel -- I feel I'm being attacked of

22  something I'm answering.  I'm simply telling you, I don't

23  know what they did, what the company did with visual aids

24  I left at a meeting.  I don't know.

25      Q.    But the visual aids would fall within the
```

```
 1   definition of the documents that -- that --
 2        A.   Yes.
 3        Q.   Okay.  -- were instructed to be maintained,
 4   and you have no idea where they are?
 5        A.   (Indicating.)
 6        Q.   And you have no idea if the company preserved
 7   them?
 8        A.   No.
 9        Q.   All right.  All right.  What else did you
10   have, sir?
11        A.   That's about it, --
12        Q.   Are you sure?
13        A.   -- that I can think of right now.
14        Q.   Okay.
15        A.   Uh-huh.
16        Q.   Well, what about all of the things your lawyer
17   just listed for you a little while ago?  Let's see if I
18   can find them here.  You talked about DVDs.  Did you ever
19   have any DVDs?
20        A.   You just -- we just talked about those.
21        Q.   Well, those -- you said -- you called them
22   CDs.
23        A.   Well, I'm --
24        Q.   Are the DVDs the same thing?
25        A.   DVDs, CDs, they're also the same thing.  Yes.
```