**EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL No. 2327 |
| THIS DOCUMENT RELATES TO ALL CASES | JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

## AFFIDAVIT OF JEFFREY R. HEWETT

STATE OF TEXAS     )
                   :ss
COUNTY OF HARRIS   )

**JEFFREY R. HEWETT**, having been duly sworn according to law, deposes and states as follows:

### OVERVIEW

1. I am of legal age, and unless otherwise stated, have personal knowledge of the matters stated herein, and am competent to testify as follows.

2. I make this affidavit to provide the following cost estimates in connection with Defendant's Opposition to Plaintiffs' Steering Committee's Motion to Compel Production of Sales Representative Files:

   (a) the costs incurred to date by Ethicon Inc. and related entities ("Ethicon") in connection with the production of documents (including but not limited to electronically stored information ("ESI")), resulting from its involvement in this MDL, a related proceeding pending in the Superior Court of New Jersey, *In re Pelvic Mesh/Gynecare Litigation*, Master Case No. 6341-10, as well as other non-consolidated cases involving pelvic mesh in various state courts.

(b) apart from the documents previously collected as described in (a) above, the approximate cost to collect, process, review, and produce electronically stored information ("ESI") and other documents from approximately 300[1] additional sales representatives, who are located throughout the United States, many of whom have not been employed by Ethicon for many years.

3. As discussed further below, I estimate that it would cost approximately $500,000 to $1 million to complete those tasks, not including outside counsel fees.

4. Subject to the assumptions, limitations, and other factors described in this affidavit, I make this estimate based on my substantial experience in the field, approximately two years of experience in the pelvic mesh litigation specifically, and analyses and searches of data and other relevant information performed to date.

## BACKGROUND

5. I am the Chief Executive Officer of Granite Legal Systems, Inc. I hold a bachelor's degree in Computer Science from the University of Kansas and a law degree from Washburn University.

6. Over the last seventeen years, I have had extensive experience consulting for and representing parties in complex litigation. In connection with this role, I have assisted in developing, implementing, and supporting technology solutions with respect to, among other things, large-scale discovery activities.

7. Beginning on or about December 2011, I was retained by Johnson & Johnson, Inc. to provide my services with respect to, among other things, document discovery in

---

[1] I understand that Ethicon is in the process of identifying the universe of additional current and former sales representatives from whom it would have to collect documents, which itself is burdensome. The number 300 is a conservative, good-faith approximation of the number of such sales representatives, and the number could be higher.

2

various pending lawsuits related to pelvic mesh products involving Ethicon, Inc. ("Ethicon").

## ESTIMATES

### I. DOCUMENTS ALREADY COLLECTED FROM SALES REPRESENTATIVES

9. I understand that as of September 6, 2013, approximately 1.5 million documents, comprising more than 9.5 million pages, have been produced in connection with these litigations.

10. This collection and production process has been ongoing for approximately two years. I understand that documents have been collected from a wide range of electronic and paper sources, and that collections have been performed for more than 225 current or former Ethicon employees. In addition, I understand that significant volumes of documents have been collected from non-custodial sources such as group and departmental file shares, databases, and warehouse storage facilities. The collections have occurred both in and outside the United States.

11. In addition, I understand that document collections have been performed for more than 125 sales representatives and that responsive materials have been produced.

12. The collection process has involved the coordinated efforts of more than ten third-party vendors, in-house IT resources, as well as in-house and outside legal counsel.

13. Once collected, the documents were processed and went through a multi-step review prior to production.

14. In addition to the 1.5 million documents discussed above, I understand that Ethicon has also searched a number of enterprise database system materials and has produced native files, including but not limited to clinical study data and complaint file data.

3

15. Upon information and belief, to date Ethicon has spent over $15 million so far on the collection, processing, hosting, review, and production of the materials from Ethicon and from sales representatives described above.

## II. ADDITIONAL DOCUMENT COLLECTION FROM SALES REPRESENTATIVES

16. Separate and apart from the above-described documents, I have been asked to estimate the costs to collect, process, review, and produce documents in the Pelvic Mesh litigation from approximately 300 additional sales representatives located throughout the country.

17. To complete the collection, processing, review, and production of such documents, a substantial team of attorney reviewers from an outside vendor, as well as project managers and consultants, would be utilized.

18. The collection process for sales representatives presents additional logistical challenges and burdens insofar as sales representatives do not office at Ethicon facilities.

19. It is my good faith estimate that the total cost to perform collections from the approximately 300 additional sales representatives, and to process, review, and produce the documents, would be between $500,000 and $1 million.

20. As noted above, my estimate does not include attorneys' fees for the outside counsel law firms that participate in the collection and production of documents, such as by conducting interviews of the sales representatives and assessing substantive issues that arise in connection with document collections and reviews, which, based on my experience, likely would be substantial. Therefore, I believe that the above estimate is likely conservative in projecting the actual total costs.

21.     In addition to the extra cost of collection, processing, review, and production that I estimate above, I also estimate, in good faith, that performing these tasks for the approximately 300 additional sales representatives would require between four and six months to complete.

22.     These estimates are approximations based on assumptions, and the actual totals ultimately may turn out to be higher or lower once the actual work is performed, depending on various factors that are yet to be determined or that may cause these estimates to be revised. Notwithstanding the foregoing, I believe the estimates set forth in this affidavit are reasonable and conservative, and I make them in good faith.

23.     I represent that the foregoing statements are true under the penalties of perjury, this 10th day of September, 2013.

Dated: September 10, 2013

Jeffrey R. Hewett

Sworn and subscribed before me this 10 th day of September, 2013

MK Wolfshohl
Notary Public



5