```
 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                        AT HUNTINGTON
                   TRANSCRIPT OF PROCEEDINGS
 3

 4

 5

    ---------------------------------------
 6

 7   IN RE:  ETHICON, INC.,  PELVIC REPAIR       MDL NO.
     SYSTEM PRODUCTS LIABILITY LITIGATION        2:12-MD-2327
 8

 9   ---------------------------------------

10

11

12              TELEPHONIC STATUS CONFERENCE

13                    October 23, 2013

14

15

16       BEFORE THE HONORABLE CHERYL A. EIFERT
                UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22   Court Reporter:          Lisa A. Cook
                              RPR-RMR-CRR-FCRR
23                            (304)347-3198
                              lisa_cook@wvsd.uscourts.gov
24

25
```

```
 1                        APPEARANCES

 2                      (By Telephone)

 3   For the Plaintiffs:

 4   MR. BRYAN F. AYLSTOCK
     MS. D. RENEE BAGGETT
 5   Aylstock, Witkin, Kreis & Overholtz
     Suite 200
 6   17 East Main Street
     Pensacola, FL  32502
 7


 8   MR. THOMAS P. CARTMELL
     Wagstaff & Cartmell
 9   Suite 300
     4740 Grand Avenue
10   Kansas City, MO  64112

11


12   MR. BENJAMIN H. ANDERSON
     Anderson Law Offices
13   Suite 215
     360 West 9th Street
14   Cleveland, OH  44113

15


16   MR. ERIC WALKER
     Hissey Kientz
17   Arboretum Plaza One
     9442 Capital of Texas Highway North
18   Suite 400
     Austin, TX  78759
19

20   MR. HENRY G. GARRARD, III
     Blasingame, Burch, Garrard, Ashley, P.C.
21   P.O. Box 832
     Athens, GA  30603
22

23

24

25
```

1              **APPEARANCES**

2                (Continued)

3    For the Defendant:

4    **MR. WILLIAM M. GAGE**
     **MR. BENJAMIN M. WATSON**
5    Butler, Snow, O'Mara, Stevens & Cannada
     P.O. Box 6010
6    Ridgeland, MS  39158-6010

7

8

9    **MR. GARY A. RUBIN**
     Skadden, Arps, Slate, Meagher & Flom
10   1440 New York Avenue, N.W.
     Washington, D.C.  20005

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  P R O C E E D I N G S

 2          THE CLERK:  Hi, everybody.  This is Laura, Judge

 3   Eifert's assistant.

 4          MR. AYLSTOCK:  Hi, Laura.  This is Bryan.

 5          THE CLERK:  You all know the drill, if you don't

 6   mind to identify plaintiffs' counsel and then defense

 7   counsel.

 8          MR. AYLSTOCK:  This is Bryan Aylstock on behalf of

 9   the plaintiffs.

10          THE CLERK:  Uh-huh.

11          MS. BAGGETT:  Renee Baggett on behalf of the

12   plaintiffs.

13          MR. CARTMELL:  Tom Cartmell on behalf of the

14   plaintiffs.

15          MR. ANDERSON:  Ben Anderson on behalf of the

16   plaintiffs.

17          MR. WALKER:  Eric Walker for the plaintiffs.

18          MR. GARRARD:  Henry Garrard for the plaintiffs.

19          THE CLERK:  I'm sorry, I didn't get that last

20   name.

21          MR. GARRARD:  G-a-r-r-a-r-d.

22          THE CLERK:  Thank you.

23          MR. GAGE:  William Gage and Ben Watson for the

24   defendant.

25          MR. RUBIN:  Gary Rubin for the defendant.
```

```
 1            THE CLERK:  All right.  Do we have everyone?

 2            MR. AYLSTOCK:  I think that's it, Laura.

 3            THE CLERK:  All right.  Thank you very much.  Hold

 4     one moment for Judge Eifert, please.

 5       (Pause)

 6            MAGISTRATE JUDGE EIFERT:  Hello.  Well, here we

 7     are.  We meet again.  It's becoming a regular thing, isn't

 8     it.  I'm sorry.  I guess I just need to talk to you all a

 9     lot to help me make up my mind.

10       Okay.  We are here on the issue of the metadata that

11     Drs. Klosterhalfen and Klinge have.  And I want to first

12     thank you all for sending me the information.  I found it

13     very useful.  And it was nice to have all those cases

14     collected for me and saved me a lot of time.

