**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

---------------------------------------------------------  x

**IN RE ETHICON, INC., PELVIC REPAIR** :    **CIVIL ACTION NO. 2:12-md-02327**
**SYSTEM PRODUCTS LIABILITY** :
**LITIGATION** :    **MDL No. 2327**

--------------------------------------------------------- :

This Document Applies To All Plaintiffs     :    Judge Joseph R. Goodwin

---------------------------------------------------------  x

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR ORDER TO SHOW**
**CAUSE WHY CLAIMS SHOULD NOT BE DISMISSED BASED UPON LACK OF**
**STANDING AND/OR JUDICIAL ESTOPPEL**</u>

Plaintiffs, though Co-lead Counsel, state as follows for their Opposition to Defendant's

Motion For Order To Show Cause Why Claims Should Not Be Dismissed Based Upon Lack Of

Standing And/Or Judicial Estoppel:

**INTRODUCTION**

These defendants – like the other MDL defendants – have loudly protested the filing of

so-called "shotgun" complaints, wherein all MDL defendants and products are identified.  The

Court has made it clear that such filings are improper, and has taken action to prevent such

filings.  This motion suffers from the same legal infirmity as the "shotgun" complaints that these

Defendants have railed against, and that led the Court to warn that the filing of "shotgun"

complaints is potentially sanctionable under Rule 11.  Ethicon's Motion to show cause is

identical in every one of the cases where it has been filed, and fails to cite to any case-specific

facts or to identify the legal standards applicable to any given case.  Moreover, the motion is

couched entirely in equivocal terms like "[t]o the extent that…" and "[i]f Plaintiff sought

bankruptcy protection…," thereby conceding that it may not actually be applicable to any given

case in which it has been or is to be filed.  The individual plaintiffs in these 568 cases and the

1

Court cannot be required to do the Defendants' work, which is to determine whether this blanket Motion is applicable under the facts or law in any case where it has been filed. Defendants' effort to sidestep potential bad faith sanctions under Rule 11 by couching their requested relief as an order requiring the Plaintiffs to "show cause" is unavailing. Instead of the individual Plaintiffs in these cases being required to file 568 separate responses to the same generic Motion, the MDL 2327 leadership is filing this omnibus response in opposition to Defendant's Motion to Show Cause, and will show that this motion is a procedural and legal nullity that should be withdrawn in every case where it has been filed.

Ethicon's Motion represents an absolutely unprecedented attempt to reverse its burden as movant, and thereby force 568 plaintiffs to come in to this Court and essentially "prove a negative," that is to say, to prove that their case is **<u>not</u>** subject to dismissal. The two legal issues presented in this Motion—real party in interest and judicial estoppel—are affirmative defenses as to which the Defendant bears the burden of proof at trial. In order to be entitled to judgment as a matter of law on these affirmative defenses, Defendant must tender sufficient evidence to prove its defenses. Here, Ethicon has not even attempted to point to any case-specific evidence—or even to establish which law would apply to any given case. Instead, Ethicon filed an identical and generic motion to show cause in the MDL, coupled with a notice of intent to file the same generic motion in at least 568 individual cases within MDL 2327. To date, Ethicon has filed this same "shotgun" motion in dozens of individual cases in this MDL. Ethicon cannot legally shift its burden to the Plaintiffs, and it cannot force the Plaintiffs and the Court to determine whether it had any legal or factual basis upon which to file this Motion in any given case, and to do so would constitute reversible error.

Ethicon's Motion should be denied for several reasons; including but not limited to: (1) Ethicon's complete lack of any factual or legal support for the Motion in any given case in which it has given notice of intent to file; (2) Ethicon's legally improper effort to shift the burden of proof for its affirmative defenses to the Plaintiffs; (3) the requested case-specific determinations will not further the purposes of this MDL; and (4) the unnecessary burden and delay that would result from the Court's consideration of 568 separate motions, as to which the Defendants have made zero effort to determine the applicable facts or law.

Ethicon cites to dozens of cases for general principles of bankruptcy law—but ignores the real issues and obstacles that are raised through this Motion.  Indeed, Ethicon entirely ignores the numerous and dispositive issues of case-specific fact and law that render the Court's determination of 568 show cause orders completely impractical.  Deciding these case-specific factual and legal issues would require the parties to take discovery in practically every one of the cases at issue (*e.g.* to determine when the claim arose, or if the plaintiff's nondisclosure of her claims was "intentional" as required under Fourth Circuit judicial estoppel law).  Moreover, the Court must also sort out the numerous choice-of-law issues presented in each case—issues that will prevent any sort of universal application of law to all of the cases.

And in the end, even in cases where the facts do establish that a plaintiff failed to include her claims in her bankruptcy estate, that deficiency is not necessarily fatal to the case—but is a curable defect.  In fact, Federal Rule 17 *requires* the Court to allow the bankruptcy trustee the opportunity to appear and proceed with the claims on behalf of the estate.  In other words, even after the parties and the Court have gone to all of this effort, and the Court has answered all of

these case-specific questions of law and fact,[1] the ruling may have no effect on whether a case is ultimately dismissed.

