EXHIBIT F

Confidential - Subject to Protective Order

```
 1          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                  CHARLESTON DIVISION
 3
                        - - -
 4
 5

    IN RE:  ETHICON, INC.              :
 6  PELVIC REPAIR SYSTEM,              :
    PRODUCTS LIABILITY LITIGATION      :   MDL NO. 2327
 7                                     :
    THIS DOCUMENT RELATES TO ALL CASES :
 8
                        - - -
 9                    VOLUME I
10      CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
11
                Thursday, June 20, 2013
12
                        - - -
13
14          Videotaped deposition of RENEE
15  ELAYNE SELMAN, held at DRINKER BIDDLE &
16  REATH, L.L.P., One Logan Square, 18th &
17  Cherry Streets, Philadelphia, Pennsylvania,
18  commencing at approximately 9:11 a.m.,
19  before Rosemary Locklear, a Registered
20  Professional Reporter, Certified Realtime
21  Reporter, Certified Court Reporter (NJ) and
22  Notary Public.
23
24          GOLKOW TECHNOLOGIES, INC.
        877.370.3377 ph|971.591.5672  Fax
25              deps@golkow.com
```

Confidential - Subject to Protective Order

1    A.    Don't destroy any documents.  I

2  mean, nothing was deleted.  I don't recall

3  the exact processes, but we were trained

4  that, you know, hang onto your documents.

5    Q.    And what was your understanding

6  as to why that was important?

7    A.    In case it was needed in the

8  future for any kind of proceeding.

9    Q.    For the court proceedings,

10 potentially?

11   A.    Potentially, yes.

12   Q.    Okay.  So if you look at Exhibit

13 2000, this was a document that was provided

14 to us.  It has a Bates number, you'll see,

15 in the right-hand corner.

16         And through -- through the

17 course of the day, Miss Selman, I may refer

18 to those for the record periodically and

19 also to help you navigate through some of

20 the documents by using maybe the last three

21 numbers of the document.

22         This document is

23 ETH.MESH.00875544 and it's titled "J&J Law

24 Department Document Preservation Notice."

25         Do you see that?

Confidential - Subject to Protective Order

1      A.    Yes.

2      Q.    It states, "Do Not Destroy,

3   Specified Documents"; right?

4      A.    Yes.

5      Q.    And the date of this is May 22nd,

6   2003, so this document was in place prior to

7   the time that you arrived as president of

8   the company; is that right?

9      A.    Yes.

10     Q.    And -- and the -- if you see the

11  -- the subject line or the re. clause, it

12  states, "Hold Notice for Kandell versus

13  Ethicon, Inc."

14           I take it that that is a hold

15  notice related to that litigation that is

16  going on.

17           Is that your understanding?

18     A.    Yes.

19     Q.    Now, it states, "Ethicon, Inc.

20  has been named in a lawsuit arising out of

21  the alleged use of TVT."

22           Do you see that?

23     A.    Yes.

24     Q.    And then -- strike that.

25           Let me ask you a question:  Do

Confidential - Subject to Protective Order

1    you think this litigation hold notice was in

2    place when you arrived at the company in

3    2005 as president?

4        A.    I don't -- I don't recall, but

5    based on the date on this.

6        Q.    Would there be a process where

7    the company would let you know if the hold

8    notice was cancelled and you could start

9    destroying documents, or how did that work?

10       A.    I -- I don't recall notifications

11   of suddenly we're not under a document hold.

12   I think we would err on the side of always

13   keep your documents.

14       Q.    This talks about a lawsuit and it

15   talks about TVT.

16           What does TVT stand for?

17       A.    Transvaginal tape.

18       Q.    Have you ever heard it called

19   tension-free tape or tension-less vaginal

20   tape?

21           MR. SNELL:  Objection.  Form.

22           THE WITNESS:  No.

23           MR. CARTMELL:  Okay.

24   BY MR. CARTMELL:

25       Q.    We'll talk about that in a little

Confidential - Subject to Protective Order

1    bit.

2              But when this says maintain

3    your documents, do not destroy documents

4    related to TVT, would that be interpreted to

5    mean the entire family of TVT products?

6         A.    I would -- would assume so.

7         Q.    Okay.  At least based on your

8    understanding, out of an abundance of

9    caution, you would try to keep all documents

10   related to the -- the family of TVT

11   products.  Is that fair?

12        A.    Yes.

13        Q.    If you'll go to Exhibit 2001,

14   you'll see this is another document that was

15   provided to us in this litigation by Johnson

16   & Johnson.  The number is ETH.MESH.01949009.

17   Again, it states, "J&J Law Department

18   Document Preservation" Noticed -- "Notice,

19   Do Not Industry, Specified Documents."

20              Do you see that?

21        A.    Yes.

22        Q.    And this is dated April 27th,

23   2006; correct?

