EXHIBIT H

Confidential - Subject to Protective Order

```
 1    IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
 2       DISTRICT OF WEST VIRGINIA-CHARLESTON DIVISION
 3
 4   -------------------------------
      IN RE:  ETHICON, INC.         :
 5    PELVIC REPAIR SYSTEM,         :
      PRODUCTS LIABILITY LITIGATION : MDL NO. 2327
 6   -------------------------------
      THIS DOCUMENT RELATES TO ALL CASES
 7
 8
 9         CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
10                           -  -  -
                          July 15, 2013
11                           -  -  -
12
13
14         Deposition of RAMY MAHMOUD, M.D., held
15    at DRINKER BIDDLE AND REATH, LLP, 105 College
16    Road East, Suite 300, Princeton, New Jersey,
17    commencing at approximately 9:20 a.m., before
18    Margaret M. Reihl, a Certified Realtime
19    Reporter, Certified Court Reporter and Notary
20    Public for the State of New Jersey.
21
22
23
                    GOLKOW TECHNOLOGIES, INC.
24             877.370.3377 ph|917.591.5672 fax
                       deps@golkow.com
25
```

Confidential - Subject to Protective Order

```
 1   have reported to your subordinates, I don't want to ask
 2   you to name them all.
 3           A.   No, it was a very small number.  It
 4   might have been perhaps three.  I don't recall the
 5   exact number.
 6           Q.   Who were the people in Germany that
 7   reported to you or your subordinates?
 8           A.   I don't recall the names.  I can tell
 9   you that their function was preclinical research.  At
10   one point there may also have been a medical affairs
11   physician in Germany and at other times not.
12           Q.   The preclinical research that was
13   performed in Germany during your time with Ethicon, did
14   it involve any of the transvaginal tapes or
15   transvaginal mesh?
16           A.   I don't recall.
17           Q.   Go ahead and tell me what were your
18   responsibilities as chief medical officer of Ethicon
19   and vice president in charge of evidence-based
20   medicine?
21           A.   So there were four departments that
22   comprised evidence-based medicine.  One of them was
23   preclinical research.  One of them was health economics
24   and reimbursement.  One of them was clinical
25   development, and the last was medical affairs.
```

Confidential - Subject to Protective Order

```
 1          Q.   What was the third one?  I'm sorry.
 2          A.   Clinical development.
 3          Q.   And so all four of these departments
 4   reported to you?
 5          A.   Yes, each of those departments had a
 6   designated leader, and each of those leaders reported
 7   to me.
 8          Q.   Who was the leader for preclinical?
 9          A.   Well, that changed over time.
10          Q.   Okay.
11          A.   When I first arrived it was a Dr. Mark
12   Storch, and then I later hired a new leader for
13   preclinical research.  His name was Larry Johnson.
14          Q.   And who was the leader for health
15   economics and research?
16          A.   Health economics and reimbursement.
17          Q.   I'm sorry, reimbursement, excuse me.
18          A.   For the majority of the time that I was
19   there, the leader was named Sheri Dodd.
20          Q.   And who was the leader for clinical
21   development?
22          A.   Jessica Shen.
23          Q.   Is that Cheng?
24          A.   Shen, S-h-e-n.
25          Q.   And I believe you told me the medical
```

Confidential - Subject to Protective Order

```
 1           A.   Yes.
 2           Q.   Did you have an understanding during
 3   your tenure or were you aware of this document hold?
 4           A.   Almost certainly.  I didn't discard
 5   documents pretty much at all.  I operate under the
 6   general assumption that nothing could be discarded
 7   unless I knew specifically that it could.
 8           Q.   And what was your process for that?  I
 9   mean, was there a policy that you were to discard or
10   destroy documents that were not subject to litigation
11   holds or some other sort of hold periodically?
12           A.   There was a document retention policy
13   for the company as a whole, to which I would have
14   adhered, but I cannot recite for you what that policy
15   was.
16           Q.   Was it your understanding that -- well,
17   back up and strike that.
18                Throughout your time at Ethicon, did you
19   retain all of your documents related to pelvic mesh
20   products, to the best of your knowledge?
21           A.   I'm confident that I complied with the
22   retention policy, which included retaining all the
23   documents for which a document hold notice had been
24   issued.
25           Q.   And you understood or you operated under
```