# EXHIBIT W

Confidential - Subject to Protective Order

```
 1            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OR WEST VIRGINIA
 2                     CHARLESTON DIVISION
                            - - -
 3
      IN RE:  ETHICON, INC. PELVIC  : MDL NO. 2327
 4    REPAIR SYSTEM, PRODUCTS       :
      LIABILITY LITIGATION          :
 5
                            - - -
 6                                  : SUPERIOR COURT OF
                                    : NEW JERSEY
 7    IN RE:                        : LAW DIVISION -
      PELVIC MESH/GYNECARE          : ATLANTIC COUNTY
 8    LITIGATION                    :
                                    : MASTER CASE 6341-10
 9                                  :
                                    : CASE NO. 291 CT
10
          CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
11                          - - -
12                 Tuesday, April 16, 2013
13                          - - -
14         Videotaped Deposition of PATRICIA HOJNOSKI
15    held at Riker Danzig Scherer Hyland Perretti LLP,
16    Headquarters Plaza, One Speedwell Avenue,
17    Morristown, New Jersey, on the above date, beginning
18    at 9:34 a.m., before Kimberly A. Overwise, a
19    Certified Realtime Reporter, Certified Court
20    Reporter, and Notary Public.
21                          - - -
22
23            GOLKOW TECHNOLOGIES, INC.
            877.370.3377 ph | 917.591.5672 fax
24                 deps@golkow.com
25
```

```
 1   exact time of year it was.
 2       Q    When you began working in June of 2002,
 3   would you have been trained on the document
 4   retention policy at or about the time that you
 5   started your employment?
 6       A    I believe I was, at least within that
 7   first few months.  There were training requirements
 8   to meet.
 9       Q    From time to time you would receive
10   litigation document hold notifications from Johnson
11   & Johnson legal department; correct?
12       A    Correct.
13       Q    And when you were first employed in June
14   of 2002, there was already a document retention or
15   document litigation hold notice in place; correct?
16       A    I don't recall.
17            MR. THORNBURGH:  Go ahead and mark as
18   Exhibit No. 53 a copy of the May two thousand -- I'm
19   sorry -- May 3rd, 2002, document preservation
20   notice.  Okay?
21            (Exhibit No. T-53 was marked for
22   identification.)
23   BY MR. THORNBURGH:
24       Q    Have you had a chance to review that
25   document?
```

Confidential - Subject to Protective Order

```
 1        A    I'm still looking.  Is this specifically
 2   asking about a specific product?
 3        Q    I'm actually going to be asking you
 4   questions about it.  But if you look at -- who's it
 5   from, first off?
 6        A    Ethicon Interactive Communications.
 7        Q    And who's Ethicon Interactive
 8   Communications?
 9        A    I'm sorry.  I don't know that.
10        Q    Is that a part of the Ethicon US branch?
11        A    It sounds like it is.  I'm not familiar
12   with any specific department being referred to as
13   Ethicon Interactive Communications.
14        Q    But it's got the same ETHUS --
15        A    Correct.
16        Q    -- word after the Ethicon Interactive
17   Communications; right?
18        A    Correct.
19        Q    Based on that, would it be your
20   understanding that that came from Ethicon US?
21        A    Yes.
22        Q    And that was sent to DL-ETHUSSO.  Do you
23   know what that is?
24        A    I don't.
25        Q    Okay.  And then after that what does it
```

```
 1   say?
 2        A    All_Ethicon@ETHUS.JNJ.com.
 3        Q    So this document would have been sent to
 4   all of the employees at Ethicon J&J?
 5        A    It appears so, but I can't state for sure.
 6   I wasn't at Ethicon at that time and I wasn't part
 7   of the party who sent the e-mail.
 8        Q    And the subject is Document Retention
 9   Annual Purge; correct?
10        A    Yes.
11        Q    And it says:  "We are all responsible for
12   reviewing our files each year to ensure that we are
13   in compliance with Ethicon Records Retention Policy
14   (PL566-001)"; correct?
15        A    Correct.
16        Q    And that PL566-001, the Ethicon retention
17   policy, is attached to this document if you turn to
18   Bates No. ETH.MESH.07425072.
19             Do you see that there?
20             MR. COMBS:  Object to the form.
21             THE WITNESS:  I'm sorry.  I don't.
22   BY MR. THORNBURGH:
23        Q    Okay.  So from -- and I apologize.  From
24   time to time I may refer to Bates numbers.
25        A    Okay.
```

