UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

------------------------------------------------------------ x
IN RE ETHICON, INC., PELVIC REPAIR : CIVIL ACTION NO. 2:12-md-02327
SYSTEM PRODUCTS LIABILITY         :
LITIGATION                        : MDL No. 2327
------------------------------------------------------------ :
                                  : Judge Joseph R. Goodwin
This Document Applies To All Actions :
------------------------------------------------------------ x

**PLAINTIFF'S NOTICE REGARDING POSITION ON CASE CONSOLIDATION**

Plaintiffs support the Court's decision for consolidated trials in these MDL proceedings. Plaintiffs concur in the Court's observation that consolidation can promote efficiency and economy while posing no undue burden to the parties. Plaintiffs also see substantial advantage to both sides from the consolidation of design defect claims, assuming (a) all product risks and benefits are considered and (b) all evidence of product defect is considered regardless of when the evidence was generated. But with due respect, consolidation of all issues involving several plaintiffs for trial would be even more efficient and more effective at facilitating settlement. Plaintiffs therefore propose consolidation of several cases in their entirety for trial rather than design defect claims alone.

**I.     A Consolidated Trial on Design Defect Claims Should Focus on All Risks and Benefits of the Product Regardless of When the Evidence Disclosing those Risks Was Uncovered.**

Defendants have complained that consolidated trials on design defect cannot occur because there are differing allegations of injuries caused by their mesh products. But the varied risks and benefits of the product are precisely what should be considered in every design defect

1

case, consolidated or not, regardless of the injury claimed by the particular plaintiff(s). In other words, an assertion of design defect suggests the product is unreasonably dangerous in the abstract, not that it was merely harmful to a particular plaintiff. The latter is a question solely of causation in a design defect case. The liability inquiry is whether the overall risks of the product outweigh its overall benefits. *See, e.g., Morningstar v. Black & Decker Mfg. Co.*, 253 S.E.2d 666, 682 (W. Va. 1979) (discussing risk/utility test for design defect claims).[1]

Thus, it matters not what the particular reason is that a plaintiff took the product (alleged benefit) or the particular injury she claims (alleged risk). Rather, all potential reasons for the product (all benefits) and all potential injuries (all risks) must be compared to determine whether, on balance, the risks outweigh the benefits. Design defect is a question of whether the product should have been introduced to the market at all, not whether it should have been implanted into a particular plaintiff. *Morningstar*, 253 S.W.2d at 682.

*In sum, should the Court consolidate design defect claims, all risks of defendant's products should be at issue.*

Further, all evidence of product defects should be admitted regardless of when studies or other data were published or otherwise revealed. That is because the question is whether the product was defective when it was manufactured or sold, not when defendant knew or should have known it was defective. *See id.* ("the scienter [in a strict liability products case] is supplied as a matter of law, and there is no need for the plaintiff to prove its existence as a matter of fact") (*quoting* John W. Wade, *On the Nature of Strict Liability for Products*, 44 MISS. LJ 825, 834-35

---

[1] *See also* 72A C.J.S *Products Liability* § 19 (design defect based on weighing of product's risks and benefits); *Conde v. Velsicol Chem. Corp.* 804 F. Supp. 972, 9978 (S.D. Ohio 1992) (discussing risk-benefit comparison test under Section 402A of Second Restatement), *aff'd*, 24 F.3d 809 (6th Cir. 1994); *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1181 (4th Cir. 1997) (discussing risk-benefit analysis under Virginia consumer expectation test).

(1973)). The existence of a risk – and certainly the magnitude of a risk – can be established with evidence secured after the product was sold.

Granted, the relevant date for ascertaining if the product was defective is the date the product was manufactured or implanted. But that is the date on which the defect must have existed, NOT the date on which the defect had to be known.[2] Evidence subsequent to this date is relevant to show the defect that existed at the time of implantation, and certainly the magnitude of the risk that then existed. Evidence regarding when defendant first learned of the risk and when defendant should have known of the risk (e.g., evidence that defendant should have studied earlier / failed to test) will be introduced during the negligence and failure to warn phases of trial.

---

[2] The Court has cited the relevant date as the date the <u>first exemplar</u> of a product was sold, but the data on which the defect must exist is the date on which the <u>specific product</u> purchased by the plaintiff was made or sold. *Sexton v. Bell Helmets, Inc.*, 926 F.2d 331, 337 (4th Cir. 1991); *see also Pumphrey v. C.R. Bard, Inc.*, 906 F. Supp. 334, 338 (N.D. W. Va. 1995) ("a product is defective if at the time of sale or other distribution" it contains a design or manufacturing defect) (*citing* draft of third Restatement); *Hershberger v. Ethicon Endo-Surgery, Inc.*, Civ. Act. No. 2:10-cv-00837, 2011 WL 3735552, at *2 (S.D. W. Va. Aug. 24, 2011) (defect "was present at the time the product left the manufacturer's control"); *Wilkinson v. Duff*, 575 S.E.2d 335, 340 (W. Va. 2002) ("The standard of reasonable safeness is determined…by what a reasonably prudent manufacturer's standards should have been *at the time the product was made*.") (emphasis added); *see also Morningstar v. Black and Decker Mfg. Co.*, 253 S.E.2d 666, 680 (W. Va. 1979) (strict liability exists if "the product was defective when it left the manufacturer"); Philip Combs, *Modern Products Liability Law in West Virginia*, 113 W. VA. L. REV. 417, 427 (2001) ("the relevant time period is the date of manufacture").

