IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

IN RE:  BOSTON SCIENTIFIC CORPORATION          MDL NO.
PELVIC REPAIR SYSTEM PRODUCTS                  2:12-MD-2326
LIABILITY LITIGATION

and

IN RE:  ETHICON, INC. PELVIC REPAIR            MDL NO.
SYSTEM PRODUCTS LIABILITY LIGATION             2:12-MD-2327

December 10, 2013
Huntington, West Virginia

TRANSCRIPT OF TELEPHONIC MOTION HEARING
BEFORE THE HONORABLE CHERYL A. EIFERT
UNITED STATES MAGISTRATE JUDGE

APPEARANCES (by telephone)

For MDL 2326 Plaintiffs:          **AIMEE H. WAGSTAFF, ESQ.**
                                  ANDRUS HOOD & WAGSTAFF
                                  Suite 4150
                                  1999 Broadway
                                  Denver, CO  80202

```
For MDL 2327 Plaintiffs:        BRYAN F. AYLSTOCK, ESQ.
                                AYLSTOCK WITKIN KREIS &
                                   OVERHOLTZ
                                Suite 200
                                17 East Main Street
                                Pensacola, FL  32502

                                LEE B. BALEFSKY, ESQ.
                                ROGER CAMERON, ESQ.
                                KLINE & SPECTER
                                The Nineteenth Floor
                                1525 Locust Street
                                Philadelphia, PA  19102

For Secant in MDL 2326:         JENNISE W. STUBBS, ESQ.
                                SHOOK, HARDY & BACON
                                JPMorgan Chase Tower
                                600 Travis Street, Suite 3400
                                Houston, TX  77002-2926

For Secant in MDL 2327:         JOE H. TUCKER, JR., ESQ.
                                V. AMANDA WITTS, ESQ.
                                TUCKER LAW GROUP, LLC
                                One Penn Center at Surburban
                                   Station
                                Suite 1700
                                Philadelphia, PA  19103

For MDL 2326 Defendants:        JON STRONGMAN, ESQ.
                                SHOOK, HARDY & BACON
                                2555 Grand Blvd.
                                Kansas City, MO  64108

For MDL 2327 Defendants:        BENJAMIN M. WATSON, ESQ.
                                PAUL S. ROSENBLATT, ESQ.
                                BUTLER SNOW O'MARA STEVENS &
                                   CANNADA
                                P. O. Box 6010
                                Ridgeland, MS  39158-6010

Court Reporter:                 TERESA M. RUFFNER, RPR
                                Sidney Christie Federal Bldg.
                                845 Fifth Avenue, Room 101
                                Huntington, WV  25701
                                (304) 528-7583
```

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

1    Tuesday, December 10, 2013, at 2:47 p.m. in courtroom

2              MS. TATMAN:  Hello, everybody.  This is Laura, Judge

3    Eifert's assistant, and today --

4              UNIDENTIFIED SPEAKER:  Hi, Laura.

5              MS. TATMAN:  Hi.  Today we have Terry Ruffner as the

6    court reporter, and we also have -- we also have Courtflow.

7    So if I might, perhaps we could start with identifying Ethicon

8    plaintiffs' counsel.

9              MR. AYLSTOCK:  Hi, Laura.  This is Bryan Aylstock on

10   behalf of Ethicon plaintiffs.

11             MS. TATMAN:  All right.

12             MR. BALEFSKY:  This is -- Laura, this is Lee

13   Balefsky from Kline & Specter, along with Roger Cameron from

14   Kline & Specter, on behalf of the plaintiffs.

15             MS. TATMAN:  All right.  Thank you.  Now, for Boston

16   Scientific plaintiffs, who do we have, please?

17             MS. WAGSTAFF:  This is Aimee Wagstaff -- good

18   afternoon -- on behalf of Boston Scientific plaintiffs in the

19   MDL 2326.

20             MS. TATMAN:  Thank you.  Excuse me.  And who do we

21   have for Secant today?

22             MR. TUCKER:  Joe Tucker and Amanda Witts on behalf

23   of Secant in the transferred matter to the MDL.

24             MS. STUBBS:  Jennise Stubbs with Shook, Hardy &

25   Bacon on behalf of Secant as to MDL 2326.

 1              MS. TATMAN:  All right.  Thank you.  Okay.  And for

 2    defendant Ethicon?

 3              MR. WATSON:  For defendant Ethicon, Ben Watson and

 4    Paul Rosenblatt with Butler Snow.

 5              THE REPORTER:  Ben Watson and --

 6              MS. TATMAN:  Ben Watson and -- I'm sorry -- who was

 7    the other gentleman?

 8              MR. WATSON:  Paul Rosenblatt.

 9              MS. TATMAN:  Thank you.  And for defendant Boston

10    Scientific?

11              MR. STRONGMAN:  This is Jon Strongman for Boston

12    Scientific from Shook, Hardy & Bacon.

13              MS. TATMAN:  All right.  Thank you, everyone.  If

14    you'll hold one moment, I will get Judge Eifert.

15              UNIDENTIFIED SPEAKER:  Thank you.

16              THE COURT:  Good afternoon.

17              UNIDENTIFIED SPEAKER:  Good afternoon, Your Honor.

18              UNIDENTIFIED SPEAKER:  Good afternoon.

19              THE COURT:  We do have a court reporter here today,

20    Terry Ruffner.  So if you would all identify yourselves for

21    the record when you speak, I would appreciate it.

22         Let me ask, first of all, where are we with Secont -- or

23    Secant -- where are we with its involvement in the Boston

24    Scientific litigation?

25              MS. STUBBS:  Your Honor, Jennise Stubbs for Shook,

1    Hardy & Bacon on behalf of Secant for MDL 2326.  On

2    December 5th, the JPML heard and considered 26 cases

3    involving Secant for transfer to the Boston Scientific MDL,

4    and we are waiting, awaiting word from them on their ruling of

5    transfer.  We expect that any day.

6              THE COURT:  Okay.

7              MS. STUBBS:  We also have 12 additional cases

8    involving Secant and Boston Scientific products that have been

9    removed to federal court and are pending transfer.

10             THE COURT:  Let me ask you all, in view of this

11   recent order entered by the judge in Pennsylvania, what are

12   your positions on the motions pending here in the MDL?

