UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

---

| | |
|---|---|
| IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | CIVIL ACTION NO. 2:12-md-02327 |
| | MDL No. 2327 |
| This Document Applies To All Actions | Judge Joseph R. Goodwin |

---

**PLAINTIFFS' NOTICE OF SUPPLEMENT TO**

<u>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A FINDING OF SPOLIATION AND FOR SANCTIONS**</u>

Since filing their motion on spoliation, Plaintiffs have discovered that a veritable tome of additional documents have been destroyed, lost or simply cannot be found. For the sake of these MDL proceedings and comparable future litigation, Defendants should not be tacitly rewarded for thwarting the rules and principles of discovery and making Plaintiffs' task difficult if not impossible, depending on what juries would find without sanctions.

1. <u>**Defendants have lost, destroyed or otherwise withheld numerous documents beyond those originally cited.**</u>

In addition to the documents of over a dozen corporate executives and bellwether case marketing personnel identified in Plaintiffs' opening memorandum, files are missing from the following key employees:

● **John Clay**, Manager, Regulatory Affairs: Ethicon identified Mr. Clay as the Regulatory Affairs associate with principal responsibility for the TVT line of products from 2006-07. In fact, the company named him as the primary regulatory person with responsibility

1

for the entire TVT line of products in their official 30b6 response.[1] Despite Mr. Clay's key position related to this litigation, and his selection by Defendants as the most knowledgeable of regulatory personnel, Defendants have produced no custodial file for Mr. Clay at all, and have indicated that none exists.[2]

- **Kendra Munchel** Global Marketing Manager, 2005-07: Ms. Munchel was also a manager of professional education from 2002-05. She was a member of the "core teams" for professional education for both the TVT-O and Prolift launches. Defendants have inexplicably produced no custodial file at all for Ms. Munchel, and have indicated that none exists.

- **Tom Divilio**, Director, Medical Affairs, from 1997 through 12-31-2009: Though they are undoubtedly only a fraction of the internal correspondence in which he was involved, hundreds of e-mails uncovered in other files establish that Mr. Divilio was heavily involved in TVT projects. Once again, Defendants have produced no custodial file at all for this key executive, and have stated that production of his custodial file is complete, and no responsive documents were identified.[3]

- **Amy Godwin**, Clinical Development, 2000-recent years: The fact that Ms. Godwin served as the Manager of Clinical Studies, was promoted to Associate Director of Clinical Development in 2004 and ultimately became Director of Clinical Trial Operations in 2007 makes the total of zero documents in her custodial file untenable, especially since a search of her name reveals her involvement in over 4,000 documents indicating she had substantial

---

[1] February 26, 2013, Response to Topics 1 and 4 (Regulatory Affairs 30(b)(6) notice (Exhibit 1).
[2] December 17, 2013, Email from William Gage to Bryan Aylstock, et al. Subject: Pelvic Mesh Custodial Production Summaries (Exhibit 2).
[3] See Exhibit 2.

2

involvement in the clinical affairs of the TVT line. Again, Defendants have confirmed that production of her custodial file is complete, yet there is no custodial file for Ms. Godwin.[4]

- **Susan Landgrebe**, 2005-present or recent time: She worked on the matrix materials project and is actually named on the Patent for the TVT-Secur. It is thus implausible that her custodial file, which Defendants claim has been fully produced,[5] consists of 75 documents totaling 543 pages.

- **Zenobia Walji**, Worldwide Director, Strategic Planning, 2009-12: She has been with Johnson and Johnson since 1988 and worked her way up in the Ethicon/Gynecare franchise to the position of marketing director from 2000 to 2004, where she oversaw the "vision and launch" of a pelvic floor platform in Gynecare (a division of Ethicon), a "$200M adjacent business."[6] Her CV states that she developed short term operational and seven year strategic plans for core businesses.[7] From 2004 to 2005, she served as Director, Strategic Marketing, and was heavily involved in the global launch of Ethicon's Prolift product. Defendants' claim her custodial file has been fully produced.[8] Perhaps the few hundred documents (including all emails from her numerous years at the company) that appear in that file might not seem quite so suspect were it not for the fact that nearly 7,000 documents produced to date contain her name. Indeed, in her case, there can be no doubt that key documents are clearly missing, including prior and subsequent versions of the Global Launch Plan for Prolift.[9] Moreover, where are her short term operational or seven year strategic plans for any of the pelvic floor products? Ms. Walji has since moved to the Far East and Ethicon has not produced her for a deposition in the TVT

---

[4] See Exhibit 2.
[5] See Exhibit 2.
[6] *See* Zenobia Walji - Summary of Qualifications (CV) (Exhibit 3); Note - TVT-O was launched in 2003 and early 2004
[7] *Id.*
[8] See Exhibit 2.
[9] ETH.MESH.00633750-789 (Exhibit 4).

