# EXHIBIT D

| *Subject Matter* | *Declaration of James P. Mittenthal* | *Deposition Testimony of James P. Mittenthal* |
|---|---|---|
| **Existence of Reasonable Written Policies and Procedures** | 17. My fact-finding shows that, at all times relevant to this litigation, Ethicon has had in place written record retention policies, procedures, training, and technologies that were reasonable for a company of its type and size and were designed to facilitate appropriate record retention, both in the ordinary course of its business operations and regulatory framework generally and in connection with pelvic mesh litigation specifically. Dec. pg.7. | As company representative, Mr. Mittenthal is not aware of any written policy reflecting changes made to document preservation procedures implemented in June of 2012.  Mittenthal 9/25/12 Dep. at 371:8-372:2.<br><br>The 2002 audit, during which Ethicon was cited for failure to maintain a formal records management program, was the rationale for implementing the 2007 CAPA five years later.  Through this 2007 CAPA, Ethicon admits that it is not compliant with records management requirements.  Mittenthal 9/25/13 Dep. at 464:23-466:8; Mittenthal 5/14/13 Dep. at 271:23-272:5.<br><br>In 2007, four years after the records management program was instituted, multiple sites received TRAC scores lower than the acceptable limit set by Ethicon.  A TRAC score monitors records management compliance. Mittenthal 9/25/13 Dep. at 542:6-11; 545:11-546:2.<br><br>It was the company's policy and procedure to send hold notices to a distribution list that was maintained by the risk manager.  The managers in various departments had the complete discretion to review the list, determine if anyone was missing from this list, and forward the notice to that person.  Mr. Mittenthal does not dispute that even as of today, there is no way to ensure that hold notices are going to all people with potentially relevant information.  Mittenthal 8/13/13 Dep. 115:10 – 117:12; Mittenthal 9/25/13 Dep. 468:7-470:2. |

| | | |
|---|---|---|
| **Ambiguity of Hold Notices** | 33. For example, the April 2008 hold notice unambiguously instructed employees, "Do not discard, destroy, or alter in any way any" documents – regardless of type (e.g., paper, electronic, audio/video files) – pertaining to the subject matters identified (original emphasis). It further provided that "[f]ailure to preserve these materials could result in Court imposed penalties or sanctions on both the company and/or individual employees" (original emphasis). Dec. pg. 10. | Beginning in 2002, hold notices were ambiguous due to a typographical error. In 2008 this error was yet to be fixed, and it exists in notices as late as 2013. Mr. Mittenthal acknowledges that this error may cause different meanings to attach to documents that are required to be preserved. Mittenthal 8/13/13 Dep. at 77:15-78:18; 125:17-126:9. Further, employees had varying interpretations of how to proceed in relation to the hold notices. Mittenthal 8/13/13 Dep. at 225:25-227:12. |
| **Employee Compliance and Management of Information** | 38. Thus, individuals were provided the flexibility (and in fact did) manage their information and records in different ways during their employment and at their departure (e.g., using the litigation hold folders, using other folders that are retained, copying materials to a CD) that proved most conducive to business use, while complying with their obligations under Ethicon's litigation hold. Dec. pg. 11. | Mr. Mittenthal admits that the use of one location to store documents subject to a litigation hold would be easier to manage, take advantage of new advances in technology, and allow information to be centralized. Mittenthal 8/13/13 Dep. at 237:17-25.<br><br>Not all employees did in fact understand their obligations under Ethicon's litigation holds, and as a result, some employees did not use the appropriate files to preserve the requisite documents. Mr. Mittenthal also cannot rule out that some employees did not receive litigation hold notices at all. Mittenthal 8/13/13 Dep. at 225:25-228:8. |

