# EXHIBIT S

Page 1

1        IN THE UNITED STATES DISTRICT COURT
2      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
3                  CHARLESTON DIVISION
4                       *   *   *
5    IN RE:  ETHICON, INC.
6           PELVIC REPAIR SYSTEMS        MDL NO. 2327
7           PRODUCTS LIABILITY LITIGATION
8                       *   *   *
9    LISA SCHNEEBERGER INGRAM,
10              Plaintiff,
11         vs.                    CASE NO. 2:12-cv-9300
12   ETHICON, INC., et al.,
13              Defendants.
14                      *   *   *
15         Deposition of TROY MOHLER, Witness
16   herein, called by the Plaintiff for
17   cross-examination pursuant to the Rules of Civil
18   Procedure, taken before me, Kathleen W. Phillips,
19   a Notary Public in and for the State of Ohio, at
20   the offices of Tucker Ellis, 41 South High Street,
21   Suite 1225, Columbus, Ohio, on Friday, June 7,
22   2013, at 3:00 o'clock p.m.
23                      *   *   *
24
25      Job No. CS1678179

```
                                                  Page 17

 1            A.    No.
 2            Q.    I've taken a number of sales rep
 3   depositions throughout the years and it seems
 4   sort of consistently sales representatives
 5   usually have or maintain a storage locker.
 6                  Did you maintain a storage locker
 7   by any chance?
 8            A.    Yes, in my house.  That's what I'm
 9   referring to.
10            Q.    Okay.  What types of things would
11   you maintain related to the TVT products or
12   the -- or the POP or mesh products -- pelvic
13   mesh products in this storage cabinet in your
14   home?
15            A.    Samples.  Marketing materials.
16            Q.    Anything else?
17            A.    That's mainly it.  I mean, some
18   studies as well.
19            Q.    Anything else?
20            A.    No.
21            Q.    So, you -- you kept at your house
22   in a storage locker samples of the products?
23            A.    Yes.
24            Q.    Marketing materials.  What -- what
25   types of marketing materials would you have
```

```
                                                   Page 18

 1    kept in the storage locker?
 2         A.   The company would give out
 3    marketing materials, basically pamphlets, sales
 4    aids.
 5         Q.   Advertising promotional
 6    educational material?
 7         A.   Mainly, yes.
 8         Q.   For physicians and for patients?
 9         A.   Yes.
10         Q.   What about objection handlers or
11    information that you could look at but not
12    necessarily need to show the physician or the
13    patient?
14         A.   No.
15              MS. MAIMBOURG:  Objection.  You can
16    answer.
17    BY MR. THORNBURGH:
18         Q.   And let me -- let me ask a better
19    question.  What about training manuals?
20         A.   I didn't keep those in my locker.
21         Q.   Did you ever receive a training
22    manual?
23         A.   Yes.
24         Q.   Okay.  Where did you keep that?
25         A.   I kept that in my house.
```

Page 236

1  you say that after 2008, you'd go to physicians
2  and you'd say, hey, Doc, you need to be handing
3  out this patient brochure to all of your
4  Plaintiffs -- or all -- sorry, strike that.
5               MS. MAIMBOURG:  No, let's not strike
6  that.
7  BY MR. THORNBURGH:
8        Q.   Doctor, you need to be handing out
9  the patient brochure to all of your patients.
10 Did you record those types of conversations
11 with doctors?
12       A.   No.
13       Q.   How did you know which doctors you
14 had a conversation with about what the next
15 time you saw that doctor?
16       A.   Notes.
17       Q.   What notes?
18       A.   My own notes in my -- in my
19 recordkeeping that I had.  You know, I had
20 basically a binder that kept notes on calls.
21       Q.   Okay.  And so that binder would
22 have been something that you would have kept
23 and maintained through your employment with
24 Ethicon until you left in 2012?
25       A.   Yes.

Page 237

1  Q. And that's something that you
2 would have provided to Ethicon when you left
3 the company, right?
4  A. Yes, so we had that continuum of
5 calls to figure out what was going on.
6  Q. So, there's probably a record of
7 the conversations that you were saying that you
8 had contained somewhere because you would have
9 given that file or that -- those notes to
10 Ethicon, and so if Ethicon didn't produce
11 those -- that -- those notes to me or to
12 Plaintiff's counsel, that's no fault of your
13 own because you handed those over to Ethicon
14 when you left the company, correct?
15  A. That's what I remember doing.
16  Q. And you did it because you
17 received the litigation hold letter in 2011 and
18 one in 2006. You probably don't remember the
19 2006 one. I can show it to you if you want,
20 but you recall receiving that litigation hold
21 letter regarding TVT-O in 2011, right?
22  A. I recall receiving those and
23 that's why I was very safe on everything I
24 kept.
25  Q. And so these notes that you would