# EXHIBIT U

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

SANDRA HERSHBERGER
and DAVID MITCHELL,
her husband,

      Plaintiffs,

v.                         Case No. 2:10-cv-000837

ETHICON ENDO-SURGERY, INC.,
an Ohio corporation, a subsidiary of
JOHNSON & JOHNSON, a New Jersey
corporation,

      Defendants.

**AMENDED MEMORANDUM OPINION, ORDER AND RECOMMENDATIONS**

This products liability case presents the issue of whether, pursuant to Rule 26(g), Fed. R. Civ. P., sanctions should be imposed on defendants which failed, in a timely manner, to produce discovery material relating to other similar incidents involving its product. The plaintiffs also raise other issues respecting the defendants' conduct. The product in this case is a Proximate ILS Curved Intraluminal Stapler (model CDH29) ("the stapler"), used in a colosotomy reversal to fasten the descending colon to the rectum, a procedure called "anastomosis." The plaintiffs' complaint alleges that the stapler "malfunctioned and failed to discharge any staples, resulting in perforation of the colon and necessitating further surgical and other medical treatment." (Complaint, ECF No.

1-1, at 4.)   More specifically, the complaint asserts that the stapler was not loaded with staples prior to distribution.  Id.

Pending before the Court is the plaintiffs' Motion for Sanctions (ECF No. 131), supported by exhibits and a memorandum. The defendants responded in opposition (ECF No. 212), and the plaintiffs filed a reply (ECF No. 231).  An evidentiary hearing was conducted on July 28, 2011.  The Motion for Sanctions is granted.

## Pertinent Facts

The proposed pretrial order (ECF NO. 192, at 16-30), sets forth the parties' respective recitations of the evidence.   On February 6, 2009, Sandra Hershberger underwent surgery to reverse a colostomy.  The surgeons have testified that the stapler was used properly but that it did not deploy any staples when fired.  Id. at 18-20.  The stapler is a single-use device.  The defendants contend that the stapler was fired prematurely by the surgical resident and that unformed staples can be seen on a CT scan.  Id. at 26-30.  The stapler was given to the surgical charge nurse.

On February 19, 2009, a meeting was held at the hospital, attended by the lead surgeon, the surgical charge nurse, the defendants' division sales manager, Peter McNally, and the defendants' sales representative, Cynthia Hutchings.  The stapler was examined and the functioning of the stapler during Ms. Hershberger's surgery was discussed.

## Procedural History

This action was filed in the Circuit Court of Kanawha County, West Virginia on April 16, 2010 (Notice of Removal, ECF No. 1, at 1). Process was served through the Secretary of State's Office on May 25, 2010. It was removed to this Court on June 17, 2010. Rule 26(a)(1) disclosures were due no later than September 10, 2010 (Order and Notice, ECF NO. 4). Discovery began in August, 2010 and continued very actively through early June, 2011.

## Discovery of Other Similar Incidents

In virtually any products liability case, there are two significant questions: What happened to the plaintiff? Has this happened to anybody else? In pursuing the second question, the plaintiffs served their First Set of Requests for Production of Documents on August 24, 2010 (ECF No. 7), which included Request No. 16, and received a response on October 21, 2010 (ECF No. 15):

> **REQUEST NO. 16**: All lawsuits, warranty claims, field reports, or other claims or reports with respect to the Ethicon Stapler, or substantially similar products as identified in your response to Interrogatory No. 9 of Plaintiffs' First Interrogatories to All Defendants, whether generated by this Defendant's quality control personnel, the FDA, patients, physicians, salespersons, distributors, employees of this Defendant, or other persons, and which allege that the stapler had not been loaded with staples at the time it was manufactured and packaged.

> **RESPONSE**: Objection. Ethicon objects to the relevancy of other litigation. Additionally, this request as a whole is vague and overly broad. Additionally, the term "substantially similar" is vague, broad, and subject to different meanings. Notwithstanding said objections, and after a reasonable investigation, there are no documents

3

responsive to this request.

(ECF No. 131-1, at 2.)  The response was signed by a lawyer from Guthrie & Thomas.

On November 17, 2010, the plaintiffs tried again with more specific language, and served their Third Set of Requests for Production of Documents (ECF No. 22), which included Request No. 1(a), and received a response on December 20, 2010 (ECF No. 35):

> **REQUEST NO. 1**: To the extent not previously produced in response to Plaintiffs' First or Second Requests for Production, produce the following items:
>
>> (a) All Product Inquiry Verification Reports (PIVRs) which relate to an Ethicon Proximate ILS Intraluminal Circular Stapler, Product Number CDH29 which allege that a stapler failed to fire due to a lack of staples.
>
> * * *
>
> **RESPONSE**: (a) Objection.  This request is overly broad and irrelevant as it is not limited in temporal or geographic scope and does not pertain to the subject stapler at issue in this case.  This request also seeks information beyond the scope of this litigation, information protected by the attorney-client and work product privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, there is no predicate that any such PIVR would be substantially similar or admissible in this (or any other case).  Notwithstanding these objections, Ethicon will agree to produce other PIVRs from 2002 to February 6, 2009, which emanate from the United States and in which it was alleged that an Ethicon Proximate ILS Intraluminal Circular Stapler, Product Number CDH29 "failed to fire" due to a lack of staples.  Please see the Product Inquiry Verification Report, attached as Exhibit A.  Please note that the PIVR Report produced in response to this Request has been redacted to protect the privacy interests of non-EES employers and information protected by the attorney-client and work product privilege has also been redacted.

4

(ECF No. 131-4, at 2-3.)   The defendants produced information regarding one similar incident.  Again, the response was signed by a lawyer from Guthrie & Thomas.

On January 9, 2011, the plaintiffs' attorney expressed his dissatisfaction with the response via e-mail, complaining that it was improper to limit the production to the years 2002-2009, and to the United States.  (ECF No. 131-5.)   The Court has not been provided with a response to this e-mail.

On January 29, 2011, the plaintiffs served their notice of deposition (ECF No. 57) of Carlos Gabaldon, a customer quality engineer for the defendants, located in the El Paso, TX/Juarez, Mexico area.   During his deposition on February 23, 2011, Mr. Gabaldon testified that, using a Siebel database, he had determined that there were seven incidents in which it was reported that a stapler was missing staples.  On February 28, 2011, the plaintiffs' attorney agreed not to file a motion to compel production of the seven incidents while defense counsel tried to "work something out."  (ECF No. 131-6.)  On March 6, 2011, the plaintiff's attorney inquired again about the documents, id., and on March 9, 2011, defense counsel produced them.  (ECF No. 131-7.)

