**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

_____x
IN RE:                          :  MDL NO.
ETHICON INC.,                   :  2:12-MD-02327
PELVIC REPAIR SYSTEM            :
PRODUCTS LIABILITY LITIGATION   :
                                :
                                :
_____x


**TELEPHONIC HEARING**


**BEFORE THE HONORABLE**
**CHERYL A. EIFERT**
**UNITED STATES MAGISTRATE JUDGE**

**THURSDAY FEBRUARY 6, 2014**


**CATHERINE L. SCHUTTE-STANT, RPR, RMR**
Federal Official Court Reporter
300 Virginia Avenue East
Room 6009
Charleston, WV 25301
(304) 347-3151

```
 1    APPEARANCES:

 2           (BY TELEPHONE)

 3    For the Plaintiffs:    MR. BRYAN F. AYLSTOCK, ESQ.
                             MS. D. RENEE BAGGETT, ESQ.
 4                           Aylstock, Witkin, Kreis & Overholtz
                             Suite 200
 5                           17 East Main Street
                             Pensacola, FL  32502
 6

 7                           MR. RICHARD A. FREESE, ESQ.
                             Freese & Goss
 8                           2031 2nd Avenue North
                             Birmingham, AL  32503
 9
             (BY TELEPHONE)
10

11    For the Defendants:
                             MR. WILLIAM M. GAGE, ESQ.
12                           MS. ANITA MODAK-TRURAN, ESQ.
                             MS. CHRISTY D. JONES, ESQ.
13                           Butler, Snow, O'Mara, Stevens &
                             Cannada
14                           P.O. Box 6010
                             Ridgeland, MS  39158-6010
15

16                           MR. RICHARD BERNARDO, ESQ.
                             Skadden, Arps, Slate, Meagher &
17                           Flom
                             4 Times Square
18                           New York, NY  10036

19

20

21

22

23

24

25
```

1             P R O C E E D I N G S

2             THE CLERK:  Hello, this is Laura, Judge Eifert's

3    assistant.  Could I ask who is on the line for plaintiffs,

4    please?

5             MR. FREESE:  Yes.  Richard Freese.

6             THE CLERK:  Would you mind to spell your name?

7             MS. BAGGETT:  Renee Baggett.

8             THE CLERK:  I'm sorry Renee, just one moment.

9             MR. FREESE:  Yes, ma'am, it's F-R-E-E-S-E.

10            THE CLERK:  Okay.  Renee Baggett.

11            MS. BAGGETT:  Yes.  Renee Baggett.

12            THE CLERK:  Thank you very much.  Okay, who else

13   is on the line, please, for plaintiffs?

14            Let's move on to defendants, please, who's on the

15   line?

16            MR. GAGE:  William Gage.

17            THE CLERK:  All right.  Thank you.

18            MR. AYLSTOCK:  Hello, this is Bryan Aylstock.

19            MR. BERNARDO:  I'm not sure if I got cut off.

20   It's Rich Bernardo.

21            THE CLERK:  Could you spell your last name, Rich,

22   please?

23            MR. BERNARDO:  Sure.  B-E-R-N-A-R-D-O.

24            THE CLERK:  Thank you very much.  Do we have

25   anyone else on the line?

```
 1              MS. MODAK-TRURAN:  Anita Modak-Truran.

 2    M-O-D-A-K-T-R-U-R-A-N.

 3              THE CLERK:  Thank you.

 4              MS. JONES:  And finally, Your Honor, this is

 5    Christy Jones.  Christy D. Jones or Christy Jones.

 6              THE CLERK:  I'm sorry, did you say Christy Jones?

 7              MS. JONES:  Right.

 8              THE CLERK:  Okay, thank you.  No, I did not get

 9    you, so thank you.  All right.  Is that everyone?  Seems to

10    be.  Thank you.  Hold one moment for Judge Eifert, please.

11              THE COURT:  All right.  Laura has given me the

12    names of the people on the line, so I won't have you repeat

13    that at this time.  I will ask that you identify yourself

14    before you speak so we can have a clean transcript.

15         Who would like to go first?

16              MR. AYLSTOCK:  Good morning, Your Honor, this is

17    Bryan Aylstock.  I'm going to have Rich Freese address the

18    issue.

19              THE COURT:  All right.

20              MR. FREESE:  Good morning, Your Honor, this is

21    Rich Freese.  How are you doing?

22              THE COURT:  Fine.  How are you?

23              MR. FREESE:  Thank you, good.  Your Honor, the

24    reason for the call is that the plaintiffs would like to

25    take a two-hour deposition of James Mittenthal.  You may
```

