**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | |
|---|---|
| **In re: C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation** | **2:10-md-2187** |
| **In re: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation** | **2:12-md-2325** |
| **In re: Boston Scientific Corp, Pelvic Repair System Products Liability Litigation** | **2:12-md-2326** |
| **In re: Ethicon Inc., Pelvic Repair System Products Liability Litigation** | **2:12-md-2327** |
| **In re: Coloplast Corp., Pelvic Repair System Products Liability Litigation** | **2:12-md-2387** |
| **In re: Cook Medical Inc., Pelvic Repair System Products Liability Litigation** | **2:12-md-2440** |

**THIS DOCUMENT RELATES TO ALL CASES**

<u>**ORDER APPOINTING LIEN RESOLUTION ADMINISTRATOR**</u>

Upon the Motion of the Court-appointed Plaintiffs' Coordinating Lead Counsel and Plaintiffs' Executive Committee in the Transvaginal Mesh ("TVM") Consolidated Multi-District Litigation ("MDL") (hereinafter "Plaintiffs' Executive Committee") and for good cause shown, the Court hereby **Orders** as follows:

1

1.      The Garretson Resolution Group, Inc., doing business as Garretson Resolution Group ("GRG") is appointed as the Lien Resolution Administrator ("LRA") for all six consolidated matters listed above to establish a single, uniform consolidated lien resolution program (the "Consolidated Lien Resolution Program") to identify and resolve the Medicare reimbursement claims related to federal Medicare Parts A and B, as contemplated by the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b), related to all claimants who may receive settlements from any and all defendants arising from this litigation.

2.      Fred Thompson, III, and Bryan Aylstock, two of the three coordinating co-lead counsel and members of the Executive Committee, are appointed to be the representatives of the Plaintiffs' Executive Committee to participate with the LRA in any discussions with CMS, and shall report material developments to the Plaintiffs' Executive Committee as the representatives determine appropriate.  Because of the many clients and many counsel who will be potentially impacted by this consolidation, the representatives of the Executive Committee shall have the right to participate in any discussions with CMS and the LRA, as well as the obligation to review and approve any decisions, including final global reimbursement values and related operational procedures, being contemplated by the LRA and CMS.

3.      The LRA shall have all rights, powers and duties identified in the Motion filed with the Court.

4.      The LRA shall also have:

a. The exclusive authority to meet and confer with CMS for the purpose of pursuing the Consolidated Lien Resolution Program, on behalf of all settling claimants (as agent for claimants' counsel), and, as necessary, to provide to and receive from CMS lists of claimants and related

information for the purpose of identifying whether CMS has or may have a Medicare Part A and B (fee-for-service) reimbursement claim against each claimant for injury-related medical items and services, paid on his or her behalf, in lieu of providing copies of individual, claimant-specific HIPAA authorizations and other related documents.

b.   The authority to meet and confer with any TVM defendant, at the defendant's request, to discuss the coordination of mandatory insurer reporting requirements with CMS under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, 42 U.S.C. § 1395y(b)(8) ("MMSEA").

c.   The authority to establish other processes, programs, procedures, and protocols, in the LRA's reasonable discretion, as are necessary or convenient for ensuring that the Consolidated Lien Resolution Program is utilized by all settling claimants in the above-referenced actions, regardless of particular lien processing vendor utilized.  All attorneys who are representing claimants in those actions shall comply with the processes, programs, and procedures of the Consolidated Lien Resolution Program.

d.   The authority to receive and release protected health information and individually identifiable health information, to act as agent for the claimants' counsel for purposes of resolving potential healthcare obligations in accordance with its duties and authority above, and to

perform the other functions in accordance with its duties and authority above and contained in the Motion.

5.      The LRA is further authorized to use all information related to claimants that the LRA creates, provides to, or receives from CMS that is or may be protected under HIPAA and its amendments, or other applicable federal or state law, including all Protected Health Information, as defined in 45 C.F.R. §160.103, as the LRA determines is reasonably necessary to accomplish the objectives of the Consolidated Lien Resolution Program.

6.      GRG's appointment as LRA is limited to:  (1) identifying and securing with CMS the global repayment procedures and associated values that will create the greatest efficiencies, regardless of the lien processing vendor involved; (2) establishing a consolidated conduit for submitting information from claimants' authorized representatives as may be required for purposes of verifying with CMS entitlement to Medicare Part A and/or Part B for the limited purpose of participating in the Consolidated Lien Resolution Program; (3) providing consolidated reporting to this court, the PEC, and any participating settling parties as may be required under the terms of any settlement agreement; (4) creating processes to account, and ensure payment, to CMS consistent with the global repayment values associated with claimants who are or were Medicare entitled beneficiaries (for Medicare Part A and /or Part B); and (5) such other duties as further described in this Order.

7.      Nothing in this appointment shall require any claimant to retain any particular individual or entity as its lien resolution processor.  Any claimants may, subject to the terms of the claimant's settlement agreement, choose any lien processing vendor to handle the other activities related to the Consolidated Lien Resolution Program necessary to enable the claimant to participate in that program.

4

**ENTER:** _____, 2014


_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE