UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | |
|---|---|
| In re: C.R. Bard, Inc., Pelvic Repair System<br>Products Liability Litigation | 2:10-md-2187 |
| In re: American Medical Systems, Inc., Pelvic Repair System<br>Products Liability Litigation | 2:12-md-2325 |
| In re: Boston Scientific Corp, Pelvic Repair System<br>Products Liability Litigation | 2:12-md-2326 |
| In re: Ethicon Inc., Pelvic Repair System<br>Products Liability Litigation | 2:12-md-2327 |
| In re: Coloplast Corp., Pelvic Repair System<br>Products Liability Litigation | 2:12-md-2387 |
| In re: Cook Medical Inc., Pelvic Repair System<br>Products Liability Litigation | 2:12-md-2440 |

THIS DOCUMENT RELATES TO ALL CASES

**MEMORANDUM IN SUPPORT OF MOTION TO APPOINT LIEN RESOLUTION ADMINISTRATOR**

The Court-appointed Plaintiffs' Coordinating Lead Counsel and Plaintiffs' Executive Committee in the Transvaginal Mesh ("TVM") Consolidated Multi-District Litigation ("MDL") (hereinafter "Plaintiffs' Executive Committee") for the six MDLs listed above respectfully

request that the Court approve the engagement of The Garretson Resolution Group, Inc., doing business as Garretson Resolution Group ("GRG"), as the Lien Resolution Administrator (the "LRA") for the TVM litigation.  1.   Lien resolution is one of the most complex and demanding conditions to settlement, requiring early involvement to identify reimbursement obligations and to facilitate timely resolution in the event a settlement is reached.  Parties commonly engage an LRA well prior to any settlement negotiations to help them understand the scope, extent, and anticipated amount of any obligations the claimant may have to reimburse third-party healthcare payers or providers for the cost of the claimants' injury-related care.  Chief among these reimbursement obligations are those the claimants may owe to the Centers for Medicare & Medicaid Services ("CMS") pursuant to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b), for Medicare Part A and Part B benefits the claimants received.  In this litigation, CMS has informed the Plaintiffs' Executive Committee that it would prefer to create a single, consolidated, "global" lien resolution program (the "Consolidated Lien Resolution Program") to identify and resolve the claimants' federal Medicare Parts A and B reimbursement obligations arising from this litigation.[1]  The program would be uniformly applied to all claimants who settle with a TVM defendant.  The purpose of the LRA would be to establish such a program.

      1.      GRG has deep subject matter experience in the development of global models and is ideally suited to serve as the LRA for the TVM litigation.  GRG pioneered the use of global modeling with Medicare and has successfully secured CMS's approval on more than 60 global models in a broad variety of national mass tort, multi-district litigation, and class action matters, including *In Re: Vioxx Products Liability Litigation*, MDL No. 1657-L (E.D. La.), *In re: Avandia*

---

[1] Global modeling is an *en masse* method to efficiently resolve Medicare's statutory reimbursement interests for its beneficiaries.  Reimbursement amounts are determined based on the common course of treatment for signature injuries and are adjusted to account for the relationship between the dates on which each claimant was entitled to Medicare benefits and the date of the claimant's injuries.

*Marketing, Sales Practices, and Product Liability Litigation*, MDL No. 1871 (E.D. Pa.), and *In re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation*, MDL No. 1905 (D. Minn.). A more detailed list of GRG's experience and credentials is attached hereto as Exhibit A.

2. GRG's global resolution programs provide significant benefits to claimants and defendants alike. For claimants, the use of a global resolution program creates an alternative to the time delays associated with individual, claimant-by-claimant reimbursement. It also ensures that similarly-situated claimants achieve parallel outcomes and a fair reimbursement amount for each compensable injury category. For defendants, GRG's global programs address the defendants' mandatory insurer reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, 42 U.S.C. § 1395y(b)(8) ("MMSEA"). In most consolidated resolution programs, GRG has obtained "exemptions" from MMSEA reporting for every defendant who settles claims. Here, GRG will coordinate such exemptions for all involved defendants.

3. To effectuate the creation and implementation of a global resolution program, GRG would need to be vested with the following authority:

a. the exclusive authority to meet and confer with CMS for the purpose of pursuing the Consolidated Lien Resolution Program and, as necessary, to provide to and receive from CMS lists of claimants and related information for the purpose of identifying whether CMS has or may have a Medicare Part A or Part B reimbursement claim against each claimant for injury-related medical items and services paid on his or her behalf;

b. the authority to meet and confer with any TVM defendant, at the defendant's request, to discuss the coordination of mandatory insurer reporting requirements

under Section 111 of the MMSEA;

    c.  the authority to establish such other processes, programs, procedures, and protocols as are necessary or convenient, in GRG's reasonable discretion, to ensure that the Consolidated Lien Resolution Program is utilized by all settling claimants in the above-referenced actions, with which all attorneys who are representing such claimants must comply;

    d.  the authority to receive and release protected health information and individually identifiable health information, to act as agent for the claimants for purposes of resolution of potential healthcare obligations in accordance with its duties and authority above, and to perform the other functions in accordance with its duties and authority above; and

    e.  the authority to use all information related to claimants that the LRA creates, provides to, or receives from CMS that is or may be protected under HIPAA and its amendments, or other applicable federal or state law, including all Protected Health Information, as defined in 45 C.F.R. §160.103. Specifically, the LRA will need the authority to act as agent for the claimants for purposes of resolving Medicare's interests and to provide to and receive from CMS lists of claimants and related information in lieu of providing copies of individual HIPAA authorizations and information on a claimant-by-claimant basis.

