UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

---

| | |
|---|---|
| IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | CIVIL ACTION NO. 2:12-md-02327 |
| | MDL No. 2327 |
| This Document Applies To All Actions | Judge Joseph R. Goodwin |

---

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR REQUEST FOR CLARIFICATION AND RECONSIDERATION OR, IN THE ALTERNATIVE, THEIR OBJECTION TO MAGISTRATE JUDGE EIFERT'S PRETRIAL ORDER # 100 GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR A FINDING OF SPOLIATION AND FOR SANCTIONS**

On February 4, 2014, Magistrate Judge Eifert issued Pretrial Order # 100, granting in part and denying in part Plaintiffs' motion for a finding of spoliation and finding that "Ethicon did destroy or otherwise lose documents that should have been preserved in anticipation of this litigation." ("PTO 100" or "Order," Dkt. No. 1069 at 1.) Specifically, Magistrate Judge Eifert granted Plaintiffs' motion for monetary sanctions and recommended that "Plaintiffs be permitted on a case-by-case basis to introduce evidence of spoliation at trial, when appropriate, and seek an adverse instruction in specific cases." (PTO 100 at 2.) Although the Order was issued on the eve of the *Lewis* trial, it relates to all cases in the MDL. Because this Court's application of the Magistrate Judge's finding with respect to when Ethicon's duty to preserve first arose was made in the *Lewis* case, but would seem to apply equally to all cases, Plaintiffs seek clarification with respect to whether this was a final and appealable ruling not just in the *Lewis* case, but in all of the cases.

Plaintiffs also respectfully believe that reconsideration by Magistrate Judge Eifert is appropriate because new evidence is available bearing on when Ethicon's duty to preserve first

1

arose. In her Order, Magistrate Judge Eifert concluded that, despite litigation holds in place related to the TVT since 2003 (that were never withdrawn), Ethicon's duty to preserve evidence did not begin until, at the earliest, April 30, 2007 for the TVT device, and April 21, 2008 for the Prolift device. Judge Eifert did not have the benefit, however, of additional deposition testimony of James Mittenthal taken after the hearing on Plaintiffs' motion, in which he testified about the "broad" litigation hold notice put in place in 2003, or information relating to earlier pelvic mesh litigation involving Ethicon that Ethicon only recently revealed. Magistrate Judge Eifert is in the best position to evaluate this new evidence and to reconsider her Order in light of it; indeed, she is the one who ordered the further deposition of Mr. Mittenthal.

Additionally, to preserve the issue for appeal in all cases and avoid any appearance of waiver, in the event their request for reconsideration is not granted, Plaintiffs also formally object to PTO 100 under Rule 72(a).

## ARGUMENT

### A. Clarification is Needed for Plaintiffs to Preserve a Key Issue for Appeal.

Magistrate Judge Eifert recommended in PTO 100 that "the Presiding District Judge allow Plaintiffs the opportunity to introduce evidence regarding Ethicon's loss of relevant documents on a case-by-case basis, and, when appropriate, to tender an adverse inference instruction." (PTO 100 at 42-43.) In accordance with Magistrate Judge Eifert's determination as to when Ethicon's duty to preserve arose, on February 13, 2014, this Court ruled that Plaintiffs would be precluded from introducing evidence of spoliation—beyond the fact that Ms. Angelini's documents were lost or destroyed—because the proposed evidence pre-dated that duty. (Exhibit 1, Day 4 Trial Tr. at 4-5.) In an abundance of caution and to preserve the issue for appeal in all cases, Plaintiffs respectfully seek clarification as to whether the Court has

adopted, for all cases, the April 30, 2007 date as the date Ethicon's duty to preserve arose, and as to Plaintiffs' ability to introduce evidence on spoliation in future cases.

