UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE: ETHICON, INC., PELVIC REPAIR
SYSTEM PRODUCTS LIABILITY
LITIGATION

Civil Action No. 2:12-md-02327
MDL No. 2327

Honorable Joseph R. Goodwin
United States District Court Judge

THIS DOCUMENT APPLIES TO ALL CASES

DANIEL J. CHRISTENSEN AND MEDSTAR FUNDING, LC'S
MOTION TO QUASH OR MODIFY SUBPOENAS ISSUED BY ETHICON, INC.

Daniel J. Christensen and MedStar Funding, LC (collectively, "**MedStar**"), by counsel, and pursuant to Rule 45 of the Federal Rules of Civil Procedure, request that this Court quash or modify the *Subpoena[s] to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action* issued to Physician Surgical Group, LLC, Doc. No. 1084, February 12, 2014 and Physician Surgical Group of Boca Raton, LLC,[1] Doc. No. 1085, February 12, 2014 (the "**PSG Subpoenas**,") insofar as they require PSG to produce unredacted documents reflecting (a) the amounts MedStar paid to medical services providers for receivables and (b) amounts actually paid to MedStar for such receivables when paid or sold (hereinafter, the "**Proprietary Information**"). MedStar does not dispute the right of the Defendants, Ethicon, Inc. and Johnson & Johnson (collectively, "**Ethicon**"), to know the amount claimed by the plaintiffs in this MDL for medical care and procedures. As this Court has already observed on multiple occasions, however, MedStar's Proprietary Information does not contain that

---

[1] Physician Surgical Group, LLC, and Physician Surgical Group of Boca Raton, LLC, will be collectively referred to as "**PSG**."

information and therefore is not relevant to the issues in this litigation. Moreover, as shown below, it is clearly protected under the plain language of Rule 45 of the Federal Rules of Civil Procedure. In further support of their Motion, MedStar states as follows:

## I.    FACTUAL BACKGROUND

1. On August 30, 2013, American Medical Systems, Inc. ("**AMS**"), defendant in MDL 2325, issued a subpoena to MedStar requesting a number of documents. This Court heard MedStar's motion to quash the same on October 10, 2013. At that time, counsel for MedStar explained the competitive harm to MedStar through the disclosure of the actual price is pays for receivables (either as a dollar amount or as a percentage of the face amount of the receivable) and the actual price to MedStar upon disposition of a receivable. The difference between these figures is the gross profit realized by MedStar, and its disclosure to either buyer or seller would place MedStar in a serious disadvantage in a very competitive marketplace. MedStar therefore requested permission to redact such information, which AMS's counsel did not oppose. (*See* Transcript of October 10, 2013 Hearing at 27, excerpt attached hereto as "**Exhibit A**").

2. In ruling on MedStar's motion and addressing MedStar's concerns regarding the Proprietary Information, the Court ordered AMS and MedStar "to meet and confer on the terms and conditions of a protective order that will govern the use and disclosure of MedStar's documents." *Pretrial Order # 88*, 2:12-md-02325, Doc. No. 916, October 11, 2013 ("**PTO 88**"). (*See generally* PTO 88, attached hereto as "**Exhibit B**"). The resulting protective order is *Pretrial Order # 90*, 2:12-md-02325, Doc. No. 939, October 25, 2013 ("**PTO 90**"). PTO 90 provided that "MedStar may redact or designate as '**HIGHLY CONFIDENTIAL**' specific pricing information and formulas, if MedStar believes in good faith that such would, if disclosed,

cause substantial economic harm to its competitive position." (PTO 90, attached hereto as "**Exhibit C**," ¶ 3).

3. On January 7, 2014, Ethicon stipulated to a nearly identical Order: *Pretrial Order # 92*, Doc. No. 1006, January 7, 2014 ("PTO 92"). PTO 92 contains the <u>exact</u> same language quoted above. (*See* PTO 92, attached hereto as "**Exhibit D**," ¶ 3).

4. In all of these related MDL proceedings, MedStar has redacted the Proprietary Information and designated the affected documents as "**HIGHLY CONFIDENTIAL**." Although the protective orders contain procedures for challenging such designations, no manufacturer who has received the redacted documents has lodged such a challenge to any of MedStar's redactions.

5. On February 12, 2014, this Court held another hearing on an unrelated matter, in which counsel for AMS and C. R. Bard ("**Bard**"), participated. Although no motion was before the Court, Bard's counsel objected to the appropriateness of redacting the Proprietary Information.[2] Although no rulings were made, the Court again clearly expressed the view that, while the manufacturer defendants were entitled to know the numbers actually being claimed by the Plaintiffs, the Proprietary Information was protected and irrelevant.

6. Also on February 12, 2014, shortly after the hearing and the exchange of emails between counsel, Ethicon issued the PSG Subpoenas. Document Request No. 4 of the PSG Subpoenas seeks all "documents, including agreements, contracts, and/or communications, relating to MedStar Funding and any of its subsidiaries, principals, employees, representatives,

---

[2] This very issue was also addressed amongst counsel immediately prior to the February 12, 2014 hearing. (*See* emails between James S. Crockett, Jr., Adrienne Hernandez and Laura Dixon, et al., attached hereto as "**Exhibit E**.") As demonstrated by this email, the MDL defendants "had a **collective question** on MedStar's document production and position regarding rates." (*Id.*, emphasis added) In turn, it stands to reason that after Bard's counsel attempted to raise the same collective question on the call with the Court, she shared the Court's reaction to that effort with the rest of the collective. Thus, Ethicon surely was aware of this Court's statements regarding MedStar's Proprietary Information when it filed the PSG Subpoenas.

