UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

------------------------------------------------------------x
IN RE ETHICON, INC., PELVIC REPAIR : CIVIL ACTION NO. 2:12-md-02327
SYSTEM PRODUCTS LIABILITY :
LITIGATION : MDL No. 2327
------------------------------------------------------------ :
: Magistrate Judge Cheryl A. Eifert
This Document Applies To All Actions :
 :
------------------------------------------------------------x

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR CLARIFICATION AND RECONSIDERATION OR, IN THE ALTERNATIVE, THEIR OBJECTION TO MAGISTRATE JUDGE EIFERT'S PRETRIAL ORDER #100 GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR A FINDING OF SPOLIATION AND FOR SANCTIONS**

Plaintiffs ask the Court to reconsider the portion of its spoliation ruling holding that Ethicon's duty to preserve evidence relating to the TVT and Prolift devices did not arise until 2007 and 2008, respectively.[1] *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2014 U.S. Dist. LEXIS 14076, at *2452-53 (S.D. W. Va. Feb. 4, 2014). But plaintiffs are unable to point to any "new" evidence relevant to the applicable date of Ethicon's duty to retain materials that would warrant reconsideration. Ethicon's counsel's recent discovery and immediate disclosure that the Company issued litigation holds in three additional mesh cases

---

[1] Plaintiffs' motion also makes two requests that are directed to Judge Goodwin: (1) they seek clarification as to whether he has adopted April 30, 2007 (for TVT) and April 21, 2008 (for Prolift) as the earliest dates on which "Ethicon's duty to preserve arose" with respect to all MDL cases (Mot. at 1-2); and (2) they ask that Judge Goodwin "modify or set aside" the spoliation ruling pursuant to Fed. R. Civ. P. 72(a) in the event that this Court does not reconsider its finding regarding the date on which that duty arose (*id.* at 6). Ethicon believes that it is clear from Judge Goodwin's prior statements that he has adopted the spoliation order in full, and with respect to all MDL cases. Ethicon further believes that there is no basis for Judge Goodwin to modify the order pursuant to Rule 72(a). Because both the request for clarification and the Rule 72(a) motion are specifically directed to Judge Goodwin, Ethicon does not address them at this point. Ethicon will respond to these requests at such time as Judge Goodwin indicates that he will be hearing argument on these issues.

between 2001 and 2005 has no bearing on the Company's duty to preserve evidence with respect to this MDL proceeding because two of the cases involved hernia mesh products and the third did not involve claims against Ethicon or product-liability allegations like those at issue in this MDL proceeding. And while plaintiffs cite the recent trial deposition testimony of James Mittenthal in support of their current motion, Mr. Mittenthal's latest round of testimony did not reveal any "new" information. Rather, Mr. Mittenthal merely reiterated what he has said previously about Ethicon's document retention practices and legal hold notices, all of which was considered and addressed by the Court in its spoliation ruling.

## ARGUMENT

As Judge Goodwin has recently explained, and plaintiffs note in their motion, the "Fourth Circuit has recognized three grounds for amending" a non-dispositive interlocutory order: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Lewis v. Ethicon, Inc. (In re Ethicon, Inc.)*, MDL No. 2327, 2014 U.S. Dist. LEXIS 14076, at *2555 (S.D. W. Va. Feb. 3, 2014) (internal quotation marks and citation omitted). Plaintiffs argue that reconsideration is proper here "in light of new evidence bearing on when Ethicon's duty to preserve evidence first arose." (Mot. at 3.) This argument should be rejected.

