# EXHIBIT 4

Confidential - Subject to Protective Order

Page 280

```
 1            IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                   CHARLESTON DIVISION
                         -  -  -
 3
     IN RE:  ETHICON, INC.       :  MDL NO. 2327
 4   PELVIC REPAIR SYSTEM        :
     PRODUCTS LIABILITY          :
 5   LITIGATION                  :
                                 -  -  -
 6                               : SUPERIOR COURT OF
                                 : NEW JERSEY
 7   IN RE:                      : LAW DIVISION -
     PELVIC MESH/GYNECARE        : ATLANTIC COUNTY
 8   LITIGATION                  :
                                 : MASTER CASE 6341-10
 9                               : CASE NO. 291 CT
                         -  -  -
10        AND VARIOUS OTHER CROSS-NOTICED ACTIONS
11                       -    -    -
12            Wednesday, September 25, 2013
13                      VOLUME II
14                       -    -    -
15      CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
16                       -    -    -
17
18     CONTINUED VIDEOTAPED 30(B)(6) DEPOSITION OF
                   JAMES P. MITTENTHAL
19
20
21
22            GOLKOW TECHNOLOGIES, INC.
         877.370.3377 ph | 917.591.5672 fax
23               deps@golkow.com
24
25
```

Confidential - Subject to Protective Order

Page 473

1  RP -- I'm sorry -- RM that records were not being
2  duplicated for the Ethicon Sarl facility?  That's
3  S-A-R-L.
4      A      That arose from that symptom, although
5  I believe the CAPA was broader in the scope of what
6  it addressed.
7      Q      And would you disagree with that CAPA
8  if it said that the records archive supplier process
9  was inadequate to ensure safeguarding of paper
10 records?
11     A      Well, I don't think that I have
12 conducted an independent investigation or have
13 reason to agree or disagree with that statement.  I
14 have general knowledge that there was a fire that
15 resulted in the loss of some paper batch records and
16 some paper NCRs, which were in the case of the NCRs
17 later recreated.
18     Q      Your counsel's looking carefully at
19 this stack of documents to see whether or not I'm
20 going to use it.
21        MR. BERNARDO:  Actually he's looking
22 at his watch in relation to those documents.
23        MR. WALLACE:  I just want to make
24 sure.
25        Do you want to talk about hold notices

Page 474

1  some more?  No?  Okay.  It's all Mr. Grand's for
2  now.
3        (Plaintiff's Exhibit No. 1424 was
4  marked for identification.)
5  BY MR. GRAND:
6      Q      Good afternoon, Mr. Mittenthal.  It's
7  nice to see you again.
8      A      Good afternoon.
9      Q      I am now going to be asking questions
10 on behalf of the New Jersey plaintiffs.  The same
11 rules apply with respect to if you need a break,
12 please let me know.  If anything I ask is unclear,
13 I'll do my best to rephrase it.  Just let me know.
14 Okay?
15     A      Okay.
16     Q      A few minutes ago I marked the binder
17 we've been referring to this morning as -- also as
18 Plaintiff's Exhibit 1424.  And I would ask you to
19 turn to Tab 2 of that binder and open up to the
20 first document in there, which is I believe
21 Bates-stamped Mittenthal 1273.
22     A      Yes, I see it.
23     Q      And you're familiar with that list;
24 correct?
25     A      Yes, I am.

Page 475

1      Q      And we've -- you've previously been
2  asked questions about this; correct?
3      A      Yes.
4      Q      I just want to sort of make sure some
5  things are clean in my record.  Is it fair to say
6  looking at this list of hold notices that the first
7  TVT hold notice was issued on May 22nd, 2003?  Is
8  that correct?
9        MR. BERNARDO:  Object to the form of
10 the question.
11       THE WITNESS:  The first TVT notice
12 that I'm aware of that has a relationship to the
13 subject matter of TVT.
14 BY MR. GRAND:
15     Q      Okay.  And you don't have any reason
16 to believe that that hold notice was ever rescinded;
17 correct?
18     A      I have requested as to whether that
19 notice has been rescinded.  I do not have
20 information that that notice was rescinded.
21     Q      Okay.  And while there was subsequent
22 TVT hold notices circulated or issued, it's fair to
23 say that the 5/22/2003 hold notice was still in
24 effect; correct?
25     A      As I mentioned, I have not seen any

Page 476

1  material to indicate that it has been rescinded.
2      Q      And with respect to the Prolift
3  product, looking at the list, would it be correct to
4  say that the first Prolift hold notice was issued on
5  April 21st, 2008?
6      A      It would appear so.
7      Q      And you don't have any understanding
8  that that has been lifted at this point or recalled;
9  correct?
10     A      As I mentioned, I have inquired about
11 notices.  I have no specific information that any
12 notice has been lifted.
13     Q      Now, with respect to the litigation
14 holds, is it your understanding that they were
15 distributed by e-mail?
16     A      Generally, yes.
17     Q      Okay.  And if I recall your testimony
18 earlier -- and please correct me if I'm summarizing
19 it inaccurately -- that the litigation holds were
20 disseminated to a select group of people, typically
21 department heads, who would then forward it on to
22 personnel who they believed might have relevant
23 information?
24     A      I'm not sure I would characterize it
25 as department heads.  The effort would be put forth

Golkow Technologies, Inc. - 1.877.370.DEPS