UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE:  ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES AND TO<br>*Jo Beth Huskey, et al. v. Johnson & Johnson, et al.*<br>*Case No.: 2:12-cv-05201*<br><br>*Tonya Edwards, et al. v. Johnson & Johnson, et al.*<br>*Case No.: 2:12-cv-09972* | Master File No. 2:12-MD-02327<br>MDL No. 2327<br><br><br>**JOSEPH R. GOODWIN**<br>**U.S. DISTRICT JUDGE** |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO PRECLUDE DISCOVERY OF ALL COMPENSATION INFORMATION
OF DEFENDANTS' NON-RETAINED EXPERT, DR. PIET HINOUL**

Defendants Johnson & Johnson and Ethicon, Inc. hereby move for a Protective Order preventing discovery of any compensation information relating to Dr. Piet Hinoul, who is employed by Ethicon and has been designated as a non-retained expert.  The reason an opposing party may discover an expert's compensation information in some situations is to allow that party "to demonstrate and explore the bias of the expert." *See, e.g., Morrow v. Greensouth Equip., Inc*., No. 5:10-cv-000137, 2010 U.S. Dist. LEXIS 133641 at *3 (N.D. Fl. Dec. 7, 2010). Dr. Hinoul's compensation information, however, is irrelevant and not discoverable because he is also employed by Defendant Ethicon.  The fact of his employment with Ethicon, alone, is sufficient for Plaintiffs to argue any purported bias.  *Id*. at **4-5.  Additionally, Dr. Hinoul's

1

personal privacy interest in maintaining the confidentiality of his compensation information precludes Plaintiffs from discovering this information.

## BACKGROUND

Dr. Piet Hinoul is a medical affairs director for Ethicon. Dr. Hinoul was designated as a non-retained expert in the *Huskey* and *Edwards* matters on March 21, 2014. *See* Exh. "A" Defendants' Non-retained Expert Disclosures (March 21, 2014) (for Case No. 2:12-cv-05201 (*Huskey*) and Case No. 2:12-cv-09972 (*Edwards*)).

In prior document productions relating to 30(b)(6) depositions of Dr. Hinoul, Defendants produced a copy of Dr. Hinoul's personnel file from his employment with Defendants. Defendants redacted any information regarding Dr. Hinoul's compensation on the grounds that "these compensation records are private and have no relevancy to the issues in litigation. The disclosure of this information would substantially intrude on the witness's legitimate privacy interests." *See*, *e.g.,* Exh. "B" (Responses and Objections to Plaintiffs' "Notice to Take Video Deposition of Piet Hinoul" and Accompanying Request for Production of Documents (ECF Doc. No. 553).

After Defendants served Dr. Hinoul's non-retained expert disclosures on March 21, 2014, Plaintiffs requested an updated and unredacted copy of Dr. Hinoul's personnel file. Defendants provide Plaintiffs with reasonably available updates to Dr. Hinoul's personnel file, but have explained to Plaintiffs that Fed. R. Civ. P. 26(a)(2) does not require that they provide Dr. Hinoul's compensation information "because he is not paid specifically for his expert testimony." *See* Letter from B. Watson, counsel for Defendants, to A. Faes, counsel for Plaintiffs, at 2 (June 11, 2014) (Exh. "C").

Plaintiffs responded by letter dated June 27, 2014, disagreeing with Defendants on the compensation issue, and reiterating their request for "Dr. Hinoul's complete, un-redacted compensation information." *See* Letter from A. Faes, counsel for Plaintiffs, to B. Watson, counsel for Defendants (June 27, 2014) at 2 (Exh. "D"). Plaintiffs also stated that "this [letter] will be Plaintiff's [sic] final communication on this matter. . . ." (*id*.), and gave Defendants until "the close of business on July 1" to let them know whether Defendants' "June 11 letter represents your final position [on this matter.]" *Id*.

Defendants let Plaintiffs know on July 1 that they would not be producing Dr. Hinoul's unredacted compensation information, as their position on this issue has remained unchanged from their June 11, 2014 letter.

As shown above, Defendants' attempts to meet and confer with Plaintiffs to resolve this issue have been unsuccessful.

**ARGUMENT**

Under Rule 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" associated with discovery. Fed. R. Civ. P. 26(c)(1). Here good cause exists to issue a protective order precluding Plaintiffs from pursuing discovery regarding the compensation information of Dr. Hinoul. Dr. Hinoul's compensation information is not discoverable because his employment, alone, is sufficient to allow Plaintiffs to argue any purported bias. Additionally, Dr. Hinoul's personal privacy interest in maintaining the confidentiality of his compensation information precludes its discovery here.

