IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

TRANSCRIPT OF PROCEEDINGS

----------------------------------------

IN RE:  ETHICON, INC., PELVIC REPAIR          MDL NO.
SYSTEM PRODUCTS LIABILITY LITIGATION          2:12-MD-2327

----------------------------------------

TELEPHONIC MOTIONS HEARING

August 5, 2014

**BEFORE THE HONORABLE CHERYL A. EIFERT**
**UNITED STATES MAGISTRATE JUDGE**

Court Reporter:          Lisa A. Cook
                         RPR-RMR-CRR-FCRR
                         (304)347-3198
                         lisa_cook@wvsd.uscourts.gov

Proceedings recorded by mechanical stenography; transcript
produced by computer.

**APPEARANCES**

**For the Plaintiffs:**


**MR. R. JASON RICHARDS**
**MS. D. RENEE BAGGETT**
Aylstock, Witkin, Kreis & Overholtz
Suite 200
17 East Main Street
Pensacola, FL  32502


**MR. ANDREW N. FAES**
Wagstaff & Cartmell
4740 Grand Avenue
Suite 300
Kansas City, MO  64112


For the Defendant:


**MR. BENJAMIN M. WATSON**
Butler, Snow, O'Mara, Stevens & Cannada
P.O. Box 6010
Ridgeland, MS  39158-6010

1                    P R O C E E D I N G S

2           THE CLERK:  Good afternoon, everyone.  This is

3    Laura calling from Judge Eifert's chambers.  May I ask who

4    is on the line for plaintiffs' counsel, please.

5           MR. RICHARDS:  Yes.  This is Jason Richards.  And

6    Renee Baggett is on the line as well.  And I also believe

7    Andy Faes is on the line.

8           THE CLERK:  Andy Faes?  I'm sorry, I did not get

9    your last name.  Could you repeat that, please.

10          MR. RICHARDS:  My name is Jason Richards.

11          THE CLERK:  Thank you.

12          MR. RICHARDS:  Thank you.

13          THE CLERK:  And for defense counsel?

14          MR. WATSON:  For Ethicon this is Ben Watson.  I

15    think I'll be the only one.

16          THE CLERK:  All right.  Thank you.  And if you'll

17    hold one moment for the Judge.

18      (Pause)

19          THE COURT:  Hello.

20          MR. RICHARDS:  Hello, Your Honor.

21          MR. WATSON:  Hello, Your Honor.  Good afternoon.

22          THE COURT:  All right.  I understand we have

23    Richards, Baggett -- and who is the last person for the

24    plaintiff?

25          MR. FAES:  Andy Faes, Your Honor.

1    THE COURT:  Faes, okay.  Thank you.  And then Ben

2  Watson for the defendant?

3    MR. WATSON:  Yes, Your Honor.

4    THE COURT:  All right.  Before I get started on

5  the motion, let me say that I spoke with Kate and Judge

6  Goodwin this afternoon about the designations, the

7  deposition designations and the hearing on August 14.  They

8  want me to talk to you a little bit about what's been filed.

9    And I went back and I looked at the order, and I see

10  that you were supposed to file everything.  And then this

11  week you're supposed to be meeting and talking about how

12  you're going to pare down what you've filed so that when we

13  have the hearing on August 14 you're going to have

14  significantly pared down what your arguments are over.

15    You all understand that; right?

16    MR. FAES:  This is Andy Faes, Your Honor.  We do

17  understand that and we've been working with the defense team

18  on, on the deposition designations and paring those down.

19    THE COURT:  Great, because what --

20    MR. WATSON:  Yes, Your Honor.  My understanding is

21  we've been having serious negotiations and they'll continue

22  this week.

23    THE COURT:  What Judge Goodwin has suggested and

24  what I'm going to do, the advice I'm going to take is, is --

25  the way I'm going to handle that hearing is have you come on

1    August 14 and bring with you just what it is you want me to

2    rule on -- I'm not going to look at anything that you filed

3    ahead of time -- have you come with exactly what's left and

4    we'll go through them that day and rule on them that day.

5    And if we don't get done that day, I'll just have you spend

6    the night and come back the next day.  But he has suggested

7    that I rule on them just as I would at trial.

8        So, I'm not going to be looking at boxes and boxes of

9    documents.  So, I just want you to be aware of that.  So, I

10   suggest you try to work out as much as you can.

11       As he said to me, and I agree, you're all experienced

12   lawyers.  You're all very familiar with the rules of

13   evidence.  So, you really shouldn't need much help from me.

