**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM  PRODUCTS LIABILITY LITIGATION | **Master File No. 2:12-MD-02327** **MDL 2327** |
| THIS  DOCUMENT  RELATES  TO  ALL CASES | **JOSEPH R. GOODWIN** **U.S. DISTRICT JUDGE** |

<u>**NOTICE TO TAKE VIDEO DEPOSITION OF PAUL TULIKANGAS M.D.**</u>

TO:    Defendant ETHICON, INC., and Johnson & Johnson, Inc., (hereinafter "Defendants") and

its Attorneys of Record.

Please take notice that in accordance with the Rules of Civil Practice and Procedure,

Plaintiffs, by and through their counsel, will take the videotaped deposition of PAUL

TULIKANGAS M.D. to begin on November 12, 2014, at 10:00 a.m., at Danaher Lagnese PC, 21

Oak Street, Hartford, CT, 06106. The deposition will be taken before a person authorized by law to

administer oaths, pursuant to the Federal Rules of Civil Procedure.  The deposition will be recorded

by both stenographic and audiovisual means by Golkow Technologies, Inc., and will continue day-

to-day until the examination is completed.

You are hereby requested to produce within 10 days in advance of the date of the

deposition, the documents and information set forth in Exhibit "A" annexed hereto, to the extent

such documents and information have not already been produced.

This 1st day of October, 2014.

**PLAINTIFFS' CO-LEAD COUNSEL**

By: _____/s/Thomas P. Cartmell_____
    THOMAS P. CARTMELL
    Wagstaff & Cartmell LLP
    4740 Grand Avenue, Suite 300
    Kansas City, MO  64112
    816-701-1100
    Fax 816-531-2372
    tcartmell@wcllp.com


    D. RENEE BAGGETT
    Aylstock, Witkin, Kreis and Overholtz, PLC
    17 E. Main Street, Suite 200
    Pensacola, FL  32563
    850-202-1010
    850-916-7449
    Rbaggett@awkolaw.com
    *Plaintiffs' Co-Lead Counsel*

**EXHIBIT A TO NOTICE OF DEPOSITION FOR PAUL TULIKANGAS, M.D.**

**DEFINITIONS**

1.      For purposes of this subpoena and the Requests contained herein, the following terms shall have the following meanings:

a.   "You" refers to Paul Tulikangas, M.D. or Hartford Hospital, and any of its predecessors   in interest, successors in interest, parent-companies, subsidiaries,   divisions, subdivisions, affiliates, officers, directors, employees,   representatives, independent contractors, consultants, or agents, whether present or former, including   attorneys and accountants.

b.   "Ethicon" refers to Ethicon, Inc., and any of its predecessors in interest, successors in interest, parent companies, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including attorneys and accountants.

c.   "AUGS/SUFU Position Statement" means the AUGS/SUFU Position Statement on Mesh Midurethral Slings for Stress Urinary Incontinence that was approved by the Boards of Directors of the American Urogynecologic Society and the Society of Urodynamics, Female Pelvic Medicine and Urogenital Reconstruction on January 3, 2014.

d.   "AUGS" means the American Urogynecologic Society.

e.    "SUFU" means the Society of Urodynamics, Female Pelvic Medicine and Urogenital Reconstruction

f.   "Communication" "Communication" means every manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, written, electronic, or by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, telex, discussion, release, personal delivery, or otherwise.   Documents that typically reflect a "communication" include letters, electronic-mail, instant messages, handwritten notes, call logs, telephone memoranda slips, daily appointment books and diaries, bills, checks, correspondence, and memoranda, and includes all drafts of such documents.

g.   "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

h.   "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic data or computerized data compilations including all information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and Metadata. This term also refers, without limitation, to the original and all copies, prior drafts and translations, written, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications, data compilations, or representations of every kind, whether comprised of letters, words, numbers, pictures, sounds, or symbols, whether prepared by manual, mechanical, electronic, magnetic, photographic, or other means, as well as audio, video or other recordings of communications, oral statements, conversations, or events.   Furthermore, this term includes, but is not limited to, any and all of the following:   correspondence, notes, minutes, records, messages, memoranda, telephone memoranda, diaries, contracts, agreements, invoices, orders, acknowledgements, receipts, bills, statements, appraisals, reports, forecasts, compilations,

schedules, studies, summaries, analyses, pamphlets, brochures, advertisements, news articles, tables, tabulations, financial statements, working papers, tallies, maps, drawings, diagrams, pictures, film, microfilm, microfiche, computer-stored or computer-readable data, computer programs, computer printouts, telegrams, telexes, facsimiles, tapes, transcripts, recordings, and all other sources or formats from which data, information, or communications can be obtained. A draft or non-Identical Copy is a separate document within the meaning of this term.

