# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO ALL CASES | Master File No. 2:12-MD-02327<br>MDL No. 2327<br><br>JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**PLAINTIFFS' SUR-REPLY TO**

**JOHNSON & JOHNSON'S AND ETHICON'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO REVISE CASE MANAGEMENT PROCEDURES AND FOR DISCOVERY RELATED TO PLAINTIFF SOLICITATION**

Defendants make numerous factual claims in their reply brief that are belied by the record before the Court. Plaintiffs here correct two clearly erroneous statements made by Ethicon in their reply based on information not yet presented to the Court.

The first is defendants' claim that plaintiffs have treated the call center abuse cavalierly and are not interested in assisting in the effort to combat it. Such a statement is clearly false based on actions already described in plaintiffs' opposition. Plaintiffs' Co-Lead Counsel, Henry Garrard, after consulting other PSC members, actually presented the Court with the solicitation letter at issue long before defendants filed their motion. There could be no purpose for this judicial disclosure other than to assist in tracking down the culprits. Defendants do not even address this action in their reply brief. Plaintiffs' opposition to defendants' draconian proposals is not opposition to tracking down wrongdoing. To suggest that opposition to onerous discovery requests of all plaintiffs and their counsel that invade privilege somehow equates to a desire not

1

to help in ferreting out misconduct is tantamount to suggesting that opposition to the police ransacking a neighborhood is tacit approval of the drug trade.

As significantly, defendants are fully aware that plaintiffs have sought to assist defendants in their efforts to locate this call center.[1] Earlier, defendants' lawyers approached plaintiffs' leadership about their intent to file a motion relating to the improper solicitations at issue. Plaintiffs' leadership assured defendants that plaintiffs would do what they could to assist. Plaintiffs invited suggestions and asked defendants to send a copy of their motion before filing it so the parties could see if they could work together on the matter. Defendants, contrary to their prior commitment to work together on this issue, instead simply filed their motion, and did so in the midst of two Ethicon mesh trials, and in a manner clearly calculated to sensationalize the issue to the media. (Email exchange between Bryan Aylstock and Christy Jones, Jan. 14, 2015, Ex. 1) Afterward, plaintiffs again sought to work with defendants on this matter. *Id.* In fact, on January 29, 2015, Plaintiffs' counsel conferred about the matter, offered suggestions to finding the culprits, and asked Ms. Jones if she would like to work together on hiring an investigator or otherwise work with plaintiffs' leadership to put an end to these practices. Yet, just hours later, defendants filed their reply brief, inexplicably suggesting plaintiffs had no desire to cooperate on the issue.

The second matter concerns the sampling that revealed that all the plaintiffs analyzed had been implanted with defendants' products. Curiously, Defendants represent to the Court that the sampling is limited to 400 plaintiffs only includes "certain Ethicon devices." Again, as the Court is aware, this statement is patently false. The sampling process, signed off by Defendants' own

---

[1] Defendants criticize plaintiffs for suggesting the solicitations likely came from a call center in India. (Reply at 3) But that inference came from the very affidavits defendants submitted which state that the solicitors had an Indian accent, other solicitations could be heard in the background and caller ID revealed international phone numbers.

statisticians to provide a statistically significant sample of the entirety of cases contained in the Ethicon MDL, includes 800 plaintiffs and **all** products.[2] Literally thousands of record sets have been ordered by the plaintiffs and analyzed at great expense. Clearly, if there is the widespread fraud that Ethicon claims, it would have been evident from such a thorough sampling.

Defendants also speculate that one of the plaintiffs in the sample who recently dismissed or sought to dismiss her lawsuit may not have been implanted with their product at all. (Reply at 4)[3] Unfortunately, this kind of rampant conjecture characterizes both of defendants' filings. In reality, the plaintiff simply decided she did not want to go through the ordeal of working up her case for trial – a decision not infrequent among litigants of all stripes. But the operative report of her surgeon reveals that she was implanted with an Ethicon device -- the TVT Urethral Sling. (Ex. 2) Defendants are thus still left without evidence that *any* plaintiff was not implanted with mesh. Examination of hundreds of patients' medical records has not revealed one instance of a frivolous filing. To jump from that lack of evidence to the claim that every plaintiff and her lawyers should be compelled to answer detailed discovery on fraud and barratry is too great a leap to make.

---

[2] It is disturbing to say the least that the Defendants do not even know which products or cases are contained in the sampling process they designed.

[3] Although Defendants do not reveal the identity of this individual in their filing, there is one such individual in the sampling who appears to have sought to dismiss her case within a week of Ethicon's reply brief. As set forth *infra*, she was implanted with an Ethicon device (TVT) and there is no evidence that her claim was fraudulent in any way.

Dated:  February 3, 2015.

                                                Respectfully submitted,

/s/Bryan F. Aylstock
Bryan F. Aylstock, Esq.
Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, Florida  32563
(850) 202-1010
(850) 916-7449 (fax)
E-mail:  baylstock@awkolaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2015, I electronically filed the foregoing document with the Clerk of the court using CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Bryan F. Aylstock
Bryan F. Aylstock
Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, FL 32563
850-202-1010
850-916-7449
baylstock@awkolaw.com

# EXHIBIT 1

-----Original Message-----
From: Christy Jones [mailto:Christy.Jones@butlersnow.com]
Sent: Wednesday, January 14, 2015 3:35 PM
To: Bryan Aylstock
Cc: Tom P. Cartmell; Renee Baggett; Justin Witkin
Subject: Re: Ethicon's motion

I am ready to discuss at your convenience but I am in trial now. We can use all of the help that we can get. I am willing to listen to any suggestions you have and would certainly appreciate your cooperation.

