```
1                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
2                              AT HUNTINGTON

3    _____x
                                     :
4    IN RE:                          :   MDL NO.
     ETHICON, INC.,                  :   2:12-MD-02327
5    PELVIC REPAIR SYSTEM PRODUCTS   :
     LIABILITY LITIGATION            :
6                                    :
                                     :
7
     _____x
8
     THIS DOCUMENT RELATES TO ALL CASES :
9    _____x

10

11              TELEPHONIC MOTION HEARING
            BEFORE THE HONORABLE CHERYL A. EIFERT,
12            UNITED STATES MAGISTRATE JUDGE
               WEDNESDAY, FEBRUARY 11, 2015
13

14

15

16

17

18            CATHERINE L. SCHUTTE-STANT, RMR, CRR
                 Federal Official Court Reporter
19                 300 Virginia Street, East
                          Room 6009
20                  Charleston, WV 25301
                      (304) 347-3151
21

22

23

24

25
```

```
 1    APPEARANCES:

 2           (VIA TELEPHONE)

 3    FOR THE PLAINTIFFS:     BRYAN F. AYLSTOCK, ESQ.
                              D. RENEE BAGGETT, ESQ.
 4                            Aylstock, Witkin, Kreis & Overholtz
                              Suite 200
 5                            17 East Main Street
                              Pensacola, FL  32502

 6

 7
                              DAVID MATTHEWS, ESQ.
 8                            Matthews & Associates
                              2905 Sackett Street
 9                            Houston, TX  77098

10

11
      FOR THE DEFENDANTS:
12                            MR. BENJAMIN M. WATSON, ESQ.
                              Butler, Snow, O'Mara, Stevens &
13                            Cannada
                              P.O. Box 6010
14                            Ridgeland, MS  39158-6010

15
                              RICHARD BERNARDO, ESQ.
16                            Skadden, Arps, Slate, Meagher &
                              Flom
17                            4 Times Square
                              New York, NY  10036

18

19
                              J.F.  KINSEL, ESQ.
20                            Cantey Hanger
                              Suite 300
21                            600 West 6th Street
                              Fort Worth, TX  76102-3685

22

23

24

25
```

```
 1              P-R-O-C-E-E-D-I-N-G-S
 2              Had before The Honorable Cheryl A. Eifert, United
 3    States Magistrate Judge, United States District Court, for
 4    the Southern District of West Virginia, at Huntington, via
 5    teleconference, on February 11, 2015, as follows:
 6              THE COURT:  Hello.
 7              UNIDENTIFIED SPEAKER:  Good afternoon, Your Honor.
 8              THE COURT:  All right, we don't have a court
 9    reporter with us today --
10              COURT REPORTER:  Excuse me, Judge Eifert, this is
11    Cathy.
12              THE COURT:  Oh, hi, Cathy, how are?
13              COURT REPORTER:  I am fine, thank you.  I just
14    joined the teleconference.
15              THE COURT:  All right, well let me go ahead then
16    and just state that we are here in the Ethicon Pelvic Repair
17    Systems product liability litigation, MDL Number
18    2:12-MD-02327.
19         We are here on a motion filed by Ethicon.  And I'm
20    going to ask counsel to go ahead and note their appearance
21    again since Cathy has just joined us, and I'll also ask you
22    to please state your name before you speak so she can get a
23    clear transcript.
24         So if plaintiffs would go first and note their
25    appearance.
```

1           MR. MATTHEWS:  This is David Matthews from

2     Houston, Texas, for plaintiffs.

3           MR. AYLSTOCK:  Good afternoon, Judge.  This is

4     Bryan Aylstock for the plaintiffs.

5           MS. BAGGETT:  Renee Baggett for the plaintiffs.

6           THE COURT:  All right.  Is that all for the

7     plaintiffs then?

8        (Yes, Your Honor.)

9           THE COURT:  All right.  Then on behalf of Ethicon?

10          MR. BERNARDO:  Good afternoon, Your Honor, it's

11    Richard Bernardo for Ethicon.

12          MR. WATSON:  Ben Watson for Ethicon.

13          MR. KINSEL:   J. F. Kinsel, K-I-N-S-E-L, for

14    Ethicon.

15          THE COURT:  Very good.  All right.  And I'll ask

16    you if you are on a landline, to please use the receiver and

17    not the speakerphone if it is possible since we do sometimes

18    have trouble picking everybody up.

19       Now, this is, as I said, a motion filed by Ethicon for

20    an order directing parties to coordinate resolution of the

21    discovery disputes between state and federal courts.  I have

22    looked at the motion.  I'll ask Ethicon to speak first about

23    it.  I'm not really certain I understand how I can help you.

24    So why don't you explain to me what it is you think that I

25    can do.

1       MR. BERNARDO:  Thank you, Your Honor.  This is

2    Richard Bernardo for Ethicon.  And as you stated, we're

3    asking for your assistance, Judge Eifert, in coordinating

4    between the MDL and a state court in Texas to address what

5    is a growing and significant privilege dispute that has

6    arisen in Texas.  And perhaps it would be helpful before I

7    get to the substance of what we're asking for to give some

8    context and background.

9       Over the last several years, Ethicon has been complying

10    with its discovery obligations in pelvic mesh litigation in

11    the MDL and in the individual state cases by making sure

12    that plaintiffs get the same documents both in the MDL and

13    in the state court.  We've been producing documents in

14    installments first in the MDL and then a duplicate set to

15    the state cases.  We do the same thing with respect to the

16    privilege logs.  We create it for the MDLs and we serve it

17    in the MDLs and then we make it available in the state

18    cases.  We've adopted this global production approach in the

19    spirit of coordination and fairness, so essentially

20    everything is available to all plaintiffs.

