UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

---------------------------------------------------------------x
IN RE ETHICON, INC., PELVIC REPAIR : CIVIL ACTION NO. 2:12-md-02327
SYSTEM PRODUCTS LIABILITY :
LITIGATION : MDL No. 2327
--------------------------------------------------------- :
: Magistrate Judge Cheryl A. Eifert
This Document Applies To All Actions :
:
---------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM REGARDING CHOICE OF LAW WITH RESPECT TO PRIVILEGE ISSUES IN FURTHER SUPPORT OF MOTION FOR ORDER DIRECTING PARTIES TO COORDINATE RESOLUTION OF DISCOVERY DISPUTES BETWEEN STATE AND FEDERAL COURTS**

At oral argument earlier this month on defendants' motion for coordination, the Court asked defendants to submit briefing that addresses the choice-of-law issues that are implicated by multi-jurisdictional privilege challenges. (Coordination Mot. Hr'g Tr. ("Hr'g Tr.") 32:6-8, Feb. 11, 2015 (attached as Ex. 1).) Defendants have prepared this briefing in response to that request.

Choice of law is a tricky issue with respect to privilege in the modern age for several reasons. For starters, MDL courts like this one preside over cases that were filed all over the country, and the transferor courts' choice-of-law regimes apply. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (MDL court must apply the substantive state law, including the choice-of-law rules, that would have applied in the transferor court). Moreover, because communications in today's business environment are taking place on a global basis, one e-mail could potentially implicate numerous states' privilege laws. These are potentially troubling concerns because, as this Court recognized at the coordination hearing earlier this month, release of a document in one case would have implications for every case pending across the country. (Hr'g Tr. 16:10-11, 24:18-22 (if one court "says [a particular] document is not privileged, then suddenly it's out there

and it's . . . no longer privileged," which "could just be an absolute nightmare").) Thus, in contrast to substantive areas of law, where an MDL court can, for example, apply California's strict-liability regime to one case and West Virginia's to another, it is critical that a privilege decision be consistent across cases.

Ultimately, however, courts have recognized that these theoretical concerns can be easily resolved, in large part because privilege law is relatively consistent across the country. Three principal approaches to this issue have emerged: (1) some courts have recognized that a survey of states' choice-of-law regimes demonstrates that they would all lead to the application of the law of the state with the most significant relationship to the communication, making the privilege inquiry the same regardless of where a case was filed; (2) other courts have held that substantive privilege law is so similar across the country that there is no need for a full choice-of-law analysis, and forum law can apply; and (3) still other courts have simply applied federal privilege law across the board without significant analysis.

*First*, one MDL court recently found that the states' choice-of-law regimes would "in most if not all instances" lead to application of the law of the state with the most significant relationship with the communication – in this case, New Jersey. *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, MDL No. 2100, 2011 U.S. Dist. LEXIS 39820, at *30 (S.D. Ill. Apr. 11, 2011).

In *In re Yasmin & Yaz*, the Chief Judge of the United States District Court for the Southern District of Illinois issued a lengthy and detailed decision addressing what law should apply to privilege issues in thousands of individual cases within the MDL proceeding. *Id.* at *3. The MDL encompassed 5,998 lawsuits from nearly every state in the nation, as well as the District of Columbia and Puerto Rico, against various Bayer companies over the prescription

drugs Yaz, Yasmin, and Ocella. The parties attempted to resolve certain privilege disputes, but reached an impasse regarding what law should apply to the privilege analysis. *Id.* at *2-3.

In resolving the dispute, the court first made clear that the choice-of-law regime of the state in which each case originated should govern that case. *Id*. at *15-18. Because this implicated nearly every state, the MDL court proceeded to canvass the choice-of-law regimes of every state across the country. *Id*. at *25. In the end, the court determined that all the states had either applied, or would likely apply, a choice-of-law approach similar to the one set forth in Section 139 of the Restatement (Second) of Conflict of Laws (1971), which directs a court to consider a number of factors and apply the privilege law of the jurisdiction with the "most significant relationship to the communication." *Id.*[1] Based on this ruling, the parties subsequently agreed that the state with the most significant relationship to the communications at issue was New Jersey, where Bayer's North American headquarters are located. *In re Yasmin & Yaz Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, MDL No. 2100, 2011 U.S. Dist. LEXIS 64736, at *4-6 & n.3 (S.D. Ill. June 17, 2011).[2] Accordingly, the

---

[1] Specifically, the court determined that 13 states, the District of Columbia and Puerto Rico have adopted Section 139 or cited it with approval. 2011 U.S. Dist. LEXIS 39820, at *30-33. Another 23 states have not yet specifically considered Section 139, but have nevertheless applied the Second Restatement when resolving choice-of-law questions in other areas of the law. *Id.* at *33-39. Another six states apply an interest analysis "that reflects principles found in the Second Restatement when addressing other choice of law matters," *id.* at *39-41, leading the court to predict that "courts in these jurisdictions would apply the privilege law of the state with the most significant relationship to the communication and would be guided in that decision by the principles found in section 139 of the Second Restatement," *id.* at *25-26. Finally, with respect to the remaining eight states, the court's research revealed that they followed traditional choice-of-law principles found in the Restatement (First) of Conflict of Laws (1934), but because the First Restatement does not address privilege, the court concluded that "the proper conflicts rule and the rule which would be applied by these jurisdictions is section 139 of the Second Restatement." *Id.* at *27-28.

[2] The Court also accepted Bayer's argument that while foreign law applied to a small subset of documents where the communications involved individuals in offices in both the United States and overseas, the applicable foreign law and New Jersey law were not in material conflict. *Id.* at *5 n.3.

3

court applied New Jersey law to Bayer's attorney-client privilege claims, the same result that defendants have argued is appropriate here.

