# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

## AND

### DISTRICT COURT
### 95TH JUDICIAL DISTRICT
### DALLAS COUNTY, TEXAS

| | |
|---|---|
| **United States District Court, S.D. W. Va. Master File No. 2:12-MD-02327 MDL No. 2327**<br><br>**JOSEPH R. GOODWIN U.S. DISTRICT JUDGE** | **IN RE:  ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES TO ALL CASES** |
| **District Court of Dallas County, Texas Cause No. DC-14-04220**<br><br>**KEN MOLBERG DISTRICT COURT JUDGE** | **CAROL CAVNESS, Plaintiff**<br><br>**v.**<br><br>**TERESA KOWALCZYK, M.D., HUNT MEMORIAL HOSPITAL DISTRICT CHARITABLE HEALTH FOUNDATION d/b/a HUNT REGIONAL HEALTHCARE FOUNDATION and HUNT REGIONAL MEDICAL CENTER AT GREENVILLE, BAYLOR HEALTH CARE SYSTEM, JOHNSON & JOHNSON and ETHICON, INC.** |

## DEFENDANTS JOHNSON & JOHNSON AND ETHICON, INC.'S
## OPPOSITION TO PLAINTIFF'S MOTION FOR *IN CAMERA* INSPECTION

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

ARGUMENT......................................................................................................3

I.      UNDER TEXAS CHOICE-OF-LAW STANDARDS, NEW JERSEY LAW APPLIES TO PRIVILEGE AND WORK-PRODUCT ISSUES........................................3

II.     THE DOCUMENTS AT ISSUE ARE SUBJECT TO PROTECTION. ...........................6

      A.     Communications To Or From In-House Counsel That Include Requests For Or The Provision Of Legal Advice .................................................6

      B.     Draft Documents That Include Attorney Comments ................................9

      C.     Emails And Communications Between Non-Lawyers Within Ethicon Or J&J Discussing Legal Advice From Counsel ........................................11

      D.     Work-Product Materials Created By APCO Worldwide.......................13

      E.     Communication Between In-House Counsel And Consultant Acting As "Functional Employee" Of The Company...........................................18

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*2M Asset Management, LLC v. Netmass, Inc.*,
No. 2:06-CV-215, 2007 U.S. Dist. LEXIS 14098 (E.D. Tex. Feb. 28, 2007) .....................4

*Admiral Insurance Co. v. U.S. District Court for District of Arizona*,
881 F.2d 1486 (9th Cir. 1989) .............................................................................................9

*Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*,
174 F.R.D. 609 (M.D. Pa. 1997)..........................................................................................9

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
160 F.R.D. 437 (S.D.N.Y. 1995) .......................................................................................11

*In re Bieter Co.*,
16 F.3d 929 (8th Cir. 1994) .........................................................................................18, 20

*Burkhead & Scott, Inc. v. City of Hopkinsville*,
No. 5:12-CV-198-GNS, 2014 U.S. Dist. LEXIS 175239
(W.D. Ky. Dec. 19, 2014)..................................................................................................18

*In re Buspirone Antitrust Litigation*,
No. 02 Civ. 9297(WHP)JCF, 2004 WL 67221 (S.D.N.Y. Jan. 15, 2004)....................6, 11

*Cadence Pharmaceuticals, Inc. v. Fresenius Kabi USA, LLC*,
996 F. Supp. 2d 1015 (S.D. Cal. 2014)................................................................................4

*In re Copper Market Antitrust Litigation*,
200 F.R.D. 213 (S.D.N.Y. 2001) ...........................................................................14, 15, 17

*Delta Smelt Consolidated Cases v. Salazar*,
No. 1:09-CV-1053 OWW DLB, 2010 U.S. Dist. LEXIS 70770
(E.D. Cal. June 30, 2010)...................................................................................................10

*In re Denture Cream Products Liability Litigation*,
No. 09-2051-MD-ALTONAGA/SIMONTRON, 2012 U.S. Dist. LEXIS 151014
(S.D. Fla. Oct. 18, 2012) .....................................................................................................7

*In re Dow Corning Corp.*,
No. 95-CV-20512-DT, 2010 U.S. Dist. LEXIS 110644 (E.D. Mich. June 15, 2010 .........8

*e2 Creditors Trust v. Stephens, Inc. (In re e2 Communications, Inc.)*,
No. 02-30574-BJH-11, No. 05-3542-BJH, 2006 Bankr. LEXIS 4575
(Bankr. N.D. Tex. June 15, 2006) ....................................................................................10

*FTC v. GlaxoSmithKline*,
294 F.3d 141 (D.C. Cir. 2002) .........................................................................................20

*In re Grand Jury 90-1*,
758 F. Supp. 1411 (D. Colo. 1991) ...................................................................................12

*In re Grand Jury Subpoenas Dated March 24, 2003*,
265 F. Supp. 2d 321 (S.D.N.Y. 2003) .........................................................................12, 17

*Haugh v. Schroder Investment Management North America, Inc.*,
No. 02 CIV.7955 (DLC), 2003 U.S. Dist. LEXIS 14586 (S.D.N.Y. Aug. 25, 2003)........10

*Interphase Corp. v. Rockwell International Corp.*,
No. 3-96-CV-0290-L, 1998 WL 664969 (N.D. Tex. Sept. 22, 1998) ................................4

*Iowa Pacific Holdings, LLC v. National Railroad Passenger Corp.*,
No. 09-cv-02977-REB-KLM, 2011 WL 1527599 (D. Colo. Apr. 21, 2011) ......................7

*Jack Winter, Inc. v. Koratron Co.*,
54 F.R.D. 44 (N.D. Cal. 1971) ..........................................................................................8

*Keating v. McCahill*,
No. 11-518, 2012 U.S. Dist. LEXIS 91179 (E.D. Pa. June 28, 2012) ................................9

*King Drug Co. of Florence v. Cephalon, Inc.*,
No. 2:06-cv-1797, 2013 U.S. Dist. LEXIS 129472 (E.D. Pa. Sept. 11, 2013)............12, 20

*Leonen v. Johns-Manville*,
135 F.R.D. 94 (D.N.J. 1990) .............................................................................................5

