UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| **IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | Master File N. 2:12-MD-02327 MDL NO. 2327 |
| **THIS DOCUMENT RELATES TO ALL CASES** | **JOSEPH R. GOODWIN U.S. DISTRICT JUDGE** |

**PLAINTIFF'S REPLY MEMORANDUM IN RESPONSE TO DEFENDANTS JOHNSON & JOHNSON AND ETHICON'S OPPOSITION TO PLAINTIFF'S FOR *IN CAMERA* INSPECTION**

Plaintiff Carol Cavness files this reply memorandum in response to Defendants Johnson & Johnson and Ethicon's Opposition to Plaintiff's Motion for *In Camera* Inspection.[1] Plaintiff Carol Cavness is plaintiff in *Cavness v. Kowalczyk,*[2] a state court case pending Texas District Court for the 95th Judicial District, Judge Ken Molberg, Plaintiff Carol Cavness is not a party to any proceeding before the MDL Court.

BACKGROUND

On November 7, 2014, after reviewing Defendants' response to request for production in *Cavness*, Plaintiff's counsel requested that Defendants produce a privilege log pursuant to the Texas Rules of Civil Procedure. On November 24, 2014, Defendants produced a privilege log pursuant to the Texas Rules of Civil Procedure. Contained therein are documents either

---

[1] Filed in the Ethicon MDL as document 1478-3.

[2] *Cavness*, the Texas District Court case, arises from implantation of Defendants' Gynemesh PS, which is used in the pelvic mesh product implanted in Ms. Cavness: the Ethicon Gynecare Prosima Pelvic Floor Repair System.

Page 1

withheld, or produced and redacted, due to asserted privilege. Initially, Defendants' privilege log spanned 5,778 pages and encompassed 21,780 documents. After numerous negotiations, the dispute regarding privileged documents and/or redactions has been narrowed to a subset of forty-seven documents for which Plaintiff Cavness seeks *in camera* review by the Texas District Court.

## ARGUMENT

I. **AN *IN CAMERA* INSPECTION IS REQUIRED UNDER BOTH TEXAS AND NEW JERSEY LAW**

   A. ***In Camera* review is appropriate under Texas Law.**

Texas Rule of Civil Procedure 193.4(a) allows a party to request a hearing on assertions of privilege by another party. TEX. R. CIV. P. 193.4(a). In response, the party asserting privilege must establish a prima facie case for its assertions of privilege by producing evidence (affidavits or live testimony). *Id.*; *In re Living Ctrs.*, 175 S.W.3d 253, 261 (Tex. 2005); *In re Monsanto Co.*, 998 S.W.2d 917, 924-25 (Tex.App.-Waco 1999, orig. proceeding). If a prima facie case for claims of privilege can be made by the party asserting privilege, documents identified for inspection by the Court must then be inspected *in camera*. *Id.*

Even within the documents that are still in dispute, numerous assertions of privilege were made based upon a claim of attorney-client privilege or attorney work product where an attorney was just "cc'd." *See In re Monsanto Co.*, 998 S.W.2d at 930 ("We recognize that it might be argued that all communications between corporate representatives could be claimed as privileged on the basis that 'the legal department can better represent us if we keep them informed.' We reject that assertion. We do not believe that it is necessary for the legal department to be advised of every development out in the field, no matter how minute"). Numerous withheld emails and documents involve non-employee third parties, suggesting an absence of confidentiality and

waiver of privilege by Defendants' conduct. *See Osborne v. Johnson*, 954 S.W.2d 180, 184 (Tex.App.-Waco 1997, orig. proceeding) ("[A]ttorney-client privilege only protects confidential communications…Communications made in the presence of others who do not qualify as representatives of the client or the lawyer are not considered confidential"). It is further unclear whether the withheld documents and information were truly involving legal advice or whether the alleged attorney-client communication really involved an attorney acting in a business capacity instead of a legal capacity. *See SEC v. Brady,* 238 F.R.D. 429, 438-39 (N.D. Tex. 2006) (finding that the first fundamental aspect of the attorney-client privilege is that the communication must have been made for the purpose of obtaining legal advice, rather than business or other advice, *i.e.*, the lawyer's primary role cannot be non-legal, such as giving business advice).

