

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

_____
                                 )
IN RE:  ETHICON, INC., PELVIC    )
                                 ) MDL NO.
REPAIR SYSTEM PRODUCTS LIABILITY )  2:12-md-2327
_____)


**TRANSCRIPT OF TELEPHONE CONFERENCE**
**BEFORE THE HONORABLE CHERYL A. EIFERT**
**UNITED STATES MAGISTRATE JUDGE**
**THURSDAY, APRIL 16, 2015; 2:05 P.M.**
**CHARLESTON, WV**


    Proceedings recorded by mechanical stenography,
transcript produced by computer.

**Mary A. Schweinhagen, RMR, CRR**
Federal Official Court Reporter
300 Virginia Street, East
Charleston, WV  25301

*** *** *** ***

```
 1   APPEARANCES: (All telephonically)

 2   For the Plaintiff:

 3   MS. SHEILA BOSSIER
     MR. JOHN HARLOE
 4   MS. SARA TURMAN-VEDRAL
     Freese & Goss, PLLC
 5   3031 Allen Street
     Suite 200
 6   Dallas, TX  75204

 7

     For the Defendant:
 8
     MR. RICHARD BERNARDO
 9   Skadden, Arps, Slate, Meagher & Flom
     4 Times Square
10   New York, NY  10036

11   MR. BENJAMIN M. WATSON
     Butler, Snow, O'Mara, Stevens & Cannada
12   P.O. Box 6010
     Ridgeland, MS  39158-6010
13
     MR. ASHLEY PARRISH
14   King & Spalding
     1700 Pennsylvania Avenue NW
15   Suite 200
     Washington, D.C.  20006
16
                        *    *    *    *    *
17

18

19

20

21

22

23

24

25
```

1              PROCEEDINGS had before the Honorable Cheryl Eifert,

2    United States District Court, Southern District of West

3    Virginia, as follows:

4              THE CLERK:  This is Laura, Judge Eifert's judicial

5    assistant, and I would first like to confirm a court reporter

6    is on the line today, Mary Schweinhagen.

7              COURT REPORTER:  I'm here.

8              THE CLERK:  May I have plaintiff's counsel, please.

9              MS. BOSSIER:  Sure.  My name is Sheila Bossier,

10   B-O-S-S-I-E-R, and I'm with the plaintiff.

11             MR. HARLOE:  John Harloe for --

12             THE CLERK:  John Harloe, all right.

13        Anyone else for plaintiff's counsel on the line?

14        How about defense counsel, please.

15             MR. BERNARDO:  Richard Bernardo for Ethicon.

16             MR. WATSON:  Ben Watson for Ethicon.

17             THE CLERK:  All right.  Thank you.

18             MR. PARRISH:  And Ashley Parrish for Ethicon.

19             THE CLERK:  All right.  Thank you.  Is there anyone

20   else on the line for defense counsel?

21        All right.  Is that everyone today?

22             MS. TURMAN-VEDRAL:  This is Sara Turman-Vedral -- I

23   just joined -- for the plaintiffs.

24             THE CLERK:  All right.  Sara, would you spell your

25   last name for me, please?

1        MS. TURMAN-VEDRAL:  It's Turman.  T as in Timothy,

2   -U-R-M-A-N, then a hyphen, and V as in Victor, -E-D-R-A-L.

3        THE CLERK:  Thank you very much.

4      All right.  If that's everyone, I will get Judge Eifert.

5      And just a reminder, per usual, that when speaking please

6   say your name so that it will be included with the court

7   reporter in the transcript.  Thank you.

8        THE COURT:  Hello?  Hello there.

9        UNIDENTIFIED SPEAKER:  Good afternoon, Judge.

10       THE COURT:  Good afternoon.

11       UNIDENTIFIED SPEAKER:  Good afternoon, Your Honor.

12       UNIDENTIFIED SPEAKER:  Good afternoon.

13       THE COURT:  I've got everybody's names, and we have

14   Mary on the line with us, so I know Laura's already reminded

15   you to please state your name before you speak, but if you

16   would also mute your phone if you are not speaking and try not

17   to make a lot of noise in the background, try not to type and

18   open and close drawers and things like that, that would be

19   very helpful.

20      So why are we here today?

21       MR. BERNARDO:  Judge Eifert, this is Rich Bernardo,

22   and first I want to apologize in advance for my frogginess.  I

23   am getting over a cold here.  So I hope I am audible.

