IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

TRANSCRIPT OF PROCEEDINGS

---------------------------------------------

IN RE:  ETHICON, INC., PELVIC REPAIR          MDL NO.
SYSTEM PRODUCTS LIABILITY LITIGATION          2:12-MD-2327

---------------------------------------------

TELEPHONIC MOTIONS HEARING

May 18, 2015

**BEFORE THE HONORABLE CHERYL A. EIFERT**
**UNITED STATES MAGISTRATE JUDGE**

Court Reporter:                    Lisa A. Cook
                                   RPR-RMR-CRR-FCRR
                                   (304)347-3198
                                   lisa_cook@wvsd.uscourts.gov

Proceedings recorded by mechanical stenography; transcript
produced by computer.

**APPEARANCES** (Telephonically):


**For the plaintiffs:**

**MS. SHEILA BOSSIER**
**MR. JOHN HARLOE**
**MS. SARA TURMAN-VEDRAL**
Freese & Goss, PLLC
3031 Allen Street
Suite 200
Dallas, TX  75204


**For the Defendant:**

**MR. RICHARD BERNARDO**
Skadden, Arps,Slate, Meagher & Flom
4 Times Square
New York, NY  10036


**MS. NINA R. ROSE**
Skadden, Arps, Slate, Meagher & Flom
1440 New York Avenue, Northwest
Washington, D.C.  20005


**MR. BENJAMIN M. WATSON**
Butler, Snow, O'Mara, Stevens & Cannada
P.O. Box 6010
Ridgeland, MS  39158-6010


**MR. ASHLEY PARRISH**
King & Spalding
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C.  20006


**Also Present:**

**MR. DAVID KELTNER**
Kelly, Hart & Hallman

1              P R O C E E D I N G S

2          JUDICIAL ASSISTANT:  Hello, everyone.  This is

3    Laura Tatman, Judge Eifert's Judicial Assistant.

4       I would first like to confirm the court reporter today,

5    Lisa Cook, is on the line.

6          COURT REPORTER:  Hi, Laura.  Yes, I'm here.

7          JUDICIAL ASSISTANT:  Thank you, Lisa.

8       This call is in regard to the Ethicon MDL,

9    2:12-MD-2327.

10      I would next like to confirm Justice Keltner is on the

11   line.

12         JUSTICE KELTNER:  I'm here.

13         JUDICIAL ASSISTANT:  Thank you.

14      May I ask who is on the line for plaintiffs' counsel,

15   please?

16         MS. BOSSIER:  Sheila, Bossier, B-o-s-s-i-e-r.

17         JUDICIAL ASSISTANT:  Sheila, I'm sorry, I did not

18   get your last name.  Could you say that again, please?

19         MS. BOSSIER:  Sure.  It's Bossier, B-o-s-s-i-e-r.

20         JUDICIAL ASSISTANT:  Thank you very much.

21         MR. HARLOE:  This is John Harloe, H-a-r-l-o-e.

22         JUDICIAL ASSISTANT:  Thank you.

23      Anyone else for plaintiffs' counsel?

24      (No Response)

25         JUDICIAL ASSISTANT:  All right.  Defense counsel,

1    please.

2              MR. BERNARDO:  Good afternoon.  This is Richard

3    Bernardo for Ethicon.

4              MR. WATSON:  Ben Watson for Ethicon.

5              JUDICIAL ASSISTANT:  Thank you.

6              MR. PARRISH:  Ashley Parrish for Ethicon.

7              JUDICIAL ASSISTANT:  All right.

8              MS. ROSE:  Nina Rose for Ethicon.

9              JUDICIAL ASSISTANT:  Nina, I'm sorry.  Would you

10   tell me your last name again, please?

11             MS. ROSE:  Sure.  It's Rose, R-o-s-e.

12             JUDICIAL ASSISTANT:  Thank you.  If that is

13   everyone, if you will hold for a moment --

14        Oh, who just rang in, please?

15             MS. TURMAN-VEDRAL:  Hi.  This is Sara

16   Turman-Vedral for the plaintiffs.

17             JUDICIAL ASSISTANT:  Sara, would you spell your

18   last name for us, please?

