**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**IN RE: ETHICON, INC.**

                                            **MDL NO. 2327**

**PELVIC REPAIR SYSTEMS
PRODUCTS LIABILITY LITIGATION**
**----------------------------------------------------------**

*This Document Relates To All Cases*

**PLAINTIFF'S STEERING COMMITTEE'S
MOTION FOR A CASE MANAGEMENT ORDER
REGARDING THE CONSOLIDATION OF CASES FOR TRIAL**

      Johnson & Johnson's Ethicon division is the largest defendant in the largest
consolidation of medical mass tort cases in this country's history.  Ethicon reports facing
approximately 30,000 mesh claims – more than two-thirds of which are pending before
this Court via multidistrict litigation.  The question, thus, becomes how to move such a
vast number of cases toward resolution in a way that is timely, manageable and fair?
Plaintiffs propose that the best chance for expeditious and widespread resolution is
through the use of multiple, consolidated trials as set forth more fully herein:

**I.
INTRODUCTION**

     *"[I]t has been found that conducting "bellwether trials" is often an
effective way to manage multidistrict litigation to a successful conclusion.
For the bellwether trial concept to be an effective gauge for evaluation of
other cases, it would appear that the more bellwether trials consulted, the
more reliable the gauge.  Since a court has limited time and resources to
try large numbers of bellwether trials, it would appear that consolidation
of multiple cases for trial in the MDL setting would provide the parties
with an opportunity to obtain results for multiple claims without*

*burdening the court or the parties with the substantial cost of multiple separate trials."[1]*

In the post-Vioxx era, "bellwether trials" have become the default method for MDL courts seeking to encourage a resolution to litigation as a whole. Yet, the bellwether approach of establishing claim values through a small number of individual trials works best when the claims are all similar and the defendant is amenable to a broad settlement. Here, the sheer volume of cases against Ethicon -- together with Ethicon's unlimited resources to draw out the litigation and Ethicon's present lack of interest in a broad settlement – makes the use of single-plaintiff bellwether trials an impractical mechanism for achieving any widespread resolution. Indeed, massive wave-type discovery in hundreds of cases as a precursor to single-case trials only prolongs this litigation by allowing Ethicon to bleed Plaintiffs of their limited resource as a tactic to force better settlement terms.

The better, and more fair, approach is to create and implement a plan for consolidating limited trial groups composed of product-specific, geographically-compatible, trial-ready cases (both in this MDL and through suggestions of remand and transfers of venue). By prioritizing consolidated trials of products that have not yet been tried, and by beginning the process in jurisdictions whose laws and processes have already been addressed by this Court, this Court can most quickly begin establishing values for the full range of cases involving Ethicon pelvic mesh products. Later, if a resolution is not achieved, the process can be enlarged to include consolidated trials of additional products in additional jurisdictions. This approach allows the largest possible

---

[1] Pretrial Order #78 (Order Consolidating Above Cases for Trial on All Issues, *In re: Boston Scientific Corp. Pelvic Repair System Prods. Liab. Litig.,* MDL No. 2326 (S.D.W.Va. Feb 19, 2014), *quoting, In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.,* MDL 2004, 2010 WL 797273, at *3 (M.D. Ga. Mar 3, 2010).

number of Plaintiffs to see their day in Court while simultaneously moving the litigation as a whole forward toward a fair and expeditious resolution.

## II.
## ARGUMENT AND AUTHORITIES

**A.      Consolidation is Necessary and Appropriate and Has Been Previously Ordered By This Court For Similar Pelvic Mesh Cases.**

**1.      Consolidation is necessary if Plaintiffs are to achieve a fair trial in the face of Ethicon's superior resources.**

Each plaintiff who asserts a claim against Ethicon arising from the same device is going to present virtually the same liability case.   They will focus on the same central issues about defects in the product's design and inadequacies in the product's warnings. They will offer many of the same corporate documents obtained through discovery.  The same corporate witnesses can be expected to testify.   And the same experts will repeatedly be called to opine on product defects, general causation, standards in the medical device industry, bioengineering, and/or pelvic mesh surgeries.   The massive inefficiencies in this process were called out by Justice Starcher of the West Virginia Supreme Court in reference to the emergence of consolidated trials in asbestos litigation:

> Circuit courts started to try the cases one at a time, but quickly abandoned that route; trying each case would have required hundreds of years.  The same lawyers and the same witnesses were employed, using the same documents and evidentiary exhibits . . . Every trial involved weeks of testimony to try the same issues about the same defendants again and again and again.  Virtually everything pertaining to the defendants remained the same.  The only issue that changed concerned the plaintiffs.

