1          IN THE UNITED STATES DISTRICT COURT

2         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

3                     AT CHARLESTON

4    _____
     IN RE:  C.R. BARD, INC., PELVIC    ) MDL NO.
5    REPAIR SYSTEM PRODUCTS LIABILITY   ) 2:10-md-2187
     LITIGATION                         )
6    _____ )
     IN RE:   AMERICAN MEDICAL SYSTEMS, ) MDL NO.
7    INC., PELVIC REPAIR SYSTEM         ) 2:12-md-2325
     PRODUCTS LIABILITY LITIGATION      )
8    _____ )
     IN RE:   BOSTON SCIENTIFIC         ) MDL NO.
9    CORPORATION, PELVIC REPAIR SYSTEM  ) 2:12-md-2326
     PRODUCTS LIABILITY LITIGATION      )
10   _____ )
     IN RE:   ETHICON, INC., PELVIC     ) MDL NO.
11   REPAIR SYSTEM PRODUCTS LIABILITY   ) 2:12-md-2327
     LITIGATION                         )
12   _____ )
     IN RE:   COLOPLAST CORP., PELVIC,  ) MDL NO.
13   REPAIR SYSTEM PRODUCTS LIABILITY   ) 2:12-md-2387
     LITIGATION                         )
14   _____ )
     IN RE:   COOK MEDICAL, INC., PELVIC ) MDL NO.
15   REPAIR SYSTEM PRODUCTS LIABILITY   ) 2:13-md-2440
     LITIGATION                         )
16   _____ )

17

18                **TRANSCRIPT OF STATUS CONFERENCE**
           **BEFORE THE HONORABLE JOSEPH R. GOODWIN,**
                 **UNITED STATES DISTRICT JUDGE,**
19                    **AND CHERYL A. EIFERT,**
               **UNITED STATES MAGISTRATE JUDGE**
20            **TUESDAY, JUNE 2, 2015; 1:00 P.M.**
                      **CHARLESTON, WV**

21

        Proceedings recorded by mechanical stenography,
22   transcript produced by computer.

23                **Mary A. Schweinhagen, RMR, CRR**
              Federal Official Court Reporter
24               300 Virginia Street, East
                  Charleston, WV  25301

25
                     *** *** *** ***

1                    A-P-P-E-A-R-A-N-C-E-S
                   (Speaking Counsel Only)
2

3    FOR THE PLAINTIFFS:

4    HENRY G. GARRARD, III, ESQUIRE
     Blasingame, Burch, Garrard & Ashley
5    P.O. BOX 832
     Athens, GA  30603
6

     CLAYTON A. CLARK, ESQUIRE
7    Clark, Love & Hutson
     440 Louisiana Street, Suite 1600
8    Houston, TX  77002

9    BENJAMIN H. ANDERSON, ESQUIRE
     Anderson Law Offices, LLC
10   1360 W. 9th Street, Suite 215
     Cleveland, OH  44113
11

     BRYAN F. AYLSTOCK, ESQUIRE
12   Aylstock, Witkin, Kreis & Overholtz
     17 East Main Street, Suite 200
13   Pensacola, FL  32502

14   ROBERT L. SALIM, ESQUIRE
     Law Offices of Robert L. Salim
15   1901 Texas Street
     Natchitoches, LA  71457
16

     RILEY L. BURNETT, JR., ESQUIRE
17   Burnett Law Firm
     55 Waugh Drive
18   Houston, TX  77007

19

     ON BEHALF OF DEFENDANTS:
20

     LORI G. COHEN, ESQUIRE (C.R. Bard)
21   Greenberg & Traurig
     3333 Piedmont Road, Suite 2500
22   Terminus 200
     Atlanta, GA  30327
23

