UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL 2327 |
| THIS DOCUMENT RELATES TO ALL CASES | JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**DEFENDANTS JOHNSON & JOHNSON AND ETHICON, INC.'S
MOTION FOR ORDER REGULATING PLAINTIFFS' COUNSEL'S
*EX PARTE* CONTACTS WITH TREATING PHYSICIANS**

I. **INTRODUCTION.**

Plaintiffs' counsel are abusing their privileged access to treating physicians to obtain an unfair litigation advantage. They meet with the physicians *ex parte* before the physicians' fact depositions so they can lobby in favor of Plaintiffs' liability and causation theories—and even rehearse the physicians' answers to scripted questions with the implied threat of liability hanging in the air. In so doing, they not only bias the physicians' testimony as fact witnesses, but they effectively transform the physicians into hired experts while circumventing the expert witness disclosure requirements mandated by federal law. This tactic is unfair and harmful to the interests of justice, and it threatens to undermine this MDL.

Numerous other courts in product liability cases have intervened in similar circumstances to limit the permissible scope of plaintiffs' counsel's *ex parte* contacts with treating physicians to a discussion of care and treatment issues. *See Coordination Proceeding Special Title (Rule 2.550) Actos Prod. Liab. Cases*, No. CGC-12-519107, 2015 WL 1387938, at *8 (Cal. Super. Ct.

Mar. 20, 2015); Decl. of Robyn C. Davis ("Davis Decl.") ¶ 2, Ex. 1 (*In re Pelvic Mesh/Gynecare Litig.*, No. ATL-L-6341-10 (N.J. Super. Dec. 3, 2013)), at *6; *In re: Chantix (Varenicline) Prods. Liab. Litig.*, No.: 2:09–CV–2039–IPJ, 2011 WL 9995561, at *4 (N.D. Ala. June 30, 2011); *In re Ortho Evra Prods. Liab. Litig.*, No. 1:06-40000, 2010 WL 320064, at *2 (N.D. Ohio Jan. 20, 2010); *In re Nuvaring Prods. Liab. Litig.*, No. 4:08MD1964 RWS, 2009 WL 775442, at *2 (E.D. Mo. Mar. 20, 2009).[1] This Court can and should do the same. Specifically, it should limit Plaintiffs' counsel's *ex parte* contacts with treating physicians to a discussion of the physicians' records, course of treatment, and related matters such as diagnosis and prognosis and should bar counsel from discussing liability issues or theories, product warnings, Defendants' confidential documents, medical literature, or related materials with, or showing or providing any such documents to, the physicians before their fact depositions. Such an order is entirely reasonable and fair to all parties.

## II.  BACKGROUND.

Under the learned intermediary doctrine, which governs Plaintiffs' failure to warn claims, the issue is whether Ethicon warned the treating physicians about risks that were known or knowable at the time they prescribed Ethicon's pelvic mesh devices.[2] What the physicians knew when they made their prescribing decisions, and whether they would have made different decisions had other information been known, is a central focus of fact discovery. It is therefore

---

[1] Although Magistrate Stanley declined to issue a limiting order in the *Bard* MDL, the record before her was not as developed as that here. Moreover, her decision runs counter to what is an emerging trend in product liability cases such as this one. *See infra* Section III.B. For these reasons and those discussed below, this Court should not follow Magistrate Stanley's prior order here.

[2] *See, e.g.*, *Doe v. Miles Labs., Inc., Cutter Labs. Div.*, 927 F.2d 187, 194 (4th Cir. 1991); *In re Boston Scientific Corp., Pelvic Repair Sys. Prods. Liab. Litig.*, No. MDL 2326, No. 2:13–cv–28892, 2015 WL 1509380, at *4 (S.D. W. Va. Apr. 1, 2015).

imperative that the physicians be able to provide accurate and unbiased testimony about the reasons for their decisions—particularly since jurors likely will view their testimony as reliable and credible. Yet Plaintiffs' counsel routinely seek to unfairly bias the physicians' testimony. Where the issue is what the physician knew at the time of the plaintiff's operation, these attempts to change that knowledge are tantamount to spoliation secured by the implied threat of physician liability.

