**EXHIBIT 9**

# Nelson Mullins

**Nelson Mullins Riley & Scarborough LLP**
Attorneys and Counselors at Law
Atlantic Station / 201 17th Street, NW / Suite 1700 / Atlanta, GA 30363
Tel: 404.322.6000 Fax: 404.322.6050
www.nelsonmullins.com

Richard B. North, Jr.
Tel: 404.322.6155
richard.north@nelsonmullins.com



FILED
AUG - 2 2012
TERESA L DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

July 31, 2012

The Honorable Mary E. Stanley
Magistrate Judge
United Stated District Court for the Southern District of West Virginia
5408 Robert C. Byrd United States Courthouse
300 Virginia Street East
Charleston, WV 25301

      Re:    *C. R. Bard, Inc. Pelvic Repair System Product Liability Litigation (MDL No. 2187)*

Dear Judge Stanley:

      I write regarding what Defendants believe is a serious matter that compromises the integrity of the judicial process. On July 26, counsel for the plaintiffs took the first deposition of a treating physician (Dr. Elizabeth Barbee) in a bellwether case (*Queen v. C. R. Bard*). Before the deposition, however, <u>four</u> different plaintiffs' attorneys had met with Dr. Barbee on <u>two</u> separate occasions for <u>several hours</u> to discuss matters going well beyond the plaintiff's medical treatment. Specifically, during the meetings, counsel "alluded to" the content of Bard internal documents concerning the following:

- Bard's alleged corporate conduct;

- Bard's alleged lack of long-term outcome and follow-up data concerning the Avaulta System;

- Bard's alleged "trepidation" about explanting the product if something went wrong long-term;

- Bard's alleged knowledge that physicians perceived that the complication rates associated with the Avaulta System were too high;

- Bard's alleged release of the Avaulta System without sufficient supporting data;

- Bard's alleged failure to test, or failure to adequately test, the Avaulta System with respect to numerous materials and anatomical characteristics;

The Honorable Mary E. Stanley
July 31, 2012
Page 2

- Bard's alleged knowledge that the properties of the Avaulta System would increase the risk of erosion, result in higher incidence of delayed healing, and result in greater inflammatory response; and

- Bard's alleged knowledge about mesh shrinkage, infection rates, and customer dissatisfaction.[1]

Counsel's multiple *ex parte* meetings with Dr. Barbee and their "several hours" long discussions of general causation issues and alleged corporate misconduct improperly allows the plaintiffs to lobby their theories of liability and causation. Undoubtedly, the plaintiff's cherry picking of snippets of certain confidential and internal Bard documents to paint Bard in an unfavorable light before Dr. Barbee's deposition impacted her view of Bard and her testimony. Accordingly, Defendants move this Court for an order limiting any *ex parte* communication with plaintiffs' treating physicians to the plaintiffs' medical condition at issue in this litigation. In addition, because the plaintiff's questioning of Dr. Barbee was designed to elicit testimony beyond her role as a fact witness, Bard moves for an order requiring the plaintiffs to comply with Rule 26 by identifying the plaintiffs' physicians as experts and providing written reports of their opinions before the physicians' depositions. Finally, once the extent of the plaintiffs' *ex parte* contacts with treating physicians becomes known, Bard will seek additional appropriate relief (including the exclusion of these "experts") to ameliorate the prejudice.

### I. Limiting the Plaintiffs' *Ex Parte* Communications to the Plaintiff's Relevant Medical History

Given the unfairness that results when the plaintiffs are permitted to "poison the well" by *ex parte* discussing their general liability theories with physician fact witnesses ahead of the witnesses' depositions, MDL courts have limited such contacts to discussions of the plaintiffs' medical conditions that are the subject of the lawsuit. For example, *In re Ortho Evra Products Liability Litigation*, MDL No. 1742, No. 1:06-40000, 2010 WL 320064 (N.D. Ohio Jan 20, 2010), the defendants moved the MDL court for an order limiting the plaintiffs' *ex parte* contacts with their physicians "to discussion of the plaintiff's medical condition and prohibiting discussion of liability issues, warnings, and Company documents." *Id.* at *1. The court agreed with the defendants that allowing the plaintiffs to engage in unfettered *ex parte* discussions with physicians would give the plaintiffs an unfair advantage by allowing them to lobby their theories of liability and causation. The court warned that "Plaintiffs' counsel will not act in a manner which would result in woodshedding or gaining an unfair advantage by ambush when engaged in *ex parte* contact with treating physicians. Such conduct will not be tolerated." *Id.* To that end, the court limited the plaintiffs' *ex parte* contacts with treating physicians to discussion of "the physicians' records, course of treatment and related matters, but not as to liability issues or theories, product warnings, Defendant research documents or related material. Violations of this approach, as stated above, will result in sanctions." *Id.* at *2; *see In re NuvaRing Prods. Liab. Litig.*, 4:08MD1964 RWS (E.D. Mo. Mar. 20, 2009) (consistent with limitations agreed to by the

---

[1] A copy of the rough deposition transcript is attached hereto as Exhibit A for the Court's review with relevant portions highlighted by Bard counsel for the Court's convenience.

