# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

IN RE: C.R. BARD, INC.
PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION

                    Case No. 2:10-md-2187

THIS DOCUMENT RELATES TO ALL CASES

### PRETRIAL ORDER # 48
(Defendants' Motion to Limit *Ex Parte* Interviews of
Plaintiffs' Treating Physicians by Plaintiffs' Attorneys)

In this multi-district litigation ("MDL") concerning products used to repair pelvic organ prolapse and stress urinary incontinence, the parties have been encouraged to bring before the court, without the filing of formal motions, those discovery disputes which they are unable to resolve among themselves. Pending before the court are two letters setting forth a dispute as to whether the court should enter an order limiting *ex parte* communications between the plaintiffs' counsel and the plaintiffs' treating physicians to the plaintiffs' care and treatment at issue in this litigation. The Clerk docketed the letters, dated July 31 and August 2, 2012, in this MDL, as "Motion for Protective Order" by C.R. Bard, Inc. (ECF No. 287) and "Plaintiffs' Response," (ECF No. 288) without the exhibits. The undersigned conducted a hearing on the letter motion on August 2, 2012.

The context of the letter motion is this: one of the bellwether cases in this MDL is *Wanda Queen v. C.R. Bard*, No. 2:11-cv-00012. The surgeon who implanted pelvic mesh in Ms. Queen is Dr. Elizabeth Barbee, whose deposition was taken on July 26,

2012. Prior to her deposition, plaintiffs' counsel interviewed Dr. Barbee on two occasions for several hours, referring to the contents of several of Bard's internal documents and displaying to Dr. Barbee one such document, entitled "Persistent Delayed Healing."

Bard contends that the meetings between plaintiffs' counsel and Dr. Barbee, which involved some discussion of general causation issues and alleged corporate misconduct, "improperly allows [*sic*] the plaintiffs to lobby their theories of liability and causation." *In re C.R. Bard, Inc. Pelvic Repair System Prod. Liab. Litig.*, No. 2:10-md-2187, ECF No. 287, at 2. In addition, because Bard claims that Dr. Barbee's testimony extended beyond her role as a fact witness, Bard requests entry of an order requiring the plaintiffs to identify their treating physicians as expert witnesses and to provide written reports pursuant to Fed. R. Civ. P. 26(a)(2) prior to their depositions. *Id*. In support of its position on limiting the *ex parte* communications, Bard relies on *In re Ortho Evra Prod. Liab. Litig.*, MDL No. 1742, No. 1:06-40000, 2010 WL 320064 (N.D. Ohio Jan. 20, 2010), and *In re NuvaRing Prods. Liab. Litig.*, 4:08MD1964RWS (E.D. Mo. Mar. 20, 2009). With respect to expert witness reports, Bard cites *Goodman v. Staples the Office Superstore, LLC,* 644 F.3d 817, 819-26 (9th Cir. 2011), *Meyers v. Amtrak*, 619 F.3d 729, 735 (7th Cir. 2010), *Brooks v. Union Pac. R.R.,* 620 F.3d 896, 900 (8th Cir. 2010), and *Mohney v. USA Hockey, Inc.,* 138 Fed. Appx. 804, 811 (6th Cir. 2005).

The plaintiffs respond that no statute or rule authorizes the proposed restrictions on *ex parte* communications with treating physicians. (ECF No. 288 at 1.) They note that Bard's sales representatives had significant and repeated *ex parte* contact with the physicians and surgeons in connection with the sale and implanting of Bard's products. The plaintiffs assert that Bard may place blame on implanting physicians and surgeons;

2

thus the plaintiffs have "an obligation to inquire about their doctors' knowledge, training, experience and technique relative to these products, as well as the scope and substance of Defendants' doctor training programs and materials." *Id.* at 3. They contend that under the learned intermediary doctrine, what the doctor was told or not told by Bard and its representatives are important facts. *Id.* The plaintiffs cite to a few orders entered in other MDL cases which denied similar motions. With respect to expert witness reports, the plaintiffs argue that Dr. Barbee's "expert opinions" were actually "factual testimony based on her personal observations or thoughts in light of her own experience with these products and these Defendants." *Id.* at 6. To the extent that Dr. Barbee's testimony may be construed as "opinion," the plaintiffs assert that her opinions "related to the care and treatment of her patient and the product implanted in her patient." *Id.*

At the hearing on August 2, 2012, the parties presented their arguments further. Bard asserted that its counsel was "ambushed" by the use of its corporate documents at Dr. Barbee's deposition. Plaintiffs' counsel offered to give Bard 48 hours' notice of their intention to use the defendants' documents at depositions of treating physicians.

*Ex parte* communications with plaintiffs' treating physicians

After due consideration of the parties' arguments and the cases cited by them, the court declines to impose limits on plaintiffs' counsel's *ex parte* communications with plaintiffs' treating physicians. Neither a statute nor a rule suggests that such limits are appropriate; in fact it is accepted that attorneys are expected to prepare their witnesses for the rigors of giving testimony. As this MDL develops, it becomes more apparent that the plaintiffs are pursuing multiple theories, including those of negligent design and negligent failure to warn. It is important to develop the facts as to what the defendants

3

knew about their products' effects on women's pelvic organs and when they knew those facts. Contents of corporate documents and statements of sales representatives to treating physicians and surgeons are appropriate areas of inquiry as to whether full disclosure would have changed a doctor's mind about implanting a pelvic mesh product.

The court accepts the plaintiffs' offer to disclose to defense counsel those documents produced by the defendants which plaintiffs' counsel intends to use in questioning plaintiffs' treating physicians or surgeons, and to make the disclosures at least 48 hours in advance of each deposition of a treating physician or surgeon.

Treating physicians as expert witnesses

At the hearing, the court inquired as to the financial arrangement with respect to Dr. Barbee and other treating physicians and surgeons. Plaintiffs' counsel advised that Dr. Barbee charged an hourly rate for her time and there was no other financial arrangement with her. In the court's experience, all physicians charge an hourly rate for their time, no matter who is meeting with or questioning them; the billing and payment, considered in isolation, do not equate to being "retained or specially employed to provide expert testimony," as provided in Fed. R. Civ. P. 26(a)(2)(B). While treating physicians and surgeons are typically highly trained and educated, and offer opinions concerning their care and treatment of their patients, they do not automatically qualify as "expert witnesses" who must write a report and make Rule 26(a)(2)(B) disclosures. The Advisory Committee Notes to the 1993 Amendments to Rule 26 state that "[a] treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."

Ruling

It is hereby **ORDERED** that Bard's letter Motion for Protective Order (ECF No. 287) is **DENIED**, although attorneys for plaintiffs are directed to provide to defense counsel, at least 48 hours prior to the deposition of a treating physician or surgeon, copies of documents to be used at the deposition which were produced by the defendants. Absent evidence that a plaintiff's treating physician or surgeon is retained or specially employed to provide expert testimony, a Rule 26(a)(2)(B) written report will not be required. The parties shall bear their own costs.

The court **DIRECTS** the Clerk to file this Order; it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:12-cv-03583. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER: August 3, 2012

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

5