UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE:  ETHICON, INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES ONLY TO:<br><br>ETHICON WAVE 1 CASES | Master File No. 2:12-MD-02327<br>MDL No. 2327<br><br>JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO ENFORCE PRETRIAL ORDER # 17**

In an attempt to circumvent this Court's discovery orders, which bar plaintiff-specific discovery prior to Defendants' submission of Defendant Fact Sheets ("DFSs") on November 19, 2015, Plaintiffs have inundated Defendants with thousands of plaintiff-specific discovery requests.  Plaintiffs' purpose is clear: to harass Defendants and force them to spend critical time and resources responding to duplicative discovery instead of doing the critical work necessary to prepare for trial.  The Court should not allow such an abuse of the discovery process.

Contrary to Plaintiffs' arguments, Pretrial Order No. 17 ("PTO # 17") clearly applies to the Plaintiffs in the "Ethicon Wave 1" cases and – in conjunction with Pretrial Order No. 193 ("PTO # 193" (as amended by PTO # 195)) – makes clear that Plaintiffs must wait for Defendants to produce DFSs on November 19, 2015 before requesting any additional, plaintiff-specific discovery.  Plaintiffs' purported justifications for ignoring these orders – including their assertions that the served discovery seeks different information from the DFS and that they need plaintiff-specific discovery in advance of scheduled plaintiff and health-care provider depositions – fall similarly flat.  As set forth below, the plaintiff-specific information Plaintiffs seek

overwhelmingly overlaps with the DFS. Further, it was *Plaintiffs*, not Defendants, who noticed the majority of the depositions that have been scheduled prior to the DFS deadline – thus creating the problem about which they now complain. Nonetheless, in the spirit of compromise, Defendants offered to respond to the discovery on the day the DFS is due (a month sooner than it would be due if plaintiffs served the discovery pursuant to the applicable deadlines in PTO # 17), and Plaintiffs rejected this proposal. Plaintiffs should not be allowed to upend the established discovery process and deadlines. The Court should deny their requests or, at the very least, adopt Defendants' compromise and extend the deadline for responding to the improperly served discovery until the DFS due date.

**I. PTO # 17 APPLIES AND BARS PLAINTIFF-SPECIFIC DISCOVERY REQUESTS PRIOR TO SUBMISSION OF THE DFS.**

There is no merit to Plaintiffs' argument that PTO # 17 is inapplicable to the Wave 1 case. PTO # 17 expressly provides that "[t]he DFS shall constitute the initial plaintiff-specific discovery of defendants," and that all other plaintiff-specific discovery of Defendants is stayed until the DFS is produced (PTO # 17 ¶ 3(a)). By its terms, it applies to all plaintiffs, and it has never been rescinded. The Court adopted PTO # 17 as part of a litigation-wide discovery plan that allows for the orderly and efficient production of plaintiff-specific information in cases – like those in Ethicon Wave 1 – selected for plaintiff-specific discovery. Plaintiffs point to language in PTO # 17 stating that a DFS need only be completed in "those cases selected as a subgroup (not to exceed 20 cases) from which the final bellwether selection will be made," and argue that it limits the application of PTO # 17 to cases that were part of the "*initial* bellwether subgroup." (Pls.' Opp'n at 2 (emphasis added, internal quotation marks and citation omitted).) These arguments, however, are contrary to the terms of PTO # 17, the history of the litigation and Plaintiffs' own position in other briefing.

As an initial matter, nothing in PTO # 17 states or suggests that the Order's application is limited to the "initial bellwether subgroup," either generally or with respect to the DFS protocol specifically. To the contrary, PTO # 17 expressly states that it governs "all cases" transferred to or filed in the pelvic mesh MDL proceeding. (*See generally* PTO # 17.) Further, the provision Plaintiffs cite merely clarifies that Defendants do not have to create a DFS for *all* MDL cases, only those selected as a potential trial candidate. It does not mean – as Plaintiffs argue – that the Order applied only to the initial bellwether subgroup comprised of twenty cases or less. Thus, the simple fact that Ethicon Wave 1 includes more than 20 plaintiffs does not mean that PTO # 17 cannot apply.[1]

In addition, Plaintiffs' assertion that the "three-year old" PTO # 17 does not "govern discovery in this wave process" (Pls.' Opp'n at 2) is belied by their own argument – made in a brief filed on the same day Plaintiffs submitted their opposition to the instant motion – that PTO # 17 controls discovery with respect to Ethicon Wave 1 cases. Specifically, Plaintiffs argued in their Response to Notice of Videotaped Deposition of Beth Harter that a deposition notice issued by Defendants is beyond the scope of "discovery previously agreed to and ordered in this case, including but not limited to PTO[] 17[.]" (Dkt. No. 29 at 1, *Harter v. Ethicon, Inc.*, No. 2:12-cv-00737, filed Oct. 5, 2015.) Plaintiffs should not be permitted to invoke PTO # 17 when it suits them, while ignoring its bar on plaintiff-specific discovery requests prior to the set date for submission of the DFSs.

---

[1] Notably, even the first bellwether subgroup included *more than* 20 cases, contrary to Plaintiffs' argument. And if Plaintiffs were correct that PTO # 17 is inapplicable, then there would be no order governing the DFS process in the Ethicon Wave 1 cases. PTO # 193 says nothing substantive about DFSs, other than to set a November 19, 2015 date for their submission. By contrast, PTO # 17 defines DFSs, establishes the standards by which DFSs are governed and sets forth the consequences for failure to provide complete information. It cannot have been the Court's intent that none of these provisions apply here.

