# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

IN RE: ETHICON, INC.
       PELVIC REPAIR SYSTEMS
       PRODUCT LIABILITY LITIGATION         MDL No. 2327

---------------------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

**PRETRIAL ORDER # 197**
(Defendants' Motion for an Order Regulating Plaintiffs' Counsels' Ex Parte Contacts with Treating Physicians)

Defendants, Johnson & Johnson and Ethicon, Inc. (collectively referred to as "Ethicon") seek an order in this multidistrict litigation ("MDL") that would limit the scope of *ex parte* communications between Plaintiffs' counsel and Plaintiffs' treating physicians to matters related to the physicians' assessment, diagnosis, treatment, and prognosis of Plaintiffs. Ethicon argues that this limitation is necessary to prevent Plaintiffs' counsel from unfairly influencing the testimony of treating physicians. (ECF No. 1707). Plaintiffs have filed a memorandum in opposition to the motion, and Ethicon has replied. (ECF Nos. 1715, 1722). Accordingly, the issues have been fully briefed and are ready for resolution.

## I.    <u>Relevant Background</u>

The instant litigation has been ongoing for several years and involves alleged personal injuries related to Plaintiffs' use of mesh-based products developed, manufactured, marketed, and sold by Ethicon to treat pelvic organ prolapse and stress

1

urinary incontinence. During the pendency of the litigation, Plaintiffs' counsel have exercised their right to conduct *ex parte* conferences with their clients' treating physicians. Ethicon, on the other hand, has not been afforded this luxury in light of privileges, statutes, and case law generally prohibiting such communications. Until recently, the disparity between the parties' *ex parte* access to treating physicians did not raise concerns sufficient to notify the court. However, the amity (at least on this topic) apparently has come to an end.

Ethicon alleges that instead of meeting with treating physicians for the typical purpose of exploring the physicians' knowledge of the relevant treatment issues, and obtaining his/her opinions on patient diagnosis and prognosis, Plaintiffs' counsel are using the meetings to "lobby in favor of Plaintiffs' liability and causation theories." (ECF No. 1707 at 1). According to Ethicon, Plaintiffs' counsel are rehearsing the physicians' answers to scripted questions, biasing the physicians against Ethicon by providing them with cherry-picked documents, and skewing testimony by supplying information that significantly post-dates the Plaintiffs' implantation with an Ethicon product. Ethicon argues that these behaviors constitute improper *ex parte* communications with fact witnesses, which threaten the reliability of witness testimony and undermine the interests of justice. (*Id.* at 1-9).

In response, Plaintiffs assert that this very issue was already addressed in a sister MDL, and the Judge ruled that limitations on Plaintiffs' counsels' *ex parte* contacts with their clients' treating physicians were not appropriate. (ECF No. 1715 at 2). Plaintiffs contend that their physicians are key fact witnesses, not only in regard to their treatment of Plaintiffs, but also on disputed matters, such as the sufficiency of the warnings provided by Ethicon to treating physicians prior to implantation of the mesh products. (*Id.* at 7-8).

Furthermore, Plaintiffs maintain that Ethicon often blames treating physicians for their patients' complications, impugning the level of skill and experience possessed by the physicians when implanting the devices. (*Id.* at 6-7).

Both parties have provided the undersigned with guidance from other courts that have considered the same or a similar issue; however, very little law exists on the topic. Contrary to Plaintiffs' contention, Judge Stanley's decision in the Bard MDL is not controlling as the "law of the case" in this MDL; nevertheless, having consistent decisions on matters that affect all of the pelvic mesh MDLs is certainly advantageous, and that objective plays a role in the determination of Ethicon's motion.

Having fully considered the parties' submissions, the undersigned agrees with Judge Stanley and declines to limit the scope of the topics discussed between Plaintiffs' counsel and Plaintiffs' treating physicians. However, as more fully stated below, the court does find that some of the ground rules implemented by other courts in managing these *ex parte* communications will be helpful in managing similar contacts in this MDL. Therefore, the court grants Ethicon's motion in part, as more fully explained below.

There are several reasons that a limitation on the scope of topics covered in *ex parte* meetings is not necessary or appropriate. First, as Judge Stanley pointed out, there is no statute or rule supporting such a limitation. Certainly, a court has the "inherent authority to control and preserve the integrity of its judicial proceedings." *U.S. ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11-CV-38, 2014 WL 66714, at *4 (E.D. Va. Jan. 6, 2014) (quoting *In re Shell Oil Refinery,* 143 F.R.D. 105, 108–09 (E.D.La.1992). However, "such power should be exercised with restraint and caution because it is not regulated by Congress or the people and is particularly subject to abuse." *Id.* (citing *United States v. Shaffer Equip. Co.,* 11 F.3d 450, 461 (4th Cir.1993)); *see also*

3

*Lahr v. Fulbright & Jaworski, L.L.P.*, No. 3-94-CV-0981-D, 1995 WL 17816334, at *1 (N.D. Tex. Oct. 25, 1995) (holding that a court's inherent authority to regulate the administration of justice must be exercised with restraint and discretion).

