# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL Nos. 2387, 2327 |
| | ) | THIS DOCUMENT ALSO RELATES |
| Defendant | ) | TO CERTAIN INDIVIDUAL CASES. |
| | ) | SEE FN. 1 BELOW |
| | ) | |
| IN RE ETHICON INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| | ) | |
| Defendant | ) | |

## MOTION FOR JUDICIAL INQUIRY

Pursuant to Southern District of West Virginia Local Rule 83.7, the undersigned counsel, representing Specially Appearing Defendant Analytic Biosurgical Solutions ("ABISS"),[1] regretfully requests that this court [1] receive and consider the letter attached as Exhibit A to this Motion; [2] investigate the incident reported; and [3] evaluate whether disciplinary action may be appropriate against The Potts Law Firm for violation of the West Virginia Rules of

---

[1] Based on a recent PACER review, ABISS is currently named in more than 200 West Virginia MDL cases, including 167 cases that remain "open." See Exhibit B hereto. In 36 of these open cases -- highlighted on the attached document -- ABISS is considered an "active" defendant, i.e., it has not been terminated by adoption of the Court's Master Short-Form Complaint or otherwise. In at least four of the 36 open and active cases, PACER shows the plaintiff as being represented by The Potts Law Firm. The status of the cases naming ABISS varies. In some cases, no attempt at service has been made. In some, plaintiffs have attempted service through various individuals in the United States, but ABISS has disputed the validity of that service. In at least three cases, plaintiffs have actually made service on ABISS in France. In two of these three cases, ABISS moved to dismiss, arguing that it lacked sufficient contacts to support personal jurisdiction. This court agreed, but no final order of judgment has entered, and the court's dismissal orders remain technically subject to reargument or appeal. See Parker v. ABISS, No. 2:12-CV-1744 (S.D.W.Va. July 26, 2013); Crowell v. ABISS, No. 2:12-CV-6072 (S.D.W.Va. July 26, 2013).

Professional Conduct (made applicable to these proceedings by Southern District of West Virginia Local Rule 83.7).

## Legal Standard

Rule 4.2 (the "Rule") states, in relevant part:

*Communication with Persons Represented by Counsel.* In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

The Rule is of great importance to our system of civil justice. It "guarantees fairness in the adversarial system. It prevents unprincipled attorneys from exploiting the disparity in legal skills between attorneys and laypeople. It preserves the integrity of the attorney-client relationship….". *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1084 (S.D. N.Y. 1989). And -- not least -- it serves to reduce the likelihood that "clients will disclose privileged or other information that might harm their interests.'" *Parker v. Pepsi-Cola General Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1009 (N.D. Ill. 2003) (*quoting* ABA Formal Op. 95-396 (1995)); *Meachum v. Outdoor World Corp.*, 171 Misc.2d 354, 360 (1996).[2]

On its face, the conduct of the Potts Law Firm appears to constitute a violation of the Rule. To be sure, the Rule applies only when "the lawyer knows [a person] to be represented by

---

[2]     The Rule is particularly important in circumstances such as these, when a represented party is unsophisticated in legal matters, unfamiliar with his rights and obligations under United States law, and prone -- without the protection afforded by counsel's presence -- to inadvertently reveal to an opposing counsel information that is privileged, confidential, or otherwise protected from disclosure. For this reason, the application of the Rule does not depend on whether a represented person has consented to a particular communication:  in order to communicate with a represented person, an opposing lawyer must first obtain permission of the represented person's lawyer. *See Scott v. Chipotle Mexican Grill, Inc.*, 2014 WL 4852063, at *2 (S.D.N.Y. Sept. 29, 2014); *Parker v. Pepsi-Cola General Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1009 (N.D. Ill. 2003); *United States v. Franklin*, 177 F. Supp. 2d 459, 466 (E.D. Va. 2001); *Shelton v. Hess*, 599 F. Supp. 905, 910-11 (S.D. Tex. 1984). In recent communications to the court, the Potts Law Firm points out that a different plaintiffs' lawyer -- Henry Garrard -- spoke to M. Beraud some years ago: *before* ABISS was involved in these proceedings, and *before* it was represented by counsel. It suggests that Mr. Garrard's contact with ABISS's management, and the failure of ABISS's counsel to object to that contact -- because ABISS was not represented by counsel at the time -- somehow excuses the Potts Law Firm's conduct last month. We are, frankly, at a loss to follow the logic.

