## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE COLOPLAST PELVIC REPAIR | ) | |
| SYSTEM PRODUCTS LIABILITY | ) | MDL Nos. 2387, 2327 |
| LITIGATION | ) | |
| | ) | |
| IN RE ETHICON INC. PELVIC REPAIR | ) | |
| SYSTEM PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | |
| | ) | |
| Defendants | ) | |

## <u>RESPONSE TO MOTION FOR JUDICIAL INQUIRY</u>

TO THE HONORABLE JOSEPH GOODWIN:

The Potts Law Firm, LLP hereby responds to Analytic Biosurgical Solutions (ABISS)

Motion for Judicial Inquiry (Doc. #1740)[1] filed on October 15, 2015 as follows:

ABISS seeks to have this Court conduct a judicial inquiry into conduct that it alleges may

have violated Rule of Professional Conduct 4.2.  An inquiry in this case is not warranted because,

as set out below, the evidence before the Court conclusively establishes that Rule 4.2 was not

violated.  The evidence shows that (1) the referenced contact between Mr. Barfield and Mr. Beraud

occurred in the context of a separate proceeding involving different claims and facts; (2)

Mr. Barfield did not know Mr. Beraud or ABISS were represented by counsel and, because ABISS

has never been served or appeared in this case, there was no indication that ABISS actually was

represented by counsel; and (3) in the very short and brief meeting, no new information was

---

[1] Highlighting the complicated nature of these MDL proceedings, ABISS apparently inadvertently filed its Motion for Judicial Inquiry in multiple incorrect dockets.  It then properly and promptly withdrew the misfiled motions and refiled this Motion as currently pending before this Court with no explanation as to why it was filing it in MDL 2327.

requested or provided.  As such, the Potts Law Firm respectfully requests that the Motion be denied.

## I.       BACKGROUND FACTS

On August 14, 2015, members of the current MDL 2004 steering committee, including attorney William Barfield, traveled to Paris, France to meet with Dr. Catherine Ortuno and Nathalie Gremaud in connection with the Mentor ObTape litigation, which is currently pending before the Honorable Clay D. Land in the Middle District of Georgia.[2]  Both Dr. Ortuno and Ms. Gremaud are anticipated to be key witnesses in the Mentor ObTape trial, which is currently set for November 30, 2015.[3]  *See* Declaration of Mr. William Barfield, Esq., attached as exhibit A, ¶ 2 (Barfield Declaration).

At that meeting, Dr. Catherine Ortuno phoned Dr. Emmanuel Delorme to provide an introduction to the Potts Law Firm.  The introduction was important because Dr. Delorme introduced the Transobturator (TOT) procedure in France in 2001, assisted with the design of the Mentor ObTape product, and was a design consultant for Mentor.[4]  In 2012, Dr. Delorme co-authored an article in which the authors concluded that the "non-woven" mesh material used to construct the Mentor ObTape sling product was abandoned in 2004.[5] Dr. Delorme resides in the southern region of France.  Mr. Barfield did not speak to Dr. Delorme at that time but Dr. Delorme

---

[2] Coloplast subsequently purchased Mentor Worldwide, LLC in 2006. This purchase did not include the Mentor ObTape sling product.

[3] At the time of this meeting, the trial was set for October 19, 2015.

[4] Dr. Delorme has no formal affiliation with ABISS. He was not, and is still not, an employee of ABISS.

[5] Delorme, Emmanuel, et al. "Prospective Study on 185 females with urinary incontinence treated by an outside-in transobturator suburethral sling." 31 *Pelviperineology* 18-23 (2012)

subsequently agreed to speak to the attorneys at some point in the future.  *See* Barfield Declaration, ¶ 3.

