# EXHIBIT A

STATE OF TEXAS §

HARRIS COUNTY §

Before me, the undersigned notary, on this day personally appeared William H. Barfield, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

1. "My name is William H. Barfield, and I am competent to make this Declaration. The facts stated in this Declaration are within my personal knowledge and are true and correct.

2. I am a partner in the Potts Law Firm, LLP, which is a member of the current MDL steering committee. On August 14, 2015, members of that steering committee, including myself, traveled to Paris, France to meet with Dr. Catherine Ortuno and Nathalie Gremaud in connection with the Mentor ObTape litigation currently pending before the Honorable Clay D. Land in the Middle District of Georgia. Both Dr. Ortuno and Ms. Gremaud are anticipated to be key witnesses in the Mentor ObTape case, which is currently set for trial on November 30, 2015.

3. At that meeting, Dr. Catherine Ortuno phoned Dr. Emmanuel Delorme to provide an introduction for the Potts Law Firm. The introduction was important because Dr. Delorme introduced the Transobturator (TOT) procedure in France in 2001, assisted with the design of the Mentor ObTape product, and was a design consultant for Mentor. In 2012, Dr. Delorme co-authored an article in which the authors concluded that the "non-woven"

1

mesh material used to construct the Mentor ObTape sling product was abandoned in 2004.[1] Dr. Delorme resides in the southern region of France. I did not speak to Dr. Delorme at that time but Dr. Delorme subsequently agreed to speak to the attorneys at some point in the future.

4. On September 4-10, 2015, I returned to France to meet with Dr. Ortuno and Ms. Gremaud. At that time, I was attempting to schedule a meeting with Dr. Delorme, but he was out of the country and it was unclear whether he would return before my scheduled departure. On September 9, 2015, I finally made contact with Dr. Delorme when Dr. Delorme returned to France from Istanbul, Turkey. While I was able to speak to Dr. Delorme by phone, I was unable to clearly understand him due to a language barrier. Also, I was uncertain whether Dr. Delorme fully understood the questions I asked over the phone. I explained that I was scheduled to leave France the next day but was willing to extend my trip by one day so I could travel to see Dr. Delorme in person. Due to the language barrier and the possible importance of the witness, I felt it was important to visit face-to-face.

5. On September 10, 2015, I traveled to see Dr. Delorme and met him at or around 9:00 a.m. - 10:00 a.m., that morning. The meeting took place at Dr. Delorme's clinic. It lasted about two hours and our conversation centered around the Mentor ObTape sling product, including the issue of the Safety Data Sheet (SDS) for the polypropylene used to make the mesh material, which directly related to the Mentor ObTape litigation. Dr. Delorme insisted that Jean-Marc Beraud, who resided in the Lyon area of France, might be able to answer my questions about the SDS and would also know who I could contact at MicroVal (as this was the company who made the mesh product from the polypropylene resins). Dr.

---

[1] Delorme, Emmanuel, et al. "Prospective Study on 185 females with urinary incontinence treated by an outside-in transobturator suburethral sling." 31 *Pelviperineology* 18-23 (2012)

Delorme indicated that MicroVal would likely have the SDS which accompanied the polypropylene resins it purchased from the resin supplier to manufacture the mesh material.

6. Dr. Delorme stated that in the 2001-2004 time-frame, ABISS was simply a research and development company but "Jean-Marc" would be the person to visit with on the SDS topic. At the very end of the conversation, Dr. Delorme offered to call "Jean-Marc" to see if he could answer my questions about the SDS and MicroVal. Dr. Delorme had already explained to me that he had previously reached out to "Jean-Marc" to let him know I might possibly return to France and, according to Dr. Delorme, Mr. Beraud agreed to visit with me if needed and was not opposed to such a meeting.

7. The meeting ended with Dr. Delorme calling Mr. Beraud's cell phone and getting his voicemail. Dr. Delorme left a message and asked that I travel to see Mr. Beraud and he would continue to try and reach him while I traveled to Lyon by train (an approximate two hour trip).

8. At approximately 2:00 p.m. on September 10, 2015, I arrived at the address I had been given by Dr. Delorme. I entered the lobby and Mr. Beraud was present and speaking with a woman in the reception area. I introduced myself and Mr. Beraud explained he only had ten minutes to give me. Mr. Beraud finished his conversation with the woman and took me to his office. Mr. Beraud then immediately told me about the day-long meeting he had previously had with Henry Garrard and voiced several complaints about what transpired after the meeting with Mr. Garrard. Mr. Beraud stated he knew Mr. Garrard was the MDL 2004 Plaintiffs' lead counsel and that I represented Plaintiffs similar to Mr. Garrard.

9. Mr. Beraud showed me a one page piece from a scientific article which, by his own statements, explained that the SDS wording was simply written for liability purposes and

3

did not actually mean much (the warnings contained within the SDS). I did not read the page as I was occupied listening to Mr. Beraud. At this point, I assumed Mr. Beraud had spoken with Dr. Delorme, as Mr. Beraud did not appear to be surprised by my arrival and Mr. Beraud had the scientific article ready when we walked into his office. After making the statement about Mr. Garrard, Mr. Beraud mentioned that he had originally thought about hiring a lawyer to be present for the current meeting but decided against it as he knew he was not going to go into any specifics about ABISS or any other entity.

10. Mr. Beraud asked if I had any questions and I asked him about the SDS and who I might contact at MicroVal to obtain a copy of the document (the SDS for the resins used to make the Mentor ObTape sling product). Mr. Beraud stated he did not know who to contact, and the meeting then ended. The entire meeting was very short and brief in nature. At some point in this brief meeting, I gave Mr. Beraud my business card for any questions in the future.

11. The foregoing is the sole interaction between myself and Mr. Beraud. I was "following a lead" on evidence potentially relevant to the Mentor Ob Tape litigation. At no time during this meeting did Mr. Beraud convey any information concerning ABISS or any issues raised in MDL 2387 or otherwise provide confidential information.

12. It is my belief that the main issue in the Mentor ObTape litigation specifically involves the defective nature of the Mentor ObTape sling product only. In contrast, the main issue in the MD-2387 litigation is the defective nature of multiple Coloplast products, all of which do not include the Mentor ObTape sling.

13. I was shocked and surprised at receiving the September 16, 2015 letter from Mr. Hermanson. At no time during the brief meeting with Mr. Beraud was there any

4

indication that he was represented by counsel, nor was there any indication ABISS was implicated in the Mentor ObTape litigation. I was not aware of ABISS having answered or appeared in any MDL litigation and had no reason to think that it had.

14. The letter submitted as Exhibit A to the Motion for Judicial Inquiry accuses me of serious misconduct—misconduct that did not occur. I can only surmise that Mr. Beraud's lack of command of the English language may have confused him into conflating the prior meeting with Mr. Garrard into the brief meeting with me. It may also be that attorney Hermanson misunderstood that there had been a prior meeting and thought that information previously conveyed to Mr. Garrard (potentially the information identified in their Exhibit A) was also conveyed to me on September 10, 2015. That simply did not occur.

15. I did not discuss any issues pending in MDL 2387 and limited my few questions to issues arising in the Mentor ObTape 2004 MDL, in which ABISS has not been served and thus has not appeared. On September 10, 2015, I did not know Mr. Beraud or ABISS was represented by counsel in any matter at all and had no information indicating that it was represented."

*William H. Barfield*

SWORN TO and SUBSCRIBED before me by William Barfield on October 28th, 2015.

Notary Public in and for
the State of Texas

LINDA SCHRECKENBACH
My Commission Expires
October 30, 2016

5