Bank, 410 Pa. Super. 199; 599 A.2d 673, 681 (1991) (involving value of a used airplane), because it was not established whether the ads reflected "asking price" or "fair market value."

In Nyce v. Tyson, 18 Pa. D. &C. 91 (C.P. Montgomery 1932), the court noted that "[t]he use of the 'Red Book' by automobile dealers is a matter of such general knowledge as to be almost a subject of judicial notice. Everyone who has attempted to trade in a second-hand automobile, and that includes most of us, is familiar with that red-covered volume which the dealer consults before he places a value on the car. Books of this general character, such as commercial lists, registers and reports, have been admitted by the court as exceptions to the hearsay rule, on the grounds of necessity or the circumstantial guaranty of their trustworthiness." The court added that "the general rule appears to be that such records as the 'Red Book' are accepted as evidence of past events, or of matters susceptible of exact ascertainment, if it is shown that the work was prepared by one having direct acquaintance with the subject matter, that it was intended to be publicly circulated and consulted by persons interested and informed, that it has been tested by use and found by experience to be trustworthy and actually relied upon as a basis of transactions in trade." The specific evidence offered in that case was rejected because there was no evidence to show that the books offered were relied on to establish the fact at issue—what model year a car was considered to be.

Information must be public and published rather than private to qualify under this rule. See Bounomo v. United Distiller's Co., 77 Pa. Super. 113, 118 (1921) ("Not having the publications which were excluded by the court before us we are unable to state whether they were standard daily market quotations such as under certain circumstances are admissible in evidence or merely private price lists which are not admissible").

Moreover, relevance must still be established; for example, when used to establish the price of an item, the report must be as to a comparable item. See Edson v. Magee, 43 Pa. Super. 297, 302 (1910) ("The offer of the market report was properly rejected. It appeared that the reports of September sales related to fresh butter and that which the defendants bought was of a different quality, known in the market as "June butter." The price of one kind would not establish the value of the other and for this reason the reports were not competent if otherwise unobjectionable."). See also Di Giacomo v. Pennsylvania R. Co., 87 Pa. D. &C. 182 (C.P. Phila. 1953) ("offered the market report for May 2nd in evidence which showed that best California lettuce was at $5.50 per crate, poorer $2 to $2.50 and that four dozen ordinary to fair sold at $2.75 to $3. ... This will not help plaintiff, for there is not a scintilla of testimony that would enable a jury to even make a reasonable guess into what classification any number of these crates would fall, how many fair and how many

poor; or as the price for fair and poor varied, due presumably to the quality in particular crates, how much would have been realized on those grades").

Note, however, that judicial notice should not be taken of values set out in such compilations. See Savoy v. Beneficial Consumer Discount Co., 503 Pa. 74, 79; 468 A.2d 465, 468 (1983), holding that it was error for the trial court to accept the value of a vehicle as published in the Redbook, published by National Market Reports, Inc. The Court held that judicial notice is limited to those facts that are incontestable and that "[t]he value ... of a given automobile at a particular time, when, as in the present case, there has been admitted no evidence as to its condition, is not an incontestable fact or a matter of common knowledge. In the absence of information regarding a vehicle's condition, there is no basis for comparison of its value with values of vehicles described in Redbook listings."

Judicial notice of life expectancy tables is specifically permitted. See e.g. Updyke v. BP Oil Co., 717 A.2d 546 (Pa. Super. 1998).

## [803](18)   STATEMENTS IN LEARNED TREATISES, PERIODICALS, OR PAMPHLETS. [Not Adopted]

### 2013 Comment of the Committee on Rules of Evidence

Pennsylvania has not adopted F.R.E. 803(18). Pennsylvania does not recognize an exception to the hearsay rule for learned treatises. See Majdic v. Cincinnati Machine Co., 370 Pa. Super. 611, 537 A.2d 334 (1988).

Regarding the permissible uses of learned treatises under Pennsylvania law, see Aldridge v. Edmunds, 561 Pa. 323, 750 A.2d 292 (Pa. 2000).

### COMMENT

1. Definition and Scope.
2. Federal Rule Distinguished.
3. Learned Treatises Are Inadmissible Hearsay.
4. Authentication of a Learned Treatise.
5. Basis of Expert's Testimony.
6. Impeachment of Expert Witness.
   a. Qualifications.
   b. Opinions.
   c. Biases.
   d. Proper questions.
   e. Redirect examination.

