```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                         AT HUNTINGTON

 3   _____x
                                            :
 4   IN RE:                                 :  MDL NO.
     ETHICON, INC.,                         :  2:12-MD-02327
 5   PELVIC REPAIR SYSTEM PRODUCTS          :
     LIABILITY LITIGATION                   :
 6                                          :
                                            :
 7
     _____x
 8
     THIS DOCUMENT RELATES TO ALL CASES :
 9   _____x

10

11              TELEPHONIC STATUS CONFERENCE
            BEFORE THE HONORABLE CHERYL A. EIFERT,
12             UNITED STATES MAGISTRATE JUDGE
                TUESDAY, DECEMBER 15, 2015
13

14

15

16

17

18             CATHERINE L. SCHUTTE-STANT, RPR, RMR
                  Federal Official Court Reporter
19                 300 Virginia Street, East
                           Room 6009
20                   Charleston, WV 25301
                       (304) 347-3151
21

22

23

24

25
```

1    **APPEARANCES:   (ALL VIA TELEPHONE)**

2    **FOR THE PLAINTIFFS:     BRYAN F. AYLSTOCK, ESQ.**
                              Aylstock, Witkin, Kreis & Overholtz
3                             Suite 200
                              17 East Main Street
4                             Pensacola, FL  32502

5

     **FOR THE PLAINTIFFS:     LEE BALEFSKY, ESQ.**
6                             Kline & Specter
                              The Nineteenth Floor
7                             1525 Locust Street
                              Philadelphia, PA  19102
8

9

10   **FOR THE DEFENDANTS:     PHILIP J. COMBS, ESQ.**
                              Thomas, Combs & Spann
11                            P.O. Box 3824
                              Charleston, WV  25338-3824
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2         Had before The Honorable Cheryl A. Eifert, United

3    States Magistrate Judge, United States District Court, for

4    the Southern District of West Virginia, at Huntington, via

5    teleconference, on December 15, 2015, as follows:

6         JUDICIAL ASSISTANT:  Hi, this is Laura, Judge

7    Eifert's Judicial Assistant.  First, I would like to confirm

8    the court reporter, Cathy, is on the line.

9         COURT REPORTER:  Hi, Laura.  This is Cathy.

10        JUDICIAL ASSISTANT:  Hi, Cathy.  Thank you.

11     We are here today in the matter of *Ethicon* MDL, Case

12    Number 2:12-md-02327.  This will be regarding Ethicon's

13    motion for a protective order to quash cross-notice of

14    videotape de bene esse deposition of Bruce Rosenzweig, M.D.

15    This is ECF Number 1805.

16     May I please have plaintiffs' counsel?

17        MR. AYLSTOCK:  Good morning, Laura.  This is Bryan

18    Aylstock on behalf of plaintiffs.

19        MR. BALEFSKY:  This is Lee Balefsky on behalf of

20    the plaintiffs in Pennsylvania.

21        JUDICIAL ASSISTANT:  Thank you.  If that's

22    everyone for plaintiffs' counsel, may I please have counsel

23    for Ethicon?

24        MR. COMBS:  Laura, this is Phil Combs on behalf of

25    Ethicon.

1          JUDICIAL ASSISTANT:  All right, thank you.  If

2     everyone will please hold one moment for Judge Eifert.

3          THE COURT:  Good morning.

4          RESPONSE:  Good morning, Your Honor.

5          THE COURT:  Well, I know we are here today for

6     Ethicon's motion for protective order involving Dr.

7     Rosenzweig, but I think I would also like to talk after that

8     about the one involving Dr. Elliott, and also the errata

9     sheet changes that are specific to the *Mullins* case.  But

10    why don't we get started with the first one, which is the

11    motion in regards to Dr. Rosenzweig -- or is it Rosenzweig?

12         MR. COMBS:  Rosenzweig, Judge.

13         THE COURT:  Rosenzweig, okay.  So who would like

14    to speak about that on behalf of Ethicon?

15         MR. COMBS:  Judge, this is Phil Combs.  I'll be

16    addressing this on behalf of Ethicon.

17       Judge, we've set forth our position in our papers and

18    we basically have two complaints.  The first is that the

19    plaintiffs aren't following the procedures that are set

20    forth in PTO 205; and the second is that the vehicle that

21    they've chosen to cross-notice this deposition through

22    prejudices us.

23       Judge Goodwin has already spoken on this, in PTO 205,

24    he set an expert disclosure date for the plaintiffs for

25    general and specific experts of February 1, 2016.  And in

1    PTO 205, he specifically addresses that depositions of

2    general causation experts are not to be duplicative, but

3    that they shall be deposed once on the issue of their

4    general causation reports.

5         So we have a situation here where we are being asked to

6    depose Dr. Rosenzweig in a case in which we don't have a

7    report in.  I mean, there's no disclosure made in the MDL

8    Wave 1, 2, or 3 cases.  And plaintiffs say, "Well, that's

9    okay, you already know what his opinions are going to be,"

10   but that's not true.  We don't have his report yet.  And

11   we're being forced to guess, at our peril, as to what his

12   opinions are going to be.  We don't know what they're going

13   to ask him and we don't know what we're going to

14   cross-examine him on.

15        Obviously, not all of the Wave cases involve TVT.  And

16   so we're also prejudiced by the vehicle of cross-noticing

17   this in the *Carlino* case.  That's a 2005 mechanically cut

18   TVT case.  And so all of a sudden we're being forced to

19   cross-examine Dr. Rosenzweig in cases that involve TVT-O,

20   TVT Secur, TVT Laser Cut, and TVT-O Laser Cut.

21        And, finally, as we pointed out in our reply brief,

22   there are some real differences here.  In Pennsylvania,

23   there is a strong limitation on the ability to use learned

24   treatises.  And obviously that's one of the main ways that

25   you cross-examine an expert witness is through the use of

1    learned treatises that disagree with his position.  But if

2    we do that in this deposition, like we would do in an MDL

3    deposition, suddenly we've opened the door and plaintiffs

4    can introduce learned treatises that they would otherwise

5    not be able to introduce in the *Carlino* case.

