# ACOG COMMITTEE OPINION

Number 439 • August 2009

# Informed Consent*

**Committee on Ethics**

**ABSTRACT:** Obtaining informed consent for medical treatment, for participation in medical research, and for participation in teaching exercises involving students and residents is an ethical requirement that is partially reflected in legal doctrines and requirements. As an ethical doctrine, informed consent is a process of communication whereby a patient is enabled to make an informed and voluntary decision about accepting or declining medical care. In this Committee Opinion, the American College of Obstetricians and Gynecologists' Committee on Ethics describes the history, ethical basis, and purpose of informed consent and identifies special ethical questions pertinent to the practice of obstetrics and gynecology. Two major elements in the ethical concept of informed consent, comprehension (or understanding) and free consent, are reviewed. Limits to informed consent are addressed.

Informed consent is an ethical concept that has become integral to contemporary medical ethics and medical practice. In recognition of the ethical importance of informed consent, the Committee on Ethics of the American College of Obstetricians and Gynecologists (ACOG) affirms the following eight statements:

1. Obtaining informed consent for medical treatment, for participation in medical research, and for participation in teaching exercises involving students and residents is an ethical requirement that is partially reflected in legal doctrines and requirements.

2. Seeking informed consent expresses respect for the patient as a person; it particularly respects a patient's moral right to bodily integrity, to self-determination regarding sexuality and reproductive capacities, and to support of the patient's freedom to make decisions within caring relationships.

3. Informed consent not only ensures the protection of the patient against unwanted medical treatment, but it also makes possible the patient's active involvement in her medical planning and care.

4. Communication is necessary if informed consent is to be realized, and physicians can and should help to find ways to facilitate communication not only in individual relations with patients but also in the structured context of medical care institutions.

5. Informed consent should be looked on as a process rather than a signature on a form. This process includes a mutual sharing of information over time between the clinician and the patient to facilitate the patient's autonomy in the process of making ongoing choices.

6. The ethical requirement to seek informed consent need not conflict with physicians' overall ethical obligation of beneficence; that is, physicians should make every effort to incorporate a commitment to informed consent within a commitment to provide medical benefit to patients and, thus, to respect them as whole and embodied persons.

7. When informed consent by the patient is impossible, a surrogate decision maker should be identified to represent the patient's wishes or best interests. In emergency situations, medical professionals may have to act according to their perceptions of the best interests of the patient; in rare instances, they may



**The American College of Obstetricians and Gynecologists**
*Women's Health Care Physicians*

*Update of "Informed Consent" in *Ethics in Obstetrics and Gynecology*, Second Edition, 2004.

have to forgo obtaining consent because of some other overriding ethical obligation, such as protecting the public health.

8. Because ethical requirements and legal requirements cannot be equated, physicians also should acquaint themselves with federal and state legal requirements for informed consent. Physicians also should be aware of the policies within their own practices because these may vary from institution to institution.

The application of informed consent to contexts of obstetric and gynecologic practice invites ongoing clarification of the meaning of these eight statements. What follows is an effort to provide this.

## Historical Background

In 1980, the Committee on Ethics developed a statement on informed consent. This statement, "Ethical Considerations Associated with Informed Consent," was subsequently approved and issued in 1980 as a Statement of Policy by ACOG's Executive Board. The 1980 statement reflected what is now generally recognized as a paradigm shift in the understanding of the ethics of the physician–patient relationship. During the 1970s, a marked change took place in the United States from a traditional almost singular focus on the benefit of the patient as the governing ethical principle of medical care to a new and dramatic emphasis on a requirement of informed consent. That is, a central and often sole concern for the medical well-being of the patient was modified to include concern for the patient's autonomy in making medical decisions.

