IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327 MDL 2327 |
| THIS DOCUMENT RELATES TO: WAVE 1 CASES | JOSEPH R. GOODWIN U.S. DISTRICT JUDGE |

**PLAINTIFFS' EMERGENCY MOTION TO RECONSIDER THE SCOPE OF WAVE 1 DEFENSE MEDICAL EXAMS**

On February 18, 2016, Magistrate Judge Eifert issue Pretrial Order #214, granting in part and denying in part Motion to Define the Permissible Scope of Wave 1 Defense Medical Exams ("DMEs") finding, in pertinent part, that Plaintiffs were not allowed to audio record Plaintiffs' DMEs. ("PTO #214," Dkt. No. 1882 at 3; Transcript of teleconference held February 17th, 2016 at 36-38.) Additionally, in *Carolyn Lewis v. Ethicon, Inc., et al*. Case No. 2:12-cv-04301, dated October 23, 2013 (Docket No. 82) ("*Lewis* IME opinion"), this Court denied Plaintiffs' request for an order authorizing them to retain a private nurse to accompany Ms. Lewis and observe the examination. Because several disturbing issues have arisen during the course of a number of Plaintiffs' examinations, Plaintiffs urgently seek reconsideration of the scope of Wave 1 DMEs.

**ARGUMENT**

**A. Reconsideration by Magistrate Judge Eifert is Proper in Light of Defendants' Experts Conduct at many of the DMEs Conducted to date.**

A district court may reconsider a non-dispositive interlocutory order under Rule 54(b) (*see In re: Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, 2014 U.S. Dist. LEXIS 15288, *2553-54 (S.D. W. Va. Feb. 3, 2014)), as well as its own inherent authority to

1

control the docket and issue discovery rulings. The power to amend previous interlocutory orders stems from a court's "inherent power and Rule 54(b) to afford relief 'as justice requires.'" *Johnson v. Dollar Gen. Corp.*, No. 2:06-CV-173, 2007 U.S. Dist. LEXIS 69964, at *7-8 (E.D. Tenn. Sept. 20, 2007) (Collier, J.) (collecting cases). The power to reconsider an order is "committed to the discretion of the district court." *Am. Canoe Ass'n v. Murphty Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). In exercising this discretion, courts must be sensitive to "concerns of finality and judicial economy" with the understanding being that the "ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Id*.

Rule 54(b) states that such an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).[1] "[A]lthough a 'motion for reconsideration under Rule 54(b) is not subject to the strictures of a Rule 60(b) motion, this district has been 'guided by the general principles of Rules 59(e) and 60(b) in determining whether a Rule 54(b) motion should be granted." *Id.* at *2555 (quoting *Shrewsbury v. Cyprus Kanawha Corp.*, 183 F.R.D. 492, 493 (S.D. W. Va. 1998)). In this regard, the Fourth Circuit recognizes three grounds for reconsideration: (1) to accommodate an intervening change in controlling law, (2) to account for new evidence, and (3) to correct a clear error of law or prevent manifest injustice. *Id.* at *2555 (citing *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

In the *Lewis* IME opinion, Magistrate Judge Eifert pointed out that the standard prohibiting a third party from attending a Rule 35 examination is only overcome by "special circumstances" that merit such a deviation. *Citing to Baron v. United States*, No. 1:12-cv-00334-DBH, 2013 WL 3197134, at *2 (D.Me. June 21, 2013. Such special circumstances exist in this

---

[1] *See also Fayetteville Investors v. Commercial Builders Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject for reconsideration at any time prior to the entry of a final judgment.").

instance based generally on the number of reports of abnormally painful and rough pelvic exams of the plaintiffs by defense physicians; exams not occurring as scheduled by the parties or inconsistent with the served Notices; inappropriate comments or rude comments by the physicians to the plaintiffs; defense physicians arguing or being combative with the plaintiffs regarding reported symptoms or health problems; and, defense physicians trying to convince plaintiffs that mesh is not the problem.  The conduct of defense physicians, as more fully described herein, certainly demonstrates the type of "special circumstances" required to overcome the standard set out in *Baron*.  Below are some of the most outrageous events that have taken place over the past two weeks:

