# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE: ETHICON, INC. PELVIC         MDL No. 2327
REPAIR SYSTEM PRODUCTS
LIABILITY LITIGATION

---

**SANDRA WOLFE, ET AL.**

      **Plaintiff(s),**           **Case No.: 2:12-cv-00335**

      **v.**

**ETHICON, INC., ET AL.,**

      **Defendants.**

---

### <u>AFFIDAVIT</u>

BEFORE ME, the undersigned authority, personally came and appeared:

Richard A.Voytas, Esq.

who, after being duly sworn, did depose and state that:

1. I am of full age and majority. I am competent to make the statements herein.

2. On the date that Defendant scheduled the DME, February 19, 2016, I made the necessary arrangements for my client, Ms. Sandra Wolfe, to fly to Houston, TX for so that she could submit to the IME by Dr. Christina Pramudji at 1:30 pm at the Methodist Medical Office Building One in Houston, TX. Ms. Wolfe had to travel from Eldon, MO to St. Louis, MO (a trip of approximately three hours) on February 18, 2016 in order to fly from St. Louis, MO to Houston, TX on the date of the DME. Ms. Wolfe, who is 74 years of age, has difficulty traveling and needed to be accompanied on this trip.

1

3. I arranged for paralegal Ashley Grigsby to travel with Ms. Wolfe from Eldon to St. Louis and from St. Louis to Houston because of Ms. Wolfe's age-related difficulties in traveling and because Ms. Wolfe was apprehensive about the trip in light of the harsh treatment Ms. Wolfe and her husband had previously received from Defense counsel Bettina Strauss. Specifically, Ms. Wolfe was concerned that Ms. Strauss belittled and embarrassed Mr. Wolfe in front of Ms. Wolfe by asking repeated and improper questions about masturbation and pornography, including an accusation regarding Mr. Wolfe's use of homosexual pornography, to Mr. Wolfe in his deposition. The relevant portion of the transcript is attached hereto as **Exhibit A**.

4. Ms. Grigsby, in order to make the trip, had to arrange for childcare for her two young children and I knew that she could not be away from home overnight on February 19.

5. Ms. Grigsby reported to me via telephone that she and Ms. Wolfe had arrived at the office of Dr. Pramudji at approximately 1:00pm and that getting from the airport to the medical center had taken more than an hour in light traffic. I advised Ms. Grigsby to report to the Doctor that Ms. Wolfe was there for the scheduled DME.

6. Shortly thereafter, Ms. Grigsby telephoned me back and reported that neither Dr. Pramudji nor her office manager had any DME scheduled for that day, and that the office manager stated that Dr. Pramudji would be unable to perform the DME at all on February 19 due to the fact that the Doctor had two previously scheduled surgeries that morning and two additional surgeries scheduled for that afternoon that could not be moved, and that the doctor was not even in the medical building- the doctor was in the adjacent Hospital performing the surgeries and was expected to remain there for the duration of the day. Ms. Grigsby reported that the office manager stated that nobody from Defendant, including Defendant's lawyers, had

been in contact with Dr. Pramudji's office to advise that Ms. Wolfe would be having an IME at any time.

7. Upon hearing this, Ms. Wolfe was greatly upset and was concerned that she had been tricked or misled into wasting time on the Houston trip. and that Defendant was engaging in "bully tactics" similar to those employed during the deposition of Mr. Wolfe.

8. I immediately sent an email to Bettina Strauss, which is contained in **Exhibit B**, a complete set of my email correspondence with Ms. Strauss on this issue. I informed Ms. Strauss that Dr. Pramudji's office told Ms. Wolfe that the DME would not be possible on February 19. As a result of this impossibility, I explained that I would tell Ms. Wolfe to return to the airport. The Doctor's office was approximately one hour from the airport by car in light traffic, and Ms. Wolfe's flight was scheduled to leave at approximately 5:30pm.

9. Ms. Strauss responded by asking me to call her, which I did promptly. Ms. Strauss explained that she did not know what had happened and asked me to ask Ms. Wolfe to remain at the Doctor's office.

10. I made this request to Ms. Wolfe, who agreed to wait until 2:00pm for Dr. Pramudji to see her and emailed Ms. Strauss with confirmation of the same. Ms. Wolfe was concerned about waiting longer because between the drive time to the airport and the long wait in security Ms. Wolfe was concerned that she would miss her flight.

11. Ms. Strauss called me back, and followed this call with an email, wherein Ms. Strauss indicated that the DME had been scheduled all along and that Dr. Pramudji was simply running late due to some unforseen complications. Based on what the Doctor's office had previously reported, this was untrue. Ms. Strauss advised at this time that the DME would occur by 3:00pm if Ms. Wolfe would agree to wait that long.

