

WILSONLAW

EXHIBIT B

March 3, 2016

**VIA EMAIL TRANSMISSION**

Ms. Christy D. Jones
Butler Snow
Post Office Box 6010
Ridgeland, MS 39158

        Re:    Joyce Justus v. Ethicon, Inc., Ethicon Women's Health and Urology, a Division
                of Ethicon, Inc., Gynecare, and Johnson & Johnson
                Civil Action No.: 2:12-cv-00956

Dear Christy:

Please allow this correspondence to serve as a response to your March 2, 2016, correspondence forwarded to Bryan Aylstock and Tom Cartmell, in part, pertaining to the defense medical exam of my client, Joyce Justus. Please be advised that when Ms. Justus timely presented for her defense medical exam as scheduled by counsel for Ethicon with Dr. Ryder office on Monday, February 29, 2016, at 8:30AM, she was told by Dr. Ryder's staff that they were unaware of the appointment and Dr. Ryder was not in the office. They went on to advise Ms. Justus that she would have to come back later in the afternoon. Ms. Justus, who is 71 years old, became nervous and confused, and presented her "Attorney Client Privileged" communication in an effort to *prove* she had a scheduled examination with Dr. Ryder which she had traveled over 400 miles to attend. She also told the staff that she would not wait until the afternoon as the exam was scheduled for 8:30AM. After some period of time, Dr. Ryder's medical staff advised Ms. Justus that Dr. Ryder was in and would go forward with the exam. This entire process was confusing for Ms. Justus and caused her a great amount of anxiety. Ms. Justus was specifically told by my office not to produce attorney client privileged information; but, after I discussed the situation with her this morning, she advised me that she simply did not know what else to do and had no idea she was turning over an attorney client privileged communication. I request that you return the same forthwith pursuant to Paragraph 12 of Pre-Trial Order #11 and destroy any and all copies you and/your client possess.

In terms of the so called "instructions" regarding frequent urination, dyspareunia and "precise" degree of pain, please be advised that one of the main reasons my client did not want to travel over 400 miles away from her home for this defense medical exam is because she has to urinate several times a day. After speaking with Anita Modak-Truran regarding arrangements for transportation, I felt comfortable that there would be no issue with Ms. Justus asking the driver to stop as much as she needed to for a bathroom break. I reinforced this with Ms. Justus, as did my paralegal, many times prior to her leaving on February 28, 2016 for the trip. While you are trying to twist my "attorney privileged communication" with my 71 year old client, there's simply nothing insidious about reinforcing her to ask to use the bathroom as much as she needs to. In terms of her dyspareunia, this is the same information that was supplemented to our

1111 Haynes Street, Suite 103 (27604) • P.O. Box 10389 • Raleigh, NC 27605
Phone (919) 890-0180 / (877) 571-4047 • Fax (919) 882-1758
www.wilsonlawpa.com

expert after he had conducted his evaluation of Ms. Justus and supplemented in the Plaintiff's Fact Sheet. Ms. Justus had not engaged in sexual activity for eight years and then did so as reported by her on or about October 31, 2015 subsequent to the Plaintiff's IME by Dr. Porter. Just prior to the defense examination, the client had reported to us that the dyspareunia remained at or around a 5 on a scale of 1 to 10. This is information we reported to Dr. Porter. We explained to Ms. Justus that she needs to report that level to Dr. Ryder if asked. Again, this is the exact same information that has been reported to plaintiff's expert. There was nothing factually inaccurate, disingenuous or insidious about that and/or preparing Ms. Justus, to the best our ability, for the defense medical exam. Her current health problems, one would think, would be relevant to Dr. Ryder. If the scheduled defense medical exam had proceeded on time, my client would not have been placed in the position of having to prove, with attorney client privileged information, that she was at the right place at the right time.

The only problems that need highlighted with regard to the February 29, 2016 defense medical examination of my client, Joyce Justus, is that a 71 year old woman, over a two day period, had to travel 12 hours from her home to be examined by a physician she did not know and who did not show up on time for the exam. Moreover, my client reports that the pelvic exam performed by Dr. Ryder was one of the most painful pelvic exams she has ever undergone in her life. While I never like for clients to inadvertently hand over attorney work product or attorney client communications, I'm glad that Ms. Justus stood up for herself and insisted that the exam go forward as it was scheduled by the parties. I will be happy to address any one of your concerns or accusations of impropriety with the Court if necessary.

With every good wish, I remain

Very truly yours,

Kimberly Wilson White

KWW/blj
cc:    Bryan Alystock
       Renee Baggett
       Tom Cartmell