IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327 MDL 2327 |
| THIS DOCUMENT RELATES TO: WAVE 1 CASES | JOSEPH R. GOODWIN U.S. DISTRICT JUDGE |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO RECONSIDER THE SCOPE OF WAVE 1 DEFENSE MEDICAL EXAMS**

As set forth in Plaintiffs original Motion and below, Plaintiffs have produced more than sufficient evidence to warrant the specific relief requested, i.e. that an audio recording of the defense medical exam (DME) be permitted and/or a third-party to be present at these Rule 35 examinations. Further, given the facts presented, each of Defendants' DME physicians should be provided with clear instructions as to the manner in which the DME should be conducted, and to refrain from making pejorative comments during the examinations. As this Court is well aware, the examinations subject to this motion are part of Wave 1 and only the beginning of what will be hundreds, and potentially thousands, of Rule 35 examinations. Moreover, these examinations are far from the typical Rule 35 examinations in that they do not involve injuries typical of the run of the mill personal injury claims. These are not workers' compensation or automobile claims where an orthopedic doctor performs a routine examination to determine the litigants' range of motion or ability to perform certain occupational duties. These are what can only be described as painful and invasive pelvic examinations performed physicians who are clearly adversarial to the women who are being examined. Given the nature of the claims being presented, perhaps such an examination is

1

unavoidable, and Plaintiffs' are not in this motion seeking reconsideration of this Court's prior orders allowing these DMEs. It is important, however, to recognize the invasive and deeply personal nature of these examinations when considering the relief requested, particularly given the facts presented here.

Given the number and nature of factual disputes that have clearly arisen in the short time since the DMEs for the Wave 1 cases have begun, special circumstances clearly justify the relief requested by the plaintiffs. Again, what is being request is innocuous and will hopefully work to prevent such unfortunate incidents in the future. An audio recording will in no way interfere with the DME process, but rather simply record any question and answer session so at trial there will be no dispute. Alternative, if one of the plaintiff women would feel more comfortable submitting to a pelvic exam with a friend or loved one present, what is the harm to the defendants? None. Indeed, Kimberly Kenton, M.D., one of Ethicon's own DME experts has testified previously that she has never told a patient that they cannot bring someone with them to their exam:

> 23 Q. Okay. When a woman comes to you as a
> 24 patient for treatment of SUI, do you do a pelvic
> 1 exam?
> 2 A. I do.
> 3 Q. Okay. And if that patient in your
> 4 practice, just a patient now, wants to bring her
> 5 husband or someone else into the exam room with
> 6 her, do you allow that to happen?
> 7 A. I do.
> 8 Q. Have you ever told a patient that she is
> 9 not allowed to bring someone into the exam room
> 10 with her while you're doing a pelvic exam?
> 11 A. I've never told a woman that she
> 12 couldn't bring someone with her, no.[1]

Plaintiffs recognize that Defendants have submitted counter-affidavits disputing the sworn testimony of woman who submitted to the DME examinations. Indeed, given the egregiousness of

---

[1] Deposition Testimony of Kimberly Kenton, M.D., Mullins, et al. v. Ethicon, 2:12-cv-2952, 02/18/2016, 92:23-93:12 attached hereto as Exhibit 5.

that testimony, they expected nothing less, as such testimony would arguably support a claim of battery.  But that just underscores why such audio recordings or the attendance of the friend of family member is so critical and thus Defendants' Opposition actually supports Plaintiffs' request for relief in this matter.  Even at this early stage, Plaintiffs and Defendants have already identified 10 instances of either alleged inappropriate conduct by the doctors hired by Defendants and/or disputes about what occurred at the examinations.  These claims are supported by sworn testimony and are not just being made up.  Indeed, attached hereto are the medical records of Plaintiff Monica Freitas documenting her vaginal bleeding, her urgent care visit, and her subsequent fainting episode and ambulance ride to the hospital immediately following her DME.  Her claims are not simply "made up" as Defendants' claim.  They are real, just as are the claims of the other women who have come forward to offer sworn testimony in support of this motion.

      In short, allowing the examinations to be audio recorded and/or allowing a third-party be present at the examination, prevents the inevitable "he said/she said" that already has occurred and likely will continue to occur.   There can be no better evidence of what actually happens at these examinations than an audio recording.  Allowing these exams to be audio recorded (recordings would be made available to both parties equally) would not be disruptive or obstruct the examination process and would ultimately protect both parties from the problems shown to date.

      Additionally, Defendants' response to Plaintiffs' motion outlines an additional basis for allowing audio recording of these examinations.  The length of these examinations is unlimited.  Ethicon admits in its response that these physicians are routinely taking medical histories from Plaintiffs for nearly an hour.  The Court should be mindful that these doctors have been hired by Ethicon to be forensic experts.  They have access to not only the Plaintiffs' medical records, but also their deposition testimony, Plaintiff Fact Sheets, treating physician depositions as well as the Plaintiffs' case specific causation expert reports and depositions.  Taking such a long history under

3

these circumstances is akin to a second deposition.[2] No doctor, in a non-adversarial situation, takes such a time consuming and exhaustive medical history. Plaintiffs have grave concerns that Ethicon intends to convert these medical experts into "truth and veracity" witnesses by virtue of the length of time and exhaustive nature spent questioning the Plaintiffs about their medical histories. Under such circumstances, courts have allowed recording of an unsupervised physical examination. *See Zabkowicz v. West Bend Co.*, 585 F. Supp. 635 (E.D. Wis. 1984) ("plaintiffs' interest in protecting themselves from unsupervised interrogation by an agent of their opponents outweighs the defendants' interest…The defendants' expert is being engaged to advance the interests of the defendants; clearly, the doctor cannot be considered a neutral in the case.").

