# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

----------------------------------------

IN RE:  ETHICON, INC. PELVIC REPAIR            MDL NO.
SYSTEM PRODUCTS LIABILITY LITIGATION           2:12-MD-02327

----------------------------------------

THIS DOCUMENT RELATES TO:

----------------------------------------

CAROLYN LEWIS                                  CIVIL ACTION NO.
                                               2:12-cv-04301

----------------------------------------

                                               February 12, 2014
                                               Charleston, WV

TRANSCRIPT OF TRIAL - DAY 3
BEFORE THE HONORABLE **JOSEPH R. GOODWIN**,
UNITED STATES DISTRICT JUDGE, AND A JURY

Court Reporters:          Teresa M. Ruffner, RPR
                          (304) 528-7583
                          terry_ruffner@wvsd.uscourts.gov

                          Harold M. Hagopian, RDR-CRR
                          209 Drake Landing
                          New Bern, NC  28560
                          hhagopian@aol.com

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

15

```
 1    to try to get the test to come out right.  And if you've used
 2    up too much particle, you may not get to the next six because
 3    you don't have any left.
 4           THE COURT:  So on some of these samples you ran six
 5    standardized tests.  On some of these samples you ran fewer
 6    than that because of an insufficient amount of material to
 7    complete the test.
 8           MR. ANDERSON:  Because of the nature of destructive
 9    testing of polymers.
10           THE COURT:  Give me an idea of how many you ran six
11    tests on and how many you ran less tests on.
12           MR. ANDERSON:  I have two binders this big, Your
13    Honor, and so I would have to go through here and try to pull
14    all those out.  It's twenty-four samples and six tests.
15           THE COURT:  Well, 24 -- I excluded in Dr. Klinge's
16    thing, the report didn't provide any information about how he
17    obtained the particular samples.
18       Here this morning you're providing me with an explanation
19    of how he selected them, but I would like the answer to this,
20    to me an important question.  How are we to know that the
21    large samples are representative of explants, that is to say,
22    that there's a scientific and reliable basis for concluding
23    that 23 out of dozens or more is a representative sample?
24           MR. ANDERSON:  Your Honor, the best that we could do
25    is try to collect explants that were available.  We took every
```

1    one that we could.  We looked at every one of them, and we had

2    all of that analysis in these books and that he deposed him

3    on.  We left no test out that was done.  And of those, some of

4    them showed degradation, some did not.  They're all explanted

5    and the same battery of tests are done on polypropylene.  So

6    it is more of an objective test than a subjective test.

7            In order to determine whether or not -- what the

8    denominator is, if that's what you're looking for, Your Honor,

9    the only way to look at the denominator is -- I'm sure they'll

10   point out on cross-exam of one of our witnesses, "Well, this

11   has been in hundreds of thousands of women and it doesn't

12   degrade in all of them."  No, but we have a representative

13   sampling --

14           THE COURT:  How do we know it's representative?

15   That's my question.  The only criteria that you've given me is

16   not an indicator of representation.  That is to say, you

17   selected only samples -- and I grant you, they're the only

18   ones you could get -- that were big enough.  I don't know that

19   because the sample was big enough shows that it's

20   representative of explants.

21           MR. ANDERSON:  By way of example, Your Honor, an

22   analogy.  Dr. Klosterhalfen on behalf of Ethicon has a

23   database of explants, okay?  Some of those explants, you can

24   determine whether or not there was fibrotic bridging.  Some

25   you can't, because they weren't big enough.  Some you can

1    determine whether or not there was scar plating.  Some you

2    can't because they weren't big enough or not a good enough

3    sample.

4         What you do is you collect what you can and you do an

5    analysis of those.  And within the number that you have, you

6    can make some determination as to, okay, out of this

7    representative sampling of explants --

8              THE COURT:  The problem is the representative part.

9    That's what I'm trying to figure out with regard to *Daubert*

10   and *Kumho Tire*, is was there a scientific methodology used to

11   show that this is a representative sample.

12        In other words, if the only people I could find that had

13   malaria were people that were in a malaria ward at a hospital,

14   they would not be necessarily representative of everybody in

15   the world that had malaria.  As I think I pointed out -- and

16   I'll say it again -- my analogies are always terrible, but go

17   ahead.

18             MR. ANDERSON:  I would say that, you know, Your

19   Honor, they're welcome to point this out on cross-examination,

20   but the only way to get explants is when they come out of

21   women.  You can't go and affirmatively take them out and just

22   say we're going to take these out of healthy women and we're

23   going to take these out of unhealthy women and we're going to

24   compare it so that we have a denominator of all of the healthy

25   explants with the unhealthy explants.

1          THE COURT:  Okay.  What's your expert on

2   polypropylene going to say with regard to examining explants,

3   if at all?

4          MR. THOMAS:  Your Honor, my expert only has looked

5   at the Carolyn Lewis explant.

6          THE COURT:  That's all I need to hear.  Your expert

7   is qualified to offer, as I understand it, without objection,

8   opinions about polypropylene degradation; is that correct?

9          MR. THOMAS:  Correct, Your Honor.

10         THE COURT:  And he may also offer opinions related

11  to the degradation, if any, of Miss Lewis's explant.  He's not

12  a doctor.  Neither he nor your polypropylene expert, absent a

13  medical degree or a qualification in that regard, may talk

14  about the effects of polypropylene in the human body.  Is that

15  clear enough?

16     All right.  Let's give you -- we're almost five minutes

17  till the jury comes in.  I'm sure you need time to straighten

18  your desk out.  Yes, sir?

19         MR. THOMAS:  I don't think you addressed the

20  ultimate question, Your Honor, whether Dr. Jordi will be

21  permitted to talk about the additional explants.

22         THE COURT:  No --

23         MR. THOMAS:  Thank you.

24         THE COURT:  -- he may not.

25         MR. ANDERSON:  What if we voir -- what if I offer to

CERTIFICATE OF OFFICIAL REPORTERS

Teresa M. Ruffner and Harold M. Hagopian do hereby certify that the foregoing is a true and correct transcript, to the best of our abilities, from the record of proceedings in the above-entitled matter.


s/Teresa M. Ruffner                    February 12, 2014
        Reporter                              Date

s/Harold M. Hagopian                   February 12, 2014
        Reporter                              Date