# EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON
Master File No. 2:12-MD-02327    MDL 2327

_____

DEPOSITION OF                            March 9, 2016
DONALD R. OSTERGARD, M.D.

_____

IN RE:  ETHICON, INC., PELVIC REPAIR    JOSEPH R. GOODWIN
SYSTEM PRODUCTS LIABILITY LITIGATION    U.S. DISTRICT JUDGE

_____
THIS DOCUMENT RELATES TO THE FOLLOWING CASES
IN WAVE 1 OF MDL 200:

HARRIET BEACH v. ETHICON, INC., ET AL.
Civil Action No. 2:12-cv-00476
SHARON BOGGS, ET AL. v. ETHICON, INC., ET AL.
Civil Action No. 2:12-cv-00368
ROBIN BRIDGES v. ETHICON, INC., ET AL.
Civil Action No. 2:12-cv-00651
ANGELA COLEMAN, ET AL. v. ETHICON, INC., ET AL.
Civil Action No. 2:12-cv-01267

AMANDA DELEON, ET AL. v. ETHICON, INC., ET AL.
Civil Action No. 2:12-cv-00358
DENNIS W. DIXON, ESTATE OF VIRGINIA DIXON,
Deceased v. ETHICON, INC., ET AL.
Civil Action No. 2:12-cv-01081
DINA DESTEFANO-RASTON, ET AL. v. ETHICON, INC.,
ET AL.
Civil Action No. 2:12-cv-01299
PAULA FISK v. ETHICON, INC., ET AL.
Civil Action No. 2:12-cv-00848

JACKIE FRYE v. ETHICON, INC., ET AL.
Civil Action No. 2:12-cv-1004
TERESA GEORGILAKIS, ET AL. v. ETHICON, ET AL.
Civil Action No. 2:12-cv-00829

ROSE GOMEZ, ET AL. v. ETHICON, ET AL.
Civil Action No. 2:12-cv-00344

```
 1    LOUISE GRABOWSKI v. ETHICON, INC., ET AL.
      Civil Action No. 2:12-cv-00683
 2
      PAMELA GRAY-WHEELER v. ETHICON, INC., ET AL.
 3    Civil Action No. 2:12-cv-00455
 4    DAWNA HANKINS v. ETHICON, INC., ET AL.
      Civil Action No. 2:12-cv-00369
 5
      JEANIE HOLMES, ET AL. v. ETHICON, INC., ET AL.
 6    Civil Action No. 2:12-cv-01206
 7    NANCY HOOPER, ET AL. v. ETHICON, INC., ET AL.
      Civil Action No. 2:12-cv-00493
 8
      WILMA JOHNSON v. ETHICON, INC., ET AL.
 9    Civil Action No. 2:12-cv-00809
10    BEVERLY KIVEL v. ETHICON, INC., ET AL.
      Civil Action No. 2:12-cv-00591
11
      PAUL KRIZ, ET AL. v. ETHICON, INC., ET AL.
12    Civil Action No. 2:12-cv-00938
13    DEBORAH LOZANO, ET AL. v. ETHICON, INC., ET AL.
      Civil Action No. 2:12-cv-00347
14
      BARBARA MASSICOT v. ETHICON, INC., ET AL.
15    Civil Action No. 2:12-cv-00856
16    EDITH NOLAN v ETHICON, INC., ET AL.
      Civil Action No. 2:12-cv-00864
17
      NOEMI PADILLA v. ETHICON, INC., ET AL.
18    Civil Action No. 2:12-cv-0567
19    STACEY PANGBORN v. ETHICON, INC., ET AL.
      Civil Action No. 2:12-cv-01198
20
      MIRANDA PATTERSON v. ETHICON, INC., ET AL.
21    Civil Action No. 2:12-cv-00481
22    JENNIFER REYES, ET AL. v. ETHICON, INC., ET AL.
      Civil Action No. 2:12-cv-00939
23
      JENNIFER SIKES, ET AL. v. ETHICON, INC., ET AL.
24    Civil Action No. 2:12-cv-00501
25
```

Page 3

```
 1   CARRIE SMITH v. ETHICON, INC., ET AL.
     Civil Action No. 2:12-cv-00258
 2
     JANET SMITH, ET AL. v. ETHICON, INC., ET AL.
 3   Civil Action No. 2:12-cv-00861
 4   MARGARET STUBBLEFIELD v. ETHICON, INC., ET AL.
     Civil Action No. 2:12-cv-00842
 5
     MARY LEE SWEENEY, ET AL. v. ETHICON, INC., ET AL.
 6   Civil Action No. 2:12-cv-00807
 7   KRYSTAL TEASLEY v. ETHICON, INC., ET AL.
     Civil Action No. 2:12-cv-00500
 8
     SUSAN THAMAN v. ETHICON, INC., ET AL.
 9   Civil Action No. 2:12-cv-00279
10   PATRICIA TYLER v. ETHICON, INC., ET AL.
     Civil Action No. 2:12-cv-00469
11
     CATHY WARLICK, ET AL. v. ETHICON, INC., ET AL.
12   Civil Action No. 2:12-cv-00276
     _____
13
14          The deposition of DONALD R. OSTERGARD, M.D.,
15   taken before Leeann Keenan, a Registered Merit
16   Reporter, Certified Realtime Reporter, and a Notary
17   Public in and for the County of Summit and the State
18   of Colorado, at 7171 West Alaska Drive, Lakewood,
19   Colorado, on Wednesday, March 9, 2016, at the hour
20   of 9:01 a.m., pursuant to Notice.
21
22
23
24
25
```

