# EXHIBIT D

Konstantin Walmsley, M.D.

```
 1              IN THE UNITED STATES DISTRICT COURT
 2           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 3                          AT CHARLESTON
 4                            -  -  -
 5
    IN RE:  ETHICON, INC.,          :  MASTER FILE NO.
 6  PELVIC REPAIR SYSTEM             :  2:12-MD-02327
    PRODUCTS LIABILITY               :  MDL 2327
 7  LITIGATION                       :
                                     :  JOSEPH R. GOODWIN
 8                                   :  U.S. DISTRICT JUDGE
    ---------------------------------  -----------------------
 9  SHERRY FOX and ROY FOX, JR.      :
            Plaintiffs,              :
10                                   :
            v.                       :  CASE NO.
11                                   :  2:12-CV-00878
    JOHNSON & JOHNSON, INC. and      :
12  ETHICON, INC.,                   :
            Defendants.              :
13
                              -  -  -
14
                         March 23, 2016
15
                              -  -  -
16
17            Oral deposition of KONSTANTIN
    WALMSLEY, MD taken pursuant to notice, was held at
18  the law offices of Mountainside Hospital, 1 Bay
    Avenue, Montclair, New Jersey, beginning at 12:23
19  p.m., on the above date, before Ann Marie Mitchell,
    a Federally Approved Certified Realtime Reporter,
20  Registered Diplomate Reporter and Notary Public.
21
                              -  -  -
22
23              GOLKOW TECHNOLOGIES, INC.
            877.370.3377 ph | 917.591.5672 fax
24                  deps@golkow.com
25
```

Konstantin Walmsley, M.D.

```
 1    APPEARANCES:
 2
 3              TRACEY & FOX
                BY:   CLINTON J. CASPERSON, ESQUIRE
 4              440 Louisiana Street
                Suite 1901
 5              Houston, Texas 77002
                (713) 925-7216
 6              ccasperson@traceylawfirm.com
                Representing the Plaintiffs
 7
 8
                ROERIG, OLIVEIRA & FISHER, LLP
 9              BY:   DAVID G. OLIVEIRA, ESQUIRE
                10225 North Tenth Street
10              McAllen, Texas 78502
                (956) 393-6300
11              doliveira@rofllp.com
                Representing the Defendants
12
13
14                         -  -  -
15
16
17
18
19
20
21
22
23
24
25
```

```
 1        Q.      It goes on to say, mesh-related
 2   complications can occur following polypropylene
 3   sling replacement, but the rate of complications is
 4   acceptably low.
 5                Do you agree with that statement?
 6                MR. CASPERSON:  Objection, form.
 7                THE WITNESS:  I think from a
 8   quantitative statement, that's a true comment.
 9                MR. OLIVEIRA:  Doctor, if you don't
10   mind, let's take a little break, and we'll move into
11   phase 2.
12                THE WITNESS:  Thank you.
13                          -  -  -
14                (A recess was taken from 1:04 p.m. to
15        1:21 p.m.)
16                          -  -  -
17   BY MR. OLIVEIRA:
18        Q.      If you could I'd ask you to turn to
19   your report, which we have marked as -- I believe as
20   Exhibit 2 in this case.
21        A.      Yep.
22        Q.      It looks like the first four or five
23   pages of your report are kind of background
24   information and mentions, I guess, the medical
25   records and depositions that you reviewed, along
```

```
 1   with the medical literature and other documents that
 2   you reviewed.  Correct?
 3        A.     Yes.
 4        Q.     And then you do -- at some point you
 5   have a clinical history where you -- it looks like a
 6   little chronology where you list a number of
 7   different things in her medical history, I guess,
 8   that you believe were significant?
 9        A.     Yes, sir.
10        Q.     Then after that, you get into what
11   looks like the couple of general opinions?
12        A.     Yes, sir.
13        Q.     And then five case-specific opinions
14   or -- yes, it looks like it's five.  Is that
15   correct?
16        A.     Yes.
17        Q.     So let me ask you about your first
18   opinion.
19               Your first general opinion, you state
20   there at the bottom that it's your opinion "the IFU
21   for the TVT in 2002 was not sufficient to enable
22   informed consent from the patient."
23               What do you base that on?
24        A.     I base that on my clinical experience
25   with TVT and, for that matter, other polypropylene
```

    1    mesh slings and the IFU that I reviewed that dated
    2    back to the time when this sling was implanted.
    3         Q.    And what do you believe is missing
    4    from this IFU that you would put in it?
    5         A.    Well, there are a lot of potential
    6    complications that were not mentioned in the IFU
    7    that I've listed in my report.
    8         Q.    Doctor, would you agree with me that
    9    generally, that IFUs typically don't include every
   10    potential adverse reaction or complication?  Isn't
   11    that correct?
   12         A.    Not necessarily.
   13         Q.    So you believe that they should have
   14    every adverse reaction or every possible reaction to
   15    the product?
   16         A.    I think they should have the majority
   17    of them, the ones that are the most likely to occur.
   18               For those that are case-report like
   19    complications or case-report like findings, I would
   20    agree with you, those don't necessarily need to be
   21    in the IFU.  But certainly the ones that you see
   22    with even some regularity or occasional regularity
   23    should be mentioned.
   24         Q.    So tell me, then, which ones do you
   25    believe should be in there?

1       A.      Well, first, as far as complications
2   to be mentioned, mesh contraction would be one.
3   Dyspareunia.  Mesh shrinkage.  Scar plate formation.
4   The difficulty in removing mesh.
5       Q.      Are those all the ones you feel
6   should be in there?
7       A.      That's the majority of them, yes.
8       Q.      You would agree with me that a doctor
9   not only has to rely on the IFU for explaining, I
10  guess, the adverse reactions and possible side
11  effects to a plaintiff.
12              Would you agree with that?
13      A.      I'm sorry.  Could you repeat that
14  question?
15      Q.      Well, can doctors also rely, don't
16  they also rely on their experience, their clinical
17  experience in implanting mesh or in this particular
18  case, to rely on -- in providing an informed consent
19  to the plaintiff?
20      A.      I think that's a true comment, yes.
21      Q.      And do you do that in your practice?
22      A.      I do.
23      Q.      And do you include things when you go
24  over your informed consent that are not necessarily
25  included in the IFU?

Konstantin Walmsley, M.D.

```
 1
 2                        CERTIFICATE
 3
 4
 5              I HEREBY CERTIFY that the witness was
 6     duly sworn by me and that the deposition is a true
 7     record of the testimony given by the witness.
 8
 9              It was requested before completion of
10     the deposition that the witness, KONSTANTIN
11     WALMSLEY, MD, have the opportunity to read and sign
12     the deposition transcript.
13
14
15
16
17     _____
18     ANN MARIE MITCHELL, a Federally Approved
       Certified Realtime Reporter, Registered
19     Diplomate Reporter and Notary Public
20
21
22              (The foregoing certification of this
23     transcript does not apply to any reproduction of the
24     same by any means, unless under the direct control
25     and/or supervision of the certifying reporter.)
```