IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL 2327<br><br>JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE GENERAL-CAUSATION OPINION TESTIMONY OF KONSTANTIN WALMSLEY, M.D.**

Plaintiffs in *Fox v. Ethicon, Inc.*, Case No. 2:12-cv-00878, and *Ridgley v. Ethicon, Inc.*, Case No. 2-12-cv-01311, have identified Konstantin Walmsley, M.D. as their general-causation expert. Dr. Walmsley's general-causation opinions are confined to the adequacy of the Instructions for Use (IFU) for the TVT mesh product each plaintiff had implanted. If permitted, Dr. Walmsley will offer two general opinions about the applicable IFU for each case. First, he will testify that the IFU did not reference certain conditions and therefore "was not sufficient to enable informed consent from the patient." Ex. B, Walmsley Report, Gen. Op. 1; Ex. C, Walmsley Report, Gen. Op. 1. Second, he will testify that "safer alternative" non-mesh procedures were available for each plaintiff at the relevant time and that the plaintiff in *Fox* was unable to receive "proper informed consent" because the IFU did not inform of these alternative procedures. Ex. B, Walmsley Report, Gen. Op. 2; Ex. C, Walmsley Report, Gen. Op. 2.

These opinions should be excluded. He provides no reliable bases for his insufficiency opinions and, following this Court's decision in *Sanchez v. Boston Scientific Corp.*, No. 2-12-cv-05762, 2014 WL 4851989, at *2 (S.D.W. Va. Sept. 29, 2014), these opinions should be excluded. His should-have-informed-of-alternative-procedures opinions should likewise be excluded because they are contrary to law.

## ARGUMENTS AND AUTHORITIES

Ethicon, Inc. and Johnson & Johnson (Ethicon) incorporate by reference the standard of review for *Daubert* motions articulated by this Court in *Edwards v. Ethicon, Inc.*, No. 2:12-CV-09972, 2014 WL 3361923, at *1-3 (S.D.W. Va. July 8, 2014).

### I. Dr. Walmsley's Opinions that the IFUs are Insufficient and Prevented Informed Consent are Unreliable and Should be Excluded.

Although Dr. Walmsley's insufficiency opinions are similar, they address different versions of the TVT IFU. Dr. Walmsley will testify that the IFU applicable in *Fox*, who was implanted in December 2002, does not mention mesh contraction, dyspareunia, mesh shrinkage, scar-plate formation, or difficulty removing the mesh if needed, making informed consent impossible. Ex. B, Walmsley Report, Gen. Op. 1. He will testify that the IFU applicable in *Ridgley*, who was implanted in April 2010, does not mention mesh contraction, severity of dyspareunia, and mesh shrinkage, also making informed consent impossible. Ex. C, Walmsley Report, Gen. Op. 1. He will testify that both IFUs are "not sufficient to enable informed consent from the patient." Ex. B, Walmsley Report, Gen. Op. 1; Ex. C, Walmsley Report, Gen. Op. 1.

This Court has twice rejected on reliability grounds these kind of insufficiency/informed-consent opinions. In both *Tyree v. Boston Scientific Corp.*, 54 F. Supp. 3d 501, 543 (S.D.W. Va. 2014), and *Sanchez v. Boston Scientific Corp.*, No. 2-12-cv-05762, 2014 WL 4851989, at *34 (S.D.W. Va. Sept. 29, 2014), Dr. Pence sought to offer the same opinions about the IFUs at issue in those cases as Dr. Walmsley seeks to offer here; namely, that deficiencies in IFUs prevented "true informed consent." *Sanchez,* at *34. Like Dr. Pence in *Tyree* and *Sanchez*, Dr. Walmsley here provides no reliable basis showing that the unreferenced complications should have been included in the IFUs.

Although Dr. Walmsley generically references in his reports a list of medical literature he purportedly relied upon in formulating his opinions—almost verbatim for both reports—most of those references not only postdate the IFUs at issue here, but simply evaluate procedures that were available at the time and their efficacy. *See* Ex. B, Walmsley Report at 2-4; Ex. C, Walmsley Report at 2-4. For example, the article by S. Abbott, et al.—*Evaluation and management of complication from synthetic mesh after pelvic reconstructive surgery: a multicenter study*—is precisely what the title says: a look at complications that can occur after mesh surgery with no mention of appropriateness of instructions. *See* Ex. B, Walmsley Report at 4; Ex. C, Walmsley Report at 3; Ex. E, Am. J. Obstet. Gynecol., 210(2):163 e1-8 (2014). And the article authored by A. Clave et al.—*Polypropylene as a reinforcement in pelvic surgery is not inert: a comparative analysis of 100 explants*—is exactly that: an evaluation of explants with no reference to what should be in the IFU. *See* Ex. B, Walmsley Report at 4; Ex. C, Walmsley Report at 3; Ex. F, 21 Int. Urogynecol. J. 261-270 (2010).

