# EXHIBIT B

Elizabeth Kavaler, M.D.

```
 1              SUPERIOR COURT OF NEW JERSEY
                LAW DIVISION - ATLANTIC COUNTY
 2                DOCKET NO. ATL-L-6966-10
 3   LINDA GROSS and JEFFREY GROSS      :MASTER CASE
                    Plaintiffs,         :NO.
 4         v.                           :L-6341-10-CT
                                        :
 5   GYNECARE, ETHICON, INC., JOHNSON & :Civil Action
     JOHNSON, and JOHN DOES 1-20        :Case No. 291
 6                Defendants.           :
 7
 8                    - - -
 9            Tuesday, December 4, 2012
10                    - - -
11         Transcript of the videotaped deposition of
12   ELIZABETH KAVALER, M.D., called for examination in
13   the above-captioned matter, said deposition taken
14   pursuant to Superior Court Rules of Practice and
15   Procedure by and before Kimberly A. Overwise, a
16   Certified Realtime Reporter, Registered Professional
17   Reporter, Certified Court Reporter, and Notary
18   Public, at Riker Danzig Scherer Hyland Perretti,
19   LLP, 500 Fifth Avenue, New York, New York, on the
20   above date, beginning at 9:41 a.m.
21                    - - -
22              GOLKOW TECHNOLOGIES, INC.
           877.370.3377 ph | 917.591.5672 fax
23                 deps@golkow.com
24
25
```

Elizabeth Kavaler, M.D.

1   relying on any specific standards for, you know,
2   what constitutes an adequate warning or not?
3              MS. KABBASH:  Objection.
4              THE WITNESS:  Do we have the IFU?
5   Can we look at it or --
6   BY MR. SLATER:
7       Q    I'm asking -- I'm not asking about any
8   specifics within it.
9       A    Right.  Okay.
10      Q    I'm asking when you formed your opinions
11  and said that the warnings were adequate in the IFU,
12  were you relying on any particular standards to give
13  that opinion?
14             MS. KABBASH:  Objection.
15             THE WITNESS:  For me -- I was saying
16  for me, for my experience as a pelvic surgeon, they
17  were adequate for me, and I'm a --
18  BY MR. SLATER:
19      Q    Based on your own -- I'm sorry.
20      A    -- I'm a regular pelvic -- you know, I'm
21  just -- I'm another -- I'm a standard pelvic
22  surgeon.
23      Q    So your opinions with regard to the
24  adequacy of the warnings in the IFU for the Prolift®
25  were based on your own personal experience, your

Elizabeth Kavaler, M.D.

```
1    personal standards; correct?
2        A    Right.
3        Q    And am I correct that you don't have any
4    information as you sit here now as to what, for
5    example, Ethicon medical affairs thought was a
6    standard or was a criteria for whether or not a
7    warning would need to be included in the IFU?  I'm
8    correct; right?
9        A    Right.
10       Q    And you as you sit here now have no idea
11   as to what standards the people within regulatory
12   affairs at Ethicon thought applied, what criteria
13   applied, to whether or not warnings had to be
14   provided or how they had to be provided in the IFU;
15   correct?
16            MS. KABBASH:  Objection.
17            THE WITNESS:  Right.  You mean the
18   medical affairs people and the regulatory people?
19   Is that what you're asking?  Yeah, I don't know what
20   their -- why they did -- I don't know what their
21   opinion is, no.
22   BY MR. SLATER:
23       Q    You don't know what standards Ethicon
24   internally was applying in deciding what to warn
25   about and how to warn about those things in the IFU;
```

Elizabeth Kavaler, M.D.

```
 1   correct?
 2       A    Right.
 3       Q    And the same would hold true with regard
 4   to the patient brochure; correct?
 5       A    Right.
 6       Q    The POP-Q is a system used for a physician
 7   or whoever's doing the measurements to actually
 8   objectively measure the degree of prolapse a woman
 9   has; correct?
10       A    Yeah.  It's sort of a communication
11   system.  It's not completely objective, but it's --
12   that's the goal, yes.
13       Q    And let me ask a little more on that.  The
14   POP-Q measurement system provides a grading system
15   that people can refer to to understand what is being
16   communicated about the degree of prolapse a woman
17   has; correct?
18       A    Yes, that's right.
19       Q    In actually performing a POP-Q
20   measurement, there's a subjective element depending
21   on the judgment of the person doing the
22   measurements, for example; correct?
23       A    Right.
24       Q    Also depending on what the woman is doing
25   when the measurements are being taken; correct?
```

Elizabeth Kavaler, M.D.

```
 1    use the Baden-Walker system?
 2         A    Yes.
 3         Q    Do you use the Baden-Walker Halfway
 4    system?
 5         A    I don't know what that is.  I use the
 6    Baden-Walker system.
 7         Q    I've seen references to a Halfway system
 8    that's somewhat of a modification and shorthand.
 9    That's not something you're familiar with?
10         A    No.
11         Q    You're not familiar with the term
12    "Baden-Walker Halfway system"?
13         A    No.
14         Q    Am I correct that you have no
15    understanding as to what Ethicon internally had as a
16    design intent with regard to the Prolift®, meaning
17    their technical intent for what they expected and
18    wanted the Prolift® to do?  You don't know
19    internally what Ethicon's thoughts on that were;
20    correct?
21                    MS. KABBASH:  Objection.
22                    THE WITNESS:  I don't know what their
23    discussions were.  I just know the product that they
24    produced.
25
```

Elizabeth Kavaler, M.D.

1   had been doing Prolift®, I was using mesh.  A lot of
2   this information -- my issue was safety in using
3   trocars and being able to implant it.  A lot of this
4   data is their experience, which is important to me
5   as a clinician, but I have my own experience.
6   BY MR. SLATER:
7       Q    Am I understanding correctly that in terms
8   of your evaluation of -- well, rephrase.
9            Am I correct that in terms of your looking
10  at literature, listening to other people's
11  experiences, whatever it is, you listen to that, but
12  from your perspective what really matters to you and
13  what you focus on as being significant is your own
14  personal experience with your own patients?
15      A    That's -- it's all part and parcel, but at
16  some point I have a body of my own experience which
17  I can then gauge against the literature.  So that's
18  correct.
19      Q    And in terms of your opinions in this
20  case, you're basing those on your own personal
21  experience as opposed to what may be in the
22  literature and what may be other people's
23  experiences; correct?
24      A    Right.
25               MS. KABBASH:  Objection.