# Exhibit H

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1                        - - -
 2
 3   IN RE:                      :SUPERIOR COURT OF
     PELVIC MESH/GYNECARE        :NEW JERSEY
 4   LITIGATION                  :LAW DIVISION -
                                 :ATLANTIC COUNTY
 5                               :
                                 :MASTER CASE 6341-10
 6                               :
                                 :CASE NO. 291 CT
 7
     CONFIDENTIAL-SUBJECT TO STIPULATION AND ORDER OF
 8                    CONFIDENTIALITY
                          - - -
 9
                     September 13, 2012
10
                          - - -
11
12         Volume II of the transcript of the
13   Deposition of CHARLOTTE OWENS, M.D., called for
14   Videotaped Examination in the above-captioned
15   matter, said deposition taken pursuant to
16   Superior Court Rules of Practice and Procedure,
17   by and before JoRita B. Meyer, a Certified
18   Realtime Reporter, Registered Merit Reporter,
19   and Certified Court Reporter for the State of
20   Georgia, at the offices of Troutman Sanders,
21   600 Peachtree Street Northeast, Atlanta,
22   Georgia, commencing at 9:11 a.m.
23                        - - -
24            GOLKOW TECHNOLOGIES, INC.
         877.370.3377 ph|917.951.5672 fax
25               deps@golkow.com
```

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1          A.    Correct.
 2          Q.    And it says the potential effect of
 3    that is damage to the cannula and the potential
 4    hazard what could occur would be tissue damage,
 5    correct?
 6          A.    Correct.
 7          Q.    And the potential harm that could
 8    result here is described as bleeding, correct?
 9          A.    Correct.
10          Q.    And you understood that through your
11    review of this -- rephrase.
12                And you understood that it was
13    required that you capture all of the different
14    failure modes, all the things that could go
15    wrong in the procedure, even if the doctor was
16    properly trained and following the proper
17    procedure, and the effects of those failure
18    modes, the hazards that could occur, and the
19    resulting harms, and you were supposed to
20    capture all of them, correct?
21          A.    Yes, all that we could conceive of,
22    yes.
23          Q.    Now, one of the things that could
24    happen is during the passage of the guides, is
25    the pudendal nerve could be injured, correct?
```

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1        specifically mentioned in the document.
 2   BY MR. SLATER:
 3        Q.   And therefore, none of them are
 4   specifically scored, correct?
 5        A.   They would have been included in
 6   things other than the terms that you mentioned.
 7        Q.   As the document appears and as it was
 8   specifically and carefully written by quality
 9   engineering, with your approval, those items do
10   not appear and are not specifically scored,
11   correct?
12        A.   Those items are not specifically
13   mentioned, no.
14        Q.   All right.  Now let's look at the
15   dFMEA, which is Exhibit 629.  You understood
16   the purpose of the dFMEA, correct?
17        A.   Yes.
18        Q.   That's the Design Failure Modes and
19   Effects Analysis, correct?
20        A.   Yes.
21        Q.   And what was the purpose of this
22   analysis?
23        A.   To review the potential risk
24   associated with the design of the product.
25        Q.   And when you say "associated with the
```

Confidential - Subject to Stipulation and Oder of Confidentiality

 1   design of the product," that means that when

 2   the product is in a woman's body and the

 3   product was manufactured completely consistent

 4   with the specifications, these are the things

 5   that could go wrong and harm a patient,

 6   correct?

 7        A.   Correct.

 8        Q.   Let's look now at this dFMEA, and

 9   let's look at page -- looking at the Bates

10   number 03573, the actual chart and grid.

11             And it indicates that you were one of

12   the individuals who provided input as medical

13   director, correct?

14        A.   Yes.

15        Q.   And again, as with the aFMEA, you had

16   to sign off on the dFMEA in order for this gate

17   to be surpassed so the product could move

18   closer to Product Release Authorization and to

19   be marketed to be put in women's bodies,

20   correct?

21        A.   Correct.

22        Q.   And what this does is, in the chart,

23   is the different components of the PROLIFT kit

24   are each evaluated in terms of what harms they

25   could cause if they were to fail, correct?

Confidential - Subject to Stipulation and Oder of Confidentiality

 1   what occurred during the surgery going forward

 2   in time, correct?

 3        A.   Not going forward in an indefinite

 4   amount of time, no.

 5        Q.   Oh, no, how long forward?

 6        A.   Again --

 7        Q.   What's the cutoff?

 8        A.   There's not --

 9        Q.   I'm asking you for the cutoff.

10        A.   I don't have an exact number of

11   minutes or seconds.  But I can tell you that it

12   is about the application of the device, which

13   is a surgical procedure.

14             MR. SLATER:  Can you put, Diane, in

15        front of her Exhibit 623?

16             MS. WATKINS:  Yes.  She's got it.

17   BY MR. SLATER:

18        Q.   Doctor, this is the design --

19   rephrase.

20             Exhibit 623 is the final version of

21   the Device Design Safety Assessment, the DDSA.

22             Do you see that?

23        A.   I do.

24        Q.   And you ultimately needed to sign off

25   on the DDSA on behalf of Medical Affairs,

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1    correct?
 2         A.    I'm trying to verify -- I'm not
 3    listed on the approval page.
 4         Q.    Do you recall whether or not you had
 5    to sign off on and approve the DDSA on behalf
 6    of Medical Affairs?
 7         A.    Again, as you know, it would have
 8    been seven years since I saw this document.  I
 9    would need to see -- if I'm on there as an
10    approver, then I can say I would have had to
11    approve it.  But right now I'm not remembering
12    if I was an approver of this document.
13         Q.    Can you look at the page that has in
14    the bottom right corner, 812.  That's the last
15    three digits of the Bates number.
16         A.    Okay.
17         Q.    That's actually the first page of the
18    DDSA form.
19         A.    Yes.
20         Q.    This form is the form that actually
21    rates -- lists and rates the hazards as part of
22    the DDSA, correct?
23         A.    It appears that this is the DDSA
24    safety assessment form, yes.
25         Q.    And, for example, line 1 evaluates
```

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1    biocompatibility hazards, correct?
 2         A.    Yes.
 3         Q.    For example, the second -- third --
 4    second part of that, Implant device is not
 5    biocompatible, correct?
 6         A.    Correct.
 7         Q.    And now on the next page, for
 8    example, Section 5, Hazards resulting, it says
 9    "to," but it actually should say "from" the use
10    of the device.
11               Do you see that?
12         A.    Yes.
13         Q.    And this lists different hazards that
14    can result when the PROLIFT is utilized,
15    correct?
16         A.    Correct.
17         Q.    And did you understand -- well,
18    rephrase.
19               And then you go to the next page --
20    rephrase.
21               Then you go to number 6.  It talks
22    about hazards resulting from reasonably
23    foreseeable misuses of the device.
24               Do you see that?
25         A.    Yes.
```