```
 1                   IN THE DISTRICT COURT
 2                   95TH JUDICIAL DISTRICT
 3                    DALLAS COUNTY, TEXAS
 4
 5    CAROL CAVNESS,              )
                                  )
 6              Plaintiff,        )
                                  )
 7    vs.                         )
                                  )  Cause No. DC-14-04220
 8    TERESA KOWALCZYK, M.D.      )
      HUNT MEMORIAL HOSPITAL      )
 9    DISTRICT CHARITABLE         )
      HEALTH FOUNDATION d/b/a     )
10    HUNT REGIONAL HEALTHCARE    )
      FOUNDATION and HUNT         )
11    REGIONAL MEDICAL CENTER     )
      AT GREENVILLE, BAYLOR       )
12    HEALTHCARE SYSTEM,          )
      JOHNSON & JOHNSON AND       )
13    ETHICON, INC.,              )
                                  )
14              Defendants.       )
                                  )
15                                )
                                  )
16
17            EXPERT WITNESS TESTIMONY OF
18            MICHAEL THOMAS MARGOLIS, M.D.
19              Held at the Law Offices of
20               Skikos, Crawford & Skikos
21       One Sansome, San Francisco, California
22          Sunday, July 19, 2015, 9:09 a.m.
23
24
25    REPORTED BY:  ELAINA BULDA-JONES, CSR #11720
```

Page 238

1  understand the question, to be honest with you.
2  BY MS. DOWNS:
3    Q.  It's all right.  Doctor, let me ask a
4  better question.
5       Have you done any -- I asked earlier, you
6  said you hadn't done any testing.
7       Have you ordered or done any imaging of
8  Ms. Cavness to try to determine or confirm whether
9  or not there is any posterior -- any mesh that
10 remains in her posterior compartment?
11   A.  As I stated earlier, I did not order any
12 imaging tests or studies.
13   Q.  Okay.  You recall, Doctor -- hold on just
14 a second.
15      Was there anything else that you and
16 Ms. Cavness discussed that is not reflected in her
17 deposition testimony or your IME report?
18      MR. FREESE:  Object to the form of the
19 question.
20      THE WITNESS:  My IME report attempts to be
21 complete, and what -- I mean, I would have to look
22 through her entire deposition to see whether she
23 believes there was anything else said.
24      But my IME is, to my recollection,
25 complete and is an accurate representation of our

Page 239

1  visit.
2  BY MS. DOWNS:
3    Q.  There was one other phrase in her
4  deposition that says, "I cried a lot because I
5  remember him telling me that it's never coming out.
6  It's like trying to remove Rebar from cement without
7  ruining or damaging the plumbing."
8       Did you tell her that?
9    A.  I would definitely have told her that.  Do
10 I specifically remember saying that, no, but those
11 would be exactly my words.  So if she says I said
12 it, I probably did.
13   Q.  And when she asked what the plumbing was,
14 and you said, "That is your bladder and your colon,"
15 Ms. Cavness did not have any mesh near her bladder,
16 correct?
17   A.  I would have said colon, because that's
18 where the mesh was -- I mean, is.
19   Q.  Did you say anything to Ms. Cavness about
20 arms going through anywhere near the obturator
21 nerve, or do you know?
22   A.  No, I would not have said that, no,
23 because the mesh wasn't placed in the vicinity of
24 the obturator nerve.
25   Q.  Okay.  You know, Dr. Margolis, that

Page 240

1  Dr. Carley took out suture fragments and sutures,
2  Ethibond sutures on several occasions, correct?
3    A.  More than one, that is correct.
4    Q.  In part of your forming your expert
5  opinions in this case, what steps did you take to
6  determine or rule out pain or discomfort from
7  uterosacral ligament suspension and those sutures as
8  the cause of Ms. Cavness' difficulties?
9    A.  I relied on the entire body of material
10 that we have reviewed -- or that I rely upon in my
11 reliance list, as well as my knowledge, experience,
12 education, and training in explantation of over 300
13 of these systems in the past.
14      And my knowledge, of course that a suture
15 that is going to cause chronic pain from a
16 uterosacral ligament plication, if it is going to be
17 from the suture, will be felt immediately after
18 surgery, and it will be unrelenting.
19      When you wake up with pain that just
20 simply won't go away until the stitch comes out, and
21 once the stitch comes out, then the pain will go
22 away.
23   Q.  That's if you have some kind of a nerve
24 impact, correct?
25   A.  A nerve entrapment, that is correct.

