# Exhibit C

Denise M. Elser, M.D.

```
 1             IN THE UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF WEST VIRGINIA
 2                       AT CHARLESTON
 3
     IN RE:  ETHICON, INC.      ) Master File No.
 4   PELVIC REPAIR SYSTEM        ) 2:12-MD-02327
     PRODUCTS LIABILITY          ) MDL 2327
 5   LITIGATION                  )
                                 ) JOSEPH R. GOODWIN
 6   _____   ) U.S. DISTRICT JUDGE
                                 )
 7   DIANNE M. BELLEW,           )
                                 )
 8                   Plaintiff,  )
                                 )
 9         -vs-                  ) No. 13-CV-22473
                                 )
10   ETHICON, INC., ET AL.,      )
                                 )
11                   Defendants. )
     _____   )
12
13
14              VIDEOTAPED DEPOSITION OF
15
16                DENISE M. ELSER, M.D.
17
18                 September 16, 2014
19
20                  Chicago, Illinois
21
22
23
24
25
```

Denise M. Elser, M.D.

1  of that mesh kit in a woman's body?
2     A.   I've never thought an IFU would tell me
3  every risk.
4     Q.   Well, as you sit here now do you have an
5  understanding of any standard whatsoever from any
6  source as to what risks and complications are
7  supposed to be disclosed in an IFU?
8     A.   No.
9     MR. COMBS:  Object to the form.
10 BY MR. SLATER:
11    Q.   When you're giving your opinions as to
12 whether or not the IFU adequately warns of risks
13 and complications, you're just basing that on your
14 own opinions based on your own experience and what
15 you think is reasonable.  Is that fair?
16    A.   That's fair.
17    Q.   You're not relying on any objective
18 standard from any source, correct?
19    A.   Correct.
20    Q.   And you're not corroborating your --
21 rephrase.
22         Have you made any effort to corroborate
23 your own opinion as to what needs to be in a
24 warning in an IFU by looking to what Ethicon's
25 professionals believed needed to be in there just

Denise M. Elser, M.D.

```
 1   so you could see whether the standard you were
 2   applying was consistent with what someone in the
 3   medical device industry would apply?  Did you ever
 4   do that?
 5        A.   No.
 6        MR. COMBS:  Object to form.
 7   BY MR. SLATER:
 8        Q.   Are you aware of whether there are FDA
 9   regulations which provide for what type of
10   information is supposed to be provided in an IFU?
11        A.   No.
12        Q.   Have you looked at any internal
13   documents at all, whether it's an e-mail, whether
14   it's a deposition, anything, from Ethicon or any
15   testimony from anyone in Ethicon, regarding what
16   FDA regulations would require to be disclosed in an
17   IFU?
18        A.   No.
19        Q.   Have you made any effort before today to
20   find out what FDA regulations require a medical
21   device company to disclose in an IFU?
22        A.   No.
23        Q.   Earlier you told me what you expected to
24   see in an IFU.  That's -- is it fair to say that's
25   the standard you applied as to what you think needs
```

Denise M. Elser, M.D.

1  to be disclosed in an IFU?
2      MR. COMBS: Object to form.
3  BY THE WITNESS:
4      A.   Yes.
5  BY MR. SLATER:
6      Q.   In terms of whether or not Ethicon
7  adequately warned, if it turns out that Ethicon had
8  information, which if you applied Ethicon's own
9  warning standards, the standards that their medical
10 people said they were applying and the Regulatory
11 Affairs people said they were applying, and if
12 Ethicon failed to provide that information, would
13 you agree that would be a failure to provide an
14 adequate warning?
15     MR. COMBS: Object to form.
16 BY THE WITNESS:
17     A.   No, because I have no idea what their
18 Regulatory Affairs department would think was
19 adequate and whether that was clinically relevant
20 to what I'm doing in surgery.
21 BY MR. SLATER:
22     Q.   Your background and experience is not
23 necessarily the same as other doctors who use
24 medical devices, correct?
25     A.   Correct.

Denise M. Elser, M.D.

1  BY THE WITNESS:

2      A.    No, I'd like to think that my standards

3  would be fairly applicable to a pelvic floor

4  reconstructive surgeon.

5  BY MR. SLATER:

6      Q.    What have you ever done to confirm that

7  your standard for what needs to be in an IFU --

8  well, rephrase.

9            Have you ever studied the question of

10 what information needs to be in an IFU?  Have you

11 ever engaged in any study of that question?

