# EXHIBIT F

Russell F. Dunn, Ph.D.

Page 1

COMMONWEALTH OF MASSACHUSETTS
MIDDLESEX,ss.        SUPERIOR COURT DEPARTMENT
                    OF THE TRIAL COURT

```
ALBRIGHT, Diane               |
                              |
     Plaintiff,               |
                              |
       v.                     | Civil Action No.
                              | MICV2012-00909
BOSTON SCIENTIFIC CORP.,      |
(d/b/a, MANSFIELD             |
SCIENTIFIC, INC., &           |
MICROVASIVE INC.              |
                              |
     Defendants.              |
                              |

CARDENAS, Maria               |
                              |
     Plaintiff,               |
                              |
       v.                     | Civil Action No.
                              | MICV2012-02912
BOSTON SCIENTIFIC CORP.,      |
(d/b/a, MANSFIELD             |
SCIENTIFIC, INC.,             |
MICROVASIVE INC.) and         |
John Doe Corporation 1-50     |
                              |
     Defendants.              |
                              |

OROZCO, Ronda and Tony        |
                              |
     Plaintiffs,              |
                              |
       v.                     | Civil Action No.
                              | MICV2012-03068
BOSTON SCIENTIFIC CORP.,      |
(d/b/a, MANSFIELD             |
SCIENTIFIC, INC.,             |
MICROVASIVE INC.) and         |
John Doe Corporation 1-50     |
                              |
     Defendants.              |
```

## Page 2

```
 1  WILSON, Julia         |
        Plaintiff,      |Civil Action No.
 2       v.              |MICV2012-02626
                         |
 3  BOSTON SCIENTIFIC CORP.,|
     (d/b/a, MANSFIELD    |
 4   SCIENTIFIC, INC.,    |
     MICROVASIVE INC.) and|
 5   John Doe Corporation 1-50|
        Defendants.      |
 6                       |
     DEBORAH A. BARBA and |
 7   THOMAS D. BARBA, her |Civil Action No.
     husband              |N11C-08-050 MMJ
 8      Plaintiffs,      |
 9       v.              |
10   JOHN C. CARLSON, D.O., |
11   MATERNITY ASSOCIATES, |
12   P.A., and BOSTON    |
13   SCIENTIFIC CORPORATION, A|
14   Delaware Corporation, |
15      Defendants.      |
16
17      Videotaped deposition of RUSSELL F. DUNN,
18   PH.D., a witness in the above-entitled cause,
19   taken before Cynthia Odom, Certified
20   Shorthand Reporter and Notary Public in
21   and for Davidson County, Tennessee, at
22   2555 West End Avenue, Nashville,
23   Tennessee, on the 21st day of February,
24   2014, commencing at 8:14 a.m., pursuant to
     the Massachusetts Rules of Civil
25   Procedure.
```

## Page 3

```
 1  APPEARANCES:
 2   WEXLER WALLACE, L.L.P.
        55 West Monroe Street, Suite 3300
 3      Chicago, Illinois 60603
        For the Plaintiff
 4      BY: MICHAEL H. BOWMAN, ESQ.
 5   SHOOK, HARDY & BACON, L.L.P.
        201 S. Biscayne Boulevard
 6      Miami, Florida 33131
        For the Defendant
 7      BY: HILDY M. SASTRE, ESQ.
 8  ALSO PRESENT:
 9      VCE Digital, Videographers
10
11           INDEX
12  Witness                   Page
13  Russell F. Dunn, Ph.D.
14  Direct Examination . . . . . . . . . . 5
15  Cross Examination. . . . . . . . . 341
16  Redirect Examination . . . . . . . . 350
17
            EXHIBITS
18
    No.  Description              Page
19
     1   PCT-147 Researched Documents
20       Volume I                31
     2   PCT-147 Report, Digital Photos,
21       Microscopy, FTIR, GPC, XPS    31
     3   Rule 26 Expert Report of PCT,
22       LLC - Diane Albright        34
     4   Rule 26 Expert Report of PCT,
23       LLC - Deborah Barba         35
     5   Notice of Deposition - Albright 35
24   6   Notice of Deposition - Barba  36
     7   Flash Drive Containing Case,
25       Files, Testing, Photos        36
```

## Page 4

```
 1            S T I P U L A T I O N
 2       The deposition of RUSSELL F. DUNN,
 3   PH.D., taken by agreement at 2555 West End
 4   Avenue, Nashville, Tennessee, beginning at
 5   8:14 A.M., February 21, 2014, on behalf of
 6   the Defendants pursuant to the provision
 7   of the Massachusetts Rules of Civil
 8   Procedure.
 9       Formalities as to notice, caption,
10   certificate, and filing are waived.
11       All objections, except as to the form
12   of the question, are reserved to the
13   hearing.  The reporter, being a notary
14   public, may swear the witness.
15          THE VIDEOGRAPHER:  We're on
16   the record at 8:14 a.m. on February 21,
17   2014.  This is the video deposition of
18   Russell Dunn, Ph.D., in re Boston
19   Scientific litigation.  Will counsel
20   please introduce themselves.
21          MR. BOWMAN:  This is Mike
22   Bowman, representing the Plaintiffs.
23          MS. SASTRE:  Good morning,
24   Hildy Sastre, with Shook Hardy, on behalf
25   of the Defendants.
```

## Page 5

```
 1          THE VIDEOGRAPHER:  Would you
 2   please swear in the witness.
 3          RUSSELL F. DUNN, PH.D.,
 4   having first been duly sworn, testified as
 5   follows:
 6          DIRECT EXAMINATION
 7  BY MS. SASTRE:
 8    Q.  Good morning, Dr. Dunn.
 9    A.  Good morning.
10    Q.  Could I get you to state your full
11  name for the record, please?
12    A.  Russell Franklin Dunn.
13    Q.  Doctor, I know we've met and had a
14  couple of moments to exchange pleasantries
15  before we went on the record, but I just
16  wanted to formally introduce myself to
17  you.  I'm Hildy Sastre with Shook Hardy,
18  and we're here, as you know, to take your
19  deposition in a proceeding which is in
20  Massachusetts, a consolidated proceeding
21  there involving Boston Scientific and
22  pelvic mesh; you're aware of that?
23    A.  I understand.
24    Q.  Okay.  Very good.  And you also
25  actually, I would add on, you also have
```

Page 110

1  Q. Yes.
2  A. Yes.
3  Q. And I'm referring to the pelvic
4  mesh litigation, but, yes.
5  A. This is -- I don't recall any other
6  case involving a medical product.
7  Q. Uh-huh. Although you would agree
8  there's lots of medical products that are
9  manufactured from polypropylene?
10  A. Correct.
11  Q. And polypropylene has been used in
12  the human body since the 1950's; right?
13  A. I'm not debating that.
14  Q. And in a variety of medical
15  settings; correct?
16  A. That's my understanding.
17  Q. Okay. And is it your opinion, if
18  we take mesh out of the question, do you
19  hold an opinion that all polypropylene
20  medical products are defective if they
21  have an opportunity to come in contact
22  with oxygen?
23  A. That's oversimplifying it. You
24  know, really when we look at product
25  analysis we have to look at where the

Page 111

1  product is ultimately going to be used, so
2  as a scientist I would say that each of
3  those situations would have to be looked
4  at in detail individually. I can't make
5  that broad a blanket statement.
6  Q. Let me ask you specifically, and
7  just tell me whether you have an opinion
8  or not on this topic, but do you hold an
9  opinion that polypropylene sutures are
10  defective?
11  A. I do not hold an opinion.
12  Q. You don't know?
13  A. No, that's not what I said. I said
14  I don't hold an opinion. I haven't
15  studied polypropylene sutures.
16  Q. You agree that they certainly come
17  into contact with oxygen; right?
18  A. I have not studied polypropylene
19  sutures. I would want to study that in
20  detail.
21  Q. In the list of cases that you've
22  got here on Exhibit C to your CV --
23  A. Yes.
24  Q. What percentage of the time were
25  you retained by the Plaintiffs versus

Page 112

1  Defendants?
2  A. Oh, primarily Plaintiffs, or I
3  would say 90 percent or greater is
4  Plaintiffs, those are the attorneys that
5  are contacting me.
6  Q. Okay. When were you first retained
7  in this litigation against Boston
8  Scientific?
9  A. If I recall it was around October.
10  Q. Of 2013?
11  A. 2013, yes. And because I can't
12  tell you specifically -- I can look back
13  and find some information, but because I
14  was already working on the AMS litigation
15  case it's hard for me to give you a
16  definitive exact date right now.
17  Q. And when was your report issued?
18  A. Oh, I have to look back at the
19  date, it should have a date on it.
20  Q. I didn't see it.
21  A. I'm surprised. I would have to
22  look that up to be honest with you. I
23  think that I might be able to find it from
24  the billing.
25  Q. Does December of 2013 sound right?

Page 113

1  A. Yeah, if you only want the month,
2  yes.
3  Q. I remember a flurry of activity in
4  December.
5  A. That's easier for me to do.
6  December, yes, that sounds right.
7  Q. So you were retained by the
8  Plaintiffs in this litigation against
9  Boston Scientific in October of 2013;
10  correct?
11  A. Yes.
12  Q. And your report was issued
13  approximately two months later in
14  December; right?
15  A. Correct.
16  Q. And within that period of time your
17  testimony is you had an opportunity to
18  review all of the materials which we've
19  previously discussed, the depositions, the
20  documents; correct?
21  A. Again, I think my testimony was I
22  scanned much of that. I can't -- and I
23  think my testimony was that I can't tell
24  you in looking at those Bates numbers
25  whether I can definitively say that I saw

Russell F. Dunn, Ph.D.

Page 350

1  right?
2      A.  Well, with GPC you're getting a
3  molecular weight, so if you had degraded
4  segments that are oxidized those would be
5  averaged with segments that are not
6  degraded that are in the bulk, thus it's
7  going to give you the average of all of
8  that collectively together.
9      Q.  And it would lower the average of
10 the molecular weight; is that right?
11     A.  That is correct.
12         MR. BOWMAN:  I have nothing
13 further.
14         MS. SASTRE:  Just a question
15 or two.
16         REDIRECT EXAMINATION
17 BY MS. SASTRE:
18     Q.  Doctor, is it your sworn testimony
19 today that FTIR testing is incapable of
20 detecting surface degradation on
21 polypropylene?
22     A.  No, that's not my testimony.
23     Q.  Because it can detect surface
24 oxidation on polypropylene; correct?
25     A.  If it's significant -- if it's a

Page 351

1  sufficiently high quantity of oxidation,
2  yes.
3          MS. SASTRE:  Okay.  I have
4  nothing further.
5          MR. BOWMAN:  Okay.
6          MS. SASTRE:  All set?  Okay.
7  Great.  Thanks.
8          THE VIDEOGRAPHER:  That
9  concludes the deposition, off the record,
10 3:48 p.m.
11        (Whereupon, the videotape
12        deposition of Russell Dunn,
13        Ph.D., was completed at 3:48
14        p.m.)

Page 352

1
   STATE OF TENNESSEE)
2                    ) ss
   COUNTY OF DAVIDSON)
3
4      I, CYNTHIA ODOM, Certified Shorthand
5  Reporter and Notary Public duly and
6  qualified in and for the State of
7  Tennessee do hereby certify there came
8  before me the deponent herein, namely
9  RUSSELL F. DUNN, PH.D., who was by me duly
10 sworn to testify to the truth and nothing
11 but the truth concerning the matters in
12 this cause.
13     I further certify that the foregoing
14 transcript is a true and correct
15 transcript of my original stenographic
16 notes.
17     I further certify that I am neither
18 attorney or counsel for, nor related to or
19 employed by any of the parties to the
20 action in which this deposition is taken;
21 and furthermore, that I am not a relative
22 or employee of any attorney or counsel
23 employed by the parties hereto or
24 financially interested in the action.
25

Page 353

1      IN WITNESS WHEREOF, I have hereunto
2  set my hand and affixed my Notarial Seal
3  this 6th day of March, 2014.
4
5
6           CYNTHIA ODOM,
            NOTARY PUBLIC
7           TNLCR#: 487

89 (Pages 350 to 353)

```
1        IN WITNESS WHEREOF, I have hereunto
2   set my hand and affixed my Notarial Seal
3   this  28th  day of February, 2014.
4
5
                     _____Cynthia Odom_____
6                    CYNTHIA ODOM,
                     NOTARY PUBLIC
7                    TNLCR#: 487
```

[Notary Seal: CYNTHIA ODOM, STATE OF TENNESSEE NOTARY PUBLIC, DAVIDSON COUNTY, My Commission Expires July 7, 2014]