# Exhibit H

Timothy A. Ulatowski

```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                    CHARLESTON DIVISION

- - - - - - - - - - - - - - -+
                              |
IN RE: ETHICON, INC.          |  Master File Number:
PELVIC REPAIR SYSTEMS         |
PRODUCTS LIABILITY            |  2:12-MD-02327
LITIGATION                    |
                              |  MDL No. 2327
- - - - - - - - - - - - - - -|
                              |
THIS DOCUMENT RELATES TO:     |
                              |  Case Number:
CAROLYN LEWIS, ET AL, VS.     |
ETHICON, INC.                 |  2:12-CV-04301
                              |
- - - - - - - - - - - - - - -+
```

Videotaped Deposition of

TIMOTHY A. ULATOWSKI

Washington, D.C.

Tuesday, December 17, 2013

9:00 a.m.

Reported by:  Laurie Bangart, RPR, CRR

GOLKOW TECHNOLOGIES, INC.

(877)370-3377

www.golkow.com

Golkow Technologies, Inc. - 1.877.370.DEPS

Timothy A. Ulatowski

Page 142

1 whether she informed Mrs. Lewis about potential
2 particle loss?
3     A    I don't recall any testimony in regard to
4 that.
5     Q    Do you know whether Dr. Boreham had any
6 knowledge about de novo urinary tract infections and
7 whether she informed Mrs. Lewis about that
8 possibility?
9     A    Let me look at her testimony, at least what
10 I extracted.
11        I haven't referenced that in my report.
12     Q    You cite the current updated FDA website in
13 your report on SUI that was out in March, I believe;
14 correct?
15     A    Right.
16     Q    And you would agree that the FDA's website
17 says that the information they reviewed is limited in
18 outcomes after one year; correct?
19        MS. SUTHERLAND: Objection.
20        If you've got the document, you
21 want to show him?
22 BY MR. KUNTZ:
23     Q    Well, you have it cited in your report,
24 don't you?
25        MS. SUTHERLAND: That doesn't mean

Page 143

1 he's got it memorized, Jeff.
2        MR. KUNTZ: Maybe if he would have
3 brought some stuff, we could have it here.
4        (Exhibit 11 was marked for
5        identification.)
6 BY MR. KUNTZ:
7     Q    I'm handing you what's going to be marked
8 Plaintiff's Exhibit 11.
9     A    Okay.
10        I'll put this away, this other away.
11     Q    Do you recognize that document? Have you
12 seen that before, Mr. Ulatowski?
13     A    Yes.
14     Q    And I think in your report -- the first
15 bullet point is something that you have in your
16 report, and you underline it.
17        You would agree with me safety and
18 effectiveness of multi-incision slings is well
19 established in clinical trials that followed patients
20 for up to one year?
21     A    That's what FDA stated.
22     Q    So they're not relying on any data or making
23 that statement for anything over one year; correct?
24        MS. SUTHERLAND: Objection.
25        THE WITNESS: Well, that's a

Page 144

1 blanket -- this is for all TVT devices, so
2 they're going to be commenting as a group.
3 Of course there's longer term studies for
4 various other, various types of TVT devices.
5 BY MR. KUNTZ:
6     Q    You don't have any opinions in this case as
7 to whether the TVT IFU adequately discloses adverse
8 reactions; correct?
9     A    Well, I have an opinion about the adequacy
10 of the labeling in regard to regulatory requirements,
11 and I deferred on specifics regarding adverse effects
12 to medical opinion, which is required, I think, in
13 regard to assessing adverse effects.
14     Q    So you would agree with me that you have no
15 opinion as to the whether TVT IFU adequately discloses
16 adverse reactions? You agree with that?
17     A    Not beyond the fact that it meets the
18 regulatory requirements for labeling, but as far as
19 the ingredients of the adverse effects section, that I
20 would defer to medical opinion.
21     Q    And you have no opinion on this in this case
22 whether Medical Affairs at Ethicon was aware of
23 significant adverse reactions?
24        MS. SUTHERLAND: Objection.
25        THE WITNESS: I guess I don't

Page 145

1 understand that question. Could you repeat
2 it, please.
3 BY MR. KUNTZ:
4     Q    Do you have any opinion in this case whether
5 Medical Affairs at Ethicon was aware of significant
6 adverse reactions or not?
7     A    Well, there were MDR reports. They would
8 have been aware of those MDR reports.
9     Q    Do you know, according to the MDR reports
10 you discussed in your report, what adverse reactions
11 they would have been aware of?
12     A    There were various medical outcomes, adverse
13 effects reported in the -- as documented in the issue
14 report, so -- and it spans what's in the labeling. So
15 they knew of those. Of course, they would know of
16 those MDR reports. They commented on those.
17     Q    These are what you discuss on page 59 of
18 your report?
19     A    Yes.
20     Q    So you believe that Medical Affairs was
21 aware of all of these adverse reactions; is that true?
22     A    Well, I think first of all that Ethicon,
23 since it's in the issue reports, would have been aware
24 of these.
25     Q    So they would have been aware of hematomas?

Timothy A. Ulatowski

Page 146

1    MS. SUTHERLAND: Did you finish
2    your answer? I thought he might have cut you
3    off.
4    BY MR. KUNTZ:
5    Q   I'm sorry if I did.
6    A   No. I'm commenting on here what are in the
7    issue reports.
8    Q   That would include hematomas?
9    A   I've listed that, yes.
10   Q   Exposure?
11   A   Yes.
12   Q   I take it that's a typo, double exposure.
13   A   Oh, yeah, mm-hmm.
14   Q   Exposure.
15       Pain?
16   A   Yes.
17   Q   Bleeding?
18   A   Mm-hmm.
19   Q   Retention? I assume you mean urinary
20   retention.
21   A   Right.
22   Q   Erosion?
23   A   Mm-hmm.
24   Q   Voiding issues?
25   A   Yes.

Page 147

1    Q   Infection?
2    A   Yes.
3    Q   Fistulas?
4    A   Yes.
5    Q   Nerve issues?
6    A   Yes.
7    Q   And then skipping down, procedural errors?
8    A   Yes.
9    Q   Malfunctions?
10   A   Yes.
11   Q   Other voiding problems?
12   A   Yes.
13   Q   And you'd also agree that they're aware of
14   shrinkage?
15   A   Yes.
16   Q   Tissue reaction and scarring?
17   A   Yes. Rare reports of those.
18   Q   Is there any reason that you only reviewed
19   the issue reports from January 1, 1999 to December 31,
20   2000?
21   A   Well, I had those reports. I've reviewed a
22   lot of issue reports for a lot of products. I think
23   for the TVT products, I've got thousands of other
24   issue reports for TVT products as a whole, but for
25   retropubic, no, I don't recall why that was selected

Page 148

1    offhand. I don't recall.
2    Q   But you can agree with me that for the TVT
3    retropubic, you only reviewed, what is that; two years
4    of issue reports?
5    A   That's correct. For this particular report,
6    that's what I had.
7    Q   Do you agree with me that you don't have an
8    opinion on the accuracy or completeness of the adverse
9    reactions section in the IFU?
10   A   Yeah, that goes hand in hand with my other
11   comment that I think that requires medical opinion as
12   to what should be included there.
13   Q   The answer to my question is yes, you would
14   agree with me?
15   A   Yes.
16   Q   And you'd agree with me that you don't have
17   an opinion as to whether the TVT IFU adequately
18   disclosed the risks known to medical affairs?
19   A   Repeat that, please.
20   Q   You don't have an opinion as to whether the
21   TVT IFU adequately disclosed the risks known to
22   medical affairs?
23   A   Yeah, I think that's subject to the
24   deposition testimony, their interpretation of events
25   and what they believe to be significant and reportable

Page 149

1    in the IFU.
2    Q   And you have no opinion as to what adverse
3    reactions should be in the patient brochure?
4    A   That's correct. I think that requires
5    medical opinions to assess that.
6    Q   Have you reviewed the 2012 patient brochure
7    in this case?
8    A   I believe so. I've got them all listed,
9    what I looked at. At least I think so. Let me turn
10   back to that.
11       Now, you said the IFU?
12   Q   No. 2012 patient brochure.
13   A   Oh, patient brochure. You'd have to give me
14   a Bates number on that. I don't think I put a date on
15   it.
16   Q   Here's a copy of it.
17   A   I think I reviewed all of them, but a
18   specific one I'll have to see.
19       (Exhibit 12 was marked for
20       identification.)
21   BY MR. KUNTZ:
22   Q   Handing you what's been marked Plaintiff's
23   Exhibit 12.
24       Do you recognize that document as the 2012
25   patient brochure?

38 (Pages 146 to 149)

Golkow Technologies, Inc. - 1.877.370.DEPS