# EXHIBIT M

Brian J. Flynn, M.D.

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

Case No.: 2:13-cv-04457          MDL NO. 2326

_____

VIDEO DEPOSITION OF BRIAN J. FLYNN, MD     August 29, 2014

_____

BOSTON SCIENTIFIC CORPORATION, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION

Related to

AMBER COMER.

_____

A P P E A R A N C E S:

For Plaintiff:
          SEAN O. MCCRARY, ESQUIRE
          sean.mccrary@ahw-law.com
          Andrus Wagstaff, PC
          7171 West Alaska Drive
          Lakewood, Colorado  80226
          (303) 376-6360

For Defendant:
          ANDREW H. MYERS, ESQUIRE
          myers@wtotrial.com
          Wheeler Trigg O'Donnell, LLP
          370 Seventeenth Street, Suite 4500
          Denver, Colorado  80202
          (303) 244-1800

Golkow Technologies, Inc. - 1.877.370.DEPS

## Page 2

```
 1    APPEARANCES: (Cont.)
 2
      For Witness:
 3         GREGORY R. PICHE, ESQUIRE
           Singularity Legal, PLLC
 4         3144 Newton Street
           Denver, Colorado  80211
 5         (303) 668-4240
 6
      Also Present:  Adam Johnston, Videographer
 7
 8
 9
10
11
12        Pursuant to Notice and the Colorado Rules of Civil
13    Procedure, the video deposition of BRIAN J. FLYNN, MD called by
14    Plaintiff, was taken on Friday, August 29, 2014, commencing at
15    7:10 AM  at 12631 17th Street, Fifth Floor, Aurora, Colorado,
16    before Martha Loomis, Certified Shorthand Reporter and
17    Colorado Notary Public.
18
19
20
21
22
23
24
25
```

## Page 4

```
 1         THE VIDEOGRAPHER:  We are now on the record.
 2    My name is Adam Johnston.  I am a videographer for Golkow
 3    Technologies.  Today's date is August 29, 2014.  The time
 4    is 7:10 a.m. This video deposition is being held at
 5    12631 East 17th Avenue, Room 5500, Aurora, Colorado. It's
 6    in the matter of Amber Comer versus Boston Scientific
 7    Corporation for the U.S. District Court, the Southern
 8    District of West Virginia. The deponent is Brian J. Flynn,
 9    M.D.
10         Counsel, please identify yourselves for the
11    record.
12         MR. MCCRARY:  My name is Sean McCrary with the
13    Andrus Wagstaff firm in Denver representing Plaintiff
14    Corner.
15         MR. MYERS:  Andrew Myers with Wheeler Trigg
16    O'Donnell on behalf of Boston Scientific.
17         MR. PICHE:  Greg Piche here on behalf of the
18    deponent.
19         THE VIDEOGRAPHER:  The court reporter is Martha
20    Loomis. She will now swear in the witness.
21              P R O C E E D I N G S
22              BRIAN J. FLYNN, MD,
23    having been duly sworn to state the whole truth, testified as
24    follows:
25              EXAMINATION
```

## Page 3

```
 1              I N D E X
 2
 3    VIDEO DEPOSITION OF BRIAN J. FLYNN, MD
 4    EXAMINATION BY:                        PAGE
 5      Mr. McCrary                          5, 128
 6      Mr. Myers                            67, 136
 7
      DEPOSITION EXHIBITS:          INITIAL REFERENCE
 8
      Exhibit 1  Notice of Videotaped Deposition
 9               of Brian J. Flynn, MD            5
10    Exhibit 2  Curriculum Vitae, Brian J. Flynn, MD    7
11    Exhibit 3  University of Colorado Hospital
                 2-28-11 Medical Records, Amber Comer    29
12
      Exhibit 4  University of Colorado Hospital
13               4-8-11 Medical Records, Amber Comer     33
14    Exhibit 5  University of Colorado Hospital
                 4-6-12 Medical Records, Amber Comer,
15               Bates No. 00001 - 00058                 36
16    Exhibit 6  Pathology of Explanted Transvaginal
                 Meshes                                  49
17
      Exhibit 7  Polypropylene Vaginal Mesh Grafts
18               in Gynecology                           53
19    Exhibit 8  American Urological Association
                 Position Statement, Use of Vaginal Mesh for
20               The Surgical Treatment of Stress Urinary
                 Incontinence, BSCM04400016224           75
21
      Exhibit 9  University of Colorado Hospital
22               Visit Summary, ComerA_Bolshoun
                 Medical_000108 - 000123                 119
23
24
25
```

## Page 5

```
 1    BY MR. McCRARY:
 2         Q.  Good morning, Dr. Flynn.  My name is Sean McCrary.
 3    I'm an attorney for one of your patients, Amber Comer.
 4         Did you receive a copy of a notice of deposition to
 5    appear today?
 6         A.  I did.
 7         Q.  I got a copy for you right here.  We're going to
 8    mark that as Exhibit 1.
 9         (Exhibit 1 marked for identification.)
10         MR. McCRARY:  Andrew, do you need one?
11         MR. MYERS:  No, that's fine.
12         (BY MR. McCRARY)  Q.  Do you see on the second
13    page of that document, Doctor, it asked you to bring a couple
14    of things with you today?
15         A.  I do.
16         Q.  Can we just go through those, and I'll ask you
17    whether or not you brought each one of those requests on
18    that document.
19         A.  Okay.  So bullet point A, medical records and
20    in-hospital records, I have that directly available.
21         The University no longer has a paper chart.  We
22    have electronic charts.  So I have my laptop here and access
23    to Epic, which is our electronic medical record, EMR.  So I
24    have all those records readily available, and certainly I can
25    print anything if you would like at any point.
```

Brian J. Flynn, M.D.

Page 6

1    I do not have any photographs or slides or
2    questionnaires. I don't have any information sheets. I
3    don't keep any personal records on my patients; everything is
4    a shared chart with the University so I don't have a personal
5    office chart. Everything's the University of Colorado
6    Hospital chart.
7        In terms of billing statements and insurance
8    issues, I don't have any copies of that. I have not had any
9    correspondence with the Plaintiff electronically or written
10   communication.
11       And with respect to bullet point B, I don't have
12   any emails to Boston Scientific as it pertains to this case
13   or this product, Lynx. I do have a copy of my CV if you'd
14   like me to submit that as an exhibit.
15   Q. Sure.
16   A. This is an updated copy. And I printed that out
17   this morning, so that is the most recent copy of my CV.
18   Let's see.
19       Lastly, bullet point 3, I've never used this
20   product Lynx, so I don't have any, any information for users
21   or instructions to user, patient brochures, or marketing
22   literature from Boston Scientific.
23   Q. All right. Thanks, Doctor. And I probably should
24   have asked you this at the outset, but have you ever been
25   deposed before?

Page 7

1    A. I have.
2    Q. And so you're familiar with the process, and that
3    you need to wait for me to finish before you answer? And if
4    defense -- Defense Attorney has an objection you need to
5    let him get that out there and the same with your attorney,
6    before you give your answer?
7    A. Yes. I'm familiar with the process.
8    Q. Okay. In that case, why don't we start by just
9    taking a look at your CV here. Is this the only copy you
10   brought with you?
11   A. I have an electronic copy right in front of me as
12   well.
13   Q. I'll go ahead and mark it and that way we'll both
14   get a copy, and I'll let you look at that as you go.
15       (Exhibit 2 marked for identification.)
16   Q. And I just wanted you to give us a brief summary
17   of your background, and how you ended up as a physician here
18   today.
19   A. Well, I'm Dr. Brian Flynn. And I am the co-
20   director of female pelvic medicine reconstructive surgery at
21   the University of Colorado. I'm associate professor here of
22   surgery and urology.
23       And I've been a faculty member here for more than
24   12 years. I came here in 2002 after finishing my fellowship
25   at Duke University in female pelvic medicine and

Page 8

1    reconstructive surgery.
2        I started out as an assistant professor and was
3    promoted to associate professor at my eighth year. And I'm
4    being considered for full professor.
5        My practice is largely in female pelvic medicine,
6    but I do male reconstructive surgery as well.
7    Q. Okay. And correct me if I'm wrong. My
8    understanding is that you receive a lot of referrals when
9    other physicians around the region have mesh complications.
10   Is that accurate?
11   A. I receive a lot of referrals for a variety of
12   complaints, mesh complications included.
13   Q. Would you say that you see more mesh complications
14   than most gynecologists or urogynecologists in this area?
15       MR. MYERS: Objection to form.
16   A. I see a lot of complications. I'm not familiar
17   with what other people's numbers are. But I know I'm very
18   busy in that part of my practice. It's a significant part of
19   my practice. I've done -- I have an interest in that area.
20       (BY MR. McCRARY) Q. Have you ever done any
21   research involving pelvic mesh?
22   A. Can you be more specific about research?
23   Q. Have you ever performed any studies involving
24   pelvic mesh?
25   A. Clinical studies in terms of prospective randomized

Page 9

1    studies or industry sponsored studies, no. In terms of
2    retrospective case series, yes, looking at my own experiences
3    with mesh.
4        I've looked at my experience using TVT Secur is
5    one product that I've written about. And I've published
6    videos on TVT Abbrevo. I have published a video on Prolift
7    is another product that I've published a video on.
8        And with respect to mesh complications, I've
9    written about that. I've written two major articles. One
10   was an update for the American Urologic Association. And
11   another article was a recent article in 2013 I believe in the
12   International Urogynecology looking at complications from
13   midurethral slings.
14       Most of my research is retrospective case series.
15   It's not bench work. I've never done any laboratory work or
16   bench science, or any kind of biomaterial scientific research
17   on any of these products.
18   Q. So does that then mean that you're essentially
19   going back and looking at the cases that you've seen, and
20   quantifying how often you see certain occurrences with pelvic
21   mesh? Is that accurate?
22   A. Yes, that's accurate.
23   Q. Okay. And you mentioned that you did a video.
24   What were you, what was the purpose of the video? Was it
25   a training video?

3 (Pages 6 to 9)

Case 2:12-md-02327   Document 2130-13   Filed 05/05/16   Page 5 of 5 PageID #: 52926

Sandra Schumacher vs. C.R. Bard (200)     Brian Flynn, M.D.                    10/30/2014

Page 14

1  Q. Have you ever reviewed any of the
2  depositions in this case?
3  A. I have not.
4  Q. Any summaries of the depositions?
5  A. No.
6  Q. Have you reviewed any of Ms. Schumacher's
7  medical records from other providers?
8  A. I have reviewed records from Dr. Crane's
9  office.
10 Q. Do you maintain those as part of your
11 chart?
12 A. Yes. In the tabs called "Media" in the
13 electronic medical record, any documents that were
14 faxed or brought to us by the patient would appear
15 there.
16    So one document I brought here today is
17 just the original op report from May 9, 2008 regarding
18 her surgery.
19 Q. We'll get more into the details later,
20 but as a general matter, do you have any criticisms of
21 Dr. Crane's treatment of Ms. Schumacher?
22 A. Can you be more specific?
23 Q. We can go in to more details later.
24 A. Okay.
25 Q. In preparation for the deposition, did

Page 15

1  you review -- well, first let me ask you, do you
2  understand that Ms. Schumacher was implanted with an
3  Avaulta Solo anterior and posterior and an Align
4  product?
5  A. Yes.
6  Q. Those are the subject of this litigation?
7  A. Yes.
8  Q. Did you review any information in
9  preparation for today regarding those products?
10 A. No.
11    MR. BUHR: Let's mark for the record as
12 Exhibit 3 -- I guess it would be the copy of notice of
13 deposition.
14    (Deposition Exhibit 3 was marked.)
15 Q. (BY MR. BUHR) I know we sent this to
16 your office, but I think you were mentioning off the
17 record that you don't recall actually seeing this
18 prior to today?
19 A. Oftentimes I don't. My assistant Kathy
20 Politas often will arrange these things. It's pretty
21 recognizable as a deposition. So I always confirm
22 with her that it is, in fact, a notice of deposition.
23 And then, if so, she'll go ahead and schedule that.
24 So I was certain I received it. I just hadn't seen it
25 personally.

Page 16

1  Q. It asks you to bring certain documents
2  with you today. I understand a lot of the medical
3  records are maintained electronically, which I think
4  we've obtained from the hospital. Do you have any
5  other documents related to Ms. Schumacher's care?
6  A. I don't keep any personal medical
7  records. Everything we have is maintained by the
8  University of Colorado Hospital. We don't have any
9  kind of shadowed charts in the clinic or academic
10 office. I don't have any emails or any notes or
11 letters that are not part of the record.
12 Q. And I understand you brought a few
13 specific medical records with you today that involve
14 your actual meetings with Ms. Schumacher; is that
15 accurate?
16 A. Yes. I have a copy of our initial visit
17 consultation on May 9, 2014. I have a copy of the
18 August 6 preoperative visit, and I have a copy of the
19 surgical report that I performed on her on August 12,
20 the pathology report from that date, and I believe
21 that's it.
22    The other records I have here with me are
23 some of the notes from Banner Health, from McKee
24 Medical Center, and operative reports from Dr. Crane.
25 Q. Those are all records that are routinely

Page 17

1  maintained by your office in the ordinary course of
2  business?
3  A. Yes.
4  Q. I would like to, I think, attach all of
5  those as Exhibit 4. We can kind of deal with the
6  housekeeping of that maybe at a break or something.
7  But I believe you also said that you have a few notes
8  or things that you cut and paste --
9  A. Yes.
10 Q. -- pasted from some of the electronic
11 records?
12 A. That's this first document. It's five --
13 maybe you want to list this as a separate exhibit, but
14 it's a five-page document of notes. I kind of cut it
15 and paste it from the UCH record just to try to get
16 the key dates in front of me.
17    MR. BUHR: I would like to attach that to
18 the record, and maybe we can do that as Exhibit 5.
19    (Deposition Exhibit 5 was marked.)
20 Q. (BY MR. BUHR) I want to talk to you a
21 little bit about your general practice. Do you have
22 any estimate as to how many patients you typically see
23 in a week?
24 A. Typically around 75 patients.
25 Q. And the case we're discussing today