# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC., ) | |
| PELVIC REPAIR SYSTEM ) | |
| PRODUCTS LIABILITY ) | Master File No. |
| LITIGATION ) | 2:12-MD-02327 |
| ) | MDL 2327 |
| ) | |
| ) | JOSEPH R. GOODWIN |
| ) | U.S. DISTRICT JUDGE |
| THIS DOCUMENT RELATES TO: ) | |
| THE CASES LISTED BELOW ) | |
| ) | |
| Mullins, et al. V. ) | 2:12-cv-02952 |
| Ethicon, Inc., et al. ) | |
| Sprout, et al. V. ) | 2:12-cv-07924 |
| Ethicon, Inc., et al. ) | |
| Iquinto v. Ethicon, Inc., ) | 2:12-cv-09765 |
| et al. ) | |
| Daniel, et al. V. ) | 2:13-cv-02565 |
| Ethicon, Inc., et al. ) | |
| Dillon, et al. V. ) | 2:13-cv-02919 |
| Ethicon, Inc., et al. ) | |
| Webb, et al. V. Ethicon, ) | 2:13-cv-04517 |
| Inc., et al. ) | |
| Martinez v. Ethicon, ) | 2:13-cv-04730 |
| Inc., et al. ) | |
| McIntyre, et al. V. ) | 2:13-cv-07283 |
| Ethicon, Inc., et al. ) | |

CONTINUED VIDEOTAPED DEPOSITION OF KIMBERLY KENTON, M.D.
Friday, February 19, 2016, 8:10 a.m.

Page 211

```
 1   Oxley v. Ethicon, Inc.,    ) 2:13-cv-10150
     et al.                      )
 2                               )
     Atkins, et al. V.           ) 2:13-cv-11022
 3   Ethicon, Inc., et al.       )
                                 )
 4   Garcia v. Ethicon, Inc.,    ) 2:13-cv-14355
     et al.                      )
 5                               )
     Lowe v. Ethicon, Inc., et   ) 2:13-cv-14718
 6   al.                         )
                                 )
 7   Dameron, et al. V.          ) 2:13-cv-14799
     Ethicon, Inc., et al.       )
 8                               )
     Vanbuskir, et al., v.       ) 2:13-cv-16183
 9   Ethicon, Inc., et al.       )
                                 )
10   Mullens, et al. V.          ) 2:13-cv-16564
     Ethicon, Inc., et al.       )
11                               )
     Shears, et al. V.           ) 2-13-cv-17012
12   Ethicon, Inc., et al.       )
                                 )
13   Javins, et al., v.          ) 2:13-cv-18479
     Ethicon, Inc., et al.       )
14                               )
     Barr, et al. V. Ethicon,    ) 2:13-cv-22606
15   Inc., et al.                )
                                 )
16   Lambert v. Ethicon, Inc.,   ) 2:13-cv-24393
     et al.                      )
17                               )
     Cook v. Ethicon, Inc., et   ) 2:13-cv-29260
18   al.                         )
                                 )
19   Stevens v. Ethicon, Inc.,   ) 2:13-cv-29918
     et al.                      )
20                               )
     Harmon v. Ethicon, Inc.,    ) 2:13-cv-31818
21   et al.                      )
22
            CONTINUED VIDEOTAPED DEPOSITION OF KIMBERLY KENTON, M.D.
23                Friday, February 19, 2016, 8:10 a.m.
24
```

Page 212

```
 1
     Snodgrass v. Ethicon,       ) 2:13-cv-31881
 2   Inc., et al.                )
                                 )
 3   Miller v. Ethicon, et al.   ) 2:13-cv-32627
                                 )
 4   Matney, et al. V.           ) 2:14-cv-09195
     Ethicon, Inc., et al.       )
 5                               )
     Jones, et al. V. Ethicon,   ) 2:14-cv-09517
 6   Inc., et al.                )
                                 )
 7   Humbert v. Ethicon, Inc.,   ) 2:14-cv-10640
     et al.                      )
 8                               )
     Gillum, et al. V.           ) 2:14-cv-12756
 9   Ethicon, Inc., et al.       )
                                 )
10   Whisner, et al. V.          ) 2:14-cv-13023
     Ethicon, Inc., et al.       )
11                               )
     Tomblin v. Ethicon, Inc.,   ) 2:14-cv-14664
12   et al.                      )
                                 )
13   Schepleng v. Ethicon,       ) 2:14-cv-16061
     Inc., et al.                )
14                               )
     Tyler, et al. V. Ethicon,   ) 2:14-cv-19110
15   Inc., et al.                )
                                 )
16   Kelly, et al. V. Ethicon,   ) 2:14-cv-22079
     Inc., et al.                )
17                               )
     Lundell v. Ethicon, Inc.,   ) 2:14-cv-24911
18   et al.                      )
                                 )
19   Cheshire, et al.            ) 2:14-cv-24999
     Ethicon, Inc., et al.       )
20                               )
     Burgoyne, et al. V.         ) 2:14-cv-28620
21   Ethicon, Inc., et al.       )
                                 )
22   Bennett, et al. V.          ) 2:14-cv-29624
     Ethicon, Inc., et al.       )
23
            CONTINUED VIDEOTAPED DEPOSITION OF KIMBERLY KENTON, M.D.
24                Friday, February 19, 2016, 8:10 a.m.
```

Page 213

```
 1
 2
 3
 4          The resumption of the videotaped deposition
 5   of KIMBERLY KENTON, M.D., called by the Plaintiffs
 6   for examination, taken pursuant to the Federal
 7   Rules of Civil Procedure of the United States
 8   District Courts pertaining to the taking of
 9   depositions, taken before CORINNE T. MARUT, C.S.R.
10   No. 84-1968, Registered Professional Reporter and a
11   Certified Shorthand Reporter of the State of
12   Illinois, at the offices of Drinker Biddle & Reath
13   LLP, Suite 3700, 191 North Wacker Drive, Chicago,
14   Illinois, on February 19, 2016, commencing at 8:10
15   a.m.
16
```

Page 214

```
 1   APPEARANCES:
 2   ON BEHALF OF THE PLAINTIFFS:
 3        MOTLEY RICE LLC
          321 South Main Street
 4        Providence, Rhode Island 02903
          401-457-7728
 5        BY: FIDELMA L. FITZPATRICK, ESQ.
              ffitzpatrick@motleyrice.com
 6
 7        MOTLEY RICE LLC
          28 Bridgeside Boulevard
 8        Mt. Pleasant, South Carolina 29464
          843-518-0645
 9        BY: MARGARET M. THOMPSON, M.D., J.D.
              mmthompson@motleyrice.com
10
11        WAGSTAFF & CARTMELL, LLP
          4740 Grand Avenue, Suite 300
12        Kansas City, Missouri 64112
          816-701-1100
13        BY: JEFFREY M. KUNTZ, ESQ.
              jkuntz@wcllp.com
14
15   ON BEHALF OF THE DEFENDANTS:
16        BUTLER SNOW LLP
          500 Office Center Drive, Suite 400
17        Fort Washington, Pennsylvania 19034
          267-513-1885
18        BY: NILS B. (BURT) SNELL, ESQ.
              Burt.Snell@butlersnow.com
19
20        BUTLER SNOW LLP
          1020 Highland Colony Parkway, Suite 1400
21        Ridgeland, Mississippi 39157
          601-985-4596
22        BY: PAUL S. ROSENBLATT, ESQ.
              Paul.Rosenblatt@butlersnow.com
23
     VIDEOTAPED BY: MILO SAVICH
24   REPORTED BY: CORINNE T. MARUT, C.S.R. No. 84-1968
```

Kimberly Kenton, M.D.

Page 227

1  A. It's easier for me to --
2  Q. That's fine.
3  A. Oddly, I don't have it in the right
4  file.
5      I can pull it out of here. So much for
6  my filing system.
7      I will see if I can pull it up.
8      THE WITNESS: Can we connect to the Internet
9  here?
10     MR. SNELL: Yeah. It's DBR WiFi.
11     THE WITNESS: Might just be faster to PubMed
12 it.
13     MS. FITZPATRICK: It's why they call it the
14 Windy City I guess. The windows shake.
15         (WHEREUPON, discussion was had off
16         the record.)
17     THE WITNESS: I apologize for not being able
18 to put my hand on this.
19 BY MS. FITZPATRICK:
20 Q. That's okay. If you don't have it, we
21 can move on.
22 A. Yeah. Like I can find it for you at
23 some point, but I -- it's in this pile somewhere.
24 Q. Okay. That's fine.

Page 228

1      So, it's your recollection that there is
2  one RCT that compares the laser-cut TVT Retropubic
3  to the mechanically-cut TVT Retropubic?
4  A. I think it's an RCT. Like I said, I
5  can't recall the paper --
6  Q. Okay.
7  A. -- specifically, but I -- there is -- I
8  came across one comparator that I can remember.
9  Q. Okay. And I think you said that you
10 believe that that was an underpowered study where
11 they couldn't confirm their conclusions --
12 A. Yes.
13 Q. -- is that right?
14 A. I would -- I would rather than perhaps
15 inaccurately cite the paper, I'd rather find the
16 paper.
17 Q. Okay.
18 A. I didn't -- I didn't feel that it made a
19 cogent argument that compelled me to lean one way
20 or the other.
21 Q. Okay. Why don't maybe at a break we can
22 take a look for that. But I know that you have a
23 time limitation today.
24 A. Yeah.

Page 229

1  Q. So, we can -- we can move on.
2      Of the RCTs that you have looked at for
3  mechanically-cut TVT, how many of those had a
4  primary endpoint of safety?
5  A. In general, you're never going to have a
6  primary endpoint of safety for doing a randomized
7  controlled trial in something that has a rare
8  outcome because you would have to enroll
9  millions -- like thousands of women. So, usually
10 you have to -- you primary on an efficacy outcome.
11 Q. Okay. So, you're not --
12 A. Unless something is a common
13 complication, and then who would -- had high
14 complication rates and then who would be doing an
15 RCT? It would be unethical.
16 Q. Okay. So, none of them have a primary
17 endpoint of safety for the reasons that you have
18 just discussed, is that right?
19 A. You -- it's not a feasible trial design.
20 You have to use a different type of study to
21 evaluate that. That's where systematic reviews and
22 meta-analyses become powerful.
23     THE VIDEOGRAPHER: Excuse me, Doctor, if
24 you're not using the laptop, could you move it

Page 230

1  away. That's fine. Thank you.
2  BY MS. FITZPATRICK:
3  Q. Now, Doctor, you offered an opinion
4  yesterday that you believed that the laser-cut
5  TVT Retropubic performed the same as the
6  mechanically-cut TVT Retropubic. Do you recall
7  that?
8  A. I do.
9  Q. And is that an opinion that you hold
10 today?
11 A. It is.
12 Q. Is that based on any data that is
13 available in the literature to support that
14 opinion?
15 A. The only small study that I recall
16 coming across didn't -- wasn't compelling to
17 support one versus the other.
18 Q. So, what is the basis for your --
19 A. And my clinical experience has not been
20 that there's a difference.
21 Q. I'm --
22 A. My clinical experience hasn't been that
23 there is a difference as well.
24 Q. And your clinical experience, that would

6 (Pages 227 to 230)

Kimberly Kenton, M.D.

Page 231

1  be the anecdotal experience that we had talked
2  about yesterday and this morning, correct?
3      A.   That would be --
4      MR. SNELL: Objection.
5  BY THE WITNESS:
6      A.   That would be every surgeon who is
7  giving their overall clinical experience. I would
8  say in general my experiences are probably slightly
9  less anecdotal because I do report outcomes.
10 BY MS. FITZPATRICK:
11     Q.   Have you reported outcomes comparing the
12 laser-cut to the mechanically-cut?
13     A.   As I've said, I'm only familiar with one
14 paper in the literature that directly compares
15 those two, for that purpose.
16     Q.   Okay. I understand that, but you said
17 that you believe your experiences are probably
18 slightly less anecdotal because you do report
19 outcomes, correct?
20          So, what I am asking is have you
21 reported outcomes that compare the TVT
22 mechanically-cut versus the TVT laser-cut?
23     A.   I have not.
24     Q.   Okay. And you don't track that actually

Page 232

1  in either your academic work or in your clinical
2  work, correct?
3      A.   No, actually, we actually do track our
4  outcomes.
5      Q.   Okay. Do you track your outcomes in
6  your clinical work?
7      A.   I do. As I said, we see our patients
8  back yearly.
9      Q.   Okay. I'm asking you something a little
10 different.
11          Do you track outcomes for patients
12 looking at mechanically-cut versus laser-cut?
13     A.   Well, if you tracked -- the only way you
14 can track that type of an outcome is if you're
15 going to retrospectively look at the patients
16 who've had implanted, and we do -- we do keep those
17 data and we see people back yearly.
18     Q.   Okay. You keep the data on who's had a
19 mechanically-cut versus who's had a laser-cut, is
20 that right?
21     A.   Well, for me it's been rather simple
22 because I practice at one institution and everyone
23 got a mechanically-cut TVT because that was the
24 device that I was using. And then I came here and

Page 233

1  I came -- I transferred institutions and we are
2  using exclusively laser-cut.
3      Q.   Okay. But I have a slightly different
4  question than that.
5      A.   Okay.
6      Q.   Post-2006 how did you know whether you
7  were implanting a mechanically-cut or a laser-cut
8  into women?
9      A.   That's a fair point.
10     Q.   So, at your prior -- so, before
11 laser-cut hit the market, you know that you
12 implanted only mechanically-cut, correct?
13     A.   That's correct.
14     Q.   You didn't start to implant the TVT
15 until the mid-2000s, correct?
16     A.   Right. So, the only way I would know
17 which one I was using is to go back and pull the
18 records.
19     Q.   Okay. Which you haven't done?
20     A.   I have not done.
21     Q.   Okay. Have you -- do you know who
22 Dr. Nilsson is?
23     A.   Nilsson that has published the papers?
24     Q.   Yes.

Page 234

1      A.   I don't know him personally.
2      Q.   Do you know who he is?
3      A.   I know his work.
4      Q.   Okay. Do you consider that work to be
5  reliable?
6      A.   I think that for the -- yes. I mean,
7  it's observational cohort data, so it's not as good
8  as RCT data. But you're never going to be able to
9  do a randomized controlled trial and follow women
10 for 10 or 20 years because no one is going to pay
11 for it.
12          And as the SISTEr trial showed, women
13 that are happy and incontinent tend to not enroll
14 in long-term follow-up.
15     Q.   So, Doctor -- but you are familiar with
16 Dr. Nilsson's work, is that right?
17     A.   I am.
18     Q.   Are you familiar with any of
19 Dr. Nielsen's opinions about the differences, if
20 any, between laser-cut and mechanically-cut mesh?
21     A.   No.
22     Q.   Has anyone from Ethicon ever shared that
23 information with you?
24     A.   If they have, I don't recall it.

Kimberly Kenton, M.D.

Page 243

1  Surgery" that was published in 2015.
2      Have you seen this article before?
3  A.  I've seen it.
4  Q.  Have you read it?
5  A.  I have not.
6  Q.  Okay. And are you familiar with any of
7  the authors?
8  A.  I know Dr. Blaivas.
9  Q.  Is there anyone else here that you know?
10 A.  No.
11 Q.  How do you know Dr. Blaivas?
12 A.  He used to be the editor for one of our
13 journals. I've taught in a course with him before.
14 Q.  Now, you've offered opinions here on
15 safety issues concerning the TVT sling, correct?
16 A.  Correct.
17 Q.  Why haven't you read this article?
18 A.  This is essentially a book chapter that
19 is just one, a group of people reviewing it and not
20 in a systematic format and formulating their
21 opinions.
22 Q.  Okay.
23 A.  I think that maybe ten years ago when I
24 was a fellow I would have read something like this.

Page 244

1  This isn't how I base my opinions anymore.
2  Q.  Okay. Well, let's go through some of
3  this because I want to see how much of it that you
4  agree with.
5      And Dr. Blaivas, when going through
6  this, has looked at safety and risk/benefit
7  considerations in conjunction with the use of
8  polypropylene midurethral slings and has identified
9  specific complications that may be associated with
10 polypropylene slings.
11     Do you understand that?
12     If you take a look at this article,
13 let's start with on page 7 with "Infection."
14 MR. SNELL: I'm going to object to the
15 predicate as to what he did. Lacks foundation. Go
16 ahead.
17 BY MS. FITZPATRICK:
18 Q.  And do you see that Dr. Blaivas has
19 cited a number of references in connection with his
20 opinions or his observations on infections
21 associated with polypropylene slings?
22 A.  I see that he's stated and listed some
23 papers, yes.
24 Q.  Okay. And let's look at the back,

Page 245

1  starting on page 22.
2      And you'll see that he has cited a total
3  of 397 papers in conjunction with his observations
4  on midurethral slings. Do you see that?
5  MR. SNELL: Same objections.
6  BY THE WITNESS:
7  A.  Yes.
8  BY MS. FITZPATRICK:
9  Q.  Okay. And if you can take a quick look
10 through this, since you haven't done that before,
11 to just tell me if you've seen many of these papers
12 that he has cited before in connection with your
13 work.
14 A.  I mean, I've seen -- I've seen some of
15 the papers, yes.
16 Q.  Okay. And do you consider them to be
17 reliable and authoritative papers?
18 A.  I think some of the data are reliable
19 and authoritative. I think others are nothing
20 level than retrospective case series that probably
21 wouldn't even be published in high-quality journals
22 right now.
23 Q.  Okay. Tell me which ones you believe
24 are nothing less than retrospective case studies

Page 246

1  that wouldn't be published in high-quality journals
2  right now.
3  A.  "A primary sling for everyone with
4  genuine stress incontinence."
5      So, anything that predates the
6  Ward-Hilton trial, that was the first randomized
7  controlled trial that came out comparing --
8  adequately powered multi-center randomized
9  controlled trial comparing any -- comparing any
10 slings. So, I think that prior to that, these data
11 were what they were, but that's what -- the kind of
12 research where people were doing.
13     I am happy and proud to say as part of
14 the research community in pelvic floor disorders
15 that the level of our research and outcome data has
16 improved.
17 Q.  Okay. So, but take a look at No. 4.
18 No. 4 predates the Ward-Hilton study, correct?
19 A.  The Chaikin article?
20 Q.  Yes.
21 A.  Yes.
22 Q.  But it deals with pubovaginal fascial
23 slings, correct?
24 A.  Yep.

Kimberly Kenton, M.D.

|     | Page 283 |     | Page 285 |
| --- | --- | --- | --- |
| 1 | BY THE WITNESS: | 1 | familiar with many of these papers. I can |
| 2 | A. Yeah, I disagree with that but... | 2 | eyeball -- |
| 3 | BY MS. FITZPATRICK: | 3 | Q. You don't know what he cites? |
| 4 | Q. You can. You can comment on the quality | 4 | MR. SNELL: Don't interrupt. She is answering |
| 5 | of the literature even though you haven't looked at | 5 | your question. |
| 6 | this, you haven't read it and you don't know what's | 6 | BY THE WITNESS: |
| 7 | in these footnotes? | 7 | A. And I can eyeball many of these studies |
| 8 | A. We just spent probably 15 minutes going | 8 | and know that I have seen them in the past, |
| 9 | through some of the paper -- some of the -- | 9 | probably 15 years ago. I would have actually read |
| 10 | Q. We went through two -- | 10 | some of them. And they are like antiquated and |
| 11 | A. Read the paper. | 11 | not -- they have been replaced by higher quality |
| 12 | Q. We went through two of 397. | 12 | data. |
| 13 | A. No, we went through the -- read several | 13 | BY MS. FITZPATRICK: |
| 14 | paragraphs of how he came upon those conclusions. | 14 | Q. Okay. Is there any high-quality data |
| 15 | Q. I'm talking about the data that's in the | 15 | that's referenced in Dr. Blaivas' 397 footnotes? |
| 16 | 390 -- you've never -- let's do it this way. | 16 | A. Sure. There is the -- there is a |
| 17 | Turn to page 22 of Dr. Blaivas'. | 17 | reference for -- I just saw it. The -- one of -- |
| 18 | A. I'm not going to go -- | 18 | the TOMUS 24-month outcome paper is referenced |
| 19 | Q. You've never read this page before, have | 19 | there. |
| 20 | you? | 20 | Q. What's missing from this that you |
| 21 | A. I'm not going to go through -- | 21 | consider to be high-quality data that Dr. Blaivas |
| 22 | Q. Have you ever read this page before, | 22 | should have relied on? |
| 23 | Doctor? | 23 | A. I think that it's -- |
| 24 | A. The references, his references? | 24 | Q. What data is missing from here? |

|     | Page 284 |     | Page 286 |
| --- | --- | --- | --- |
| 1 | Q. Yes. | 1 | A. I can't tell go through here and tell |
| 2 | A. I have not read that particular page of | 2 | you what's missing, but I can -- |
| 3 | his references. | 3 | Q. That's because you haven't read it, |
| 4 | Q. Have you read page 23? Have you read | 4 | right? |
| 5 | that reference? | 5 | A. I can tell you what's included. There's |
| 6 | A. Actually we did look at page 22. | 6 | reasons that many of these papers aren't included |
| 7 | Q. Have you read this whole page, Doctor? | 7 | in a systematic review, which we have established |
| 8 | A. I have skimmed that page. | 8 | is -- or meta-analyses, is the highest level of |
| 9 | Q. Have you read this page? | 9 | evidence we have. |
| 10 | A. Yes. | 10 | Q. So, your complaint with Dr. Blaivas' |
| 11 | Q. Do you know what these 51 articles are? | 11 | paper is that he cites -- he provides too much |
| 12 | A. I don't know all of them. I know a | 12 | information, he cites too many papers? |
| 13 | great deal of them. | 13 | A. He provides -- |
| 14 | Q. Doctor, you never looked at it before | 14 | Q. Not that he hasn't cited relevant ones. |
| 15 | you sat down. | 15 | Correct? |
| 16 | MR. SNELL: Objection; form. | 16 | MR. SNELL: Form. |
| 17 | BY MS. FITZPATRICK: | 17 | BY THE WITNESS: |
| 18 | Q. You've never looked at this. You have | 18 | A. Well, I think you can by -- I think he |
| 19 | never looked at this paper and yet you are going to | 19 | cites relevant and irrelevant and doesn't |
| 20 | tell a jury here that you've read through these 51 | 20 | effectively weight them appropriately. |
| 21 | and you know enough of what these are and are not? | 21 | BY MS. FITZPATRICK: |
| 22 | A. I do. I -- as I've indicated earlier in | 22 | Q. Can I ask you, how do you know that if |
| 23 | my testimony, I spent a great deal of time going | 23 | you haven't read the paper? |
| 24 | through the peer-reviewed literature. I am | 24 | A. Because that is what a review article |

20 (Pages 283 to 286)