# EXHIBIT B

Teri A. Longacre, M.D.

Page 1

COURT OF COMMON PLEAS PHILADELPHIA COUNTY
TRIAL DIVISION - CIVIL
JUNE TERM 2013

SHARON CARLINO and ) Case No. 003470
CHARLES CARLINO, )
)
    Plaintiffs, )
)
vs. )
)
Ethicon Women's Health )
and Urology, a Division )
of Ethicon, Inc., et al., )
)
    Defendants. )

- - - -

EXPERT WITNESS TESTIMONY OF

TERI A. LONGACRE, M.D.

Held at Stanford University Medical Center

300 Pasteur Drive, Stanford, California

Tuesday, January 19, 2016, 2:32 p.m.

- - - -

REPORTED BY: ELAINA BULDA-JONES, CSR #11720

Teri A. Longacre, M.D.

Page 53

1  history would actually assist in the evaluation.
2           It would basically be providing
3  information that I could not obtain looking at the
4  slides themselves and that would actually alter
5  my -- somewhat my perception or interpretation of
6  those changes.
7       Q.   Okay.  And let's talk about specifically
8  specimens of explanted polypropylene mesh, okay?
9       A.   Okay.
10      Q.   And you have some experience with that; is
11 that correct, Doctor?
12      A.   That's correct.
13           MR. SNELL:  Objection.  General.  Covered
14 in Perry deposition.
15 BY MR. FREESE:
16      Q.   And, Doctor, how many specimens have you
17 examined in your career involving polypropylene
18 mesh?
19           MR. SNELL:  Same objection.
20           THE WITNESS:  Now, are you talking about
21 just all kinds of mesh or TVTs?  What kind of
22 question is this?
23 BY MR. FREESE:
24      Q.   I'm -- well, TVT is a proprietary brand of
25 Ethicon, so I'm -- my question is a little broader,

Teri A. Longacre, M.D.

Page 54

1  that is, all polypropylene meshes used in pelvic
2  surgery for either stress urinary incontinence or
3  pelvic organ prolapse?
4        MR. SNELL: Same objection. Let's carry
5  forward. General.
6        THE WITNESS: Again, I don't really
7  recall. I did a guess when I did my deposition for
8  Perry, and since then there has probably been at
9  least another dozen or -- at least a dozen, if not a
10 couple dozen.
11 BY MR. FREESE:
12   Q. So another dozen or two dozen since the
13 Perry deposition in '14?
14       MR. SNELL: Object. Misstates. The
15 witness said, "A couple dozen."
16       THE WITNESS: Yeah.
17 BY MR. FREESE:
18   Q. I said another dozen or two dozen --
19   A. Yes.
20   Q. -- since the Perry deposition?
21   A. Yeah, I think 12 to two dozen, no more
22 than two dozen.
23   Q. Okay. And were these involved in
24 litigation, to your knowledge?
25   A. No.

8a1e7a5b-002a-4836-b884-36cb64727e20

Teri A. Longacre, M.D.

Page 55

1  Q. All right. Were these simply as part of
2  your day-to-day practice at Stanford Medical Center?
3  A. Yes.
4  Q. All right. And in those meshes that you
5  examined, did you normally have any clinical
6  information from the explanting surgeon?
7  A. Sometimes there is some. Sometimes all it
8  would say would be "Mesh, explant," no other
9  history.
10 Q. Okay. And is there sometimes more
11 clinical information from the doctor?
12 A. Yes.
13 Q. Have you ever been asked to do anything
14 other than -- well, let me ask you -- strike that.
15         What is it that you have been asked to do
16 when you are examining explanted polypropylene mesh?
17 A. Who is asking me? I guess I'm not sure
18 what that question is. What --
19 Q. Well, who would -- does anyone other than
20 the explanting surgeon ever send you the path
21 sample?
22 A. Oh, no. They --
23 Q. Okay.
24 A. The explanting surgeon send the sample,
25 but they often aren't asking for anything. They

Golkow Technologies, Inc. - 1.877.370.DEPS

8a1e7a5b-002a-4836-b884-36cb64727e20

Teri A. Longacre, M.D.

Page 94

1  I just want to make sure that -- and I
2  understand your answer about Dr. Iakovlev's exam and
3  his opinions.
4  You do not intend to offer an opinion that
5  she is not suffering pain from the mesh based on the
6  histological exam you have done, correct?
7  A.  Well, I think we should read my summary.
8  I basically say, "Based on my knowledge,"
9  et cetera, et cetera, "it is my opinion that the
10 changes present in the mesh explant from Sharon
11 Carlino represent a normal and expected tissue
12 reaction to the implanted mesh material and lack of
13 scientifically reliable association of dyspareunia
14 or pain.  Furthermore, it is my opinion that there
15 is no evidence to suggest, based on the material
16 reviewed, that any remaining vaginal mesh material
17 poses any ongoing risk for pain and/or dyspareunia."
18 That is my opinion.
19 Q.  All right.  So you do plan on offering
20 opinions whether or not she is suffering pain from
21 the mesh?
22 A.  To that extent, yes.  There is nothing,
23 based on my review, that indicates that mesh was --
24 is causing her pain.
25 Q.  Based on your review of the histological

Teri A. Longacre, M.D.

Page 95

1  samples, correct?
2      A.   Correct.
3      Q.   Nothing else?
4           MR. SNELL:  Object.  Form.  Overbroad.
5      Go ahead.
6           THE WITNESS:  It's based on my knowledge,
7  experience, and the scientific peer-reviewed medical
8  literature.  So --
9  BY MR. FREESE:
10     Q.   That you cited for us?
11     A.   Correct.
12          THE VIDEOGRAPHER:  Counsel, this is the
13 videographer.  We're going to have to do a media
14 change in about two minutes, or if now is a good
15 point.
16          MR. FREESE:  We can go ahead and do it
17 now.
18          THE VIDEOGRAPHER:  This marks the end of
19 Media No. 1 in the deposition of Dr. Teri Longacre
20 on January 19th, 2016.  We're now off the record.
21 The time on the screen is 4:41 p.m.
22          (Whereupon, a brief recess was taken.)
23          THE VIDEOGRAPHER:  Okay.  Here we go.
24          MR. FREESE:  Are we on?
25          THE VIDEOGRAPHER:  One second, Counsel.

Golkow Technologies, Inc. - 1.877.370.DEPS

Teri A. Longacre, M.D.

Page 153

1  BY MR. FREESE:
2      Q.  Okay.
3      A.  "Organizations of gynecologic surgeons
4  continue to support the use of polypropylene
5  midurethral slings for the treatment of stress
6  incontinence."
7          That's why that's there.  I am basically
8  citing that organization supports that.
9      Q.  I don't mean to be flippant, Doctor, but
10 so what?  What has that got to do with your
11 pathological/histological examination of
12 Ms. Carlino's explant slides?
13     A.  This is -- in part -- so -- specifically
14 what does it have to do with my path exam, nothing;
15 but the -- but with respect to the response to
16 Dr. Iakovlev's report, that's what that is referring
17 to.
18     Q.  Okay.
19     A.  It's basically saying that this is the
20 standard of care and it's a current state of the
21 art, and I'm supporting that by the AUGS statement,
22 among some others, so that's what that is about.
23     Q.  Move to strike after "nothing."
24         You don't know what the standard of care
25 is for gynecological surgeons, do you, Doctor,

1  because you aren't even one?
2       A.   Oh, that's so incorrect.  That is just so
3  plain wrong.  I'm sorry.  But I -- but I do not -- I
4  am actually pretty well aware of standard of care
5  for lots of things that gynecologic surgeons do.
6            Is that something outside of my opinion
7  for this case, yes, it is; but no, I know a lot
8  about what the gynecologic surgeons do and their
9  standard of practice.  I need to know a lot of that
10 in order to render reports.
11           There are certain things that they have to
12 have in their path reports.  That's part of their
13 standard of care.  This is also true of GI surgery.
14 So this is so inaccurate that you can't even make
15 that statement.  So it is --
16      Q.   But you're not --
17      A.   It is part of my job to be aware of
18 position statements, and it's part of my job to know
19 about standard practices for these surgeons who are
20 giving me specimens.
21           I can't do my job properly without -- not
22 know that, because part of the information they need
23 is based on their standard practices they are
24 publishing.
25           So I am aware of those, maybe not in

Teri A. Longacre, M.D.

Page 155

1  detail but I make that part of my job and my
2  responsibility to be aware of that.
3       Similarly, many of these surgeons -- I am
4  still answering this question -- similarly, many of
5  these surgeons really need and are aware of standard
6  practice with pathology because it's a communication
7  and it's all part of patient care.
8       So that is not a correct statement.
9    Q.   Move to strike as nonresponsive.
10       Doctor, you are not giving a single
11 opinion in this case about standard of care for
12 urogynecological surgeons, are you?
13   A.   I'm not.  That's not part of my opinion,
14 but that was not the question that you asked.
15   Q.   Doctor, do you know whether or not
16 polypropylene mesh suffers from particle loss?
17       MR. SNELL:  Object.  Foundation.
18       THE WITNESS:  It's not part of my report
19 or my opinions.
20 BY MR. FREESE:
21   Q.   Do you know whether or not --
22   A.   I don't see any evidence of particle loss
23 in the slides that I have reviewed.  To that extent,
24 I can give you that answer.
25   Q.   Move to strike as nonresponsive.

Teri A. Longacre, M.D.

Page 199

1 STATE OF CALIFORNIA )
2 COUNTY OF YOLO )
3        I, ELAINA BULDA-JONES, a Certified Shorthand
4 Reporter of the State of California, duly authorized
5 to administer oaths pursuant to Section 2025 of the
6 California Code of Civil Procedure, do hereby
7 certify that
8                TERI LONGACRE, M.D.,
9 the witness in the foregoing deposition, was by me
10 duly sworn to testify the truth, the whole truth and
11 nothing but the truth in the within-entitled cause;
12 that said testimony of said witness was reported by
13 me, a disinterested person, and was thereafter
14 transcribed under my direction into typewriting and
15 is a true and correct transcription of said
16 proceedings.
17        I further certify that I am not of counsel or
18 attorney for either or any of the parties in the
19 foregoing deposition and caption named, nor in any
20 way interested in the outcome of the cause named in
21 said deposition dated the _____ day of
22 _____, 2016.
23
24
25 ELAINA BULDA-JONES, CSR 11720