# EXHIBIT N

```
         UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                AT CHARLESTON
IN RE:  ETHICON, INC.         : Master File No.
PELVIC REPAIR SYSTEM          : 2:12-MD-02327
PRODUCTS LIABILITY LITIGATION : MDL 2327
                              :
                              : JOSEPH R.
THIS DOCUMENT RELATES TO      : GOODWIN
THE FOLLOWING CASES IN        : US DISTRICT
WAVE 1 OF MDL 200:            : JUDGE
_____
Myra Byrd, et al. v. Ethicon, Inc., et al.
Civil Action No. 2:12-cv-00748
Angela Coleman, et al. v. Ethicon, Inc., et al.
Civil Action No. 2:12-cv-01267

Dina Destefano-Raston, et al. v. Ethicon, Inc., et al.
Civil Action No. 2:12-cv-01299
Rose Gomez, et al. v. Ethicon, Inc., et al.
Civil Action No. 2:12-cv-00344

Dawna Hankins v. Ethicon, Inc., et al.
Civil Action No. 2:12-cv-00369
Donna Hankins, et al. v. Ethicon, Inc., et al.
Civil Action No. 2:12-cv-01011

Wilma Johnson v. Ethicon, Inc., et al.
Civil Action No. 2:11-cv-00809
Debra Lynn Joplin v. Ethicon, Inc., et al.
Civil Action No. 2:12-cv-00787

Margaret Kirkpatrick v. Ethicon, Inc., et al.
Civil Action No. 2:12-cv-00746
Paula Kriz, et al. v. Ethicon, Inc., et al.
Civil Action No. 2:12-cv-00938

Miranda Patterson v. Ethicon, Inc., et al.
Civil Action No. 2:12-cv-00481
         DEPOSITION OF ELAINE DUNCAN
               MARCH 31, 2016
```

Page 6

1  Deposition of Elaine Duncan, taken
2  pursuant to notice, was held at the law offices of Nilan
3  Johnson Lewis, PA, 120 South Sixth Street, Suite 400,
4  Minneapolis, Minnesota 55402, commencing at 10:20 a.m. on
5  the above date, before Barbara J. Carey, Registered
6  Professional Reporter and Notary Public in and for the
7  State of Minnesota.
8  WHEREUPON, the following proceedings were duly had:
9  (The oath was administered by the reporter.)
10  WITNESS RESPONSE:  I do.
11  THE REPORTER:  Thank you.
12  ELAINE DUNCAN,
13  after having been first duly sworn, was called as a
14  witness and testified as follows:
15  EXAMINATION
16  BY MR. WALLACE:
17  Q.  Good morning, Ms. Duncan.  We met before;
18  right?
19  A.  Yes.
20  Q.  And I'm going to try to move quickly.  I think
21  there was a misunderstanding about the -- the start time,
22  but you're prepared to go forward; right?
23  A.  Certainly.
24  Q.  Okay.  I'm going to give you what we're first

1     Q.   And you have not issued and do not hold
2  opinions on any of the other products; correct?
3     A.   That's correct.
4     Q.   Okay. And you'll agree with me that a medical
5  device manufacturer has a responsibility to design their
6  product so as to minimize the potential for injury to
7  patients; correct?
8     A.   That's correct.
9     Q.   And that -- you'll agree with me that, in
10  order to do that, a device manufacturer must consider and
11  understand the medical condition that the device is
12  designed to treat; correct?
13     A.   That's correct.
14     Q.   And it must also consider and understand the
15  anatomical location where that device is implanted;
16  correct?
17     A.   That's correct.
18     Q.   Where is a TVT-R device implanted?
19     A.   As I understand it -- and I may speak very
20  generically -- that it is in the same location but
21  different -- in a different way of implanting than the
22  TVT-O.
23     Q.   Okay.
24     A.   One's inside-out and the other's outside-in.

```
 1   That's my basic understanding.
 2          Q.    Okay.  But it's your understanding that the
 3   implant site for both the TVT-R and the TVT-O are the
 4   same?
 5          A.    That's my understanding.
 6          Q.    Okay.  Did anyone at Ethicon ever tell you
 7   that?
 8          A.    I can't recall.  I believe I read that.
 9          Q.    Okay.  Did you look at the instructions for
10   use on where the two products were implanted?
11          A.    Yes.  That was the best of my recall.
12          Q.    Do you know what the obturator space is?
13          A.    Vaguely, anatomically, yes.
14          Q.    Okay.  Sitting here today, do you understand
15   that the TVT Retropubic and the TVT Obturator are
16   implanted into different locations in a woman's pelvis?
17          A.    It was my understanding that the mesh
18   material, essentially, winds up, more or less, in the same
19   location.
20          Q.    Okay.  And is that understanding that you have
21   concerning the two devices, did that factor into the
22   opinions that you gave in this case and the reports
23   identified as 14 and 15?
24          A.    I would have to say yes, it did.
```

Elaine Duncan

Page 125

1    Q.   Okay.  And you agree with me that it's
2    important, when you are designing a device or doing --
3    scratch that.
4         You'll agree with me that it's important, when
5    you're doing a risk assessment of a device, to understand
6    where the device is going to be placed in the body;
7    correct?
8    A.   Yes.
9    Q.   And you'll agree with me that it's important
10   to understand the surgical approach that's going to be
11   used to implant those different devices; correct?
12   A.   Yes, and that's what I tried to understand.
13   Q.   Okay.  And you tried to understand that based
14   on the documents that you looked at and identified in your
15   reliance list?
16   A.   Yes.
17   Q.   Okay.  Did you understand when you put -- do
18   you have any understanding of whether the trocars that are
19   used to implant the TVT-R are the same or different than
20   the trocars that are used to implant the TVT-O?
21   A.   It's my understanding that the TVT-O trocars
22   are somewhat different.
23   Q.   Okay.  And they are a different shape;
24   correct?

1    A.    Yes.

2    Q.    And that's used because there's a different surgical placement of the TVT-O over the TVT-R; correct?

4    A.    It was my understanding that it was because of the surgical approach.

6    Q.    Okay. And when you say surgical approach, are you referring to what you call the inside-out versus the outside-in approach?

9    A.    Yes.

10    Q.    And so it's your understanding that the trocars -- well, first of all, which one of these is implanted with the inside-out approach; do you recall?

13    A.    Yes.

14    Q.    Okay.

15    A.    The TVT-O.

16    Q.    Okay. Inside-out, let me ask if we're on the same page. Inside-out is when you go in through the vagina and you put the trocars out of the pelvis by introducing it through the vagina first?

20    A.    That's my understanding.

21    Q.    Okay. And the outside-in approach that you believe is used with the TVT-R is when you go from the outer area in the abdomen or the pelvis and you push the trocars through into the vagina and then pull them up

1   again; correct?

2       A.   That's right.

3       Q.   And it's your understanding that those
4   different approaches, the inside-out versus the
5   outside-in, are what account for the different shapes of
6   the trocars that are used with the TVT-R and the TVT-O
7   procedure?

8       A.   That's my perception from reading the
9   documents I read.

10      Q.   Okay.  And you took that -- those -- the
11  difference in the trocars on the outside-in and the
12  inside-out approach into account when you were preparing
13  your reports on these two devices; correct?

14      A.   Yes.

15      Q.   Okay.  I'm going to skip --

16      A.   Not in a specific way of my judgment of their
17  design, good or bad, but that they needed to be shaped
18  differently because of the procedure.

19      Q.   Okay.  And since you're not opining on the
20  TVT-S or the Exact or Abbrevo, we've short-circuited some
21  of my exam today, so that's good.

22           And you'll agree with me that a medical device
23  manufacturer, when making a permanent device for implant
24  into the human body, has to be an expert on the material

```
 1                      CERTIFICATE
 2
 3            I, Barbara J. Carey, a Registered Professional
    Reporter and Notary Public for Anoka County, Minnesota
 4  hereby certify that I reported the Deposition of Elaine
    Duncan, on the 31st day of March, 2016, in Minneapolis,
 5  Minnesota, and that the witness was by me first duly sworn
    to tell the whole truth;
 6
            That the testimony was transcribed under my
 7  direction and is a true record of the testimony of the
    witness;
 8
            That I am not a relative or employee or
 9  attorney or counsel of any of the parties or a relative or
    employee of such attorney or counsel;
10
            That I am not financially interested in the
11  action and have no contract with the parties, attorneys,
    or persons with an interest in the action that affects or
12  has a substantial tendency to affect my impartiality;
13          That the right to read and sign the deposition
    by the witness was not waived;
14
            IN WITNESS WHEREOF, I have hereunto set my
15  hand this 4th day of April, 2016.
16
17
                              _____
18                            Barbara J. Carey
                              Registered Professional Reporter
19                            Notary Public
20
21
22
23
24
```