IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL 2327<br><br>JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |
| THIS DOCUMENT RELATES TO: | |
| ETHICON WAVE 1 CASES LISTED IN PLAINTIFFS' EXHIBIT A | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF NICOLE FLEISCHMANN, M.D.**

Defendants Ethicon, Inc. and Johnson & Johnson (collectively, "Ethicon") respectfully submit this Memorandum in Opposition to Plaintiffs' Motion to Exclude Certain Opinions and Testimony of Nicole Fleischmann, M.D. ("Dr. Fleischmann"). Pls.' Memorandum [ECF No. 2051]; Exs. A-P [ECF Nos. 2050-1 – 2050-16].

**INTRODUCTION**

In seeking to bar certain of Dr. Fleischmann's opinions and testimony, Plaintiffs mischaracterize both the scope of her opinions and the evidence on which they are based. When Dr. Fleischmann's opinions are considered within their proper scope, and in light of the broad sources of evidence that inform her opinions – most notably Level 1 peer-reviewed medical literature – her opinions should survive Plaintiffs' *Daubert* challenge.

Nicole Fleischmann is an experienced urologist, pelvic surgeon, Assistant Professor of Obstetrics and Gynecology and a Fellowship Director training fellows in female pelvic medicine and reconstructive surgery, who has also performed a

1

comprehensive analysis of twenty years of medical literature in authoring her report. Although she is not a polymer scientist, has not measured pores, and does not analyze mesh under the microscope, Dr. Fleischmann is eminently qualified, both by surgical experience and her review of the medical literature, to call into question the scientific basis for Plaintiffs' assertions that TVT's material properties have any negative clinical impact on patients. Moreover, her opinions on the adequacy of TVT's warnings derive not only from her own extensive use of slings, but also from the complications reported in the same 20-year body of medical literature, not to mention FDA statements and guidance.

Ultimately, her opinions would be very instructive to the jury and should be admitted at trial.

## DR. FLEISCHMANN'S PROFESSIONAL BACKGROUND

Dr. Fleischmann is board certified in Urology and Female Pelvic Medicine and Reconstructive Surgery. She is a member of the American Urologic Association ("AUA") and the Society for Urodynamics and Female Urology ("SUFU"). In 1997, she graduated *summa cum laude* from the SUNY Downstate Medical Center where she was a member of the Pathology Honors Society and received the Highest Academic Achievement citation from the American Medical Women's Association. Nicole Fleischmann, M.D. February 8, 2016 TVT Retropubic MDL General Expert Report ("Fleischmann TVT Report"), pp. 1-2 [ECF No. 2050-2]; Nicole Fleischmann, M.D. Curriculum Vitae ("Fleischmann CV") [ECF No. 2050-3]. Dr. Fleischmann completed her general surgical residency in 1999 at the Albert Einstein College of Medicine Montefiore Medical Center, where she stayed to complete her residency in Urology. *Id.*

2

In 2004, she completed her fellowship in Female Urology and Voiding Dysfunction at the New York University School of Medicine.  *Id.*  Dr. Fleischmann subsequently served on the faculty at the Mount Sinai School of Medicine as Director of the Female Urology and Voiding Dysfunction.  *Id.*

Since 2005, Dr. Fleischmann has been a busy clinical practitioner at the Westchester Urological Associates, a division of Advanced Urology in White Plains, New York, and an Attending Urologist at the White Plains Hospital Center.  *Id.*  Simultaneously with her private practice, she has also been an Assistant Clinical Professor of Urology and Obstetrics and Gynecology and a Fellowship Director of the Division of Female Pelvic Medicine and Reconstructive Surgery at the Albert Einstein College of Medicine.  *Id.*  In 2011, she was appointed as a Chief of Urology at the White Plains Hospital Center, in which role she continues to serve.  *Id.*

Dr. Fleischmann's private practice is almost exclusively dedicated to treating women with various urologic issues, including urinary incontinence.  *Id.*  She diagnoses and treats women with this debilitating condition on a daily basis.  *Id.*  Once a week, Dr. Fleischmann runs a clinic, didactic sessions and performs surgery at the teaching hospital.  *Id.*  Two to three days per week, she performs and trains others to perform surgeries to correct stress urinary incontinence.  Throughout her career, Dr. Fleischmann has successfully implanted over 1,500 mesh slings, the overwhelming majority of which were TVT products, including about 400 TVT Retropubic, which is the subject of her general report.  *Id.*; Ex. A, Nicole Fleischmann, M.D. November 24, 2015 Dep. Tr. ("Fleischmann Tr.") at 38:18-24.

## **BASES OF DR. FLEISCHMANN'S OPINIONS**

The first paragraph of Dr. Fleischmann's general report on TVT Retropubic sets forth the sources of information and evidence that form the bases for her opinions in this litigation: "My opinions set forth in this report are made to a reasonable degree of medical certainty, and are based on information and knowledge I have acquired from my education, training, personal experience in private practice, teaching, discussion and interaction with other pelvic surgeons in professional activities and conferences, research and review of medical literature." Fleischmann TVT Report, p. 1 [ECF No. 2050-2].

In addition to her extensive surgical experience implanting TVT products, Dr. Fleischmann's TVT general expert report makes clear that her opinions are based largely on her extensive examination of the published medical literature, including Level 1 evidence. In particular, Dr. Fleischmann analyzes in her report the outcomes reported in:

- Various *meta-analyses* analyzing mesh slings, considered to be one of the highest levels of clinical evidence. These include the 2009 Cochrane review on midurethral slings by Ogah et al., which included 62 trials involving 7,101 women; and the 2015 update to the Cochrane Review by Ford et al., which analyzed 81 trials that evaluated 12,113 women. She also reviewed and discussed in her report several other meta-analyses addressing slings, including Schimpf et al. 2014; Tommaselli 2015 (evaluating 6,406 patients); the AUA Guidelines metanalysis published by Dmochowski et al. 2010; and Novara 2008 (evaluating 4,764 patients). *Id.* at 20-24, 30.

- Long-term data from randomized controlled trials (Level 1 evidence) studying TVT, including the five-year patient follow up on the TOMUS and Laurikainen RCTs, which compared TVT Retropubic to TVT Obturator. *Id.* at 18-19.

- Long-term data from numerous prospective trials which followed TVT patients for at least 10 years, including Nilsson 2013, Svenningsen 2013, Serati 2012, Heinonen 2012, Aigmueller 2011, Olsson 2010, and Song 2014. *Id.* at 15-18.

Dr. Fleischmann's materials list contains over 200 different studies that she reviewed in preparation of this report. Ex. B, Nicole Fleischmann, M.D. List of Materials Reviewed (Updated March 22, 2016) ("Materials List"), pp. 9-24. Indeed, half of her general report is dedicated to a detailed analysis of the extensive clinical literature that has evolved over twenty years on mid-urethral slings and TVT in particular, with specific focus on potential complications. Fleischmann TVT Report, pp. 15-23, 28-37 [ECF No. 2050-2].

Dr. Fleischmann has also relied on public statements by the FDA and medical societies in the field of urology. Ex. B, Materials List, pp. 6-8. Another significant portion of her report is dedicated to her review of numerous statements of prominent medical societies in this field that conclude that the synthetic midurethral sling is the "gold-standard treatment" for women with stress incontinence and "the most important advancement in the treatment of stress urinary incontinence in the last 50 years." Fleischmann TVT Report, pp. 23-27 [ECF No. 2050-2].

**LEGAL STANDARD**

Ethicon incorporates by reference the standard of review of *Daubert* motions as articulated by the Court in *Edwards v. Ethicon, Inc.*, No. 2:12-cv-09972, 2014 WL 3361923, at *1-3 (S.D.W. Va. July 8, 2014).

**ARGUMENT**

I. **DR. FLEISCHMANN IS QUALIFIED TO OPINE REGARDING THE CLINICAL IMPACT OF TVT MESH *IN VIVO*; HER OPINIONS ARE BASED ON RELIABLE METHODOLOGY.**

A. **Based on her analysis of the extensive medical literature and her surgical experience, Dr. Fleischmann should be permitted to opine on the clinical impact of the TVT meshes *in vivo*.**

Plaintiffs first seek to bar Dr. Fleischmann from providing any opinion related to material properties of TVT mesh on the grounds that she is not trained in the field of material science and has no specialized education or research experience regarding scientific, chemical or structural composition of polypropylene and TVT. Pls.' Memorandum, pp. 4-15 [ECF No. 2051]. They seek to preclude her from opining regarding the pore size, degradation and contraction of the mesh "at a cellular level." *Id.* at 4.

To be clear: Dr. Fleischmann does not seek to opine regarding any processes that occur to the mesh on a microscopic level *in vivo*. Rather, Dr. Fleischmann's opinions on material properties of polypropylene are limited to the *clinical impact* of those alleged processes on patients who have been implanted with the devices. Ex. A, Fleischmann Tr. at 99:1-2, 192:22-193:21. Beyond her personal surgical experience implanting over 1,500 PROLENE® slings, in arriving at her opinions, Dr. Fleischmann has reviewed hundreds of published studies, including meta-analyses and randomized controlled trials

deemed to be Level 1 clinical evidence – in part to find substantiation in the clinical literature for Plaintiffs' claims that the mesh degrades, that its pore size is insufficient or that it contracts in a manner that causes complications for the patient. Ex. B, Materials List, pp. 9-24. Therefore, her opinions are entirely appropriate and she is qualified to give them.

This Court has already found that the same methodology employed by Dr. Fleischmann is reliable and survives the *Daubert* scrutiny. In *Watkins v. Cook, Inc.*, this Court found that a practicing urologist's "comparison of his experience to a reliable and relevant peer-reviewed study … is enough to open *Daubert's* gates." No. 2:13-cv-20370, 2015 WL 1395773, at *13 (S.D.W. Va. March 25, 2015). In *Tyree v. Boston Scientific Corp.*, this Court concluded that a urologist's clinical experience and review of the scientific literature, which he explained and cited throughout his report, "are sufficiently reliable bases" to opine that he has not seen "evidence of polypropylene degradation, systemic infection, or other unexpected reactions." 54 F. Supp. 3d 501, 585 (S.D.W. Va. 2014).

"[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's notes – 2000 amendment; *see also Whitfield v. Southern Maryland Hosp., Inc.*, DKC 12-2749, 2014 WL 923255, at *9 (D. Md. March 7, 2014). If Plaintiffs so choose, they can test the soundness of Dr. Fleischmann's conclusions on cross-examination at trial, or challenge her for not being a polymer chemist. *See id.* At this juncture, however, her thorough review of the medical literature regarding the clinical impact of the material properties of mesh, combined with her extensive surgical experience, should render her opinions admissible at trial.

### 1. Dr. Fleischmann should be permitted to testify regarding the clinical significance of the pore size of the TVT mesh.

Plaintiffs argue that Dr. Fleischmann should not be allowed to testify regarding the pore size of the TVT because she is simply a physician who has neither participated in design of a midurethral sling nor studied the effect of pore size at the cellular level. Pls.' Memorandum, pp. 5-7 [ECF No. 2051]. They further argue that her opinion is only based on her clinical experience. *Id.*

To the contrary, Dr. Fleischmann does not seek to discuss the microscopic impact of the mesh at the cellular level. Dr. Fleischmann opines regarding the clinical significance of the pore sizes and cites extensively to the medical literature that she examined in preparation of her opinion, as well as her clinical experience with over 1,500 slings. Fleischmann TVT Report, pp. 31-33 [ECF No. 2050-2]. In her report, she finds:

> Based on my clinical experience and review of the clinical experience of numerous others in the medical literature, the pore size of TVT mesh is entirely appropriate to promote healthy tissue integration. If it were not, we would be seeing failure, rejection and complications on a far grander scale. In fact, the AUGS/SUFU January 2014 Position Statement referenced above cites the Nilsson 17-year TVT data for the proposition that "As a knitted implant for the surgical treatment of SUI, macroporous, monofilament light-weight polypropylene has demonstrated long term durability, safety and efficacy up to 17 years." The question of whether the pore size changes after implantation is also of no clinical significance. TVT does not demonstrate a higher rate of infection or extrusion than any other implanted material, which would be a consequence of decreased pore size or microporous mesh were it to have a clinical impact.
>
> In fact, one of the advantages of TVT is its low infection rate. Although infection is a known risk when using any implant, the medical literature on polypropylene mid-urethral slings shows an extremely low rate of infection. In fact, the large meta-analyses report little to no infection with synthetic mid-urethral slings. (Ogah et al. (2011)); Dmochowski, R., J Urol. 2010; Schimpf et al. 2014).

*Id.* at 32-33.

Therefore, Dr. Fleischmann is qualified to testify regarding the clinical significance of the pore size of the TVT mesh and has used reliable methodology rooted in her examination of the vast body of the medical literature to arrive at her opinions.

> **2. Dr. Fleischmann should be permitted to testify regarding the clinical significance of the alleged degradation of the TVT mesh.**

Plaintiffs here accuse Dr. Fleischmann of presumptively disregarding "any literature contrary to her opinion" concerning lack of clinical significance of the alleged degradation of the TVT mesh. Pls.' Memorandum, pp. 7-9 [ECF 2051]. Notably, they fail to identify with specificity any clinical study that she supposedly ignored, or any particular company document that she failed to review. Plaintiffs further seek to exclude her opinions on alleged degradation because she has not looked at polypropylene under a microscope and has not served as a clinical investigator in a sling trial. *Id.* at 7-8.

Contrary to Plaintiffs' assertions, to opine about the clinical or medical impact of the alleged degradation on patients, Dr. Fleischmann does not need to know the specific chemical properties of the mesh. *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 734 (S.D.W. Va. 2014); *see also Layssard v. United States*, No. 06-0352, 2007 WL 4144936, at *3 (W.D. La. Nov. 20, 2007) (noting that "medical doctors are qualified – indeed, uniquely qualified – to offer opinions as to medical causation; bio-mechanical engineers are not."). In *Huskey*, finding his qualifications and methods sufficiently reliable, this Court allowed Dr. Harry Johnson to testify regarding the lack of clinical impact of degradation because he based his opinion "on his review of scientific literature as well as his clinical experience." 29 F. Supp. 3d at 735; *see also Trevino v. Boston Sci. Corp.*, 2:13-cv-01617, 2016 WL 1718836, at *5 (S.D.W. Va. April 28, 2016) (finding that a

9

urologist's "clinical experience and review of the scientific literature adequately qualif[ied] him to opine on polypropylene, including its degradation, leaching, shrinkage, and contraction.")

Similarly, in forming her opinions, Dr. Fleischmann reviewed the vast body of medical literature in part to confirm her practical experience that Plaintiffs' theory of the alleged degradation clinically manifests itself *in vivo* has no scientific bases. Fleischmann TVT Report, pp. 34-35 [ECF No. 2050-2]. Plaintiffs' arguments that Dr. Fleischmann has never tested the mesh or looked at it under the microscope may be fine for cross-examination, but they do not disqualify her from speaking to an absence of evidence of *clinically significant* degradation based on her clinical experience and through examination of the relevant medical literature.

While this Court has observed that "[a]bsence of evidence is not evidence of absence," *Tyree*, 54 F. Supp. 3d at 583, the observation only holds true where a cursory inquiry of the evidence has been made. For instance, if a physician is relying merely on his own experience to opine that a particular risk does not exist, the methodology may be flawed. However, where a physician examines the evidence outside of his own experience, analyzing studies and literature and Level 1 evidence, the stronger the conclusion becomes that there is no risk. Thus, while absence of evidence in a limited sampling pool of a single physician's experience may not be proof of absence, absence of evidence in a large pool of scientific literature and studies, combined with the clinical experience and evaluation of many physicians and medical organizations, is sound evidence of absence. *See also Huskey*, 29 F. Supp. 3d at 735, *Trevino*, 2016 WL 1718836, at *5.

While Plaintiffs accuse Dr. Fleischmann of not seeking out information regarding alleged degradation, her report indicates the opposite. Having reviewed hundreds of studies on TVT and midurethral polypropylene slings, Dr. Fleischmann opines that "overall extensive body of clinical data for Gynecare TVT does not support the conclusion that PROLENE® mesh degrades in the body in any manner that has a clinical impact on patients." Fleischmann TVT Report, p. 34 [ECF No. 2050-2]. She then proceeds to consider and deconstruct the Clavé et al. 2010 study – the primary study that Plaintiffs cite in support of their degradation theory – which, given its limitations, did not confirm degradation to a reasonable degree of medical certainty. *Id.*

Dr. Fleischmann goes on to discuss the histopathologic analysis performed by Woodruff et al. (2008) which studied 24 explants and concluded that "[n]o graft degradation had occurred in PPM material." *Id.* at 35. Importantly, she also addresses the "Frequently Asked Questions to Providers" jointly issued in 2014 by the American Urogynecological Society (AUGS) and the Society for Urodynamics, Female Pelvic Medicine and Urogenital Reconstruction (SUFU), where those medical societies conclude that the allegation of degradation is not supported by the extensive peer reviewed literature on polypropylene, which has followed patients out to seventeen years. *Id.* at 34; Ex. C, AUGS/SUFU March 2014 FAQ to Providers. In support of its statement, AUGS and SUFU cite the 17-year follow up study by Nilsson et al. on Gynecare TVT – the same product that is the subject of Dr. Fleischmann's opinions. Dr. Fleischmann concludes:

> The fact that numerous studies on TVT have proven its durability and safety up to seventeen years post implant does not support short or long term degradation. If it did degrade in a clinically significant way, surgeons would see far lower levels of durability in their TVT and

11

> TVT-O repairs, and that is certainly not something that I have seen in my clinical practice over many years, nor is that consistent with the reliable scientific studies in women implanted with TVT.

Fleischmann TVT Report, p. 35 [ECF No. 2050-2].

That Dr. Fleischmann's opinion on allegations of degradation are supported by AUGS and SUFU reinforces the reliability of her opinion, not only with respect to its conclusion, but also in that she relies upon the same long term clinical literature as AUGS and SUFU to arrive at that conclusion.

Here, given her extensive clinical experience and review of the medical literature, Dr. Fleischmann is equally qualified to give her opinion regarding lack of clinical significance of degradation which is based on reliable methodology. Plaintiffs' contentions that Dr. Fleischmann failed to review any particular document or failed to investigate into completeness of Ethicon's provided information about degradation "goes to the weight of [her] opinion, not its admissibility." *See Huskey*, 29 F.Supp. 3d at 735.

### 3. Dr. Fleischmann should be allowed to testify regarding the clinical significance of contracture of the TVT mesh.

Plaintiffs also seek to bar Dr. Fleischmann's opinions on the clinical impact of shrinkage and contraction by attempting to convince the Court that she has ignored "numerous published, peer reviewed articles, which establish beyond reasonable scientific dispute the general acceptance of the phenomenon of in vivo mesh shrinkage." Pls.' Memorandum, p. 11 [ECF No. 2051]. This argument is inaccurate and troubling on two levels.

First: Dr. Fleischmann does not deny that contraction occurs when a mesh is implanted. It is not disputed that a macroporous mesh sling like TVT relies upon tissue integration to perform its function properly, and in that respect, a certain amount of tissue

contraction is expected and desired. What Dr. Fleischmann does dispute, however, is the existence of a body of clinical literature providing "evidence that the use of TVT results is *excessive* contraction of tissues *causing complications to the patient*." Fleischmann TVT Report, p. 35 [ECF No. 2050-2].

Second: Plaintiffs attempt to demonstrate the Dr. Fleischmann ignores the "abundant" medical literature on contraction by identifying by citation nine articles that Plaintiffs claim she failed to consider. Their attempt fails – and fails resoundingly – because *none of the nine articles Plaintiffs identify actually study contraction in a TVT or other midurethral polypropylene sling to treat stress urinary incontinence*. Exs. G-O to Pls.' Memorandum [ECF Nos. 2050-7 – 2050-15]. Rather, they address contraction in the context of animal studies, or in the use of mesh to treat a hernia or vaginal prolapse – both of which involve significantly greater mesh loads than a TVT sling which has a width of approximately 1 cm. *Id.*

Far short of undermining Dr. Fleischmann's methodology, Plaintiffs actually reinforce it by highlighting the fact that, in assessing the clinical impact of contraction on TVT patients, Dr. Fleischmann *actually researched TVT studies* and discussed two in her report: Dietz et al. 2013, who performed ultrasound imaging of TVT patients; and Nilsson et al.'s 17 year follow up on TVT patients. She concludes:

> To the contrary, Dietz et al. report that based upon ultrasound imaging, the TVT does not seem to contract or shorten over a median observation period of 1.6 years: "Over the observed period between 6 weeks and 3.3 years after TVT placement, our data do not provide any evidence for contraction or shortening of the TVT." Dietz et al., Am. J. Obstet. Gynecol. 2003, 188:950-935. Similarly, in the 17 year follow up performed by Nilsson et al. (2013), the authors reported that there seemed to be no shrinkage of the TVT mesh over time.

Fleischmann TVT Report, p. 35 [ECF No. 2050-2].

Plaintiffs' moving brief does not even mention the Nilsson study that Dr. Fleischmann analyzes. Moreover, to the extent that Plaintiffs seek to take issue with Dr. Fleischmann's findings from the Dietz study, or point out a particular study that she did not consider, they may attempt to do so on her cross examination at trial. The failure to consider any particular documents go to the weight, not admissibility, of her opinion. *See Huskey,* 29 F.Supp. 3d at 735.

For these reasons, Plaintiffs have failed to demonstrate a basis to bar Dr. Fleischmann from testifying regarding clinical significance of the shrinkage and contracture of TVT mesh.

## II. DR. FLEISCHMANN IS QUALIFIED TO TESTIFY ABOUT THE SUFFICIENCY OF THE TVT WARNINGS BASED ON HER EXTENSIVE REVIEW OF THE MEDICAL LITERATURE, AND HER CLINICAL AND TEACHING EXPERIENCE, AND HER TRAINING.

Plaintiffs also seek to preclude Dr. Fleischmann from offering opinions on the adequacy of Ethicon's product warnings because they allege she is not familiar with the standards applicable to medical device IFUs or with the process by which they are developed and approved. Pls.' Memorandum, pp. 13-16 [ECF No. 2051]. Plaintiffs further argue that, in forming this opinion, she relied solely on her personal experience without reviewing the testimony of Ethicon witnesses and without relying on the standards or information from Ethicon. *Id.* at 14. These assertions are either not true or inconsequential.

This Court has previously permitted clinicians to opine on the adequacy of Ethicon's IFUs stating that a physician "need not be an expert on product warnings per se," but some experience in the area of product warnings is needed in addition to her

clinical experience. *Huskey*, 29 F.Supp. 3d at 719; *Bellew v. Ethicon, Inc.*, No. 2:13-cv-22473, ECF No. 265, at *33 (S.D.W. Va. Nov. 20, 2014). For example, in *Bellew*, this Court excluded the adequacy of warning opinion of Dr. Pramudji because she based it only on her clinical experience and was not familiar with "any regulations or Ethicon standards governing the Prolift IFU." *Id.* at *36.

    Dr. Fleischmann's qualifications to opine on warnings' adequacy is not based only on her surgical experience, which is extensive, but more importantly on her thorough review of the medical literature, which has documented the risks and benefits of pelvic mesh implants. Ex. B, Materials List, pp. 9-24; Ex. A Fleischmann Tr. at 36:15-25, 223:2 - 224:6. The hundreds of published studies she has reviewed include sources at the highest levels of scientific evidence, including Cochrane Review meta-analyses assessing 37 RCTs and 4,023 patients for pelvic floor repair and 81 trials and 12,113 women who had undergone midurethral slings. Fleischmann TVT Report, pp. 20-23 [ECF No. 2050-2]. They also include numerous randomized controlled trials assessing TVT-O with up to five years of follow-up, including the TOMUS trial, Laurikainen and Tommaselli randomized controlled trials. *Id.* at 18-19, 23. This does not even include the hundreds of peer-reviewed published prospective and retrospective studies that Dr. Fleischmann has reviewed and considered. This literature review, combined with her surgical experience implanting 1500 mesh slings, renders Dr. Fleischmann eminently qualified to opine regarding adequacy of Ethicon's product warnings for TVT.

    Nor do the bases for Dr. Fleischmann's warnings opinions end there. As set forth in her list of reviewed materials, she has also reviewed and considered the FDA's Device Labeling Guidance ("Bluebook Memo"), (Ex. B, Materials List, p. 7, #25), various FDA

public statements regarding surgical mesh, and statements issued by numerous medical societies regarding the safety of pelvic mesh products, (*Id.* at 6-8). She has also reviewed and analyzed Ethicon's internal Standard Operating Procedure on Labeling, which addresses the contents of Instructions for Use. *Id.* at 5, #86.

Additionally, through her training of residents and fellows in the use of mesh slings as an Associate Clinical Professor and Fellowship Director, Dr. Fleischmann also has learned what other clinicians know, expect and experience regarding Ethicon's products. Fleischmann TVT Report, p. 2 [ECF No. 2050-2].

That Dr. Fleischmann has not reviewed company employee testimony regarding the contents of the IFUs may be a basis for cross examination, but it alone does not warrant the exclusion of her warnings opinions in light of the broad sources of information that have informed those opinions – most importantly 20 years of peer reviewed published clinical evidence including Level 1 studies.

Given her examination of the peer-reviewed medical literature, analysis of the company provided and publicly sourced documents, her surgical experience, and the training she has received and provided on the use of TVT, Dr. Fleischmann is eminently qualified to testify regarding adequacy of TVT warnings.

## **CONCLUSION**

For these reasons, Plaintiffs' Motion to Exclude Certain Opinions and Testimony of Ethicon's Expert Dr. Fleischmann should be DENIED.

Respectfully submitted,

May 9, 2016

/s/ Christy D. Jones
Christy D. Jones
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS  39158-6010
(601) 985-4523
christy.jones@butlersnow.com

/s/ David B. Thomas
David B. Thomas (W.Va. Bar #3731)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
(304) 414-1807
dthomas@tcspllc.com

/s/ Maha Kabbbash
Maha Kabbash
Riker Danzig Scherer Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown,   NJ    07962-1981
(973) 451-8472
kcrawford@riker.com

COUNSEL FOR DEFENDANTS
ETHICON, INC. AND JOHNSON & JOHNSON

## **CERTIFICATE OF SERVICE**

I certify that on May 9, 2016, I electronically filed this document with the clerk of the court using the CM/ECF system, which will send notification of this filing to CM/ECF participants registered to receive service in this MDL.

*/s/ Maha Kabbash*
Maha Kabbash

4724871v2