# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

| | |
|---|---|
| **IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>**Ethicon Wave 1 cases listed in Plaintiffs' Exhibit A** | Master File No. 2:12-MD-02327<br>MDL 2327<br><br>JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' DAUBERT MOTION TO PRECLUDE OR LIMIT OPINIONS OF DEFENSE EXPERT ELIZABETH KAVALER, M.D.

Defendants Ethicon, Inc. and Johnson & Johnson (collectively, "Ethicon") respectfully submit this Memorandum of Law in Opposition to Plaintiffs' *Daubert* Motion to Preclude or Limit Opinions of Defense Expert Elizabeth Kavaler, M.D. ("Dr. Kavaler").

## INTRODUCTION

In seeking to bar Dr. Kavaler's opinions, Plaintiffs mischaracterize the scope and content of her opinions as well as the evidence on which they are based. When Dr. Kavaler's opinions are considered within their proper scope, and in light of the broad sources of evidence that inform Dr. Kavaler's opinions — most notably Level 1 peer reviewed medical literature — her opinions should survive Plaintiffs' challenge. Indeed, as an experienced pelvic surgeon who has performed a comprehensive analysis of twenty years of medical literature, her opinions would be very instructive to the jury and should be admitted at trial.

## DR. KAVALER'S PROFESSIONAL BACKGROUND

Dr. Kavaler is board certified in Urology and Female Pelvic Medicine and Reconstructive Surgery. She is a graduate of Barnard College and SUNY Downstate Medical School. (Ex. A (General Prolift/TVT Obturator Expert Report of Dr. Kavaler ("Dr. Kavaler's general report")) at 1; Ex. B (CV).) Dr. Kavaler completed her general surgical training in 1994 at Mount Sinai Medical School, where she stayed to complete her residency training in Urology in 1998. (Ex. B.) Dr. Kavaler also completed a post-doctoral fellowship in Female Urology and Pelvic Floor Reconstruction at UCLA Medical Center in 2000. She subsequently joined New York Urological Associates, where she practiced Urology for 15 years, before opening her own Urology practice, Total Urology Care, in New York City. (Ex. A at 1.)

Dr. Kavaler is currently the Director of Urogynecology at Lenox Hill Hospital. She is also the Program Director and preceptor for the Fellowship in Voiding Dysfunction/Female Urology at Weill Cornell Medical College, and a Clinical Assistant Professor of Urology at Weill Cornell Medical College. (*Id.*) She is actively involved in training Urology and Gynecology residents, and teaches pelvic floor surgery procedures, which requires her to be well-versed in a variety of techniques and devices, as well as teaching the risks of these surgical procedures. (*Id.* at 3.)

Female patients make up 80% of her practice, which is largely dedicated to treating women for pelvic health conditions such as incontinence, prolapse, urinary tract infections and pelvic pain. (*Id.* at 2.) Throughout her career, she has performed hundreds of anti-incontinence procedures, the vast majority of which consisted of polypropylene mesh slings, including more than 800 using Ethicon's TVT-O device and more than 500 using retropubic slings. (*Id.* at 3.) She has also performed thousands of surgical procedures to treat pelvic organ prolapse, the

majority of which include some form of polypropylene mesh, including approximately 500 Prolifts. (*Id*.)

Dr. Kavaler is a peer-reviewed published author, and has published and conducted research in the area of pelvic mesh complications. (*See* Ex. B (Bibliography and Abstracts).) Dr. Kavaler has been permitted to testify over motions to exclude her similar to the present motion in Ethicon pelvic mesh cases. (*See* Ex. D, *Gross v. Ethicon, et al.*, 1/3/2012 Trial Tr., at 40:24-51:6; Ex. E, *Budke v. Lake Area Women's Center, et al.*, 1/19/2016 Trial Tr., at 3334:7-13.)

## BASES OF DR. KAVALER'S OPINIONS

Dr. Kavaler's general expert report on Prolift and TVT-O sets forth the sources of information and evidence that form the bases for her opinions in this litigation, which include her "training and experience, literature reviews done on PubMed and Ovid, journal articles, [and] textbooks . . ." (Ex. A at 1.) Beyond her extensive surgical experience implanting Prolift and TVT-O, even a cursory review of her general expert report and the extensive reliance list that accompanies it reveals that her opinions in this litigation are based largely on her exhaustive review of literally hundreds of specifically-cited articles, journals and authoritative medical literature, including Level 1 evidence, such as Cochrane Review meta-analyses assessing thousands of patients, numerous randomized controlled trials, as well as public statements by the FDA and medical societies in the field of Urology. (*See* Ex. C; Ex. F (supplemental reliance list).[1]) In fact, Dr. Kavaler's general report (Ex. A at 6-31) includes a detailed discussion of the peer-reviewed medical literature assessing Prolift, other surgical treatment options for prolapse and potential complications. Similarly, Dr. Kavaler's general report (*id.* at 31-52) provides a

---

[1] Prior to Dr. Kavaler's deposition on March 31, 2016 deposition, she provided a supplemental reliance list that identified additional sources relied upon by Dr. Kavaler.

3

detailed analysis of the extensive clinical literature that has evolved over twenty years on mid-urethral slings and TVT/TVT-O in particular, with specific focus on potential complications. In contrast, a much smaller portion of her report is dedicated to her personal surgical experience or to the complication rates she has observed solely in her patients. In addition to discussing the extensive medical literature throughout her report, Dr. Kavaler's opinions rely not only on her extensive experience and training, but on her review of medical literature: "Based on my extensive experience of implanting Prolift and TVT-O in patients, and managing their post-operative care, my review of the medical literature, and my training, it is my opinion that these products are not defectively designed." (*Id.* at 56.)

## LEGAL STANDARD

Ethicon incorporates by reference the standard of review for Daubert motions as articulated by the Court in *Edwards v. Ethicon, Inc.*, 2014 WL 3361923, at *1-3, 2014 U.S. Dist. LEXIS 92316, at *3-8 (S.D.W. Va. July 8, 2014).

## ARGUMENT

**I. DR. KAVALER'S OPINIONS ARE PROPERLY SUPPORTED BY AN EXHAUSTIVE REVIEW OF AUTHORITATIVE MEDICAL LITERATURE, HER EXTENSIVE TRAINING AND EXPERIENCE, AND HER REVIEW OF FDA MATERIALS, ETHICON DOCUMENTS AND TESTIMONY.**

Plaintiffs seek to exclude Dr. Kavaler's opinions – despite her extensive qualifications – by disingenuously arguing that her opinions "are based solely on her clinical practice and experience, without reference to the literature or other people's experiences." (Pl.'s Mem. Supp. Mot.[ECF No. 2007] ("Pl.'s Memo"), at 2.) As set forth above, Dr. Kavaler made clear both in her report and at her previous depositions that her opinions are not based solely on her personal experience treating patients, which is extensive, but also on the very considerations that Plaintiffs say she omits. On page 1 of her report, she states that she derived the information in her report

4

from her "training and experience, literature reviews done on PubMed and Ovid, journal articles, textbooks," as well as "materials provided to me by counsel for Ethicon and the reports of Plaintiff's experts" (Ex. A, at 1.) Those extensive materials, including literally hundreds of separately-cited authoritative articles, texts, studies and medical literature, as well as FDA and medical society statements, and Ethicon documents and testimony, are identified in her exhaustive reliance lists. (Ex. D.) Indeed, her report discusses and cites to nearly one hundred sources expressly identified in the footnotes, consisting primarily of peer-reviewed medical literature and medical society statements. (*See* Ex. A at 56-63.) Plaintiffs' failure to acknowledge these sources suggests they have not bothered to read her report and supporting materials.

Moreover, in prior testimony, Dr. Kavaler further clarified that her extensive personal surgical experience of more than fifteen years was not the sole basis for her opinions:

> Q. * * * There was some testimony earlier today regarding your personal experience and the role that your personal experience may have in the formation of your opinions in your report and today. Do you recall that testimony?
>
> A. Yes, I do.
>
> Q. Is your personal experience with your patients the only basis from which your opinions in your report and your testimony today derive?
>
> A. No.
>
> Q. What are the other bases of your opinions?
>
> * * * * *
>
> A. I base my opinions on medical literature I've read, presentations that I've attended, interactions with colleagues and their experience, and then my own personal experience.

5

(Ex. G, Kavaler 12/4/12 Tr. (*Gross v. Ethicon, Inc. et al.*), at 358:18-359:10; *see also* Ex. H, Kavaler 4/8/14 Tr. (*Huskey v. Ethicon, Inc., et al.*), at 195:6-196:9.) Ultimately, there is no basis to bar any of Dr. Kavaler's opinions merely because personal experience comprises one of the many bases for those opinions.

Moreover, contrary to Plaintiffs' arguments, Dr. Kavaler's clinical experiences and teaching are not only relevant, but also make her uniquely qualified to assist the jury in understanding the type of data that surgeons in her field rely upon in formulating opinions and assessing the risks and benefits regarding pelvic mesh products. *See In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 612 (S.D. W. Va. 2013) (physician's "extensive experience with pelvic floor disorders and the use of mesh to treat such disorders qualifies him to render opinions on such issues, notwithstanding his lack of expertise in the particular areas of product design or biomaterials"); *Layssard v. United States*, No. 06-0352, 2007 WL 4144936, at *3 (W.D. La. Nov. 20, 2007) (noting that "medical doctors are qualified – indeed, uniquely qualified – to offer opinions as to medical causation"). As such, they are relevant, useful and reliable. *See* FRE 702; *see also Trevino v. Boston Scientific Corp.*, No. 2:13-cv-01617, __ F. Supp. 3d. __, 2016 WL 1718836, at *5 (S.D.W. Va. April 28, 2016); *Bethune v. Boston Scientific Corp.*, No. 2:13-cv-01617, at *33 (S.D.W. Va. May 5, 2016).

Similarly, Plaintiffs' arguments that Dr. Kavaler has not looked at Ethicon documents, or reviewed or relied upon testimony of Ethicon witnesses, is wrong and ignores Dr. Kavaler's extensive reliance list, which cites extensively to Ethicon documents and testimony, including that of Ethicon Medical Directors Axel Arnaud and Charlotte Owens. (*See* Ex. C at 35-41; Ex. F (supplemental reliance list citing Ethicon trial testimony).) In addition, she has also reviewed and considered the FDA's Device Labeling Guidance which provides guidance to industry and

FDA reviewers on the contents of Instructions for Use (Ex. C at 43, #30), various FDA public statements regarding potential complications of surgical mesh, and statements issued by numerous medical societies regarding the safety of pelvic mesh products. (*Id.* at 42-44.)

As is clear from her report, Dr. Kavaler's opinions are set forth and supported in detail. Moreover, they are based not only on clinical experience treating thousands of women with dysfunctional pelvic floors and SUI, but also on her training, interactions with colleagues, and extensive review of available medical literature. *See Watkins v. Cook, Inc.*, No. 2:13-cv-20370, 2015 WL 1395773, at *13 (S.D.W. Va. March 25, 2015) (finding that a practicing urologist's "comparison of his experience to a reliable and relevant peer-reviewed study … is enough to open *Daubert's* gates"); *Tyree v. Boston Scientific Corp.*, 54 F. Supp. 3d 501, 585 (S.D.W. Va. 2014) (concluding that urologist's clinical experience and review of the scientific literature "are sufficiently reliable bases" for opinions); *Trevino*, 2016 WL 1718836, at *37 (finding reliance on "education, training, clinical experience, *and* review of medical and scientific literature" sufficient to support opinions). Indeed, these bases for Dr. Kavaler's opinions have been found to be sufficient to permit her to testify in prior pelvic mesh trial -- *Gross* and *Budke* -- despite similar motions to exclude her testimony.

    **A.    Dr. Kavaler is Qualified to Testify Reliably About the Sufficiency of the TVT-O and Prolift Product Warnings Based on Her Extensive Review of the Medical Literature, Her Substantial Experience Using These Medical Devices, and Her Training.**

Plaintiffs futilely seek to preclude Dr. Kavaler from offering opinions on the adequacy of Ethicon's product warnings. As an initial matter, Plaintiffs wrongly claim that Dr. Kavaler has "no opinion" on the IFUs and patient brochures, or not "much of an opinion" on the IFUs. (Pl.'s

7

Memo at 2-3.)[2] Plaintiffs' arguments ignore Dr. Kavaler's report, in which she clearly opines "The potential risks of Prolift and TVT-O are appropriately described in their respective IFUs and Ethicon professional education materials, particularly when taking into consideration the base of surgical and anatomic knowledge held by a surgeon who has been trained to use the product, which is explicitly referenced in the IFU." (Ex. A at 57.) Dr. Kavaler's Report further states: "It is my opinion that the IFUs for TVT-O and Prolift are adequate to inform surgeons who would be doing the procedure of the potential risks. . . ." (*Id.* at 55.)[3] Accordingly, these arguments are not appropriate bases to exclude her testimony.

Plaintiffs also argue that Dr. Kavaler's warnings opinions are based on nothing more than her personal experience. Yet, throughout this litigation, this Court has permitted clinicians to opine on the adequacy of Ethicon's IFUs. These clinicians have been deemed qualified based on their surgical experience, not prior experience in formulating IFUs. For instance, in *Huskey v. Ethicon, Inc.*, this Court held that plaintiffs' expert urologist Dr. Jerry Blaivas could testify about the sufficiency of Ethicon's warnings despite his lack of familiarity with the relevant FDA regulations. The Court determined that "Dr. Blaivas need not be an expert on product warnings per se," because he "is qualified to testify about the risks of implanting a TVT-O and whether those risks were adequately expressed on the TVT-O's IFU." *Huskey v. Ethicon, Inc.*, _ F. Supp.

---

[2] As a review of the previous deposition testimony to which Plaintiffs point makes clear, Dr. Kavaler's comments merely indicated that, as a surgeon, she read the IFUs but that the IFU "wasn't a basis for which I would use [a product] or not use it." (Ex. I, Kavaler 10/14/14 Tr. (*Budke* v. *Ethicon, Inc., et al.*), at 57:8-58:21.)

[3] Dr. Kavaler has also testified that in her opinion the patient brochure, which is a "tool for a conversation between the patient and the doctor," is adequate for a surgeon to counsel patients in terms of the risks and benefits of the product. (*See* Ex. I, Kavaler 10/14/14 Tr. (*Budke*), at 68:11-69:14; 328:14-329:9 (discussing Prolift brochures); Ex. H, Kavaler 4/8/14 Tr. (*Huskey*), at 179:24-181:1 (discussing TVT brochure).

3d __, No. 2:12–cv–05201, 2014 WL 3362264, at *20 (S. D. W. Va. July 8, 2014). So, too, here.

The proper focus of inquiry is the adequacy of the warning to the community of product users – here, experienced pelvic floor surgeons like Dr. Kavaler – not the internal process by which the manufacturer generated the warnings. In opining on whether the warnings are adequate, Dr. Kavaler need not get "inside the head" of Ethicon, but can apply her many years of surgical experience, patient counseling and post-operative care, her extensive training, knowledge gleaned from her colleagues, and most importantly, her intimate familiarity with the product itself, to arrive at her opinions.[4]

However, Dr. Kavaler's qualifications to opine on warnings adequacy are not based only on her surgical experience, which is detailed above, but more importantly on her extensive review of the medical literature, which has documented the risks and benefits of pelvic mesh implants. (*See* Ex. A at 55-56; Ex. C.) The hundreds of published studies she has reviewed include sources at the highest levels of scientific evidence. With respect to Prolift, these include:

- *meta-analyses* analyzing mesh slings, considered to be one of the highest levels of clinical evidence. These include the 2011 Maher Cochrane Reviews on the surgical repair of prolapse, as updated in 2016. (Ex. C at 24; Ex. F.)

- numerous randomized controlled trials comparing mesh repair (including Prolift) to native tissue repair, including Hiltunen 2007, Sivaslioglu 2008, Carey 2009, Niemenen 2010, Altman 2011, Withagen 2011, Halaska 2012, Sokol 2012 and Svabik 2014. (Ex. C at 3, 6, 12-13, 23, 34, 29.)

---

[4] Indeed, the combination of bases supporting Dr. Kavaler's opinions makes this case more akin to *Huskey* than to the more limited bases for Dr. Elser's opinions this Court excluded in *Bellew v. Ethicon*, No. 2:13-cv-22473, at 33 (S.D.W. Va. Nov. 20, 2014).

9

- long term data from the transvaginal mesh studies in the U.S. and France following patients for up to five years. (*Id.* at 9.)

- a large retrospective analysis by de Landsheere 2012 tracking complications in 524 Prolift patients over a median follow up of three years. (*Id.* at 17-18.)

With respect to midurethral slings, the studies that Dr. Kavaler analyzed and discussed in her report include in particular:

- various *meta-analyses* analyzing mesh slings, including the 2009 Cochrane review on midurethral slings by Ogah et al., which included 62 trials involving 7101 women; and the 2015 update to the Cochrane Review by Ford et al., which analyzed 81 trials that evaluated 12,113 women. She also reviewed and discussed in her report several other meta-analyses addressing slings, including Schimpf et al. 2014; Rehman et al. 2011; and Novara 2010. (*Id.* at 24, 26, 28).

- A randomized controlled trial (Level 1 evidence) comparing TVT to TVTO slings, with 3 year follow up, published by Palva et al. (*Id.* at 25.)

- Long-term data from numerous prospective trials which followed TVT patients for at least 10 years, including Nilsson 2013, Svenningsen 2013, Serati 2012, Heinonen 2012, and Olsson 2010; and three studies that followed TVT-O patients for five years. (*Id.* at 13, 24-25, 27-29.)

Additionally, Dr. Kavaler reviewed and considered hundreds of peer-reviewed prospective and retrospective studies. (*See id.* at 1-34.) This literature review, combined with her surgical experience, renders Dr. Kavaler eminently qualified to opine upon the adequacy of Ethicon's product warnings for Prolift and TVT-O.

The bases for Dr. Kavaler's warnings opinions do not end there. As set forth in her reliance list, she has also reviewed and considered the FDA's Device Labeling Guidance, various FDA statements regarding surgical mesh, and statements issued by numerous medical societies regarding the safety of pelvic mesh products. (*Id.* at 43.) Through her training of residents and fellows as an Associate Professor and Fellowship Director, Dr. Kavaler has also learned what other clinicians know, expect and experience regarding Prolift and TVT-O. (*See* Ex. A at 3, 30.)

Plaintiffs further argue that Dr. Kavaler should be barred from testifying about warnings adequacy because she does not consider the IFU to be the central vehicle by which doctors are trained to perform surgery. (Pls. Br. at 2-3.) This, however, is not a legitimate basis for exclusion. In her report, Dr. Kavaler makes clear that it is her "opinion that the IFUs for TVT-O and Prolift are adequate to inform surgeons who would be doing the procedure of the potential risks. The information in the IFUs are further supplemented by professional education . . ." (Ex. A at 55.) In her deposition, Dr. Kavaler testified that she reviews IFUs, but noted their role as but one means by which surgeons become informed: as a surgeon who reviews the medical literature "you don't look to the company to teach you how to operate. You look to the company to provide the product so you can decide whether you are going to use it the way you want to or not. They don't teach you how to operate." (Ex. H, Kavaler 4/8/14 Tr. (*Huskey*) at 195:6-196:9.)

Plaintiffs' citation to out-of-context snippets such as testimony from depositions taken before her current report that Dr. Kavaler does not "put much thought into the IFU" (Pl's. Memo at 3 citing 10/14/14 Kavaler Tr. (Budke) 57:18-58:4), does nothing to undermine her ability to assist the jury in reviewing the IFUs from a practicing surgeon's standpoint. Similarly, Plaintiffs' assertions that Dr. Kavaler does not purport to testify about FDA rules or the

manufacturer's criteria for complying with FDA disclosure obligations (Pl.'s Memo at 3) have no bearing on her qualifications or reliability to assist the jury by testifying as a practicing urologist who has used the products hundreds of times and has researched the medical literature relating to their safety and efficacy.

Her prior testimony on this point can be addressed on cross-examination at trial, but provides no legitimate basis to limit her opinions on warnings adequacy -- particularly when weighed against her review of peer-reviewed medical literature, her surgical experience, and the training she has received and provided on the use of the products at issue.

### B. Dr. Kavaler is Similarly Qualified to Testify Reliably About the Safe Design and Efficacy of the TVT-O and Prolift Products Based on Her Extensive Review of the Medical Literature, Her Substantial Experience Using Medical Devices, and Her Training.

Plaintiffs arguments to preclude Dr. Kavaler's testimony regarding design defect opinions similarly fail. As a practicing urologist who has implanted hundreds of Prolift and TVT-O devices in her patients, has trained residents in the surgical procedures and risks of these devices, and extensively reviewed and contributed to the medical literature relating to these devices, Dr. Kavaler is well qualified to assist the jury concerning their safety and efficacy. Nor do her opinions lack objective standards or reliability. Rather, as set forth in Dr. Kavaler's report, her opinion is that "Prolift and TVTO are safe and effective products supported by a substantial body of clinical data." (Ex. A at 56.) Throughout her report and reliance list, Dr. Kavaler summarized and cited to this clinical data. Her "safe and effective" design opinions are based on her "extensive experience of implanting Prolift and TVT-O in patients, and managing their post-operative care," as well as her "review of the medical literature, and [her] training[.]" (*Id*.)

Plaintiffs' arguments that Dr. Kavaler does not "know the design intent" of Ethicon, Ethicon's internal procedures for marketing Prolift, or its duties to research the product's safety,

are irrelevant – or, at best, fodder for cross-examination. Dr. Kavaler does not purport to be an expert in a manufacturer's duties or processes, but rather is well-qualified to testify as a practicing urologist based on her own extensive experience, her training and her review of the medical literature. *See Huskey*, 29 F.Supp. 3d at 735 (finding expert qualifications and methods sufficiently reliable regarding the lack of clinical impact of degradation because he based his opinion "on his review of scientific literature as well as his clinical experience"); *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 626 (S.D. W. Va. 2013) (finding an expert's opinion reliable where the expert's report suggested "that he relied not only on his knowledge and experience, but also on scientific literature."). As set forth above, Dr. Kavaler's opinions are relevant and helpful to the jury.

Finally, Plaintiffs' arguments that Dr. Kavaler should be precluded from testifying about whether mesh pores collapse inside the body or about pore size are futile. (Pl.'s Memo at 4.) Dr. Kavaler is qualified to opine "that the pore size of the mesh used in these products is appropriate to allow the proper tissue incorporation" and the "extensive clinical data on Prolift and mesh slings knitted of PROLENE (TVT, TVT-O) does not demonstrate that the mesh in these products degrade in the human body in any manner that has a clinical impact on women." (Ex. A at 56-57.) Dr. Kavaler's report summarizes the medical literature concerning mesh material and design, including pore size, and the complications associated with them, as well as her own experience with mesh in her own patients. (*See e.g., id.* at 13-26, 42-53.) Dr. Kavaler has also testified that the pore size of the mesh has been shown by the medical literature to be safe and effective, and to permit proper integration. (*See* Ex. I, Kavaler 10/14/14 Tr. (*Budke*) at 82:7-83:9, 98:16-99:1.) Plaintiffs' arguments about limitations on her study of these issues may be a

basis for cross-examination, but offer no basis to preclude her testimony. *See In re C.R. Bard, Inc.*, 948 F. Supp. 2d at 626; *Watkins*, 2015 WL 1395773, at \*13.

Accordingly, Plaintiffs' arguments to limit Dr. Kavaler's opinions on design defect should be denied.

## CONCLUSION

For these reasons, Plaintiffs' Motion to Preclude or Limit the Opinions of Defense Expert Dr. Kavaler should be DENIED.

Respectfully submitted,

May 9, 2016

/s/ Christy D. Jones
Christy D. Jones
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS  39158-6010
(601) 985-4523
christy.jones@butlersnow.com

/s/ David B. Thomas
David B. Thomas (W.Va. Bar #3731)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
(304) 414-1807
dthomas@tcspllc.com

/s/  Maha Kabbbash
Maha Kabbash
Riker Danzig Scherer Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown,  NJ    07962-1981
(973) 451-8472
kcrawford@riker.com

COUNSEL FOR DEFENDANTS
ETHICON, INC. AND JOHNSON & JOHNSON

## **CERTIFICATE OF SERVICE**

I certify that on May 9, 2016, I electronically filed this document with the clerk of the court using the CM/ECF system, which will send notification of this filing to CM/ECF participants registered to receive service in this MDL.

>  */s/ Maha Kabbash*
>  Maha Kabbash

4726192v3