Page 1

```
            SUPERIOR COURT OF NEW JERSEY
            ATLANTIC COUNTY/CIVIL DIVISION
            DOCKET NO. ATL-L-6966-10
                  -  -  -
LINDA GROSS and JEFFREY GROSS,      :STENOGRAPHIC
      Plaintiffs,                   :TRANSCRIPT OF:
                                    :
      v.                            :
                                    :  - HEARING -
GYNECARE, ETHICON, INC., JOHNSON &  :
JOHNSON, and JOHN DOES 1-20,        :
      Defendants.                   :


                  -  -  -

            PLACE: ATLANTIC COUNTY COURTHOUSE
                   1201 Bacharach Boulevard
                   Atlantic City, New Jersey

            DATE:  January 3, 2013

                  -  -  -
```

B E F O R E:

THE HONORABLE CAROL E. HIGBEE, P.J. Cv.

                  -  -  -

ANN MARIE MITCHELL, CCR, RDR, CRR
GOLKOW TECHNOLOGIES, INC.
877.370.3377 ph| 917.951.5672 fax
deps@golkow.com

1      MS. CRAWFORD: Judge, I just want to
2  be very clear. On page 9 of our opposition brief to
3  this motion, we set forth the precise testimony from
4  Dr. Kavaler in which she specifically states at her
5  deposition, in addition to, by the way, listing a
6  number of things she relied upon in her extensive
7  written report, "I base my opinions on medical
8  literature. I've read presentations that I've
9  attended, interactions with colleagues and their
10 experience and then my own personal experience."
11     That is a quote from the transcript.
12 The plaintiffs elected not to include that part of
13 it in their motion, but that is in the transcript.
14     With respect to the issue of Dr.
15 Kavaler and the standard of care, she is not an FDA
16 warning, how do you draft and craft a warning
17 person. She is a doctor to whom the warning is
18 directed who will inform the jury as to whether or
19 not a doctor in her shoes who does these surgeries
20 and performs these surgeries understands the
21 language in the IFU and finds that it is adequate to
22 warn of the medical risks and benefits associated
23 with the procedure.
24     THE COURT: Okay. One of the issues
25 is going to be the number of experts. And I've made

Page 41

1    that clear from numerous other conferences.  And the
2    fact is that many of these experts overlap, and
3    we're not going to have, as plaintiffs' counsel just
4    argued, three or four different doctors come in and
5    say I haven't had any problems with this, it's a
6    great product, I find it to be fine with my
7    patients.
8                    On both the plaintiffs' side and on
9    the defense side, we're going to limit the number of
10   experts you can call to one on a particular subject.
11   So if one person discusses general causation and
12   literature and articles, that person is going to be
13   your causation expert.  If you have someone else on
14   damages, that person is going to be your damages
15   expert.
16                   Now, if there's an economic damage
17   expert for the plaintiff and an economic damage
18   expert from the defense and then there's a urologist
19   for both sides as to what's causing her urological
20   problems, that's not overlap.  That's separate parts
21   of damages, but they're still distinct.  We are
22   talking about a four- to six-week trial, and
23   plaintiffs have suggested it could go as long as
24   eight weeks, which is really not acceptable.  And in
25   a four- to six-week trial, we'll only get four to

1  six or even seven or eight probably if we restrict
2  everybody to one expert on a subject.  We're not
3  going to have -- it's never -- evidence is never
4  quantity, it's always quality.  It's not the number
5  of people you put up.
6              In theory, everyone could call ten
7  experts each and we could just see how many people
8  vouch for a certain thing.  And we're not doing it
9  that way obviously.  So you're going to have to
10 choose your best expert on any subject, and that
11 expert will be testifying on that subject.
12             This particular doctor seems to be
13 giving opinions from pretty much A to Z, so if she's
14 your only expert on A to Z or at least A to P, then
15 that will be fine.  If she's not, you're going to
16 have to make a decision what she's going to testify
17 to.
18             What comes up repeatedly, and what I
19 say for this doctor will apply obviously to the
20 other doctors and I guess give you some guidance.
21 And that is, I agree with Ms. Crawford that you do
22 not have to -- in order to say that the product was
23 safe or that the product doesn't cause extreme risks
24 or to do a risk analysis benefit or to say the
25 product appears to me to be safe based on my review

1    of the literature, the studies, my own personal use
2    of the product, my experience, you don't have to
3    necessarily know all of the internal documents of
4    the company.  I don't think you have to have
5    reviewed the internal documents of the company.
6    Certainly it's appropriate cross-examination that
7    you haven't done so and why didn't you do so and do
8    you understand that they did this, this and this.
9    So the cross-examination is allowed, but I don't
10   think the fact that she didn't review them bars her
11   from giving her opinion based on what it is on.
12                   A lot of the motion from the
13   plaintiffs' point of view goes to the fact that she
14   said, I don't know what Ethicon thought, I don't
15   know what Ethicon knew.  And certainly, that means
16   that she's giving almost no opinion on the
17   negligence standard in the sense that what they did
18   was improper.  But on the strict liability, and, at
19   this point, plaintiff is apparently pursuing both
20   claims.  If they're pursuing them under South Dakota
21   law, as long as they're pursuing both claims, then
22   it's going to allow in the defense to produce their
23   person to say these things on strict liability
24   claims.
25                   So I'm going to allow her to testify.

Case 2:12-md-02327 Document 2165-4 Filed 05/09/16 Page 6 of 13 PageID #: 59262

Page 44

1    I'm denying plaintiffs' motion.

2              The question as to whether she can
3    testify from personal experience is another question
4    that overlaps with the next several motions.  I've
5    reviewed the cases that you'd given me, the Carruba
6    Hernandez vs. Baruch, Alexander vs. Mideastern,
7    let's see what we have here, and the other cases
8    that were cited by plaintiffs and defendants on the
9    issue of whether or not -- there's Bellardini and
10   Heller.  And in each case, the question comes up
11   about what you can say about personal knowledge as
12   opposed to expert testimony, which is based on more
13   than just personal opinion.

14             And there certainly are cases that
15   have held that the expert didn't have enough
16   knowledge outside of their own personal net opinion.
17   First of all, the fact -- a net opinion has to be
18   one without -- it's not based on facts or reasoning,
19   it's just laid out there.  I thought the product was
20   safe.  That's a net opinion.  We're not dealing with
21   net opinions here.  What we might be dealing with in
22   some cases are the personal expressions of a doctor
23   saying, well, I used the product, I didn't have a
24   problem.  That in and of itself is not proper expert
25   testimony.  However, if a doctor says -- and also, I

1   can tell you I'm not going to allow her to testify,
2   I put this in woman X and woman X did just great,
3   and I put it in woman Y and woman Y had this
4   reaction and we were able to correct it with no
5   problem.  But there's a line here.  And,
6   unfortunately, it's not the black and white line
7   that we would like or the red line.  It's -- there
8   are gradations.
9                  Because an expert can testify from
10  their experience.  So on one hand they can't give a
11  personal opinion based only on their patients, but
12  on the other hand, they can use their experience.
13  And if someone's operated on some -- with pelvic
14  mesh 1,500 times or 1,200 times, the jury has a
15  right to know that.  And they also have a right to
16  include that as part of their basis for their
17  opinion.  I've done 1,500 surgeries.  I find this
18  product is overall very safe, bah, bah, bah, bah.
19  But that kind of testimony will be allowed.
20                  And from looking at her report, it
21  appears to me that she does rely on literature and
22  does rely on some other things other than just her
23  personal experience.  Now, does she have sentences
24  in there where she says, yeah, this is my personal
25  opinion, you know, we can all go through the dep of

1    an expert and find a sentence and pull it out, out
2    of context.  And if we did that and we just went by
3    any time they said something that seemed to give
4    them no opinion, then we wouldn't have any experts
5    testifying in any case, because you can find a
6    statement like that in almost any deposition of an
7    expert.
8                    I think that here what she was saying
9    was she primarily is relying on her experience, on
10   her training and what she's taught, but she also
11   teaches patients.  But she is not only talking
12   about, I work in my office, she teaches residents
13   how to do pelvic surgery.  She has that experience.
14   This is what's taught in schools.  This is what I
15   teach my people to do.  Those kind of experiences
16   are appropriate for an expert to rely on and for an
17   expert to explain to a jury.
18                    What I'm doing is denying the motion
19   at this time, and I'm going to be doing this
20   frequently through these, because motions in limine
21   are not favored by the courts.  Motions in limine
22   are generally difficult to grant to bar testimony
23   because they're out of context of the whole picture
24   of the witness.
25                    When the witness is on the stand, I'm

1    not now saying that she can now say anything she
2    wants and she doesn't have to lay a foundation and
3    I'm satisfied that she has every right to give any
4    opinion she wants.  What I'm saying is I'm not going
5    to at this point say she's barred from testifying.
6    She will have to lay her foundation when she
7    testifies as to what her opinions are based on.  She
8    will have to give her experience and her
9    credentials.  But there's always -- and a personal
10   opinion that, for me, this warning is fine, well,
11   that's not enough.  And that's not appropriate,
12   because for her who teaches pelvic mesh and who is
13   maybe one of the leading people who does these
14   surgeries, she may know a whole lot more than John
15   Doe doctor who would be doing the surgery.  So it's
16   got to be based on what a reasonable doctor, you
17   know, do you find this warning adequate for a -- you
18   know, for your typical doctor that would be
19   practicing in this area.
20              So your questions will have to be
21   couched in those types of terms.  I think both sides
22   understand that.  I don't think I'm really telling
23   anybody anything they don't already know.  But what
24   I'm trying to convey to plaintiffs' counsel and to
25   defense counsel is even though I've denied the

Page 48

1    motion, that doesn't mean you can't object at trial
2    that that question is, you know, only as to her
3    personal knowledge.  That question is how much she
4    understood of it, as opposed to a question about
5    what she thinks of doctors who generally do this
6    type of surgery or, you know, whether it would apply
7    to a first-time doctor doing the surgery, a ten-time
8    doctor doing the surgery or someone like her who's
9    done it 1,500 times.
10                 And I'm not ruling that I'm not going
11   to let her answer any of those questions.  I'm just
12   saying I might not let her, depending on what her
13   foundation is and what she says at the time of
14   trial.
15                 On the urinary retention, we get to
16   another issue, which is a difficult one.  And it's
17   not that difficult, though.  I mean, the bottom line
18   is plaintiffs have a much heavier burden in this
19   type of trial of proof, because they have the burden
20   of proof.  And they have to have their experts say
21   this is more likely true than not.  So they can't
22   put somebody on the stand to say, I don't know what
23   causes her urinary retention but it might have been
24   this, this or this.  They have to say, more likely
25   than not, the mesh caused or the mesh procedure or

1  whatever caused or was a significant factor along
2  with other factors that caused her injury.
3             The defense isn't really bound by
4  that constriction, because they don't have the
5  burden of proof.  And defendants are allowed to
6  suggest other possibilities.  They're allowed to
7  say, I don't believe it was this, and I don't know
8  what caused it.  And it is perfectly appropriate for
9  an expert to say, I don't really know what caused
10 it, but I'm 100 percent certain it wasn't this.
11 That's an opinion an expert can give.  And they can
12 talk in terms of, it could have possibly been this
13 or possibly been that when they're testifying for
14 the defense.  There's different evidential standards
15 there.
16            On the other hand, they can't testify
17 something's possible unless they have a basis for
18 it.  They can't give a net opinion, saying it could
19 possibly have been the wind or the rain or the --
20 you know, the location of the hospital or the air
21 that she was breathing.  It's got to be something
22 that has a scientific basis that they have a
23 foundation for that they know about and that they
24 have some knowledge of and some reason why they can
25 say that this is also a possibility and they have to

1   explain why.
2              So, again, it may be that she won't
3   be allowed to give that opinion, depending on how
4   the question is asked, what foundation is laid.  And
5   we'll have to rule on that as it comes.  But I am
6   letting counsel know that just the fact that she is
7   speaking in terms of possibilities or can't say
8   specifically what caused it is not a basis alone for
9   her to not testify as to her opinion as to the cause
10  of the urinary retention.
11             Now, this is really similar to the
12  next couple motions, because we're dealing with
13  almost the same argument, the argument that they
14  didn't know what Ethicon knew.  But we'll deal with
15  them very quickly, because they may have some other
16  specific issues, but we can go through them rather
17  rapidly because, generally speaking, everybody
18  agrees that she's a qualified expert.  And defense
19  argued that in their papers, but plaintiffs have
20  acknowledged that the experts defense has hired have
21  credentials and the ability to testify if in fact
22  they're not just basing it on net opinions or their
23  personal opinions alone.
24             I don't see net opinions here.  These
25  are opinions based on facts and logic and reasoning,

Page 51

1  but it has to be something beyond just personal
2  experience.  I think we've got it here with this
3  woman probably, and so we'll move on.
4              The next motion is to bar the
5  opinions of -- well, it would be very nice if we
6  could use Dr. Kavaler for everything.  That would
7  shorten the trial.  But if not, there's a Dr. Miles
8  Murphy, who is testifying again as to safety of the
9  Prolift and as to warnings and to the adequacy and
10 as to the studies.  And as I've said, we're not
11 going to allow people to testify to what other
12 witnesses have already testified to and just play a
13 game of who has the most witnesses.
14              So having said that, let's deal with
15 Dr. Murphy if he's the one that's chosen to testify
16 on certain issues.  Or it could be that Dr. Murphy
17 would be chosen to testify on one issue and Dr.
18 Kavaler on something different.  But if it is,
19 they've got to make sure they're not overlapping in
20 their opinions.  All right?
21              MR. SLATER:  Thank you, Your Honor.
22              And I understand your ruling, so I'm
23 not going to obviously reargue it.  I just want to
24 clarify one thing which we didn't cover with Dr.
25 Kavaler, which really came into focus very, very