# EXHIBIT B

Elaine Duncan

```
 1            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
 2                 CHARLESTON DIVISION
 3   IN RE:  ETHICON, INC.        : Master File No.
     PELVIC REPAIR SYSTEM         : 2:12-MD-
 4   PRODUCTS LIABILITY LITIGATION : MDL 2327
                                  :
 5                                : JOSEPH R.
     THIS DOCUMENT RELATES TO     : GOODWIN
 6   THE CASES LISTED BELOW       : US DISTRICT
                                    JUDGE
 7   _____
 8   Mullins, et al. v. Ethicon, Inc.,
     et al. 2:12-cv-02952
 9   Sprout, et al. v. Ethicon, Inc.,
     et al. 2:12-cv-07924
10   Iquinto v. Ethicon, Inc.,
     et al. 2:12-cv-09765
11   Daniel, et al. v. Ethicon, Inc.,
     et al. 2:13-cv-02565
12   Dillon, et al. v. Ethicon, Inc.,
     et al. 2:13-cv-02919
13   Webb, et al. v. Ethicon, Inc.,
     et al. 2:13-cv-04517
14   Martinez v. Ethicon, Inc.,
     et al. 2:13-cv-04730
15   McIntyre, et al. v. Ethicon, Inc.,
     et al. 2:13-cv-07283
16   Oxley v. Ethicon, Inc.,
     et al. 2:13-cv-10150
17   Atkins, et al. v. Ethicon, Inc.,
     et al. 2:13-cv-11022
18   Garcia v. Ethicon, Inc.,
     et al. 2:13-cv-14355
19
         (Caption Continued on Next Page)
20
                        -  -  -
21               October 6, 2015
            Deposition of Elaine Duncan
22                      -  -  -
23           GOLKOW TECHNOLOGIES, INC.
          877.370.3377 ph|917.591.5672 fax
24              deps@golkow.com
```

Elaine Duncan

```
 1   CAPTION CONTINUED:
 2   Lowe v. Ethicon, Inc.,
     et al. 2:13-cv-14718
 3   Dameron, et al. v. Ethicon, Inc.,
     et al. 2:13-cv-14799
 4   Vanbuskirk, et al. v. Ethicon, Inc.,
     et al. 2:13-cv-16183
 5   Mullens, et al. v. Ethicon, Inc.,
     et al. 2:13-cv-16564
 6   Shears, et al. v. Ethicon, Inc.,
     et al. 2:13-cv-17012
 7   Javins, et al. v. Ethicon, Inc., .
     et al 2:13-cv-18479
 8   Barr, et al. v. Ethicon, Inc., .
     et al 2:13-cv-22606
 9   Lambert v. Ethicon, Inc.,
     et al. 2:13-cv-24393
10   Cook v. Ethicon, Inc.,
     et al. 2:13-cv-29260
11   Stevens v. Ethicon, Inc.,
     et al. 2:13-cv-29918
12   Harmon v. Ethicon, Inc.,
     et al. 2:13-cv-31818
13   Snodgrass v. Ethicon, Inc.,
     et al. 2:13-cv-31881
14   Miller v. Ethicon, Inc.,
     et al. 2:13-cv-32627
15   Matney, et al. v. Ethicon, Inc.,
     et al. 2:14-cv-09195
16   Jones, et al. v. Ethicon, Inc.,
     et al. 2:14-cv-09517
17   Humbert v. Ethicon, Inc.,
     et al. 2:14-cv-10640
18   Gillum, et al. v. Ethicon, Inc.,
     et al. 2:14-cv-12756
19   Whisner, et al. v. Ethicon, Inc.,
     et al. 2:14-cv-13023
20   Tomblin v. Ethicon, Inc.,
     et al. 2:14-cv-14664
21   Schepleng v. Ethicon, Inc.,
     et al. 2:14-cv-16061
22   Tyler, et al. v. Ethicon, Inc.,
     et al. 2:14-cv-19110
23
         (Caption Continued on Next Page)
24
```

Elaine Duncan

```
 1    CAPTION CONTINUED:
 2    Kelly, et al. v. Ethicon, Inc.,
      et al. 2:14-cv-22079
 3    Lundell v. Ethicon, Inc.,
      et al. 2:14-cv-24911
 4    Cheshire, et al. v. Ethicon, Inc.,
      et al. 2:14-cv-24999
 5    Burgoyne, et al. v. Ethicon, Inc.,
      et al. 2:14-cv-28620
 6    Bennett, et al. v. Ethicon, Inc.,
      et al. 2:14-cv-29624
 7
                      - - -
 8              October 6, 2015
                      - - -
 9
10       DEPOSITION OF ELAINE DUNCAN, taken
    pursuant to notice, was held at the law
11  offices of Nilan Johnson Lewis, PA, 120
    South Sixth Street, Suite 400, Minneapolis,
12  Minnesota 55402, commencing at 9:15 a.m. on
    the above date, before Barbara J. Carey,
13  Registered Professional Reporter and Notary
    Public in and for the State of Minnesota.
14
15
16
17
18
19
20
21
22
23
24
```

```
 1   sitting here today with the benefit of hindsight, which of
 2   course we do --
 3        A.   20/20.
 4        Q.   -- always 20/20.
 5             Is there anything that you would recommend
 6   today to Ethicon that would have changed that design
 7   qualification back in the late '90s, early 2000s?
 8        A.   It's my conclusion that this device, based on
 9   the clinical experience and the robust endorsement of this
10   device by the AUGS organization, and even the FDA, that I
11   would be foolhardy to try to suggest there's a better way
12   to make this product.
13        Q.   Okay.  So let me ask -- because I think we're
14   maybe talking about two different things here.
15             AUGS was not involved in the design process or
16   the qualification of the design of the TVT-R
17   mechanically-cut mesh; correct?
18        A.   Physicians were certainly incorporating their
19   ideas, yes.
20        Q.   Okay.  But you specifically mentioned the
21   AUGS.
22        A.   Uh-huh.
23        Q.   And you'll agree with me that AUGS had nothing
24   to do with the qualification of the design of the TVT-R
```

```
 1   you're not qualified to talk -- about the clinical, the
 2   medical risk and benefit of the TVT-R mechanically-cut
 3   device today; correct?
 4        A.   But ma'am, you asked me -- I think if you go
 5   back to the question, it was "Would there be a better way
 6   of doing it?"  And I have to say, again, that the proof is
 7   in the pudding, that when we look at a device, which is
 8   functioning as intended and safe, I would not recommend to
 9   a company to go back and redesign it.
10        Q.   And perhaps we're talking about something
11   different.  I think this is what I'm trying to get at with
12   you.
13        A.   Okay.
14        Q.   I'm not talking about going back and
15   redesigning.
16        A.   Okay.
17        Q.   There's a process that every company has to go
18   through when designing a medical device; correct?
19        A.   They vary, but as a general framework, we
20   currently do, yes.
21        Q.   Okay.  And the reason the process is in place
22   is ultimately to ensure patient safety; correct?
23        A.   That's the goal, yes.
24        Q.   And you believe that it's important for
```

1   their output in the context of what was happening at the

2   time I'm looking.  So if I'm looking at due diligence

3   of a license, I look at what's current at that time with

4   respect to procedures that derive from standards in

5   guidance documents and regulations.

6         Q.   Okay.  You keep giving me the same answer.

7         A.   It's the same answer?

8         Q.   Well, you're not answering the question.

9         A.   I'm sorry, I'm trying my best.

10        Q.   So let me try this again.

11             MR. DAVIS:  Object to the form.

12             MR. WALLACE:  You're talking over her.

13             THE WITNESS:  Thank you.

14   BY MS. FITZPATRICK:

15        Q.   Can you do what you did in this report without

16   looking at and considering the FDA regulations concerning

17   medical devices?

18        A.   You have to consider them.

19        Q.   Okay.  And you considered the FDA regulations

20   concerning medical devices in your report and in your

21   opinions that you reached in this case; right?

22        A.   As one of many things that I considered.

23        Q.   And you're not able to issue this report

24   without considering the FDA regulations.

1          Is that your testimony?

2     A.   No, I could go back and revise the report

3   and leave out FDA regulations, but it would be less than

4   a diligent job on my part because I have to be present

5   with respect to standards and regulations and best

6   practices that are current in each of these phases.

7          So if you would want me to go back and revise

8   the report, for example, and take out just FDA

9   regulations, it would be peculiar, at best.

10    Q.   Would it be a different report?

11    A.   I can't say without attempting to do it.  It

12  wouldn't be what I normally do as a part of due diligence.

13    Q.   Okay.  And it wouldn't be --

14    A.   Can I give you an example?

15    Q.   Hang on.  Yes, you can, but let me make sure

16  that I'm understanding.

17    A.   Okay.

18    Q.   Because you and I seem to have lost --

19    A.   Our rapport?

20    Q.   I don't want to say rapport, but we seem to be

21  talking past each other.

22         The report, as drafted, has intertwined

23  throughout it consideration of the FDA requirements for

24  medical devices; correct?

```
 1        A.   In connection with.  I'm just trying to
 2   understand what you mean by "in connection with."
 3        Q.   As opposed to the TVT-O, as opposed to the
 4   Prolift.  We're talking -- you do understand we're here
 5   talking about what Ethicon did with respect to the TVT-R
 6   product?  You understand that; right?
 7        A.   Now, you said it differently.  You said --
 8   so I can state myself that I believe they did their
 9   due diligence for the product in each of the respective
10   phases that I reviewed for mechanical.
11        Q.   And one of the things that you rely on to
12   reach that conclusion concerning due diligence is the fact
13   that Ethicon received a number of 510(k) clearances for
14   the TVT products?
15        A.   It was only one of the things that I looked
16   at.  I didn't rely on it exclusively.
17        Q.   Okay.  Perhaps you want to listen to my
18   question.
19             One of the things that you rely on to reach
20   that conclusion concerning due diligence is the fact that
21   Ethicon received a number of 510(k) clearances for the TVT
22   products?
23        A.   The family of products.  That was one of the
24   things I looked at.
```

```
 1         Q.   And that's what I asked you.  So the answer is
 2   "yes"?
 3         A.   Yes.
 4         Q.   And you go on in your report to say, "Despite
 5   the impression created by the lay press, a 510(k)
 6   submission is NOT" -- and you've got that capitalized,
 7   -- "a 'shortcut to market.'"
 8              What lay press are you referring to?
 9         A.   Any of the lay press.  There's constantly -- I
10   live in an area where medical device companies are
11   concentrated, so the Star Tribune and the Pioneer Press
12   and any -- even the New York Times will often refer to a
13   510(k) as the shortcut process for FDA approval, and
14   that's the point I was trying to make.
15         Q.   You -- do you believe that there's a
16   difference between the requirements for PMA versus 510(k)
17   clearance by the FDA?
18         A.   It's not a belief; it's a fact.
19         Q.   Okay.  And you'll agree with me that the
20   510(k) submission takes a shorter period of time to get a
21   product to market; correct, than a PMA?
22         A.   Not always.
23         Q.   Okay.  Give me an example of when a PMA took a
24   shorter period of time to get something to market than the
```

Elaine Duncan

```
 1   in order to do a comprehensive due diligence, and I did my
 2   best to do that throughout the effort that I put into this
 3   report.
 4   BY MS. FITZPATRICK:
 5        Q.   Is it -- I'm trying to understand what you're
 6   saying.
 7             Are you saying that you could not do a
 8   comprehensive due diligence without considering the FDA
 9   regulations in connection with this report?
10        A.   It would be less than professional.
11        Q.   Okay.
12                  MR. DAVIS:  At some point, let's take a
13   break, but you can finish this line.
14                  MS. FITZPATRICK:  Yeah, let me just
15   finish this; okay?
16   BY MS. FITZPATRICK:
17        Q.   And because of your opinion on that, you
18   mentioned -- in assuming the three -- I don't know
19   where it is -- you said three of that pyramid.
20             One of the three things that is the
21   cornerstone or that you considered is compliance by
22   Ethicon with FDA regulations.  It's one of the three?
23                  MR. DAVIS:  Object to the form.
24                  THE WITNESS:  All regulations, whether
```