# Exhibit A

Denise M. Elser, M.D.

```
 1              IN THE UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF WEST VIRGINIA
 2                         AT CHARLESTON
 3
     IN RE:  ETHICON, INC.       ) Master File No.
 4   PELVIC REPAIR SYSTEM         ) 2:12-MD-02327
     PRODUCTS LIABILITY           ) MDL 2327
 5   LITIGATION                   )
                                  ) JOSEPH R. GOODWIN
 6   _____ ) U.S. DISTRICT JUDGE
                                  )
 7   DIANNE M. BELLEW,            )
                                  )
 8                  Plaintiff,    )
                                  )
 9        -vs-                    ) No. 13-CV-22473
                                  )
10   ETHICON, INC., ET AL.,       )
                                  )
11                  Defendants.   )
     _____ )
12
13
14                VIDEOTAPED DEPOSITION OF
15
16                 DENISE M. ELSER, M.D.
17
18                   September 16, 2014
19
20                     Chicago, Illinois
21
22
23
24
25
```

Denise M. Elser, M.D.

1  IFU?
2      A.   No, because fibromyalgia was discussed
3  in the surgeons monograph.
4      Q.   Do all doctors see the surgeons
5  monograph before they use the Prolift?
6      A.   No, but I think it's available if
7  they -- if they want to see it.
8      MR. SLATER:  Move to strike after "no."
9  BY MR. SLATER:
10      Q.   Do you understand the purpose of the IFU
11  under federal regulations?
12      A.   No.  I understand how it's used in -- in
13  clinical practice.
14      Q.   But you don't know the purpose of the
15  IFU in terms of why it's put into the box with the
16  product?
17      A.   Correct.
18      Q.   When you told the FDA that rigorous
19  effective trials of native tissue repair comparing
20  to vaginal mesh would be required, did you mean
21  what you said?
22      MR. COMBS:  Object to the form.
23  BY THE WITNESS:
24      A.   I was presenting the ACOG opinion from
25  the committee.  This was not my personal -- these

Denise M. Elser, M.D.

1  colleagues, they rely on conferences, literature.
2  There's much more goes into it than the IFU
3  stating --
4      Q.   So, from your perspective, from your
5  perspective in your opinion, the purpose of the IFU
6  is not to provide the risks and complications known
7  to Ethicon regarding the Prolift to physicians.
8  That's your perspective and your opinion, correct?
9      A.   That's my opinion and the Instructions
10 for Use, how do I use this in the OR.  That is how
11 it's going -- I believe will be accepted by most
12 surgeons.  And you just gave me -- I want to do
13 this study now.  I'm going to survey all kinds of
14 gynecologic surgeons to see if they even know what
15 an IFU is.
16      MR. SLATER:  Move to strike from "that"
17 forward.
18 BY MR. SLATER:
19      Q.   Let me ask you this.  If Ethicon knew
20 that some women would suffer complications from the
21 Prolift that would be severe and that despite
22 multiple operations the woman could not be safely
23 and effectively treated and would be left with
24 permanent chronic pain, if Ethicon knew that, would
25 you agree with me they needed to get that

Denise M. Elser, M.D.

1  Q. Again, in forming your opinions, you
2  don't know what Ethicon's obligations were to warn,
3  correct?
4  A. Correct.
5  Q. So, your opinions are not based on what
6  Ethicon was obligated to do from any source, right?
7  MR. COMBS: Object to the form.
8  BY THE WITNESS:
9  A. I -- my opinion is that as a surgeon who
10 has -- who does pelvic reconstructive surgery and
11 using mesh that what I expect the company put in
12 the IFU to help me understand how to do pelvic
13 reconstructive surgery with mesh may not include
14 every single complication.
15 MR. SLATER: Move to strike.
16 BY MR. SLATER:
17 Q. All I'm saying is the opinions you're
18 offering about the warnings are not based on any
19 standard whatsoever as to what Ethicon was required
20 to do because you don't know what they were
21 required to do, right?
22 A. No, I'm commenting on what the average
23 pelvic surgeon needs to know.
24 MR. SLATER: Move to strike.
25 BY MR. SLATER:

```
 1        Q.    Is the answer to my question yes?
 2        MR. COMBS:  Object to form.
 3   BY THE WITNESS:
 4        A.    Yes.
 5   BY MR. SLATER:
 6        Q.    I'd like you to assume -- no, I'll
 7   withdraw that.  Just give me one second.  I'm
 8   almost done.
 9              I didn't finish with your materials in
10   your report.  Let's go to the end of your report,
11   the last two pages.
12              The second-to-last page of your report
13   of Attachment B is a list of expert reports,
14   depositions, other and medical records.
15              Do you see that?
16        A.    Yes.
17        Q.    With regards to those categories of
18   documents, that's all you saw.  And, of course, the
19   medical records go over to the next page.  You
20   didn't see any other expert reports, depositions or
21   medical records, correct?
22        A.    I have since seen some more depositions
23   and expert reports.
24        Q.    Did you read or rely on any of those
25   depositions or expert reports?
```