# Exhibit B

Denise Elser, M.D.

```
 1              IN THE UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON
 2
       ---------------------------  )  Master File No.
 3     IN RE:  ETHICON, INC.,       )  2:12-MD-02327
       PELVIC REPAIR SYSTEM         )
 4     PRODUCTS LIABILITY LITIGATION)  MDL 2327
       ---------------------------  )
 5     THIS DOCUMENT RELATES TO     )  JOSEPH R. GOODWIN
       PLAINTIFFS:                  )  U.S. DISTRICT JUDGE
 6                                  )
       Jeanie Holmes                )
 7     Case No. 2:12-cv-01206       )
                                    )
 8     Laura Waynick                )
       Case No. 2:12-cv-01151       )
 9                                  )
       Denise Burkhart              )
10     Case No. 2:12-cv-01023       )
                                    )
11     Pamela Free                  )
       Case No. 2:12-cv-00423       )
12                                  )
       Dorothy Baugher              )
13     Case No. 2:12-cv-01053       )
                                    )
14     Lisa Thompson                )
       Case No. 2:12-cv-01199       )
15                                  )
       Rebecca Wheeler              )
16     Case No. 2:12-cv-01088       )
                                    )
17     Thelma Wright                )
       Case No. 2:12-cv-01091       )
18                                  )
       Rocio-Herrera Nevarez        )
19     Case No. 2:12-cv-01294       )
                                    )
20     Debra A. and Donald          )
       Schnering                    )
21     Case No. 2:12-cv-01071       )
                                    )
22     Margaret Kirkpatrick         )
       Case No. 2:12-cv-00746       )
23     ---------------------------  )
24          GENERAL DEPOSITION OF DENISE ELSER, M.D.
```

Denise Elser, M.D.

```
 1   you tell me what that is.
 2        A.    Labeled as a reliance list in addition
 3   to materials referenced in the report for MDL
 4   Wave 1.
 5        Q.    Does this exhibit -- strike that.
 6              Does this document marked as Exhibit 3
 7   contain all of the materials you have reviewed and
 8   relied upon in reaching your opinions regarding the
 9   TVT and the TVT-O in this case?
10        A.    Well, of course my knowledge base is
11   based on many articles I have read over the years,
12   but ones that I specifically cited in my report
13   were included in this list.
14        Q.    Other than your knowledge base that
15   you've required -- strike that.
16              Other than your knowledge base that
17   you've acquired over the years, is there anything
18   other than the materials that are listed in this
19   report marked as Exhibit 3 that you reviewed and
20   relied upon in forming your opinions in this case?
21        A.    Not that I recall at this time.
22        Q.    Doctor, can you tell me if there are any
23   depositions of any company witnesses, Ethicon
24   company witnesses, on the reliance list marked as
```

Denise Elser, M.D.

```
 1    Exhibit No. 3?
 2         A.    Can you say again?  Depositions of whom?
 3         MR. FAES:  Can we have the Court Reporter read
 4    back the question, please.
 5                   (WHEREUPON, the record was read
 6                    by the reporter as requested as
 7                    follows:  Q.  Doctor, can you tell
 8                    me if there are any depositions of
 9                    any company witnesses, Ethicon
10                    company witnesses, on the reliance
11                    list marked as Exhibit No. 3?)
12    BY THE WITNESS:
13         A.    By that you mean employees of Ethicon?
14    BY MR. FAES:
15         Q.    Correct.  Let me see if I can ask it a
16    different -- actually, I will let you answer the
17    question.  Never mind.
18         A.    Okay.  I don't see depositions of
19    employees on here.
20         Q.    Okay.  So, let me ask you this.  Have
21    you reviewed or relied upon any company depositions
22    of -- strike that.
23              Doctor, have you reviewed or relied upon
24    any depositions of any Ethicon company witnesses in
```

1   forming your opinions in this case?

2    A.   I have read them, but I did not cite

3   them in my report.

4    Q.   Which ones have you read?  Where would I

5   get a list of the company depositions that

6   you've -- that you've read?

7    A.   That I would have to look and see which

8   ones I have in my file, but I was not planning to

9   specifically cite them or rely on them.  I did not

10  rely on them for this report.

11   Q.   So, even though you've reviewed some

12  depositions of Ethicon company witnesses, there is

13  none that you intend to rely upon in forming your

14  opinions in this case, is that correct?

15   A.   Yes.

16   Q.   Doctor, would you agree that you've been

17  designated either as a general expert or a specific

18  expert or both in 17 Wave 1 cases?

19   A.   Well, I think we have to make a

20  distinction between what is designated on the list

21  and which ones I've reviewed.

22   Q.   And you understand that on some cases

23  you've been designated just as a general expert,

24  some cases you've been designated as a specific

1  or any study to determine how stiff or whether
2  there is a difference in stiffness between
3  laser-cut mesh and mechanically-cut mesh?
4     A.   I have not done such a study.
5     Q.   Have you ever seen any internal Ethicon
6  studies or documents related to the laser-cut mesh
7  being stiffer than mechanically-cut mesh?
8     A.   I have at some time seen such documents.
9     Q.   And how did those documents inform your
10  opinion -- opinions in this case?
11     A.   They have not.
12     Q.   So, you gave them no weight in
13  forming -- strike that.
14          So, the internal and -- strike that
15  again.
16          The internal Ethicon studies or
17  documents related to laser-cut mesh being stiffer
18  than mechanically-cut mesh, you gave those
19  documents no weight or bearing in forming your
20  opinions and conclusions in this case regarding the
21  TVT-O and TVT?
22     MS. SMITH:  Object to form.
23  BY THE WITNESS:
24     A.   Right.  What happens in the lab in an

Denise Elser, M.D.

```
 1   artificial setting is not important to me compared
 2   to how the sling reacts clinically and how it
 3   performs.
 4   BY MR. FAES:
 5        Q.   Okay.  My question was actually a little
 6   bit different than that.
 7             My question was:  Did you give the
 8   internal Ethicon studies or documents related to
 9   the laser-cut mesh being stiffer or not stiffer
10   than the mechanically-cut mesh any weight or
11   bearing in forming your opinions in this case
12   regarding the TVT or TVT-O device?
13        A.   No.
14        MS. SMITH:  Object to form.
15   BY MR. FAES:
16        Q.   Are you aware of how long it took
17   Ethicon to get the TVT-O product to market?
18        A.   No, I am not.
19        Q.   So, it's fair to say you haven't
20   reviewed any internal Ethicon documents discussing
21   that, or at least if you have, you can't recall
22   them as you sit here today?
23        A.   That would be correct.
24        Q.   Have you ever published any of the
```