# Exhibit C

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1                    - - -
 2
 3    IN RE:                :SUPERIOR COURT OF
      PELVIC MESH/GYNECARE   :NEW JERSEY
 4    LITIGATION             :LAW DIVISION -
                             :ATLANTIC COUNTY
 5                           :
                             :MASTER CASE 6341-10
 6                           :
                             :CASE NO. 291 CT
 7
      CONFIDENTIAL-SUBJECT TO STIPULATION AND ORDER OF
 8                   CONFIDENTIALITY
                          - - -
 9
                  September 12, 2012
10
                          - - -
11
12          Volume I of the transcript of the
13    Deposition of CHARLOTTE OWENS, M.D., called for
14    Videotaped Examination in the above-captioned
15    matter, said deposition taken pursuant to
16    Superior Court Rules of Practice and Procedure,
17    by and before JoRita B. Meyer, a Certified
18    Realtime Reporter, Registered Merit Reporter,
19    and Certified Court Reporter for the State of
20    Georgia, at the offices of Troutman Sanders,
21    600 Peachtree Street Northeast, Atlanta,
22    Georgia, commencing at 9:39 a.m.
23                        - - -
24          GOLKOW TECHNOLOGIES, INC.
        877.370.3377 ph|917.951.5672 fax
25              deps@golkow.com
```

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1          decide if they want to learn more about

 2          the system, and ultimately will use

 3          their training, education, and

 4          experience, plus this document, to

 5          decide if they want to use it.

 6   BY MR. SLATER:

 7          Q.   Did you understand that it was

 8   necessary to clearly and unambiguously

 9   communicate all necessary contraindications,

10   warnings and precautions, and adverse reactions

11   to physicians through the IFU?

12          A.   I understand the document should be

13   clear and unambiguous, yes.

14          Q.   Did you understand that it was

15   necessary for Gynecare, to the extent that a

16   risk was understood to exist with the PROLIFT,

17   to communicate it in the IFU as opposed to

18   assuming that surgeons would figure out that

19   risk on their own?

20          A.   I don't think you're giving surgeons

21   enough credit.  Surgeons don't have to figure

22   out the complications of an area that they

23   operate.  Surgeons are trained to know the

24   complications of the area in which they

25   operate.
```

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1    BY MR. SLATER:
 2         Q.    Does it mean too much tension?
 3         A.    It's not that simple.
 4         Q.    How would a surgeon doing the
 5    procedure be able to objectively verify, based
 6    on an objective standard, that they had placed
 7    or not placed the mesh with excessive tension?
 8         A.    They would be able to look at the
 9    repair after surgery and see if it looks
10    relaxed or see if it looks like it's under
11    tension.
12         Q.    So that's how they would do it?
13         A.    That's generally how it was done.
14         Q.    Did you ever perform the PROLIFT
15    procedure?
16         A.    On the cadavers, yes.  In live
17    people, because I was not practicing during my
18    tenure at Ethicon, no.
19         Q.    Did you ever on your own, without any
20    other surgeon performing the procedure -- did
21    you ever place Gynemesh in a human's body?
22         A.    No.
23         Q.    Look at the adverse reactions,
24    please.  It was your understanding that you
25    needed to list each of the adverse reactions
```

1      that were known to you in Medical Affairs in

2      this section, correct?

3           A.   Yes.

4           Q.   And you understood that if you failed

5      to list adverse reactions that you were aware

6      of, that that would render that warning

7      deficient to some extent, correct?

8           A.   Deficient?

9                MR. BROWN:  Objection.

10               THE WITNESS:  I would say that we

11          listed the adverse reactions that we

12          knew were adequate and sufficient for

13          this document.

14     BY MR. SLATER:

15          Q.   Well, you just said a moment ago you

16     agreed with me that you understood you were

17     supposed to list each of the adverse reactions

18     that you in Medical Affairs knew existed at the

19     time of launch, correct?

20          A.   We listed the adverse events that we

21     knew to be directly related to the information

22     that we had at this time.

23          Q.   Okay.  Were there risks -- well,

24     rephrase.

25               You see where it says, at the end of