# Exhibit C

Confidential - Subject to Stipulation and Order of Confidentiality

```
 1                     - - -
 2                                    :SUPERIOR COURT OF
                                      :NEW JERSEY
 3       IN RE:                       :LAW DIVISION -
         PELVIC MESH/GYNECARE         :ATLANTIC COUNTY
 4       LITIGATION                   :
                                      :MASTER CASE 6341-10
 5                                    :
                                      :CASE NO. 291 CT
 6
 7        CONFIDENTIAL-SUBJECT TO STIPULATION AND ORDER OF
 8                        CONFIDENTIALITY
                              - - -
 9                       March 14, 2012
                              - - -
10
11               Transcript of the continued
12     deposition of DAVID B. ROBINSON, MD, called for
13     Videotaped Examination in the above-captioned
14     matter, said deposition taken pursuant to Superior
15     Court Rules of Practice and Procedure by and before
16     Ann Marie Mitchell, a Federally Approved Certified
17     Realtime Reporter, Registered Diplomate Reporter,
18     Certified Court Reporter, and Notary Public for the
19     State of New Jersey, at the offices of Riker Danzig
20     Scherer Hyland & Perretti LLP, Headquarters Plaza,
21     One Speedwell Avenue, Morristown, New Jersey,
22     commencing at 9:35 a.m.
23                            - - -
                     GOLKOW TECHNOLOGIES, INC.
24            877.370.3377 ph| 917.951.5672 fax
                       deps@golkow.com
25
```

Confidential - Subject to Stipulation and Order of Confidentiality

1   director in Ethicon, you did not expect physicians

2   to rely upon the IFU for the Prolift® as an accurate

3   disclosure of the risks associated with the Prolift®

4   system?

5           MR. GAGE:  Objection.

6           THE WITNESS:  No.  I think what I

7   said is I didn't -- they shouldn't depend on it as

8   the sole source of their information regarding the

9   Prolift® system.

10  BY MR. SLATER:

11      Q.      My question is this:  Did you expect

12  surgeons who were considering using the Prolift® to

13  rely upon the Prolift® IFU to accurately disclose

14  the risks associated with the use of the Prolift®

15  system?

16          MR. GAGE:  Objection.

17          THE WITNESS:  We should accurately

18  represent what we knew to be risks at the time, yes.

19  BY MR. SLATER:

20      Q.      You knew that was required by federal

21  law.  Right?

22          MR. GAGE:  Objection.

23  BY MR. SLATER:

24      Q.      By the FDA.  Right?

25          MR. GAGE:  Objection.

Confidential - Subject to Stipulation and Order of Confidentiality

```
 1              THE WITNESS:  Actually, I don't know
 2   whether the FDA -- that is a regulatory decision.
 3   BY MR. SLATER:
 4       Q.     And you felt that was your obligation
 5   to physicians so they would know what the potential
 6   adverse reactions were if they used that product.
 7   Right?
 8              MR. GAGE:  Objection.
 9              THE WITNESS:  To the best of our
10   knowledge at the time, yes.
11   BY MR. SLATER:
12       Q.     And if Ethicon had knowledge of an
13   adverse reaction and did not include it in the
14   Prolift® IFU, then the IFU would be deficient to
15   that extent.  Right?
16              MR. GAGE:  Objection.
17              THE WITNESS:  No, that's not true.
18   BY MR. SLATER:
19       Q.     Okay.
20       A.     Because --
21       Q.     So let me understand this.
22              MR. GAGE:  The witness would like to
23   finish his answer.
24              MR. SLATER:  He just said no.  That's
25   all I was asking.
```

```
 1         Q.     Well, I'm asking you, based on your
 2   participation in the process at Ethicon, would that
 3   be incorrect?
 4                MR. GAGE:  Objection.
 5                THE WITNESS:  I don't remember ever
 6   being asked to give the -- a final decision about
 7   adverse events being put in an IFU.
 8   BY MR. SLATER:
 9         Q.     Let me understand this.  Ethicon
10   understood it was expected to put all of the adverse
11   events into the IFU.  However, if Ethicon failed to
12   list -- I'm going to ask the question differently.
13                If Ethicon determined an adverse
14   reaction to be material, meaning it doesn't just
15   happen, you know, so infrequently that you don't
16   have to consider it but it happens enough that you
17   can actually put a percentage on it --
18         A.     Well --
19                MR. GAGE:  Let him finish his
20   question.
21   BY MR. SLATER:
22         Q.     Let me ask you this.
23                How would you define a complication
24   to be material enough that it would need to be
25   listed in the IFU?  How did you define that as
```

Confidential - Subject to Stipulation and Order of Confidentiality

```
 1    medical director?
 2         A.     Well, it would either need to have a
 3    frequency or a severity that had some implication
 4    for a risk/benefit ratio.
 5         Q.     Okay.
 6                If a complication met that standard,
 7    it needed to be called out in the IFU.  Right?
 8         A.     Yes.
 9         Q.     And if it was not -- rephrase.
10                And if a complication that met that
11    standard was not included in the IFU, the IFU would
12    be deficient by definition.  Correct?
13                MR. GAGE:  Objection.
14                THE WITNESS:  I think it has to be
15    based on the information you have at the time the
16    IFU is created, so it will always evolve.
17    BY MR. SLATER:
18         Q.     The information Ethicon had about the
19    complications and risks from the Prolift® evolved
20    over the years.  Right?
21         A.     Yes.
22         Q.     That evolution was actually fairly
23    significant as more and more procedures were done
24    and Ethicon saw more clinical studies.  Right?
25                MR. GAGE:  Objection.
```