## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| In re Ethicon, Inc. Pelvic Repair System Products Liability Litigation | Master File No. 2:12-MD-02327<br>MDL 2327 |
| **THIS DOCUMENT RELATES TO ALL WAVE 1 CASES** | **JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE** |

**PLAINTIFF'S REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF MICAHEL KARRAM, M.D. REGARDING THE SAFETY AND EFFICACY OF THE TVT-O PRODUCT**

Plaintiffs submit this Reply in support of their motion to exclude the testimony of Michael Karram, M.D. regarding the safety and efficacy of Ethicon's TVT-O mesh product (Doc. No. 2091).

In their Motion to Exclude, Plaintiffs demonstrated that Dr. Karram failed to use a reliable methodology when reaching any of his opinions regarding the TVT-O product. The flaws in Dr. Karram's methodology and report include the following: Dr. Karram

- Admitted he was **not** qualified as an expert in biomaterials, pathology, statistics, epidemiology, FDA regulations, marketing of medical devices, drafting IFUs, development of medical devices, the design of medical devices or design of clinical studies;

- Has never published in a peer-reviewed journal;

- Did not even mention the device at issue (the TVT-O device) in his report;

- Admitted he failed to read the majority of science on the TVT-O (citing only 2 of hundreds of available studies); and

- Failed to review any Ethicon data, documents or company depositions.

In their response, Defendants provide no facts, testimony or points of clarification that redeem Dr. Karram's inadequate methodology. Instead, they obfuscate, shift blame and distort the law.

This Court, the *Daubert* standard, as well as the Federal Rules of Evidence, have all set forth a stringent and consistent roadmap for what qualifies as expert testimony and what does not. Dr. Karram's methodology fails under all three standards and he should be excluded from testifying in these cases.

## ARGUMENT

Defendants devote significant portions of their Response discussing how Dr. Karram is a very qualified urogynecologist. Even if Plaintiffs agreed with this proposition, surgical qualifications are merely one component of the requirements for allowing expert testimony to reach a jury. The Federal Rules require all prongs of the requirements related to expert testimony to be satisfied.

Further, Defendants repeatedly claim that Plaintiffs didn't specify which opinions and portions of Dr. Karram's report were being challenged. That is simply because Dr. Karram's opinions are being challenged in their entirety. The *methodology* employed by Dr. Karram in issuing all of his opinions was flawed – rendering his entire report, and all opinions contained therein, inadequate and inadmissible. Plaintiffs' Motion to exclude the testimony of Dr. Karram should be granted in its entirety.

**I.     Dr. Karram's Opinions Fail Under F.R.E. 702 Standards**

The rules governing the admissibility of expert testimony are clear regarding the requirements for an expert to testify in front of a jury about the opinions held by that expert. Federal Rule of Evidence 702 sets forth the basic framework for analyzing the admissibility of expert opinions. The rule reads, in pertinent part, as follows:

> If scientific, technical or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training or education, may testify thereto in the form
> of an opinion or otherwise, if (a) the expert's scientific, technical, or
> other specialized knowledge will help the trier of fact to understand

>the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the witness has applied principles and methods reliably to the facts of the case.

Perhaps one of the requirements of Rule 702 are met in this instance – Dr. Karram's medical training and experience – however, the rule clearly requires <u>all criteria</u> be satisfied. Notably, when listing the four criteria, the word "and" is repeatedly used – not the word "or". All of these criteria need to be satisfied when determining whether an expert witness may testify in front of a jury – not only one of them.

When breaking these requirements out and examining each one individually, Dr. Karram's methods fail on all components. Even assuming Dr. Karram is qualified by knowledge, skill, experience, training or education, the Rule does not stop there. It continues by stating that qualified expert may testify if, *and only if*, the remaining four criteria are met. This is where Dr. Karram's opinions fail.

**A.     Dr. Karram Fails to Base His Opinions on Sufficient Facts or Data.**

Under Fed. R. Evid. 702(b), even if qualified, an expert may only express his or her opinions "if the testimony is based upon sufficient facts or data." As explained in Plaintiffs' Motion, Dr. Karram testified that he only included studies in his report that were most supportive of his opinions.

>Q.     Did you cite in your report any papers you felt didn't support your opinion but you analyzed why they wouldn't be applicable?
>A.     No.
>Q.     In your report, you only cite those papers that support your opinion, correct?
>A.     Yes, for the most part, yes.

(Karram 3/29/2016, 70:18-71:1). Defendants incorrectly assert that "when asked whether he cited any reports or papers that did not support his opinion, Dr. Karram was not provided any opportunity to state his reasons for excluding contradictory evidence, or asked about any specific

3

study or literature which Plaintiffs claim contradicts his opinions." (Response at 8). This is not true. For example, Dr. Karram discusses in his report the Ogah Cochrane Review from 2011 and does not discuss the updated and complete Ford Cochrane Review from 2015 (which reached different conclusions than the 2011 Cochrane Review). When asked about his reasons for not discussing the updated study and using the outdated study instead, he was unable to provide any justification.

> Q. When you say you looked at the Cochrane review, you cite in your report to the Ogah study from 2011, correct?
> A. Correct.
> Q. Is there a reason you didn't choose to cite to the Ford-Cochrane review from 2015?
> A. No.
> Q. Did you understand that that existed?
> A. Yes.

(Karram, 3/29/2016 at 82:5-13). As made clear by the Federal Rules of Civil Procedure, expert reports are to contain "a complete statement of all opinions the witness will express and the basis and reasons for them" in addition to "the facts or data considered by the witness in forming them." (Fed. R. Civ. Proc. 26(a)(2)(B)). Despite the Defendants' attempt to shift the burden of clarifying and coaxing out Dr. Karram's opinions, and the underlying support and reasons for those opinions, the burden remains squarely with Dr. Karram. Even when asked why he did not discuss the updated study, Dr. Karram failed to provide any explanation.

Dr. Karram also testified that he did not look at any internal Ethicon documents, did not review the vast majority of TVT-O literature, and did not even review the TVT-O IFUs prior to rendering his opinions in this matter. Defendants' Response seems to concede this fact by pointing out that he reviewed *only two* of the hundreds of available TVT-O studies. Defendants' Response states as follows:

> Plaintiffs' argument also fails to take into account the reliability and importance of the TVT-O-related literature that Dr. Karram did review. Dr.

4

>Karram's Report cites to both the Trial of Mid-Urethral Slings (TOMUS) study and the Cochrane Library meta-analysis.

(Response at 7). The two studies Defendants assert Dr. Karram reviewed were the TOMUS study and the Cochrane Review. As noted above, the Cochrane Review relied upon by Dr. Karram was superseded. Moreover, neither of the studies cited by Dr. Karram focused on Ethicon's TVT-O device, but rather evaluated the efficacy and safety of mesh slings overall.

In fact, Defendants admit that Dr. Karram did not review all of the available data. "Dr. Karram's failure to review all potential documents does not undercut the reliability of his testimony based on what he did review." (Response at 9). This is a flawed argument. Under this theory, an expert could review one of 1,000 available studies and he would be qualified to reliably discuss that one single study. But the problem arises in the approach to answering the questions of efficacy and safety – the underlying *methodology*. Plaintiffs are not asserting that Dr. Karram is not qualified to testify about the two TVT-O studies he reviewed, Plaintiffs are asserting that this methodology employed by Dr. Karram (by only discussing two studies) when answering the question of the safety and efficacy of TVT-O is a flawed methodology. Despite Defendants' assertion, discussion of two studies, regardless of how good those studies are, is insufficient when considering the vast amount of literature and documents available for review, consideration and discussion.

Similarly, Dr. Karram testified he did not review any internal Ethicon documents, data or depositions. This alone renders him unqualified to opine on any of Ethicon's IFUs, policies or procedures related to training methods, properties of the mesh (which Ethicon examined internally), and adverse events. Not only did Dr. Karram not discuss the majority of available literature related to TVT-O, he did not review a single internal Ethicon document or deposition that would have informed and potentially altered some of his expressed opinions. The criterion

under Rule 702 which requires opinions based upon sufficient data and facts has clearly not been satisfied. This alone is reason enough to exclude Dr. Karram.

**B.     Dr. Karram's Opinions Are Not Reliable – His Report Is Replete With Errors, He Has Destroyed Documents Upon Which He Relied, and He Never Reviewed the Bulk of Materials on His Reliance List.**

Under Fed. R. Evid. 702(c) and (d), an otherwise qualified expert may testify only if the testimony is the product of reliable principles and methods, and the witness has properly applied those principles and methods. Defendants fail to cite to any authority, nor could they, that states only doing a partial review of the available data is a reliable methodology. Not reviewing a single internal document or company witness deposition (including protocols, material data sheets, information about the development of the product, complications seen internally by the company and millions of other relevant documents) that would have better informed Dr. Karram's opinions is hardly a reliable method of an expert witness. Similarly, only discussing two out of hundreds of studies and not analyzing why non-supportive studies were or were not applicable in forming an expert opinion is improper methodology under any standard. However, even with the materials Dr. Karram did review, he admittedly included numerous material errors, destroyed materials included in his report and failed to review more than half of the documents on his reliance list. His opinions clearly were not the product of reliable methods.

During his deposition, Dr. Karram admitted that his report was replete with errors. Plaintiffs do not assert that a reliable witness never makes mistakes or errors in their reports – to the contrary, it happens occasionally to even the most qualified and experienced experts. Plaintiffs concerns with the mistakes in Dr. Karram's report were not only that the errors were apparently not even his own making (he simply relied upon another scientist without checking their work) but that, from a methodological standpoint, he included someone else's errors and

did not cite to the source of the information. Additionally, even after Dr. Karram testified that he would like to correct several mistakes in his report, he has not done so to this day.

Defendants imply in their Response that because Dr. Karram did not author the numerous mistakes that appear in his report this absolves him from responsibility for those errors. They state as follows:

> Importantly, this error was not in the body of the Report, but in the slides incorporated into Dr. Karram's report. In his deposition, Dr. Karram clarified that he did not author the slides, but they were slides created by another surgeon that he has used in the past.

(Response at 8). It defies logic that an expert issuing opinions in a written expert report would not only use slides of another physician (and not credit that author with the creation of those slides in his report) but would not fact-check or quality-check those slides prior to relying upon them and including them in his report. In an effort to understand the root cause of the errors, during Dr. Karram's deposition, Plaintiffs requested access to the underlying slides that appear in Dr. Karram's report. Dr. Karram testified that the slides at issue (with the errors in them) likely existed on his computer which he did not have with him. After the deposition, Plaintiffs requested the slides from defense counsel and were told Dr. Karram no longer had possession of the slides. (Ex 1 – Email between Shaver and DiPaola, 4/7/2016). As a result, Plaintiffs have not had the ability to examine or access all of the materials Dr. Karram relied upon in issuing his report. This not only speaks to his methodology but also to Dr. Karram's reliability and credibility.

In addition to having incorrect data in his report, Dr. Karram admitted at his deposition that he had never seen the vast majority of studies and documents cited in his "Reliance Materials." His reliance materials listed hundreds of internal Ethicon documents and emails, hundreds of studies and multiple patient brochures and IFUs. Yet, when asked whether he

reviewed these hundreds of documents, Dr. Karram testified that he had not. He testified as follows:

> Q. You haven't reviewed any internal Ethicon documents; is that fair?
> A. Correct.
> …
> Q. Have you reviewed any internal Ethicon emails?
> A. No.
> (Karram, 3/29/2016 at 12:17-24)
>
> Q. Your reliance materials start with a section called "Medical Literature" dated 3/2/2016; is that right?
> A. Yes.
> Q. Would it be your testimony that you have reviewed every single one of these articles either in the abstract or in detail?
> A. No.
> (Karram, 3/29/2016 at 75:22-76:6)
>
> Q. In that time frame and in preparing your report for this case, did you review any patient brochures?
> A. No.
> Q. In that time frame and in the preparation of your report for this case, did you review any IFUs for any of the TVT products?
> A. No.
> (Karram, 3/29/2016 at 81:11-18)

Dr. Karram had incorrect information and data in his report from an unknown, unreferenced source that he destroyed subsequent to writing his report. In addition, he purported to rely on hundreds of documents and studies that he had never reviewed. His methods were not reliable.

For example, Dr. Karram also offers opinions regarding the adequacy of the TVT-O IFU. However, as he admitted in his deposition, he has not reviewed the TVT-O IFU for at least five years. In fact, he testified that he thought the product had been off the market for the past five years. An expert who is testifying about the efficacy and safety of a product should probably know whether the product is still being sold – which it is. Instead of basing his expert opinion on the actual IFU, apparently Dr. Karram chose to base his opinion on his recollection of a complex

8

document he had not reviewed for more than five years. Again, hardly a reliable basis upon which to testify.

Defendants assert that Plaintiffs offered no valid reason showing how the time between Dr. Karram's last use of the product make his opinions unreliable. (Response at 6). One example of precisely why the time lapse between Dr. Karram's last use of the product and the issuing of his opinions is critical are the many significant changes to the IFU that occurred during that timeframe. Since Dr. Karram last reviewed the IFU, the following injuries and complications have been added to the Adverse Reactions Section:

- Mesh extrusion, exposure, or erosion in to the vagina or other structures or organs;
- Acute and/or chronic pain;
- Voiding dysfunction;
- Pain with intercourse which in some patients may not resolve;
- Neuromuscular problems, including acute and/or chronic pain in the groin, thing, leg, pelvic and/or abdominal area may occur;
- Recurrence of incontinence;
- Bleeding including hemorrhage, or hematoma;
- One or more revision surgeries may be necessary to treat these adverse reactions;
- In cases in which the PROLENE Mesh needs to be removed in part or whole, significant dissection may be required;
- Exposed mesh may cause pain or discomfort to the patient's partner during intercourse;
- Death

(IFU for TVT-O, 1/2015). For Dr. Karram to express the opinions that the IFU is adequate without having reviewed the new and updated warnings, and without having been apprised of the changes contained therein, is not appropriate. To not review the current list of adverse reactions that Ethicon itself added to the IFU when warning doctors, and yet opine on their adequacy is improper.

Dr. Karram admittedly failed to review the majority of relevant literature, relied upon data replete with errors, failed to review a single Ethicon document, failed to review more than

9

half of the studies and documents on his reliance list and did not even know the product was still on the market. Dr. Karram simply did not employ reliable principles or methods when issuing his expert opinions. The widely accepted methods of reviewing and considering all available materials and data, reviewing and becoming familiar with any updates and properly citing/crediting other authors' work when using it in an expert report were not employed by Dr. Karram. Plaintiffs Motion should be granted.

### C. Dr. Karram's Opinions Do Not "Fit" These TVT-O Cases Because His Report Is Focused on a Different Device – the TVT-Retropubic.

Fed. R. Evid. 702(4), provides that an otherwise qualified expert may testify only if "the witness has applied principles and methods reliably to the facts of the case." Because Dr. Karram did not employ reliable methods in reaching his opinions, the methods and principles could not be reliably applied to the facts of the case.

The cases in which Dr. Karram has been proffered as a general causation expert are all TVT-O cases. Yet, Dr. Karram does not mention the TVT-O device in his entire report – not once.[1] Defendants attempt to obfuscate this critical point by claiming Dr. Karram is qualified "to opine regarding safety of TVT devices." Defendants state: "Plaintiffs suggest that Dr. Karram's Report does not adequately addresses the TVT-O device – ignoring the fact that his Report addresses TVT devices generally." (Response at 6). However, for purposes of this Report and Motion, Dr. Karram was proffered **only** as a TVT-O general causation expert. As this Court is well aware, these are different devices with different components, different implantation methods, different complications and different developmental and regulatory histories. Dr. Karram did not take the appropriate steps to opine as to the safety and efficacy of the TVT-O

---

[1] Dr. Karram's report briefly discusses the invention of the transobturator approach (the TOT) but does not discuss Ethicon's TVT-O product, the history of the product, or anything specifically related to the TVT-O device. He doesn't even reference the seminal paper about TVT-O (the De Leval and Waltregney series of studies – which described the procedure and followed the outcomes TVT-O patients for years) anywhere in his report.

10

device specifically. Hence, his opinions do not reliably fit to the facts of these cases – all of which are TVT-O cases.

Accordingly, because Dr. Karram's methods do not satisfy the four criteria set out in Fed. R. Evid. 702, he should not be allowed to offer expert testimony to the jury. Having the right qualifications and experience as a surgeon, as Defendants seem to assert, is not the all-encompassing endpoint for allowing expert testimony. Having the right credentials and the proper experience is simply the jumping-off point in determining whether or not an expert can offer their opinions at trial. As all of the four criteria have not been satisfied here, Dr. Karram should not be allowed to testify and Plaintiffs' Motion should be granted.

**II.      Dr. Karram is Not Qualified To Offer Opinions Outside His Expertise, Including Opinions Related to Ethicon's Training Programs.**

Plaintiffs moved to exclude certain opinions offered by Dr. Karram related to Ethicon's training procedures because, even with his experience and qualifications, he relied solely on his own personal experiences without offering any other supporting evidence. At most, Dr. Karram could testify as a fact witness about the training he participated in or his own personal observations but this does not qualify as expert witness testimony or opinions.

Defendants counter that Dr. Karram is qualified to testify as an expert witness about the adequacy of Ethicon's training programs related to TVT-O because, "Dr. Karram's opinions regarding training are based on his participation in the program – but they are based not only on his participation as a trainee, but also upon the fact that Dr. Karram served as lead faculty on many TVT device training sessions." (Response at 10). Again – these are all Dr. Karram's personal experiences – not expert opinions based upon an objective review of documents and data. There are thousands of internal Ethicon documents, which Dr. Karram did not review, dealing specifically with training procedures and protocols. There are hundreds of other

11

physicians across the nation who participated in training or led training sessions – that alone does not qualify those physicians to render expert opinions on the training procedures employed by Ethicon and it does not qualify Dr. Karram to do so either.

This Court has held that personal experience cannot be the *sole* basis of the expert's opinion. *Winebarger v. Boston Scientific Corp.*, No. 2:13-cv-28892, 2015 WL 1887222 at *8 (S.D. W. Va. Apr. 24, 2015) (*cited in* Memo at 8). Yet here, Defendants admit "Dr. Karram's opinions are based not only on **his** own training experience but also **his** extensive involvement with the process from start to finish. **His** intimate knowledge of this process gives him ample basis for opining on the training." (Response at 10 – emphasis added). Dr. Karram has no way of knowing (and has not done the necessary work to determine) whether his personal experiences were the norm or were simply an anomaly. He has offered no supporting materials or documents to show his personal experience is sufficient as a basis for an expert opinion. Dr. Karram has offered no corroborating materials and his personal experience is truly the sole basis of his opinion. Testifying about his personal experiences and then extrapolating them out to every surgeon and every hospital across the nation is improper and inadmissible. Plaintiffs' Motion should be granted.

## CONCLUSION

As explained above and in Plaintiffs Motion, Dr. Karram's opinions fail on all aspects of the *Daubert* inquiry and under Fed. R. Evid. 702. He is not qualified to discuss the safety and efficacy of the TVT-O mesh product due to the flawed methodology he employed in reaching his opinions. Dr. Karram did not employ a reliable methodology because he did not review the majority of the literature regarding TVT-O; he did not review any internal Ethicon documents related to safety, training or efficacy of TVT-O; he only included and analyzed studies in his report that were supportive of his opinion; he has never subjected his methods or opinions to peer

review; he admits he is not qualified as an expert on several aspects of his report; and he did not employ a reliable method as evidenced by the fact that he has not used the product for more than five years and did not even know the TVT-O product was still on the market until after he issued his expert report. Dr. Karram relies entirely on his personal experiences for his opinions on the adequacy of Ethicon's training procedures.  Dr. Karram should not be allowed to testify in this matter and Plaintiffs' Motion should be granted.

Respectfully submitted this 16th day of May, 2016.

/s/ Joseph J. Zonies
Joseph J. Zonies, Esq.
Zonies Law LLC
1900 Wazee Street, Suite 203
Denver, Colorado 80202
(720) 464-5300
jzonies@zonieslaw.com

/s/ Thomas P. Cartmell
Thomas P. Cartmell, Esq.
Jeffrey M. Kuntz, Esq.
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
tcartmell@wcllp.com
jkuntz@wcllp.com

/s/ D. Renee Baggett
Bryan F. Aylstock, Esq.
Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, Florida  32563
(850) 202-1010
(850) 916-7449 (fax)
rbaggett@awkolaw.com
baylstock@awkolaw.com

CERTIFICATE OF SERVICE

I hereby certify that on May 16th, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the list of participants registered to receive service in this MDL.

/s/ Joseph J. Zonies