**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL 2327<br><br>JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE GENERAL-CAUSATION TESTIMONY OF ROBERT BRIAN RAYBON, M.D.**

Plaintiffs fail to accurately represent this Court's rulings, Ethicon's arguments, or Dr. Raybon's opinions or their bases. Dr. Raybon remains unqualified to give certain general-causation opinions he offers, or those opinions otherwise fail to satisfy the *Daubert* standard because they are the result of an unreliable methodology or are irrelevant and will not help the jury.

**I. Dr. Raybon Is Not Qualified to Render General-Causation Opinions That Polypropylene Mesh Products Cause Various Complications.**

Plaintiffs assert Dr. Raybon previously "was allowed to offer general causation opinion testimony" and should be allowed to do so here. Pls.' Resp. (Dkt. 2201) at 5. They claim this Court allowed him to offer opinions based upon his observations and clinical experiences, and "to assess the general causal relationship between pelvic pain and other complications associated with the . . . POP kit product at issue there." *Id.* They also claim that Dr. Raybon "should be allowed to testify regarding the general causal relationship between pelvic pain and other complications associated with the Defendants' Prolift and Prolift+M products at issue here, including but not limited to the causal relationship between mesh implantation and nerve damage." *Id.*

Plaintiffs' position does not accurately reflect this Court's prior treatment of Dr. Raybon's general-causation opinions. This Court previously permitted Dr. Raybon to testify only about "the complications he has observed" in patients with mesh products. *Wise v. C.R. Bard, Inc.*, No. 2:12-CV-01378, 2015 WL 521202, at *16 (S.D.W. Va. Feb. 7, 2015). Contrary to Plaintiffs' broader contention, this Court explicitly concluded Dr. Raybon is not qualified to express opinions that the mesh products actually *caused* the complications. "[Dr. Raybon] lacks the qualifications to infer conclusions from these observations as to the etiology of complications associated with a pelvic mesh device." *Id.*; *see also Eghnayem v. Boston Scientific Corp.*, 57 F. Supp. 3d 658, 700 (S.D.W. Va. 2014) ("[Dr. Raybon's] general causation opinions do not withstand the Supreme Court's directives in *Daubert*."). In addition, the Court's exclusion of Dr. Raybon's general-causation opinions was not limited to opinions about nerve damage as Plaintiffs contend. Rather, the Court broadly excluded all proposed general-causation testimony by Dr. Raybon. *Wise*, 2015 WL 521202, at *16 (excluding Dr. Raybon's general-causation opinions to the extent they "go beyond his observations [of complications he has seen with mesh products] and into an assessment of the general causal relationship between pelvic pain (or other complications)" and the product). Plaintiffs have not identified any additional expertise acquired by Dr. Raybon in the 15 months since the *Wise* decision that would now qualify him to offer these opinions in this case.

Plaintiffs assert that Ethicon has not addressed Dr. Raybon's general-causation opinions for complications other than nerve damage and, as a result, "should be held to have conceded Dr. Raybon's ability to opine as to these [nonnerve damage] complications." Pls.' Resp. (Dkt. 2201) at 2 n.3. Ethicon's motion certainly highlights the fact that the Court specifically addressed nerve damage in *Eghnayem*. *See* Defs.' Mem. (Dkt. 2116) at 4-6. Much like this Court's analysis in

2

*Eghnayem*, however, which discussed nerve damage but excluded general-causation testimony about all complications, that discussion was merely one discussion of one particular type of complication.

Plaintiffs' narrow construction misreads Ethicon's motion as they misread *Wise* and *Eghnayem*. Before addressing nerve damage specifically, Ethicon first identifies the "laundry list" of 18 separate complications that Dr. Raybon says in his Prolift reports are "directly attributable" to Prolift devices and expressly argues that "[t]his Court has twice previously excluded these opinions as proposed by Dr. Raybon because he lacks the qualifications to render them and also because they are unreliable[.]" *Id.* at 3. All of Dr. Raybon's proposed general-causation testimony, regarding any and all complications of Prolift devices, is addressed in Ethicon's motion.[1]

Plaintiffs explicitly recognize this Court concluded in *Eghnayem* and *Wise* both that Dr. Raybon is "not qualified" to render general causation opinions "*and* that such opinion[s] [were] not reliable because he failed to reference any articles or testing that would support such opinion[s]." Pls.' Resp. (Dkt. 2201) at 3 (citing *Eghnayem*, 57 F. Supp. 3d at 700-01) (emphasis added). Plaintiffs' attempt to distinguish the present case by claiming Dr. Raybon's general-causation opinions are based on his experience and "also on his review and familiarity with published literature addressing the association between polypropylene mesh implants and nerve damage, as well as several of Defendants' own internal documents," which Plaintiffs claim

---

[1] Plaintiffs claim it is a "self-serving mischaracterization" for Ethicon to assert that Dr. Raybon's general-causation opinions largely rest on a connection between various complications Dr. Raybon has observed with Prolift devices and "nerve damage." Pls.' Resp. (Dkt. 2201) at 2 n.3. This is not Ethicon's characterization. When asked at deposition, Dr. Raybon repeatedly testified that his general-causation opinion for virtually all of the complications he identifies in his reports rests on Prolift causing some sort of nerve damage and resulting chronic inflammation. *See* Defs.' Mem. (Dkt. 2116) at 4-6.

"expressly acknowledge the causal association between synthetic pelvic mesh implants and nerve injury." Pls.' Resp. (Dkt. 2201) at 3. While Ethicon does not concede that reviewing company documents and literature renders Dr. Raybon's general-causation opinions reliable, this argument falls well short of the mark in any event because it addresses only theoretical reliability of Dr. Raybon's opinions and ignores his qualifications. Reading company documents does not suddenly give Dr. Raybon general-causation qualifications that he otherwise lacks.

Dr. Raybon's general-causation opinions should be excluded entirely.

## II.   Dr. Raybon's Physician-Competency Opinions Are Irrelevant.

Plaintiffs argue that it is "appropriate and necessary" that Dr. Raybon be allowed to offer his opinions regarding physician selection and training because physician error is sometimes a defense in this litigation. Pls.' Resp. (Dkt. 2201) at 6. Plaintiffs offer no specific support for this contention.

To be sure, surgeon error may be relevant to the issue of specific causation in an implantable device case. In contrast, however, general-causation testimony about physician training "says little about the design . . . or the adequacy of [a product's] warnings." *Wise*, 2015 WL 521202, at *13. As a result, there is no "valid scientific connection" between physician-training testimony and the issues present in this litigation. These types of opinions are irrelevant and should be excluded. *Id.*[2]

---

[2] Plaintiffs' assertion that Dr. Raybon's physician-competency testimony is "demonstrably reliable" is an unsupported declaration for which Plaintiffs offer no basis. *See* Pls.' Resp. (Dkt. 2201) at 6. Even a cursory comparison of Dr. Raybon's opinions here to the physician-competency opinions this Court excluded in *Wise* reveals that they are literally identical. Dr. Raybon uses the exact same words to express the exact same concepts—physician training program "was inadequate, and resulted in the 'certification' of numerous physicians who were undertrained and who lacked the experience, skills and expertise necessary to properly perform the implantation of these products"—even though *Wise* involved a completely separate company, completely separate circumstances, and completely separate products. *Compare* Ex. C to Defs.'

### III.    Dr. Raybon's Clinical-Studies Opinions Go Beyond His Qualifications.

Dr. Raybon's clinical-studies concession is not limited to acknowledging he is not qualified to testify about what testing Ethicon should or should not have done on Prolift devices. Rather, Dr. Raybon concedes two related, but different things: he is not an expert in "the design of clinical trials *or* testing of medical devices." Ex. E to Defs.' Mot. (Dkt. 2115-5), Raybon 4-18-16 Dep. Tr. 224:6-9 (emphasis added). Plaintiffs contend Dr. Raybon's clinical-studies opinions are merely "citation to published literature and objective factual data" and, as such, are different than Dr. Raybon's clinical-studies opinions that were previously excluded by this Court in *Wise*. Pls.' Resp. (Dkt. 2201) at 7; *see Wise*, 2015 WL 521202, at *16.

A proper read of Dr. Raybon's proposed opinions here, however, reveals that they go beyond simply reciting study results. Plaintiffs claim Dr. Raybon "is not offering opinions criticizing the design or process of Defendants' product testing or studies[.]" Pls.' Resp. (Dkt. 2201) at 7. Despite this representation, Dr. Raybon offers precisely those types of opinions. For example, Dr. Raybon criticizes the design of one clinical study when he says "[s]uccess for the study was arbitrarily designed as the upper 90% two-tailed confidence interval not exceeding 20% which would signify a prolapse recurrence rate of less than 20%." Ex. C to Defs.' Mot. (Dkt. 2115-3), Raybon Prolift Report at 20.

Dr. Raybon also directly criticizes the process Ethicon followed when conducting that study by asserting that the results for certain sub-groups from the study failed Ethicon's internal criteria for "success" even though he acknowledges that "in general the study met Ethicon's

---

Mot. (Dkt. 2116-3), Raybon Prolift Report at 23-24 *with Wise*, 2015 WL 521202, at *13. Instead of being "demonstrably reliable," it appears Dr. Raybon is merely cutting and pasting opinions across mesh litigations in an effort to undermine whatever product he is retained to attack, raising significant doubt about whether Dr. Raybon has *any* support or method for these opinions, let alone whether they are "demonstrably reliable."

internal criteria for 'success.'" *Id.* In other words, Dr. Raybon admits the results met the study definition of success but directly attacks the design and conduct of the study and says the study should have defined "success" differently and looked at different subsets of outcomes. *Id.* He even goes on to say the results using his newly proposed definition of "failure" for two of the three sub-groups should have been provided to surgeons. *Id.*

These are either criticisms of the design and process of conducting this study or criticisms of the process Ethicon followed in testing these products, or both. Either way, they are outside Dr. Raybon's expertise and should be excluded.

Nor are any of Dr. Raybon's remaining clinical-studies opinions limited to merely citing objective factual data. Throughout his discussion of the various Prolift or mesh clinical studies, Dr. Raybon repeatedly goes beyond citing results or, worse, portions of results, and conducts substantive analysis of the data or outcomes. *See id.* at 19-22. Cherry picking portions of study results and criticizing what Ethicon did or did not do with that information hinges on having the expertise to assess the significance of that subset of data in the context of the overall design and conduct of the study. Dr. Raybon admits he is not qualified to do that.

In his clinical-studies opinions, Dr. Raybon has embedded various opinions where he indicates Prolift or mesh clinical studies showed "unacceptable" complication rates. *Id.* These opinions are pure *ipse dixit* based on no methodology whatsoever, *see* Defs.' Mem. (Dkt. 2116) at 9, and Plaintiffs' Opposition is silent in defense of them. Dr. Raybon should be prohibited from expressing any characterization of the acceptability of any complication rates from any study or portion of any study.

## IV.   Dr. Raybon's Warnings Opinions Reach Too Far and Are Unreliable.

Dr. Raybon admits he literally has *no methodology* for evaluating warnings or an IFU. Instead, Dr. Raybon simply declares, without basis, "I think I know a good IFU when I see it."

6

Ex. E to Defs.' Mot. (Dkt. 2115-5), Raybon 4-18-16 Dep. Tr. 192:20-193:9. Perhaps for obvious reasons, Plaintiffs make no attempt to support or even explain this "I-know-it-when-I-see-it" methodology—their Response is silent on the issue. Plaintiffs instead argue only that Dr. Raybon is qualified to offer warnings opinions. *See* Pls.' Resp. (Dkt. 2201) at 8-12.

Although this Court has previously permitted Dr. Raybon to give limited testimony about warnings, his recent testimony makes clear that he should not be permitted to do so here. An expert's qualifications do not alone render his opinions reliable and they are, by themselves, insufficient to establish reliability. *Sanchez v. Boston Scientific Corp.*, No. 2:12-cv-05762, 2014 WL 4851989, at *6 (S.D.W. Va. Sept. 29, 2014) ("Qualifications alone do not guarantee reliability."); *see also Eghnayem*, 57 F. Supp. 3d at 680 ("Even though [an expert] has experience, he must still base his opinion on a reliable, scientific method."). By their silence on the issue, Plaintiffs concede Dr. Raybon's warnings opinions are unreliable *ipse dixit* and they should be excluded in any form, limited or otherwise.

Even if Dr. Raybon is permitted to testify about warnings on some limited basis, he should be limited to discussing "risks he perceives [Prolift] poses to patients and then opine that the [Prolift] IFU did not convey those risks." *Wise*, 2015 WL 521202, at *14. Dr. Raybon's proposed opinions, as reflected in his Reports and as Plaintiffs characterize them in their Response, sweep much more broadly and would far exceed his qualifications and experience.

Dr. Raybon should be permitted to testify about warnings *only* if the testimony is properly narrowly constricted to comparing his observed complications to the label as he sees it. *Id.* ("To the extent that Dr. Raybon's opinions fit within this comparison, they are not excluded at this time[.]"). Plaintiffs, however, plan to have Dr. Raybon testify about "physician expectations" generally, about "the information upon which physicians regularly and reasonably

rely," and about the type of information "a reasonable physician would expect a medical device company to provide." Pls.' Resp. (Dkt. 2201) at 9, 11. And they also apparently intend to have Dr. Raybon testify that deficiencies in the warnings, as this Court may allow, withholds "relevant information" from all physicians generally, prevents all physicians generally "from making an intelligent decision" about a product, and prevents all physicians generally "from properly counseling patients in considering whether to consent to surgery." *Id.* at 11.

Each of these opinions should be excluded. There is a substantial difference between a doctor telling a jury what he believes are risks associated with a product and whether he believes the warnings conveyed those risks, on the one hand, and telling the jury what a supposedly typical or reasonable physician might expect to see in a warning and how it might impact their patient counseling. Dr. Raybon is not qualified to speak for all physicians or for some undefined supposedly "reasonable" physician on any of these issues. Nor is he qualified to determine what is "relevant information" in the eyes of any other physician. Dr. Raybon's proposed warnings opinions go "a step further than comparing the risks of the product to the content of the label." *Wise*, 2015 WL 521202, at \*14 n.9. Indeed, they go many steps further, and they should be strictly limited accordingly if they are not excluded entirely.

## V. Dr. Raybon's Safer-Alternative Design Opinions Are Speculation and Conjecture.

Dr. Raybon was given a blank sheet to identify and describe any and all designs he believes would be safer and true alternatives to the Prolift and Prolift+M designs. *See* Ex. E to Defs.' Mot. (Dkt. 2115-5), Raybon 4-18-16 Dep. Tr. 161:1-3 ("Do you have an alternative design for the Prolift or Prolift+M devices that you think would have made them safer?"); *see also id.* at 162:3-5 ("Are there any other aspects of the design of the Prolift or Prolift+M devices that you think could be made safer?"); *id.* at 166:15-18 ("I want to ask you the same questions

about the Prolift+M. How would you change that to make it safer? Would it be the same things you discussed with the Prolift?"). Dr. Raybon identified everything he believes would be a viable design that is an alternative and is safer. *Id.* at 161:1-162:16.

Dr. Raybon says he has actually explored the viability of some of his proposed Prolift alternatives in some very limited contexts, but explicitly admits he currently has "no knowledge if *any* of those [Dr. Raybon-proposed potential design differences] ever went anywhere."[3] *Id.* at 162:17-163:8 (emphasis added). With respect to his sole proposed alternative design for Prolift+M (a different absorbable component than monocryl), Dr. Raybon admits he has no alternative design to even propose. *Id.* at 168:6-9. Dr. Raybon proposes using PVDF as an alternative material in both Prolift devices. *Id.* at 164:6-22. Dr. Raybon admits he has nothing more than preliminary and unreliable information indicating PVDF would be a viable safer alternative design. *Id.* ("At least on paper, this ProNova or the PVDF *sounds* enticing.") (emphasis added).

Ethicon's challenges to Dr. Raybon's safer-alternative design opinions are not mere disagreements with Dr. Raybon's opinions. Dr. Raybon's testimony allows only one logical

---

[3] This testimony covers *all* of Dr. Raybon's proposed design modifications, including mesh without arms. Plaintiffs identify and discuss use of armless mesh to perform abdominal sacrocolpopexy to somehow try to carve it out from Dr. Raybon's broad testimony indicating he has no information supporting the idea that armless mesh is a safe, feasible alternative to Prolift devices. Pls.' Resp. (Dkt. 2201) at 12-13. This argument is both misleading and irrelevant. First, Dr. Raybon did not identify abdominal sacrocolpopexy (or armless mesh in that context) as a safer alternative to Prolift in his Reports or deposition testimony, and he certainly has not identified any information that supports Plaintiffs' proposition that armless mesh is safer than Prolift. Plaintiffs cannot supplement Dr. Raybon's testimony with post-deposition briefing ideas that do not belong to Dr. Raybon. Moreover, Dr. Raybon's omission rests on sound logic and reason—Prolift is used to treat rectocele and cystocele and the abdominal sacrocolpopexy procedure is not typically used to treat these conditions, regardless of whether armless mesh is used. Abdominal sacrocolpopexy is primarily a procedure to treat uterine or apical prolapse. Performing an abdominal sacrocolpopexy procedure with mesh, armless or otherwise, is not an alternative to using Prolift or Prolift+M to treat rectocele or cystocele.

conclusion—his safer-alternative design opinions are based entirely on speculation and conjecture, and he has no factual information that even arguably shows any of his alternative designs are either safer or feasible. Expert testimony is only admissible if it is "based upon sufficient facts or data"—*i.e.*, if it "rests on a reliable foundation." *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 701 (S.D.W. Va. 2014) (quoting Rule 702 and *Daubert*, 509 U.S. at 597). None of Dr. Raybon's proposed safer-alternative design opinions come close to passing this test.

## VI.   Defendants Do Not Concede Dr. Raybon's Opinions Regarding Infection, Fistulae, and Abscesses Are Relevant or Reliable.

Plaintiffs agree that Dr. Raybon will not offer any testimony about infection or other conditions that are not alleged in a particular case. Pls.' Resp. (Dkt. 2201) at 13-14. Plaintiffs further assert Ethicon's argument would not apply in cases where those conditions are not alleged. *Id.* Ethicon does not concede any of Dr. Raybon's testimony regarding infection, fistulae, or abscesses is relevant in any particular case and reserves the right to object to and challenge any such testimony based on the circumstances of a particular case.

## VII.  Dr. Raybon Is Not Qualified to Testify Regarding Any FDA Regulatory Matters and His Proposed Opinions Are Unreliable and Speculative.

Plaintiffs contend Dr. Raybon "has not offered any expert opinion regarding the FDA or its regulatory processes." *Id.* at 14. This is flatly contradicted by Dr. Raybon's Prolift Report, which reads "Ethicon ignored governmental [FDA] requirements in bringing the Prolift to market, and ultimately withdrew the product from the market." Ex. C to Defs.' Mot. (Dkt. 2115-3), Raybon Prolift Report at 3. Dr. Raybon goes on to express multiple opinions about Prolift FDA regulatory matters—*e.g.,* clearance, sale without FDA permission, and FDA determination of safety and effectiveness. *Id.*

Plaintiffs argue Dr. Raybon should be permitted to offer these FDA-related opinions if Ethicon is permitted to introduce evidence of FDA matters. Plaintiffs focus solely on whether

this evidence will be permitted and ignore the issue of *who* could potentially present it for Plaintiffs. Pls.' Resp. (Dkt. 2201) at 14-15. In doing so, Plaintiffs miss the mark entirely.

Dr. Raybon explicitly concedes (1) he is not an expert on FDA matters; (2) he has no idea if any of his proposed testimony related to FDA regulation of Prolift is accurate; and, (3) his opinions on those subjects are nothing more than hearsay media coverage. Ex. E to Defs.' Mot. (Dkt. 2115-5), Raybon 4-18-16 Dep. Tr. 217:2-21; 190:9-16. Dr. Raybon is the last person who should be permitted to provide opinion testimony of any kind about any FDA matters. Nor are the matters Dr. Raybon proposes to introduce to the jury "indisputable facts" as Plaintiffs contend, unless hearsay media coverage of regulatory matters from a nonscientific or regulatory publication can suddenly be cited to indisputably establish facts.

## CONCLUSION

Ethicon asks this Court to grant its Motion to Exclude the General-Causation Testimony of Brian Raybon, M.D., for the reasons stated here and in its memorandum in support.

Respectfully submitted,

ETHICON, INC. AND
JOHNSON & JOHNSON

*/s/ Rita A. Maimbourg*
Rita A. Maimbourg
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:   216.592.5000
Facsimile:    216.592.5002
rita.maimbourg@tuckerellis.com

*/s/ David B. Thomas*
David B. Thomas (W.Va. Bar #3731)
THOMAS COMBS & SPANN PLLC
300 Summers St.
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
Tel:   304.414.1807
dthomas@tcspllc.com

*/s/ Christy D. Jones*
Christy D. Jones
BUTLER SNOW LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
Tel:   601.985.4523
christy.jones@butlersnow.com

## CERTIFICATE OF SERVICE

I certify that on May 20, 2016, I electronically filed this document with the clerk of the court using the CM/ECF system, which will send notification of this filing to CM/ECF participants registered to receive service in this MDL.

*/s/ Rita A. Maimbourg*
Rita A. Maimbourg
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:   216.592.5000
Facsimile:    216.592.5002
rita.maimbourg@tuckerellis.com

012177\004186\2700070.1