IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

TRANSCRIPT OF PROCEEDINGS

---------------------------------------------

IN RE:  ETHICON, INC., PELVIC REPAIR          MDL NO.
SYSTEM PRODUCTS LIABILITY LITIGATION          2:12-MD-2327

---------------------------------------------

TELEPHONIC MOTIONS HEARING

May 27, 2016

**BEFORE THE HONORABLE CHERYL A. EIFERT**
**UNITED STATES MAGISTRATE JUDGE**

Court Reporter:                    Lisa A. Cook
                                   RPR-RMR-CRR-FCRR
                                   (304)347-3198
                                   lisa_cook@wvsd.uscourts.gov

Proceedings recorded by mechanical stenography; transcript
produced by computer.

**APPEARANCES** (Telephonically):


**For the plaintiffs:**


**MR. BRYAN F. AYLSTOCK**
**MS. D. RENEE BAGGETT**
Aylstock, Witkin, Kreis & Overholtz PLLC
17 East Main Street
Suite 200
Pensacola, FL  32502


**For the Defendant:**


**MR. RICHARD BERNARDO**
**MS. ROBIN SHAH**
Skadden, Arps, Slate, Meagher & Flom
4 Times Square
New York, NY  10036


**MR. CHRISTOPHER D. MORRIS**
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400
P.O. Box 6010
Ridgeland, MS  39158-6010

P R O C E E D I N G S

1

2      JUDICIAL ASSISTANT:  Hello, everyone.  This is

3  Laura, Judge Eifert's Judicial Assistant.  There's a little

4  bit of static on the line.  Is someone on a cell phone

5  perhaps?

6      MR. BERNARDO:  Not -- this is Rich Bernardo for

7  Ethicon.  We are not on a cell phone.  We're on a land line.

8  I hear the static as well.

9      MS. BAGGETT:  This is Renee Baggett and Bryan

10  Aylstock for the plaintiffs and we, we are also on a land

11  line.

12      JUDICIAL ASSISTANT:  All right.  Thank you.

13      All right.  I'd like to confirm our court reporter

14  today, Lisa Cook, is on the line.

15      COURT REPORTER:  Hi, Laura.  Yes, I'm here.

16      JUDICIAL ASSISTANT:  Hi, Lisa.  Thank you.

17      And, of course, we're here regarding *Ethicon, Inc.*,

18  Case Number 2:12-MD-2327.

19      So other than Renee and Bryan, is there anyone else on

20  the line for plaintiffs?

21      MS. BAGGETT:  No, ma'am.

22      JUDICIAL ASSISTANT:  Thank you.

23      Ethicon, anyone else besides Mr. Bernardo?

24      MS. SHAH:  Yes.  Hi, Laura.  This is Robin Shah

25  for Ethicon.

1          JUDICIAL ASSISTANT:  Robin, I'm sorry, I did not

2     get your last name.

3          MS. SHAH:  Shah, S-h-a-h.

4          JUDICIAL ASSISTANT:  Thank you.

5          MR. BERNARDO:  And also I conferenced in -- I

6     apologize, I forgot to hit the conference button when we

7     started -- Chris Morris also for Ethicon.

8        Chris, are you on?  Chris.

9        (No Response)

10         MR. BERNARDO:  Just one second.  Let me make sure.

11    I think we're missing one person, Your Honor.

12         JUDICIAL ASSISTANT:  All right.  This is Laura.

13    I'll hold.  Thank you.

14       (Pause)

15         JUDICIAL ASSISTANT:  The sound that we're

16    hearing -- I know in the past when the parties have been

17    using a speakerphone, that has sometimes caused the static

18    noise and we've had to ask them to mute the phone when

19    they're not speaking.  So I'm not sure if someone is on a

20    speakerphone.  That may account for it.

21         MR. AYLSTOCK:  Laura, this is Bryan.  Why don't I

22    mute it and see if that helps.

23         JUDICIAL ASSISTANT:  Okay.  Thank you.  Yeah,

24    perfect.  Thank you.

25         MR. BERNARDO:  So it's your fault, Bryan.

1          MR. AYLSTOCK:  Well, I didn't know.  I'm not on a

2     cell phone at least.

3          JUDICIAL ASSISTANT:  Anyone else on the line?

4          MR. MORRIS:  Hi.  This is Chris Morris.  I

5     apologize.  I had phone issues, but I'm here now.

6          JUDICIAL ASSISTANT:  All right.  Thank you.  Just

7     to remind everyone to identify yourself when speaking, and

8     if you'll hold one moment for Judge Eifert.

9        (Pause)

10          THE COURT:  Good afternoon.

11          MR. BERNARDO:  Good afternoon, Judge Eifert.  How

12     are you today?

13          THE COURT:  I'm fine.  How is everyone?

14          MR. BERNARDO:  I'll speak for myself.  This is

15     Rich Bernardo.  I'm doing fine.  And thank you for taking

16     time on a Friday before Memorial Day weekend to chat with

17     us.  We appreciate that.

18          THE COURT:  No problem.

19        All right.  I reviewed the letter and see that -- I've

20     looked at the plaintiffs' fact sheet and all the

21     attachments.  And I also looked at the Pre-Trial Order 217

22     which is the docket control order for wave one cases.

23        So who wants to tell me what's happening?

24          MR. BERNARDO:  This is Rich Bernardo, Your Honor.

25     Since I sent you the letter, why don't I see if I can set

1    the table, if you will, here.

2         So this is, I'll say, a bit of a housekeeping issue.

3    And the call really pertains to some difficulties that

4    defendants have been having obtaining medical records with

5    respect to the cases that have been selected for the wave

6    process to get worked up for trial.

7         And, obviously, it's our position that the medical

8    records are among the key materials that we need to prepare

9    cases, to take depositions of the plaintiffs, of the

10   treaters, of experts, et cetera.

11        And there's a process in place through one of the

12   documents you raised, Your Honor, from the plaintiffs' fact

13   sheet that specifically identifies the records to which

14   we're entitled without exception.

15        And, obviously, particularly with respect to these wave

16   cases where depositions are going on, many of them literally

17   every day of the week, there's really not a lot of time to

18   go back and forth with plaintiffs and dispute what records

19   we should get or shouldn't get.

20        We, we are concerned that that's going to slow down

21   being able to take depositions or, worse yet, result in

22   depositions having to be taken a second time if we

23   ultimately prevail on an issue.

24        Before I explain briefly what isn't working, let me

25   just take a moment to say what is working, Your Honor, and

1    put the issue in context.

2         Most plaintiffs are cooperating and we're, we're

3    getting what we need.  And I just want to start out on that

4    positive note now.  And I also want to thank Ms. Baggett

5    from plaintiffs' counsel who's on the phone because we've

6    been raising these issues with her and she's really been

7    helping us work through them.

8         We understand there are a lot of moving parts here.

9    There are a lot of law firms.  There are a lot of parties.

10   We thoroughly understand that and are mindful of it.  So I

11   just want to start out on a positive note of what is working

12   as we're getting, you know, what we need from most

13   plaintiffs.

14        But there are a number of them, and it's not

15   insignificant, where we're still having some difficulties.

16   Some plaintiffs are just not responding at all.  Some

17   plaintiffs are taking the position that they should only be

18   required to provide records for some limited period of time.

19        Some are taking the position that they shouldn't have

20   to produce certain types of medical records if certain

21   claims aren't being made.  Some are taking the position that

22   if they sign the authorization and get the medical records

23   that they can then later object to giving us the medical

24   records and we'll have to come to Your Honor to make a

25   motion.

1    And it's our position, again, that we're entitled to

2    all the medical records that are identified or for which

3    there are authorizations in the plaintiffs' fact sheets,

4    period.

5    However, we recognize there's a little bit of, I'll

6    say, disconnect loosely between some orders that we've been

7    talking with Ms. Baggett about.  And that's where, Your

8    Honor, we, we thought it made sense to come to you and try

9    and sort through that before inundating the Court with many

10   motions to compel, going through case after case of the

11   particular circumstances and why we think we need the

12   records.

13   So one issue, Your Honor, that we think would help cut

14   through this is those two orders that we sent to you and

15   asked you to take a look at.

16   And first with respect to PTO Number 40, so that's the

17   Pre-Trial Order that pertains to the fact sheet.  And that's

18   the one I was referring to earlier where if you go in the

19   back, the Appendix A, it has all the authorizations.  And

20   it's very, very clear and specific as to what authorizations

21   are to be filled out and there's no process to object.

22   And we think that makes sense because this is, this is

23   the document that's filled out by plaintiffs who have been

24   selected to have their cases worked up for trial.  So,

25   obviously, we believe it intentionally requires more

1    information to be given so that we can take meaningful

2    depositions and work up the cases appropriately.  There's a

3    sanctions provision on the second page of it for failure to

4    comply.

5        There's also, as Your Honor pointed out, Pre-Trial

6    Order Number 17.  This one is different insofar as it

7    relates to all plaintiffs and, and has the core information

8    that should be provided.  So this is not one where the

9    plaintiffs are on the fast track for having depositions

10   taken and expert disclosures and treaters, et cetera.

11       So we can appreciate why in this one there would be an

12   opportunity for a plaintiff to raise their hand and say,

13   "Wait a minute.  I don't think this should be provided."

14   But even if it's not provided with -- it's only with respect

15   to mental health records.  Even if it's not provided, it, it

16   calls for some objection based upon a privilege and

17   presumably would require a privilege log.

18       While we agree with plaintiffs that it's not

19   necessarily clear which one rules here, we just think that

20   for this process to allow during the work-up of these cases

21   during the wave for plaintiffs to sign the authorizations

22   and say, "Okay, but we're not going to give you these mental

23   health records because we don't think they're relevant

24   here," and put the onus on us to come back and explain why

25   they're relevant is going to take a tremendous amount of

1    time and be a drain on all the parties' resources and the

2    Court's resources.

3         And one thing I promised the plaintiffs, Your Honor,

4    was I wasn't going to get into a particular case because

5    that would be unfair for, you know, the plaintiff's attorney

6    for that case not to be represented.

7         So I said what I would do is give you a hypothetical,

8    Your Honor, of a type of situation where, you know, it's

9    representative of the kind of situation we're getting just

10   to show you how we'd end up having to make a motion.

11        So in this hypothetical situation, a plaintiff would

12   take the position that they're not asserting an emotional

13   distress claim.  Therefore, we're not entitled to mental

14   health records.

15        But in this hypothetical claim, the plaintiffs are also

16   claiming -- or the plaintiff is also claiming that she can't

17   have sexual relations as a result of her mesh.

18        And in the medical records in this hypothetical case

19   that have been produced already, there have been significant

20   identification of mental health and psychological issues

21   that particularly focus on the inability for this plaintiff

22   to have normal sexual relations prior to receiving the mesh.

23        So we say, well, we understand you're not making an

24   emotional distress claim, but mental health records are

25   particularly relevant here.  And, again, this is

1   hypothetical, but it's representative of the types of

2   issues.

3       And we feel that we shouldn't have to go in these types

4   of claims and make motion after motion to get what we

5   believe we're entitled to be getting pursuant to the order

6   that was issued under Pre-Trial Order Number 40.

7       We're very mindful, Your Honor, of the sensitivity of

8   these records.  We're mindful of the privacy of these

9   plaintiffs.  But we're also mindful of the fact that we're

10  being asked to put together a case and take a meaningful

11  deposition of various parties.

12      There are protective orders in this action.  Nobody is

13  going to misuse records.  We're going to be as respectful as

14  we can.  But we feel as if we're entitled to the information

15  that has been identified.

16      So what we're asking for, Your Honor, is I guess, if

17  you agree with us, to rule that during the wave process,

18  pursuant to Pre-Trial Order Number 40, that the plaintiffs

19  have to provide the authorization; that they can't limit the

20  authorization either in time or scope or provider.  They

21  have to provide the authorizations.  And they can't, once

22  they provide the authorizations, then say, "But we're not

23  going to give you the medical records."

24      And if they don't do all of that, then we're also

25  asking that their case get removed from the wave cycle

1   because we don't feel as if we're being given a reasonable

2   opportunity to put that case together for trial.

3        So that's, that's our position, Your Honor.

4            THE COURT:  All right.  So let me hear from the

5   plaintiffs then.

6            MS. BAGGETT:  Yes, Your Honor.  Good afternoon.

7   This is Renee Baggett for the plaintiffs.

8        As Mr. Bernardo indicated, we have been working with

9   them to try to resolve any issues with regards to

10  deficiencies with the plaintiffs' fact sheets and the

11  plaintiffs' profile forms for quite some time.

12       My understanding is that there are very few cases that

13  have this particular issue, at least with regards to the,

14  the, being able to produce records.

15       And we've had conversations with these firms and

16  explained to them that, you know, this was a negotiated

17  document.  The parties agreed on the language and the terms

18  to this document but, yet, that there is a provision per PTO

19  17 that allows the withholding or redacting of information

20  or medical records based on a privilege.

21       And just because PTO 40 was entered into at a later

22  time with regard to the late cases, we do not feel that it,

23  it took the place of PTO -- the provisions in PTO 17 which

24  laid out the parties' rights with regard to completing these

25  documents.

1    In these situations, I've spoken with the firms that

2 have expressed a concern with regards to providing these

3 records and they've assured me that, obviously, they do not

4 feel, based on the fact that they are not claiming a mental

5 injury, that these, these records are not relevant and, and

6 are more prejudicial than they would be helpful in any

7 event.

8    But this, this provision is something that both parties

9 have available to them.  Defendants have used it repeatedly

10 in document production in the past to redact and assert a

11 privilege on documents that they felt were more prejudicial

12 to their, their client.

13    And that's, that's the way this process is supposed to

14 work so that if there is some information that should be

15 protected, especially in a litigation as sensitive as the

16 one we're in with these women who this is a very personal

17 injury to begin with, and to compound that by putting them

18 through an unnecessary inquiry into their, their, their

19 mental state if it does not have any relevance we feel is

20 unnecessary and it provides opportunity -- when it's that

21 few, we have a mechanism in place for the defendants to

22 address those individually rather than to compel all women

23 that aren't asserting these claims to be required to provide

24 that information.

25         THE COURT:  All right.  Well, let me tell you how

1    I'm reading these documents.  I read these documents as

2    requiring the plaintiffs to sign authorizations that would

3    allow all of these records to be collected and, according to

4    Pre-Trial Order 17, submitted to a vendor, a records

5    collection vendor.

6         Then as I read Pre-Trial Order 17, the plaintiffs, when

7    it comes to psychiatric records, would have the first

8    opportunity to look at the psychiatric records and assert

9    any privilege that they feel attaches to those records.  And

10   they would have 10 days to do that and produce a privilege

11   log.

12        If they fail to produce a privilege log in that 10-day

13   period, then the vendor automatically releases the records

14   to the defendant.  That's what Pre-Trial Order 17 says.

15        But even Pre-Trial Order 17 presumes that the

16   authorizations are going to be signed and the records are

17   going to be produced.  I don't see anything in either of

18   these pre-trial orders that talked about redactions being

19   made or authorizations being withheld or records not being

20   produced or somebody signing an authorization and then

21   saying, "Don't produce the records."  None of that is

22   allowed under either one of these pre-trial orders.

23        I think the, the intention of the pre-trial order is

24   that all of the records will be produced and collected and

25   will be sitting somewhere.  I think the other intention of

1   these pre-trial orders is that this was all to be done a

2   long time ago.

3        Even if you look at, you know -- well, first of all, if

4   you start with Pre-Trial Order 17, this should have been

5   done in 2012.

6        If you look at Pre-Trial Order 40, I think it should

7   have been done in 2013.

8        If you look at Pre-Trial Order 217, which would be the

9   docket, third amended docket control order for wave one

10  cases, the fact sheet, including the authorization, should

11  have been completed by October of 2015, which means that the

12  records should have been produced per HIPAA within we'll say

13  a couple of months to give, give us enough time to get the

14  authorizations to the healthcare providers, which means by

15  the end of 2015 any objections, any privilege logs should

16  have already been prepared and should have been produced to

17  the defendant.

18       The way I read these orders, if there weren't privilege

19  logs submitted by plaintiffs by the end of 2015 at the very,

20  very latest, then all of these records should have been

21  produced by now.

22            MR. AYLSTOCK:  Your Honor, --

23            THE COURT:  That's assuming that you can withhold

24  the psychiatric records.  I don't think there's been

25  anything in any of these orders that even implies in any way

1    that these records are not going to be relevant.

2        It looks to me like there was some presumption on the

3    part of both sides that all of these records were going to

4    be at least relevant for the purposes of discovery, perhaps

5    not admissible by the time you get to the trial.  But for

6    the purposes of discovery, they were all going to be

7    collected and available subject to protective orders.

8        So I'm having a hard time understanding why the

9    plaintiffs -- why there is any plaintiffs' lawyer

10   withholding any of these documents.  And if that's

11   happening, it is way too late for that to be happening under

12   any of these orders.

13           MR. AYLSTOCK:  Your Honor, this is Bryan Aylstock.

14   May I jump in?

15           THE COURT:  Yes.

16           MR. AYLSTOCK:  I think what the Court's missing

17   is -- you're exactly right.  PTO 17 was entered eons ago it

18   seems like.  For me it's been two kids ago.

19       But what, what unfortunately happened after PTO 17 and

20   these plaintiff profile forms along with the same

21   authorizations were sent to Ethicon, they sat in Ethicon's

22   files.  All of the medical records that were in the

23   possession of the plaintiff had to be produced.  The

24   procedure file form had to be done.  The authorizations had

25   to be done.

1    Ethicon chose not to go, ever order those records until

2    they got set for a wave.  So we did not have -- and as

3    you're aware, PTO 17 and PTO 40 were negotiated PTOs.  And

4    we negotiated, because we anticipated there would be issues,

5    a specific provision that allowed for any plaintiff or

6    plaintiffs' attorney to assert a privilege in particular to

7    psychiatric related records and to, again, within 10 days

8    have a privilege log that would allow that plaintiff or

9    plaintiffs' attorney to assert a privilege if done timely

10   and, and redact or withhold that information.

11   We completely agree with Your Honor.  In fact, Ms.

12   Baggett and I have had specific conversations with counsel

13   out there saying, no, you have to give the authorizations

14   that are required.  But -- and, and they wanted to bring it

15   to the Court initially.

16   And what we said is, no, no, the way that it works, and

17   what was specifically negotiated by us on your behalf with

18   Ethicon, is you give them the authorization so the records

19   could be ordered and, as exactly you said, sit somewhere so

20   that we wouldn't have any delay, but you would have the

21   opportunity on behalf of your client to assert a recognized

22   privilege.  And, as you know, in a lot of states there's a

23   very high burden on some of these mental health issues.

24   Now, the example Mr., Mr. Bernardo gave, you know, I

25   see his point.  Maybe that's one example.  And I guess it is

1   one example.  But the idea that all of a sudden we need

2   clarification because this is a rampant issue is foreign to

3   me because we fixed these issues when, when we were notified

4   by Ethicon by doing our jobs as lead counsel and telling

5   them, "No, no, no, this is how you do it and this is how

6   you -- if you have the objection, this is how you object."

7       The fact that Ethicon chose not to order these records

8   until well after the wave, you know, much less PTO 17,

9   they're very quick to, to run to the Court for sanctions and

10  ask these women to pay a thousand dollars or have their case

11  dismissed if they don't sign a form or something.  But

12  they're not very quick to go order the records.  And that's

13  really the fundamental problem here.

14          THE COURT:  Well, all I know is that under the,

15  under the third amended docket control order, the fact

16  sheets, meaning the fact sheets with the authorizations,

17  were to be provided by October 19, 2015.

18      What I understood Ethicon to say is they have cases now

19  where they're not getting these signed authorizations, or

20  they're getting signed authorizations and when they go to

21  collect the records, they're being told by the providers

22  that the plaintiff has essentially withdrawn the

23  authorization for psychiatric records, so they aren't

24  getting these records.

25      Now, if what's happening is the plaintiffs have filled

1    out their, their forms and they've filled out the

2    authorizations and they haven't withdrawn those

3    authorizations and the records are being produced and

4    they're sitting at a vendor, with a vendor as, as is, is

5    what is supposed to happen under the process set forth in

6    these prior pre-trial orders, and the, the plaintiffs are

7    filling out the privilege log within the ten-day period,

8    then we don't have a problem that I can see.

9        All of that should have been done by now.  And then if

10   there were issues with what was being claimed as a

11   privilege, that would be a different story.  I guess those

12   things could be brought to me.  I would think you would be

13   able to resolve those.  If not, we could address that.

14       But that's not what I'm hearing is happening right now.

15   What I'm hearing is that we're not even at that point.  What

16   I'm hearing is that plaintiffs are not doing the first part

17   of what they're supposed to do which is sign the

18   authorizations, allow the records to be collected, and fill

19   out the privilege log.

20       MR. AYLSTOCK:  In every instance that's been

21   brought to our attention, Your Honor, we have made sure that

22   that's happened.  So I'm just at a loss as to what the issue

23   is as well because I think it's all been happening.  If it

24   hasn't, I totally agree, you know, with the provision that

25   we negotiated that sanctions could be appropriate.  But they

1    need to tell us or bring it to the Court's attention, not

2    seek clarification on a negotiated order when we all know

3    what we have to do.

4              MR. BERNARDO:  Your Honor, if I may, --

5              THE COURT:  Yes.

6              MR. BERNARDO:  First of all, in fairness, Bryan,

7    you've not been on any of these phone calls and we've had a

8    number of them with Renee.  And I started this call by

9    complimenting Renee because I do think Renee's really been

10   trying to help here.

11        And I pointed out that there are a variety of problems

12   ranging from people refusing to sign -- and there still are

13   people refusing to sign.  There are a lot of cases that are

14   coming through this process.  There are 600 in all.  Just as

15   we get some resolved, we get another volume of others that

16   aren't getting resolved but that are coming up.

17        And what I'm trying to do -- and, and Your Honor's

18   comments were very helpful and I think will be helpful to us

19   going forward -- is to avoid having to spend as much time as

20   we're all spending trying to get what should automatically

21   be coming.

22        So there are still plaintiffs who are taking the

23   position that they're not going to sign or not getting back

24   to us at all.

25        But the point that I want to focus on, Your Honor, is

1    what you said earlier.  And maybe I'm misunderstanding.  But

2    I think there's a difference between someone signing their

3    authorization and doing what they're supposed to and

4    providing the records to Marker's or whatever, whatever

5    facility it goes to, and then with respect to selected or

6    specifically identified documents saying, as we do in our

7    side, "This has a specific privilege and we object to it on

8    this basis," or, "We're redacting this because of this."

9        But that's not what's happening.  It's a wholesale,

10   "You're not entitled to it.  We're objecting to giving you

11   any mental health records," and Ms. Baggett said the word,

12   "because they're not relevant."

13       And I think that's what was helpful in Your Honor's

14   comments, if I understood them, is we're not talking about

15   relevance here.  We're talking about if there is a

16   recognized privilege that applies to a particular document

17   or a portion of documents that gets logged.

18       I've not seen a privilege log.  I've not heard of a

19   privilege.  I've gotten, "We're not going to make these

20   available to you.  We'll give them to the records facility,"

21   sometimes, and that's not always the case, but, "They're

22   just not relevant."

23       And that's where we're seeking the clarification

24   because I don't think Your Honor wants to be looking at two

25   dozen motions from Ethicon explaining each fact and

1    circumstance of why we think mental health records are

2    relevant.

3         If there are some discrete pages from them that there's

4    an issue of, okay, I understand we have to deal with that

5    and fight that or argue that or choose not to.  But to say

6    that we're not entitled to any of it because they believe

7    that they haven't made a particular claim and, therefore,

8    they're not relevant I don't think is the way this process

9    was intended to work.  And that's what I took from your

10   comments earlier.

11        THE COURT:  I absolutely agree.  The way I read

12   Pre-Trial Order 17, it appears to me that there was already

13   a presumption made that these records would be relevant, all

14   of these records, because the only exception that was made

15   was that if somebody felt there was a privilege that

16   attached to these psychiatric records, which there are

17   different, as you pointed out, Mr. Alystock, different

18   states have different rules that apply specifically to

19   psychiatric records.

20        So if because of the state that the plaintiff was from

21   there was some unique statute or something that, that made a

22   privilege attach to the record, that the plaintiff would

23   have 10 days once the records were submitted to the vendor

24   to assert a privilege, a privilege.

25        There's not anything in here about asserting an

1    argument that the record's not relevant.  It appears to me

2    that there was already some agreement made that these

3    records were going to be produced, and they were going to be

4    relevant for purposes of discovery, not necessarily

5    admissible.

6        But I, I think -- I mean, this is the way I read these

7    orders, that all of these records are to be produced.  And

8    the only reason they might not be would be if there is a

9    privilege that attaches to a psychiatric record that is

10   placed on a privilege log within 10 days of the record being

11   given to the vendor.  And if that's not done, then the

12   vendor automatically releases all those records to the

13   defendant.

14       So if somebody's withholding records, a whole group of

15   psychiatric records because they say they're not relevant, I

16   don't think they can do that.  They should not be doing

17   that.  That to me violates the whole premise of these

18   pre-trial orders.

19           MR. AYLSTOCK:  Okay.  I, I think that's very

20   helpful, Judge, and we will spread the word far and wide.

21           MR. BERNARDO:  And, Your Honor, we too agree.  I

22   think, I think your words here on the transcript will assist

23   the parties in trying to cut through this.  There may be

24   some residual issues, but that's different where if there

25   are residual issues, obviously we can brief those in just a

1    short motion to compel.  But I think this will save a lot of

2    time on both sides as far as putting together motions with

3    respect to relevance on these records.  So I thank you, Your

4    Honor.

5              THE COURT:  All right.  Is there anything else you

6    think we need to do?

7              MR. BERNARDO:  If I may, Your Honor, may we

8    reserve on that and meet and confer with plaintiffs?  My gut

9    reaction is, no, that I think your comments here were

10   sufficiently specific that we should be able to cut through

11   this.  But if we feel afterward after talking with

12   plaintiffs' counsel that some supplemental order or

13   something else would be helpful, may we come back to you?

14             THE COURT:  Certainly.

15             MR. BERNARDO:  Okay.  I'm just trying to spare you

16   having to put together an order if there may not need to be

17   one.

18             THE COURT:  Okay.  No, that -- anything you can do

19   to spare me from having to put together an order I

20   appreciate.

21             MR. AYLSTOCK:  Thank you, Your Honor.

22             MR. BERNARDO:  Especially on a Friday of a holiday

23   weekend.

24             THE COURT:  You all have a nice holiday as well.

25   Thank you.

1          MR. BERNARDO:  Thank you, Your Honor.

2      (Proceedings concluded at 2:02 p.m.)

3

4                          * * * * *

5

6

7          I, Lisa A. Cook, Official Reporter of the United

8   States District Court for the Southern District of West

9   Virginia, do hereby certify that the foregoing is a true and

10   correct transcript, to the best of my ability, from the

11   record of proceedings in the above-entitled matter.

12

13

14          s\Lisa A. Cook                    May 31, 2016

15             Reporter                           Date

16

17

18

19

20

21

22

23

24

25