# EXHIBIT E

Confidential - Subject to Protective Order

```
 1              IN THE UNITED STATES DISTRICT COURT
 2           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 3                       CHARLESTON DIVISION
 4                            - - -
 5    IN RE: ETHICON, INC. PELVIC   :MDL NO. 2327
      REPAIR SYSTEM, PRODUCTS       :
 6    LIABILITY LITIGATION          :VOLUME II
                                    :
 7
             THIS DOCUMENT RELATES TO ALL CASES AND
 8              VARIOUS OTHER CROSS-NOTICED ACTIONS
 9           CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
10                            - - -
11                       January 8, 2014
12                            - - -
13           Transcript of the continued deposition of
14    THOMAS A. BARBOLT, Ph.D., called for Videotaped
15    Examination in the above-captioned matter, said
16    deposition taken pursuant to Superior Court Rules of
17    Practice and Procedure by and before Michelle L.
18    Gray, a Certified Court Reporter, Registered
19    Professional Reporter, and Notary Public, at the
20    offices of Riker Danzig Scherer Hyland & Perretti
21    LLP, Headquarters Plaza, One Speedwell Avenue,
22    Morristown, New Jersey, commencing at 9:07 a.m.
23
                              - - -
24                    GOLKOW TECHNOLOGIES, INC.
                877.370.3377 ph| 917.951.5672 fax
25                      deps@golkow.com
```

Confidential - Subject to Protective Order

```
 1   after ten years revealed no changes in material.
 2               That's not actually true, is it?
 3               MR. THOMAS:  Object to the form of
 4   the question; scope.
 5   BY MR. THORNBURGH:
 6       Q.      That statement that Ethicon had
 7   previously implanted Prolene suture into dogs, and
 8   explants after ten years revealed no changes in the
 9   material, is not a true statement, is it?
10               MR. THOMAS:  Object to form; scope.
11               THE WITNESS:  There were three
12   elements, three important elements in that study.
13               The key elements, as we've discussed
14   earlier, were molecular weight and tensile strength.
15   And in that seven-year dog study, which -- which is
16   referenced as ten year here, there was no impact on
17   molecular weight, nor tensile strength.
18   BY MR. THORNBURGH:
19       Q.      There was surface cracks observed on
20   the surface layer of the polypropylene in that
21   study, correct?
22       A.      Surface changes were observed in some
23   of the fibers in some of the dogs.
24       Q.      Are you telling the ladies and
25   gentlemen of the jury that when the outer surface of
```

Confidential - Subject to Protective Order

```
 1   the polypropylene fibers crack and peel away from
 2   the surface, that that is not degradation?
 3              MR. THOMAS:  Object to the form of
 4   the question.
 5              THE WITNESS:  I am telling listeners
 6   that the key endpoint of adverse effects of
 7   degradation are molecular weight and tensile
 8   strength, both quantitative measures, not subjective
 9   assessments of surface changes, but quantitative
10   measures that hold great weight and suggest that
11   there's no degradation to the Prolene fiber in terms
12   that are significant.
13   BY MR. THORNBURGH:
14        Q.    Do you agree there's been studies
15   conducted that show that when the polypropylene
16   fiber surface or lose -- or fragments come off of
17   the polypropylene surface as a result of
18   degradation, that that increases the inflammatory
19   response?
20              MR. THOMAS:  Object to the form of
21   the question.
22   BY MR. THORNBURGH:
23        Q.    You've seen those studies, haven't
24   you?
25              MR. THOMAS:  Object to the form of
```

Confidential - Subject to Protective Order

```
 1                MR. THOMAS:  Object to the form of
 2   the question; scope.
 3                THE WITNESS:  2007?
 4   BY MR. THORNBURGH:
 5        Q.      I'm sorry.  October 29, 1997.
 6   Correct?
 7        A.      Okay.  That would be the time of the
 8   submission of the 510(k) for TVT original or
 9   retropubic.
10        Q.      Right.  So October 29, 1997 Ethicon
11   submitted to the FDA the 510(k) submission related
12   to the TVT-Retropubic, correct?
13        A.      Yes.
14        Q.      And in that submission, Ethicon
15   stated that the material is not absorbed, nor is it
16   subject to degradation.
17                Do you see that?
18        A.      Yes.
19        Q.      But as we've already established, by
20   1990 and 1992, Ethicon was aware from its own
21   internal studies that the Prolene in the TVT was
22   subject to surface degradation, correct?
23                MR. THOMAS:  Object to the form of
24   the question.
25                THE WITNESS:  We've talked a lot
```

Confidential - Subject to Protective Order

1  about this before.
2  BY MR. THORNBURGH:
3      Q.      Correct?
4      A.      And as I indicated before, there were
5  three endpoints in that experiment that are
6  important: Subjective observations, observations by
7  a human being about what's on the surface of the
8  suture, and then quantitative assessments of
9  molecular weight, and quantitative assessments of
10 tensile strength.
11              In terms of surface changes, surface
12 changes were reported. In terms of molecular weight
13 and tensile strength, no impact on either of those
14 parameters, which would lead one to conclude that
15 there's no evidence of degradation that's
16 meaningful.
17              MR. THORNBURGH: Move to strike;
18 nonresponsive.
19 BY MR. THORNBURGH:
20     Q.      Sir, do you think it's okay for
21 Ethicon to misrepresent information in a 510(k)
22 submission to the FDA regarding surface cracking?
23              MR. THOMAS: Object to the form of
24 the question.
25              THE WITNESS: I don't think they've

Confidential - Subject to Protective Order

```
 1

 2                      CERTIFICATE

 3

 4

 5            I HEREBY CERTIFY that the witness was

 6    duly sworn by me and that the deposition is a true

 7    record of the testimony given by the witness.

 8

 9            It was requested before completion of

10    the deposition that the witness, THOMAS A. BARBOLT,

11    Ph.D., have the opportunity to read and sign the

12    deposition transcript.

13

14

15

16       _____

17       MICHELLE L. GRAY, a Registered
         Professional Reporter, Certified
18       Shorthand Reporter and Notary Public
         Dated:  January 16, 2014

19

20

21            (The foregoing certification of this

22    transcript does not apply to any reproduction of the

23    same by any means, unless under the direct control

24    and/or supervision of the certifying reporter.)

25
```