THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>WAVE 2 CASES LISTED IN EXHIBIT A TO DEFENDANTS' MOTION | Master File No. 2:12-MD-02327<br>MDL 2327<br><br>JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**REPLY IN SUPPORT OF MOTION TO EXCLUDE GENERAL-CAUSATION TESTIMONY OF NATHAN W. GOODYEAR, M.D.**

Based on Plaintiffs Tina and Kenneth Morrow's opposition, Ethicon's motion can be easily resolved: the motion should be granted because Plaintiffs confirm that Dr. Goodyear's testimony is limited to his *specific*-causation opinions and his testimony as a treating physician. *See* Pls.' Resp. (Dkt. 2554) at 1 ("Dr. Goodyear was retained by plaintiffs to render case-specific opinions . . . ."); *id.* at 2 ("Dr. Goodyear is appearing in the Morrow case as both a case-specific expert witness and a key fact witness . . . ."); *id.* at 2 ("Dr. Goodyear's actual opinions are case-specific to Mrs. Morrow . . . ."); *id.* at 4 (stating Dr. Goodyear's "opinions are case-specific and apply only to Tina Morrow"); *id.* at 5 (conceding Dr. Goodyear is not offering opinions about Plaintiffs' design-defect claims, "about which other experts have given opinions and testimony").

Plaintiffs' statements could not be any clearer. Despite disclosing Dr. Goodyear as one of their general-causation experts, Dr. Goodyear will not be offering any opinions on general causation, including opinions related to design defect. Instead, he will be testifying only (1) as a fact witness in his role as Ms. Morrow's treating physician, which Ethicon does not oppose; and

(2) as a specific-causation expert, which Ethicon opposes in a separate motion (*see Morrow v. Ethicon, Inc.*, No. 2:12-cv-00378, Dkt. 163).

Despite these concessions, Plaintiffs go on to respond to several of Ethicon's general-causation arguments. These should be rejected because:

- **Dr. Goodyear is not qualified to give general-causation opinions.** His transition into a nonsurgical wellness profession does not make him presently qualified to give general-causation opinions.

- **Alternative procedures are not alternative designs sufficient to support a claim for design defect.** Plaintiffs admit that the availability of alternative procedures has no bearing on their claims for design defect and that, in any event, Dr. Goodyear will not be offering opinions about design defect.

- **Dr. Goodyear's underreporting opinion has no reliable basis.** Whether Dr. Goodyear's "memory" is reliable is not at issue. What is at issue is whether his underreporting opinion has a reliable basis. It does not. Dr. Goodyear ultimately agrees that his own erosion rate is consistent with what is reported in Ethicon literature.

- **Plaintiffs' warnings argument in opposition misstates and goes beyond Dr. Goodyear's report.** Contrary to Plaintiffs' argument, Dr. Goodyear's warnings opinions are limited to criticizing the written warnings that accompany the mesh products, whether characterized as Instructions for Use or "directions for use." His attempt to broaden his warnings opinions to challenge the adequacy of *all* information provided to him by any source, is a new opinion not contained in his Rule 26 report.

- **Plaintiffs admit that Dr. Goodyear will testify that the mesh products are unreasonably dangerous yet claims these are not legal conclusions.** They are.

- **Inadmissible corporate-knowledge opinions are not limited to testimony about "hidden motives" or "secret intentions."** Instead, testimony about what a corporation knows or should have known is not the subject of expert testimony. The jury is equally capable of drawing conclusions from company documents about what a corporation knows.

As more fully explained below, all of these arguments should be rejected.

**ARGUMENTS AND AUTHORITIES**

**I.    Dr. Goodyear is not qualified to give general-causation opinions.**

Plaintiffs' attempt to paint Dr. Goodyear as an "expert" in all things mesh falls flat. He only practiced gynecological surgery for a total of nine years, from 2004 to 2013. Ex. B to Defs.' Mot. (Dkt. 2437-2), Goodyear Report at 1. And although he may have been a preceptor for Ethicon for three of those years, he was never "endorsed" as an expert for this litigation and his nine-year surgical career does not put him on par with other practicing physicians who practiced in this field their entire careers and then "retired." *See* Pls.' Resp. (Dkt. 2554) at 3-4. Plaintiffs' reliance then on cases where professionals have been found qualified to offer expert testimony after a long and distinguished career in their respective fields is misplaced. *Id.*

And, as Dr. Goodyear readily admits, he did not retire. *Id.* at 3. Instead, he transitioned his practice to an entirely new interest area—wellness and nutrition. Defs.' Mem. (Dkt. 2456) at 3. Although Plaintiffs claim his "practice remains devoted to female pelvic gynecology" (Pls.' Resp. (Dkt. 2554) at 3), the deposition testimony cited as support for this statement tells an incomplete story. Completely excerpted, Dr. Goodyear testified:

> Q.    Okay. What are your other current focuses?
>
> A.    The majority of my clinical practice right now is dealing with ladies.
>
> Q.    Okay. And when you say "dealing with ladies," what does that mean?
>
> A.    That means it's a primary 60 percent pelvic gynecological practice. It's an office-based practice dealing with weight issues, dealing with menopausal issues, perimenopausal, PCOS, infertility, metabolic syndrome, hypertension, diabetes.
>
> Q.    Are you doing surgery?
>
> A.    No.

3

Ex. D to Defs.' Mot. (Dkt. 2437-4), Goodyear 3/3/16 Dep. Tr. 55:23-56:12.

The "female pelvic gynecology" to which Plaintiffs claim this deposition testimony supports (Pls.' Resp. (Dkt. 2554) at 3 (citing Ex. D to Defs.' Mot. (Dkt. 2437-4), Goodyear 3/3/16 Dep. Tr. 55:23-56:6)) is belied by the very next four lines of testimony showing that his transition to an "office-based" practice consists primarily of dealing with weight issues, menopausal and perimenopausal issues, hormonal and metabolic disorders, infertility, hypertension, and diabetes. Ex. D to Defs.' Mot. (Dkt. 2437-4), Goodyear 3/3/16 Dep. Tr. 56:6-56:10. Nothing in his current and most recent practice has anything to do with conditions that mesh products are used to treat. He has made "the whole move" from that field (*id.* at 60:1)—as is his right and prerogative to do so. But it does not make him qualified to give general-causation opinions on mesh products he used for a brief part of his career, but has not for some time now.

To be clear, Ethicon does not challenge his role as a fact witness. Indeed, he was Ms. Morrow's treating and implanting surgeon. He can certainly give fact-based testimony in that regard. But the limited number of years he practiced gynecological surgery, and then the remoteness of that practice, do not make him qualified by skill or expertise to give opinions about general causation for product design, which Plaintiffs have since conceded he will not do, or product warnings, which Dr. Goodyear does both in his report and in deposition.

## II. Plaintiffs concede that Dr. Goodyear will not be offering opinions on design defect.

Plaintiffs admit that any opinion about alternative procedures "simply has no bearing on" their claim for design defect. Pls.' Resp. (Dkt. 2554) at 5. In fact, they concede that Dr. Goodyear will not be offering any opinions on design defect because "other experts" will be giving those opinions and testimony. *Id.* Instead, Plaintiffs claim that Dr. Goodyear's alternative-procedures opinion is limited to alternatives "he could have (and would have) chosen to

4

perform" on Ms. Morrow had he been adequately warned about complications of the mesh products. *Id.* at 4-5. This is not an expert opinion, but merely a fact-witness opinion.

So limited, Ethicon withdraws its alternative-procedures argument. It nonetheless reserves the right to reassert this argument if Dr. Goodyear's seeks to offer opinions on design defect because alternative *procedures* are not alternative feasible *designs* that would support a claim for design defect under Louisiana law applicable here. *Hornbeck v. Danek Med., Inc.*, No. 99-30966, 2000 WL 1028981, at *1 (5th Cir. July 5, 2000), 226 F.3d 641 (Table) (noting Louisiana law requires evidence that an alternative *design* exists and thereafter rejecting plaintiff's argument that "alternative methods of treatment should have been used" because "alternative methods of treatment are not alternative designs" (emphasis in original)).

### III. Dr. Goodyear's underreporting opinion has no reliable basis.

Plaintiffs take issue with Ethicon challenging Dr. Goodyear's memory, claiming that Ethicon "brought forth no evidence to support [its] contention that Dr. Goodyear's memory is unreliable or even questionable." Pls.' Resp. (Dkt. 2554) at 6. But whether Dr. Goodyear's memory is reliable is not at issue. Instead, what is at issue is whether his underreporting opinion is the result of a reliable methodology. It is not.

Dr. Goodyear's underreporting opinion is premised on his testimony that he sees a 15 to 20 percent erosion rate, which is greater than the three to five percent he claims has been reported in "the literature that Ethicon supplied to [surgeons] through training and materials." *See* Ex. D to Defs.' Mot. (Dkt. 2437-4), Goodyear 3/3/16 Dep. Tr. 94:2-95:3. But Dr. Goodyear ultimately agrees that *Gynecare Prolift Surgeon's Resource Monograph*—the document given to surgeons who attended Ethicon courses—plainly states that "simple vaginal mesh exposure . . . occurs in approximately three to 17 percent of cases" and that this was the erosion rate he was told when he attended the Prolift training in April 2007. *Id.* at 162:12-163:6.

5

Plaintiffs' extended discussion then about what Ethicon told Dr. Goodyear and what he, in turn, told his patients—despite his own reportedly higher erosion rates—is immaterial. His underreporting opinion is premised on literature provided by Ethicon during its training that he claims is inconsistent with the erosion rate he saw in his practice. As shown, and as Dr. Goodyear ultimately admitted, that literature is not inconsistent. And because it is not, the premise for his underreporting opinion lacks a reliable foundation and should be excluded.

### IV. Plaintiffs' warnings argument is not supported by Dr. Goodyear's report and should be rejected.

Plaintiffs take issue with Ethicon's reference to "Instructions for Use" because they claim Dr. Goodyear makes no reference to that term and does not limit his warnings opinions "to any specific document." Pls.' Resp. (Dkt. 2554) at 8. On the contrary, Dr. Goodyear's report contains warnings opinions about the "directions for use" documents for both the Prolift and TVT-O products at issue here. *See* Ex. B to Defs.' Mot. (Dkt. 2437-2), Goodyear Report at 8. Indeed, for two full paragraphs, he outlines what he considers to be several deficiencies in the "directions for use" for each product. *Id.* Whether characterized as Instructions for Use (IFU) or "directions for use," Dr. Goodyear is referring to the written warnings that accompany these mesh products. For Plaintiffs to say now that Dr. Goodyear is not limiting his warnings opinions "to any specific document" (Pls.' Resp. (Dkt. 2554) at 8) misstates Dr. Goodyear's report.

To the extent then that Plaintiffs now seek to expand Dr. Goodyear's warning opinions to all information warnings from all sources "in toto" (*id.* at 9), those opinions go beyond what is contained in Dr. Goodyear's report and should be excluded as "new" opinions. In his report, his warnings opinions are limited to criticisms of the information contained in the written warnings documents, whether characterized as IFUs or "directions for use." *See* Ex. B to Defs.' Mot. (Dkt. 2437-2), Goodyear Report at 8. Any new opinions beyond those in his report should be excluded.

6

*Lewis v. Ethicon, Inc.*, No. 2:12-cv-4301, 2014 WL 186872, at *17 (S.D.W. Va. Jan. 15, 2014); *see also Tyree v. Boston Scientific Corp.*, 54 F. Supp. 3d 501, 582 (S.D.W. Va. 2014).

Plaintiffs do not otherwise challenge Ethicon's warnings arguments. They provide no authority that severity, frequency, and responsiveness information should be included in the mesh products' warnings. *Compare* Defs.' Mem. (Dkt. 2456) at 10, *with* Pls.' Resp. (Dkt. 2554) at 8-9. And they wholly fail to address Ethicon's argument that it has no duty to inform physicians how to treat their patients. *Compare* Defs.' Mem. (Dkt. 2456) at 10-11, *with* Pls.' Resp. (Dkt. 2554) at 8-9. As this Court has done before, it should not make Plaintiffs' argument for them and should summarily preclude the challenged warnings opinions. *See Ramsey v. Boston Scientific Corp.*, No. 2:13-CV-15223, 2016 WL 2939526, at *5 (S.D.W. Va. May 19, 2016) (excluding an expert where plaintiff "fail[ed] to provide any argument" responsive to the defendant's particular challenge, noting that the court "will not make arguments for the plaintiff").

## V. Dr. Goodyear's opinions that the mesh products are "unreasonably dangerous" are legal conclusions.

Although Plaintiffs acknowledge that an expert cannot render opinions as legal conclusions (Pls.' Resp. (Dkt. 2554) at 9), they unabashedly state that Dr. Goodyear offers opinions that the mesh products at issue are "unreasonably dangerous" in their warnings and warranties (*id.* at 4).

These opinions should be excluded. This Court has made clear on numerous occasions that drawing legal conclusions is within the province of the jury, not the subject of expert testimony. *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 629 (S.D.W. Va. 2013); *see also Eghnayem v. Boston Scientific Corp.*, 57 F. Supp. 3d 658, 691 (S.D.W. Va. 2014).

**VI.     Inadmissible corporate-knowledge opinions are not limited testimony about "hidden motives" or "secret intentions."**

Plaintiffs' concession that Dr. Goodyear will not testify about Ethicon's "hidden motives" or "secret intentions" (Pls.' Resp. (Dkt. 2554) at 11) is no concession at all and wholly misses the mark. This Court, as well as other courts around the country, has repeatedly precluded experts from testifying about corporate knowledge, motives, and state of mind because they are "not appropriate subjects of expert testimony." *See* Defs.' Mem. (Dkt. 2456) at 12-13.

But this is precisely the type of testimony Dr. Goodyear proposes to offer here. Indeed, Plaintiffs admit as much when they concede that Dr. Goodyear will testify about what information "was known to Ethicon." Pls.' Resp. (Dkt. 2554) at 12. This is improper. The jury is capable of making that determination without the imprimatur of expert testimony. *In re C.R. Bard, Inc.*, 948 F. Supp. 2d at 611, 629; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004). Dr. Goodyear should be precluded from offering this kind of testimony.

## CONCLUSION

For these reasons, Ethicon asks this Court to reject Plaintiffs' arguments in response and grant its Motion to Exclude the General-Causation Testimony of Nathan W. Goodyear, M.D.

Respectfully submitted,

ETHICON, INC. AND
JOHNSON & JOHNSON

*/s/ Rita A. Maimbourg*
Rita A. Maimbourg
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel:  216.592.5000
Fax:  216.592.5002
rita.maimbourg@tuckerellis.com

8

*/s/ David B. Thomas*
David B. Thomas (W.Va. Bar #3731)
THOMAS COMBS & SPANN PLLC
300 Summers St.
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
Tel:   304.414.1807
dthomas@tcspllc.com

*/s/ Christy D. Jones*
Christy D. Jones
BUTLER SNOW LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
Tel:   601.985.4523
christy.jones@butlersnow.com

## CERTIFICATE OF SERVICE

I certify that on August 18, 2016, I electronically filed this document with the clerk of the court using the CM/ECF system, which will send notification of this filing to CM/ECF participants registered to receive service in this MDL.

/s/ *Rita A. Maimbourg*
Rita A. Maimbourg
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel: 216.592.5000
Fax: 216.592.5002
rita.maimbourg@tuckerellis.com