IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION <br><br> ──────────────────────── <br><br> ETHICON WAVE 3 CASES LISTED IN EXHIBIT A OF DEFENSE NOTICE OF ADOPTION | Master File No. 2:12-MD-02327 <br> MDL No. 2327 <br><br> JOSEPH R. GOODWIN <br> U.S. DISTRICT JUDGE |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTION TO EXCLUDE CERTAIN OPINIONS OF JOHN MIKLOS, M.D.**

COMES NOW, the Plaintiffs in the above-styled action, and file their Response in Opposition to Defendants Ethicon, Inc.'s and Johnson & Johnson's (hereinafter referred to as "Defendants") Supplemental Motion to Exclude Certain Opinions of John Miklos, M.D. (hereinafter referred to as "Dr. Miklos"), and show the following:

**Argument and Citation of Authority**

I.  Having already considered and ruled on Defendants' motion to exclude Dr. Miklos, the only motion they were entitled to file under the controlling Docket Control Orders, the Court should deny this invalid motion for reconsideration on its face.

This "supplemental" motion, and similar "supplemental" motions filed against other of Plaintiffs' general experts, epitomizes the unnecessary waste of effort and resources that this MDL generally – and the Docket Control Orders governing this wave process specifically – were intended to avoid and prevent. The fundamental purpose of this MDL is to foster efficiency and economy for the parties and for the court system through coordination. This wave process is intended to allow multiple cases to move forward in a coordinated manner under the auspices of this Court prior to remand for trial (or for trial in the MDL court where appropriate).

1

The Docket Control Orders governing the "wave" process are plainly intended to eliminate duplication and redundancy of effort, to conserve judicial and party resources, and to promote efficiency – especially with respect to the coordination of "general," or common, expert discovery. The DCO's expressly require the coordination of general experts, and specifically mandate that "[i]nsofar as multiple plaintiffs utilize the same general causation expert or experts, those experts shall be deposed only once on the issue of general causation." (PTO #192, PTO #206 and PTO #210, ¶ A.3(b)). The DCO's further provide that "[f]or the filing of *Daubert* motions on general causation issues only, the parties are instructed to file one *Daubert* motion per expert in the main MDL…. Each side may file one response and one reply in the main MDL to each *Daubert* motion." (*Id.*, ¶ B.2).[1] The requirements of the DCO's are abundantly clear: one deposition and one *Daubert* motion per general expert.

    Consistent with the letter and spirit of the Court's orders, Plaintiffs identified several general experts applicable either to all wave cases, or else to all cases involving specific products. Dr. Miklos was identified as a general expert with respect to the TVT-Secur product. Pursuant to the Court's Docket Control Orders, Dr. Miklos was deposed only one time with respect to his general opinions, and the Defendants filed their one allowed *Daubert* motion challenging those general opinions. (Dkt. No. 2032). Plaintiffs generally responded to the Defendants' *Daubert* motion (Dkt. No. 2147), and the Defendants filed their reply. (Dkt. No. 2227). In Wave 2, the Defendants adopted their prior *Daubert* motion relative to Dr. Miklos and incorporated that motion by reference. (Dkt. No. 2413). The Wave 2 Plaintiffs likewise generally adopted their Response. (Dkt. No. 2518).

---

[1] While the DCO's refer to "general causation," the orders are intended to apply to all "general" experts, i.e., experts who intend to offer opinions relative to the plaintiffs generally or relative to all plaintiffs implanted with a certain product; that is certainly how the parties have treated those orders throughout this wave process.

The Court ruled on the Defendants' *Daubert* motion against Dr. Miklos (Dkt. No. 2669), along with Defendants' other *Daubert* motions filed against Plaintiffs' general experts.

Apparently dissatisfied with the Court's ruling (not only with respect to Dr. Miklos, but several other general experts, as well), the Defendants are essentially asking the Court for a do-over. Although presented as a "supplemental motion," the present motion improperly seeks reconsideration of the Court's *Daubert* ruling with respect to this witness. Dr. Miklos has not offered any new opinions. He has not provided any additional or supplemental expert report or information. Dr. Miklos has not been re-deposed on his general opinions. There is simply nothing "new" about Dr. Miklos's general opinions or testimony.

Moreover, there is nothing new about the Defendants' argument here. Defendants urge that "In addition to the arguments for exclusion raised in Wave 1, this Court should also preclude Dr. Miklos from offering opinions regarding alleged design defects in Ethicon's TVT-Secur product." (Dkt. No. 2847, p. 2). Specifically, Defendants argue that "Dr. Miklos's opinions on the allegedly defective design of the TVT Secur are unreliable," and that "Dr. Miklos is not qualified to opine on design defect." (*Id.*, pp. 2, 5). Defendants made both of these arguments already – *over five months ago*. (Dkt. No. 2032, p. 1 ("Dr. Miklos's opinions that the TVT Secur is defectively designed are unreliable because they are not based on any reliable methodology but are instead mere *ipse dixit*. Furthermore, Dr. Miklos lacks the requisite expertise to opine on certain characteristics of these products."); *Id.*, p. 5 (Defendants' *Daubert* Brief challenging "Dr. Miklos's criticisms of TVT Secur's alleged intolerable failure rates due to purported defects such as the insertion and retraction mechanism…."); *See also*, Dkt. No. 2227, p. 3 (Reply Brief raising

the same argument verbatim)).[2] Plaintiffs have responded to Defendants' *Daubert* challenge to Dr. Miklos's design defect opinions. (Dkt. No. 2147, pp. 4-6). Moreover, the Court has considered and ruled on this specific issue. (Dkt. No. 2669, pp. 6-7 (Noting that "Ethicon objects broadly to Dr. Miklos's testimony that the TVT-Secur is defectively designed…," and denying Defendants' motion as to Dr. Miklos's design defect opinions). Defendants simply disagree with how the Court ruled with respect to their *Daubert* motion against this witness, and they want a second bite at the apple.

Notwithstanding its inaccurate caption, this motion is plainly a motion for reconsideration. In *In re C.R. Bard, Inc.*, 948 F.Supp.2d 589, 649 (S.D.W.Va.2013), the Court recited the legal standard for a motion for reconsideration, stating:

> "[I]t is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly." *Mt. Hawley Ins. Co. v. Felman Production, Inc.,* No. 3:09–cv–00481, 2010 WL 1404107, at *2 (S.D.W.Va. Mar. 30, 2010)….
>
> [A]lthough a "motion for reconsideration under Rule 54(b) is not subject to the strictures of a Rule 60(b) motion," this district has been "guided by the general principles of Rules 59(e) and 60(b)" in determining whether a Rule 54(b) motion should be granted. *Shrewsbury v. Cyprus Kanawha Corp.,* 183 F.R.D. 492, 493 (S.D.W.Va.1998). The Fourth Circuit has recognized three grounds for amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.,*148 F.3d 396, 403 (4th Cir.1998). Such motions "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* Finally, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (quoting 11 Wright et al., Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1995)).

---

[2] The Defendants' present "supplemental" motion seeks to challenge precisely the same design defect opinions they unsuccessfully challenged in their initial motion. That is necessarily true because Dr. Miklos has not offered any new opinions or given any new testimony.

Defendants seek to employ the "extraordinary remedy" of a motion for reconsideration under the guise of a "supplemental motion." No matter what they call it, the result is the same: Defendants cannot properly ask the Court to rethink what has already been thoroughly argued, briefed and decided. Likewise, to the extent they claim to raise "new" arguments (they do not), Defendants cannot properly seek to assert arguments that could have been raised before, or present a new theory or defense that they had the ability to raise in their initial motion, but chose not to.[3] Both parties, and the Court and its staff, have already devoted substantial time and resources to these same issues, and they have been authoritatively decided. Respectfully, this "supplemental" motion is an unwarranted waste of time, effort and resources, and it should be denied.

## Conclusion

The governing DCO's allow only one deposition (by one designated attorney) and one *Daubert* motion per general expert. The intent of that express limitation is clear: to avoid the unnecessary duplication of effort, and consequent waste of time and resources, inherent in re-deposing and re-arguing over the same opinions from the same expert. The Court has ruled on Defendants' one *Daubert* motion with respect to Dr. Miklos. Defendants cannot seek to have the Court reconsider that ruling, and it cannot seek to assert allegedly "new" arguments that it could have but did not raise in its motion. Defendants' "supplemental" motion should be denied.

---

[3] The fact that Defendants did not seek to raise any "new" arguments with respect to this expert in their Wave 2 briefing, but instead adopted and incorporated their prior motion from Wave 1 (consistent with the letter and spirit of the Court's Docket Control Orders), is telling. Only after the Court ruled upon their motion did Defendants seek to raise what they inaccurately claim are "new" arguments (they are not). This further serves to demonstrate that this motion is merely an attempt to have the Court reconsider what it has already ruled upon. Even if they do raise any new arguments, however, the same result is warranted: the motion should be denied.

Dated: October 7, 2016Respectfully submitted,

/s/  D. Renee Baggett
Bryan F. Aylstock, Esq.
Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, Florida  32563
(850) 202-1010
(850) 916-7449 (fax)
E-mail:  rbaggett@awkolaw.com

/s/ Thomas P. Cartmell
THOMAS P. CARTMELL
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
tcartmell@wcllp.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 7, 2016, I electronically filed the foregoing document with the Clerk of the court using CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

              /s/ D. Renee Baggett_____
              D. RENEE BAGGETT
              Aylstock, Witkin, Kreis and Overholtz, PLC
              17 E. Main Street, Suite 200
              Pensacola, FL 32563
              850-202-1010
              850-916-7449
              Rbaggett@awkolaw.com