# Exhibit F

Maria A. Abadi, M.D.

```
 1            UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
 2                  CHARLESTON DIVISION
 3   *******************************
 4   IN RE:  ETHICON, INC. PELVIC       Master File No.
     REPAIR SYSTEM PRODUCTS             2:12-MD-02327
 5   LIABILITY LITIGATION
                                        MDL No. 2327
 6   *****************************
                                        JOSEPH R. GOODWIN
 7   This Document Relates to           U.S. DISTRICT JUDGE
     Plaintiff:
 8
     Barbara Kaiser
 9   Case No. 2:12-cv-00887
10   *******************************
11
12
13       DEPOSITION OF MARIA A. ABADI, MD
14
15            Thursday, March 31st, 2016
16                  10:27 a.m.
17
18       Held At:
19           Butler Snow
20           1700 Broadway
21           New York, New York
22
23
24   REPORTED BY:
25   Maureen O'Connor Pollard, RMR, CLR, CSR
```

1    you know, the status of the epithelium in the
2    bladder.  But, you know, in this case there was
3    no submission of anything from the bladder, so
4    there is no way to assess any urinary symptoms
5    pertaining to these tissues.
6         Q.   There are no histological findings in
7    any of the slides or specimen that would allow a
8    pathologist to draw that conclusion?
9         A.   Correct, there is no way to correlate
10   urinary symptoms with anything that we find in
11   these tissues.
12             MR. COMBS:  Dr. Abadi, thank you.
13             Tom, that is all the questions that I
14   have.
15             Do you have redirect?
16             MR. PLOUFF:  I do.
17             REDIRECT EXAMINATION
18   BY MR. PLOUFF:
19        Q.   Doctor, there were two areas that I
20   heard on the issue of methodology.  One had to
21   do with the methodology used to determine the
22   orientation of the mesh to -- let's see, it had
23   to do with the -- whether the mesh was folded in
24   the tissue, is that right, or how you'd have to
25   be able -- what kind of -- what the surgeon

Maria A. Abadi, M.D.

1  would have to do to tell you that?
2      A.  Yeah.  In order to establish the
3  position of the mesh in the tissues, or even the
4  shape of the mesh in the tissues, then the
5  surgeon has to guide the pathologist in that
6  regard.  Because when they excise the mesh --
7      Q.  Okay.
8      A.  Excuse me, I was trying to explain.
9          When you excise -- when the surgeons
10  excise the mesh they're pulling the mesh out.
11  So the way it comes folded, if it comes folded,
12  it has nothing to do with the way it was
13  positioned in vivo, because obviously they are
14  pulling, they're tugging, they are cutting with
15  scissors, they're cutting with cautery.  So the
16  mesh is being subjected to a lot of
17  manipulation.
18          So if the surgeon is truly interested
19  in telling the pathologist, or it's important in
20  that sense to give that information to the
21  pathologist so the pathologist can put it
22  together, then the specimen has to come down in
23  a different way.  It cannot come in three
24  regular pieces, and then you try to put Humpty
25  Dumpty together, it doesn't work that way.

1          The surgeon needs to give orientation,
2    he needs to position the mesh exactly how it was
3    in a cardboard designated correctly; otherwise,
4    everything that you do with that tissue, you
5    know, whatever orientation you give to it is
6    speculative, because you really don't know what
7    is right, what is left, how is it curved, is it
8    anterior, is it posterior.  You understand what
9    I mean?  It's all speculation.
10         Q.   So you've now explained the
11   methodology that a pathologist would have to
12   follow to come to some conclusion about the
13   position of the mesh in the tissue or the shape
14   of the mesh, correct?
15         A.   Correct, yes.
16         Q.   All right.  And you've also explained
17   a methodology for how to determine if the
18   urinary symptoms were related to the mesh, is
19   that correct?
20         A.   Right.  In a situation like this, you
21   can only tell what, you know, what you see in
22   that mesh, but you cannot correlate it with
23   urinary symptoms.
24         Q.   Okay.  And did this methodology that
25   you're referring to, I mean, is this something

Maria A. Abadi, M.D.

```
 1    STATE OF NEW YORK )

 2    COUNTY OF ERIE    )

 3              I, MAUREEN O'CONNOR POLLARD, RMR, CLR,

 4    and Notary Public in and for the State of New

 5    York, do certify that on the 31st day of March,

 6    2016, at 10:27 o'clock, the person above-named

 7    was duly sworn to testify to the truth of their

 8    knowledge, and examined, and such examination

 9    reduced to typewriting under my direction, and

10    is a true record of the testimony given by the

11    witness.  I further certify that I am neither

12    attorney, related or employed by any of the

13    parties to this action, and that I am not a

14    relative or employee of any attorney employed by

15    the parties hereto, or financially interested in

16    the action.

17              In witness whereof, I have hereunto

18    set my hand this 3rd day of April, 2016.

19

20              _____

21              MAUREEN O. POLLARD, Notary Public

22              My Commission Expires:  3/14/19

23              Realtime Systems Administrator

24

25
```