# **<u>Exhibit 1</u>**

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

_____

JO HUSKEY AND ALLAN HUSKEY,  :

       Plaintiffs,  : CASE NUMBER

  v.  : 2:12-cv-05201

ETHICON, INC., ET AL.,  :

       Defendants.  :

_____

TRANSCRIPT OF TRIAL - DAY FIVE

AUGUST 28, 2014

BEFORE THE HONORABLE JOSEPH R. GOODWIN,

UNITED STATES DISTRICT JUDGE

Court Reporter:      Carol Farrell, CRR, RMR, CCP, RPR
                          (304)347-3188
                          carol_farrell@wvsd.uscourts.gov

                          Anthony Rolland, CRR, RMR, RPR
                          (407)760-6023
                          rolland.crr@gmail.com

Proceedings recorded by machine stenography; transcript produced by computer.

A P P E A R A N C E S

FOR THE PLAINTIFFS:

EDWARD A. WALLACE, ESQUIRE
MARK R. MILLER, ESQUIRE
Wexler Wallace
55 West Monroe Street, Suite 3300
Chicago, IL 60603

FIDELMA L. FITZPATRICK, ESQUIRE
Motley Rice
321 South Main Street, Suite 200
Providence, RI 02903

JEFFREY M. KUNTZ, ESQUIRE
Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112

FOR THE DEFENDANTS:

CHRISTY D. JONES, ESQUIRE
Butler, Snow, O'Mara, Stevens & Cannada, PLLC
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157

DAVID B. THOMAS, ESQUIRE
PHILIP J. COMBS, ESQUIRE
Thomas Combs & Spann
PO Box 3824
Charleston, WV 25338-3824

```
 1                     I  N  D  E  X

 2
                         Direct   Cross   Redirect   Recross
 3    WITNESSES FOR
      THE PLAINTIFFS
 4
      JO BETH HUSKEY         19      69       97
 5
      JERRY BLAIVAS, M.D.   106     224
 6


 7
      EXHIBITS                            Ident.      Evid.
 8
      P-90017                                          20
 9    P-90016                                          23
      P-90019                                          29
10    P-90020                                          33
      P-588                                            43
11    P-91407C                             X
      D-10029                              X
12    P-91405B                                        105
      P-90001                                         107
13    P-90001A                                        149
      P-20176                                         158
14    P-20178                              X
      P-20180                                         170
15    P-21420                                         188
      P-21379                                         190
16    P-21433                                         192
      P-20015                              X
17    D-23591                                         234
      D-23605                                         242
18

19

20

21

22

23

24

25
```

Page 13

1  Illinois law, Jo Huskey, will say --
2          THE COURT REPORTER: I'm sorry. I didn't hear.
3          MR. WALLACE: I'm sorry.
4          The plaintiff, Jo Huskey, will say that the bills are
5  paid, and that is prima facie evidence that they're paid. So
6  that's our -- that's our point.
7          THE COURT: Yes, ma'am.
8          MS. JONES: I have no --
9          THE COURT: Dr. Blaivas, I reserve ruling on the
10 reliability of his opinion. I've had some briefing on it. I
11 still don't understand it, so I'm just going to flat ask the
12 question and see if I can get a handle on it before I confront
13 it.
14         MS. FITZPATRICK: Okay. I think Your Honor's
15 question was on the pubovaginal sling article that deals with
16 sphincteric deficiency. I'm going to try to explain this.
17         Stress urinary incontinence is a symptom of a few
18 different issues. For example, you can have stress urinary
19 incontinence from having a fistula or a hole in your bladder
20 wall. That would cause urine to leak because of that hole.
21 You can have stress urinary incontinence because you have an
22 overactive bladder that is constantly contracting and forcing
23 urine out. You can also have what Ms. Huskey has, what we're
24 dealing with in these particular cases, you can have stress
25 urinary incontinence because the sphincter between your

1   bladder and your urethra is not working properly, either
2   because the urethra has descended or for whatever reason.
3           Those sphincteric deficiencies are the reason that a
4   woman would get either the polypropylene sling or the
5   autologous fascial sling or a Burch procedure.
6           THE COURT: Okay. I understand your answer.
7           What's the objection? If sphincteric incontinence
8   is, in fact, what Ms. Huskey has, your objection relating to
9   this witness's testimony because the article only dealt with
10  sphincteric incontinence has now left me wandering in the
11  wilderness.
12          MS. JONES: I think that the objection is twofold,
13  Your Honor. The paragraph that Your Honor asked for or asked
14  us about out of Dr. Blaivas' report specifically is one that
15  starts out saying that pubovaginal slings using autologous
16  fascia are safer than synthetic slings.
17          And he cites two articles in support of that. One
18  was admittedly a mistake. It's an animal study, and he came
19  back and substituted that. One of those articles that he
20  cites is his own article. First, there's no showing in this
21  case that Mrs. Huskey has been diagnosed with ISD, and,
22  secondly --
23          THE COURT: Is that what is referred to -- what I
24  just referred to as sphincteric incontinence as opposed to the
25  other kinds of reasons?

1    MS. JONES: Stress urinary incontinence. And,
2 secondly, Your Honor -- I guess twofold. It's Dr. Blaivas
3 cites his own article in support of the statement, and
4 although he says that it remains the gold standard for other
5 surgeries for treating sphincteric incontinence, he never says
6 in here specifically that, one, they're safer than -- or been
7 established to be safer than the midurethral slings, and, B,
8 Your Honor, if you look at the citations or his references,
9 there's not a single reference dated later than 2005, after
10 the midurethral slings became available.
11    They also then cited the Wadie article, Autologous
12 Fascial Sling Vs. Polypropylene Tape, and, again, Your Honor,
13 this article does not support the statement that
14 midurethral -- that autologous fascial slings are safer than
15 the midurethral slings. In fact, what it says is autologous
16 fascial sling and TVT have comparable efficacy in treating
17 SUI, adverse-event-related differences are marginal in the
18 short term, a larger sample size and follow-up are needed to
19 reach a final conclusion, so --
20    THE COURT: What was the last part of that sentence?
21 After you said the differences are marginal in the short term,
22 the larger sample size what?
23    MS. JONES: I'm not sure I have it exactly. A larger
24 sample size and longer follow-up are needed to draw a final
25 conclusion.

1    THE COURT: All right. I'm not putting words in your
2 mouth. Is it your argument that, with your characterization
3 of those two articles, that there is an insufficient basis to
4 establish the reliability of the opinion he offers? Is that
5 what your point is?
6    MS. JONES: It is, Your Honor.
7    THE COURT: All right. Ms. Fitzpatrick.
8    MS. FITZPATRICK: Your Honor, there are a number of
9 articles on Dr. Blaivas' reliance list that go specifically to
10 this issue. What is a key issue in this case is both the
11 comparison of the efficacy, which is one issue, and the safety
12 of these two devices.
13    Dr. Blaivas has for 25-plus years put in autologous
14 fascial slings in hundreds, if not thousands, of patients. He
15 has followed those patients. He is relying on his experience
16 in doing this surgery and what he sees in the surgery, in this
17 way very similar to what Dr. Pramudji testified when she said,
18 "I've put in 300 polypropylene slings and I have very few
19 complications." He's going to testify based on his
20 experience.
21    He's also going to testify, because he's a primary
22 researcher in the area of autologous fascial slings. There
23 are few other people in this country who are more qualified
24 from an experience standpoint, a research standpoint, and a
25 publication standpoint on opining in peer-reviewed articles

Page 17

1  about the efficacy of the autologous fascial sling as well as
2  the safety and the complications that you see from those
3  autologous fascial slings.
4           I will, I believe, more than adequately lay a
5  foundation for those particular opinions in his testimony
6  that's based on -- my understanding here was that the issue
7  was the particular article that we had an issue and whether
8  sphincteric deficiency was equivalent to the type of SUI that
9  we are seeing in this case.  And the answer to that, and
10 Dr. Blaivas can give you that, is a resounding yes.  That's
11 exactly what he's talking about here.
12          So I think that the article is precisely on point, I
13 think his experience, I think his own research, I think the
14 literature is going for him, a more than sufficient foundation
15 for him to opine the --
16          THE COURT:  The literature -- the literature that is
17 on his reliance list beyond the article he wrote?
18          MS. FITZPATRICK:  There is literature on his reliance
19 list beyond the article that he wrote.
20          THE COURT:  Which is peer-reviewed literature
21 supporting his opinion?
22          MS. FITZPATRICK:  That is correct, Your Honor.
23          THE COURT:  Okay.  Well, I'm inclined to allow it.
24 I'll just to have wait until I hear it now.  There's still
25 some question in my mind, I'll wait and see what happens.

1  Back in the dark ages, that's the way we used to let witnesses
2  actually testify, was whether they could do it on the stand or
3  not, not with advisory rulings a year ahead.
4           Everything else ready to go?  If --
5           MS. FITZPATRICK:  Your Honor, could you give me two
6  minutes to make some arrangements for Dr. Carey?
7           THE COURT:  Oh, absolutely.  Absolutely.  The jury
8  won't be here for a couple minutes.
9           MS. FITZPATRICK:  Okay.  I appreciate that.  Thank
10 you.
11          THE COURT:  I'll be right back.  Court stands in
12 recess.
13          (A recess was taken at 8:59 a.m.)
14          (The jury entered the courtroom at 9:06 a.m.)
15          COURT SERVICES OFFICER:  All rise.
16          THE COURT:  Good morning.
17          RESPONSE:  Good morning.
18          THE COURT:  Call your next witness, Mr. Wallace.
19          MR. WALLACE:  Your Honor, we would like to call to
20 the stand Jo Beth Huskey.
21          THE COURT:  All right.
22          THE DEPUTY CLERK:  Ms. Huskey, if you will please
23 raise your right hand.
24 (JO BETH HUSKEY, HAVING BEEN DULY SWORN, TESTIFIED AS
25 FOLLOWS:)