**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM  PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327 MDL 2327 |
| THIS DOCUMENT RELATES TO:<br><br>Ethicon Wave 3 cases listed in Exhibit A to Plaintiffs' Motion | JOSEPH R. GOODWIN U.S. DISTRICT JUDGE |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
TO EXCLUDE THE GENERAL CAUSATION OPINIONS
OF DEFENSE EXPERT CHRISTOPHER RAMSEY, M.D.**

Plaintiffs respectfully submit this Reply Brief in support of their motion to exclude the opinions of Christopher Ramsey, M.D.  Plaintiffs moved to exclude Dr. Ramsey's opinions in Wave 1, and then adopted that motion in Wave 3.  Defendants filed a substantive response, so Plaintiffs are filing this reply to address issues raised by the Defendants' brief and by this Court's order regarding Plaintiffs' Wave 1 motion.

In its Wave 1 order, the Court held that Dr. Ramsey was qualified to opine about the safety and efficacy of Ethicon's products, but it reserved ruling on whether Dr. Ramsey's clinical experience provides a sufficient foundation for him to give reliable testimony.  Given that the burden is on the proponent of the evidence challenged by *Daubert*, Plaintiffs request that the Court reconsider that decision and hold that Defendants have not met their burden to establish that Dr. Ramsey's methodology in reaching his safety and efficacy opinions was reliable.  Alternatively, the Court should again reserve that issue for trial.

1

4818-0833-6934, v. 1

As to warnings, the Court held that Dr. Ramsey was not qualified to opine about the sufficiency of Ethicon's warnings, and the Court should again so hold.  Ethicon now seeks to limit that holding, such that Dr. Ramsey could still opine as to whether the relevant risks were well known to physicians.  The Court should reject that argument.  Such an opinion is unsupported, and it is essentially a back-door effort to opine about the sufficiency of Ethicon's warnings.

For these reasons, Plaintiffs respectfully request that the Court exclude Dr. Ramsey's opinions as to safety and efficacy, as to the sufficiency of Ethicon's warnings, and as to any assertions that warnings proposed by the Plaintiffs were within the common knowledge of physicians using the devices.

## ARGUMENT

I. **Defendants have not met their burden to demonstrate that Dr. Ramsey's clinical experience supports his opinions, so this Court should conclude that Dr. Ramsey's methodology was not reliable under *Daubert*.**

Plaintiffs' motion attacks both Dr. Ramsey's qualifications and the methodology used in reaching opinions supporting the safety and efficacy of Ethicon's products.  The Court ruled that Dr. Ramsey is qualified to opine on that topic.  While Plaintiffs disagree, they will not focus this brief on trying to change that ruling.  However, Dr. Ramsey's limited qualifications do bear on the central inquiry, which is whether his clinical experience is sufficient to support the reliability of his methodology.

### A. **This Court should again conclude that Dr. Ramsey's limited literature review does not support the reliability of his opinions.**

In assessing reliability, the Court agreed with Plaintiffs' first argument, which was that Dr. Ramsey's literature review does not reliably support his opinions.  As this Court noted, "[i]nsofar as it is built on medical literature, the foundation of Dr. Ramsey's expert testimony is

2

shaky.  Upon review, Dr. Ramsey focused mostly on medical literature provided by Ethicon, and he ignored articles contrary to or calling into question his opinion." *In re: Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2327, 2016 WL 4582227, at \*3 (S.D. W. Va. Sept. 1, 2016) (citing *Sanchez v. Boston Sci. Corp.*, No. 2:12-cv-5762, 2014 WL 4851989, at \*11 (S.D. W. Va. Sept. 29, 2014)).  Thus, the Court focused on whether Dr. Ramsey's personal experience was sufficient to support the reliability of his opinions.

The Court should again conclude that Dr. Ramsey's literature review does not support the reliability of his opinions.  Ethicon's response brief does not contest either of the Court's points: that Dr. Ramsey mostly reviewed literature provided by counsel, and that he failed to consider articles opposing his viewpoint.  Rather, Ethicon asserts that Dr. Ramsey relied in part on articles that he has reviewed as part of his practice.[1]  In reciting Dr. Ramsey's testimony, Ethicon omits an important piece of information.  Although Dr. Ramsey claimed to rely in part on articles from his regular practice, he could not name one.

Q.      How did you get the medical literature?

***

B.      By reading the journals, by going to conferences.

Q.      Okay. Turn to page -- so you actually went and retrieved these articles listed in the medical –

A.      So -- most of these were given to me, but I –

Q.      Most of these were given to you by Ethicon?

A.      -- but I knew what they -- I knew what a lot of them are.

***

Q.      Ethicon physically gave you these documents?

---

1 *See* Def. Resp. Br. at 3.

4818-0833-6934, v. 1

A.      Yes.

Q.      And they're the ones who decided which articles to give you, correct?

A.      Not all of them, no.

Q.      Sometimes you asked for some articles?

A.      Yes.

Q.      Which ones?

A.      Gosh, I can't –

Q.      As you sit here today, you can't name a single article?

A.      I can't -- I can't name a single article that I asked for specifically.[2]

The rest of Defendants' Section II.A argument asserts that a physician's clinical experience is also relevant to the inquiry.[3]  Plaintiffs agree with that general point but dispute the assertion that Dr. Ramsey's clinical experience is sufficient to pass *Daubert*.

> **B.      Defendants have not met their burden to prove that Dr. Ramsey, who mainly treats men, has sufficient clinical experience to pass *Daubert*.**

An important initial point, in evaluating Dr. Ramsey's clinical experience, is that the proponent of the evidence has the burden of persuasion when a *Daubert* motion is filed.  *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) ("The proponent of the testimony must establish its admissibility by a preponderance of proof."); *see also See Koger v. Norfolk S. Ry. Co.*, No. 1:08-0909, 2010 WL 692842, at *1 (S.D. W. Va. Feb. 23, 2010) (stating that "the burden of showing the reliability of the opinion rests on the proponent of the opinion, who must show admissibility by a preponderance of the evidence").  While this Court's prior ruling is not binding, the Court's uncertainty as to whether Defendants had established Dr.

---

[2] Ramsey Dep., Ex. B to Dkt. No. 2117, at 45:24-47:4, 55:8-57:5.  Where applicable, Plaintiffs will cite to exhibits already filed with their Wave 1 motion to exclude Dr. Ramsey.
[3] Def. Resp. Br. at 4.

Ramsey's credentials suggests that Defendants did not meet that burden.  *In re: Ethicon*, 2016 WL 4582227, at *3 ("I am without sufficient information at this time to draw the fine line between reliable and unreliable expert testimony on safety and efficacy.").

Though this Court has held that Dr. Ramsey's qualifications are sufficient, several of the points regarding his qualifications also help to explain why his clinical practice does not, by itself, support the reliability of his opinions about the safety and efficacy of Ethicon's products.

Dr. Ramsey is a urologist, and 70% of his clinical practice is devoted to the treatment of men—who would not use the products at issue.[4]  Dr. Ramsey's two-page curriculum vitae lists nothing under Honors, Leadership, Publications, Presentations, or Research that relates in any way to the treatment of stress urinary incontinence.[5]  He has not conducted any studies on mesh materials used in Ethicon's products.[6]  Although Dr. Ramsey served as a consultant for Ethicon from 2003-2012,[7] Ethicon never asked him for input in drafting the IFU for any product, never asked him for input on design, and never asked him to perform a risk-benefit analysis as to any product.[8]  These facts are telling as to how relevant **Ethicon** felt Dr. Ramsey's clinical experience was to determining the safety and efficacy of its products.

Further, Dr. Ramsey's lack of knowledge on important issues, as revealed at his deposition, speaks to how little he has gained as a scientist through his clinical experience.  For instance, he denied that the FDA had concerns about the TVT-Secur product,[9] even though the FDA issued a "522" order stating that "FDA is concerned with potential safety risks as

---

[4] Ramsey Dep., Ex. B to Dkt. No. 2117, at 19:24-20:5.
[5] *Id.* at 151:21-152:1.  See also Ex. C to Dkt. No. 2117.
[6] Ramsey Dep., Ex. B to Dkt. No. 2117, at 108:3-5.
[7] *Id.* at 181:8-10.
[8] *Id.* at 16:3-17.
[9] *Id.* at 195:13-19.

4818-0833-6934, v. 1

evidenced by adverse events reported to the FDA."[10]  Even though the product has been removed

from the market, Dr. Ramsey described TVT-Secur as being safer than Ethicon's other

products.[11]

Curiously, Ethicon cites deposition testimony in which Dr. Ramsey denies seeing any

problems with the mesh as being "evidence" of what he has gained through his clinical

practice.[12]  With no context as to how many surgeries Dr. Ramsey has performed or—more

importantly—how many of his patients **did** have complications and then went to see other

doctors, these anecdotal observations lack scientific meaning.  Ethicon also claims that Dr.

Ramsey's clinical experience is "no different" from certain other experts who have been

permitted to testify.[13]  But examination of the cited cases tells a different story.  In *Tyree*, Dr.

Green was qualified to testify based on his clinical experience.  This Court wrote that "Dr. Green

has performed almost 3,000 sling procedures, and his clinical practice has 'largely focused on the

treatment of female urinary incontinence' over the last twenty years."  *Tyree v. Boston Sci.

Corp.*, 54 F. Supp. 3d 501, 585 (S.D. W. Va. 2014), *as amended* (Oct. 29, 2014).  Dr. Ramsey

has no comparable experience.  In *Trevino*, this Court allowed Dr. Culligan to testify based on

his experience **and** his literature review.  *Trevino v. Boston Sci. Corp.*, No. 2:13-CV-01617,

2016 WL 1718836, at *32 (S.D. W. Va. Apr. 28, 2016), *vacated*, No. 2:13-CV-01617, 2016 WL

2939521 (S.D. W. Va. May 19, 2016).  As discussed, Dr. Ramsey's literature review does not

help his cause.  Finally, in *Winebarger* the Court addressed a physician's **qualifications**, not his

methodology, in concluding that Dr. Galloway's removal of mesh products qualified him to

---

[10] FDA 522 Order, Jan. 3, 2012, Ex. H to Dkt. No. 2117, at p. 1.
[11] Ramsey Dep., Ex. B to Dkt. No. 2117, at 140:11-25.
[12] Def. Resp. Br. at 5.
[13] *Id.* at 6.

4818-0833-6934, v. 1

testify, even though he had not implanted mesh products.  *Winebarger v. Boston Sci. Corp.*, No. 2:13-CV-28892, 2015 WL 1887222, at *6 (S.D. W. Va. Apr. 24, 2015).

Ethicon is unable to cite to any order—from this Court or elsewhere—in which an expert's methodology was deemed to be reliable, based solely on his clinical practice when only 30% of his practice is relevant to the issues in the case, when the expert has shown a lack of knowledge on important topics related to the case, and when the expert's literature review has been determined to be "shaky" at best by the Court.

For these reasons, the Court should conclude that Ethicon has not met its burden to establish that Dr. Ramsey's methodology was reliable.  Alternatively, the Court should again reserve ruling on that issue and allow the witness to undergo *voir dire* at trial.

## II.    Dr. Ramsey should be precluded from testifying as to the sufficiency of Ethicon's warnings, including any testimony that warnings were unnecessary because they fall within the common knowledge of physicians.

This Court correctly held that Dr. Ramsey did not have the qualifications necessary to opine as to the adequacy of Ethicon's warnings.  This Court concluded that Dr. Ramsey did not have the "additional expertise" necessary "to offer expert testimony about what information should or should not be included in an IFU."  *In re: Ethicon*, 2016 WL 4582227, at *4.  Ethicon does not ask this Court to reconsider that opinion, and the Court should reach the same conclusion in Wave 3, for the reasons spelled out in Plaintiffs' initial motion.

The point Ethicon does raise is whether Dr. Ramsey should be permitted to opine as to risks that are generally known by physicians.  The Court should reject this opinion for several reasons.  First, it is a back-door way to give an opinion that Dr. Ramsey is not qualified to give. Citing federal regulations, Ethicon argues that certain information need not be included in the IFU because the information is common knowledge.  Yet, this Court has determined that Dr.

Ramsey is unqualified to opine as to "what information should or should not be included in an IFU." *Id.* If he were permitted to testify as to what information was commonly known by surgeons, he would be, in fact, testifying that the information did not need to be included in the IFU—precisely the opinion the Court has said he is unqualified to give.

Second, Dr. Ramsey's report offers no foundational information as to how he came to the opinion about what "reasonably prudent" pelvic floor surgeons know.[14] Certainly, many pelvic floor surgeons—who devote much more than 30% of their practice to treating women—have given different testimony in this litigation.[15]

Finally, such information has limited relevance when not coming from the treating physician. In some cases, the information already known by the treating physician may have some bearing on a causation inquiry. But Dr. Ramsey's speculation as to what a "reasonably prudent" pelvic floor surgeon would have known in some prior year is not helpful to the jury.

For these reasons, Dr. Ramsey should not be able to testify as to what information was unnecessary to put into the IFU because it—allegedly—was generally known by surgeons.

## CONCLUSION

For the reasons stated above, and the reasons stated in Plaintiffs' initial memorandum, the Court should preclude Dr. Ramsey from testifying about the safety and efficacy of Ethicon's products, about the content of the IFU, and about whether certain risks were so well known that warnings were unnecessary.

Dated: October 21, 2016

---

[14] *See* Ramsey TVT Report, Ex. G to Dkt. No. 2117, at 17.
[15] As but one example, Dr. Bruce Rosenzweig has laid out in various reports a large number of adverse events caused by the TVT products that are not warned of in the IFU. (*See, e.g.*, Dkt. No. 1815-5, TVT-O Report).

4818-0833-6934, v. 1

Respectfully submitted,

/s/Thomas P. Cartmell
Thomas P. Cartmell, Esq.
Jeffrey M. Kuntz, Esp.
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
tcartmell@wcllp.com
jkuntz@wcllp.com

/s/ D. Renee Baggett
Bryan F. Aylstock, Esq.
Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, Florida  32563
(850) 202-1010
(850) 916-7449 (fax)
rbaggett@awkolaw.com
baylstock@awkolaw.com

9

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document on October 21, 2016, using the

Court's CM-ECF filing system, thereby sending notice of the filing to all counsel of record in

this matter.

/s/Thomas P. Cartmell
**Attorney for Plaintiffs**

4818-0833-6934, v. 1