# Exhibit C

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1                        - - -
 2
 3    IN RE:                    :SUPERIOR COURT OF
      PELVIC MESH/GYNECARE      :NEW JERSEY
 4    LITIGATION                :LAW DIVISION -
                                :ATLANTIC COUNTY
 5                              :
                                :MASTER CASE 6341-10
 6                              :
                                :CASE NO. 291 CT
 7
      CONFIDENTIAL-SUBJECT TO STIPULATION AND ORDER OF
 8                   CONFIDENTIALITY
                        - - -
 9
                    September 12, 2012
10
                        - - -
11
12          Volume I of the transcript of the
13    Deposition of CHARLOTTE OWENS, M.D., called for
14    Videotaped Examination in the above-captioned
15    matter, said deposition taken pursuant to
16    Superior Court Rules of Practice and Procedure,
17    by and before JoRita B. Meyer, a Certified
18    Realtime Reporter, Registered Merit Reporter,
19    and Certified Court Reporter for the State of
20    Georgia, at the offices of Troutman Sanders,
21    600 Peachtree Street Northeast, Atlanta,
22    Georgia, commencing at 9:39 a.m.
23                        - - -
24             GOLKOW TECHNOLOGIES, INC.
           877.370.3377 ph|917.951.5672 fax
25                deps@golkow.com
```

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1            decide if they want to learn more about
 2            the system, and ultimately will use
 3            their training, education, and
 4            experience, plus this document, to
 5            decide if they want to use it.
 6   BY MR. SLATER:
 7       Q.   Did you understand that it was
 8   necessary to clearly and unambiguously
 9   communicate all necessary contraindications,
10   warnings and precautions, and adverse reactions
11   to physicians through the IFU?
12       A.   I understand the document should be
13   clear and unambiguous, yes.
14       Q.   Did you understand that it was
15   necessary for Gynecare, to the extent that a
16   risk was understood to exist with the PROLIFT,
17   to communicate it in the IFU as opposed to
18   assuming that surgeons would figure out that
19   risk on their own?
20       A.   I don't think you're giving surgeons
21   enough credit.  Surgeons don't have to figure
22   out the complications of an area that they
23   operate.  Surgeons are trained to know the
24   complications of the area in which they
25   operate.
```

Confidential - Subject to Stipulation and Oder of Confidentiality

1   BY MR. SLATER:

2       Q.   Does it mean too much tension?

3       A.   It's not that simple.

4       Q.   How would a surgeon doing the
5   procedure be able to objectively verify, based
6   on an objective standard, that they had placed
7   or not placed the mesh with excessive tension?

8       A.   They would be able to look at the
9   repair after surgery and see if it looks
10  relaxed or see if it looks like it's under
11  tension.

12      Q.   So that's how they would do it?

13      A.   That's generally how it was done.

14      Q.   Did you ever perform the PROLIFT
15  procedure?

16      A.   On the cadavers, yes.  In live
17  people, because I was not practicing during my
18  tenure at Ethicon, no.

19      Q.   Did you ever on your own, without any
20  other surgeon performing the procedure -- did
21  you ever place Gynemesh in a human's body?

22      A.   No.

23      Q.   Look at the adverse reactions,
24  please.  It was your understanding that you
25  needed to list each of the adverse reactions

Confidential - Subject to Stipulation and Oder of Confidentiality

```
 1    that were known to you in Medical Affairs in
 2    this section, correct?
 3         A.   Yes.
 4         Q.   And you understood that if you failed
 5    to list adverse reactions that you were aware
 6    of, that that would render that warning
 7    deficient to some extent, correct?
 8         A.   Deficient?
 9              MR. BROWN:  Objection.
10              THE WITNESS:  I would say that we
11         listed the adverse reactions that we
12         knew were adequate and sufficient for
13         this document.
14    BY MR. SLATER:
15         Q.   Well, you just said a moment ago you
16    agreed with me that you understood you were
17    supposed to list each of the adverse reactions
18    that you in Medical Affairs knew existed at the
19    time of launch, correct?
20         A.   We listed the adverse events that we
21    knew to be directly related to the information
22    that we had at this time.
23         Q.   Okay.  Were there risks -- well,
24    rephrase.
25              You see where it says, at the end of
```