EXHIBIT F

Confidential - Subject to Stipulation and Order of Confidentiality

```
 1                      -   -   -

 2                                :SUPERIOR COURT OF
                                  :NEW JERSEY
 3      IN RE:                    :LAW DIVISION -
        PELVIC MESH/GYNECARE      :ATLANTIC COUNTY
 4      LITIGATION                :
                                  :MASTER CASE 6341-10
 5                                :
                                  :CASE NO. 291 CT
 6

 7      CONFIDENTIAL-SUBJECT TO STIPULATION AND ORDER OF

 8                      CONFIDENTIALITY
                            -   -   -
 9                     March 14, 2012
                            -   -   -
10

11              Transcript of the continued

12      deposition of DAVID B. ROBINSON, MD, called for

13      Videotaped Examination in the above-captioned

14      matter, said deposition taken pursuant to Superior

15      Court Rules of Practice and Procedure by and before

16      Ann Marie Mitchell, a Federally Approved Certified

17      Realtime Reporter, Registered Diplomate Reporter,

18      Certified Court Reporter, and Notary Public for the

19      State of New Jersey, at the offices of Riker Danzig

20      Scherer Hyland & Perretti LLP, Headquarters Plaza,

21      One Speedwell Avenue, Morristown, New Jersey,

22      commencing at 9:35 a.m.

23                      -   -   -

              GOLKOW TECHNOLOGIES, INC.
24         877.370.3377 ph| 917.951.5672 fax
                  deps@golkow.com
25
```

Confidential - Subject to Stipulation and Order of Confidentiality

1        A.        Well, I don't know about believing

2    it, but they need to read it and begin a discussion

3    with their physicians.  I can't --

4        Q.        Does it say anywhere in the patient

5    brochure, in big, set-off letters so that the

6    patient could not miss it, please understand, you're

7    not expected to rely on this document.  It's just

8    supposed to be a jumping off point for your

9    discussion with your physician?  Is there anything

10   like that?

11                 MR. GAGE:  Objection.

12                 THE WITNESS:  I can't recall, but I

13   have to believe in there that there is language to

14   say, discuss with your physician.

15                 MR. SLATER:  Move to strike after "I

16   can't recall."

17   BY MR. SLATER:

18       Q.        Did you expect patients to think that

19   what was written in the Prolift® patient brochure

20   was true?

21       A.        Yes.

22       Q.        Did you expect patients to rely on

23   Ethicon to tell them the truth about the Prolift®

24   procedure in the patient brochure that was dedicated

25   to the Prolift®?

Confidential - Subject to Stipulation and Order of Confidentiality

1          A.        As best we knew at the time it was

2    created, yes.

3          Q.        So Ethicon expected that when a

4    patient would read the patient brochure, they would

5    believe what they were reading.  Right?

6          A.        Again, I can't speak for their

7    belief, but I believe it should be a body of

8    information that you then take to your doctor to

9    talk about.

10                   MR. SLATER:  Move to strike.

11   BY MR. SLATER:

12         Q.        You knew that there were patients who

13   would read the patient brochure for the Prolift® and

14   rely on Ethicon's statements to them about the

15   benefits and risks of the procedure as part of their

16   decision about whether or not to let a surgeon put a

17   Prolift® in their body.  Right?

18                   MR. GAGE:  Objection.

19                   THE WITNESS:  As part of that, yes.

20   BY MR. SLATER:

21         Q.        And nowhere in that patient brochure

22   are patients told that they can suffer pain as a

23   result of the Prolift®.  Right?

24                   MR. GAGE:  Objection.

25                   THE WITNESS:  I'd have to look at the

Confidential - Subject to Stipulation and Order of Confidentiality

1    director in Ethicon, you did not expect physicians

2    to rely upon the IFU for the Prolift® as an accurate

3    disclosure of the risks associated with the Prolift®

4    system?

5                    MR. GAGE:  Objection.

6                    THE WITNESS:  No.  I think what I

7    said is I didn't -- they shouldn't depend on it as

8    the sole source of their information regarding the

9    Prolift® system.

10   BY MR. SLATER:

11        Q.     My question is this:  Did you expect

12   surgeons who were considering using the Prolift® to

13   rely upon the Prolift® IFU to accurately disclose

14   the risks associated with the use of the Prolift®

15   system?

16                   MR. GAGE:  Objection.

17                   THE WITNESS:  We should accurately

18   represent what we knew to be risks at the time, yes.

19   BY MR. SLATER:

20        Q.     You knew that was required by federal

21   law.  Right?

22                   MR. GAGE:  Objection.

23   BY MR. SLATER:

24        Q.     By the FDA.  Right?

25                   MR. GAGE:  Objection.

Confidential - Subject to Stipulation and Order of Confidentiality

```
 1                    THE WITNESS:  Actually, I don't know

 2    whether the FDA -- that is a regulatory decision.

 3    BY MR. SLATER:

 4          Q.       And you felt that was your obligation

 5    to physicians so they would know what the potential

 6    adverse reactions were if they used that product.

 7    Right?

 8                    MR. GAGE:  Objection.

 9                    THE WITNESS:  To the best of our

10    knowledge at the time, yes.

11    BY MR. SLATER:

12          Q.       And if Ethicon had knowledge of an

13    adverse reaction and did not include it in the

14    Prolift® IFU, then the IFU would be deficient to

15    that extent.  Right?

16                    MR. GAGE:  Objection.

17                    THE WITNESS:  No, that's not true.

18    BY MR. SLATER:

19          Q.       Okay.

20          A.       Because --

21          Q.       So let me understand this.

22                    MR. GAGE:  The witness would like to

23    finish his answer.

24                    MR. SLATER:  He just said no.  That's

25    all I was asking.
```

Confidential - Subject to Stipulation and Order of Confidentiality

1          Q.      Well, I'm asking you, based on your

2     participation in the process at Ethicon, would that

3     be incorrect?

4                  MR. GAGE:  Objection.

5                  THE WITNESS:  I don't remember ever

6     being asked to give the -- a final decision about

7     adverse events being put in an IFU.

8     BY MR. SLATER:

9          Q.      Let me understand this.  Ethicon

10    understood it was expected to put all of the adverse

11    events into the IFU.  However, if Ethicon failed to

12    list -- I'm going to ask the question differently.

13                 If Ethicon determined an adverse

14    reaction to be material, meaning it doesn't just

15    happen, you know, so infrequently that you don't

16    have to consider it but it happens enough that you

17    can actually put a percentage on it --

18         A.      Well --

19                 MR. GAGE:  Let him finish his

20    question.

21    BY MR. SLATER:

22         Q.      Let me ask you this.

23                 How would you define a complication

24    to be material enough that it would need to be

25    listed in the IFU?  How did you define that as

Confidential - Subject to Stipulation and Order of Confidentiality

1    medical director?

2         A.       Well, it would either need to have a

3    frequency or a severity that had some implication

4    for a risk/benefit ratio.

5         Q.       Okay.

6                  If a complication met that standard,

7    it needed to be called out in the IFU.  Right?

8         A.       Yes.

9         Q.       And if it was not -- rephrase.

10                 And if a complication that met that

11   standard was not included in the IFU, the IFU would

12   be deficient by definition.  Correct?

13                 MR. GAGE:  Objection.

14                 THE WITNESS:  I think it has to be

15   based on the information you have at the time the

16   IFU is created, so it will always evolve.

17   BY MR. SLATER:

18        Q.       The information Ethicon had about the

19   complications and risks from the Prolift® evolved

20   over the years.  Right?

21        A.       Yes.

22        Q.       That evolution was actually fairly

23   significant as more and more procedures were done

24   and Ethicon saw more clinical studies.  Right?

25                 MR. GAGE:  Objection.