IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL 2327 |
| THIS DOCUMENT RELATES TO:<br><br>Wave 4 cases listed in Exhibit A | JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE
CERTAIN OPINIONS AND TESTIMONY OF HARRY JOHNSON, M.D.**

Plaintiffs respectfully request that the Court preclude defense expert Harry Johnson M.D., from giving opinions on (1) the adequacy of the subject product warnings and instructions for use ("IFU"), (2) the safety and efficacy of the subject products based on his own clinical practice; and (3) the design or safety of the subject transvaginal mesh products.

**LEGAL STANDARD**

Federal Rule of Evidence 702 sets forth the basic framework for analyzing the admissibility of expert opinions. The rule reads, in pertinent part, as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. On the issue of qualifications, "the district court must decide whether the expert has 'sufficient specialized knowledge to assist the jurors in deciding the particular issues

1

in the case.'" *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 162 (4th Cir. 2012), *as amended* (May 9, 2012) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999)).

If the witness is suitably qualified, then the *Daubert* inquiry generally breaks down into a two-step analysis. The first issue is whether the proffered evidence represents "scientific knowledge," meaning that it is supported by appropriate validation. The second issue is whether the evidence would assist the jury—i.e., whether it is relevant. *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995). The relevance aspect of the inquiry is often discussed in terms of whether the expert's opinions "fit" the case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993).

To meet the standard of reliability, the testimony "must be supported by appropriate validation—i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1383 (4th Cir. 1995).

Courts should focus on expert witnesses' "principles and methodology, not on the conclusions that they generate." *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). This is because "*Daubert* governs whether evidence is admitted, not how persuasive it must be to the factfinder." *Cavallo*, 100 F.3d at 1158.

## ARGUMENT

This Court should prohibit Dr. Johnson from giving the opinions referenced above because he is not qualified to opine on those issues and has not done the necessary research to produce opinions that can reliably be applied to this case. Dr. Johnson produced one 18-page report addressing four following: Prolift Anterior Mesh Kit, Prolift Posterior Mesh Kit, Prolift

Total Mesh Kit and Gynmesh PS mesh. The reports contain the same general opinions/statements about all four products:

- Defendants' products at issue are not defective; they were reasonably safe for their intended uses. The benefits of Defendants' product outweigh the risk of using the product, and they are safer and better than the non-mesh alternatives. (*See* Report, attached as Exhibit B, at 5)

- The IFU and/or the warnings concerning Defendants' subject product are adequate and allow for the safe use of the device. (*See* Report, attached as Exhibit B, at 5)

The first bullet point relates to Dr. Johnson's attempt to bolster his design defect opinion based on his own experience as to the safety and efficacy of Defendants' products. As discussed in greater detail below, this is Dr. Johnson's attempt to backdoor into evidence an improper and unsupported opinion on his personal complication and/or success rate.

For the reasons described below, Dr. Johnson should not be permitted to give those opinions under the standards set by Rule 702 and *Daubert*.

**I.    Dr. Johnson admits he is not an expert qualified to give opinions on the adequacy of Ethicon's IFUs; thus, his opinions on this issue should be excluded.**

This Court has recognized the importance of an expert's admission that he is not an expert in the area of warnings. *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 611 (S.D.W. Va. 2013), *amended on reconsideration in part* (June 14, 2013). Dr. Johnson testified during his deposition:

3

```
14    Q    Doctor, do you know what standards a
15   medical device company like Ethicon applies when
16   drafting the instructions for use associated with a
17   product like Prolift?
18    A    I've never drafted an IFU, so I'm not, I'm
19   not an expert on the standards required.
```

(Johnson Deposition, Ex. C, at 35:14-19)

```
 9    Q    You testified that you were not a
10   regulatory person and were not an expert on the
11   standards required to draft an IFU, is that correct?
12    A    That's correct.
```

(Johnson Deposition, Ex. C, at 47:9-12)

      For the reasoning stated by this court on numerous prior occasions, when a witness admits he has no expertise on a subject any opinions on the subject should be excluded. Dr. Johnson does not have the necessary expertise under Daubert and Rule 702 to give opinions about the sufficiency of warnings in the IFU for Ethicon products. The Court, therefore, should exclude those opinions.

    **II.**    **Any statements or opinions from Dr. Johnson about his personal perceived experience related to the safety and efficacy of the subject products should be excluded because he admitted he does not know them and is not relying on them to support his opinions.**

      Dr. Johnson should be precluded from testifying about his perceived safety and efficacy rates with the subject product from his own practice, as that information is entirely unsupported by any meaningful statistical information or analysis. This exclusion should include any

imprecise general personal complication or success rates, and any imprecise patient follow-up rates. In fact, Dr. Johnson admits he has not reviewed any data related to his own complication or success rates with the subject products and is not relying personal experience with the products to support his opinions. (Johnson Deposition, Ex. C, at 25:12-26:5)

The only information he might have but has not reviewed, nor is he relying on, is certain limited information on his sling procedures. (Id.) Dr. Johnson testified:

```
                                                              29
1      Q     Okay.  It's fair to say that that's not
2   information that you pulled and relied on, in forming
3   your opinions in this -- in your report?
4      A     That's correct.
```

(Johnson Deposition, Ex. C, at 29:1-4)

Because Dr. Johnson doesn't know his personal success or complication rate with the subject products at issue in this Motion, has not made any effort to ascertain his complication rate and pointedly, is not relying on any such information to form his opinions any statements or opinions that relate to his personal success or complication rate should be excluded. Plaintiffs have no reasonable way of testing the veracity of Dr. Johnson's success or complication "rates," which exist only in his mind. Because there is no foundation for these opinions they should be excluded just as this Court has done in similar circumstances.

### III. Dr. Johnson should be precluded from giving design opinions because he lacks the necessary knowledge or expertise on the topic and his methodology in reaching his opinion is fundamentally flawed.

Dr. Johnson states in his report that the subject products are "not defective in [their] design". (*See* Report, attached as Exhibit B, at 5) There are several reasons why Dr. Johnson should be precluded from giving opinions as to the design and safety of the subject products, including:

- 1) Dr. Johnson did not review a single Ethicon document on the design or safety of the subject devices (Johnson Deposition, Ex. C, at 10:13-18);

- 2) Dr. Johnson didn't review a single Ethicon document, regulatory document or clearance application related to the design or safety of the subject devices (Johnson Deposition, Ex. C, at 14:6-20; 41:3-5);

- 3) Dr. Johnson didn't review a single Ethicon document or regulatory document related to the additional safety studies being ordered on the subject devices nor Ethicon's decision to avoid the safety studies and to stop selling the devices (Johnson Deposition, Ex. C, at 6:17-21; 41:3-5);

- 4) Dr. Johnson doesn't know of a single Ethicon medical director, engineer or product director who worked on the design or safety of the subject devices (Johnson Deposition, Ex. C, at 21:12-22:5; 29:8-10);

- 5) Although, Dr. Johnson's reliance list states he reviewed depositions of company employees that related to the design and safety of the subject devices, when asked at his deposition he testified he had not even heard of these individuals devices (Johnson Deposition, Ex. C, at 21:12-22:5; 29:8-10);

6

- 6) Although, Dr. Johnson's reliance list states he reviewed expert reports and depositions of Ethicon expert witnesses in the litigation that relate to the design and safety of the subject devices, when asked at his deposition he testified he had not even heard of these individuals (Johnson Deposition, Ex. C, at 6:17-21; 22:8-23:1);

- 7) Dr. Johnson did not review important medical society statements discussing the safety, or lack thereof, of the subject devices (Johnson Deposition, Ex. C, at 39:10-14);

- 7) For almost two decades, Ethicon never once asked Dr. Johnson for expertise on the design of safety of the subject devices outside the context of litigation (Johnson Deposition, Ex. C, at 6:17-21);

- 5) He lacks basic knowledge of the facts of this case, including some addressed in his expert report.

First and foremost, Dr. Johnson should be precluded from opining about the design or safety of the subject products because he has not reviewed Defendants' internal documents about the design and safety of the subject devices, has not reviewed any regulatory documents about the design and safety of the subject devices, has not reviewed medical society statements that discuss the design and safety (or lack thereof) of the subject devices and did not bother to review any deposition testimony from medical directors, engineers or product directors that related to the design and safety of the subject devices (Id.) This issue was central to the exclusion of design opinions by a urogynecologist for the plaintiffs in the Boston Scientific litigation. *See Winebarger v. Boston Scientific Corp.*, No. 2:13-CV-28892, 2015 WL 1887222, at \*14 (S.D. W. Va. Apr. 24, 2015). Boston Scientific Corp. ("BSC") moved to exclude Dr. Shull because he "reached opinions on the improper design of the Uphold without having first considered BSC's

7

design protocols." The plaintiffs countered that Dr. Shull had relied on other BSC internal documents, as well as the scientific literature. *Id.*

This Court agreed with BSC and excluded Dr. Shull from giving any design opinions. This Court reasoned that "regardless of the literature he has reviewed or the experience he has gained, a necessary piece of data remains missing from Dr. Shull's methodology. Without any reliable, demonstrated knowledge of BSC's internal design procedures, Dr. Shull cannot substantiate his opinion that these procedures were (1) departures from the norm; (2) not followed by BSC; or (3) lacking in any way." *Id.*

In Dr. Johnson's case his methodology much more flawed. He testified:

```
13      Q    Was it important for you, Doctor, in
14   forming your opinions in this litigation related to the
15   Prolift Mesh Kit Device, to review internal Ethicon
16   company documents about the Prolift Mesh Kit Device?
17      A    I didn't review internal Ethicon memos
18   regarding the device.
```

(Johnson Deposition, Ex. C, at 10:13-18).

8

```
 6        Q     Did you review, in forming your opinions in
 7   this case, the application that Ethicon filed with the
 8   FDA?
 9              Let's refer to it as the 510(k)
10   Application, to market the Prolift Mesh Kit Device?
11        A     I did not.
12        Q     Fair to say since you didn't review it, you
13   don't know when that application was filed?
14        A     That's correct.
15        Q     Do you know anything about the regulatory
16   history concerning the Prolift Mesh Kit Device, as it
17   relates to it being cleared by the FDA for market?
18        A     I know it was cleared by the FDA.
19        Q     Other than that, any other information?
20        A     I don't believe so.
```

(Johnson Deposition, Ex. C, at 14:6-20; 41:3-5).

```
12        Q     Doctor, do you know who Gene Kammorer is,
13   as it relates to this litigation?
14        A     No.
15        Q     Doctor, do you know who Charlotte Owens is,
16   as it relates to this litigation?
17        A     No.
18        Q     Doctor, do you know who Martin Wylesburg
19   is, as it relates to this litigation?
20        A     No.
21        Q     Doctor, do you know who Piet Hinoul is, as
```

9

```
1    it relates to this litigation?
2        A    No.
3        Q    Doctor, do you know who Laura Angellini is,
4    as it relates to this litigation?
5        A    No.
```

(Johnson Deposition, Ex. C, at 21:12-22:5; 29:8-10);

Because Dr. Johnson lacks the expertise and methodology was fundamentally flawed, Dr. Johnson lacks the required knowledge to give a reliable opinion about the design or safety of the subject devices. As such, he should be precluded from giving any opinions related to design or safety of the subject products.

## CONCLUSION

Based on the foregoing, Dr. Johnson should be precluded from giving opinions on (1) the adequacy of the subject product warnings and instructions for use ("IFU"), (2) the safety and efficacy of the subject products based on his own clinical practice; and (3) the design or safety of the subject transvaginal mesh products.

Dated: April 13, 2017

Respectfully submitted,

/s/ Thomas P. Cartmell
Thomas P. Cartmell, Esq.
Jeffrey M. Kuntz, Esq.
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone:   (816) 701-1100
Facsimile:   (816) 531-2372
tcartmell@wcllp.com
jkuntz@wcllp.com

/s/ D. Renee Baggett
Bryan F. Aylstock, Esq.
Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, Florida  32563
Telephone:     (850) 202-1010
Facsimile:     (850) 916-7449
baylstock@awkolaw.com
rbaggett@awkolaw.com

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document on April 13, 2017, using the Court's CM-ECF filing system, thereby sending notice of the filing to all counsel of record in this matter.

/s/Thomas P. Cartmell
**Attorney for Plaintiffs**