# EXHIBIT

# "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE:  ETHICON, INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327 MDL No. 2327 |
| THIS DOCUMENT RELATES ONLY TO: WAVE FOUR CASES LISTED ON EXHIBIT A | JOSEPH R. GOODWIN U.S. DISTRICT JUDGE |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE GENERAL OPINIONS AND TESTIMONY OF WILLIAM PORTER, M.D.[1]**

Defendants Ethicon, Inc., Ethicon LLC, and Johnson & Johnson (collectively, "Ethicon") submit this memorandum in support of their motion to exclude the opinions and testimony of William Porter, M.D., one of Plaintiffs' pelvic medicine experts.[1]

**PRELIMINARY STATEMENT REGARDING SCOPE OF MOTION**

Dr. Porter issued 15 separate reports in Wave 4. *See* Ex. B, Listing of Porter Designations. For the most part, each of these reports appears aimed at issues of specific causation. *See, e.g.,* Ex. C, Rule 26 Expert Report of Dr. William Porter, M.D., *Christopherson v. Ethicon, Inc.*, Case No. 2:12-cv-04365 ("Porter Report") at 2 ("The focus of my evaluation is the role that the TVT-O and Prolift played in causing injury to Ms. Christopherson."). Despite the specific causation emphasis, Dr. Porter improperly attempts to weave into his specific causation reports several general causation opinions. *See, e.g., id*. at 2, 4-5.

For many of the cases in which he is designated, Plaintiffs designated Dr. Porter <u>only</u> as a specific causation expert. *See, e.g.,* Ex. D, Pls.' Designation & Disclosure of Case-Specific Expert

---

[1] The specific cases to which this memorandum relates are listed in Ex. A.

Witnesses, *Creager-Awichi v. Ethicon, Inc.*, Case No. 2:12-cv-05184, at 2 (designating Dr. Porter as "Urogynecologist – Case Specific Causation"). In a minority of cases, Plaintiffs designated Dr. Porter to opine on both general and specific causation. *See, e.g.,* Ex. E, Pls.' Designation & Disclosure of Case-Specific Expert Witnesses, *Christopherson v. Ethicon, Inc.*, Case No. 2:12-cv-04365, at 2 (designating Dr. Porter as "General and Case Specific Causation").

This Motion is aimed <u>only</u> at those cases where Dr. Porter has been designated to offer general opinion testimony.[2]

## INTRODUCTION

Dr. Porter sets forth six general opinions in three of his reports. The following appears verbatim in each of the three reports at issue in this Motion:

1. "The most common mesh-related complications are pelvic pain, scarring in the vagina and pelvic floor, pain into the legs and thighs, dyspareunia, chronic inflammation of tissue, chronic vaginal discharge or bleeding, scar bands or scar plates in the vagina, vaginal shortening or stenosis, erosion of mesh into tissues or organs, and nerve entrapment." Ex. C, Porter Report at 2.[3]

2. "Meyer et al reports dyspareunia rates of 36% at a 5 year follow up from mesh surgery. On the other hand, Alperin et al reports a dyspareunia rate of 28.9%, which was similar to preoperative rate. Porter et al reports a site-specific posterior repair tends to have a

---

[2] Concurrently, Ethicon is filing separate motions to exclude Dr. Porter's specific causation opinions. To the extent Dr. Porter was designated to offer only specific causation opinions, those separate motions seek to exclude Dr. Porter's general causation opinions as being beyond the scope of his designation and a violation of both Rule 26 and this Court's case management orders.

[3] Because Dr. Porter's general opinions appear verbatim in each of the three reports at issue in this motion, Ethicon cites only to the report issued by Dr. Porter in *Christopherson v. Ethicon, Inc.*, Case No. 2:12-cv-04365. The other two reports are also attached as exhibits. *See generally* Ex. F, Rule 26 Expert Report of Dr. William Porter, M.D., *Hahn v. Ethicon, Inc.*, Case No. 2:12-cv-04364 ("*Hahn* Report"); Ex. G, Rule 26 Expert Report of Dr. William Porter, M.D., *Geisinger v. Ethicon, Inc.*, Case No. 2:12-cv-05112 ("*Geisinger* Report"). All of the contentions of Defendants contained herein apply to all three such reports.

positive effect on dyspareunia 73% cured vs. 19% where it increased. It appears that Prolift [and TVT] mesh may have a negative effect on coitus….” *Id.* at 4.[4]

3. “As the vagina is a cleaned contaminated area, there is no way to completely eliminate bacteria from the surgical site. Implantation though [sic] this dirty field could allow bacteria to attach. These bacteria then can attach to the mesh and secrete a biofilm or a polysaccharide slime excreted by the bacteria. This slime could prevent the host defensive mechanism from clearing the infection. (Edmiston). This tissue response can contribute to the cause of vaginal pain, pelvic pain and chronic inflammation. This chronic inflammation/infection could be a source of pain. This chronic inflammation/infection could be a source of an erosion, vaginal discharge and possible UTI’s.” *Id.* at 4-5.

4. “Dr. Daniel Elliot in his general expert report suggested the mesh creates a foreign body reaction and a chronic inflammatory response that can lead to chronic pain in the patient. The body’s foreign body response to the mesh can cause a severe and chronic inflammatory reaction leading to excessive scarring in and around the mesh.” *Id.* at 5.

5. “Dr. Bruce Rosenzweig of the general expert witness group suggests that mesh degrades over time and causes a chronic foreign body reaction, fibrotic bridging, mesh contracture/shrinkage, fraying, particle loss, roping and curling of the mesh contributing to pain.” *Id.*

6. “Ethicon’s Daniel Burkley, a Principal Scientist has testified that polypropylene mesh in human beings is subject to some degree of surface degradation.” *Id.*

Each one of the six general opinions of Dr. Porter is inadmissible:

**First,** Dr. Porter’s opinions are largely regurgitations of hearsay (Opinions 2, 4, 5, and 6). He provides no independent analysis and merely seeks to recite information from an isolated study or repeat the statements of others. Such hearsay statements are not admissible expert opinions.

**Second,** Ethicon concurrently is moving to exclude the general opinions of Dr. Elliott and Dr. Rosenzweig. To the extent that Dr. Porter is attempting to adopt their general opinions as his own, Dr. Porter’s adoption of the general opinions in those reports is inadmissible for the same reasons stated in Ethicon’s motions to exclude Dr. Elliott’s and Dr. Rosenzweig’s general opinions.

---

[4] This general opinion does not appear in Dr. Porter’s report regarding Ms. Geisinger. *See generally*, Ex. F, *Hahn* Report.

**Third,** Dr. Porter's methodology regarding dyspareunia rates is unreliable (Opinion 2). Dr. Porter cherry-picked three out of the literally hundreds of studies available to support his pre-conceived notion of an increased rate of dyspareunia. He wholly fails to consider or discuss the voluminous medical literature that exists and is contrary to, and refutes, his opinions.

**Fourth,** several of Dr. Porter's general opinions are unsupported (Opinions 1 and 3). Rule 26 requires that an expert report contain a statement of the basis for his opinions. Dr. Porter's failure to do so renders his opinions inadmissible.

**Fifth,** Dr. Porter lacks the qualifications to discuss biocompatibility, materials, or polymers.

## LEGAL STANDARD

Defendants incorporate by reference the standard of review for *Daubert* motions set forth by the Court in *Huskey v. Ethicon, Inc*., 29 F. Supp. 3d 691, 701 (S.D. W. Va. 2014).

## ARGUMENT AND AUTHORITIES

## I.    Dr. Porter's General Opinions Are Nothing More than Inadmissible Hearsay.

Several of Dr. Porter's general opinions are nothing more than a thinly veiled attempt to smuggle hearsay into the Courtroom. His Opinions 2, 4, 5, and 6 (as outlined above) are mere recitations of scientific literature, opinions of other plaintiff-experts, and statements of an Ethicon employee. These types of recitations are <u>not</u> expert opinions.

At its core, expert opinion must be the result of a qualified expert applying his "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a) ("A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ."). Where a proffered expert does not apply her specialized knowledge to arrive at an opinion, the opinion does <u>not</u> constitute expert opinion testimony under Rule 702 and should not be admitted.   And while an expert may rely upon data cited by other experts, "[t]he Federal Rules of Evidence do

not permit experts to simply 'parrot' the ideas of other experts or individuals." *Auther v. Oshkosh Corp.*, 2013 WL 5272959, *3 (W.D.N.Y. Sept. 16, 2013) (quoting *In re Wagner*, 2007 WL 966010, *4 (E.D. Pa. Mar. 29, 2007); see also *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. 2009) ("While it is true that an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts, ..., such expert must make some findings and not merely regurgitate another expert's opinion").

Dr. Porter's Opinions 2, 4, 5, and 6 are not "opinions" at all. They are statements of others that he wishes to adopt as his own. No specialized knowledge was involved in arriving at these "opinions." Accordingly, Opinions 2, 4, 5, and 6 do not constitute expert opinion testimony within the meaning of Federal Rule 702 and, thus, should be excluded.

## II.   Because Dr. Elliott's and Dr. Rosenzweig's General Opinions Are Inadmissible, So Too Is Dr. Porter's Attempt to Incorporate Their Opinions by Reference.

Concurrently, Ethicon is filings motions to exclude the general opinions of Dr. Elliott and Dr. Rosenzweig. For the reasons stated in those motions and supporting memorandum, neither Dr. Elliott's nor Dr. Rosenzweig's general opinions are inadmissible.

Dr. Porter's mere reference to the erroneous general opinions of Dr. Elliott and Dr. Rosenzweig cannot resurrect them and cause them to become admissible through Dr. Porter. *See In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 605 (S.D. W. Va. 2013) (where general causation opinions that form the basis of other opinions is excluded as unreliable, any opinions relying upon the excluded opinions are inadmissible).  If the Court deems that Dr. Elliott's and Dr. Rosenzweig's opinions are inadmissible, then Dr. Porter may not rely upon those general reports in connection with forming his own opinions and he is likewise precluded from parroting their opinions before the jury under the guise of relying upon these materials that are inadmissible under Federal Rule 702.

### III.   Dr. Porter's Opinion Regarding Dyspareunia Rates Is Unreliable Because He Failed to Take Into Account Contrary Scientific Evidence.

Dr. Porter's Opinion 2 – regarding dyspareunia rates – is unreliable because he failed to consider or distinguish the literature that is contrary to his stated incident rate.

"An expert's opinion may be unreliable if he fails to account for contrary scientific literature and instead 'selectively [chooses] his support from the scientific landscape.'" *Tyree v. Boston Sci. Corp.*, 54 F. Supp. 3d 501, 520 (S.D.W. Va. 2014) (Goodwin, J.), *as amended* (Oct. 29, 2014) (citing *In re Rezulin Products Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y.2005)). "[I]f the relevant scientific literature contains evidence tending to refute the expert's theory and the expert does not acknowledge or account for that evidence, the expert's opinion is unreliable." *Id.* (citing, *inter alia*, *Rezulin*, 369 F. Supp. 2d at 425).

Here, Dr. Porter selected only three out of literally hundreds of articles, studies, and medical literature discussing adverse events following implantation of TVT or Prolift. Dr. Porter neither acknowledges nor accounts for the contrary evidence. Having failed to do so, his Opinion 2 is unreliable and inadmissible.

### IV.   Dr. Porter's Unsupported Opinions Fail to Satisfy Rule 26 and Are Unreliable and Inadmissible.

Dr. Porter failed to identify any basis for at least two of his general opinions. Specifically, Dr. Porter does not identify any support for his opinion regarding the "most common mesh-related complications" (Opinion 1) and his opinion about chronic inflammation (Opinion 3).

As this Court has recognized, under Federal Rule of Civil Procedure 26(a)(2)(B), an expert's report "must contain, among other things, 'a complete statement of all opinions the witness will express and the basis and reasons for them[.]'" *Lewis v. Ethicon, Inc.*, No. 2:12-cv-4301, 2014 WL 186872, at *9 (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)). Further, "[i]f a party fails to provide information . . . as required

by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence . . . at a trial." *Id.* (internal quotation marks omitted).

Dr. Porter's failure to identify any basis for his general opinions renders them inadmissible pursuant to Rule 26 as established by this Court's prior rulings.

## V.   Dr. Porter Lacks the Qualifications to Opine on Biocompatibility, Materials, or Design.

The Court should preclude Dr. Porter from rendering opinions on biomaterials, polypropylene degradation, chronic foreign body reaction, adequate pore size, adequate weight of polypropylene, and biocompatibility of polypropylene.  The opinions of Dr. Elliott, Dr. Rosenzweig, and Mr. Burkley, which Dr. Porter attempts to adopt by reference, touch upon all of these topics. Yet, as his curriculum vitae plainly discloses, Dr. Porter is <u>not</u> a biomaterials expert. *See* Ex. H, Curriculum Vitae.  Again, his attempt to merely parrot the opinions of other experts in order to formulate his own opinion is improper.  *See. e.g.*, *Auther*, 2013 WL 5272959, *3.

Indeed, Dr. Porter is not qualified by education, training or experience to opine on biomaterials science issues, including, without limitation, polypropylene mesh degradation, collapse, and porosity. He does not have an engineering degree in materials science. *See id.* He does not have a demonstrated background in polymer chemistry or biochemical or biomechanical engineering. *See id.* Nothing else in Dr. Porter's experience as a surgeon would inform his opinion that TVT, TVT-O, or Prolift mesh, a biomaterial, degrades in the human body.

Accordingly, Dr. Porter lacks the qualifications necessary to offer such general opinions.

## CONCLUSION

For these reasons, the Court should exclude Dr. Porter's general opinions.

ETHICON, INC., ETHICON, LLC
AND JOHNSON & JOHNSON

*/s/ Christy D. Jones*

7

Christy D. Jones
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
(601) 985-4523

/s/ David B. Thomas
David B. Thomas (W. Va. Bar #3731)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
(304) 414-1807
dthomas@tcspllc.com

## CERTIFICATE OF SERVICE

I certify that on this day I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Christy D. Jones
Christy D. Jones
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
(601) 985-4523

COUNSEL FOR DEFENDANTS ETHICON, INC.,
ETHICON, LLC, AND JOHNSON & JOHNSON

36151721v1