**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

| | |
|---|---|
| **IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | Master File No. 2:12-MD-02327<br>MDL 2327 |
| **THIS DOCUMENT RELATES TO:<br>WAVE 5 CASES** | **JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER PRECLUDING *DE BENE ESSE* DEPOSITION OF
PLAINTIFFS' EXPERT WITNESS SCOTT A. GUELCHER, PH.D.**

Defendants Ethicon, Inc. and Johnson & Johnson (collectively, "Ethicon") submit this memorandum in support of their Motion for Protective Order Precluding the *De Bene Esse* Deposition of Plaintiffs' Expert Witness Scott A. Guelcher, Ph.D. ("Motion").

**I.    INTRODUCTION**

Dr. Guelcher is a biochemical engineer designated by Plaintiffs as a general expert in Wave 1 through Wave 5 in this MDL. On May 24, 2017, counsel for Ethicon requested that Plaintiffs provide dates on which Dr. Guelcher would be available for a deposition in this litigation. Ex. A, David Thomas 5/24/2017 Email. Despite repeated requests by Ethicon, Plaintiffs did not identify dates of availability until three weeks later, on June 13, 2017. Ex. B, Michael Bowman 6/13/2017 Email. Ethicon worked with Plaintiffs over the next two weeks, and eventually, on June 20, 2017, the parties agreed for the deposition to take place on June 30, 2017. Ex. B, David Thomas 6/20/2017 Email.

On June 26, 2017, Plaintiffs unilaterally cancelled Dr. Guelcher's deposition due to a personal situation related to Plaintiffs' counsel. Ex. C, Ed Wallace 6/26/2017 Email. Ethicon

agreed to accommodate Plaintiffs' counsel, and informed Plaintiffs that it would not produce any of Ethicon's materials science witnesses until the completion of Dr. Guelcher's deposition, and that any such depositions would likely take place after the July 19, 2017 discovery cut-off for Wave 5. Ex. D, David Thomas 6/26/2017 Email. Ethicon also requested that Plaintiffs confirm that the Court would permit such an arrangement. *Id.* Plaintiffs' counsel indicated that he preferred to proceed with scheduling the depositions before requesting permission from the Court. Ex. E, Ed Wallace 6/26/2017 Email.[1]

Following repeated requests by Ethicon, on July 8, 2017, Plaintiffs identified a date for Dr. Guelcher's deposition to proceed. Ex. I, Ed Wallace 7/8/2017 8:32 AM Email. On July 10, 2017, Ethicon served an amended notice of deposition, setting the Wave 5 discovery deposition for July 18, 2017. Amended Notice of Deposition of Dr. Scott A. Guelcher [ECF 4114].

On July 12, 2017—only six days before the deposition was to take place—Plaintiffs served a Notice of Videotaped *De Bene Esse* Testimony of Scott Guelcher, Ph.D. [ECF 4124]. Plaintiffs' Notice indicates that "the *de bene esse* testimony of Dr. Scott Guelcher will be taken for all purposes in Wave 5," as well as "any and all purposes permitted by the Federal Rules of Civil Procedure, the rules of the MDL Court, and any other state or local rules that apply to this action." *Id.*

On the same day, Ethicon objected to Plaintiffs' attempt to take a *de bene esse* deposition, and requested that Plaintiffs postpone any such deposition so the parties can resolve the issue and the discovery deposition could proceed without any further impact on the Wave 5 discovery process. Ex. J, David Thomas 7/12/2017 Email. Plaintiffs' counsel indicated that it

---

[1] On July 8, 2017, Ethicon again asked that Plaintiffs confirm that the Court consented to the taking of discovery depositions past the July 19, 2017 discovery cut-off, given that Ethicon would not produce its materials science experts until after Dr. Guelcher's deposition was complete. Ex. F, David Thomas 7/8/2017 4:33 PM Email; Ex. G, David Thomas 7/8/2017 5:29 PM Email. The response of Plaintiffs' counsel indicated that no such request had been made. Ex. H, Ed Wallace 7/8/2017 4:58 PM Email.

was his "understanding that we are doing this with the material experts," and asked that Ethicon clarify why the deposition should be postponed, and whether it would agree to a later date for a *de bene esse* deposition. Ex. K, Ed Wallace 7/12/2017 Email.

In response, Ethicon explained that it did not agree that a *de bene esse* deposition was appropriate under the circumstances, and that Ethicon's counsel would not have sufficient time to prepare for a *de bene esse* deposition as he had been out of the country for approximately two weeks, and would not return until three days before the deposition. Ex. L, David Thomas 7/13/2017 Email. Ethicon further explained that it would need time in between Dr. Guelcher's Wave 5 discovery deposition and any *de bene esse* deposition. *Id.* For these reasons, Ethicon again suggested that Plaintiffs defer the issue of a *de bene esse* deposition until after the Wave 5 discovery deposition. *Id.*

On the same day, Plaintiffs' counsel informed Ethicon that they would proceed with the *de bene esse* deposition as noticed. Ex. M, Ed Wallace 7/13/2017 12:46 PM Email. Plaintiffs' counsel subsequently confirmed that he would not accommodate the request from Ethicon's counsel because he did not perceive it to be a "personal or scheduling issue[.]" Ex. N, Ed Wallace 7/13/2017 6:27 PM Email.

After Ethicon once again attempted to clarify any misunderstanding and resolve the issue without involvement from the Court, Plaintiffs rebuffed Ethicon's efforts, stating that the parties "disagree on . . . the idea that there will be two depositions," and the issue should be decided by the Court. Ex. N, Ed Wallace 7/13/2017 8:15 PM Email.

At no time since Ethicon first requested deposition dates for Dr. Guelcher on May 24, 2017 have Plaintiffs provided any explanation as to why the expert witness they retained and disclosed to testify would be unavailable for all Wave 5 trials—none of which have been

scheduled—or any other trial for which they now seek to preserve his testimony. Plaintiffs' unilateral notice of a *de bene esse* deposition is inconsistent with the Federal Rules of Civil Procedure and applicable case law, and permitting Plaintiffs to proceed with such a deposition would result in significant prejudice to Ethicon.[2]

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b)(2), a court must "limit the frequency or extent of discovery" if it determines that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; the party seeking the discovery has had ample opportunity to obtain the information by discovery in the action; or the burden or the proposed discovery is outside the scope of Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Furthermore, Pretrial Order #38 provides that "[i]f either side believes that the other is taking unnecessary or irrelevant depositions they may bring the issue to the Court for appropriate resolution." PTO #38 at § C(1) [ECF 409].

PTO #38 also sets forth the procedure for the use of depositions in this MDL, noting that such use must be "under the conditions prescribed in Fed. R. Civ. P. 32(a)(1)-(4) or as otherwise permitted by the Federal Rules of Evidence . . . ." PTO #38 at § J. Federal Rule of Civil Procedure 32(a) codifies the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person. *See, e.g.*, *Garcia-Martinez v. City & Cnty. of Denver*, 392 F.3d 1187, 1193 (10th Cir. 2004) ("[A]lthough the federal rules provide a mechanism for the admission of deposition testimony, they do not alter the 'long-established principle that

---

[2] Ethicon is aware that in some cases pending in Pennsylvania state court, Plaintiffs have cross-noticed certain *de bene esse* depositions for use in this MDL. To the extent Plaintiffs seek to use any such depositions during the trial of any case that was in this MDL, Ethicon reserves the right to object to such use at that time.

testimony by deposition is less desirable than oral testimony.'"); *Bobrosky v. Vickers*, 170 F.R.D. 411, 413 (W.D. Va. 1997) ("Rule 32 assumes that under normal circumstances the deposition of a witness will *not* be used at trial in lieu of that witness's live testimony.").

Rule 32(a)(4)—pertaining to unavailable witnesses—is the only potential basis for Plaintiffs' current request to take the *de bene esse* deposition of their own expert witness to use in numerous trials.[3] Rule 32(a)(4) sets out five instances in which an unavailable non-party witness's deposition may be used at trial:

> **(4)** *Unavailable Witness.* A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
>
> **(A)** that the witness is dead;
>
> **(B)** that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;
>
> **(C)** that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;
>
> **(D)** that the party offering the deposition could not procure the witness's attendance by subpoena; or
>
> **(E)** on motion and notice, that exceptional circumstances make it desirable--in the interest of justice and with due regard to the importance of live testimony in open court--to permit the deposition to be used.

Fed. R. Civ. P. 32(a)(4). A party seeking to affirmatively use the deposition of a non-party witness at trial must satisfy one of the unavailability requirements provided by Rule 32(a)(4). *See, e.g., Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990).

**III.    ARGUMENT**

    **A.    The Court Should Enter An Order Precluding Plaintiffs From Proceeding With The *De Bene Esse* Deposition of Dr. Guelcher.**

---

[3] Rule 32(a)(2) involves impeachment, and Rule 32(a)(3) pertains to the deposition of a party or agent. Thus, Plaintiffs cannot invoke subsections (a)(2) or (a)(3) to take a *de bene esse* deposition of Dr. Guelcher.

1.  **Plaintiffs have not established that Dr. Guelcher is unavailable to testify at the trial of any of the cases in which he was designated as an expert witness.**

The Court should preclude Plaintiffs from taking the *de bene esse* deposition of Dr. Guelcher because such depositions are appropriate only if the witness is unavailable to testify at trial, and Plaintiffs have made no such allegation or showing that Dr. Guelcher would be unavailable to testify at any trial in which he has been designated.[4]

Federal Rule of Civil Procedure 32 provides that the affirmative use of a non-party's deposition at trial is only appropriate if a witness is "unavailable" to testify at the trial. Fed. R. Civ. P. 32(a); *see also Greenidge v. Ruffin*, 927 F.2d 789, 793 (4th Cir. 1991) ("The videotaped deposition is appropriate usually when the witness is unavailable to testify in court"); *Bobrosky v. Vickers*, 170 F.R.D. 411, 413 (W.D. Va. 1997) ("Rule 32 assumes that under normal circumstances the deposition of a witness will not be used at trial in lieu of that witness's live testimony"); *see also* Charles A. Wright & Arthur R. Miller, Federal Prac. & Proc. § 2146 ("If a nonparty witness is available to testify, the deposition cannot be used in lieu of live testimony (although it is available to impeach).").

---

[4] Ethicon anticipates that Plaintiffs may seek to use any *de bene esse* deposition in trials outside of Wave 5. In addition to violating the Federal Rules of Civil Procedure and working a severe prejudice on Ethicon, any such effort would impermissibly circumvent this Court's pretrial orders. The Fourth Circuit recognized that "the Federal Rules of Civil Procedure make no distinction for use of a deposition at trial between one taken for discovery purposes and one taken for use at trial (*de bene esse*)." *Tatman v. Collins*, 938 F.2d 509, 510 (4th Cir. 1991). On this basis, several district courts within the Fourth Circuit have refused to allow parties to take *de bene esse* depositions that fall outside of operative scheduling order. *See, e.g., Tube City IMS, LLC v. Severstal U.S. Holdings, LLC*, No. 5:12-CV-31, 2014 WL 4782949, at *2 (N.D. W. Va. Aug. 28, 2014), *aff'd*, No. 5:12CV31, 2014 WL 4782957 (N.D. W. Va. Sept. 24, 2014) (prohibiting plaintiff from taking trial deposition after discovery deadline in Court's scheduling order); *In re Horstemeyer*, 557 B.R. 427, 431–32 (Bankr. D.S.C. 2016) (denying request to take *de bene esse* deposition after the close of discovery). Here, Plaintiffs' unusual request to take a *de bene esse* deposition of Dr. Guelcher is not contemplated by any of the numerous scheduling orders issued by this Court. For each of the six Waves of cases ordered in this litigation, the Court has entered a Docket Control Order setting forth discovery deadlines, including deadlines for expert witness depositions. The deadlines for expert witness depositions and the close of discovery in Waves 1-4 have long since passed, and cases in Waves 1 and 2 are in the process of being remanded to their constituent jurisdictions for trial. Plaintiffs have provided no reason—let alone a compelling one—to justify their request to disregard the Court's earlier scheduling orders and take a *de bene esse* deposition for use in any of those proceedings.

Thus, a party cannot affirmatively use a non-party's deposition at trial unless the party first demonstrates that the witness is unavailable due to one of the reasons articulated in Rule 32(a)(4). *See LaBelle v. Bills*, 885 F.2d 865, 1989 WL 106852 (4th Cir. 1989) (unpublished) (concluding district court did not abuse its discretion in excluding deposition of treating physician under Rule 32(a)(3) where "there was an insufficient showing that the physician was unavailable for trial."); *see also Hall v. Jaeho Jung*, 819 F.3d 378,383 (7th Cir. 2016) (no abuse of discretion where party failed to show that treating physician was unavailable within the meaning of Rule 32); *Hadjih v. Evenflo Co., Inc.*, 579 Fed. Appx. 649, 654 (10th Cir. 2014) ("Deposition testimony is normally inadmissible hearsay, but [FRCP] 32 creates an exception" provided that the witness is unavailable); *Bobrosky*, 170 F.R.D. at 416 (precluding depositions of doctors in lieu of live testimony because defendants did not present any evidence that the witnesses were unable to appear in court).

While Rule 32(a) only explicitly addresses the use of a deposition, courts regularly interpret Rule 32(a)(4) as requiring a showing of unavailability for both the use of a deposition in a court proceeding and taking a *de bene esse* deposition. For example, the Fourth Circuit affirmed a district court's refusal to permit a party to take videotaped deposition for the specific purpose of playing the deposition at trial. *Greenidge*, 927 F.2d at 793. In so doing, the Fourth Circuit emphasized the importance of the unavailability of a witness, explaining:

> We recognize the trial judge's discretion in allowing or disallowing the taking of videotaped depositions requested by a plaintiff. The utilization of videotaped depositions is not uncommon in appropriate situations. <u>The videotaped deposition is appropriate usually when the witness is unavailable to testify in court.</u> In the present case, the witness was readily available, and the trial judge decided that an accurate re-enactment could not be assured. He exercised his discretion in disallowing the re-enactment.

*Id.* (emphasis added) (citations omitted).[5]

Moreover, courts have explained that a prerequisite for a *de bene esse* deposition of a non-party is a showing by the requesting party of a "good faith need for preservation of testimony based on compelling circumstances such as advance age, health concerns of other special circumstances," as opposed to just "mere convenience" or expense. *See Bank of Am., NA. v. Pushing Grey*, No. CV 11-1191, 2014 WL 7477714, at * 1 (E.D.N.Y. Oct. 8, 2014) (denying motion for leave to conduct *de bene esse* deposition where relief requested appeared to be based on "mere convenience" and not a "good faith need for preservation of testimony based on compelling circumstances such as advance age, health concerns of other special circumstances"); *Mann v. Calflex Mfg. Inc.*, No. SA-06-CV-0338, 2008 WL 858988, at * 1 (W.D. Tex. Mar. 31, 2008) (denying motion for leave to take preservation deposition where motion argued that it would be "less expensive and more convenient" than producing witness live at trial rather than indicating that testimony was only available for trial by means of deposition).

Furthermore, in the case of experts voluntarily designated by a party, "unavailability" means something more than merely that the witness is beyond the subpoena power of the court. Rather, since parties exercise their own discretion in retaining experts, courts generally hold that parties must take all reasonable steps to secure their expert's attendance at trial, and show that no other expert of similar qualifications is available or that the unavailable expert has some unique testimony to contribute. *See, e.g., Kirk v. Ravmark Indus., Inc.*, 61 F.3d 147, 165 (3d Cir. 1995)

---

[5] Indeed, several district courts in the Fourth Circuit that permitted a party to proceed with a *de bene esse* deposition of a non-party did so only upon an affirmative showing that the witness was unavailable pursuant to Rule 32. *See, e.g., In re: NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2016 WL 3742135, at *2 (E.D.N.C. July 7, 2016) (allowing the taking of a doctor's *de bene esse* deposition where there was "no question as to the legitimacy of [the doctor's] potential unavailability."); *Patterson v. W. Carolina Univ.*, No. 2:12CV3, 2013 WL 1629132 (W.D.N.C. April 16, 2013) (finding defendant satisfied the standard set forth in the pretrial order for the taking of a *de bene esse* deposition where defendant demonstrated that the witness was unavailable pursuant to Rule 32); *Bouygues Telecom, S.A. v. Tekelec, Inc.*, 238 F.R.D. 413, 414-15 (E.D.N.C. 2006) (allowing the taking of an overseas *de bene esse* deposition where the witness was in a foreign country and demonstrated her unwillingness to submit voluntarily to examination).

(finding no sufficient showing that physician expert was unavailable where party had not used "reasonable means" to enlist the expert's trial appearance); *Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co*. No. 97-529 MMS, 2000 WL 135129, * 2 (D. Del. 2000) ("Parties are expected to use other reasonable means to procure the attendance of their experts because the parties select their experts and arrange for their appearance at trial.").

Here, Plaintiffs have neither alleged nor shown that Dr. Guelcher is unavailable to testify at trial, and have not provided any legal authority to support the taking of a *de bene esse* deposition in the absence of such a showing. Rather, Plaintiffs seek to take a deposition to be used in all Wave 5 cases—and potentially others as well—without any showing of need. Indeed, Plaintiffs' sole explanation for the taking of Dr. Guelcher's *de bene esse* deposition is that their "understanding is that we are doing this with the materials experts[.]" *See* Ex. K, Ed Wallace email to David Thomas (July 12, 2017).

Plaintiffs' attempt to take a *de bene esse* deposition of Dr. Guelcher under these circumstances is contrary to Rule 32 and the law of the Fourth Circuit. *See* Fed. R. Civ. P. 32(a)(4); *Greenidge*, 927 F.2d at 793. Even if Plaintiffs anticipate Dr. Guelcher's unavailability to testify in future court proceedings or argue that he may be outside of a court's subpoena power in future trials, Plaintiffs have retained Dr. Guelcher as their expert witness, and therefore he is within their control. As such, Plaintiffs should ensure that Dr. Guelcher is able to appear to give live oral testimony.

Finally, Plaintiffs cannot rely on "exceptional circumstances" as grounds for taking a *de bene esse* deposition of Dr. Guelcher. Fed. R. Civ. P. 32(a)(4)(E). Rule 32(a)(4)(E) provides that "on motion and notice, [] exceptional circumstances make it desirable—in the interest of justice with due regard to the importance of live testimony in open court—to permit the deposition to be

9

used." Fed. R. Civ. P. 32(a)(4)(E). As an initial matter, Plaintiffs have not filed a motion or notice with this Court demonstrating "exceptional circumstances."

Even if Plaintiffs had moved for leave to take the *de bene esse* deposition of Dr. Guelcher, any exceptional circumstances upon which they rely must be tied to the witness's unavailability, not other unrelated factors such as expense, inconvenience, or prejudice. *See, e.g.*, *Bobrosky*, 170 F.R.D. at 413 (exceptional circumstances must be "appropriately analogous to the unavailability of a witness," not just great expense); *Angelo v. Armstrong World Indus, Inc.*, 11 F.3d 957, 963 (10th Cir. 1993) (defining "exceptional circumstances" as a reason the deponent cannot appear, not merely prejudice that would result if the deposition testimony was excluded). Plaintiffs cannot satisfy this standard because, as discussed above, they have neither alleged nor shown Dr. Guelcher's unavailability, let alone exceptional circumstances that would prevent him from testifying at trial.

And while Ethicon anticipates that Plaintiffs may argue that Dr. Guelcher's professional responsibilities constitute an "exceptional circumstance," courts have regularly rejected this argument—even in the context of physicians unavailable due to their busy medical practices and treatment of patients. *See Bobrosky*, 170 F.R.D. at 414-15 ("Federal court, unlike Virginia state court, does not consider doctors automatically unavailable for the purpose of allowing their depositions to be used in lieu of live testimony."); *Angelo*, 11 F.3d at 963-64 (finding that a doctor's refusal to appear due to his extremely busy schedule was not an "exceptional circumstance" where proponent of deposition had not proved that they were unable to procure the doctor's appearance by subpoena or other reasonable means).

Here, Dr. Guelcher is a biochemical engineer, not a medical doctor treating patients. Thus, any argument by Plaintiffs that his work responsibilities constitute exceptional circumstances rings hollow, and should be rejected by this Court.

In sum, this Court should preclude Plaintiffs from taking the *de bene esse* deposition of Dr. Guelcher because Plaintiffs have not demonstrated his unavailability to testify at trial.

> **2. Ethicon would be severely prejudiced if Plaintiffs are permitted to conduct a *de bene esse* deposition that could potentially be used in a number of factually distinct trials.**

Allowing Plaintiffs to proceed with a *de bene esse* deposition of Dr. Guelcher on July 18, 2017 would significantly prejudice Ethicon by (i) depriving Ethicon of the ability to cross-examine him at trial regarding the unique aspects of any of the numerous individual cases in which he has been designated; and (ii) denying Ethicon an adequate opportunity to even prepare for such a deposition.

As courts and commentators have recognized, testimony by deposition is less desirable than live, oral testimony through which the jury can consider and evaluate the witness's credibility. *See Napier*, 102 F.2d at 469 ("The deposition has always been, and still is, treated as a substitute, a second-best not to be used when the original is at hand."); *Garcia-Martinez*, 392 F.3d at 193 ("[A]lthough the federal rules provide a mechanism for the admission of deposition testimony, they do not alter the long-established principle that testimony by deposition is less desirable than oral testimony.") (quotations and citation omitted); Wright & Miller, § 2142 ("The restrictions imposed by Rule 32 make it clear that the federal rules have not changed the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person.").

This long-standing principle carries even greater significance in this litigation, as plaintiffs in the Wave cases have a variety of different medical histories, alleged injuries, and

mesh products. In the deposition noticed by Plaintiffs, it would be impossible for Ethicon to meaningfully cross-examine Dr. Guelcher about a specific plaintiff's unique injuries, potential alternative causation explanations, and other case-specific nuances. Ethicon would also be denied the opportunity of confronting Dr. Guelcher at trial with testimony that had been adduced in that case, or cross-examining him regarding scientific literature or other developments subsequent to the *de bene esse* deposition.

Even if the Court permits Plaintiffs to proceed with a *de bene esse* deposition of Dr. Guelcher—and it should not—allowing them to do so on July 18, 2017 would significantly prejudice Ethicon by denying it an adequate opportunity to prepare for a deposition that could be used in numerous trials around the country. As an initial matter, Plaintiffs waited until six days before Dr. Guelcher's discovery deposition was to take place—49 days after Ethicon first requested dates for Dr. Guelcher's Wave 5 deposition—to notify Ethicon that they intended to take a Dr. Guelcher's trial deposition at the same time. *See* Ex. A, David Thomas 5/24/2017 Email (Ethicon's initial request for deposition dates); Notice of Videotaped *De Bene Esse* Testimony of Scott Guelcher, Ph.D. (July 12, 2017) [ECF 4124].

Moreover, as was made clear to Plaintiffs, Ethicon's counsel has been out of the country on business for two weeks, and will not return until 3 days before the deposition. *See* Ex. L, David Thomas 7/13/2017 Email.

Plaintiffs provided no justification for their eleventh-hour notice, and it would be highly prejudicial to Ethicon to impose on its counsel the burden of preparing for a trial deposition under such circumstances. But, despite the professional courtesy extended by Ethicon after Plaintiffs' counsel unilaterally cancelled Dr. Guelcher's initial deposition, Plaintiffs now refuse

to accommodate Ethicon's counsel by addressing the issue of a *de bene esse* deposition at a later time.

Furthermore, permitting Plaintiffs to proceed with a *de bene esse* deposition on July 18, 2017 would effectively eliminate Ethicon's ability to prepare for trial with respect to Dr. Guelcher's testimony. Since Dr. Guelcher was last deposed in this litigation, he has disclosed new opinions and reliance materials, and Ethicon is entitled to a discovery deposition on those issues before trial. But allowing a *de bene esse* deposition of Dr. Guelcher at the same time as Ethicon's discovery deposition would compress the time between Dr. Guelcher's deposition and his trial testimony to the point of nonexistence. Nothing in the Federal Rules of Civil Procedure, the case law, or any of this Court's pretrial orders contemplate such a perverse and prejudicial scenario.

Finally, Plaintiffs' insistence on proceeding with the *de bene esse* deposition on the same day as the discovery deposition will result in one of two unreasonable scenarios. If Plaintiffs intend for Ethicon to conduct its three-hour discovery deposition and then conduct a separate *de bene esse* deposition subject to the seven-hour limit imposed by Rule 30(d)(1), this would entail a minimum of ten hours of deposition not including breaks. Such an approach would be unduly onerous on the parties and the witness, and impair Ethicon's ability to fully cross-examine the witness. Alternatively, to the extent Plaintiffs intend to eschew the Docket Control Order and conduct both depositions in the seven-hour period, Ethicon would obviously be deprived of its right to conduct a full cross-examination. Neither scenario is contemplated by the Rules, and the Court should not permit Plaintiffs to unilaterally burden Ethicon or deprive it of its right to fully cross-examine Plaintiffs' expert witness.

For all of these reasons, the Court should grant Ethicon's Motion and enter an order prohibiting Plaintiffs from taking a *de bene esse* deposition of Dr. Guelcher.

## CONCLUSION

For the foregoing reasons, Ethicon respectfully requests that this Court grant Ethicon's Motion and enter an order precluding Plaintiffs from taking a *de bene esse* deposition of Dr. Guelcher.

Respectfully submitted,

*/s/ David B. Thomas*
David B. Thomas (W.Va. Bar #3731)
Philip J. Combs (W.Va. Bar #6056)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 25338
(304) 414-1800
dthomas@tcspllc.com

*/s/ Christy D. Jones*
Christy D. Jones
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
601.985.4523
christy.jones@butlersnow.com

COUNSEL FOR DEFENDANTS ETHICON, INC.
AND JOHNSON & JOHNSON

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

| | |
|---|---|
| IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL 2327 |
| THIS DOCUMENT RELATES TO:<br>WAVE 5 CASES | JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to CM/ECF participants registered to receive service in this MDL.

*/s/ David B. Thomas*
David B. Thomas (W.Va. Bar #3731)
Philip J. Combs (W.Va. Bar #6056)
Thomas Combs & Spann, PLLC
300 Summers Street, Suite 1380
P.O. Box 3824
Charleston, WV 25338-3824
(304) 414-1800