**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY LITIGATION | **Master File No. 2:12-MD-02327
MDL No. 2327** |
| THIS DOCUMENT RELATES TO: WAVE 5 CASES | **JOSEPH R. GOODWIN
U.S. DISTRICT JUDGE** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MEMORANDUM OF
LAW FOR PROTECTIVE ORDER AND PLAINTIFFS' MOTION FOR A *DE BENE
ESSE* DEPOSITION OF DR. SCOTT A. GUELCHER, PH.D.**

Plaintiffs submit this memorandum in response to Defendant Ethicon's ("Ethicon's") Memorandum of Law for a Protective Order Precluding the *De Bene Esse* Deposition of Plaintiffs' Expert Witness Scott A. Guelcher, Ph.D. ("Dr. Guelcher").[1]  Plaintiffs in turn move the Court for an Order allowing a *de bene esse* deposition of Dr. Guelcher.

**I.     INTRODUCTION**

This MDL was created specifically to foster the goals of convenience of the parties and their witnesses, efficiency, economy, and the avoidance of unnecessary expense and redundancy or duplication of effort.  (Dkt. No. 1, JPML Transfer Order, p. 1-2 ("[C]entralization [] in the Southern District of West Virginia will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation…Centralization therefore will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.").  Ethicon's proposed protective order would undermine every one of these beneficial purposes for which this MDL was formed.

---

[1] Dkt. No. 4133. (Hereafter referred to as "Ethicon's Brief").

To promote the goals for which this MDL was formed, the Court appointed a group of attorneys—the Plaintiffs' Steering Committee and Lead Counsel—who were tasked with coordinating the common pre-trial discovery on behalf of all MDL 2327 plaintiffs—which eventually numbers more than 38,000 cases.[2]  (Dkt. No. 6, PTO #1, Paragraph 19(4)).  In order to move cases toward resolution, and to provide the parties with information about the merits and potential value of cases, the Court ordered bellwether trials, and later several "waves" of cases to be prepared for trial.  There are now six waves in this MDL—totaling 1,800 cases—which have been ordered to be worked up for potential trials in the wave process.[3]

In the bellwether and initial wave process, the parties conducted general expert discovery, including submission of general expert reports, general expert depositions, and general expert *Daubert* motions.  The Court expected Plaintiffs' leadership to identify general experts—experts who would offer general testimony common to all of the cases.  The Court's Docket Control Orders state that because the parties have conducted substantial general expert discovery in the bellwether cases and waves, they "are cautioned not to engage in duplicative general expert discovery," and further stating that "[i]t is the court's expectation that these experts will overlap for plaintiffs who have the same product(s), to some extent, if not entirely."  (Dkt. No. 1790, (Wave 2 DCO, ¶A.3.a.; Dkt. No. 1824, (Wave 3 DCO, ¶A.3.a.; Dkt. No. 3061(Wave 4 DCO), ¶A.3.a.; Dkt. No. 3398, (Wave 5 DCO, ¶A.3.a.; Dkt. No. 3748, (Wave 6 DCO, ¶A.3.a.).  Thus, the Court's Orders intended that these general experts should not be subject to undue burden or inconvenience, nor should the parties (or the Court) be subject to unnecessary expense and duplication of effort regarding their general testimony.

---

[2] http://www.wvsd.uscourts.gov/caselist/caseviewlist.aspx?mdl=2327
[3] Wave 1 (200 cases), Wave 2 (200 cases), Wave 3 (200 cases), Wave 4 (400 cases), Wave 5 (400 cases), and Wave 6 (400 cases).

As this Court is well-aware by this point, Dr. Scott Guelcher, Ph.D., is a biomaterials expert identified by Plaintiffs' co-lead counsel for purposes of providing general opinions about the defective design of the Ethicon pelvic mesh products at issue in these cases. Dr. Guelcher is a Professor of Chemical and Biomolecular Engineering at Vanderbilt University and his work in the field of biomaterials—both within this litigation and outside of it—makes him uniquely qualified to offer his opinions in these cases. Dr. Guelcher's opinions are well-known to Ethicon. He has been deposed by Ethicon's counsel on multiple occasions with respect to the general opinions he offers in these cases—both in the bellwether phase and again in the first trial wave of cases. Ethicon has filed, and the Court has ruled upon, multiple *Daubert* motions with respect to Dr. Guelcher's general expert opinions.[4] Dr. Guelcher also testified at the *Huskey* bellwether trial.[5] In wave 5, like he has done in each prior wave, he provided one general liability report applicable to all plaintiffs. He did not offer any plaintiff-specific opinions.[6]

In order to preserve Dr. Guelcher's general liability testimony for any potential trials in the remaining wave cases— and possibly any future cases to be remanded or otherwise prepared for trial— the Plaintiffs noticed Dr. Guelcher's *de bene esse* deposition on July 12, 2017.[7]

Ethicon opposes Plaintiffs' ability to notice or take Dr. Guelcher's *de bene esse* deposition on various grounds. From its pleadings, it would appear to be Ethicon's position that Plaintiffs first must litigate and establish that Dr. Guelcher is "unavailable" for an individual plaintiff's trial, and only after he has been determined to be unavailable for a particular case, Dr.

---

[4] *See Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 709-710 (S.D. W. Va. 2014).
[5] *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 737 (S.D. W. Va. 2014) (he testified on Aug. 25, 2014). Plaintiffs have never asked that Dr. Guelcher's *de bene esse* deposition be taken for bellwethers.
[6] *See* Ex. A, Dr. Guelcher Wave 5 Report.
[7] Plaintiffs informed Counsel for Defendants on 6/1/2017 of their intention to take and preserve Dr. Guelcher's deposition testimony for all cases. Ex. B, Ed Wallace 6/1/2017 email. Counsel for Defendants never objected to this prior to their Motion and their brief to the Court misleadingly neglects to mention this. The Court shouldn't concern itself with Defendants' inexplicable 3 page recitation of scheduling issues, however, as they are irrelevant and not accurate.

Guelcher would then have to give a separate *de bene esse* deposition for purposes of each such individual case in which is is unavailable (*i.e*., potentially hundreds of cases). Ethicon's motion thus runs counter to the fundament purposes of this MDL proceeding, and this wave process specifically. Accepting Ethicon's position would unnecessarily increase the costs for the parties, would be grossly inefficient and inconvenient, would invite wasteful and redundant litigation and inherent delay, and would create at least the potential for inconsistent results in different remand District Courts. Moreover, Ethicon's position of preventing a *de bene esse* deposition of Dr. Guelcher means that individual plaintiffs in the various remand trials would have to fight with each other over what trials Dr. Guelcher testifies in, thereby creating conflicts between the various remand courts, judges, and plaintiffs in this MDL. No one is in a better position to prevent this chaos from happening than this MDL Court. And there is no better way to prevent it than through a *de benne esse* deposition that could be used by plaintiffs in trials across the country.

Ethicon's position would also impermissibly burden and inconvenience Dr. Guelcher by asking him to spend years away from his family and day job in order to travel around the country in order to physically attend hundreds of trials to offer the exact same general liability testimony over and over again. Thus, Ethicon's position would contravene the intent of this MDL proceeding and of the Court's orders, which were plainly intended to avoid unduly burdening general experts and avoiding unnecessary expense and redundancy of efforts. Common sense, as well as guidance from other MDL courts around the country, dictate that this Court allow the *de bene esse* deposition of Dr. Guelcher to be taken so that his general causation testimony can be preserved and played by videotape at future trials. Ethicon's Motion should be denied.

## II.    ARGUMENT

### A.  Ethicon's attempt to prevent Dr. Guelcher's *de bene esse* deposition flouts the purposes of this MDL, ignores instructive precedent from other mass tort MDL proceedings and the Manual for Complex Litigation, and is legally without support.

It is impractical— if not impossible— to expect that a general expert in an MDL will be able to testify in potentially hundreds or thousands of individual cases throughout the country. To that end, general experts in an MDL setting are allowed—if not expected—to testify by videotape to preserve their testimony for subsequent trials in the MDL.  For example, the Manual for Complex Litigation (4th) instructs as follows:

> 23.345 Use of Videotaped Depositions. **Videotaping expert depositions is particularly appropriate for several reasons**: **It preserves the testimony of an expert <u>who may be unavailable for trial or whose testimony may be used in more than one trial or in different phases of a single trial</u>**; it also permits demonstrations (for example, of tests or of large machinery not feasible in the courtroom); and it provides a more lively and interesting presentation than reading a transcript at trial. Federal Rule of Civil Procedure 30(b)(2) permits a party to videotape a deposition unless otherwise ordered by the court.

In a seminal article regarding the MDL bellwether process, the Hon. Eldon Fallon discussed the role of coordinating counsel in guiding future trials if global resolution in the MDL is not achieved.  Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2338-40 (2008).  As Judge Fallon explained, the preservation and dissemination of expert reports, deposition and trial testimony (including videotapes, where applicable) for use in subsequent trials is one of the purposes of MDL pre-trial coordination, and it is this preservation that allows individual plaintiff's counsel to take the MDL "show on the road."  *Id.  See also, In re Diet Drugs Prods. Liab. Litig.*, No. 99-20593, 2002 U.S. Dist. LEXIS 19396, at *54-55 (E.D. Pa.2002) (discussing leadership's preparation of a "trial package," which included video excerpts of key depositions, which was "designed to enable plaintiffs' attorneys to try diet drug cases.").

In the "Fen-Phen" MDL, *In re Diet Drugs Prods. Liab. Litig.*, MDL Dkt. No. 1203, 2000 U.S. Dist. LEXIS 9037 (E.D. Pa.2000), MDL transferee Judge Bechtle recognized that videotaped *de bene esse* depositions of the general experts identified by the plaintiffs' leadership were not only proper, but practically necessary. As Judge Bechtle observed: "[t]he preservation depositions are especially important in the MDL sense, because **in most trials before transferor courts, [the plaintiffs' general experts] will not appear live, but will be offered on video to a jury**." *Id.* at *24 (Emphasis added).

Moreover, courts in the Fourth Circuit have recognized the important role of *de bene esse* depositions to preserve a witnesses testimony for future trials. *See Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P.*, No. 5:09-CV-352-F, 2011 U.S. Dist. LEXIS 13399, at *6-7 (E.D.N.C.2011) ("The Fourth Circuit, this court, and other courts continue to recognize the distinct role of a *de bene esse* deposition to preserve trial testimony and to distinguish it from a deposition taken for the purpose of discovery.").

Ethicon's assertion that *de bene esse* depositions of experts in the MDL are not allowed without a case-by-case demonstration of "unavailability" ignores this instructive authority, as well as the practical necessities of this nationwide MDL. It would defeat the purpose of the MDL— and would prevent any MDL plaintiffs from having any experts willing to serve as their general experts— if these experts would be subject to potentially limitless trials and/or trial depositions into the indeterminate future.

Having one videotaped trial deposition of Dr. Guelcher— making his testimony available for use in any future trials—would unquestionably serve the interests of the convenience of the parties, their counsel, and Dr. Guelcher, and would likewise foster the goals of efficiency, economy, and avoidance of unnecessary expense and duplication of effort for which this MDL

was created.  As set forth above, the Court's Docket Control Orders plainly instruct that general experts' testimony is expected to apply to MDL plaintiffs with the same product, and that these general experts should not be subject to unnecessary burden or inconvenience from duplicative depositions.  (Dkt. No. 1790, (Wave 2 DCO, ¶A.3.a.; Dkt. No. 1824, (Wave 3 DCO, ¶A.3.a.; Dkt. No. 3061(Wave 4 DCO), ¶A.3.a.; Dkt. No. 3398, (Wave 5 DCO, ¶A.3.a.; Dkt. No. 3748, (Wave 6 DCO, ¶A.3.a.).  The Court's orders are consistent with the Section 22.84 of the Manual for Complex Litigation (4th), which provides "[l]**imiting repetitive depositions of some witnesses promotes efficiency, as does using videotaped depositions for witnesses likely to testify more than once**."  (Emphasis added).  In discussing methods to limit unnecessary duplication, the Manual notes that "[i]n mass tort litigation, such approaches may avoid the need for repetitive depositions of significant decision makers, defendants, **or experts**."  *Id.*  Dr. Guelcher's *de bene esse* deposition should be taken once in the MDL and then used by the remand courts in future trials.

Ethicon acknowledges in its brief that the Court should prevent testimony which is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive…."  *See* Defs' Brf. at 4.  This is exactly Plaintiffs' point – asking Dr. Guelcher to physically attend hundreds of trials in order to offer the exact same testimony over and over again would be "unreasonably…duplicative" and would go against the very purpose of the MDL.

The cases cited in Ethicon's brief do not address the unique circumstances of this large-scale MDL, where a single expert is expected to provide testimony on behalf of potentially

hundreds of plaintiffs in courts throughout the county.[8]  As such, they are all easily distinguished and provide no real guidance for the Court.  As recognized in *In re Oil Spill by the Oil Rig "Deepwater Horizon"*, No. 2179J, 2016 U.S. Dist. LEXIS 18248, at *25-26 (E.D. La.2016), "multidistrict litigation is a 'special breed of complex litigation' wherein case management serves as the 'engine that drives disposition on the merits,' … [so] greater deference is afforded to the MDL Court in connection with administrating the proceedings." (internal cits. omitted). This Court was tasked with presiding over an enormous and largely unprecedented MDL proceeding.  This Court took steps to move these cases forward efficiently and effectively, while minimizing duplication of efforts and unnecessary expense.  Ethicon's efforts to prevent Dr. Guelcher's *de bene esse* deposition would serve only the countervailing interests of delay, inconvenience, redundancy, inefficiency and increased cost.

> **B.  The question of whether Dr. Guelcher is "unavailable" to testify in a given trial is <u>not</u> required to be established before he is allowed to give a *de bene esse* deposition for purposes of use in this MDL.**

The question of whether Dr. Guelcher is "unavailable" to testify in a given individual trial is <u>not</u> required to be established before he is allowed to give a *de bene esse* deposition for purposes of use in this MDL.  Rule 32(a)(4), cited by Ethicon in its Brief, addresses the use of a deposition at trial.  As recognized in *Keller v. Orion Ins. Co., Ltd. of London, England*, 285 F.Supp. 906, 907 (D.Minn.1968):

> [T]he showing of the witness' availability at the time may be grounds to deny the use of the deposition at trial, but is not grounds for enjoining the taking of the deposition prior to trial; that is, **one desiring to take a deposition…need not show in advance that the witness will be unavailable at trial**.

---

[8] Ethicon's citation to a case from an asbestos MDL provides no real guidance to the Court here.  In *Kirk v. Ravmark Indus., Inv.*, 61 F.3d 147, 165 (3d Cir. 1995), unlike here, the issue was whether an expert's deposition could be admitted into evidence over hearsay objections.

(Emphasis added).[9]  Other courts have similarly allowed the *de bene esse* deposition of an expert witness when "anticipated unavailability" at trial has been shown based on the expert's busy professional schedule outside of litigation and potential to be in a different state from the trial at the time of trial.  *See Mills v. Dortch*, 142 N.J. Super. 410, 413-415 (1976) ("[I]t is to be anticipated that he will be unavailable for personal testimony at the time of trial. In light of this anticipated unavailability, plaintiff's motion for leave to take his *de bene esse* deposition will be granted.").

The question of Dr. Guelcher's availability or unavailability for any future trial should have no bearing on Plaintiffs' ability to take his *de bene esse* deposition now, to preserve his testimony for later trials.  As discussed above, there is significant precedent from complex litigation advocating for videotaped preservation depositions of common experts.  Moreover, it is simply practical common sense that MDL general experts are, in fact, unavailable to appear live at the trials of potentially hundreds of cases throughout the country for years to come.  Indeed, it is unreasonable and unrealistic for Ethicon to suggest that Dr. Guelcher should be considered presumptively "available" for potentially hundreds of trials in remand courts throughout the country for years to come.  The opposite is true—Dr. Guelcher's unavailability to testify at potentially hundreds of trials should be presumed here.  Dr. Guelcher's general liability opinions are relied upon by hundreds plaintiffs.  Unless he can find a way to be physically present at multiple places at once, he cannot possibly be available to testify at all potential future trials as a live witness.  To hold otherwise would largely defeat both the purpose of identification of general experts to testify on behalf of potentially hundreds or thousands of plaintiffs, and would

---

[9] Ethicon's own brief cites to *In re: NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2016 U.S. Dist. LEXIS 89074 (E.D.N.C.2016), which held that a *de bene esse* deposition was appropriate where plaintiffs had merely shown the "potential" for unavailability of the plaintiffs' own expert witness due to the expert's cancer diagnosis.

run counter to the goals of efficiency, economy, convenience, and non-duplication sought to be achieved in an MDL.

Ethicon's argument that "*under normal circumstances* the deposition of a witness will not be used at trial in lieu of that witness's live testimony" ignores instructive authority from nationwide complex litigation as well as the practical realities of MDLs.[10]  As discussed above, this is not a "normal circumstance," as this MDL— one of the largest ever— contains tens of thousands of plaintiffs with potentially hundreds of cases set for remand trials around the country.  Moreover, Ethicon's position is puzzling as Ethicon itself has forced Plaintiffs to play videos of its own corporate witnesses at prior bellwether trials—something Ethicon now seems to think is prejudicial or not "desirable."[11]

Ethicon's tenuous suggestion that a *de bene esse* deposition should be denied when the deposition would be based on "mere convenience" is meritless under the circumstances present, as the reasons for Dr. Guelcher's *de bene esse* go well beyond "mere convenience."[12]  Dr. Guelcher has demonstrated his willingness to appear at trial (unlike Ethicon's own fact witnesses), but he simply can't be at all of them.[13]  As such, Plaintiffs' request for a *de bene esse* deposition easily constitutes the "showing of need" and the "good-faith need for  preservation of testimony" Ethicon claims is required.[14]  Additionally, Dr. Guelcher has "unique testimony to contribute," as he is one of only two or three experts in the world who have spent their careers— including the last several years of this litigation—studying the properties of the materials at issue

---

[10] Ethicon's Brief at 6 (italics added).
[11] Ethicon's Brief at 4.
[12] Ethicon's Brief at 8.
[13] Dr. Guelcher has testified at numerous trials around the Country: *E.g Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 737 (S.D. W. Va. 2014); *Albright v. Boston Sci. Corp.*, 58 N.E.3d 360, 365  (Mass. App. Ct.2016); *Barba v. Boston Sci. Corp.*, 2015 Del. Super. LEXIS 537, at *18-20 (Dep. Super. Ct.2015).
[14] Ethicon's Brief at 8-9.

in these cases.  His professional experience makes him unique and there are no other experts with similar knowledge and expertise who could step in and replace him.

Ethicon concedes that *de bene esse* depositions are appropriate under "compelling circumstances," but proceeds to wholly ignore the actual circumstances presented in this MDL.[15] For example, Ethicon repeatedly refers to "trial" in the singular—as if Dr. Guelcher's general liability testimony would only be needed in one "trial"—and makes no reference to the hundreds of trials that will potentially occur.  This fact, among others, renders Ethicon's citation to "authority" unconvincing.  Ethicon's citation to *Angelo v. Armstrong World Indus, Inc.*, 11 F.3d 957, 963 (10th Cir. 1993) for the proposition that Plaintiffs cannot show "exceptional circumstances" to justify Dr. Guelcher's unavailability is without merit.  First, *Armstrong* addressed the issue of whether an expert's discovery deposition—not a *de bene esse* trial preservation deposition—could be admitted into evidence over a hearsay objection.  *Id.* at 962-963.  Second, the *Armstrong* plaintiffs did not describe any circumstances justifying admission of the deposition other than the expert's refusal to appear at trial.  *Id.* at 964.  Here, Plaintiffs have demonstrated the circumstances which may make Dr. Guelcher unavailable for the remand trials—the fact that he cannot possibly testify in hundreds of trials around the country.  As referenced above, the cases cited in Ethicon's brief do not addresses the unique circumstances of this  large-scale MDL, where a single expert is expected to provide testimony on behalf of potentially hundreds of plaintiffs in courts throughout the county.[16]  In short, Plaintiffs do not argue that *de bene esse* depositions should always be accepted, or that is is an "abuse of discretion" to deny a *de bene esse* deposition.[17]  But, as stated above, a *de bene esse* deposition is

---

[15] Ethicon's Brief at 8.
[16] Ethicon cites to several single-occurrence cases where a *de bene esse* deposition was denied under the circumstances of those cases. Ethicon's Brief at 7-9.
[17] *See* Ethicon's Brief  at 7.

appropriate under the circumstances here.  The extensive size of this MDL and the impossibility of Dr. Guelcher appearing at all potential future trials constitute the special circumstances that make it advisable to take a *de bene esse* deposition of Dr. Guelcher; so his videotaped testimony can be preserved for future trials.[18]

Dr. Guelcher has extensive responsibilities outside of the litigation context, as he is currently a Professor of Chemical and Biomolecular Engineering at Vanderbilt University and has a full academic schedule that includes teaching and supervising the research of graduate students.  Having devoted a substantial portion of his time and efforts to this litigation—for several years—it is simply unreasonable to expect Dr. Guelcher to continue to set aside his personal and professional obligations (outside of this litigation) to testify at potentially hundreds of trials to be conducted for years to come.  Doing so would only serve to discourage the actual "experts" working in a given field—as opposed to "professional experts"—from taking part in MDL litigation such as this.

The Court expected the MDL Plaintiffs' leadership to make Dr. Guelcher's (and other general experts') testimony available for use at trial by MDL plaintiffs, but the Court expressly ordered that these general experts would not be subject to redundant or burdensome discovery. The Court's rationale applies here.  As is standard MDL practice, and as instructed in the Manual for Complex Litigation, Dr. Guelcher should be allowed to give a *de bene esse* deposition for use at future MDL trials.

---

[18] The 8th Circuit has held found that a deposition of a witness could be used in lieu of live testimony in the specific case of the witness being required to appear in another court on the same day.  *See Nationwide Mut. Fire. Ins. Co. v. Dunkin*, 850 F.2d 441, 443 (8th Cir. 1988).

**C.  Ethicon's argument that it would somehow be prejudiced by a *de bene esse* deposition of Dr. Guelcher cannot withstand scrutiny.[19]**

Contrary to Ethicon's assertion, it would not be prejudiced by Dr. Guelcher's trial preservation deposition.  Dr. Guelcher is a general causation expert—he does not offer case-specific opinions that vary from plaintiff–to-plaintiff.  Therefore, Ethicon's complaint that it would be prohibited from cross-examining Dr. Guelcher regarding the "unique aspects of the numerous individual cases"— the plaintiff's medical histories, injuries, and potential alternative causation— is simply misguided.  Dr. Guelcher is a biomaterials expert, and he will testify generally in his trial deposition about the Ethicon pelvic mesh products' design consistent with his Rule 26 reports, within the confines of the Court's prior *Daubert* rulings regarding his testimony.  Dr. Guelcher has no knowledge or information regarding any wave plaintiffs' individual medical history or injury—and he therefore has not offered and is not offering any opinions that have any relation or relevance to these so-called "unique aspects" of any of the remaining plaintiffs' cases.  Even if Dr. Guelcher appeared live at every future MDL wave trial, Ethicon would not be able to cross-examine him about an individual plaintiff's "unique aspects" because that would be completely irrelevant and unrelated to any opinion he has offered in these remaining cases.[20]

There is no mystery, no surprise, and no variation to his opinions and trial testimony.  He provides purely scientific, biomaterials general causation opinions.  There is no opinion or testimony that Dr. Guelcher may offer in his trial preservation deposition that Ethicon does not

---

[19] As the parties have agreed not to proceed with Dr. Guelcher's *de bene esse* deposition on July 18, 2017, if the Court were to permit the *de bene esse* deposition to proceed, Plaintiff will work with Ethicon to schedule a *de bene esse* deposition of Dr. Guelcher at the soonest convenience.

[20] If Plaintiffs attempted to have Dr. Guelcher offer case-specific opinions about the "unique aspects" of a remaining wave plaintiff's case, Ethicon would undoubtedly object on the basis that no such opinions were expressed in his Rule 26 Report. The same rationale prevents Ethicon from seeking to cross-examine Dr. Guelcher with regard to issues as so which Dr. Guelcher has no knowledge or information, has expressed no opinion, and will have no opinion.

anticipate, or that Ethicon has not already addressed.  As set forth above, Ethicon has deposed Dr. Guelcher—on multiple occasions— regarding his general opinions.  Ethicon has filed multiple *Daubert* motions against Dr. Guelcher regarding his general opinions, and those motions have been fully briefed and decided.  Dr. Guelcher has also testified at trial.  And Ethicon will have yet another chance to cross-examine Dr. Guelcher on his well-tread opinions during his *de bene esse* deposition.

### Conclusion

Ethicon's motion for protective order, which runs directly counter to the multitude of beneficial goals of this MDL proceeding, should be denied.  Dr. Guelcher's *de bene esse* deposition should be allowed, and his testimony should be allowed to be presented at individual trial wave cases.

By:     /s/ Edward A. Wallace
        Edward A. Wallace
        Mark R. Miller
        Timothy E. Jackson
        Wexler Wallace LLP
        55 W. Monroe St. Ste. 3300
        Chicago, IL 60603
        Phone: (312) 346-2222
        eaw@wexlerwallace.com
        mrm@wexlerwallace.com
        tej@wexlerwallace.com

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed using this Court's CM/ECF service, which will send notification of such filing to all counsel of record on this 24th day of July 2017.

/s/ Edward A. Wallace
Edward A. Wallace
