IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL 2327 |
| THIS DOCUMENT RELATES TO:<br>WAVE 5 CASES | JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER PRECLUDING *DE BENE ESSE*
DEPOSITION OF PLAINTIFFS' EXPERT WITNESS SCOTT A. GUELCHER, PH.D.**

Defendants Ethicon, Inc. and Johnson & Johnson (collectively, "Ethicon") submit this Reply in support of their Motion for Protective Order Precluding the *De Bene Esse* Deposition of Plaintiffs' Expert Witness Scott A. Guelcher, Ph.D. ("Motion").

**I.   The Court Should Preclude Plaintiffs From Proceeding With The *De Bene Esse* Deposition of Dr. Guelcher.**

   **A.   The Federal Rules of Civil Procedure govern discovery and *de bene esse* depositions in the context of multidistrict litigation.**

In its Motion, Ethicon explained that the Court should preclude Plaintiffs from taking a *de bene esse* deposition of Dr. Guelcher because Plaintiffs had failed to abide by Federal Rule of Civil Procedure 32 and applicable case law by demonstrating that he would be unavailable to testify at trial. *See* Mot. at 6-11.[1]

Plaintiffs spend almost all of their Response arguing that Ethicon's reliance on Rule 32 is misplaced, and the cases Ethicon cited are distinguishable, because MDLs are different than

---

[1] Federal Rule of Evidence 804, of course, provides another mechanism through which deposition testimony could be used at trial. Ethicon submits that Plaintiffs cannot rely on Rule 804 to use Dr. Guelcher's *de bene esse* deposition under the circumstances at issue, and Plaintiffs make no argument to the contrary.

individual cases. *See generally* Resp. Indeed, Plaintiffs point to a number of "instructive authorit[ies]" that recognize that *de bene esse* depositions are used in MDL proceedings in certain contexts. *See id.* at 5-6.[2]

Although Ethicon certainly agrees that MDLs are unique case management mechanisms, nothing in 28 U.S.C. § 1407, the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, or any of the authorities to which Plaintiffs cite obviates or modifies the applicability of the Federal Rules of Civil Procedure in MDL proceedings.[3]

So while some of the authorities to which Plaintiffs cite address the general notion that *de bene esse* depositions are sometimes used in MDLs in certain contexts—a point that Ethicon did not dispute—none of them stand for the proposition that a party can use a non-party's deposition at trial in lieu of live testimony without demonstrating that the witness is "unavailable" within the meaning of Rule 32. For instance, Judge Fallon's law review article recognizes that "trial packages" created through the bellwether process can include materials like "depositions and trial testimony" to help orient local counsel when cases are remanded, but he does not discuss the propriety of taking or using *de bene esse* depositions. *See* E. Fallon, *et al.*, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2338-40 (2008).

Similarly, although the court in *In re Diet Drugs Prods. Liab. Litig.* recognized in *dicta* that the attorneys seeking fees in the case had prepared a trial package that included video

---

[2] In attempting to paint Ethicon's discussion of the events leading up to this Motion as "misleading[,]" "irrelevant and not accurate[,]" Plaintiffs claim that Ethicon "never objected" when they indicated that they "plan[ned]" to serve cross-notices to preserve Dr. Guelcher's testimony in a 6/1/2017 email. *See* Resp. at 3 n.7. Plaintiffs' suggestion that Ethicon is obligated to object to a deposition notice that has not been served is nonsensical. Indeed, Plaintiffs ignore several significant facts: (i) despite frequent communication pertaining to Dr. Guelcher's deposition, Plaintiffs made no further mention an intent to proceed with a *de bene esse* deposition of Dr. Guelcher until 42 days later, and just 6 days before his rescheduled discovery deposition was to proceed; (ii) Plaintiffs had not served any cross-notice when they unilaterally cancelled the Dr. Guelcher's discovery deposition a mere four days before it was to take place; (iii) Plaintiffs did not serve a cross-notice regarding Dr. Guelcher until 6 days before his rescheduled discovery deposition was to take place.

[3] Notably, 28 U.S.C. § 1407(f) provides that the judicial panel on multidistrict litigation "may proscribe rules for the conduct of its business not inconsistent with Acts of Congress and the Federal Rules of Civil Procedure."

depositions, it did not address or rule on the taking or use of trial depositions in the absence of a showing of unavailability. *See* No. 99-20593, 2002 WL 32154197, at *19 (E.D. Pa. Oct. 3, 2002).

And while Judge Bechtle noted that two experts involved in a specific MDL would likely appear at many trials through "preservation depositions," the question of taking or using trial depositions in the absence of a showing of unavailability was neither before nor ruled upon by the court. *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 WL 876900, at **7-8 (E.D. Pa. June 20, 2000). Moreover, in ruling on the parties' *Daubert* motions as to the two experts, the court identified a number of practical problems regarding preservation depositions, particularly in the context of experts, including the potential impact on the testimony after the application of state substantive law, relevance, admissibility, and Rule 403 determinations in individual cases. *See id.*

Plaintiffs' efforts to use the MDL process as a means of avoiding Rule 32 and distinguishing the cases on which Ethicon relies are unavailing, and should be rejected by this Court.

### B. Plaintiffs' Response fails to show that Dr. Guelcher is unavailable to testify at any of the trials in which he has been designated within the meaning of Federal Rule of Civil Procedure 32.

To be clear, Ethicon does not argue that *de bene esse* depositions are never appropriate in MDLs. Rather, Ethicon argues that Plaintiffs have failed to conform to the Federal Rules of Civil Procedure and applicable case law in their efforts to proceed with Dr. Guelcher's *de bene esse* deposition.

Specifically, in their Response, Plaintiffs failed to show that Dr. Guelcher would be "unavailable" to testify at trial for any of the reasons identified in Rule 32. Indeed, Plaintiffs made no effort to show that Dr. Guelcher would be more than 100 miles from the location of any

3

trials in which he has been designated; that he would be unable to attend due to age, illness, infirmity, or imprisonment; or that they would be unable to procure Dr. Guelcher's attendance. *See* Fed. R. Civ. P. 32(a)(4)(B)-(D).

Rather, Plaintiffs seem to belatedly[4] attempt to satisfy the "exceptional circumstances" provision by claiming that Dr. Guelcher will not be able to attend many of the trials in which he has been disclosed because (i) he has been disclosed in a large number of cases, and (ii) he has occupational responsibilities. *See* Resp. at 9-12. Plaintiffs' arguments cannot withstand scrutiny.

Plaintiffs' assertion that Dr. Guelcher's professional obligations constitute an "exceptional circumstance" is a non-starter. Indeed, as Ethicon's Motion explained, courts routinely reject such arguments, even when advanced with respect to physicians who are unable to attend trial because they are treating patients. *See* Mot. at 10-11. And, respectfully, Dr. Guelcher's teaching obligations simply do not rise to the level of urgency involved in a physician's administration of medical care.

Plaintiffs' assertion that Dr. Guelcher's high-case volume constitutes an "exceptional circumstance" is equally untenable at this stage of the litigation. Plaintiffs voluntarily chose to disclose Dr. Guelcher in a significant number of cases, and Dr. Guelcher voluntarily agreed to serve as an expert in those cases. Plaintiffs cite to no legal authority for the proposition that a party's decision to disclose an expert in a large number of cases constitutes an "exceptional circumstance" such that the expert is unavailable for purposes of Rule 32.[5]

---

[4] Rule 32(a)(4)(E) states that the "exceptional circumstances" provision only applies "on motion and notice" by the party seeking to use the deposition.

[5] Plaintiffs misstate the holding in *Nationwide Mut. Fire Ins. Co. v. Dunkin*, 850 F.2d 441 (8th Cir. 1988) by claiming that the Eighth Circuit found that a "witness being required to appear in another court on the same day" is a sufficient basis for using a deposition at trial. *See* Resp. at 12 n.18. In *Dunkin*, the Eighth Circuit held that an attorney's deposition could be used at trial because "he was required to appear in another case . . . on the same day" in a town that the parties agreed was more than 100 miles from the location of the trial. *See Dunkin*, 850 F.2d at 443.

Similarly groundless is Plaintiffs' claim that Dr. Guelcher offers "unique" testimony in this litigation. Plaintiffs assert that Dr. Guelcher's testimony is "unique" because "he is one of only two or three experts in the world who have spent their careers . . . studying the properties of the materials at issue in these cases," and "there are no other experts with similar knowledge and expertise[.]" Resp. at 10-11. Plaintiffs' assertion is curious since they have disclosed at least three other materials science experts in this litigation.[6] More importantly, Plaintiffs' argument is belied by Dr. Guelcher's own words.

Dr. Guelcher has testified that, prior to his involvement with plaintiffs' counsel in pelvic mesh litigation, he had not conducted any research on polypropylene as an implantable biomaterial. *See* Ex. A, *Huskey* Tr. at 167:2-11. He also conceded that he had not published any articles regarding polypropylene generally (*id.* at 167:17-20), or the use of polypropylene in mesh specifically, before working as an expert for plaintiffs' in this litigation, (Ex. B, *Perry* Trial at 2611:18-21). He further testified he did not look into the question of polypropylene degradation until he got involved in pelvic mesh litigation as an expert. *Id.* at 2611:5-11.

Moreover, other than a test that has been excluded by this Court as unreliable[7] and a recently published article that will be addressed at Dr. Guelcher's Wave 5 discovery deposition, Dr. Guelcher has not conducted any testing that would provide a unique basis for his opinions in this litigation.

Although Dr. Guelcher has surely tried to refine his opinions through his work for Plaintiffs in pelvic mesh litigation over the last three years, Plaintiffs' assertion that an expert

---

Thus, contrary to Plaintiffs' suggestion, the court simply held that a party could use a deposition at trial because it satisfied Rule 32, not that a witness who is double-booked for court constitutes an "exceptional circumstance."

[6] Plaintiffs' materials science expert witnesses include Dr. Howard Jordi, Dr. Jimmy Mays, and Dr. Duane Priddy.

[7] For example, in *Mathison v. Boston Sci. Corp.*, this Court excluded Dr. Russell Dunn's opinions because his testing with Dr. Guelcher was unreliable. No. 2:13-cv-05851, 2015 WL 2124991, at *22 (S.D. W. Va. May 6, 2015).

who had never even researched the generic form of the substance at issue in this litigation offers "unique testimony" rings hollow.

Ultimately, Plaintiffs failed to demonstrate that Dr. Guelcher would be unavailable at any of the trials in which he has been disclosed as an expert. The Court should, therefore, issue an order barring Plaintiffs from taking his *de bene esse* deposition.[8]

## II.   Ethicon Would Be Highly Prejudiced By A *De Bene Esse* Deposition Conducted Immediately After Dr. Guelcher's Wave 5 Discovery Deposition.

In its Motion, Ethicon explained that permitting Plaintiffs to proceed with a *de bene esse* deposition of Dr. Guelcher immediately following his Wave 5 discovery deposition would prejudice Ethicon by denying it the ability to (i) cross-examine Dr. Guelcher about the distinct circumstances at issue in the many individual cases in which he has been designated; and (ii) prepare for a trial cross-examination. *See* Mot. at 11-14.

Plaintiffs appear to admit that forcing Ethicon to conduct a trial cross-examination directly after Dr. Guelcher's Wave 5 discovery deposition is untenable. Nowhere in Plaintiffs' Response did they dispute Ethicon's argument that such a scenario would effectively deprive Ethicon of the ability to prepare to cross-examine Dr. Guelcher at trial. *See* Mot. at 13. Nor did Plaintiffs acknowledge—much less refute—Ethicon's observation that the practical problems associated with their demand to proceed with Dr. Guelcher's *de bene esse* deposition on the same day as his Wave 5 discovery deposition weigh heavily against doing so. *See id.* (explaining that conducting a full trial deposition immediately after a 3-hour discovery deposition would be highly burdensome on the parties and witness and impede Ethicon's ability to conduct a fair

---

[8] Plaintiffs' argument that Ethicon "forced Plaintiffs to play videos of its own corporate witnesses at prior bellwether trials" is meritless. *See* Resp. at 10. Notably, Plaintiffs failed to specify how Ethicon "forced" them to use depositions of its corporate witnesses, or identify any case in which this allegedly occurred.

cross-examination of Dr. Guelcher, while conducting a single 7-hour deposition would clearly deprive Ethicon of its ability to conduct a complete cross-examination for trial).

By failing to respond to these arguments, Plaintiffs concede that any *de bene esse* deposition of Dr. Guelcher—should one be permitted by this Court—will not take place on the same day as his Wave 5 discovery deposition.

Plaintiffs' sole argument in claiming that Ethicon would not be prejudiced by a *de bene esse* deposition of Dr. Guelcher is that he is only a general-causation expert who "has no knowledge or information" or opinions about specific plaintiffs. *See* Resp. at 13-14. Plaintiffs' willful blindness to the prejudices to which Ethicon would be subject in potentially hundreds of future cases does not render those prejudices any less real.[9]

As an initial matter, Plaintiffs do not dispute that permitting them to take a *de bene esse* deposition of Dr. Guelcher would have the effect of precluding Ethicon from cross-examining him—in potentially hundreds of trials over the course of the next several years—on any scientific literature or developments that arise after his deposition. As this Court is aware, a number of new tests, methodologies, expert reports, and scientific articles regarding oxidation and degradation have come to light since the beginning of this litigation. Yet, Plaintiffs ask the Court to shield Dr. Guelcher and his testimony from such developments in perpetuity. While Ethicon could certainly introduce such evidence through its own experts, Ethicon submits that it should not be denied the ability to cross-examine Dr. Guelcher on such issues at trial.

---

[9] Plaintiffs do not dispute—and therefore concede—that, even if they are permitted to proceed with a *de bene esse* deposition of Dr. Guelcher, they cannot use such a deposition at any trial whose discovery period ended before that deposition takes place, including all cases in Waves 1-4. *See* Mot. at 6 n.4 (explaining that courts in the Fourth Circuit routinely refuse to permit parties to take *de bene esse* depositions that fall outside the discovery period set forth in the operative scheduling order).

Plaintiffs' assertion that general-causation experts can be completely divorced from the specific facts at issue in an individual case is meritless. Although general causation testimony addresses the larger issue of whether a product *can* cause a certain injury, to be relevant (and thus admissible) the testimony must still relate the facts at issue in a specific case. General causation is not a fungible concept, but rather is susceptible to case-specific objections and cross-examination. Thus, while Dr. Guelcher is not a case-specific expert, Ethicon would certainly be able to cross-examine him based on certain specific issues at play in an individual case.

As Dr. Guelcher's own testimony demonstrates, unlike some other defect theories advanced by Plaintiffs, degradation presents an inherently case-specific issue. Specifically, Dr. Guelcher testifies that while he believes all forms of polypropylene will degrade *in vivo*, he cannot say how long it would take any such degradation to occur in a given plaintiff because it is "unpredictable." *See, e.g.,* Ex. C, *Perry* Dep. at 45:18-46:20; 47:11-18. Thus, Ethicon should be able to cross-examine Dr. Guelcher with case-specific evidence—including analytical chemistry testing conducted by Ethicon's experts and the testimony of pertinent fact and expert witnesses—showing that an individual plaintiff's mesh did not degrade. Such evidence clearly goes to the relevance and weight of Dr. Guelcher's general-causation opinions.

For all of these reasons, the Court should grant Ethicon's Motion and enter an order prohibiting Plaintiffs from taking a *de bene esse* deposition of Dr. Guelcher.

## **CONCLUSION**

For the foregoing reasons, as well as those articulated in Ethicon's Motion and Memorandum of Law, Ethicon respectfully requests that this Court grant Ethicon's Motion and enter an order precluding Plaintiffs from taking a *de bene esse* deposition of Dr. Guelcher. To the extent the Court permits Plaintiffs to proceed with a *de bene esse* deposition of Dr. Guelcher,

Ethicon requests that the Court enter an order precluding the taking of any such deposition within 14 days of the completion of Dr. Guelcher's Wave 5 discovery deposition.

Respectfully submitted,

*/s/ David B. Thomas*
David B. Thomas (W.Va. Bar #3731)
Philip J. Combs (W.Va. Bar #6056)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV  25338
(304) 414-1800
dthomas@tcspllc.com

*/s/ Christy D. Jones*
Christy D. Jones
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS  39158-6010
601.985.4523
christy.jones@butlersnow.com

COUNSEL FOR DEFENDANTS ETHICON, INC.
AND JOHNSON & JOHNSON

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL 2327 |
| THIS DOCUMENT RELATES TO:<br>WAVE 5 CASES | JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to CM/ECF participants registered to receive service in this MDL.

*/s/ David B. Thomas*
David B. Thomas (W.Va. Bar #3731)
Philip J. Combs (W.Va. Bar #6056)
Thomas Combs & Spann, PLLC
300 Summers Street, Suite 1380
P.O. Box 3824
Charleston, WV 25338-3824
(304) 414-1800