```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT CHARLESTON

_____x
                              :
IN RE:  ETHICON, INC., PELVIC :    Case No. 2:12-md-02327
REPAIR SYSTEM PRODUCTS        :
LIABILITY LITIGATION          :
                              :    Date:  August 9, 2017
                              :
_____x


               TRANSCRIPT OF MOTIONS HEARING HELD
     BEFORE THE HONORABLE CHERYL A. EIFERT, MAGISTRATE JUDGE
                 UNITED STATES DISTRICT COURT
                  IN HUNTINGTON, WEST VIRGINIA

APPEARANCES:

For the Plaintiffs:         Edward A. Wallace, Esq.
                            WEXLER WALLACE
                            Suite 3300
                            55 West Monroe Street
                            Chicago, IL 60603

For the Defendant:          David B. Thomas, Esq.
                            THOMAS COMBS & SPANN
                            P. O. Box 3824
                            Charleston, WV 25338-3824




Court Reporter:             Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.
```

```
 1        PROCEEDINGS had before The Honorable Cheryl A. Eifert,
 2   Magistrate Judge, United States District Court, Southern
 3   District of West Virginia, in Huntington, West Virginia, on
 4   August 9, 2017, at 9:26 a.m., as follows:
 5        JUDICIAL ASSISTANT:  Good morning.  This is Laura,
 6   Judge Eifert's judicial assistant.  I would first like to
 7   confirm our court reporter today, Ayme Cochran, is on the
 8   line.
 9        COURT REPORTER:  Good morning.  Yes, I am.
10        JUDICIAL ASSISTANT:  Hi.  Thank you, Ayme.
11     We are here regarding Ethicon MDL 2227; specifically,
12   Defendants' Motion for Protective Order Precluding De Bene
13   Esse Deposition of Plaintiffs' Expert Witness Scott A.
14   Guelcher, Ph.D.  That's ECF number 4132.
15     May I have plaintiffs' counsel, please?
16        MR. WALLACE:  Yes.  This is Edward Wallace on
17   behalf of plaintiffs.
18        JUDICIAL ASSISTANT:  Thank you.  Is that everyone
19   for plaintiff's counsel today?
20        MR. WALLACE:  It should be.
21        JUDICIAL ASSISTANT:  All right.  Thank you.
22     Ethicon's counsel, please?
23        MR. THOMAS:  Yes.  David Thomas for defendants.
24        COURTROOM DEPUTY CLERK:  All right.  Thank you.
25   One moment for Judge Eifert.
```

1          (Pause.)
2               THE COURT: All right. We are here then on
3     Defendants' Motion for Protective Order.
4          Mr. Thomas, would you like to add anything to your
5     brief?
6               MR. THOMAS: Well, only, Your Honor, that I'd note
7     that the reason why Ethicon filed this motion is in the
8     exigent circumstances that it did; that is, the tying of the
9     proposed de benne esse deposition to the Wave 5 discovery
10    depositions, which has not been argued by the plaintiffs,
11    and I don't think that's an issue anymore from the papers,
12    but I have nothing further in addition to that.
13              THE COURT: All right. Mr. Wallace, do you have
14    anything you want to add to your response?
15              MR. WALLACE: I do have a couple of things, Your
16    Honor, because we did not spend an inordinate amount of time
17    in our response brief talking about the scheduling issues,
18    nor the issue that Mr. Thomas just raised, but -- so I would
19    like to touch base on that just real quickly and maybe add
20    one more thing, and that is, I -- I would think that neither
21    side would have an issue with the other over the scheduling
22    of this, but it appears that it did, and I think that there
23    was probably -- at the end of the day, we could probably
24    agree, because Mr. Thomas and I get along quite well,
25    despite our different views on the litigation, that given

1  the fact that he was halfway around the world and there was
2  probably some miscommunication by e-mail, that we're
3  probably -- if I understood his papers correctly, that we
4  are probably not too far apart on scheduling issues because
5  Mr. Thomas and I have, without the Court's involvement --
6  for example, I've given Mr. Thomas other opportunities to
7  depose Mr. Guelcher when there were scheduling issues or
8  when Mr. -- Dr. Guelcher did -- there was an issue about --
9  you know, wanted to ask some additional questions about
10 billing.
11     So, I don't think that the Court needs to intervene in
12 whether or not we can cooperate on the scheduling of the
13 deposition, but I do want to point out that the chief
14 distinction that I saw in the papers, at least as it
15 appeared to me, admitting that I'm not, you know, objective
16 here, is that there's a huge difference between the use of a
17 deposition at trial and perhaps asking a remand court to
18 deal with that issue versus taking the deposition now
19 because, in Dr. Guelcher's Wave 5 Report, there's really
20 only one additional article, even as Ethicon points that out
21 in its brief that's at issue, and perhaps some modified
22 language regarding safer alternative design that's really
23 generic to all of Ethicon's products.
24     So, I -- I think -- I think Ethicon has, from my
25 perspective, really looking at apples versus oranges, if

1    they agree the deposition should be taken, the parties
2    should get off the line and schedule it.  And that's -- you
3    know, whether or not it's used in, you know, 150 cases down
4    the road is probably left for another day unless I'm missing
5    something.
6                THE COURT:  All right.  I absolutely agree with
7    you, Mr. Wallace.  I think that Ethicon conflated the
8    concept of taking the deposition with using the deposition
9    and I agree that those are two very separate issues.
10        As far as doing a de bene esse deposition, so far, the
11   Court has not allowed those under the circumstances that
12   they were presented because they involved witnesses that had
13   testimony in case-specific matters or plaintiff-specific
14   cases.  I think this is a much different situation.  The
15   reason we haven't allowed the de bene esse depositions just
16   across the board is because, obviously, it would create
17   havoc.  There's no way that all of these witnesses could
18   have de bene esse depositions done.
19        However, when I look at this, I -- what I see is a
20   particular specific category of witness, which would be an
21   expert witness whose testimony is going to be virtually the
22   same in every case, who does not offer plaintiff-specific
23   testimony or even case-specific testimony, for that matter.
24   So, I think that's a different category of witness and, when
25   you look at that category of witness, it makes sense to

1  allow de bene esse depositions because it will promote
2  efficiency and economy and all of the goals that the MDL is
3  set up to address.
4  　　So, I'm going to deny the Motion for Protective Order
5  and allow the plaintiffs to take the de bene esse deposition
6  of Dr. Guelcher.
7  　　Now, having said that, I want to make it very clear at
8  this hearing that that is not going to translate into an
9  across-the-board right to take de bene esse depositions.  I
10 want to make it very, very clear that we're talking about a
11 specific category of witness here.
12 　　In addition, I absolutely agree with Mr. Thomas that
13 the defendants or, in the reverse situation, the plaintiffs
14 should not be forced to take the de bene esse deposition
15 immediately after the discovery deposition.  There needs to
16 be scheduling done so that there is a discovery deposition;
17 there's sufficient time for the party who is the opposing
18 party to sort of look at that testimony, fit it into their
19 claims or defenses, and respond to it and prepare a good
20 cross examination.  So, there's going to have to be a
21 reasonable amount of time between the discovery and the de
22 bene esse depositions.
23 　　It looks like that's not an issue anymore.  So, that's
24 good for this case, but I know this issue will likely come
25 up in other MDL's, or even in this MDL involving other

1  witnesses, but I sort of wanted to lay the groundwork and
2  the boundaries for how this should be handled in the future.
3      So, the bottom line is, that there's no absolute
4  prohibition against de bene esse depositions and the parties
5  can always agree, of course, to take those kinds of
6  depositions, but the Court's going to allow those
7  depositions for this category of witness with the only
8  distinction or the only caveat being that the -- there has
9  to be a reasonable amount of time between the discovery and
10 the de bene esse.
11     I think if you look at this, not only is it going to be
12 beneficial for everybody as far as economy and efficiency,
13 but I think it's also going to be so much more beneficial
14 for the jury to actually for once in one of these cases,
15 hear some real testimony instead of having cobbled together
16 pieces of other video depositions to try to make a whole.
17 So, I think, for the jury, this would also be of great
18 benefit.
19     Is there any -- any further comments, any -- anything
20 anybody wants to put on the record?
21         MR. THOMAS: I --
22         MR. WALLACE: I just have one -- go ahead, David.
23 I'm sorry.
24         MR. THOMAS: I apologize. David Thomas, Your
25 Honor. Just one further point and request. Would the Court

1  entertain a request by Ethicon for court supervision of the
2  de bene esse deposition?
3          THE COURT:  No.
4          MR. THOMAS:  Okay.
5          THE COURT:  No.  We can't do that.  You know,
6  obviously, I have -- with seven MDL's, I have no idea how
7  many of these depositions will be taken and I don't see a
8  need to have the Court present during the depositions
9  because if there's objection that is are made, you can
10 always go back and fix the videotape.  It's just such a
11 great drain on the time of the Court that it -- it is just
12 not doable, I'll say.
13    Now, if you have a particular situation, Mr. Thomas,
14 where you've had a lot of trouble with a witness, or there
15 have been a lot of disagreements over a particular witness's
16 testimony, something unique, I will certainly be willing to,
17 at that point, become more involved, but just not as a
18 general rule.
19         MR. THOMAS:  I understand.  I do always get that
20 question from others and I wanted to make sure we discussed
21 that today.  Thank you, Your Honor.
22         THE COURT:  You're welcome.
23    Anything from you, Mr. Wallace?
24         MR. WALLACE:  No.  Just it's goods to hear that
25 Mr. Thomas wasn't directing that at me, or at least it

```
 1    appears so.  And I appreciate that, David.
 2         The one thing I would say about the discovery
 3    deposition, just -- you know, we really have tried to limit
 4    new issues in the report and I would hope that we're not
 5    back here again with respect to the discovery deposition,
 6    only because it should be -- I understand the Court's ruling
 7    about a sufficient amount of time, but we are only touching
 8    on new issues in the discovery deposition and I just want to
 9    make sure that at least David and I understand that from the
10    Court, that the Court's ruling is, you are only going to
11    take this discovery deposition in Wave 5 limited to new
12    issues or, for example, the new literature, just like you
13    would in the first place, and then there will be a separate
14    deposition, as Your Honor has ordered, so that there's no
15    change with respect to what the Wave 5 deposition would have
16    been in the first place.
17              THE COURT:  Yes.  I think the deposition protocol
18    sets out the rules for taking supplemental depositions, and
19    if it doesn't, I think I've always been clear that
20    supplemental depositions, discovery depositions, should only
21    be -- only be taken to add to and not repeat what's already
22    on the record.  So, that would be my --
23              MR. WALLACE:  Thank you.
24              THE COURT:  -- understanding for discovery
25    depositions.  And then the -- of course, the de bene esse
```

1  deposition would cover everything, all of the transcripts,
2  regardless of when the depositions were taken.
3      And, you know, I think, Mr. -- that brings up a point,
4  Mr. Thomas, you've raised in your reply memorandum was,
5  well, we've got these de bene esse depositions and then,
6  years go by and things have changed and, you know, it's not
7  fair that they are able to just produce that deposition.
8      Again, that goes to the using of the deposition rather
9  than the taking and I think, certainly, my ruling today does
10 not in any way prejudice either party from objecting to the
11 use of the de bene esse deposition in the future, just so
12 that's also clear.
13     MR. THOMAS: I understood that to be the Court's
14 ruling and, obviously, one of the reasons why we're having
15 this hearing is to make sure that any right Ethicon may have
16 to object to the deposition is preserved at not waived by
17 allowing the deposition.
18     THE COURT: Certainly. And that should be
19 absolutely clear, that this -- this ruling has nothing to do
20 with issues that might arise in the use of the deposition.
21 It just is allowing the taking of the deposition.
22     So, what I will do is a simple order saying that I deny
23 the motion for the reasons stated during the hearing, and I
24 might do some other brief summary, but I'm not going to do
25 an any more involved order on this.

1     All right?

2         MR. WALLACE: Thank you. And we will take the --
3 we will offer updates for Dr. Guelcher promptly so that
4 Judge Goodwin can rule on any renewed *Daubert* motions filed
5 by Ethicon.

6         THE COURT: Right. And that brings up another
7 issue. In allowing these de bene esse depositions, that
8 doesn't -- that doesn't in any way change the time frames
9 that have been established by Judge Goodwin. So, that's
10 something else that I should probably point out, is it
11 doesn't change deadlines. So, just so you're aware of that.

12        MR. THOMAS: Thank you. Your Honor. We have a
13 joint motion pending with the Court that has not yet been
14 ruled on. I know that's not your call, but we'll take that
15 up with Judge Goodwin.

16        THE COURT: All right. That sounds wonderful.
17    Thank you, Ayme.
18    Thank you all.

19        COURT REPORTER: Thank you, Your Honor.
20        MR. THOMAS: Thank you.
21        MR. WALLACE: Thank you.
22        THE COURT: Court is in recess.
23     (Proceedings concluded at 9:49 a.m., August 8, 2016.)

24

25

```
 1   CERTIFICATION:
 2        I, Ayme A. Cochran, Official Court Reporter, certify
 3   that the foregoing is a correct transcript from the record
 4   of proceedings in the matter of In Re:  Ethicon, Inc.,
 5   Pelvic Repair System Products Liability Litigation, Case No.
 6   2:12-md-02327, as reported on August 9, 2017.
 7
 8   s/Ayme A. Cochran, RMR, CRR              August 17, 2017
 9   Ayme A. Cochran, RMR, CRR                        DATE
10
11
12
```

*Ayme A. Cochran, RMR, CRR (304) 347-3128*