IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL 2327 |
| THIS DOCUMENT RELATES TO:<br><br>*Ethicon Wave 5 Cases* | JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION AND MEMORANDUM
TO EXCLUDE CERTAIN GENERAL OPINIONS OF BOBBY SHULL, M.D.**

Plaintiffs hereby submit *Plaintiffs' Response to Defendants' Motion and Memorandum to Exclude Certain General Opinions of Bobby Shull, M.D.,* and in support of this Response, Plaintiffs state as follows:

## I.    INTRODUCTION

Robert Shull, M.D. (also referred to as "Bobby" or "Bob" or hereinafter "Dr. Shull") provided one expert report for the Prolift +M in this matter.[1]  Dr. Shull's qualifications have already been examined in prior *Daubert* briefings.  *See* Docket Nos. 2055, 2808.  Dr. Shull's report is a general causation report relating to Prolift +M.  Defendants insert case-specific arguments throughout their motion, presumably because there is currently one set of Wave 5 Plaintiffs who have designated Dr. Shull.  Defendants' case-specific arguments are improper, as they should be filed and argued in the individual case.  *See* Pretrial Order 248, Section B(1).

---
[1] For ease of reference, the Prolift +M report is attached hereto as Exhibit 1.

1

Dr. Shull is qualified and experienced in the fields of obstetrics and gynecology; he graduated from Tulane University School of Medicine in 1968 and completed his internship and residency at the University of Virginia. *See* Curriculum Vitae, attached as Ex. 2. In addition to having received numerous honors, awards and serving on various committees and boards, Dr. Shull has been involved in 12 research projects; authored or co-authored 39 peer reviewed publications; authored or co-authored four non-peer reviewed publications; drafted numerous book chapters, abstracts and discussions; and conducted various lectures and presentations. *See id.* Dr. Shull is unquestionably qualified by education, training, skill and experience to provide the opinions set forth in his reports—opinions that are based on a proper application of sound methodology; and as such, Dr. Shull's expert report passes scrutiny under a *Daubert* analysis.

Defendants previously filed Wave 1 and Wave 3 *Daubert* motions to exclude certain of Dr. Shull's opinions. On September 1, 2016, the Court ruled on Defendants' prior Wave 1 motion. *See* Exhibit 3. Defendants' instant Motion recycles nearly identical arguments made in their Wave 1 and Wave 3 briefing and are based on the <u>same</u> expert report proffered by Dr. Shull and the <u>same</u> deposition transcripts utilized in Waves 1 and 3.[2] As such, Plaintiffs submit that Defendants should have simply incorporated their Wave 1 and 3 briefing with regard to Dr. Shull. Without novel arguments, a revised report, or new deposition testimony, there is no readily apparent reason as to why the Court should rule differently than in Wave 1. Notwithstanding, Plaintiffs' response is set forth below.

---

[2] Defendants indicate their briefing is "very similar" to Wave 1 and 3 except for the following exceptions: (a) in Section II, Ethicon requests that the Court preclude Dr. Shull from comparing Prolift +M with traditional surgical procedures; and (b) in Section V, Defendants' brief highlights a *Daubert* ruling by the United States District for the Northern District of Illinois in a Wave 1 case remanded from this Court (see *Walker v. Ethicon, Inc.,* 2017 WL 2992301 (N.D. Ill. June 22, 2017)).

## II.	ARGUMENT

Defendants, in their Motion, incorporate by reference the standard of review for *Daubert* motions as set forth by this Court in *Huskey v. Ethicon, Inc.,* 29 F. Supp. 3d 691, 701 (S.D. W. Va. 2014). Plaintiffs agree that this Court's expression of the *Daubert* standard as set forth in *Huskey* is the proper standard of review.

### A.	The Court Should Allow Dr. Shull To Testify About The Specific Risks of Implanting Mesh, Whether Those Risks Make a Patient a Poor Candidate for the Procedure, and Whether Those Risks Appeared On The Relevant IFU.

Defendants seek to exclude Dr. Shull's "warning opinions" on the basis that he is unqualified and certain of his opinions are irrelevant. Namely, Defendants seek to preclude Dr. Shull from offering the opinion that "Ethicon did not inform doctors as to which patients were poor candidates for the Prolift procedure." Ex. 1, Prolift +M Report at 12.

According to this Court, an expert who is an obstetrician and gynecologist may testify about the specific risks of implanting mesh and whether those risks appeared on the relevant IFU. *In re: Ethicon, Inc. Pelvic Repair Sys. Produc. Liab. Litig.,* 2016 WL 4582220, at *3 (S.D. W. Va. Sept. 1, 2016). However, if an expert intends to go beyond this and testify about what information should or should not be included in an IFU, they must have additional expertise. *Id.*

Here, Dr. Shull seeks to opine on the risks that Prolift +M poses to patients, including circumstances when the risks are high enough to make a patient a poor candidate for the Prolift procedure. Dr. Shull will then note that these specific risks did not appear on the relevant IFU and, consequently, Ethicon did not inform doctors which patients were poor candidates for the procedure. This testimony is within Dr. Shull's knowledge and expertise. This Court allowed similar testimony in *Carlson v. Boston Scientific Corp.,*: "Dr. Shull will testify about the risks he

3

perceives Uphold poses to patients, and he will opine that the Uphold DFU did not convey these risks to physicians. A urogynecologist like Dr. Shull is qualified to make this comparison." *Carlson*, 2015 WL 1931311, at *16.

To the extent that Defendants raise issues regarding patient populations of which Mrs. Sciumbata is not a member, these issues should be taken up in case-specific motions and not in a general causation motion. This Court's ruling will apply to the entire Wave 5 and, as this Court is well aware, such rulings are often cited in future pleadings by the parties. It would be improper to exclude Dr. Shull's testimony based upon the patient population of a single plaintiff – this issue should be considered through case-specific pleadings pertaining to Mrs. Sciumbata.

Defendants' passing reference to a narrative summary is disingenuous. Dr. Shull's report does not simply provide a narrative summary of the Prolift +M IFU. Rather, Dr. Shull explains which subpopulations of women were not appropriate candidates for the Prolift +M procedure, due to the increased risks for these patients, and highlights the fact that this information was not provided to physicians by Ethicon – whether through the IFU or other means.

Defendants' reference to *Huskey*—a case involving a different expert, different product and different proffered report and testimony—is inapposite. *See Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 705 (S.D. W. Va. 2014). In *Huskey,* this Court was asked to consider a circumstance where Dr. Rosenzweig was quoting deposition testimony of Ethicon's medical director and reviewing documents authored by the inventor of the product. *Id.* This Court felt a jury was capable of reading the document itself. By contrast, Dr. Shull's specialized knowledge about the specific risks of implanting mesh, the patient subpopulations that are at greater risk, and his observation that Ethicon did not inform doctors of this information – whether by IFU or

4

otherwise – is not a mere recitation of corporate documents. Rather, Dr. Shull's proferred opinion will help the trier of fact to understand the evidence. *See* Fed. R. Evid. 702.

Defendants seek to expand the scope of Dr. Shull's opinion into a commentary by Dr. Shull on what an IFU should or should not include in order to obfuscate the issue. Dr. Shull's opinion is not conjecture but is well cited in his report and supported by Defendants' own documents, *see* Ex. 1 at 12, nn. 34, and, as such, should not be excluded.

### B. The Court Should Allow Dr. Shull To Testify About Traditional Surgical Procedures Because They Demonstrate a Significant Departure From Surgical Practices at the Time.

Ethicon argues that Dr. Shull should not be permitted to testify that alternative procedures are safer than Ethicon's mesh products. Def.'s Mot. at 4-7. Notably, Ethicon does not challenge Dr. Shull's qualifications or the reliability of this expert testimony; instead Ethicon merely challenges its relevance. As this Court has already noted, the relevance of this expert testimony is better decided on a case-by-case basis.

Defendants misunderstand this Court's ruling when they argue that the issue should be revisited because opinions about alternative procedures are not a case-specific issue, but instead, a general causation issue. The rationale for reserving ruling when issues of relevancy arise is to allow a live expert on the witness stand, subject to vigorous examination, to explain how the expert testimony relates to the issues in the case. That rationale applies to Dr. Shull's opinions regarding the Prolift +M.

Defendants also misunderstand the relevance of Dr. Shull's testimony regarding traditional surgical procedures. Dr. Shull's report (and associated testimony) regarding traditional surgical repairs is not offered to prove the existence of an alternative, feasible design. Rather, it is

5

offered, and relates, to another issue in the case – the fact that the mesh "kits" represented a significant departure from traditional surgical procedures performed for pelvic organ prolapse and offered no advantage over traditional repair. The traditional techniques at the time Prolift +M became available are part of the landscape and background that will assist a jury when considering the standards to which a company should be held when introducing new surgical innovations to the market. This background is highly relevant. Although this Court has found that alternative procedures/surgeries do not inform the issue of whether an alternative design exists, this Court has not considered whether this information is relevant to a jury who will be asked to consider the standards to which a company should be held when introducing new surgical innovations to the market. Even more importantly, both cases cited by Defendants address whether alternative procedures inform the issues of an alternative design. This is a case-specific issue that turns on the applicable state law. See *Herrera-Nevarez v. Ethicon, Inc.*, No. 12 C 2404, 2017 WL 3381718, at *7 (N.D. Ill. Aug. 6, 2017) (holding that under Illinois law, evidence of non-mesh alternatives was relevant to the risk-utility test for design defect, and to counter Ethicon's assertion that its products are the "gold standard" for SUI treatment).

For example, in *Mullins,* this Court utilized West Virginia law when determining that the plaintiff could submit multiple products liability theories to a jury. 2017 WL 711766, at *1 (S.D. W. Va. Feb. 23, 2017). It was in that context that this Court found an alternative, feasible design must be examined in the context of products – not surgeries or procedures. *Id.* This motion is not case-specific and it is improper to utilize Pennsylvania law (based on the location of Mrs. Sciumbata's surgery) to analyze Dr. Shull's report and make *Daubert* rulings. As this Court well knows, the Wave Orders are cited and adopted from wave to wave. As such, the general *Daubert* motions should only address Dr. Shull's qualifications for the litigation in general.

While the admissibility of Dr. Shull's testimony in Pennsylvania may be considered, it should only be handled in a case-specific motion.

### C. Dr. Shull's Opinions on Mesh Properties Should Not Be Excluded.

Defendants seek to exclude Dr. Shull's opinion that "[s]maller pore, heavier weight meshes, like Gynemesh PS, are thought to intensify" adverse reactions as unsupported and unreliable. Def.'s Mot. at 7. Defendants are essentially recycling their Wave 1 and Wave 3 briefing and acknowledge as much. The Court denied Defendants' Motion on this point in Wave 1. *See* Ex. 3, *In re: Ethicon, Inc. Pelvic Repair Sys. Produc. Liab. Litig.,* 2016 WL 4582220, at *3 (S.D. W. Va. Sept. 1, 2016).

As such, Plaintiffs incorporate their Wave 1 response here. *See* Plaintiffs' Response [Dkt. 2150 at 4-7, 16]. Defendants' argument failed in its Wave 1 briefing and it should fail again. As this Court noted, Dr. Shull is a urogynecologist with experience treating patients with mesh complications. This clinical experience, combined with Dr. Shull's review of the relevant literature, qualifies him to opine on mesh's effect on and reaction to the human body. *In re: Ethicon,* 2016 WL 458220, at *3.

Defendants want a second bite at the apple by arguing that Dr. Shull cannot compare Prolift +M's adverse reactions to the adverse reactions in other devices. However, this Court decided this issue, considering nearly identical expert reports and testimony, and held Dr. Shull's afore-quoted statement is "not about the overall balance between safety and efficacy or the appropriateness of an alternative design; Dr. Shull was merely opining on adverse reactions." *In re: Ethicon,* 2016 WL 458220, at *3. There have been no changes to Dr. Shull's report, and Defendants' argument to exclude the opinion that other synthetic meshes offered safer, feasible

7

alternatives to the Prolift +M is not supported by any citations to legal record.  *See* Def.'s Mot. at 8.  It is impossible for Plaintiffs to respond to such a nebulous concept, except to say that this Court has already ruled on this issue and Dr. Shull's proffered testimony has not changed.

Further, Defendants' argument completely ignores the panoply of citations that precede this statement, including at least two articles dealing with pore size and the weight of mesh.  *See* Ex. 1 at 7 nn.12, 14.  Defendants go on to cite *Conklin v. Novartis Pharmas. Corp.* for the proposition that even if a device with lighter-weight/more macroporous mesh would have led to fewer complications, neither Dr. Shull nor any expert can reliably show that such a device would have been as effective as Prolift +M in treating pelvic organ prolapse.  This argument, even if based upon proper statements of the law, is not controlling because it is necessarily case-specific.  Dr. Shull is well-qualified to discuss the more intense adverse reactions of smaller pore, heavier weight meshes, such as Gynemesh PS.

### D. Defendants Raise No Argument With Regard to "Design" Opinions, Therefore, Their Motion Should be Denied.

It is unclear what argument is being raised by Defendants with regard to Dr. Shull's purported "design" opinions.  Defendants argue, "In, [sic] adjudicating Ethicon's challenge to these same opinions in the Wave 1 cases, the Court indicated that it did not construe Dr. Shull's reports as "express[ing] any opinions about the process of designing a product . . . Because Dr. Shull's report in this wave of cases is identical to his reports in the Wave 1 cases, the Court should make the same finding here."  Def.'s Mot. at 8-9 (internal citation omitted).  Fine, Plaintiffs agree.  Defendants further request, "Alternatively, Ethicon respectfully requests that the Court preclude Dr. Shull from providing such opinions on the basis that he is unqualified to do so."  *Id.*  But, the Court has already ruled that Dr. Shull is not expressing "any opinions about

the process of designing a product." *In re: Ethicon,* 2016 WL 4582220, at *3. Plaintiffs agree with the Court's observations; and therefore, Dr. Shull's qualifications on this issue need not be examined. Plaintiffs submit the Court need not alter its prior ruling on this issue, thereby denying Defendants' Motion in this regard. *See id.,* Ex. 3.

Defendants argue that Dr. Shull should be precluded from testifying from a clinical perspective that Ethicon did not exercise due diligence in the design and development of the devices at issue. Def.'s Mot. at 8-9. However, Defendants fail to provide Dr. Shull's additional testimony explaining his basis for the opinion that Defendants did not exercise due diligence, from a clinical perspective – "[t]he clinical outcomes. The patients – patients have been harmed." Exhibit E to Defendants' Motion, Doc. 4355-5 at 82:20-25. Thus, Dr. Shull's opinion is not a legal conclusion and should not be excluded. Likewise, Dr. Shull can weigh in on these topics "from a clinical perspective" because his clinical experience provides him with the perspective of clinical outcome and patient results. As this Court previously held, Dr. Shull's report does not express any opinion about the process of designing a product. *See In re: Ethicon,* 2016 WL 4582220, at *3. Dr. Shull's opinions relate to the clinical experience of patients and are admissible.

### E. The Court Should Allow Dr. Shull To Comment On The Existence, or Lack Thereof, of Research, Testing, Adverse Event Reporting and Physician Training.

Defendants ask the Court to preclude Dr. Shull from offering opinions "throughout his report" that criticize Ethicon for allegedly failing to comply with certain legal duties. This overbroad statement is not supported by citations to the record and should not be considered. The subsections below address several examples cited by Defendants. The overarching theme to Defendants' argument appears to be: Dr. Shull should be prevented from commenting on the

9

total absence of certain tests, research, adverse event reporting and/or training of physicians. Plaintiffs acknowledge that there are certain opinions regarding the legal duties of manufacturers, and the nature and extent of those duties, that are beyond the scope of Dr. Shull's expertise. However, Dr. Shull's opinions in this regard <u>do not</u> cross the line into opinions regarding the legal duties of the manufacturer. Dr. Shull's opinions are really just observations of undisputed facts, obtained through Defendants' own corporate documents.

### a. Research/Testing

Defendant argues that Dr. Shull's opinions regarding the existence or non-existence of certain testing and conducting studies should be excluded. Def.'s Mot. at 10-12. While Defendants argue that Dr. Shull should not be allowed to opine on Defendants' lack of pre-market studies of its products, the fact remains that Defendants did not undertake any proper clinical studies. *See* Ex. 1 at 24 ("From my review of the materials referenced, I was impressed by the clear absence of any systematic approach on the part of Ethicon with regard to clinical testing of the products prior to placing the products on the market"); *Id.* at 25 ("There were no proper randomized controlled trials with institutional review board (IRB) approval performed in the United States or abroad prior to selling these products") (citing Defendants' *own* document which stated: "Based upon the Gynemesh Prolene Soft mesh's product characteristics, intended clinical indications, and the use of existing polymer materials, additional pre-clinical functionality testing is <u>not required.</u>" (underscore added)).

Thus, Defendants seek to exclude Dr. Shull's opinion, *i.e.,* whether or not testing was performed, when their own internal documents state it was not required and there is no evidence any proper clinical testing was ever performed. Further, Defendants cite *Green v. General*

*Motors Corp.,* (a New Jersey state case) for the proposition that a lack of testing or a flaw in the design process is not, standing alone, a design defect. Once again, Defendants miss the boat as they fail to acknowledge that Plaintiffs have brought many other claims besides design defect for which the existence or non-existence of testing constitutes clearly relevant and material evidence. For example, these facts may directly inform whether Defendants acted negligently.

Next, Defendants argue that Dr. Shull does not have specialized knowledge about the testing that Defendants should have performed; however, this argument underscores Defendants' misunderstanding of Dr. Shull's ultimate opinion in this matter: "As a physician, I expect companies to provide me with complete and accurate information. This cannot be accomplished without sufficient data." Ex. 1 at 26.

This relatively unremarkable opinion does not require specialized knowledge of the testing Defendants should have performed; rather, it only requires knowledge of whether or not the testing was in fact completed (information which was provided to Dr. Shull) together with Dr. Shull's vast years of clinical experience, *see generally* Exs. 1 and 2, which inform his opinion as to the information he needs in his practice. Therefore, Defendants' citation to *Carlson v. Boston Scientific Corp.,* 2015 WL 1931311, at *15 (S.D. W. Va. Apr. 28, 2015), in which Dr. Shull's opinions on "appropriate testing" were excluded, is readily distinguished. Here, Dr. Shull seeks to give the opinion that testing was not performed, and from his clinical perspective, he does not think medical device manufacturing companies can provide complete and accurate information without sufficient data derived from testing. This opinion is akin to Dr. Shull's opinions on product labels, which were allowed by this Court. *Id.* at *16 ("I also find that Dr. Shull's forty years of experience, along with his evaluation of medical literature . . . forms a reliable basis for his testimony") (citing *Kumho Tire Co.,* 526 U.S. at 156 (stating that an

"expert might draw a conclusion from a set of observations based on extensive and specialized experience")).

Finally, Defendants argue that Dr. Shull may only speculate as to what the non-existent testing, if it had been performed, would have revealed. Dr. Shull need not, and does not, speculate in his report: "The serious complications associated with transvaginally placed mesh kits are now well-known to surgeons practicing in the area of female pelvic reconstructive surgery, and well-described in the medical literature." Ex. 1 at 9. These opinions are well cited in Dr. Shull's reports. *See* Ex. 1 at 6-9. Therefore, Defendants' Motion seeking to exclude Dr. Shull's opinions as to Defendants' testing of Prolift +M, or lack thereof, should be denied.

    **b. Adverse Event Reporting**

Defendant next argues that Dr. Shull's opinions related to adverse event reporting should be excluded. Def.'s Mot at 12. Here, Defendants again overstate the scope of Dr. Shull's proffered opinion, which is stated in his Prolift +M Report as: "After the products were used in general clinical setting, Ethicon did not systematically monitor their products or evaluate physician feedback." Ex. 1 at 3. Thus, Dr. Shull is not offering an opinion as to the *nature* or *quality* of the adverse event reporting that should have occurred; rather, he is stating that it did not occur. This opinion is not conjecture and is well cited in his Prolift +M Report. *See* Ex. 1 at 26 ("Ethicon failed to establish a data registry for Prolift . . . [a] registry would have been a very useful tool to track the outcome of patients who underwent the Prolift +M procedure and permanent Prolift mesh implantation . . . Ethicon resisted a proposal to start a registry in Australia . . .") (citing Defendants' own internal documents including an email that stated: "Consequently, if none of our competitors are keeping registries, our complication data may

appear increasingly accurate but with decreasing appeal"). This Court's Wave 1 ruling excluded opinions regarding Defendants' compliance with the FDA's adverse event reporting regulations. *In re: Ethicon, Inc. Pelvic Repair Sys. Produc. Liab. Litig.,* 2016 WL 4582220, at *4 (S.D. W. Va. Sept. 1, 2016). Dr. Shull's opinion here is not related to FDA regulations, and he does not proffer an opinion on whether Defendants complied with FDA regulations. This is distinguishable from *Walker v. Ethicon, Inc.* 2017 WL 2992301 (N.D. Ill. Jun. 22, 2017). In *Walker,* the proffered opinion criticized Defendants' response to adverse events as "woefully inadequate." *Id.* at *6. Here, Dr. Shull is merely noting that adverse event reporting did not systematically occur, and that this is significant to him because he uses adverse event reporting to make clinical judgments. Notably, the *Walker* court allowed Dr. Shull to testify about how he uses adverse event reporting to make these types of clinical judgments. *Id.*

Thus, Defendants' citations to *Walker, In re Diet Drugs*, and *Hines v. Wyeth* are readily distinguished. In those cases, the experts sought to opine on the nature, quality, or effect of the adverse event reporting, or completely lacked an explanation for the basis of their opinions. Therefore, Defendants' motion to exclude Dr. Shull's opinion in this regard should be denied.

### c. Training

Defendants also seek to exclude Dr. Shull's opinion regarding whether or not Defendants provided appropriate training to physicians. Def.'s Mot. at 13-14. Dr. Shull's proferred opinion is stated as: "Ethicon . . . did not properly train these physicians in the unique aspects of patient selection and patient counseling of long-term sequelae [conditions caused by injury] of trocar-based meshed kits." Ex. 1 at 3. Dr. Shull's opinion is well grounded in his experience: "I have reviewed the Ethicon Instructions for Use (IFU) and patient and doctor brochures for these

products. Reviewing the information contained in these documents is something I do on a regular basis in my practice and in my capacity as an educator of medical students . . . these documents . . . do not include the severity and frequency of the complications . . . do [] not provide information regarding contraindications to the use of the product in women with fibromyalgia, painful bladder syndrome, or other chronic pain conditions." Ex. 1 at 10. As Dr. Shull is an educator of medical students, and the complications caused by Defendants' mesh products are well cited elsewhere in his opinion, *see* Ex. 1 at 6-9, Dr. Shull is qualified by education, experience, skill and reliable application of methodology to opine on proper training, and Defendants' Motion should be denied in this regard. Moreover, Defendants' citation to *Cisson v. C.R. Bard, Inc.* is inapposite, as that case involved the exclusion of Dr. Shull's opinions in a specific case where the opinion was "not applied to the facts of the case." *Cisson v. C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 614 (S.D. W. Va. 2013). Any such argument should be left for the case-specific *Daubert* motions.

### F. The Remainder of Defendants' Arguments are Moot.

Defendants argue: "Finally, consistent with prior rulings, the Court should preclude Dr. Shull from: . . . (listing a host of subjects with no supporting briefing)." Defs. Mot. at 14-15. To the extent the Court can discern whether Defendants' arguments are different than those presented in their Wave 1 and 3 briefing (Plaintiffs are unable, as they are simply presented in a laundry list fashion), the Court has at least addressed most of these issues in its Wave 1 Order on Dr. Shull.[3]

---

[3] Defendants also argue for exclusion of testimony regarding "a medical condition that Mrs. Sciumbata's medical expert has not competently testified that the Plaintiff has sustained or likely will sustain." Defs. Mot. at 14. Again, this type of argument belongs in a case-specific motion, and it is unclear why Defendants have raised it here. In any event, this request should be denied.

14

*See* Ex. 3. As such, Plaintiffs agree that if the Court rules on these arguments, they should be consistent with the Court's prior order on Dr. Shull. *Id.*

## III. CONCLUSION

For all of the foregoing reasons and those expressed in response to Defendants' Wave 1 and 3 briefing, Plaintiffs respectfully request Defendants' Motion be denied as described herein.

Dated: August 29, 2017

        Respectfully submitted,

        /s/Thomas P. Cartmell
        Thomas P. Cartmell, Esq.
        Jeffrey M. Kuntz, Esp.
        Wagstaff & Cartmell LLP
        4740 Grand Avenue, Suite 300
        Kansas City, MO 64112
        816-701-1102
        Fax 816-531-2372
        tcartmell@wcllp.com
        jkuntz@wcllp.com

        /s/ D. Renee Baggett
        Bryan F. Aylstock, Esq.
        Renee Baggett, Esq.
        Aylstock, Witkin, Kreis and Overholtz, PLC
        17 East Main Street, Suite 200
        Pensacola, Florida 32563
        (850) 202-1010
        (850) 916-7449 (fax)
        rbaggett@awkolaw.com
        baylstock@awkolaw.com

        **Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document on August 29, 2017, using the Court's CM-ECF filing system, thereby sending notice of the filing to all counsel of record in this matter.

/s/Thomas P. Cartmell
**Attorney for Plaintiffs**