# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL 2327 |
| -------------------------------------------------------- | |
| ETHICON WAVE 5 CASES LISTED IN EXHIBIT A OF DEFENDANTS' SUPPLEMENTAL MOTION | JOSEPH R. GOODWIN U.S. DISTRICT JUDGE |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTION TO EXCLUDE CERTAIN OPINIONS OF ROBERT D. MOORE, D.O.

COMES NOW, the Plaintiffs in the above-styled action, and file their Response in Opposition to Defendants Ethicon, Inc.'s and Johnson & Johnson's (hereinafter referred to as "Defendants") Supplemental Motion to Exclude Certain Opinions of Robert D. Moore, D.O. (hereinafter referred to as "Dr. Moore") (Dkt. No. 4341 and Dkt. No. 4343), and show the following:

### Argument and Citation of Authority

I. Having already considered and ruled on Defendants' motion to exclude Dr. Moore, the only motion Defendants were entitled to file under the controlling Docket Control Orders, the Court should deny this invalid motion for reconsideration on its face.

This "supplemental" motion, and similar "supplemental" motions filed against other of Plaintiffs' general experts, epitomizes the unnecessary waste of effort and resources that this MDL generally – and the Docket Control Orders governing this wave process specifically – were intended to avoid and prevent. The fundamental purpose of this MDL is to foster efficiency and economy for the parties and for the court system through coordination. This wave process is intended to allow multiple cases to move forward in a coordinated manner under the auspices of this Court prior to remand for trial (or for trial in the MDL court where appropriate).

1

The Docket Control Orders governing the "wave" process are plainly intended to eliminate duplication and redundancy of effort, to conserve judicial and party resources, and to promote efficiency – especially with respect to the coordination of "general," or common, expert discovery. The DCO's expressly require the coordination of general experts, and specifically mandate that "[i]nsofar as multiple plaintiffs utilize the same general causation expert or experts, those experts shall be deposed only once on the issue of general causation." (PTO #192, PTO #206 and PTO #210, ¶ A.3(b)). The DCO's further provide that "[f]or the filing of *Daubert* motions on general causation issues only, the parties are instructed to file one *Daubert* motion per expert in the main MDL…. Each side may file one response and one reply in the main MDL to each *Daubert* motion." (*Id.*, ¶ B.2).[1] The requirements of the DCO's are abundantly clear: one deposition and one *Daubert* motion per general expert.

Consistent with the letter and spirit of the Court's orders, Plaintiffs identified several general experts applicable either to all wave cases, or else to all cases involving specific products. Dr. Moore was identified in January 2016 in the initial Ethicon MDL Wave as a general expert with respect to the TVT-O product. Pursuant to the Court's Docket Control Orders, Dr. Moore was deposed only one time with respect to his general opinions on April 15, 2016, and the Defendants filed their one allowed *Daubert* motion challenging those general opinions on May 2, 2016. (Dkt. Nos. 2119-2020). Plaintiffs generally responded to the Defendants' *Daubert* motion (Dkt. No. 2204), and the Defendants filed their reply. (Dkt. No. 2279). In Wave 2, the Defendants adopted their prior *Daubert* motion and reply brief relative to Dr. Moore and incorporated that motion and reply brief by reference. (Dkt. No. 2459 and Dkt.

---

[1] While the DCO's refer to "general causation," the orders are intended to apply to all "general" experts, i.e., experts who intend to offer opinions relative to the plaintiffs generally or relative to all plaintiffs implanted with a certain product; that is certainly how the parties have treated those orders throughout this wave process.

2

No. 2577). The Wave 2 Plaintiffs likewise generally adopted their Response to Defendants' motion. (Dkt. No. 2520). The same adoption process was done with respect to Dr. Moore for Wave 3. (Dkt. No. 3049; Dkt. No. 3290; Dkt. No. 3304).

The Court ruled on the Defendants' *Daubert* motion against Dr. Moore on September 1, 2016 (Dkt. No. 2715). Thereafter, the Court adopted its *Daubert* ruling with respect to Dr. Moore for purposes of subsequent wave cases, first on March 27, 2017 (Dkt. No. 3509), and most recently on July 21, 2017. (Dkt. No. 4219).

Apparently having grown dissatisfied with the Court's ruling over time, the Defendants are essentially asking the Court for a do-over – almost precisely one year after the Court ruled on their *Daubert* motion. Although presented as a "supplemental motion," the present motion improperly seeks reconsideration of the Court's September 1, 2016 *Daubert* ruling with respect to this witness. Dr. Moore who presented his report more than 18 months ago, and was deposed more than 15 months ago, has not offered any new opinions. Dr. Moore has not provided any additional or supplemental expert report or information. Dr. Moore has not been re-deposed on his general opinions. There is simply nothing "new" or "changed" about Dr. Moore's general opinions or testimony.

Moreover, there is nothing new about the Defendants' argument here. First, Defendants urge that the Court should exclude "Opinions about what information should be included in the IFU." (Dkt. No. 4343, p. 2). However, Defendants' initial *Daubert* motion, which the Court has already thoroughly considered, addressed and ruled upon a year ago and then adopted in multiple prior waves, made the identical argument. See, Dkt. No. 2120 (Defendants' Memo. In Support of Daubert motion to exclude Gen. Causation Testimony of Robert D. Moore, D.O., p. 2 and Section VI. (seeking to exclude "Opinions as to what an adequate IFU should have contained.")).

3

Likewise, Defendants' argument that the Court should preclude Dr. Moore's "Opinion that the inside-out surgical technique is a design defect" (Dkt. No. 4343, p. 2) is a verbatim recitation from its initial *Daubert* motion, which again the Court has already considered and ruled upon and adopted multiple times. (*See*, Dkt. No. 2120, p. 2 and Section V. (seeking to exclude "Opinions that the inside-out surgical technique is a design defect.")).

Defendants simply seek to belatedly take issue with how the Court ruled with respect to their *Daubert* motion against this witness, and they want a second bite at the apple.

Notwithstanding its inaccurate caption, this motion is plainly a motion for reconsideration. In *In re C.R. Bard, Inc.*, 948 F.Supp.2d 589, 649 (S.D.W.Va.2013), the Court recited the legal standard for a motion for reconsideration, stating:

> "[I]t is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly." *Mt. Hawley Ins. Co. v. Felman Production, Inc.,* No. 3:09–cv–00481, 2010 WL 1404107, at *2 (S.D.W.Va. Mar. 30, 2010)….
>
> [A]lthough a "motion for reconsideration under Rule 54(b) is not subject to the strictures of a Rule 60(b) motion," this district has been "guided by the general principles of Rules 59(e) and 60(b)" in determining whether a Rule 54(b) motion should be granted. *Shrewsbury v. Cyprus Kanawha Corp.,* 183 F.R.D. 492, 493 (S.D.W.Va.1998). The Fourth Circuit has recognized three grounds for amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998). Such motions "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* Finally, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (quoting 11 Wright et al., Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1995)).

Defendants seek to employ the "extraordinary remedy" of a motion for reconsideration under the guise of a "supplemental motion." No matter what they call it, the result is the same: Defendants cannot properly ask the Court to rethink what has already been thoroughly argued,

4

briefed and decided. Likewise, to the extent they claim to raise "new" arguments (they do not), Defendants cannot properly seek to assert arguments that could have been raised before, or present a new theory or defense that they had the ability to raise in their initial motion, but chose not to.[2] Both parties, and the Court and its staff, have already devoted substantial time and resources to these same issues, and they have been authoritatively decided. Indeed, this motion has been adopted multiple times, and the Court's ruling on this motion has made and later adopted on multiple occasions. Respectfully, this "supplemental" motion is an unwarranted waste of time, effort and resources, and it should be denied.

## **Conclusion**

The governing DCO's allow only one deposition (by one designated attorney) and one *Daubert* motion per general expert. The intent of that express limitation is clear: to avoid the unnecessary duplication of effort, and consequent waste of time and resources, inherent in re-deposing and re-arguing over the same opinions from the same expert. The Court has ruled on Defendants' one *Daubert* motion with respect to Dr. Moore. Defendants cannot seek to have the Court reconsider that ruling, and it cannot seek to assert allegedly "new" arguments that it could have but did not raise in its motion. Defendants' "supplemental" motion should be denied.

---

[2] The fact that Defendants did not seek to raise any "new" arguments with respect to this expert in their prior wave briefing, but instead adopted and incorporated their prior motion from Wave 1 (consistent with the letter and spirit of the Court's Docket Control Orders), is telling. Indeed, Defendants adopted their prior *Daubert* motion and briefing with respect to Dr. Moore even after this Court had ruled on that motion. Now, more than a year after the Court ruled upon their motion, Defendants seek to raise what they inaccurately claim are "new" arguments (they are clearly not). This further serves to demonstrate that this motion is merely an attempt to have the Court reconsider what it has already ruled upon, and ruled upon again in two separate adoptions after the Defendants adopted their prior briefing in prior waves. Even if they do raise any new arguments, however, the same result is warranted: the motion should be denied.

5

Dated: August 29, 2017	Respectfully submitted,

/s/ D. Renee Baggett
Bryan F. Aylstock, Esq.
Renee Baggett, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, Florida 32563
(850) 202-1010
(850) 916-7449 (fax)
E-mail: rbaggett@awkolaw.com

/s/ Thomas P. Cartmell
THOMAS P. CARTMELL
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
tcartmell@wcllp.com

6

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2017, I electronically filed the foregoing document with the Clerk of the court using CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ D. Renee Baggett
D. RENEE BAGGETT
Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, FL 32563
850-202-1010
850-916-7449
Rbaggett@awkolaw.com