IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY LITIGATION | Master File No.  2:12-MD-02327<br>MDL No. 2327 |
| THIS DOCUMENT RELATES TO:<br>WAVE 5 CASES | JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY REGARDING THE
<u>WAVE 5 DEPOSITION OF DR. SCOTT A. GUELCHER, PH.D.</u>**

Plaintiffs submit this Memorandum in opposition to the "Motion to Compel Discovery or, in the Alternative, to Exclude Certain Opinion Testimony"[1] and the supporting Memorandum filed by Defendants Ethicon, Inc. and Johnson & Johnson (collectively "Ethicon or Defendants").[2]

**INTRODUCTION**

As this Court is well-aware by this point, Dr. Scott Guelcher, Ph.D., is a biomaterials expert identified by Plaintiffs for purposes of providing general opinions about the defective design of the Ethicon pelvic mesh products at issues in these cases.  His opinions—and trial testimony—have been repeatedly vetted by this Court and others, and have been consistent throughout this litigation.

---

[1] Dkt. 4582.
[2] Dkt 4584. (Hereinafter referred to as "Ethicon's Brief").

1

Here, Ethicon is seeking to compel the production of draft raw data relating to a 2017 published, peer-reviewed article in which Dr. Guelcher was one of five co-authors.[3] Prior to his August 17, 2017 Wave 5 Deposition, Ethicon asked Dr. Guelcher to produce data relating to this article.[4] Ethicon's Brief incorrectly asserts that Dr. Guelcher refuses to produce the requested data associated with the 2017 *Talley et al*. study. To be clear, Dr. Guelcher is not withholding or refusing to produce any documents or data.[5] Rather, in advance of his deposition, he did produce all responsive documents within his possession, custody or control—Dr. Guelcher produced the supplemental data for the *Talley et al*. study and the published study itself.[6] As explained below, Ethicon is not satisfied with Dr. Guelcher's production of this supplemental data, and now insists on the production of draft raw data that is not, and never was, in his possession, custody, or control. Indeed, Dr. Guelcher's deposition testimony is clear that his four co-authors in the *Talley et al.* 2017 published study actually performed the testing and that they—and not Dr. Guelcher himself—would have access to any additional draft raw experimental data which may exist.[7]

---

[3] *See* Ex. A, A.D. Talley, B.R. Rogers, V. Iakovlev, R.F. Dunn, and S.A. Guelcher, *Oxidation and Degradation of Polypropylene Transvaginal Mesh*, J. of Biomaterials Sci: Polymer Ed. (2017).
[4] *See* Deposition Notice, Ex. B, Document Request No.1.
[5] For this reason, Ethicon's assertion regarding the insufficiency of Plaintiffs' objections is irrelevant. Dr. Guelcher produced all the responsive documents he has in his possession, custody or control in response to the Request. Therefore, whether the Request asks for documents beyond the scope of Rule 26 or whether the Request is overbroad is irrelevant, as Dr. Guelcher is not withholding any documents subject to an objection.
[6] *See* Ex. C, (Dr. Guelcher Deposition Exhibit 2: Supplemental Data); Ex. A, Talley, B.R. Rogers, V. Iakovlev, R.F. Dunn, and S.A. Guelcher, *Oxidation and Degradation of Polypropylene Transvaginal Mesh*, J. of Biomaterials Sci: Polymer Ed. (2017).
[7] *See* Ex. D, Dr. Guelcher August 17, 2017 Deposition Transcript P. 15:20-16:3 (Q: "As part of this study, was it your practice to keep laboratory notebooks of the work that you performed?" A: "Again, Dr. Dunn did all of that. So, again, just to make it clear, Dr. Iakovlev prepared the fibers. Dr. Rogers performed the XPS. Dr. Dunn did the FTIR and SEM. So they would have that

2

In short, Dr. Guelcher produced all of the documents and data relating to the article that he has; but he cannot be compelled to produce the raw data Ethicon seeks through this motion—because it is simply not in his legal possession. To the extent any additional draft raw data may exist, such data would be held by Dr. Guelcher's four co-authors. Ethicon's Motion must be denied.

## RELEVANT FACTUAL BACKGROUND

Dr. Guelcher clearly explained at his deposition that each of the five co-authors in the *Talley et al.* article made different and distinct contributions based on their individual areas of expertise. Dr. Dunn performed the FTIR and SEM testing;[8] Dr. Talley analyzed the FTIR test data; Dr. Rogers performed the XPS experiments and analyzed the data; Dr. Iakovlev cleaned the explanted mesh; and Dr. Guelcher wrote the first draft of the article and complied the data that was included in the article.[9] The very reason there are multiple authors in a paper such as this is because each author has his or her own distinct field of knowledge and expertise to contribute to the paper.

Key to the question presented here, as Dr. Guelcher explained at his deposition, each of the article's co-authors performed separate testing, and each co-author would have maintained any draft raw data associated with his or her own testing.[10] As is the norm in multi-author scientific literature such as this, Dr. Guelcher relies on his co-authors and defers to them to

---

experimental data. I don't have it. I didn't do the work."); *see also* 15:6-20:3; 55:7-10, 56:15-23, 57:22-24, 64:10-20, 86:17-87:7.

[8] Ex. D, Dr. Guelcher August 17, 2017 Deposition Transcript P. 15:20-16:3.

[9] Ex. D, Dr. Guelcher August 17, 2017 Deposition Transcript P. 6:19-8:14; 15:15-16:3.

[10] *See* Ex. D, Dr. Guelcher August 17, 2017 Deposition Transcript P.17:24-18:9 (noting that "each investigator controls his or her raw data, is responsible for storing that under some kind of long term conditions, but we do so many runs on the instrument, it's not typical to leave all the data there. At some point somebody takes it off and stores it somewhere, but I don't typically do that.").

analyze and interpret the data in their respective fields.[11]  Indeed, Dr. Guelcher himself has previously explained to counsel for Ethicon that in these same experiments, other co-authors, including Dr. Dunn, actually did the testing, and Dr. Guelcher defers to them for the analysis of that data.[12]

Dr. Guelcher had in his possession, and produced to Ethicon in response to Document Request No. 1, the "supplemental data" associated with the *Talley et al.* article.[13]  This document contains additional published information regarding interim and final XPS and FTIR testing results, figures and tables of testing outputs, and information regarding materials relating to the *Talley et al.* article.[14]  In producing this supplemental data, Dr. Guelcher produced all the data he has in response to Ethicon's Document Request No. 1.  The data Ethicon wants—but Dr. Guelcher does not have—is draft raw testing data from the XPS and FTIR testing that Dr. Guelcher's co-authors performed in their laboratories and may include initial trial runs on the instruments.

## ARGUMENT

1. **Any additional data that may exist regarding the 2017 *Talley et al*. paper is not within Dr. Guelcher's possession, custody or control as defined by the Federal Rules of Civil Procedure.**

The U.S. District Court for the Northern District of West Virginia has held that Fed. R. Civ. P. 34, "requires an item in a request for production of documents to be in the possession, custody or control of the served party." *Ayers v. Cont'l. Cas. Co.,* No. 5:05-cv-95 2007 U.S. Dist. LEXIS 54389, at *15-16 (N.D. W. Va. 2007) ("there is no provision in Rule 34 for requesting from a party documents that are possessed by another person.").  Moreover, "[t]he party seeking

---

[11] *See* Ex. D, Dr. Guelcher August 17, 2017 Deposition Transcript P.41:9-20; 44:12-21.
[12] Ex. E, Dr. Guelcher March 23, 2016 Wave 1 Deposition Transcript P. 28:11-30:3.
[13] *See* Ex. C, (Dr. Guelcher Deposition Exhibit 2: Supplemental Data).
[14] *See id.*

4

production of the documents bears the burden of proving that the documents are in the other party's possession, custody, or control." *Philippe Charriol Int'l, Ltd. v. A'Lor Int'l, Ltd.,* No. 13-cv-01257-BAS (JBL) 2016 U.S. Dist. LEXIS 181281, at *6-*8 (S.D. Cal. 2016) (internal citations omitted).

As an initial matter, there is no dispute that Dr. Guelcher has produced all the data he has in his actual *possession or custody* regarding the 2017 *Talley et al.* study.[15] Indeed, any such data in Dr. Guelcher's possession were timely turned over to defense counsel on August 16, 2017.[16]

Likewise, Dr. Guelcher does not have any additional responsive documents within his *control*. His recent Wave 5 deposition testimony[17] is clear that his co-authors actually performed the testing underlying the study and they—not Dr. Guelcher—would have legal control of any additional testing data.[18] For example, when Dr. Guelcher was asked where the raw data is stored he replied "Again, that would be Dr. Dunn's data. I didn't do it."[19] The *Ayers* Court upheld the denial of a motion to compel certain medical records that was directed toward a patient, finding that the records were held by another party—the patient's doctor—and were not within the patient's "control." *Ayers* 2007 U.S. Dist. LEXIS at *16-17 ("While a patient may be

---

[15] Ex. D, Dr. Guelcher August 17, 2017 Deposition Transcript P. 86:17-87:7 (Q: "…to the extent that that data is available, it's in the custody or control of the people who conducted the work and not in your current possession. Is that fair?" A: "That's right.").

[16] *See* Ex. F, Emails between Plaintiffs' Counsel and Counsel for Ethicon.

[17] Ethicon states that the Talley et al. article "was the focus" of Dr. Guelcher's August 17, 2017 deposition. Ethicon's Brief at 1. It was Counsel for Ethicon's choice to only ask questions about this single peer-reviewed published study—which was done outside of the litigation context—and to not ask Dr. Guelcher any questions about his Wave 5 Report.

[18] *See* Ex. D, Dr. Guelcher August 17, 2017 Deposition Transcript P. 15:20-16:3 (Q: "As part of this study, was it your practice to keep laboratory notebooks of the work that you performed?" A: "Again, Dr. Dunn did all of that. So, again, just to make it clear, Dr. Iakovlev prepared the fibers. Dr. Rogers performed the XPS. Dr. Dunn did the FTIR and SEM. So they would have that experimental data. I don't have it. I didn't do the work.").

[19] Ex. D, Dr. Guelcher August 17, 2017 Deposition Transcript P.16:19-22.

able to request medical records from a physician, the records are not sufficiently within the patient's control to qualify under Rule 34."). Other courts have explained that the test of *control* is *not* whether a party is "practically able to obtain the documents," but rather whether the "party can order the person or entity in actual possession of the documents to release them." *Philippe Charriol Int'l, Ltd.* 2016 U.S. Dist. LEXIS 181281, at *6-*8; *see also Barr v. EQT Prod. Co.*, No. 5:14-cv-57 2015 U.S. Dist. LEXIS 61846, at *10 (N.D. W. Va. 2015) (defining "control" as "the legal right or ability to obtain the documents from another source upon demand."). Therefore, Ethicon's assertion that Dr. Guelcher "has access to all of the requested documents and underlying data for the Talley study" is legally irrelevant.[20] Because whether or not Dr. Guelcher *could* obtain access to the documents from one of his co-authors is not the applicable test for "control" under the law. And if the additional data Ethicon seeks is not within Dr. Guelcher's legal "control"—because he cannot order or compel his co-authors to provide any such data to him—it cannot be compelled under Rule 34.

2. **Ethicon's position that Dr. Guelcher should be precluded from offering any testimony regarding the 2017 *Talley et al.* study because he has "refused" to produce documents is without merit.**

Ethicon suggests that Dr. Guelcher should be precluded from offering any testimony or opinions based upon the 2017 *Talley et al.* study that he co-authored because Ethicon alleges that Dr. Guelcher has "refused" to produce data.[21] As Dr. Guelcher has clearly explained, he has not "refused" to produce anything—he has produced all the documents he has in response to Ethicon's Deposition Request No. 1. The documents or data that Ethicon asserts Dr. Guelcher is "refusing" to produce are in the possession, custody, and control of Dr. Guelcher's four co-authors. He simply does not have anything else to produce.

---

[20] *See* Ethicon's Brief at 5.
[21] *See* Ethicon's Brief at 6-8.

Finally, Plaintiffs feel it necessary to point out that Ethicon's citation to emails between Counsel for Ethicon and Plaintiffs' Counsel[22] only includes selective emails and omits Plaintiffs' Counsels' offer to meet and confer on this issue.[23] Plaintiffs believe Ethicon did not fulfill its duty to resolve this dispute prior to resorting to court action and as such, Ethicon's Motion should be denied.

## CONCLUSION

As stated above, Dr. Guelcher has complied with Ethicon's Document Request No. 1, as he has produced, in advance of his deposition, the Supplemental Data for the 2017 *Talley et al.* study. Dr. Guelcher is not withholding or refusing to produce documents and there is nothing to compel, because Dr. Guelcher has already provided the documents that are within his possession, custody or control. Ethicon's Motion must be denied.

Dated: September 14, 2017

Respectfully submitted,

/s/ Edward A. Wallace
Edward A. Wallace
Mark R. Miller
Timothy E. Jackson
Wexler Wallace LLP
55 W Monroe Street, Suite 3300
Chicago, Illinois 60603
T. (312) 346-2222
F. (312) 346-0022
E. eaw@wexlerwallace.com
   mrm@wexlerwallace.com
   tej@wexlerwallace.com

---

[22] *See* Ex. G (Ex. E to Ethicon's Motion).
[23] See Ex. F, August 30th email from Plaintiffs' Counsel to Counsel for Ethicon, offering to meet and confer and reiterating that there are no additional documents for Dr. Guelcher to produce because any such documents are in the possession and control of his co-authors.

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to CM/ECF participants registered to receive service in this MDL.

/s/ Edward A. Wallace