Exhibit C

```
             IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON


_____x
                              :
IN RE:  ETHICON, INC.         :   MDL No. 2:12-md-02327
PELVIC REPAIR SYSTEM          :
PRODUCTS LIABILITY LITIGATION :   DATE:  September 26, 2017
_____x


              TRANSCRIPT OF MOTIONS HEARING HELD
            BEFORE THE HONORABLE CHERYL A. EIFERT
                UNITED STATES MAGISTRATE JUDGE
                   HUNTINGTON, WEST VIRGINIA



APPEARANCES:
(All counsel appearing by telephone.)


For the Plaintiffs:          Edward A. Wallace
                             Timothy E. Jackson
                             Wexler Wallace
                             Suite 3300
                             55 West Monroe Street
                             Chicago, IL 60603

                             D. Renee Baggett
                             Aylstock Witkin Kreis & Overholtz
                             Suite 200
                             17 East Main Street
                             Pensacola, FL 32502

For the Defendant:           David B. Thomas
                             Thomas Combs & Spann, PLLC
                             P. O. Box 3824
                             Charleston, WV 25338-3824



Court Reporter:              Kimberly Kaufman, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.
```

*Kimberly Kaufman, RMR, CRR (304) 347-3188*

1       PROCEEDINGS had before The Honorable Cheryl A. Eifert,
2  Magistrate Judge, United States District Court, Southern
3  District of West Virginia, in Huntington, West Virginia, on
4  September 26, 2017, at 9:30 a.m., as follows:
5           MS. TATMAN:  We are here in the Ethicon MDL case
6  2:12-md-02327.  This is concerning defendant's motion to
7  compel discovery or in the alternative to exclude certain
8  opinion testimony.  That's ECF No. 4582.
9       May I please have plaintiff's counsel?
10          MR. WALLACE:  Yes, this is Ed Wallace for the
11 plaintiffs.  And I also believe Tim Jackson is on the line.
12          MR. JACKSON:  Yes, this is Tim Jackson.  I'm on
13 the line.
14          MS. BAGGETT:  Renee Baggett is also on the line.
15          MS. TATMAN:  Thank you.  Counsel for Ethicon,
16 please.
17          MR. THOMAS:  David Thomas.
18          MS. TATMAN:  All right.  If that's everyone, I'll
19 remind you, when you are speaking, to please identify
20 yourself for the sake of transcript.  And one moment for
21 Judge Eifert, please.
22          THE COURT:  Good morning.  All right.  We are here
23 today on defendant's motion to compel discovery or in the
24 alternative to exclude certain opinion testimony.  I have
25 read all of the submissions.

1   Let me ask a couple of questions.  I saw where there
2   was a supplement that was provided by the plaintiffs to the
3   defendant, but am I correct in understanding that that
4   supplement does not contain all of the raw data?
5          MR. THOMAS:  This is David Thomas, Your Honor.
6   That's correct.  The supplement was published data that was
7   a summary of that data.  We do not have the raw data that
8   was requested.
9          THE COURT:  All right.  Let me ask you, Mr.
10  Thomas, have you made any effort to subpoena that
11  information?
12         MR. THOMAS:  If we're not successful here, we will
13  go after the co-authors to subpoena the information.  We
14  have not done that pending the outcome of this issue.
15         THE COURT:  Okay.  So here's where I come down on
16  this.  As far as the standard that you would apply as to
17  whether or not this information is within the control of the
18  doctor, I don't think the standard is really set in stone.
19  I did a review yesterday.  It's a bit of a flexible standard
20  depending on where you are in the country and what circuit
21  you're in, and even within the Fourth Circuit there's some
22  disagreement as to what the standard is.
23     Some courts believe that there has to be a legal right
24  to the materials before you have control of them or there
25  has to be some close relationship between the person who

1  holds the information and the party that's asked to produce
2  it: For example, subsidiaries and parent corporations, that
3  sort of thing.
4      Then there's a series of cases, especially in this
5  district and in this -- well, mainly this district -- not
6  just this district, Maryland as well -- where they say as
7  long as you have the practical ability to obtain the data or
8  the information, then you do have control over it. So there
9  is this range and this -- I think it's not entirely clear
10 what would be the proper standard to use, but honestly I
11 don't know that that matters a whole lot in the end result
12 because the fact is that the doctor did testify that he is
13 able to get this data.
14     And so I don't think we should make a mountain out of a
15 molehill as far as which standard to apply. I think
16 probably I'm leaning more toward the practical ability to
17 obtain the data. When I say that, I don't think that's an
18 incorrect standard to apply. I don't think it's universal,
19 but in this case it makes sense to me. And I think it
20 really makes sense because if you look at Rule 26(a)(2)(B),
21 the report provided by the expert is supposed to in some way
22 contain or supply the facts and data considered by the
23 expert in reaching his or her opinion.
24     Dr. Sculpture (phonetic) also testified that he did
25 review and consider the raw data. So from that standpoint,

1  I think that the defendants are entitled to the raw data.  I
2  think the defendants are also entitled to the protocol and
3  photographs that the one physician might have who did the
4  separation of the fibers, any images, any information about
5  the specimen.  I think all of that is data.  It's factual
6  information that ought to be supplied to the defendant so
7  that they have an opportunity to undermine the credibility
8  and reliability of this particular paper.
9     Having said that, I don't think I saw anywhere in the
10 deposition where the doctor mentioned that he relied on
11 communications with co-authors or particular review boards
12 or that he relied on investigator brochures.  I don't even
13 know whether this is the kind of situation where there would
14 be adverse events for informed consent.  So I don't think
15 the defendants are entitled to those various categories of
16 information.
17    So I am going to order the plaintiffs to provide to
18 Ethicon -- or defendant if there's more than just Ethicon --
19 the raw data, the materials -- the information regarding
20 specimens, if that exists, the protocols, any photographs,
21 images that have to do with the fibers that were separated
22 and used and examined, so that kind of factual information.
23    I'm not going to require the plaintiffs to produce
24 informed consents, adverse events, investigator brochures.
25 I think they've already given defendants the submissions and

1   I'm not going to make the plaintiffs produce communications
2   with co-authors, et cetera.
3        Now, that, to me, takes care of the first issue, and
4   I'll let either side say whatever they might want to say on
5   the record about my ruling before I go on to the second
6   question, which is this supplemental deposition.
7        Who would like to go first?  Mr. Thomas, it's your
8   motion.  Is there something you would like to add or say on
9   the record?
10          MR. THOMAS:  No, Your Honor, nothing further.
11  Thank you.
12          MR. WALLACE:  Your Honor, this is Ed Wallace,
13  plaintiff's counsel, Your Honor, and Tim Jackson, who had
14  most of the dealings with Mr. Thomas, is also on the line to
15  address any of the communications between them, but given
16  Your Honor's ruling I have a few practical sort of
17  questions/suggestions that we're probably going to need some
18  guidance on.
19       One of those is the reality of what we do.  In other
20  words, there are, I believe, multiple co-authors, all of
21  whom may or may not have information who will be required to
22  spend a lot of time and effort, and including us spending a
23  lot of time and effort to -- for example, I don't know if I
24  now have to fly to Toronto to determine whether or not --
25  you know, what those specimens -- where they're kept now, et

1   cetera.
2   　　　As you know this much of the peer review process so
3   once the article was written and approved and published, I'm
4   not sure what those co-authors did with any of that
5   underlying data.  And much like, for example, defendant's
6   expert who recently, I believe, was published, the question
7   I have beyond that is what is good for the goose is good for
8   the gander.  We'd love to have all the underlying data for
9   every article that's ever been published that's relied on by
10  an expert and I whether or not we're opening up a can of
11  worms here in that regard.
12  　　　I was just wondering if Your Honor could outline some
13  of the limits of what this ruling is really is so we don't
14  get into that because I'd hate to see that start happening
15  every other week and so forth.  Those are really my what I
16  call two practical concerns.
17  　　　　　THE COURT:  Well, let me say this:  What Rule 26
18  provides is that if the expert considered that data, then
19  that -- those facts and data need to in some way be
20  disclosed to the other side.  Obviously you're always going
21  to have proportionality concerns, there's going to be
22  burdensome arguments and things of that nature.  I think
23  clearly if someone no longer has the data, then there's
24  nothing to produce.
25  　　　I think in this case, because he testified that he

1  relied on this raw data -- and I looked for that very
2  carefully because -- I think it's at page 16 of his
3  transcript. I looked for that very carefully because when I
4  was reading through some of it, it sounded to me like he
5  really didn't review or rely on or consider the raw data,
6  that he had these various other individuals that were the
7  principal investigators -- and I think there were only
8  really three other people other than his students that I
9  understood had any of this information. That being Barry
10 Rodgers and -- I can't pronounce that person's name, but the
11 one who actually separated the fibers.
12      My understanding was there were three other people and
13 it looked at first as though he was going to say I really
14 didn't do that, I just relied on this, relied on that, but
15 then at some point he does say at page 16 that he did look
16 at the raw data and he did consider it. Once he said that,
17 I think now it's up for grabs because of Rule 26.
18      As far as these other arguments go, none of those
19 arguments were made in response to this motion so I'm not in
20 a position to say whether this was too burdensome or whether
21 it's disproportional. So all of these things have to be
22 taken sort of case-by-case.
23      I understand your concerned about opening up this whole
24 issue about always producing the raw data. I would think
25 for the most part people aren't going to want the raw data

1  because it's not going to add anything and it's just going
2  to be additional information that you don't really need to
3  have.  Obviously you don't have to produce raw data for
4  articles that were not written by the expert.  That's going
5  to be impossible to do and that's not something that the
6  expert would have control over anyway.
7      But in this case, this is what the request was.  I see
8  there's a basis for it.  He can get the data.  So I think
9  you need to move on that and see what's out there and how
10 long it's going to take to collect it.
11     It didn't sound to me like it was going to be all that
12 hard from what I read.  It sounded like most of it was
13 computerized and it was just stored somewhere.  So it may be
14 nothing more than downloading it on a thumb drive and
15 sending it to Mr. Thomas, but it's hard for me to tell
16 because those issues weren't really raised.
17         MR. WALLACE:  Your Honor, along those lines I
18 guess what I'm hearing -- I understand, as you point out,
19 this is sort of a case-by-case issue.  What I'm hearing is
20 we will, pursuant to your ruling, act promptly, like today,
21 to uncover exactly where that's at, what we can get and
22 exactly what he relied on and then we will confer with Mr.
23 Thomas as soon as possible.
24     If there are issues, for example, of the things that do
25 come up in discovery like proportionality or burden or those

1  sorts of things, we're obviously not going to waste your
2  time with what I'll call the trivial stuff, but if there's
3  something very serious that comes up, we may need to address
4  that with the court.
5      I'm not going to telegraphing anything because I've had
6  pretty good dealings with Mr. Thomas, but my concern is I
7  don't want to turn this in to a 90-day search for everything
8  under the sun.  I want to get this done.  I want to get --
9  your ruling obviously is what it is and it's -- I construe
10 it narrowly enough that we can get this done pretty quickly.
11         THE COURT:  Let me say, Mr. Wallace, that's the
12 way I'm thinking as well.  The impression that I got was
13 that this would not be that hard to collect and that hard to
14 get together.  I might ask Mr. Thomas, too, to maybe discuss
15 with his experts what raw data they really think would be
16 important to impeach the article.  I don't know that
17 everything -- all of the raw data is going to be that
18 important.  Maybe it is.  I don't know, but I would say that
19 there ought to be some effort on the defendant's side to
20 narrow what it is that you really need and not just collect
21 a bunch of extraneous information for no other reason than
22 you feel like you have to have it.
23     I would think your experts would have some idea of
24 where there might be weaknesses in the study itself and
25 where the raw data might truly make a difference in the

```
 1    opinions expressed in the article.  I would ask you to look
 2    at that and try to work together.
 3         If it turns out that this is becoming a huge problem,
 4    don't wait 30 days to come back.  Come back in two weeks or
 5    however long -- because I expect you both are going to get
 6    right on it.  Aren't you way done with discovery now?
 7              MR. WALLACE:  Well, I sure hope so.
 8              THE COURT:  I thought the deadline had expired a
 9    while ago so I don't see this as being something that's
10    going to take 90 days, but 60 days or even 30 days.  I'm
11    thinking this should be fairly easy to gather because it
12    sounded like it was all computer-generated data to me, but
13    if that's not the case --
14              MR. THOMAS:  This is David Thomas.  I want to just
15    respond to that briefly.  I'll certainly work with Mr.
16    Wallace.  We always have worked well together on these
17    issues.  This has been a two-way street.  We've been through
18    this whole process with one of our experts who published a
19    study and we produced all the underlying data.  And, in
20    fact, even his assistants who worked on the testing were
21    deposed.  This is something we've been through before on the
22    defense side and I'd like to think that Mr. Wallace and I
23    will be able to work through this easily.  If not, we'll be
24    back, but Mr. Wallace and I get along pretty well and I
25    think we'll be able to work through this.
```

1           THE COURT:  Very good.  The second issue is the
2   deposition.  Here is how I am ruling on that.  First of all,
3   the discovery deadline's over so I don't have authority to
4   extend it to allow you to take a supplemental deposition.  I
5   think Judge Goodwin recently entered an order letting
6   everybody know that he doesn't want you stipulating around
7   the deadlines.  So obviously I don't have that authority
8   anyway.
9           But let me add this, even if I did have the authority,
10  I would not grant that motion for a supplemental deposition
11  and here's the reason why:  He did consider the raw data,
12  but it's very clear to me in this deposition that he really
13  relied on these other people to do the work -- the
14  nitty-gritty work of what area they were the principal
15  investigator on.  I don't think he would really be a
16  valuable witness in talking about the ins and outs of the
17  raw data.
18          He obviously looked at it, considered it, but he didn't
19  perform any of those tests.  He didn't set the protocols.
20  He didn't come up with the figures.  He didn't make the
21  calculation.
22          To me that would just be a waste of time spent on
23  deposing him about things that he doesn't really have
24  personal knowledge of, so for that reason I would deny that
25  anyway, but, of course, the main reason is that discovery is

*Kimberly Kaufman, RMR, CRR (304) 347-3188*

```
 1   over at this point.
 2         Does anybody want to say anything to that?
 3            MR. THOMAS:  Not at this point, Your Honor.  David
 4   Thomas.
 5            MR. WALLACE:  All right.  No, Your Honor.  Thank
 6   you.  Ed Wallace speaking.
 7            THE COURT:  All right.  So I think that takes care
 8   of everything.  I'll do my usual very short order saying we
 9   had a hearing, we discussed it and I'm ruling in accordance
10   with what was said during the hearing.  All right?
11            MR. THOMAS:  Thank you, Your Honor.
12            MR. WALLACE:  Thank you, Your Honor.
13            THE COURT:  Thank you.
14
15      (Proceedings concluded at 9:49 a.m., September 26, 2017.)
16
17
18
19
20
21
22
23
24
25
```

```
 1   CERTIFICATION:
 2        I, Kimberly Kaufman, Official Court Reporter, certify
 3   that the foregoing is a correct transcript from the record
 4   of proceedings in the matter of In Re: Ethicon, Inc., Pelvic
 5   Repair System Products Liability Litigation, MDL No.
 6   2:12-md-02327, as reported on September 26, 2017.
 7
 8   s/Kimberly Kaufman, RMR, CRR        October 2, 2017
 9   Kimberly Kaufman, RMR, CRR                    DATE
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```