## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

IN RE: ETHICON, INC.                )
PELVIC REPAIR SYSTEM          )          **MDL NO.: 2327**
PRODUCTS LIABILITY LITIGATION )

### STIPULATED MOTION FOR APPROVAL OF QUALIFIED
### SETTLEMENT FUND SUBACCOUNT AND
### APPOINTMENT OF FUND ADMINISTRATOR

COMES NOW Harry F. Bell, Jr., one of the Plaintiffs' Counsel in this matter, and moves this Honorable Court for an Order to: (i) approve the use of a Qualified Settlement Fund under Internal Revenue Code § 468B, which is called the Harry F. Bell Qualified Settlements Fund Subaccount (the "Fund"); and (ii) approve the administrator for the Fund.  This Motion was shared with Ethicon, Inc. ("Ethicon") prior to filing and no objections to the Motion were received.  In support of this Motion, the undersigned respectfully states as follows:

1.      Plaintiffs sought claimed personal injury damages from Ethicon related to Ethicon pelvic mesh products.

2.      Plaintiffs' Counsel is a participant in a a Confidential Master Settlement Agreement with Ethcion to resolve the claims of certain claimants against Ethicon relating to Ethicon pelvis mesh products.   Ethicon entered into the Confidential Master Settlement Agreement solely to avoid the expense, inconvenience and burden of litigation, and without admission of liability or wrongdoing.

3.      Utilization of the Fund as a settlement vehicle will facilitate structured settlements and funding for Special Needs Trusts, at each Plaintiff's option.  Hence, in the best interest of all parties, the Court should approve the Fund to resolve or satisfy claims of certain claimants for

the undersigned's clients against Ethicon, while allowing for the allocation and final disbursement of settlement funds to be finalized.

4.      Upon satisfactory receipt of all materials required under the Confidential Master Settlement Agreement and payment of the settlement funds by Ethicon to the escrow account established pursuant to the Settlement Agreement and previously approved as a QSF by this Court, settlement funds relating to the claimants of the undersigned may be distributed from that escrow account to the Fund.

5.      The Fund shall be a Qualified Settlement Fund as described in Internal Revenue Code § 468B and Treas. Reg. Section 1.468B-1, approved by Order of this Court in compliance with the terms of the Confidential Master Settlement Agreement and the Escrow Agreement, and the Fund shall remain subject to the continuing jurisdiction of this Court.

6.      This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a Qualified Settlement Fund "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

7.      The undersigned requests that the Court approve the engagement of attorney Edgar C. Gentle, III as the Fund Administrator. The Fund Administrator possesses extensive experience administering Qualified Settlement Funds, and his firm address is as follows:  Gentle, Turner, Sexton & Harbison, LLC, 501 Riverchase Parkway East, Suite 100, Hoover, Alabama 35244. The Fund Administrator submits personally to the jurisdiction of this Court.

8.      Until such time that the Plaintiffs are entitled to receive compensation under the terms of the Confidential Master Settlement Agreement, no settlement monies shall be set apart

for a Plaintiff, or otherwise made available so that the Plaintiff may draw upon or otherwise control said settlement monies.

9.      The Fund, by and through the Fund Administrator, shall only make payments to the Plaintiffs and any entities asserting a claim of subrogation according to the terms of the escrow agreement and pursuant to the terms of the Confidential Master Settlement Agreement. The Fund Administrator shall not disburse any funds to any Plaintiff or to Plaintiffs' Counsel for any Plaintiff until Plaintiffs' Counsel has confirmed to the Fund Administrator that they are not aware of any other public or private liens, and if any such lien exists with respect to the Plaintiff's recovery from the Plaintiff's pelvic mesh product claim, the Fund Administrator shall deduct from that Plaintiff's settlement monies an amount equal to the face amount of any lien or claim held by any lien or claim holder, which the Fund Administrator may not release until the lien or claim is resolved and paid.

10.      The Fund, by and through the Fund Administrator, may purchase and assign any structured settlements created under any Release Agreements. Any structured settlement annuity contract shall be issued by a life insurance company that is rated A+ or better by A.M. Best Company. The Fund, by and through the Fund Administrator, may use part or all of a Plaintiff's pelvic mesh product claim recovery, after payment of expenses and fees, to fund a Special Needs Trust, at Plaintiff's direction.

11.      The claims made against Ethicon are made on account of physical bodily injury and arise out of alleged liability in tort or violation of law. The Plaintiffs shall agree in writing to a discharge of the Fund and the Fund Administrator's liabilities in the making of any structured settlement payments, also known as periodic payments, by executing, along with the Fund Administrator, any necessary documents required or related to the discharge of those liabilities.

12.     The settlement proceeds are the sole property of the Fund.  No portion of the settlement proceeds shall be made available to Plaintiffs in any fashion, except as specifically set forth in the Confidential Master Settlement Agreement.   Until such time as monies are distributed, the Plaintiffs shall not possess any rights to demand or receive any portion of the settlement proceeds or the escrowed funds or to mortgage, pledge, or encumber the same in any manner. To the extent possible, this Motion shall be construed so as to prevent the Plaintiffs from being in constructive receipt, as determined under Federal income tax principles, of any amounts held by the Fund.

13.     The Fund Administrator shall be indemnified and held harmless by the Plaintiffs from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Fund.   Should the Fund Administrator be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Fund, by reason of the Fund Administrator having served in any capacity on behalf of the Fund, the Fund Administrator shall be indemnified and held harmless by the Plaintiffs against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Fund Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the Fund Administrator was grossly negligent or acted with willful misconduct in connection with the administration of this Fund.

14.     The undersigned requests that no bond be required, provided that all monies received by the Fund, which includes all principal and interest earned thereon, shall be deposited

in an investment agency account held in custody at Wells Fargo Bank, N.A. for the benefit of and titled in the legal name of the Fund and invested in instruments/securities comprised of (a) United States Agency, Government Sponsored Enterprises or Treasury securities or obligations (or a mutual fund invested solely in such instruments) (b) cash equivalent securities including SEC registered money market funds and/or collateralized money market accounts; and/or (c) deposit and similar interest-bearing, or non-interest bearing accounts subject to Federal Depository Insurance Corporation protections as available.  The Fund shall be held at Wells Fargo Bank, N.A. (the "Bank"), a financial institution doing business at 420 20th Street North, Birmingham, Alabama 35203, according to the above terms and conditions, and said financial institution shall be responsible for any and all investment related decisions, following the instructions of the Fund Administrator and/or its investment advisor pursuant to these terms and conditions, such that the following investment policy is implemented: (1) safety of principal, (2) zero bank balance exposure; and/or (3) the use of zero sweep disbursement accounts to ensure funds remain in custodial or fully insured accounts to avoid an impermissible risk of loss should the financial institution holding the funds fail.  Notwithstanding the foregoing, the Bank shall not be allowed to distribute any income or principal from the Fund except upon instructions of the Fund Administrator, or, if requested, upon the order of this Court.  The Fund Administrator retains the right to remove the Bank with or without cause, in its sole and absolute discretion.  The Fund Administrator may designate a replacement bank upon the written consent of the Plaintiffs and the undersigned.  In the event of such replacement, the terms and conditions of this paragraph 14, including without limitation, those addressing bond requirements, investments, and distributions from the Fund, shall apply to any such replacement bank.

15.     The Fund Administrator is permitted to distribute all excess interest accrued to the Fund, after the payment of fees, expenses and taxes, to the claimants on a pro rata basis. For example, if there are four claimants involved in a settlement, with each claimant possessing a 25% interest in the settlement proceeds, and the Fund possesses $100 in accrued interest, after the payment of fees, expenses and taxes, the $100 would be split evenly among the four claimants. As the example indicates, each claimant's share of the excess accrued interest is strictly correlated to their respective percentage interest in the settlement proceeds. The Fund administrative expenses shall be paid first from income and second from principal. The Fund Administrator shall be entitled to reasonable fees and expenses to be negotiated between the Fund Administrator and the undersigned on behalf of the Plaintiffs.

16.     The Fund Administrator shall be authorized to distribute all attorney fees and litigation expenses to the undersigned, consistent with existing contingency fee contracts and to the extent required by law.

17.     All taxes on the income of the Fund and expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, the expenses of tax attorneys and accountants) shall be paid out of the Fund, shall be considered to be a cost of administration of the settlement, and shall be paid as instructed by the Fund Administrator. Ethicon shall have no liability, whether tax or otherwise, associated with the Fund.

18.     Upon request, the Fund Administrator will prepare and deliver Fund Statements ("Statements") to the undersigned. The Statements shall include a statement of receipts, investment earnings, and disbursements. The Fund Administrator shall provide the Statement no later than ten (10) business days following the request.

19.     The Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document believed by the Fund Administrator to be genuine and sufficient, and upon any other evidence believed by the Fund Administrator, in its reasonable judgment, to be genuine and sufficient, which may be provided to the Fund Administrator by the undersigned.

20.     Upon final distribution of all monies paid into the Fund, the Fund Administrator shall take appropriate steps to wind down the Fund and thereafter be discharged from any further responsibility with respect to the Fund.

21.     To the extent any paragraphs in this Motion conflict or are in any way inconsistent with the terms and conditions of the Confidential Master Settlement Agreement, the Confidential Master Settlement Agreement shall control.

WHEREFORE, the undersigned respectfully requests that the Court consent to take continuing jurisdiction over the Fund pursuant to Treas. Reg. Section 1.468B-1(c)(1), and issue an Order which:

1.     Approves the use of said Fund as a Qualified Settlement Fund within the meaning of Internal Revenue Code § 468B and Treasury Regulation Section 1.468B-1;

2.     Appoints attorney Edgar C. Gentle, III, as Fund Administrator, pursuant to the terms, conditions and restrictions of this Motion, and in compliance with the terms of the Confidential Master Settlement Agreement and the Escrow Agreement, thereby granting the Fund Administrator the authority to conduct any and all activities necessary to administer this Fund as described in this Motion;

3.  Authorizes the Fund Administrator to effect qualified assignments of any resulting structured settlement liability within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee and fund Special Needs Trusts;

4.  Authorizes the Fund Administrator to distribute all attorney fees and litigation expenses to the undersigned, as well as with those persons who are represented by the undersigned in future settlements, consistent with their existing contingency fee contracts and the terms of the Confidential Master Settlement Agreement; and

5.  Authorizes the Fund Administrator, upon final distribution of all monies paid into the Fund, to take appropriate steps to wind down and dissolve the Fund and thereafter discharging the Fund Administrator from any further responsibility with respect to the Fund.

Respectfully submitted,

s/Harry F. Bell, Jr.
Harry F. Bell, Jr., Esq.
The Bell Law Firm
30 Capitol Street
Charleston, WV 25301
Phone: 304-345-1700

39197002.v1