# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2187 |
| IN RE: AMERICAN MED. SYS., INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2387 |
| THIS DOCUMENT RELATES TO ALL CASES | |

**KLINE & SPECTER P.C.'S MOTION FOR DISCOVERY RELATING TO
THE FEE AND COST COMMITTEE'S INITIAL REVIEW OF
COMMON BENEFIT FUND FEE SUBMISSIONS AND AN EXTENSION
OF TIME TO RESPOND TO THE FEE AND COST COMMITTEE'S
<u>REVIEW OF KLINE & SPECTER P.C.'S COMMON BENEFIT FEE SUBMISSION</u>**

Kline & Specter P.C. ("Kline & Specter"), by and through its counsel, Charles M. Love, III and Floyd E. Boone Jr., respectfully move for an order:

1. Directing the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee (hereinafter "Fee and Cost Committee" or "FCC") to provide specific, written reasons with respect to each instance in which the FCC disallowed common benefit work performed by Kline & Specter within 10 days.

1

9877871.2

2. Granting Kline & Specter an additional 30 days from the date of production of the documents and information sought herein to submit a response and supporting affidavit in accordance with the Fee Benefit Protocol.

3. Directing the FCC to produce all documents relating to:

   a. The common benefit fund fees and expenses requested by each firm;

   b. The FCC's response to each firm's fee and expense request;

   c. The amount of money received pursuant to the five percent assessments, along with a per firm itemization of these payments;

   d. Any fee sharing agreements between or among the members of the FCC;

   e. Communications among FCC members and all documents relating to the FCC's consideration of the fee and expense requests; and

   f. Communications between the FCC and all firms requesting common benefit fees and expenses.

**I.    BACKGROUND**

The following facts are pertinent to the relief requested by this Motion:

1. The Court's Pretrial Order governing the "Fee Committee Protocol" establishes the processes for applying for common benefit fees and expenses and the review of such applications with respect to Pelvic Mesh MDL Nos. 2187, 2325, 2326, 2387, 2440, and 2511. *See, e.g.,* PTO Nos. 262, 244, 257, 133, and 166.

2. In accordance with the Fee Committee Protocol and the parameters established by the FCC, Kline & Specter regularly submitted its Common Benefit fee hours from the beginning of this litigation through December 31, 2016.

3. As required by the Fee Committee Protocol, on September 26, 2017, Lee B. Balefsky, Esquire, a senior partner at Kline & Specter and a member of the Plaintiffs' MDL Steering Committee, provided the FCC with Kline & Specter's total revised time and a

supporting affidavit. Kline & Specter's submission stated that the firm had audited the time and expenses being submitted and that the time and expenses submitted were for the common benefit. Time submitted by Kline & Specter totaled 32,270.19 hours. *See* September 26, 2017 Affidavit of Lee B. Balefsky, attached as Exhibit "A."

4. On February 16, 2018, Kline & Specter received a letter from the FCC. *See* February 16, 2018 FCC Letter, attached as Exhibit "B." The FCC letter stated that after an initial review, the FCC had reduced the number of hours submitted by 16,090.70. The FCC asserted that these hours were not for the common benefit of the plaintiffs and claimants. The only grounds for the disallowance were the following general, blanket, and unspecified reasons:

   1. Clerical time

   2. Work for the benefit of an individual case and not for the common benefit of the MDLs

   3. Time outside the compensable time period as provided to you with this letter

   4. Time that was not approved by leadership

   5. Observing trials and depositions without meaningful participation.

*Id*. at 2.

5. The FCC also said that an additional 10,976.54 hours should be disallowed for the following blanket and unspecific reasons:

   1. Your firm had instances of multiple time keepers billing for the same activity on the same day;

   2. Your firm had instances of time being billed in excess of fifteen (15) hours in a single day; and

   3. Your firm failed to adequately code or provide sufficient detail to determine whether the time entry was compensable.

*Id*.

9877871.2

6. Collectively, these reductions would disallow approximately 85% of the hours submitted by Kline & Specter.

7. The FCC's letter of February 16, 2018 attached two spreadsheets identifying the 5,488 entries that the FCC proposed to disallow from Kline & Specter's submission.

8. The only explanations for the FCC's proposed disallowances are the blanket and generic reasons identified above. Moreover, the spreadsheets identified above included a column entitled "Comments from Requesting Firm." The FCC directed Kline & Specter to insert the reasons why the disallowed entries were for the common benefit under the new "Comments from Requesting Firm" column. *See* Exhibit B at 2. The FCC's blanket and generic explanations for the disallowances, however, make it impossible for Kline & Specter to provide a specific response to each disallowance.

9. The FCC and the Fee Committee Protocol require that Kline & Specter's response to the FCC's disallowances be submitted within 30 days of its receipt of the FCC's letter of February 16, 2018. *See* Exhibit B. Thus, Kline & Specter would be required to respond to 5,488 disallowed entries, provide final expense submissions, and submit a supporting affidavit within less than two weeks.

10. On February 27, 2018, Kline & Specter sent a letter to Henry Garrard, Esquire, Chairperson of the FCC. *See* February 27, 2018 Letter to Henry Garrard, attached hereto as Exhibit "C." In the letter, Kline & Specter asked the FCC to voluntarily produce the documents requested above.

11. Although Mr. Garrard failed to respond, a response was received from Daniel J. Stack, External Review Specialist to the FCC. *See* March 5, 2018 Letter to Lee B. Balefsky, attached hereto as Exhibit "D." Mr. Stack, speaking for the FCC, refused to provide the

documents and information requested by Kline & Specter. Moreover, Mr. Stack's letter attacked Kline & Specter and questioned the firm's motives for seeking basic information that would allow it to justify why Kline & Specter should be fully compensated for all of the hours it has submitted to the FCC. *See id.* ("Your letter further insinuates that there are side agreements amongst members of the FCC and can be read as an effort to intimidate the FCC. Such allegations and attempts are false and intolerable. There are neither agreements nor side agreements among the members of the FCC."). On the other hand, Mr. Stack, speaking for the FCC, agreed to provide Kline & Specter with an extension of time to provide its response to the FCC's letter of February 16, 2018.

## II. ARGUMENT

Kline & Specter has submitted 32,094.70 hours of common benefit time to the Pelvic Mesh MDL Common Benefit Funds. Since the establishment of the Pelvic Mesh MDLs, lawyers and paralegals employed by Kline & Specter have taken innumerable actions that have provided common benefits and materially advanced the interests of every plaintiff and claimant in the Pelvic Mesh MDLs. Indeed, Kline & Specter tried six pelvic mesh cases to jury verdicts. In five of those cases, the plaintiffs prevailed. Collectively, juries awarded Kline & Specter's clients $110 million in damages.

Kline & Specter's contributions were expressly and adequately described in the submissions it made to the FCC. Nevertheless, the FCC proposes to disallow approximately 85 percent of Kline & Specter's common benefit time and refuses to provide Kline & Specter with the information that would allow it to justify the adequacy and reasonableness of its submitted time. Kline & Specter reiterates the accuracy and appropriateness of the expenses and time

submitted to the FCC and asks this Court to order the FCC to provide Kline & Specter with the information it needs to demonstrate the accuracy and appropriateness of its submissions.

The relief Kline & Specter seeks is also necessary to ensure that the FCC functions in accordance with the most "basic judicial standards of transparency and fairness." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008) ("*High Sulfur*"). Relatedly, access to the information Kline & Specter seeks is also necessary, ultimately, to enable this Court to fulfill its responsibilities. *See id.* ("But the appointment of a committee does not relieve a district court of its responsibility to closely scrutinize the attorneys' fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards."). Indeed, the information being sought by this Motion is indispensable to this Court's ultimate duty to ensure that fee allocations are appropriate. *See id.* at 229 ("the court questioned members of the Fee Committee about the allocation and order. No sworn testimony was taken, no depositions were offered, and no affidavits were filed attesting to the accuracy or fairness of the proposed fee allocation. Further, because the hearing was ex parte, other plaintiffs' attorneys, including Appellants, were not present to confirm or challenge the Fee Committee's statements about their contributions to the case.").

In addition, the relief sought by this Motion, including making the discovery sought available to every firm that has submitted fee applications, is in the public interest. Various plaintiffs' lawyers have an interest in discussing the FCC's fee allocations among themselves and with their clients. *See High Sulfur*, 517 F.3d at 229 ("These actions not only kept the public in the dark about each plaintiffs' attorneys' award but also prevented counsel from communicating with each other and with their own clients on the subject. The lack of transparency about the individual fee awards supports a perception that many of these attorneys

6

9877871.2

were more interested in accommodating themselves than the people they represent."). Making the discovery sought through this Motion available to every plaintiffs' lawyer involved in this process is also in the broader public interest. As noted by the Fifth Circuit in *High Sulfur*:

> On a broad public level, fee disputes, like other litigation with millions at stake, ought to be litigated openly. Attorneys' fees, after all, are not state secrets that will jeopardize national security if they are released to the public. As the Third Circuit has noted, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *United States v. Cianfrani,* 573 F.2d 835, 851 (3d Cir. 1978). From the perspective of class welfare, publicizing the process leading to attorneys' fee allocation may discourage favoritism and unsavory dealings among attorneys even as it enables the court better to conduct oversight of the fees. If the attorneys are inclined to squabble over the generous fee award, they are well positioned to comment—publicly—on each other's relative contribution to the litigation.

*Id.* at 230 (brackets in original).

Finally, the members of the FCC are effectively fiduciaries for every plaintiffs' law firm that has submitted fee applications. Moreover, the members of the FCC are considering fee applications they or members of their firms have submitted to the FCC. Kline & Specter, and every other law firm submitting fee applications that is not represented on the FCC, should be able to compare the FCC's treatment of their fee applications with the FCC's treatment of its own fee applications. Requiring the FCC to reveal its treatment of every fee application submitted to it, including those submitted by the members of the FCC, is vital to upholding the "basic judicial standards of transparency and fairness." *High Sulfur*, 517 F.3d at 227. Allowing the FCC to make its fee determinations in absolute secrecy is antithetical to the most "basic judicial standards of transparency and fairness" and is not in the public interest.

In sum, this Court should grant the relief requested by this Motion to enable Kline & Specter to protect its interests and those of similarly situated plaintiffs' firms, to allow this Court to review the various fee allocations at the appropriate time, and to further the public interest in transparency and fairness.

### A. The Court Should Require the FCC to Provide Specific Reasons for Time Entry Rejections.

There are 5,488 entries that the FCC proposed to disallow from Kline & Specter's submission. The FCC has only provided blanket, non-specific disallowances of the firm's time, making a specific response to each fee entry impossible. This is fundamentally unfair. It is a basic and fundamental tenet of justice that a party receive adequate notice of the nature of a claim or defense. The FCC's lack of specificity prevents Kline & Specter from meaningfully protecting its interests. To provide such general and blanket disallowances of thousands of entries turns this endeavor into little more than a guessing game. Without specifically stating why an entry was disallowed, a precise review of the thousands of entries deemed unqualified by the FCC is impossible. Thus, this Court should require the FCC to identify the specific reasons for each of the proposed disallowed entries so that Kline & Specter can respond in an informed, appropriate, and meaningful manner.

### B. The Court Should Allow Additional Time to Respond to the FCC.

Kline & Specter requests that this Court extend the time limit for responsive filing and the affidavit that will accompany it until 30 days after the above documents are produced.

### C. The Court Should Allow Written Discovery on the Matter of Common Benefit Fee Distribution.

Finally, to allow for a fair and transparent process, Kline & Specter requests that this Court grant the following discovery on the matter of Common Fee Benefit Distribution:

1) Production of each fee and expense request of each firm;

2) The FCC's response to each request;

3) Disclosure of the amount of money received pursuant to the 5% assessments along with a per firm itemization of these payments;

4) All documents and emails relating to any fee sharing agreements between or among the members of the FCC;

5) All communications among FCC members and all documents relating to FCC consideration of the fee and expense reports;

6) All communications between the FCC and fee requesting firms.

At this juncture in the litigation, discovery is critical. The drastic number of hours disallowed by the FCC warrants further inquiry. Only further discovery will reveal the legitimate explanation for what has transpired. The process for determination of appropriate common benefit compensation is a sensitive issue fraught with the potential for abuse, especially because the FCC members are recipients of FCC awards. *See, e.g.,* Charles L. Becker, Shanin Specter, & Thomas R. Kline, *How Not to Manage a Common Benefit Fund: Allocating Attorney's Fees in Vioxx Litigation*, 9 Drex. L. Rev. 1 (Fall 2016).

### III. CONCLUSION

Wherefore, for the reasons stated above, Kline & Specter P.C., respectfully moves this Court to enter the attached Order directing the production of requested documents, extending

the time for Kline & Specter to respond to the FCC's letter of February 16, 2018, and granting discovery in connection with the FCC's initial review of Kline & Specter's Fee Submission.

Dated: March 6, 2018                                    Respectfully submitted,

                                                        /s/ Charles M. Love, III
                                                        Charles M. Love, III (WVSB 2254)
                                                        Floyd E. Boone Jr. (WVSB 8784)
                                                        BOWLES RICE LLP
                                                        600 Quarrier Street
                                                        Charleston, WV  25301
                                                        (304) 347-1100
                                                        (304) 347-1746 (fax)
                                                        fboone@bowlesrice.com
                                                        *Counsel for Kline & Specter P.C.*

9877871.2

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2187 |
| IN RE: AMERICAN MED. SYS., INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2387 |

THIS DOCUMENT RELATES TO ALL CASES

**Certificate of Service**

I hereby certify that on March 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

/s/ Charles M. Love, III
Charles M. Love, III (WVSB 2254)
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia 25301
(304) 347-1100

11

9877871.2