# Exhibit A

## WAGSTAFF & CARTMELL ETHICON SETTLEMENT FUND
## ESCROW AGREEMENT

This Escrow Agreement (the "Escrow Agreement" or "Wagstaff & Cartmell Ethicon Escrow Agreement") is entered into and shall be effective as of _____, 2018, by and among Ethicon Inc.,  Johnson & Johnson, and Ethicon LLC (collectively  "Ethicon") and (ii) the law firm of Wagstaff & Cartmell, LLP ("Claimants' Counsel"), acting on behalf of certain claimants who have had implanted one or more Ethicon Pelvic Mesh Product or are asserting a claim on behalf of a claimant who is not capable of asserting her own claim (collectively, "Claimants," and each a "Claimant"); (iii) Commerce Bank in its capacity as escrow agent (the "Escrow Agent"); and (iv) Providio MediSolutions, LLC in its capacity as administrator pursuant to this Escrow Agreement (the "Administrator") (Ethicon, Claimants' Counsel, the Escrow Agent, and the Administrator are referred to herein collectively as the "Parties").

## RECITALS

WHEREAS, Ethicon and Claimants' Counsel have reached a confidential settlement agreement (the "Settlement Agreement") fully, finally, and forever to resolve, discharge, and settle certain claims asserted by Claimants represented by Claimants' Counsel;

WHEREAS, this Escrow Agreement sets forth the terms and conditions whereby the funds that Ethicon deposits, or causes to be deposited, into the escrow account (the "Settlement Fund" or "Wagstaff & Cartmell Ethicon Settlement Fund") established pursuant to this Escrow Agreement will be retained, invested, and distributed therefrom to effectuate the terms of the Settlement Agreement;

WHEREAS, the Settlement Agreement contemplates that the Wagstaff & Cartmell Ethicon Settlement Fund shall be, and shall be operated as, a "qualified settlement fund" within the meaning of Section 1.468-B-1, *et seq.*, of the Treasury Regulations (the "Treasury Regulations") promulgated under Section 468B of the Internal Revenue Code of 1986, as amended (the "Code");

WHEREAS, the Wagstaff & Cartmell Ethicon Settlement Fund has been approved by, and is subject to the continuing jurisdiction of, the Honorable Joseph R. Goodwin of the United States District Court for the Southern District of West Virginia, Charleston Division (the "Settlement Court" or the "Court"); and

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

## AGREEMENT

I.    PURPOSE OF THE ESCROW AGREEMENT

The purpose of this Escrow Agreement shall be to facilitate the performance of the deposit and payment obligations and related obligations set forth in the Settlement Agreement.

## II.   APPOINTMENT OF ESCROW AGENT

Commerce Bank is hereby appointed to act as Escrow Agent in accordance with the terms hereof, and Commerce Bank hereby accepts such appointment.  The Escrow Agent shall have all the rights, powers, protections, duties, and obligations expressly provided herein.

## III.   APPOINTMENT OF ADMINISTRATOR

Providio MediSolutions, LLC is hereby appointed to act as Administrator in accordance with the terms hereof, and Providio MediSolutions, LLC hereby accepts such appointment.  The Administrator shall serve as the "administrator" of the Wagstaff & Cartmell Ethicon Settlement Fund as a "qualified settlement fund" within the meaning of Section 1.468-B-1, *et seq.*, of the Treasury Regulations promulgated under Section 468B of the Code, and shall have all such additional rights, powers, protections, duties, and obligations expressly provided herein.

## IV.   FUNDS WITHIN SETTLEMENT FUND

The Wagstaff & Cartmell Ethicon Settlement Fund shall initially be comprised of three subaccounts (the "Accounts"), to be used solely for such purposes as are set forth in Section I above: (1) the Main Account, (2) Lien Holdback Account, and (3) the Administration Account. With approval of Ethicon and Claimants' Counsel, the Administrator may direct the Escrow Agent to establish one or more additional Accounts and/or sub accounts for purposes of this Escrow Agreement.

## V.   DEPOSITS INTO SETTLEMENT FUND

A.   Deposit of Assets.  Ethicon shall deposit, or cause to be deposited, into the Wagstaff & Cartmell Ethicon Settlement Fund such settlement consideration, and at such time, as provided in the Settlement Agreement, and further provided that all deposits shall be made in immediately available funds.  The amounts that Ethicon deposits, or causes to be deposited, into the Wagstaff & Cartmell Ethicon Settlement Fund pursuant to this Section V shall be held in the Main Account until such time as the Escrow Agent receives instructions pursuant to Section VII to distribute such amounts from the Wagstaff & Cartmell Ethicon Settlement Fund, or to transfer amounts to another Account within the Wagstaff & Cartmell Ethicon Settlement Fund.  The amount of all deposits into the Wagstaff & Cartmell Ethicon Settlement Fund, and the interest, net realized gains, and other earnings accrued on such deposits, are collectively referred to herein (regardless of in which Accounts such amounts are held) as the "Escrowed Funds".

B.   Acceptance of Assets.  To further the purposes of this Escrow Agreement, the Escrow Agent agrees to accept the settlement contributions that Ethicon deposits, or causes to be deposited, into the Wagstaff & Cartmell Ethicon Settlement Fund, and any earnings thereon, and the Escrow Agent and Administrator assume all liability and responsibility for the administration and distribution of the Escrowed Funds, in accordance with and subject to the terms of this Escrow Agreement.

2

VI.   DISTRIBUTION OF ESCROWED FUNDS; TRANSFERS BETWEEN ACCOUNTS

A.   <u>Distribution of Escrowed Funds</u>.  The Parties acknowledge that the Escrowed Funds are to be distributed solely in the manner, at the times, as set forth in this Escrow Agreement.

1.   Within thirty-five (35) days of receipt of a Certified Claims Payment List, which has been approved pursuant to signature by an authorized person for Ethicon (an "Authorized Person," as set forth in Section VII.B) and Claimants' Counsel, as set forth in the Settlement Agreement, the Administrator shall direct the Escrow Agent in writing, subject to the availability of funds deposited pursuant to Section V, to:

a.   distribute from the Main Account (1) the amount specified on the Certified Claims Payment List, if any, to the MDL 2327 Fund; (2) the amount specified on the Certified Claims Payment List to Claimants' Counsel, as agent of the Claimants (except where such amounts are subject to structured settlements in accordance with Section VII); and (3) the amount specified on the Certified Claims Payment List, if any, to other recipient(s) permissible pursuant to the Settlement Agreement and with the written agreement of Ethicon and Claimants' Counsel; and

b.   transfer the amount specified, if any, as the "Lien Holdback Amount" on the Certified Claims Payment List from the Main Account to the Lien Holdback Account.

2.   Within thirty-five (35) days of receipt of a Certified Lien Resolution List, which has been approved pursuant to signature of an Authorized Person for Ethicon and Claimants' Counsel, as set forth in the Settlement Agreement, the Administrator shall direct the Escrow Agent in writing, subject to the availability of funds deposited pursuant to Section V, to distribute the specified amounts on the Certified Lien Resolution List from the Lien Holdback Account to the lien holder(s) (if any) and/or to the Claimants' Counsel, as agent of the Claimants (except where such amounts are subject to structured settlements in accordance with Section VII).

3.   All interest or investment income earned on any of the funds in the Settlement Fund, pursuant to Section VIII shall be transferred to the Administration Account on a monthly basis.

4.   Upon written direction from the Administrator, the Escrow Agent shall, subject to the availability of funds as described in this Section VII.A.4, distribute from the Administration Account, Administrative Fees, which are defined as follows:

3

       a.      The Administrator's and the Escrow Agent's fees, costs, and expenses, including professional fees, costs, wiring and transfer costs, and expenses and extraordinary costs, as approved by Claimants' Counsel.

       b.      The distributions to pay costs associated with tax preparation, payment, reporting and withholding by the Escrow Agent as described in Section IX, as approved by Claimants' Counsel.

              Provided, however, that if the available funds in the Administration Account are insufficient to pay for the above-described costs in this Section VII.A.4, such remaining costs shall, unless otherwise agreed in writing between Claimants' Counsel and Ethicon, be paid by the participating Claimants, subject to the applicable rules of legal ethics, or by another source arranged by Claimants' Counsel.  In no event will Ethicon be responsible for payment of the above-described costs.

    B.      <u>Reversionary Interest.</u> Ethicon shall have a reversionary interest in the Wagstaff & Cartmell Ethicon Settlement Fund (and any Accounts that may be created pursuant to the Settlement Escrow Agreement) as set forth in the Settlement Agreement.  Ethicon and Claimants' Counsel, with the assistance of the Administrator, shall determine what amount (if any) shall revert to Ethicon and after such determination and upon written instruction of the Administrator, the Escrow Agent shall distribute such reversionary amount to Ethicon.  If Ethicon becomes entitled to the return of any funds, those monies representing the amount due to be returned to Ethicon shall be returned to it within thirty (30) days of its notice that it seeks the return of those monies.

    C.      <u>Authorized Persons</u>.  The names of the Authorized Persons, together with their specimen signatures, shall be provided by Ethicon to the Administrator and the Escrow Agent, and may be amended from time to time.

## VII.    <u>DISTRIBUTIONS FOR QUALIFIED STRUCTURED SETTLEMENTS</u>

    A.      <u>Qualified Structured Settlements</u>.  The Escrow Agent shall, at the election of a Claimant or Claimants' Counsel (for the purposes of this Section VII, a "Structured Settlement Electing Party"), and upon written instruction of the Administrator, distribute specified amounts which would otherwise be distributed to Claimants' Counsel, as agent of the Claimants, pursuant to Section VII, in the form of a Structured Settlement,[1] provided that the following requirements are

---

[1] A Structured Settlement means that the Administrator, on behalf of the Wagstaff & Cartmell Ethicon Settlement Fund, agrees to pay amounts otherwise payable from the Wagstaff & Cartmell Ethicon Settlement Fund in a lump sum in the form of periodic payments over time ("Periodic Payments"), conditioned upon the Administrator's assignment of such Periodic Payment obligation to a third-party assignee (the "Assignee"), which then funds the obligation to make Periodic Payments through the purchase of a funding asset from a related issuer or custodian of

satisfied:

1.      The Escrow Agent shall not distribute any such amounts with respect to such Structured Settlement until such time as the Administrator has assigned all obligations to make Periodic Payments to the Assignee through the Administrator's execution of a structured settlement assignment and release form which (a) has already been properly executed by all other required parties to the Structured Settlement, (b) contains no language inconsistent with this Escrow Agreement, the Settlement Agreement or the Release and (c) satisfies any additional requirements agreed to by Ethicon and Claimants' Counsel;

2.      The Assignee shall be the sole party to whom the Administrator, the Escrow Agent or the Wagstaff & Cartmell Ethicon Settlement Fund owes the obligation to pay the amount being used to fund the Structured Settlement for all purposes, including, as applicable, section 130(c) of the Code or Treasury Regulation section 1.461-1(g)(1)(ii), and upon assignment and payment of the amount used to fund the Structured Settlement by the Escrow Agent to the Assignee, the Structured Settlement Electing Party irrevocably gives up any right, under any circumstances, to seek from the Administrator, the Escrow Agent, the Settlement Fund or the Released Parties (as such term is defined in the applicable Settlement Agreement) (a) any further payments with regard to the Structured Settlement, including in any circumstances where, for any reason, the applicable party fails to receive all the future Periodic Payments at any time, (b) any further payments with respect to any action of the Administrator, the Escrow Agent, the Wagstaff & Cartmell Ethicon Settlement Fund or the Released Parties, related to the Structured Settlement, as well as (c) any further payments regarding any tax, financial or other consequences of the Structured Settlement.

## VIII.   INVESTMENT OF ESCROWED FUNDS

A.      Investment; Preservation of Principal.  Unless otherwise directed pursuant to the joint instructions in the following sentence, the Escrowed Funds shall be deposited in U.S. dollar denominated deposit accounts with domestic commercial or national banks, including the Escrow Agent or an affiliate of the Escrow Agent, that have a short term issuer rating on the date of purchase of "A-1" or better by S&P or "Prime-1" or better by Moody's and maturing no more than 360 days after the date of purchase (provided that ratings on holding companies are not considered as the rating of the bank).  Upon joint instruction by an authorized person for Ethicon (an "Authorized Person," as set forth in Section VI.C) and Claimants' Counsel, and as directed in writing by the Administrator, the Escrow Agent shall invest and reinvest from time to time the Escrowed Funds in: (i) any

---

such funding asset.

obligations of, or any obligation guaranteed as to principal and interest by, the United States of America or any agency or instrumentality thereof; or (ii) money market accounts or money market funds registered under the Federal Investment Company Act of 1940, whose shares are registered under the Securities Act, and rated "AAAm" or "AAAm-G" or better by S&P, and "Aaa," "Aa1" or "Aa2" if rated by Moody's, including any mutual fund for which the Escrow Agent or an Affiliate of the Escrow Agent serves as investment manager, administrator, shareholder servicing agent, and/or custodian.  Any investment losses realized by investment of Escrowed Funds or any portion thereof shall be charged to the Escrowed Funds.  To the extent the Escrow Agent invests any funds in the manner provided for in this Section VIII, no Party hereto (including the Administrator and the Escrow Agent) shall be liable for any loss(es) which may be incurred by reason of any such investment (or reinvestment).  Such funds should be invested such that the following investment policy is implemented, as appropriate - safety of principal.

B. <u>Use of Interest or Investment Income</u>.  All interest on or income realized by investment of the Escrowed Funds or any portion hereof shall be accumulated and added to the Escrowed Funds, and any such interest or investment income shall be transferred to the Administration Account on a monthly basis and disbursed in accordance with Section VIII.

## IX.   <u>TAX MATTERS</u>

A. <u>Settlement Fund as a Qualified Settlement Fund</u>.  The Wagstaff & Cartmell Ethicon Settlement Fund is structured and shall be operated in a manner so that it qualifies as a "qualified settlement fund" under section 468B of the Code and Treasury Regulation sections 1.468B-1, *et seq*.  Specifically, (1) the establishment of the Wagstaff & Cartmell Ethicon Settlement Fund under the terms and conditions of this Escrow Agreement is subject to Court approval, and no deposits into or distributions from the Wagstaff & Cartmell Ethicon Settlement Fund shall be made until such Court approval is obtained; (2) the Wagstaff & Cartmell Ethicon Settlement Fund is subject to the continuing jurisdiction and supervision of the Court; (3) the Wagstaff & Cartmell Ethicon Settlement Fund is established to resolve or satisfy claims of alleged tort or violation of law arising out of implantation of one or more Ethicon Pelvic Mesh Products; and (4) the Wagstaff & Cartmell Ethicon Settlement Fund is an escrow account, and its assets are, and will be, segregated from the general assets of Ethicon and deposited herein.  The Wagstaff & Cartmell Ethicon Settlement Fund is composed of the Accounts, which together constitute a single qualified settlement fund.  Consistent with the terms of the Settlement Agreement and this Escrow Agreement, the Administrator and the Escrow Agent shall take any action or cause the Wagstaff & Cartmell Ethicon Settlement Fund to take any action necessary to create and maintain its status as a qualified settlement fund, and the Administrator and the Escrow Agent agree not to take any action that will adversely affect the qualification of the Wagstaff & Cartmell Ethicon Settlement Fund as a qualified settlement fund.  The

Administrator shall serve as the "administrator" within the meaning of Regulation Section 1.468B-2(k)(3).

B.    <u>Relation Back Election</u>.  The Administrator shall, to the extent that the Wagstaff & Cartmell Ethicon Settlement Fund has not been approved by the Court as a "qualified settlement fund" under section 468B of the Code prior to deposit by Ethicon into the Wagstaff & Cartmell Ethicon Settlement Fund of any amounts pursuant to Section V, timely prepare a "Regulation Section 1.468B-1 Relation Back Election" pursuant to Treasury Regulation Section 1.468B-1(j) for execution by and the Administrator, and attach to the Settlement Fund's first timely-filed federal income tax return a fully executed copy of such "Regulation Section 1.468B-1 Relation Back Election".

C.    <u>Tax Preparation, Payment, Reporting, and Withholding Requirements</u>.  In its role as "administrator" of the Wagstaff & Cartmell Ethicon Settlement Fund within the meaning of Treasury Regulation section 1.468B-2(k)(3), the Administrator shall be responsible for the timely and proper performance of the undertakings specified in the regulations promulgated under section 468B of the Code, including, but not limited to, the obtaining of an employer identification number for the Wagstaff & Cartmell Ethicon Settlement Fund; the filing of all required federal, state or local tax and information returns in accordance with the provisions of Treasury Regulation section 1.468B-2(k)-(l); any required withholding of tax; the payment of any federal, state or local taxes (including estimated taxes) and associated tax-related penalties and interest for which the Wagstaff & Cartmell Ethicon Settlement Fund may be liable, with such amounts payable from the Administration Account subject to Section VI.A; responding to any questions from or audits regarding such taxes by the Internal Revenue Service or any state or local tax authority; and compliance with any other tax-related requirements.  The Administrator may retain and compensate independent, certified public accountants to consult with and advise the Administrator with respect to the preparation of any and all appropriate income tax returns, information returns or compliance withholding requirements, with such amounts payable from the Administration Account subject to Section VI.A.  In no event shall Ethicon have any liability or responsibility for any amounts payable by or withholdable from the Wagstaff & Cartmell Ethicon Settlement Fund or the Administrator pursuant to this Section IX, and Ethicon shall be indemnified and held harmless for such amounts by the Wagstaff & Cartmell Ethicon Settlement Fund.

D.    <u>Savings Provision; Failure to Qualify as a Qualified Settlement Fund</u>.

    1.    Notwithstanding anything herein to the contrary, in the event that any portion of this Escrow Agreement shall at any time be considered cause for the Wagstaff & Cartmell Ethicon Settlement Fund to fail to qualify as a qualified settlement fund section 468B of the Code together with any and all Treasury Regulations and Internal Revenue Service Notices,

7

Announcements and directives thereunder, such offending portion of this Escrow Agreement shall be considered null, void, and of no effect, without any action by any court or by the Administrator, so that this Wagstaff & Cartmell Ethicon Settlement Fund continues to qualify as a qualified settlement fund in compliance with section 468B of the Code and the applicable administrative authority and announcements thereunder.  In the event that this Section IX.D applies to render an offending Section null, void, or of no effect, the remainder of this Escrow Agreement shall not be affected thereby, and each remaining term and Section of the Escrow Agreement shall be valid and enforced to the fullest extent permitted by law.

2.      Notwithstanding any effort, or failure, of the Administrator, the Escrow Agent and the other Parties to treat the Wagstaff & Cartmell Ethicon Settlement Fund as a "qualified settlement fund" within the meaning of section 1.468B-1 of the Treasury Regulations effective as of the date hereof, any additional tax liability, interest or penalties incurred by Ethicon resulting from income earned by the Wagstaff & Cartmell Ethicon Settlement Fund shall be reimbursed from the Wagstaff & Cartmell Ethicon Settlement Fund in the amount of such additional tax liability, interest or penalties upon Ethicon's written request to the Administrator and the Escrow Agent.

X.      ADDITIONAL MATTERS RELATING TO DUTIES, LIABILITIES, AND RIGHTS OF ADMINISTRATOR AND ESCROW AGENT

A.      Compensation.  The Administrator and Escrow Agent will be paid pursuant to the schedule of fees approved by Claimants' Counsel and pursuant to Section VI.A.3 and promptly reimbursed such fees, costs, and expenses, including reasonable attorneys' fees and expenses suffered or incurred by the Administrator and Escrow Agent in connection with the performance of their duties and obligations hereunder, including without limitation, accountancy and tax return preparation fees incurred in connection with the performance of the duties set forth in Section IX hereof and all actions necessary or advisable with respect thereto (including, without limitation, the payment of any professional fees and expenses related thereto).  All such fees and expenses shall be paid from the Administration Account in accordance with Section VI.A.4.

B.      Preparation of Financial Statements.  The Administrator shall keep records of all deposits into, earnings on, distributions from, and transfers within the Accounts of the Wagstaff & Cartmell Ethicon Settlement Fund.  Such records will reflect how the distributions and transfers link to each of the Claimants and Claimants' Counsel, as well as to the Certified Claims Payment Lists and Certified Lien Resolution Lists approved by Ethicon and Claimants' Counsel.  The Administrator shall deliver to Ethicon and Claimants' Counsel, via email or other

8

electronic method, financial statements for the Wagstaff & Cartmell Ethicon Settlement Fund, including copies of official bank statements from the Escrow Agent, and any other documents showing receipts, disbursements, transfers and earnings (1) upon request, within ten (10) days of any such request, and (2) on a monthly basis no later than five (5) business days after the close of each calendar month.

C.    No Implied Duties.  This Escrow Agreement expressly and exclusively sets forth the respective duties, responsibilities, and obligations of the Administrator and Escrow Agent with respect to any and all matters pertinent hereto and no implied duties, responsibilities, or obligations (including, without limitation, any fiduciary or similar obligations) shall be read into this Escrow Agreement against the Escrow Agent.

D.    Indemnification.  The Administrator and Escrow Agent, as well as their respective officers, directors, employees and agents (collectively, "Indemnified Parties") shall be indemnified by the Escrowed Funds, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Administrator and Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Indemnified Parties or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Indemnified Parties of, any of the Indemnified Parties' duties under this Escrow Agreement, except as a result of the Indemnified Parties' bad faith, willful misconduct or gross negligence.  Provided, however, that this provision does not give the Indemnified Parties any rights against Ethicon, which shall have no obligation or responsibility with respect to the Indemnified Parties, and no responsibility or liability with respect to the actions, duties, or responsibilities of the Indemnified Parties.

E.    Notices.  The Escrow Agent shall not be responsible for nor shall it be its duty to notify any party hereto or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

F.    Validity of Instructions.  The Administrator and the Escrow Agent shall not be liable for the sufficiency, correctness, or genuineness as to form, manner of execution, or validity of any instrument deposited, or instruction given, nor as to the identity, authority or rights of any person executing the same, except as above provided.  Except as limited pursuant to Section X.D, the Administrator and the Escrow Agent shall be protected in conclusively relying and acting upon any document which the Administrator or Escrow Agent in good faith believes to be genuine and what it purports to be, including, without limitation, authorizations regarding release, disbursement or retention of the Escrowed Funds pursuant to

9

Section VII.

G.     <u>Conflicting Demands</u>.  Should the Administrator or Escrow Agent during the term of this Escrow Agreement receive or become aware of any conflicting demands or claims with respect to the Escrowed Funds or any part thereof, or the rights or obligations of any of the Parties hereto, or any money deposited herein or affected hereby, or in the event that the Administrator or Escrow Agent, in good faith, is in doubt as to what action it should take hereunder, the Administrator or Escrow Agent shall have the right to discontinue all further acts on its part until such conflict is resolved by Ethicon and Claimants' Counsel to their satisfaction. Except as limited pursuant to Section X.D, neither the Administrator nor the Escrow Agent shall be or become liable in any way or to any party for its failure or refusal to act, and the Administrator and the Escrow Agent shall be entitled to continue to refrain from acting until all differences shall have been resolved and all doubt eliminated by agreement among all of the interested parties, and the Administrator or Escrow Agent shall have been notified thereof in writing signed by all such parties.

H.     <u>Garnishment or Levy of Escrowed Funds</u>. In the event that any of the Escrowed Funds shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the Escrowed Funds, the Administrator and Escrow Agent shall promptly notify Ethicon and Claimants' Counsel in writing about such act, and wait for direction from Ethicon and Claimants' Counsel.

I.     <u>Release of Escrow Agent</u>.  The retention and distribution of the Escrowed Funds in accordance with the terms and provisions of this Escrow Agreement shall fully and completely release Escrow Agent from any and all further obligations or liabilities under this Escrow Agreement, except to the extent provided in Section X.D.

J.     <u>Resignation and Removal of Escrow Agent; Appointment of Successor</u>.

1.     The Escrow Agent or any successor may resign by a written notice delivered to the Administrator, Ethicon, and Claimants' Counsel specifying the effective date of such resignation, which date shall not be earlier than one hundred twenty (120) days following the receipt by the Administrator, Ethicon, and Claimants' Counsel of the notice of resignation.  Such resignation shall take effect on the date specified on the notice of resignation, unless a successor escrow agent has been appointed in accordance with the provisions of this Section X.J and has accepted such appointment on an earlier date, in which case such resignation shall take effect immediately upon receipt by such successor escrow agent of the Escrowed Funds.  The Escrow Agent may be removed by the joint action of Ethicon and Claimants' Counsel, with or without cause at any

10

time upon thirty (30) days' prior written notice to Escrow Agent, which notice may be waived by Escrow Agent, and the Escrow Agent's removal shall be effective upon the expiration of such thirty (30) days or upon the Escrow Agent's waiver of such notice.

2.      Appointment of Successor Escrow Agent.  If at any time the Escrow Agent shall resign, be removed, or otherwise become incapable of acting as escrow agent pursuant to this Escrow Agreement, or if at any time a vacancy shall occur in the office of Escrow Agent for any other cause, a successor agent meeting the requirements set forth in Section X.K, shall be appointed by Ethicon and Claimants' Counsel by a written instrument delivered to the successor agent.  Upon the appointment and acceptance of any successor agent hereunder, the Escrow Agent shall transfer the Escrowed Funds to its successor.

K.      Qualifications of Escrow Agent.  The Escrow Agent, including any successor Escrow Agent, shall at all times be a bank, savings and loan association, or trust company in good standing, organized and doing business under the laws of the United States of America or a State of the United States of America, having a net worth of not less than Five Hundred Million dollars ($500,000,000), and shall be authorized under such laws to enter into and perform this Escrow Agreement.  If the Escrow Agent at any time ceases to have the foregoing qualifications, the Escrow Agent shall give notice of resignation in accordance with Section X.J and a qualified successor escrow agent or disbursing agent shall be appointed in accordance with Section X.J.

L.      Resignation and Removal of Administrator; Appointment of Successor.

1.      The Administrator or any successor may resign by a written notice delivered to the Ethicon and Claimants' Counsel specifying the effective date of such resignation, which date shall not be earlier than one hundred twenty (120) days following the receipt by the Ethicon and Claimants' Counsel of the notice of resignation.  Such resignation shall take effect on the date specified on the notice of resignation, unless a successor administrator has been appointed in accordance with the provisions of this Section X.L and has accepted such appointment on an earlier date.  The Administrator may be removed by the joint action of Ethicon and Claimants' Counsel, with or without cause at any time upon thirty (30) days' prior written notice to Administrator, which notice may be waived by Administrator, and the Administrator's removal shall be effective upon the expiration of such thirty (30) days or upon the Administrator's waiver of such notice.

2.      Appointment of Successor Administrator.  If at any time the Administrator shall resign, be removed, or otherwise become incapable of acting pursuant to this Escrow Agreement, or if at any time a vacancy shall occur

11

in the office of Administrator for any other cause, a successor agent shall be appointed by Ethicon and Claimants' Counsel by a written instrument delivered to the successor agent.

## XI.   TERMINATION OF SETTLEMENT FUND

The Wagstaff & Cartmell Ethicon Settlement Fund will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of Section VII (the "Termination").  Upon Termination of the Wagstaff & Cartmell Ethicon Settlement Fund in accordance with this Section XII, the Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically provided herein.

## XII.   MISCELLANEOUS

A.   <u>Notices</u>.  Any notice of other communication hereunder must be given in writing and either: (i) delivered in person; (ii) transmitted by email, telefax or other telecommunications mechanism, provided that any notice to be given is also mailed as provided in clause (iii); (iii) mailed by registered, express, or certified mail, postage prepaid return receipt requested; or (iv) delivered by a generally recognized courier or messenger service that provides written acknowledgement of receipt by addressee, postage prepaid as follows:

If to Ethicon, to:

Donna Brown Jacobs
Butler Snow, LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157

If to Claimants' Counsel, to:

Thomas P. Cartmell
Wagstaff & Cartmell, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
tcartmell@wcllp.com


Daryl Douglas
Wagstaff & Cartmell, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
ddouglas@wcllp.com

If to the Escrow Agent, to:

12

William E. Ekey, Senior Vice President
Corporate Trust Department, TBMZ-6
922 Walnut Street, 10th Floor
Kansas City, MO 64106
Office: 816-234-2102
Email: William.Ekey@CommerceBank.com

If to the Administrator, to:

Heather Magic, VP Operations
Providio MediSolutions, LLC
5613 DTC Parkway, Suite 700
Greenwood Village, CO 80111
Office: 877-253-3120
Fax: 866-862-3628
Email: hmagic@providiollc.com

or to such other address or to such other person as any Party shall have last
designated by notice to the other Party.  Each such notice or other communication
shall be deemed received hereunder; (1) if given by telecommunication, when
transmitted to the applicable number as specified in (or pursuant to) this Section;
(2) if given by mail or courier service, three business days after such
communication is dispatched, addresses as aforesaid; or (3) if given by any other
means, when actually received at such address.

B.      Jurisdiction.  The Parties acknowledge that the Court shall retain jurisdiction over
the implementation, enforcement, and performance of this Escrow Agreement,
and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute
arising out of or relating to this Escrow Agreement or to the applicability of this
Escrow Agreement shall be governed by and interpreted according to the
substantive laws of the State of West Virginia without regard to its choice of law
or conflict of laws principles.

C.      Entire Agreement.  This Escrow Agreement constitutes the entire agreement and
understanding of the Parties hereto in respect of the matters discussed herein.
Any modification of this Escrow Agreement or any additional obligations
assumed by any party hereto shall be binding only if evidenced by a writing
signed by each of the parties hereto.  This Escrow Agreement shall be construed
so as to be consistent with the terms of the Settlement Agreement and, in the
event of any conflict between the terms of this Escrow Agreement and the terms
of the Settlement Agreement, the terms of the Settlement Agreement shall control.

D.      Assignment.  This Agreement is binding upon and will inure to the benefit of the
Parties hereto and their respective successors and permitted assigns, but will not
be assignable, by operation of law or otherwise, by any Party hereto without the

prior written consent of the other Party.

E.  <u>Sections and Other Headings</u>.  Sections or other headings contained in this Escrow Agreement are for reference purposes only and will not affect in any way the meaning or interpretation of this Escrow Agreement.

F.  <u>Amendments; Waivers</u>.  All Parties must approve any amendment to this Escrow Agreement in writing.  Any waiver of any right or remedy provided for in this Escrow Agreement requires the consent of the Party waiving such right or remedy.  Every amendment or waiver of any provision of this Escrow Agreement must be made in writing and designated as an amendment or waiver, as appropriate.  No failure by any party to insist on the strict performance of any provision of this Escrow Agreement or to exercise any right or remedy hereunder, will be deemed a waiver of such performance right or remedy or of any other provision of this Escrow Agreement.  This Escrow Agreement shall not be modified or amended in any way that could jeopardize, impair, or modify the Wagstaff & Cartmell Ethicon Settlement Fund's qualified settlement fund status.

G.  <u>Counterparts</u>.  This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

H.  <u>Severability</u>.  If any provision of this Escrow Agreement is held to be unenforceable for any reason, it will be adjusted rather than voided, if possible, to achieve the intent of the Parties to the extent possible.  In any event, all other provisions of this Escrow Agreement will be deemed valid and enforceable to the extent possible.

I.  <u>Force Majeure</u>.  Notwithstanding anything contained in the Escrow Agreement to the contrary, the Escrow Agent shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, without limitation, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility).

J.  <u>Confidentiality</u>.  All information disclosed by any Party (or its representatives), whether before or after the date hereof, in connection with the transactions contemplated by or the discussion and negotiations preceding this Escrow Agreement, to any other Party (or its representatives) will be kept confidential by such other Party and its representatives and will not be used by any such persons other than as contemplated by this Escrow Agreement, expect to the extent that such information: (a) was known by the recipient when received; (b) is or hereafter becomes lawfully obtainable from other sources; (c) is necessary or appropriate to disclose to a governmental entity having jurisdiction over the

Parties, or as may otherwise be required by applicable law or by the Court; or (d) to the extent such duty as to confidentiality is waived in writing by the other Party.

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Escrow Agreement to be executed on the day and year first above written.

*[Signatures on following page; remainder of this page intentionally left blank]*

**SO AGREED ON BEHALF OF CLAIMANTS' COUNSEL:**

By: _____
       Thomas P. Cartmell
       Wagstaff & Cartmell, LLP
       4740 Grand Avenue, Suite 300
       Kansas City, MO 64112
       tcartmell@wcllp.com

By: _____
       Daryl Douglas
       Wagstaff & Cartmell, LLP
       4740 Grand Avenue, Suite 300
       Kansas City, MO 64112
       ddouglas@wcllp.com

**SO AGREED ON BEHALF OF ETHICON:**

By: _____

       Donna Brown Jacobs
       Butler Snow, LLP
       1020 Highland Colony Parkway, Suite 1400
       Ridgeland, MS 39157
       Donna.Jacobs@butlersnow.com

**SO AGREED ON BEHALF OF COMMERCE BANK, AS ESCROW AGENT**

By: _____
       William E. Ekey, Senior Vice President
       Commerce Bank

**SO AGREED ON BEHALF OF PROVIDIO MEDISOLUTIONS, LLC, AS ADMINISTRATOR**

By: _____
       Ginger Sussman
       Providio MediSolutions, LLC