15       But I'll tell you the, the one article I found the most

16     helpful was the article "Rationalizing Discovery as

17     Metadata" which was in the *United States Law Week Bloomberg*

18     publication.  And I don't know if -- who that came from, if

19     that was from the plaintiffs or the defendant.  But whoever

20     it came from ought to provide it to the other side if they

21     haven't already done it because I think it's, it's very

22     useful, especially in just putting some common sense context

23     to the metadata.  Honestly, I was somewhat at times confused

24     about what we were talking about, and this was very, very

25     helpful.
```

1       So, a lot of what I'm going to say, I think, comes from

2   that.  And a lot of the questions I have come from that

3   article.

4       The first thing, I had looked at the actual subpoena.

5   And it might be helpful if we go through Schedule A.

6       And you can tell me, Mr. Gage, whoever, Mr. Rubin,

7   whoever wants to speak on, on behalf of the defendant what

8   type of documents you think you're going to be getting in

9   response to the particular categories.

10      The first one talks about documents and data in

11  deponent's possession that would be subject to Ethicon's

12  Confidentiality and Non-Disclosure Agreement.

13      What, what sort of documents do you anticipate

14  receiving for this category?

15          MR. GAGE:  Judge, this is William Gage.  I think,

16  as Your Honor may have known, it was our intent to draw the

17  document request rather narrowly of these two individuals so

18  that we wouldn't be asking for stuff that really would be

19  not relevant to the work that they did for Ethicon in their

20  roles as consultants.

21      So, the purpose of that request was to, in a sentence,

22  identify and notify the recipients that we wanted documents

23  that would have been generated, you know, either received or

24  sent by the two witnesses that pertained to the work that

25  they did in their role as consultant for Ethicon.

1       So, that would include, for example, e-mails to and

2   from Ethicon employees that would pertain to the consulting,

3   you know, the work for which they were asked to consult.  It

4   may include test results or test data or analyses that were

5   exchanged between Ethicon and the experts.

6       I mean, those are kind of the most, the two most likely

7   documents that would have gone back and forth between the

8   witnesses, or between the, the two experts and Ethicon

9   employees.

10          MAGISTRATE JUDGE EIFERT:  Are you aware of whether

11  there were any databases or spreadsheets, PowerPoint

12  presentations, anything like that, or would these primarily

13  just be reports and e-mails?

14          MR. GAGE:  Judge, when I would say things like

15  analyses and reports, that -- I would use that term broadly

16  such that if it were not a physical document like a Word

17  document but, instead, a PowerPoint, I would, I would intend

18  for that to be inclusive of things like PowerPoints or

19  spreadsheets.  Any, any form of data that went back and

20  forth between the two witnesses and people at Ethicon that

21  touched on the subject of the consulting relationship would

22  be included in that Request Number 1.

23          MAGISTRATE JUDGE EIFERT:  All right.  And then, of

24  course, Number 2, you're just talking about actual

25  pathology.  And that's the same for Number 3.  You're

1   talking about pathology such as slides and blocks, physical

2   pathology.

3           MR. GAGE:  I think that's correct, Your Honor.

4           MAGISTRATE JUDGE EIFERT:  Then Number 4 --

5   Category 4 is -- I mean, wouldn't that already be sort of

6   encompassed, at least the Ethicon portion of it, in Number

7   1?

8           MR. GAGE:  The Ethicon portion would -- Judge,

9   could you read Number 4 to me?  I'm trying to find those.

10          MAGISTRATE JUDGE EIFERT:  Yeah.  It says "All

11  documents and data concerning either the Ethicon or

12  non-Ethicon pathology in deponent's possession, custody, or

13  control," which, quite honestly, --

14          MR. GAGE:  Right.

15          MAGISTRATE JUDGE EIFERT:  I don't -- that is so

16  broad, and I don't know what your entitlement would be to

17  receive pathology that has nothing to do with Ethicon.

18          MR. GAGE:  Your Honor, I --

19          MAGISTRATE JUDGE EIFERT:  Yes.

20          MR. GAGE:  Both with respect to 3 and 4, to the

21  extent that those made requests related to non-Ethicon

22  documents and non-Ethicon pathology, we had -- you know

23  how -- Your Honor remembers that we prepared a proposed

24  stipulation to send to the plaintiffs on how to handle this.

25  And we weren't able to work that stipulation out.

1      In the stipulation we made it clear that the, the

2  purpose of asking for the non-Ethicon documents and

3  pathology is really to say, "We are hereby making a formal

4  request for that material if you intend to rely upon it as

5  the, to form the basis of any of your opinions and/or if you

6  intend to testify about any of that material in front of a

7  jury."

8      The, the point -- and we included a provision in the

9  proposed stipulation.  The point was to say, "Hey, if you're

10  going to use it, we want it.  If you're not going to use it,

11  we will, we will be moving the Court to exclude it because

12  if you're not going to give it to us, you shouldn't be able

13  to rely on it."

14      So, that's really kind of the reason that we made the

15  request.  Frankly, you know, we hope they don't rely on it

16  and we hope they don't produce it because we don't want to

17  get into that stuff.  But if they do, then we had to at

18  least have a formal request out there for it.

19          MAGISTRATE JUDGE EIFERT:  So, what you're actually

20  asking for when you're asking for non-Ethicon materials

21  would be materials that would form the basis of the opinions

22  or statements or testimony of these experts.

23          MR. GAGE:  That's correct, Your Honor.

24          MAGISTRATE JUDGE EIFERT:  All right.  And if,

25  if -- because, honestly, I could just see that as being a

1    huge disaster for you to receive blocks of tissue that have

2    absolutely nothing to do with Ethicon or mesh.  But, but if

3    you, if you think you've got that worked out, I'm not going

4    to worry too much.  That's sort of a side issue anyway.  So,

5    the --

6              MR. GAGE:  Well, we actually haven't worked it out

7    because we couldn't -- we were not able to reach agreement

8    on the, on the terms of that stipulation.  So, I mean, --

9              MAGISTRATE JUDGE EIFERT:  So, --

10             MR. GAGE:  We haven't really formally worked them

11   out.

12             MAGISTRATE JUDGE EIFERT:  Shouldn't your -- should

13   your subpoena not ask for any documents or materials,

14   pathology slides or whatever that form the basis of any of

15   your opinions or testimony, or anticipated testimony rather

16   than just asking for all pathology blocks?

17             MR. GAGE:  Your Honor, this -- you may remember --

18   I think these depo notices and document requests were issued

19   before the plaintiffs had formally designated either of

20   these two individuals as experts.  Now, -- and these were

21   the depo notices really for their fact depositions.

22             MAGISTRATE JUDGE EIFERT:  Okay.

23             MR. GAGE:  And, so, we will be -- I'm sure we'll

24   be issuing -- in connection with Drs. Klinge and

25   Klosterhalfen, since they've now been designated as experts,

1    I'm sure we'll be issuing standard document requests to all

2    the plaintiffs' experts including Drs. Klinge and

3    Klosterhalfen that would have those standard requests that

4    say, you know, any and all documents and things you rely

5    upon that form the basis for your expert opinions.

6              MAGISTRATE JUDGE EIFERT:  Okay.

7              MR. GAGE:  If those haven't already gone out, I'm

8    sure they will be going out.

9              MAGISTRATE JUDGE EIFERT:  Okay.  Then the last

10   category you have are documents including e-mails that

11   pertain to deponent's work as a former Ethicon consultant

12   and would reflect any communication with any individual who

13   at the time of the communication was an Ethicon employee.

14       So, that's again encompassed, I would guess, in Number

15   1.

16             MR. GAGE:  It was a -- yes, Your Honor.  It's kind

17   of a bootstrap just to make sure -- in case anybody had any

18   question, we, we specifically want to make sure we covered

19   it.

20             MAGISTRATE JUDGE EIFERT:  Now, what this article

21   convinced me of is that much of the metadata that's out

22   there is really not helpful and is not relevant to any issue

23   that would come up.  And it talks a lot about how a document

24   under Rule 34 when it's electronic should be considered and

25   what should be considered part of that document when you're

1   talking about metadata.  And it made a lot of sense to me.

2       One of the things they suggested in this article is

3   that the document would be essentially what the person sees

4   on the screen, as well as any sort of metadata that would be

5   needed to use the document.

6       For example, if you had a spreadsheet, you would need

7   whatever the metadata is that would allow you to run that,

8   run the data that's on that spreadsheet, but not necessarily

9   all of the categories of metadata such as, you know, the

10  formatting and the organization and the location of where

11  it's stored and who created it and who accessed it and that

12  type of thing.

13      So, I'm kind of inclined to not allow you to have just

14  all of the metadata.  I think what I'm, what I'm thinking is

15  probably going to be necessary would be if there are

16  databases or spreadsheets, and I don't know that there are,

17  then you would likely be entitled to whatever metadata you

18  would need to be able to use that document, but really not

19  the other, other aspects, other types of metadata.

20      The other --

21          MR. GAGE:  Your Honor, this --

22          MAGISTRATE JUDGE EIFERT:  Yes.

23          MR. GAGE:  Oh, I'm sorry.  Go ahead.  I'm sorry.

24  I didn't mean to interrupt you.  I thought you were

25  finished.  It may be better for you to finish and then I'll

1    ask a question.

2          MAGISTRATE JUDGE EIFERT:  All right.  So, that

3    kind of deals with the sort of thing like PowerPoint

4    programs and -- or PowerPoint presentations and databases

5    and spreadsheets.

6       Then when you talk about e-mails, there is, there's a

7    lot of -- apparently it's not really all that difficult to

8    just copy a native file e-mail and have all of the metadata

9    related to that.  I'm not sure that you really need all of

10   it, but if it's easy to do and there's no problem with doing

11   that, then that might be a way to go with e-mails.

12      The, the final thing would just be like Word documents.

13   And, and there I'm not certain why you would need all that

14   metadata unless you have some specific reason why you would

15   need to know who created it, who accessed it, what changes

16   were made, and so forth.

17      So, that's sort of the way I'm leaning.  Now, tell me

18   what you all think about that.

19          MR. GAGE:  Judge, this is William Gage.  I guess

20   here's my thought.  You know, the thing about metadata is,

21   you know, the way that it, certainly with discovery between

22   parties, everybody has to pretty much produce an amount.

23   I'm pretty sure we're -- Ethicon is having to produce

24   metadata, at least certain types of metadata under the

25   various orders that have been entered.  And, of course, a

1    lot of times you don't need the metadata.  It's stuff that

2    doesn't matter.  But in some cases, it can be pretty

3    important.

4        I think what I would ask Your Honor the leave to do is

5    once we get the, the information from the two witnesses, we

6    would like the ability -- I don't want to foreclose the, the

7    door to open if, if we could come back to Your Honor -- if,

8    if we look at the stuff and it looks like maybe there is a

9    document we really do need the metadata for, we could make a

10   particularized showing for that particular document or group

11   of documents.  And, and I think that may be a good way to

12   let us -- you know, because it's hard talking about it in

13   the dark.

14       But once we physically get the documents, we can look

15   at -- if something really peaks our interest where we have a

16   reason we need the metadata, then we can come back to Your

17   Honor and say, "Judge, this is one where we really need it."

18             MAGISTRATE JUDGE EIFERT:  I think that makes a lot

19   of sense.  And I'm glad that's where you want to go with

20   this.  I, I don't know --

21       Mr. Gage, have you and Mr. Rubin looked at this article

22   on "Rationalizing Discovery of Metadata"?

23             MR. GAGE:  I have not, Judge.

24       Gary, have you looked at it?

25             MR. RUBIN:  No.  I don't know what -- I apologize,

```
 1    Your Honor.  I don't know what you're referring to.

 2              MR. WALKER:  This is Eric Walker.

 3              MAGISTRATE JUDGE EIFERT:  Yeah.

 4              MR. WALKER:  I'm sorry.  I just sent it to them,

 5    Your Honor.

 6              MAGISTRATE JUDGE EIFERT:  Okay.  I really, I

 7    really found this article to be very commonsensical and

 8    useful.  And I think as I was reading the cases, seeing the

 9    different approaches that the courts took, I really didn't

10    have any understanding as to why some were going some way

11    and some were going other ways.

12       And I think this article really helps, or helped me,

13    anyway, to see that maybe the, the standards that some of

14    the courts are using to make their determination is

15    really -- doesn't make the most sense.

16       So, what I'd like you to do, Mr. Gage, Mr. Rubin,

17    defendant, is when you -- when and if you come back and

18    request metadata, to read this article and then maybe we can

19    be sort of talking off the same page because I think it is

20    very helpful.

21       And it doesn't take a position one way or the other.

22    It's not, it's not biased to one side or the other.  It just

23    really talks about different types of metadata and how you

24    use it and what you need and what you might find out there.

25              So, it sounds to me, though, like you -- I mean, I'm
```

1    certain the plaintiffs don't have any objection to producing

2    the documents in hard copies as they've already done and

3    just letting Ethicon decide if it needs metadata in the

4    future.

5            MR. AYLSTOCK:  No, Your Honor.  I think that's --

6    in fact, I think I suggested that at the last conference.

7    But --

8            MAGISTRATE JUDGE EIFERT:  Well, and I think that

9    was, I think that was suggested, but I didn't, I did not

10   understand that there had been any agreement to that.  I

11   thought we still had this issue looming out there.  So, --

12           MR. GAGE:  No, we, we -- that's correct, Your

13   Honor.  We still had the issue looming.  But, I mean, you

14   know, I mean, in light of Your Honor's -- I mean, you know,

15   Your Honor's leaning, we, we appreciate it and we thank you

16   for looking at it.  And, and, you know, typically we would

17   (recording inaudible) like Ethicon's producing to the

18   plaintiffs, but we understand Your Honor's position and, you

19   know, as long as we can come back.

20       If we see some stuff -- as Your Honor knows, one of the

21   big issues is going to be what were these consultants

22   telling Ethicon and at what time because that's obviously

23   kind of the big factual issue.  And if, if there's material

24   that, that they produce to us in hard copy that, you know,

25   goes to that particular issue, there may be other relevant

1    issues.  But if there's something like that and we feel the

2    metadata is something we need to look at, we can just come

3    back.

4              MAGISTRATE JUDGE EIFERT:  Well, I, I think that's

5    a good idea.  And I do -- I think one of the points that

6    they try to make in this article is that there are certainly

7    going to be times when you need the metadata.  But it's

8    usually going to be on a case by case basis for most of the

9    metadata, although some things you have to have just to be

10   able to use the document.

11        So, I think that's a distinction that they make, and

12   that makes a lot of sense to me.  And I think -- you know, I

13   believe what you're all doing, and I haven't looked at your

14   electronic discovery protocol for a while, your ESI

15   protocol, but you're not producing all the metadata, are

16   you?  I thought you had just certain categories of metadata

17   you had to produce.

18             MR. AYLSTOCK:  That's correct, Your Honor.

19             MAGISTRATE JUDGE EIFERT:  Yeah, okay.

20             MR. GAGE:  Your Honor, one thing -- I'm sorry.  Go

21   ahead.

22             MAGISTRATE JUDGE EIFERT:  No.  Go ahead.

23             MR. GAGE:  This is William Gage, Judge.

24        One thing that I think probably makes sense for us to

25   do under these circumstances is I think it would be

1  important for the plaintiffs to notify Drs. Klinge and

2  Klosterhalfen of the Court's ruling, and then also for them

3  to take the steps that would be necessary to preserve, you

4  know, not only the documents in their native format, but the

5  metadata so that in the event we made a request, you know,

6  for the metadata that, that we would not run into an issue

7  where the metadata has been spoliated.

8        MR. GARRARD:  Judge, this is Henry Garrard.  I am

9  involved with Dr. Klosterhalfen.

10        MAGISTRATE JUDGE EIFERT:  Yes.

11        MR. GARRARD:  I have already instructed

12  Dr. Klosterhalfen that he is to preserve everything he has.

13  We're not going to destroy anything.

14      There is one issue that I do need to raise.  And that

15  is in the request that they had made, we have interpreted it

16  to call for any pathology reports that he rendered in regard

17  to explants that Johnson & Johnson was involved in having

18  him look at.

19      Under the German laws, he cannot produce the patient

20  identifying information.  And, so, I have told him to

21  produce that with the names, for example, redacted from the

22  reports because he cannot disclose that under German law.

23      And I would say to Mr. Gage that if there is some issue

24  when we produce the stuff to him, if he'll let me know, we

25  will try to rectify it with one caveat.  And that is

1   Dr. Klosterhalfen is going on vacation for ten days

2   starting, I believe, the 27th.  So, it could be at the very

3   tail end that I'm able to rectify that.  But I wanted you to

4   know that.

5              MAGISTRATE JUDGE EIFERT:  Mr. Garrard, let me ask

6   you, so, does that also mean that Dr. Klosterhalfen is not

7   giving you any of the names?

8              MR. GARRARD:  He, he is to produce to me the

9   documents without the names.

10             MAGISTRATE JUDGE EIFERT:  All right.  Now, one

11  thing that you might, you might want to do, and this is just

12  a thought, is for some of these cases that are coming up,

13  your trial cases, you might want to give him those names so

14  that you could, through the plaintiff, connect the pathology

15  report with the patient if it's, you know, because I, --

16             MR. GARRARD:  Sure.

17             MAGISTRATE JUDGE EIFERT:  -- because I think it

18  might really be relevant to know the names for the

19  particular patient whose case is being tried.

20             MR. GARRARD:  If it is such as that, we'll do

21  that.

22             MAGISTRATE JUDGE EIFERT:  Okay.

23             MR. GARRARD:  I'm not aware that that is the case,

24  Your Honor.

25             MAGISTRATE JUDGE EIFERT:  Okay.

1           MR. GARRARD:  But if, if so, I certainly -- I

2    understand that.

3           MAGISTRATE JUDGE EIFERT:  All right.  Okay.  Well,

4    I appreciate again you all getting together, especially on

5    such short notice.  And this has been helpful to me.  I'm

6    not going to issue any sort of order at this point because

7    it sounds like we have an agreement that the documents will

8    be produced at this point with no metadata, just in a hard,

9    hard copy fashion.  And that if the issue needs to be

10   explored further, you'll come back.

11          MR. GARRARD:  Yes, ma'am.

12          MAGISTRATE JUDGE EIFERT:  All right.

13          MR. GAGE:  Yes, Your Honor.  And I think, I

14   think -- and forgive me if we already have e-mails on this.

15   But, Your Honor, I think the parties are -- I know we wrote

16   you a letter and said we were going to try to get all this

17   stuff done -- I think it was October 31.

18          MAGISTRATE JUDGE EIFERT:  Yes.

19          MR. GAGE:  And then I, I don't know if we ever

20   closed the loop on when the plaintiffs were going to give us

21   their documents.  But I think they've proposed what,

22   basically a simultaneous exchange, Bryan and Ben.  And, Your

23   Honor, that's fine with us if that's still --

24      How do you all want to handle it?

25          MR. AYLSTOCK:  Yeah.  This is Bryan.  I think

1    that's fine, at least with regard to Dr. Klinge.  I don't

2    know about Dr. Klosterhalfen's vacation schedule.

3        Henry, does that --

4        MR. GARRARD:  I'm going to do everything I can to

5    get the documents that he's got prior to his vacation.  He

6    knows that.  And I would anticipate we can meet the

7    October 31 schedule.  If there's a problem, I will let you

8    know promptly, but I don't anticipate one.

9        MAGISTRATE JUDGE EIFERT:  The depositions are

10   still scheduled then in mid November?

11       MR. GARRARD:  Scheduled for the 9th and 10th of

12   November, Your Honor, for Dr. Klosterhalfen.

13       MAGISTRATE JUDGE EIFERT:  All right.  Great.

14   Okay.  Well, --

15       MR. AYLSTOCK:  Judge, before I let you go, or you

16   let me go, we were having a discussion on the plaintiffs'

17   side, and I haven't had a chance to ask if this is okay with

18   Mr. Gage and his team, but we were thinking that the

19   discovery conference that I think is scheduled for this

20   Friday can probably be pushed back at least a week at this

21   point given kind of where we're at with things.

22       MR. GAGE:  Your Honor, this is William Gage.  I

23   think that's fine.  I know I polled my people and they had

24   one issue they wanted to discuss.  But, frankly, it's

25   something I think doesn't -- it's not ripe yet.  We just

```
 1    need to talk to Ben Anderson about it.  So, we're fine with

 2    that.

 3               MAGISTRATE JUDGE EIFERT:  Okay.  Well, what I'll

 4    do is not reschedule it at all.  And then if you need to

 5    have something before the two weeks from Friday, just let me

 6    know.

 7               MR. AYLSTOCK:  Fair enough, Judge.

 8               MAGISTRATE JUDGE EIFERT:  Okay.  Thanks again.

 9               MR. GAGE:  Thank you very much, Judge.  We

10    appreciate your doing this.

11               MR. AYLSTOCK:  Thank you, Judge.

12               MAGISTRATE JUDGE EIFERT:  You're welcome.

13    Bye-bye.

14         (Proceedings concluded)

15

16

17

18

19

20

21

22

23

24

25
```

1          I, Lisa A. Cook, Official Reporter of the United

2   States District Court for the Southern District of West

3   Virginia, do hereby certify that the foregoing is a true and

4   correct transcript, to the best of my ability, from the

5   record of proceedings in the above-entitled matter.

6

7

8          s\Lisa A. Cook                    October 28, 2013

9              Reporter                            Date