There is no reason why the parties should not first attempt to work together, without requiring the Court's intervention, to eliminate the need to answer these questions (real party in interest and judicial estoppel) wherever possible.  Plaintiffs' counsel previously proposed this course of action to Ethicon—and would still be willing to do so.  However, in response to their offer, Plaintiffs' counsel received the Motion currently pending before the Court, with the Defendants' stated intention of filing this same Motion 568 times.  Ethicon's stated intention to file this same generic Motion in 568 individual cases without first inquiring into the circumstances of the bankruptcies (through counsel or otherwise) borders on an abuse of process and represents an affront to the principles of motion practice.  It also reflects a lack of concern for the resulting waste of the limited time and resources of the Court.  It will only result in delay and wasted effort.

## BACKGROUND

On November 1, 2013, Ethicon filed what it styled as a "Notice of Intent to File Defendants' Motion for an Order to Show Cause Why Claims Should Not Be Dismissed Base[d] Upon Lack of Standing and/or Judicial Estoppel" (Dkt. No. 906), and therein stated that it intended to file the same motion in 568 individual cases.  In each individual case listed in the attachment to the Notice, Ethicon will be asking for identical relief: for the Court to enter an Order requiring the Plaintiff(s) in each of those cases to "show cause" why their cases should not be dismissed.  In other words, Ethicon seeks an order requiring the plaintiffs in 568 separate

---

[1]     After all of the facts have been collected, the Court would then have to hold a separate hearing in each of the hundreds (and potentially thousands if the other MDL defendants follow suit) of cases in order to make a determination of both fact and law.  Alternatively, the Court could require briefing based upon the applicable facts and law in each case and jurisdiction.  Either way, this process could easily take hundreds (if not thousands) of hours of the Court's time.

cases to prove why their case should not be dismissed, rather than Ethicon—as the movant–proving whether the plaintiffs' cases may be subject to dismissal.[2]   As Ethicon has essentially filed one Motion (568 times), Plaintiffs file this response brief in opposition to all of Ethicon's individually-filed Motions.

Prior to the filing of this Motion, Plaintiffs' Co-lead Counsel reached out to counsel for Ethicon in an attempt to lessen the burden placed on the parties and the Court by the issues raised in this Motion; defense counsel essentially ignored those efforts.  More specifically, Plaintiffs' counsel suggested that Ethicon provide Plaintiffs' counsel with a list of claimants and categories for which it believed dismissal may be appropriate.  Plaintiffs' counsel would then work to eliminate the necessity for a motion in some (or many) of the cases.  Based on the parties' discussions, Plaintiffs' counsel believed that Ethicon had agreed to provide such a list, and to work with them to limit (or eliminate) the need for motion practice.  On October 24, 2013, Plaintiffs' counsel again reached out to counsel for Ethicon—following up on Ethicon's perceived agreement to provide a list of claimants in order to "clear out the underbrush" and resolve issues in some of the cases without motion practice.  Exhibit 1, Email from Bryan Aylstock to Christy Jones of 10/24/13.  Ethicon however never responded to Plaintiffs' counsel's efforts to obtain the list of bankruptcy cases in advance so that efforts could be made to work together toward a solution.  Instead, it simply started filing its Motion in each of the 568 cases on November 4, 2013.

---

[2]    Ethicon has filed one Motion asking for identical relief from the Court—it just filed that Motion 568 times.  The Motion is not tailored to the law applicable in any individual case, nor does it even attempt to identify the law that would be applicable to any given case.  Likewise, the Motion is not addressed to the facts of any specific case. The fact that Ethicon has filed this same Motion in 568 separate cases does not change the fact that this is one motion seeking identical relief in every case.

**ARGUMENT**

**I.    ETHICON'S REQUEST IS NOT PROPERLY BROUGHT**

**A.  Ethicon's Motion is Based on Mere Speculation**

The only fact that Ethicon points to in support of any of the 568 Motions it filed is that the  plaintiffs had—at some time in the past—filed bankruptcy (in some form).  While it is certainly true that bankruptcy could, potentially have an effect an individual plaintiff's ability to bring her claims, Ethicon has no idea which, if any, of the 568 cases this Motion applies to.  That fact alone deems Ethicon's filings vexatious and baseless.

Ethicon's Motion is couched entirely in equivocal terms like "[t]o the extent that…" and "[i]f Plaintiff sought bankruptcy protection…," (Def's Brf. at 2) and thus concedes on its face that it may not even be applicable to any given case in which it is to be filed.  Despite this admitted lack of information, Ethicon is so bold as to make the assertion: "Plaintiff's position in this litigation—that she is entitled to monetary relief against Defendants—is inconsistent with her positions before the bankruptcy court—that no such claims existed." *Id*.  Ethicon makes this accusation of impropriety across the board, without any reason to believe that it is true in many, if not most, of the cases at issue.

The sole fact that a plaintiff indicated in her Plaintiff Profile Form that she has previously filed for bankruptcy protection does not provide a sufficient basis for Ethicon's Motion.  At best, it provided Ethicon with a basis to begin a factual inquiry into the timing and circumstances of that bankruptcy.  Ethicon simply chose not to make that effort to collect the necessary information.  In addition to simply responding to Plaintiffs' counsels' effort to meet and confer

6

to resolve these potential issues (referenced above),[3] Ethicon could have sent letters to the individual plaintiffs' counsel and sought the relevant information necessary to narrow down the number of cases subject of this Motion.   At the very least, it should have pulled-up the PACER dockets in plaintiffs' bankruptcy cases to determine if the claims were included in the list of assets of the estate, and to compared the date of a plaintiff's explanation (or the date that the complaint was filed) to the date of closing of the bankruptcy estate.   While those efforts could not possibly establish that Ethicon's Motion was meritorious in any particular case—discovery would still be necessary to establish factual issues such as the date the claim arose and whether any nondisclosure was "intentional" before merit could be assessed—it is certain that minimal efforts such as those would have significantly reduced the number of cases at issue—because it would have removed many cases from the realm of possible consideration.   Unfortunately, none of this was done.   Indeed, Ethicon apparently made zero effort to determine the factual grounds for its Motions.[4]   There is no justification for Ethicon burdening the Court with 568 Motions without first taking reasonable steps to determine which Motions have a factual or legal basis.

As a result of Ethicon's "shotgun" approach, it appears that this Motion has been improperly filed in countless cases.   Plaintiffs' Co-lead Counsel has reached out to other plaintiffs' counsel (with cases subject to this Motion) in order to discuss Ethicon's claimed deficiencies in their cases.   Based on information provided by some plaintiffs' counsel, it is

---

[3]     Had Ethicon attempted to work with Plaintiffs' counsel, it is possible that the parties could have completely nullified the need for any motion practice—let alone the request for a show cause order in 568 cases.

[4]     Ethicon's brief includes a footnote stating "Defendants have endeavored to exclude Plaintiffs whose only disclosed bankruptcy was closed prior to implant surgery."  Def's. Brf. at 2 fn. 1.  Ethicon provides no explanation, however, as to what those efforts were, and it apparent that whatever efforts were undertaken did not effectively exclude those claims.  And as explained below, the implant surgery date is completely irrelevant to the date that the claims arose.  Moreover, there are numerous facts that Ethicon could—and should—have discovered before filing these motions.

likely that a large percentage of the cases identified do not possess either of the defects (real party in interest or estoppel) raised in Ethicon's Motion.   For example, Ethicon's Motion to show cause includes the action brought against it by Susan Swanger, Case Co. 2:13-cv-04501. Ms. Swanger filed for Chapter 7 bankruptcy on December 22, 1993 in Indiana, and her debt was discharged on March 30, 1994.  *See*, N.D. Ind. Case No. 1:93-bk-12100.  She was not even implanted with the subject mesh device until May 18, 2009.  Likewise, Plaintiffs' Co-lead Counsel have been informed that the bankruptcy estates of Chiquita Williams (Case No. 2:12-cv-06554) and Nell Owens (Case No. 2:13-cv-19589) were closed prior to the women being implanted with their pelvic mesh devices.  In fact, with regard to at least some of the cases referenced by Ethicon, Laura Piper (Case No. 2:12-cv-02189), Carolyn Lewis (Case No. 2:12-cv-4301), Carol Glasgow (Case No. 2:12-cv-1367), Yovante Rabun (Case No. 2:12-cv-7423), Sheryl Wellman (Case No. 2:13-cv-12059), Patrice Conrath (Case No. 2:12-cv-6823), and Trudy M. Usey (Case No. 2:12-cv-2960), the plaintiff never even filed for bankruptcy and did not indicate such in her PPF.  These are certainly just a few of the many examples where Ethicon's Motions will prove to be (after discovery and briefing) completely without merit or justification.

Ethicon claims that this Motion is meant to cull "inflated inventories" and prevent Plaintiffs' counsel from being able to "park" cases and "play[] fast and loose with the courts." Def's Brf. at 1 and 10.  However, due to its deprecating language and lack of specific factual support, it appears that the real purpose of Ethicon's Motion is to malign Plaintiffs' counsel without justification.

**B.  Ethicon Improperly Seeks To Shift the Burden On Its Own Affirmative Defenses to Plaintiffs, contrary to well-established law.**

Ethicon's request for a show cause order is entirely improper in that it attempts to shift Ethicon's burden of proving its own affirmative defenses unto the plaintiffs in each of the 568 cases.

First, numerous courts have held that judicial estoppel is an affirmative defense upon which Ethicon carries the burden of proof.  *See, e.g., United States ex rel. Am. Bank v. C.I.T. Constr. Inc.,* 944 F.2d 253, 258–59 (5th Cir.1991); *Hansen v. Harper Excavating, Inc.,* 641 F.3d 1216, 1227 (10th Cir. Apr 13, 2011); *Abara v. Altec Indus.*, 838 F. Supp. 2d 995, 1006 (E.D. Cal. 2011).  In fact, in a recent decision from the Northern District of California, the court held that judicial estoppel is not only an affirmative defense, but it will be stricken from the answer if it does not meet the pleading standards set forth in *Iqbal.*[5]  *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2013 U.S. Dist. LEXIS 151846 at *16-17 (N.D. Cal. Oct. 22, 2013) ( "… the Court concludes that judicial estoppel is a viable affirmative defense in the context of FLSA claims. The defense at issue, however, is insufficiently pleaded under *Iqbal's* heightened pleading standards.").

Likewise, Ethicon's claim that Plaintiff is not the "real party in interest" is an affirmative defense upon which it carries the burden of proof.  *See, e.g., Wolfson v. Nutt*, No. 2011 U.S. Dist. LEXIS 135512 (D. Kan. Nov. 23, 2011) ("In general, an objection regarding real party in interest is treated like an affirmative defense, which places the burden on the objecting party to show that the plaintiff is not the real party in interest."); *King Airway Co. v. Public Trustee of Routt County*, No. 95-1315, 1997 U.S. App. LEXIS 7622 at *5 (10th Cir. Apr. 17, 1997) (party asserting that opposing party is not the real party in interest has the burden of showing that the

---

[5]      *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

party is not the real party in interest); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, *Federal Practice and Procedure* § 1554 (1990) (objection to plaintiff's status as real party

in interest generally treated as "something in the nature of an affirmative defense").[6]

When a party moves for summary judgment on an affirmative defense—which is what

Ethicon is attempting to do here, albeit under the guise of a "show cause" motion—it "bear[s] the

burden of proof at trial and therefore must show that it has produced enough evidence to support

the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir.

2007). *See also*, *Dorris v. Accounts Receivable Mgmt., Inc.*, 2013 WL 1209629, *5 (D.Md.2013)

(defendant bears the burden of proof on summary judgment on affirmative defense).

Furthermore, all facts on summary judgment must be construed in a light most favorable to the

non-movant, and as the Fourth Circuit has observed, "[t]he non-movant is entitled 'to have the

credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and]

all internal conflicts in it resolved favorably to him." *Reese v. Alea London Ltd.*, 332 Fed.Appx.

135, 2009 WL 1426904, *2 (4th Cir. 2009) (*quoting Charbonnages de France v. Smith,* 597 F.2d

406, 414 (4th Cir.1979). Ethicon completely disregards its burden, and seeks to shift that burden

to 568 individual Plaintiffs. That is plainly improper. As recognized over four decades ago by

the Ninth Circuit, "[a] summary judgment is neither a method of avoiding the necessity for

proving one's case nor a clever procedural gambit whereby a claimant can shift to his adversary

his burden of proof on one or more issues." *U.S. v. Dibble*, 429 F.2d 598, 601 (9th Cir.1970).

Ethicon has pointed to no evidence whatsoever; it has not cited to a single fact other than

the broad allegation that the Plaintiffs who are targeted by their blanket motion indicated in their

---

[6]     Ethicon may point to jurisdictions treating "real party in interest" as something other than an
affirmative defense. Such a showing, however, would only support Plaintiffs' arguments that Ethicon's
requested relief would require the Court to determine a myriad of issues regarding the applicable law in
each individual case.

discovery responses that they have filed for bankruptcy. Thus, Ethicon unquestionably has not met its summary judgment burden. As the Sixth Circuit explained in its recent decision in *Byrne v. CSX Transp., Inc.*, 2013 WL 5995532, *2 (6th Cir.2013):

> A grant of summary judgment requires the district court to find that the movant met its burden of proving that there are no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Likewise, the defendant bears the burden of proof as to whether it is entitled to the benefit of an affirmative defense. *See Arnett v. Myers,* 281 F.3d 552, 561 (6th Cir. 2002). Federal preemption is an affirmative defense that requires the defendant on a motion for summary judgment to produce sufficient evidence, considered in the light most favorable to the nonmovant, to prove that there is no genuine issue of material fact as to whether federal preemption applies. *Brown v. Earthboard Sports USA, Inc.,* 481 F.3d 901, 913 (6th Cir. 2007). Only after, and not before, the initial burden of proof is discharged does the burden shift to the plaintiff to show that summary judgment on an affirmative defense should be denied. *Campbell v. Grand Trunk W. R.R. Co.,* 238 F.3d 772, 775 (6th Cir. 2001). The burden of proof will not shift to the plaintiff on an affirmative defense absent the defendant first discharging the initial burden. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970).

Were this Court to grant Ethicon's burden shifting motion, such would be akin to granting a motion filed by the Plaintiffs for an order to show cause why Ethicon's transvaginal mesh products did not cause injury to each and every plaintiff, or to requiring Ethicon to come forward with summary judgment evidence that it in fact did not commit fraud in making false statements about its products to physicians and/or to patients who received these products. Any such ruling would turn well established tort law on its head, and would be subject to reversal. In the same way, Ethicon cannot properly shift its burden to Plaintiffs to affirmatively *disprove* its affirmative defenses through a request for an order to show cause. *Hauman v. Secretary Pennsylvania Dept. of Corrections*, 421 Fed.Appx. 235, 239, 2011 WL 1226949, *3 (3rd Cir. 2011) ("To the extent that the Magistrate Judge placed the burden on [the plaintiff] to disprove the availability of [affirmative defense], the burden was unfairly placed."; summary judgment

reversed); *Warren v. Sessoms & Rogers, P.A.,* 676 F.3d 365, 375 (4th Cir.2012) (where the defendant bears the burden of proof on an affirmative defense, the trial court commits reversible error by "turn[ing] the defense on its head" and shifting the burden to the plaintiff to disprove defense).

## II.    THE PROPOSED CASE-SPECIFIC DETERMINATIONS WOULD NOT FURTHER THE PURPOSE OF THIS MDL

The individualized issues of fact (and state law) presented in these motions are not common to the vast majority of the cases in this MDL.  As such, the purpose of this MDL will be hampered—not promoted—by the determination of case-specific questions relating to bankruptcy issues.  The discovery, briefing and hearing of these issues will only waste the limited resources of the parties and the Court—resources that would be better used to resolve issues that are common to all cases in this MDL.  In short: none of the case-specific determinations made in this process would have any effect on the merits of Plaintiffs' claims in this MDL, and would only serve to unnecessarily burden the parties and the Court.   And, in several cases, even after the parties and the Court have gone to all of this effort, and the Court has answered all of these case-specific questions of law and fact, the ruling may have no effect on whether a case is ultimately dismissed because Federal Rule 17 *requires* the Court to allow the bankruptcy trustee the opportunity to appear and proceed with the claims on behalf of the estate.

As other MDL courts have opined, the primary purpose of a multidistrict litigation is the promotion of "efficiency through the coordination of discovery."  *In re: Nuvaring Prods. Liab. Litig.*, No. 4:08MD1946-RWS, 2009 WL 4825170, at *2 (E.D. Mo. Dec. 11, 2009) (citing *In re: Orthopedic Bone Screw Prods. Liab. Litig.*, 1997 WL 109595, at *2 (E.D. Pa. Mar. 7, 1997).  Indeed, case-specific rulings "are neither the purpose, nor the forte, of a court presiding over a

multi-district litigation." *Id.* (quoting *In re: Phenylpropanolamine Prods. Liab. Litig.*, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 3, 2004)). Instead, the function of an MDL is to "promote judicial economy and litigant efficiency by allowing the transferee court to preside over matters *common among all cases.*" *Id.* (emphasis added).

Ruling on cumbersome, case-specific legal issues does not promote resolution of common issues or coordination of discovery, especially where these case-specific issues only exist in a handful of cases. *See id.* Case-specific motions (such as the ones filed by Ethicon) only distract from the purpose of the consolidation and slow down the progress of the litigation. Further, the courts in which the transferred cases will be tried may be better suited to determine case-specific factual disputes and apply the local rules and law. *In re: Vioxx Prods. Liab. Litig.*, No. 2:05-md-01657-EEF at *20 (E.D. La. March 22, 2007); *see also* Manual for Complex Litigation, 4th ed. at *372 ("If the … motion pertains to one or few cases, or rests on application of the transferor court's conflicts-of-law and substantive law rules, the transferor judge may be able to decide the motions most efficiently."). This Court is charged with seeing this multi-district litigation through general discovery, not with determining every single legal issue in the thousands of cases that have been transferred to it. To attempt to do so would disrupt the purpose of the MDL process and delay the resolution of the litigation at large.

Moreover, if Ethicon is permitted (through a show cause order) to require each individual plaintiff to introduce evidence to support their claims or defeat Ethicon's affirmative defenses, then it is not difficult to foresee additional improper burden-shifting efforts by the defense. Based upon Ethicon's statement that "[t]his motion is Defendants' first effort to assist the court in identifying claims that should be dismissed" (Def's Brf. at 2), it appears likely that more motions for orders to show cause are currently being penned. The burden and inefficiency that

13

would result is the precise reason why the court in the Nuvaring MDL denied the defendant's 12(b)(6) motions. *In re: Nuvaring Prods. Liab. Litig.,* 2009 WL 4825170 at *3 ("This approach would require the parties to brief and this Court to review each complaint and each motion to dismiss and apply the particular laws of numerous states to test the sufficiency of each challenged claim.").  As pointed out by the Manual for Complex Litigation, "judicial time is the scarcest resource of all . . . ."  Manual for Complex Litigation, 4th ed. at *8.  This resource will be wasted on case-specific motions such as these as this MDL—and likely all six related pelvic mesh MDLs—would devolve into a series of similar undifferentiated defense motions requiring hundreds or thousands of individualized legal and factual determinations specific to individual cases, when little or no discovery of the actual facts in any of those specific cases has been conducted.

Finally, even if Ethicon got exactly what it seeks through this Motion, the end result would not eliminate a significant number (or large percentage) of cases.  As discussed above, Ethicon admittedly has no idea whether any of the cases are even properly subject of this Motion—and it plainly appears that the Motion is baseless in many cases.  And (as discussed below), even where its "real party in interest" assertions do find merit, the proper response is not to dismiss the case—but to allow an opportunity for the proper party to take over the case.  In the end, the amount of cases disposed of through this process would be insignificant in relation to the number of cases in this MDL.

III.    **THE LEGAL AND FACTUAL INQUIRY REQUIRED WOULD BE
        UNJUSTIFIABLY BURDENSOME**

What Ethicon's Motion proposes (separate discovery, briefing, and show cause hearings in 568 cases) is a practical impossibility.  Indeed, the process required would be so extensive and time consuming that Ethicon does not even attempt to suggest a procedure for accomplishing it—to do so would only bring the complexity and magnitude of what it proposes to light.  As explained in the following paragraphs, this Court cannot possibly decide these issues through a blanket motion or universal application of law—it would have to make numerous individual determinations of law and fact in each of the 568 cases.  The individual determinations outlined below would require discovery in many of the cases at issue—potentially including, among other things: the production and review of documents; multiple fact depositions; and affidavits of bankruptcy trustees.  Only then could the Court start to parse the facts and law necessary to rule on the issues.

   **A.  Issues Relating to Choice-of-Law and Application of Differing State Laws
        Cannot be Avoided**

Ethicon has completely ignored the fact that the relief requested in its cookie-cutter motions requires a choice-of-law analysis.  Ethicon should have provided a separate choice-of-law analysis in each and every Motion filed.  Instead, Ethicon apparently leaves that work to Plaintiffs (in their substantive responses should a show cause order be issued) and the Court.

The law of several different states will apply to many of the legal issues raised by Ethicon's Motion.  As the Supreme Court has held: "[b]ecause property interests are created and defined by state law, state law must be used to resolve questions involving property rights in the bankruptcy estate's assets, unless some federal interest requires a different result."  *Butner v. United States*, 440 U.S. 48, 55 (1979).  Additionally, the Fourth Circuit has concluded that the

15

forum state's choice-of-law rules should apply in the absence of a compelling federal interest. *See In re Merritt Dredging Co.,* 839 F.2d 203 (4th Cir. 1988) (stating that the determination of property rights in the assets of a bankrupt's estate is generally a matter of state law, and that a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits to determine the extent of a debtor's property interest).[7]  The analysis of these choice-of-law issues will only be further complicated in light of the direct filings in the MDL, and the Defendants' anticipated arguments over which State would be the appropriate venue for direct-filed cases in the event of remand in many cases.

The choice-of-law determinations must be made before the Court even gets into the merits of each motion (and the facts of each case)—which may also require different analyses depending on each state's law.[8]  For example, most jurisdictions hold that judicial estoppel must be determined in light of the state law applicable to the specific plaintiff's case. *See e.g. Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.,* 44 F.3d 925, 930 (11th Cir.1995); *S.J. Groves, & Sons Co. v. Fulton Co.,* 967 F.Supp. 501, 503 (N.D. Ga.1996) (diversity action; applying Georgia law of judicial estoppel).[9]

---

[7]     *See also, Statek v. Development Specialists, Inc. (In re Coudert Brothers LLP),* 673 F.3d 180 (2d Cir. 2012) (holding that bankruptcy courts should look to the choice-of-law rules of the state where the underlying prepetition complaint was filed).

[8]     For example, federal bankruptcy law authorizes exemptions applicable to the proceeds of personal injury claims. *See* 11 U.S.C. § 522(11).

[9]     Consistent with the well-established law in both the 5th and 11th Circuits, the 8th, 10th and D.C. Circuits have likewise held that a federal court is bound by the state's substantive law of judicial estoppel in a diversity action. *Konstantinidis v. Chen,* 626 F.2d 933, 937-938 (D.C.Cir.1980); *Monterey Development Corp. v. Lawyer's Title Insurance Corp.,* 4 F.3d 605, 608-609 (8th Cir.1993); *In re Osborn,* 24 F.3d 1199, 1207 and n. 11 (10th Cir.1994).  Even where federal law would apply, however, the application of judicial estoppel varies from circuit to circuit.

Ethicon cannot just ignore these issues, and the Court cannot possibly address these motions on a universal basis.  Simply put, it's not one-size-fits-all like Ethicon would seem to represent.

### B.  When the Claim "Arose" Must be Determined Separately in Each Case

Determining when a plaintiff's claim arose—when there was a "known cause of action"—is of primary importance to answering the question of whether or not a claim needed to be included in the plaintiff's bankruptcy estate.  It is an issue of fact that must be decided (through testimony and evidence) in each of the 568 cases.  Ethicon completely ignores the practical implications of this issue of fact.

It is just not as simple as Ethicon would seem to imply.  There can be no one date or occurrence that can be applied to all 568 of these plaintiffs to determine when their claims arose.  Courts can impose judicial estoppel only when the plaintiff has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, and subsequently fails to amend his or her schedules or disclosure statements to identify the cause of action as a contingent asset. *In re Family Dollar FLSA Litig.,* No. 3:08 MD 1932, 2009 U.S. Dist. LEXIS 52109 at *20 (W.D.N.C. June 19, 2009) (*quoting Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 784 (9th Cir. 2001).  For bankruptcy estate purposes, a "known cause of action" is a situation where the debtor knows of all the facts that were pertinent to debtor's lawsuit when he or she filed for bankruptcy, or where the facts underlying the cause of action were known to debtor before the plan was confirmed.  *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus.),* 183 B.R. 812, 821 (Bankr. N.D. Ill. 1995) (*quoting Hoffman v. First Nat'l Bank of Akron (In re Hoffman),* 99 Bankr. 929, 933 (N.D. Iowa 1989)).

Different states apply different legal analyses in determining when a claim accrued. For example, many states provide that a claim does not accrue until the Plaintiff is not only aware of the complications associated with the vaginal mesh device, but also the causal connection between the device and the medical issues. *See, e.g.*, *Williams v. Boston Scientific Corp.*, 2013 WL 1284185 (N.D.Ohio2013) (claim arising from January 1998 pelvic mesh implant did not accrue until less than two years before claim was filed in 2012, and noting logical incongruence of arguing that a claim could accrue before there has been a compensable injury); *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F.Supp.2d 1348, 1379-80 (M.D.Ga.2010) (finding questions of fact regarding when claims accrued in pelvic mesh MDL actions where factual dispute existed regarding the plaintiffs' individual knowledge of injuries and cause of those injuries). This is an intensive, complicated, fact-specific inquiry that will be hotly disputed in every case, and would require extensive discovery and deposition testimony in every one of these 568 cases. This is plainly not the sort of question that can be answered in the abstract in the context of a blanket Motion to Show Cause, which is entirely devoid of any factual analysis or legal explication.

### C. Judicial Estoppel is an Equitable Determination and Requires Consideration of the Facts of Each Case—and a Showing of Intentional Conduct in this Circuit.

The application of judicial estoppel is generally an equitable question and subject to the discretion of the court based upon the facts of the case. *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (mandating that judicial estoppel is a doctrine intended to prevent the perversion of the judicial process and is therefore an equitable doctrine invoked by a court at its discretion). The rationale for applying the doctrine of judicial estoppel in reference to bankruptcy cases is that the integrity of the bankruptcy system depends on the full and honest disclosure of debtors of all their assets. *USinternetworking, Inc. v. Gen, Growth Mgmt. (In re*

18

*USinternetworking, Inc.),* 310 B.R. 274, 282 (Bankr. D. Md. 2004).  It essentially prohibits

parties from *deliberately* changing positions according to the exigencies of the moment.

*Browning Mfg. v. Mims (In Re Coastal Plains, Inc.,* 179 F.3d 197, 206 (5th Cir. 1999).

      The Fourth Circuit has mandated that the party to be estopped must have acted

*intentionally*, not inadvertently, in the nondisclosure of its assets. *Folio v. City of Clarksburg,*

*W.V.,* 134 F.3d 1211, 1217-18 (4th Cir. 1998); *Lowry v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996)

(mandating that a party sought to be estopped must have intentionally misled the court to gain

unfair advantage); *see also, McCoy v. Am. Union Boiler Co,* No. 2:05-cv-00757, 2006 U.S. Dist.

LEXIS 14781 at *4 (S.D.W.V. 2006) (Goodwin, J.).[10]  Without any knowledge or foresight of a

potential lawsuit, a plaintiff still fulfills the purpose of judicial estoppel by honestly disclosing all

assets *that are known* to the plaintiff at the time of filing.  Therefore, inadvertency is presumed

when the debtor lacks knowledge of the undisclosed claim.  *Brockington v. Jones,* No. 4:05-

3267, 2 007 U.S. Dist. LEXIS 96248, *12 (D.S.C. Nov. 28, 2007).  It goes without saying that

depositions and discovery would have to be taken before the Court could determine whether a

_____

[10]    Different federal courts evaluate amendments to a bankruptcy schedule of assets in the context of judicial estoppel in various ways. There is no uniform manner of doing so.  In fact, the Federal Circuit Courts are divided on essential elements of the process.  All begin their analysis with the factors laid out by the U.S. Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742 (2001) (finding it appropriate to consider: (1) whether a party's later position is clearly inconsistent with a prior one, (2) whether it appeared that either the first or second court was actually misled, and (3) whether the party asserting the inconsistent position would gain an unfair advantage by reason of the inconsistency). The Supreme Court in *New Hampshire* also stated that "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *Id.* at 753. Certain circuit courts generally interpret the "inadvertence or mistake" language narrowly, reducing it to the dual questions of whether the debtor knew of the pending claim and had a motive to conceal it, thereby creating a "presumption of deceit." *See, e.g.*, *Eastman v. Union Pac. R.R. Co*., 493 F.3d 1151, 1157 (10th Cir. 2007); *Burnes v. Pemco Aeroplex, Inc*., 291 F.3d 1282, 1286-87 (11th Cir. 2002).  Some jurisdictions just require that an economic incentive (for plaintiffs to leave the claim out of the bankruptcy) exist in order for judicial estoppel to apply.  However, some jurisdictions require a showing of intentional conduct (to game the system) before claims are barred by judicial estoppel.  A jurisdiction by jurisdiction analysis of all judicial estoppel law is impracticable here.

plaintiff's nondisclosure of her claim was intentional or inadvertent.  Accordingly, any attempt to resolve these case-specific legal and factual issues would significantly burden the MDL.

### D.  The Nature of the Bankruptcy, and Whether the Claim was Disclosed, Abandoned or Assigned Must be Determined in Each Case

The Court will also need to determine if and when claims were disclosed in each case. As Ethicon recognizes, Plaintiffs are free to pursue claims on their own if they were abandoned by the bankruptcy trustee. Def's Brf. at 4.  Alternatively, the bankruptcy trustee has the ability to appoint special counsel to pursue the claims.  If either of those events occurred, Ethicon's Motion must be denied.

Additionally, Ethicon's real party in interest or standing arguments may not apply if a plaintiff went through Chapter 13 bankruptcy (as opposed to Chapter 7) because under Chapter 13 a debtor may be allowed to control property and pursue claims.  Unlike Chapter 7 where a debtor's assets are controlled by the bankruptcy trustee, Chapter 13 allows the debtor to retain possession of his or her property.  *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007).  Numerous courts that have considered the issue have found that Chapter 13 debtors may have standing to bring claims in their own name on behalf of the bankruptcy estate.[11] Ethicon's ignoring of this difference between Chapter 7 and 13 bankruptcies is just further proof of its complete disregard for the complexity of what it is proposing, and the burden that it unnecessarily seeks to place on Plaintiffs and the Court.

---

[11]     *See e.g. In re Lee*, 432 B.R. 212, (D.S.C. 2010); *Smith v. Rockett*, 522 F.3d 1080, 1081 (10th Cir. 2008); *Crosby v. Monroe County*, 394 F.3d 1328, 1331 (11th Cir. 2004); *Cable v. Ivy Tech State College*, 200 F.3d 467, 474 (7th Cir. 1999); *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513 (2d Cir. 1998).

## IV.     THE CLAIMED DEFICIENCIES ARE CURABLE AND DISMISSAL IS NOT APPROPRIATE UNDER FEDERAL RULE 17

Even in the cases where a plaintiff's claims should be (or should have been) part of the bankruptcy estate, the opportunity to cure that deficiency still exists.  As such, there is no real benefit gained from this Court expending the time and effort necessary in order to determine whether the deficiency exists in the first place.

Ethicon asserts that a show cause order should be issued in order to determine if plaintiffs' claims should be dismissed.  Plaintiffs recognize that claims accrued prior to a bankruptcy filing are (generally) the property of the bankruptcy estate (unless the claims were dispersed or abandoned, or some other exemption applies).  However, it does not follow that those claims should automatically be dismissed.  The bankruptcy does not vitiate Article III standing, but rather merely shifts who is the real party in interest under Rule 17 from the plaintiff to the trustee.  *See e.g. Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1292 (11th Cir. 2003). As such, the appropriate response is to allow the trustee a reasonable opportunity to step in as the real party in interest in the case.[12]  In fact, a court *cannot* dismiss a claim without allowing the bankruptcy trustee an opportunity to substitute into the action.  Federal Rule of Civil Procedure 17(a)(3) specifically states:  "[t]he court *may not dismiss* an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."  (Italics added).  As such, even in the cases where Ethicon's arguments do find support, the trustee must be afforded the opportunity to assert claims held by the estate.

---

[12]      Moreover, to the extent a plaintiff's damages claimed in the action exceed the amounts claimed by the estate's creditors, the plaintiff may be entitled to the excess funds.  11 U.S.C. § 726.

The trustee, acting on behalf of the estate, has an economic interest to see that claims are pursued that could result in funds entering the estate.  Therefore, it is likely that the trustee would step in as the real party in interest and appoint special counsel (likely the same counsel who filed the case) to pursue these claims.  And as evidenced by the response brief recently filed in *McLaughlin v. Johnson & Johnson, et al.*, Case No. 2:12-cv-03959, trustees are already beginning to file the documents necessary to proceed with the actions to the benefit of the bankruptcy estates.

Even if a bankruptcy estate has been closed, it can still be reopened.  *See* 11 U.S.C. § 350 ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.").  The decision to reopen an estate in order to allow a claim to proceed is made by the district bankruptcy court in which the estate was pending, based upon factors that cannot reasonably be considered or determined by this Court.[13]

Finally, federal bankruptcy policy encourages all assets of a debtor to be included in the estate.  That policy would be undermined if the trustee is not allowed to step in and recover all the assets of an estate for the benefit of the creditors.[14]  Ethicon will not be prejudiced by any substitution, as the transfer of interest in the claims to the bankruptcy estate in no way alters the nature of the claims.  In that case, there would be absolutely nothing gained from the extensive efforts made by the Court and the parties pursuant to Ethicon's requested relief in this Motion.

---

[13]     As mentioned above, the bankruptcy trustee in the AMS bellwether cases (Fontes) has similarly indicated an intention to reopen the bankruptcy estate.

[14]     In fact, the application of judicial estoppel would merely enrich Ethicon at the expense of the debtor's creditors.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order denying Defendant's Motion for Order to Show Cause Why Claims Should Not Be Dismissed Based upon Lack of Standing and/or Judicial Estoppel.  Plaintiffs further request all other relief to which they are entitled.

Dated: November 18, 2013                    Respectfully submitted,


/s/ D. Renee Baggett
D. RENEE BAGGETT
BRYAN F. AYLSTOCK
Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, FL 32563
P: 850-202-1010
F: 850-916-7449
Rbaggett@awkolaw.com
Baylstock@awkolaw.com


/s/ Thomas P. Cartmell
THOMAS P. CARTMELL
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
P: 816-701-1102
F: 816-531-2372
tcartmell@wcllp.com
http://www.wagstaffcartmell.com/


*Plaintiffs' Co-Lead Counsel*