24        A.    Yes.

25        Q.    That was after the time that you

Confidential - Subject to Protective Order

```
 1   started as president of Ethicon Women's

 2   Health & Urology?

 3       A.    Correct.

 4       Q.    Is your belief that this hold --

 5   this is a litigation hold notice; correct?

 6       A.    Correct.

 7       Q.    And is your belief that this

 8   litigation hold notice was in place during

 9   the time that you were serving as the

10   president of the company?

11       A.    Yes.

12       Q.    Do you recall this?

13       A.    I don't recall specific

14   litigation hold notices.  I know that we had

15   them, I just don't recall each individual

16   one.

17       Q.    The subject line or the re.

18   clause here says, Hold notice for Lana

19   Keeton versus Gynecare, et al.; right?

20       A.    Yes.

21       Q.    And again it talks about Gynecare

22   and Ethicon are parties to a lawsuit

23   involving TVT device.

24             Do you see that?

25       A.    Uh-huh.
```

Confidential - Subject to Protective Order

1      Q.    So would your understanding be

2    that all documents related to the TVT family

3    of products would need to be preserved by

4    you, subject to this litigation hold notice?

5              MR. SNELL:  Objection.  Form.

6    Document speaks for itself.

7              You can answer.

8              THE WITNESS:  The -- I would

9    never see a document like this.

10             What would happen is there

11   would be a specific notice from within the

12   company that would lay out exactly what

13   somebody needed to do.  So this document per

14   se I don't recall I've ever seen, but there

15   would have been specific instructions about

16   what all employees should do.

17             MR. CARTMELL:  Okay.

18   BY MR. CARTMELL:

19     Q.    Let me ask you, there's a bolded

20   and underlined section that states, failure

21   to preserve these materials could result in

22   Court-imposed penalties or sanctions on both

23   the company and/or individual employees.  Do

24   not discard, destroy or alter in any way any

25   of the documents, electronic or paper,

Confidential - Subject to Protective Order

```
 1   described below and please ensure that these

 2   instructions are followed.

 3              Do you see that?

 4        A.    Yes.

 5        Q.    This sort of document, though,

 6   that we're looking at in Exhibit 2001, would

 7   that be sent out to all employees of the

 8   company?

 9        A.    I don't recall this specific

10   document, but the understanding to not

11   discard, that would be clear.

12        Q.    The second page, if you'd turn to

13   that, there is a section entitled

14   "Instructions For Handling Electronic

15   Materials."

16              Do you see that?

17        A.    Yes.

18        Q.    And this talks specifically about

19   E-mails and attachments to E-mails and

20   specifically talks about creating an E-mail

21   folder to store or preserve these documents;

22   is that correct?

23        A.    Yes.

24        Q.    So is -- is -- are these the

25   types of instructions that you were just
```

1    talking about a minute ago?

2        A.    Yes.

3        Q.    So just explain how you, as the

4    president of the company, when this

5    litigation hold came out would preserve

6    E-mails and electronic documents.

7        A.    I mean, we knew not to delete

8    things.  I mean, it was really that simple.

9        Q.    Well, and this sounds like you

10   would have to create an E-mail folder on

11   your computer in order to put all that --

12   all the E-mails and electronic documents in

13   there; is that right?

14       A.    It looks like it.  Or some kind

15   of eRoom or -- I'm not sure.

16       Q.    What's an eRoom?

17       A.    Just I guess a new folder titled

18   whatever.  And I'm not sure where it sat on

19   the server.  I guess that's what I'm getting

20   at.

21       Q.    During the time that you were

22   president of Ethicon Women's Health &

23   Urology, did you actually create those

24   folders or store those documents for

25   litigation purposes?

Confidential - Subject to Protective Order

```
 1        A.     I recall creating some folders or
 2  my administrative assistant helped me create
 3  folders.  I don't remember the exact
 4  process.
 5        Q.     Who was your administrative
 6  assistant?
 7        A.     During part of the time, most of
 8  the time it was Sandy Pompilio.
 9        Q.     And you said part of the time, so
10  when was it that she no longer was your
11  assistant?
12        A.     I don't recall the exact time
13  frame.  She retired close to the -- she
14  retired before I left, I guess.
15        Q.     But close to the time that you
16  left?
17        A.     Right.
18        Q.     And who became your assistant
19  after Sandy?
20        A.     I cannot recall her name.
21        Q.     It was a short period of time, I
22  take it?
23        A.     Yes.  Yes.
24        Q.     A matter of months?
25        A.     I think so, yes.
```

Confidential - Subject to Protective Order

```
 1      Q.    So you would preserve -- and let
 2  me ask you this:  Were you very careful to
 3  make sure you were preserving all E-mails
 4  related to the TVT family of products?
 5      A.    We -- we generally just didn't
 6  delete things.  I mean, that was the safest.
 7  If in doubt, don't delete.
 8      Q.    Keep it all.
 9      A.    Keep it all.
10      Q.    Okay.  And put it all in the
11  place that was designated for it to be
12  placed by the company; correct?
13      A.    Right.  In some fashion.
14      Q.    If you look at the next exhibit
15  that was provided to us, Exhibit 2002, and
16  this is ETH.MESH.05224752.  Tell us what
17  this is.
18            MR. SNELL:  Take your time and
19  look at it.
20            MR. PAKETT:  I'm sorry.  Was
21  that 2002 or 2022?
22            MR. SNELL:  2002.
23            MR. PAKETT:  Okay.  Thank you.
24            THE WITNESS:  Okay.
25  BY MR. CARTMELL:
```

Confidential - Subject to Protective Order

```
1        Q.    This looks like an E-mail that
2   was sent to actually hundreds of people.
3              Do you see that?
4        A.    Right.
5        Q.    And it's from compliance
6   information update.  That's up at the top.
7   And then the date is October 30th of 2008.
8              Do you see that?
9        A.    Right.  Yes.
10       Q.    And this was actually an E-mail
11  to hundreds of people within the company
12  that was sent by you and others; correct?
13       A.    Yes.
14       Q.    I take it you were sending this
15  as one of the leaders of -- of the company
16  related to litigation that was pending; is
17  that correct?
18       A.    Yes.  It was from all of the
19  presidents of Ethicon so it was a general,
20  this is what everyone should do.
21       Q.    And tell us what this is, the
22  general communication to these employees.
23       A.    That it's a -- a notification of
24  how to handle litigation holds and ways to
25  follow the process in terms of Outlook
```

Confidential - Subject to Protective Order

```
 1   mailbox and, you know, just specifics on how

 2   to do it.

 3       Q.    If you'd turn to last three, 759

 4   in the Bates number, it states, "NEW

 5   Procedures for Managing Litigation Holds

 6   effective November 6, 2008."

 7            Do you see that?

 8       A.    I see it up there.

 9       Q.    It's actually on --

10            MR. SNELL:  On the previous

11   page.

12   BY MR. CARTMELL:

13       Q.    -- Page 759 are the last three

14   numbers of the Bates.

15       A.    Oh, okay.

16       Q.    It states, the procedures

17   described below are being implemented by the

18   Johnson & Johnson Law Department.

19            Was it the Johnson & Johnson

20   law department that handled the compliance

21   issues and litigation holds?

22       A.    I -- I don't recall specifically

23   where the notice -- notices came from.

24       Q.    Okay.  Well, it looks like here

25   that they -- they're implemented by Johnson
```

Confidential - Subject to Protective Order

1    & Johnson, the law department at Johnson &

2    Johnson.

3                    Do you see that?

4                    MR. SNELL:  Objection.  Form.

5    The document speaks for itself.

6                    THE WITNESS:  Okay.  Yes.

7    BY MR. CARTMELL:

8        Q.    And then it says, introducing

9    enhanced procedures for managing litigation

10   holds.

11                   Why were the procedures being

12   enhanced?  Do you remember?

13       A.    I have no idea.

14       Q.    If you'd turn to the next page,

15   your signature is at the bottom.  It states,

16   Renee Selman, worldwide president.

17                   Do you see that?

18       A.    Yes.

19       Q.    And then at the top, compliance

20   with hold notices is important.  All of you

21   are aware that strict compliance with these

22   holds is essential to the ability of the

23   company to defend itself in court in the

24   cases filed against it.  There are numerous

25   examples of companies who negligently failed

Confidential - Subject to Protective Order

```
 1   to preserve documents required for

 2   litigation and, as a consequence, infuriated

 3   the judge presiding over the case, were

 4   subject to fines or penalties or, in extreme

 5   circumstances, had difficult judgments

 6   entered against them.

 7           Do you see that?

 8      A.   Yes.

 9      Q.   Was that being stated by the

10   company to try to tell employees how

11   important it was to make sure they keep all

12   documents for purposes of litigation?

13      A.   Yes.

14      Q.   And then it says, we are making

15   compliance with hold notices easier.

16           A couple paragraphs down it

17   says, beginning November -- excuse me.

18   Strike that.

19           A couple paragraphs down it

20   states, beginning November 6th, 2008, you

21   will see a litigation hold folder appear in

22   the Outlook mailbox and a litigation hold

23   folder on your desktop.

24           Tell us what that was.

25      A.   It -- it appears they
```

Confidential - Subject to Protective Order

```
 1   automatically created the litigation hold

 2   folder in your Outlook.

 3       Q.    Okay.  You sent this letter.

 4             Do you remember that happening?

 5       A.    Folders being set up

 6   automatically?

 7       Q.    Right.

 8       A.    Yes.

 9       Q.    And was it your belief -- strike

10   that.

11             Did you follow the procedures

12   closely for litigation holds?

13       A.    Yes.

14       Q.    And was your understanding that

15   the company was having difficulty with

16   employees following the practices or the

17   policies set up to follow litigation holds?

18             MR. SNELL:  Objection.  Form.

19   BY MR. CARTMELL:

20       Q.    Or do you remember?

21       A.    I wasn't aware of that.

22       Q.    The next exhibit, 2003, I

23   believe, this is an E-mail from, at the top,

24   if you start at the top, from Scott Jones

25   dated February 1st of 2011 but I -- I want
```