Confidential - Subject to Protective Order

```
 1      Q    So I know that this is your first
 2  deposition --
 3      A    Uh-huh.
 4      Q    -- and you may not know what I mean when I
 5  say "Bates numbers."  So a Bates number is a number
 6  that the parties or the defendant in this case would
 7  have designated at the bottom of the page so that we
 8  could follow each other --
 9      A    Okay.
10      Q    -- as we reference those Bates numbers.
11  Okay?
12           So if you look at Bates number ending in
13  072, it's an e-mail -- or, I'm sorry, it's a
14  document that says "J&J Law Department"; correct?
15      A    Correct.
16      Q    And it says "Document Preservation
17  Notice"?
18      A    Yes.
19      Q    And it's February 13th, 2002; right?
20      A    Uh-huh.
21      Q    So this would have been the document
22  preservation notice that would have been in place
23  when you were first employed in June of 2002;
24  correct?
25              MR. COMBS:  Object to the form.
```

```
 1   BY MR. THORNBURGH:
 2        Q    Does it appear that way at least?
 3        A    It appears that way, but I don't know if
 4   there was another notice that came out in between
 5   that time.  Since I wasn't there, I don't -- I can't
 6   state for sure if this was the one that was in
 7   effect.
 8        Q    Okay.  And it says:  "In connection with
 9   the upcoming company records clean out, it is vital
10   to preserve all documents relating in any way to the
11   matters on the attached 'PRESERVATION NOTICE
12   REPORT'"; right?
13        A    Yes.
14        Q    And then it goes on to say:  "Failure to
15   preserve these materials could result in the
16   imposition of harsh penalties or sanctions"; right?
17        A    Yes.
18        Q    And then it goes on to say:  "Do not
19   discard, destroy or alter in any way any of the
20   documents (electronic or paper) described below.
21   Please ensure that these instructions are followed."
22             Would that have -- that admonition, would
23   that be based on your memory consistent with what
24   the deposition -- with what the document
25   preservation notice would have been in place at the
```

```
 1   time that you were employed in June of 2002?
 2                MR. COMBS:  Object to the form.
 3                THE WITNESS:  I agree that if this is
 4   the one that was in effect in June 2002, this is
 5   what we would have followed.
 6   BY MR. THORNBURGH:
 7        Q    And you would have followed the document
 8   retention notice?
 9        A    Yes, I would.
10        Q    You wouldn't have destroyed any of the
11   documents --
12        A    No.
13        Q    -- within your possession?
14        A    No, I would not.
15        Q    You would have maintained those documents
16   in the course of -- the business course that was in
17   place at Johnson -- at Ethicon throughout your
18   employment?
19        A    Yes.
20        Q    You would have preserved electronic
21   documents either electronically or they would have
22   been retained in hard copy?
23        A    Yes.
24        Q    And if you turn with me to the Bates
25   number ending in 076 -- actually, let me just back
```

Confidential - Subject to Protective Order

```
 1   up.  Let's go to 075 first.  You see there's a
 2   definition there?
 3        A    Yes.
 4        Q    And it says -- what types of
 5   communications or documentations were you -- strike
 6   that.
 7             What types of communications or documents
 8   were covered by this document retention policy?
 9        A    The document here states that the record
10   is "any form of written, electronic or audiovisual
11   communication generated internally or externally for
12   ETHICON'S use, including but not limited to," and
13   then there's a list of what would be -- need to be
14   maintained.
15        Q    Okay.  And that would include any written
16   memos, letters, or reports; microfilm or microfiche;
17   electronic or Intranet files, tapes, and discs,
18   e-mail memos; computer and word processing tapes and
19   discs; completed forms; ledger and notebooks;
20   slides, movies, video and audiotapes; photographs,
21   pictures, and microscope slides?
22        A    Correct.
23        Q    And those documents were to be retained
24   for the lifetime of the product?
25        A    I'm not sure.  Looking at this, I don't
```

Confidential - Subject to Protective Order

 1   know how long those needed to be maintained for.
 2        Q    If you go to the next page, under "Policy
 3   Statements" it says:  "Records shall be retained for
 4   a period not to exceed three years, except as
 5   indicated in the appended exception lists"; right?
 6        A    Yes.
 7        Q    It says:  "The three year period shall
 8   comprise the current calendar year plus the two
 9   previous calendar years"; correct?
10        A    Correct.
11        Q    So assuming that this was the document
12   retention policy in place, there were certain
13   documents that needed to be retained for at least a
14   three-year period of time?
15        A    Correct.
16        Q    And if there were litigation holds that
17   were sent to you from time to time, that may extend
18   that hold period beyond the three years that are
19   identified in this policy; correct?
20        A    Correct.
21        Q    And you would have complied with both the
22   policy retention that we have here as Exhibit No. 53
23   or any litigation holds that would have been sent to
24   you; right?
25        A    Yes.

Confidential - Subject to Protective Order

```
 1   made it -- stated this morning that there should be
 2   a custodial file.
 3              MR. COMBS:  Anybody else want to
 4   place anything on the record before we resume?
 5              Okay.  Let's have a deposition.
 6              (Video record resumed.)
 7              THE VIDEOGRAPHER:  We're back on the
 8   record.  The time is 10:51 a.m.
 9   BY MR. THORNBURGH:
10       Q   Thank you, Ms. Hojnoski, for allowing us
11   to have that discussion about your custodial file.
12       A   You're welcome.
13       Q   And I'm going to try to move away from
14   that discussion with -- I just want to ask one
15   question, though.  While you're in your office and
16   you're reviewing your regulatory filings or getting
17   ready to prepare regulatory filings, do you take
18   handwritten notes?
19       A   I might.
20              MR. COMBS:  Object --
21              THE WITNESS:  I usually do things
22   electronically.
23   BY MR. THORNBURGH:
24       Q   Okay.  So you -- there are occasions that
25   you would write out your thoughts on paper, though;
```

```
 1   correct?
 2       A    There might be.  Usually I stick to
 3   electronic.
 4       Q    Okay.
 5       A    But I can't say I've never written out a
 6   note by hand for a submission.
 7       Q    Okay.  And if you had made handwritten
 8   notes, you would have preserved those in your -- in
 9   the hard copy in accordance with the hard copy
10   retention policy?
11       A    Yes.
12            MR. COMBS:  Object to the form.
13   BY MR. THORNBURGH:
14       Q    All right.  I want to turn back to your
15   resume, which was marked as Exhibit No. 53 I
16   believe; right?
17       A    52.
18       Q    52.  And on your -- prior to your
19   employment with Ethicon, what was your experience in
20   the medical device industry?
21       A    Prior to working at Ethicon, I worked for
22   EBI as a senior regulatory affairs specialist.  And
23   prior to that I worked at C.R. Bard as a senior
24   regulatory affairs specialist.
25       Q    What products did you work -- let's talk
```