Bard actually admits this interpretation of the relevant date in its submission on this issue. Defendant C.R. Bard Inc.'s Memorandum of Law in Response to the Draft Pretrial Order (Order to Consolidate (Oct. 30, 2013) at 1 ("The timing of each plaintiff's implant will affect Bard's ability to assert a state-of-the-art defense.").

If the law were otherwise, a manufacturer could continue selling a product many years after discovering that the product was unreasonably dangerous and defective, so long as the company was in the dark when it sold the first model ever. The law does not give a license for manufacturers to stockpile and continue selling indefinitely products they learn are defective.

But this is academic because, as explained above, the issue should be when the product was defective rather than when the defect was discovered.

Courts routinely admit evidence of product defect that was generated after the plaintiff's injury. In fact, incidents subsequent to a particular plaintiff's implantation is relevant to prove design defect. *See, e.g., Bush v. Michelin Tire Corp.*, 963 F.Supp. 1436, 1451 (W. D. Ky.1996) ("[m]ost circuits have held that subsequent accidents are admissible to prove causation *and dangerousness* of a condition, if a proper foundation is laid.") (emphasis added).[3]

*In sum, should the Court consolidate design defect claims, evidence of product risks should be admitted regardless of the date the evidence was generated.*

## II. The Superior Consolidation Option Is to Join Plaintiffs with Similar Claims for Trial.

Plaintiffs urge the Court to consolidate for full trials on the merits the claims of plaintiffs that are similar in relevant characteristics. Consolidation of similar claims for trial will achieve the dual goals of promoting efficiency and settlement without being unduly prejudicial to either side. Consolidation of all issues for trial will provide for a jury finding on damages, thereby providing the parties with a realistic picture of what these cases are really worth. This will be the single greatest impetus toward settlement. Such consolidation will also provide judicial findings on key issues relating to each of the plaintiffs' claims and defendants' relevant affirmative defenses, thereby providing insight into the way these issues will likely be resolved in the future, especially when litigated under similar facts. This will promote settlement further than would the

---

[3] *See also Exum v. GE*, 819 F.2d 1158, 1163 (D. C. Cir.1987) (district court abused discretion in excluding subsequent incident evidence relevant to product's dangerousness); *Jackson v. Firestone Tire and Rubber Co.*, 788 F.2d 1070, 1084 (5th Cir. 1986) (observing that under strict liability theory, dangerousness of product may be proved as of any time prior to trial); *Gober v. Revlon, Inc.*, 317 F.2d 47 (4th Cir. 1963) (trial court properly admitted doctor's testimony that he treated other patients subsequent to his treatment of the plaintiff for same condition that he related to the defendant's nail polish; even though not relevant to notice, it "was certainly admissible to show that the defendant's product adversely affected an appreciable number of persons.").

Court's proposal of trying a single liability issue only. Finally, such consolidation will substantially increase judicial efficiency by resolving multiple claims in a single trial.

By consolidating plaintiffs with similar claims, the Court can avoid the kind of prejudice that has deterred prior courts from consolidation. For instance, in the *Michaels* case the Court cites, the court denied a motion for consolidation precisely because the claims were disparate, not similar. The court did not rule out consolidation of cases with similar facts. *Michael v. Wyeth, LLC*, Civ. Act. Nos. 2:04-0435, 2:04-0690, 2:04-0692, 2011 WL 1527581, at *2-3 (S.D. W. Va. Apr. 20, 2011). Moreover, the MDL court presiding over the hormone therapy proceedings expressly recognized that consolidation may be appropriate under similar factual settings. *See Hill v. Wyeth,* No. 05-546, *LeFerrara v. Wyeth*, No. 04-2271, *In re Prempro Prods. Liab. Litig.*, No. 4:03-CV-1507-WRW (Apr. 1, 2010) (Ex. 1).

The goal of promoting efficiency and economy are laudable, and they can be enhanced by consolidation of design defect claims. But consolidation of full cases for trial will achieve both goals more effectively while also being the single greatest impetus to settlement.

Dated: December 5, 2013                     Respectfully submitted,


                                            /s/ Bryan F. Aylstock
                                            BRYAN F. AYLSTOCK
                                            D. RENEE BAGGETT
                                            Aylstock, Witkin, Kreis and Overholtz, PLC
                                            17 E. Main Street, Suite 200
                                            Pensacola, FL 32563
                                            P: 850-202-1010
                                            F: 850-916-7449
                                            Rbaggett@awkolaw.com
                                            Baylstock@awkolaw.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | CIVIL ACTION NO. 2:12-md-02327 <br><br> MDL No. 2327 <br><br> Judge Joseph R. Goodwin |
| This Document Applies To All Actions | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2013, I electronically filed the foregoing document with the Clerk of the court using CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Bryan F. Aylstock_____
BRYAN F. AYLSTOCK
Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, FL 32563
P: 850-202-1010
F: 850-916-7449
Rbaggett@awkolaw.com

6