13             MR. TUCKER:  This is Joe Tucker, Your Honor, on

14   behalf of Secant in the state court matter.  This -- it's

15   because of this order and the direction that the state court

16   judge needs that we really believe that a decision by Judge

17   Goodwin would be true guidance for the state court judge.

18        I think we have -- you know, Judge Goodwin, who's

19   uniquely qualified because he appreciates all the issues in

20   the case, that, you know, when he makes a decision, which is

21   why we also believe that the stay should stay in place, it can

22   give further direction to the state court judge.

23        Secant, unfortunately, is involved with responding to 62

24   broad discovery requests.  We've written the judge a letter to

25   help clarify that, but, again, without direction from Judge

1    Goodwin on Secant's status on our motion to dismiss, we're

2    left in this *ad hoc* opinions from different judges.  And I

3    believe once direction is given by Judge Goodwin on Secant's

4    status, that will help clear up a lot of the issues as of the

5    latency --

6              UNIDENTIFIED SPEAKER:  Your Honor --

7              THE COURT:  I think my question --

8              UNIDENTIFIED SPEAKER:  I'm sorry.

9              THE COURT:  My question, though, is -- goes more to

10   the practicalities.  Now you have an order from a judge in

11   Pennsylvania requiring Secant to comply with a myriad of

12   discovery requests.  How does that not affect your motion to

13   stay in this court since you're going to have to supply a good

14   bit of the information that the plaintiffs want in this case,

15   in these cases?

16             MR. TUCKER:  This is Joe Tucker again on behalf of

17   Secant.  We can supply in the MDL the case -- the information

18   that we are providing in the state court, but we are not

19   providing it in what -- in the 20 days, which would actually

20   be Christmas Day, according to the state court judge, the

21   documents.  And those documents were more responsive to the

22   issues of the affiant who executed the affidavit for the

23   initial preliminary motion, the preliminary objections, which

24   is a state court equivalent of a motion to dismiss.

25        The issue with the federal court, the MDL, is Secant

1    doesn't know its status as a defendant or as a third party

2    defendant.  Because of Judge Goodwin's ruling as a third party

3    to this, we'd have different objections than we would have as

4    an actual defendant.  That's why, again, I respectfully circle

5    back that, you know, some direction from Judge Goodwin as to

6    Secant's status would clear a lot of this up.  And we don't

7    think that Judge Goodwin would be too long in making that

8    decision.  In the interim, we are willing to produce those

9    documents which were produced in the state court in the MDL.

10         MS. STUBBS:  Your Honor, Jennise Stubbs for Secant.

11   I want to interject here that the order that has been issued

12   in the Philadelphia state court is in a case that does not

13   involve Boston Scientific products, and there has not been an

14   order issued in Philadelphia state court requiring Secant to

15   produce any documents related to its role in the manufacturing

16   of Boston Scientific products.

17         THE COURT:  Well --

18         MS. STUBBS:  So the issue still remains that Secant

19   perhaps, you know, at this time may not be a party in the MDL

20   2326 but will be a party very soon based on the transfer of

21   the 26 cases that we believe will occur any day now.

22        And in addition to that, the -- Secant is a party in the

23   MDL 2327 as to Boston Scientific products, which is the same

24   subject matter that the third party subpoena covers.  So they

25   are interrelated.

1          THE COURT:  Well, I -- here are issues that I see:

2     I see -- I see the statute, and the statute applies in the

3     Ethicon MDL.  I see, however, in an Ethicon case, you've been

4     instructed to produce what I thought was quite a bit of

5     information.  Maybe I don't have the right deposition notice.

6          The notice attached to the documents I have include --

7     included a number of documents that have to be produced, a

8     wide range of documents.  So I see that on the one hand you've

9     got the statute in the Ethicon MDL because you are a defendant

10    and apparently you have made a motion to dismiss on the basis

11    that you're not a manufacturer, but you have this outstanding

12    order where you have to produce a bunch of things.

13         Then you've got the Boston Scientific MDL.  Sitting here

14    today you're not a defendant in that case, so you don't have

15    the benefit of the statute.

16         So from a practical standpoint, I think my question to

17    you is, how many times do you want to have the same discovery

18    done, and how many times do you want to put this same person

19    up for deposition, and is there not a more practical way to

20    address this since it looks like you're going to have to do

21    some sort of discovery?

22         Now, I don't know -- I don't know --

23              MR. TUCKER:  Judge, this is Joe Tucker on behalf of

24    Secant.

25              THE COURT:  Will you please let me just finish here?

```
 1           MR. TUCKER:  I'm sorry.  I apologize.  I thought you

 2    had.  I apologize.

 3           THE COURT:  No.  What I was going to add was you may

 4    have different information than I do about where Judge Goodwin

 5    is on ruling on these motions to dismiss.  I have no

 6    information that he is poised to rule on that motion or those

 7    motions any time soon.  Maybe he is and I'm just unaware of

 8    that.  So you might want to enlighten me on that as well.

 9           MR. BALEFSKY:  Your Honor, this is Lee Balefsky from

10    Kline & Specter on behalf of the plaintiffs in the MDL, and we

11    represent the plaintiffs in the Philadelphia action, the

12    Hansen case.  We also represent the plaintiffs in the cases

13    that have been transferred to the MDL, the Hammons, Delacruz,

14    and Musewicz cases.

15        There's just a -- there's several points I can make in

16    response to what Mr. Tucker said, but I believe Your Honor is

17    correct; the bottom line is that discovery is proceeding

18    against Secant in the Philadelphia Court of Common Pleas, that

19    the judge has granted the motion to take not only the

20    deposition of Mr. Nadeau, the former president, but also to

21    produce the documents that you've referenced, which are almost

22    identical to the documents that have been requested in the

23    subpoena.

24        So as Your Honor has suggested, for purposes of

25    coordination and cooperation, there's no reason for this Court
```

1    to delay the discovery in the MDL.  It should be done

2    simultaneously with the state court, not only to save the

3    time, expenses, and costs of doing it all over again and

4    bringing people back for secondary depositions, but, you know,

5    Secant's counsel has already, you know, proposed the same

6    protocol for a protective order, etcetera, that's in place in

7    the MDL.  So the discovery is proceeding.

8         And also remember that they -- we have motions to remand

9    those cases that have been transferred to the MDL, and those

10   are also in front of Judge Goodwin.  So Judge Goodwin could

11   make the decision that these cases, as we suggest, don't even

12   rightfully belong in the MDL, they belong in state court, and

13   not even rule on the motion to dismiss but just remand the

14   cases back to the state court.  So that can happen as well.

15        And the fact that they're in the MDL is as a result not

16   of what the plaintiffs have done but as a result of what

17   Secant has done in cooperation with Ethicon and Boston

18   Scientific in providing them Mr. Nadeau's affidavit to remove

19   the cases.

20        So, you know, for all those reasons, and more that I'm

21   sure I can think of, I think -- I think Your Honor is correct,

22   and this should just proceed as one discovery operation and

23   not have -- not parcel it out.

24             MR. TUCKER:  Your Honor, this is Joe Tucker again on

25   behalf of Secant, and I apologize for interrupting you in the

 1   first instance.

 2        I think procedurally, or not, I think, procedurally,

 3   this -- the cases in the MDL and the state court cases are at

 4   different steps.  The state court judge denied our initial

 5   motion to dismiss.  Such a motion is presently pending before

 6   Judge Goodwin, and it was only after our motion to dismiss was

 7   denied that the judge ordered very limited discovery.  And

 8   what was clear is that the judge was struggling with some

 9   direction from Judge Goodwin on what exactly should and should

10   not be done in the discovery.  And that's why -- you know, we

11   don't know the status of Judge Goodwin ruling on this motion

12   to dismiss, but that could set -- that could stop Secant in a

13   lot of different ways from having to go through the expense of

14   what it's going through now, which is exactly what the BAAA

15   was designed to stop what's happening at this very moment, the

16   resources that are being utilized in answering these onerous

17   subpoenas.

18        MR. BALEFSKY:  Your Honor, Lee Balefsky again.  With

19   all due respect to Mr. Tucker, there's no indication in the

20   record of the argument in front of Judge Massiah-Jackson,

21   Philadelphia County, or in her order that she was

22   struggling -- quote, struggling with the issue and was waiting

23   for Judge Goodwin to do something.

24        She made her own decision based on her interpretation of

25   the BAAA and allowed -- and denied their motion to dismiss and

1    allowed discovery to proceed.  There's no -- there's nothing

2    that she's waiting for that Judge Goodwin, with all due

3    respect to him, can provide to her.  She's already made her

4    decision, and we're moving forward with discovery.

5            THE COURT:  All right.  Here's the way that I read

6    the statute.  I think that the statute, as it would apply in

7    Ethicon -- I'm presuming that the motions to dismiss that have

8    been filed in the Ethicon MDL, which I have not seen, I

9    assume, however, they're not making any kind of defense based

10   on the quality of the component piece or the failure to abide

11   by contract specifications.

12       As I understand it, the plaintiffs are arguing that

13   Secant is a manufacturer, and Secant is saying it is not a

14   manufacturer.  So based on my reading of the statute, the

15   plaintiffs would not be permitted to do discovery, except on a

16   jurisdictional issue, which apparently there isn't one.  So

17   that's what I see in Ethicon.

18       In Boston Scientific -- and I've got to admit to you,

19   this makes no logical sense to me.  But in Boston Scientific,

20   the plaintiffs can do discovery.  They're not limited at all

21   because right now Secant is not a defendant and has not filed

22   a motion to dismiss.

23       On top of that, we have discovery going on in

24   Philadelphia, or in Pennsylvania.  So I'm trying to put these

25   pieces together and figure out what would be the most

1   efficient way to handle the issue of discovery.  And that's

2   really what I want to hear from Secant.  Secant has admitted

3   in its documents that it would be subject to some discovery as

4   a non-party.

5        So my question to you is, why do you want to press the

6   issue in Ethicon when you're going to have to do discovery on

7   Ethicon products?  Right now you're subject to discovery in

8   Boston -- on Boston Scientific products.  Why do you want to

9   do this stay?  How is this benefiting you at all?  Isn't it

10  just going to make you have to supply the same things more

11  than once?

12              MR. TUCKER:  Not -- not necessarily.  I'm sorry.

13  This is Joe Tucker again, Your Honor.  And the answer to that

14  question is not necessarily, because depending upon Judge

15  Goodwin's ruling on the issue, we will either be a defendant

16  or a third party subject to the rules governed by Rule 45 of

17  discovery as opposed to 34, and we will have different bases

18  of objection under 45 than we would under 34.  And one of

19  these may be the undue burden of cost of obtaining some of

20  these documents.

21       And let me just footnote something, that specifically

22  Judge Massiah-Jackson, the state court judge in this case,

23  when we had our very first case management conference,

24  specifically asked, "What has the MDL ruled on this issue?"

25  And that is the basis for my statement that Judge

1    Massiah-Jackson was looking for some direction from the MDL on

2    this.  And we believe that this Court, Your Honor as well as

3    Judge Goodwin, can give some direction and uniformity to this.

4        THE COURT:  Well, you say -- you know, you talk

5    about the fact that you're going to have different obligations

6    depending upon whether you're a defendant or a non-party; and

7    to a certain extent, I agree with you.  However, even as a

8    defendant, you can still raise undue burden, undue expense as

9    a defense to having to produce unlimited discovery.

10       So I want to know practically -- I'm a very nuts-and-

11   bolts person.  I want to know from a practical standpoint what

12   is it you think you wouldn't have to produce as a non-party

13   that you would have to produce as a party, because as far as

14   I'm concerned, you're going to have to start doing some

15   discovery separate and apart from whatever I say.

16       So it seems to me we ought to be coordinating what you're

17   doing so it can be used in the MDLs without you having to do

18   it all over again.

19       MR. TUCKER:  Joe Tucker again on behalf of Secant.

20   I agree with Your Honor's general statement.  We -- as I

21   initially started off proposing, that we produce in the MDL

22   those documents that we are gathering in the state court.

23       THE COURT:  All right.  And let me ask the

24   plaintiffs, since you've told me that they're basically

25   gathering everything you've asked for in the MDL, what's your

 1   response to that?  They're going to offer someone for a

 2   deposition, and I assume that Mr. Tucker is not saying that

 3   you can't attend it.  They're going to produce documents.  So

 4   what else is it you want right now?

 5          MR. TUCKER:  Your Honor, this is Joe Tucker again.

 6   I am unsure as to whether I'm saying they can't -- they can or

 7   cannot attend the state court action, as well as whether or

 8   not they can ask questions.  I respectfully don't want to

 9   agree to that at this point.  I need to -- I need to think

10   that through, Your Honor, and I apologize for not being ready

11   for that.

12          THE COURT:  Well, I mean here's what I can do.  I

13   can grant your motion in Ethicon because I think you're

14   entitled to it under the statute and deny your motion in

15   Boston Scientific because you're not entitled to it at this

16   stage in that MDL, but it brings us right back around to this

17   same point.  So I'm open to suggestions.

18          MR. AYLSTOCK:  Your Honor, this is Bryan Aylstock on

19   behalf of plaintiffs in Ethicon.  We certainly would like to

20   attend that deposition.  We'd like the documents produced into

21   the MDL as MDL work product that could be shared.  They are

22   certainly relevant not just to a claim against Secant but in

23   our claims against Ethicon.  In fact, they're highly relevant.

24      I was looking at a document just today where Dan Smith,

25   who Your Honor is very familiar with, their 30(b)(6) designee

1    on design, is e-mailing back and forth with the Secant folks

2    about certain things and with regard to how and the proper way

3    to do some of the construction on this.

4        So it's very important that we have this discovery, and

5    we've served a subpoena in this MDL so that we, Miss Lewis,

6    the first MDL case, and the others that are coming right

7    behind it, it looks like in waves, have the benefit of knowing

8    not just what Ethicon did, but their interactions with Secant

9    in co-designing this product.

10       It's more than, hey, this is just a supplier.  This is a

11   company that holds itself out as the co-designer.  It has its

12   own engineers.  It has its own specialty folks that interact,

13   according to their own documents and website, with Ethicon and

14   other manufacturers to design the best mesh for implantation

15   in the human body.

16       And so we absolutely do want this discovery and

17   respectfully disagree that the Act would deny Miss Lewis, for

18   example, who has not sued Secant, the benefit of that

19   discovery.

20            THE COURT:  All I can say, Mr. Aylstock, is I've

21   read the statute and it's very clear to me that if somebody

22   claims they're a biomaterials supplier and they make a motion

23   to dismiss on one of the grounds contained in the statute and

24   it's not the ground that involves raw materials or component

25   parts not meeting applicable contractual standards, then

1       they -- then no discovery can be done, except on

2       jurisdictional issues.  That's what the statute says.

3              You know, it makes -- I can agree with you it makes no

4       sense to me that you can't do discovery on the very basic,

5       fundamental claim that they are a biomaterials supplier and

6       not a manufacturer, but I see nothing in the Act that allows

7       that.  So in Ethicon, my understanding is that those motions

8       are pending and that they are not involving any part of the

9       contractual requirements of the component parts.  And so what

10      we're left with is the statute saying that no discovery can be

11      done except on jurisdictional issues.

12              MR. AYLSTOCK:  But with respect, Your Honor, the Act

13      doesn't address the situation where one plaintiff somewhere

14      else in the country has brought suit against a materials

15      supplier and how that would foreclose the right for another

16      plaintiff who has not done that from getting relevant

17      information that is critical to the claim potentially, and

18      so --

19              THE COURT:  Well, I thought -- and I'm not sure.

20      Maybe I'm not understanding procedurally what's happened,

21      because I don't have the motions to dismiss.  My understanding

22      is that the motions to dismiss are pending in the MDL and

23      they're not applicable to just a single case or five cases or

24      ten cases, but they're applying to all cases in the MDL.

25              MR. AYLSTOCK:  No, Your Honor.  Your Honor, I think

1   that's inaccurate.  Miss Lewis -- Secant was not named in the

2   master complaint, was not named in the short form complaint.

3   Miss Lewis has never brought a lawsuit against Secant.

4       The motions to dismiss are related only to those cases --

5   and there's -- you know, in the grand scheme of things,

6   there's very few Secant individual plaintiffs who have sued

7   Secant in the Ethicon MDL, extremely few on a percentage

8   basis, and they have not -- they have filed motions to dismiss

9   in those individual cases.  There was not -- and there's not

10  in the master complaint.  Miss Lewis hasn't done it either in

11  her individual complaint or by adopting any master pleadings,

12  so that's my point.

13              THE COURT:  Okay.

14              THE REPORTER:  Who is that?

15              THE COURT:  That was Aylstock.  Yeah, that makes a

16  big difference to me, then, because unless they're a defendant

17  in the MDL for all of the -- all of the suits, then, yeah, I

18  think somebody who hasn't sued them and for whom there is no

19  motion to dismiss pending can do discovery.  Now, it would be

20  non-party discovery, but it would be discovery nonetheless.

21              MR. AYLSTOCK:  And that's what we served.  We served

22  non-party discovery, and, frankly, I had an agreement that

23  they'd answer it, and then I gave an extension, and then all

24  of a sudden there's this motion come up, and it's concerning

25  to me because of the timing of everything.

1          THE COURT:  Right.

2          MR. AYLSTOCK:  So we would request that it be

3   responded to in an expedited basis given the -- already the

4   delays that we've had and that those folks who -- those

5   Ethicon plaintiffs who have not chosen to sue Secant don't be

6   prejudiced because a handful have.

7          THE COURT:  Right.  Well, what do you have to say to

8   that, Mr. Tucker?  It sounds to me, then, like you don't have

9   the benefit of the statute really for Ethicon or Boston

10  Scientific.

11         MR. TUCKER:  Joe Tucker on behalf of Secant.  We do,

12  however, Your Honor, have the ability to object to certain

13  aspects of the subpoena under the discovery rules because at

14  the time that it was initially served upon us, we were a third

15  party defendant.  We've never filed formal objections to the

16  subpoena.  We filed a motion to stay because, as indicated

17  initially, that will determine our ability to object as well

18  as to respond to the actual subpoenas, knowing our status.

19         THE COURT:  Well, yeah.  What I have in front of me

20  are your two motions to stay.  It doesn't sound to me like

21  either one of those motions is going to be granted at this

22  point because Mr. Aylstock made a really good point here.

23  They don't -- you haven't asked for a stay in the MDLs even

24  though all these -- all these briefs and everything were

25  styled such that I assumed they applied to the entire MDL, but

1     they don't.

2          So you really don't -- you really don't have a basis for

3     a uniform stay in every one of these cases.  So I'm going to

4     deny those motions.

5          Now, that brings us to what we're going to do with

6     discovery.  In both instances, you would be a non-party

7     deponent, a non-party corporation producing documents.

8          How do you want to handle that?  How do you all want to

9     handle that?

10          MR. TUCKER:  We want to speak with our clients and

11     look at the requests and how they differ from the state court

12     requests and file a formal response to the subpoena.  We may

13     object to certain aspects of it.

14          THE COURT:  Well, when do you plan on doing that,

15     Mr. Tucker?

16          MR. TUCKER:  Well, what I -- again, this is Joe

17     Tucker on behalf of Secant.  What I had initially suggested

18     when we got on the call was the rolling submission that we are

19     going to produce in the state court matter, that we produce

20     that under the MDL with the same confidentiality provisions of

21     the MDL, but, yeah -- and I just cannot agree at this point to

22     allow the MDL plaintiffs to be at the deposition, a court

23     matter.

24          THE COURT:  Well, I think personally you're making a

25     mistake, because I wouldn't want to keep offering my same

1    corporate witness over and over and over again, but that's, I

2    guess, your choice.

3        Now, that's not going to prevent the plaintiffs from just

4    filing a subpoena that sets the deposition at the same time

5    and at the same place that he's already going to appear.  I

6    don't know why you would want to do that, though.  Perhaps I'm

7    missing your point, but it seems to me like you're just going

8    to make more of a burden and more trouble for this man who has

9    to appear.

10            MR. TUCKER:  Well, in the first instance -- and this

11   is Joe Tucker again.  And I -- many of these issues were

12   argued in front of Judge Massiah-Jackson about this being the

13   inappropriate person to be deposed, but I don't want to burden

14   the Court with that discussion because there is someone whose

15   subpoena, whose affidavits that we put forth to the Court in

16   support of our motion for judgment on the pleadings.  And for

17   reasons that are irrelevant to this telephone call, the judge

18   decided that on the motion that she had denied, she wanted to

19   have that person deposed instead of the person who executed

20   the affidavit in support of the pending motions in front of

21   the Court.

22            THE COURT:  All right.  Well, let's talk, then,

23   about what we're going to do as far as the non-party

24   discovery.

25        You have said, Mr. Tucker, that you've received their

1    notice and you understand what documents they want and you

2    would like time to compare that to what you're going to have

3    to produce in the Pennsylvania case and you want to have an

4    opportunity to file objections.

5              MR. TUCKER:  Correct.

6              THE COURT:  So let's talk about a time frame for

7    that.  And let me hear from Ethicon, Boston Scientific, or the

8    plaintiffs as far as what you perceive would be an appropriate

9    time frame in view of the status of the cases as they're

10   moving forward to trial.

11             MR. AYLSTOCK:  Your Honor, Bryan Aylstock on behalf

12   of the plaintiffs.  And just a little bit of background here.

13   I guess it was probably six weeks ago we got a call, because

14   the subpoena was coming due, and they requested some more

15   time, and I got on the phone, and what I like to do, I said,

16   "Fine.  How much time do you need?"

17        "Well, we need another week, and then we can respond to

18   your subpoena."  And I said, "Okay.  We can live with that."

19        And instead of responding to the subpoena, we get,

20   without any meet-and-confer, this motion to stay that

21   completely -- had no idea.  They didn't disclose any of that.

22        They were -- apparently were prepared to respond to the

23   subpoena about five weeks ago.  I don't know the volume of

24   documents, but I suspect it to be somewhat substantial given

25   their involvement and what we've seen so far.  And so we would

1    like the documents within a week, because that was the

2    extension that I gave five or six weeks ago.  "Can I have a

3    week?"

4         "Yes, you can have a week."  So I'd like it to be here in

5    a week.

6              THE COURT:  Mr. Tucker, what are we talking about on

7    your end as far as your -- the status of your document

8    collection?

9              MR. TUCKER:  The beginning of January, Your Honor.

10             THE COURT:  Beginning of January.

11             MR. TUCKER:  Yes.

12             THE COURT:  All right.

13             MR. TUCKER:  We're going to start a rolling

14   production the end of this month is our expectation.

15             MR. BALEFSKY:  Your Honor, Lee Balefsky for the

16   plaintiffs in the Pennsylvania cases.  The judge order in

17   Philadelphia requires the documents to be produced by

18   December 24th, I believe.

19             THE COURT:  Okay.

20             MS. WAGSTAFF:  Your Honor, this is Aimee Wagstaff

21   for the Boston Scientific plaintiffs.  And before we could

22   agree to some sort of rolling production, I would just ask

23   that Secant let us know about how many documents they think

24   they're going to be producing, you know, if they're producing

25   a hundred thousand documents every two weeks or a hundred or

1    what sort of the scope is, because like Mr. Aylstock said, we

2    too agreed to an extension for them to produce documents

3    pursuant to the subpoena, and our exact response to them was

4    we would not oppose a response -- or an extension as long as

5    they provided responsive documents.  And then as well, without

6    a meet-and-confer, we received the motion to stay.

7        So I'd like to know what sort of scope of documents they

8    intend to produce, if they know.

9            THE COURT:  I think that's a good question.

10           MR. TUCKER:  I'm sorry.  This is Joe Tucker again on

11   behalf of Secant.  At this point, we anticipate we'll have

12   more than a hundred thousand pages of documents pursuant to

13   their request, and we will have addressed about 80 percent of

14   the requested materials in plaintiffs' 62 separate requests.

15           THE COURT:  When do you --

16           MR. TUCKER:  And --

17           THE COURT:  Now, when do you -- when do you think

18   you're going to have 80 percent of the documents?  By the end

19   of December?

20           MR. TUCKER:  Yes.  And we wrote, as Mr. Balefsky is

21   aware, we sent a letter to the judge today telling them that

22   we would be producing on a rolling basis between the 24th of

23   December and January 3rd more than a hundred thousand

24   documents.  And the actual date of the requirement is

25   December 25th, Christmas Day.

1      We are making a good faith effort to comply with this,

2  but we told the judge in no -- we wrote a letter, which

3  Mr. Balefsky was copied on, that it's virtually impossible to

4  comply with the Court's order within the timetable provided.

5  And I can't help -- I would be remiss if I didn't go back and

6  keep saying this is specifically what the BAAA didn't want

7  small companies like Secant to go through, this very arduous

8  procedure that we're going through with gathering these

9  hundreds of thousands of documents.

10      MS. WAGSTAFF:  Your Honor, this is Aimee Wagstaff

11  again for the Boston Scientific plaintiffs, and I would ask

12  Secant if they anticipate that their productions under the two

13  subpoenas in the MDL, meaning the Ethicon and the Boston

14  Scientific plaintiff subpoenas, will result in the same

15  productions, or are you -- when you say a hundred thousand

16  documents, are you thinking that you're going to produce a

17  hundred thousand in the Ethicon MDL and then a hundred

18  thousand as well in the Boston Scientific MDL?

19      MR. TUCKER:  The only thing -- this is Joe Tucker on

20  behalf of Secant in the state court matter.  The only

21  representation I am making is as to Mr. Balefsky's document

22  production requests which we are willing to produce for the

23  Ethicon defendants in the MDLs, there will be more than a

24  hundred thousand documents.  I believe Boston Scientific on

25  behalf of Secant will speak as to their documents.

1              MS. STUBBS:   Jennise Stubbs on behalf of Secant for

2        the Boston Scientific products.   We do not have as many

3        documents as Mr. Tucker is explaining for the Ethicon

4        products.   There are more in -- you know, below a hundred

5        thousand-page range for these documents, and we have always

6        said that we can produce these documents as a third party, but

7        we're asking for clarification from the Court because of the

8        limbo that Secant feels as being a party and a non-party.

9           We understand from the Court that you are saying that

10       because we are a non-party, we need to go forward with this

11       and are willing to do that.   I do want to clarify that

12       Miss Wagstaff's statement, with all due respect, is not -- is

13       not accurate.

14          We did not say that we would produce documents at the

15       time of the extension date.   We agreed that we would disclose

16       the areas of production by October 30th, and we reached out

17       to them and had a discussion with Mike Moreland, who's

18       co-counsel with Miss Wagstaff, and have produced those areas

19       of production.

20          We can produce the documents that are subject to the

21       subpoena early January.

22              MS. WAGSTAFF:   This is Aimee Wagstaff.   Do you

23       anticipate, Miss Stubbs, producing them in one production, or

24       are you suggesting a rolling basis?   Because we're okay with

25       early January if we could just have a hard date that you'll

1    produce by.

2          MS. STUBBS:  Yes, we plan, just as we have -- Your

3    Honor, we have another -- another defendant in many of these

4    cases that's a biomaterial supplier where we have already

5    produced documents to Miss Wagstaff and others.  And so we

6    plan on doing the same thing, which would be the bulk of the

7    production would be in early January.  And if there is any

8    other document that we ascertain to be responsive to the

9    subpoena, we would produce that at a later date.

10          THE COURT:  When you say early January, Miss Stubbs,

11   what do you mean?

12          MS. STUBBS:  Well, given the holidays, I would

13   like -- and just that we are working with a small company that

14   is not used to all of this litigation and is definitely not

15   comfortable with all of this, I would like, you know, by

16   January 10th, you know, a little into January so that we can

17   have some time to make sure that we have a complete production

18   from them.

19          THE COURT:  Miss Wagstaff, is January 10th

20   agreeable with you?

21          MS. WAGSTAFF:  That is.  That's agreeable with us if

22   it's -- if it's the bulk of the production.

23          THE COURT:  All right.  Well, then, as far as

24   Ethicon goes, I hear Mr. Tucker saying he'll begin a rolling

25   production December 24th and it will be finished by January

1    the 3rd.

2        I don't think that is so much longer, Mr. Aylstock,

3    particularly with the holidays in between.  That seems

4    reasonable to me.

5        And then with Boston Scientific, I'm going to deny the

6    motion to stay, and they'll produce documents by January the

7    10th.

8        So now that takes care of dates for document production.

9    Do we have other issues related to the document production?

10           MS. WAGSTAFF:  Your Honor, this is Aimee Wagstaff,

11   and I would just like to maybe nip something in the bud before

12   it becomes an issue.

13       If, in fact, those 26 cases that Miss Stubbs was talking

14   about do get transferred over, as it sounds like they might, I

15   just want to make sure your order would stand so that we're

16   not back on this phone call in another week and a half.

17           THE COURT:  Definitely.  I was under the impression

18   that this issue related to all the cases in the MDL, because

19   that's what the pleadings that I received say.  But what I

20   heard Mr. Aylstock say is that's not true; these motions have

21   only been filed in the sprinkling of cases that involve Secant

22   as a named defendant.

23           MS. STUBBS:  Your Honor, Jennise Stubbs for Secant.

24   It was my understanding that the subpoena, the third party

25   subpoena was issued from multiple plaintiffs in the MDL, and

1    then we responded in response to that subpoena and for all of

2    those cases.

3         So it never was my impression that we were responding in

4    just one or two cases and that the request was only in one or

5    two cases.  And that's why I'm having a little bit of

6    difficulty understanding the ruling as to Ethicon which could

7    impact Boston -- Secant as to Boston Scientific products in

8    the future, because the BAAA is supposed to protect from

9    discovery, and we're basically saying that there's some

10   loophole in here that allows some sort of discovery before a

11   motion to dismiss is decided, which the statute really

12   contemplates happening as an initial matter to not burden

13   these companies.

14        THE COURT:  I think the problem is that you're

15   dealing with an MDL and you're not a defendant on the master

16   complaint.  So all they have to do is they could just subpoena

17   these documents from you from one -- one plaintiff.

18        MS. STUBBS:  But they haven't subpoenaed them from

19   just one plaintiff.  Our subpoena was issued from numerous

20   counsel.

21        THE COURT:  Well --

22        MS. STUBBS:  -- in the MDL, and there's no

23   reference -- I'm looking at the subpoena right now.  There's

24   no reference to just one or two cases --

25        THE COURT:  Well, what I'm saying, though, is from a

1    practical standpoint, it doesn't make any difference.  The

2    only time the statute is going to protect you is if you're a

3    defendant and you've made a motion to dismiss.

4        I think you all agree -- you've all agreed that if you're

5    a non-party, you have some duty to respond to a subpoena.  I

6    think everybody has agreed to that, as far as what I could

7    see.  And my point is, if you're not a defendant in every one

8    of these MDL cases, then they could just pick any one of the

9    ones they want to where you're not a defendant and subpoena

10   these records.

11       So from a practical standpoint, you're on the hook as a

12   non-party since you're not a defendant in all of them.

13            MS. WAGSTAFF:  I agree with you, Your Honor.  This

14   is Aimee Wagstaff.  And responding to what Miss Stubbs said,

15   the reason the subpoena -- she's representing Boston

16   Scientific, and the reason the subpoena is for all of the

17   plaintiffs in that particular situation is because at the time

18   of issuance and as we sit here talking today, Secant is not a

19   defendant in MDL 2326 in any case.

20            THE COURT:  But, you know, I'm just saying you don't

21   want to worry too much about the form and ignore the

22   substance.  And the substance of this is, for every case

23   you're not a defendant, you don't have the benefit of this

24   statute.  And there's plenty of cases in the MDLs where you're

25   not a named defendant but your documents might still be

1    relevant.  So I'm not sure it's a battle worth fighting.

2              MS. WAGSTAFF:  I agree, Your Honor.

3              THE COURT:  And I don't know whether -- I don't

4    know -- Secant, are you going to insist that -- and especially

5    in the Ethicon situation, that the subpoena -- I don't know,

6    did you issue the subpoenas in the names of the people that

7    sued Secant or did you issue them on some other -- for some

8    other plaintiffs?

9              MR. AYLSTOCK:  No, Your Honor.  This is Bryan

10   Aylstock.  We issued them on behalf of the plaintiffs, you

11   know, the MDL; and that, of course, would include Miss Lewis,

12   who certainly did not sue Secant.  There is no motion to --

13             THE COURT:  So your subpoena was issued on behalf of

14   all the plaintiffs in the MDL.

15             MR. AYLSTOCK:  Yes.

16             THE COURT:  Okay.  And in some of those plaintiffs,

17   Secant would have the benefit of the statute.

18             MR. AYLSTOCK:  Well, at the time of issuance, none

19   of those plaintiffs were in this MDL, but I see your point,

20   but I think it's a distinction without a difference.

21             THE COURT:  I agree.  But I wanted to know whether

22   Secant thinks there's a difference.

23             MS. STUBBS:  Well -- Jennise Stubbs on behalf of

24   Secant.  We just -- we understand that, and I am with you on

25   that there are other cases, and at the beginning of all this,

1    we understood that getting at a third party subpoena, Secant
2    was, you know, obligated to respond to that as a third party.

3        It has complicated the issue with the transfer of these
4    cases and with all of -- since the original subpoena was
5    issued as to Secant, numerous cases in Philadelphia state
6    court were filed against it.  So it was not even a defendant
7    whenever the initial subpoena went out, it was not a defendant
8    in the Philadelphia state court.

9        Secant then became a defendant in the Philadelphia state
10   court.  We removed many of those cases, and Boston Scientific
11   removed all of the cases except for one that is still pending
12   in Philadelphia state court.  So there are many cases that are
13   now pending in the federal court; and any day now, the party
14   status will change as to Secant in the MDL.  And that's why we
15   felt that we needed to file the motion to stay, because we
16   wanted some clarity and also we saw what was going on in the
17   Ethicon litigation.

18       We completely understand that Secant is obligated to
19   produce on -- as a third party.  Where the rub comes down is
20   that under the BAAA, if we are a party in the case, under the
21   BAAA, we don't have to go through any discovery, we are
22   entitled to a decision on the motion to dismiss as an initial
23   matter, and so we don't want it to be that we are being
24   required to give more -- to do more discovery, which will
25   burden the company even more than already is being asked of

1    them as a third party, because there's some issue regarding

2    the party status and non-party status.  But the party status

3    is wrapped up all in a motion to dismiss.

4            THE COURT:  Well --

5            MS. STUBBS:  So if I'm making myself clear, it's --

6            THE COURT:  Yes.  No, I do --

7            MS. STUBBS:  -- the burden on Secant of what kind of

8    production plaintiff is expecting from them.

9            THE COURT:  Right.  I understand and -- I understand

10   what you're saying and I agree with you.  I think what we're

11   talking about is a non-party production.  But to me it doesn't

12   sound like it's going to make a whole lot of difference when

13   you get right down to it.

14           MR. BALEFSKY:  Your Honor, Lee Balefsky.  I just

15   want to make it clear that, you know, it's Secant and Boston

16   Scientific and Ethicon who've availed themselves of the MDL by

17   removing all of these cases.  So I mean they've put themselves

18   in the position that they're in.  And, you know, they've got

19   to live -- you know, if you live by the sword, you've got to

20   die by the sword, so to speak.

21       So the only thing I'm concerned about -- and I know

22   you're talking about production in the MDL.  From the

23   standpoint of Pennsylvania, I just don't want Mr. Tucker to

24   think that because I've remained silent that the letter he

25   wrote this morning to Judge Massiah-Jackson that I agree with

1   it, because I don't.

2       In that letter he indicates that he's only going to

3   produce 80 percent of the requested documents in the

4   Philadelphia litigation and he's going to leave out 20 percent

5   of the documents, which may be some of the most important, you

6   know, documents.  So I haven't agreed to that at all.  I just

7   want to make that clear --

8           THE COURT:  All right.

9           MR. BALEFSKY:  -- for the record.  The other

10  question I have in terms of procedurally is in what format

11  those -- need to produce these documents.  I think that's very

12  important.

13          THE COURT:  Okay.  Well, that's right where I was

14  going before we got off on this tangent.  But to answer your

15  question, Miss Wagstaff, if -- if they do become a defendant

16  in some of these cases in Boston Scientific and they file

17  motions to dismiss, that's not going to change anything as far

18  as their production as a non-party.  So we're going to move

19  forward with this and we're not going to have any more

20  telephone calls about this same issue.  I think we've got this

21  worked out.

22      So now we've got some dates and we've got some document

23  production that's going to be done.  The next question is, how

24  are they going to be produced, because I remember that was a

25  concern on Secant's behalf as far as the ESI protocols in

1  these cases.

2          MR. TUCKER:  Your Honor, this is Joe Tucker on

3  behalf of Secant.  A decision has not been made as to how we

4  are going -- in what form we're going to produce these.  We're

5  working through that.  And that's -- and that's the best

6  answer I can give at this point.

7          THE COURT:  All right.  Well, I want you to work

8  with the plaintiffs to try to figure out how to do this in a

9  way -- and I'm not -- and I'm not saying that just because I

10  want the plaintiffs to get the documents that they think they

11  need.  I want to do that for your client as well, because I

12  don't want you to have to produce the same documents over and

13  over again.

14          MR. TUCKER:  Is the Court by that -- this is Joe

15  Tucker again, Your Honor.  By that, is the Court suggesting

16  that the plaintiffs pay the costs of this?

17          THE COURT:  No, I'm not suggesting that.  There's

18  been no motion to that effect.  If you want to make a motion,

19  then you are more than welcome to do that about --

20          MR. TUCKER:  Should I make a formal -- should I make

21  a formal motion, or is it appropriate to make it now on the

22  phone?

23          THE COURT:  It would be more appropriate to do it in

24  writing because there's a whole body of case law on that very

25  subject.

1          MR. TUCKER:  Understood.

2          THE COURT:  All right.

3          MS. WAGSTAFF:  Your Honor, this is Aimee Wagstaff,

4     and I see dates that we've agreed to in my head coming out in

5     your order, and I would suggest that -- you know, I did say

6     that Boston Scientific is fine with January 10th, and we

7     still are.  I'm just concerned that not knowing -- this

8     rolling production makes me nervous because I'm not quite

9     sure, you know, when we're going to get the last production,

10    and we now have a trial date set in March, and obviously

11    February we'd like to dedicate to sort of refining our trial

12    package instead of looking at new documents.

13        So I would request that the production be completed by

14    January 20th, which gives them from the date we served the

15    subpoena, you know, five months or so to produce and allows

16    ten days of production.

17         MS. STUBBS:  This is Jennise Stubbs for Secant.  I

18    just want to clarify.  I didn't say that we were going to have

19    rolling production.  I said the vast majority of everything

20    that we would be producing would be on the 10th.  If we did

21    find something after that, we would produce that as well if we

22    felt that it was responsive.  I mean I don't have a problem

23    with agreeing to that, but I did want to clarify that we --

24    you know, the 10th, we will shoot to producing as much as we

25    can on that date.

1          THE COURT:  All right.  So we do have dates, and

2     you're going to work on the form of the production, as I

3     understand it.  And let's try to get something worked out on

4     that pretty quickly.  Well, you're going to have to, because

5     the documents have to be produced in just a few weeks.

6          So is there anything else on the document production end

7     of it?

8          MR. AYLSTOCK:  That's all we have, Your Honor.

9     Bryan Aylstock.

10          THE COURT:  All right.  Now, is there any other

11     discovery that is outstanding with Secant that needs to be

12     addressed today, or is that something that the parties would

13     like to work out themselves?

14          MR. AYLSTOCK:  Again, this is Bryan on behalf of the

15     plaintiffs.  We would like the opportunity to look at those

16     documents, you know, after we've digested them, perhaps take

17     some depositions, but I think it's, at least in the MDL,

18     somewhat premature, although I would note the deponents that

19     are coming up in Philadelphia Court of Common Pleas I know for

20     a fact we'll probably want --

21          THE REPORTER:  I'm sorry?

22          THE COURT:  -- want both of them.  All right.  Well,

23     I'm going to let you -- then you guys try to work out what you

24     want to do with the witnesses.  It sounds like you're going to

25     need the documents first anyway.  And, you know, maybe by the

```
 1    time you get the documents and you've heard what the witnesses

 2    have said in the Philadelphia court, you're not going to want

 3    to go any further with this anyway, so --

 4             MR. TUCKER:  This is Joe --

 5             THE COURT:  Yes, go ahead, Mr. Tucker.

 6             MR. TUCKER:  Yes, Your Honor.  This is Joe Tucker

 7    again on behalf of Secant.  Again, I want to go to where I

 8    started off, if these are our concluding words before you end

 9    the conference, is that a lot of direction and guidance can be

10    given simply by Judge Goodwin ruling on the motions.  And I

11    don't know if you and Judge Goodwin are in communication with

12    each other, but, you know, on behalf of those defendants who

13    are subject to the BAAA and those protections of the BAAA, a

14    ruling by Judge Goodwin on this issue will go a long way with

15    helping to resolve a lot of these issues that are presently

16    before this Court and which are presently burdening us,

17    Secant, its officers, its administration, its administrative

18    and its manufacturing process.  And we just implore the Court,

19    to the extent that we can, that if you could have

20    communication with Judge Goodwin about a timing on this, it

21    would be greatly appreciated.

22             THE COURT:  Certainly.  I will mention to Judge

23    Goodwin your concerns and your desire to have the motions

24    determined as soon as possible.

25             MR. AYLSTOCK:  And, Judge Eifert, this is Bryan
```

1   Aylstock on behalf of the plaintiffs.  I probably butted in

2   before Lee had a chance -- or Mr. Balefsky had a chance, but

3   also pending are motions to remand, which, of course, are

4   jurisdictional in nature and need to be handled as such, with

5   subject matter jurisdiction being the issue.  And we certainly

6   request that those also be heard, in fact, possibly heard

7   before the motion --

8           THE COURT:  I will pass that message along as well.

9           MR. AYLSTOCK:  Thank you, Your Honor.

10           THE COURT:  Is there anything else, then, we need to

11   do today?

12           MR. AYLSTOCK:  No, Your Honor.

13           THE COURT:  All right.  Thank you.  Goodbye.

14           UNIDENTIFIED SPEAKER:  Thank you, Judge.

15       (Hearing concluded at 3:57 p.m.)

16

17

18

19

20

21       I, Teresa M. Ruffner, certify that the foregoing is a

22   correct transcript from the record of proceedings in the

23   above-entitled matter.

24

25       /s/Teresa M. Ruffner              December 23, 2013