3

cases despite a request to do so.[10] Clearly key documents that at one time existed in Ms. Walji's filed have been lost or destroyed by Ethicon despite the litigation hold that was in effect during these key times of her employment with Ethicon/JNJ.

● **Nancy Leclair**, Director, Marketing Services, 2000-11. The fact that she held the highest position in marketing services and has been at the company for upwards of 12 years makes the custodial file of 189 documents totaling 1,633 pages, that Defendants say constitutes full production,[11] unacceptable. That is especially true given that she was copied on over a thousand e-mails that appear in other custodial files but not hers.

The spoliation inherent in production of these skeletal custodial files is in addition to the more than a dozen files discussed in Plaintiffs' original memorandum.

**2.     The sheer magnitude of the spoliation belies any claim that the custodial files can be recreated by Plaintiffs.**

Defendants have hinted to Plaintiffs that they may actually argue that the fact that some of these executives' documents have been found in other files means Plaintiffs have no business complaining. Plaintiffs, the argument goes, should have just laid out all the documents, matched names as best they could and put the pieces of each custodial file together like a jigsaw puzzle. This contention is flawed on so many levels. First, this was most certainly not Plaintiffs' burden; it was Defendant's. There is no discovery rule that authorizes Defendants to ignore document requests and merely produce whatever custodial files it can locate. Moreover, given the magnitude of spoliation of documents, with custodians ranging from the President and Vice President of Ethicon,to key clinical, marketing, regulatory, and professional education

---

[10] June 5, 2013 Email from Mary Ellen Scalera to Jeffrey Grand, et al. Subject: In re Pelvic Mesh – NJ Deposition Scheduling (Exhibit 5).
[11] See Exhibit 2.

personnel, the amount of relevant information being withheld from the plaintiffs in this case is nothing short of astounding.

Further, and most importantly, the information is not something that can simply be recreated by finding documents in another custodial file. This is true for multiple reasons. Initially, this method of attempting to "recreate" a custodial file could realistically encompass missing e-mail only. That is, only e-mails or other internal correspondence might appear in other custodial files. Documents that an executive created himself or that weren't attached to e-mail will not appear in other files. Second, the argument presupposes other custodians whose files were produced were included in the missing e-mails. Thus, e-mails limited to the custodian at issue and third parties or other company personnel whose files were not produced would not show up elsewhere. Finally, but significantly, the argument ignores the huge gaps in multiple custodial files that exist. So many documents are missing from so many files that there are undoubtedly e-mails involving multiple personnel that simply no longer exist (or have been withheld). A custodial file is not like a jigsaw puzzle in that, after piecing together such a file, Plaintiffs have no way of seeing all the pieces that are missing from the middle. For all of the above reasons, and for those set forth in Plaintiff's original motion, severe and punitive sanctions are clearly warranted in this case.[12]

---

[12] Compare the abuse here with the conduct that is the subject of Defendants' motion to dismiss with prejudice the cases of those plaintiffs who were the least bit tardy in filing their plaintiff profile forms where such tardiness visited absolutely no prejudice upon Defendants. In those cases, even when the PPFs were served before Defendants filed their motion to dismiss, Defendants have refused to withdraw its motions or back off its claim for the most severe sanction possible – dismissal with prejudice - against women who claim permanent injury as a result of Defendants' mesh products. Yet, Defendants' spoliation has been longstanding, highly prejudicial and the product of at least negligence, if not a deliberate plan.

Dated: December 27, 2013          Respectfully submitted,


         /s/ D. Renee Baggett
         D. RENEE BAGGETT
         BRYAN F. AYLSTOCK
         Aylstock, Witkin, Kreis and Overholtz, PLC
         17 E. Main Street, Suite 200
         Pensacola, FL 32563
         P: 850-202-1010
         F: 850-916-7449
         Rbaggett@awkolaw.com
         Baylstock@awkolaw.com


         /s/ Thomas P. Cartmell
         THOMAS P. CARTMELL
         Wagstaff & Cartmell LLP
         4740 Grand Avenue, Suite 300
         Kansas City, MO 64112
         P: 816-701-1102
         F: 816-531-2372
         tcartmell@wcllp.com
         http://www.wagstaffcartmell.com/


         *Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

      I hereby certify that I filed the foregoing memorandum on December 27, 2013, using the Court's CM-ECF filing system, thereby sending of the filing to all counsel of record for this matter.

                                               /s/ D. Renee Baggett