| **Employee Education and Training** | 40. Ethicon has made an ongoing and conscientious effort to educate its employees as to their responsibilities to preserve information for litigation purposes. In addition to the guidance regarding compliance contained in the hold notices themselves (including, in some notices, a section addressing "frequently asked questions"), Ethicon has conducted training on the hold notices. Dec. pg. 11. | Mr. Mittenthal cannot identify documentation that training took place. He has seen documentation of systems that manage the training, materials and curriculums, but was unable to testify to dates that training occurred. Mittenthal 9/25/13 Dep. at 515:2-20. |
|---|---|---|
| **Employee Knowledge and Understanding of Litigation Hold Obligations** | 43. My fact-finding revealed a widespread, albeit uneven, understanding by Ethicon employees of both the existence of pelvic mesh-related litigation hold notices and the substantive requirements of the notices. Dec. pg. 12. | According to Mr. Mittenthal, some sales representatives had "less than complete knowledge" of the outstanding litigation holds and there was "not a well-founded understanding" of these policies. Some sales representatives did not understand their obligations as it related to legal holds and accordingly may not have preserved documents in connection with such holds. Mittenthal 5/14/13 Dep. at 217:16-218:25; 222:1-11.<br><br>Employees generally also adopted varying interpretations of the hold notices. Mittenthal 8/13/13 Dep. at 225:25-227:12. Not all employees understood their obligations, and as a result, some employees did not use the appropriate files to preserve documents. Mr. Mittenthal did observe instances where employees were not aware of hold requirements at all or were not following the hold requirements. Mittenthal 8/13/13 Dep. at. 237:17-25; Mittenthal 9/25/13 Dep. at 558:19-559:2; 605:5-13. |

3

| **Causality Between Data Loss and 2012-2013 Policy Changes** | 51. Over the past year or so, Ethicon has implemented a number of measures to secure its ability to meet legal hold obligations going forward, including certain actions that were taken in response to issues identified in connection with this MDL.<br><br>52. As to sales representatives, in December 2012, Ethicon instructed C3i, the third party vendor that manages the hardware of all sales representatives, to permanently retain all hard drive images when a sales representative separates from the company or receives replacement equipment. Dec. pg. 14. | Mr. Mittenthal "can't speak to the causality" between Ethicon's data loss and subsequent measures taken such as retaining hard drives. Mittenthal 9/25/13 Dep. at 340:11- 341:22. |
|---|---|---|
| **2002 Audit and 2007 CAPA** | 59. Plaintiffs incorrectly suggest that a 2002 audit and 2007 CAPA demonstrate that Ethicon's preservation procedures were inadequate. However, as described above, the purpose of the CAPA was to align a formal records program for Ethicon with corporate standards on an ongoing basis. Despite the shorthand description in the CAPA, my fact-finding showed that the CAPA did not take issue with Ethicon's ability to preserve relevant information in the case of litigation, including this litigation. Further, the CAPA had nothing to do with pelvic repair documents in particular. Dec. pg. 16. | Mr. Mittenthal admits that five years after the audit, via the 2007 CAPA, Ethicon is saying that it is not compliant with records management requirements. Mr. Mittenthal would take note of this CAPA, which states that Ethicon cannot appropriately provide all relevant documents in case of litigation or inspection, and considers it important to understand. Mittenthal 5/14/13 Dep. at 271:23-273:10. |

| **Dates of Relevant Legal Holds** | 62. It should be expected that these 13 individuals who departed the company prior to the commencement of these cases and the issuance of a legal hold (and many years before custodial collections were conducted) would have few, if any, documents attributed to them in a "custodial file." Dec. pg. 17. | Mr. Mittenthal admits, as the company witness, that at the time of issuing the original TVT hold notice in 2003, Johnson & Johnson is on notice regarding litigation of the TVT product, and further, that a TVT legal hold notice issued in 2006 is "relevant to this case." Mittenthal 8/13/13 Dep. at 89:10-16; Mittenthal 5/14/13 Dep. at 271:18-22. At least as early as 2003, Johnson & Johnson was on notice that there was a need to preserve evidence relating to TVT devices in potential TVT litigation. From 2002 to the present, no litigation holds have been removed, and the holds continue to be in effect. Mittenthal 8/13/13 Dep. at 215:12-216:6; 197:4-198:11.<br><br>**Q. And that's your entry there that there was a hold litigation notice that was relevant to this case that was entered in 2006, correct?**<br>**A. Correct.**<br><br>**Mittenthal 5/14/13 Dep. at 271:18-22**<br><br>**Q. And so you would agree with me that – as the company witness that J&J is stating at this time in 2003 that it is on notice regarding litigation regarding the TVT product; right?**<br>**A. Yes**<br><br>**Mittenthal 8/13/13 Dep. at 89:10-16**<br><br>**Q. No holds have been removed since 2002 until today, correct?**<br>**A. That's correct.** |

5

|  |  | **Mittenthal 8/13/13 Dep. at 198:9-11**<br><br>**Q. And you would agree with me that Ethicon and Johnson & Johnson, at least as early as 2003, was on notice that there-that there was a need to preserve evidence relating to TVT devices in potential TVT litigation; correct?**<br>**A. Yes, I agree.**<br><br>**Mittenthal 8/13/13 Dep. at 215:12-216:6**<br><br>**Q. In other words, if there was other mesh litigation and it wasn't necessarily TVT litigation, for example, it could help put an individual at the company on notice that they need to be preserving mesh-related information; correct?**<br>**A. Depending on the subject matter of the notice, but yes.**<br><br>**Mittenthal 8/13/13 Dep. at 100:3-100:9** |
|---|---|---|

6

| **Alternative Sources of Custodial Documents** | 73. Thus, even where an individual's "custodial file" does not contain any documents, as shown above, it is possible (and in fact is the case here) that substantial numbers of that individual's documents (including email communications) have been collected and produced, from file shares, databases, and other enterprise electronic systems, as well as from other individuals' "custodial files." Dec. pg. 21. | Mr. Mittenthal admits that not all documents belonging to one custodian will show up in other custodial files. Mittenthal 8/13/13 Dep. at 218:7-219:6.<br><br>**A. …there have been indications that documents have been transferred to others and would, therefore, show up under the counts from other custodians.**<br>**Q. You and I both know that not all documents are going to show up on others; correct?**<br>**A. Correct.**<br><br>**Mittenthal 8/13/13 Dep. at 218:7-219:6**<br><br>**A. …There have no doubt been cases where information that could have been produced was not – not held by the custodian due to a – varying interpretations of the legal hold requirements.**<br><br>**Mittenthal 8/13/13 Dep. at 219: 3-6** |
|---|---|---|
| **Relevancy of Documents** | 74. In addition to the above, other findings from my investigation also fail to support the notion that documents "missing" from particular individuals' "custodial files" were necessarily relevant. To the contrary, as explained below, Ethicon's collection methodology was designed to maximize the production of relevant materials from multiple sources. Dec. pg. 21. | Mr. Mittenthal admits that there are potentially relevant documents that the company has been unable to produce because they were lost within the company. Mittenthal 8/13/13 Dep. at 216:10-19; 217:13-16.<br><br>**Q. Would you agree with me that there are potentially relevant documents that Ethicon or J&J has been unable to produce in this litigation?**<br>**A. There are -- there are indications that there have been potentially relevant documents that the company has been unable to produce.** |

|  |  | Mittenthal 8/13/13 Dep. at 216:10-19 |
|---|---|---|
| **Relevancy of Documents** | 80. Plaintiffs in their brief indicate that the production of small numbers of documents in the custodial files of certain individuals means that relevant documents must have been lost. Based on my investigation, this suggestion is unfounded as applied to a number of the individuals Plaintiffs identified. Dec. pg. 23. | Mr. Mittenthal admits that there are potentially relevant documents that the company has been unable to produce because they were lost within the company. Mittenthal 8/13/13 Dep. at 216:10-19; 217:13-16. |
| **Responsibility for Data Loss** | 86. Rather, any losses of data were attributable to some type of misunderstanding by an employee and/or a miscommunication between a departing employee and his or her manager. Dec. pg. 25. | Ultimately, it is the company's responsibility to ensure that proper hold notices and proper procedures for document preservation were in place and being followed. Mittenthal 8/13/13 Dep. at 213:9-17. As a general principle, a litigation hold procedure is not effective if nobody follows it. Mittenthal 9/25/13 Dep. at 493:11-16.<br><br>**Q. Is it ultimately Ethicon's responsibility to make sure that its litigation hold is being complied with? A. In a greater sense, the company's responsible for the action of its employees.**<br><br>**Mittenthal 9/25/13 Dep. at 599:21-25** |

8

| | | |
|---|---|---|
| **Hard Drive of Renee Selman** | 87. This is true of the disposition of Ms. Selman's hard drive. As Plaintiffs themselves acknowledge, Ms. Selman was aware of the litigation hold and complied with it during her time at Ethicon. The loss of her data occurred when she and those who were responsible for her materials upon her departure failed to identify to IT the need to retain her data in connection with applicable legal holds. Rather, they incorrectly assumed that the data would be held even in the absence of their identifying that need.  Dec. pg. 25. | According to Mr. Mittenthal, it was compliant with the applicable records management policies at the time to delete the contents of Ms. Selman's hard drive, despite the existence of any legal holds.  Mittenthal 8/13/13 Dep. at 280:5-281:4.<br><br>**A.  I would disagree with the characterization as a failure.  The company did not maintain or repurposed her hard drive to put it in the positive.**<br>**Q.  Why is it always the positive?  Why isn't that a negative?**<br>**A.  Well, they followed their procedures, which was to take that hard drive and reassign it to someone else.**<br><br>**Mittenthal 8/13/13 Dep. at 248:15-249:9** |