On February 25, 2011, two days after Mr. Gabaldon's first deposition and before the defendants produced the records of the seven incidents, the plaintiffs served their Tenth Set of Requests for Production of Documents (ECF No. 67), which included Request

No. 2:

> **REQUEST NO. 2**: To the extent not previously produced, produce all "Verification Report - Product Issue" documents and "Product Issue Analysis Reports" related to any incident alleging that a CDH stapler was not loaded with staples from January 6, 1999 to January 6, 2009.

(ECF No. 131-8, at 2.)  After some motion practice which is not pertinent here, on April 26, 2011, the defendants were directed to respond to the Tenth Set, and the plaintiffs were permitted to serve their Ninth Set (which had not been previously served due to a clerical error) (ECF Nos. 100, 101).  The Ninth Set included Request No. 5:

> **REQUEST NO. 5**: To the extent not previously produced, produce all MedWatch filings, Siebel database entries (including testing, correspondence, notes, memoranda, product analyses, etc.), and other documentation which contains an allegation that a CDH stapler was not loaded with staples.

On May 24, 2011, the plaintiffs again deposed Carlos Gabaldon about the other incidents disclosed on March 9, 2011 (ECF NO. 107).

On June 3, 2011, in response to the Ninth and Tenth Sets, the defendants produced records of an additional 125 other incidents dated between November 19, 2002 and January 26, 2009.  At the hearing, it was learned that 44 of these incidents are similar to the situation presented in this case, and 21 of the staplers were examined by Carlos Gabaldon after they were returned to the defendants.[1]

---

[1]  The plaintiffs' response in opposition to the defendants' Motion in Limine No. 10 to Preclude Reference to Other Events and

## Positions of the Parties

The plaintiffs contend that the defendants' improper responses and delayed disclosures, after dogged pursuit by the plaintiffs, is part of a pattern of improper conduct by the defendants. (Mem., ECF No. 132, at 7.) They base their Motion for Sanctions on Federal Rule of Civil Procedure 26(g), 28 U.S.C. § 1927, and the court's inherent authority to impose sanctions for conduct which abuses the judicial process. Id. at 10-13. They do not rely on Rule 37.

The defendants' Response argues that the plaintiffs' Motion should not be considered at all because the plaintiffs did not meet and confer in an attempt to resolve the dispute, pursuant to our Court's Local Rule 37.1 (Response, ECF No. 212, at 2). The defendants assert that § 1927 requires a showing of subjective bad faith, and that Ethicon and its attorneys acted in good faith and with substantial justification. Id. at 5-13. They chide the plaintiffs for not asking more questions concerning other incidents. Id. at 7. They dispute any suggestion of a pattern of improper conduct. Id. at 13-19. In support of their assertions, they provide an affidavit of Kristi Geier, the defendants' Risk Manager, who was responsible for gathering the information for the discovery responses (ECF No. 212-3).

---

Occurences Involving Ethicon Staplers (ECF No. 181), states that there are 45 similar incidents, summarized at ECF No. 206-13, filed under seal at ECF No. 207-4.

In reply, the plaintiffs contend that the defendants were in
the wrong from the start, when they responded to the First Set of
requests.  (Reply, ECF No. 231, at 1.)  They note that Federal Rule
of Civil Procedure 37 and Local Rule 37.1 are inapplicable to their
Motion.  _Id._ at 11-14.  The reply is a particularly compelling
document.

**Applicable Law - Rule 26(g)**

Federal Rule of Civil Procedure 26(g) provides, in pertinent

part, as follows:

> **(g)   Signing   Disclosures   and   Discovery   Requests,**
> **Responses, and Objections.**
> **(1) Signature Required; Effect of Signature.**
> Every disclosure under Rule 26(a)(1) or (a)(3) and
> every  discovery  request,  response,  or  objection
> must be signed by at least one attorney of record
> in the attorney's own name . . ..  By signing, an
> attorney or party certifies that to the best of the
> person's knowledge, information, and belief formed
> after a reasonable inquiry:
> >  **(A)** with respect to a disclosure, it is
> > complete and correct as of the time it is
> > made; and
> >  **(B)** with respect to a discovery request,
> > response, or objection, it is:
> > (i)  consistent  with  these  rules  and
> > warranted  by  existing  law  or  by  a
> > nonfrivolous  argument  for  extending,
> > modifying, or reversing existing law, or
> > for establishing new law;
> > (ii)  not  interposed  for  any  improper
> > purpose,  such  as  to  harass,  cause
> > unnecessary delay, or needlessly increase
> > the cost of litigation; and
> > (iii)  neither  unreasonable  nor  unduly
> > burdensome or expensive, considering the
> > needs of the case, prior discovery in the
> > case, the amount in controversy, and the
> > importance of the issues at stake in the
> > action.

8

* * *

> **(3) Sanction for Improper Certification.** If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

The Advisory Committee Notes to Rule 26(g) provide amplification of parties' and attorneys' responsibilities while engaging in pretrial discovery:

> Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. * * *

> Although the certification duty requires the lawyer to pause and consider the reasonableness of his request, response, or objection, it is not meant to discourage or restrict necessary and legitimate discovery. The rule simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection.

> The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11. See the Advisory Committee Note to Rule 11. See also *Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n,*, 365 F. Supp. 975 (E.D. Pa. 1973). In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel as long as that reliance is appropriate under the circumstances. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.

9

Rule 26(g) does not require the signing attorney to
certify the truthfulness of the client's factual
responses to a discovery request. Rather, the signature
certifies that the lawyer has made a reasonable effort to
assure that the client has provided all the information
and documents available to him that are responsive to the
discovery demand. * * *

Notes of Advisory Committee on Rules: 1983 Amendment (West 2011).

Two decisions from the District of Maryland discuss Rule 26(g)

extensively, <u>Poole v. Textron, Inc.</u>, 192 F.R.D. 494 (D. Md. 2000),

and <u>Mancia v. Mayflower Textile Servs. Co.</u>, 253 F.R.D. 354 (D. Md.

2008), and their analyses have assisted the undersigned in this

matter.

**Analysis**

<u>Response to Request No. 16, First Set</u>

The discussion of the defendants' response to Request No. 16

must begin with Kristi Geier, who has received paralegal training

and is employed as the defendants' Risk Manager.  (Affidavit, ECF

No. 212-3, at 1.)  She was responsible for assisting counsel "with

the formulation of answers and responses to Plaintiffs' discovery."

<u>Id.</u>  In one of several self-serving statements, she claims, "Each

answer and response provided to Plaintiffs was done after I

conducted a reasonable investigation and inquiry."  <u>Id.</u>  In her

affidavit, Ms. Geier stated under oath that, with respect to

Request No. 16, she "interpreted this request to seek any

litigation materials involving the claim that the stapler had not

been loaded with staples at the time it was manufactured and

10

packaged." <u>Id.</u> at 2. She further stated that she did not interpret Request No. 16 "to include any reports to the FDA or MedWatch reports filed by Ethicon" . . . or "to apply to 'Product Inquiry Verification Reports.'" <u>Id.</u> During her testimony at the evidentiary hearing on the Motion for Sanctions, Ms. Geier stated that she "thought this was asking for litigation or claims, potential litigation." She claimed that during her search, she found no litigation in which it was claimed that a stapler did not have staples in it.

The Court finds Ms. Geier's interpretation of Request No. 16 to be unreasonable in the extreme and, frankly, nonsensical. There was no justification to single out one word in the request, "lawsuits," and to limit her search accordingly, thereby ignoring "warranty claims, field reports, or other claims or reports." Moreover, her interpretation is not reasonable when considered in the context of the rest of the request, which listed many potential groups of persons who could generate claims or reports: "[Ethicon's] quality control personnel, the FDA, patients, physicians, salespersons, distributors, employees of this Defendant, or other persons." Most of those persons would not be expected to file a lawsuit concerning injuries received as a result of a surgeon using a stapler which had not been loaded with staples. Ms. Geier further stated that she "did not interpret Request No. 16 to include any reports to the FDA or MedWatch

11

reports filed by Ethicon.  Further, I did not interpret this request to apply to 'Product Inquiry Verification Reports' ('PIVR')."  <u>Id.</u>  No matter how Ethicon titles its reports of complaints about staplers, it was Ms. Geier's "affirmative duty" to respond in a manner which was both complete and correct.  This she did not do.  The defendants' response was inappropriately limited to litigation.  The Court finds that the response to Request No. 16 was not substantially justified.

Counsel for Ethicon also had an "affirmative duty" to make a "reasonable inquiry" to satisfy themselves that the response to Request No. 16 was not "unreasonable."  The Court concludes that counsel for Ethicon either failed to inquire of Ms. Geier as to the basis for the response or agreed with her unreasonable interpretation of Request No. 16.  The Court doubts that the latter is true.  A lawyer from Guthrie & Thomas signed the responses which included the response to Request No. 16, thereby certifying that to the best of his knowledge, information and belief formed after a reasonable inquiry, the response was consistent with the Federal Rules of Civil Procedure and not unreasonable.  (ECF No. 131-1, at 3.)  According to the Advisory Committee Notes, his signature was a certification that he had "made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand."  Clearly the lawyer from Guthrie & Thomas did not do this.  The

Court finds that the certification by the lawyer from Guthrie & Thomas was improper and not substantially justified.

<u>Response to Request No. 1, Third Set</u>

Some of the testimony at the evidentiary hearing concerned the so-called Siebel database, which is the electronic record of all complaints, claims, inquiries and reports concerning Ethicon's products. The database is searchable by "Voice of Customer" ("VOC") Codes, which are set forth on a list. Ms. Geier's affidavit states that she relied on the language in the plaintiffs' request that the "stapler failed to fire due to a lack of staples." (ECF No. 212-3, at 2.) After consulting with Ethicon's Customer Quality Department, which usually conducts searches of the Siebel database, a search using the VOC Code "missing staples" produced seven results. <u>Id.</u> A subsequent search indicates that use of the VOC Code "would not staple," would have produced dozens more results.

Despite having seven results from the search, only one result was produced to the plaintiffs, with a notation that the result was limited to the United States, one size of stapler, and a specified time period. At the evidentiary hearing, Ms. Geier testified that the other six results were withheld as a result of her conversations with Ethicon's attorneys. Ultimately, the other six results were produced after the plaintiffs' attorney complained on January 9, 2011, and after he learned about the other six during

Mr. Gabaldon's first deposition on February 23, 2011. There is no dispute that Ethicon's staplers are distributed throughout the world, and those sold in the United States are identical to those sold in other nations. There is no dispute that different sizes of staplers function the same.

Putting aside the inadequate search for other incidents related to Request No. 16, the Court finds that Ethicon's initial response to the plaintiffs' Request No. 1, Third Set, was unreasonably restricted to only one VOC code, "missing staples." At the evidentiary hearing, Ms. Geier testified that she looked at other VOC codes, including "would not staple," and concluded that "missing staples," most closely matched the request. It appears that, until late Spring, 2011, she did not run any search for incidents coded "would not staple," despite the language in the plaintiffs' Complaint that the stapler "malfunctioned and failed to discharge any staples."

The Court further finds that the withholding of six of the seven incidents revealed in the search was unreasonable, because there was no good reason for limiting the response to a particular size of stapler sold in the United States. Ms. Geier testified at the evidentiary hearing that she and counsel for Ethicon simply agreed to withhold information as to the six incidents. A lawyer from Guthrie & Thomas signed the response; the Court has no information as to the identify of the attorneys who decided, with

Ms. Geier, to withhold the six other incidents.  The Court finds that the certification by a lawyer from Guthrie & Thomas violated Rule 26(g) without substantial justification.

<u>Responses to Request No. 2, Tenth Set and Request No. 5, Ninth Set</u>

On April 26, 2011, the defendants were directed to respond to the Tenth Set of Requests, and the plaintiffs were permitted to serve their Ninth Set.  (ECF Nos. 100, 101.)  The defendants agreed that Mr. Gabaldon could be deposed again to testify about the seven additional incidents; his deposition occurred on May 24, 2011.  Ten days later, the defendants disclosed an additional 125 other incidents, of which plaintiffs' counsel identifies 44 as being similar to this case.  These incidents were located using the VOC code "would not staple."[2]

Ms. Geier's affidavit is silent as to when the defendants conducted the search which resulted in the 125 additional incidents.  The search should have been completed prior to Mr. Gabaldon's deposition, if the defendants had any intention of timely responding to the requests.  The responses were served shortly after discovery closed.

---

[2]  Ms. Geier further testified that the responses as to other similar incidents were limited to 2002 forward, because the Siebel database was begun in 2002.  Documents produced indicate that 106 staplers were returned for evaluation between November 2001 and March 2002, and are searchable in another database.  The plaintiffs have not made an issue as to these staplers.

## The Importance of the Other Similar Incidents

During the evidentiary hearing, Carlos Gabaldon (the defendants' Rule 30(b)(6) witness) testified that "it's impossible for a stapler to leave the plant without staples." He described "Vision," a machine that takes photographs of each stapler produced and analyzes the images to insure quality control. He stated that the Vision system changed shortly before the stapler used on Ms. Hershberger was manufactured. During the manufacturing process, the Vision system is challenged at the beginning, in the middle, and at the end of each batch, to determine if it is accurately spotting defective staplers. If a problem is discerned, someone is called to fix the equipment.

Twenty-one of the 45 other incidents involved staplers which Mr. Gabaldon tested when they were returned to Ethicon after decontamination. The reports on the 21 incidents (titled either "Complaint File" or "Verification Report - Product Issue"), found at Plaintiff's Exhibit No. 36 (under seal), contain an "Event Description." The reports describe occurrences remarkably similar to Ms. Hershberger's: the stapler cut tissue but did not staple it, resulting in longer surgeries and additional surgeries. If the defendants' witnesses were to testify that it is "impossible" for a stapler to leave its manufacturing facility without staples, a jury would be seriously misled.

<u>The Defendants' Excuses and Arguments</u>

The defendants oppose the plaintiffs' Motion for Sanctions. First they assert that the Court should not entertain the Motion at all, because the plaintiffs did not attempt to meet and confer prior to filing. The defendants rely on Local Rule 37.1(b), which states:

> Before filing any discovery motion, including any motion for sanctions or for a protective order, counsel for each party shall make a good faith effort to confer in person or by telephone to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange for the meeting.

Unlike other provisions of the same Local Rule, subsection (b) fails to set forth any consequence for a failure to comply.

In accordance with the policy of the Judicial Conference, our Local Rules are numbered to correspond to the Federal Rules of Civil Procedure; Local Rule 37.1 amplifies Federal Rule of Civil Procedure 37. Federal Rule 37(a) requires that a party moving to compel discovery must confer or attempt to confer in good faith. The penalty for failing to do so is the inability to recover fees and costs, including attorney's fees. Federal Rule 37(b) contains no such requirement to confer or attempt to confer for a party moving for sanctions for failure to comply with a court order. Our Local Rule 37.1 therefore imposes an extra hurdle for a party who seeks sanctions for noncompliance with an order, but it contains no consequence for failing to confer. The plaintiffs make clear that

17

they are <u>not</u> proceeding under Rule 37.  Indeed, it would be inappropriate for them to do so, because it appears that the defendants have not violated a court order.

This District has promulgated four pages of Local Rules relating to Federal Rule of Civil Procedure 26, none of which concerns Rule 26(g).  The only reference to Federal Rule 26(g) is found in Local Rule 37.1(a): "Objections shall comply with FR Civ P 26(g) . . .."

Of importance is Federal Rule 26(g)'s provision that a court, "on its own," must impose an appropriate sanction if a certification violates the rule without substantial justification.  If a motion from a party is not required before a sanction is imposed, then surely a local rule should not restrict a judge's discretion to act, with or without a motion.  The Court concludes that Local Rule 37.1 does not apply to motions filed under Federal Rule 26(g).

Second, the defendants chide the plaintiffs for not asking certain questions at various depositions (ECF No. 212, at 6-7), as if the plaintiffs were at fault for believing the defendants' response to Request No. 16, First Set.  The defendants' position reverses the duties set forth in Rule 26(g).  It was the defendants' duty to make a "reasonable inquiry;" it was the defendants' duty to  make a reasonable response; and, pursuant to Rule 26(e), it was the defendants' duty to supplement its discovery

18

responses in a timely manner. The defendants' breached their duties in all three respects.

Third, the defendants profess that in all respects, they acted in good faith. Id., at 5-13. The Court is not in a position to assess whether Ms. Geier purposefully and intentionally restricted her search of other similar incidents, and whether the defendants' counsel had a bad motive in their approach to the plaintiffs' efforts to discover other similar incidents, and makes no finding as to bad faith. It is clear that the defendants, like other product manufacturers, were not motivated to reveal other similar incidents of injuries to consumers; their conduct furthered their self-interest in limiting their exposure.

### Sanctions

Rule 26(g) requires imposition of "an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both," if the Court concludes that a discovery certification violates the Rule without substantial justification. "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." There is no reference to the menu of possible sanctions found in Rule 37; the Advisory Committee Notes state that "[t]he nature of the sanction is a matter of judicial discretion to be exercised in light of the particular circumstances." Based upon the Court's findings that the defendants and their counsel violated Federal Rule 26(g), it is

hereby **ORDERED** that the plaintiffs' Motion for Sanctions (ECF No. 132) is granted.

The plaintiffs have requested a broad array of sanctions, including attorney's fees and costs for a variety of activities, evidentiary rulings, and default judgment as to liability. (ECF No. 132, at 15.) Upon consideration of the disputed facts in this case, and mindful of the strong preference that litigation be resolved on the merits, the Court declines to recommend to the presiding District Judge that he enter default judgment as to Ethicon's liability. However, it is respectfully **RECOMMENDED** that the presiding District Judge admit into evidence testimony and exhibits concerning other similar incidents in which users of the staplers complained that the staplers cut tissue but did not staple it, and deny the defendants' Motion in Limine No. 10, ECF No. 181. At present, according to the plaintiffs, there are 45 such incidents. It is further **RECOMMENDED** that the presiding District Judge admit into evidence testimony and exhibits concerning the defendants' conduct during discovery with respect to other similar incidents.

Based on the particular circumstances in this case, the Court intends, at a minimum, to require payment by the defendants and their counsel of the plaintiffs' attorney's reasonable fees and costs associated with the Motion for Sanctions, the filing of discovery requests for other similar incidents after Request No.

16, and Mr. Gabaldon's two depositions.  In addition, if the plaintiffs choose to take any additional depositions, all such depositions shall take place in Charleston, West Virginia, and the defendants will be responsible for the travel expenses of the witnesses.[3]

To undertake a thorough consideration of appropriate sanctions, the Court needs additional information.  It is further **ORDERED** that, within one week of the entry of this Memorandum Opinion, Order and Recommendations, the defendants shall file an affidavit by a person with extensive knowledge of the Siebel database and its metadata (<u>not</u> Kristi Geier), setting forth the following information regarding searches of the Siebel database concerning staplers, using the VOC code "would not staple," between February 6, 2009 and June 3, 2011:

a.  The date of each search;

b.  The name and title of the person who performed each search; and

c.  The results of each search.

It is further **ORDERED** that within two weeks of entry of this Memorandum Opinion, Order and Recommendations, counsel for the plaintiffs will file an affidavit of his reasonable attorney's fees and costs associated with the Motion for Sanctions, the filing of

---

[3]  The Court has learned that during a recent status conference, counsel for the plaintiffs indicated that he does not need additional discovery.

discovery requests for other similar incidents after Request No. 16, and Mr. Gabaldon's two depositions, with sufficient detail that the Court will be able to assess whether the time spent and the expenses incurred were appropriate for the task specified. The defendants shall file their response to the affidavit within two weeks after the affidavit is filed; the response must indicate whether the defense attorneys and the defendants agree on a division of responsibility for payment of the plaintiffs' attorney's fees and costs. The plaintiffs' attorney may file a reply within one week after the response is filed.

## Identification of Peter McNally as Witness

After an incident occurs which results in litigation, investigators typically try to answer two major questions: What happened? Who are the witnesses? With respect to Ms. Hershberger's surgery on February 6, 2009, a meeting was held at Charleston Area Medical Center on February 19, 2009, attended by the surgeon (Dr. Maxwell), the surgical charge nurse who had custody of the stapler (Ms. Campbell), the Ethicon sales representative (Cindy Hutchings), and the Ethicon District Sales Manager (Peter McNally). The focus of the meeting was the allegation that the stapler had not been loaded with staples, so that it cut tissue but did not staple it. Dr. Maxwell has testified that on February 19, 2009, Peter McNally looked at the stapler used on Ms. Hershberger on February 6, 2009, and declared, in words to this effect: "This product is obviously

defective, and I would testify in court to that fact." (Depo. of Dr. Maxwell, Dec. 21, 2010, ECF No. 131-16, at 92.[4]) At the evidentiary hearing, Mr. McNally denied making such a statement, but Ms. Campbell testified that he said, "If [I] had to testify in a court at that time [I] would have to say that the device was defective." She wrote a memorandum that day and quoted Mr. McNally's statement. (Mem. dated Feb. 19, 2009, ECF No. 131-27.)

The plaintiffs complain that the defendants' Rule 26(a)(1) disclosures, served on September 10, 2010, listed Cindy Hutchings, but not Peter McNally. (ECF No. 131-23.) On October 21, 2010, the defendants served their responses to the plaintiffs' Interrogatories 1 and 5, First Set. When asked to identify persons with knowledge of facts, or persons who participated in any investigation of the incident at issue, the defendants listed only Cindy Hutchings, Marian Campbell and Dr. Maxwell, but not Peter McNally. (ECF No. 131-2, at 3, 5-6.) Kristi Geier verified the answers to the interrogatories. Id. at 8. On October 22, 2010, the defendants served their supplemental Rule 26(a)(1) disclosures and added Marian Campbell, but not Peter McNally. (ECF No. 131-24, at 2.) On November 18, 2010, counsel for the plaintiffs sent an email to defense counsel, asking about "Pete McNally." On December 7, 2010, the defendants served supplemental answers to

_____

[4] Citations to deposition testimony are to the deposition transcript page.

23

interrogatories and, for the first time, added Peter McNally as a person with knowledge, and summarized their version of the February 19, 2009 meeting.  (ECF No. 131-25, at 4-5.)

The plaintiffs contend that the defendants' failure to disclose Peter McNally as a participant in the February 19, 2009 meeting is part of a pattern of improper conduct.  (ECF No. 132, at 8-9.)

The defendants respond that they did not purposefully or in bad faith withhold disclosure of his identify.  (ECF No. 212, at 17.)  They recite that Kristi Geier first spoke with Peter McNally in October, 2010, but they did not discuss the February 19, 2009 meeting.  Id.  The defendants further relate that Peter McNally was away from work for six weeks due to his wife's illness, and that "it was not until mid-December [2010] that Ms. Geier gained additional substantial information regarding Mr. McNally's knowledge surrounding the facts related to this case."  Id.  They point out that the plaintiffs have suffered no prejudice, in that he was revealed prior to any depositions.  Id. at 18.

In reply, the plaintiffs argue that "Ethicon has yet to offer a reasonable explanation for how it could know about the involvement of Cindy Hutchings in the above meeting and not know about the involvement of Peter McNally in the exact same meeting . . .."  (ECF No. 231, at 16.)

The Court does not fault the defendants for not including

24

Peter McNally in its Rule 26(a)(1) disclosures.  He is probably not a person that the defendants "may use to support [their] . . . defenses."

Omitting Peter McNally from the answers to Interrogatories 1 and 5 is more problematic.  Rule 26(g) requires a responding attorney or party to certify that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: with respect to a discovery . . . response . . ., it is: consistent with these rules . . .; not interposed for any improper purpose . . .; and neither unreasonable nor unduly burdensome . . .."  The Advisory Committee Notes specify that

> Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request.  Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.  Thus, the lawyer's certification under Rule 26(g) should be distinguished from other signature requirements in the rules, such as those in Rules 30(e) and 33.

Rule 33(b)(3) requires that answers be made "under oath."

Kristi Geier testified at the evidentiary hearing that, as a matter of course, she contacted the appropriate sales representative shortly after she received a letter from the plaintiffs' attorney, in November, 2009, placing Ethicon on notice to preserve the subject stapler in anticipation of litigation.  She stated that she is concerned with the answers to three primary questions: Did the surgeon say what happened?  What is going on

with the patient?  Where is the device?  She stated that she did not ask Ms. Hutchings whether anyone else employed by Ethicon had knowledge of the incident, and she made no effort to determine whether other employees had such knowledge.

The Court cannot determine whether the concealment of Peter McNally as a participant in the February 19, 2009 meeting, from October 21, 2010 (service of answers to interrogatories) to December 7, 2010 (service of supplemental answers), was a willful omission or not.  It appears that the plaintiffs suffered no prejudice; the disclosure of Marian Campbell as a witness would, more than likely, lead the plaintiffs to Peter McNally.  The Court finds that there is insufficient evidence that Ms. Geier violated Rule 33 or that defense counsel violated Rule 26(g) or Rule 33 with respect to Peter McNally.

### The Plaintiffs' Other Claims

The Court has carefully considered the plaintiffs' complaints about other conduct by the defendants relating to (1) the failure to document a statement attributed to Dr. Maxwell, (2) the filing of MedWatch reports concerning the incident, (3) a statement by Karen Kulinski-Hoffman to the hospital, and (4) disclosure of expert witnesses, and the defendants' response.  This judicial officer is referred discovery disputes only and declines to address these other claims.

## 28 U.S.C. § 1927 and Inherent Authority

The undersigned declines to proceed under either § 1927 or the inherent authority of the court, having determined that Rule 26(g) adequately addresses these matters.

The Clerk is directed to transmit this Memorandum Opinion, Order and Recommendations to counsel of record.

ENTER: September 23, 2011

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

Case 2:10-cv-00837 Document 283 Filed 10/04/11 Page 1 of 15 PageID #: 5683

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

SANDRA HERSHBERGER
and DAVID MITCHELL,
her husband,

      Plaintiffs,

v.                           Case No. 2:10-cv-000837

ETHICON ENDO-SURGERY, INC.,
an Ohio corporation, a subsidiary of
JOHNSON & JOHNSON, a New Jersey
corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

In a Memorandum Opinion, Order and Recommendations filed August 12, 2011 (ECF No. 264, amended September 23, 2011, ECF No. 287, "the Sanctions Order"), the Court granted the plaintiffs' motion for sanctions (ECF No. 131), and indicated the need for additional information before determining the extent of the sanctions to be imposed. The additional information has been filed. This Order should be read with the Sanctions Order, as the facts and analysis contained in the Sanctions Order are not repeated here.

The Sanctions Order required defendant Ethicon Endo-Surgery ("Ethicon") to submit "an affidavit by a person with extensive knowledge of the Siebel database and its metadata (<u>not</u> Kristi

Geier), setting forth the following information regarding searches
of the Siebel database concerning staplers, using the VOC code
'would not staple,' between February 6, 2009 and June 3, 2011: a.
The date of each search; b. the name and title of the person who
performed each search; and c. the results of each search." (ECF
No. 287, at 21.) Ethicon timely filed its response, which includes
two affidavits by persons with knowledge of the Siebel database.
(ECF No. 268.) According to the response, the Siebel database is
not capable of producing a record of the searches which are made of
it. Id. at 2. Thus it became necessary to examine employees'
computers for Excel files which would contain the results of a
Siebel database query. Id. There were two queries, one on
December 14, 2010, by Jamie Gast for the use of Theresa Vogel, and
the other on March 8, 2011, by Ms. Vogel and Ms. Kristi Geier. Id.
at 2-3.

The defendants state as follows with respect to the December
14, 2010 and March 8, 2011 searches:

> On December 14, 2010, Jamie Gast, a member of
> Ethicon's Customer Quality group, downloaded all records
> in Siebel related to all intraluminal staplers and
> transported that file into Excel for Theresa Vogel's use.
> This download was not specific to CDH staplers . . . and
> was not done by VOC code. Thus, although Mr. Gast did
> not query the VOC code "would not staple," the records
> associated with this VOC code were included in his result
> as were the records for every VOC code for every model of
> intraluminal staplers.

> Because the allegations in this case were that the
> stapler at issue was manufactured without staples and
> without a breakaway washer and as a result of

2

conversations with Ms. Geier and the Customer Quality department, Ms. Vogel then excerpted out of this data file CDH complaints associated with the VOC codes "missing staples," "anvil not returned," "damaged component" and "staple retention" in order to search for complaints responsive to Plaintiffs' Third Set of Requests for Production of Documents. Ms. Vogel did not query the VOC code "would not staple" and documents associated with that code were not part of the electronic group of records that Ms. Vogel and Ms. Geier worked from in answering these discovery responses because the request asked for reports which alleged that the device failed to fire due to a lack of staples.

(ECF No. 268, at 3.)

The March 8, 2011 query was triggered as a result of a question by an attorney with Guthrie & Thomas.

This was the first time the VOC code "would not staple" was queried in the Siebel system in relation to this case. The results of this query were transported into Excel and Ms. Vogel reviewed these complaints to determine if they contained documents that should have been coded as "missing staples" but had in fact been inadvertently coded as "would not staple." Ms. Geier and Ms. Vogel did not believe that these "would not staple" documents were responsive to the Plaintiffs' Third Set of Requests for Production of Documents seeking reports where a stapler failed to fire due to a lack of staples.

On May 25, 2011, counsel from Guthrie & Thomas had a conference call with Ms. Geier and Ms. Vogel in regard to responding to Plaintiffs' Ninth and Tenth Sets of Requests for Production of Documents (which were different than the earlier requests) which by agreement of the parties were due on June 3, 2011. During that call Ms. Geier and Ms. Vogel discussed with counsel the documents that were retrieved in the March 8, 2011 search using the VOC code "would not staple." As a result of the call, Ms. Geier sent the "would not staple" documents to counsel for production.

Id. at 3-4.

Since February 19, 2009, the defendants have had actual

3

knowledge of the plaintiffs' allegations (based on the statements of Ms. Hershberger's surgeons) with respect to the stapler, that is, the stapler was properly positioned, it was fired, the stapler cut the tissue but no staples were ejected. Whether the plaintiffs' counsel described the incident as "stapler not loaded with staples," (Request No. 16, First Set), or "stapler failed to fire due to a lack of staples," (Request No. 1, Third Set), the allegations have remained the same throughout this litigation.

The plaintiffs served Request No. 16, First Set on August 24, 2010. (ECF No. 7.) Within thirty days of August 24, 2010, the defendants should have queried the Siebel database for information of other similar incidents, and they did not do so. Their response that "there are no documents," was explained as being limited to litigation, which the undersigned has described in the Sanctions Order as "unreasonable in the extreme and, frankly, nonsensical." (ECF No. 287, at 11.) After further review of Ms. Geier's testimony at the July 28, 2011 hearing, and consideration of the defendants' response to the Order at ECF No. 268, it appears that no query was made of the Siebel database for Request No. 16, First Set, even though Ms. Geier described the Siebel database as "when someone reports an incident with one of our devices, all of the information regarding that incident is captured in Siebel." (ECF No. 267, at 73.) In short, the Siebel database is the single source for information of other similar incidents involving the

4

defendants' products.  The defendants' failure to search the database in the fall of 2010 is inexcusable and sanctionable.

The December 14, 2010 query of the database for information as to all intraluminal staplers was apparently prompted by the plaintiffs' Request No. 1, Third Set, which asked for pertinent Product Inquiry Verification Reports.  The production of one such Report, and the subsequent production of an additional six Reports are described in the Sanctions Order, at page 13.  It is apparent that little effort was made to compare the facts of the instant litigation with the facts recited in the Siebel database entries relating to staplers.  If care had been taken to confirm that the VOC codes were producing data relevant to this case, at least 44 records, and perhaps many more, should have been produced.  As of December 14, 2010, Ms. Vogel had an Excel file with all the producible records within it.

The defendants have chosen to rely on the Siebel database despite its limitations, including the possibilities for errors in assigning a VOC code for a given report and in selecting VOC codes to find other similar incidents.  Having made the choice to rely on the Siebel database, the defendants are responsible for the failures of their system.  When they uncover deficiencies in their database and when they learn that their prior responses are incomplete or incorrect, they have a continuing duty to supplement their discovery responses.  Fed. R. Civ. P. 26(e)(1)(A).

The defendants state that "Ms. Geier and Ms. Vogel did not believe that the 'would not staple' documents were responsive to the Plaintiffs' Third Set." (ECF No. 268, at 3.)  The undersigned has reviewed more than twenty reports from the Siebel database with the VOC code "would not staple" and they describe incidents which are very similar identical to that of Ms. Hershberger.  Based on what this judicial officer has reviewed, Ms. Geier's and Ms. Vogel's beliefs as to responsiveness were not reasonable.

To summarize, in August, 2010, the plaintiffs served Request No. 16, First Set; in October, 2010, the defendants failed to search their single source for information and responded that there were "no documents."  If one does not look for an item, one is not likely to find it.  In November, 2010, the plaintiffs served Request No. 1(a), Third Set; in December, 2010, the defendants searched the Siebel database, and downloaded an Excel file with all the producible and relevant records.  Apparently without consultation with counsel or careful comparison of the records with the plaintiffs' allegations, the defendants produced one record, having limited the production to a seven year period in the United States.  After the plaintiffs' attorney complained about the artificial limitations and threatened to file a motion to compel, seven records were produced, _after_ the plaintiffs took Mr. Gabaldon's first deposition.  It appears that at least 44 records should have been produced.  In February, 2011, the plaintiffs

served Request No. 2, Tenth Set and motion practice ensued.[1]  The motion practice resulted in an order that the defendants respond to both the plaintiffs' Tenth Set and Ninth Set (which had not been previously served due to a clerical error).  Meanwhile on March 8, 2011, the "would not staple" VOC code was queried, and two non-lawyers (Vogel and Geier) decided that the "would not staple" VOC code was producing records which were not responsive.  The "would not staple" VOC code is listed on the 21 reports which this judicial officer reviewed and agreed are responsive.  On May 24, 2011, the plaintiffs deposed Mr. Gabaldon again; the next day the defendants' attorneys discussed the "would not staple" VOC code with Ms. Geier and Ms. Vogel, resulting in the production on June 3, 2011, of more than 100 records.

To analogize the discovery phase of this litigation to a freight train, the case began traveling down the tracks with initial disclosures.  Upon receipt of the plaintiffs' First Set of discovery requests, Ms. Geier threw a switch, thereby sending the train in the wrong direction ("no documents").  For the following year, the plaintiffs' attorney pushed and pulled on the train to get it back on the correct tracks (one document, seven documents, 44 documents).  In addition to the unnecessary loss of time and money, if plaintiffs' counsel had not been relentless in his

---

[1]  Due to misinformation from chambers staff, there was confusion as to whether the plaintiffs' Tenth Set was served within the discovery period.

pursuit of the evidence, the evidentiary picture would have been substantively different. If Carlos Gabaldon is not challenged in his assertion that it is "impossible" for a stapler to leave the factory without being loaded with staples, then it is much more likely that only the surgeons will be blamed for the mishap with Ms. Hershberger. This judicial officer does not know what happened during the surgery, but she is persuaded that the defendants' employees consistently made decisions which resulted in the suppression of evidence of other similar incidents, and the defendants' attorneys did not ask sufficient questions of their clients. To illustrate the difficulties faced by plaintiffs' counsel, the Court heard testimony at the evidentiary hearing in which it was suggested that Mr. Brinkley was at fault for not traveling to Cincinnati, Ohio to review the Siebel database with the defendants' employees. (Tr. Evid. Hrng, ECF No. 267, at 76-77.) Twice Mr. Brinkley inquired of defense counsel about that access, but he received no response. Id. at 95.

In the Sanctions Order, the Court stated its intention, at a minimum, to require payment of the plaintiffs' attorney's reasonable fees and costs associated with the Motion for Sanctions, the filing of discovery requests for other similar incidents after Request No. 16, and Mr. Gabaldon's two depositions. (ECF No. 288, at 20-21.) Ethicon Endo-Surgery has stated that it "will pay the full amount of any award for attorney's fees and costs." (ECF No.

277, at 10.)

Having determined that the response to the plaintiffs' Request No. 16, First Set, was unreasonable, inexcusable and sanctionable, the Court has reviewed the affidavit of fees and expenses, including the time report, filed by the plaintiffs' attorney, Christopher L. Brinkley, found at ECF No. 275. The defendants filed a response in opposition to Mr. Brinkley's affidavit of fees and expenses (ECF No. 277), and Mr. Brinkley has filed a reply (ECF No. 280).

### Hourly Rate

The first issue in dispute is whether Mr. Brinkley's claimed hourly rate of $450 is unreasonably high for an attorney-engineer who specializes in products liability litigation, serving as lead counsel, with sixteen years of experience. Mr. Brinkley has provided his resumé, which is extensive. (ECF No. 275, at 8-12.)

This judicial officer regularly reviews hourly rates of attorneys in relation to claims for costs and fees, including attorneys' fees, pursuant to Rule 37 of the Federal Rules of Civil Procedure. Hourly rates in Charleston and Huntington vary widely according to attorneys' reputation, expertise, experience, success and typical client base. Corporate defense attorneys in this region typically bill at lower rates than East Coast metropolitan firms with hundreds of lawyers and higher overhead expenses. Defense attorneys are more likely to bring more than one lawyer to

a hearing; the defendants had three lawyers at the hearing on sanctions; the plaintiffs had Mr. Brinkley and a paralegal. Taking just the hearing on sanctions as an example, Mr. Brinkley claims $450 per hour for 4.25 hours ($1,912.50); the defense attorneys were billing a total of $763 per hour ($3,242.75). (See ECF No. 286.)

The Court has considered the time and labor expended by Mr. Brinkley in his dogged persistence to obtain disclosure of other similar incidents, the questions raised, his skills, his opportunity costs, customary fees charged, the time limits imposed by the scheduling order, his experience, reputation and ability, and attorneys' fees awarded in similar cases. In this judicial officer's experience, Mr. Brinkley's claimed hourly rate of $450 exceeds any rate charged by an attorney in this District by at least 10%. As both an engineer and an attorney, Mr. Brinkley possesses unusual educational credentials and expertise justifying an hourly rate which exceeds that of most attorneys of comparable experience. Accordingly, the Court deems $400 per hour to be a reasonable rate for Mr. Brinkley. The Court acknowledges Chief Judge Goodwin's conclusion that $500 per hour is the high end of the market, as reported in Jones v. Dominion Resources Services, Inc., 601 F. Supp.2d 756, 766 (S.D. W. Va. 2009), a class action case concerning oil and gas royalties with a settlement fund of $50 million. Class action litigation and single-plaintiff cases are

sufficiently different from each other to justify $400 per hour.

### Time Charges

The defendants challenge some of the activities listed in Mr. Brinkley's time report.  The Sanctions Order stated the Court's intention to award reasonable fees and costs associated with the Motion for Sanctions, the filing of discovery requests for other similar incidents after Request No. 16, and Mr. Gabaldon's two depositions.  (ECF No. 288, at 20-21.)  The Court notes that the fees and costs are being awarded pursuant to Rule 26(g), which affords the Court considerable discretion, and not Rule 37.

The defendants list "examples" of time charges which they dispute; if the defendants did not list all the items which they contest, they have missed their opportunity.  They did not specifically identify by date the time charges they challenge, thus making it more difficult to find them.  While the Court has examined the time report with care, it will not make the defendants' arguments for them.

The defendants dispute the following:

| Date | Description | Time |
|------|-------------|------|
| 1/29/11 | Notices of depositions | 0.5 |
| 1/31/11 | Amended notices of depositions | 0.5 |
| 2/10/11 | Review of Gabaldon report | 0.5 |
| 2/21/11 | Prepare for deposition on other incidents | 2.25 |
| 2/24/11 - 3/6/11 | Four emails regarding production of other incidents | 1.0 |

11

| 3/8/11 | Review of seven other incidents | 1.25 |
|--------|--------------------------------|------|
| 2/22/11 | Travel to El Paso for depositions | 9.0 |
| 2/23/11 | Deposition of Carlos Gabaldon | 3.0 |
| 3/18/11 – 4/27/11 | Plaintiffs' motion to compel, ECF No. 79, and Order granting, ECF No. 100 | 14.0 |
| 5/12/11 | Communications re compelled discovery | 0.5 |
| 6/3-7/11 | Review of other similar incidents | 7.5 |
| 6/17/11- 8/12/11 | Motion for Sanctions re conduct other than other similar incidents | Extensive but not itemized |

The first basis for the defendants' challenges is that most of
this work would have been done anyway.  The deposition notices
would have been prepared; Gabaldon's report would have been
reviewed; plaintiffs' counsel would have prepared for the
deposition on other similar incidents, traveled, and deposed Mr.
Gabaldon; and he would have reviewed the documents of other similar
incidents.  (ECF No. 277, at 6-8.)  The second reason given by the
defendants is that the plaintiffs should not recover their costs
relating to the motion to compel at ECF No. 79 (see footnote 1
above).  Id. at 8.  The third ground for reducing the expenses is
that the defendants argue that the time spent on the motion for
sanctions should be apportioned according to the plaintiffs'
success; that is, sanctions were imposed with respect to the other
similar incidents, and not as to other conduct.  Id. at 8-9.  The
defendants complain that they should not have to pay for both trips

12

to El Paso, Texas for Mr. Gabaldon's depositions.  <u>Id.</u> at 9-10.

The plaintiffs reply that they were complying with the directions in the Sanctions Order when they prepared the affidavit, and that the entries are consistent with the Sanctions Order.  (ECF No. 280 at 6-7.)  They explain why it was necessary to perform each of the challenged tasks and how the defendants' conduct impeded their search for evidence.  <u>Id.</u> at 8-11.  With respect to the defendants' apportionment argument, the plaintiffs point out that they always contended that the centerpiece of the motion for sanctions was the belated and grudging disclosure of other similar incidents after unrelenting prodding.  <u>Id.</u> at 11.  The plaintiffs used the defendants' other acts to demonstrate that the defendants had a pattern and practice of impeding discovery.  <u>Id.</u>

The Court notes that Rule 26(g) does not contain language similar to Rule 37(a)(5)(C) concerning the apportionment of expenses according to the extent of relief awarded or denied.  The only limitation on the Court's discretion in imposing a Rule 26(g) sanction which includes an order to pay expenses, including attorney's fees, caused by the violation, is that the expenses be "reasonable."  The primary and most egregious violation of Rule 26(g) was the response to Request No. 16, First Set.  If the defendants had conducted an appropriate Siebel database query within thirty days of the First Set of discovery requests, it is doubtful that a motion for sanctions would have ever been filed.

Instead, due to that unjustifiable omission, the plaintiffs were forced to file repeated additional discovery requests, to depose Mr. Gabaldon twice without sufficient documents having been disclosed prior to either deposition, and to review critical evidence of other similar incidents *after the close of discovery*. The plaintiffs were deprived of the opportunity to form their theory of the case early in the discovery period and to pursue that theory vigorously. Some of the other similar incidents occurred in Europe; the plaintiffs may have preferred to arrange for further exploration of those incidents. In other words, the defendants altered the course of this litigation for a year, for no good reason, and it is appropriate that they pay the price.

The only time charges which the Court declines to award to the plaintiffs relate to the motion to compel at ECF No. 79. The Order entered in relation to the motion specified that the parties "shall bear their own costs." (ECF No. 100.) Accordingly, the Court will subtract 14.0 hours from the time charges.

It is hereby **ORDERED** that the Court awards the plaintiffs reasonable attorney's fees in the amount of $48,000 (120 hours x $400) and costs in the amount of $5,350.36, for a total of $53,350.36, to be paid by Ethicon Endo-Surgery to the Masters Law Firm no later than October 28, 2011.

The Clerk is directed to transmit this Order to counsel of record.

ENTER: October 4, 2011

Mary E. Stanley
United States Magistrate Judge