1    remember him.  He was the corporate representative that

2    Ethicon put up in response to the spoliation issues in this

3    case.  He was deposed in the MDL on May 14th and on August

4    13 of 2013.  Obviously at the time of that deposition, it

5    was taken as a discovery deposition, we did not have the

6    benefit of Your Honor's ruling, which you issued on February

7    4th, just a couple days ago, and we now have a roadmap to

8    what Your Honor has found.  And one of the things that Your

9    Honor stated that it would be your recommendation to Judge

10   Goodwin that the plaintiffs be permitted on a case-by-case

11   basis to attempt to establish willfulness and

12   deliberateness.  And Your Honor found that they were

13   negligently destroying documents, but it didn't rise to the

14   level of -- (recording inaudible) -- willful, which would

15   then allow you to enter more serious sanctions.

16       It's our belief because the deposition was taken before

17   we had this guidance, that -- and because it was a discovery

18   deposition, it's obviously choppy, it's all over the place,

19   because we were trying to cover the waterfront on thousands

20   of employees and dozens of records custodians whose files

21   were admittedly destroyed.

22       What we now would like to have Your Honor do is allow

23   us simply two hours to go take a trial testimony deposition

24   of Mr. Mittenthal so we can get it straight and present it

25   to a jury in a cohesive fashion that it's not in existence

1    right now in the two prior depositions.

2         I would add, Your Honor, that we had asked Judge

3    Goodwin at the pre-trial conference to allow us to remotely

4    allow us to compel three or four Ethicon witnesses to appear

5    at a federal court in another district and give live

6    testimony.  Judge Goodwin denied that motion.  But he said

7    as an accommodation, he would give us two-hour depositions

8    for each one of those witnesses.  For those reasons, we have

9    decided to forego those depositions, even though Ethicon

10   would have preferred to have put the witnesses on.  We are

11   simply now asking to do the same thing with Mr. Mittenthal

12   that we would have had the chance to do for others.

13        I would also tell the Court that I anticipate that they

14   may claim some lateness and prejudice, but Ethicon was given

15   six weeks to respond to the motion of spoliation.  And so

16   Your Honor didn't have the benefit of having a hearing until

17   almost -- at trial.  So the timing is important.  We

18   couldn't have asked earlier than this.  So we're coming to

19   you as soon as is reasonably possible now that we have Your

20   Honor's ruling and said it would be two hours and two hours

21   only, and it would be strictly for trial purposes, to

22   attempt to prove what we believe we can prove, which is

23   the willful and deliberate destruction of documents that we

24   believe that prejudice our client.

25        Thank you, Your Honor.

1          MR. AYLSTOCK:  Judge, if I may, Your Honor, this

2     is Bryan Aylstock.  Could I have one point?

3          THE COURT:  Yes.

4          MR. AYLSTOCK:  The -- just going back to the issue

5     of the timing of this.  Had we had the benefit of Your

6     Honor's ruling or even simply the Actos ruling, which would

7     have took us some time to digest, having a 75-page opinion,

8     and we now know that in the Actos case, which is going right

9     now, that in fact the first live witness called was the

10    general counsel in general counsel's office for Takeda to

11    kind of establish the spoliation right out of the gate.  We

12    would have certainly added that -- Mr. Mittenthal to our

13    list of either live via video transmission or added to our

14    list.  And based upon Judge Goodwin's ruling, my belief is

15    that he would have allowed us to have him, have it as one of

16    those witnesses where we could have a two-hour deposition.

17         When we were taking the deposition, obviously we were

18    just trying to learn stuff.  It was truly a discovery

19    deposition where we're trying to get to the bottom of

20    things.  It was not a trial prep at all.  And so we're

21    asking for this one accommodation in this one instance for

22    Mr. Mittenthal to give a two-hour deposition so that we can

23    present it to the jury which we believe the jury should have

24    the benefit of the information.  And now I'll shut up.

25         THE COURT:  All right.  Who would like to speak on

1    behalf of Ethicon?

2         MR. BERNARDO:  This is Rich Bernardo, Your Honor.

3    And I would like to address it, if I may.  First, we're

4    troubled by hearing for the first time today that they're

5    looking to take this deposition to reopen the issue as to

6    whether there was willfulness or not.  That issue was

7    addressed extensively in the briefing, and it was addressed

8    extensively in not two depositions of Mr. Mittenthal, but

9    three depositions devoted specifically to spoliation.

10        The issue is that we asked plaintiffs to provide us a

11   basis for why they wanted this deposition, and we have not

12   heard anything yet in response.  This is the first time that

13   we're hearing that they're looking to reopen the deposition

14   to reopen an issue that we believe Your Honor already ruled

15   upon and found.

16        Now, Your Honor, did leave the door open for some

17   spoliation issue may be in a particular case, but certainly

18   Lewis is not this particular case.  Your Honor talked about

19   possibly an occasion which failure-to-warn was an issue, and

20   that's no longer an issue here.  Your Honor points out a

21   circumstance in which possibly a sales rep's materials were

22   destroyed.  That's not an issue here.  I don't know if Your

23   Honor recalls, but we pointed out in our brief, that the

24   sales rep here, Mr. Coiton (phonetic), in fact, produced

25   many more documents than plaintiffs had claimed in their

1    brief.  He produced over 2,000 pages of documents, including

2    documents that reflected communications with Dr. Boreham,

3    the surgeon here.

4         So there's clearly no basis to reopen it to discuss

5    anything about Mr. Coiton.  All of this information was

6    known to them prior to the deposition of Mr. Mittenthal.

7         Now again, Mr. Mittenthal was deposed extensively, and

8    I believe Your Honor's read at least some of his testimony.

9    And there was a deposition taken specifically devoted to

10   spoliation that we encouraged as a means of trying to get to

11   the bottom of the spoliation issue.  One was in May, then we

12   let several months pass -- (recording inaudible) -- another

13   one was in August, and then we went to them and said, tell

14   us who in particular you would like to have Mr. Mittenthal

15   investigate.  Mr. Freese mentioned thousands of employees.

16   That's not accurate.  There are -- as you know there were 22

17   at issue in this motion, and the plaintiff identified even a

18   smaller subset of that for Mr. Mittenthal to investigate.

19        So they chose not to ask anything about Mr. Coiton or

20   anything that might be relevant.  In fact, Your Honor, they

21   chose not to depose Mr. Coiton, or ask him anything

22   pertaining to the -- this case.  They deposed him in another

23   case.  I think his testimony actually establishes that --

24   (recording inaudible) --

25        So the only basis that we believe Your Honor's opinion

1    left open for possibly dealing with spoliation testimony

2    would be not applicable under the circumstances I described.

3         Now, in addition to the fact that Mr. Mittenthal was

4    deposed for three days, I don't think it's fair just to say

5    that plaintiffs were trying to get their arms around the

6    question of -- as I said, these were for three days

7    separated by many months, and if you look at the transcript,

8    plaintiffs asked questions ranging from A to Z.  They

9    literally walked Mr. Mittenthal through every single hold

10   notice, asking him to read testimony -- I'm sorry, asked him

11   to restate the hold notice, and these depositions were

12   clearly designed to be used to be read at the trial.

13        And, in fact, Your Honor, I did an examination of Mr.

14   Mittenthal at the deposition which showed that it wasn't

15   just a discovery deposition, and plaintiff chose to ask no

16   follow-up questions or ask after that deposition for a

17   further one.  They had an opportunity to direct.  They asked

18   for sound byte.  They designated at least 25 portions of

19   that testimony.  So there's clearly -- if spoliation even

20   were an issue in the Lewis case, which it is not, and we're

21   going to submit papers to Judge Goodwin on that issue,

22   certainly, there's no need to depose Mr. Mittenthal again

23   for that.

24        And as to prejudice, which Mr. Freese raised.  I will

25   raise that Mr. Mittenthal's last deposition was in

1    September, yet plaintiffs waited for several months, and it

2    wasn't until the eve of Thanksgiving that they put in their

3    papers on spoliation.  So the fact that we took some time

4    because of the holidays to be able to put in what was

5    obviously a detailed and lengthy submission did not

6    prejudice them.

7        What prejudiced them, if anything, was their sitting on

8    this issue for several months before they even decided to

9    make a motion.  So I think to come in at the last minute

10   before trial and ask for additional time is prejudicial, and

11   I'll also say that prejudicial to Mr. Mittenthal, who, as

12   you know, is not a company employee and spends hundreds of

13   hours preparing to get up to speed on these issues, which he

14   did many, many months ago and to now have him -- I wouldn't

15   say cold, but not in the depth of that level of preparation

16   that he was for deposition come and provide trial testimony

17   is unfairly prejudicial to the defendant.

18              THE COURT:  Well --

19              MR. FREESE:  Your Honor, if I could?

20              THE COURT:  Let me just give you my thoughts.

21       My understanding, Mr. Freese, of what you want to do is

22   take an evidentiary deposition based upon his prior

23   testimony, not to actually ask questions that haven't been

24   asked before.  Is that correct?

25              MR. FREESE:  Well, I think I would say, Your

1      Honor, yes, we would like to still be -- the information

2      from prior depositions, a format that can be easily

3      converted into a trial evidentiary deposition.  And let me

4      just point out the deponents who Judge Goodwin gave us that

5      right to do, many had been deposed longer than Mr.

6      Mittenthal.  And yet he said, yes, I understand you can have

7      two hours to get your trial testimony, and that is what we

8      would -- that's what we would propose to do here.

9          And, yes, the short answer to your question is yes, and

10     still what we have and what we think we would have now and

11     then I'll put it in a format for presentation at this trial.

12             MR. AYLSTOCK:  Judge, there's one other important

13     point, Your Honor -- this is Bryan Aylstock.

14             THE COURT:  Before you go on, Mr. Aylstock, let me

15     just follow through with this thought, if you don't mind.

16             MR. AYLSTOCK:  Sure.

17             THE COURT:  If there was evidence in these

18     depositions of deliberateness, willfulness, bad faith, why

19     was that not supplied to me as part of the motion?  Because

20     I didn't see that.

21             MR. FREESE:  Well, Your Honor, I mean, for

22     example, on the footnote on your order, I believe it's on

23     Page 8, there's some confusion whether or not the 2003 hold

24     which Your Honor found that that was, in fact, related to

25     the TVT litigation, that might influence your decision

1    differently.  However, Your Honor found that it wasn't clear

2    whether or not the 2003 hold in which they admit was always

3    the 2003 forward was, in fact, related to TVT.  We intend on

4    examining that.  The case based on how Your Honor --

5            THE COURT:  I'm sorry.  Maybe I wasn't clear.

6    Maybe I wasn't clear in my order.  But I knew that it was

7    related to a TVT device.  And I knew that Mr. Mittenthal

8    said that it had not ever been officially withdrawn.  I knew

9    that.  I just did not believe that that put Ethicon on

10   notice of all the lawsuits that were to come, particularly

11   the ones that were starting to be filed in 2009 and 2010.

12   So -- but that's kind of a side point.

13       You know, the other aspect of my order, the other area

14   that I struggled with, and I explained this at the hearing,

15   was this whole issue of prejudice.  Because I just didn't

16   see anything suggesting to me that there were gaps in your

17   case or missing evidence.

18       And I don't know, would Mr. Mittenthal be able to help

19   with that aspect of it?

20           MR. FREESE:  Well, I think he is our best and last

21   hope.  But we now have Your Honor's ruling.  We felt we had

22   shown requisite intent and willfulness.  Your Honor didn't

23   agree.  You set it out in your order.  And now that we have

24   it, we know who the witness is, then we try to go get that

25   in a coherent trial ready fashion in an attempt to prove it

14

1    and ask if you'll allow us to put it in evidence.

2            THE COURT:  Okay.  Mr. Aylstock, what were you

3    going to add?

4            MR. AYLSTOCK:  Well, the only other point I was

5    going to add, there were several depositions of Mr.

6    Mittenthal.  Of course, now a lot of this information about

7    the custodial files that were missing came certainly after

8    his first deposition.  And then when we went to take his

9    deposition, we asked for, look, if you're going to be a

10   designee that doesn't have any personal knowledge, we want

11   the notes, and we requested the notes and duces tecum so

12   that we can, you know, make this a productive deposition.

13   What ended up happening is the notes weren't produced.  We

14   had a discussion about it.  And they said, well, we'll give

15   you the notes, why don't we stop the deposition, and we'll

16   have another deposition after the notes.

17       So the idea that he's really been examined for three

18   days on this isn't right.  Because we needed the notes, and

19   we were just trying to get to the bottom of, okay, which

20   files, where.  It's not in a coherent way, Your Honor, and

21   that -- I just believe that a two-hour deposition would

22   clear up a lot of the issues and make it understandable for

23   either Judge Goodwin to rule on it at trial or for the jury

24   to hear.  And the idea that we waited until the Thanksgiving

25   -- we were trying to figure out, and, frankly, get more

1    testimony from the actual witnesses themselves about what

2    they knew, when they knew about the hold notice and things

3    like that.  So we didn't tarry.  And they had six weeks to

4    respond.  If they had had two weeks, like, or like the rules

5    require, like we had to do for the Daubert briefs and

6    Summary Judgment and everything, then we would have had Your

7    Honor's ruling and we would have put Mr. Mittenthal on our

8    request and we wouldn't be here today.

9              THE COURT:  Okay.

10             MR. BERNARDO:  Your Honor, may I make one

11   additional comment?

12             THE COURT:  Yes.

13             MR. BERNARDO:  Your Honor, I feel like we're

14   taking a step significantly backwards and reopening this

15   whole discussion of whether there was willfulness or what

16   the background of the spoliation is, and we're going back to

17   -- this isn't trial testimony.  This is trying to take

18   discovery to establish elements that plaintiffs were well

19   aware they had to show both at the time that they took Mr.

20   Mittenthal's deposition, and as well as at the time of the

21   trial.

22       Given Your Honor's ruling, I don't understand why the

23   testimony would even be relevant here in this particular

24   case.  Again, we're not talking about something that Your

25   Honor clearly acknowledged in a footnote to Your Honor's

1    order about the possibility of a sales rep who is

2    particularly at issue in a case of failure-to-warn.  That's

3    not what we're talking about here.  Because as I described

4    before, that can't be the issue.

5        So what we're doing is we're reopening the whole

6    general issue of spoliation.  And I think that even more

7    significantly prejudices Ethicon for trying to put up Mr.

8    Mittenthal on no notice to, I'll say, jam this issue in in

9    the several days that we have before the trial of this

10   issue.

11       So I would really ask that if there is another round of

12   this -- and I think Your Honor left that door open -- if

13   there's another round of this and if there's a need for

14   another deposition of Mr. Mittenthal at some point in time

15   to achieve a broader purpose, then we ought to be discussing

16   that.  But for -- given where we are at the start of the

17   trial, this ought to be a showing that they're missing

18   something that they don't have to go to trial and that they

19   need the testimony in order to put on a case for trial.

20       And we respectfully say that's not present here .

21          MR. FREESE:  Your Honor, if I could respond to

22   that very quickly?  This is Richard Freese.  Two points.

23       We didn't have the ability to fully respond, and I'll

24   give you a concrete example.  At the hearing -- and I was at

25   the hearing when Mr. Gage made the argument we had the

 1   benefit of every, you know, oral argument, which we didn't

 2   have at the time of our briefing, and particularly at the

 3   time when we took Mr. Mittenthal's deposition, you'll

 4   recall, Your Honor, that they argued with -- (recording

 5   inaudible)-- and Mr. Gage argued at the hearing, that you

 6   know what, there are just people that just did not

 7   understand what their obligations were when these litigation

 8   hold orders were issued.  Okay.  And Mr. Mittenthal

 9   testified about that.

10        What they didn't bring to Your Honor and what still was

11   not disclosed to us is who are these people.  They had Mr.

12   Mittenthal.  They had affidavits.  Where are the people that

13   didn't understand what their obligations were?  The person

14   who destroyed the president Renee Salman's hard drive.  Who

15   is that?  It certainly wasn't Mr. Mittenthal.  Why didn't

16   they put up the person, and these are the things that we

17   now --

18        (Audio recording stopped.  No audio.)

19             THE COURT:  Hello.  Hello.  Is everyone there?

20             MR. FREESE:  I'm sorry.  I was going --

21             THE COURT:  Yes, Mr. Freese, I'm sorry.  For some

22   reason our speaker system, our whole audio system went out

23   while you were speaking.

24             MR. FREESE:  Oh, gosh.  Okay.  I made such a good

25   point, too, Your honor.

```
 1              UNIDENTIFIED SPEAKER:  It was the most impressive

 2    argument I've ever heard out of Mr. Freese, but --

 3              THE COURT:  All right, I think -- the last.

 4              MR. FREESE:  Your Honor, if I can repeat.  If you

 5    can hear me now.

 6              THE COURT:  Just everyone stop a second.  Because

 7    we've got to make sure we have got a decent transcript.  And

 8    she's not going to be able to get any of this down if we're

 9    all talking.

10        Mr. Freese, the last point I heard you make was that at

11    the time that you took Mr. Mittenthal's deposition, you did

12    not know that he was going to say that certain people didn't

13    understand the directions, and now you don't have the names

14    of any of these people.  And that's the last I remember you

15    saying.

16              MR. FREESE:  Yes.  My point, that was one of my

17    chief points, which was that -- Rich was saying that -- Rich

18    for Ethicon, I'm sorry, was saying that we basically had all

19    this information when we took the depositions.  And my point

20    was that we did not.  And one concrete example of that is

21    that not only in the papers which we didn't have at the

22    deposition of their response to the motion, but also Mr.

23    Gage's argument, they made a particular point to continue at

24    the hearing, well, the people that destroyed or deleted or

25    allowed these documents to be destroyed didn't understand
```

1    the obligations of a litigation hold letter.

2        They don't say who they are, when they knew it, why

3    they didn't know it.  They gave us Mr. Mittenthal, who

4    didn't know these people.  And these are the sorts of

5    questions that we want to ask now, because we think as we

6    drill deeper and we now have that information from Ethicon

7    which we didn't have -- we've now seen them take a position

8    that there's some universe of people out there that just

9    simply didn't understand what their obligation was.

10        So we want to --

11        (Recording inaudible.)

12        (Interruption.)

13            MR. FREESE:  I wasn't finished, counsel.  And I'm

14    sorry, my second point was -- before I got cut off is, they

15    were saying that this is, you know, in Ms. Lewis' case, you

16    know, Ms. Lewis' case, I simply wanted to remind everybody

17    that Ms. Lewis' case is a bellwether case.  So it has

18    implications beyond her case.  We think this is an important

19    issue.  It's an important issue.  And so it's not just Ms.

20    Lewis' case at stake here, it's a bellwether case that

21    affects thousands and thousands of Ethicon lawsuits that are

22    pending before Your Honor.

23        So we can't look at it in a vacuum and say, well, it's

24    only a Ms. Lewis specific issue.  It does have specific

25    implications for her case, but it also has implications for

1     all the Bellwethers before Your Honor.

2         UNIDENTIFIED SPEAKER:  Your Honor, to correct one

3     thing that Mr. Freese said.  The fact that there isn't a --

4     and I'm using a word that Mr. Mittenthal used, if I remember

5     his word, understanding from some of the company is not

6     something that was raised by Mr. Gage the first time the

7     argument -- first of all, I believe it was in Mr.

8     Mittenthal's declaration, but, more importantly, that is

9     stated early on, because that was one of the issues.  And

10    plaintiffs had the opportunity to and did in fact explore

11    that.

12        So none of what we're discussing here is new.  None of

13    this is stuff that could not have been explored.  This is

14    really a last effort to -- on a very short timeframe,

15    basically, to start all over again.  And we urge the motion

16    for spoliation that Your Honor so thoughtfully opined on and

17    gave us some guidance on.

18        THE COURT:  All right.  When Judge Goodwin ruled

19    that you could take some evidentiary depositions, how many

20    did he say you could take?

21        MR. FREESE:  I believe it was four, Your Honor.

22        THE COURT:  Four, all right.  Well, here's what

23    I'm going to do.  I'm going to allow the plaintiffs to take

24    a two-hour deposition of Mr. Mittenthal.  However, it is not

25    a deposition to be taken for discovery purposes, which means

1    that if you've already covered this ground and you just

2    failed to ask certain questions -- and I do specifically

3    recall reading testimony by Mr. Mittenthal where he said

4    that some people didn't understand what their obligations

5    were, so that was already stated in the testimony.  And I

6    don't think the deposition ought to be an opportunity for

7    you now to go ask questions you did not ask the first time.

8         It would be an opportunity for you to reformat the

9    testimony in a way that makes it easier for the jury to

10   understand, but not to actually go plow new ground.

11              MR. FREESE:  Your Honor, I understand.

12              THE COURT:  Having said that, I think the

13   plaintiffs should be able to take this.  This is an

14   important point to their case.

15        I still want to point out that, you know, one of the

16   big problems I had with the spoliation motion, I mean

17   obviously documents were destroyed that were probably --

18   some of them probably relevant to your case under the

19   definition of relevance for spoliation.  But, you know, I

20   still didn't see the prejudice.  I didn't see the smoking

21   gun like you had in Actos.  I didn't see anything there that

22   made me think that you're missing something really crucial

23   to your case, which is what you almost need to have to get

24   an adverse inference instruction.  And I just didn't see

25   that.

1          Most of the cases say no matter how deliberate the

2     destruction was, if the result is that there's not that much

3     prejudice, you're still not going to get an extreme sanction

4     like an adverse inference instruction.

5          So I just want to make that point so you understand

6     that it's not all about whether they did this on purpose or

7     not.  I didn't see anything that made me believe that

8     somebody intentionally destroyed evidence knowing that it

9     was evidence.

10         It sounded to me like the company just wasn't very good

11    at managing the litigation holds and knowing what they were

12    supposed to do.  Which is why I said I felt they were

13    negligent or grossly negligent, but I didn't find it to be

14    willful.  But that's just one-half of the equation.

15         So, having said that, I'm going to let you take your

16    deposition, with the caveats that I've made.  And of course

17    you need to do it quickly, because your trial starts on

18    Monday, doesn't it?

19              MR. FREESE:  Yes, Your Honor.

20              MR. BERNARDO:  Yes, Your Honor.

21              THE COURT:  And I know that that causes some

22    difficulties for Ethicon, but you have to remember we

23    wouldn't be in this position in the first place if people

24    hadn't destroyed some of the documents and wiped hard drives

25    clean and whatnot.

1          UNIDENTIFIED SPEAKER:  Your Honor, we would ask,

2     understanding that the trial begins Monday, that this

3     deposition doesn't necessarily have to be taken before the

4     commencement of the trial, and we'd also like to take the

5     opportunity to make a motion in front of Judge Goodwin to

6     address this issue which perhaps may moot this.  We would

7     ask that the deposition happen sometime later next week so

8     that, A., we have an opportunity to raise this with Judge

9     Goodwin, and B., have the opportunity to prepare Mr.

10    Mittenthal.

11          MR. AYLSTOCK:  Your Honor, this is Bryan Aylstock.

12    In the Actos trial, the very first witness was, in fact, a

13    spoliation issue.  And obviously Judge Goodwin is going to

14    need to weigh in on this, but if we don't have this done and

15    done prior to trial, then, especially given the timing and

16    the schedule that Judge Goodwin has made clear we must meet,

17    it's going to be very problematic.  So we're available as

18    soon as tomorrow or Saturday, Sunday, and we'll make

19    ourselves available.  We would like it done certainly before

20    the trial.  Or maybe we could do it Monday morning during

21    the jury selection, some of us can peel off and do it then.

22          MS. JONES:  Your Honor?

23          THE COURT:  Yes.

24          MS. JONES:  I apologize.  This is Christy Jones.

25    And I understand that I'm -- (recording inaudible) -- I just

 1    want to say that after the 4th that when Judge Goodwin --

 2    every deposition that the plaintiffs -- (recording

 3    inaudible) -- specifically -- (recording inaudible) -- put

 4    the requirements around that.

 5         The other piece was that the entire deposition must not

 6    take more than two hours, and that included an opportunity

 7    for the defendant to conduct a Direct Examination.  This

 8    would be a trial -- (recording inaudible).

 9         I assume that Your Honor intends for the same rules to

10    apply?

11              THE COURT:  Yes, I do.  Because, as you all know,

12    I believe it was in this case, I wasn't a fan of doing the

13    evidentiary deposition, because there was really nothing set

14    out in any of the docket control orders that allowed for

15    that.  And I was worried that it would -- you know, there

16    would be no fair way to do it.

17         So I think whatever Judge Goodwin has told you are the

18    parameters of these evidentiary depositions, you need to

19    abide by those parameters.  So if he said it is two hours

20    total, plaintiff and defendant, then that's the way it has

21    to be.

22         Are you all still there?

23              MR. FREESE:  Yes, we're still here.

24              UNIDENTIFIED SPEAKER:  We agree to abide by

25    obviously whatever Judge Goodwin ruled in the other

1    depositions.

2            THE COURT:  Yes.  So whatever --

3            UNIDENTIFIED SPEAKER:  I have to go back and look

4    at the transcript.

5            THE COURT:  -- whatever the parameters were that

6    he put on the deposition, then that's what you need to abide

7    by.  And as far as the timing of the deposition, I think

8    you're going to need to try to work that out.  But you can't

9    wait too long if you want to use it in Lewis.  I do agree

10   that the timing has been a real problem here.  The motion

11   was filed in such a way that, you know, even giving the

12   defendants a little bit of extra time to respond, it was

13   still pretty cramped.

14       And then the day that I was ready to finish my opinion,

15   I got a 75-page opinion from another judge that I had to,

16   you know, in all fairness, review and analyze and see how

17   that affected my decision-making.  So as an end result it

18   took me longer to get the order out than I had originally

19   anticipated.  And of course everyday I was getting a nice

20   letter from one of the other of you, with your thoughts on

21   that decision.  And so -- (recording inaudible).

22       And I wanted to take time to really digest what you

23   were saying, because I realize this is a very important

24   issue for both sides.

25       So it's unfortunate that this timing is the way it is,

1    but for this deposition to be used in Lewis, then it's going

2    to have to be taken in the next few days.  I'm sure Judge

3    Goodwin and I'm sure the parties don't want to be taking a

4    deposition on the end of the first week of trial.  I mean,

5    you can if you want to.

6              MR. FREESE:  We have to rest in four and a half

7    days, Your Honor, so --

8              THE COURT:  Well, there you go.

9              MR. FREESE:  Yeah.  So it needs to be at the

10   beginning of the week.

11             THE COURT:  All right.  Well, why don't you try to

12   pick a day, and try to give Ethicon as much time as possible

13   so that they can prepare their witness, because that is also

14   only fair.

15             MR. FREESE:  Yes, Your Honor.  I'll call right

16   after this call, Your Honor.

17             THE COURT:  All right.  Is there anything further?

18             UNIDENTIFIED SPEAKER:  No, Your Honor.  Thank you

19   for your time.

20             UNIDENTIFIED SPEAKER:  No, Your Honor.

21             THE COURT:  Thank you.

22                 (Proceedings were concluded.)

23                      - - - - - -

24

25

1                       REPORTER'S CERTIFICATE

2            I, Catherine L. Schutte-Stant, an Official Court
    Reporter of the United States District Court, for the
3    Southern District of West Virginia, do hereby certify that
    the foregoing proceedings, which were taken out of my
4    presence, were transcribed by me from an audio-recording to
    the best of my ability, and said proceedings are a true and
5    accurate transcript from my stenographic notes.  I further
    certify that I am neither related to any of the parties by
6    blood or marriage, nor do I have any interest in the outcome
    of the above matter.

7
    FEBRUARY 7, 2014      s/CATHERINE L. SCHUTTE-STANT, RPR, RMR
8                         _____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25