  4.  Notably, in the event that no TVM settlements occur, the engagement and court appointment of GRG would not create any binding obligations for any party. Nothing in this arrangement will expand any obligations, nor will it trigger any obligations where none otherwise exist. Furthermore, in the course of GRG's engagement, GRG will not contact any governmental healthcare providers in any manner that could result in creating or expanding obligations.

  5.  Plaintiff's Executive Committee recognizes that the large number of potential

4

claimants requires a universal resolution of repayment rights CMS has with respect to Medicare Parts A and B, and that GRG is best situated to work with CMS to identify and secure the global procedures and associated values that will create the most favorable results and efficiencies for the claimants.  Plaintiffs Executive Committee also recognizes that settling parties may prefer to use different lien processing vendors to handle activities related to Consolidated Lien Resolution Program or, further, that the terms of any Settlement Agreement to which claimants agree may require the use of a specific vendor, claims administrator and/or lien processor.  As a result, for purposes of the requested Order, Plaintiffs Executive Committee requests that this Court appoint the LRA to work with the Centers for Medicare and Medicaid Services ("CMS") to:  (1) identify and secure with CMS the global repayment process and values that will create the greatest efficiencies, regardless of the lien processing vendor involved; (2) establish a consolidated conduit for submitting information from claimants' authorized representatives as may be required for purposes of verifying with CMS entitlement to Medicare Part A and Part B for the limited purpose of participating in the Consolidated Lien Resolution Program; (3) provide consolidated reporting to this court, the PEC, and any participating settling parties as may be required under the terms of any settlement agreement; (4) create processes to account, and ensure payment, to CMS consistent with the global repayment values associated with claimants who are or were Medicare entitled beneficiaries (for Medicare Part A and /or Part B); and (5) such other duties as further described herein.  Plaintiffs' Executive Committee is also mindful that while there is enormous advantage and need for a uniform and universal resolution for the good of all claimants, the scope of the litigation requires that all persons be assured that the processes and procedures creating the Consolidated Lien Resolution Program is conducted in a uniform fashion, ensuring that terms are as efficient and as favorable to the claimants as possible pursuant

5

to the terms of any applicable settlement agreements. Thus, the Plaintiffs Executive Committee requests this Court appoint Fred Thompson, III, and Bryan Aylstock, two of the three coordinating co-lead counsel and members of the Executive Committee, as the representatives to participate with the LRA in any discussions with CMS; to review and approve any decisions, including final global reimbursement values and operational procedures, being contemplated by the LRA and CMS; and to report all material developments and other information to the Plaintiffs Executive Committee as the representative determines appropriate from time to time.

6. Given GRG's success in establishing global resolution programs for numerous other aggregate and class action settlements and the benefits those programs provide, the Plaintiffs' Coordinating Lead Counsel and Plaintiffs' Executive Committee respectfully request that this Court issue an Order appointing GRG as the LRA.

February 14, 2014           Respectfully Submitted,

*s/Fred Thompson III*
Fred Thompson, III, on behalf of the
PLAINTIFFS' COORDINATING CO-LEAD COUNSEL AND
MEMBER OF PLAINTIFFS EXECUTIVE COMMITTEE
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9118
Facsimile: (843) 216-9450


Bryan F. Aylstock
PLAINTIFFS' COORDINATING CO-LEAD COUNSEL AND
MEMBER OF PLAINTIFFS EXECUTIVE COMMITTEE
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 E. Main Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 202-1010
Facsimile: (850) 916-7449

**Exhibit A: Garretson Resolution Group, Inc. Experience and Credentials**

- *In re: Avandia Marketing, Sales Practices, and Product Liability Litigation*, MDL Docket Number 1871 (United States District Court, Eastern District of Pennsylvania);

- *In re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation*, MDL Docket Number 1905 (United States District Court, District of Minnesota);

- *In re: Digitek Products Liability Litigation*, MDL Docket Number 1968, (United States District Court, Southern District of West Virginia);

- *In re: Seroquel Products Liability Litigation*, MDL Docket Number 1769 (United States District Court, Middle District of Florida);

- *In re: Prempro Products Liability Litigation*, MDL Docket Number 1507 (United States District Court, Eastern District of Arkansas);

- *In re: Vioxx Products Liability Litigation*, MDL Docket Number 1657 (United States District Court, Eastern District of Louisiana);

- *In re: Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL Docket Number 1708 (United States District Court, District of Minnesota);

- *In re: Medtronic, Inc. Implantable Defibrillators Products Liability Litigation*, MDL Docket Number 1726, (United States District Court, District of Minnesota);

- *In re: OxyContin Litigation*, Civil Action Number 02-CP-18-1756 (Court of Common Pleas, County of Dorchester, State of South Carolina);

- *In re: Rezulin Products Liability Litigation*, MDL Docket Number 1348 (United States District Court, Southern District of New York);

- *In re: Gadolinium Based Contrast Agents Products Liability Litigation*, MDL Docket Number 1909 (United States District Court, Northern District of Ohio, Eastern Division);

- *In re: Bextra and Celebrex Products Liability Litigation*, MDL Docket Number 1699 (United States District Court, Northern District of California);

- *In re: Bausch & Lomb, Inc. Contact Lens Solution Products Liability Litigation*, MDL Docket Number 1785 (United States District Court, District of South Carolina);

- *In re: Ortho Evra Products Liability Litigation*, MDL Docket Number 1742 (United States District Court, Northern District of Ohio, Eastern Division); and

- *In re: World Trade Center Disaster Site Litigation,* MDL Docket Numbers MC 100, 102, and 103.

- *In re: Zyprexa Products Liability Litigation*, MDL Docket Number 1596 (United States District Court, Eastern District of New York).