> **B.  Reconsideration by Magistrate Judge Eifert is Proper in Light of New Evidence Bearing on When Ethicon's Duty to Preserve Evidence First Arose.**

A district court may reconsider a non-dispositive interlocutory order under Rule 54(b) (*see In re: Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, 2014 U.S. Dist. LEXIS 15288, *2553-54 (S.D. W. Va. Feb. 3, 2014)), as well as its own inherent authority to control the docket and issue discovery rulings.  The power to amend previous interlocutory orders stems from a court's "inherent power and Rule 54(b) to afford relief 'as justice requires.'" *Johnson v. Dollar Gen. Corp.*, No. 2:06-CV-173, 2007 U.S. Dist. LEXIS 69964, at *7-8 (E.D. Tenn. Sept. 20, 2007) (Collier, J.) (collecting cases).  Rule 54(b) states that such an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  "[A]lthough a 'motion for reconsideration under Rule 54(b) is not subject to the strictures of a Rule 60(b) motion,' this district has been 'guided by the general principles of Rules 59(e) and 60(b) in determining whether a Rule 54(b) motion should be granted." *Id.* at *2555 (quoting *Shrewsbury v. Cyprus Kanawha Corp.*, 183 F.R.D. 492, 493 (S.D. W. Va. 1998)).  In this regard, the Fourth Circuit recognizes three grounds for reconsideration: (1) to accommodate an intervening change in controlling law, (2) to account for new evidence, and (3) to correct a clear error of law or prevent manifest injustice. *Id.* at *2555 (citing *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

Contrary to the Ruling in PTO 100, Ethicon's duty to preserve documents related to its mesh products began in 2003—not in 2007 or 2008.  Plaintiffs base this determination upon a litigation hold notice issued in 2003 related to the defective mesh product, in addition to extensive testimony from James Mittenthal admitting to Ethicon's knowledge and continuing

3

obligations to preserve evidence related to mesh litigation beginning in 2003. At the time that PTO 100 was entered, the Court did not have the benefit of substantial additional facts and testimony that undoubtedly support this position. During briefing on their motion, Plaintiffs had yet to conduct a subsequent deposition of Mr. Mittenthal, who had previously testified about Ethicon's litigation hold practices. (PTO 100 at 30-31.) This subsequent deposition produced significant testimony bolstering Plaintiffs 'position. *After* the entry of PTO 100, Defendants produced information regarding additional lawsuits involving Ethicon mesh products prior to 2007. (Exhibit 2, Feb. 17, 2014 Letter to Hon. Eifert.) This directly speaks to Ethicon's preservation duties, and the analysis used in Magistrate Judge Eifert's order.

After the hearing on the Plaintiffs' motion for a finding of spoliation and sanctions, Plaintiffs' counsel was given an additional opportunity to depose James Mittenthal, who had previously testified concerning Ethicon's litigation hold practices. Mr. Mittenthal's testimony removes all doubt that Ethicon reasonably anticipated litigation as early as 2003, confirming that Ethicon *did* then have a duty to preserve documents. His subsequent testimony removed all doubt as to when Ethicon should have reasonably anticipated litigation: he testified that the 2003 litigation hold put into place was "broad"[1] (Exhibit 3, Feb. 10, 2014 Mittenthal Dep. 707:12-23; 710:18-711:3), related to the design of the mesh (*id*. 709:5-22 ("it was meant in part to make sure

---

[1] Specifically, the 2003 litigation hold provides that "[i]n connection with this matter, it is vital to preserve all documents relating in any way to the below listed subject matters until contrary written notice is received from the Johnson & Johnson law department." (Exhibit 3, 705:19-24.) Mr. Mittenthal agreed that the language meant that Ethicon employees were thus required to save documents that related "in any way" and that the litigation hold "is broad." (*Id.*, 707:16-23.) Some of the subject matters provided that Ethicon employees preserve "discovery, research, and development or proposed completed or ongoing studies, investigations, assessments, or clinical evaluations, design, development and testing, fact books, product history, budget analysis," (*id.*, 711:11-16), and Mr. Mittenthal agreed that all of those documents would "relate to the design of the TVT." (*Id.*, 712:3-5.) Thus, while the litigation hold was instituted because of the 2003 case, it required Ethicon employees to preserve documents concerning Plaintiffs' claims about the mesh. The broad litigation hold notice is attached hereto as Exhibit 5.

that no documents were destroyed, no information was lost, that would relate to design defect claims"; 711-713), and has never been withdrawn and is still in place (*id.*, 712:16-715:25 ("I saw no evidence that it had been withdrawn"). Further, Mr. Mittenthal testified that, although the *law department* would have known that the litigation had concluded, the preservation notice was still in full force and effect (*id.* 714:1-17) and the members of the distribution list, and whoever else the litigation hold would have been "applicable to" would have continued to understand that there was "still a need to preserve and not destroy documents or information covered by [the 2003] notice relating to TVT in case there would be future litigation." (*Id.* 716:1-22.) Mr. Mittenthal also testified that litigation holds initiated in 2006 and 2007 were also *still* in full force and effect, and had not been withdrawn. (*Id.* 716:25-720:18.) And, further, the 2011 litigation hold notice served as a reminder to continue to maintain those litigation holds, unequivocally confirming that the prior hold notices created obligations and duties that continue to the present. (*id.,* 720:20-723:18).

Additionally, after the ruling on PTO 100, Ethicon identified three pre-2008 mesh cases which also triggered litigation holds that it *did not* disclose to the Court or to Plaintiffs' Counsel during briefing on Plaintiffs' motion. (Exhibit 2.) Although Ethicon assumes that the existence of these cases would not change Magistrate Judge Eifert's conclusions, the fact remains that Ethicon failed to disclose all mesh-related litigation holds to the Court, waiting to disclose this information until now. These mesh cases are absolutely relevant to the determination of when Ethicon's duty to arose began. In fact, all three cases, triggering multiple litigation holds from 2001-2005, involve the *pelvic implant* of an Ethicon mesh product. Ethicon's classification of these products as a "hernia mesh" is irrelevant. As Ethicon correctly admits, other mesh litigation, though not necessarily TVT litigation, may put the company on notice that they need

5

to be preserving mesh-related information. (Exhibit 4, Aug. 13, 2013 Mittenthal Dep. 100:3-9.) Certainly, Ethicon appears to have been engaged in litigation involving its mesh products as early as 2001.

Additional details learned from Mr. Mittenthal's most recent deposition also demonstrate that the consequences of Ethicon's failure to implement its document preservation policies and litigation holds (and destroying or failing to preserve documents regardless of whether a hold was in place) are evident and wide-reaching. Tens of thousands of documents were lost or destroyed (Exhibit 3 at 734:13-25). The new testimony settles that there is no doubt that documents and data relevant to Plaintiffs' design defect claims were destroyed (*id.* 740:20-741:4), and one is unable to tell whether all lab notebooks from individuals who studied the mesh, which would have been relevant to Plaintiffs' design defect claims, were preserved or produced (*id.* 749:8-750:3). Indeed, while Mr. Mittenthal's prior testimony was somewhat murky as to whether relevant documents related to Plaintiffs' claims that should have been preserved pursuant to the 2003 litigation hold were destroyed, his current deposition testimony makes clear: documents were relevant to Plaintiffs' claims, and they were destroyed.

### C. In the Alternative, PTO 100 Must be Modified or Set Aside to the Extent that It Rests on Clearly Erroneous Findings of Fact or is Contrary to Law.

A district court considering timely objections to a magistrate judge's pretrial order must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A factual finding is clearly erroneous when, "although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Prods. v. Constr.Laborers Pension Trust*, 508

U.S. 602, 622 (1993).[2] For questions of law, however, "there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and [a] de novo standard." *HSBC Bank USA, N.A. v. Resh*, No. 3:12-cv-00668, 2014 U.S. Dist. LEXIS 10176, *20 (S.D. W. Va. Jan. 28, 2014) (quoting *Powershare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010)). In order to preserve the issues for appeal, Plaintiffs object to Magistrate Judge Eifert's conclusions in PTO 100, including her conclusion that Plaintiffs suffered no prejudice as a result of Ethicon's spoliation and, most importantly, the date on which Ethicon's duty to preserve arose.[3]

In her ruling, Judge Eifert noted that certain facts were undisputed between the parties, namely: that the 2003 preservation notice "advised employees to preserve the materials until 'contrary written notice [wa]s received from the J&J Law Department,'" and that the J&J Law Department never withdrew the document preservation notice. (PTO 100 at 3.) Further, Mr. Mittenthal's new testimony. (Exhibit 3, at 722-723 (admitting that the 2003 and 2006 notices should have been included in a February 18, 2011 list of hold notices that created continuing obligations to preserve documents regarding the TVT), 714:1-17 (the Law Department did not disseminate that a litigation hold should no longer be in place).) And while that 2003 litigation hold was in place, and after the ruling on PTO 100, Ethicon also identified the three pre-2008 mesh cases that triggered other litigation holds it did not disclose. (Exhibit 2, *infra* Section B.)

A "duty to preserve arises when a party has notice that the evidence is relevant to litigation or. . . should [ ] know[ ] that the evidence may be relevant to future litigation."

---

[2] At least one district court in the Fourth Circuit has held that a district judge can hear new evidence when reviewing a non-dispositive motion. *See United States v. Caro*, 461 F. Supp. 2d 478, 480 n.2 (W.D. Va. 2006) *aff'd*, 597 F.3d 608 (4th Cir. 2010); *HSBC Bank USA, N.A. v. Resh*, 2014 U.S. Dist. LEXIS 10176, *14 (S.D. W. Va. Jan. 28, 2014).

[3] While Plaintiffs object to the entirety of PTO 100 in order to preserve the issue for appeal, they also specifically object to the Order to the extent it does not allow Plaintiffs the right to present evidence of spoliation in every case and seek an adverse inference in every case.

*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (quotation marks omitted); *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010). *See also Zubulake v. UBS Warburg, LLC*, 220 F.R.D 212 (S.D.N.Y. 2003) ("*Zubulake I*" (duty arises when party "reasonably anticipates" litigation). Ethicon, itself, acknowledges that the duty to preserve arose as soon as Ethicon *reasonably anticipated litigation* and included all relevant documents in existence at that time, as well as relevant documents created thereafter. *Trevino v. Ortego*, 969 S.W.2d 950, 956 (Tex. 1998).

Whether or not a duty existed in 2003 is question of law, which the District Court may review *de novo*. *See, e.g., Nails v. Community Realty Co.*, No. 97-1716, 1998 U.S. App. LEXIS 31576, *5 (4th Cir. Dec. 17, 1998) ("whether a landlord has a duty to protect tenants is a legal question, which we review de novo."); *Westfarm Assocs. Ltd. Pshp. v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669 (4th Cir. 1995) ("A trial court's finding of a duty of reasonable care is a legal question reviewed de novo."). Ethicon acknowledged that a preservation notice was issued in 2003 relating to a broad category of documents concerning the design of the mesh—documents which are central to the claims in Plaintiffs' cases. That litigation hold was never removed, and remains in place *to this day*. These facts are undisputed. The question of whether these facts created a duty to preserve these documents should be reviewed by this Court *de novo*, and the Court should find that, because Ethicon anticipated litigation regarding Plaintiffs' claims as early as 2003 (and even earlier), it thus had a duty to preserve these documents.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' request for clarification and reconsideration should be granted, or, in the alternative, this Court should modify or set aside PTO 100 and find that Ethicon had a duty to preserve documents since at least 2003.

Dated: February 18, 2014                    Respectfully submitted,


/s/ D. Renee Baggett
D. RENEE BAGGETT
BRYAN F. AYLSTOCK
Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, Florida 32563
P: 850-202-1010
F: 850-916-7449
rbaggett@awkolaw.com
baylstock@awkolaw.com


/s/ Thomas P. Cartmell
THOMAS P. CARTMELL
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, Missouri 64112
P: 816-701-1102
F: 816-531-2372
tcartmell@wcllp.com

*Plaintiffs' Co-Lead Counsel*

/s/ Edward A. Wallace
EDWARD A. WALLACE
MARK R. MILLER
AMY E. KELLER
DAWN M. GOULET
COREY G. RAINES
Wexler Wallace LLP
55 West Monroe Street, Ste. 3300
Chicago, Illinois 60603
P: 312-346-2222
F: 312-346-0022
eaw@wexlerwallace.com
mrm@wexlerwallace.com
aek@wexlerwallace.com
dmg@wexlerwallace.com
cgr@wexlerwallace.com

*Plaintiffs' Steering Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing brief on February 18, 2014, using the Court's CM-ECF filing system, thereby sending notice of the filing to all counsel of record for this matter.

/s/ Edward A. Wallace
Edward A. Wallace