3

or agents, including, but not limited to, Dan Christensen, Lisa Christensen, Denise Roman, or Maria Reyes." (*See* Doc. No. 1084, p. 13, Doc. No. 1085, p. 12). Ethicon's definition of "documents" includes "checks, charts, ledgers, checkbooks, canceled checks, check stubs, cash receipts, check registers, bank statements, invoices, journals and other business, financial or budget records." (*See* Doc. No. 1084, p. 7, Doc. No. 1085, p. 7). Unless limited by this Court, the PSG Subpoenas cover the Proprietary Information.

7. MedStar has attempted to resolve this dispute without involving the Court, but that effort was unsuccessful.

## II. ARGUMENT

8. Rule 45 of the Federal Rules of Civil Procedure provides that on "timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)–(A)(iii). Additionally, to "protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)–(B)(i).

9. As this Court noted in PTO 88 in the AMS MDL, protectable proprietary information

> provides the business entity with a financial or competitive advantage when it is kept secret and results in financial or competitive harm when it is released to the public. *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D.Cal. 2006); *see also Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 697 (D.Nev. 1994) ("Confidential commercial information" is "information, which disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."). Examples of confidential commercial information entitled to protection under Rule 26(c) include

4

>customer lists and revenue information, *Nutratech, Inc., v. Syntech Intern, Inc.*, 242 F.R.D. 552, 555 (N.D.Cal. 2007); product design and development and marketing strategy, *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 305 (D.Ill. 1994); labor costs, *Miles v. Boeing*, 154 F.R.D. 112, 114 (E.D.Pa. 1994); and commercial financial information, *Vollert v. Summa Corp.*, 389 F.Supp 1348, 1352 (D.Hawaii 1975). Moreover, "[p]ricing and marketing information are widely held to be confidential business information that may be subject to a protective order." *Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 57 (D.Conn. 2004) (citing *Vesta Corset Co. v. Carmen Foundations, Inc.*, 1999 WL 13257, at *2 (S.D.N.Y. 1999)).

PTO 88 at 7–8.

10. MedStar is in the business of purchasing accounts receivable at a reduced rate, with the intent of being paid a larger amount at a later date. This difference is the profit margin for MedStar as a business, and is the very core of its sustainability. It is precisely the "revenue information" and "pricing information" referenced in the foregoing excerpt from PTO 88 that "would cause substantial economic harm to the competitive position of" MedStar. Other courts have found that when a "subpoena demands information about . . . revenues and profits, pricing structure . . . and other proprietary information," it may be properly quashed or modified. *American Soc. of Media Photographers, Inc. v. Google, Inc.*, 2013 WL 1883204, at * 5 (N.D. Ill. May 6, 2013) (quashing a subpoena seeking information on a non-party's business model, profits, pricing guides and other confidential information because it was irrelevant to the claims presented and could properly be considered unduly burdensome); *see also Renaissance Nutrition, Inc. v. Jarrett*, 747 F. Supp. 2d 374, 381 (W.D.N.Y. 2010) (noting that documents which "reveal pricing or margins . . . may be trade secrets or proprietary information and therefore, may be redacted."); *Nutratech, Inc. v. Syntech Intern., Inc.*, 242 F.R.D. 552 (C.D. Cal. 2007) (customer and supplier list and sales and revenue information qualifies as confidential commercial information.); *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297 (N.D. Ill.

5

1993) (recognizing that formulae and marketing strategy are entitled to protection). Therefore, this Court should grant MedStar's Motion to Quash or Modify the PSG Subpoenas so that it might properly protect its Proprietary Information.

## IV. CONCLUSION

Based on the foregoing, MedStar respectfully requests that this Court grant its Motion to Quash or Modify the PSG Subpoenas and order the redaction of any Proprietary Information before documents are produced to Ethicon.

Dated: February 26, 2014                            Respectfully Submitted,


                                                  s/ James S. Crockett, Jr.
Alexander Macia (WV State Bar No. 6077)
James S. Crockett, Jr. (WV State Bar No. 9229)
David A. Bosak (WV State Bar No. 11947)
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard East
Charleston, West Virginia 25301
Phone: 304.340.3800
Fax: 304.340.3801

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Civil Action No. 2:12-md-02327<br>MDL No. 2327<br><br>Honorable Joseph R. Goodwin<br>United States District Court Judge |

THIS DOCUMENT APPLIES TO ALL CASES

## CERTIFICATE OF SERVICE

I, James S. Crockett, Jr., do hereby certify that on February 26, 2014, I electronically filed the foregoing "**Daniel J. Christensen and MedStar Funding, LC's Motion to Quash or Modify Subpoenas Issued by Ethicon, Inc.**" with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the CM/ECF participants registered to receive service in these MDLs.

/s/ James S. Crockett, Jr.
James S. Crockett, Jr. (WV State Bar No. 9229)