In its spoliation ruling, the Court recognized that a party seeking spoliation sanctions must prove that the alleged spoliator had an "obligation to preserve [the evidence at issue] when it was destroyed or altered." 2014 U.S. Dist. LEXIS 14076, at *2402 (internal quotation marks and citations omitted). As the Court correctly noted, an obligation to preserve materials does not arise until "'litigation is reasonably anticipated.'" *Id*. at *2419 (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 521 (D. Md. 2010)). The Court concluded in its order that

2

"Ethicon should reasonably have anticipated large-scale future litigation over its pelvic mesh products in 2009" and that "Ethicon's earliest duty to preserve evidence for use in this MDL regarding the TVT device arose on April 30, 2007, and regarding the Prolift device arose on April 21, 2008," dates on which litigation hold notices had been entered with respect to those products. *Id.* at *2422. Notably, in selecting these dates, the Court expressly rejected plaintiffs' argument that Ethicon's duty arose in 2003, when Ethicon issued a litigation hold in a TVT case that was later dismissed in 2004. *Id*. at *2419. According to the Court, "an isolated lawsuit, or even two, would not reasonably lead Ethicon to believe that large scale nationwide products liability litigation was down the road." *Id*. at *2419-20. Thus, "Ethicon [did not] ha[ve] any reason in 2003 to anticipate additional litigation relating to its transvaginal mesh products." *Id*. at *2419. The Court reached this conclusion despite expressly noting that the 2003 litigation hold notice had never been withdrawn by Ethicon's legal department and therefore is technically still in effect. *Id*.

Plaintiffs offer no new evidence that supports reconsideration of the Court's conclusions.

*First*, the recent discovery that Ethicon issued litigation holds with respect to three additional cases involving mesh products between 2001 and 2005 is insufficient to warrant reconsideration because two of the cases involved hernia mesh products used in a pelvic application, *not TVT or Prolift products* – and the third *was not brought against Ethicon and did not involve product-liability claims*.[2]

As to the first two cases, both involved products that are primarily used for hernias and

---

[2] Plaintiffs' claim that Ethicon "wait[ed] to disclose [these cases] until now" (Mot. at 5) is incorrect. As stated in Ethicon's February 17, 2014 correspondence to the Court, "significant efforts were taken by the Company and the defense team to identify all legal holds that would be pertinent to [the Court's] analysis prior to the filing of Ethicon's opposition to plaintiffs' [spoliation] motion. However, the foregoing holds were not identified in connection with those efforts."

therefore could not reasonably have caused Ethicon to anticipate large-scale future litigation over its ***pelvic mesh*** products.[3] In fact, one of the cases dealt with Mersilene Mesh, which is not even made of the same material as the pelvic mesh products at issue in this proceeding. Notably, plaintiffs were aware of a 2002 legal hold pertaining to another Mersilene Mesh case at the time their spoliation motion was briefed but did not argue that it gave rise to a duty to preserve evidence.

The third case referenced by plaintiffs is a TVT action filed in Australia that involved medical malpractice claims based on the allegation that the plaintiff's doctor left behind a portion of the plastic sheath cover that should have been removed from the tape during surgery.[4] A legal hold was issued for that action in May 2001. Given the facts of the case, however, it could not have caused Ethicon to reasonably anticipate large-scale product-liability litigation with respect to its TVT products, even when viewed in the context of the other pre-2007 TVT cases. For one thing, there were no product-liability claims alleged in the Australia complaint. Moreover, ***neither Ethicon nor Johnson & Johnson was named as a party*** to the lawsuit, and the matter was resolved between the doctor and the patient in or about April of 2002.

As set forth above, the Court has previously recognized that Ethicon's duty to preserve evidence arose when it was "reasonable for Ethicon to anticipate a future of ongoing litigation that would culminate in the MDL" – not when litigation holds were entered in a few "isolated"

---

[3] These cases, *Marie Hartey v. Johnson & Johnson, Inc. and Ethicon, Inc.*, No. 003087 (Pa. Court of Common Pleas, filed on or about September 28, 2004), and *Floyd Neely v. Johnson & Johnson, Inc., Ethicon, Inc. et al.*, No. Su-03-cv-2340-SW (Ga. Superior Ct., filed on or about December 3, 2003), are addressed in more depth in Ethicon's February 17, 2014 correspondence with the Court. (*See* Ex. 2 to Pls.' Mot.)

[4] This case, *Keli Francesca Sponner v. Dr. Jilliam Woinarksi* (County Court of Victoria at Melbourne, Feb. 1, 2001), is also addressed in more detail in Ethicon's prior correspondence with the Court. (*See* Ex. 2 to Pls.' Mot.)

4

cases involving TVT and Prolift in state courts. 2014 U.S. Dist. LEXIS 14076, at *2419-20. The fact that litigation holds were also issued with respect to a few cases that involved products other than TVT/Prolift or did not include claims against Ethicon should not affect the Court's reasoning. Because the claims at issue in these actions were very different from those currently pending before this Court, they could not have alerted Ethicon to the fact that it had a "widespread duty to preserve evidence for use in [this] MDL" proceeding. *Id*. at *2408.[5]

*Second*, Mr. Mittenthal's trial deposition does not provide any new information regarding the date on which Ethicon's duty to preserve arose. Prior to his recent trial deposition, Mr. Mittenthal had been deposed for approximately 25 hours with respect to plaintiffs' spoliation allegations on three separate occasions. When the Court permitted plaintiffs to take the trial deposition of Mr. Mittenthal last month, it made clear that this deposition was merely an "opportunity for [plaintiffs to] reformat [Mr. Mittenthal's prior] testimony in a way that makes it easier for the jury to understand, but not to actually go plow new ground" or "ask questions [they] did not ask the first time." (Feb. 6, 2014 Telephonic Hr'g Tr. 21:5-10 (attached as Ex. 2).) Consistent with that limitation, plaintiffs questioned Mr. Mittenthal on the same subjects explored at his previous depositions, including: Ethicon's document retention policies and practices, its legal hold notices, and the reasons why documents were lost when certain employees left the Company. Plaintiffs claim that Mr. Mittenthal provided *new* answers at his trial deposition that he had never given before, including statements "that the 2003 litigation hold

---

[5] A copy of the legal holds for the three cases discussed above is attached as Exhibit 1. Defendants note that the legal hold issued in the *Sponner* case incorrectly states that "Gynecare" (a division of Ethicon) was a party. In addition, as noted in Ethicon's February 17, 2014 letter to the Court, there is a 2003 TVT case, *Mary Stowers v. Johnson & Johnson*, for which a legal hold was not issued. (*See* Ex. 2 to Pls.' Mot.) Ethicon has also recently identified, in connection with its New Jersey discovery responses, a 1996 case involving the pelvic use of Mersilene Mesh in connection with a hysterectomy, in which no legal hold was issued. *See Pennella v. Ethicon, Inc*., No. 236-162296-95, filed in the District Court of Tarrant County, Texas, 236th Judicial District in or about December 1995.

put into place was 'broad,'" related "to the design of the mesh" and "has never been withdrawn." (Mot. at 4-5.) Plaintiffs also argue that Mr. Mittenthal made new statements regarding the scope and impact of the documents lost. (*Id*. at 6.) But all of this information that plaintiffs contend is "new" was already before the Court when it issued its spoliation ruling.

In his prior discovery depositions, Mr. Mittenthal was questioned at length about the 2003 litigation hold and provided all of the same basic information that was given at his trial deposition. (*See, e.g.*, 8/13/13 Mittenthal Dep. 88:14-100:11 (attached as Ex. 3).) For example, Mr. Mittenthal testified at his August 2013 deposition that the 2003 litigation hold notice instructed employees to retain a wide variety of materials related to the manufacture and design of TVT products, including "pharmacovigilance" information, "communications with regulatory authorities," "research and development material" and "manufacturing" materials, including "lot and batch records, quality assurance and manufacturing controls and product complaints." (*Id*. 93:5-96:6.) Further, Mr. Mittenthal expressly stated at his August 2013 deposition that the 2003 litigation hold was never officially lifted by the Company and "continue[s] to be in effect." (*Id*. 197:14-15; *see also* 9/25/13 Mittenthal Dep. 476:10-12 (attached as Ex. 4) ("I have inquired about notices. I have no specific information that any notice has been lifted.").) Based on this testimony, plaintiffs argued in their spoliation briefing that Mr. Mittenthal had admitted that "no litigation holds have been removed from 2002 to the present, and that the holds continue to be in effect." (Pls.' Reply in Supp. of Mot. for Finding of Spoliation & for Sanctions at 6-7, Dkt. No. 1041 (Jan. 21, 2014).) Moreover, the Court's spoliation order expressly notes that plaintiffs' argument that Ethicon's duty to preserve documents arose in 2003 is based on "a broad litigation hold notice that instructed employees to retain every document pertaining to TVT" and "the testimony of James Mittenthal, its 30(b)(6) representative, that the 2003 litigation hold notice

6

continues to be in effect to this day." 2014 U.S. Dist. LEXIS 14076, at *2406. In short, there is no question that all of the purportedly "new" testimony provided by Mr. Mittenthal at his trial deposition was already in the record at the time the Court issued its ruling.

Finally, although plaintiffs' motion seeks reconsideration only as to when Ethicon's duty to preserve evidence arose with respect to TVT and Prolift products (*see* Mot. at 2, 3), they also argue that Mr. Mittenthal's recent deposition provided new information regarding the "consequences of Ethicon's" failure to preserve documents (*id*. at 6). Specifically, plaintiffs argue that Mr. Mittenthal admitted for the first time at his trial deposition that "[t]ens of thousands of documents were lost or destroyed." (*Id*.) But this Court expressly noted in its spoliation order that plaintiffs were claiming that "tens of thousands" of documents were lost, *see* 2014 U.S. Dist. LEXIS 14076, at *2387, and Ethicon never disputed this number. In fact, Mr. Mittenthal stated in his declaration, submitted with Ethicon's opposition to plaintiffs' spoliation motion, that Ethicon had produced tens of thousands of emails to or from the employees plaintiffs identified as having few or no documents in their custodial files from other sources, conceding that those documents had been lost from the custodial files at issue. (*See* Decl. of James P. Mittenthal ¶ 70 (attached to Defs.' Opp'n to Pls.' Mot. for Finding of Spoliation & for Sanctions as Ex. 2, Dkt. No. 1022 (Jan. 10, 2014).) Further, plaintiffs' argument that Mr. Mittenthal testified for the first time at his trial deposition that he is "unable to tell whether all lab notebooks from individuals who studied the mesh" were produced to plaintiffs (Mot. at 6) is misleading. As plaintiffs are well aware, Mr. Mittenthal was not asked to investigate the production of these materials because there is no reason to believe that lab

notebooks were destroyed.[6] Thus, he could not possibly have said for certain whether all lab notebooks related to mesh have been turned over to plaintiffs.

In short, there is nothing "new" in Mr. Mittenthal's trial deposition testimony that supports reconsideration of this Court's spoliation ruling.

## CONCLUSION

For the foregoing reasons, plaintiffs' request for reconsideration of the Court's spoliation ruling should be denied.

Dated: March 5, 2014                                    Respectfully submitted,

ETHICON, INC. AND
JOHNSON & JOHNSON


*/s/ David B. Thomas*
David B. Thomas (W. Va. Bar No. 3731)
Thomas Combs & Spann, PLLC
300 Summers Street, Suite 1380
P.O. Box 3824
Charleston, WV  25338-3824
(304) 414-1800

*/s/ Christy D. Jones*
Christy D. Jones
Butler Snow, LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS  39158-6010
(601) 985-4523

---

[6] Ethicon has identified, collected and reviewed hundreds of notebooks and has been producing responsive pages. To date, only a few notebooks have not been located, and there is no evidence that they have been destroyed.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

```
-------------------------------------------------------------x
IN RE ETHICON, INC., PELVIC REPAIR        :   CIVIL ACTION NO. 2:12-md-02327
SYSTEM PRODUCTS LIABILITY                 :
LITIGATION                                :   MDL No. 2327
------------------------------------------------   :
                                          :   Magistrate Judge Cheryl A. Eifert
This Document Applies To All Actions      :
                                          :
-------------------------------------------------------------x
```

**CERTIFICATE OF SERVICE**

I, David B. Thomas, certify that on March 5, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

> */s/ David B. Thomas*
> David B. Thomas (W. Va. Bar No. 3731)
> Thomas Combs & Spann, PLLC
> 300 Summers Street, Suite 1380
> P.O. Box 3824
> Charleston, WV  25338-3824
> (304) 414-1800
> dthomas@tcspllc.com

9