**A.      Dr. Hinoul's compensation information is not discoverable because he is not specially compensated for his expert testimony in this litigation.**

3

Dr. Hinoul was designated as a non-retained expert pursuant to Fed. R. Civ. P. 26(a)(2)(C), which has no requirement that compensation information be provided. Under Fed. R. Civ. P. 26(a)(2)(B), however, subsection (vi) provides that an expert is to disclose "the compensation to be paid for the study and testimony in the case." Plaintiffs appear to be relying on this subsection to demand Dr. Hinoul's compensation information. But even if this provision applied to Dr. Hinoul, Plaintiffs are still not entitled to his compensation information. This is so because Dr. Hinoul does "not receive any additional compensation from Ethicon or any other person or entity for [his] expert testimony in the Ethicon pelvic mesh litigation." Declaration of Piet Hinoul, M.D., Ph.D. ("Hinoul Dec.") at ¶ 4 (Exh. "E"); *see also* Letter from B. Watson, counsel for Defendants, to A. Faes, counsel for Plaintiffs, at 2 (June 11, 2014). As such, his compensation information is not discoverable.

The reason the Rule requires an expert to disclose any compensation for the "study and testimony in the case" is "to allow the opposing party to demonstrate and explore the bias of the expert" (*Morrow v. Greensouth Equip., Inc.*, No. 5:10-cv-000137, 2010 U.S. Dist. LEXIS 133641 at *3 (N.D. Fl. Dec. 7, 2010); *Securities and Exchange Commission v. Nadel,* No. CV 11-215, 2012 U.S. Dist. LEXIS 53173 at **5-8 (E.D.N.Y. April 16, 2012)), and expose "any personal interest the witness may have in arriving at the stated opinion." *Porter v. Hamilton Beach/Proctor Silex, Inc.*, No. 01-2970, 2003 U.S. Dist. LEXIS 18571 at *4 (W.D. Tenn. Aug. 27, 2003).

Where an expert receives no additional compensation or benefits for the opinions he will offer in the case -- like Dr. Hinoul here -- then his status as a "full-time, salaried employee of [the defendant] is sufficient to demonstrate bias." *Id.* at *5; *see Nadel,* 2012 U.S. Dist. LEXIS 53173 at *8; *Morrow*, 2010 U.S. Dist. LEXIS 133641 at **3-4; *see also Haynes v. Shoney's,*

*Inc*., No. 89-30093, 1991 U.S. Dist. LEXIS 20612 at **15-16 (N.D. Fla. Sept. 27, 1991) (In Title VII case, plaintiffs moved to compel compensation records for fifteen employees, arguing this would show they had a "financial interest" in the litigation. The court denied plaintiff's motion, recognizing that "plaintiffs' argument of bias confuses the fact of one's compensation with that of one's employment. . . . [T]he fact of employment alone is sufficient to demonstrate bias. The salary amounts do not add anything, and are entitled to privacy and confidence.").

The court in *Morrow* elaborated on this point: "[W]here the expert is a full time salaried employee of the party offering the opinion of the expert . . . the amount of the expert-employee's salary — **as opposed to the mere fact the expert is an employee** — would make no difference regarding bias so long as the salary and benefits are not tied in any way to the opinions offered by the employee-expert." *Morrow*, 2010 U.S. Dist. LEXIS 133641 at *4 (emphasis added). Under this analysis, the court denied plaintiff's motion to compel the compensation information for defendant Deere's expert and current Division Engineer, Kirk Ney. Noting that Ney had disclosed he was a salaried employee at Deere and did not receive any separate fees for his opinions, the court held that the amount of his compensation was "of no consequence", as plaintiff could fully explore at trial "that Mr. Ney has an interest in the outcome of the case because he is a full time salaried employee and not an independent expert." *Id*. at *5. Continuing, the court observed that "[t]he amount of Mr. Ney's annual salary, however, is of no consequence and is not discoverable because the information would not tend to demonstrate bias." *Id*.

Similarly, in *Nadel*, defendants sought production of the compensation information for Dr. Porter, a professor at Iowa State University on loan to a division of the SEC, arguing the possibility of "continued employment or additional compensation may demonstrate bias and

5

[was] relevant to Dr. Porter's credibility." *Nadel,* 2012 U.S. Dist. LEXIS 53173 at *4. The SEC opposed the motion, arguing disclosure would invade Dr. Porter's privacy concerns. *Id*. Dr. Porter had already disclosed that he provided his opinions "as part of his regular employment with the SEC," and he received no compensation other than his "regular salary." *Id*. at *5. The court denied defendants' motion to compel, holding that "[h]ere, the fact that Dr. Porter is a full-time salaried faculty member of Iowa State University, essentially 'on loan' to a specific division of the SEC, is sufficient to demonstrate bias. [citation omitted]. This Court agrees that no purpose would be served by requiring Dr. Porter to disclose further salary and benefit information . . . ." *Id*. at *8.

Again in *Porter,* a products liability case, the court denied plaintiff's motion to compel the compensation information of the defendant's expert and current Vice President of Quality, Christopher Zachwieja. *Porter*, 2003 U.S. Dist. LEXIS 18571 at **2-3. At his deposition Mr. Zachwieja refused to answer questions regarding his compensation "on grounds of relevancy because, as an employee, he was not being compensated for his expert testimony." *Id*. at *3. The court agreed, and denied plaintiff's motion to compel this information: "Here, the fact that Zachwieja is a full-time, salaried employee of HBPS is sufficient to demonstrate bias. There is no showing that Zachwieja's opinion may be influenced by his salary or the value of his 401(k) plan." *Id*. at *5. "In other words," the court explained, "the amount of his salary or value of his 401(k) plan would not affect a jury's determination of credibility or bias because his full-time, salaried position indicates that he has an interest in the outcome." *Id*.

As in these cases, counsel for Defendants has informed Plaintiffs that Dr. Hinoul "is not paid specifically for his expert testimony" (*see* Exh. "C" (Watson June 11, 2014 letter); *see also* Hinoul Dec. at ¶ 4 (Exh. "E") and thus there is no basis for discovery of his compensation

information. The fact of Dr. Hinoul's position with Ethicon is sufficient for Plaintiffs to argue any purported bias. *Porter*, 2003 U.S. Dist. LEXIS 18571 at *5; *Morrow*, 2010 U.S. Dist. LEXIS 133641 at *5; *Nadel,* 2012 U.S. Dist. LEXIS 53173 at *8.

Plaintiffs, however, in opposing this motion, are likely to confuse the fact of Dr. Hinoul's compensation with that of his employment. This is shown by their June 27 response to Defendants' explanation of why Defendants would not produce Dr. Hinoul's compensation information. Plaintiffs' counsel notes that Dr. Hinoul "has received awards for his work at two FDA panel meetings where he made statements regarding the products as issue, and an award for his exit strategy on the products at issue. Dr. Hinoul is also a member of the board of directors for Ethicon Women's Health and Urology. . . . Dr. Hinoul is testifying in litigation which could result in substantial monetary liability against his employer, potentially having a substantial impact on his ownership interest in the company, and even his potential for continued employment with the company." Letter from A. Faes, counsel for Plaintiffs, to B. Watson, counsel for Defendants (June 27, 2014) at 1-2 (Exh. "D").

But this information does not show that Dr. Hinoul's **compensation** is relevant or that it is tied, in any way, to the expert testimony he will provide.[1] Rather, the fact of Dr. Hinoul's employment and other related responsibilities, such as sitting on the board for Ethicon Women's Health and Urology, is sufficient for Plaintiffs to argue any supposed bias. This is the very point made in *Porter*, 2003 U.S. Dist. LEXIS 18571 at *5; *Morrow*, 2010 U.S. Dist. LEXIS 133641 at *5; and *Nadel,* 2012 U.S. Dist. LEXIS 53173 at *8, as addressed above.

---

[1] To be clear, the "awards" Dr. Hinoul received were non-monetary company global leadership awards (*see, e.g.*, Hinoul Dep. (6-26-13) at 51-55 (excerpts attached as Exh. "F")) and he receives no "additional compensation from Ethicon or any other person or entity for sitting on any Ethicon board." Hinoul Dec. at ¶ 5 (Exh. "E").

7

Any correlation between the issues Plaintiffs' counsel raises in his June 27 letter and the idea that Dr. Hinoul's compensation is tied to his expert testimony is wholly speculative and is no basis whatsoever for discovery of Dr. Hinoul's compensation information.  *See Nadel*, 2012 U.S. Dist. LEXIS 53173 at \*\*7-8, *quoting Wisconsin Electric Power Co. v. Union Pacific Railroad Co*., 2008 WL 934431 at \*1 (E.D. Wis. March 31, 2008) (not available on LEXIS) ("'[The] fact that both witnesses receive bonus compensation, which amount may or may not be influenced by the outcome of the instant litigation, is too speculative to require disclosure of personal information, especially where the fact of employment is equally sufficient to demonstrate bias.'"); *see also Carey Oil Co. v. MG Refining & Marketing, Inc*., 257 F. Supp. 2d 751, 756-58 (S.D.N.Y. 2003) (holding that absent a reasonable suspicion that the compensation paid to the expert affected his or her opinion, private salary information should not be compelled.).

Indeed, if Plaintiffs believe the issues raised in counsel's June 27 letter shows bias on Dr. Hinoul's part, nothing prohibits Plaintiffs from exploring these issues on Dr. Hinoul's cross-examination at trial – without the need to know his compensation:  "[A]ny bias [the employee-expert]  may have because he serves as an employee and expert can be explored adequately by Plaintiffs' counsel on cross-examination without the need to know [his] annual salary." *Morrow*, 2010 U.S. Dist. LEXIS 133641 at \*5.

Defendants have disclosed to Plaintiffs that Dr. Hinoul's compensation is unrelated to his expert testimony, and there is nothing Plaintiffs could point to that would even raise suspicion that the particular compensation Dr. Hinoul receives is tied to his opinions.  In short, Dr. Hinoul's position with the company, itself, is sufficient for Plaintiffs to argue any purported bias, and there is no basis for disclosing his compensation information in this case.

**B.     Dr. Hinoul's personal privacy interest in the confidentiality of his compensation information warrants entry of a protective order.**

Dr. Hinoul's personal privacy concerns regarding disclosure of his compensation information is a second and equally firm basis for precluding Plaintiffs from discovering this information.  *See Twigg v. Pilgrim's Pride Corp.,* 2007 U.S. Dist. LEXIS 14669 at *40 (N.D. W. Va. Feb. 28, 2007) citing *Cason v. Builders Firstsource-Southeast Group, Inc.,* 159 F. Supp. 2d 242, 247 (W.D.N.C. 2001) (recognizing the strong public policy that exists against disclosure of employee information); *see also Marlow v. Chesterfield County Sch. Bd.*, 2010 U.S. Dist. LEXIS 96322 at *14 (E.D. Va. Sept. 15, 2010) (recognizing privacy concern in personnel file and allowing only disclosure relating to employee's qualifications); *Martin v. W. Va. Univ. Hosps., Inc.,* 2006 U.S. Dist. LEXIS 29858 at *8 (N.D. W. Va. Apr. 5, 2006) (without sufficient showing of relevancy, plaintiff was not entitled to personnel records over defendant's privacy interest in those records); *Haynes v. Shoney's, Inc.*, 1991 U.S. Dist. LEXIS 20612 at **15-16 (N.D. Fla. Sept. 27, 1991) (addressed at p. 4, above).

Because Plaintiffs are the ones seeking Dr. Hinoul's private compensation information, they bear the burden of showing why they should receive this information.  *Twigg*, 2007 U.S. Dist. LEXIS 14669 at *44, citing *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997).  Further, Dr. Hinoul is not a party in this lawsuit, and thus heightened scrutiny is appropriate in assessing any purported basis Plaintiffs may offer to justify their obtaining Dr. Hinoul's compensation information:  "[W]here production of non-party employee files is at issue. . . heightened scrutiny is appropriate since 'the very act of disclosing an employee's sensitive and personal data is a highly, and frequently, an unnecessarily intrusive act.'"  *Twigg*, 2007 U.S. Dist. LEXIS 14669  at **41-42, *quoting Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 447-48 (D. Minn. 1997).

Plaintiffs cannot meet this burden here. Dr. Hinoul's compensation information is irrelevant. Even if Rule 26(a)(2)(B)(vi) applied to Dr. Hinoul, the courts interpreting this provision in the employee-expert context consistently hold that this information is not discoverable, given that the expert's employment, alone, is sufficient to show any purported bias. *See* Section A, above.

Accordingly, because Plaintiffs have no grounds for invading Dr. Hinoul's personal privacy interest in the confidentiality of his compensation information, a protective order preventing disclosure of this information is warranted for this additional reason.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that a protective order be entered barring Plaintiffs from discovery of any compensation information relating to Dr. Hinoul. Defendants request any other relief that this Court may deem appropriate.

Dated: July 1, 2014.

Respectfully submitted,

*/s/ Christy D. Jones*_____
Christy D. Jones
Donna Brown Jacobs
Butler, Snow, O'Mara, Stevens & Cannada, PLLC
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
(601) 985-4523
christy.jones@butlersnow.com
donna.jacobs@butlersnow.com

*/s/ David B. Thomas*_____
David B. Thomas (W.Va. Bar #3731)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338

(304) 414-1807
dthomas@tcspllc.com

COUNSEL FOR DEFENDANTS
ETHICON, INC. AND JOHNSON & JOHNSON

## **CERTIFICATE OF SERVICE**

   I hereby certify that on July 1, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to CM/ECF participants registered to receive service in this MDL.

                   */s/ Christy D. Jones*_____
                   Christy D. Jones

ButlerSnow 21769717v1