14   I would expect that you could do most of that yourself.  I'm

15   happy to help you, but I'm, I don't think it would be

16   necessary for me to read what you've filed at this point.

17   I'll just wait and see what you have on August 14.

18       Does that sound fair?

19           MR. WATSON:  Yes, Your Honor.

20           THE COURT:  Great.  Now, that brings us to this

21   motion.  And I had -- I looked through the motion and I

22   looked through the briefing.  And, of course, it's pretty

23   old.  The briefs are old.

24       But what, what struck me, and one of the things I did

25   talk to Kate and Judge Goodwin about -- because I haven't

1    really been up on the *Huskey* case since I really haven't

2    done anything in the *Huskey* case.  And that's the one that's

3    coming up for trial.  I noticed that all of these requests

4    for admissions had to do with the FDA's 510(k) process.  I

5    knew that Judge Goodwin had ruled on that in a couple of the

6    cases that had gone to trial, but I wasn't sure what had

7    happened in *Huskey*.

8         So, when I was speaking with him and Kate, I asked him

9    about that and he told me that he had already ruled on that

10   in *Huskey*.  And Kate sent me a copy of the order.

11        So, I'm a bit confused as to why Ethicon wants this

12   motion heard since he has already ruled that all evidence

13   pertaining to the 510(k) process is excluded.

14             MR. WATSON:  Yes, Your Honor.  This is Ben Watson

15   for Ethicon.  Hopefully I can answer that question.

16        First of all, you know, we understand Judge Goodwin's

17   ruling and we certainly respect it.  But we also reserve our

18   right, you know, during *Huskey* and in later trials as the

19   evidence progresses to be able to continue to argue that.

20   And perhaps, you know, at some point, you know, the decision

21   on that may change.

22        But, more importantly, and specific to *Huskey*, it's my

23   understanding that we want to offer a proffer of this

24   information.  Assuming Judge Goodwin keeps his ruling the

25   same, we still want to proffer this information and these

1    documents on the 510(k) process to reserve that for

2    appellate purposes.

3         And, of course, you know, having the documents

4    authenticated and the requests for admissions, you know,

5    properly answered certainly streamlines that proffer

6    process.  So, I, I understand the Court's concern, but

7    that's why, you know, we feel like we need to go forward on

8    this.

9              THE COURT:  Have you talked to Judge Goodwin about

10   making a proffer?

11             MR. WATSON:  Your Honor, I'm not sure.  I'm not

12   sure whether there have been any discussions with, with

13   Judge Goodwin.  That's my understanding of the intent.  But

14   whether they've involved him in that, I'm not sure.

15             THE COURT:  Let me ask the plaintiffs because I --

16   you know, I don't want to spend a lot of unnecessary time on

17   a motion that may be un- -- especially at this point in time

18   that really may be unnecessary.  I don't know -- I, I think

19   that Judge Goodwin has looked at this issue several times

20   and I don't, I don't feel he's going to change his mind on

21   whether this type of information is admissible at trial.

22        So, that would leave whether or not you would make a

23   proffer.  I don't think he's going to want you to -- I mean,

24   I don't know what he would want to do as far as the timing

25   of the proffer, whether he would just let you make it -- I

1    don't know why he would want you to make it during the trial

2    because -- how many days is he giving you?

3            MR. WATSON:  It's not long, Your Honor.  I believe

4    it's less than two weeks.

5            THE COURT:  I think just from -- I'm thinking just

6    from a practical standpoint, have you and the plaintiffs

7    had -- have you and the plaintiff had any discussion about

8    how that might be accomplished?  Would the plaintiff be

9    willing to stipulate to any of these documents for purposes

10   of a proffer?

11           MR. WATSON:  We have not had that discussion, Your

12   Honor, but I think if we did, if they were willing to, you

13   know, certainly stipulate to the authenticity of these

14   documents, that may go a long way in helping us not to have

15   to go through all of these.

16           MR. RICHARDS:  Your Honor, this is Jason Richards

17   for the plaintiffs.  And I guess that's our concern too

18   which is -- in PTO 4 the Court said, you know, try to find

19   some creative ways to, to streamline the process as far as

20   discovery goes and, and make it more efficient.

21       And typically what is done every day in the courts is

22   you exchange exhibit lists and you try to agree on which

23   documents you're not going to have any dispute about the

24   authenticity over.  And if you have a dispute, you take it

25   to the Court.  But usually you just exchange exhibit lists

1   and you stipulate that certain documents are authentic and

2   that's the way it's done every day.

3        THE COURT:  Uh-huh.

4        MR. RICHARDS:  So, trying to submit -- trying to

5   accomplish the same thing through requests for admissions by

6   every plaintiff, and we have no idea whether the FDA

7   approved MDA 4278 in 1970, seems the wrong way to go about

8   it.

9        THE COURT:  No, you know, I'll tell you what.  I,

10  I didn't like this either.  I did not like doing this

11  through requests for admissions.  And I'll tell you, I'll

12  tell you the problem that I had with it.

13       I've never seen it -- in, in all of the years that I've

14  practiced, I've never seen it done this way.  And, and I

15  couldn't at first put my finger on why it bothered me.  I've

16  always -- I've seen, of course, requests for admissions

17  having someone admit the genuineness of documents.  But

18  usually it's done where you're asking someone to admit that

19  their own documents are genuine or you have somebody admit

20  that documents from a third party are genuine.

21       For example, where you've gotten somebody's medical

22  records and you've gone to the custodian of the records and

23  you've, you've gotten those records and you submit those

24  with the certification from the custodian and everybody

25  agrees, yes, they admit those are true and authentic copies

1   of the records.  I've never seen somebody say to the other

2   side, "I want you to admit that my records are genuine."

3       And I think what bothered me about it is that it, it's

4   sort of a way to circumvent what the rules of evidence

5   require you to do.  When you're submitting a piece of

6   evidence, you're required as the proponent of that piece of

7   evidence to authenticate it.  So, what you're doing is

8   you're trying to circumvent your responsibility to

9   authenticate your piece of evidence by asking someone to

10  admit that it's, that it's true and authentic.

11      And I think that's what kind of bothers me about it

12  because it's sort of a way to kind of, to escape the burden

13  that you would normally have under the rules of evidence.

14  And I, and I don't think the plaintiffs would really have

15  any way of, of being able to truthfully say that's genuine.

16      How do they know?  How would they really know that

17  you've given them the entire letter?  You attach a letter

18  and say, "Admit that this is a true copy of a letter that I

19  wrote."  I don't know how they could, how they could

20  possibly say that.  I think -- you know, I, I did not like

21  them either.  I could understand why they would have a

22  problem with that.

23      And I would especially understand why they would have a

24  problem with that in the circumstances of an MDL where

25  you've got thousands of plaintiffs that the steering

1    committee doesn't really represent.  You've got all of these

2    lawyers, individual lawyers representing these individual

3    women and you're asking this small group of, of responsible

4    supervising plaintiffs' lawyers to make admissions on behalf

5    of all these people.

6         And who knows what's going to happen to these cases.

7    They may all get remanded.  I mean, we don't know really

8    what's going to happen.

9         So, you know, I, I was -- I didn't, I didn't like this

10   either.  I didn't like the way that it, that you were going

11   about it.  I felt there were other ways that this could be

12   done.

13        Now, you know, I would have, I would have thought it

14   was less troublesome had you authenticated them and then

15   attached them.  Like, for example, if you, if you did what

16   the rule required -- if you go to Rule 902, for example, and

17   you had attached the certificate that Rule 902 requires, the

18   custodian certificate from the corporation, and, you know,

19   that certificate has to be compliant with Rule 803 and it

20   says, "I am the, I am the custodian of the documents, of

21   Ethicon's documents and I hereby certify that these are true

22   and accurate copies of documents kept in the ordinary course

23   of business," and blah, blah, blah, blah, blah, and you have

24   that certificate attached to each one of these letters and

25   then said, "Admit that these are true and accurate copies,"

1   even that would be better than, you know, the way it was

2   done here.

3        But I don't even know why you'd have to do that.  I

4   mean, if you, you know, if you can authenticate them, then

5   why are you asking for the plaintiff to agree that they're

6   authentic?  I guess all you're doing is you're finding a way

7   not to have to bring your custodian to trial.  But I don't

8   know why you couldn't just stipulate for the purposes of

9   each case that these are authentic records.  It didn't even

10  sound like you tried to do that yet.

11            MR. WATSON:  Yes, Your Honor.  This is Ben Watson,

12  if I could quickly respond.

13       I mean, we're certainly agreeable to the, to the

14  stipulation route.  I think that makes a lot of sense.  And

15  we're certainly willing to sit down with the plaintiffs and,

16  and see if we could get that worked out.

17       But to address Your Honor's concerns about the RFAs

18  themselves, I mean, that's why we, why we proceeded this

19  way.  You know, our hope is when you've got this number of

20  documents to deal with, you know, that we could obviate the

21  need at trial to, as you say, bring in a records custodian,

22  have them testify, "Yes, it's a true and correct copy."

23       Most of these documents are, of course, documents,

24  regulatory documents we have received from the, from the

25  FDA.  And we thought it would be a simple process to say,

1    you know, "Do you agree or not agree, you know, that this is

2    a true and correct copy," you know.  "Those that you don't

3    agree, let's find that out so we can solve those problems

4    either before or, or during trial."

5         So, that's why we submitted our RFAs.  You know, as

6    Your Honor mentioned, several use RFAs in the context of

7    authentication of third party documents such as medical

8    records.  And I think that the FDA documents would be akin

9    to that.

10        The other party, you know, certainly doesn't know

11   exactly what the third party has.  But if the other party

12   has gone and gotten them and said, "Look, this is, this is

13   what we have gotten from the third party," we think that's a

14   reasonable basis for an RFA.

15        And in addition, you know, most, if not all, of these

16   documents are responsive to their document requests or

17   they're documents that we're being asked to produce from our

18   files that we are, that we are producing to them.

19        And in terms of, you know, the steering committee

20   finding all the plaintiffs, well, you know, in fairness I

21   think that goes to any RFA.  And it certainly is part of the

22   MDL process, you know, that -- you know, that's just a part

23   of what, what has to happen.

24        But I understand Your Honor's concerns and it, it makes

25   sense.  You know, we would certainly be willing to sit down

1    with the plaintiffs and discuss -- you know, maybe we can

2    come up with a stipulation.  You know, frankly, I'm not sure

3    that stipulating that the document is authentic versus

4    admitting it is much different, but we're certainly willing

5    to, to go down that road.

6        And hopefully, as Jason said, we've worked well

7    together in the past and we certainly are mindful of Judge

8    Goodwin's admonition that we find creative ways to try to

9    shorten the discovery process and eliminate any unnecessary

10   disputes.  So, we're certainly willing to do that.

11           THE COURT:  I think when you're talking about --

12   that's, that's always the problem with requests for

13   admissions because they're really not technically discovery.

14           MR. WATSON:  Right.

15           THE COURT:  And, you know, I think when you look

16   at Rule 36 it talks about how you serve these requests just

17   for the purposes of the pending action only.  And they're

18   more of a way to narrow issues when you've got a case that,

19   you know, is coming up for trial.

20       The problem with the MDL is that there's just -- it's

21   so big that you -- and there are so many documents that I, I

22   would -- I can see why they feel uncomfortable when you're

23   talking about trying to just accept, you know, all of these

24   documents -- some of them are so old too -- just sort of

25   wholesale and not actually having anybody verify that these

1    are, you know -- there's no, there's no custodian who's

2    ever, from Ethicon that I know of who's ever sat down and

3    verified that these are actually true and accurate copies of

4    what you have.

5        And, you know, you've had the spoliation motion hanging

6    over your head.  So, I could see why the plaintiffs might be

7    a little hesitant to just say, "Oh, yeah, I'm sure whatever

8    you've given us is a true and accurate copy."

9        Do you see what I'm saying?

10       MR. WATSON:  Yes, Your Honor.

11       THE COURT:  That's why I think maybe -- I could

12   understand their reluctance to do that.  I think probably --

13   I understand, I understand the point you're trying to do, or

14   what you're trying to do, Mr. Watson.  And I understand

15   you're just trying to streamline this so you don't have to

16   do a lot of unnecessary things like log in a custodian and

17   have someone just sit there and go through the, the

18   horrible, burdensome, onerous, boring process of going

19   through letter by letter and saying, you know, "These are --

20   this is a true and accurate copy of this letter on this

21   date."

22       And hopefully the plaintiffs would never make you do

23   that.  I, I think probably Judge Goodwin would, would just

24   kill somebody if he had to sit there and, and listen to

25   that.  And I don't think anybody would want to do that.

1    I'm sure there must be some way you can stipulate to a

2    lot of these letters.  Now, I don't know what you're going

3    to do about the FDA letters, whether you'll have to --

4    whether the plaintiffs would be willing to stipulate to the

5    FDA's letters or not.  I would, I would --

6         MR. RICHARDS:  Your Honor, I can maybe answer that

7    a little bit which is what we did in the old days in the

8    Fen-Phen litigation was basically the defendant requests

9    what's called a red ribbon version of an FDA document.  And

10   it's a governmental document, so it comes in subject to the

11   Court allowing it to come in, which I guess is in question

12   here.  But it's basically a document from the FDA and it

13   literally has a red ribbon on it.  So, that way you know

14   it's an official FDA document.

15    So, that's one way to streamline the FDA document

16   process.  I don't know if the defendant has gone about

17   requesting those red ribbon copies from the FDA or not, but

18   that's certainly one way to streamline the FDA documents.

19         MR. WATSON:  Your Honor, I'm not sure if we have

20   requested that from the FDA or these, they come from our

21   regulatory files, but I can certainly look into that.

22         MR. RICHARDS:  But, again, I guess I don't know if

23   it's coming in based on Judge Goodwin's rulings, but, you

24   know, I'm just throwing that out there as one way to skin

25   that cat.

1          THE COURT:  Right.  Yeah, I think -- I mean, under

2     Rule 901 and 902 it wouldn't be hard to authenticate these

3     documents.  And once you've authenticated them, they would

4     be admissible as exceptions to the hearsay rule.  The only

5     question is are they admissible as being relevant or not.

6          Clearly, Judge Goodwin has already ruled that they're

7     not relevant.  I mean -- well, he's ruled that they're not

8     admissible because they're misleading and confusing, not

9     necessarily that they're irrelevant per se.  But he's

10    already ruled they're not admissible in this particular

11    case.

12         But you could -- you can certainly authenticate them

13    fairly easily.  There's other ways to do it, I think, that

14    make more sense to me and would be less troublesome than

15    going about it through requests for admissions that are

16    going to apply to every plaintiff in this MDL.  And I think,

17    you know, that would be my, my preference.

18         I, I'm not comfortable with these requests for

19    admissions.  I, I have the same kind of problems with them

20    that the plaintiffs do.

21         MR. WATSON:  Yes, Your Honor, we understand that.

22    Perhaps Jason and I can get together in the coming days and

23    figure out a way to hopefully work through this and get some

24    stipulations down.

25         THE COURT:  Yes.  I think what I'm going to, what

1   I'm going to do with your motion is I'm going to deny it --

2   I'll deny it without prejudice to you reasserting it because

3   there may be a situation where it would require a closer

4   look.  Maybe there would be some reason.

5       For example, say you go to the FDA and there's some old

6   letter that they no longer have and then we'd have to look

7   closely at a letter that you've attached here.  And maybe

8   the only way to actually authenticate it would be through a

9   request for admission.  And then I wouldn't want to have

10  foreclosed that possibility.  But I'm -- I think -- I'm

11  thinking that requests for admissions is not the first route

12  to go.

13      MR. WATSON:  We understand, Your Honor.  We'll get

14  that process going and hopefully we can come to an agreement

15  and not have to reurge anything.

16      THE COURT:  All right.  The second thing I would

17  suggest too is if you're serious about making a proffer to

18  Judge Goodwin, I would ask him how he would like you to do

19  that.  And maybe you and the plaintiffs, the plaintiff in

20  this case, plaintiffs can figure out how to do that.

21      He might want you to do that before the trial begins or

22  during jury deliberations or something so that it's not, you

23  know, disruptive while you're trying to put your case on.

24  Maybe you can find some way to do that.

25      And I think that would be better for you as well so

1   that you're not trying -- you're not diverted while you're

2   trying to put your case on trying to do, you know, a proffer

3   because I know you guys are going to be really busy.  You're

4   not going to have a lot of time, and you want to be focused

5   on what you can actually present to the jury.  I would ask

6   him now in advance while you have a little bit of time to

7   think about it.

8          MR. WATSON:  Absolutely.  We will do that so that

9   he knows it's coming and we can figure out the best way and

10  best time to do it.

11         THE COURT:  Let me ask you, because I think you

12  all would know this better than me -- now, this, this -- the

13  issue first came up in the *Bard* case.  Is that right?

14         MR. WATSON:  I believe that's right, Your Honor.

15  Then it came up in the *Lewis* case.

16         THE COURT:  And in the *Bard* case wasn't that,

17  wasn't that issue -- didn't they appeal that issue?

18         MR. WATSON:  I honestly don't know the answer to

19  that, Your Honor.

20         THE COURT:  Okay.  For some reason I was thinking

21  maybe that was an issue that had been appealed, but I hadn't

22  heard any more about it so I didn't know whether that, there

23  had been any, anything further on that.  I guess I'll have

24  to look, look and see what's going on with that because that

25  would --

1        I'm sorry.  Go ahead, Ms. Baggett.

2              MR. RICHARDS:  Yeah, I'm sorry.  This is Jason

3    Richards, Your Honor.

4              THE COURT:  Okay.

5              MR. RICHARDS:  We're not exactly positive either.

6    Ms. Baggett -- Renee says that they did a motion for

7    clarification, but she doesn't recall specifically whether

8    it was appealed or not.

9              THE COURT:  Okay.  I didn't know if there had been

10   anything done on that that might make a difference in your

11   proffer on -- in your issue of proffering.

12       Well, I'm not going to do a very long order on this.

13   I'm just going to put in the order that at this point, I'm

14   going to deny it without prejudice.  I'm going to -- and I,

15   I've instructed the parties to pursue other routes to

16   authenticate these documents such as by stipulation.

17             MR. WATSON:  Yes, Your Honor.

18             MR. RICHARDS:  Yes, Your Honor.  Thank you.

19             MR. WATSON:  We appreciate your time.

20             THE COURT:  Thank you.

21             MR. WATSON:  Your Honor, I actually have a quick

22   issue to bring up if now is the appropriate time.

23             THE COURT:  Certainly.

24             MR. WATSON:  We have a dep- -- there's a

25   deposition coming up August 20th.  And I am just the

1   messenger here.  I don't know many of the details.  But

2   Rhonda Peoples (phonetic) is the witness.  In her previous

3   deposition we had run into some issues.  I won't get into

4   those.  But we have agreed to continue the deposition on

5   August 20th.

6        In case we do run into any disputes that the parties

7   can't resolve themselves, we were just going to check to see

8   if Your Honor is available that day in case we do need to

9   make a call.

10              THE COURT:  What day of the week is that?

11              MR. WATSON:  The 20th is Wednesday.

12              THE COURT:  A Wednesday?  I should be here.  You

13  know what.  If you give me a second, I can check my calendar

14  and see if I have anything that day.

15              MR. WATSON:  Certainly.

16              THE COURT:  Just one second.

17       (Pause)

18              THE COURT:  It looks like all I have that day is I

19  have petty offense hearings in the morning that start at

20  10:00.  Those usually don't last much past 11:30.  So, I'll

21  be here.  And if you need me, just call.

22              MR. WATSON:  Thank you.  Hopefully we won't have

23  to, but we just wanted to check.

24              THE COURT:  Certainly.  Well, if you need me, I'll

25  be here.

1          MR. WATSON:  Right.

2          THE COURT:  All right.  Well, I know you guys are

3    working hard and I'll see you -- you're coming I think in

4    person on the 14th.  Is that right?

5          MR. WATSON:  Yes, Your Honor.  I will not be

6    there, Your Honor, but Phil Combs and Paul Rosenthal for

7    Ethicon will be there.

8          THE COURT:  All right, great.  Well, make sure --

9          MR. RICHARDS:  And for the plaintiffs -- I'm

10   sorry.  For the plaintiffs Renee, Bryan Aylstock, and Tom

11   Cartmell I believe will be there.

12         THE COURT:  All right.  Well, do me a favor and

13   have, you know, have really what you have the objections to,

14   have those portions highlighted and make sure that you can

15   put in some context for me what the testimony is about and

16   what your objection is so that I can really understand what

17   it is that the problem -- what the problem is and, and what

18   the testimony is about.  And I think we can probably plow

19   through it pretty quickly.

20         MR. WATSON:  Yes, Your Honor.  And I'll certainly

21   relay those instructions to our team that's handling it.

22         THE COURT:  Great.  All right.  Well, thank you.

23         MR. RICHARDS:  Thank you for your time, Your

24   Honor.

25         MR. WATSON:  Thank you, Your Honor.

1          THE COURT:  Bye-bye.

2      (Proceedings concluded)

3                    *  *  *  *  *

4

5

6

7

8          I, Lisa A. Cook, Official Reporter of the United

9   States District Court for the Southern District of West

10  Virginia, do hereby certify that the foregoing is a true and

11  correct transcript, to the best of my ability, from the

12  record of proceedings in the above-entitled matter.

13

14

15      s\Lisa A. Cook                    August 11, 2014

16         Reporter                          Date

17

18

19

20

21

22

23

24

25