      i.   "Including" or "includes" means including, without limitation.

      j.   "Person" means any natural person or any business, legal, or governmental entity or association.

      k.   "Products used in the treatment of pelvic organ prolapse and/or stress urinary incontinence" means any of the Ethicon products identified in Paragraph 9 of the Short Form complaint agreed to in this action.

      2.   The following rules of construction apply to all discovery requests:

      a.  The terms "all" and "each" shall be construed as all and each;

      b.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

      c.  The use of the singular form of any word includes the plural and vice versa; and

      d.  Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

## INSTRUCTIONS

1.      Each Request refers to documents in your custody, control, and possession, as well as in the custody, control, and possession of or known to Hartford Hospital's counsel, representatives, agents, servants, investigators, contractors, and consultants, and unless otherwise privileged, their counsel, employees, representatives, agents, servants, investigators, contractors, and consultants.

2.      If any document responsive to these requests is unavailable, because it was lost, altered, deleted, or destroyed by you, Hartford Hospital or its agents, or for any other reason, you shall fully identify the document and also state:

    a.   When and where it was lost, altered, deleted, or destroyed, or why it is otherwise unavailable;

    b.   The name and address of each person who lost, altered, deleted, or destroyed it, or who otherwise caused it to be unavailable;

    c.   The name and address of each person who directed, approved, or knew of its alteration, deletion, or destruction, and

    d.   The name and address of each person who has knowledge of this document.

3.      If you cannot produce a document that is responsive to these requests for any other reason, please respond to the extent possible, stating each reason why you cannot respond in full.

4.      These requests shall be deemed to be continuing, to the full extent required or permitted under the Federal Rules of Civil Procedure, so as to require supplementary

production when you or yours agents obtain access, custody, possession, or control of any document not previously produced, which is responsive to any of these Requests.

5.      Pursuant to FRCP 26(b)(5), any document  falling within the scope of this Request  that  is  withheld  on the basis of a claim of privilege, work product, or any other ground is to be identified  in writing and must include: a statement of the ground alleged for withholding such document;  the Bates range of the document; its date; the identity of its author, recipients, and signatories;  the type of document (e.g., letter); a summary of its contents; its present location; and, its custodian(s).  Notwithstanding the assertion of an objection, any purportedly privileged document  containing  non-privileged  matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

6.      Documents are to be produced in full and in their unexpurgated form. Redacted  documents  shall  not constitute  compliance  with these  Requests, unless  such documents are properly redacted pursuant to a valid claim of privilege or work product as set forth in paragraph 5 above.

7.      All documents produced in response to these Requests shall be organized and labeled either to correspond with the number of the specific request to which the documents  are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.

8.      Unless otherwise set forth, the relevant time-period for each Request is from the beginning of time to the present.

## **DOCUMENTS TO BE PRODUCED**

Please take notice that pursuant to Federal Rules of Civil Procedure 30(b)(2) and 34, the following documents are requested to be produced:

1.      Any and all contracts, consulting agreements, or fee for service agreements between You and Ethicon.

2.      Any and all contracts, consulting agreements, or fee for service agreements between You and any other manufacturer of mesh products used in the treatment of pelvic organ prolapse or stress urinary incontinence (including, but not limited to, Ethicon, LLC, C.R. Bard, Inc., and Boston Scientific Corp.).

3.      Any and all documents reflecting or relating to payments made to you by Ethicon for services rendered in relation to any products manufactured or marketed by Ethicon for the treatment of stress urinary incontinence or pelvic organ prolapse.

4.      Any and all documents which reference meetings, communications or correspondence pertaining to the development of products manufactured or marketed by Ethicon for the treatment of stress urinary incontinence or pelvic organ prolapse, including those involving Ethicon employees, other  physicians, or other persons involved in the development, testing, or utilization of these devices.

5.      Any and all documents which reference meetings, communications or correspondence pertaining to the marketing of products manufactured or marketed by Ethicon for the treatment of stress urinary incontinence or pelvic organ prolapse, including those involving Ethicon employees, other  physicians, or other persons involved in the marketing of these devices.

6.      Any and all documents, emails, correspondence, or communication between You and Ethicon relating to the Food and Drug Administration Public Health Notice issued in October 20, 2008.

7.      Any and all documents, emails, correspondence, or communication between You and Ethicon relating to the Food and Drug Administration Public Health Notice issued July 13, 2011.

8.      Any and all documents, emails, correspondence, or communication between You and Ethicon relating to Section 522 studies ordered by the Food and Drug Administration.

9.      Any and all documents, emails, correspondence, or communication between You and any other manufacturer of mesh medical devices used in the treatment of pelvic organ prolapse or stress urinary incontinence relating to the Food and Drug Administration Public Health Notice issued in October 20, 2008.

10.      Any and all documents, emails, correspondence, or communication between You and any other manufacturer of mesh medical devices used in the treatment of pelvic organ prolapse or stress urinary incontinence relating to the Food and Drug Administration Public Health Notice issued July 13, 2011.

11.      Any and all documents, emails, correspondence, or communication between You and any other manufacturer of mesh medical devices used in the treatment of pelvic organ prolapse or stress urinary incontinence relating to Section 522 studies ordered by the Food and Drug Administration.

12.      Any and all documents, memoranda, emails or notes relating to, or in any way pertaining to the drafting, editing or finalization of the AUGS/SUFU Position Statement.

13.      Any and all documents, emails, correspondence, or communication between You and Ethicon relating to the AUGS/SUFU Position Statement.

14.      Any and all documents, emails, correspondence, or communication between You and any other manufacturer of mesh midurethral slings for stress urinary incontinence relating to the AUGS/SUFU Position Statement.

15.      Any and all documents, emails, correspondence, or communication relating to the AUGS/SUFU Position Statement between You and any other author of the Position Statement.

16.      Any and all documents, emails, correspondence, or communication between You and any member of AUGS relating to AUGS/SUFU Position Statement.

17.      Any and all documents, emails, correspondence, or communication between You and any member of SUFU relating to AUGS/SUFU Position Statement.

18.      Any and all documents, emails, correspondence, or communication between any author of the AUGS/SUFU Position Statement and any member of AUGS relating to the AUGS/SUFU Position Statement.

19.      Any and all documents, emails, correspondence, or communication between any author of the AUGS/SUFU Position Statement and any member of SUFU relating to the AUGS/SUFU Position Statement.

20.      Any and all documents, emails, correspondence, or communication between any author of the AUGS/SUFU Position Statement and any person involved in the research performed in relation to the AUGS/SUFU Position Statement.

21.     Any and all documents, emails, correspondence, or communication with anyone referring to or relating to polypropylene mesh research including, but not limited to, any association between polypropylene mesh and cancer.

22.     Any and all documents, emails, correspondence, or communication with anyone (including, but not limited to, attorneys for Ethicon, LLC, C.R. Bard, Inc., and Boston Scientific Corp, or any other manufacturer of mesh products used in the treatment of pelvic organ prolapse or stress urinary incontinence) referring to or related in any way to litigation involving transvaginal mesh products used in the treatment of pelvic organ prolapse or stress urinary incontinence.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM  PRODUCTS LIABILITY LITIGATION | **Master File No. 2:12-MD-02327 MDL 2327** |
| THIS DOCUMENT RELATES TO ALL CASES | **JOSEPH R. GOODWIN U.S. DISTRICT JUDGE** |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 1, 2014, I electronically filed the foregoing document

with the Clerk of the court using CM/ECF system which will send notification of such filing to

the CM/ECF participants registered to receive service in this MDL.

**PLAINTIFFS' CO-LEAD COUNSEL**

By:  ____/s/Thomas P. Cartmell_____
THOMAS P. CARTMELL
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO  64112
816-701-1100
Fax 816-531-2372
tcartmell@wcllp.com