Sent from my iPad

On Jan 14, 2015, at 2:02 PM, "Bryan Aylstock" <BAylstock@awkolaw.com<mailto:BAylstock@awkolaw.com>> wrote:

Hi Christy,

When we last spoke about this issue of alleged improper telephone solicitations, you specifically agreed to send the motion to me before filing so that we could attempt to work together to figure out what was going on with the alleged telephone solicitations. Indeed I had thought the rules and common courtesy would have required a meet and confer prior to filing such a bombastic motion. In any event, if you are really interested in making sure only valid cases are filed in the MDL (and/or resolved) instead of posturing and creating a media buzz, let me know.

Bryan Aylstock
Aylstock, Witkin, Kreis & Overholtz PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Fax (850) 916-7449
www.awkolaw.com<http://www.awkolaw.com/>


This electronic message and/or its attachments contain legally privileged and confidential information intended only for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, disclosure, distribution, or copying of this transmission or its attachments is strictly prohibited. If you receive this communication in error, please immediately notify the sender by electronic mail, and delete this message, its attachments and all copies and backups.

_____

# EXHIBIT 2

Acct.: 00000047394770, for:THolly, Pg. 1/2 Copy of electronic orig.

PROVIDENCE MEDICAL CENTER
8929 PARALLEL PARKWAY
KANSAS CITY, KS 66112
PHONE: 913-596-4600

| | | | |
|---|---|---|---|
| PT NAME: | | MRN: | |
| DOB: | | PT NO: | 47394770 |
| ADMIT DATE: | 11/09/2006 | DISCHARGE DATE: | |
| PT SERV: | SDS | RM#: | |

DICTATING PHYSICIAN: Joseph Myers, MD
ATTENDING PHYSICIAN: JOSEPH MYERS

OPERATIVE REPORT

OPERATION DATE: 11/09/2006

FINDINGS / PREOPERATIVE DIAGNOSIS: Stress urinary incontinence.

POSTOPERATIVE DIAGNOSIS: Stress urinary incontinence.

OPERATION: TVT urethral sling.

ANESTHESIA: Local with MAC.

SURGEON: Joseph Myers, MD

DESCRIPTION OF OPERATION: The patient was given intravenous sedation, and placed in the high lithotomy position. The lower abdomen and perineum were prepped and draped in a sterile fashion. Then 0.5% Marcaine was used to infiltrate the suprapubic area and the anterior vaginal wall. A small stab wound was made in the suprapubic area just above the pubic symphysis 1 fingerbreadth lateral to the midline on each side. A small midline vertical incision was made over the anterior vaginal wall at the mid urethral level. Dissection was carried laterally subcutaneously. The Foley catheter was placed with stylet into the bladder after draining the bladder. The balloon was inflated and the handle of the stylet was pressed against the left thigh to move the bladder towards the patient's right. The TVT trocar was passed under the left edge of the vaginal incision and passed submucosally laterally to the endopelvic fascia and behind the pubic symphysis, where it was brought out through the small stab wound incision. Cystoscopy then confirmed that there was no injury to the bladder. The right side of the tape was then passed in an identical fashion after placing the handle of the catheter stylet against the right thigh. Again, cystoscopy showed no evidence of bladder injury. No tape was seen within the bladder, no bladder perforations were found.

The bladder was filled with saline through the cystoscope and a long straight Mayo scissors was placed between the tape and the urethra as the tape was snugged down over the scissors. The patient was asked to cough multiple times, and there was no leakage. _____ maneuver also produced no leakage. With the scissors replaced between the urethra and tape, the sheath of the tape was removed on both sides, and the excess tape was cut off at the skin level. The vaginal incision was then closed in interrupted fashion with Vicryl suture. Steri-strips were applied to the suprapubic wounds, along with a gauze dressing.

Case 2:12-md-02327   Document 1442-1   Filed 02/03/15   Page 11 of 12 PageID #: 17511

Acct.: 00000047394770, for:THolly, Pg. 2/2 Copy of electronic orig.

The patient tolerated the procedure well and was then taken to the recovery area in stable condition.

_____
Joseph Myers, MD

JM/5552574
DD: 11/09/2006 14:20
DT: 11/10/2006 12:51
SSI File#: 000377003934850031109200614140925
Job #: 221309
CC: Shalaunda Gray, M.D. 9-913-596-2863

| | | | |
|---|---|---|---|
| PT NAME: | ▮▮▮ | MRN: | ▮▮▮ |
| DOB: | ▮▮▮ | PT NO: | 47394770 |
| ADMIT DATE: | 11/09/2006 | DISCHARGE DATE: | |
| PT SERV: | SDS | RM#: | |

Electronically signed by Joseph Myers, MD at 11/14/2006 16:15:04 PST

Date: 11/09/06
Name:
DOB:
Medical Record#          IOC/Case #:70266 / 113181
Allergies? Y    Type: CODEINE,

**SURGICAL SERVICES
INTRA-OPERATIVE NURSING RECORD
AND PLAN OF CARE**

Nurses Notes:

## Implants

| Description | Quantity | Site | Mfg. | Catalog # | Lot # |
|---|---|---|---|---|---|
| DEVICE TVT 810041B | 1 | VAGINA | ETHICN | 810041B | 1224293 |

Product Traceability Label
TVT DEVICE 810041B
STERILE EO
LOT 1224293
GYNECARE
LCNP15805/B

OR/0481/R0296   Date: 11/09/06   Time: 1555   Signature: _____   (5)

Gavin, 1.3