21       As to privilege, in particular, for the last couple of

22    years, Your Honor, it has been an informal procedure in the

23    MDL to address privilege challenges by plaintiffs.

24    Obviously in a case like this where I think the count is up

25    to about 20 million pages of documents, the privilege log is

1    enormous.  Therefore, the plaintiffs in the MDL have been

2    very good about identifying groups of documents on a

3    periodic basis that are of interest to them based on the

4    description of the logs, and after they identify them, we go

5    back and we look at our designations, we try and whittle

6    down ones where we might recognize, for example, if there

7    could be a disagreement among courts as to the privilege

8    status, or where we otherwise reconsider a designation.

9        We meet and confer with plaintiffs with an eye toward

10    narrowing the scope of any dispute that might have to get

11    raised with your Your Honor.  And I can say the process has

12    been working very well.  To date, we've responded to more

13    than 30 sets of challenges pertaining to more than 2,000

14    documents in the MDL process, and I don't believe we've had

15    to raise any issues with Your Honor yet.

16        I think that demonstrates a very successful and

17    cooperative process among the parties in the MDL.  As I

18    mentioned, this log is also sent to individual state cases

19    that are not part of the MDL.  And late last year we

20    received from a plaintiff's lawyer in a state case a

21    challenge to approximately 1,500 privileged documents from

22    the global production.  It was the Caviness (phonetic) case

23    in Texas.

24        And notably, the challenge in the Texas case was made

25    by one of the plaintiff's counsel in Texas who is also one

1    of the counsel appointed by this Court to serve on the MDL

2    Steering Committee.

3        Ethicon was troubled by what we perceive to be an

4    obvious attempt to sidestep the MDL privilege process and

5    create a separate duplicative process in the state court

6    case.  We think this is inconsistent with Ethicon's spirit

7    of cooperation and coordination regarding document discovery

8    and we think will inevitably lead to increased time and

9    resources by Ethicon to handle these challenges and more

10   importantly it will inevitably lead to inconsistent rulings.

11       We asked plaintiffs' counsel to raise their challenge

12   as part of the MDL process, but they wouldn't agree to do

13   that, so we struck what we thought was a fair compromise.

14   Despite our disagreement with proceeding both in the MDL in

15   Texas, we agreed that we would address their challenges on a

16   separate track and on an accelerated basis if they for their

17   part would agree to work with us to narrow the issues and

18   could come up with a coordinated procedure that would

19   involve a joint adjudication on these documents by Your

20   Honor and a Special Master in Texas so we can have a jointly

21   collaborated ruling that could apply to the MDL and apply to

22   Texas for all the documents that are obviously produced in

23   both cases.

24       Now, we reached this agreement two days before

25   Christmas, and I can represent that Ethicon's counsel worked

1    very diligently through the holidays to get -- go through

2    every one of the 1,500 documents and eliminate as many as

3    possible by the beginning of January and produce any

4    documents that we withdrew our claims on immediately.

5        Folks spent the holidays and whittled away 1,100

6    documents that we were able to identify as duplicitous; in

7    other words, several times you'll have a piece of the same

8    E-mail thread that appears in several different threads and

9    folks compared and, you know, said, okay, this one is

10   identical to a thread that is also being claimed as

11   privileged, so we can eliminate these from the discussions,

12   narrow the issues.  And through that process, we turned that

13   list into just under 400 documents.

14       Then we took further steps, thinking, again, that this

15   was a finite set of 1,500 that would be the challenge, and

16   we tried to eliminate more documents based upon a very

17   conservative read of the law and got rid of documents for

18   which we found there was a disagreement among the courts.

19   We did all of this because we understood plaintiffs agreed

20   to meet and confer with us to discuss coordination and

21   narrow the issues.

22       Now here we are, it's a month later, the middle of

23   February -- more than a month, and as of this date

24   plaintiffs have not met and conferred with us.  More

25   importantly, they've withdrawn their agreements to

1    coordinate resolution with the MDL case, and they've

2    indicated that they plan to challenge the entirety of the

3    logs that Ethicon has submitted in the MDL in the Texas

4    proceeding alone.  In fact, we had to go to the Texas judge

5    late last week and ask him to order the plaintiffs to meet

6    and confer with us.  And, in fact, I'm speaking to you from

7    Dallas, Your Honor, because I'm here with one of my

8    colleagues so we can finally sit down with them tomorrow.

9         Now, I apologize for that long background, but I think

10   it's important to provide you with a context of what is

11   going on here.  So what are we asking for?

12        We'd really like Your Honor to tell a member of the

13   Steering Committee in the MDL that he shouldn't be

14   circumventing the MDL discovery and going to another court

15   where they expect they might get a more favorable ruling.

16   It's not right, it's not fair, especially after we reached

17   an agreement.

18        At the very least, Your Honor, we're asking for this

19   Court to work with the parties and the court in Texas to

20   come up with a coordinated procedure for resolving the

21   privilege dispute that includes the input of this Court as

22   well as the Texas court.  You can imagine what would happen

23   if every court in the individual state cases that aren't

24   part of the MDL tried to do what is being done here.

25        One of the very purposes of an MDL is to eliminate

1    duplicative discovery, which obviously results in

2    unnecessary expense, delay, and works against both sides.

3        Naturally, there's some cases that are not removable;

4    therefore, we think it's especially important for federal

5    coordination with the state in discovery issues, as it

6    serves the interests of all parties.  This idea is not only

7    recognized by the manual for complex litigation and numerous

8    other commentators in cases, but it's also recognized by

9    this Court.  In fact, PTO Number 4, which we provide a copy

10    of in our brief in the MDL is largely about coordination

11    and talks about the appointment of a steering committee to

12    coordinate, not to avoid coordination.

13        Judge Goodwin has on occasion also commented that the

14    lawyers in the state cases need to be considerate of the MDL

15    process.  Our motion cites to a number of precedence in

16    other MDLs --  I won't take the time to repeat them all,

17    but I'll highlight, for example, in the Bextra and the

18    Celebrex MDLs, where the parties appointed a joint Special

19    Master so they could adjudicate issues that arise both in

20    the state and cases in the MDL.

21        In the Yaz and Yasmin cases, Judge Herndon also had a

22    very detailed discovery protocol that required disputes in

23    the state cases to get copied to him so he can consult with

24    the various state court judges and resolve disputes.

25        And we think a coordinated approach would work well

1    here, especially given the breadth and scope of what we

2    understand is coming defendants' way in terms of challenges.

3         So we respectfully request, Judge Eifert, that this

4    Court essentially order the members of the Steering

5    Committee on the MDL to work with the MDL and not abandon

6    the process and just work exclusively in Texas.

7         We have a filing deadline that is now upon us in Texas

8    for a week from Monday to submit our substantiation of our

9    privilege claims, and we'd very much like to file that in

10   the MDL, as well, again, so we can seek coordination.

11        Thank you, Your Honor.

12             THE COURT:  All right.  Who would like to speak on

13   behalf of the plaintiffs'?

14             MR. AYLSTOCK:  Judge, this is Bryan Aylstock.

15   Dave Matthews is involved in making the case in Texas; I am

16   not.  (Inaudible.)  But given the very lengthy colloquy of

17   Mr. Watson -- or, I'm sorry, Mr. Bernardo, that I think is a

18   little misleading, can I comment generally on the MDL

19   process and how that's been going, and then turn it over to

20   Mr. Matthews?

21             THE COURT:  Certainly.

22             MR. AYLSTOCK:  Well, Mr. Bernardo made comments

23   about duplicative discovery and end-runs and agreements to

24   coordinate.  There is a process in the MDL that challenge

25   privileged documents, as you are aware.  A couple of

1    thousand have been redesignated because of that.  But,

2    frankly, we have been so focused on getting what we needed

3    to get for these trials, we have not undertaken any sort of

4    an overall review of the privilege log in any great detail,

5    and based upon the challenges we have made, a large number

6    of them ended up not being privileged and shouldn't have

7    been on the log in the first place.

8         There's tens of thousands I think on the privilege log,

9    Mr. Bernardo can correct me, but, this is not a case where

10   anybody, to my knowledge, is seeking to duplicate or end-run

11   anything before Your Honor or Judge Goodwin.  None of these

12   documents, to my knowledge, have even been challenged in the

13   MDL, nor is there a motion pending.  So I don't see how this

14   is duplicative at all of what the MDL is doing.

15        And with regard to coordination, I mean, I do know Mr.

16   Matthews very well, and I don't think there's an issue with

17   regard to some rogue (inaudible) team member trying to do

18   things that undermine or circumvent some order or motion

19   pending in its MDL.  I think it's simply a situation where

20   the MDL, you have lawyers in the middle of trial right now

21   and more coming up.  We just haven't teed this up.  I don't

22   even know what documents they are, and I don't know what law

23   applies, and I'm not involved in the Texas case, but to

24   suggest that somehow somebody is trying to duplicate

25   discovery or circumvent some pending motion with this Court

1    I think is a bit too far.

2            THE COURT:  All right.  Then is it Mr. Matthews

3    who is going to respond to the motion?

4            MR. MATTHEWS:  Yes, Your Honor.  David Matthews

5    for the plaintiff.  I do think that our response is due on

6    Monday.  We are, of course, still putting our written

7    response together.  We were hoping to have our

8    meet-and-confer tomorrow at 10 o'clock in Dallas, and to

9    incorporate what happens during that meeting to also

10   incorporate in our response.

11       As a little bit of background in the case, my firm and

12   the Freese law firm, we -- Tim Goss and David Matthews, we

13   are both on the Plaintiffs' Steering Committee.  Outside of

14   that, we have also tried a TVT-O case in Dallas, Texas, the

15   Batiste case.  And then an Obtryx case, also in Dallas, also

16   in Judge Molberg's court.  And Judge Molberg is the

17   coordinating judge in Dallas District Court.  Because of

18   that reason, the fact that we have had quite a bit of

19   experience in mesh cases in the past, in fact, Mr. Goss is

20   in trial right now, in Bakersfield, California, one of the

21   reasons he can't be on this call, and that's also against

22   Ethicon.  They're in about the third week of trial.  So

23   we've had a great deal of experience with mesh cases.

24       I bring that up, because we were contacted by a lawyer,

25   Bill Blankenship, whose -- who is the lawyer that has this

1    case called the Caviness case in Dallas County.  This is his

2    case.  He contacted us for help for, as you might suspect, a

3    variety of reasons, one, being experience; two, being

4    experts; and three, being we have knowledge about the mesh

5    products.

6         Now, this particular product is a Prosima product at

7    issue.  This entire privilege log came about back in

8    November 7, 2014, when Bill Blankenship contacted Carol

9    Traylor, who is lawyer for Ethicon, at Cantey Hanger.  And

10   he wanted to know and requested of her our local Texas Rule

11   193, the identification of withheld material.  And that

12   started this whole thing.

13        Upon that -- and in addition to that, we had trial

14   setting in April, so, he was very specific, and then we

15   assisted, because we've had, you know, a great deal of

16   contact, of course, with Ethicon over the years.  So we have

17   certainly not tried to circumvent any duties.

18        I've been on over ten MDL PFCs over my career, and I

19   certainly have tried in every way perceivable -- this is not

20   vast circumvention.  In fact, we have specifically looked

21   for documents pertaining to the Prosima product.  This

22   started, and we've had, at the last count, over 18

23   discussions with Ethicon about this very issue.  And we

24   boiled down some 1,500 document requests down to 174

25   documents.

1     We are meeting tomorrow at 10 o'clock.  The judge has

2     ordered us to meet and confer one last time before hearing.

3     This is something -- obviously states have different

4     standards interpreting privilege law.  Judge Molberg is

5     directing us to meet and then we'll set a hearing on this

6     very privilege log issue pertaining to the 174 documents.

7     We may be able to decrease that after our meeting tomorrow.

8     We plan on meeting as long as we need to, to go over each

9     and every document.  Obviously, we don't have the documents,

10    but we have their log list, which has a description of the

11    document, the author, who it's from, who it's to, and then

12    the privilege narrative.

13        So we plan on following the Court's order.  This is Mr.

14    Blankenship's case.  We continue to assist.  This has never

15    been brought before the federal MDL where Your Honor

16    presides.  And we're doing as directed by the Court.

17        THE COURT:  I guess -- I guess where I'm a bit

18    confused, I'm not really certain what it is that Ethicon

19    thinks that I can do .  Maybe I'm not understanding the fact

20    scenario, but the way I read the motion, as I understand it,

21    in Texas, in a pending state case, the plaintiffs are

22    challenging the privilege designation of certain documents.

23    And that matter is now pending in front of the judge in the

24    Texas state court.  And the judge apparently is going to

25    have some sort of a hearing on that, and perhaps even

1    looking at these documents in camera.

2              UNIDENTIFIED SPEAKER:  That's correct, Your Honor.

3              THE COURT:  I don't quite understand what

4    coordination I can really do about that.  I mean, I really

5    don't understand what it is I can do.  I can't order -- I

6    can't -- I don't really feel that I have any authority to

7    tell these lawyers who have a case pending in the state that

8    they're not allowed to ask a judge in another case to make

9    rulings on matters simply because those rulings might affect

10   the MDLs.  I do agree with you, I think coordination is very

11   important.

12       There's no motion pending in front of me on these

13   documents, so I don't -- I don't see that there's a

14   coordination issue in that regard.  I could see it more as a

15   coordination issue if I had the very same motion currently

16   pending in front of me, then I could see where it would be

17   important for me to at least have some contact with the

18   judge in Texas and make sure that we're on the same page in

19   some regard.  But I'm not really certain what, you know,

20   Ethicon thinks I can do about this .

21       I mean, the judge in Texas needs to make decisions in

22   the Texas case.  And I don't really know what I can do or

23   would want to do about that.  I guess I'm just really not

24   understanding what it is you want me to do.  I mean, I hear

25   you say you want me to order the lawyers in the MDL to

1    coordinate.  But coordinate what?

2        I think there's already a motion pending in front of

3    the judge in Texas.  So what am I supposed to coordinate?

4        MR. BERNARDO:  Your Honor, this is Richard

5    Bernardo.  Coordinate the resolution of issues that have

6    broad-sweeping applicability.  There are a couple of things

7    that were said that I feel the need to correct that are

8    important.

9        First of all, the not duplicative.  There are indeed

10   documents that are part of this challenge that overlap the

11   very same documents that have been challenged in the MDLs,

12   so the process is duplicative.  And contrary to Mr.

13   Matthews' statements, we've been told that after they

14   challenge these 174, they're going to go after all of the

15   documents on Ethicon's privilege log, which creates an

16   unworkable situation.

17       If every state court proceeding in which Ethicon files

18   this privilege log entertained challenges and Ethicon has to

19   defend its privileged documents in each of these cases, it

20   would totally consume all the parties' time.

21       Mr. Aylstock says that the MDL doesn't have enough time

22   to address privilege issues.  Well, there are a lot of

23   lawyers that were appointed to the plaintiffs various

24   committees and they ought to be making the time to ensure

25   that the very same documents that are being produced in the

1    spirit of cooperation in both the MDL and the state cases

2    are resolved with respect to privilege in a harmonious

3    manner that takes into account Your Honor's input as to

4    privilege.

5        And one thing we could suggest, Your Honor, is to reach

6    out to Texas and ask if the MDL can participate in the

7    review of the same documents and issue rulings with respect

8    to the same documents so there could at least be a

9    coordinated effort between the cases.  That's been done in

10   other MDLs as well.

11       We really feel like this is an obvious attempt to do an

12   end-run around the very core of the MDLs' purpose, which is

13   to facilitate coordination.

14       So, as I said, I think there are a number of things

15   that could be done.  The plaintiffs can be ordered to

16   address the same documents in the MDL that are being

17   addressed in the Texas case, or to initiate the same

18   challenges so they could be adjudicated in a consistent

19   manner.

20       THE COURT:  Maybe going forward -- perhaps going

21   forward something like that could be done.  I don't know

22   what can be done right now about the case pending in Texas,

23   because it sounds like there's already a motion in front of

24   the judge in Texas.  And there is no motion in front of me.

25   And I don't -- what I'm trying to say is, I don't have any

1    real authority to call up the judge in Texas and say, I

2    don't want you to do anything.  You know, I want to also be

3    involved in your decision, because, you know, frankly, when

4    you look at federal law on privilege, whether or not a

5    privilege exists is generally going to be determined by

6    state law.  Whether the privilege is waived is determined by

7    federal law in the federal court, but the existence of the

8    privilege is a matter of state law.  So it would be the --

9    the person who's not the expert telling the person who is

10   the expert, I don't want you to make a decision until I can

11   participate with you in that decision.

12       And I don't know that that would be a comfortable

13   position for me to be in.

14       Now, going forward, I understand what you're saying.

15   Perhaps what I can do is say to the MDL lawyers, when you're

16   going to file a motion like this, and you're going to bring

17   an issue like this up in a state case, you also need to file

18   that same motion here in the MDL so that there can be some

19   sort of coordination, so that we're all on the same page and

20   all of the -- but ultimately, I don't, I really don't have

21   any control over what the judge will do in the state

22   jurisdiction.

23           MR. BERNARDO:  Judge Eifert, this is Rich Bernardo

24   again.  We would be appreciative if Your Honor would

25   order -- issue such a ruling, because, in addition to these

1    174 documents that are now at issue, we have the concern

2    that we're going to be litigating from now until kingdom

3    come the remaining documents on the privilege log, some of

4    which we've already worked with the leadership in the MDL to

5    discuss and meet and confer on.

6        So we would be appreciative if Your Honor would do that

7    on a forward-going basis.

8        As to the law, Texas law follows Section 139 of the

9    restatement on privilege, which basically looks to the

10   statement of the most significant relationship with respect

11   to a communication, which is going to be in these documents

12   in New Jersey (inaudible) given the communication, so both

13   the federal court and the Texas court would be looking to

14   another state law, so you'd be on equal footing, if you

15   will, but --

16           THE COURT:  Mr. Bernardo, I'm sorry, to interrupt,

17   but does everyone agree that it's going to be New Jersey law

18   that will govern?

19           UNIDENTIFIED SPEAKER:  We haven't met and

20   conferred, Your Honor, so I'm not prepared to say there's

21   any agreement.  Our papers that we will be submitting will

22   set forth our position with respect to the law, but I can't

23   say that the parties agree on that.

24           MR. AYLSTOCK:  And frankly, Judge, I have not --

25   this is Bryan Aylstock -- I haven't looked at it.  I will

1    say that I think Mr. Matthews makes an excellent point in

2    that this is a Prosima case proceeding in Texas.  The MDL --

3    we don't have a Prosima case even on the radar at this

4    point, nor have we really done much Prosima discovery.  And,

5    you know, I'm happy to coordinate with Mr. Matthews.  He and

6    I have known each other for a very long time, but we're --

7    we're paddling upstream as fast as we can.  We have the

8    Bellew case; we have another TVT case set, and to order us

9    to file and then argue and then be prepared to brief and

10   everything else a bunch of documents that may or may not be

11   relevant to the issue at hand in the MDL in a state that we

12    -- or, at least, speaking for myself, I have nothing to do

13   with, I think is a bridge too far.

14           THE COURT:  Well, I think for me, the first issue

15   is this whole issue about what law is going to govern.  I

16   mean, just in thinking, I haven't -- I have really not

17   thought this through.  I just -- I've just looked at your

18   motion, and I saw where there was to be a February 17th

19   hearing in front of the judge in Texas, and I thought to

20   myself, well, we ought to at least talk about this on the

21   phone so I can get some idea of what it is that you want.

22       But in thinking this through, you know, hopefully

23   everyone will agree that it's New Jersey law that governs,

24   because if you're going to have to go from state to state to

25   state to state and figure out what the privilege law would

1    be in each one of those states, that will be a nightmare in

2    and of itself.  I mean, that would be an absolute nightmare.

3    So, you know, that is one thing that I think would be nice

4    to get settled.

5        And I think if that is settled, then I could see where

6    coordination with the MDL would make a lot more sense.

7        As far as the Prosima issue, Mr. Aylstock, they're

8    saying in their brief that a lot of these documents don't

9    concern just that device; that these are documents that sort

10   of are across-the-board documents.  So they are documents

11   that would impact issues in the MDL.  So I'm not so worried

12   about that, the device so much as -- what I can't get my

13   mind around is do I really want to be involved in each state

14   court, trying to decide whether a particular document is

15   privileged or not under their state law, which hopefully

16   that is not going to be the end result.  And, you know, I

17   don't want to do that, obviously, for many reasons.  But --

18              MR. BERNARDO:  And, Your Honor, Rich Bernardo --

19              THE COURT:  I'm just trying to figure out what the

20   practical way to handle this is.

21              MR. BERNARDO:  Your Honor, Rich Bernardo again.

22   To the Prosima point, I must confess a little bit of

23   confusion, because having been through these documents,

24   they're not Prosima documents.  Maybe that was the intent of

25   searches, but they're documents of a general nature that

1    apply in many respects to all products.  But as to the law

2    issue, the very scenario you were talking about where going

3    from one state to the next is exactly what we're trying to

4    avoid and exactly what we think the MDL could hopefully

5    avoid by looking at the issue of the choice of law and

6    issuing a ruling that other state courts might -- maybe they

7    disagree with it, but at least there's a ruling by the Court

8    that is adjudicating the claims with respect to tens of

9    thousands of these plaintiffs and speaking to the choice of

10   law issue.  And we would be happy to make a submission or an

11   application to this Court to try and sort through that issue

12   if that would be appropriate.

13          THE COURT:  I think that would be a place to

14   start, as, again, I don't think there's much I can do about

15   the issue currently pending in Texas.  I mean, if there's

16   already a motion pending in front of the judge there, I

17   don't know what I can do about that.  But I do think going

18   forward, I think the first issue would be to figure out if

19   it is going to all be determined by New Jersey law.  And I

20   don't even know whether you have to do -- what kind of

21   analysis you would have to do to figure out the choice of

22   law.  That's even going to vary from state to state.  I

23   don't know, because I haven't given it enough thought.

24          MR. AYLSTOCK:  Your Honor, this is Bryan Aylstock

25   again.  Again, I'm reaching way back into my memory banks,

1    but I do believe the issue as you started this conference

2    with is the issue of privilege is determined by state law,

3    and state law will use their each individual choice of law

4    determination.  So even if Texas would apply New Jersey law,

5    maybe most states do under the same section of the

6    restatement, but I think there is some variance and

7    different judges can interpret it differently.  You know, I

8    think that this is a limited issue at this point.

9         The judge down there obviously has it teed up and, you

10   know, frankly, I'm -- I'm extremely busy right now trying to

11   prepare for not just Ethicon trials but a lot of other

12   things, and given that this isn't an MDL issue, and we've

13   focused on many other things, I would not want to take on

14   another brief writing job two weeks before trial.

15        THE COURT:  Well, I do think that this is an MDL

16   issue.  This is a huge issue, a huge and confusing issue.

17   And it could be an absolute nightmare to have.  Because what

18   happens, Mr. Aylstock, is if one court (inaudible) -- you

19   know, says the document is not privileged, then suddenly

20   it's out there and it's -- even if I would think it was

21   privileged, now it's no longer privileged.  I mean it could

22   just be an absolute nightmare.  So I think it is something

23   that we'd better look at now.  I'm not saying you have to

24   drop everything and do this today.  But I think it's

25   something we need to get -- we need to get it on our radar

1    and start doing the briefing before there are other courts

2    out there that start one by one releasing documents.  I do

3    think it's a huge issue.  And, frankly, it's one I hadn't

4    thought of.

5        I guess this has come up in the context of discovery,

6    but, you know, it's an issue that's going to -- it's going

7    to be across-the-board a huge issue.  So I do think it's

8    something that Ethicon ought to raise in the MDL.  I don't

9    know how you would raise it.  I don't know what you would

10   call your motion.  You know, I'm sure you can be creative

11   and think of something.  I don't know if it's a motion for

12   protective order; I don't know what you would call it.  But

13   I think that the issue needs to be brought to this Court and

14   there needs to be some determination made of whether it's

15   going to be done on a state-by-state basis, or whether there

16   is going to be one law that applies.

17       And if there is one law that applies, then I feel much

18   more comfortable saying, yes, we need to coordinate this,

19   and there needs to be some sort of process put in place

20   where the attorneys are all on the same page, and they're

21   helping me coordinate with the other judges out there that

22   are considering the issues so that I at least know who's got

23   the motions pending so I can make some contact with them and

24   say, hey, are you willing to work with me, and what can we

25   do to resolve these issues together.  I would like to be

1    able to do that, because I do think it's going to affect all

2    of us.  And I'm certainly not territorial about these

3    things, but I'd like to at least know what's going on.

4        So I do think Ethicon should bring up the issue.

5              MR. BERNARDO:  Your Honor, this is Rich Bernardo.

6              THE COURT:  Yes.

7              MR. BERNARDO:  First, thank you.  We think it

8    would be helpful, and we will initiate doing that to work

9    with the leadership of the MDL to try and come up with a

10   procedure, because I also think, and based upon my

11   experience and experiences in other large MDLs, when the MDL

12   court addresses privilege issues, that has, for lack of

13   better description, a kind of deterrent effect on lawyers

14   trying to form shop.  I would dare say, if there had been a

15   challenge that had been adjudicated through the MDL and

16   decisions rendered, that lawyers probably wouldn't be trying

17   to take the privilege log and bring it to a state court and

18   do all the work in the state court.  I think that's what's

19   going on right now.  But I think that a coordinated process

20   would be very helpful, and we will be creative in trying to

21   come up with an application to Your Honor.

22       I would also say in terms of timing with respect to the

23   present motion, one of the reasons we went to Judge Molberg

24   last week -- and Mr. Kinsel here with me is the one from

25   Texas who went to Judge Molberg -- was to try and put the

1    Texas motion on hold for at least some time for us to be

2    able to talk to you and meet and confer with plaintiffs.

3    Because we had all along been expecting that this was going

4    to be a coordinated effort, but, at the last minute,

5    plaintiffs changed their minds for reasons maybe I'll find

6    out tomorrow when we meet with them.

7         But the hearing in Texas on this motion is not on the

8    17th.  It hasn't been set yet.  We're ordered to submit our

9    papers in the Texas court on -- Ben, help me here -- on the

10   ten days -- I think it's a week from next Monday.  And one

11   possibility, Your Honor, is, may we submit the same

12   submission which has a brief, a legal brief on the choice of

13   law components, as well as a document-by-document analysis

14   of the 174 documents at issue to the MDL court concurrently

15   with the Texas court?  I mean that's one way that we could

16   start to establish a going-forward procedure.

17        THE COURT:  Certainly.  Well, I thought I read

18   here, it says, plaintiffs' motion for in camera inspection

19   of withheld documents by defendants Johnson & Johnson and

20   Ethicon, Inc., based on assertions of privilege, dated

21   December 12, 2014, and presently scheduled for hearing on

22   February 17, 2015.

23        UNIDENTIFIED SPEAKER:  Yes, Judge, you're correct,

24   Your Honor, it has changed as of last Friday.  I'm sorry, we

25   hadn't filed the supplemental paper.  That's what the

1    purpose of this hearing in Texas was last Friday, to ask for

2    relief from that hearing date and from that filing date so

3    we could have the opportunity to speak with you.

4        And I think the soonest the hearing would be, in Texas,

5    would be the end of this month.  It hasn't been scheduled

6    yet, and that's why we're meeting and conferring tomorrow.

7            THE COURT:  I see.  Okay.  So that's why I -- I

8    just kind of rushed to have this phone call today, because I

9    thought you had a hearing on the 17th and I was trying to

10   figure out what was going on.

11           UNIDENTIFIED SPEAKER:  We appreciate that.

12           THE COURT:  Okay.  Well, okay.  Yes, well,

13   certainly, why don't you file whatever it is that you want

14   to file, and I will do whatever I can do to help.  And

15   certainly -- I don't know, has Judge Molberg already

16   appointed a Special Master?

17           UNIDENTIFIED SPEAKER:  No, Judge, he has not.

18           MR. MATTHEWS:  Judge, this is David Matthews for

19   the plaintiffs.  One of the issues in the case, obviously,

20   is the variance between states.  And I think this is very

21   significant, although it would be nice to have simplicity

22   and similar rulings, there simply is a great deal of

23   difference between states.  In particular, Texas discourages

24   special masters for privilege law issues.  And, in fact, a

25   Dallas County, or Dallas District Judge had an issue with

1   that recently.  So I think Judge Molberg would not appoint a
2   Special Master.  But that brings up the issue of the
3   differences between states.  And, you know, we do have a
4   trial setting upcoming in September.  It was just recently
5   moved from April to September.  So we -- we will be pushing
6   forward on issues concerning the Caviness production and
7   privilege as soon as possible.
8           THE COURT:  Well, at least you do have some time
9   to work with.  Well, all right.
10          MR. AYLSTOCK:  Judge, this is Bryan Aylstock
11  again.  I appreciate your comments.  The only additional
12  thing I might have to add about the consistency point is I
13  know the New Jersey contingency and Judge Martinotti now is
14  certainly engaged in that, so if we're going to have that
15  effort, particularly given New Jersey law might be applying
16  at least to some states, might be good to loop them in as
17  well.
18       Mr. Slater is the co-lead liaison for that.  So I just
19  wanted to point that out.  I know Judge Goodwin indicated at
20  the hearing that he's already spoken to Judge Martinotti,
21  and I think both judges are hitting on all cylinders for the
22  upcoming trials now, which is probably what happened in the
23  hearing on New Jersey in Thursday.
24          THE COURT:  Well, I guess what I'm going to do
25  then is I'm going to grant their motion for an order

1   directing the parties to coordinate the resolution of this

2   particular issue.  And I'm not going to really say any more

3   than that at this point.  We're going to have to figure out

4   what that means.  I hate to issue orders that don't say

5   anything in black and white or don't -- I don't like

6   nebulous orders.  I like my orders to be really clear and

7   tell you, you've got to do this, by this date, and it means

8   this.

9        But I do think that this is a huge issue that needs to

10  be resolved with input from the MDL, and as many other state

11  judges that currently have the issue in their radar, I would

12  think that the other judges that currently don't have it in

13  their radar will be happy if it's resolved by the time it

14  gets in their radar, because I don't know why anybody wants

15  to resolve these kinds of issues.  I mean, I think most

16  judges would be happy to have had somebody else already do

17  the work, because -- you know, I don't think the judge

18  really cares one way or the other.  They just want the right

19  answer, the fair answer.  So --

20            MR. AYLSTOCK:  Again this is Bryan Aylstock.  You

21  know, I'm not exactly sure what that order would mean

22  either.  I wouldn't want it to be interpreted by anybody on

23  this call to suggest that any state court judge can't do

24  something, or isn't -- it shouldn't -- I don't think we've

25  come anywhere near the legal requirements for an all writs

1    act type order.  And I do think that Judge Goodwin and also

2    Judge Martinotti would say at the hearing that neither judge

3    is going, you know, try to see which judge can be more

4    deferential to the other, so just in the interest of

5    (inaudible) -- I would -- you know, I would want to make

6    that clear.

7              THE COURT:  No, I'm not telling the judges they

8    have to do anything.  I'm telling the parties that they have

9    to coordinate -- they have to work together to coordinate a

10   resolution.  I'm not trying to tell the judges they have to

11   do anything, because, frankly, I can't tell the judges to do

12   anything.  And even if I did, they wouldn't listen to me.

13   And they wouldn't have to.

14     I know where my place is in the whole scheme of things.

15   So, but, I do -- I can tell the parties in this MDL that

16   they need to coordinate this issue, and that's what my order

17   is going to say, they need to coordinate the issue, and we

18   need to get on this issue.

19     It sounds to me like the plaintiffs want it resolved.

20   It sounds like Ethicon wants it resolved.  It sounds to me

21   like a big issue.  And, like I said, frankly, it's one I

22   hadn't really thought of, but it could be any -- anywhere

23   from something fairly easy to an absolute chaotic nightmare.

24   So I think it needs attention sooner rather than later.

25              (Speaking over one another.)

1            MR. BERNARDO:  Your Honor, this is Rich Bernardo.

2    We will try and do what we can to try and make it a simple

3    and streamlined process, and maybe starting with these

4    documents at issue may help guide the parties in terms of

5    other issues.

6            THE COURT:  The first thing I want from Ethicon is

7    some kind of a motion filed.  And I think the motion's got

8    to address the choice of law.  And, I mean, I -- you know, I

9    think to me, I don't -- as I said and I think as Mr.

10   Aylstock followed up on, I'm not sure even that issue is

11   going to be the same from state to state.  Hopefully it will

12   be, or there would at least be a majority of jurisdictions

13   that would agree that it's either done on a state-by-state

14   basis or it's going to all be governed by New Jersey law.

15   But that to me is the major issue.

16       I think from the standpoint of the MDL, the involvement

17   of the MDL in the actual reviewing of the documents is going

18   to depend a great deal on whether New Jersey law governs or

19   individual state law governs.  Not to say that the MDL won't

20   still be involved, but I think that there will be a

21   difference in the level of involvement.

22       If that makes any sense.  Does that make sense?

23           UNIDENTIFIED SPEAKER:  It does, Your Honor, it

24   does and we will prepare a submission that addresses that

25   for you.

1          THE COURT:  All right.

2          UNIDENTIFIED SPEAKER:  I think it does, Your

3     Honor.  David, do you want to say something?

4          MR. MATTHEWS:  Yes.  David Matthews, Judge.  One

5     of the issues, and I brought this up initially, this case,

6     although we have filed -- my law firm has filed cases in the

7     MDL around the country, this is not our case.  We have been

8     brought in to assist Mr. Blankenship, and, in all honesty,

9     I've not even met his client.  This is an issue that really

10    is his issue.  We will of course do our best, but I cannot

11    guarantee -- you know, I'm on the PFC, and I respect that,

12    but at the same time this is not our filed case.

13         So, you know, decisions that we made of course to best

14    protect his client and representing his client will be made

15    in the future, so that's really all I can say.  So I just

16    wanted to alert the Court to that.

17         THE COURT:  Well, of course, fortunately for you

18    the pleading that has been filed in the MDL is only filed as

19    it relates to all cases in the MDL.  So there's no filing in

20    the MDL that applies to that Texas case.  They've filed a

21    separate -- they filed the same pleading in the Texas case,

22    but the only pleading currently pending in the MDL, so the

23    only order that I can issue, and the only order that demands

24    that people do anything is filed in all, as it relates to

25    all MDL cases.

1    So the guy in Texas doesn't have to do anything.

2              MR. MATTHEWS:  I understand.

3              THE COURT:  Do you see what I am saying?  So Mr.

4    Blankenship only has to do whatever Judge Molberg tells him

5    to do.  He doesn't have to listen to me.  He's not in the

6    MDL, is he?

7              MR. MATTHEWS:  No, he's not.

8              THE COURT:  Okay.

9              MR. AYLSTOCK:  Your Honor, Bryan Aylstock again.

10   While I have the parties on the phone, there is one

11   coordination sort of related issue that has arisen from the

12   Perry trial in Bakersfield.  And that is an issue with

13   regard to the authenticity or status of business records of

14   the ETH.MESH documents, the documents produced by Ethicon

15   from their files.  Distinguish that from the issue of

16   foundation, which I know having spent many hours with you,

17   is, is important that a witness, at least a noncorporate

18   witness or noncorporate representative may have seen the

19   document or had some reason to have seen it.

20       But in Bellew, we have 200 -- we cut our lists way down

21   and we've go about 275 ETH.MESH documents.  And what I'm

22   trying to get a handle on is for those where Your Honor

23   hasn't already ruled on them on the admissibility on the

24   context of the depo designations.  If I could get them --

25   them being Butler Snow, or J & J to tell me of those

1    remaining documents which are not -- which they will not

2    stipulate to authenticity or status of business records,

3    that would help us going into this trial.  And we've had a

4    lot of E-mails going back and forth, but given the limited

5    number, you know, I would hope that we could do that.

6        I know we do have a hearing.  I just wanted to

7    highlight with your Your Honor, I just wanted to highlight

8    that as a potential issue that may come up if we can't get

9    an agreement that they will at least let us know which

10   ETH.MESH documents they claim are not authentic or business

11   records.  That happened in the Bakersfield case.

12           THE COURT:  Right.  So that needs to be done.  I

13   mean there's -- you know, at least you can tell each other

14   what you're willing to stipulate to and what you're willing

15   not to stipulate to.  And I'm not saying you have to

16   stipulate to anything, but you can at least tell each other

17   what you're willing to do and not do.  And that should be

18   done before you come here on the 25th.  For everything,

19   everything that's out there, you should know by the 25th.

20           MR. AYLSTOCK:  And I suggested if they're not

21   going to stipulate to authenticity or business records, we

22   may need a deposition.  Obviously, the hearing is very

23   close, so if we could just get over that issue.  Again, I'm

24   not talking about whether a document is admissible or

25   whether it can be used with this witness or that witness,

1    simply whether the document is what it purports to be and

2    came from the business records of Ethicon in the ordinary

3    course of business.  That's all I'm asking for an agreement

4    on.

5           MR. BERNARDO:  Judge Eifert, this is Rich

6    Bernardo.  I apologize.  I'm not the person who has been

7    involved in that, although I have been copied and seen some

8    of the communications, and I'm not clear what Mr. Aylstock

9    is asking for.  I don't think he's asking for a stipulation

10   as to 20 millions of pages of documents that have been

11   produced, but I will say I know that Ms. Jones has been

12   communicating with him as recently as yesterday and they

13   continue to communicate.  And I would suggest that they do

14   that, and if there's not some agreements that they reach,

15   that they can come back to address it, because I'm not in a

16   position to address whether or not what Mr. Aylstock is

17   asking for is appropriate or not, and I know there have been

18   other communications on this as recently as today.

19          MR. AYLSTOCK:  It's simply the 278 ETH.MESH

20   documents -- (inaudible) -- all are cut down and --

21   (inaudible.)  I just don't want to be caught at trial --

22          MR. BERNARDO:  Sure, I understand, Bryan.

23       This is Rich Bernardo again.  And I know we'll work

24   with you.  I'm simply saying I'm not in a position to chime

25   in as to what our position is on those 278 documents,

1    because I've just not been involved in that specific issue.

2            THE COURT:  Right.  And I don't expect you to do

3    it right now on the telephone.  I'm just saying, by the

4    25th, everybody ought to know what they're willing to do,

5    what the other side is willing to stipulate to and what

6    they're not willing to stipulate to.  Because that's not a

7    big issue.  It's not a big deal.  You've had plenty of time

8    to do it.

9        How many days is Judge Goodwin giving you for trial

10   this time around?

11           MR. AYLSTOCK:  Seven trial days, three and a half

12   per side, Your Honor.   So we have a very quick trial.

13           THE COURT:  It's going to be a quick trial.  And

14   you're really not going to put 278 documents in, but  -- I

15   would say it may only be a handful of documents, it should

16   be pretty easy to know what you're going to stipulate to and

17   not to.  But even if it is 200, you ought to be able to do

18   that by the 25th, so -- so why don't you get guys get that

19   done so when you come we're all ready to go?

20           MR. AYLSTOCK:  Yes, Your Honor.

21           UNIDENTIFIED SPEAKER:  We'll work it out, yes,

22   Your Honor.  Thank you.

23           THE COURT:  Very good.  All right.  Is there

24   anything else then?

25           UNIDENTIFIED SPEAKER:  Nothing from defendants,

1    Your Honor.

2          THE COURT:  All right.  Well, then we will wait

3    for Ethicon to make its motion.  And then at that point, I

4    don't believe we need any expedited briefing schedule,

5    because once you make your motion, the plaintiffs will have

6    17 days to respond.  And then you'll have ten days after

7    that.  And we can look at it at that point.  And maybe you

8    can also be in that period of time trying to figure out

9    what -- what else might be going on out there that would be

10   related to this issue.  Okay?

11         UNIDENTIFIED SPEAKER:  We'll do that, Your Honor.

12   We appreciate your guidance on the issue.  Thank you.

13         MR. AYLSTOCK:  Thank you, Judge.

14         THE COURT:  Thank you.

15         UNIDENTIFIED SPEAKER:  Thank you, Judge.

16         THE COURT:  Thank you.  Bye-bye.

17      (Proceedings concluded at 2:57 p.m.)

18

19

20

21

22

23

24

25

1               CERTIFICATE OF OFFICIAL REPORTER

2          I, Catherine L. Schutte-Stant, Federal Official

3  Court Reporter, in and for the United States District Court,

4  for the Southern District of West Virginia, do hereby

5  certify that the foregoing is a true and correct transcript

6  of the stenographically reported proceedings held in the

7  above-entitled matter.

8

9              Dated February 13, 2015.

10

11          /s/ CATHERINE L. SCHUTTE-STANT, RMR, CRR

12          _____

13          CATHERINE L. SCHUTTE-STANT, RMR, CRR
              FEDERAL OFFICIAL COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25