*Second*, some courts have determined that there are no meaningful differences among the states' privilege laws, obviating the need for an extended choice-of-law analysis. As these courts have recognized, "the basic substantive elements of the attorney-client privilege" are the same across all states. *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 625 (D. Nev. 2013). "[U]nder each state's law, confidential communications between an attorney and client made for the purpose of giving or receiving legal advice are privileged." *Id*. (internal quotation marks and citation omitted). As such, "[t]he Court need not undergo a full choice-of-law analysis." *Penn Mut. Life Ins. Co. v. Rodney Reed 2006 Ins. Trust*, No. 09-CV-0663 (JCJ), 2011 WL 1636949, at *2 (D. Del. Apr. 29, 2011) ("The Court need not undergo a full choice-of-law analysis . . . because the laws of Pennsylvania and Delaware – the two states with the most significant relationships to the dispute – are similar for purposes of the issues presented in this Motion."); *In re ConAgra Peanut Butter Prods. Liab. Litig.*, MDL No. 1845, 2009 U.S. Dist. LEXIS 31122, at *51-53 (N.D. Ga. Mar. 23, 2009) (recognizing that "applying the choice of law rules of each of the states where the transferor courts sit to decide which state law provides the attorney-client privilege" "could get very complicated" and finding it "not necessary to decide this potentially complicated issue" because the "elements of the attorney-client privilege are well-known and are not, in any material respect, disputed here") (internal quotation marks and citation omitted); *see also* 2 Paul R. Rice, *Attorney-Client Privilege in the United States*, § 12:7 (2d ed. 1999) ("A court will make a choice of law determination only if the decision will make an appreciable difference in the case at bar."). In these situations, the court will either apply the forum law, *Phillips*, 290 F.R.D. at 625 (noting that the court would draw on federal precedents to fill gaps in sparse state law on

privilege), or will refer to the laws of the state where the legal advice was rendered, *In re ConAgra*, 2009 U.S. Dist. LEXIS 31122, at *51-53, while recognizing that out-of-state and federal precedents are relevant given the uniformity of privilege law.

*Third*, still other courts have simply applied federal privilege law to MDL privilege disputes without extensive analysis given the uniformity of privilege law and the administrative problems inherent in an extensive choice-of-law analysis. In the *Vioxx* MDL proceeding, for example, a discovery dispute arose regarding Merck's claim of attorney-client privilege over approximately 30,000 documents. *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789 (E.D. La. 2007). The court appointed a Special Master to review 2,000 representative documents, as well as 600 additional documents selected by plaintiffs, and make recommendations as to whether Merck's claims of privilege should be upheld. *Id.* at 791-92. In determining whether a document was privileged, the Special Master applied federal privilege law. *Id.* at 795. Although the court did not conduct an explicit choice-of-law analysis, the Special Master explained that federal privilege law incorporated five elements "common to all definitions of the attorney-client privilege: (1) an attorney, (2) a client, (3) a communication, (4) confidentiality anticipated and preserved, and (5) legal advice or assistance being the purpose of the communication." *Id.* Implicit in this analysis is a judgment that there is no material conflict between federal and state laws regarding privilege, leaving the court free to apply federal precedents.

Although courts have taken these varying approaches to choice-of-law issues in complex litigation, all of the approaches lead to the same result here. Under the *Yaz* approach, the Court would apply New Jersey law because Johnson & Johnson and Ethicon are based there, giving it the most significant relationship to the communications. *See Interphase Corp. v. Rockwell Int'l Corp.*, No. 3-96-CV-0290-L, 1998 WL 664969, at *1 (N.D. Tex. Sept. 22, 1998) (applying

Restatement § 139 and holding that California law applied to privilege claims asserted by a corporation headquartered in California because the relationship between the corporation and its lawyers was centered there). However, New Jersey privilege law is very similar to federal law, and New Jersey courts apply federal precedents in addressing privilege issues, making federal decisions highly relevant as well. *See, e.g.*, *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (New Jersey "state courts recognize the same policies behind the [attorney-client] privilege as do the federal courts" – i.e., "to promote full and frank discussions between attorneys and their clients."). And the latter two approaches are based on the premise that privilege law is uniform throughout the country and would thus lead to application of privilege principles from federal law or any state court, including New Jersey, as well.

      For all of these reasons, defendants respectfully submit that choice-of-law concerns should not deter the Court from requiring the parties to coordinate the resolution of privilege issues among federal and state-court cases. Defendants further propose that the Court adopt the approach of the *Yaz* court and apply New Jersey privilege law (and similar federal law principles) to all privilege challenges in the MDL proceeding.

Dated: February 23, 2015

                                                                                 Respectfully submitted,

                                                                                 */s/ David B. Thomas*_____
David B. Thomas (W.Va. Bar #3731)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
(304) 414-1807
dthomas@tcspllc.com

>*/s/ Christy D. Jones*
>Christy D. Jones
>Butler Snow LLP
>1020 Highland Colony Parkway
>Suite 1400 (39157)
>P.O. Box 6010
>Ridgeland, MS 39158-6010
>(601) 985-4523
>christy.jones@butlersnow.com
>
>
>*Counsel for Defendants Ethicon, Inc. and Johnson & Johnson in In re: Ethicon, Inc. Pelvic Repair System Products Liability Litigation (MDL)*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to CM/ECF participants registered to receive service in this MDL.

>  */s/ David B. Thomas*
> David B. Thomas (W.Va. Bar #3731)
> Thomas Combs & Spann PLLC
> 300 Summers Street
> Suite 1380 (25301)
> P.O. Box 3824
> Charleston, WV 25338
> (304) 414-1807
> dthomas@tcspllc.com