*Macario v. Pratt & Whitney Canada Inc.*,
No. 90-3906, 1991 U.S. Dist. LEXIS 2826 (E.D. Pa. Mar. 8, 1991) ..................................8

*McCook Metals L.L.C. v. Alcoa Inc.*,
192 F.R.D. 242 (N.D. Ill. 2000) ........................................................................................9

*Memry Corp. v. Kentucky Oil Technologies, N.V.*,
No. C04-03843 RMW (HRL), 2007 U.S. Dist. LEXIS 3094
(N.D. Cal. Jan. 4, 2007) ..................................................................................................19

*Metso Paper USA, Inc. v. Bostik, Inc.*,
  No. 3:08-cv-0772, 2011 U.S. Dist. LEXIS 75717 (M.D. Pa. July 13, 2011) ..............10, 15

*Music Sales Corp. v. Morris*,
  No. 98 Civ. 9002 (SAS)(FM), 1999 U.S. Dist. LEXIS 16433
  (S.D.N.Y. Oct. 22, 1999) .................................................................................8

*Phillips v. C.R. Bard, Inc.*,
  290 F.R.D. 615 (D. Nev. 2013)......................................................................5, 7

*Residential Constructors, LLC v. Ace Property & Casualty Insurance Co.*,
  No. 2:05-cv-01318-BES-GWF, 2006 U.S. Dist. LEXIS 80403
  (D. Nev. Nov. 1, 2006) ....................................................................................19

*Ross v. UKI Ltd.*,
  No. 02 Civ. 9297(WHP)JCF, 2004 WL 67221 (S.D.N.Y. Jan. 15, 2004).........................19

*Rowe v. E.I. DuPont de Nemours & Co.*,
  No. 06-1810-RMB-AMD, 2008 U.S. Dist. LEXIS 81053 (D.N.J. Sept. 30, 2008) ...........7

*In re Seroquel Products Liability Litigation*,
  No. 6:06-md-1769-Orl-22DAB, 2009 U.S. Dist. LEXIS 115652
  (M.D. Fla. Nov. 6, 2009) .................................................................................10

*Simon v. G.D. Searle & Co.*,
  816 F.2d 397 (8th Cir. 1987) ...........................................................................6

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*,
  No. 01 Civ. 3016(AGS), 2002 WL 31556383 (S.D.N.Y. Nov. 15, 2002).........................19

*United States v. Mobil Corp.*,
  149 F.R.D. 533 (N.D. Tex. 1993) .....................................................................9

*In re Vioxx Products Liability Litigation*,
  501 F. Supp. 2d 789 (E.D. La. 2007)...................................................6, 7, 10, 11

*In re Vioxx Products Liability Litigation*,
  MDL No. 1657, 2007 U.S. Dist. LEXIS 23164 (E.D. La. Mar. 5, 2007)..............14, 16, 17

iv

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liability
    Litigation*,
    No. 3:09-md-02100-DRH-PMF, MDL No. 2100, 2011 U.S. Dist. LEXIS 39820
    (S.D. Ill. Apr. 11, 2011) ........................................................................................5

## STATE CASES

*In re Arterial Vascular Engineering, Inc.*,
    No. 05-99-01753-CV, 2000 WL 1726287 (Tex. App. Nov. 21, 2000) .............................3

*Edison Corp. v. Town of Secaucus*,
    17 N.J. Tax 178 (N.J. Tax Ct. 1998)............................................................................8, 9

*In re E.I. DuPont de Nemours & Co.*,
    136 S.W.3d 218 (Tex. 2004).......................................................................................2

*Ford Motor Co. v. Leggat*,
    904 S.W.2d 643 (Tex. 1995)....................................................................................2, 3

*Hedden v. Kean University*,
    82 A.3d 238 (N.J. Super. Ct. App. Div. 2013)................................................................12

*Laporta v. Gloucester County Board of Chosen Freeholders*,
    774 A.2d 545 (N.J. Super. Ct. App. Div. 2001)..............................................................5

*Macey v. Rollins Environmental Services (N.J.), Inc.*,
    432 A.2d 960 (N.J. Super. Ct. App. Div. 1981)..............................................................12

*Miller v. J.B. Hunt Transport, Inc.*,
    770 A.2d 1288 (N.J. Super. Ct. App. Div. 2001)...................................................5, 13, 14

*In re Monsanto Co.*,
    998 S.W.2d 917 (Tex. App. 1999)..........................................................................15, 17

*O'Boyle v. Borough of Longport*,
    94 A.3d 299 (N.J. 2014)..........................................................................................13

*Owens-Corning Fiberglass Corp. v. Caldwell*,
    818 S.W.2d 749, 751 (Tex. 1991)..............................................................................17

*Payton v. N.J. Turnpike Authority*,
    691 A.2d 321 (N.J. 1997)..........................................................................................14

## **RULES**

Fed. R. Civ. P. 26(b)(3)................................................................................13, 17

N.J. Ct. R. 4:10-2(c)....................................................................................13, 14

Tex. R. Civ. P. § 192.5(a) ..................................................................................17

## **OTHER AUTHORITIES**

Rest. 3d Law Governing Lawyers § 72 ...............................................................9

Case 2011/MR/3-*Belgacom*,
    5 March 2013, Brussels Court of Appeal, 18th Chamber....................................9

## <u>INTRODUCTION</u>

Defendants Johnson & Johnson ("J&J") and Ethicon, Inc. ("Ethicon") (collectively, "defendants") respectfully submit this memorandum of law in response to plaintiff's motion for an *in camera* inspection of certain documents listed on defendants' privilege log.

Plaintiff initially challenged defendants' claims of privilege with respect to 1,570 documents as to which plaintiff sought *in camera* review.  (*See* Pl.'s Mot. at Ex. B.)  Defendants subsequently determined that a substantial number of those documents were exact – or near exact – duplicates of one another, leaving less than 400 distinct documents at issue.  (*See* Aff. of Ben Watson ("Watson Aff.") ¶ 3 (attached as Ex. 1.)  Defendants assert that there is a good-faith basis for the claim of privilege as to each of these documents.  In the interests of compromise, however, defendants agreed to take a conservative approach to their privilege claims and withdrew their assertion of privilege protection with respect to those documents as to which there was arguably a conflict among the courts with respect to the validity of the privilege claim, leaving approximately 170 challenged documents.  For example, defendants agreed to produce documents that reveal communications that defendants' employees and counsel had with representatives and members of AdvaMed, a trade association representing manufacturers of medical devices and diagnostics, even though caselaw supports withholding these documents under the "common interest" privilege.  Defendants also agreed to produce internal communications that involved both attorneys and non-attorneys where it is not unequivocally clear that the primary purpose of the communication was to seek, provide or communicate legal advice.  In addition, defendants agreed to modify their privilege claims with respect to many documents by redacting only limited portions of those documents that unquestionably reveal a request for, or the provision of, legal advice.

After the parties met and conferred, plaintiff withdrew her challenge with respect to all but 47 of the roughly 170 documents as to which defendants continued to assert a privilege claim. Of these documents, 10 have already been produced to plaintiff with limited redaction of privileged material. As a result, there are only 37 documents currently in dispute that have been withheld from production in full.

Texas law provides that where a claim of privilege is challenged, the party asserting the privilege must make a "prima facie showing of privilege and tender[] [the] documents to the trial court" so that the court can "conduct an in camera inspection of those documents before deciding to compel production." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004). The "prima facie standard requires only the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id*. (citation omitted). Under this standard, the "documents themselves may constitute sufficient evidence to make a prima facie showing of attorney-client or work product privilege." *Id*. The proponent of privilege may also submit an affidavit to support its claim of protection. *Id*. The Texas Supreme Court has noted that an affidavit makes a prima facie showing of privilege where the affiant swears that the documents at issue meet the requirements of the privilege based on his or her personal review of the documents and/or other sources, such as a company's personnel databases. *Id*. at 224. In addition, an affidavit is sufficient to make a prima facie showing "even if it addresses groups of documents rather than each document individually." *Id*. at 223.[1]

---

[1]    This procedure applies to privilege challenges in Texas courts even where, as here, a different state's laws govern the substance of the privilege challenge. *See Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 647 (Tex. 1995).

2

Defendants have more than met this burden. Ben Watson, counsel for defendants, has executed an affidavit with an accompanying table, explaining why each of the documents at issue is privileged or protected by work product. The table corresponds to a binder containing the documents at issue, which is being submitted to the Court *in camera*. The table lists the documents at issue by Privilege Log number, provides the description of the document included in the Privilege Log, identifies the privilege claim (attorney-client privilege or work product) and provides a brief explanation regarding the basis for the privilege claim. In addition, defendants have prepared this memorandum, which explains the legal principles underlying Mr. Watson's statements. For the reasons explained below and in Mr. Watson's affidavit, the Court should uphold defendants' claims of protection.

## **ARGUMENT**

### **I.     UNDER TEXAS CHOICE-OF-LAW STANDARDS, NEW JERSEY LAW APPLIES TO PRIVILEGE AND WORK-PRODUCT ISSUES.**

Texas applies § 139 of the Restatement (Second) of Conflict of Laws to determine choice of law for issues relating to privilege. *See Leggat*, 904 S.W.2d at 646-48; *In re Union Carbide Corp.*, No. 01-02-01153-CV, 2003 WL 22682301, at *3 (Tex. App. Nov. 13, 2003). Under § 139, the scope of the attorney-client privilege and the work-product doctrine is governed by the law of the state with the most significant relationship to the communications at issue. *See, e.g.*, *Leggat*, 904 S.W.2d at 647 (under Texas law, a court must "identify the state of most significant relationship with a communication when determining whose law of privilege should apply"); *In re Arterial Vascular Eng'g, Inc.*, No. 05-99-01753-CV, 2000 WL 1726287, at *12 (Tex. App. Nov. 21, 2000) (not designated for publication) ("[T]he same principles favoring use of the most significant relationship test for deciding the attorney-client privilege also apply to the attorney

work product privilege.").  Where, as here, "the communicating parties have an existing

relationship, 'the state of the most significant relationship will be that where the relationship was

centered.'"  *Interphase Corp. v. Rockwell Int'l Corp.*, No. 3-96-CV-0290-L, 1998 WL 664969, at

*1 (N.D. Tex. Sept. 22, 1998) (quoting Restatement (Second) of Conflict of Laws § 139 cmt. e

(1971)).  For example, in *Interphase*, the court held that California law generally applied to

privilege claims asserted by a corporation headquartered in California, even though some of the

communications at issue were sent to and from outside counsel in New York, because the

relationship between the corporation and its lawyers was centered in the corporation's home

state. *Id.*[2]

Under these principles, Texas courts would apply New Jersey privilege law to nearly all

the documents at issue because that state has the "most significant relationship" to the

communications and documents in dispute.  Both Ethicon's and J&J's headquarters are located

in New Jersey, and the majority of the in-house legal counsel and corporate employees identified

in the communications at issue are based there.  (*See* Watson Aff. ¶ 5.)  As a result, New Jersey

is the state where the relationship between defendants and their attorneys is centered.  In

addition, nearly all of the communications at issue were sent to, or involved requests from,

_____

[2]     Similarly, "in cases where the alleged privileged communications occurred in a foreign country or involved foreign attorneys or proceedings," "[m]ost courts apply the 'touch base' analysis in deciding choice of law issues." *Cadence Pharm., Inc. v. Fresenius Kabi USA, LLC*, 996 F. Supp. 2d 1015, 1019 (S.D. Cal. 2014).  Under this approach, courts "defer to the law of the country that has the 'predominant' or 'most direct and compelling interest' in whether those communications should remain confidential." *2M Asset Mgmt., LLC v. Netmass, Inc.*, No. 2:06-CV-215, 2007 U.S. Dist. LEXIS 14098, at *7 (E.D. Tex. Feb. 28, 2007) (internal quotation marks omitted).  "The jurisdiction with the predominant interest is either the place where the allegedly privileged relationship was entered into or the place in which that relationship was centered at the time the communication was sent." *Id.* at *7-8 (internal quotation marks omitted).

corporate employees or attorneys located in New Jersey.  (*See id.*)  It therefore follows that the law of New Jersey governs whether these communications are protected by privilege.[3]

Notably, New Jersey has adopted similar standards and caselaw with respect to the attorney-client privilege as those applied by federal courts.  *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (New Jersey "state courts recognize the same policies behind the [attorney-client] privilege as do the federal courts" – i.e., "to promote full and frank discussions between attorneys and their clients.").  Likewise, New Jersey's work-product rule "essentially follows the language of the federal work product rule contained in Fed. R. Civ. P. 26(b)(3)." *Miller v. J.B. Hunt Transp., Inc.*, 770 A.2d 1288, 1291 (N.J. Super. Ct. App. Div. 2001); *see also, e.g.*, *Laporta v. Gloucester Cnty. Bd. of Chosen Freeholders*, 774 A.2d 545, 548 (N.J. Super. Ct. App. Div. 2001) ("Like the federal [work-product] rule, New Jersey recognizes for protection 'documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative[.]'") (citation omitted). Accordingly, federal cases regarding privilege and work product are instructive on New Jersey law as well.  *See, e.g.*, *Laporta*, 774 A.2d at 549 ("Federal case law on the [work-product privilege], however, gives us guidance in resolving the issue before us.").

---

[3]     Notably, a number of courts have recognized that choice-of-law issues are less critical when it comes to privilege disputes because:  (1) the states are in agreement that privilege should be governed by the law of the state with the most significant relationship to the communication, *see, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, MDL No. 2100, 2011 U.S. Dist. LEXIS 39820, at *30 (S.D. Ill. Apr. 11, 2011); and (2) state and federal laws are, in any event, aligned on privilege issues, making a choice-of-law analysis unnecessary, *see, e.g.*, *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 625 (D. Nev. 2013).

As set forth below, the documents at issue fall into several discrete categories, all of which are unquestionably protected under the attorney-client privilege or as attorney work product.

## II. THE DOCUMENTS AT ISSUE ARE SUBJECT TO PROTECTION.

### A. Communications To Or From In-House Counsel That Include Requests For Or The Provision Of Legal Advice

The vast majority of the documents at issue are classic attorney-client communications: emails and other communications from J&J and Ethicon employees to in-house counsel seeking advice or comments and/or responses from counsel providing legal advice.  These documents fall squarely within the protections of the attorney-client privilege.[4]

The attorney-client privilege protects communications, including memoranda and email messages, addressed to an attorney (or attorneys), containing an explicit or implied legal question raised by the author (whether or not it was answered by the attorney).  *See In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 809 (E.D. La. 2007); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404 (8th Cir. 1987) ("Client communications intended to keep the attorney apprised of business matters may be privileged if they embody an implied request for legal advice based thereon.") (internal quotation marks and citation omitted).  The attorney's response is also privileged if its primary purpose is to provide legal advice.  *See In re Vioxx*, 501 F. Supp. 2d at 809-11.  This is true even where a communication is sent to both lawyers and non-lawyers for review, comment, and approval, as long as ***the primary purpose*** of the communications is to

---

[4]     Documents that fall within this category include:  PL06220; PL06294; PL13057; PL26558; PL00595; PL03079; PL06554; PL11118; PL11142; PL11662; PL12301; PL13055; PL14558; PL15970; PL19376; PL20316; PL24593;PL25343; PL28008; PL28109; PL28111; PL28115; PL28118; and PL05784.

seek legal advice from the lawyer(s).  *Id.* at 809; *see also In re Buspirone Antitrust Litig.*, MDL No. 1413, 2002 U.S. Dist. LEXIS 23463, at *9-10 (S.D.N.Y. Dec. 10, 2002) (memorandum sent to outside counsel and several non-legal personnel at the corporation was privileged where the document was "being provided to [corporate employees] for the purpose of informing them that legal advice has been sought or obtained").  "In deciding whether the attorney-client privilege protects a particular communication between a lawyer and a corporation, the Court must determine whether the communication is 'designed to meet problems which can fairly be characterized as predominately legal.'"  *Rowe v. E.I. DuPont de Nemours & Co.*, No. 06-1810-RMB-AMD, 2008 U.S. Dist. LEXIS 81053, at *28-29 (D.N.J. Sept. 30, 2008) (citation omitted) (applying New Jersey privilege law); *see also In re Vioxx*, 501 F. Supp. 2d at 812 (the focus is on whether "the primary purpose of the communication was for legal advice or assistance").  Under this test, "the court's inquiry should not focus on whether the recipients of the e-mail are lawyers; rather, the court must determine whether the primary purpose and content of the e-mail is predominantly legal."  *Rowe*, 2008 U.S. Dist. LEXIS 81053, at *42.  Thus, while "[i]t is true that some courts have held that a company cannot claim the 'primary purpose' of a communication was to solicit legal advice when it is sent to both lawyers and non-lawyers for simultaneous review," the more appropriate course is to "review each communication at issue" and "determine whether the 'primary purpose' was to solicit legal advice."  *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013) (rejecting *per se* rule that emails sent to both lawyers and non-lawyers for simultaneous review are not privileged); *see also In re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD-ALTONAGA/SIMONTON, 2012 U.S. Dist. LEXIS 151014, at *59 (S.D. Fla. Oct. 18, 2012) (rejecting "blanket rule" that all communications simultaneously sent to lawyers and non-lawyers are not privileged); *Iowa Pac. Holdings, LLC v.*

7

*Nat'l R.R. Passenger Corp.*, No. 09-cv-02977-REB-KLM, 2011 WL 1527599, at \*5 (D. Colo. Apr. 21, 2011) (denying motion to compel disclosure of emails sent to both attorneys and non-attorneys where the attorney was listed as a direct recipient of the email).

Courts have also recognized that privileged communications from the client that keep the lawyer apprised of business developments and other information the lawyer needs to render legal advice are privileged.  *See, e.g.*, *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44, 46 (N.D. Cal. 1971); *Macario v. Pratt & Whitney Can. Inc.*, No. 90-3906, 1991 U.S. Dist. LEXIS 2826, at \*2 (E.D. Pa. Mar. 8, 1991) (extending attorney-client privilege to "client communications intended to keep the attorney apprised of continuing business developments, with an implied request for legal advice based thereon").  "[S]elf-initiated attorney communications intended to keep the client posted on legal developments and implications" are likewise protected.  *Jack Winter, Inc.*, 54 F.R.D. at 46; *Macario*, 1991 U.S. Dist. LEXIS 2826, at \*3-4 (memo sent by outside counsel to in-house counsel regarding proposed revisions to a "Service Bulletin" was privileged because the "communication was self-initiated and intended to keep the client apprised of the progress of the case.  Such a communication from a lawyer representing the corporation, to the client, is a protected attorney-client communication.").

Importantly, these principles apply equally to communications between J&J and Ethicon employees because the "lawyer-client privilege retains its broad scope in the parent-subsidiary context."  *Edison Corp. v. Town of Secaucus*, 17 N.J. Tax 178, 184 (N.J. Tax Ct. 1998); *see also Music Sales Corp. v. Morris*, No. 98 Civ. 9002 (SAS)(FM), 1999 U.S. Dist. LEXIS 16433, at \*21-22 (S.D.N.Y. Oct. 22, 1999) ("inter-related corporate communications are treated in the same manner as intra-corporate communications") (internal quotation marks and citation omitted).  Indeed, the "universal rule of law" is that "the parent and subsidiary share a

community of interest, such that the parent, as well as the subsidiary, is the 'client' for purposes of the attorney-client privilege." *In re Dow Corning Corp.*, No. 95-CV-20512-DT, 2010 U.S. Dist. LEXIS 110644, at *30 (E.D. Mich. June 15, 2010); *see also United States v. Mobil Corp.*, 149 F.R.D. 533, 537 (N.D. Tex. 1993) ("'Communications between employees of a subsidiary corporation and counsel for the parent corporation, like communications between former employees and corporate counsel, would be privileged if the employee possesses information critical to the representation of the parent company and the communication concerns matters within the scope of the employment.'") (quoting *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1493 n.6 (9th Cir. 1989)); *Edison Corp.*, 17 N.J. Tax at 184-85 (holding that the attorney-client privilege is not waived where information is shared between an employee of a parent corporation and the lawyer of its wholly-owned subsidiary).[5]

---

[5]     These principles apply equally to communications between corporate employees and in-house attorneys working in foreign countries. As courts have recognized, privilege is adaptable to the modern global business environment. Accordingly, involvement of foreign attorneys in providing or soliciting legal advice does not vitiate the privilege. *See Keating v. McCahill*, No. 11-518, 2012 U.S. Dist. LEXIS 91179, at *15 n.4 (E.D. Pa. June 28, 2012) (fact that attorney was "admitted to practice law only in foreign jurisdictions" did not mean that he was "not a member of the bar" for "the purposes of the attorney-client privilege") (internal quotation marks omitted); Rest. 3d Law Governing Lawyers § 72, cmt. e ("[A] lawyer admitted to practice in a foreign nation is a lawyer for the purposes of the privilege."). A handful of the documents at issue include communications to and from Simon Neill, Assistant General Counsel at Johnson & Johnson, who is located in Belgium. *See* PL29109; PL25343; PL28008; PL28111; PL28115; PL28118. Notably, Belgium has expressly adopted the attorney-client privilege in the corporate context and therefore his communications with corporate employees are protected. *See* Case 2011/MR/3-*Belgacom*, 5 March 2013, Brussels Court of Appeal, 18th Chamber (holding that communications between a company and its in-house counsel were entitled to the protection of the attorney-client privilege under Belgian law).

**B.**     **Draft Documents That Include Attorney Comments**

Another category of documents plaintiff has challenged are drafts of documents that contain comments from counsel.[6]

It is widely recognized that documents "commented upon by an attorney necessarily contain legal advice from the attorney . . . for the benefit of the client." *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 255 (N.D. Ill. 2000); *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) (recognizing that draft documents containing comments from attorneys are protected by the attorney-client privilege); *Delta Smelt Consol. Cases v. Salazar*, No. 1:09-CV-1053 OWW DLB, 2010 U.S. Dist. LEXIS 70770, at *9-10 (E.D. Cal. June 30, 2010) (documents consisting of attorney "comments and edits" are "properly withheld under the attorney-client privilege"); *e2 Creditors Trust v. Stephens, Inc. (In re e2 Commc'ns, Inc.)*, No. 02-30574-BJH-11, No. 05-3542-BJH, 2006 Bankr. LEXIS 4575, at *17-18 (Bankr. N.D. Tex. June 15, 2006) ("redline copies of documents revised to reflect comments, or respond to requests for legal information from the client," "are privileged").  Even "minor grammatical and editorial comments" provided by an attorney can be "accepted as legal advice," especially when provided on a typical legal instrument.  *In re Vioxx*, 501 F. Supp. 2d at 811.  As courts have noted, a party asserting a claim of privilege may "demonstrate that legal advice is the primary purpose behind [a] lawyer['s] comments even if these comments are complemented by grammatical and editorial changes that could reasonably be considered inextricably intertwined with the advice."  *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 U.S.

---

[6]     Documents that fall within this category include:  PL06463; PL14194; PL14460; PL14461; PL15805; PL25353; PL28500; and PL28065.

Dist. LEXIS 115652, at *147 (M.D. Fla. Nov. 6, 2009) (internal quotation marks and citation omitted).

Many of the documents at issue here are redlined drafts that contain J&J counsel's revisions and comments to draft customer letters, draft FDA submissions and other draft Company communications.  Ethicon and J&J employees regularly seek input from in-house counsel on the contents of Company communications because presenting incorrect or misleading information could subject the Company to enforcement actions or civil lawsuits.  Indeed, even the addition or subtraction of one word could take a document out of compliance with a given regulation or be considered a misrepresentation.  In addition, Ethicon and J&J employees also ask in-house lawyers to review and revise submissions that seek to persuade the FDA or a court to take (or not take) certain actions.  Any changes to documents made by counsel in response to these requests are privileged.

### C. **Emails And Communications Between Non-Lawyers Within Ethicon Or J&J Discussing Legal Advice From Counsel**

A small number of documents challenged by plaintiff involve emails between Company employees discussing legal advice they received from in-house counsel, even though in-house counsel are not included in the email.[7]  These documents are also privileged under well-established law.

The attorney-client privilege protects communications, including memoranda and email messages, from a non-lawyer to another non-lawyer where the purpose of the communication is to:  (1) convey privileged legal advice to those within the corporate structure who need the

---

[7]       Documents that fall within this category include: PL08740; PL13102; PL00595; PL13077; PL24616; PL27398; PL28115; and PL05784.

11

advice in order to fulfill their corporate responsibilities; or (2) gather information necessary for a lawyer to provide informed legal advice. *In re Vioxx*, 501 F. Supp. 2d at 796; *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995) (attorney-client privilege "protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation"). "Where a document is being provided to [corporate employees] for the purpose of informing them that legal advice has been sought or obtained, that act is not inconsistent with the underlying communication being for the 'purpose' of obtaining legal advice." *In re Buspirone*, 2002 U.S. Dist. LEXIS 23463, at *10 (memorandum from defendant corporation's vice-president to several non-legal corporate employees privileged where vice president's specific purpose in copying employees was to inform the individuals responsible for the project at issue that he had sent the memorandum to outside counsel); *see also Macey v. Rollins Envtl. Servs. (N.J.), Inc.*, 432 A.2d 960, 963 (N.J. Super. Ct. App. Div. 1981) (attorney-client privilege "unquestionably extends to corporations which must act through agents, including its officers and employees"); *In re Grand Jury 90-1*, 758 F. Supp. 1411, 1413 (D. Colo. 1991) (letter from company president to corporate board privileged because it relayed legal advice from corporate counsel); *Hedden v. Kean Univ.*, 82 A.3d 238, 246 (N.J. Super. Ct. App. Div. 2013) (fact that defendant's attorney was copied on email did not defeat its confidential nature because as an employee he shared interest in protecting defendant from liability). In addition, "communications" between non-lawyer employees "for the purpose of gathering information necessary for [party's] attorneys to render legal advice" are also protected by the privilege. *King Drug Co. of Florence v. Cephalon, Inc*., No. 2:06-cv-1797, 2013 U.S. Dist. LEXIS 129472, at *37-38 (E.D. Pa. Sept. 11, 2013).

Here, some of the documents at issue involve a scenario in which in-house counsel for Johnson & Johnson emailed their legal advice to a handful of Ethicon or Johnson & Johnson employees.  Those employees, in turn, provided those communications to other corporate employees to inform them of the legal advice obtained.  In other instances, one employee made a request for a legal opinion from an in-house attorney and subsequently informed other corporate employees that legal advice had been sought and/or provided on a particular issue – or obtained information from other employees necessary to enable the lawyer to provide that legal advice. Such communications are privileged under the caselaw set forth above.

### D. Work-Product Materials Created By APCO Worldwide

Another category of documents plaintiff has challenged are documents created in connection with litigation that were withheld as attorney work product.  These documents were prepared by APCO Worldwide ("APCO"), an international strategic communications firm specializing in litigation-related crisis that was hired by Butler Snow PLLC, one of defendants' outside counsel, to assist it in providing legal advice to Ethicon Women's Health & Urology, a division of Ethicon, Inc., in connection with litigation concerning vaginal mesh products. (Watson Aff. ¶ 9.)[8]  Notably, all of the documents that fall within this category are internal drafts.  Later versions of each of these documents that were no longer subject to the work-product doctrine have already been produced to plaintiffs.  (*See id*. ¶ 10.)  As set forth more fully below, these documents are protected under the work-product doctrine.

---

[8]      Documents that fall within this category include:  PL06609; PL06691; PL14559; PL15810; PL15819; PL15849; PL21667; PL21909; PL21914; PL27471; and PL14831.

Under New Jersey Court Rule 4:10-2(c), which codifies the work-product privilege, "a party may obtain discovery of documents, electronically stored information, and tangible things . . . prepared in anticipation of litigation or for trial by or for" a party or a "party's representative (including an attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." N.J. Ct. R. 4:10-2(c); *see also* Fed. R. Civ. P. 26(b)(3) ("[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative").[9] Even if such a showing is made, the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id*. The touchstone of this doctrine is whether a document was "prepared 'in anticipation of litigation'" – i.e., whether "'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 220-21 (S.D.N.Y. 2001) (citation omitted). Therefore, documents prepared in the "ordinary course of business, or that would have been created whether or not litigation was anticipated, are not protected[.]" *Id.*; *see also Miller*, 770 A.2d at 1291 ("If a document was prepared 'in the ordinary course of business' rather than in anticipation of litigation, it is not

---

[9]     "Rule 4:10-2(c) essentially follows the language of the federal work product rule[.]"  *Miller*, 770 A.2d at 1291.  However, the work-product privilege in New Jersey is even "broader" than the federal doctrine.  *O'Boyle v. Borough of Longport*, 94 A.3d 299, 311 (N.J. 2014) (recognizing that the New Jersey privilege is "broader" than the federal one).

14

entitled to protection as work product.") (quoting *Payton v. N.J. Tpk. Auth.*, 691 A.2d 321, 336 (N.J. 1997)).  "It is firmly established, however, that a document that assists in a business decision is protected by work-product immunity if the document was created ***because of the prospect of litigation***."  *In re Copper*, 200 F.R.D. at 221 (emphasis added); *see also Haugh v. Schroder Inv. Mgmt. N. Am., Inc.*, No. 02 CIV.7955 (DLC), 2003 U.S. Dist. LEXIS 14586, at *11 (S.D.N.Y. Aug. 25, 2003) (document need not be "created 'primarily' or 'exclusively' for the litigation in order to qualify for protection") (citation omitted).  "In addition . . . documents prepared in anticipation of litigation need not be created at the request of an attorney."  *In re Copper*, 200 F.R.D. at 221.[10]

As set forth above, New Jersey's work-product rule expressly provides that materials created by a party's consultant in anticipation of, or in connection with, litigation are entitled to protection.  *See* N.J. Ct. R. 4:10-2(c).  In addition, courts have recognized that work-product protection extends to materials created by a public relations firm where – as here – the firm's "services were provided . . . because of the prospect of" litigation.  *See In re Copper*, 200 F.R.D. at 221; *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2007 U.S. Dist. LEXIS 23164, at *11 n.3 (E.D. La. Mar. 5, 2007); *Haugh*, 2003 U.S. Dist. LEXIS 14586, at *8-9, *15 (while attorney-client privilege did not apply to communications between client and public relations firm, work-product protection did, "as they were all prepared by a party, her agent, attorney or consultant in anticipation of litigation"); *Metso Paper USA, Inc. v. Bostik, Inc.*, No. 3:08-cv-0772, 2011 U.S.

---

[10]     Defendants recognize that the work-product privilege is not absolute.  *See* N.J. Ct. R. 4:10-2(c) (work product is discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means").  However, plaintiffs have not articulated any particular need for defendants' work-product materials – much less a "substantial" one.

15

Dist. LEXIS 75717, at *1-2, *4 (M.D. Pa. July 13, 2011) (work-product privilege applied to

"documents summarizing, relating, or referring to costs [d]efendant seeks from [p]laintiff in

employing public relations firm Holt & Germann during trial preparation"; "Since third parties

were all part of the Oversight Group and integrally involved in each step of trial preparation,

revelation of those documents would chill formulation of legal theories and case preparation.");

*see also, e.g.*, *In re Monsanto Co.*, 998 S.W.2d 917, 932 (Tex. App. 1999) (ruling that

confidential documents sent from Monsanto to outside public relations firm were protected by

either the attorney-client privilege or work-product privilege).

　　For example, in *In re Copper*, the plaintiffs sued a foreign company ("Sumitomo") and

other entities, alleging that they conspired to manipulate global copper prices.  200 F.R.D. at

215.  Plaintiffs moved to compel the production of various communications between Sumitomo,

its counsel and a public relations firm hired by Sumitomo.  *Id.*  Sumitomo had hired the public

relations firm ("RLM") "to handle public relations matters arising from the copper trading

scandal," which came to light during a deposition conducted by the Commodities Futures

Trading Commission ("CFTC") prior to the current litigation.  *Id.*  RLM frequently corresponded

with both Sumitomo's outside and in-house counsel and helped draft statements for public

release, as well as internal documents.  *Id.* at 216.  The court denied the motion to compel under

both the attorney-client privilege and work-product doctrine.  *Id.* at 219-20.  Of most relevance

here, the court explained that apart from "purely business-related documents and other types of

non-privileged communications," the communications amounted to attorney work product

because they were "prepared by RLM or delivered to RLM ***in anticipation of litigation***."  *Id.* at

221 (emphasis added).  In particular, Sumitomo hired the public relations firm shortly after the

deposition in 1996, "when it was apparent that the CFTC might commence an enforcement

16

action against Sumitomo." *Id.* As the court recognized, "'from the outset, RLM knew its representation was ***litigation-related***.'" *Id.* (emphasis added) (quoting affidavit from RLM's principal representative for the Sumitomo engagement). "Further, it [was] clear that Sumitomo retained RLM to make sure that its public statements would not result in further exposure in the litigation which grew out of the copper trading scandal." *Id.* (citing affidavit). For this reason, many of the communications between RLM and Sumitomo and the documents RLM drafted "were prepared in collaboration with Sumitomo's counsel" "in the context of . . . litigation." *Id.* Because these materials were written with an eye toward litigation, the court determined that they were immune from disclosure under the work-product doctrine. *Id.*

Likewise, the court overseeing the Vioxx product-liability litigation concluded that materials possessed by public-relations firms were "entitled to work-product and/or attorney-client protection." *In re Vioxx*, 2007 U.S. Dist. LEXIS 23164, at *11 n.3. In so ruling, the court found it sufficient that the public-relations firms had been retained by defendant Merck's outside law firm and acted under the direction of the firm's attorneys. *Id.*

Here, APCO was retained by Ethicon's legal counsel, Butler Snow LLP, "to assist the firm on strategic communications issues related to its defense of Ethicon in pending and anticipated litigation involving vaginal mesh products." (Watson Aff. ¶ 9.) Notably, the law firm did "***not*** retain APCO to provide ***ordinary*** public relations advice to it or Ethicon." (*Id.* (emphases added).) Because APCO's services were "litigation-related," the materials the firm created are subject to work-product protection. *In re Copper*, 200 F.R.D. at 221.[11]

---

[11]     The same would be true if Texas law governed the issue of work-product protection. The Texas rules define work product as "material prepared or mental impressions developed in anticipation of litigation or for trial

*(cont'd)*

17

In addition, one document at issue consists of an email from an APCO employee to an Ethicon employee on which other APCO employees and Johnson & Johnson's in-house counsel are copied.  (*See* PL06690.)  The email attaches a template for a media training presentation prepared by APCO at the request of Ethicon's outside counsel in anticipation of litigation and related media concerns.  Courts have recognized that the attorney-client privilege extends to communications with consultants retained by and working at the request of counsel.  *See In re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321, 330 (S.D.N.Y. 2003) (holding that the attorney-client privilege protects communications between a client and a public-relations firm hired by the client's lawyer to assist with litigation strategy; "[t]he ability of lawyers to perform some of their most fundamental client functions . . . would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants."); *In re Vioxx*, 2007 U.S. Dist. LEXIS 23164, at *11 n.3 ("The Court agrees" that communications with "communications consultants [who] were acting under the direction of [Merck's outside] attorneys . . . are entitled to . . . attorney-client protection.").  Accordingly, communications from an APCO employee to defendants' employees made at the behest of defendants' lawyers are privileged.

_____

*(cont'd from previous page)*

by or for a party or a party's representatives, including ***the party's attorneys, consultants . . . or agents***"; or "a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, ***including the party's attorneys, consultants . . . or agents***."  Tex. R. Civ. P. § 192.5(a) (emphasis added).  The "anticipation of litigation" standard is satisfied: "(1) whenever the circumstances would indicate to a reasonable person that there is a substantial chance of litigation, and (2) the party now asserting the privilege had a good faith belief that litigation would ensue."  *In re Monsanto*, 998 S.W.2d at 923.  In addition, Texas courts – like courts in New Jersey – look to federal decisions governing work product when interpreting Texas's work-product rule.  *See Owens-Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 751 (Tex. 1991) ("Our ruling is compatible with interpretations given to the federal rule governing attorney work product, Fed. R. Civ. P. 26(b)(3).").  Thus, Texas would follow the federal caselaw set forth above and extend work-product protection to materials created by a litigation consultant like APCO, which was retained in anticipation of litigation by defendants' counsel.

### E.    Communication Between In-House Counsel And Consultant Acting As "Functional Employee" Of The Company

Defendants have also asserted a valid privilege claim with respect to a document in which in-house counsel communicates with, and provides legal advice to, *inter alia*, a consultant who was hired by Ethicon to head its copy review team as a de facto employee – and whose title was subsequently changed to make her an actual employee.  (*See* PL20316.)

Courts have generally held that outside consultants are included within the scope of the corporate privilege in cases where the consultants act as the "functional equivalent" of corporate employees and the consultants require legal advice to carry out contractual obligations.  The seminal case addressing this issue is *In re Bieter Co*., 16 F.3d 929 (8th Cir. 1994).  In *Bieter*, the U.S. Court of Appeals for the Eighth Circuit held that the attorney-client privilege extended to an independent contractor retained to provide advice and guidance regarding a commercial and retail development, finding that there was no principled basis to differentiate corporate employees from third-party contractors who are the "functional equivalent" of employees.  *Id.* at 940.  In reaching this conclusion, the *Bieter* court focused on the fact that the independent contractor at issue in that case functioned as part of the corporate development team, working with corporate employees on a day-to-day basis, often attending meetings with corporate counsel, receiving communications from counsel, and taking direction from corporate leadership as to his duties and responsibilities.  *Id*. at 934-39.  Many other courts have agreed.  *See*, *e.g.*, *Burkhead & Scott, Inc. v. City of Hopkinsville*, No. 5:12-CV-198-GNS, 2014 U.S. Dist. LEXIS 175239, at *3-4 (W.D. Ky. Dec. 19, 2014) (adopting *Bieter* and finding that the inclusion of independent contractors on privileged corporate communications did not waive privilege because "these individuals, while independent contractors, 'were functioning as the equivalent of

19

[corporate] employees'") (citation omitted); *Memry Corp. v. Ky. Oil Tech., N.V.*, No. C04-03843 RMW (HRL), 2007 U.S. Dist. LEXIS 3094, at *9-11 (N.D. Cal. Jan. 4, 2007) (adopting *Bieter* and finding that communications between an advisor/agent to the company and corporate counsel were covered by the company's attorney-client privilege); *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:05-cv-01318-BES-GWF, 2006 U.S. Dist. LEXIS 80403, at *40-42 (D. Nev. Nov. 1, 2006) (applying *Bieter* to protect communications between an insurer's counsel and an independent insurance adjuster who performed the same functions performed by an "in-house" claims employee); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, No. 01 Civ. 3016(AGS), 2002 WL 31556383, at *2 (S.D.N.Y. Nov. 15, 2002) (extending the attorney-client privilege to individuals under contract to provide Fox with production-related services because the independent contractors worked on the same team as Fox employees and had similar access to the same privileged information); *Ross v. UKI Ltd.*, No. 02 Civ. 9297(WHP)JCF, 2004 WL 67221, at *5 (S.D.N.Y. Jan. 15, 2004) (concluding that real estate management services company "acted as the functional equivalent" of employees of a holding company with respect to certain real estate transactions for purposes of the attorney-client privilege).

The policy behind these decisions is well reasoned.  In order to provide informed legal advice to its corporate client, inside counsel must be entitled to communicate freely with all individuals working within or on behalf of the company to ensure that the company's legal interests are protected.  As a result, it is essential that privilege apply to legal communications with independent consultants whose actions could potentially subject the company to legal obligations or liability and who possess information necessary for corporate counsel to provide informed legal advice.  *See Bieter*, 16 F.3d at 937 ("when applying the attorney-client privilege

to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors"); *FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002) (concluding with respect to public relations independent contractors that "there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice") (internal quotation marks and citation omitted); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1797, No. 2:08-cv-2141, 2013 U.S. Dist. LEXIS 129472, at *32-33 (E.D. Pa. Sept. 11, 2013) ("It makes little sense to impose additional requirements for extending the privilege to independent contractors merely because they are not on the corporate payroll. The difference is only one of formality, and does not in itself diminish the need for the attorney and non-lawyer to collaborate to ensure that the corporation is complying with the law.") (citation omitted).

That is precisely the case here. As explained in the Watson affidavit, Ethicon contracted with Ms. Haby – through her employer at the time, the brand-production company Schawk – to provide copy review support to Ethicon as a Senior Production Manager. (*See* Watson Aff. ¶ 12.) While serving in this role, Ms. Haby acted as the equivalent of an Ethicon employee, working full-time in her own designated office space at Ethicon's facility in Somerville, New Jersey. (*Id.*) Ms. Haby was responsible for facilitating review, comment and approval by various groups within Ethicon – including the legal department – of various drafts of documents and submissions. (*Id.*) Accordingly, it was essential that Ms. Haby communicate with Ethicon's in-house counsel to ensure that these documents complied with regulatory and other legal requirements. (*Id.*) Further, and pursuant to Schawk's contract with Ethicon, Ms. Haby was

required to protect confidential information she obtained as a result of her work with Ethicon from disclosure to third parties. (*Id*.) In 2012, Ethicon formally converted Ms. Haby's position from one of a contractor to a permanent employee – and she remains employed by Ethicon to this day. (*Id*.)

In short, it is clear that at the time of the communication at issue, Ms. Haby was acting as the functional equivalent of an employee and that it was essential that she communicate freely with in-house counsel to perform her job. Accordingly, the attorney-client privilege extends to protect her communications with counsel from disclosure.

## **CONCLUSION**

For the foregoing reasons, defendants ask the Court to uphold defendants' claim of privilege with respect to both the 37 documents that defendants maintain are privileged in full and the 10 documents that defendants have produced to plaintiffs with privilege redactions.

Dated: February 23, 2015

Respectfully submitted,

*/s/ David B. Thomas*
David B. Thomas (W.Va. Bar #3731)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
(304) 414-1807
dthomas@tcspllc.com

/s/ Christy D. Jones
Christy D. Jones
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
(601) 985-4523
christy.jones@butlersnow.com


*Counsel for Defendants Ethicon, Inc.*
*and Johnson & Johnson in In re: Ethicon,*
*Inc. Pelvic Repair System Products*
*Liability Litigation (MDL)*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to CM/ECF participants registered to receive service in this MDL.

*/s/ David B. Thomas*
David B. Thomas (W.Va. Bar #3731)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
(304) 414-1807
dthomas@tcspllc.com

24