      B.      **New Jersey Law also mandates an *In Camera* Inspection.**

Although Texas procedural law would apply to *Cavness*, a case pending in state court in Texas, New Jersey law also mandates an *in camera* inspection. In *United Jersey Bank v. Wolosoff*, the court noted that a party "cannot invoke the [attorney client] privilege to render conclusive its own evaluation of the nature and character of the materials in question. Rather, an *in camera* inspection by the court is clearly required." *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 568 (App.Div. 1984). Applying *Wolosoff*, the court in *Payton v. New Jersey Turnpike Authority* observed:

> [A] fine line exists between an attorney who provides legal services or advice to an organization and one who performs essentially nonlegal duties. An attorney who is not performing legal services or providing legal advice in some form does not qualify as a "lawyer" for purposes of the privilege. Thus, when an attorney conducts an investigation not for the purpose of preparing for litigation or providing legal advice, but rather for some other purpose, the privilege is inapplicable. That result obtains even where litigation may eventually arise from the subject of the attorney's activities.

*Payton v. N.J. Tpk. Auth.*, 148 N.J. 524, 550-551 (N.J. 1997)(citing *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 568 (App.Div. 1984). In *Payton*, the appellate court determined that it could not determine whether specific documents were covered by the attorney-client privilege because the trial court had failed to conduct an *in camera* inspection. *Id.* at 551. Thus, the court ordered the trial court to conduct an *in camera* inspection of the documents. Likewise, the court ordered *in camera* inspection of documents for which work-product privilege was asserted.

II. **The Watson Affidavit.**

    A. **Defendants are not entitled to argue privileges *ex parte* under Texas law.**

On page 4, footnote 1, of The Affidavit of Benjamin M. Watson, filed by Defendants' in support of the alleged privileges,[3] Defendants offer to provide *in camera* "a more detailed version of Exhibit B that contains privileged descriptions of the documents at issue" to the MDL Court and to the Texas Court. There is no provision in Texas law that allows such an *ex parte* argument/communication with a Texas Court under the circumstances at issue here with regard to privilege. *See Barnes v. Whittington*, 751 S.W.2d 493, 495 (Tex. 1988)(orig. proceeding)(tendering affidavit in support of privileges to court but failing to serve on opposing counsel rendered the affidavit an "improper *exparte* communication."). The documents themselves should be submitted to the Court for review as provided for under Texas law.

    B. **The APCO documents.**

Defendants have not provided a basis for their assertion on page 4 of The Watson Affidavit that drafts of documents that have been produced are protected by attorney client privilege. Notably, Mr. Watson does not aver that the "draft" APCO documents contain

---

[3] Affidavit of Benjamin M. Watson was filed in the MDL Court as document number 1478-4.

attorney, in-house or otherwise, notes or comments. Instead, he merely avers that that documents are drafts and that the final documents have been produced.

On page 4, footnote 2, of the Watson Affidavit, Defendants states that it will provide the Texas Court with an *in camera* copy of the APCO engagement letter *in camera* upon request. **Defendants do not argue any basis for which this APCO engagement letter, itself, is privileged**. Instead, apparently, Defendants seek to rely on the letter as evidence of or argument in support of other documents privileged nature. As with the suggested *in camera* inspection of a more detailed privileged log, *in camera* submission of the APCO engagement letter would be an improper *ex parte* communication under Texas law and should be prohibited. Should Defendants wish to use the APCO engagement letter as evidence that the disputed documents reflecting "strategic communications" with APCO are privileged, Defendants should produce that engagement letter.

### III. APPLICATION OF PRIVILGE LAW DURING *IN CAMERA* INSPECTION

#### A. Communications To or From In-House Counsel.

While before the MDL court, Defendants wish the court to believe that interpretation of attorney-client privilege is based on federal law, that is not so. Rule 501 of the Federal Rules of Evidence directs the court to look to state law when deciding issues of privilege when jurisdiction is based on diversity. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990).

In their opposition, Defendants state that New Jersey "state courts recognize the same policies behind the [attorney-client] privilege as do the federal courts." However, a further reading of *Leonen,* the case upon which Defendants rely, reveals attorney-client privilege under New Jersey law is **qualified, not absolute as under federal law**. In determining whether a document is protected by the attorney-client privilege under New Jersey law, "the Court has

focused on whether the communications/documents were made to in-house counsel in their professional capacity as lawyers." *id*. Here, only those communications that were made to the in-house counsel **as attorneys in their professional capacity for Defendants** should be afforded protection of attorney-client privilege.

Furthermore, the court's proper focus should be "whether 'the communication is designed to meet problems which can fairly be characterized as predominately legal." *Id*. Therefore, information in Defendants' documents must be predominately legal, and given in the official capacity as in-house legal counselor in order to be properly afforded the privilege.

While the *Rowe* case upon which Defendants rely did state that the court must determine whether the communication is designed to meet problems which can fairly be characterized as predominantly legal, the court also went on to say "[o]nly if the attorney is 'acting as a lawyer' giving advice with respect to the legal implications of a proposed course of conduct may the privilege be properly invoked." *Rowe v. E.I. duPont de Nemours & Co.*, 2008 U.S. Dist. LEXIS 81053, *at 29 (D.N.J. Sept. 30, 2008).

"To prevent corporate attorneys form abusing the privilege by using it as a shield to thwart discovery, 'the claimant must demonstrate that the communication would not have been made but for the client's need for legal advice or services.'" *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990).. Further, merely attaching a document to a privileged communication does not make the attachment privileged, and the privilege protects the communication, not the underlying facts. *Id*. Defendants' have shown little evidence that these communications would not have been made but for the need for legal advice or services.

In their Opposition, Defendants cite case law from other circuits stating that communications sent to both lawyers and non-lawyers for review are privileged. The third

circuit, where New Jersey is located, has stated otherwise: "When the business 'simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.'" *Craig v. Rite Aid Corp.*, 2012 U.S. Dist. LEXIS 16418, *at 29 (M.D. Pa. Feb. 9, 2012). Because the third circuit views communications sent to both lawyers and non-lawyers as less likely that the primary purpose was purely legal, the court should view such documents that Defendants claim are privileged as less likely to be privileged.

Finally, on information and belief, one of the individuals whom Defendants claim is an attorney and whose alleged legal advice Defendants claim is protected by the attorney-client privilege, Dirk Brinckman, is not licensed as an attorney in the United States. Dirk Brinckman is the sole attorney listed in the privilege log as supplying legal advice for documents PL11662 and PL25353. If he is in fact not licensed in the United States, Defendants have failed to demonstrate that his alleged legal advice is covered by the privilege.

      **B.**      **Draft Documents that Allegedly Include Attorney Comments.**

In *SEC v. Teo*, the Third Circuit stated "because the privilege obstructs the search for the truth and because its benefits are, at best, 'indirect and speculative' [the attorney-client privilege] must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *SEC v. Teo*, 2009 U.S. Dist. LEXIS 49537, *at 19 (D.N.J. June 11, 2009). Further, in *SEC v. Beacon Hill* the Third Circuit stated "[d]rafts of documents prepared by an attorney for subsequent transmission to third parties are protected by the attorney-client privilege only where the draft document contains confidential information communicated by the client to the attorney that is maintained in confidence." *SEC v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 145 (S.D.N.Y. 2004). Here, it is unclear whether the documents in question were drafted by an

attorney, and whether the remarks contained therein are confidential. The Third Circuit clearly does not intend for the privilege to be used in an over reaching manner, and has clearly indicated those portions of drafts which it is intended to cover. Further, to be privileged, the comments by alleged attorney must be the sort of attorney-client communications as discussed above.

    **C.**  **Communications Between Non-Lawyers Within Ethicon or J&J Allegedly Discussing Legal Advice from Counsel.**

In their Opposition, Defendants cited *Macey v. Rollins Environmental Services (N.J.), Inc.*, where a court found that a report, prepared by an expert in anticipation of litigation following a chemical waste plant explosion, was privileged. 179 N.J. Super. 535, (App.Div. 1981). In the present case, the communications at issue are between non-lawyers allegedly discussing legal advice from counsel. However, Defendants have not shown that those communications were in anticipation of litigation. A fact pattern such as the one in this case was distinguished from *Macey* in *Travelers of N.J. v. Weisman*, where the court found that the *Travelers* documents were prepared in the normal course of business and were not solicited by counsel, whereas the documents in *Macey* were solicited by counsel and were not prepared in the normal course of business. 2012 N.J. Super. Unpub. LEXIS 567 (App.Div. Mar. 15, 2012). Here, Defendants have not shown that these documents that they claim are privileged e-mails and communications between non-lawyers were prepared in anticipation of litigation or at the request of counsel.

"[A] litigant who wishes to assert confidentiality must maintain genuine confidentiality" *Net2Phone, Inc. v. eBay, Inc.,* 2008 U.S. Dist. LEXIS 50451, *at 19 (D.N.J. June 25, 2008). Further, "a client generally waives the privilege if he or she voluntarily discloses the privileged communication to a third party … or fails to take reasonable measures to ensure the confidentiality of communications with counsel" *Id.* at 20. Defendants have made no showing

that the communications between non-lawyers waived the privilege by disclosing privileged communications to third parties and has also made no showing that Defendants took reasonable measures to ensure the confidentiality of such communications.

The court in *Net2Phone* also did not find e-mails among employees were privileged because the party asserting the privilege failed to show that the information relayed among the non-attorneys was legal advice. *Id.* at 70. Here, Defendants have not shown that the communication among the non-lawyers contained legal advice instead of being a work-related communication.

D.     **Documents Created by APCO.**

Defendants assert that communications with APCO, a public relations firm hired by their counsel, Butler Snow, are privileged as work product. In *NXIVM Corp. v. O'Hara,* plaintiff hired O'Hara as a consultant. 241 F.R.D. 109 (N.D.N.Y 2007). The court in *O'Hara* stated "O'Hara was wearing multiple hats and if he was advising NXIVM on anything and everything other than legal services, whether business, media, public relations, or lobbying, there is no attorney-client privilege." The *O'Hara* court went on to say "O'Hara may have participated in communications providing legal advice or had become privy to documents prepared in anticipation of litigation, but the burden of proving such participation remains with NXIVM." *Id.* at 62, 63. Here, Defendants' counsel simply hiring APCO does not make APCO communications privileged. APCO communications were not necessarily prepared in anticipation of litigation, and thus afforded work product privilege, because Butler Snow hired APCO. The burden of proving that APCO participated in preparation for or acting in litigation remains on Defendants.

As in the present case, in *Calvin Klein Trademark Trust v. Wachner,* hired a public relations firm as a consultant. 198 F.R.D. 53 (S.D.N.Y. 2000) The *Calvin Klein* court stated "[t]urning to the assertion of 'work product,' it is obvious that as a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine embodied in Rule 26(b)(3), Fed. R. Civ. P." *Id.* at 7. The court in *Calvin Klein* further stated "[t]hat is because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Id.* Likewise, the Butler Snow hired a public relations firm. A public relations firm provides consulting on public relations, not legal matters, and its documents and communications should not be afforded the protection of work product privilege.

  E.  **Communications Between In-House Counsel and Consultant.**

"[A]lthough an attorney actually represents only one party, there is no waiver of the attorney-client privilege by disclosure of privileged communications to third parties with a 'community of interest.'…Parties have a 'community of interest' where they 'have an identical legal interest with respect to the subject matter of a communication between an attorney and client concerning legal advice.'" *Id.* at 23. Here, Defendants have not shown that the consultants (third parties) have an identical legal interest to Defendants. Without such an identical legal interest, disclosure to a third party can constitute waiver of privilege. Defendants argued that outside consultants are included within the scope of corporate privilege when the consultants are the functional equivalent of corporate employees, however the Defendants cited this from an Eighth Circuit case, and the Third Circuit court in *Net2Phone* clearly does not follow. In fact, in *Smith v. Unilife Corp.*, the court even stated "the Third Circuit has yet to adopt

the 'functional equivalent' doctrine," 2015 U.S. Dist. LEXIS 18755, *at 5 (E.D. Pa. Feb. 13, 2015).

The *Smith* court mentioned the considerations given in deciding whether a consultant is the functional equivalent of an employee from *In re Bristol-Myers Squibb Secs. Litig.*, 2003 U.S. Dist. LEXIS 26985 (D.N.J. June 25, 2003). *In re Bristol-Myers*, the court considered "whether the consultant was: 1) incorporated in the staff to perform a corporate function, *which is necessary for actual or anticipated litigation*; 2) possessed information needed by attorneys in rendering legal advice; 3) possessed authority to make decisions on behalf of the company; and 4) were hired because the company lacked sufficient internal resources and/or adequate prior experience within the consultant's field." *Id.* at 12. Here, Defendants have not clarified whether their "consultants" or "functional equivalents" of employees performed their duties in anticipation of or for litigation. Defendants have not shown that these persons were necessary to providing legal advice, or that these persons had authority to make decisions for the company. Defendants have also not shown that these consultants were hired because the company lacked sufficient resources or experience in the consultants' respective fields. Further, the *Bristol-Myers* court stated that "[t]he key to deciding if a consultant should be protected under the 'functional equivalent' exception is if the consultant acts for the corporation and possesses the information needed by attorneys in rendering legal advice. *Id*. Defendants have made no showing that their consultants were necessary to their counsel providing legal advice, since these privileges are only afforded to legal advice as stated above.

The *Bristol-Myers* court went on to say that "the last factor was important because it indicated that the consultants could not be implicated in a chain of command relevant to the subject matter of legal services, and as a result could not 'act for the corporation and possess the

information needed by attorneys in rendering legal advice.'" *Id.* at 14. In this case, Defendants have failed to show that their hired third parties (consultants) were hired because of a lack of resources on the part of Defendants' multi-national corporation; thus such persons should not be implicated in the chain of command in rendering legal advice, and thus not fall within any sort of "functional equivalent" exception allowing for protection of privilege.

### IV. CONCLUSION AND PRAYER

Based on the foregoing, Plaintiff Cavness' Motion for *In Camera* Inspection should be granted, Defendants should be required to submit the documents to the Texas Court for *in camera* inspection, and following inspection, Defendants should be ordered to product the documents to Plaintiff. Plaintiff prays for this and for such further relief, at law and in equity, to which she may be justly entitled.

Dated: March 2, 2015

Respectfully submitted,

MATTHEWS & ASSOCIATES

/s/ Julie L. Rhoades
David P. Matthews
State Bar. No. 13206200
dmatthews@thematthewslawfirm.com
Julie L. Rhoades
State Bar. No. 16811710
2905 Sackett St
Houston, TX 77098
713-522-5250 Telephone
713-535-7132 Facsimile
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk for The Judicial Panel on Multidistrict Litigation pursuant to its electronic case filing system (ECF). The ECF sent a "Notice of Electronic Filing" to the attorneys of record who have consented to accepting service via this method.

Certified to the 2nd day of March, 2015 by:


/s/ Julie L. Rhoades
Julie L. Rhoades