24      We are here by way of follow-up to the teleconference we

25   had with you back in February regarding Ethicon's motion that

1   you granted to coordinate a privilege dispute that was ongoing

2   in a Texas case, if you recall.  And we wanted to touch base

3   with you essentially to follow up from that point, letting you

4   know where we are and what we're hoping we might be able to

5   ask from you.

6        And if it's okay with you, I thought maybe I would give

7   you that background and then, of course, plaintiffs can join

8   in.  I am sure you may have some questions.

9            THE COURT:  All right.  Yes.  And let me tell you,

10  after we had our conversation back in February, I did speak

11  with Judge Goodwin and Kate.  We had a telephone conversation

12  about it.  And we were all in agreement that these are the

13  sorts of things that it would be wonderful to coordinate.

14       We were also all in agreement that it's one of those

15  things that it's like trying to nail Jello on a wall as far as

16  actually doing something about it, which is why I haven't

17  issued a formal written order, because I really didn't know

18  what to say other than what I had said during the telephone

19  call, which is that I want the litigants in the MDL to

20  coordinate to the degree that they can to notify me of the

21  issues as they arise.

22       And that was where Judge Goodwin felt the most could be

23  done, and it would be in a notification.  So what he has

24  suggested is to have the parties notify both -- if it's a

25  discovery issue or if it's an issue that would go to him,

1  whichever one of us, to notify the judge when there is an

2  issue that should or could be coordinated, to let us know when

3  there are rulings by other judges that would affect the MDL,

4  and just to generally keep us apprised of what's going on so

5  that we have an opportunity to contact the other judges as

6  issues are arising in front of them that have some importance

7  to the MDL.

8      I think one of the things that makes it difficult is that

9  there are so many combinations in these MDLs as far as claims

10 go that it's hard to coordinate everything.  It's not your

11 typical MDL where you would have, for example, one

12 pharmaceutical at issue.  Here we've got the combinations of

13 different products, and maybe just one product or two products

14 and different manufacturers.  So it's much more complicated

15 than the standard MDL.  So that makes it a little harder to

16 coordinate things, but that is still our goal.

17     So I just wanted to get that out there for you.  Even

18 though I haven't issued an order to that effect, that is where

19 our minds are at and what we would like to see happen.

20     So having said that, Mr. Bernardo, I will go ahead and

21 let you say what you would like to say.

22         MR. BERNARDO:  Well, thank you for those comments,

23 and hopefully, as unappetizing as it might sound, I would like

24 to turn the Jello into concrete here with respect to this

25 particular issue.

1          So just to maybe refresh your recollection to where we

2    were, this was an issue where plaintiffs challenged outside of

3    the MDL a group of about 1,500 documents and were challenging

4    them on the basis of privilege with an indication to Ethicon

5    that their intent was to use that as a first challenge but

6    work their way through the whole log.

7          That prompted us to seek coordination for a number of

8    reasons that we explained, and I won't go into those again.

9    And we've been working with the plaintiffs' counsel, and we

10   took that group of 1,500 documents, as you may recall, and got

11   rid of duplicates and narrowed it down in a very, very

12   cooperative and successful meet and confer which narrowed it

13   further, and we turned those 1,500 into 47 documents at

14   dispute.

15         And we served papers in the MDL, as did plaintiffs, and

16   served papers in the court in Texas.

17         We had a hearing in front of Judge Molberg in Texas --

18   and I apologize, I don't recall the date, but I can get that

19   for you, about a month or so ago -- and we argued both the

20   merits of the 47 documents as much as we could without

21   revealing privilege but based upon the papers that we had

22   submitted; and we also presented him with the same argument

23   that we had presented to you, Judge Eifert, regarding

24   coordination.

25         Within an hour or so of that argument, I was approached

1  by plaintiff's counsel and told that they wanted to meet with

2  us because they had changed their mind and wanted to agree to

3  have a Special Master appointed and were agreeable to

4  coordination, which we took as a really good development and a

5  positive development.  And we worked with plaintiff's counsel,

6  and we agreed upon a Special Master in Texas, and his name is

7  Justice Keltner.  He is a former justice on the Texas Court of

8  Appeals and currently a partner at Kelly, Hart & Hallman in

9  Fort Worth, Texas.

10        We also worked with plaintiffs to agree to an order

11  appointing Justice Keltner in ordering coordination between

12  the federal court and the Texas court with respect to these

13  privilege issues.  Again, we think that's a very positive

14  development, and we appreciate having been able to work

15  collaboratively with plaintiffs on that, and we'd be happy to

16  send you any of those papers.

17        We then -- Ethicon -- put together a proposed protocol

18  that we were hoping would get entered both in Texas court and

19  the MDL that would describe what the coordination would look

20  like and what the procedure would be, because we think it's

21  important to make sure to a point you raised earlier that this

22  is all clear and that both sides understand we have

23  timetables, protocols, et cetera.

24        And we provided that to plaintiffs, and we met and

25  conferred over that, and we not surprisingly have some areas

1  of agreement with respect to that and some areas of

2  disagreement with respect to that, which I will address

3  shortly.

4      I will say one important area of agreement that I know

5  you were particularly interested in, Judge Eifert, is the

6  choice of the law.  The parties have agreed that New Jersey

7  would be the law that governs the privilege dispute.

8      And you may recall in response to your question --

9  request for a motion or something on that issue, we provided

10  you some papers on that and where Ethicon was coming out with

11  exactly that same place.  Although we also pointed out that

12  given the way different states approached this and uniformity,

13  chances are that even if you approach it from other

14  perspectives, whether federal law or under state law, that you

15  would probably come out the same way, and I think that was

16  another positive development that we all agreed on the choice

17  of law.

18      We tried to set up a conference with Justice Keltner,

19  which we did the other day, and we told him that -- we chatted

20  with him and explained our various positions on what

21  coordination would look like and told him that we were going

22  to bring you up to speed as to what's been going on and set up

23  a call so we could get both of your views.

24      And what we're going to be doing is yesterday we sent to

25  Justice Keltner our proposed protocols, plaintiffs and

1   defendants, and tomorrow we're going to send him the -- a

2   short memo addressing where the parties agree and disagree.

3   And we think it would be appropriate to provide those to Your

4   Honor as well, again in the spirit of coordination.

5        Again, the main disagreement -- and that's one thing we

6   wanted to chat with you about because what we are really

7   trying to do is solicit your input, solicit Judge Keltner's

8   input, and see if we can all come up with something that makes

9   sense, again, to turn the Jello into concrete.

10       The main disagreement is what is the role of the MDL in

11  looking at these documents.

12       And I will say from Ethicon's perspective -- and I know

13  plaintiffs will give you their perspective.  From Ethicon's

14  perspective, it's always been our view that on the privilege

15  dispute, because of the risk of nonuniform ruling would mean

16  that both Your Honor and the Special Master in Texas would

17  collaborate.  You would both look at the documents; you would

18  both come to whatever views you have.  And then the important

19  part of the process would be for you to communicate with each

20  other to see if you could come to some agreement and issue a

21  joint ruling that could be entered both in the MDL and in the

22  Texas state court.

23       We recognize there may be some areas where you don't come

24  to agreement, and obviously those would be noted in a joint

25  kind of order.  It's Ethicon's view that anything short of

1    that would really be not coordination.  In other words, if

2    Justice Keltner were to look at those on his own, issue his

3    own report and recommendation, and then make that available to

4    you or something short of collaborative ruling and joint

5    recommendation, we don't think that really is coordination and

6    think that risks the very inconsistency as -- that we were

7    seeking in the coordination motion.

8        That's the main area of disagreement.  There is also a

9    couple of other things which I think we can get through but I

10   will highlight them just so you're aware.

11       One is the procedural way of putting this in front of the

12   MDL.  And plaintiffs have referenced, Judge Eifert, your

13   language about a motion in the February 11th hearing, and we

14   may have misunderstood but it was our impression that what you

15   were asking for was a motion or something creative that we can

16   think of to tee up the issue of the choice of law, and that

17   was the reason that we submitted that choice of law paper to

18   you, only for the purpose of addressing that.

19       So we think we complied with your request for a motion,

20   but if we didn't, we think that is something we can deal with.

21   In any event, as I alluded to earlier, the issue of choice of

22   law we think is really no longer an issue since the parties

23   have come to an agreement.

24       But if there is some other procedural mechanism whereby

25   there needs to be a piece of paper in order to put these 47

 1   documents and any subsequent documents that will be identified

 2   before Your Honor for purpose of coordinating, we'll be happy

 3   to put that together and work with plaintiffs to agree.

 4        So that was the second area of disagreement on procedural

 5   issue.

 6        The third and I think really last significant issue or

 7   issue of disagreement is one of timing.  I think the

 8   plaintiffs are concerned that the MDL's participation will

 9   slow the process down, and they have their trial date in

10   September.

11        Ethicon does not -- defendant does not think that really

12   is the case when we are prepared to work very aggressively to

13   try and work through as much of this -- as much of this as we

14   can.

15        I will point out that when we spoke with plaintiffs

16   initially after the hearing with Judge Molberg, I think they

17   recognized that we couldn't possibly get through the entire

18   privilege log in one case, and that that case was really, I

19   won't say, randomly picked, but there were other cases that

20   could have been picked but that was a case that already went

21   to trial so there didn't appear to be any magic in having it

22   resolved in connection with the Cavness case.

23        And, in fact, when we spoke with plaintiffs early on, I

24   think the understanding was that we would try and make

25   substantial progress in getting through as much of the log as

1   we could over the next several months.

2       And defendants have proposed a way to get through many

3   thousands of documents over the next several months by putting

4   them in tranches, working through them in an orderly manner.

5   Plaintiffs suggested -- which we think is a great idea and we

6   agreed to it -- that they could give us search terms so we

7   would put those search terms through the contents of the

8   privilege documents and see if we could try and bring to the

9   front of the line in groups of, say, 2,000 or so those

10   documents that we think are the most important to get

11   resolved.

12       So we don't really think that timing should be an

13   obstacle.  And, again, we think that the critical thing here

14   is the coordinated effort, is coordinated rulings, is

15   consistency we could do in order to the parties' benefits here

16   and to other parties' benefits as well.

17       So to wrap up, what are we asking here?  I think we've

18   crossed significant hurdles together.  I think we've come to

19   significant agreement.  And I think we're just looking to

20   referring -- again Jello -- to come up on a procedure that

21   benefits everybody.  And I think we collectively have

22   accomplished something very good here with this coordination

23   and hope that this can become a model that can get used with

24   other cases as well.

25       So what we'd like to do is to send you the protocols that

1  we sent to Judge Keltner and perhaps ask you to reach out to

2  Judge Keltner and then see if we can set up a conference with

3  you and Judge Keltner and iron out some procedure so we can

4  move this along in an orderly and uniform way.

5      Again, thank you for putting up with my frogginess here.

6      THE COURT:  I am very impressed.  It sounds like you

7  have been working to death.

8      So I am going to let the plaintiffs say whatever they

9  want to say, but I have to tell you that I am extremely

10  impressed.  It sounds like a lot of effort has gone into this.

11  And it to me was one of those issues that I, I knew it would

12  certainly be beneficial to work something out, but where to

13  begin just seemed to be an overwhelming, daunting task.  So I

14  think you've really done an amazing job so far.

15      What do the plaintiffs have to say about this?

16      MS. BOSSIER:  Judge, this is Sheila Bossier.  I am a

17  partner at Freese & Goss law firm, and on behalf of the

18  plaintiff, Ms. Cavness.

19      As you say, we have made some great strides, and I

20  believe that we have a good working model for at least

21  getting, getting to the point of being able to address

22  documents more specifically.

23      On the privilege review, though, we do differ on the very

24  issue that -- the very same issues that Mr. Bernardo just told

25  you about.  And I think what's most important to us right now

1    is obviously how quickly you are going to be able to resolve

2    this discovery dispute in order to obtain documents, if in

3    fact we are entitled to obtain them, such that they would be

4    of any benefit to us in this present litigation.

5        The main roadblock that we have had -- and I spoke to

6    Mr. Bernardo in our private conferences as well as to Justice

7    Keltner, our Special Master -- is the manner in which the

8    judges or the courts are going to coordinate.  Because

9    procedurally, as I understand it, there is no -- these

10   documents are not before Your Honor or in MDL for decision at

11   present.  So that there is no mechanism right now for the

12   court, your court, to use -- to review these specific

13   documents in response to any type of current discovery dispute

14   in the MDL.

15       So that then is a procedural issue that I don't know how

16   we overcome, other than we just come up with some sort of

17   agreement with the Court that if they would -- that you would

18   review those documents simultaneous to the Texas court review.

19       The main issue, though, is what coordination means.  What

20   the defendants have proposed in their protocols they have

21   provided to Justice Keltner is that you, Magistrate Eifert,

22   and Judge -- Justice Keltner, our Special Master, not only

23   confer but that you actually issue a joint recommendation to a

24   state court judge, and presumably to Judge Goodwin, on the

25   documents that are at issue in Texas state court.

1        You know, everything else aside, I just believe that

2   that's a big burden that the parties are putting on you and

3   the MDL officially to -- we don't -- these documents are not

4   in front of you for review at present.

5        So that's where we are.

6        What we didn't -- what we believe coordination means is

7   that -- and this is what we put in our protocol and this is

8   what we asked of Justice Keltner, and that is, that Justice

9   Keltner reaches out to you -- honestly, he is, he is not

10  required to do that under Judge Molberg's order -- that he

11  reaches out to you and discusses with you the best method for

12  coordination that you two, the judges, decide would be the

13  most effective way to address the issues that the MDL, that

14  you addressed actually and that Judge Molberg addressed in his

15  order, and that is the consistency and difference to what has

16  already transpired in MDL from the years and that you are

17  aware of, that Texas state court judges, the Judge and Special

18  Master and those types of things, rather than us as parties,

19  as litigants, telling you this is how it should be done and

20  this is what we think you should do in a situation where this

21  matter's really not before you procedurally.

22       I believe that the better angle would be that before you

23  issue your report and recommendation, after you get through

24  all the document review, that -- that that causes the Special

25  Master to reach out to you and express to you what your

1    thoughts are before he issues a report and recommendation, and

2    that way he has conferred.  If you have any specific issues

3    with where he is going with his opinions or -- and specific

4    issues that you can enlighten him about particular areas that

5    he may not be as familiar with as you, then that will all go

6    into your report and recommendation to the state court judge,

7    and then Judge Molberg will have the opportunity to review the

8    report and recommendation and make his decision.

9         As he is the only one that can do that.  And I believe

10   you recognized that in the hearing that was held in February.

11        So that is our position.  We, we agree that there needs

12   to be coordination.  We have expressed that to Judge Molberg.

13   We expressed our concerns that this not hold up our efforts to

14   get the discovery in state court and that we want to move

15   forward as quickly as we can.

16        That is generally our position, Judge.

17             THE COURT:  Okay.  I think I understand where you're

18   coming from on that.

19        As far as the procedural aspect of it, I don't see that

20   as being a big stumbling block.  What has happened in the

21   other cases that I've had where this issue has come up is the

22   plaintiff has just filed a motion -- the plaintiffs -- in the

23   MDL challenging the confidentiality of various documents.

24   Simple motion.  It just says, plaintiffs challenge the

25   confidentiality of various motions and move to compel their

1   disclosure.  It's simple.  Very simple.

2       So that could be done easily.  I don't think that is a

3   big issue.  So that could be done quickly.

4       I think as far as timeliness goes, I'm not real concerned

5   about that either.  I think it can be done quickly as well.

6   I'm certainly willing to work as hard as I can to help you

7   meet whatever deadlines you need to meet.  I understand that

8   you are not in the MDL, and I don't want to do anything that

9   would slow down your separate schedule.  And I would certainly

10  want to help in any way that I can.

11      I think I would feel sorry for Justice Keltner if he is

12  going to have to look at all of these documents on the

13  privilege log.  I don't think that's anything that any judge

14  would really want to do.

15      So as far as the coordination goes, I don't think it is a

16  bad idea to perhaps let me and Justice Keltner talk, and

17  perhaps we could find a way that would suit both of us as far

18  as how to coordinate.

19      I mean, obviously he is, he is doing this for a specific

20  case, and I'm looking at it in terms of just the broad picture

21  of how this is going to work for all of these cases in the MDL

22  going down the road.  And we don't know what's going to happen

23  to these cases.  They may be remanded.  There may be a group

24  that are tried.  They may resolve.  I don't know what's going

25  to happen.

1      But, I mean, how many cases are there, Mr. Bernardo, left

2   in the Ethicon MDL?

3           MR. BERNARDO:  I believe the number is in the

4   thousands.  Off the top of my head, I want to say 30.  I don't

5   know if that's correct.

6           THE COURT:  Forty -- 30, 40,000.  I mean, there's a

7   lot.  There is a huge, a huge impact.  And, you know, when

8   you're talking about privilege documents, once they are out

9   there, they are out there.  So it's an important issue.

10      So, you know, I'm sure that Justice Keltner would see it

11   that way as well.  And maybe -- I would love to see what

12   you've done.  I would love to see your suggestions, and then I

13   would also love the opportunity to speak with Justice Keltner

14   and get his thoughts and see where he is on -- in the process

15   and see how I can help him, how maybe I can be of service to

16   him.

17      You know, maybe what he would want to do is just divide

18   up some work.  I don't know.

19      But I do think that -- I'm happy to hear that you want to

20   coordinate it, because I would think that's definitely going

21   to be the best thing for everyone involved:  the judges, the

22   parties, the lawyers, everyone.

23           MR. BERNARDO:  Well, thank you very much.  This is

24   Richard Bernardo.  Thank you, Judge Eifert.

25      And might I suggest just as a concrete way to proceed

1   with it, what we will do is tomorrow, when we circulate our

2   memo to Justice Keltner, we will provide you with both those

3   memos as well as the protocols.  And then whoever sends it to

4   you, we can also include with that Justice Keltner's contact

5   information, and we will provide to him your contact

6   information and leave it to the two of you to coordinate with

7   each other as a first step.

8           And then we had in mind that we would, at your and

9   Justice Keltner's convenience, make ourselves available for a

10  joint telephone call so we can try and iron out any issues,

11  procedural issues, and at the same time we will undertake to

12  work with Ms. Bossier in terms of the tranches and the numbers

13  because I don't think that's necessarily something that you

14  and Justice Keltner need to be as involved in.  In other

15  words, you know, how many documents do we pull and how quickly

16  can we duplicate them and things like that.  We can see if we

17  can iron that out among ourselves.  I think we've been making

18  good progress.

19          THE COURT:  Right.  No, that sounds great.

20          And, you know, with Judge Molberg, I really did not feel

21  comfortable interposing myself in the situation previously.

22  There was a motion in front of him.  It was already scheduled

23  for a hearing.  I did not feel comfortable contacting him and

24  trying to interpose myself in his case.  And so I did not try

25  to make contact with him because I just did not feel that was

1   appropriate.

2       Now that I hear that Judge Molberg is interested in

3   coordination and Justice Keltner is the Special Master and he

4   is interested in coordination, then I would be more than happy

5   to contact him and try to open the lines of communication and

6   see how we can work together.  Because that's certainly what I

7   know Judge Goodwin would like to have done, and it would make

8   it easier on all of us I think.

9       So as soon as you get me the information, I will try to

10  touch base with him and have some conversation and see what we

11  might be able to do to make this work.

12          MR. BERNARDO:  We appreciate -- this is Richard

13  Bernardo.  We appreciate that, Judge Eifert, and we will get

14  that information to you.

15          THE COURT:  All right.  Sounds wonderful.

16          MS. BOSSIER:  Thank you, Judge.  We appreciate your

17  time.

18          THE COURT:  Thank you.  You have done a beautiful

19  job.  I'm very, very impressed.  So it's been a lot of work,

20  I'm sure, but thank you for doing it.

21          MR. BERNARDO:  Thank you, Judge.

22          MS. BOSSIER:  Thank you.

23          UNIDENTIFIED SPEAKER:  Bye-bye.

24          UNIDENTIFIED SPEAKER:  Thank you, Judge.  Bye-bye.

25       (Proceedings concluded at 2:32 p.m.)

```
 1                    CERTIFICATE OF REPORTER

 2

 3          I, Mary A. Schweinhagen, Federal Official Realtime

 4    Court Reporter, in and for the United States District Court

 5    for the Southern District of West Virginia, do hereby certify

 6    that pursuant to Section 753, Title 28, United States Code

 7    that the foregoing is a true and correct transcript of the

 8    stenographically reported proceedings held in the

 9    above-entitled matter and that the transcript page format is

10    in conformance with the regulations of the Judicial Conference

11    of the United States.

12

13    s/Mary A. Schweinhagen

14    _____ April 16, 2015

15    MARY A. SCHWEINHAGEN, RMR, CRR
      FEDERAL OFFICIAL COURT REPORTER
16

17

18

19

20

21

22

23

24

25
```