19             MS. TURMAN-VEDRAL:  Sure.  It's a tricky one.

20   It's Turman, T-u-r-m-a-n, and a hyphen, Vedral, V-e-d-r-a-l.

21             JUDICIAL ASSISTANT:  Thank you very much.

22        One moment for Judge Eifert, please.

23        (Pause)

24             THE COURT:  Hello, everyone.

25             UNIDENTIFIED SPEAKER:  Good afternoon, Judge

```
 1   Eifert.
 2            THE COURT:  I understand that Justice Keltner is
 3   on the line.  Is that right?  Justice Keltner is on the line
 4   as well?
 5            JUSTICE KELTNER:  Yes, I'm here.  I'm sorry.
 6   Someone beeped and I couldn't hear.
 7            THE COURT:  And Lisa is also on the line?
 8            COURT REPORTER:  Yes, Judge.  Hi.
 9            THE COURT:  All right.  Thanks, Lisa.  Hi.
10       Okay.  Well, I don't know what we're doing today, so
11   I'll just pass it over to someone.
12            MR. BERNARDO:  Judge Eifert, this is Rich Bernardo
13   if I may set the table.
14       We -- as you recall the last time the parties spoke
15   with you, we submitted competing proposals for coordinating
16   the privilege dispute between the MDL and Texas on a forward
17   going basis.  And each of the parties submitted a protocol
18   with an explanation as to why they thought the issues in, in
19   theirs were -- or the coordination that they set forth was
20   preferable.
21       And we had discussed that you, Judge Eifert, and
22   Justice Keltner would talk among yourselves, and after that
23   call we would get together with both of you on the phone to
24   discuss the protocols and perhaps the parties could come to
25   an agreed upon protocol that we could submit to Your Honors
```

1   jointly.

2       There really were two issues, or, or categories of

3   issues.  One I would describe as the logistics of the number

4   of privilege documents in each tranche, how quickly

5   defendants would review them, whether the parties would meet

6   and confer, et cetera.

7       Since our hearing, Ethicon, or counsel for Ethicon put

8   together a more detailed proposal that we submitted to

9   plaintiffs that we believe addresses the issues that they

10  were raising.  And we, rather than wait to get agreement on

11  it, have been moving forward with respect to that protocol.

12      So, for example, we agreed to de-duplicate and review

13  sets of materials on an on-going rolling basis even before

14  decisions were made.  We've already gone through the

15  de-duplication process with over 4,000 documents.

16      We have gone through a review to try and downgrade

17  certain privilege decisions and/or identify those that we

18  maintain on a rolling basis.  We've given those to

19  plaintiffs' counsel.

20      We think it's a very workable order that hopefully

21  takes into account the concerns that plaintiffs have raised.

22  We've asked them for their input on it and are hopeful to

23  get that shortly so that perhaps that issue is one that we

24  don't need guidance from the MDL and from the Texas court

25  on.

1    The other issue is I'll say the larger picture of

2  coordination.  And I think there were two different views of

3  what coordination ought to be.  From the plaintiffs'

4  perspective, it appears to Ethicon that what they were

5  really looking for was for the Texas court to make the

6  decision, but simply provide copies of it, as well as the

7  parties providing copies of the documents to the MDL.

8    From Ethicon's perspective, we were expecting that what

9  coordination meant would be that both Judge Eifert and Judge

10  Keltner, Justice Keltner would be jointly involved in, in

11  whatever method that you wanted in looking at these

12  documents and coordinating their respective views just as

13  you would, for example, take into account other courts' case

14  law, et cetera.

15    You would take into account each other's views and

16  whether issuing a joint order or separate orders, the orders

17  would reflect the input of both the MDL and Texas so as to

18  avoid, as much as possible, inconsistent rulings which we

19  think would not be in the spirit of coordination.

20    And that's the issue that we would like some input on.

21  We spoke a little bit with Justice Keltner following your,

22  your discussion with him, although the bulk of our

23  discussion with Justice Keltner - we had another one today -

24  has been focused on the 47 documents that are presently at

25  issue which we understood, Judge Eifert, you were not going

1    to be ruling on or looking at.

2        But we were hoping, again, to get your collective

3    judgment.  And we thought it made sense to do it on one call

4    to avoid any miscommunication; that perhaps the parties can

5    go back and try and agree upon some protocol that moves this

6    forward so that we can not only be looking at the documents

7    among ourselves and sharing them with plaintiffs so that we

8    can, we can brief them to the extent there are disagreements

9    for resolution.  That would be the reason we requested this

10    call, Judge Eifert.

11        THE COURT:  All right.  Well, Justice Keltner and

12    I did have a conversation.  And I did tell him that I did

13    not feel that I should be involved in the pending motion,

14    which is the 47 documents.  That's been pending in front of

15    the Texas court for some time now and I think I've made it

16    clear from the very beginning I did not feel it was my place

17    to get involved in a pending motion.

18        Then we did talk about what to do going forward.  And

19    the impression that I had from speaking with Justice

20    Keltner -- and, of course, he's on the phone, so he can tell

21    me if he disagrees.  But we, we were talking just sort of in

22    terms of trying to divide up the documents.

23        It didn't make sense to either one of us to have both

24    of us looking at the same two, three, or 4,000 documents.

25    Neither one of us have that kind of time, nor do we want to

1    do that.

2         I think where I see some minor issues, as far as

3    logistics and coordination, is that Justice Keltner will be

4    making a proposed recommendation, I guess, to the Texas

5    judge, Judge Molberg.  Mine would not be in the form of a

6    proposal.  Mine would come out as an order, which the

7    parties would then have an opportunity to object to.

8         So that format is a little bit different.  And I don't

9    know the time frames in the Texas court, how that will work.

10   Here you would have two weeks to object to my order, and

11   then Judge Goodwin would make a final decision I would think

12   fairly quickly.  So there's that issue.

13        And then the other, the other minor issue is that if

14   I'm looking at documents that are work product, I would be

15   applying federal law since federal law is what you use in

16   Federal Court for work product issues.

17        We would be using, I guess, New Jersey law if we're

18   talking about attorney/client privilege.  So we would be on

19   the same page with the attorney/client privilege, but there

20   might be some slightly different law that we would be using

21   on work product.  But I think our general discussion was we

22   could find a way to sort of divvy up the documents.

23        I think one last issue was how to get the documents in

24   front of me.  I have said in the past to the parties one way

25   to do that is the plaintiffs can file a motion asking for

1   the confidential label to be removed.  I think another way

2   would be for Ethicon to file a motion for protective order

3   asking that certain documents be recognized as privileged.

4   So either way, I think that would be a fairly simple thing

5   to do.

6       I think, more importantly, would be how are we going to

7   divide up the documents and, and how will the time frames

8   work as far as that goes.

9       I think both Justice Keltner and I agree that it's,

10  that it just would work better to have both of us looking at

11  separate sets of documents and perhaps discussing as we're

12  going through the documents.  If we have any, any doubt or

13  there's any major issues that come up, we would have some

14  regular conversations, but not really try to do each other's

15  job, so to speak.

16      Justice, is that how you understand it?

17          JUSTICE KELTNER:  It is.

18          THE COURT:  So I think we're -- I think we're on

19  the same page.  I'm not really sure from the standpoint of

20  getting the documents to us, making the division, how the

21  parties want to do that.

22      It doesn't make sense to have the Texas court ruling on

23  every single document that's going to affect 40 some

24  thousand cases.  And I think that it's not fair to do that

25  either.

1    On the other hand, I don't want to interfere with

2  on-going litigation.  So we've got to strike some balance as

3  far as getting the documents, divvying them up between the

4  two courts so that we can move forward.

5    MR. BERNARDO:  Thank you, Judge Eifert.  This is

6  Rich Bernardo again.

7    One question I have, if I may, with respect to divvying

8  them up.  Was it your and Justice Keltner's thought in

9  divvying them up that there would be certain documents for

10  which no challenge was made in, in the Texas court and

11  certain documents for which no challenge would be made in

12  the Federal Court?

13    In other words, I'm, I'm trying to understand how we

14  would propose to divide them up so if there were further

15  input you had in, in that subject, that would be helpful.

16    THE COURT:  No, I, I understood that there would

17  be a similar challenge made to the same documents in both

18  courts, but that some of the documents will be reviewed by

19  me and some of the documents would be reviewed by Justice

20  Keltner.

21    We didn't really have any discussions in any great

22  detail about how we would divide up the documents.  And I

23  don't -- I really don't have any preference to be honest

24  with you.

25    The only -- as I said, the only issue at all that I saw

1   about that was that the work product will be slightly

2   different because I would be applying federal law.  I'm not

3   sure that it's tremendously different than the law that

4   would be applied via State Court cases, but that might be

5   one little difference.

6       But that was, that was my thought was just a way to

7   divide up the workload so that we're both looking at

8   documents and we're not looking at the same documents.

9       I don't know if the parties have any preference on how

10  they want to do that.

11      MS. BOSSIER:  This is Sheila Bossier for

12  plaintiffs.

13      I really -- I don't, Judge Eifert, at this point.  I

14  think we're going to have to give it just a little bit of

15  thought since that was something that I had not contemplated

16  in, in trying to go forward that way.

17      Right now just off-the-cuff I would say that we would

18  probably try to find documents that were relevant to the

19  Cassis (phonetic) case; to have Justice Keltner look at

20  those, and then potentially others for your review to the

21  extent we can identify those in the privilege log.

22      But that's just a very general statement that I'm

23  making.  We would need to look at it in more detail.

24      MR. BERNARDO:  Yes.  And I think it makes sense --

25  and thank you, Judge Eifert, for your comments.  I mean,

1    that's, that's what we were looking for so the parties could

2    meet and confer and see if we could come up with some

3    agreement.

4         But would, would your looking at one group of documents

5    and Justice Keltner looking at another group of documents

6    eliminate or minimize the risk of inconsistent privilege

7    rulings?  And is that what you were talking about where you

8    would consult with each other --

9         I'm, I'm trying to make sure that from Ethicon's point

10   of view, we, in talking with plaintiffs, can arrive at a

11   protocol that, that achieves the very reason that we were

12   seeking coordination, which is avoiding inconsistent

13   rulings.

14        And we are already a little concerned that the 47

15   documents, since they address some core issues, may have --

16   may result in some inconsistent rulings without the MDL

17   being put on those.

18        But I'm, I'm trying to think about, so that we can work

19   with plaintiffs' counsel, a way to fashion an order so that

20   we can make sure we achieve the benefit of what we're trying

21   to accomplish here with the coordination between the two

22   courts.

23             THE COURT:  Well, just, just, just thinking off

24   the top of my head, I think -- one thing that Justice

25   Keltner and I talked about is there are going to be some

1    documents that are just clearly attorney/client privilege

2    because they're just your standard attorney communication.

3    It's not going to be anything that's a real head-scratcher.

4    Probably the same goes for work product.

5        And, so, those would be the kinds of things that we

6    really probably wouldn't need to talk much about, if at all.

7    But there would be a, a percentage of the documents that

8    might be a little more gray or that could go either way.

9    And we had sort of said those would be the types of

10   documents that we ought to talk about, have some

11   communication on, just see how -- see what the other person

12   is thinking.  And I feel confident that we can reach some

13   sort of agreement on those sorts of documents.

14       So I think that's what we were talking about doing as

15   far as, as discussing.  I, I don't think -- as I said, the

16   one thing we both seem to want to avoid was looking at all

17   of the same documents and then talking about every single

18   document because that just doesn't make any sense.

19       I think as far as getting the documents divided up, the

20   product that you are -- the product you're litigating in

21   Texas I don't think is a product that's really been

22   discovered in the MDL, has it?

23       So I would, I would think documents that are very

24   specific to that product should go to Justice Keltner for

25   certain.  There would be no real nexus to the MDL at this

1    point.  There would be no reason for those documents to be

2    brought in front of me at this point since you're not

3    discovering that particular product.

4        More generic documents and documents that apply to

5    other products, I think those would be the ones that

6    certainly the MDL would be interested in, in participating

7    in the review.

8            MR. BERNARDO:  Judge Eifert, this is Rich

9    Bernardo.

10       With respect to the documents on Prosima, one thing

11   we've found as we've been looking at the documents that came

12   through the results of the searches that were run for

13   Prosima is that they, they don't uniquely deal with Prosima.

14   They deal with Prosima as one of several products that were

15   de-commercialized at the same time.  And there are a lot of

16   documents that relate to multiple products, many of which,

17   if not all of which, are the subject of the MDL.

18       So, unfortunately, it's not as clean as, "Here is a

19   document just on Prosima."  And perhaps that's something

20   that, taking upon the point you raised, whoever is looking

21   at the documents, to the extent there are ones that have

22   gray areas in them, would consult with the other because

23   they, they will have impact on the larger litigation.

24       And, in addition, the other issue is that even if the

25   product may not, the principles underlying the claim for

16

1   privilege, which is what we're really trying to harmonize

2   between the courts, would apply in both.

3        In other words, a ruling that a particular person isn't

4   acting in the capacity as, as legal counsel but is acting in

5   some other capacity, or a ruling that a communication that

6   doesn't involve attorneys isn't privileged because it, it

7   doesn't have an attorney on -- I'm just raising a couple of

8   points that have been made in the back and forth on these,

9   on these privilege challenges.

10       But those principles would have importance both in the

11  MDL and Texas and we'd want to, to, as much as we could, to

12  ensure some coordination of resolution of some of those core

13  concepts.

14            THE COURT:  Well, those might be documents that

15  you could identify for both Justice Keltner and myself as

16  you're submitting documents to be reviewed.

17       I would think that -- I would think that the parties

18  ought to try to agree on what they want to submit to me,

19  what they want to submit to Justice Keltner, and then file a

20  motion of some sort with me because right now I don't have

21  any sort of motion pending.

22       Then if there are documents that you feel are going to

23  cause the most amount of trouble or there are core issues

24  that you think are going to cause the most amount of

25  trouble, if you could bring those to our attention, then we

1    could certainly talk about that.

2         MR. BERNARDO:  Rich Bernardo.

3       That, that sounds fair, Your Honor.  And perhaps in,

4    in, hindsight, in other words, after a ruling by one or the

5    other -- let's say there's a ruling by Justice Keltner that

6    we think impacts or could impact the, a, a volume of

7    documents in the MDL.  May we bring that to your attention

8    by way of motion to the extent it doesn't apply to documents

9    that you have ruled on?

10        THE COURT:  Well, I don't know about that.  I, I

11   don't -- yeah, I don't think either Justice Keltner or

12   myself want to be in a position of acting like an appellate

13   court to the other, to the other court.

14      I think the, the only way that this really makes sense

15   to me -- and I'd like to hear from Justice Keltner -- is to

16   just divide the documents up in some way.  I -- that's the

17   only thing that I can really think of that makes sense.

18        And then, as I said, if you are aware of certain

19   documents or certain core issues, if you want to raise those

20   before anybody has issued an order, that's when those things

21   should be raised.  And then Justice Keltner and I will have

22   a chance to discuss our thoughts.

23        But ultimately the person who is responsible for the,

24   for the documents or set of documents will be the one that

25   will issue the order.  I mean, that's the way it would be no

1   matter what.

2       I, I don't -- I think even though you've got the MDL

3   trying to coordinate discovery and, and all of that, the

4   purpose of the MDL is to try to, to improve on judicial

5   economy.  And, so, that's the goal that I'm trying to

6   achieve here.

7       I don't think that works if everything I do Justice

8   Keltner looks at, everything he does I look at.  I don't

9   think that's -- that's just going to defeat the purpose.

10          MR. BERNARDO:  I understand, Your Honor.

11          THE COURT:  But I also don't think it -- I also

12  don't think the plaintiffs need to put up every document in

13  a case when those documents don't have anything to do with

14  the case.  So -- just in order to get a ruling which they

15  think might be more favorable to them.

16      I'm not saying that's what they're doing, but -- and I

17  don't think Ethicon ought to, ought to do the reverse of

18  that.  So, you know, I want to, I want to avoid that as

19  well.

20          MR. BERNARDO:  Thank you.

21          JUSTICE KELTNER:  This is Keltner.

22      I very much agree.  Two things.

23      If we are attempting any kind of judicial economy,

24  having everybody rule on the same document twice makes no

25  sense.

1     The second issue that Judge Eifert and I had talked

2  about at some length is that there are obviously going to be

3  some limitations upon our ability to completely agree with

4  each other.

5     We give up, both of us, some constitutional granted

6  authority in doing that, even though we're both reporting to

7  different judges who have the ultimate responsibility.  So

8  we've sort of got to call them like we see them.

9     Does that mean we don't discuss issues that have been

10  raised?  No.  We can do that, but it doesn't guarantee that

11  we're going to come out exactly right -- you know, exactly

12  the same on each one.

13     The -- you know, here's what we fear.  And, and this

14  may be the better way to look at this.  We fear that one

15  side wants us to actually duplicate efforts and get

16  everything decided the same way after some degree and

17  consultation, give and take and the like.  That's something

18  we cannot do.

19     The second thing is we also think that there's an

20  interest in getting the best possible ruling somewhere which

21  benefits the person seeking to undo the privilege.  And

22  that's something that the system will want to try to avoid.

23     So there are chances, not saying it's happened, but

24  there are chances of overreach both ways.  Obviously, both

25  of us want to try to limit those.

1        MR. BERNARDO:  Thank you, Your Honor.  Well --

2   this is Rich Bernardo again.

3        Judge Eifert and Justice Keltner, unless plaintiffs

4   have any questions or comments, counsel for Ethicon found it

5   helpful and I think what we need to do is to consult with

6   plaintiffs' counsel and first see if we can make sure we

7   agree on the, the procedure for, for getting through these

8   documents, and then see if we can come to some agreement as

9   to how to divvy them up; and then come back to both Your

10  Honors with either an agreed upon protocol, or if there's

11  some areas of disagreement, maybe we can schedule another

12  joint phone call to raise those and see if we can try and

13  cut through them by way of a discussion with, with both of

14  you.

15        THE COURT:  Well, it makes sense to me.

16        JUSTICE KELTNER:  Let me -- Judge Eifert and I

17  have not had -- this is Keltner -- had the opportunity to

18  discuss this.  But on the 47 documents, I have had a

19  conversation this morning, so the plaintiffs will know, with

20  the court reporter (verbatim) under the protocol we had all

21  approved and, and been getting very close to ruling on

22  those.

23        I have gone back through a couple of things and looked

24  at those.  I am probably going to try to set up a call with

25  Judge Eifert to discuss three separate matters that actually

1    did not come up in today's call that I, I don't

2    completely -- I want to make sure that we have both

3    discussed those and generally how we feel about them.

4        Probably we'll try to do that, Judge, with you sometime

5    early this week and I'll send -- we'll crisscross back and

6    forth, if you don't mind, on, on setting up a time.

7            THE COURT:  Sure.

8            JUSTICE KELTNER:  I need to get a little bit more

9    research done in one area on New Jersey law that is a little

10   bit, is a little bit of foreign territory to me.  But I'll

11   get that done and then I'll call.  So just please be aware

12   of that coming down the road pretty quickly.

13           THE COURT:  All right.  Well, it sounds like

14   there's a plan.  So I will just wait, then, to hear from

15   you, Justice Keltner.

16       And then, Mr. Bernardo and plaintiffs, I will wait to

17   hear something more from you.

18       And I think once you do decide how you want to divide

19   up the documents, you'll -- somebody will need to file a

20   formal motion in this court with whatever it is that you've

21   decided you want me to look at.  And then I guess the same

22   will need to be done in the Texas court.

23           MR. BERNARDO:  We will do that.  Thank you, Your

24   Honor.

25           MS. BOSSIER:  Thank you very much.

1          JUSTICE KELTNER:  Thank you.

2          THE COURT:  Bye-bye.

3       (Proceedings concluded at 1:59 p.m.)

4                    *  *  *  *  *

5

6

7

8

9

10          I, Lisa A. Cook, Official Reporter of the United

11   States District Court for the Southern District of West

12   Virginia, do hereby certify that the foregoing is a true and

13   correct transcript, to the best of my ability, from the

14   record of proceedings in the above-entitled matter.

15

16

17       s\Lisa A. Cook                     May 21, 2015

18          Reporter                          Date

19

20

21

22

23

24

25