*In re Tobacco Litigation*, 2018 W.Va. 301, 30708 (2005)(concurrence). The same is true in this litigation.  Requiring the parties to prepare and present the same evidence and the

same experts on the same issues in numerous individual cases would impose the very sort of burdens both the MDL process and Rule 42 aim to avoid.

A plan for consolidated trial is necessary to keep Ethicon from tilting the scales of justice in its favor through superior resources. Without a targeted endpoint, wave discovery for hundreds of cases simply depletes Plaintiffs' more limited resources. Similarly, the effort and expense required to prepare and present the same liability witnesses and experts at numerous single-case trials – when the cases could be tried together with the common evidence being presented just once – imposes a disproportionately greater burden on Plaintiffs who lack Ethicon's superior economic position. Indeed, the default system of wave discovery and single-plaintiff trials discourages resolution because Ethicon can slowly bleed Plaintiffs of their ability to mount effective trial cases. Thus, while the burdens of individual trials would be onerous for both parties, a plan for targeted trials of consolidated actions is necessary to avoid making the litigation process unfairly and disproportionately burdensome on Plaintiffs.

### 2. Consolidation is appropriate, and has been previously ordered, when multiple claims involve the same pelvic mesh product.

Rule 42 gives district courts broad discretion to consolidate cases.[2] *See Arnold v. E. Air Lines, Inc.,* 681 F.3d 186, 192 (4th Cir. 1982); *Henderson v. United States,* No. 6:07-cv-00009, 2008 WL 1711404, *5 (W.D.Va., April 11, 2008). When considering whether to consolidate multiple actions for trial, courts are instructed to weigh single actions against a consolidated action with regard to: (1) the burden on the parties, (2) the availability of witnesses and judicial resources, (3) the length of time required, (4) the

---

[2] Rule 42(a) provides:

> Consolidation. If actions before the court involve a common question of law or fact, the court may (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

expense, and (5) the risks of prejudice in a consolidated action as compared to the risk of inconsistent judgments in multiple actions. *Arnold,* 681 F.2d at 193.

This Court has previously held that the *Arnold* factors weigh in favor of consolidation in the substantively similar Boston Scientific pelvic mesh MDL. As the Court noted in ordering two consolidated trials of cases involving *Boston* Scientific products, the time and resources of the Court and the parties are better preserved through one consolidated trial rather than multiple separate trials. *Tyree, et al v. Boston Scientific Corp. Pelvic Repair System Prods. Liab. Litig.,* 2:12-cv-0863, MDL No. 2326 (PTO #78)(Order Consolidating Above Cases for Trial on All Issues)(S.D.W.Va. Feb 19, 2014), *Eghnayem, et al v. Boston Scientific Corp. Pelvic Repair System Prods. Liab. Litig.,* 2:13-cv-07965 (Dkt. No. 10)(PTO # 91)(Order Consolidating Above Cases for Trial on All Issues).[3]

This Court's finding in favor of consolidation is consistent with the rationale employed by other courts when holding that judicial economy generally favors consolidation when two causes of action involve common witnesses and evidence and present similar issues. *See Johnson v. Celotex Corp.,* 899 F.3d 1281, 1284-85 (2nd Cir. 1990). By consolidating actions that involve common issues of facts and law, courts are also able to reduce the risk of inconsistent judgments. *Switzerbaum v. Orbital Scis. Corp.,* 187 F.R.D. 246, 248 (E.D.Va. 1999). Moreover, this Court noted in the *Boston Scientific* consolidation cases, that any risk of juror confusion can be avoided by presenting the evidence in an organized manner and by providing appropriate jury

_____

[3] This Court's decision that common issues of law and fact exist among pelvic mesh plaintiffs, is consistent with the Transfer Order of the Judicial Panel on Multidistrict Litigation which found that the actions contained in this MDL involved common questions of fact such that centralization would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." (Transfer Order [Docket 1], at 3).

instructions. *Tyree,* PTO #78. p. 5. Lastly, the Court rightly observed that adjudicating larger numbers of cases through consolidated actions will provide more useful information regarding claim viability and case valuations – which may, in time, facilitate settlement amongst the parties. *Id.*

Granting consolidations in this litigation would be consistent with the holdings of numerous courts which note that "actions by different plaintiffs arising out of the same tort, such as a single accident or disaster *or the use of a common product*, frequently are ordered consolidated under Rule 42(a)." Wright & Miller, 9 Fed.Prac. & Proc. Civ. 2d § 2384 (emphasis added); *see also, In re Dow Corning Corp.,* 211 B.R. 545, 581-89 (Bankr.E.D.Mich. 1997)(consolidating cases on behalf of 588 breast implant plaintiffs); *Todd-Stenberg v. Dalkon Shield Claimants Trust,* 48 Cal.App.4[th] 976 (1996)(consolidating for trial cases filed by three women with injuries resulting from implantation of intrauterine device); *Kershaw v. Sterling Drug, Inc.,* 415 F.2d 1009 (5thCir. 1969)(pharmaceutical product); *Cruickshank v. Clean Seas Co.,* 402 F.Supp.2d 328 (D.Mass. 2005)(defective paint product); *Hall v. Bavcock & Wilcox Co.,* 69 F.Supp.2d 176 (W.D.Pa. 1999)(cancer caused by radiation released from nuclear facility).

**B.      Plaintiffs' Proposed Process for Bellwether Consolidations.**

Again, this Court has already found that consolidation was appropriate in the context of substantively similar claims for personal injuries arising from a pelvic mesh product manufactured by Boston Scientific. *E.g., Tyree,* PTO #78. p. 5, *see also, in re Mentor Corp., ObTape Transobturator Sling Prods. Liab. Litig*., 2010 WL 797273 (M.D.Ga. March 3, 2010)(ordering consolidation of four pelvic mesh device cases). In finding that consolidation was appropriate, the Court noted that the cases to be

consolidated: (1) implicated only a single state's law, (2) involved a single product manufactured by the same defendant, and (3) presented a similar range of injuries. *Id.,* p. 4. The same factors and procedural steps are incorporated into the consolidation process Plaintiffs propose herein:

1.      **Step 1:  Identifying Pools of Cases Appropriate for Consolidation.**

The goal of the "bellwether consolidations" should be to obtain widely applicable information about the parties' claims and defenses through trials of representative cases. The first step in that process is sorting cases into consolidation groups on the basis of major variables that can be readily identified, that are substantively important, and which offer clear lines of demarcation. Using this criteria, Plaintiffs propose that cases be sorted for potential consolidation based on: (1) the applicable state substantive law, (2) the specific pelvic mesh device at issue, and (3) the severity of the Plaintiff's injuries.  By focusing on these three major variables, the Court and the attorneys can proceed quickly in creating manageable and ascertainable groupings which will, in turn, provide needed information that can sensibly be applied to the most predominant issues across the litigation.

a.      **Cases sharing the same applicable substantive law.**

Plaintiffs propose that cases first be sorted for consolidation on the basis of applicable law.  Although this step requires a case-by-case analysis, that analysis is a relatively simple one.  This Court has previously held that the substantive law for cases directly-filed into the MDL will be determined using the choice of law rules of the state where the plaintiff was implanted with the pelvic mesh device.  *See Sanchez v. Boston Scientific Corp.,* 2:12–cv–05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan 17, 2014).

Moreover, this Court has already performed a choice-of-laws analysis for the states of Florida, Arizona, and West Virginia and is familiar with the laws of these states based on prior proceedings in the greater pelvic mesh MDL.  Accordingly, Plaintiffs propose that bellwether consolidations begin with cases from Florida, Arizona, and West Virginia where the choice-of-laws analysis would be as follows:

- **Florida:**  This Court examined the choice-of-laws issues for plaintiffs implanted with pelvic mesh devices in Florida in *Eghnayem v. Boston Scientific corp.,* 2014 WL 5460605, *5 (S.D.W.Va., Oct. 27, 2014).  In *Eghnayem,* this Court noted that Florida courts apply the significant relationship test set forth in Restatement (Second) of Conflict of Laws §§ 145-146.  *Id., citing, Rosado v. DaimlerChrysler Fin. Servs. Trust,* 1 So.3d 1200, 1203 (Fla.Dist.Ct.App.2009). The Court further noted the instruction of the Florida Supreme Court that "[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law" in personal injury cases. *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla. 1980).  Hence, the substantive laws of Florida would apply to claims by plaintiffs who were implanted with Ethicon devices in Florida.

- **Arizona:**  Arizona's choice-of-laws rules were examined by this Court in *Straub v. Boston Scientific Corp.,* 2015 WL 119845 (S.D.W.Va. March 16, 2015). Arizona follows the "most significant relationship" test, as outlined in the Restatement (Second) of Conflict of Laws when determining choice of law questions. *Bates v. Superior Court,* 749 P.2d 1367, 1369 (Ariz.1988). In addition, Arizona law provides that, in an action for a personal injury, the law of the state

Case 2:12-md-02327   Document 1587   Filed 06/04/15   Page 9 of 22 PageID #: 19130

where the injury occurred should be applied unless some other state has a more significant relationship. *Id.* Thus, in *Straub* this Court held that the place where the implantation surgery was performed – which was also the state where the Plaintiff resided – had the most significant relationship.

- **West Virginia:** This court looked at choice-of-laws issues under West Virginia law in *Wise v. C.R. Bard, Inc,.* 2015 WL 507648, 85 (S.D.W.Va. Feb. 5, 2015). In *Wise,* the Court observed that West Virginia follows the traditional rule in tort cases that the applicable substantive law is the law of the place of injury. *Id.*, *West Virginia ex rel. Chemtall, Inc. v. Madden*, 607 S.E.2d 772, 779–80 (W.Va. 2004); *McKinney v. Fairchild Intern., Inc.,* 487 S.E.2d 913, 922 (W.Va.1997). This Court further held that the place of the injury is the place where the plaintiff was implanted with the allegedly defective device. *Wise,*2015 WL 507648 at 85. Thus, West Virginia's substantive laws would apply to claims by Plaintiff who were implanted with Ethicon devices in West Virginia.

Because it has already been determined that the substantive law of the place of implantation will apply under either a *lex loci delicti* approach or a most-significant-relationship test, it can be reasonably assumed that Plaintiffs who were implanted with the product in the same state would find their claims governed by the same substantive law of that state.

### b. Cases involving the same pelvic mesh device.

There are nine main pelvic mesh products at issue in the Ethicon MDL: the TVT, the TVT-O, the TVT-Abbrevo, the TVT-Exact, the TVT-S, Gynemesh/Gynemesh PS,

9

the Prolift, Prolift +M and Prosima.[4]  Following the same blueprint used by this Court when ordering consolidated trials in the Boston Scientific litigation, Plaintiffs propose taking the pools of Plaintiffs who were implanted in the same state and further dividing them into groups based on the product with which they were implanted.  For example, one consolidation group would consist of Plaintiffs who were implanted with a TVT-O device in Florida while a separate consolidation group would exist for Plaintiffs who were implanted with a Prolift device in Florida.

Adequate numbers of Plaintiffs exist to populate the proposed consolidation groups.  Using the census/sampling data previously provided to the parties, Plaintiffs have extrapolated the ratios of various factors found in the census group to the full universe of 19,190 plaintiffs.  In this way, Plaintiffs have arrived at estimates of the number of plaintiffs falling into the proposed categories.  For instance, there are estimated to be 1,002 plaintiffs who were implanted in Florida, 202 plaintiffs implanted in Arizona and 163 Plaintiffs implanted in West Virginia.  Within those categories, Plaintiffs can further extrapolate the number of plaintiffs implanted with each device. (*See* ARGUMENT *supra* at C.1., C.2., and C.3, p. 16-18).  Thus, it can be expected that there are adequate numbers of cases in the proposed jurisdictions to produce representative samples for purposes of consolidated trials.

> **c.** **Cases that are representative of the range of injuries suffered by Plaintiffs**

In ordering the Boston Scientific trial consolidations, this Court noted that the plaintiffs claimed similar injuries including "erosion, mesh contraction, infection, fistula,

---

[4] The first five of these products are used to treat stress urinary incontinence and with the exception of the TVT-S product, all remain on the market today.  The last four products, Gynemesh/Gynemesh, Prolift, Prolift +M, and Prosima, were used to treat pelvic organ prolapse and have been withdrawn from the market.

inflammation, scar tissue, organ perforation, dyspareunia (pain during sexual intercourse), blood loss, neuropathic and other acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage and chronic pelvic pain." *E.g., Tyree,* PTO #78. p. 4. The same types of common injuries are alleged by Plaintiffs here.

Plaintiffs anticipate that Ethicon will seize upon individual differences in type and severity of injuries as a basis for opposing consolidation. This argument has been rejected in other consolidated pelvic mesh proceedings. "While each of [p]laintiffs' specific medical conditions may be different, those differences and their significance can be explained to a jury and easily understood." *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.,* 2010 WL 797273, at *3 (M .D.Ga. Mar. 3, 2010). Moreover, the specific causation evidence can "be presented to a jury in a manner that is not confusing" by using proper questioning techniques and identification of exhibits. *See Id.* at *4 (explaining that any risk of confusion is minimized "so long as the evidence is introduced in an organized fashion"). Thus, any risk of confusion is minimal and does not require separate trials. *See Mary Ellen Enters. v. Camex, Inc.,* 68 F.3d 1065, 1073 (8th Cir.1995)(affirming trial consolidation order where the court instructed the jury that the trial involved two separate actions and the jury verdict form clearly differentiated between the two actions").

The goal with regard to injury is to secure bellwether consolidation groups that are representative of the spectrum of injuries suffered by the Plaintiff population as a whole. Based on the medical record review of 775 sampled cases, Plaintiffs have determined the percentages of Plaintiffs who have: (1) documented injuries but have not undergone revision surgery, (2) undergone a single revision surgery, and (3) had multiple

revision procedures.  The estimated percentages of Plaintiffs falling into each of the three identified injury categories is as follows:

| Category | Criteria | % of Total |
|----------|----------|------------|
| Severe | Two or more revisions | 19.35% |
| Moderate | One revision | 28.26% |
| Mild | Zero revisions (records reflect documented injury and/or a need for revision). | 26.19% |

Plaintiffs with a documented injury falling into *any* of these three categories are eligible for inclusion in the bellwether consolidation groups.

Plaintiffs have not included in their proposed trial plan an injury category for the estimated 26.19% of Plaintiffs who are presently lacking documentation of an injury. Due to the presence of a defective product in their bodies, this group of Plaintiffs has claims for fear of future injury and/or medical monitoring which are cognizable in many states.  Additionally, many in this group have filed lawsuits prior to injury manifestation to protect their claims against aggressive statute of limitations challenges.  While these "undocumented injury" plaintiffs have cognizable claims, there should be consensus among the parties that their cases fall on the lower end of the value spectrum.  The parties will derive no meaningful benefit[5] from the trial of these cases and the trial outcomes in these cases will not drive the overall resolution of this litigation.    In fact, as part of its efforts to manage its docket, the Court could decide to place these cases on an administrative docket (similar to that happening in the AMS MDL litigation) pending some ultimate progression or resolution of these claims.    Accordingly, it makes the most

---

[5] As a practical matter, the very idea that "undocumented injury" claims could be included in the trial pool would require an assumption that the attorneys representing such claimants would not seek dismissal as a preferable alternative to expending hundreds of thousands of dollars to make trial-ready a case whose value is far outweighed by the expenses which would be incurred in taking it to trial.

sense to focus the initial consolidated trial efforts on cases presenting the spectrum of *documented* injuries.

> **2.**     **Step 2:  Selecting Individual Cases for Inclusion in the Bellwether Consolidation Pools and Putting Them on a Fast-Track for Trial Preparations.**

Once the parameters of the bellwether consolidation pools have been set, individual cases within those pools must be identified for trial preparations.  Although not in a consolidation context, the product liability actions regarding Yasmin demonstrate a practical plan for selecting discovery pool cases, and later, trial cases.  *In re Yasmin & Yaz (Prospirenone) Marketing, Sales Practices & Prods. Liab.* Litig., 2010 WL 4024778, *2 (S.D.Ill. Oct. 13, 2010).  In the *Yasmin* litigation, the parties were instructed to each select an equal number of cases from each of the three injury categories that had been identified.  *Id.* at *4.    The court would then make the ultimate selection of which case should be tried first and which cases should be designated as alternates.

A modified version of the *Yasmin* approach would work well for selecting bellwether consolidated trial candidates in this MDL.  Working within pools of cases that share a common state of implantation and a single product, each party could be asked to submit eight cases for case-specific pre-trial discovery.  The sixteen nominated cases (8 from each party) would then begin case-specific discovery.  Alternatively, the parties could be instructed to identify the cases in each state involving the particular product at issue, and the Court could chose the cases to be included in the consolidated trial pool. At the close of case specific discovery, and depending upon the number of cases that remain at the close of case-specific discovery, the court would then try one or more consolidated trials of the cases.

3.     **Step 3:  Positioning Cases for Bellwether Consolidations Before This Court and in Other Jurisdictions.**

In the MDL context, there are three sources from which cases originate: (1) cases which were originally filed in this West Virginia federal court because they involve West Virginia plaintiffs for whom venue is proper in this judicial district, (2) non-West Virginia cases which were nevertheless directly filed into this MDL Court pursuant to a pretrial order, and (3) cases filed in, or removed to, federal district courts across the country and transferred to the transferee court by the MDL panel. The distinctions between these separate types of cases dictate the steps necessary to effectuate a consolidated trial.

There are several procedural options for enabling multiple "bellwether consolidations" to proceed forward simultaneously before this Court in West Virginia and in other jurisdictions.

- **Trials in this Court of Direct Filed Cases By West Virginia Plaintiffs:**  Of the three sources of cases, only those directly filed into the MDL by West Virginia plaintiffs are able to be tried by this Court without the need for further consent from the parties. This approach presents a strong opportunity to move bellwether consolidation groups quickly toward trial.

- **Trials in this Court of Cases Filed By Non-West Virginia Plaintiffs Pursuant to Waivers of Jurisdiction and Venue Objections:** It is possible that cases filed by non-West Virginia plaintiffs may be tried before this Court with the parties consent.  For direct filed cases:  The overwhelming bulk of the Ethicon MDL consists of direct-filed cases by non-West Virginia Plaintiffs.  *Lexecon* issues are

not implicated by direct filed cases.[6]   However, for trials of non-West Virginia direct-filed claims to go forward before this Court, Ethicon must waive any objections it presumably has to personal jurisdiction and venue in this Court.  For transferred cases: both parties must execute Lexecon waivers which encompass a waiver of the parties' personal jurisdiction and/or venue related objections.

Presumably, as Ethicon has expressed a preference for trials in this forum, it will be amenable to executing the necessary waivers, as it has done in the prior bellwether cases.  Moreover, the Steering Committee is confident that Plaintiffs will generally be amenable to executing the waivers -- as the Plaintiffs counsel with the largest inventories are agreeable to the process.    However, to avoid wasting discovery efforts on cases that are not amenable to trial in this jurisdiction, the execution of *Lexecon* waivers and/or personal jurisdiction and venue waivers should be a condition for inclusion of a case in the group of 24 nominated for case-specific discovery and possible selection for a bellwether consolidation.[7]

- **Intercircuit and Intracircuit Assignment for Your Honor to Preside Over A Consolidated Trial in A District of Proper Venue and Jurisdiction.**  There is also the possibility of obtaining intercircuit and/or intracircuit assignments

---

[6] The Supreme Court held in *Lexecon* that the language of § 1407 precludes a transferee court from utilizing 28 U.S.C. § 1404(a) to make "self-assignments" and thereby retain transferred cases beyond the period of pre-trial proceedings. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40-41(1998).  Because § 1407 is not a jurisdictional limitation, but rather "a venue statute," the parties may choose not to raise an otherwise valid objection to venue and to consent to remain in the transferee district for trial.  *Solis v. Lincoln Elec. Co., 2006* WL 266530, *4 (N.D.Ohio 2006), *citing, Lexecon,* 523 U.S. at 42; Manual for Complex Litig. Fourth § 21.132 at 224.  Thus, there is no impediment to trying cases transferred from other districts in the MDL so long as the parties waive the right to remand under § 1407.

[7] Additionally, in states with multiple districts, if venue is deemed proper for a corporation in one of its districts, then any of the districts within the state are proper. 28 U.S.C. § 1391(d); *Fanning v. United Fruit Co.,* 355 F.2d 147, 149 (4th Cir. 1966)(finding company doing business in judicial districts subject to venue in that district).

pursuant to 28 U.S.C. § 292 or 294.  These assignments, which differ primarily in who has the authority to make the assignment and who must consent to the assignment, would allow Your Honor to preside over a remanded or transferred action in a court of proper venue and jurisdiction.  *See Novell, Inc. v. Microsoft Corp.,* No. 04-cv-01045 (JFM), ECF No. 35 (D. Utah July 18, 2011)(holding that intercircuit assignment of MDL judge was necessary).

For assignments within a circuit:  consent to the assignment would need to be obtained from the chief circuit judge.  28 U.S.C. §§ 291(b), 292(b). There is no requirement for consent by the chief judge of the borrowing district, although such approval is generally obtained as a matter of custom and professional courtesy.

For assignments outside a circuit, a higher level of authority is necessary. The Chief Justice of the United States holds the authority to designate active district judges to serve in courts outside their circuits.  28 U.S.C. §§ 291(a). To effectuate an intercircuit transfer, the chief circuit judge for the borrowing district must submit a request for assistance on behalf of a specific court in the circuit and must certify that assistance is needed.  *Id.*

- **Trials in the "Originating" Districts:** Even with the increased efficiency of consolidated trial proceedings, the sheer volume of cases against Ethicon make it impossible for a single court to handle every trial.  Accordingly, trials presided over by Your Honor (whether in this Court or other courts) should be supplemented by the transfer and/or remand of trial-ready cases to district courts across the country for consolidated trials. This may be accomplished in the

following ways:   For direct filed cases, transfer is a simple matter of the Court's using its discretion to select an individual district court within each state for transfer. 28 U.S.C. § 1404(a).   For cases transferred into the MDL from other districts, multiple options exist for consolidating cases within a single court in the state.   First, each district court would have authority pursuant to 28 U.S.C. § 1404(b)[8] to transfer its cases to a district court in the same division that is willing and able to accept the cases and accommodate the Court's trial plan. Alternatively, transferor courts could grant § 1404(a)[9] motions once a case is remanded to them and transfer such cases to a district court which the Court expressly recommends in either its suggestion of remand to the MDL or in its final PreTrial Order.

**C.**    **Application of Plaintiffs' Proposed Trial Plan to the Demographic Data in the Target States.**

Application of Plaintiffs' proposed trial plan to the estimated demographic data for the states of Florida, Arizona and West Virginia suggests that consolidated trial groups for the various products may be assembled as follows:

**1.**    **Consolidated Trials of TVT and TVT-O in Cases Governed by West Virginia Law.**

| West Virginia | Estimated Case Numbers |
| --- | --- |
| TVT | 98 cases |
| TVT-O | 65 cases |

---

[8] 28 U.S.C. § 1404(b) provides as follows: "(b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer."

[9] 28 U.S.C. § 1404(a) provides as follows:  "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

There are likely to be sufficient cases involving devices implanted in West Virginia to allow consolidated trial groups to be assembled for the TVT and the TVT-O devices.  Sixteen TVT and/or sixteen TVT-O cases (equally selected by Plaintiff and Defendants) can be selected from the pool of West Virginia cases to enter case-specific discovery.  Upon the conclusion of case-specific discovery, the trial-ready cases may be divided into one or more group for consolidated trial(s).  The West Virginia cases can proceed expeditiously toward trial in this Court without the need for executing waivers or for transfers/remands.

**2.      Consolidated Trials of Prolift, Gynecare and Prosima in Cases Governed by Florida Law:**

| **Florida** | **Estimated Case Numbers** |
|---|---|
| TVT-O | 269 cases |
| TVT | 244 cases |
| Prolift & Prolift+M | 171 cases |
| Gynecare | 110 cases |
| Prosima | 24 cases |
| TVT-S | 24 cases |
| TVT – Abrevo | 24 cases |

Florida offers one of the three largest Plaintiff populations in the Ethicon MDL. As such, it provides a strong opportunity to assemble consolidated trial groups for less-commonly used Ethicon products.  In particular, Plaintiff would suggest proceeding forward in Florida with consolidated trial groupings for Prolift and Gynecare cases. There are more-than-adequate numbers of Plaintiffs implanted with these devices in Florida to insure representative trial groups. Additionally, Plaintiffs would suggest assembling a consolidated Prosima trial group in Florida because Florida may be one of the few states with sufficient numbers to enable a consolidated trial of the Prosima

device.  Importantly, none of the Prosima products have been previously tried.  Thus, the opportunity to test the parties' claims and defenses and collect valuation data for a range of injuries related to the Prolift, Gynecare and Prosima devices would be of significant value to this litigation as a whole.

After selection by the parties of sixteen Prolift cases, sixteen Gynecare cases and sixteen Prosima cases, case-specific discovery can commence for the trial selection. Upon completion of case-specific discovery, consolidated trial groups of Prolift and Gynecare plaintiffs from Florida could be tried before this Court if Ethicon is willing to waive its venue and personal jurisdiction objections (for direct filed cases) and its *Lexecon* right to a remand (for transferred cases).  Alternatively, the cases may be made trial ready and then transferred and/or remanded to their Florida district court of proper venue with instructions to have them consolidated before a designated Florida court where they may be tried either by Your Honor via intercircuit assignment or by the judge of the Florida transferee court.

> **3.**      **Consolidated Trials of TVT-S in Cases Governed by Arizona Law:**

| Arizona | Estimated Case Numbers |
|---|---|
| TVT-S | 45 cases |
| Prolift & Prolift+M | 45 cases |
| Gynecare | 45 cases |
| TVT | 45 cases |

The extrapolated data for plaintiffs implanted in Arizona reflects claims involving four products.  Of these four products, Plaintiffs suggest prioritizing claims involving the TVT-S for inclusion first in a consolidated trial group of sixteen cases (evenly selected by Plaintiffs and Defendant) to undergo case-specific discovery and proceed toward trial. Despite the fact that the TVT-S cases represent a substantial portion of the docket, there

has not yet been a trial of a TVT-S case anywhere in the country.  Consequently, focusing first upon a TVT-S consolidated trial group in Arizona will allow the parties to test claims, defenses and valuations that are applicable to a substantial part of the Ethicon docket.

Like the proposed trial groups in Florida, a consolidated group of TVT-S cases from Arizona could be tried before this Court if Ethicon is willing to waive its venue and personal jurisdiction objections (for direct filed cases) and its *Lexecon* right to a remand (for transferred cases).  Alternatively, the cases may be made trial ready and then transferred and/or remanded to their Arizona district court of proper venue with instructions to have them consolidated before a designated Arizona court where they may be tried either by Your Honor via intercircuit assignment or by the judge of the Arizona transferee court.

### III.
### CONCLUSION AND PRAYER

For the reasons stated herein, Plaintiffs request that the Court enter a Case Management Order providing for bellwether consolidations of cases that apply a single state's substantive law, involve a single product, and reflect a representative range of injuries, to be tried before this Court and in other courts of proper jurisdiction and venue. Plaintiffs additionally request all other and further relief to which they may be justly entitled.

Dated:  June 4, 2015.

Respectfully submitted,

/s/  D. Renee Baggett
Bryan F. Aylstock, Esq.
Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, Florida  32563
(850) 202-1010
(850) 916-7449 (fax)
rbaggett@awkolaw.com


/s/ Thomas P. Cartmell
THOMAS P. CARTMELL
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
tcartmell@wcllp.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2015, I electronically filed the foregoing document

with the Clerk of the court using CM/ECF system which will send notification of such

filing to the CM/ECF participants registered to receive service in this MDL.


/s/ D. Renee Baggett
D.Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, FL 32563
850-202-1010
850-916-7449
rbaggett@awkolaw.com