     ADRIANE THEIS, ESQUIRE (American Medical Systems)
24   Reisman, Karron & Greene
     1700 K Street, NW, suite 200
25   Washington, D.C.  20006

```
 1                    A-P-P-E-A-R-A-N-C-E-S
                       (Speaking Counsel Only)
 2

 3      ROBERT T. ADAMS, ESQUIRE (Boston Scientific)
        Shook, Hardy & Bacon
 4      2555 Grand Boulevard
        Kansas City, MO  64108
 5

        CHRISTY D. JONES, ESQUIRE (Ethicon)
 6      Butler, Snow
        P.O. Box 6010
 7      Ridgeland, MS  39158

 8      LANA K. VARNEY, ESQUIRE (Coloplast)
        Fulbright & Jaworski
 9      98 San Jacinto Boulevard, Suite 1100
        Austin, TX  78701
10

        DOUGLAS B. KING, ESQUIRE (Cook)
11      Wooden & McLaughlin, LLP
        211 North Pennsylvania Street
12      One Indiana Square, Suite 1800
        Indianapolis, IN  46204
13
                          *    *    *    *    *
14

15

16

17

18

19

20

21

22

23

24

25
```

1          JUDGE GOODWIN:  Good afternoon.

2          THE CLERK:  The matter before the Court is In Re.

3  C.R. Bard, Inc., MDL Number 2187; In Re. American Medical

4  Systems, Inc., MDL Number 2325; In Re. Boston Scientific

5  Corporation, MDL Number 2326; In Re. Ethicon, Inc., MDL Number

6  2327; In Re. Coloplast Corp., MDL Number 2387; In Re. Cook

7  Medical, Inc., MDL Number 2440; Pelvic Repair System Products

8  Liability Litigation.

9          JUDGE GOODWIN:  Good afternoon.  Welcome back to

10  Charleston.  The District Court, Judge Eifert and I, and

11  Charleston visitors bureaus and hotels and restaurants welcome

12  you.  It's nice to see all of you here today.

13      I have a new court reporter.  Mary Schweinhagen is new

14  with the court.  If you'll please help her by identifying

15  yourself before you speak, I would greatly appreciate it.

16      Let's move to the agenda items.  The first item is in the

17  Bard/Covidien MDL, and just a general status update would be

18  appreciated.

19          MR. GARRARD:  Yes, Your Honor.

20          JUDGE GOODWIN:  Mr. Gerrard.

21          MR. GARRARD:  Over the last several months, there

22  have been multiple depositions taken in the Bard litigation in

23  relation to Wave III cases.  Those have gone along

24  cooperatively and productively.  There have been a number of

25  discussions among the parties in terms of the cases and where

1    the cases are going, which I think have been productive

2    discussions.  And I anticipate that that will continue, Your

3    Honor.

4        I don't know that there is much else to say at the

5    moment.

6            JUDGE GOODWIN:  All right.  Thank you, Mr. Gerrard.

7        Anything from anybody else?

8            MS. COHEN:  Thank you, Your Honor.  Good afternoon.

9    Lori Cohen on behalf of Bard.

10       And we agree with the description by Mr. Gerrard.  We

11   have been busy working cooperatively with Mr. Gerrard and the

12   plaintiff's counsel on the Wave 200 and the Wave 300.  I think

13   everything is where it should be.

14       We've also had some continued discussions on alternative

15   resolution as a parallel other tract with various counsel, and

16   that has been productive as well.

17           JUDGE GOODWIN:  Thank you very much.

18       I want to thank counsel.  I know that counsel on both

19   sides have been working very hard.  This is what I would call

20   a mature MDL.  I promised I was going to be nice today.

21       But I sincerely went to comment, as I have in the past,

22   the professionalism of counsel on both sides for the way the

23   litigation's been conducted.  It's very difficult when you

24   have this many cases to maintain schedules and everything

25   while keeping cool, and we have very highly qualified

1    professional counsel involved on both sides of these cases,

2    and I very much appreciate it.

3         Thank you.

4              MS. COHEN:  Thank you, Your Honor.

5              MR. GARRARD:  Thank you, Your Honor.

6              JUDGE GOODWIN:  Turn to American Medical System.

7    Ms. Theis.

8              MS. THEIS:  Good afternoon, Your Honors.  Adriane

9    Theis for American Medical Systems.

10        I'm here to -- I am pleased to say that we are making

11   significant progress with the administrative elements that AMS

12   has entered into in the past year.  As we've reported before,

13   in the past year AMS has entered into settlement agreements

14   that are intended to resolve substantially all of the U.S.

15   pelvic mesh claims against the American Medical Systems.

16        Currently, over 280 firms are now participating in one of

17   the AMS settlement agreements.  That represents 95 percent of

18   the MDL Plaintiffs Steering Committee, and it also includes

19   liaison counsel for Minnesota, Delaware, New Jersey, and

20   Massachusetts state courts where AMS has cases pending.

21        All the plaintiffs' firms, including plaintiffs, have

22   been offered the opportunity to resolve their claims in one of

23   our settlements subject to --

24              JUDGE GOODWIN:  I am sorry.  Could you slow down

25   just a little bit?

1          MS. THEIS:  Yes.

2          JUDGE GOODWIN:  Thank you.

3          MS. THEIS:  In cooperation with plaintiffs' counsel,

4    we're making significant progress in implementing the

5    settlements that have been entered into.  We continue to issue

6    releases on a weekly basis for claims that have completed and

7    submitted settlement documentation.  We also continue to

8    authorize payment for claimants who have returned filed

9    executed releases.

10        As claimants are provided valid releases, and we pay

11   them, AMS continues to work with plaintiffs' counsel to

12   dismiss the cases.  And right now approximately 2,500 MDL

13   cases have been dismissed or are currently pending dismissal.

14        And we are also working closely with plaintiffs' counsel

15   to put pending cases awaiting processing on the inactive

16   docket.  As of now, we have approximately 2,000 MDL cases on

17   the inactive docket, and we are aiming to have an additional

18   6,000 on the inactive docket by the end of this month, for a

19   total of 8,000 by the end of the month.

20        So we are happy to report that settlements are

21   progressing smoothly with AMS, and we expect that to continue.

22        JUDGE GOODWIN:  Thank you very much.  I am very

23   pleased with the smooth progress that has been made in

24   carrying out the AMS settlements, virtually all of the claims,

25   some 95 percent.  I am pleased that we are not seeing the same

1   bumps in the road that are caused by delays in document

2   production that we had seen in the past and that that has

3   smoothed out now.  And that, in fact, by the end of the month,

4   as you say, we should see about 8,000 cases either dismissed

5   or on the inactive docket, which is very, very good progress,

6   I think.

7           MS. THEIS:  Thank you, Your Honor.

8           JUDGE GOODWIN:  The plaintiff -- any plaintiff's

9   lawyer want to comment on that?

10          MR. GARRARD:  No, Your Honor.

11          JUDGE GOODWIN:  All right.  Turning next to Boston

12  Scientific.  Who would like to speak for them?

13          MR. CLARK:  Clayton Clark for the plaintiffs, Your

14  Honor.

15      I think we've got good news for the Court with regard to

16  the Boston docket, as you are aware.  A number of cases have

17  been tried.  We had the cases in West Virginia as well as down

18  in Florida, and then there's been a recent case that was

19  tried.

20      We have now entered settlement negotiations and have

21  gotten very close to finality with at least three significant

22  dockets, and a process has begun to include, I think, all the

23  remainder of Boston Scientific plaintiffs.

24      We're much earlier in that phase, in that stage of

25  learning how to work together with defense counsel and with

1  the executives at Boston to make this process work smoothly,

2  but it's a, it's a positive thing that we are seeing today.

3  We're not fighting as much.  We're getting along a little bit

4  better and attempting to get some settlements for you.

5         JUDGE GOODWIN:  All right.  Defendants have anything

6  they want to add?

7         MR. ADAMS:  Yes, Your Honor.  Robert Adams for

8  Boston Scientific.

9      And we are in negotiations obviously and working well

10  with plaintiffs' counsel.  We're also -- as you are aware, in

11  our Wave cases, you have entered some orders.  We have some

12  remand cases, including the case in North Carolina in the fall

13  that we are working on, but I don't anticipate any type of

14  discovery issues.

15         JUDGE GOODWIN:  Thank you very much.

16      I am very pleased with the developments, fairly recent

17  developments in the Boston Scientific MDL.  My compliments to

18  counsel on working professionally and in very, very good

19  faith.

20      I'll have some comments later about the results of

21  individual cases and what they mean and don't mean in terms of

22  settlements or resolutions.  But I will say this:  I never

23  dreamed I would have 75,000 cases, I never dreamed I would

24  have seven MDLs, and I never dreamed I would have quite as

25  many good lawyers as I've had.  I don't have very many

1   clunkers, and I won't identify them.  We are coming along

2   quite nicely now, and I am in much better humor than you found

3   me before.  It seems like the times that I have been on the

4   bench in our past meetings I have been giving lectures.  I

5   will try to avoid that today.

6        Thank you very much.

7        Next, Cook MDL.  Mr. King?

8             MR. KING:  Yes, Your Honor.  I think we've resolved

9   or had discussions privately with the Court before today

10  that's resolved everything we had to do.

11       One -- we do have one agenda item that was put on at the

12  request of actually one of my paralegals, that we are not

13  being notified when we are being added to other MDLs as a

14  co-defendant through an amended complaint, and we would ask

15  that the Court direct counsel to notify us when that happens.

16  Because we are not learning about it until sometimes later.

17       Thank you.  That's the only item we have, beyond what we

18  have talked about.

19            JUDGE GOODWIN:  There clearly is an obligation to do

20  that, and I expect people to adhere to it.

21            MR. KING:  Thank you.

22            JUDGE GOODWIN:  Did plaintiffs have anything to add?

23            MR. ANDERSON:  No, Your Honor.  This is the first we

24  have heard of that, so we will address it after court.

25            JUDGE GOODWIN:  Thank you very much.

1          Next we have Ethicon.

2          MR. AYLSTOCK:  Good afternoon, Your Honor.  Bryan

3   Aylstock for the plaintiffs.

4      Like the other MDLs, we've always gotten along with our

5   counterparts on the other side, representing Ethicon.

6          JUDGE GOODWIN:  Always is a slight exaggeration,

7   isn't it?

8          MR. AYLSTOCK:  Maybe so.  We have had our

9   disagreements, but Judge Eifert's always been able to handle

10  those for the most part before they get to Your Honor.

11      Discovery is ongoing.  As the Court's aware, there is a

12  large number of different products involved in the Ethicon

13  MDL, about a dozen, and so we're continuing to work through

14  the discovery and the privilege log issues.

15      There are trials set throughout the country.  Your Honor

16  has one set in late August here, the Edwards case.  There is

17  cases set in Texas in July, August, and September; as well as

18  Philadelphia now in state court beginning in December.  And

19  Judge Martinotti, who I know you know well, has set a couple

20  of cases for this year as well and also encouraged the parties

21  through his mandatory mediation program, and that's

22  progressing.

23      That's all I have to represent.

24          JUDGE GOODWIN:  All right.  Ms. Jones.

25          MS. JONES:  Ms. Jones on behalf of defendant.

1    I really don't have anything to add to what Mr. Aylstock

2    has said.  I think the Court's aware of the status of our

3    negotiations.

4         JUDGE GOODWIN:  Thank you.

5    I do know that the parties in the Ethicon MDL have been

6    working diligently with regard to discovery and other matters,

7    and I appreciate, appreciate the efforts.

8    Coloplast.  Ms. Varney?

9         MS. VARNEY:  Thank you, Your Honor.  Lana Varney on

10   behalf of Coloplast.

11   Your Honor, as we reported yesterday with the Plaintiffs

12   Steering Committee, we continue to make steady progress using

13   our early case assessment protocol.  We are going to work with

14   the PSC and recirculate this Court's pretrial order number 65

15   which sets out the protocol and encouraged people to submit

16   their cases into the protocol, to get us the medical records

17   by July 31st of this year so we can continue to make progress.

18        JUDGE GOODWIN:  Ms. Varney, thank you very much.

19   I'm aware of the progress that you made because I have

20   received reports from both sides, as you know, but I do

21   encourage people to engage in that process, and to the extent

22   that I think it is wise to recirculate that order to allow

23   people to find out about it who may have missed out.

24        Who'd like to speak for the plaintiffs?  Is there anybody

25   here named Riley?

1         MR. BURNETT:  No.

2         MR. SALIM:  Robert Salim for the plaintiffs, Your

3    Honor.

4         Your Honor, we are going to put on the list sort of like

5    we did before where we got good results and send out to every

6    single lawyer in the country who has a case on file reminding

7    them of what the protocol is, what it consists of, and ask

8    them if they have any questions to contact us.

9         The defendants have graciously agreed to extend the

10   deadline under 65 to the end of July, so that will give us

11   some additional time.  And we are going to personally reach

12   out and talk with the firms and make sure everybody's aware of

13   the program and has an opportunity to participate that desires

14   to.

15        JUDGE GOODWIN:  Well, I appreciate the efforts of

16   Mr. Burnett, Mr. Salim, and Mr. Mueller.

17        I think I should say to all of you, some who may not know

18   this, that these lawyers are acting on behalf of not only

19   themselves and their personal clients but as appointed leaders

20   in the multidistrict litigation.  Many of the lawyers here

21   today spend a considerable amount of their time ably

22   representing and communicating with lawyers throughout the

23   nation who have these cases and the effort which was just

24   described, recirculating information, is something that goes

25   on frequently.

1     It is frustrating in any case for lawyers and clients to

2  have adequate communication.  One of the struggles that

3  lawyers always have is keeping their clients informed.

4  Clients have an obligation in that regard, too.  Many clients

5  don't stay in touch with the lawyers.  Some have even moved

6  and not left a forwarding address.

7     But in any event, I applaud the able leadership for their

8  efforts to keep everybody informed.

9     And then I would encourage the individual plaintiffs who

10 have questions about their case to contact their individual

11 lawyers.  The leadership will be happy to try to help you

12 where they can, but your lawyer is still responsible for your

13 case, and they are the ones that should be able to provide you

14 with the answers to your questions.  If they don't have the

15 answer, they will move swiftly to get it for you.

16    Let's talk about the -- we have something from

17 Mr. Garretson, who has been working on the lien resolution

18 problem and been acting as a lien resolution administrator.

19        MR. GARRETSON:  Thank you, Your Honor.  Matt

20 Garretson with the Garretson Resolution Group.

21    I will give a brief update, Your Honor, on the federal

22 liens, such as Medicare and Medicaid, as well as some of the

23 other liens that are involved in these settlements.

24    As the Court's aware, on February 27th of 2014, the Court

25 appointed the Garretson Resolution Group as the lien

1    resolution administrator to come up with a consolidated

2    program for resolving all Medicare's interests in any of the

3    cases with any of the TVM defendants, should they settle.

4        As part of that, we went to the government and engaged in

5    negotiations that come up with a global, what we call a global

6    resolution program, which came up with fixed settlement

7    amounts with Medicare by injury category.  And the rationale

8    for that, Your Honor, is that if we had to do all these cases

9    one at a time with Medicare, that process of working through

10   the government, working through the contractors could drag on

11   for years.

12       We were also to set up a conduit through which the

13   parties could easily determine which of the claimants were in

14   fact on Medicare -- and so that's called a verification of

15   entitlement procedure -- as well as create a consolidated way

16   to ensure that all of the defendants -- or I am sorry -- that

17   all of the payments to Medicare were made timely.

18       So I am happy to report that much of that work has indeed

19   been completed.  We reached an agreement with CMS on June 18th

20   of 2014 that established those procedures, as well as those

21   reimbursement values that I mentioned.

22       So the procedures, again, are designed to be utilized by

23   all claimants who may receive settlements arising out of any

24   of the litigation before you.

25       The other interesting part about this arrangement with

1  the government is because this accomplishes the government's

2  purpose of being reimbursed in every single case, they have

3  agreed to waive the requirements that all the defendants would

4  otherwise have to report every single settlement to the

5  federal government in this matter, and so that's called the

6  MMSEA Section 111 reporting requirements.

7        And should any defendant be interested, we're happy to

8  share with them a copy of that agreement that allows them to

9  bypass that cumbersome process.

10       So the process with respect to Medicare is working

11 smoothly and as planned.  On a monthly basis, when we're

12 informed of settlements, we are able to quickly apply these

13 global values that need to be deducted from the settlement

14 amount and repaid to Medicare.

15       That happens, as I said, on a monthly basis.  And, again,

16 the way that works, just so the parties have an understanding

17 of that, is for every type of injury -- and just broadly

18 speaking, let's just say non-surgery, outpatient surgery,

19 inpatient surgery, there is an actual fixed dollar amount that

20 goes back to Medicare from each of those categories depending

21 on when the date of entitlement -- when they became entitled

22 to Medicare and when the injury occurred so no one is

23 overpaying, if you will, for the fixed payment amount on

24 account of the date on which they became entitled.

25       So that process, again, is working well.  In fact, money

1    is moving back to the federal government on account of the

2    settlements that have already taken place.

3         So that, Your Honor, is Medicare in a nutshell.  The

4    process there is going well.

5         With respect to Medicaid, in addition to the Medicare

6    liens, being the federal Medicare Part A and B, of course

7    Medicaid is the program that's administered by the states and

8    the territories that is also part federally funded, so the

9    feds -- the federal government has an interest in seeing those

10   interests repaid as does -- as do the states.

11        So those are addressed according to the terms of any

12   specific Master Settlement Agreement.  But in general, it's

13   the state of the art that any settlement that would take place

14   in any MDL would address Medicaid's interests.

15        So, again, mostly good news there as well.  That process

16   is working well.

17        With respect to Medicaid, there is three milestones every

18   claimant must go through:  The first being verification of

19   entitlement.  We go out in this capacity as lien resolution

20   administrator and verify with every state and territory

21   whether any of the settling claimants were, in fact, entitled

22   to Medicaid at any time after the date of their injury through

23   the date of their settlement.

24        After that piece is taken care of, the states agree to a

25   cap, what they will say that, unlike Medicare where we do a

1    fixed amount that's removed from every settlement to pay back

2    Medicare, the states agree on a cap.  So like 20 percent, for

3    instance, and say as long as you hold back 20 percent of any

4    gross settlement award, we will allow the balance to flow to

5    the claimant, and then the lien is adjudicated within that 20

6    percent holdback.  And when it's finally resolved, the balance

7    is paid back to the claimant.

8         So that's phase two.  You have, first, verification of

9    entitlement; two, we have to get the claims in so that you can

10   adjudicate them within that holdback.  And then, finally,

11   those are approved.

12        Again, the good news is it's working well in most cases.

13        There are -- well, just some quick statistics.  95

14   percent of all the claimants are cleared through that first

15   gate of verification within 30 days, which means when given a

16   group of claimants, 50 states and 3 territories can tell us if

17   those claimants are, in fact, Medicaid entitled within 30

18   days.

19        Also an interesting statistic, approximately 40 percent

20   of all the mesh claimants have been determined to be entitled

21   to Medicaid thus far.

22        It is at the second of those milestones, getting the

23   claims data back from the states, that we are having

24   difficulty with three states in particular.  California,

25   Texas, and Michigan are outside what we would say the

1   generally accepted practices for getting us that claims data.

2        75 percent of all the claims data from all other states

3   are received within 45 days.  The -- kind of the upper end of

4   that is 90 days.  Regrettably those threes states, California,

5   Texas, and Michigan, are averaging more than 250 days to get

6   us that data.

7        I bring it to the Court's attention for a couple reasons.

8   One, obviously, we want to get that process moving and want

9   the courts and parties to be aware of it.  It's not as dire as

10  it might seem because there is a holdback in place, right?  We

11  are moving money to those women while we adjudicate those

12  liens under that holdback.

13       But like all parties, they want to see this shut down

14  after a period of time, and taking 250 days is a little bit

15  too long.

16       We've reached out to the states.  They tell us that they

17  are attempting to pull the claims information from several

18  managed care organizations and other areas.  But, again, we're

19  going to watch it closely.  We will keep the Court aware of it

20  and the parties aware of it.  It's a small percentage, but

21  it's still significant enough that we thought we should bring

22  it to everybody's attention.

23       And finally, to conclude, Your Honor, with respect to

24  private liens, we are the administrator of several of the

25  private lien resolution programs that have been entered into

1    by the settling parties, settling plaintiffs, and groups such

2    as the Rawlins Group or other groups that represent many of

3    the health carriers.

4         Participating in those private lien resolution programs

5    is about 75 percent of the private lien marketplace, meaning

6    75 percent of the covered lives in America, if you were to

7    look at statistically, are covered by plans like United or

8    Humana or Aetna that are participating.

9         There are specific -- like I described with Medicaid,

10   very similar procedures exist for these private liens where

11   there is a cap, and there's time frames through which the

12   lien, the plans agree to provide us that information so the

13   liens can be adjudicated.

14        And, again, those are operating as intended.  Some

15   refinements and operational improvements in any process as you

16   would expect, but no issues to report there, Your Honor.

17        The only other area that's similar to Medicaid, just

18   bringing to the parties' attention, all those health plans

19   that are not participating in the private lien resolution

20   program, so roughly 25 percent of the private lien

21   marketplace.

22        Similar to med -- those situations of Medicaid, with a

23   few of those states, having some problems getting responses,

24   and it means that we are holding -- or the parties are holding

25   money that could otherwise be flowing to the claimants.

1      In past settlements, we have informed the Court, as we

2   are doing here today, if it continues, we'd come back and seek

3   further guidance to see what help we could get in getting

4   these last pieces of the puzzle put to bed.

5      But, again, I wanted to bring it to your attention.

6      But all in all, I want to report things are moving

7   smoothly.  The tracks that had been laid over the last several

8   months, last year since the appointment, are replicable and

9   now available for any of the claimants and any of the

10   defendants that may settle cases.

11      JUDGE GOODWIN:  Thank you, Mr. Garretson.  That is

12   an excellent report and reflects very commendable work that

13   you and your firm has done thus far.

14      I can assure you that you will have the assistance of the

15   Court in any fashion that is appropriate to deal with some of

16   the problem areas you have identified.  If you believe it

17   would be helpful for me to communicate with the governors or

18   with someone else, we'll talk.

19      MR. GARRETSON:  Thank you, Your Honor.  Let me see

20   where I can get over the next 30 days.  I will report back.

21      Thank you.

22      JUDGE GOODWIN:  I'm going to say today mostly good

23   things.  This has been a long process.  It is not near to the

24   ending, but we are on a path.

25      Now, I talked about the need to get on that path at our

1   last get-together, and I think most of us, but not all, have

2   chosen to do that.

3       There are good faith efforts, and in some cases

4   substantial progress, being made, in some, but not all, of the

5   multidistrict litigation.

6       I encourage the parties.  I understand the frustration

7   that exists in each and every individual case, the frustration

8   of each and every plaintiff with the delay in timely

9   resolution, the frustration of each and every defendant who

10  believes they have been sued without justification, or, in the

11  processes, not been provided with information to which they

12  are entitled in order to determine their responsibility.

13      I have said before, it's impossible for the entire

14  federal judiciary to try every one of these cases.  I am

15  pleased to say today that I am encouraged enough to believe

16  that's not going to be necessary.  We are moving along.

17      I have laid out statistics in the past.  I am not going

18  to do that today.  I am well aware that there have been

19  verdicts in cases, and there will be verdicts in the future.

20  Recall that there have been both defense verdicts and

21  plaintiffs' verdicts.  I urge defendants and plaintiffs'

22  lawyers and plaintiffs themselves not to have undue influence

23  on resolution of these claims.

24      Given the number of claims in these MDLs and in the state

25  courts throughout the country, only a relative few, no matter

1    how hard we try, only a relative few of 100,000 cases will go

2    to jury verdict.  Even those cases, they go to trial and

3    result in a plaintiffs' verdict, will spend years in the

4    appellate courts, in the appellate process, before anything is

5    resolved.

6         So I don't mean to go down that detour.  I want to say

7    let's just stay on the path that I am encouraged to believe

8    that we are on now in most of these multidistrict litigation

9    cases.

10        I believe that counsel for the defendants and counsel for

11   the plaintiffs are some of the best lawyers in the country.

12   And lawyers are more than simple advocates or valuators in an

13   arena; they are also counselors of law.

14        And I encourage clients who are represented here today,

15   and clients everywhere who learn of this conference, to listen

16   to your lawyers and heed their counsel.  They are being paid

17   by you to give you good advice in evaluating your claim and in

18   telling you or suggesting to you what a resolution of that

19   claim should be.

20        I would be the first to tell you if there were short

21   practices that I had noted or anything was wrong with the

22   representation being offered by the leadership in this

23   multidistrict litigation.  I can report to you quite the

24   contrary.  The lawyers have engaged in the utmost -- have

25   performed with the utmost professionalism and lived up to the

1    standards of lawyering in the best sense.

2        I expect that to continue.  I know that it will.

3        In our culture today, news reporting and social media are

4    very important, but importance and accuracy are not always

5    equivalent.  I would ask each of you to accurately convey to

6    those to whom you are responsible or are engaged with regard

7    to these matters to convey accurately what you hear, what

8    you've heard.

9        I ask you to tell your clients, counsel, what you should

10   tell them.  What your best advice is.  What your experience

11   and your judgment and your intelligence and your education

12   tells you is best for your clients.

13       And I would ask them to note, to the extent they hear

14   what I have to say, that they should accept your reports and

15   not always what they might hear some other place.

16       I will have -- and I couldn't resist just a little

17   paragraph lecture.  I will have and I will continue to apply

18   pressure, where necessary, to the parties on each side, but I

19   will act in appropriate cases to allow room for parties, who

20   have chosen a path that may lead to resolution, some leeway.

21       Trials will continue, here and elsewhere.  But I am

22   encouraged about what I am learning from the parties and have

23   learned here this afternoon.  It is the case that each of

24   these lawyers in each of these cases is a necessity in the end

25   being settled one at a time, individually.

1          As a consequence, neither any of you, nor I, will ever

2      know exactly all of the terms of the settlements.

3      Settlements, when they occur, are the result of good faith

4      negotiations between two sides to a dispute.  And if both

5      sides are happy or both sides are unhappy, but nevertheless in

6      agreement, that is the end of the process.

7          But it does mean that there is not as much information

8      for me or for you to talk about as we would like.  I'll

9      digress, as I often do, to say to you that everybody thinks

10     the judges know what the cases before them are all about.  I

11     rarely know more about the cases than what I read in the

12     newspapers or the pleadings that the parties file.  In the

13     case of criminal cases, I almost don't know anything except

14     what the indictment says and what I read in my morning

15     newspaper, and that's not always accurate.

16         So frustration will arise because there are things going

17     on that you won't know the details of, and can't and never

18     will.

19         Once again, I turn to you and ask you to trust your

20     lawyers.  Some of the best lawyers in America are in this

21     room.  Some of the best lawyers in America are in this MDL,

22     and they will give you wise counsel.  Follow it.

23         That concludes our status conference for the day, except

24     to ask Judge Eifert if she has anything.

25              JUDGE EIFERT:  I have nothing to add.

1          JUDGE GOODWIN:  Thanks all of you for attending.

2    Safe travels.

3        (Proceedings concluded at 1:46 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF REPORTER

2

3           I, Mary A. Schweinhagen, Federal Official Realtime

4    Court Reporter, in and for the United States District Court

5    for the Southern District of West Virginia, do hereby certify

6    that pursuant to Section 753, Title 28, United States Code

7    that the foregoing is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page format is

10   in conformance with the regulations of the Judicial Conference

11   of the United States.

12

13   s/Mary A. Schweinhagen

14   _____ JUNE 8, 2015

15   MARY A. SCHWEINHAGEN, RMR, CRR
     FEDERAL OFFICIAL COURT REPORTER
16

17

18

19

20

21

22

23

24

25