Take the case of Plaintiff Lillie Crews. *See Crews v. Ethicon, Inc., et al.*, S.D. W. Va., MDL No. 2327, Case No. 2:12-cv-01549. Dr. Mark Norvell, the implanting physician, was lobbied at three *ex parte* meetings lasting four and one-half hours before his deposition. *See* Davis Decl. ¶ 3, Ex. 2 (Tr. of May 31, 2013 Dep. of Mark Norvell, M.D.) at 14:3-24, 120:20-24, 122:17-19, 123:25-124:5, 127:1-12. During the first meeting, a paralegal provided an overview of the MDL, stating that "many" plaintiffs were suing Ethicon and that *Crews* would be "a good test case for the judge." *Id.* at 121:25-122:19. Although she reassured Dr. Norvell that Plaintiffs were not critical of the treatment he provided to Ms. Crews, she warned him that Ethicon would "point the finger at the physician or the patient." *Id.* at 286:16-287:24.

In the second meeting, which lasted two hours, Plaintiffs' counsel spent only 30 minutes on Ms. Crews' medical records. *See id.* at 124:22-25. He devoted the remaining three-fourths of the meeting to showing Dr. Norvell documents that had no bearing on the doctor's treatment of Ms. Crews. *See id.* at 123:25-125:5. For example, Plaintiffs' counsel showed Dr. Norvell the Instructions for Use ("IFU") for the Prolift device even though the doctor later testified he does *not* rely on IFUs and does *not* remember even having read the Prolift IFU before treating Ms. Crews. *See id.* at 29:13-18, 89:22-90:12, 185:8-187:15. Plaintiffs' counsel also showed Dr. Norvell "highlighted" portions of select Ethicon documents, including but not limited to those he

3

ultimately questioned the doctor about at deposition. *See id.* at 125:6-126:22. Not surprisingly, counsel did not show the doctor any documents that would have put Plaintiffs' favored selections in context. *See id.* at 126:13-25, 273:20-286:15.

During the third meeting, Plaintiffs' counsel again shared select portions of Ethicon documents, and he also "refreshed [the doctor's] memory on the IFUs"; provided his spin on what "some new evidence" supposedly shows about the safety of the Prolift device; and rehearsed questions that he intended to ask at the upcoming deposition and inquired as to the doctor's anticipated answers. *Id.* at 15:1-12, 127:21-128:18, 272:2-8. Ultimately, Dr. Norvell testified that he might not have implanted Ethicon's Prolift device into Ms. Crews had he known the cherry-picked information that counsel shared with him *ex parte*. *See id.* at 47:4-51:12, 55:5-59:11, 66:18-68:24, 125:6-10.

Or consider the case of Plaintiff Darla Flowers. *See Flowers v. Ethicon, Inc., et al.*, S.D. W. Va., MDL No. 2327, Case No. 2:13-cv-6764. The day before the deposition of the implanting physician, Dr. Richard Woodruff, Plaintiffs' counsel met with the doctor *ex parte* for an hour in the doctor's home.[3] *See* Davis Decl. ¶ 4, Ex. 3 (Tr. of Dec. 13, 2013 Dep. of Richard Woodruff, M.D.) at 183:15-184:10, 197:16-23.

To "familiarize" the doctor with what would happen at the deposition, Plaintiffs' counsel "went through the whole outline" of what he intended to ask the following day. *Id.* at 184:1-7, 187:13-21. That outline apparently covered several topics that had nothing to do with Dr. Woodruff's treatment of Ms. Flowers, including the Food and Drug Administration's regulation of the Prolift device, Ethicon's research and development program, the Prolift IFU, and

---

[3] Ms. Flowers is represented by Robert Price—one of plaintiffs' counsel in the *Actos* coordinated proceeding pending in California, where Judge Freeman recently granted the same relief sought here. *See infra* Section III.B.

4

Ethicon's purported knowledge of the device's potential risks—all topics that counsel ultimately covered at deposition. *See id.* at 53:18-57:12, 109:4-112:18, 124:19-131:3, 156:10-157:19, 165:19-166:6, 177:12-180:8, 208:4-209:11, 304:9-305:25.

During his *ex parte* interview, Plaintiffs' counsel also showed Dr. Woodruff multiple documents that post-dated Ms. Flowers' 2007 implant procedure, including a 2010 medical article and three FDA communications from 2008, 2011, and 2012. *See id*. at 11:9-13, 154:2-10, 158:2-161:13, 167:15-168:7, 189:11-190:3, 194:24-195:14. Dr. Woodruff obviously could not have considered this material in 2007, and Plaintiffs' counsel did not bother putting it in context. *See id.* at 193:21-25, 229:22-232:5. Ultimately, Dr. Woodruff testified that the risk information in these documents would have affected his informed consent process. *See id.* at 154:11-156:8, 168:8-173:17, 180:17-183:5. When Ethicon's counsel asked if the doctor believed the purpose of the *ex parte* meeting was to "skew" his testimony, the doctor confessed that he "underst[ood] the way this works" and "understood priorities." *Id*. at 195:15-196:17. In addition, he volunteered that "doctors are always nervous around lawyers." *Id.*

*Crews* and *Flowers* are not the only cases in this MDL where Plaintiffs' counsel have engaged in improper *ex parte* contacts. There are many others.[4] Likewise, this MDL is not the only transvaginal mesh proceeding in which plaintiffs' counsel are abusing their privileged

---

[4] *See*, *e.g.*, Davis Decl. ¶ 5, Ex. 4 (Tr. of June 6, 2013 Dep. of Patricia L. Murray, M.D.) at 7:11-16, 9:17-25, 117:23-119:13 (two-hour meeting in which counsel discussed select 2011 medical article that post-dated plaintiff's 2010 implant procedure in addition to theories and allegations in plaintiff's complaint); *id.* ¶ 6, Ex. 5 (Tr. of July 9, 2013 Dep. of Todd Myers, M.D.) at 86:18-88:14 (telephone conference during which counsel stated "his goal was to make the consenting process better for the patient in the future" and discussed "why they were taking this to court," "possible bad effects from the mesh," and other purported "complications" of which doctor was unaware); *id.* ¶ 7, Ex. 6 (Tr. of June 30, 2014 Dep. of Carol Dehasse, M.D.) at 313:10-314:7, 315:24-317:3, 317:11-18 (one-hour meeting in which counsel directed doctor to language in IFU that counsel characterized as "important" and discussed counsel's views on what Ethicon's documents supposedly showed, and what Ethicon supposedly knew, about inflammatory process).

access to treating physicians. Such conduct also has occurred in, for example, New Jersey, where Judge Higbee issued a limiting order similar to that sought here.[5] *See infra* Section III.B.

## III. ARGUMENT.

When Plaintiffs' counsel lobby *ex parte* in favor of their clients' litigation theories, they unfairly bias the fact testimony of treating physicians and simultaneously transform the physicians into retained experts without complying with the expert witness disclosure requirements imposed by federal law. No fewer than five courts overseeing mass tort proceedings have responded to such unfairness by limiting plaintiffs' counsel's *ex parte* contacts to a discussion of care and treatment issues.

This Court can and should do the same. Such an order would *not* prevent Plaintiffs themselves from communicating with their doctors about *any* issue. It simply would limit the nature of the *ex parte* contacts that their *counsel* may have before the physicians' depositions. The limiting order that Defendants seek is reasonable and fair.

### A. Ethicon Is Inherently Disadvantaged Because Its Counsel Do Not Have Equal *Ex Parte* Access To Treating Physicians.

In pharmaceutical products liability litigation, each party is entitled to obtain fact testimony from treating physicians that is free of taint by the other party's counsel. Though Ethicon has an undisputable right to obtain such testimony, it does not often have an equal right of access to treating physicians outside the formal discovery process. This imbalance in access is attributable to the physician-patient privilege, which is codified in at least 40 states. *See*, *e.g.*, *In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. 473, 477 (E.D. La. 2005).

---

[5] Counsel's stated objective in meeting *ex parte* with treating physicians in New Jersey was to share plaintiffs' "side[] of the story" and "get the truth out there." *Id.* ¶ 8, Ex. 7 (Tr. of Oct. 17, 2013 Case Mgm't Conf., *In re: Pelvic Mesh/Gynecare Litig.*, Master Case 6341-10 (N.J. Super.)) at 26:14-27:15, 28:2-6.

The privilege protects information obtained by a physician during the course of the physician's treatment of the patient. When a plaintiff files a personal injury lawsuit, she waives the privilege with respect to her alleged injuries. Although a defendant does not violate the privilege by engaging in *ex parte* contacts as to information that has lost its privileged status, courts have reasoned that to avoid the possible disclosure of other, potentially privileged information about a plaintiff's medical history, defendants generally should refrain from *ex parte* contacts concerning care and treatment issues. *See, e.g.*, *Crenshaw v. MONY Life Ins., Co.*, 318 F. Supp. 2d 1015, 1025-1026 (S.D. Cal. 2004); *cf. In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 946 F. Supp. 2d 512, 517 (S.D. W.Va. 2013) (Eifert, J.) (allowing access to discuss past work for defendant but not patient treatment). By contrast, courts frequently have recognized that plaintiffs' counsel generally may meet with treating physicians *ex parte* to discuss medical issues that fall within the scope of the privilege. *See, e.g.*, *In re Vioxx*, 230 F.R.D. at 475 ("it is often important for a plaintiff's counsel to interview the plaintiff's treating physician regarding the plaintiff's personal medical history").

The problem requiring court intervention here is not that Plaintiffs' counsel are allowed to meet with physicians *ex parte* to discuss care and treatment issues whereas Ethicon's counsel are not. Rather, the problem is that Plaintiffs' counsel are abusing their privileged access to the physicians by engaging in *ex parte* discussions about issues that fall entirely *outside* the scope of the physician-patient privilege and that invariably influence the physicians' testimony. As explained, Plaintiffs' counsel are communicating *ex parte* about such varied topics as Ethicon's anticipated litigation strategy; Plaintiffs' favored medical articles, including those published after the physicians provided treatment; Plaintiffs' interpretation of snippets of select Ethicon documents; and Plaintiffs' allegations and litigation theories.

*Ex parte* communications such as these are inherently unfair. By discussing information that the physicians did not consider when making their treating decisions—including information that they could not have considered because it was unavailable at the time—Plaintiffs' counsel are interfering with the physicians' ability to provide unbiased accounts of the relevant facts and to accurately discern what actions they would have taken when they prescribed Ethicon's pelvic mesh devices. *See*, *e.g.*, *In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. 470, 472 (E.D. La. 2005) (recognizing that treating physicians are "susceptible to being influenced" when plaintiffs' counsel conduct "unconstrained interviews"), *order modified by In re Vioxx*, 230 F.R.D. 473; *see also Krist v. Eli Lilly & Co.*, 897 F.2d 293, 297 (7th Cir. 1990) (cognitive psychological research shows that "memory is highly suggestible—people are easily 'reminded' of events that never happened, and having been 'reminded' may thereafter hold the false recollection as tenaciously as they would a true one"); *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007) ("gaps in memory are filled in by world knowledge, post-event information, inferences, and talking to other witnesses"); *State v. Guilbert*, 49 A.3d 705, 715 (Conn. 2012) ("When a subject is exposed to information about the remembered event[,] . . . the subject may incorporate the information into his or her memory and come to believe that the information actually was obtained at an earlier time.").

Further, Plaintiffs' counsel seek to poison the physicians against Ethicon by lobbying in favor of their clients' liability and causation theories. The potential for coaching in this context is significant, because the physicians may fear that they will become litigation targets if they do not give Plaintiffs' counsel helpful testimony. *See, e.g., Polett v. Pub. Commc'ns, Inc.*, 83 A.3d 205, 220 (2013) (physician inserted "finger pointing" causation opinion in medical records after patient requested that he execute tolling agreement extending limitations period for lawsuit),

*appeal granted*, 91 A.3d 1237 (Pa. 2014). Plaintiffs' counsel play on that fear when, as in *Crews*, they warn physicians that Ethicon will "point the finger" at them.

>  B. **<u>Numerous Courts Have Found That A Limiting Order Is Warranted Under These Circumstances.</u>**

The "purpose" of the physician-patient privilege "is to enable the patient to secure complete and appropriate medical treatment by encouraging candid communications between patient and physician." *Harlan v. Lewis*, 141 F.R.D. 107, 110 (E.D. Ark. 1992); *see also In re Vioxx*, 230 F.R.D. at 477 (privilege encourages patients to discuss their ailments "with greater candor" so that physicians may provide "more thorough . . . care"). Given this rationale, granting a plaintiff's counsel the exclusive right to interview a treating physician *ex parte* can only be justified when the subject of the interview is the physician's care and treatment of his patient and any related physician-patient communications. But the privilege *never* can justify a plaintiff's counsel's *ex parte* efforts to campaign in favor of his client's litigation theories and thereby taint the testimony of a critical fact witness.

United States District Court Judge Eldon Fallon addressed this issue in the *Vioxx* litigation. He allowed plaintiffs' counsel there to meet *ex parte* with treating physicians but promised to "revisit this issue" if "future progress of this litigation indicates any trend toward the improper use of ex parte communications." *In re Vioxx*, 230 F.R.D. at 478. Judge Fallon later found that plaintiffs' counsel in fact had taken advantage of his initial order in ways fundamentally unfair to the defendant:

> The issue is, whether you workshop the [physician] beforehand.
> . . . *If you talk with him the whole purpose of talking with him is to ask him about private matters about your client and not to expose them or give them one-sided presentations about the other side.*
> *\*\*\**
> *The concern I have is sending them material that is outside the realm of the record of the private person. . . . I'm concerned about the fairness of talking to the physicians and preventing the*

9

> *defendants from talking to the physicians and letting you go into other things. It just doesn't seem reasonable to me.*

Davis Decl. ¶ 9, Ex. 8 (Hr'g Tr., *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Apr. 27, 2006)) at 38:8-39:9 (emphasis added).

Like Judge Fallon, other federal judges presiding over prescription drug MDLs have found that plaintiffs' counsel's woodshedding of treating physicians is unreasonable and worthy of court intervention. In the *Ortho Evra* MDL, for example, Judge David Katz ordered that "Plaintiffs' counsel may meet *ex parte* to discuss the physicians' records, course of treatment and related matters, but *not as to liability issues or theories, product warnings, Defendant research documents or related materials*." *In re Ortho Evra Prods. Liab. Litig.*, No. 1:06-40000, 2010 WL 320064, at *2 (N.D. Ohio Jan. 20, 2010) (emphasis added). In imposing a subject matter limitation on plaintiffs' counsel's *ex parte* discussions, the court explained its intent to eliminate opportunities that tend to "result in woodshedding or gaining an unfair advantage by ambush when engaged in *ex parte* contacts with treating physicians." *Id.* The court made clear that "[s]uch conduct will not be tolerated" and "will result in sanctions." *Id.*; *see also In re: Chantix (Varenicline) Prods. Liab. Litig.*, No.: 2:09–CV–2039–IPJ, 2011 WL 9995561, at *4 (N.D. Ala. June 30, 2011) (holding that plaintiffs' counsel are not entitled to "unfettered access" to treating physicians, that counsel's *ex parte* contacts must be "limited to the individual care of the individual plaintiffs, such as the plaintiffs' treatment, medical records and conversations with their health care providers," and that counsel "shall not discuss defendants' internal documents with plaintiffs' health care providers outside of a deposition"); *In re Nuvaring Prods. Liab. Litig.*, No. 4:08MD1964 RWS, 2009 WL 775442, at *2-*3 (E.D. Mo. Mar. 20, 2009) (holding that plaintiffs' counsel's *ex parte* contacts with healthcare providers "should be limited to the

particular plaintiff's medical condition at issue" and that such limitation is "fair and appropriate").

State judges presiding over coordinated proceedings involving prescription drugs and medical devices also have limited plaintiffs' counsel's *ex parte* contacts to matters that fall within the scope of the physician-patient privilege. For example, in the *Actos* proceeding pending in California, Judge Freeman recently held that *ex parte* contacts by plaintiffs' counsel—including one of the counsel in Ms. Flowers' case (*see supra* n.3)—"shall be limited to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis" and that counsel "*may not discuss liability issues or theories, product warnings, Defendants' research documents, medical literature or related materials with, or show[] or provid[e] any such documents to, treating physicians before the physicians['] depositions.*" *Coordination Proceeding Special Title (Rule 2.550) Actos Prod. Liab. Cases*, No. CGC-12-519107, 2015 WL 1387938, *8 (Cal. Super. Ct. Mar. 20, 2015) (emphasis added). And in the pelvic mesh proceeding pending in New Jersey, Judge Higbee held that "plaintiffs' counsel shall limit the scope of ex parte communications with plaintiffs' treating physicians to discussions of the facts of the treatment that the given treating physician provided to the given plaintiff and the plaintiff's medical condition and medical history." Davis Decl. ¶ 2, Ex. 1 (*In re Pelvic Mesh/Gynecare Litig.*, No. ATL-L-6341-10 (N.J. Super. Ct. Dec. 3, 2013)) at *6.

The common thread running throughout these cases is that plaintiffs' counsel should not be allowed to gain an unfair litigation advantage by influencing the testimony of treating physicians on matters that fall outside the scope of the physician-patient privilege. The reasoning of these cases is consistent with the studied position of the American Medical

11

Association ("AMA") and the American Bar Association ("ABA") in their Joint Statement on Interprofessional Relations for Physicians and Attorneys:

> The physician should testify solely as to the medical facts in the case and should frankly state his medical opinion. He should never be an advocate and should realize that his testimony is intended to enlighten rather than to impress or prejudice the court or jury. *It is improper for the attorney to abuse a medical witness or to seek to influence his medical opinion*."[6]

In short, there is ample authority for the limiting order that Ethicon seeks. Like the courts in the *Ortho Evra*, *Chantix*, *Nuvaring, Actos*, and *Pelvic Mesh* litigations, and consistent with the AMA-ABA Joint Statement, this Court should limit Plaintiffs' counsel's *ex parte* contacts to a discussion of care and treatment issues. Imposing this sensible limitation will enhance the integrity of the fact finding process without burdening any plaintiff's medical welfare.

### C. Plaintiffs' Counsel Are Effectively Transforming The Treating Physicians Into Retained Experts Before The Physicians' Fact Depositions.

Further, unless the Court grants the requested relief, Plaintiffs' counsel will continue to have *carte blanche* to transform the treating physicians into retained experts before their fact depositions and thereby circumvent the expert witness disclosure requirements mandated by the Federal Rules of Civil Procedure.

The proponent of a retained expert's testimony must provide the opposing party with a written report that contains, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). By contrast, treating physicians typically are not required to provide written reports because, unlike retained experts, they form their relevant opinions independently of litigation. *See* Fed. R. Civ. P. 26(a)(2)(B) &

---

[6] *See* https://www.ama-assn.org/ssl3/ecomm/PolicyFinderForm.pl?site=www.ama-assn.org&uri =/resources/html/ PolicyFinder/policyfiles/HnE/H-265.997.HTM (emphasis added) (last visited September 17, 2015).

(C); *see also* Notes to Advisory Committee on Rules – 1993 Amendment ("A treating physician . . . can be deposed or called to testify at trial without any requirement for a written report.").

But as this Court has recognized, when a treating physician forms an opinion based on information obtained *outside* the physician-patient relationship, the physician ceases to function as a treating physician and instead becomes a retained expert for whom a written report must be disclosed. *See In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 615 (S.D. W. Va. 2013) ("The inquiry is whether the treating physician's testimony addresses knowledge gained and opinions formed during the course of treatment, or whether the treating physician seeks to offer opinions which address information outside the scope of treatment."); *see also Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 819-820, 826 (9th Cir. 2011) ("treating physician morphs into a witness" for whom expert report is required when plaintiff's counsel provides physician with "additional information" and asks him to opine on "matters outside the scope of the treatment").

The purpose of deposing treating physicians is to discover the facts about Plaintiffs' medical conditions, treatment, and prognoses. The documentation that will be relevant to that inquiry consists primarily, if not exclusively, of Plaintiffs' medical records and any other documentation on which the physicians may have relied when providing treatment.

Unless the Court issues a limiting order, however, Plaintiffs' counsel will continue to have free rein to transform the physicians from critical fact witnesses into retained experts by encouraging them to review and comment on information that they did not consider during the course of their physician-patient relationships and that may not even have existed at the time. In that event, Ethicon will suffer extreme prejudice. Not only will the physicians' fact testimony be irrevocably tainted by the time of their depositions, but Ethicon invariably will be ambushed and forced to conduct what are in effect expert witness depositions without the benefit of the required

written reports—reports that are required because experience has shown that forcing parties to rely solely on cross-examination of expert witnesses is ineffective. *See Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 20 (D.P.R. 2009) ("The goal" of Rule 26(a)'s report requirement "is to promote full disclosure of the facts and prevent 'trial by ambush,' because opposing counsel cannot adequately cross-examine without advance preparation."); Notes to Advisory Committee on Rules – 1993 Amendment (report requirement was intended to address "sketchy and vague" disclosures occasioned by former rule and thereby give opposing party "a reasonable opportunity to prepare for effective cross examination").

Recognizing this dilemma, the *Actos* court issued the same limiting order sought here because "the means by which Plaintiffs are dealing with the treating physicians on an *ex parte* basis appears to . . . circumvent the requirements for designation of experts." *Actos Prod. Liab. Cases*, 2015 WL 1387938 at *8; *see also id.* at *6. Like the *Actos* court, this Court should limit Plaintiffs' counsel's *ex parte* contacts so that Plaintiffs do not effectively circumvent Rule 26(a)(2)(B)'s report requirement before the treating physicians' fact depositions.

### D. The Court Need Not And Should Not Follow Magistrate Stanley's Decision In The *Bard* MDL.

Nearly three years ago, the defendant in the *Bard* MDL submitted a letter seeking a limiting order similar to the one sought here.[7] Unlike this motion, however, which documents *multiple* examples of egregious *ex parte* communications, the defendant's letter in the *Bard* MDL relied on a single example. On August 3, 2012, Magistrate Stanley declined to issue a limiting order and instead denied the defendant's letter motion. *See* Davis Decl. ¶ 11, Ex. 10 (Pretrial Order # 48, *C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.* (MDL No. 2187), Dkt.

---

[7] *See* Davis Decl. ¶ 10, Ex. 9 (*In re C. R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187, Dkt. No. 287 (July 31, 2012 Letter from Richard B. North to Magistrate Judge Stanley)) at 7.

14

No. 290 ("Pretrial Order # 48")) at 5. This Court need not and should not follow Magistrate Stanley's approach here. Not only is that approach out of step with the emerging trend in the case law—including multiple cases that Magistrate Stanley did not have an opportunity to consider—it is based on several mistaken assumptions.

*First*, Magistrate Stanley assumed that she needed a statutory basis to grant a limiting order. *See id.*, Ex. 10 (Pretrial Order # 48) at 3 ("[n]either a statute nor a rule suggests that such limits are appropriate."). That assumption is unfounded. As this Court has recognized, it has "'inherent power . . . to redress conduct which abuses the judicial process.'" *Erie Ins. Prop. & Cas. Co. v. Electrolux Home Prods., Inc.*, No. 6:08–cv–00258, 2009 WL 777638, at *3 (S.D. W. Va. Mar. 20, 2009) (*quoting Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)); *see also In re Am. Med. Sys., Inc. Pelvic Repair*, 946 F. Supp. 2d at 517 (recognizing that "*improper* influence by an adversary" in *ex parte* physician interviews "can be remedied with the imposition of appropriate sanctions") (emphasis in original). Because the *ex parte* conduct at issue here unquestionably abuses the integrity of the judicial process, the Court has the power to regulate such conduct. *See*, *e.g.*, *Harlan v. Lewis*, 982 F.2d 1255, 1259, 1262 (8th Cir. 1993) (district court had inherent authority to issue sanctions for improper *ex parte* contact with physicians); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05–2164–MLB–DWB, 2007 WL 2122438, at *2 (D. Kan. July 20, 2007) ("court has the inherent supervisory power to either limit or prohibit . . . *ex parte* interviews" with former employees); *Lewis v. CSX Corp.*, 202 F.R.D. 464, 467 (W.D. Va. 2001) ("court has authority to enter an order prohibiting [*ex parte*] contact [with defendant's employees] based on its inherent power to prohibit or remedy litigation practices which may raise or constitute ethical violations").[8]

---

[8] Even if a statutory basis were needed, the Federal Rules of Civil Procedure provide one. Rule

***Second***, Magistrate Stanley reasoned that "attorneys are expected to prepare *their witnesses* for the rigors of giving testimony." Davis Decl. ¶ 11, Ex. 10 (Pretrial Order # 48) at 3 (emphasis added). But treating physicians are not *plaintiffs'* witnesses. As a New Jersey appellate court later ruled when examining this very subject, treating physicians are independent fact witnesses who have *no* obligation "to support the 'litigation interests' of a party to a lawsuit." *In re Pelvic Mesh/Gynecare Litig.*, 43 A.3d 1211, 1222 (N.J. Super. Ct. 2012); *see also In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, 890 F. Supp. 2d 896, 907-909 (N.D. Ill. 2012) (similar); *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 128 (D.C. 1983) (similar); *Brandt v. Med. Def. Assocs.*, 856 S.W. 2d 667, 673 (Mo. 1993) (similar). In fact, a physician's only duties in litigation are "to cooperate procedurally when called upon and to provide truthful information." *In re Pelvic Mesh/Gynecare Litig.*, 43 A.3d at 1223; *see also Brandt*, 856 S.W. 2d at 673 (similar); *Christensen v. Munsen*, 867 P.2d 626, 629 (Wash. 1994) (similar); AMA, Code of Med. Ethics, Opinion 9.07 (2004)[9] (similar). Thus, Plaintiffs' counsel do *not* need to "prepare" the physicians to testify. By "preparing" the physicians *ex parte*, Plaintiffs' counsel not only bias the physicians' fact testimony; they effectively transform the physicians into hired experts while circumventing the expert witness disclosure requirements imposed by federal law. *See supra* Section III.C.

***Third***, Magistrate Stanley assumed that plaintiffs' ability to learn facts relevant to their failure to warn claims would be jeopardized if their counsel were required to question the physicians about "corporate documents and statements of sales representatives" for the first time

---

26(b)(1) provides that the Court may "limit[]" the "scope of discovery." And Rule 83(b) provides that "[a] judge may regulate practice in any manner consistent with federal law . . . ."

[9] *See* http://www.ama-assn.org/ama/pub/physician-resources/medical-ethics/code-medical-ethics/opinion907.page (last visited September 17, 2015).

16

at a deposition where all parties are present. Davis Decl., ¶ 11, Ex. 10 (Pretrial Order # 48) at 3-4. Again, that assumption is unfounded. *See Actos Prod. Liab. Cases*, 2015 WL 1387938 at \*6 ("This Court is not persuaded by Plaintiffs' argument that any limitation on counsel's ability to engage in ex parte communications 'would severely undermine a Plaintiff's ability to prove a failure to warn claim.'"). As the *Actos* court recognized, "Plaintiffs' counsel may meet *ex parte* with treating physicians and ask them questions about the information obtained from an examination of their patients" and "may then use the information learned from the *ex parte* contacts to tailor deposition questioning." *Id.* In addition, Plaintiffs' counsel may show the physicians medical literature and company documents "during deposition . . . and ask them whether they would have made prescribing decisions had they known certain facts at the relevant time." *Id.* In short, Plaintiffs' counsel do *not* require unfettered *ex parte* access to treating physicians to discover evidence relevant to Plaintiffs' failure to warn claims.

Moreover, information that post-dates a physician's treatment decision—such as the select medical articles that Plaintiffs' counsel have been sharing with the physicians *ex parte*—is not even relevant to Plaintiffs' failure to warn claims. It has no tendency in reason to prove that the physician would have made a different treatment decision at the relevant time. *See, e.g.*, *Hall v. Boston Scientific Corp.*, No. 2:12–cv–08186, 2015 WL 874760, at \*8 (S.D. W. Va. Feb. 27, 2015) (plaintiff must show that doctor "would not have prescribed the device but for the inadequate warnings or instructions"). And regardless of when certain information outside a Plaintiff's medical records was available, Plaintiffs' counsel should not be allowed to discuss it *ex parte*. Otherwise, Plaintiffs' counsel will have free rein to reprogram the physicians' memories, bias their views, and thereby gain an unfair litigation advantage. *See supra* at 7-11 (cases cited).

## IV. CONCLUSION

The Court should grant Defendants' Motion for the reasons stated. Specifically, it should limit Plaintiffs' counsel's *ex parte* contacts to a discussion of the physicians' records, course of treatment, and related matters such as diagnosis and prognosis and should bar counsel from discussing liability issues or theories, product warnings, Defendants' confidential documents, medical literature, or related materials with, or showing or providing any such documents to, the physicians before their fact depositions. This Court has recognized that "improper" use of *ex parte* physician interviews can result in sanctions. *See In re Am. Med. Sys., Inc. Pelvic Repair*, 946 F. Supp. 2d at 517. It only makes sense for this Court to issue an order defining in advance what *ex parte* contact is allowed so that sanctions will not be needed. Defendants respectfully request that the Court also grant Defendants any other general or special relief to which they may be entitled.

*Defendants Ethicon, Inc. and Johnson & Johnson,*

*By Counsel*

/s/ David B. Thomas
David B. Thomas (W.Va. Bar #3731)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
(304) 414-1800
dthomas@tcspllc.com

18

                                        */s/Christy D. Jones*
Christy D. Jones
BUTLER SNOW LLP
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS  39157
(601) 85-4523
christy.jones@butlersnow.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

| | |
|---|---|
| **IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | Master File No. 2:12-MD-02327<br>MDL 2327 |
| **THIS DOCUMENT RELATES TO ALL CASES** | JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

## CERTIFICATE OF SERVICE

I, David B. Thomas, certify that on September 23, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ David B. Thomas*
David B. Thomas (W. Va. Bar No. 3731)
Thomas Combs & Spann, PLLC
300 Summers Street, Suite 1380
P.O. Box 3824
Charleston, WV 25338-3824
(304) 414-1800

COUNSEL FOR DEFENDANTS ETHICON, INC.
AND JOHNSON & JOHNSON

2313085.12