The Honorable Mary E. Stanley
July 31, 2012
Page 3

parties) that any plaintiff *ex parte* communications with treating physicians would be limited to the plaintiffs' medical condition at issue in the litigation); *see also Gaus v. Novartis Pharmaceuticals, Corp.*, Docket No. MID-L-00714-07-MT (New Jersey, October 29, 2009) (denying defendant's request to conduct *ex parte* interviews of treating physicians, but holding that plaintiffs could not conduct such interviews either "in the interest of fairness to all") (copy attached as Exhibit "B").[2]

Here, the Court should adopt an approach similar to the *Ortho Evra* and *NuvaRing* courts and enter an order limiting any *ex parte* contacts with the plaintiffs' treating physicians to the plaintiffs' medical condition at issue in the litigation. Such an order would preserve the plaintiffs' ability to communicate with their physicians while also ensuring that the physicians are not influenced before their depositions by the plaintiffs' theories of liability and/or portions of Bard's confidential internal documents that are presented in a plaintiff-friendly manner.

## II. Requiring the Plaintiffs To Comply with Rule 26's Mandate that Experts Provide Written Reports

Rule 26(a)(2)(B) requires witnesses to provide "a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case . . . ." Treating physicians who offer opinions beyond the medical treatment rendered to the plaintiff fall within the scope of Rule 26's written report requirement. *See, e.g., Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 819-26 (9th Cir. 2011) (finding that treating physicians who offer opinions reached outside of their treatment of the plaintiff are required to submit an expert report in compliance with Rule 26(a)(2)); *Meyers v. Amtrak*, 619 F.3d 729, 735 (7th Cir. 2010) (same); *Brooks v. Union Pac. R.R.*, 620 F.3d 896, 900 (8th Cir. 2010) (same); *Mohney v. USA Hockey, Inc.*, 138 Fed. Appx. 804, 811 (6th Cir. 2005) (same).

Here, Dr. Barbee's testimony (and any other physician who meets with the plaintiffs' counsel before their depositions to discuss the plaintiffs' theories of the case) went well beyond her treatment of the plaintiff. For example, Dr. Barbee provided opinion testimony regarding complications associated with vaginal mesh (Ex. A, Dr. Barbee Rough Dep. Tr., 18, 22), her opinion that the data do not support the use of mesh (*Id.* at 18), her opinions concerning FDA's public health notification and the American College of Obstetricians and Gynecologists response statement (*Id.* at 21-29, 80-82), causation opinions concerning complications caused by mesh shrinkage (*Id.* at 27), causation opinions concerning mesh complications in twenty of her patients (*Id.* at 29-32) including patients who received products that were different from those that Ms. Queen was implanted with (*Id.* at 211-212), opinion testimony concerning hypothetical mesh surgeries (*Id.* at 63-64), opinion testimony concerning the inclusion of a porcine barrier in the Avaulta Plus product (*Id.* at 29-31) a product she admits she did not implant in Ms. Queen (*Id.* at

---

[2] Even the handful of courts that have declined to impose the same limitation ordered by those courts have ultimately placed other restrictions on the process. *In re Yasmin*, 2011 U.S. Dist. LEXIS 21973 (S.D. Ill. March 4, 2011); *In re Kugel Mesh Hernia Repair Litigation*, MDL Docket No. 07-1842ML (D.R.I. Jan. 12, 2012).

The Honorable Mary E. Stanley
July 31, 2012
Page 4

211-212), opinion testimony on the propriety of the use of posterior mesh implants when she did not implant a posterior mesh in Ms. Queen (*Id.* 18-19), and opinion testimony concerning whether the Avaulta System caused the plaintiff's alleged injuries (*Id.* at 98-99). Because Dr. Barbee's testimony went well beyond her treatment of the plaintiff, the plaintiff was required to name her as an expert and she should be required to submit an expert report, consistent with Rule 26 and the findings of the numerous circuit courts to have addressed the issue. Accordingly, if the Court for some reason declines to impose the limitation requested, the Court should nevertheless order the plaintiff to submit an expert report for Dr. Barbee and every other treating physician that they meet with *ex parte*.

### III.     Conclusion

The Rules of Civil Procedure and pretrial discovery are designed to provide litigants with a level playing field on which to prepare their cases for trial. The plaintiff's *ex parte* communication with Dr. Barbee and any other treating physician tilts the playing field decidedly in their favor. As the *Ortho Evra* and *NuvaRing* courts have found, such *ex parte* communications with physicians that go beyond the treatment of the plaintiff smack of unfairness and should be forbidden. Further, to the extent Plaintiffs intend to seek expert opinion testimony from treating physicians in the future, Defendants request an order requiring the plaintiffs to comply with Rule 26 by identifying the Plaintiffs' physicians as experts and providing written reports of their opinions before the physicians' depositions. Finally, once more information is known concerning the extent of Plaintiffs' past *ex parte* contacts, Defendants reserve the right to seek additional relief to cure the prejudice, including an Order finding that Dr. Barbee and other treating healthcare providers with whom Plaintiffs' counsel have similarly met are precluded from offering any expert opinions in these cases.

We look forward to discussing these issues with you on Thursday.

With best regards, I am

Respectfully yours,

Richard B. North, Jr.


cc:     All counsel of record