## II. PLAINTIFFS' DISCOVERY REQUESTS ARE ALSO BARRED UNDER PTO # 193 BECAUSE THEY SEEK INFORMATION DUPLICATIVE OF THE DFS.

Even if the Court were to conclude that PTO # 17 does not apply to the Ethicon Wave 1 cases, Plaintiffs' discovery requests would still be inappropriate because they overwhelmingly seek the very same information contained in the DFS, which PTO # 193 makes clear is not due until November 19, 2015.

PTO # 193 lays out a concrete discovery schedule for the Ethicon Wave 1 Cases. Pursuant to that schedule, Defendants are required to provide DFSs for all 200 cases by November 19, 2015.[2] Compiling DFS information for 200 different plaintiffs simultaneously within that period of time is a significant undertaking that will require a substantial amount of time and effort from Defendants, their counsel and document vendors. Plaintiffs are seeking to unnecessarily and unfairly compound that burden by also forcing Defendants to respond to individual discovery requests that seek much of the same information that the DFSs will provide, thereby distracting Defendants from their efforts to prepare these cases for trial.

In their briefing, Plaintiffs point to a handful of requests served by a single plaintiffs' firm that address social media investigations and other areas not specifically covered by the DFS. (*See* Pls.' Opp'n at 4 n.3.) These requests, however, are the exception – not the rule. By Defendants' calculation, 849 of the 892 interrogatories and requests for production served to date by other plaintiffs' firms seek information that significantly overlaps information that will be provided in the DFS. In addition, the bulk of the remaining interrogatories served by these Plaintiffs prematurely seek information about the identity of Defendants' experts, who are not

---

[2] As Plaintiffs note, PTO # 193 also requires the named plaintiffs to provide Plaintiff Fact Sheets ("PFSs"). However, the burdens of compliance with PTO # 193 disproportionately fall on Defendants. Each plaintiff only needs to submit a PFS in her own individual case. Defendants, by contrast, must assemble information from company records regarding 200 different cases simultaneously,

due to be disclosed until January 2016 pursuant to PTO # 193. Finally, these Plaintiffs have propounded more than 1,000 requests for admission regarding specific cases that Defendants cannot admit or deny until depositions are completed.

Such requests clearly violate the spirit, if not the letter, of PTO # 193 by attempting to circumvent the discovery deadlines set by the Court with respect to these cases. For this reason, too, the Court should order that the requests be withdrawn.

### III. THE FACT THAT PLAINTIFFS HAVE SCHEDULED DEPOSITIONS PRIOR TO THE DFS DEADLINE DOES NOT ENTITLE THEM TO IGNORE IT.

Finally, Plaintiffs attempt to justify their flagrant violation of PTOs # 17 and 193 by arguing that they need plaintiff-specific discovery to adequately prepare for certain named plaintiff and healthcare provider depositions that are scheduled prior to November 19, 2015. (Pls.' Opp'n at 7.) This argument also lacks merit.

For one thing, there is no reason that Plaintiffs should need discovery from Defendants prior to plaintiff depositions, which will be conducted by Defendants and will address facts and information within the named plaintiffs' own knowledge. Further, Plaintiffs are the ones who scheduled the vast majority of healthcare provider depositions slated to go forward prior to the DFS deadline. If Plaintiffs believed that they needed DFS information to adequately prepare for these healthcare provider depositions, they could and should have scheduled them for later dates. Defendants are – as always – willing to meet and confer with Plaintiffs on this issue and attempt to accommodate any discrete requests that Plaintiffs believe are necessary for these depositions. However, the scheduling of the forthcoming depositions does not warrant complete abandonment of the plaintiff-specific discovery schedule set by the Court.

**CONCLUSION**

FOR THESE REASONS, and all of the reasons set forth in Defendants' prior briefing, Defendants respectfully request that the Court order that any case-specific discovery served prior to November 20, 2015 is deemed served on November 20, 2015, and that Defendants are not required to respond until December 21, 2015, consistent with the Federal Rules of Civil Procedure. Alternatively, Defendants respectfully request that the Court allow Defendants to respond to the Requests on the day the DFS responses are due (i.e., November 19, 2015) or permit Defendants to respond on a staggered basis.

ETHICON, INC., ETHICON LLC AND
JOHNSON & JOHNSON


*/s/ David B. Thomas*
David B. Thomas (W. Va. Bar No. 3731)
Thomas Combs & Spann, PLLC
300 Summers Street, Suite 1380
P.O. Box 3824
Charleston, WV 25338-3824
(304) 414-1800

*/s/ Christy D. Jones*
Christy D. Jones
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
(601) 985-4523
christy.jones@butlersnow.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

| | |
|---|---|
| IN RE:  ETHICON, INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327 MDL No. 2327 |
| THIS DOCUMENT RELATES ONLY TO: ETHICON WAVE 1 CASES | **JOSEPH R. GOODWIN U.S. DISTRICT JUDGE** |

## CERTIFICATE OF SERVICE

I, David B. Thomas, certify that on October 6, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ David B. Thomas*
David B. Thomas (W. Va. Bar No. 3731)
Thomas Combs & Spann, PLLC
300 Summers Street, Suite 1380
P.O. Box 3824
Charleston, WV 25338-3824
(304) 414-1800

COUNSEL FOR DEFENDANTS ETHICON, INC., ETHICON LLC, AND JOHNSON & JOHNSON