Second, limiting Plaintiffs' counsel to discussing only Plaintiffs' care and treatment unfairly restricts counsels' case preparation. "Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows if other appropriate conditions the witness alone may impose are satisfied, e.g., compensation for his time and expertise or payment of reasonable expenses involved, and while the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak." *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) (citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Treating physicians are crucial fact witnesses on a variety of disputed matters, including matters not directly related to the treatment of a specific patient; such as, the physicians' pre-implantation training and experience in using mesh products, their contacts with Ethicon representatives, the nature and adequacy of instructions and warnings provided by Ethicon, and the effect different or additional information may have had on their treatment decisions. Barring extraordinary circumstances, the court should not interfere with a party's legitimate right to collect information pertinent to the claims and defenses and prepare its case for trial. The undersigned recognizes that Ethicon is at a disadvantage in that it is prohibited from engaging in *ex parte* communications with Plaintiffs' treating physicians. Nevertheless, there are disparities in every litigation. The court is hard-pressed to construct a completely level playing field. Moreover, attorneys,

4

as officers of the court, have ethical rules that they must follow, which include a prohibition on *improperly* influencing witnesses. The court must presume that attorneys will abide by their ethical obligations; when they do not, there are sanctions that can be imposed to address the specific malfeasance. However, placing a blanket restriction on every Plaintiff's attorney, which governs his or her communications with every treating physician, is akin to using a sledgehammer to crack a nut. Furthermore, as one of the courts addressing this issue has noted, limitations like the ones proposed by Ethicon are "unworkable ... would be difficult to police and may result in unproductive 'side-litigation' regarding the particulars of the discussions in the unrecorded, ex parte meetings."[1]

Third, Ethicon is not left entirely without recourse. Ethicon's counsel will be able to fully explore at deposition the substance of the contacts between Plaintiffs' counsel and Plaintiffs' treating physicians and may impeach the credibility of the physicians on the basis of influence, bias, or personal interest. Taken as a group, physicians are not known to be especially vulnerable to intimidation or suggestion. They are well-educated, intelligent individuals who, for the most part, are neither new to the litigation arena, nor overly impressed with lawyers. To the contrary, most physicians are suspicious of lawyers; particularly, when it comes to legal actions involving patient care. All of them will have had personal experience with mesh products, and that experience will have already shaped their perceptions. The undersigned closely reviewed the deposition transcripts provided by Ethicon. While it did appear in at least one deposition that Plaintiff's counsel's preparation consisted largely of educating the physician on Plaintiff's theory of the case—rather than collecting information in order to prepare for the physician's

---

[1] *In Re Kugel Mesh Hernia Repair Patch Litigation,* MDL Docket No. 07-1842ML, United States District Court for the District of Rhode Island  *( See* ECF No. 1715-8 at 4).

deposition—in the end, the physician did not seem to be exceptionally influenced by the pre-deposition contacts. Therefore, the court has no reason to believe that Plaintiffs' treating physicians will be particularly susceptible to lobbying by Plaintiffs' counsel. However, if inappropriate "woodshedding" occurs, Ethicon's counsel will have the opportunity to fully demonstrate it to the jury. If it is egregious, Ethicon will have the right to seek sanctions.

Therefore, the court **DENIES** Ethicon's request that Plaintiffs' counsels' *ex parte* communications with treating physicians be limited to "a discussion of the physicians' records, course of treatment, and related matters such as diagnosis and prognosis." (ECF No. 1707 at 18). On the other hand, the undersigned acknowledges that certain ground rules will make undue influence less likely to occur and can be implemented without unduly restricting Plaintiffs' access to their treating physicians. Thus, the court **GRANTS** Ethicon's motion, in part. The court **ORDERS** that the following guidelines shall apply to ***ex parte* contacts**[2] between Plaintiffs' counsel, their agents, employees, or representatives (hereinafter "counsel") and any treating physician, unless the physician has been disclosed as a retained expert witnesses:

1. Counsel shall not provide or show the physician documents containing notations, underlining, or highlighting intended to emphasize portions of the documents.

2. Counsel shall not provide or show medical literature to the treating physician and shall not discuss literature that the physician is not already familiar with on his or her own. He or she is not a retained expert witness and, therefore, should not be asked to review medical literature supplied by counsel. For the same reason, counsel shall

---

[2] These guidelines are not intended to apply to questioning at deposition.

not give, show, or discuss with a treating physician: (a) the testimony of any expert witness; (b) reports, summaries, charts, exhibits, presentations, or compilations prepared by or on behalf of counsel, or prepared by one or more of Plaintiffs' experts. Subsection (b) shall not apply to chronologies or summaries of a plaintiff's medical treatment.

3. Counsel shall not supply to nor discuss with the physicians subject matter, documents, information, and other materials that have already been ruled to be inadmissible at trial.

4. Counsel shall not state or imply that any treating physician who is not already a defendant in the MDL may be joined as a defendant, unless counsel has a solid and good faith factual basis for concluding that the physician will be joined. In addition, counsel shall not state or imply that a treating physician is obligated in some way to meet with counsel prior to deposition.

5. Counsel shall not share or discuss with a treating physician documents or information that pertain to products or product components, which were *not* implanted in the specific patient whose care is at issue.

6. Unless the parties agree otherwise, at least forty-eight hours before a treating physician's deposition, counsel shall provide to Ethicon's attorneys the Bates-stamped numbers (or copies) of any and all documents, other than the plaintiff's medical records, that counsel provided to or discussed with the treating physician during an *ex parte* contact, and which counsel will likely use during the physician's deposition.

The court **DIRECTS** the Clerk to file a copy of this order in 2:12-md-02327 and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:15-cv-13850. In cases subsequently filed in this district, a copy of the most

recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at http://www.wvsd.uscourts.gov.

                                       **ENTERED:** October 13, 2015

_____
Cheryl A. Eifert
United States Magistrate Judge