-2-

another lawyer in the matter."  Law firms (and lawyers) who are caught violating the Rule often argue that they did not "know," or did not realize, that the party they were approaching was represented.  *See, e.g., Kaiser v. American Tel. & Telegraph*, 2002 WL 1362054 (D. Ariz. 2002). For this reason, as the comments to the Rule make clear, a showing of conscious, willful disregard is not required.   To the contrary: "*actual knowledge [of an opposing party's representation] may be inferred from the circumstances ... [T]he lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious.*"  *See* ABA Model Rule 4.2, Comment 8.  As one court put it:   "A lawyer may not avoid the need to secure consent of counsel by closing her eyes to circumstances that make it obvious that the person to be communicated with is represented in the matter in question."  *Parker*, 249 F. Supp. 2d at 1009;  *see also Meachum*, 171 Misc.2d at 354; *Scott*, 2014 WL 4852063, at *3

Here, the Potts Law Firm is an active member of the Plaintiffs' Steering and Executive Committees in the MDL proceedings before this Court.[3]   It promotes itself as such on its web site and marketing materials.  It is charged, in that capacity, with "initiat[ing], coordinat[ing] and conduct[ing] all pretrial discovery on behalf of plaintiffs *in all actions which are consolidated.*" *See, e.g.*, MDL-2327 Pretrial Order No. 1, p. 9 (emphasis added).   It is charged with

---

[3]      The Potts Law Firm is also a member of the Plaintiffs' Steering Committee in several other MDL proceedings.  These include the MDL-2004 ObTape proceedings in the Northern District of Georgia, where ABISS has occasionally been named -- but never formally served -- and where the undersigned counsel have not found it necessary to file an appearance.  In recent communications, the Potts Law Firm has attempted to distinguish these various proceedings.  It has maintained that the principal reason for Mr. Barfield's trip to Europe was to interview witnesses who might have relevant testimony in the ObTape MDL.  It has maintained that Judge Land, in the ObTape proceedings, was generally aware that the Firm was traveling to Europe for this purpose.  (The Firm's assertions are artfully phrased: there is no representation that Judge Land was told that plaintiffs intended to approach or interview ABISS.)   Even if the Firm's assertions were true, they are beside the point.  As this Court has repeatedly admonished, it is the role of the Plaintiffs' Steering Committees to coordinate *across MDL lines*.  A lawyer who represents multiple plaintiffs, in multiple proceedings, cannot engage in direct communication with a represented party if that communication would be adverse to <u>any</u> of the plaintiffs the counsel represents, in <u>any</u> of the proceedings before these courts.  In any case, the questions Mr. Barfield asked Mr. Beraud, and the information he sought (improperly) to elicit, were not limited to ObTape.  They pertained, and had direct relevance, to the other MDL proceedings as well.

"conduct[ing] all discovery in a coordinated and consolidated manner *on behalf and for the benefit of all plaintiffs*." *Id.*, p.10.  Along with the other members of these Committees, it is required to "maintain adequate files of *all pretrial matters* and have them available." In short, it stands in a special relationship with this Court, under which it is fairly charged with knowing -- not only the facts of the cases it has brought itself -- but the contours of the *entire* MDL litigation, and the various parties and counsel who are involved.

Mr. Barfield is the Managing Partner of the Firm's Houston Office.  He holds a position of substantial responsibility within the Firm.  He has access (presumably) to the Firm's files.  *See Meachum*, 171 Misc.2d at 365.  He can sign on (presumably) to the Firm's PACER account. *Scott*, 2014 WL 4852063, at *3.  He knows (presumably) of the Court's Panel Attorney Service List, which the Firm is charged with "periodically review[ing]," *see* MDL-2327 Pretrial Order No. 1.  He has open communication (presumably) with Derek Potts, the Firm's Managing Partner, who sits on the Plaintiffs' Steering and Executive Committees in these proceedings, and has close access to the other members of those Committees and the Court.[4]   It appears Mr. Barfield did not review any of the Firm's files, or check PACER, or the Court's Attorney List, or confer with Mr. Potts or others, before initiating contact with ABISS's senior management in France.  Had he done so, of course, he would have quickly learned of ABISS's long involvement in these proceedings -- including the several active cases where the Potts Law Firm represents

---

[4]      And, even if Mr. Barfield truly believed that ABISS was unrepresented, there is reason to believe that his conduct with M. Beraud did not conform to Rule 4.3:  "In dealing on behalf of client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested.  When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding."  In this case, Mr. Barfield apparently identified himself to ABISS as a lawyer in the Mentor ObTape proceedings, and suggested that ABISS "was not a target" in those proceedings.  But he failed to mention the larger picture:  that ABISS had been repeatedly targeted by plaintiffs' counsel -- including the Potts Law Firm -- in these West Virginia proceedings, and in other cases involving similar allegations around the country.  *See* Exh. B hereto.

16081112v.1

the plaintiffs and ABISS is a defendant -- ;  and about the undersigned counsel's several prior appearances on behalf of ABISS in the litigation.

In sum -- whether or not Mr. Barfield was personally "aware" that ABISS was represented -- this case appears to fit comfortably within the admonition in *Parker*, 249 F. Supp. 2d at 1009:  "a lawyer may not avoid the need to secure consent of counsel by closing her eyes to circumstances that make it obvious that the person to be communicated with is represented in the matter in question."   At a minimum, the Potts Law Firm's conduct, in intentionally initiating contact with ABISS's senior management, appears reckless in the extreme.   It showed disregard, not only for ABISS and the undersigned counsel, but for the "integrity of the attorney-client relationship," and the overarching interests of fairness and justice that is the purpose of Rule 4.2 to protect, and the responsibilities vested by this Court in the appointed members of the Plaintiffs' Steering and Executive Committees.[5]

### **Request For Relief**

For the foregoing reasons, the undersigned counsel has respectfully determined that it is necessary to file this Motion: seeking judicial notice of the document attached as Exhibit A here-

---

[5]        At least one other attorney (from the Aylstock law firm) appears to have accompanied Mr. Barfield to France, although he was not present for the interview Mr. Barfield conducted with M. Beraud.  The Potts Law Firm asserts that this other attorney was not involved in the Beraud interview, and that no information from the Beraud interview has been shared with him or with any other plaintiffs' counsel.  The Court may, of course, wish to verify this independently by obtaining the relevant individuals' testimony under oath.

16081112v.1

to, and judicial resolution of the issues presented therein.[6]  We are also prepared, on the Court's invitation, to provide a bill of costs reflecting amounts spent to date in investigating and responding to this incident.

October 15, 2015

Respectfully submitted,

WHITE AND WILLIAMS, LLP,

/s/ Eric. B. Hermanson
Eric B. Hermanson (BBO # 560256)
White and Williams LLP
99 Summer Street, Suite 1530
Boston, MA 02110
Tel:  (617) 748-5200
hermansone@whiteandwilliams.com

Counsel for Specially Appearing Defendant
Analytic Biosurgical Solutions

---

[6]     On October 2, 2015, the Potts Law Firm offered to execute "a joint stipulated protective order prohibiting [Mr. Barfield] from disclosing the fact that he had a brief conversation with Mr. Beraud or the nature of the conversation … [and] [2] [to] arrange for a group e-mail blast to all plaintiffs lawyers handling cases in the Mentor OB Tape MDL 2004 informing them of [the undersigned counsel's] representation of ABISS."  This proposal is insufficient in ABISS's view.  While it implicitly acknowledges that an improper contact occurred, and seeks to prevent other law firms *in MDL-2004* from utilizing the fruits of this improper communication, it does not "un-ring the bell":  in other words, it does not prevent Mr. Barfield, or the Potts Law Firm, from knowing, and using against ABISS (or its business partners, Mentor and Coloplast), and having its future strategic decisions informed by,  such information as M. Beraud may have disclosed.  In order to prevent that type of harm, the court may need to consider limiting or even disqualifying the Potts Law Firm from representing plaintiffs in some or all of these proceedings. Finally -- setting aside the question of prejudice to ABISS and others -- the Potts Law Firm's proposal does not address the larger interests Rule 4.2 is designed to protect, including disturbance of the attorney-client relationship, *Papanicolaou*, 720 F. Supp. at 1087, and "the public's interest in the scrupulous administration of justice." *Id.*  As to those points, ABISS believes, the Court has a significant independent interest.  This interest applies regardless of whether the Court ultimately chooses to credit the Potts Law Firm's arguments that M. Beraud "disclosed [no] information not already known," and ABISS's "litigation strategy … would have come out anyway." *Papanicolaou*, 720 F. Supp. at 1082.  As to these broader issues, it is submitted, some involvement by the Court remains necessary, in the exercise of its general supervisory powers, to establish that conduct of this nature is improper and will not be tolerated.

16081112v.1