On September 4-10, 2015, Mr. Barfield and others returned to France to meet with Dr. Ortuno and Ms. Gremaud.  At that time, Mr. Barfield was attempting to schedule a meeting with Dr. Delorme, but he was out of the country and it was unclear whether he would return before Mr. Barfield's scheduled departure.  On September 9, 2015, Mr. Barfield finally made contact with Dr. Delorme when Dr. Delorme returned to France from Istanbul, Turkey.  While Mr. Barfield was able to speak to Dr. Delorme by phone, he was unable to clearly understand him due to a language barrier.  Also, Mr. Barfield was uncertain whether Dr. Delorme fully understood the questions asked over the phone.  Mr. Barfield explained that he was scheduled to leave France the next day but was willing to extend his trip by one day so he could travel to see Dr. Delorme in person.  Due to the language barrier and the possible importance of the witness, Mr. Barfield felt it was important to visit face-to-face.  *See* Barfield Declaration, ¶ 4.

On September 10, 2015, Mr. Barfield traveled to see Dr. Delorme and met with him at or around 9:00 a.m. - 10:00 a.m., that morning.  The meeting took place at Dr. Delorme's clinic.  It lasted about two hours and their conversation centered around the Mentor ObTape sling product, including the issue of the Safety Data Sheet (SDS) for the polypropylene used to make the mesh material, which directly related to the Mentor ObTape litigation.  Dr. Delorme insisted that Jean-Marc Beraud, who resided in the Lyon area of France, might be able to answer questions about the SDS and would also know who Mr. Barfield could contact at MicroVal, as this was the company who made the mesh product from the polypropylene resins.  Dr. Delorme indicated that MicroVal would likely have the SDS which accompanied the polypropylene resins it purchased from the resin supplier to manufacture the mesh material.  *See* Barfield Declaration, ¶ 5.

3

Dr. Delorme stated that in the 2001-2004 time-frame, ABISS was simply a research and development company but "Jean-Marc" would be the person to visit with on the SDS topic. At the very end of the conversation, Dr. Delorme offered to call "Jean-Marc" to see if he could answer Mr. Barfield's questions about the SDS and MicroVal. Dr. Delorme had already explained to Mr. Barfield that he had previously reached out to "Jean-Marc" to let him know Mr. Barfield might possibly return to France and, according to Dr. Delorme, Mr. Beraud agreed to visit with Mr. Barfield if needed and was not opposed to such a meeting. *See* Barfield Declaration, ¶ 6.

The meeting ended with Dr. Delorme calling Mr. Beraud's cell phone and getting his voicemail. Dr. Delorme left a message and asked that Mr. Barfield travel to see Mr. Beraud and he would continue to try and reach him while Mr. Barfield traveled to Lyon by train (an approximate two hour trip). *See* Barfield Declaration, ¶ 7.

At approximately 2:00 p.m. on September 10, 2015, Mr. Barfield arrived at the address he had been given by Dr. Delorme. Mr. Barfield entered the lobby and Mr. Beraud was present and speaking with a woman in the reception area. Mr. Barfield introduced himself and Mr. Beraud explained he only had ten minutes to give to Mr. Barfield. Mr. Beraud finished his conversation with the woman and took Mr. Barfield to his office. Mr. Beraud then immediately told Mr. Barfield about the day-long meeting he had previously had with attorney Henry Garrard and voiced several complaints about what transpired after the meeting with Mr. Garrard. Mr. Beraud stated he knew Mr. Garrard was the MDL 2004 Plaintiffs' lead counsel and that Mr. Barfield represented Plaintiffs similar to Mr. Garrard. *See* Barfield Declaration, ¶ 8.

Mr. Beraud showed Mr. Barfield a one page piece from a scientific article which, by his own statements, explained that the SDS wording was simply written for liability purposes and did

4

not actually mean much (the warnings contained within the SDS).  Mr. Barfield did not read the page as he was occupied listening to Mr. Beraud.  At this point, Mr. Barfield assumed Mr. Beraud had spoken with Dr. Delorme as Mr. Beraud did not appear to be surprised by Mr. Barfield's arrival and Mr. Beraud had the scientific article ready when he walked into his office. After making the statement about Mr. Garrard, Mr. Beraud mentioned that he had originally thought about hiring a lawyer to be present for the current meeting but decided against it as he knew he was not going to go into any specifics about ABISS or any other entity.   *See* Barfield Declaration, ¶ 9.

Mr. Beraud asked if Mr. Barfield had any questions and Mr. Barfield asked him about the SDS and who he might contact at MicroVal to obtain a copy of the document (the SDS for the resins used to make the Mentor ObTape sling product).  Mr. Beraud stated he did not know, and the meeting then ended.  The entire meeting was very short and brief in nature.  At some point in this brief meeting, Mr. Barfield gave Mr. Beraud his business card for any questions in the future. *See* Barfield Declaration, ¶ 10.

The foregoing is the sole interaction between Mr. Barfield and Mr. Beraud.  Mr. Barfield was "following a lead" on evidence potentially relevant to the Mentor Ob Tape litigation.  At no time during this meeting did Mr. Beraud convey any information concerning ABISS or any issues raised in MDL 2387 or otherwise provide confidential information.   *See* Barfield Declaration, ¶ 11.

Mr. Barfield was shocked and surprised at receiving the September 16, 2015 letter from Mr. Hermanson.  At no time during the brief meeting with Mr. Beraud was there any indication that he was represented by counsel, nor was there any indication ABISS was implicated in the Mentor ObTape litigation.  Mr. Barfield was not aware of ABISS having answered or appeared in

any MDL litigation and had no reason to think that it had (as was accurate).  *See* Barfield Declaration, ¶ 13.

The hearsay letter submitted as Exhibit A to the Motion for Judicial Inquiry accuses Mr. Barfield of serious misconduct—misconduct that did not occur.  This firm can only surmise that Mr. Beraud's lack of command of the English language may have confused him into conflating the prior meeting with Mr. Garrard with the brief meeting with Mr. Barfield.  It may also be that attorney Hermanson misunderstood that there had been a prior meeting and thought that information previously conveyed by Mr. Beraud to Mr. Garrard (potentially the information identified in their Exhibit A) was also conveyed to Mr. Barfield on September 10, 2015.  That simply did not occur, as established by Mr. Barfield's Declaration.  *See* Barfield Declaration ¶ 14.

Because Mr. Barfield did not discuss any issues pending in MDL 2387 and limited his few questions to issues arising in Mentor ObTape 2004 MDL (in which ABISS has not been served and thus has not appeared) and also because Mr. Barfield did not know Mr. Beraud or ABISS was represented by counsel in any matter at all, there was no violation of Rule 4.2.

## II.     STANDARD OF REVIEW

ABISS alleges a blanket violation of Rule 4.2.[6]  While the Motion sets out an accurate legal standard, "Rule 4.2 does not erect an absolute ban on communication with a represented person." *In re Egbert*, 184 F.R.D. 26, 30 (D. R.I. 1999).  "Because the terms of the Rule are 'vague,' federal courts have cautioned that it 'should be construed narrowly in the interests of providing fair notice

---

[6] Rule 4.2 is substantially the same in the West Virginia Rules of Professional Conduct and the ABA Model Rules of Professional Conduct. *Kay Co., LLC v. Equitable Prod. Co*., 246 F.R.D. 260, 263-64 (S.D. W.Va. 2007).
To facilitate review, the entire text of Rule 4.2 is set out again:
"In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

to those affected by the Rule.'" *Securities and Exchange Commission v. Lines,* 669 F.Supp.2d 460, 464 (S.D.N.Y. 2009), *citing Grievance Comm. v. Simels*, 48 F.3d 640, 650 (2nd Cir. 1995). "Contacts between lawyers and 'represented parties' raise some of the thornier issues in the area of legal ethics." *Weibrecht v. Southern Ill. Transfer, Inc*., 241 F.3d 875, 877 (7th Cir. 2001).

"Although consisting of a single sentence, the rule contains several phrases which narrow its application significantly." *In re Egbert,* 184 F.R.D. at 30. "The very first modifying phrase, 'in representing a client,' limits the prohibition to attempts by the offending lawyer, in representing his or her own client, to drive wedges between other lawyers and clients." *Id.* The second phrase provides that the only communication that is prohibited is that concerning "the subject of the representation." *Jackson v. Bloomberg, L.P*., 13-CV-2001 (JPO), 2015 U.S. Dist. LEXIS 52581 at *4 (S.D.N.Y. Apr. 22, 2015) (dicta); *see also Miller v. Food Concepts Int'l, LP,* 2:13-CV-00124 (Miller), 2015 U.S. Dist. LEXIS 141147 at *34-35 (S.D. Ohio Oct. 16, 2015) (denying Motion to Disqualify based on Plaintiffs' counsel's *ex parte* contact with management employee of Defendant). The final modifying phrase relevant here is "with a person the lawyer **knows** to be represented by another lawyer in the matter…" *Windt v. Shepard's/McGraw-Hill, Inc*., NO. 96-1527, 1997 U.S. Dist. LEXIS 3870 at *4-5 (E.D. Pa. Mar. 27, 1997)(emphasis added)(where attorney did not know person had retained defense attorney, there was no violation of Rule 4.2). Because the communications here did not concern the subject of the representation and Mr. Barfield did not know ABISS was represented by counsel, a formal judicial inquiry is unnecessary and unwarranted.

### III.    ANALYSIS

1.  <u>The Communication Did Not Concern the Subject Matter of a Suit Involving ABISS</u>.

Comment 4 to Rule 4.2 states:  "This Rule does not prohibit communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation.  For example, the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with non-lawyer representatives of the other regarding a separate matter."

In very brief summary, the main issue in the Mentor ObTape litigation specifically involves the defective nature of the Mentor ObTape sling product only.  In contrast, the main issue in the MD-2387 litigation is the defective nature of multiple Coloplast products, all of which do not include the Mentor ObTape sling.  *See* Barfield Declaration, ¶ 12.

Significantly, attorney Hermanson concedes in footnote four of his Motion for Judicial Inquiry, that Mr. Barfield identified himself to ABISS as a lawyer for the Mentor ObTape proceedings only.  Due to its objections to jurisdiction, ABISS has never asserted a substantive defense to any claims that may have been asserted against it.[7]  To date, there is no indication by attorney Hermanson or any document which illustrates that ABISS is represented in the Mentor ObTape litigation taking place in MDL 2004.

Rule 4.2 prohibits *ex parte* communications "with a person the lawyer knows to be represented by another lawyer **in the matter**."  *State Farm Mut. Auto. Ins. Co. v. Sanders*, 975 F.

---

[7] As is established in Mr. Barfield's Declaration, on September 10, 2015, Mr. Barfield was in France interviewing potential witnesses and gathering information for the upcoming trial in Mentor ObTape.  In footnote three of the Motion, counsel concedes that ABISS has never been served in that case and "the undersigned counsel has not found it necessary to file an appearance."

Supp. 2d 509, 512 (E.D. Pa. 2013) (emphasis in original).  Thus, a lawyer may communicate directly with represented persons about subjects other than the subject of the representation without violating Rule 4.2.  *See, e.g., Scanlan v. Eisenberg*, 893 F. Supp. 2d 945, 949-51 (N.D. Ill. 2012).

Mr. Barfield contacted Mr. Beraud to follow up on information Dr. Delorme thought Mr. Beraud might have related to the Mentor ObTape proceeding, not MDL 2387 or any other MDL currently pending before this Court.  It was Mr. Barfield's understanding that information had previously been provided to Mr. Garrard without the witness's reference to counsel, and Mr. Barfield merely sought potential additional information to support issues that he anticipated would arise in the fast-approaching Mentor ObTape trial.

In analogous cases, no violation has been shown.  *See Grievance Comm. for the Southern District of New York v. Simels*, 48 F.3d 640, 649-50 (2nd Cir. 1995) (holding that the lawyer for a criminal defendant was not barred from interviewing, without consent of his lawyer, a potential witness against his client in one matter, who was also a potential co-defendant of his client in another matter, since in neither case was this individual a "party" in the same "matter" as the lawyer's client; *State Farm v. Sanders*, 975 F. Supp. 2d at 512 (holding State Farm could engage in *ex parte* communications with current and former clients because the clients were not represented by the law firm in the pending insurance fraud matter); *Griffin-El v. Beard*, CA No. 06-2719, 2009 U.S. Dist. LEXIS 81028 at *19-23, 2009 WL 2929802 (E.D. Pa. Sept. 8, 2009) (finding because contacted person was not represented in current matter, the fact that he was represented in different proceeding was not a violation of Rule 4.2).  Based on the foregoing, the minimal questions propounded to Mr. Beraud concerning the Mentor ObTape litigation do not implicate Rule 4.2.

2. <u>Mr. Barfield Did Not Know ABISS Was Represented</u>

The term "knows" is defined in the Terminology section of the Model Rules as follows: "'Knowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question. While it is true that a person's knowledge may be inferred from the circumstances, "know" does not mean "reasonably should know," which is a defined term in the Rules that does not appear in the text of Rule 4.2 (while it does appear in Rule 4.3, "Dealing with Unrepresented Person."[8]). As such, its absence from 4.2 indicates a conscious rejection of the term "reasonably should know" when evaluating "knowledge." Rather, unless counsel "closed eyes to the obvious," a claim of lack of knowledge establishes that Rule 4.2 was not violated. *See Velez v. Novartis Pharm. Corp.,* No. 04 Civ. 9194 (CM), 2010 U.S. Dist. LEXIS 7775 at *9, 2010 WL 339098 (S.D.N.Y Jan 26, 2010) (finding even if *ex parte* defendant employee was, in fact, a Class member, there is no indication that defense counsel knew or thought she was a Class member when they contacted her. "Nor, in a case involving some 5,600 Class members, does the Court have any reason to believe that defense counsel was 'ignoring the obvious' in assuming she was not a Class member.").

Mr. Barfield's Declaration establishes that he did not have actual knowledge that ABISS was represented, and the circumstances gave no indication that it was, in fact, represented. Knowledge may not be inferred under these circumstances because ABISS never put itself in a situation where the fact that it had legal representation (in just a few cases out of hundreds) would be noted. While ABISS may have been "named" in more than 200 MDL cases, it has never filed

---

[8] Rule 4.3 provides: "Dealing with Unrepresented Person.
In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows *or reasonably should know* that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding."

an answer in any of them and it has been procedurally dismissed many, many times without answering or otherwise responding to the suit.

Although Mr. Barfield was not aware of it at the time, in the very few cases in which service on ABISS was effected in MDL 2387, ABISS has consistently taken the position that it is not subject to the jurisdiction of this Court or any other court in the United States.  Indeed, upon information and belief, ABISS has never been required to file an answer in *any* MDL litigation, much less the current litigation.  Given the massive scope of MDL transvaginal litigation and the status of ABISS as a non-served and non-answering defendant, it is not reasonable to say that Mr. Barfield closed his eyes to the representation.  Indeed, a search of the Potts Law Firm files would have revealed no evidence of representation whatsoever. A manual search of PACER in MDL 2004 would have revealed no evidence of representation whatsoever in the nearly 7 year history of that MDL. Only a manual search of the tens of thousands of cases on file in the United States District Court for the Southern District of West Virginia might have potentially have revealed the existence of a handful of cases in MDL 2387 where cases involving other products had been dismissed by Mr. Hermanson without Answer.

3.   <u>Mr. Beraud Did Not Reveal Any Confidential Information</u>

As set out more fully in Mr. Barfield's Declaration, the contact between Mr. Barfield and Mr. Beraud was short and brief.  During that time, the largest portion of the conversation consisted of Mr. Beraud's diatribe against what he perceived to be past misrepresentations by a different attorney (Mr. Henry Garrard) concerning information voluntarily conveyed during Mr. Beraud's prior meeting with Mr. Garrard.  No information of any value was conveyed to Mr. Barfield during this brief meeting and none will be used at any subsequent trial.  In an effort to ameliorate the

perceived concerns, the undersigned offered various remedies, including a Joint Stipulated Protective Order.  This was not meant as an admission of a violation of Rule 4.2 but rather as a means of alleviating any perceived prejudice without the need for the Court's intervention.[9]

4.  <u>The Remedy ABISS Subtly Suggests (Potential Disqualification) is Clearly Not Warranted</u>

In Footnote 6, ABISS asserts that the alleged disclosure of information might justify "limiting or even disqualifying the Potts Law Firm…"  Such a remedy is not warranted even if improper conduct or a technical violation of Rule 4.2 had occurred.  Attorney disqualification "is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982).   Rather, in such a situation, the most appropriate remedy, if any, is the exclusion of improperly obtained information.  *See, e.g., United States v. Koerber,* 966 F. Supp. 2d 1207, 1245 (D. Utah 2013) (finding violation of 4.2 and excluding evidence); *Roe v. Karval Sch. Dist. Re23*, No. 12-cv-00239-WYD-KLM; 2013 U.S. Dist. LEXIS 52952 at *10-11, 2013 WL 1509126 (D. Colo. Apr. 12, 2013) (declining to disqualify counsel and excluding evidence obtained in violation of Rule 4.2); *Richards v. Holsum Bakery, Inc.*, No. CV09-00418-PHX-MHM, 2009 U.S. Dist. LEXIS 109337 at *17-21, 2009 WL 3740725 (D. Ariz. Nov. 5, 2009)(same); *McClelland v. Blazin' Wings, Inc.*, 675 F. Supp. 2d 1074, 1081 (D. Colo. 2009)(excluding evidence); *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147, 1149 (D. S.D. 2001)(unauthorized contact justified exclusion of evidence and Court declined to award additional sanctions), *aff'd*, 347 F.3d 693 (8th Cir. 2003).

---

[9] Counsel notes that during negotiations attempting to resolve this issue, counsel for ABISS offered to make the issue "go away" if members of the Potts Law Firm used their influence to encourage attorneys to dismiss current filed cases and not further pursue ABISS

"If a party is found to have violated Rule 4.2, a court may exercise its discretion to exclude the resulting statements from evidence." *S.E.C. v. Lines*, 669 F. Supp. 2d 460, 463-64 (S.D.N.Y. 2009) (*citing United States v. Thompson*, 35 F.3d 100, 104 (2d Cir. 1994)); *see also Univ. Patents, Inc. v. Kligman*, 737 F. Supp. 325, 330 (E.D. Pa. 1990) (excluding evidence upon finding that counsel engaged in *ex parte* communications that did not comply with Rule 4.2).   Nevertheless, while exclusion of evidence is within "the arsenal of remedies available to district judges confronted with ethical violations," district courts "should exercise this discretion cautiously." *United States v. Hammad*, 858 F.2d 834, 840 (2nd Cir 1988); *see also Lines*, 669 F. Supp. 2d at 464-65.

"If [counsel] violated ethical standards by communicating with a party he knew was represented by another lawyer…the sanction, absent some serious prejudice to the witness or taint to the trial, should be disciplinary action, not a limitation of the cross-examination." *United States v. Dennis*, 843 F.2d 652, 657 (2nd Cir. 1988).  "The business of the Court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it." *Id.*  Additionally, to suggest disqualification or limitation to practice in MDLS 2387 and/or 2327 based upon acts that occurred solely related to MDL 2004 and information obtained about MDL 2004 is also not reasonable on its face.

## IV.    CONCLUSION

A judicial inquiry in this case is not warranted because the brief meeting between Mr. Barfield and Mr. Beraud occurred in a separate proceeding involving different claims and facts; Mr. Barfield did not know ABISS was represented by counsel in any matter, let alone MDL 2004; and there was no information before him to indicate that it may have been represented by

counsel in this case.  Finally, even if minimal improper contact occurred (which counsel strenuously denies), the appropriate remedy is exclusion of the evidence.  Because no such evidence was obtained, there is nothing to exclude.

Based on the foregoing, counsel respectfully requests that the Court deny the Motion for Judicial Inquiry.

Respectfully submitted,

/s/ *Derek H. Potts*
Derek H. Potts
Email: dpotts@potts-law.com
William H. Barfield
Email:  wbarfield@potts-law.com
The Potts Law Firm, LLP
100 Waugh Dr, Suite 350
Houston, Texas 77007
713-963-8881 *Telephone*
713-583-5388 *Facsimile*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ *Derek H. Potts*
Derek H. Potts

14