**1. Definition and Scope.** A learned treatise is any textbook, published article, periodical or adopted technical standard which is accepted as authoritative by a properly qualified expert. It is a systematic exposition in writing that includes methodical discussion of facts and principles. Commonwealth v. Jackson, 401 Pa. Super. 258, 265; 585 A.2d 36, 39; app. denied 528 Pa. 608; 596 A.2d 155 (1991) (a commercial publication abstracting scientific data is not a learned treatise). A study conducted according to an accepted or explained methodology may constitute a learned treatise. An unpublished paper delivered at a conference is also a learned treatise. Jones v. Constantino, 429 Pa. Super. 73, 88; 631 A.2d

1289, 1297 (1993), app. denied 538 Pa. 671; 649 A.2d 673 (1994) (an article in the medical literature is a learned treatise). A learned treatise need only be a generally recognized authority in its field. Wheeling-Pittsburgh Steel Corp. v. Commonwealth, 51 Pa. Commw. 393, 394; 414 A.2d 776, 777 (1980). The fact that an article appears in a generally accepted publication is not alone sufficient but is an important factor to be considered.

When a document is shown or admitted to be a learned treatise, it is not admissible, because it is hearsay. There is no hearsay exception for learned treatises or other authoritative texts in Pennsylvania. Proposed Rule 803(18) was not adopted. See Comment 2 below. In simple terms, this means that an expert witness may not read to the jury from a learned treatise as part of his or her presentation on direct examination. Neither may counsel to ask an expert witness to read a learned treatise to the jury under the guise of a permissible purpose, and there is no excuse for this improper approach.

Instead, a significant body of common law permits narrowly limited non-hearsay uses to be made of a learned treatise. A document may be used for these limited purposes once it is authenticated as a learned treatise. See Comment 4 below. The permitted uses fall into two areas. First an expert witness who uses a learned treatise during the process of forming an opinion may identify that source during direct testimony, so long as the expert does not expound from it. See Comment 5 below. Second, a learned treatise may be used on cross-examination to impeach an expert witness; however, that opens the door to rehabilitation of the witness through learned treatises on redirect examination. See Comment 6 below.

It is possible that learned treatises may be relevant for other non-hearsay purposes. For example, in Fletcher v. Ford Motor Co., 342 N.W.2d 285, 288 (Mich. App. 1983), the Michigan Court of Appeals held that "learned treatises discussing the safety of a product should ... be admissible in the plaintiff's case-in-chief to raise a presumption of notice. This is a non-hearsay purpose ..."

**2. Federal Rule Distinguished.** In the federal courts, an expert witness may read to the jury from an authoritative text. What is read becomes substantive evidence. Fortunately, the Pennsylvania Rules of Evidence were not intended to parrot the Federal Rules of Evidence. Nowhere is this more clearly demonstrated than in the rejection of any hearsay exception for learned treatises. F.R.E. 803(18), a hearsay exception which permits the admission of learned treatises as substantive evidence, was not adopted into the Pennsylvania Rules.

The reason we believe a factfinder can determine truth at trial is because witnesses present their personal knowledge and are subject to in-court confrontation through cross-examination. Pennsylvania law is permeated by evidentiary precepts grounded in this principle, such as the requirement that an expert present his or her own opinion in court and not act as a learned conduit for opinions in the report of experts not present. Primavera

v. Celotex Corp., 415 Pa. Super. 41, 52; 608 A.2d 515, 521 (1992), app. denied 533 Pa. 641; 622 A.2d 1374 (1993). The same principle inheres in the absolute prohibition for offering literature as substantive evidence in direct examination. Unless the author is testifying, literature or a "learned treatise" cannot be cross-examined, and an expert thereby becomes a mere learned conduit. F.R.E. 803(18) permits such learned conduits. The Pennsylvania Rules of Evidence do not.

**3. Learned Treatises Are Inadmissible Hearsay.** Learned writings which are offered to prove the truth of the matters therein are hearsay. They may not properly be admitted into evidence for consideration by the jury. Aldridge v. Edmunds, 561 Pa. 323, 331; 750 A.2d 292, 296 (2000); Klein v. Aronchick, 85 A.3d 487, 501 (Pa. Super. 2014); Jacobs v. Chatwani, 922 A.2d 950, 965 (Pa. Super.), app. denied 938 A.2d 1053 (Pa. 2007); Kyu Son Yi v. State Bd. of Vet. Medicine, 960 A.2d 864, 873 (Pa. Commw. 2008). It has always been the case, and still is, that a learned treatise cannot be offered for the truth of its contents because the author is not subject to cross-examination. Grantham v. Goetz, 401 Pa. 349, 357; 164 A.2d 225, 229 (1960). As Aldridge explained, "a lay jury may be confused by the technical nature of the information and therefore place undue emphasis upon or misapply it."

While an expert may rely on authoritative materials to form an opinion, the materials cannot be used during direct examination as substantive evidence In Aldridge, an expert witness supported his testimony by reading from two pediatric textbooks, excerpts of which were enlarged, mounted and marked as an exhibit. The trial court permitted this use to bolster the credibility of the expert witness. However, the introduction of material during direct examination to bolster credibility is a substantive use of evidence that requires the material to be independently admissible. Aldridge at 327-28, 333; 750 A.2d at 294, 297. Aldridge expressly rejected the reasoning of the single appellate case holding that a witness may read from a learned treatise for the purpose of supporting the witness's credibility. Nigro v. Remington Arms Co., 432 Pa. Super. 60; 637 A.2d 983 (1993), app. dism. 540 Pa. 49; 655 A.2d 505 (1995).

Similarly in Jones v. Constantino, 429 Pa. Super. 73, 88; 631 A.2d 1289, 1297 (1993), app. denied 538 Pa. 671; 649 A.2d 673 (1994), a new trial was ordered where the trial court erroneously permitted an expert witness to read a treatise to the jury. In Majidic v. Cincinnati Machine Co., 370 Pa. Super. 611, 621; 537 A.2d 334 (en banc), app. denied 520 Pa. 594; 552 A.2d 249 (1988), the trial court's decision not to allow learned treatises to be received into evidence or their contents to be read to the jury was upheld. In Majidic the Superior Court declined the plaintiff's invitation to "adopt a more liberal view towards treatises and periodicals ..." The same invitation was declined in Aldridge, which upheld Jones and Majidic.

In Browne v. PennDOT, 843 A.2d 429, 435-436 (Pa. Commw. 2004), app. denied 863 A.2d 1149 (2004), the Commonwealth Court affirmed and adopted the language of a trial court's ruling prohibiting an expert from

reciting to the jury the standards adopted by the American Society for Testing and Materials, rather than identifying the standards as the basis for his opinion:

[I]t's similar to an authoritative text, and that is not a proper use of such materials. If he has an opinion, he has an opinion, and he can testify as to what his opinion is, and that can't be impeached by the use of an authoritative text and similar materials. It can be buttressed under some circumstances with the use of those materials, but he can't just say those are the standards. They don't speak for themselves, and they're not, in and of themselves, opinions. Under some circumstances, which I find to be not here present, they could be used in a case in chief. He can certainly identify them, not the content, but if he relied upon them in forming an opinion, he can identify that as a basis for his opinion, not the content, but just its existence. But the standards themselves are not independently admissible.

**4. Authentication of a Learned Treatise.** Before use may be made of a learned treatise on direct, redirect or cross-examination, the document must be authenticated. For that reason, case law on the question of what constitutes a learned treatise is extensive, but those cases should not be misread as authorizing either a hearsay exception or a broader non-substantive use.

"Under Pennsylvania law, and in common usage as well, treatises are systematic expositions in writing including methodical discussion of facts and principles. Learned treatises are highly reliable because they are written for professionals, they are subject to scrutiny and testing by experts in the field, and the writers are unlikely to be partial with regard to any specific litigation." Commonwealth v. Jackson, 401 Pa. Super. 258, 265; 585 A.2d 36, 39; app. denied 528 Pa. 608; 596 A.2d 155 (1991). A study conducted according to an accepted or explained methodology may constitute a learned treatise. An unpublished paper that was delivered at a conference is also a learned treatise, and equally hearsay. Jones v. Constantino, 429 Pa. Super. 73, 88; 631 A.2d 1289, 1297 (1993), app. denied 538 Pa. 671; 649 A.2d 673 (1994).

Where there is disagreement as to whether a publication constitutes a learned treatise, it is initially a matter for the court under Pa.R.E. 105. However, if there is any substantial basis for concluding that the publication falls within the parameters of the definition, then the weight of the publication becomes a factual jury question.

Proof that the witness professionally relies on the material is prima facie adequate for authentication as a learned treatise. In anticipation of works being used on cross-examination by the defendant, a plaintiff may authenticate them as learned treatises during direct examination through the expert.

An expert who subscribes to a journal for professional purposes or has joined a professional organization may be deemed, for that reason alone,

to have accepted as authoritative the publication or the standards of that organization. However, if the subscription or membership is adequately explained (such as intended to keep abreast of what quacks in the field are saying), then subscription or participation alone may be insufficient to deem a publication authoritative.

A witness cannot avoid cross-examination on the basis of a learned treatise by disavowing the publication. An offer of proof that the publication will be authenticated in the proponent's case should be adequate to permit detailed cross-examination utilizing the publication as a learned treatise. The expert, of course, is free to respond to all questions by stating that he or she does not acknowledge the substantive accuracy of the document's contents.

A learned treatise need only be a generally recognized authority in its field. It can be a textbook, a published article, a periodical or any technical standard that has been accepted as authoritative by a properly qualified expert. Any portion of an authoritative text is authoritative unless there are specific, articulated reasons why that part has been repudiated and the repudiation is adequately explained by the party seeking repudiation.

It is sufficient if the publication in which a chapter or article appears is generally accepted as authoritative. 6 Wigmore on Evidence §1690 (Chadbourn rev. 1976); McCormick on Evidence §321 (J. Strong 4th ed. 1992). The reputation of a periodical is relevant to an authoritativeness inquiry.

Not every expert who testifies in a trial must acknowledge the publication to be a learned treatise. It is sufficient to qualify a publication as a learned treatise if any qualified witness has so authenticated it.

There is no requirement that the words "learned treatise" be used. Several terms have been used interchangeably in this context, including "standard works" and "authoritative in the field ...." See McDaniel v. Merck, Sharp & Dohme, 367 Pa. Super. 600, 622; 533 A.2d 436, 447 (1987), app. denied 520 Pa. 589; 551 A.2d 216 (1988); Christiansen v. Silfies, 446 Pa. Super. 469; 667 A.2d 396 (1995), appeal denied 546 Pa. 674; 686 A.2d 1307 (1996).

**5. Basis of Expert's Testimony.** A learned treatise may be identified and briefly referred to by an expert if it was used to formulate an opinion. An expert is required by Pa.R.E. 705 to disclose the bases of his or her opinion testimony. Those bases, which under Pa.R.E. 703 do not have to be admissible, may certainly include learned treatises. "Learned treatises are highly reliable because they are written for professionals, they are subject to scrutiny and testing by experts in the field, and the writers are unlikely to be partial with regard to any specific litigation." Commonwealth v. Jackson, 401 Pa. Super. 258, 265; 585 A.2d 36, 39; app. denied 528 Pa. 608; 596 A.2d 155 (1991). Thus in Taliferro v. Johns-Manville Corp., 421 Pa. Super. 204, 216; 617 A.2d 796, 803 (1992), a medical expert was allowed to refer to various studies as to the effect of asbestos exposure and cigarette smoking in explaining his opinion on the causation of plaintiff's

lung cancer. Indeed the Supreme Court wrote, in Aldridge v. Edmunds, 561 Pa. 323, 332; 750 A.2d 292, 297 (2000), "it would be unreasonable to suppose that an expert's opinion would not in some way depend upon the body of works preceding it." Thus the publications on which an expert actually relied may be identified on direct examination, within limits, as Aldridge explained:

There is no question that if published material is authoritative and relied upon by experts in the field, although it is hearsay, an expert may rely upon it in forming his opinion; indeed, it would be unreasonable to suppose that an expert's opinion would not in some way depend upon the body of works preceding it. Pennsylvania courts have thus permitted, subject to appropriate restraint by the trial court, limited identification of textual materials (and in some circumstances their contents) on direct examination to permit an expert witness to fairly explain the basis for his reasoning. See P[a].R.E. 705 ….

Id. See also Hyrcza v. West Penn Allegheny Health, 978 A.2d 961, 976-977 (Pa. Super.), app. denied 987 A.2d 161 (Pa. 2009).

Under the "appropriate restraint" required by the Court, the use of a learned treatise during direct examination must be severely restricted. Because the treatise is not to be the focus of testimony at any time, it may not be read to the jury. "Since … the purpose for which treatises may be referenced on direct examination is generally limited to explaining the reasons underlying the opinion, the trial court should exercise careful control over their use to prevent them from being made the focus of the examination." Aldridge v. Edmunds, 561 Pa. at 332-333; 750 A.2d at 297.

**6. Impeachment of Expert Witness.** A learned treatise may be used to cross-examine an expert as to his or her qualifications, knowledge, opinions, or biases. However, the use of any learned treatise in cross-examination opens the door to the use of other learned treatises in the field on redirect.

**a. Qualifications.** In order to impeach the expert qualifications of the witness, a cross-examiner may "show that an expert is unfamiliar with the literature in a particular field." Evanuik v. University of Pittsburgh, 234 Pa. Super. 287, 291; 338 A.2d 636, 638 (1975). The Pennsylvania standard for qualifying an expert is whether the witness "has any reasonable pretension to specialized knowledge on the subject under investigation." Miller v. Brass Rail Tavern, Inc., 541 Pa. 474, 480-81; 664 A.2d 525, 528 (1995). Any material relevant to the direct testimony can be used in cross-examination to support an inference that the witness is not familiar with generally recognized materials in the field because the witness is unfamiliar with particular texts. "It is entirely proper in examination and cross-examination for counsel to call the witness's attention to published works on the matter which is the subject of the witness's testimony" for the purpose of showing unfamiliarity. Cummings v. Nazareth Borough, 430 Pa. 255, 265; 242 A.2d 460, 466 (1968) (literature was used to show that

defendant's expert was unaware of its contents as to the safe depth of a pool diving area).

**b. Opinions.** "The opinion of an expert witness may be tested by reference to standard works …." Evanuik v. University of Pittsburgh, 234 Pa. Super. 287, 291; 338 A.2d 636, 638 (1975). This is true whether or not the expert relied upon or even considered the learned treatise before formulating an opinion. The value of such cross-examination was summarized by the New Jersey Supreme Court in Ruth v. Fenchel, 21 N.J. 171, 176; 121 A.2d 373, 376 (1956) (cited in Brannan v. Lankenau Hosp., 254 Pa. Super. 352, 365; 385 A.2d 1376, 1383 (1978), rev'd on other grds. 490 Pa. 588; 417 A.2d 196 (1980)):

[W]here, as in the instant case, the cross-examiner directs the attention of the expert witness to the contents of treatises expressing an opinion at variance with the opinion of the witness, and does so, not to prove the contrary opinion but merely to call into question the weight to be attached by the fact finder to the opinion of the witness, the law of this State allows such use of the treatise even if not relied upon by the witness in arriving at his opinion, provided the witness admits that the treatise is a recognized and standard authority on the subject.

As explained by the United States Supreme Court in Reilly v. Pinkus, 338 U.S. 269, 275 (1949): "It certainly is illogical, if not actually unfair, to permit witnesses to give expert opinions based on book knowledge, and then deprive the party challenging such evidence of all opportunity to interrogate them about divergent opinions expressed in other reputable books."

Learned treatises can be used to impeach expert witnesses by showing that other experts in the field have opinions that differ from those expressed by the testifying expert. Thus, an expert can be cross-examined on the contents of a treatise which was relied upon to form the expert opinion and on the contents of any publication acknowledged by the expert to be authoritative or a "standard work in the field." McDaniel v. Merck, Sharp & Dohme, 367 Pa. Super. 600, 622; 533 A.2d 436, 447 (1987), app. denied 520 Pa. 589; 551 A.2d 216 (1988).

Cross-examination utilizing authoritative texts is not limited to those on which the expert relied. The witness may be cross-examined with:

- any text which has been acknowledged as authoritative by that witness or other experts for same party; or

- any texts where other evidence shows that "these particular publications are universally accepted as standard works by authorities in the field …." Evanuik v. University of Pittsburgh, 234 Pa. Super. 287, 291; 338 A.2d 636, 638 (1975).

Where these conditions have not been met, use of the item in cross-examination is improper. Thus, in Wheeling-Pittsburgh Steel Corp. v. Commonwealth, 51 Pa. Commw. 393, 394; 414 A.2d 776, 777 (1980), further cross-examination of an expert witness on an article that the expert

## HEARSAY

803(18)[6]

had not read and was not familiar with was curtailed: "An expert witness may be cross-examined on a work that he or she relied on in forming an opinion and on any work the witness recognizes as authoritative in the field. ... However, reference to the contents of a work is clearly improper where neither of the aforementioned tests is met and there is no other evidence that the work is authoritative in the field." Similarly, in Brannan v. Lankenau Hosp., 254 Pa. Super. 352, 366; 385 A.2d 1376 (1978), rev'd on other grds. 490 Pa. 588; 417 A.2d 196 (1980), where a physician testifying in his own defense said that he disagreed with the conclusions of an article, and no other authenticating proof was offered, the trial judge properly prohibited further use of the article in cross-examination.

If the witness admits that a text is a recognized and standard authority on the subject, then the authority of the treatise will be established for the purpose of cross-examination; otherwise that authority must be independently shown. Proof that the witness professionally relies on the material is prima facie adequate to demonstrate authentication as a learned treatise.

Questions designed solely to determine whether a witness is familiar with a learned treatise and accepts it as authoritative are proper. Pratt v. Stein, 298 Pa. Super. 92, 138; 444 A.2d 674, 698 (1982). Once the witness states that the treatise is not authoritative, then in the absence of other evidence of authoritativeness, further questioning is not appropriate. Foster v. McKeesport Hosp., 260 Pa. Super. 485, 493; 394 A.2d 1031, 1034 (1978).

**c. Biases.** Bias or prejudice against a party may be shown through authoritative texts. Authoritative texts can also be used to show bias or prejudice against a school of thought within the field, or against a specific individual who propounds a theory different than that espoused by the witness. Rejection of the authority of the text by the witness may demonstrate bias against a school of thought or other individual researchers. If the literature had never been considered by the witness, it may demonstrate inadequacy in the basis for the opinion expressed.

**d. Proper questions.** The Superior Court has warned that "attacks on credibility using authoritative texts cannot be successful without a subliminal suggestion that the truth of the matter asserted is contained in the text itself." Burton-Lister v. Siegel, Sivitz & Lebed Assocs., 798 A.2d 231, 239 (Pa. Super.), app. denied 570 Pa. 681; 808 A.2d 568 (2002) (error waived through failure to object). With that warning in mind, proper questions concerning the work being used for cross-examination include:

- Do you agree with that authoritative text?
- During your work on this case, did you take into consideration the information in that authoritative text?
- Are you familiar with the information in that authoritative text?
- Did you rely upon the authoritative text in the formation of your opinion?
- That's different from your opinion, isn't it?

## PERSONAL OR FAMILY HISTORY

803(19)[1]

- Does that change your opinion?

It is improper to ask an expert to comment on an article with which she or he is unfamiliar, unless the expert is permitted to review it; or unless the question is formulated to demonstrate unfamiliarity; or unless the question is formulated to ascertain agreement or disagreement with the content.

**e. Redirect examination.** The use of any learned treatise in cross-examination opens the door to using other relevant learned treatises on redirect examination to rehabilitate the witness. The learned treatise need only address the same topic as on cross-examination. While the trial court may exercise discretion to limit the number of treatises used for rehabilitation, that number may certainly exceed the quantity that was used on cross-examination for impeachment. The witness may even recite the number of authorities in the field that agree with the witness's approach.

**[803](19) REPUTATION CONCERNING PERSONAL OR FAMILY HISTORY. A reputation among a person's family by blood, adoption, or marriage - or among a person's associates or in the community - concerning the person's birth, adoption, legitimacy, ancestry, marriage, divorce, death, relationship by blood, adoption, or marriage, or similar facts of personal or family history.**

**2013 Comment of the Committee on Rules of Evidence**

This rule is identical to F.R.E. 803(19). It changed prior Pennsylvania case law by expanding the sources from which the reputation may be drawn to include (1) a person's associates; and (2) the community. Prior Pennsylvania case law, none of which is recent, limited the source to the person's family. See Picken's Estate, 163 Pa. 14, 29 A. 875 (1894); American Life Ins. and Trust Co. v. Rosenagle, 77 Pa. 507 (1875).

### COMMENT

1. Scope.
2. Relation to Federal Rule.
3. Foundation and Policy.
4. Use of Rule.

**1. Scope.** Pa.R.E. 803(19) is one of five hearsay rules specifically designed to allow the introduction of evidence of personal or family history. This particular rule permits the use of evidence of a person's reputation among that person's family members and associates and in the community about facts of personal or family history such as birth, marriage, death and the like.

Contrast this rule with Pa.R.E. 803(11), which permits admission of a wide variety of statements relating to personal or family history set out in regularly kept records of religious organizations, and with Pa.R.E. 803(12), which permits admission of marriage, baptismal and similar certificates to prove only those facts of personal or family history directly established by the certificate, that is, that a particular ceremony took place. Contrast it further with Pa.R.E. 803(13), which permits admission of statements of fact "concerning personal or family history" when those statements are set out in family Bibles, genealogies and the like.