6         So that's our position, Judge.

7              THE COURT:  All right.  Let me ask either you, Mr.

8    Combs, or the plaintiffs' counsel.  The deposition that is

9    being taken in *Carlino*, my understanding from reading the

10   materials is that this deposition is for evidence.  Is that

11   right?

12             MR. BALEFSKY:  Yes, Your Honor.  This is Lee

13   Balefsky.  I'm counsel for Carlino and also the plaintiffs'

14   liaison counsel in Pennsylvania.  I think there is a

15   misstatement by Mr. Combs.

16        This deposition is being taken in all of the

17   Pennsylvania litigation.  It is a de bene esse deposition

18   taken for every single trial that we will have in

19   Pennsylvania, and it not only includes the *Carlino* case, but

20   it includes another -- I think there's about 160 cases filed

21   against Ethicon in Pennsylvania.

22        So the deposition was noticed for all of the cases in

23   the general pelvic mesh litigation, and the deposition is

24   being taken for all the different TVT products that Dr.

25   Rosenzweig talked about in his generic report.  It's a

1   generic deposition.  It's not a case-specific deposition.

2   So I think that's something that needs to be clarified

3   initially.

4          THE COURT:  So this is not being taken necessarily

5   for use in a specific case; it's being taken in all the

6   Pennsylvania cases and it may be used in those Pennsylvania

7   cases as evidence?

8          MR. BALEFSKY:  Correct.  It's a generic -- he's a

9   generic expert.  He is not a case-specific expert.  He

10  doesn't comment on any case-specific materials regarding any

11  -- any of the plaintiffs in Pennsylvania.

12         THE COURT:  Okay.

13         MR. COMBS:  And, Judge, this is Phil Combs.  I

14  think there are two points about that.  The first is that we

15  either already have or are in the process of objecting to

16  that with Judge New in the Pennsylvania mass consolidated

17  proceeding.  And the second is that we would tailor our

18  examination differently depending on the product at issue.

19         THE COURT:  Right.  I guess I do have a concern --

20  I have two concerns about this deposition.  One is that, my

21  understanding is that this physician has not been disclosed

22  yet as an expert in the Wave cases, Wave 1 cases or Wave 2

23  cases and, therefore, no report has been produced on behalf

24  of this expert in any of those cases.

25         Now, I understand the plaintiffs are saying, well,

```
 1   they've had these other reports and they've had access to

 2   this testimony, so they, you know, they know what he's going

 3   to say and their argument that they're surprised is not

 4   valid.  But the fact of the matter is that the rule requires

 5   that the report be provided before the expert is deposed.

 6   And it sounds to me as though this expert's not only not

 7   been identified, but he's not issued any specific report or

 8   even a docket of a prior report as a report that is going to

 9   apply in the MDLs?  Is that a correct understanding?

10        MR. AYLSTOCK:  Your Honor, this is Bryan Aylstock

11   on behalf of the plaintiffs.  As you're no doubt aware,

12   PTO 205 reset the dates for the disclosure of experts and

13   reports to February 1.  So it is correct that, technically

14   speaking, in the Wave cases, Dr. Rosenzweig has not issued

15   or adopted a prior report, but that's form over substance,

16   we would submit, in that his report -- and we'll

17   represent -- is going to be entirely consistent and

18   identical in all material respects to the reports he did in

19   the *Lewis* case, which he testified in there, in trial in the

20   *Huskey* case where he testified, the *Mullins* consolidation,

21   which he was just -- which was just disclosed, and he was

22   deposed on the *Ramirez* case, as well as in the *Carlino* case.

23        So it seems to me that if -- if -- and I would

24   represent that I don't at all believe this will happen, but

25   if for some reason he strays and Ethicon is surprised and it
```

```
 1    comes out of the blue, even though he's given days and days

 2    and days of testimony and been subject to Daubert rulings

 3    and trial testimony, the remedy would simply be, Judge, this

 4    is outside of his prior reports and, therefore, don't allow

 5    it.

 6             THE COURT:  Well, Mr. Aylstock, let me ask you

 7    this, though:  Have you not formally then adopted these

 8    prior reports as his reports in the MDL?  Because my is

 9    understanding is it has not been done.  He's not officially

10    been identified, and his reports, although they've been

11    produced in other cases, have not been adopted in these Wave

12    cases.

13             MR. AYLSTOCK:  Well, it's important to recognize,

14    Your Honor, the wave process.  And I'll go back to PTO 205,

15    and specifically paragraph 3(a), each plaintiff in each

16    wave -- and after today, there will be three waves,

17    totalling 600 potential cases -- each plaintiff has to adopt

18    no more than five experts, exclusive of treating physicians,

19    in their case.  And that is a process that's happened in the

20    Bard waves as well, where a decision has to be made by each

21    of plaintiffs' counsel as to which experts will be

22    designated, and no more than five, which can be problematic.

23    In most cases, you need a pathologist, you need a material

24    scientist, you need a case-specific expert, potentially a

25    regulatory expert, depending on whether the FDA issues end
```

1    up coming into the Fourth Circuit's law, life care planners,

2    and of course general uro-Gyne experts.

3        So, in fact, it's the -- what PTO 205 specifically

4    says, and I'm quoting, "It's the Court's expectations that

5    these experts will overlap for plaintiffs who have the same

6    products to some extent, if not entirely," end quote.

7        So it's not up to leadership to say, you have to use

8    Dr. Rosenzweig, because they might choose -- each plaintiff

9    can choose to use Dr. Rosenzweig or some other expert.  But

10   the reason that this is so important to the plaintiffs and

11   really to the wave process generally is because when these

12   cases go back, as Judge Goodwin indicated that they would if

13   they weren't resolved, they're going to go back with an

14   instruction to the trial court judge, the transferee court,

15   set this case on your first available docket.  And then we

16   have one expert, which the Court recognizes will overlap or

17   maybe more than one, but all being set for trial in

18   relatively short order all over the country.  And that would

19   be impossible to deal with.

20       And so it's not yet time.  There is no surprise.  There

21   is no prejudice as to what he will say.  It will be the same

22   thing that he's said repeatedly and the same substance of

23   all of the reports.  It's just a matter of form over

24   substance in this case.  And again, if, if we are wrong on

25   that for some reason, they can come in here and complain

1   and -- and I'm sure they'll have a sympathetic ear from Your

2   Honor.  But they're not going to be wrong.

3        THE COURT:  Well, the problem is, though, what are

4   they going to complain about?  Because, at this point, he's

5   not formally adopted any of his reports as what you'd be

6   using in Wave 1 and Wave 2 cases.

7        So there isn't anything for them to bring to the Court

8   and say, here is the report that was identified in this case

9   or in this wave of cases, and here is what he said.  And you

10  can see that what he says here is not the same or in

11  addition to what he said in the report.

12       They can't really do that, because you haven't told

13  them which report or reports -- I mean, obviously, those

14  reports look pretty similar, but they don't cover all of the

15  products.  And they're not -- they've not really been

16  identified in these cases.  That's the problem that I have.

17       I understand what you're saying from a practical

18  standpoint, Mr. Aylstock.  He's testified multiple times; he

19  says the same thing every time.  You don't believe he's

20  going to say anything different if he's deposed now, but if

21  you look at the rule, the rule says that the expert must

22  turn over their report before they're deposed.  That's so

23  that everybody knows going into the deposition what report

24  it is that the expert is relying upon.

25       You haven't, to my knowledge, identified the report

 1     that you're relying on for any of the various products.  I

 2     don't know that those reports would be precisely the same

 3     for each of these products.  They may be slightly different.

 4     I think that the -- I think Ethicon has the right to have on

 5     the record that Dr. Rosenzweig is going to be an expert and

 6     that this is the report he's going to be using in the TVT

 7     cases, the TVT-O cases, the TVT-S cases.  I think they have

 8     a right to know that before they are forced to take his

 9     deposition.

10          MR. AYLSTOCK:  Well, Your Honor, wouldn't they

11     just be able to say, Dr. Rosenzweig's testimony varied from

12     the Mullins report, the Huskey report, and the Lewis report

13     in the following respects?  Isn't it -- if we filed a notice

14     today, adopting those opinions and reports, it's the, it's

15     the same exact thing.  I understand what Your Honor is

16     saying, if he were to issue a new report with something

17     different for these Wave cases or new, but that's not what's

18     going to happen here.  It's going to be consistent with this

19     other report.

20          THE COURT:  I don't think you're hearing what I'm

21     saying .  Right now there is no report in these Wave cases.

22     There is no expert report.  Because, even though this man

23     testified in a lot of other cases, he's not been identified

24     and has not supplied a report in any of these Wave cases.

25     That's the problem.  That's the technical problem.

```
 1          But it's the rule.  I'm not -- you know, I didn't just

 2    decide to make it up and say, I'm going to favor form over

 3    substance.  It is a rule.  That's the rule.

 4          MR. AYLSTOCK:  Well, could we not simply file

 5    something -- I mean, the deposition hasn't even happened

 6    yet.  Why not file those -- a notice of adoption of his

 7    prior reports, and then there's -- then we've technically

 8    met the rule and there's no prejudice, Your Honor.  Because

 9    his -- his testimony will be consistent with those reports.

10          THE COURT:  All right.  So, Mr. Combs, let's say

11    that's what plaintiffs do, they file a notice saying, Dr.

12    Rosenzweig will be an expert in some of the TVT-O cases,

13    some of the TVT cases, some of the TVT-S cases, we know that

14    and we're adopting these reports, and here they are.  And

15    these are reports that you've had for quite a while.  So now

16    how do you object to his deposition or why do you object?

17          MR. COMBS:  Two problems, Your Honor.  The first

18    is, then the deposition is a week from today, and so we will

19    be getting hundreds of pages of reports and we'll have to

20    depose him on that in a week.  The second is that to date he

21    has not been disclosed in any TVT Secur cases, so we would

22    have a completely new product we would have to get ready for

23    in a week.  And then the third is, again, we pointed out

24    that this deposition is being taken under a different set of

25    rules than are going to apply in the MDLs, and it's not a
```

1   form over substance argument here.  There is a substantive

2   difference between what we can do and what the plaintiffs

3   can do in Pennsylvania and what we can do and they can do in

4   the MDL.  And we would have a very real prejudice.

5        You know, I witnessed some of the arguments between the

6   parties and the things that happened in regard to Dr.

7   Elliott's deposition.  And there is a very real difference

8   in what parties can do in Pennsylvania state court and the

9   MDL.

10            THE COURT:  Okay.  So, here's -- I guess here's

11  where I'm struggling with that issue.  You know, on the one

12  hand, we know that a lot of what he's going to say will be

13  repetitive of what he would say if you took a completely

14  separate deposition of him in the MDL.  So you're talking

15  about there being some differences in, primarily, it sounds

16  to me like the use of medical literature in examining the

17  witness.  And, you know, the thought comes to my mind, well,

18  can we not agree that this deposition will be taken based on

19  these reports that are adopted that Ethicon has had for some

20  time, which may then exclude the TVT-S, and then still allow

21  Dr. Rosenzweig to be deposed on noncumulative matters like

22  the medical literature once he's been identified in the MDL

23  cases?

24            MR. BALEFSKY:  Your Honor, Lee Balefsky.

25  Regarding the Pennsylvania rule, there is that slight

1    difference that your expert cannot introduce and read from a

2    learned treatise in Pennsylvania, although he can be asked

3    about it and he can refer to it.

4        In terms of the Elliott deposition, which I'm very

5    familiar with because we just played it in court here in the

6    *Hammons* case, which is on trial right now in the

7    Philadelphia Court of Common Pleas, there was no problem

8    making sure that the deposition was in compliance with

9    Pennsylvania laws, which was -- actually it's more

10   restrictive, as I indicated, than the federal rule.  And it

11   was very easy for the defense, for Ethicon to edit out those

12   portions of the, either the direct or the cross that they

13   did not want played in Pennsylvania.

14       So I don't think the prejudice is there as Mr. Combs

15   states.

16            MR. COMBS:  Judge, you know, you have to remember

17   what we're talking about here.  I mean, we're talking about

18   cross-examining a general causation expert with learned

19   treatises.  That's how you do it.  I mean, that's the way

20   you cross-examine a general causation expert.  And for there

21   to be a very substantial difference between the two systems

22   in that regard, it's really a problem.  And I was involved

23   in the discussions between the defense team and the lawyer

24   that took Dr. Elliott's deposition.  And I can tell you that

25   we were really faced with very difficult strategic

1    decisions.

2         I mean, as Your Honor knows, when you're crossing a

3    general causation witness, that's what you do.  I mean,

4    you're putting up the medical literature and you're saying

5    you have Opinion A, and these articles have come to a

6    different conclusion.  And having a real distinction between

7    the two systems in that regard is a real problem for us.

8              MR. BALEFSKY:  Your Honor, Lee Balefsky.  There's

9    no -- there's no distinction in cross-examination.  I mean,

10   they can use the learned treatises or they don't have to use

11   the learned treatises.

12             THE COURT:  Well, what I understand them saying is

13   that under Pennsylvania rule the plaintiffs can't use them.

14   The defendants can use them on cross-examination, but if the

15   defendant uses them on cross-examination, that opens the

16   door for the plaintiffs to use medical literature on

17   redirect.

18             MR. BALEFSKY:  Right.

19             THE COURT:  Which would be a strategic difference

20   there between how you might approach it.

21             MR. BALEFSKY well, Your Honor, it was not a

22   problem in the *Elliott* case from what I saw that was right

23   here in Pennsylvania.  They were able to distinguish between

24   what was -- what they wanted played and what they didn't

25   want played.  So if they wanted a learned treatise cross to

1   be played, it was played.  And then we had the opportunity

2   to do a redirect on it.  But if they didn't want it played,

3   it wasn't played, and therefore there was no redirect on it.

4       So, I mean, it seems to me the problem is more for the

5   plaintiffs than it is for the defendants in terms of the

6   MDL, where we -- where it can be used, but it can't be used

7   here in Pennsylvania.

8           THE COURT:  All right.

9           MR. COMBS:  Judge, but it would be a problem for

10  us, because there were specific articles that we would have

11  liked to cross Dr. Elliott on that we did not use to cross

12  him on.

13          THE COURT:  Well, but what I hear -- what I hear

14  the plaintiffs saying is that you have the option to cut --

15  you could put that in your cross, but you'd also have the

16  option to cut that out, cut all of that out.  And if you cut

17  it all out in Pennsylvania, then they can't redirect on it,

18  because you're not offering it.

19          MR. COMBS:  I don't agree, Judge.  I mean, it's a

20  trial deposition.  We didn't ask him -- we did not ask him

21  questions about literature we would have asked him about in

22  the MDL.

23          THE COURT:  Well, what I hear the plaintiffs

24  saying, though, is that -- so you get your video recording

25  of the deposition, and you say, Ethicon says, we're going to

1    cut all of this cross-examination out where we've asked him

2    about the medical literature.  And by cutting it all out,

3    then they can't redirect on it.

4        Are you saying you're not allowed to cut it out?  Is

5    that what you're saying?  And so once you've said it, you're

6    stuck with it, or -- I don't really understand how it's

7    working in the Pennsylvania court.

8            MR. BALEFSKY:  Lee Balefsky.  What's working is

9    that each deposition, and specifically with the Elliott

10   deposition, they -- each side goes through the -- because

11   they're long depositions and the Judge has ordered that you

12   cut down -- so we've been going through each deposition and

13   cutting them down.  And with Elliott, we did the same thing.

14   And, you know, we can't insist that a cross be played if the

15   defense wants to cut it out.

16           THE COURT:  Well, I mean, I guess you could agree,

17   you could enter into some sort of stipulation or agreement.

18   But now, you know, here I'm talking about the Pennsylvania

19   court, so it's not really something that I can do or that I

20   could enter.  But you could reach an agreement that if --

21   because it sounds to me like the major strategic difference

22   is this whole, this whole thing about the use of the medical

23   literature.  If you could agree that, that Ethicon would be

24   permitted to withdraw any cross-examination based on

25   literature, then I don't see what -- what real damage there

```
 1    would be to Ethicon to go forward with the deposition of
 2    this physician.  And, of course, you know, the point is that
 3    we want to try to streamline discovery to the extent that we
 4    can.
 5         Having said that, I do believe that Ethicon has a right
 6    to know what reports are going to be used; if they're new
 7    reports, then they might have a right to have some more time
 8    to process those reports.  It sounded to me like this is all
 9    old news; that there's really nothing this man is going to
10    say that he hasn't already said.  And he said it years ago.
11         So it doesn't sound to me like Ethicon should need a
12    lot of time, except, you know, where products aren't
13    addressed by him, or haven't been addressed in a report by
14    him, I don't think you should have to cross-examine him on
15    that.  He needs to produce a report.
16         For example, on the TVT Secur, if he hasn't produced a
17    report on that that you can adopt, and it hasn't been out
18    there for awhile, then I don't think that -- I think they
19    should get another shot at deposing him about that product.
20              MR. BALEFSKY:  Your Honor, Lee Balefsky again.  In
21    terms of the Pennsylvania -- we produced a report in
22    Pennsylvania which Ethicon has had for months which
23    specifically addresses all three of those products.
24              THE COURT:  Mr. Combs, I'm not real -- I'm not
25    really persuaded by your argument that you're going to be
```

 1    surprised or you don't have enough time to prepare, if in

 2    fact you've had the reports that they're going to adopt and

 3    rely on, you've had those now for some time.  And, in fact,

 4    they -- this expert's appeared in cases that have gone to

 5    trial, so you've seen him, you've had an opportunity to

 6    cross-examine him.  I'm not particularly persuaded that

 7    you're at any great disadvantage in that regard, as long as

 8    the plaintiffs do formally adopt the report, because I think

 9    that has to be done before the expert can be deposed.

10    That's what the rule requires.

11         Now, on the issue of the medical literature, it seems

12    to me that if you can reach an agreement that you can modify

13    your cross-examination in the Pennsylvania cases and cut out

14    the medical literature part, if you desire, then I don't see

15    how you would be all that particularly prejudiced by that

16    problem either.

17              MR. COMBS:  Well, Judge, let's take them

18    sequentially.  So, for example, in regard to the report,

19    what the plaintiffs have said in their response is that

20    just, for example, for TVT Secur, that we're not going to be

21    surprised by their opinion, because he addressed TVT Secur

22    in the *Perry* case in California, which wasn't even a TVT

23    Secur case.  It was a TVT Abbrevo case.

24              THE COURT:  Well, but he just said that there was

25    a report produced in the Pennsylvania cases that you've had,

1   that Ethicon has had for some time now on TVT Secur.  Is

2   that correct?

3            MR. COMBS:  Judge, it's in -- it's attached to the

4   plaintiffs' response, and, you know, I mean the Court can

5   look at it, there's not a disclosure on TVT Secur.  Unless

6   I'm just totally mistaken as to what has been produced.

7            MR. AYLSTOCK:  Your Honor, this is Bryan Aylstock.

8   Mr. Balefsky can speak to this, but my understanding is that

9   there was a report, in fact, in this specific -- related to

10  this specific deposition on TVT-S.

11           MR. BALEFSKY:  I don't know what report you're

12  talking about that was attached to the motion.  Was it the

13  Pennsylvania report?

14      The report that we filed here -- I don't have it in

15  front of me, I'm sorry, Your Honor, I'm in court -- but the

16  report that we filed here for the *Carlino* case and the *Magee*

17  case, which is a TVT Secur case.  The *Carlino* case is a TVT

18  case, but the report was intended to apply to all of the --

19  all of the potential TVT cases in Pennsylvania.  It

20  addresses the TVT, the TVT-O, and the TVT Secur.

21      So I can't quote from it right now because I don't have

22  it in front of me, but I can represent that it addresses all

23  three of those, all three of those products.

24           THE COURT:  Well, I think the important point here

25  is --

1              MR. COMBS:  Your Honor, it's --

2              THE COURT:  The important point is -- Mr. Combs,

3    just wait a second.

4              MR. COMBS:  I'm sorry, your honor.

5              THE COURT:  The important point here is, have

6    reports been produced on all of these products that he's

7    going to testify about, and have they been produced in the

8    past so that Ethicon has had them for some time so that you

9    can -- you can comply with Rule 26, you can adopt those

10   reports and say, this is what we're using for TVT, for

11   TVT-Abbrevo, for TVT-O, for TVT Secur, this is the report

12   from him?  And as long as those reports had previously been

13   given to Ethicon -- and by previously, I mean a while back,

14   because they'd have a right to have some time to process

15   them -- then I don't see how there's any real prejudice to

16   Ethicon to go forward with the deposition.  But what I

17   can't -- I'm not clear on right now is, were reports

18   produced for all of the products that he's going to testify

19   about, and when were they produced?  And I don't mean trial

20   testimony, I mean reports.

21             MR. BALEFSKY:  Your Honor, Lee Balefsky.  The

22   report in Pennsylvania, as I said, I don't have it in front

23   of me.  I can get it very quickly, though.  I'm over here in

24   court.  I can get the information, on the date it was served

25   and also the fact that it included all three of the products

1    that he's going to be discussing at the deposition.

2              THE COURT:  Okay.  So, Mr. Combs, if you've gotten

3    all these reports and he tells you, here's the report on

4    Secur TVT, whatever, and I suspect that probably a good part

5    of those reports are the same or similar, then what is your

6    prejudice as far as the reports go?

7              MR. COMBS:  Okay.  Judge, first, I'd like to

8    address, the report that Mr. Balefsky is referring to is

9    Exhibit 2 to the plaintiff's response.  And it doesn't --

10   you know, it may be that somewhere in a footnote it mentions

11   the product TVT Secur, but -- the Court can review it, it's

12   not a report on TVT Secur.  It's Exhibit 2 to the response

13   that was filed by the plaintiffs, Document 1811, Exhibit 2.

14       And so now, moving off the TVT Secur issue, I mean,

15   again it's two things -- I mean, Judge, they're going --

16   there have been hundreds of depositions taken in these

17   cases.  And there are going to be more.  And I don't see how

18   the plaintiffs can be prejudiced by providing us with a

19   report in the MDL for him to be deposed upon the products

20   that he's going to be a general causation expert on.  And so

21   to be doing it through Pennsylvania -- again, we'll have a

22   limited amount of time to depose him, and all of a sudden

23   we're going to be deposing him under two evidentiary

24   standards, two admissibility standards regarding expert

25   testimony; we're going to have to be deposing him in which

1    we are, you know, at some point saying, okay, we're going to

2    use the literature for the MDL, but not for Pennsylvania.

3         And, you know, I just don't understand it, Judge.  I

4    mean, Judge Goodwin has told us, you can't depose these guys

5    duplicatively for general causation.  And that's fine and

6    we're fine with that.  But that's not what's going on here.

7    I mean, this is a state court case in which we don't have a

8    report.  It's a week before the deposition.  Some of the

9    products aren't addressed.  I'm making that representation

10   to the Court that Exhibit 2 to the motion isn't a Secur

11   deposition.  And I don't see how the plaintiffs are

12   prejudiced by putting forward Dr. Rosenzweig in the MDL one

13   time as PTO 205 orders them to do.

14        And I know that we're prejudiced, because I've gone

15   through the process by which we had to depose Dr. Elliott.

16   And it's just not -- you know, it's just not accurate to

17   say, oh, we can just make decisions to cut some of it out.

18   I mean, we're going to, you know, be deposing him under a

19   different evidentiary standard and different admissibility

20   standard.

21             MR. AYLSTOCK:  Your Honor, may I respond?

22             THE COURT:  Yes.

23             MR. AYLSTOCK:  Again, this is Bryan Aylstock on

24   behalf of the plaintiffs.  On the evidentiary point, there

25   is nothing under the Pennsylvania rules that prohibits

1   cross-examination for learned treatises, so they get the

2   same shot whether it's under the MDL or not.  And as we've

3   made clear, it's a simple matter of editing.  It's happened,

4   it's already happened in Elliott.  And I'm sure Mr. Balefsky

5   can accommodate in the same exact way for the MDL.  So it's

6   more of a technical matter on that issue.

7        On the issue of some sort of prejudice, I would just

8   remind the parties that about a month ago we were before

9   Your Honor on -- in a New Jersey deposition that actually

10  had not even been cross-noticed in the MDL.  It was on the

11  IFU issues.  And Marty Weisberg was put up by Ethicon to

12  discuss those.  And in that case, there were thousands and

13  thousands of pages and documents that we hadn't even had a

14  chance to look at.  We were in the middle of trying to

15  prepare for Mullins and then all of a sudden that got pushed

16  off.  But we simply had not had any time to look at them and

17  they were produced literally at the last minute.

18       And what the Court did is to encourage us to

19  participate, to attend, to be there, to streamline

20  discovery, even though we hadn't been cross-noticed, because

21  it was in the interest of justice to do the deposition once

22  and we'd address any issues, if there were any, after the

23  fact.

24       We complied with Your Honor's wishes.  We attended the

25  New Jersey deposition, even though we were not as prepared

```
 1    as we would like to be.  We did our best.  And here we are

 2    today, and we're not -- I mean, I haven't fully analyzed the

 3    deposition, but I don't even believe we're going to need to

 4    go back on Mr. Weisberg until we -- you know, maybe there

 5    will be a document or such to go back to.

 6        But I think the same thing applies here.  Let's have

 7    the deposition, let's see what shakes out.  If, in fact,

 8    there's some learned treatise that they didn't want to use

 9    in Pennsylvania that they used here, we'd just cut it out.

10    And there is absolutely no prejudice in going forward,

11    seeing what happens, and decisions can be made by the Court

12    after the deposition occurs about what can be played in

13    trial.  This is, again, an expert whose already not only

14    been deposed repeatedly, already made it through Daubert on

15    his prior reports.  And understanding the work that goes

16    into all of the Daubert motions and so forth, it's not our

17    intent to go rework something that's already been able to

18    get through Daubert and get to trial and, frankly, have some

19    verdicts in favor of the plaintiffs.

20            THE COURT:  Well, I do feel that the point that

21    Judge Goodwin is trying to make, and the point that's been

22    made from the very beginning, is that to the extent

23    possible, we should be doing the discovery, we should be

24    coordinating with the state courts and we should be trying

25    to get these witnesses that are repeated witnesses that have
```

1    general opinions, we need to just be deposing them one time.

2        I don't -- I think that if Ethicon has had the reports

3    on the products -- and I can't tell from what I'm looking at

4    here that there was ever a report produced on TVT Secur --

5    but if there are reports on these various products and those

6    reports are adopted and filed in the Wave 1 and Wave 2 cases

7    or adopted in the Wave 1 and Wave 2 cases, and Ethicon has

8    had them for some time, and this witness has testified

9    before based on those reports, I don't think Ethicon is

10   disadvantaged at all by going forward with this deposition.

11       I also think that if these evidentiary issues that

12   arise in Pennsylvania, if there's a way to work around them,

13   then we need to try to do that.  And that doesn't mean to

14   just cancel the deposition and don't go forward with it.  I

15   think we need to go forward with the deposition and figure

16   out what we're going to do with these evidentiary issues.

17       You know, maybe you can all agree that Ethicon won't

18   ask anything about the literature at the Pennsylvania

19   deposition and come back later and do a very focused

20   examination just based on the literature that can be

21   interspersed into the video in some way.

22       I mean, obviously, you're taking videos that have been

23   done on different days and you're putting them together for

24   many of these witnesses, so it's not as though that would

25   particularly stand out.

1              Another option would be, get into the deposition and

2      you ask your medical literature things and you have some

3      understanding or agreement with the plaintiffs that if you

4      choose not to play that cross-examination, then it won't be

5      played and there can't be any redirect with the medical

6      literature.

7              I do agree with Mr. Balefsky, I think the plaintiffs

8      are actually more prejudiced in that regard, because they

9      can't use medical literature in their direct examination, as

10     I'm understanding it.  I wasn't really clear.  I thought I

11     heard Mr. Balefsky say, you're not allowed to read from it,

12     but you can still ask them questions about it.  Is that

13     right?

14              MR. BALEFSKY:  That's correct, Your Honor.

15              THE COURT:  So actually you can use the

16     literature, you just can't read to the jury from it, publish

17     it in any way.  But --

18              MR. COMBS:  Well, excuse me, Your Honor.  As long

19     as the expert says he relied on it in forming his opinion,

20     then he can be asked to explain what significance that that

21     piece of literature has to his opinions.

22              THE COURT:  If that had been on the direct, then

23     Ethicon is going to have to use its medical literature on

24     cross, I would think.  You wouldn't have to, but --

25              MR. AYLSTOCK:  And that's exactly what happened in

```
 1    the Elliott deposition, there was a lot of medical
 2    literature used on cross under the Pennsylvania rules.  So,
 3    again, I think it's something that can be addressed
 4    post-talk and we're happy to work with the other side to
 5    make that happen.  We're just trying to get this done, so
 6    when these cases come back, we don't have one expert asked
 7    to be in four or five hundred trials all at the same time.
 8              THE COURT:  And I don't think you can keep making
 9    this person testify over and over and over again about the
10    same thing.  That's my concern.
11              MR. COMBS:  I apologize, Your Honor.  Were you
12    finished?
13              THE COURT:  Yes.
14              MR. COMBS:  And certainly, we're not trying to do
15    that.  I mean, we understand PTO 205 and what it orders.
16    And this isn't what it orders.
17              THE COURT:  Well, PTO 205 -- Mr. Combs, PTO 205
18    does not address this situation.  It doesn't directly
19    address this.  What it says is, we don't want you to do the
20    same depositions of the same people over and over and over
21    again.  If you've got witnesses who are going to be general
22    witnesses on causation, for example, then you ought to do
23    that witness one time and cover all of the products in that
24    one deposition and don't do five different depositions.
25    Don't keep repeating and repeating.  Because a lot of what
```

1    the expert is going to say is going to be the same in each

2    deposition.  And I think that's the point of PTO 205.

3         It doesn't have anything directly to do with

4    Pennsylvania or what's happening in Pennsylvania.  It's

5    talking about within the MDL, don't keep taking the same

6    person over and over again.  But --

7                   UNIDENTIFIED SPEAKER:  We completely agree with

8    that.

9                   THE COURT:  But from the beginning of this

10   litigation, though, from the very start of the litigation,

11   Judge Goodwin made it very clear that, to the extent you

12   could work with the states and coordinate your discovery,

13   you needed to do that, because the judicial economy is not

14   just in the federal court, it's in the courts across the

15   country, all of the courts.  There's no need to have the

16   same person repeatedly deposed about the same subject and in

17   the same type of cases.  There's no need.  And there's so

18   many of these cases, it can't be done.

19        So if you were coming in here today, Mr. Combs, and you

20   could really show me something that made me concerned that

21   you were going to be prejudiced at this deposition, then I

22   would agree with you, in that particular circumstance, we

23   ought to separate the state from the federal, and you do

24   your state thing and we'll do the federal thing later.  But

25   I'm not really hearing that.

1          What I'm hearing is this man's going to say the same

2     thing; he's going to say the same thing he's already said;

3     he's going to say the same thing he's said in all the

4     reports he's already provided that Ethicon has had for a

5     long time, and the only real difference I can see is this

6     whole strategic issue about the medical literature, which

7     you can work around.

8          Now, if there aren't reports on products like the TVT

9     Secur, then I do not agree that this deposition would apply

10    to Wave 1 and 2 cases involving TVT Secur, and Ethicon would

11    have the opportunity to depose this expert on that product.

12    I think they should have a right to have testimony opinions

13    on each product.  And if he's out in Pennsylvania, then

14    that, that hasn't been covered.  That wouldn't be

15    cumulative.  That wouldn't be.  That would be different.

16         But I think to the extent he's going to be testifying

17    about products and the plaintiffs adopt those reports, and

18    you've had those reports, you can be prepared to cover those

19    at this deposition.

20              UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

21              THE COURT:  In the case of Elliott, what happened

22    with that one?  Because I think that was filed like the day

23    of the deposition or something, so I didn't really have a

24    chance to do anything on that or look at that.  Was that the

25    very same issue?

```
 1              MR. AYLSTOCK:  Bryan Aylstock.  It is, Your Honor.

 2    And the deposition did go forward.  The cut was actually

 3    played in the Hammons trial that Lee's stepped out of right

 4    now, and understood that both sides made cuts and medical

 5    literature came in and he was crossed on it.  The -- I guess

 6    the difference is, now we have the benefit of hindsight.

 7    And given where we were on scheduling and, frankly, Tom's

 8    team being in trial and my team preparing and helping with

 9    the other trials, I don't have a formal written response,

10    which I'd like to do, because I think when you see and see

11    the testimony in comparison, for example, to exactly what

12    was asked in the Bellew case, and his expert report there,

13    there's absolutely no surprise and no prejudice.

14         In fact, Adam Slater, who put on Dr. Elliott in Bellew

15    is the same one who did the de ben esse of Dr. Elliott at

16    the Hammons trial.  He's in trial now.  So I was hoping to

17    have his input in the brief and potentially argue the case,

18    if he's available to do so, before Your Honor.

19         But it's the same basic issue, Your Honor, in that,

20    again, Dr. Elliott has been deposed again and again and

21    again and testified now multiple times.  And unlike Dr.

22    Rosenzweig, which covers multiple products, the only product

23    that -- and it was a general deposition -- the only product

24    that Dr. Elliott covered was the Prolift in his report.  His

25    -- it was in Bellew and it will be the exact same report
```

1    that was disclosed in *Carlino.*  There will be no difference

2    whatsoever in his testimony or his report that they already

3    had months and months prior to the depo.

4         MR. COMBS:  And, Judge, I know you're tired of

5    hearing me say this, but, yeah, his deposition was taken in

6    *Hammons*, and there were many things that we didn't and

7    couldn't do in that deposition, and we didn't.

8         THE COURT:  Well, I think, Mr. Combs, if that

9    turns out to be the case with Dr. Rosenzweig, then you can

10   always make a motion to supplement his deposition, re-depose

11   him for the MDLs, and we can address it then.  But, but --

12   at least at this point, you're not convincing me that

13   there's any major prejudice from going ahead with the

14   deposition.  If -- if because this is for Pennsylvania and

15   it is so bizarre, its law is just so bizarre that there is a

16   whole series of questions you didn't ask because of that,

17   then, after the deposition, bring it forward and we can talk

18   about a supplemental deposition.  I just don't want him to

19   be saying the same things over and over and over again.  And

20   I think eight/ninths of the deposition he'll give in the

21   deposition in Pennsylvania is going to be the same as what

22   he would say in the MDL if you did it separately.

23      So I can't see any benefit to having that happen twice.

24         MR. COMBS:  Well, and there's no question that

25   we'll need to make that motion to have a second deposition

1    of Dr. Elliott.

2            THE COURT:  Okay.  Well, you make the motion.  I'm

3    not going to preclude you from doing that.  And, also, I

4    would not preclude Ethicon from taking a deposition of

5    Elliott or Rosenzweig or whoever based on a product that

6    they didn't have a report for.  They have to have the report

7    before they take the deposition.  And I can't stress that

8    enough.  That is the rule.

9        I mean, we went through that I think just recently in

10   another motion, where Ethicon wanted to take two depositions

11   of the same person and his report hadn't been produced.  And

12   I believe the plaintiffs were objecting to the deposition

13   going forward without the report having been produced.  And

14   I think that was a very legitimate point, because the rule

15   says what the rule means, and it means the report goes out

16   before you take the deposition.  It's what it says.

17       So, so I think that's where we'll go with this.  You

18   make your motion on Elliott, you make your motion on

19   Rosenzweig, if you believe you've been prohibited from

20   asking a line of questions, those things can always be

21   spliced into your video.  I mean, those videos are pretty

22   chopped up, are they not?

23           MR. COMBS:  Well, they are, Your Honor.

24           THE COURT:  So I don't think it would be real

25   obvious.  But I think we need to cross that bridge when we

1    come to it.  The main point is to get as much of his

2    testimony done as we can.

3        All right, the last thing then is this errata sheet

4    issue.  And I have looked at that.  And, you know, I've

5    looked at Judge Goodwin's decision in the *Holland* case.  He

6    very clearly says that you can make substantive changes.  So

7    what Dr. Vogel did was appropriate, according to the Holland

8    case.  The issue then becomes, if he makes these changes,

9    should the other adverse party be entitled to do a

10   supplemental deposition to explore the basis of the changes.

11       And I think that they -- that plaintiffs should be

12   allowed to do that.

13       When I looked at the changes he made, four of them --

14   there were six, there were six changes; two of them were

15   just spellings.  So four of them would be what you might put

16   in the category of a substantive change.  And I do -- I do

17   see what the plaintiffs are saying about how the change in

18   at least one of those circumstances changed the meaning,

19   basically, of the question/answer exchange.

20       So, plaintiffs, I am going to give you the opportunity

21   to reopen the deposition and ask Dr. Vogel about the changes

22   that he made on the errata sheet to his testimony.

23       As far as payment for that, I'm not going to require

24   Ethicon to pay for the deposition.  I think in terms of

25   whatever expert fee Dr. Vogel charges -- what has been your

1    standing arrangement on the expert fees?

2              MR. AYLSTOCK:  Your Honor, this is Bryan Aylstock.

3    We've typically just paid for our own expert time in

4    deposition.

5              THE COURT:  All right.  So then Ethicon will pay

6    the expert charges from Dr. Vogel for his time involved in

7    attending that deposition.  But, you know, that -- I don't

8    know why you can't just do that deposition by telephone

9    really or by video conference, because it doesn't sound like

10   it's going to be a particularly long deposition.  It seems

11   like --

12             MR. AYLSTOCK:  I don't disagree, Your Honor.

13             MR. COMBS:  And, Judge, the original deposition of

14   Dr. Vogel was taken by phone anyway.

15             THE COURT:  Okay.  So I don't see any point in

16   shifting the costs for that.  I think he's allowed to make

17   changes according to the *Holland* case and you're allowed to

18   ask him about those.

19        So that's how I'd rule on that one.  And I'll do a

20   short order just saying that the ruling was as discussed in

21   the hearing today.

22             MR. AYLSTOCK:  Thank you, Your Honor.

23             THE COURT:  Okay.  Is there anything else that we

24   need to talk about today?

25        There was something else that I had in my mind as we

```
 1    were talking and I've lost my train of thought.  Is there
 2    anything you all can think of?
 3              MR. AYLSTOCK:  Your Honor, this is Bryan Aylstock.
 4    My only thing is I really need to get my wife a Christmas
 5    present.
 6              THE COURT:  That's not a bad idea.
 7              MR. AYLSTOCK:  Yeah.  I don't have anything else,
 8    Your Honor.
 9              THE COURT:  Anything from Ethicon?
10              MR. COMBS:  No, ma'am.
11              THE COURT:  All right.  Then thank you, Cathy.  We
12    appreciate it.
13              COURT REPORTER:  Thank you, Judge.
14              THE COURT:  And we are in recess.
15              MR. AYLSTOCK:  Thank you, Your Honor.
16              MR. COMBS:  Good-bye, Judge.
17              THE COURT:  Bye-bye.
18          (Proceedings concluded at 11:55 a.m.)
19
20
21
22
23
24
25
```

```
1                   CERTIFICATE OF OFFICIAL REPORTER

2         I, Catherine L. Schutte-Stant, Federal Official Court

3    Reporter, in and for the United States District Court, for

4    the Southern District of West Virginia, do hereby certify

5    that the foregoing is a true and correct transcript of the

6    stenographically reported proceedings held in the

7    above-entitled matter.

8

9                        December 22, 2015

10

11         /s/ CATHERINE L. SCHUTTE-STANT, RMR, CRR

12              _____

13              CATHERINE L. SCHUTTE-STANT, RMR, CRR
                FEDERAL OFFICIAL COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25
```