In the 1980s, this national shift was both reinforced and challenged in medical ethics. Clinical experience as well as developments in ethical theory generated further questions about the practice of informed consent and the legal doctrine that promoted it. If in the 1970s informed consent was embraced as a corrective to paternalism, in the 1980s and 1990s shared decision making was increasingly viewed as a necessary corrective to the exaggerated individualism that patient autonomy had sometimes produced. At the same time, factors such as the proliferation of medical technologies, the bureaucratic and financial complexities of health care delivery systems, and the growing sophistication of the general public regarding medical limitations and possibilities continued to undergird an appreciation of the importance of patient autonomy and a demand for its promotion in and through informed consent.

In the early 21st century, there are good reasons for considering once again the ethical significance and practical application of the requirement to seek informed consent. This is particularly true in the context of obstetric and gynecologic practice because medical options, public health problems, legal interventions, and political agendas have expanded and interconnected with one another in unprecedented ways. The concern of ACOG for these matters is reflected in its more recent documents on informed consent and on particular ethical problems that arise in the context of maternal–fetal relationships, decisions about relationships, sterilization, surgical options, and education in the health professions (1–7). Although a general doctrine of informed consent cannot by itself resolve problems like these, it is nonetheless necessary for understanding and responding to them.

Informed consent for medical treatment and for participation in medical research is both a legal and an ethical matter. In the recent history of informed consent, statutes and regulations as well as court decisions have played an important role in the identification and sanctioning of basic duties. Judicial decisions have sometimes provided insights regarding rights of self-determination and of privacy in the medical context. Government regulations have rendered operational some of the most general norms formulated in historic ethical codes[†]. Yet, recent developments in the legal doctrine are few, and the most serious current questions are ethical ones before they become issues in the law. As the President's Commission reported in 1982, "Although the informed consent doctrine has substantial foundations in law, it is essentially an ethical imperative" (8). What above all bears reviewing, then, is the ethical dimension of the meaning, basis, and application of informed consent.

Although informed consent has both legal and ethical implications, its purpose is primarily ethical in nature. As an ethical doctrine, informed consent is a process of communication whereby a patient is enabled to make an informed and voluntary decision about accepting or declining medical care. There are important legal aspects to informed consent that should not be overlooked. It is critical for physicians to document the contents of this conversation as part of the permanent medical record. A signed consent document, however, does not ensure that the process of informed consent has taken place in a meaningful way or that the ethical requirements have been met.

## The Ethical Meaning of Informed Consent

The ethical concept of "informed consent" contains two major elements: 1) comprehension (or understanding) and 2) free consent. Both of these elements together constitute an important part of a patient's "self-determination" (the taking hold of her own life and action, determining the meaning and the possibility of what she

---

[†]The Nuremberg Code in 1948 and the World Medical Association's Declaration of Helsinki in 1964 identified ethical restrictions for medical research on human subjects. For a history of the development of such codes and a general history of the ethical and legal concept of informed consent, see Faden RR, Beauchamp TL. A history and theory of informed consent. New York (NY): Oxford University Press; 1986.

undergoes as well as what she does). Both of these elements presuppose a patient's capacity to understand and to consent, a presupposition that will be examined later.

Comprehension (as an element in informed consent) includes the patient's awareness and understanding of her situation and possibilities. It implies that she has been given adequate information about her diagnosis, prognosis, and alternative treatment choices, including the option of no treatment. Moreover, this information should be provided in language that is understandable to the particular patient, who may have linguistic or cognitive limitations. Comprehension in this sense is necessary for freedom in consenting.

Free consent is an intentional and voluntary choice that authorizes someone else to act in certain ways. In the context of medicine, it is an act by which an individual freely authorizes a medical intervention in her life, whether in the form of treatment or participation in research or medical education. Consenting freely is incompatible with being coerced or unwillingly pressured by forces beyond oneself. It involves the ability to choose among options and to select a course other than what may be recommended. It is important for physicians to be cognizant of their own beliefs and values during the informed consent process. Physicians should have insight into how their opinions may affect the way in which information is presented to patients and, as a result, influence the patient's decision to accept or decline a therapy. Different models of the physician–patient relationship exist, and the degree to which a physician would share his or her values and professional opinions with patients varies (5). In many cases, the physician's personal and professional values and clinical experiences do, to some degree, influence the presentation and discussion of therapeutic options with patients. Although not considered frank manipulation or coercion, care should be taken that the physician's perspectives do not unduly influence a patient's voluntary decision making.

Free consent, of course, admits of degrees, and its presence is not always verifiable in concrete instances. If free consent is to be operative at all in the course of medical treatment, it presupposes knowledge about and understanding of all the available options.

Many thoughtful individuals have different beliefs about the actual achievement of informed consent and about human freedom. Many philosophical disputes have raged about what freedom is and whether it exists. These differences in underlying philosophical perspectives do not, however, alter the general agreement about the need for informed consent and about its basic ethical significance in the context of medical practice and research. It is still important to try to clarify, however, who and what informed consent serves and how it may be protected and fostered. This clarification cannot be achieved without some consideration of its basis and goals and the concrete contexts in which it must be realized.

## The Ethical Basis and Purpose of Informed Consent

One of the important arguments for the ethical requirement of informed consent is an argument from utility, or from the benefit that can come to patients when they actively participate in decisions about their own medical care. The involvement of patients in such decisions is good for their health—not only because it helps protect against treatment that patients might consider harmful, but also because it often contributes positively to their well-being. There are at least two presuppositions here: 1) patients know something experientially about their own medical condition that can be helpful and even necessary to the sound management of their medical care, and 2) wherever it is possible, patients' active role as primary guardian of their own health is more conducive to their well-being than is a passive and submissive "sick role." The positive benefits of patient decision making are obvious, for example, in the treatment of alcohol abuse. But the benefits of active participation in medical decisions are multifold for patients, whether they are trying to maintain their general health, recover from illness, conceive and give birth to healthy newborns, live responsible sexual lives, or accept the limits of medical technology.

Utility, however, is not the only reason for protecting and promoting patient decision making. Indeed, the most commonly accepted foundation for informed consent is the principle of respect for persons. This principle expresses an ethical requirement to treat persons as "ends in themselves" (that is, not to use them solely as means or instruments for someone else's purposes and goals). This requirement is based on the belief that all persons, as persons, have certain features or characteristics that constitute the source of an inherent dignity, a worthiness and claim to be affirmed in their own right. One of these features has come to be identified as personal autonomy—a person's capacity for self-determination (for self-governance and freedom of choice). To be autonomous is to have the capacity to set one's own agenda. Given this capacity in persons, it is ordinarily an ethically unacceptable violation of who and what persons are to manipulate or coerce their actions or to refuse their participation in important decisions that affect their lives.

An important development in ethical theory in recent years is the widespread recognition that autonomy is not the only characteristic of persons that is a basis for the requirement of respect. Human beings are essentially social beings, relational in the structure of their personalities, their needs, and their possibilities. As such, then, the goal of human life and the content of human well-being cannot be adequately understood only in terms of self-determination—especially if self-determination is understood individualistically and if it results in human relationships that are primarily adversarial. A sole or even central emphasis on narrow conceptions of patient autonomy that presume a highly individualistic agent in

the informed consent process in the medical context risks replacing paternalism with a distanced and impersonal relationship of strangers negotiating rights and duties. If persons are to be respected and their well-being promoted, informed consent must be considered in the context of individuals' various relationships.

Patients approach medical decisions with a history of relationships, personal and social, familial and institutional. They make decisions in the context of these relationships, shared or not shared, as the situation allows. One such relationship is between patient and physician (or often between patient and multiple professional caregivers).

The focus, then, for understanding both the basis and the content of informed consent must shift to include the many facets of the physician–patient relationship. Informed consent, from this point of view, is not an end, but a means. It is a means not only to the responsible participation by patients in their own medical care but also to a relationship between physician (or any medical caregiver) and patient. From this perspective, it is possible to see the contradictions inherent in an approach to informed consent that would, for example:

- Lead a physician (or anyone else) to say of a patient, "I consented the patient"
- Assume that informed consent is achieved simply by the signing of a document
- Consider informed consent primarily as a safeguard for physicians against professional liability

This view of informed consent posits a dialogue between patient and health care provider in support of respect for patient autonomy. A major objective of this view is to prevent the practitioner from imposing treatments. It does not, however, require practitioners to accede to patient requests for unproven or harmful treatment modalities.

## Obstetrics and Gynecology: Special Ethical Concerns for Informed Consent

The practice of obstetrics and gynecology has always faced special ethical questions in the implementation of informed consent. How, for example, can the autonomy of patients best be respected when serious decisions must be made in the challenging situations of labor and delivery? What kinds of guidelines can physicians find for respecting the autonomy of adolescents, when society acknowledges this autonomy by and large only in the limited spheres of sexuality and reproduction? In the context of genetic counseling, where being "non-directive" is the norm, is it ever appropriate to recommend a specific course of action? How much information should be given to patients about controversies surrounding specific treatments? How are beneficence requirements (regarding the well-being of the patient) to be balanced with respect for autonomy, especially in a field of medical

practice where so many key decisions are irreversible? These and many other questions continue to be important for fulfilling the ethical requirement to seek informed consent.

Developments in the ethical doctrine of informed consent (regarding, for example, the significance that relationships have for decision making) have helped to focus some of the concerns that are particularly important in the practice of obstetrics and gynecology (1). Where women's health care needs are addressed, and especially where these needs are related to women's sexuality and reproductive capacities, the issues of patient autonomy and its relational nature come to the forefront. Perspectives and insights for interpreting these issues are now being articulated by women out of their experience—that is, their experience specifically in the medical setting, but also more generally in relation to their own bodies, in various patterns of relation with other individuals, and in the larger societal and institutional contexts in which they live. These perspectives and insights offer both a help and an ongoing challenge to professional self-understanding and practice of obstetricians and gynecologists (whether they themselves are women or men).

New models for the active participation of health care recipients have been created in obstetrics and gynecology. Some of these developments are the result of arguments that pregnancy and childbirth should not be thought of as diseases, although they bring women importantly into relation with medical professionals and, in some cases, carry a potential for morbidity or mortality. Even when women's medical needs pointedly require diagnosis and treatment, their concerns to hold together the values of both autonomy and their relationships have been influential in shaping not only ethical theory but also medical practice. Women themselves have questioned, for example, whether autonomy can really be protected if it is addressed in a vacuum, apart from an individual's concrete roles and relationships. But women as well as men also have recognized the ongoing importance of respect for autonomy, although they suggest it should be reconceptualized as less individualistic and more "relational" (9). They call for attention to the complexity of the relationships that are involved, especially when sexuality and parenting are at issue in medical care, while upholding the importance of bodily integrity and self-determination.

The difficulties that beset the full achievement of informed consent in the practice of obstetrics and gynecology are not limited to individual and interpersonal factors. Both health care providers and recipients of medical care within this specialty have recognized the influence of such broad social problems as the historical imbalance of power in gender relations and in the physician–patient relationship, the constraints on individual choice posed by complex medical technology, and the intersection of gender bias with race and class bias in the attitudes and actions of individuals and institutions. None of these

problems makes the achievement of informed consent impossible. But, they point to the need to identify the conditions and limits, as well as the central requirements, of the ethical application of this doctrine.

## Ethical Applications of Informed Consent

Insofar as comprehension and voluntariness are the basic ethical elements in informed consent, its efficacy and adequacy will depend on the fullness of their realization in patients' decisions. There are ways of assessing this and strategies for achieving informed consent, even though it involves a process that is not subject to precise measurement.

It is difficult to specify what consent consists of and requires because it is difficult to describe a free decision in the abstract. Two things can be said about it in the context of informed consent to a medical intervention, however, elaborating on the conceptual elements identified previously in this Committee Opinion. The first is to describe what consent is not, what it is freedom from. Informed consent includes freedom from external coercion, manipulation, or infringement of bodily integrity. It is freedom from being acted on by others when they have not taken account of and respected the individual's own preference and choice. This kind of freedom for a patient is not incompatible with a physician's giving reasons that favor one option over another. Medical recommendations, when they are not coercive or deceptive, do not violate the requirements of informed consent. For example, to try to convince a patient to take a medication that will improve her health is not to take away her freedom (assuming that the methods of persuasion respect and address, rather than overwhelm, her freedom).

Second, although informed consent to a medical intervention may be an authorization of someone else's action toward one's self, it is—more profoundly—an active participation in decisions about the management of one's medical care. It is (or can be), therefore, not only a "permitting" but a "doing." It can include decisions to make every effort toward a cure of a disease; or when a cure is no longer a reasonable goal, to maintain functional equilibrium; or, finally, to receive only supportive or palliative care. The variety of choices that are possible to a patient ranges, for example, from surgery to medical therapy, from diagnostic tests to menopausal hormone therapy, and from one form of contraception to another. For women in the context of obstetrics and gynecology, the choices may be positive determination of one kind of assisted reproduction or another or one kind of preventive medicine or another—choices that are best described as determinations of their own actions rather than passive "receiving" of care.

Consent in this sense requires not only external freedom and freedom from inner compulsion, but also (as previously noted in this document) freedom from ignorance. Hence, to be ethically valid, consent must be "informed."

Consent is based on the disclosure of information and a sharing of interpretations of its meaning by a medical professional. The accuracy of disclosure, insofar as it is possible, is governed by the ethical requirement of truth-telling. The adequacy of disclosure has been judged by various criteria, which may include the following:

1. The common practice of the profession
2. The reasonable needs and expectations of the ordinary individual who might be making a particular decision
3. The unique needs of an individual patient faced with a given choice[‡]

Although these criteria have been generated in the rulings of courts, the courts themselves have not provided a unified voice as to which of these criteria should be determinative. Trends in judicial decisions in most states were for a time primarily in the direction of the "professional practice" criterion, requiring only the consistency of a physician's disclosure with the practice of disclosure by other physicians. Now the trend in many states is more clearly toward the "reasonable person" criterion, holding the medical profession to the standard of what is judged to be material to an ordinary individual's decision in the given medical situation. The criterion of the subjective needs of the patient in question generally has been too difficult to implement in the legal arena, but its ethical force is significant.

Health care providers should engage in some ethical discernment of their own as to which criteria are most faithful to the needs and rightful claims of patients for disclosure. All three criteria offer reminders of ethical accountability and guidelines for practice. All three can help to illuminate what needs to be shared in the significant categories for disclosure: diagnosis and description of the patient's medical condition, description of the proposed treatment and its nature and purpose, risks and possible complications associated with the treatment, alternative treatments or the relative merits of no treatment at all, and the probability of success of the treatment in comparison with alternatives.

Listing categories of disclosure does not by itself include all the elements that are important to adequacy of disclosure. Among other matters, the obligation to provide adequate information to a patient implies an obligation for physicians to be current in their own knowledge, for instance, about treatments and disease processes. As an aid to physicians in communicating important information to patients, ACOG makes available more than 100 patient education pamphlets on a wide variety of subjects. When

---

[‡]For an overview of legal standards for disclosure and ethical questions that go beyond legal standards, see Faden RR, Beauchamp TL. A history and theory of informed consent. New York (NY): Oxford University Press; 1986.

physicians make informed consent possible for patients by giving them the knowledge they need for choice, it should be clear to patients that their continued medical care by a given physician is not contingent on their making the choice that the physician prefers (assuming the limited justifiable exceptions to this that will be addressed later).

Those who are most concerned with problems of informed consent insist that central to its achievement is communication—communication between physician and patient, communication among the many medical professionals who are involved in the care of the patient, and communication (where this is possible and appropriate) with the family of the patient. Documentation in a formal process of informed consent can be a help to necessary communication (depending on the methods and manner of its implementation). The completion of a written consent document, whether required by statute, regulation, policy, or case law, should never be a substitute for the communication involved in disclosure, the conversation that leads to an informed and voluntary consent or refusal (6, 10).

To focus on the importance of communication for the implementation of an ethical doctrine of informed consent is, then, to underline the fact that informed consent involves a process. There is a process of communication that leads to initial consent (or refusal to consent) and that can make possible appropriate ongoing decision making.

There are, of course, practical difficulties with ensuring the kind of communication necessary for informed consent. Limitations of time in a clinical context, patterns of authority uncritically maintained, underdeveloped professional communication skills, limited English proficiency, "language barriers" between technical discourse and ordinarily comprehensible expression, and situations of stress on all sides—all of these frequently yield less than ideal circumstances for communication. Yet the ethical requirement to obtain informed consent, no less than a requirement for good medical care, extends to a requirement for reasonable communication. The conditions for communication may be enhanced by creating institutional policies and structures that make it more possible and effective.

Although understanding and voluntariness are basic elements of informed consent, they admit of degrees. There will always be varying levels of understanding, varying degrees of internal freedom. The very matters of disclosure may be characterized by disagreement among professionals, uncertainty and fallibility in everyone's judgments, the results not only of scientific analysis but of medical insight and art. And the capacities of patients for comprehension and consent are more or less acute, of greater or lesser power, focused in weak or strong personal integration, and compromised or not by pain, medication, disease, or social circumstance. Some limitations mitigate the obligation to obtain informed consent, and some render it impossible. But any compromise or relax-

ation of the full ethical obligation to obtain informed consent requires specific ethical justification.

## The Limits of Informed Consent

Because informed consent admits of degrees of implementation, there are limits to its achievement. These are not only the limits of fallible knowledge or imperfect communication. They are limitations in the capacity of patients for comprehension and for choice. Assessment of patient capacity is itself a complex matter, subject to mistakes and to bias. Hence, a great deal of attention has been given to criteria for determining individual capacity (and the legally defined characteristic of "competence") and for just procedures for its evaluation (8). When individuals are entirely incapacitated for informed consent, the principles of respect for persons and beneficence require that the patient be protected. In these situations, someone else must make decisions on behalf of the patient. A surrogate decision maker should be identified to provide a "substituted judgment" (a decision based on what the patient would have wanted, assuming some knowledge of what the patient's wishes would be); if the patient's wishes are unknown, the surrogate makes a decision according to the "best interests" of the patient. If the patient has previously executed an advance directive, that document should guide the selection of a surrogate decision maker or the specific decisions made by the surrogate or both, depending on the nature of the advance directive.

The judgment that informed consent is impossible in some circumstances indicates a kind of limit that is different from a partial actualization of consent or consent by an appropriate surrogate. One way to acknowledge this is to say that there are limits to the obligation to obtain informed consent at all. There are several exceptions to the strict rule of informed consent.

First, impossibility of any achievement of informed consent suspends or limits the ethical obligation. This is exemplified in emergency situations in which consent is unattainable and in other situations when a patient is not at all competent or capable of giving consent and an appropriate surrogate decision maker is not available. In the practice of obstetrics and gynecology, as in any other specialty practice, there are situations where decisions can be based only on what is judged to be in the best interest of the patient—a judgment made, if possible, by a designated surrogate, legal guardian, or family members together with medical professionals. Yet often when a patient is not able to decide for herself (perhaps, for example, because of the amount of medication needed to control pain), a substituted judgment or a judgment on the basis of prior informed consent can be made with confidence if care has been taken beforehand to learn the patient's wishes. This signals the importance of early communication so that what a patient would choose in a developing situation is known—so that, indeed, it remains possible to respect the self-determination that informed consent represents.

A second way in which the rule of informed consent may be suspended or limited is by being overridden by another obligation. A number of other ethical obligations can, in certain circumstances, override or set limits on the requirement to obtain informed consent. For example, strong claims for the public good (specifically, public health) may set limits to what a patient can refuse or choose. That is, although the rights of others not to be harmed may sometimes take priority over an individual's right to refuse a medical procedure (as is the case in exceptional forms of mandatory medical testing and reporting), scarcity of personnel and equipment may in some circumstances mean that individual patients cannot have certain medical procedures "just for the choosing."

In rare circumstances, what is known as therapeutic privilege can override an obligation to disclose information and hence to obtain informed consent. Therapeutic privilege is the limited privilege of a physician to withhold information from a patient in the belief that this information about the patient's medical condition and options will seriously harm the patient. Concern for the patient's well-being (the obligation of beneficence) thus comes into conflict with respect for the patient's autonomy (11). This is a difficult notion to apply—great caution must be taken in any appeal to it—and the rationale for withholding information should be carefully documented. The concept of therapeutic privilege should not, for example, be used as a justification for ignoring the needs and rights of adolescents (or adults) to participate in decisions about their sexuality and their reproductive capacities. It is reasonable to argue that therapeutic privilege is almost never a basis for permanently overriding the obligation to seek informed consent. Ordinarily such overriding represents a temporary situation, one that will later allow the kind of communication conducive to the restored freedom of the patient.

Sometimes another exception to the rule of informed consent is thought to occur in the rare situation when a patient effectively waives her right to give it. This can take the form of refusing information necessary for an informed decision, or simply refusing altogether to make any decision. However, the following two statements are reasons for not considering this an exception of the same type as the other exceptions:

1. A waiver in such instances seems to be itself an exercise of choice, and its acceptance can be part of respect for the patient's autonomy.

2. Implicit in the ethical concept of informed consent is the goal of maximizing a patient's freedoms, which means that waivers should not be accepted complacently without some concern for the causes of the patient's desire not to participate in the management of her care.

In any case, it should be noted that in states where written documentation of informed consent is required, it may be necessary to meet this requirement in some legally acceptable way.

Finally, limits intrinsic to the patient–physician relationship keep the requirement of informed consent from ever being absolute. Physicians also are moral agents and, as such, retain areas of free choice—as in the freedom in some circumstances not to provide medical care that they deem either medically inappropriate or ethically objectionable. It is unethical to prescribe, provide, or seek compensation for therapies that are of no benefit to the patient (12). Interpretations of medical need and usefulness in some circumstances also may lead a physician to refuse to perform surgery or prescribe medication. The freedom not to provide standard or potentially beneficial care to which one ethically objects is sometimes called a right to "conscientious refusal," although this right is limited (13). Even in the context of justified conscientious refusal, physicians must provide the patient with accurate and unbiased information about her medical options and make appropriate referrals. In the mutuality of the patient–physician relationship, each one is to be respected as a person and supported in her or his autonomous decisions insofar as those decisions are not, in particular circumstances, overridden by other ethical obligations. The existing imbalance of power in this relationship, however, is a reminder to physicians of their greater obligation to ensure and facilitate the informed consent or refusal of each patient. Differences in knowledge can and should be bridged through efforts at communication of information; professional responsibilities to be honest and uphold the primacy of patient welfare should be respected.

Acknowledging the limits of the ethical requirement to obtain informed consent, then, clarifies but does not weaken the requirement as such. Hence, the Committee on Ethics reaffirms the eight statements that were presented at the beginning of this Committee Opinion.

## References

1. Ethical decision making in obstetrics and gynecology. ACOG Committee Opinion No. 390. American College of Obstetricians and Gynecologists. Obstet Gynecol 2007;110: 1479–87.

2. Maternal decision making, ethics, and the law. ACOG Committee Opinion No. 321. American College of Obstetricians and Gynecologists. Obstet Gynecol 2005;106: 1127–37.

3. Sterilization of women, including those with mental disabilities. ACOG Committee Opinion No. 371. American College of Obstetricians and Gynecologists. Obstet Gynecol 2007;110:217–20.

4. Human immunodeficiency virus. ACOG Committee Opinion No. 389. American College of Obstetricians and Gynecologists. Obstet Gynecol 2007;110:1473–8.

5. Surgery and patient choice. ACOG Committee Opinion No. 395. American College of Obstetricians and Gynecologists. Obstet Gynecol 2008;111:243–7.

6. American College of Obstetricians and Gynecologists. Professional liability and risk management: an essential

guide for obstetrician–gynecologists. Washington, DC: ACOG;2005.

7. Professional responsibilities in obstetric–gynecologic education. ACOG Committee Opinion No. 358. American College of Obstetricians and Gynecologists. Obstet Gynecol 2007;109:239–42.

8. President's Commission for the Study of Ethical Problems in Medicine and Biomedical and Behavioral Research. Making health care decisions: the ethical and legal implications of informed consent in the patient-practitioner relationship. Washington, DC: U.S. Government Printing Office; 1982.

9. Mackenzie C, Stoljar N, editors. Relational autonomy: feminist perspectives on autonomy, agency, and the social self. New York (NY): Oxford University Press; 2000.

10. American Medical Association. Medicolegal forms with legal analysis: documenting issues in the patient-physician relationship. Chicago (IL): AMA; 1999.

11. American Medical Association. Withholding information from patients. In Code of medical ethics of the American Medical Association: current opinions with annotations. 2008-2009 ed. Chicago (IL): AMA; 2008. 253–4. Available at: http://www.ama-assn.org/ad-com/polfind/Hlth-Ethics.pdf. Retrieved February 3, 2009.

12. American College of Obstetricians and Gynecologists. Code of professional ethics of the American College of Obstetricians and Gynecologists. Washington, DC: ACOG; 2008. Available at: http://www.acog.org/from_home/acogcode.pdf. Retrieved February 3, 2009.

13. The limits of conscientious refusal in reproductive medicine. ACOG Committee Opinion No. 385. American College of Obstetricians and Gynecologists. Obstet Gynecol 2007; 110:1203–8.

## Bibliography

Beauchamp TL, Childress JF. Principles of biomedical ethics. 6th ed. New York (NY): Oxford University Press; 2009.

Berg JW, Appelbaum PS, Lidz CW, Parker LS. Informed consent: legal theory and clinical practice. New York (NY): Oxford University Press; 2001.

Faden RR, Beauchamp TL. A history and theory of informed consent. New York (NY): Oxford University Press; 1986.

Grisso T, Appelbaum PS. Assessing competence to consent to treatment: a guide for physicians and other health professionals. New York (NY): Oxford University Press; 1998.

Katz J. The silent world of doctor and patient. Baltimore (MD): Johns Hopkins University Press; 2002.

Levine RJ. Ethics and regulation of clinical research. 2nd ed. New Haven (CT): Yale University Press; 1988.

President's Commission for the Study of Ethical Problems in Medicine and Biomedical and Behavioral Research. Making health care decisions: the ethical and legal implications of informed consent in the patient-practitioner relationship. Washington, DC: U.S. Government Printing Office; 1982.

Copyright © August 2009 by the American College of Obstetricians and Gynecologists, 409 12th Street, SW, PO Box 96920, Washington, DC 20090-6920. All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, posted on the Internet, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without prior written permission from the publisher. Requests for authorization to make photocopies should be directed to: Copyright Clearance Center, 222 Rosewood Drive, Danvers, MA 01923, (978) 750-8400.

ISSN 1074-861X

Informed consent. ACOG Committee Opinion No. 439. American College of Obstetricians and Gynecologists. Obstet Gynecol 2009; 114:401–8.