**(1) Plaintiff:  Monica Freitas.  Plaintiff's Attorney:  Fidelma Fitzpatrick.  <u>Defendant's Physician:  Brian Flynn, M.D.</u> (Centennial, Colorado)   Date of Exam:  2/24/2016.**

Prior the DME beginning, at or about 9AM, Ms. Freitas advised Dr. Flynn that she was scared to have vaginal exams because of pain and cramping in her abdominal area.  She told him that even sex caused her pain.  After Dr. Flynn inserted a speculum into Ms. Freitas' vagina she experienced a sharp pain across her vaginal wall and told Dr. Flynn that "it hurt."  The pain intensified as if someone were stabbing her.  She pushed against the stirrups to the back of the bed, held her knees and screamed, "why, why, why"… and started sobbing.  She asked Dr. Flynn "what is this?" and where is this? He replied that "*it's the mesh and if you don't let me finish the exam, I will have to submit this as incomplete.*"  Ms. Freitas continued sobbing and Dr. Flynn said nothing to comfort her.  He said he would use a smaller speculum and placed something in Ms. Freitas' vagina and told her to push like she was giving birth and to cough.  The exam ended after that.  Ms. Freitas reported that the exam was "horribly" painful and she began bleeding profusely following exam.  The bleeding was caused by Dr. Flynn's exam in that she was not

menstruating prior to the exam. Ms. Freitas felt compelled and threatened by the doctor's comments.

After the exam and while still experiencing severe pain and cramping, Ms. Freitas flew back to Ontario, arriving at 6:15PM.  She felt as though she was developing an extremely bad bladder infection.  After landing, she presented to an urgent care at 7:31PM seeking pain relief.  Ms. Freitas was examined by James Brown, M.D. at Mountain View Urgent Care in Rancho Cucamonga, California.  He prescribed her a muscle relaxer, cyclobenzaprine and 800 mg Ibuprofen.

Unfortunately, on 02/25/2016, Ms. Freitas reported back to work still experiencing cramps with onset of dizziness and nausea.  At 6:45PM that evening while attending her daughter's basketball practice at their church, Ms. Freitas passed out.  Paramedics transported her to San Antonio Medical Hospital. She was discharged home after resting in the emergency room for a period of time. (Letter prepared by Ms. Freitas attached hereto as Exhibit 1.)

During Ms. Freitas' exam, Dr. Flynn was well aware that he was causing Ms. Freitas horrible pain and failed to stop the exam.  Instead, he essentially threatened and intimidated her by saying that he would write down that the examination was "*incomplete*" if he could not go forward.  The exam, in addition to causing pain caused Mr. Freitas to bleed profusely.  The defense medical exam caused Ms. Freitas an injury she did not have prior to the exam. Dr. Flynn's conduct is outrageous and intolerable directly causing Ms. Freitas bodily harm and emotional distress that immediately required medical attention.

**(2) Plaintiff: Sandra Wolfe.  Plaintiff's Attorney:  Derek Potts and Richard A. Voytas. Defendant's Physician:  Christina Pramudji, M.D. (Houston, TX)**.  **Date of Exam: 2/19/2016.**

Ms. Wolfe is 74 years old.  The defense medical exam was scheduled for Feb. 19, 2016, at 1:30 PM in Houston, TX.  Plaintiff lives in Eldon, MO and has a bad knee that prevents her

4

from moving quickly. Plaintiff had to travel by car three hours from Eldon, MO to St. Louis, MO to catch an airplane flight to Houston, TX. The exam was scheduled by defense counsel with plaintiff's counsel, Richard A. Voytas. His paralegal, Ashley Grigsby, accompanied Ms. Wolfe to the scheduled exam due to her age and mobility issues. The defense medical exam was scheduled based in part on the availability of Ms. Grigsby to accompany the plaintiff to the exam. The plaintiff, along with Ms. Grigsby, arrived for the exam at 1PM, which was 30 minutes early. <u>Upon arrival at Dr. Pramudji's office, the Office Manager advised Ms. Wolfe and Ms. Grigsby that the defense medical exam was not schedule for and would not occur at all on Feb. 19, 2016, because Dr. Pramudji had surgeries scheduled for that afternoon.</u> Additionally, the Office Manager represented that neither the defendant nor defendant's lawyers had been in touch with them regarding this exam. At 2PM, Ms. Wolfe and Ms. Grigsby were advised by the Office Manager that the doctor would try to perform the exam by 3PM, but could not confirm the same. Ms. Grigsby explained that they had to catch a 5:30PM flight, but the Office Manager could not give them a definitive time, or otherwise confirm, that the exam would take place by 3PM. Ms. Grigsby and Ms. Wolfe waited at the doctor's office until 2:30PM. At that point, the doctor still had not reported back to the office from surgery and no one could confirm the status of the exam. Ms. Wolfe and Ms. Grigsby proceeded back to the airport in order to make their 5:30 PM flight to St. Louis, MO where they then still had a 3 hour drive back to Eldon, MO. (Affidavits of Richard A. Voytas, Esq. and Ashely S. Grigsby attached hereto as Exhibit 2.)

**(3) Plaintiff: Cherise Springer. Plaintiff's Attorney: Mason Boling. <u>Defendant's Physician: Melvyn Anhalt, M.D. (Houston, TX).</u> Date of Exam: 2/24/2016.**

Dr. Anhalt was not only combative and argumentative to Ms. Springer, but also told her that he was "the innocent party here." Ms. Springer reported this to be "the most painful vaginal

exam she's ever had." The exam was rough and felt like the doctor was trying to palpate her tonsils. Additionally, the doctor spent a lot of time examining the exterior genitalia area.

Dr. Anhalt argued with Ms. Springer about her history of bladder infections. He insisted she had a history and the plaintiff advised that she had only had two prior to the mesh implant.

**(4) Plaintiff: Karen Forester. Plaintiff's Attorney: Mason Boling. <u>Defendant's Physician: Lee Congleton (Knoxville, TN)</u>. Date of Exam: 2/25/2016.**

Dr. Congleton told Ms. Forester that the mesh was not the cause of her problems and that she absolutely should not have it taken out.

**(5) Plaintiff: Constance Daino. Plaintiff's Attorney: Fidelma Fitzpatrick. <u>Defendant's Physician: Cynthia Bergmann, M.D.</u>**

Dr. Bergmann required a full physical exam head to toe, including reflexes and touching of all parts of her body including her breasts.

**(6) Plaintiff: Patricia Conti. Plaintiff's Attorney: Renee Baggett. <u>Defendant's Physician: Marc Toglia, M.D. (Media, PA)</u>. Date of Exam: 2/25/2016.**

Ms. Conti has advised that Dr. Toglia tried to get her to commit to his way of thinking. Furthermore, he implied that all the mesh had been removed. Ms. Conti corrected him by saying that all of the mesh was not removed and that she has sought treatment from other physicians. Dr. Toglia also implied that her pain with sex results from her hysterectomy scarring that occurred over 30 years ago. Ms. Conti advised him that she has never had pain with sex until implantation of her mesh.

**(7) Plaintiff: Patricia Ruiz. Plaintiff's Attorney: Renee Baggett. <u>Defendant's Physician: Bryan Flynn, M.D. (Centennial, CO)</u>. Date of Exam: 2/29/2016.**

Ms. Ruiz reported that this was a horrific experience. Not only was she provided with the wrong address for the examination, but when she finally figured out where the office was and arrived at the location a mere 10 minutes late, she was told by one of the staff there that Dr. Flynn didn't have an office at that location. After returning to her hotel she received a call from

the facility stating that Dr. Flynn was actually borrowing a friend's office at that location and asking her to return.

Additionally, Ms. Ruiz reported that Dr. Flynn was extremely unprofessional and that his medical history intake was very disorganized, firing off questions very quickly and then attempting to paraphrase her responses. When she attempted to correct the errors with his paraphrasing he would scowl at her. She felt like he purposefully tried to state things in such a way so as to trivialize her complaints. Ms. Ruiz also reported that the exam was extremely rough, as if Dr. Flynn had no compassion for the pain she was experiencing. (Declaration of Patricia Ruiz attached hereto as Exhibit 3.)

**(8) Plaintiff:  Joyce Justus.  Plaintiff's Attorney:  Kimberly Wilson White.  <u>Defendant's Examining Physician:  Rebecca Ryder, M.D. (Chesapeake, VA).</u>  Date of Exam: 2/29/2016.**

Ms. Justus is 71 years old and lives in Black Mountain, North Carolina. The defense medical exam was scheduled for Chesapeake, Virginia. This venue is over 400 miles from where the plaintiff resides, and approximately a 6 hour travel time by car. After much discussion and dissent by the plaintiff, the parties agreed to the venue and scheduling of said exam without involvement of the Court so long as transportation would be provided for Ms. Justus and a companion could accompany her to Chesapeake, VA. Because of the distance of said defense exam, Ms. Justus was required to travel the day before and stay overnight away from her home in order to arrive at the exam by 8:30AM as Noticed and scheduled by defense counsel. Upon arrival at Dr. Ryder's office, Ms. Justus was told that <u>the staff was unaware of the exam and that Dr. Ryder was not in the office.</u> Ms. Justus was confused, insisted that she had an appointment with Dr. Ryder, and gave Dr. Ryder's staff a copy of attorney-client correspondence in an effort *to prove* she indeed had an appointment with Dr. Ryder. Ms. Justus did not understand that she should not have turned over communications from her attorney. Dr. Ryder's staff made copies

of the attorney-client communications and gave them to Dr. Ryder. Dr. Ryder then forwarded same to defense counsel. According to Ms. Justus, approximately 10 minutes after Dr. Ryder's staff reviewed the correspondence she was taken back to an exam room. Dr. Ryder then showed up about 20 minutes after Ms. Justus was left in this exam room. The exam took place and Ms. Justus reported that it was very painful and that she "almost came off the table."

### B. Clarification is Needed to Protect Plaintiffs from Harm

There is well established case law specifically holding that a health care provider performing a medical evaluation of a plaintiff on behalf of a third party *at the very least* owes the plaintiff a duty of care "to avoid harming the examinee during the examination". *Reed v. Bojarski*, 166 N.J. 89, 764 A.2d 433 (2001). In the majority of jurisdictions, the duty is much broader. For example, some jurisdictions hold that the exam itself creates a physician-patient relationship and the examining physician must exercise reasonable care. *Id*. Plaintiffs alleging that they were injured during the course of examinations performed on behalf of third parties can maintain that the physicians who conducted the examinations committed the intentional torts of assault and battery. *Chapman v. Labone*, 460 F. Supp. 2d 989 (S.D. Iowa 2006) (plaintiff asserted claims for intentional infliction of emotional distress and interference with a business relationship); *Canfield v. Grinnell Mut. Reinsurance Co.*, 610 N.W.2d 689 (Minn. Ct. App. 2000) (reversing the dismissal of an examinee's battery claim against a physician who performed an independent medical examination); *Harris v. Kreutzer*, 271 Va. 188, 624 S.E.2d 24 (2006) (plaintiff asserted a claim for intentional infliction of emotional distress against the psychologist who examined her on behalf of the defendant in her personal injury action).

The court in *Harris v. Kreutzer*, 271 Va. 188, 624 S.E.2d 24 (2006), set forth the elements necessary for a plaintiff to prevail against an examining physician, where there's a

8

claim of emotional distress arising from a third party medical exam. The court noted that the elements of such a claim are: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe.

Here, Plaintiffs' have demonstrated that the conduct of Defendants' experts during the above referenced DMEs has been intentional, reckless, outrageous and intolerable to say the least.  Such conduct should not be condoned and action must be taken to prevent similar conduct in the future.

## CONCLUSION

These women should neither be treated with disrespect nor physically hurt during these exams.  Therefore, in light of the above, Plaintiffs respectfully request that this court reconsider its prior rulings on the matter and allow a third party support person to accompany Plaintiffs during their examinations or, at the very least, allow an audio recording of the examination. Additionally, Plaintiffs' request any additional relief this Court deems appropriate under these circumstances to deter such conduct in the future.

This 8th Day of March, 2016			Respectfully submitted,

/s/  D. Renee Baggett
Bryan F. Aylstock, Esq.
Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, Florida  32563
(850) 202-1010
(850) 916-7449 (fax)
E-mail:  rbaggett@awkolaw.com

/s/ Thomas P. Cartmell
THOMAS P. CARTMELL
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
E-mail: tcartmell@wcllp.com

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2016, I electronically filed the foregoing document with the Clerk of the court using CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ D. Renee Baggett
D. Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, FL 32563
850-202-1010
850-916-7449
rbaggett@awkolaw.com