12. I responded via email and explained that this was not, as far as what I had been told, a situation where the Doctor was merely running late. The Doctor's office had told Ms. Grigsby and Ms. Wolfe that the DME would not be taking place at all that day because Defense counsel never reached out to the Doctor's office to schedule the DME, and because the Doctor was not even in the medical building.

13. Ms. Strauss then telephoned me and again stated that the delay would be only until 3:00pm and that the delay might be much shorter than that, and told me to inform Ms. Wolfe that (1) the Defendant had a right to schedule Mr. Wolfe's DME and that (2) the Court would punish Ms. Wolfe by making her pay costs if Ms. Wolfe did not wait for the IME. Mr. Wolfe is not a party to this action and Ms. Strauss has no ostensible right to compel Mr. Wolfe to submit to such an examination. Nonetheless, I did inform Ms. Wolfe of both of these items per Ms. Strauss' request, and Ms. Wolfe was understandably upset at the threat to subject her husband to an IME for no apparent reason other than to punish Ms. Wolfe.

14. Ms. Grigsby thereafter called me back and stated that the Doctor's office manager reported talking with Defendant's lawyers and indicated that the Doctor would "try" to get the DME done at 3:00 at the request of the lawyers but could not affirmatively state when the DME would occur.

15. Ms. Grigsby and Ms. Wolfe thereafter waited at the Doctor's office until at least 2:30. By this time, the Doctor had still not returned from the Hospital and nobody from the Doctor's office could confirm when the DME might occur.

16. In order to make the 5:30pm flight, Ms. Wolfe and Ms. Grigsby left the Doctor's office thereafter.

4



Richard A. Vbytas, Esq

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 25 DAY OF
February , 2016.

NOTARY PUBLIC
Printed Name: Jennifer Galusha
Notary ID No.: 14985360

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE: ETHICON, INC. PELVIC        MDL No. 2327
REPAIR SYSTEM PRODUCTS
LIABILITY LITIGATION

---

**SANDRA WOLFE,**

      **Plaintiff,**              **Case No.: 2:12-cv-00335**

      **v.**

**ETHICON, INC., ET AL.,**

      **Defendants.**

---

### <u>AFFIDAVIT</u>

BEFORE ME, the undersigned authority, personally came and appeared:

Ashley S. Grigsby, Paralegal.

who, after being duly sworn, did depose and state that:

1.  I am of full age and majority. I am competent to make the statements herein.

2.  On the date that Defendant scheduled the IME, February 19, 2016, I traveled with Ms. Sandra Wolfe so that she could submit to the DME by Dr. Christina Pramudji at 1:30 pm at the Methodist Medical Office Building One in Houston, TX. Ms. Wolfe and I had to travel from Eldon, MO to St. Louis, MO (a trip of approximately three hours) on February 18, 2016 in order to fly from St. Louis, MO to Houston, TX on the date of the DME. Ms. Wolfe is 74 years of age and has some difficulty traveling. She has a bad knee and cannot move very quickly.

3.  In order to make the trip, I had to arrange for childcare for my two young children and I could not be away overnight on the evening of February 19, 2016.

1

4. Ms. Wolfe and I arrived at the office of Dr. Pramudji at approximately 1:00pm. I told the Doctor's office manager that Ms. Wolfe was there for the scheduled DME.

5. The office manager told me that a DME would not be possible at all on that day. The office manager told me that they never had any DME scheduled for that day, and that Dr. Pramudji would be unable to perform the DME at all on February 19, 2016 due to the fact that the Doctor had two previously scheduled surgeries that morning and two additional surgeries scheduled for that afternoon that could not be moved. Dr. Pramudji was not even in the medical building and the office manager had to correspond with her via text message. Dr. Pramudji was in the adjacent Hospital performing the scheduled surgeries. The office manager stated that nobody from Defendant, including Defendant's lawyers, had been in any contact with Dr. Pramudji's office to advise that Ms. Wolfe would be having an DME on February 19, 2016 or at any other time.

6. At approximately 2:00pm, the Doctor's office manager told me that she had been talking with Defendant's lawyers and informed me that the Doctor would "try" to get the IME done at or before 3:00 at the request of the lawyers. The office manager could not affirmatively state when the IME would occur, nor could she guarantee that it would occur before 3:00pm even though I explained that Ms. Wolfe had to make her 5:30pm flight.

7. Ms. Wolfe and I thereafter waited at the Doctor's office until at least 2:30. By this time, the Doctor had still not returned from the Hospital and nobody from the Doctor's office could still not confirm when the DME might occur.

8. In order to make the 5:30pm flight, Ms. Wolfe and I left the Doctor's office thereafter.





Ashley S. Grigsby

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 25 DAY OF
February , 2016.

NOTARY PUBLIC
Printed Name: Jennifer Galusha
Notary ID No.: 14985360

3