In response to Defendant's assertion in its *Opposition* brief that Plaintiffs' Emergency Motion is an "obvious preemptive strike" in response to the Defendants precariously obtaining attorney-client privileged information in the course of Plaintiff Joyce Justus' defense medical exam, is best case scenario a reflection of defendants' utter indifference to how these women are being treated by defendants' retained physicians. We encourage the Court to review Exhibits A and B attached to *Defendants' Opposition to Plaintiffs' Emergency Motion to Reconsider the Scope of Wave 1 Defense Medical Exams.* The only strategic preemptive striking is that of the Defendants as reflected in March 2, 2016 C. Jones correspondence.

Moreover, Plaintiffs have learned of the additional situations outlined below since filing their original motion:

**(1) Plaintiff: Jo'Ann Lehman. Plaintiff's Attorney: Frank Cesarone. Defendant's Physician: Brian J. Flynn, M.D. (Centennial, CO). Date of Exam: 2/29/2016.**

After catching a 6 a.m. flight from Illinois and multiple re-routes, Ms. Lehman arrived in Denver, Colorado, the city in which Ethicon set up her medical examination. She then

---

[2] There can be no better evidence that this medical examination process is adversarial than the examining physician taking a medical history which takes approximately 1/3rd of the time Defendants are allowed for Plaintiffs' depositions. Plainly, such is being done to circumvent the time limitations imposed by PTO 205.

proceeded, via cab, to the address provided in the Notice. Unfortunately, the address in the Notice is nowhere near the actual facility where Ethicon's physician was actually located. When Ms. Lehman couldn't reach anyone at the facility designated in Ethicon's notice (it was closed), she and the cab driver spent 45 minutes locating the proper facility. Even after the debacle caused by the improper notice, she arrived at the proper facility only to find that the doctor and his staff were nowhere to be found. The facility was locked down. Ms. Lehman left without an examination because she had a 6 a.m. flight home the next morning and did not want to risk missing it. Ms. Lehman will now be asked to travel again to complete her examination.

### (2) Plaintiff: Dina Bennett. Plaintiff's Attorney: Mikalia M. Kott. **Defendant's Physician: Salil Khandwala, M.D. (Dearborn, MI).** Date of Exam: 2/29/2016.

During Ms. Bennett's examination, Dr. Khandwala used a long, thin wooden stick (what he referred to in his report as a Q-Tip) and proceeded to touch her on her leg and say "see, that doesn't hurt." Dr. Khandwala then took the stick and probed the inside of Ms. Bennett's vagina. There was an area the doctor probed that was moderately painful to her. However, when he used the stick to push on the back of her vagina, it caused Ms. Bennett to jump back in pain. She claims that "it hurt so bad, and felt like pain I had never felt before." He continued to use the stick to push on the back of Ms. Bennett's vagina, but this time with his fingers also pushing on her abdomen. This was extremely painful for Ms. Bennett. She does not recall ever feeling this type of pain with any other pelvic exams performed by any of her other doctors.[3]

Additionally, Plaintiffs hereby submit the following exhibits which are sworn Affidavits and/or Declarations from Plaintiffs previously identified in Plaintiffs' original Emergency *Motion to Reconsider Scope of Wave 1 Defense Medical Exams*.

    1. Exhibit 1 – Declaration of Joyce Justus

---

[3] Declaration of Dina Sanders Bennett attached hereto as Exhibit 4.

2. Exhibit 2 – Affidavit of Cherise Springer

3. Exhibit 3 – Declaration of Monica Freitas with medical records

For these additional reasons, Plaintiffs respectfully request that this Court reconsider its prior rulings on the scope of Wave 1 DMEs and allow a third party support person to accompany Plaintiffs during their examinations or, at the very least, allow an audio recording of the examination. Plaintiffs further request that Defendants' DME physicians be instructed to stop an examination that is exceedingly painful, and to refrain from using pejorative comments about a plaintiff's claim during the examination, as well as for whatever other just relief may be ordered by this Court.

This 11th Day of March, 2016				Respectfully submitted,


/s/ D. Renee Baggett
Bryan F. Aylstock, Esq.
Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, Florida  32563
(850) 202-1010
(850) 916-7449 (fax)
E-mail:  rbaggett@awkolaw.com

/s/ Thomas P. Cartmell
THOMAS P. CARTMELL
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
E-mail:  tcartmell@wcllp.com

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2016, I electronically filed the foregoing document with the Clerk of the court using CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ D. Renee Baggett
D. Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, FL 32563
850-202-1010
850-916-7449
rbaggett@awkolaw.com