Donald R. Ostergard, M.D.

Page 4

```
 1    APPEARANCES:
 2
 3           MOTLEY RICE, LLC
              BY: MARGARET M. THOMPSON, J.D., M.D.
 4                    and
                  BREANNE V. COPE, ESQ.
 5               28 Bridgeside Boulevard
                 Mt. Pleasant, South Carolina  29464
 6               (843) 216-9000
                 mmthompson@motleyrice.com
 7               bcope@motleyrice.com.com
                 appeared on behalf of the Plaintiffs
 8
 9           BUTLER SNOW, LLP
              BY: NILS B. SNELL, ESQ.
10               500 Office Center Drive, Suite 400
                 Fort Washington, Pennsylvania  19034
11               (267) 513-1885
                 burt.snell@butlersnow.com
12               appeared on behalf of the Defendants
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Donald R. Ostergard, M.D.

Page 100

1  significant finding.
2     Q.   My question is focused on Level 1, so
3  randomized control trials.
4     A.   Well, since all mesh degrades, what do
5  you expect?
6     Q.   Why is it that you believe that all mesh
7  degrades?
8     A.   Every mesh available, every
9  manufacturer's mesh is capable of degradation, but
10  not every patient who has mesh will have
11  degradation, necessarily.  But, again, very large
12  numbers of patients have not had explants of their
13  mesh.  Now, I know that one pathologist at least has
14  seen degradation in the mesh of all the various
15  manufacturers.
16     Q.   If we leave out plaintiffs' expert,
17  Dr. Iakovlev.
18     A.   That's correct.
19     Q.   Let's put him to the side.
20     A.   Excuse me?
21     Q.   Let's put him to the side.
22     A.   Why?  I can't put him to the side.  He's
23  confirming --
24     Q.   For purposes --
25     A.   -- what Ethicon actually found in 1983.

Donald R. Ostergard, M.D.

Page 101

1    Q.    For purposes of my question --
2    A.    As --
3    Q.    For purposes of my question, I'm not
4  focused on him.  I want to go back to my question.
5              So are there any Level 1
6  randomized control trials that report degradation
7  with Gynemesh PS?
8              MS. THOMPSON:  Object to form.
9    A.    There's no randomized control trials.  I
10 mean, no one has ever taken 100 patients with the
11 mesh there, extracted that mesh from those 100
12 patients and looked at it.  That would be something
13 no Human Subjects Committee would approve, so it's
14 not possible to do such a study.  So to answer your
15 question, there is no Level 1 evidence --
16   Q.    Okay.
17   A.    -- from such a study designed that way.
18   Q.    So the surface cracking that you
19 mentioned, a study has not been done yet which shows
20 whether that is a finding in patients who have good
21 prolapse repair and no complications as compared to
22 patients who have complications, true?
23   A.    Well, the mesh is --
24              MS. THOMPSON:  Object to form.
25   A.    -- available for analysis.  It comes from

Donald R. Ostergard, M.D.

1   patients who have a complication severe enough to
2   remove that mesh. It couldn't be done otherwise.
3   No Human Subjects Committee would approve that.
4       Q.   What I'm saying is the surface cracking
5   that's been reported by some folks, that could be a
6   normal finding in asymptomatic patients with good
7   cure of their prolapse and no complications because
8   the study -- a study hasn't been done with that type
9   of control to show whether this cracking is actually
10  causal of any of the complications, true?
11           MS. THOMPSON:   Object to form.
12      A.   At this point in time, we cannot
13  specifically relate degradation to complications in
14  patients. The only time we are able to see this
15  degradation, and I think this was mentioned in one
16  of Ethicon's patients -- oh, it is attached to one
17  of the expert reports, or is mentioned that on
18  removal of the mesh, it fell apart. It fell apart,
19  so all the mesh could not be taken out.
20                   And this has been my experience as
21  well. The mesh frequently does that. You can't get
22  it all out. And even Ethicon has likened this to
23  rebar in concrete. You can't get the rebar out.
24  And now these patients have remaining polypropylene
25  mesh in them, which can at some time in the future

Donald R. Ostergard, M.D.

Page 103

1    cause problems for them.
2                And I hate to bring up the cancer
3    issue, but there are now two neoplasms that have
4    been described with polypropylene mesh.  And they'll
5    actually be published formally next month, and so
6    these patients have this knowledge if that work gets
7    caught in the media attention and the media says
8    that it causes cancer.  Well, there's no proof it
9    causes cancer.  It's just an association at this
10   point.  But these patients then are going to be
11   clamoring to have their mesh taken out so they don't
12   have to worry about the possibility of cancer
13   sometime in the future, and I think this is a major
14   issue.
15       Q.   So I'm going to respectfully move to
16   strike some of your answer that went beyond my
17   question.
18            MR. SNELL:  Can you read back his
19   answer where he says, "At this point we cannot
20   relate degradation to complications."  I think
21   something like that.
22                (Record read as follows:
23                     at this point in time, we cannot
24                     specifically relate degradation
25                     to complications in patients.

Page 143

1    comparisons.
2         Q.    Is it correct then that you do not hold
3    an opinion as to the adequacy of the Prolift IFU?
4               MS. THOMPSON:  Object to form.
5         A.    That is not correct.
6         Q.    Are you basing -- well, do you -- do you
7    have an opinion then that the Prolift IFU is
8    inadequate in some form or fashion?
9         A.    Yes.  It doesn't warn against
10   degradation, for one thing.
11        Q.    So is there any regulatory standard that
12   you have considered and factored in in that opinion?
13        A.    A regulatory standard for devising an
14   IFU?
15        Q.    Yes.
16        A.    I'm not sure if one exists.
17        Q.    Is it your opinion that the IFU should --
18   strike that.
19                    Is it your opinion that the
20   Prolift IFU should say that the mesh can degrade?
21        A.    Yes, absolutely.
22        Q.    And that is based on your personal
23   opinion, true?
24              MS. THOMPSON:  Object to form.
25        A.    That is based on my opinion and my review

Donald R. Ostergard, M.D.

Page 144

1 of the information regarding degradation, when
2 Ethicon knew about it and physicians should have
3 been told. It's a very important factor in their
4 decision whether or not to use a product.
5     Q. Have you done any study of physicians'
6 attitudes as to whether surface degradation would
7 lead them to not use Prolift?
8         MS. THOMPSON: Object to form.
9     A. I have not done any such studies.
10     Q. Hypothetically, if degradation were to
11 occur, the clinical manifestation of that, if any,
12 would be variable, true?
13         MS. THOMPSON: Object to form.
14     A. Well, since we don't know what the
15 manifestations are, it's very difficult to answer
16 that question.
17     Q. Fair enough.
18         When did you first look at the
19 Prolift IFU?
20     A. When did I first look at it?
21     Q. Yes.
22     A. I can't tell you the exact date.
23     Q. Okay. You have looked at it, though?
24     A. I have looked at it, yes.
25     Q. Okay.

Donald R. Ostergard, M.D.

Page 145

1      MR. SNELL:  Let's mark it.
2          (Exhibit No. 16 was marked.)
3      Q.   16.
4      A.   Thank you.
5          MS. THOMPSON:  Thank you.
6      Q.   We've talked about a whole lot of
7  different complications that can occur with the
8  different prolapse surgeries.
9          Mesh exposure/erosion, that's a
10 unique risk with mesh, correct?
11     A.   Quite unique.
12     Q.   Conversely, you can have suture erosions
13 with non-mesh repair, true?
14     A.   Which are typically of no consequence,
15 whereas the erosions that you're speaking of do have
16 consequences.
17     Q.   There can be contraction with Prolift,
18 correct?
19     A.   Yes.
20     Q.   And there's also tissue contraction with
21 native tissue, true?
22         MS. THOMPSON:  Object to form.
23     A.   Depends on how the surgery is done.  It
24 can be avoided, generally.
25     Q.   Well, if there's scarring, there's going

```
 1                    REPORTER'S CERTIFICATE

 2            I, LEEANN L. KEENAN, Registered Merit

 3    Reporter and Certified Realtime Reporter within

 4    Colorado, appointed to take the deposition of DONALD R.

 5    OSTERGARD, M.D., do hereby certify that before the

 6    deposition he was duly sworn by me to testify to the

 7    truth; that the deposition was taken by me at 1801

 8    California Street, Suite 5100, Denver, Colorado; then

 9    reduced to typewritten form herein; that the foregoing

10    is a true transcript of the questions asked, testimony

11    given and proceedings had.

12

13            I further certify that I am not related to

14    any party herein or their Counsel, and have no interest

15    in the result of this litigation.

16

17            In witness hereof I have hereunto set my

18    hand this 28th day of March, 2016.

19

20    _____
      Leeann L. Keenan
21    Registered Merit Reporter
      Certified Realtime Reporter
22    and Notary Public

23

24    My commission expires June 8, 2016

25
```