Like the authority relied on by Dr. Pence in *Tyree* and *Sanchez*, this "authority" may demonstrate that complications occurred, but "it does not provide any guidance as to whether these complications should have been included as warnings" in the respective IFUs. Instead, all that remains is the expert's *ipse dixit*. *Tyree*, 54 F. Supp. 3d at 543; *Sanchez*, 2014 WL 4851989, at *35.

Dr. Walmsley's deposition testimony underscores the lack of authority for his insufficiency opinions. When asked the bases of his insufficiency opinions, he did not even cite to the literature referenced in his reports. *Compare* Ex. D, Walmsley 3/23/16 Dep. Tr. 42:19-43:2 *with* Ex. B, Walmsley Report and Ex. C, Walmsley Report. Rather, he relied solely on his "clinical experience." Ex. D, Walmsley 3/23/16 Dep. Tr. 42:19-43:2. As this Court recently said

in *Carlson*, this is not enough. *Carlson v. Boston Scientific Corp.*, No. 2:13-CV-05475, 2015 WL 1931311, at *20 (S.D.W. Va. Apr. 28, 2015) (excluding expert's opinion based on unidentified sources, including "clinical experience," where expert failed to explain how these sources "substantiate[d]" his opinion).

At bottom, Dr. Walmsley's insufficiency opinions fail for the same reason these same opinions failed in *Tyree* and *Sanchez*. They should be excluded in their entirety here.

## II. Dr. Walmsley's Opinions that the IFUs Should have Informed of Alternative Non-Mesh Procedures are Contrary to Law and Should be Excluded.

Courts consistently exclude expert testimony that is contrary to law because it is neither probative nor relevant, noting that this testimony cannot assist the jury in making factual determinations and also creates the potential for confusion. *See Martinez v. Porta*, 601 F. Supp. 2d 865, 866 (N.D. Tex. 2009) ("[A]n [expert's] opinion cannot be based on an erroneous legal premise."); *Whitney Nat'l Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*, 516 F. Supp. 2d 802, 816 (S.D. Tex. 2007) (excluding experts whose "testimony assumes a legal duty that the record does not support"); *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 4259332, at *7 (S.D. Fla. Oct. 21, 2010) (excluding expert testimony because it "likely will be contrary to law"); *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, No. 1:08 GD 50000, 2010 WL 1796334, at *30–31 (N.D. Ohio May 4, 2010) (precluding expert witness from offering interpretation of federal regulations that contradicts a Supreme Court decision).

Despite this well-established rule of law, Dr. Walmsley seeks to testify that the IFUs should have informed of allegedly "safer alternative designs and procedures" that existed at the time. Ex. B, Walmsley Report, Gen. Op. 2; Ex. C, Walmsley Report, Gen. Op. 2. According to Dr. Walmsley, these "safer alternatives"—i.e., nonmesh, autologous fascial sling procedures—

4

should have been included in the IFUs and without that information, there could be no "proper informed consent . . . ." Ex. B, Walmsley Report, Gen. Op. 2.[1]

Dr. Walmsley's should-have-informed-of-alternative-procedures opinions are contrary to law for two reasons. First, they assume a duty that does not exist. There is no duty for a medical-device manufacturer to set forth in its IFU alternatives to the product that are allegedly safer, nor is there any duty to advise a physician as to alternative surgical techniques. There is no authority under Texas law (which applies in *Fox*) or under Indiana law (which applies in *Ridgley*)—or anywhere for that matter—that imposes such a duty.

Instead, the duty of a drug manufacturer generally is to warn of the risks associated with the use of its products. That is certainly the case in Texas. *See Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 153-54 (Tex. 2012) ("Generally, a manufacturer is required to provide an adequate warning . . . of any potential harm that may result from the use of its product."). While not directly addressing the question of a manufacturer's duty in regard to alternatives to use of the manufacturer's prescription product, *Centocor* notes that the duty to warn patients of "possible alternatives" rests with the physician who prescribed the product and not with physicians who later saw the patient and prescribed other prescription products. *Id*. at 166-67.

---

[1] Unlike General Opinion No. 2 in the *Fox* report, Dr. Walmsley does not tie his "safer alternatives" statement made in General Opinion No. 2 in the *Ridgley* report to any general-causation opinion. Instead, Dr. Walmsley just states his disagreement with Dr. Mutone, the physician who implanted the TVT in Ms. Ridgley, about the comparative utility of TVT versus autologous slings and other procedures. *See* Ex. C, Walmsley Report, Gen. Op. 2. That a physician prefers one product or procedure over another does not establish either defect or causation. To the extent, however, that General Opinion No. 2 in the *Ridgley* report suggests that certain complications should have been included in the IFU, that opinion should be excluded for the same reasons that General Opinion No. 2 in the *Fox* report should be excluded.

So too in Indiana. The seminal learned-intermediary case there is *Ortho Pharm. Corp. v. Chapman*, 388 N.E.2d 541, 549 (Ind. Ct. App. 1979). The duty is to warn *about the prescription product*. *Id*. at 549. Indeed, this common-sense rule of law was applied in *Kohler v. Wyeth Labs. Div. of Am. Home Prods. Corp.*, No. NA 85-284-C, 1987 WL 47831 (S.D. Ind. Sept. 8, 1987). There, the plaintiff argued that Wyeth's warnings were inadequate because, among other things, it did not warn of the availability of safer alternative designs. The court rejected that argument, relying on the learned-intermediary rule in *Chapman*. *Id*. at *4.

Recognizing a duty to propose alternative designs and procedures as part of a manufacturer's duty to warn would turn each IFU into a long surgical manual requiring discussion of multiple surgeries and approaches to each. On the contrary, the duty of a medical-device manufacturer is to set forth the risks of its product—not provide a diatribe of alternative products and procedures. Thereafter, the "prescribing physician can take into account the propensities of the [product] as well as the susceptibilities of his patient." *Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1276 (5th Cir. 1974); *accord Chapman*, 388 N.E.2d at 549.

Second, Dr. Walmsley's should-have-informed-of-alternative-procedures opinions are also contrary to law because information that must be included in a medical-device IFU is circumscribed by the FDA. *See* 21 C.F.R. § 801.109 (calling for "information for use, including indications, effects, routes, methods, and frequency and duration of administration and any relevant hazards, contraindications, side effects" of which physicians should be aware). This regulation does not require a manufacturer to include a description of alternate procedures. Rather, it interacts with and is an exception to 21 U.S.C. § 352(f)(1), which provides that a prescription device is misbranded unless its labeling bears "adequate directions for use." *See also Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1349 (10th Cir. 2015) (Lucero, J., dissenting); *Ellis*

*v. C.R. Bard, Inc.*, 311 F.3d 1272, 1284-85 (11th Cir. 2002). An expert witness should not be permitted to offer testimony about a proposed IFU change where it is inconceivable that the FDA would have permitted it.

Ethicon acknowledges that this Court in *Eghnayem v. Boston Scientific Corp.* found Dr. Walmsley's opinions on non-mesh alternatives sufficiently reliable when offered in the context of determining whether the mesh device at issue in that case was suitable for treating pelvic organ prolapse. 57 F. Supp. 3d 658, 713-15 (S.D.W. Va. 2014). His safer-alternative opinions here, however, are not offered in that context. Instead, they are offered for the purpose of challenging the adequacy of the TVT IFUs. *Eghnayem* therefore provides no authority for permitting Dr. Walmsley's safer-alternatives opinions offered here.

## CONCLUSION

For the foregoing reasons, Dr. Walmsley's general-causation opinions—General Opinions No. 1 and 2 in the *Fox* and *Ridgley* reports—should be excluded in their entirety.

Respectfully submitted,

ETHICON, INC. AND
JOHNSON & JOHNSON

/s/ *Rita A. Maimbourg*
Rita A. Maimbourg
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:   216.592.5000
Facsimile:   216.592.5002
rita.maimbourg@tuckerellis.com

*/s/ David B. Thomas*
David B. Thomas (W.Va. Bar #3731)
THOMAS COMBS & SPANN PLLC
300 Summers St.
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
Telephone:   304.414.1807
dthomas@tcspllc.com

*/s/ Christy D. Jones*
Christy D. Jones
BUTLER SNOW LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
Telephone:   601.985.4523
christy.jones@butlersnow.com

**CERTIFICATE OF SERVICE**

I certify that on April 21, 2016, I electronically filed this document with the clerk of the court using the CM/ECF system, which will send notification of this filing to CM/ECF participants registered to receive service in this MDL.

/s/ *Rita A. Maimbourg*
Rita A. Maimbourg
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:   216.592.5000
Facsimile:   216.592.5002
rita.maimbourg@tuckerellis.com

012177\004186\2645105.2