Page 241

1    Q.  What about a situation where the sutures
2  were being rejected by her body or becoming infected
3  or eroding?
4       That would take time, correct?
5    A.  So a stitch that is eroded and becomes
6  irritated and inflamed, once removed, the irritation
7  and inflammation goes away.
8    Q.  So are you telling me that you concluded
9  that the -- Ms. Cavness' source of pain in her
10 central pelvis was not related to any of the suture
11 issues, because as those were removed, she continued
12 to feel pain?
13   A.  That -- that would be one of the
14 rationales, from my opinion.
15   Q.  Have all of those suture fragments of the
16 uterosacral ligament sutures that were permanent
17 that were placed by any of her treaters been
18 removed?
19   A.  It is likely.
20   Q.  What makes you say that?
21   A.  The subsequent suture removals by two
22 different surgeons, Drs. Carley and Zimmern
23 specifically.
24   Q.  Just as you testified that you can't get
25 all the pieces of the Prosima out because they are

Page 310

1 six hours. We're done.
2     Dr. Margolis, I have a couple questions
3 for you, and then we're going do be finished for the
4 day.
5             EXAMINATION
6 BY MR. FREESE:
7   Q.  I want to clear up, make sure that I
8 understand and that the record is clear, in the
9 answering Ms. Remington's question about opinions
10 you formed about reading Dr. Kowalczyk's medical
11 records -- do you remember that question?
12   A.  Yes.
13   Q.  And she asked you whether you had formed
14 an opinion, and you said you had, correct?
15   A.  Yes.
16   Q.  And am I correct that the standard of care
17 opinion that you have formed was simply whether or
18 not there was any discernible surgical negligence
19 that is part of your differential diagnosis for
20 Ms. Cavness?
21   A.  As I understand your question --
22   Q.  That's all you were looking for, to see
23 whether there was any surgical negligence --
24   A.  Correct.
25   Q.  -- in the medical records?

Page 311

1     MS. DOWNS:  Object to the form.
2 Misleading.
3 BY MR. FREESE:
4   Q.  All right.  Am I --
5   A.  Well, as I understood her question, she
6 was asking me, did Dr. Kowalczyk -- as I understood
7 her question, did Dr. Kowalczyk deviate from the
8 standard of care in her surgical management of this
9 patient.
10   Q.  Okay.
11   A.  And in the surgery and subsequent
12 treatment.
13   Q.  That's what your question was -- your
14 answer was responding to?
15   A.  Yes.
16   Q.  You have not formed any standard of care
17 opinion nor do you intend to offer one regarding the
18 product selection of the decision by Dr. Kowalczyk
19 to use a Prosima; is that correct?
20   A.  I am not going to -- that is correct.
21   Q.  And you have not formed an opinion nor do
22 you intend to offer any opinion about whether or not
23 the informed consent between Dr. Kowalczyk and
24 Ms. Cavness was proper or adequate; am I correct?
25   A.  That's correct.

Page 312

1     MR. FREESE:  That's all.  Thank you.
2     MS. REMINGTON:  Thanks, guys.  I
3 appreciate it.
4     (Whereupon, the deposition was concluded
5 at 6:05 p.m.)

Page 313

1 STATE OF CALIFORNIA  )
2 COUNTY OF YOLO       )
3     I, ELAINA BULDA-JONES, a Certified Shorthand
4 Reporter of the State of California, duly authorized
5 to administer oaths pursuant to Section 2025 of the
6 California Code of Civil Procedure, do hereby
7 certify that
8     MICHAEL THOMAS MARGOLIS, M.D.,
9 the witness in the foregoing deposition, was by me
10 duly sworn to testify the truth, the whole truth and
11 nothing but the truth in the within-entitled cause;
12 that said testimony of said witness was reported by
13 me, a disinterested person, and was thereafter
14 transcribed under my direction into typewriting and
15 is a true and correct transcription of said
16 proceedings.
17     I further certify that I am not of counsel or
18 attorney for either or any of the parties in the
19 foregoing deposition and caption named, nor in any
20 way interested in the outcome of the cause named in
21 said deposition dated the _____ day of
22 _____, 2015.
23
24
25 ELAINA BULDA-JONES, RPR, CSR 11720