12     A.    No, I have not.

13     Q.    Have you ever made any effort to confirm

14 that your understanding for what needs to be in an

15 IFU is consistent with what other doctors believe

16 should be in an IFU?  Have you ever studied that

17 question?

18     A.    No, I have not.

19     Q.    As you sit here now you don't know

20 whether or not the standard you're applying for

21 what needs to be in an IFU is consistent with what

22 other doctors think.  You don't know that because

23 you've never tried to verify that, correct?

24     MR. COMBS:  Object to form.

25 BY THE WITNESS:

Denise M. Elser, M.D.

1  A.  No, but not studying something formally
2  does not mean I haven't discussed IFUs with other
3  similar physicians who have similar practices and
4  take care of patients who need prolapse repairs.
5       MR. SLATER:  Move to strike after the word
6  "no."
7  BY MR. SLATER:
8       Q.  In doing your work in this case were you
9  curious as to what the Regulatory Affairs
10 department in Ethicon who are the professionals who
11 are required to make sure that an IFU complies with
12 FDA regulations, were you curious what they thought
13 needed to be in an IFU?
14      MR. COMBS:  Object to form.
15 BY THE WITNESS:
16      A.  No, I was not.
17 BY MR. SLATER:
18      Q.  You have not reviewed any Ethicon
19 internal documents other than those few that you
20 listed for me, correct?
21      A.  Not that I recall right now related to
22 this case.
23      Q.  Is it fair to say you have no idea what
24 complications and risks were known to Ethicon
25 Medical Affairs and when they were known?

Denise M. Elser, M.D.

1    A.    That would be fair.

2    Q.    Would you agree with me that if Ethicon
3  Medical Affairs knew there was a potential risk or
4  complication attributable to the Prolift mesh
5  implant itself which if it occurred could cause
6  severe permanent injury to a woman, that that risk
7  should be disclosed in the IFU?  Would you agree
8  with that statement?

9         MR. COMBS:  Object to form.
10  BY THE WITNESS:

11    A.    No, I don't think it necessarily needs
12  to be in the IFU.

13  BY MR. SLATER:

14    Q.    Have you ever studied the question of
15  what risks and complications were known to doctors
16  across the country with various backgrounds and
17  levels of experience with regard to the use of the
18  Prolift?  Did you ever study that question?

19    A.    No.

20    Q.    And you don't know the answer to that
21  question, correct?

22    A.    Correct.

23    Q.    One of the references in your article is
24  the Blandon article from some doctors at the Mayo
25  Clinic, correct?

1  since from your perspective Ethicon didn't need to
2  warn of any risks anyway so whatever they put in
3  there is more than they needed to do anyway?
4      MR. COMBS:  Object to the form.
5  BY MR. SLATER:
6      Q.  Do I understand you?
7      A.  Yeah, and they did have warnings about
8  the complications.
9      Q.  Do I understand -- so I understand your
10 opinion, correct?
11     A.  Correct.
12     Q.  I'm going to ask you a different
13 question now relating back to what you asked me.
14         Once the IFU is out there, if Ethicon
15 learned of a risk or a complication that was not
16 previously warned about and it was a significant
17 risk or complication in terms of the harm it could
18 cause to a woman, do you know whether or not
19 Ethicon had any obligation or have any opinion
20 whether they had any obligation to get that
21 information out to doctors?
22     A.  I don't know what the obligations are.
23 So, do they get -- would it be updated on a regular
24 time interval or is it depending on when
25 complications happen?

Denise M. Elser, M.D.

1  Q. Again, in forming your opinions, you
2  don't know what Ethicon's obligations were to warn,
3  correct?
4  A. Correct.
5  Q. So, your opinions are not based on what
6  Ethicon was obligated to do from any source, right?
7  MR. COMBS: Object to the form.
8  BY THE WITNESS:
9  A. I -- my opinion is that as a surgeon who
10 has -- who does pelvic reconstructive surgery and
11 using mesh that what I expect the company put in
12 the IFU to help me understand how to do pelvic
13 reconstructive surgery with mesh may not include
14 every single complication.
15 MR. SLATER: Move to strike.
16 BY MR. SLATER:
17 Q. All I'm saying is the opinions you're
18 offering about the warnings are not based on any
19 standard whatsoever as to what Ethicon was required
20 to do because you don't know what they were
21 required to do, right?
22 A. No, I'm commenting on what the average
23 pelvic surgeon needs to know.
24 MR. SLATER: Move to strike.
25 BY MR. SLATER: