# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |

THIS DOCUMENT RELATES TO ALL CASES

**OBJECTORS' COMBINED THIRD REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES DIRECTED TO THE FEE AND COST COMMITTEE (FCC) IN CONNECTION WITH THE REQUEST FOR ALLOCATION <u>OF AGGREGATE COMMON BENEFIT AND COSTS AWARD</u>**

Pursuant to the Federal Rules of Civil Procedure, Objectors serve this Combined Third Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the September 13, 2018 Transvaginal Mesh MDL Common Benefit Fee and Cost Committee Preliminary Written Recommendations.

## DEFINTIONS AND INSTRUCTIONS

The following Definitions and Instructions shall apply to the Requests for Production of Documents and Interrogatories:

1. The term "FCC" includes within its scope the FCC and each member of the FCC.

2. These Requests and Interrogatories are intended to ascertain information not only in the possession of the FCC individually, but also contained in records and documents in the FCC's custody or control or available to the FCC.

3. The Requests and Interrogatories which cannot be responded to in full shall be responded to as completely as possible, and incomplete responses shall be accompanied by a specification of the reasons for the incompleteness of the response, as well as by a statement of whatever knowledge, information or belief you possess with respect to each unanswered or incomplete response.

4. "Document" means and includes the original and all non-identical copies or drafts of the following items: agreements; drafts; e-mails; communications; correspondence; telegrams; cables; facsimiles; memoranda; records; books; financial statements; summaries of records or notes of personal conversations or interviews; however produced or reproduced.

5. "Communication" means every manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, written, electronic, or by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, telex, discussion, release, personal delivery, or otherwise. Documents that typically reflect a "communication" include letters, electronic-mail, instant messages, handwritten notes, call logs, telephone memoranda slips, daily appointment books and diaries, bills, checks, correspondence, and memoranda, and includes all drafts of such documents.

6. "Firm" and "fee requesting firm" means any law firm involved in the Pelvic Mesh Litigation that has submitted time and expense submissions pursuant to the Court's Pre-Trial Orders in connection with the Aggregate Common Benefit and Costs Award.

7. "Affidavit" means the affidavits or sworn declarations submitted by each fee requesting firm to the FCC following the February 16, 2018 letter from the FCC regarding the FCC's initial review submitted fees and costs. (The FCC and the Fee Committee protocol required that any appeals to the fee determinations made by the FCC were to be accompanied by an affidavit are to be completed and submitted within thirty (30) days of receipt of the FCC's February 16, 2018 letter.)

## INTERROGATORIES

**INTERROGATORY NO. 1:** With respect to each fee requesting firm's time, fee and costs submissions in connection with the allocation of fee and cost awards, please provide the full and complete reason for each entry considered compensable as for the common benefit and explain in detail the methodology employed for each allowance, the factual basis for each allowance,

and the person(s) participating in determining each allowance.

**ANSWER:**

**INTERROGATORY NO. 2**: With respect to each and every fee requesting firm whose fee entry requests were denied, explain in detail the methodology employed for each denial, the factual basis for each denial, and the person(s) participating in determining each denial.

**ANSWER:**

**INTERROGATORY NO. 3:** Please provide the specific hourly and lodestar rates awarded to each fee requesting firm and provide the specific reasons for the discrepancies in firm hourly and lodestar rates including the methodology used to determine each firm's hourly and lodestar rate. *See* List of Fee Awards for Fee Submitting firms, (attached "*Exhibit B*" from Transvaginal Mesh MDL Common Benefit Fee and Cost Committee Preliminary Written Recommendation, attached hereto as Exhibit "A.")

**ANSWER:**

**INTERROGATORY NO. 4:** For each fee requesting firm, please explain the methodology and criteria used to prepare the summary of each firm's work, attached as "*Exhibit A*" to Transvaginal Mesh MDL Common Benefit Fee and Cost Committee Preliminary Written Recommendation,

5

attached hereto as Exhibit "B." Please identify the person(s) participating in the drafting of each summary.

**ANSWER:**

**INTERROGATORY NO. 5**: Please explain the specific methodology used to calculate each fee requesting firms' common benefit allocation, hourly rates, and lodestar, and please explain the criteria methodology used to calculate the fee allocation.

**ANSWER:**

**INTERROGOTORY NO. 6**: Please explain the criteria and methodology used to calculate the compensable state court time, identify which of the state court trials were compensated for common benefit time, identify the participating firms in each trial, and identify how many hours were considered for the common benefit for each trial.

**ANSWER:**

**INTERROGOTORY NO. 7**: Please explain the criteria and methodology used to calculate the compensable MDL court trial time, identify which of the MDL trials were compensated for common benefit time, identify the participating firms in each trial, and identify how many hours were considered for the common benefit for each MDL trial.

**ANSWER:**

**INTERROGATORY NO. 8**: Explain if a Point System Guide was used to award fee allocations and explain the methodology and criteria provided for in the Guide.

**ANSWER:**

**INTERROGATORY NO. 9:** State whether any member of the FCC at any time analyzed the considerations outlined by *Johnson v. Georgia Highway Express, Inc.* in calculating the fees it proposed to allocate to any fee requesting firm; and if so, identify each and every person conducting such analysis and state when each such calculation was performed.

**ANSWER:**

**INTERROGARORY NO. 10:** Please provide any information and documents regarding any financial arrangements between and among the FCC member firms, or affiliated firms - in the mesh MDL and other litigation

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST NO. 1:** Identify and produce copies of all documents or work papers used to

7

calculate the lodestar of common benefit hours, including the actual lodestars of each fee requesting firm and each member of each firm's staff. The term "work papers" includes: 1) any physical documents or electronically stored information, such as data produced by claimants in support of the hours expended and the claimed rates, together with any multiplier arguably applicable to those hours; and 2) any analysis, reworking, reconfiguration, or reorganization related to such data, or supporting any alternate theory of common benefit work, entered in any digital database or any other spreadsheet, including but not limited to any analysis or consideration of hours, rates, or costs.

**REQUEST NO. 2**: Identify and produce each and every document received from any fee requesting firm in response to any recommended allocation of common benefit fees, including acceptances, objections, or other replies.

**REQUEST NO. 3**: Please provide copies of any records related to the determination of the specific fee allocation hourly award rates for each fee summitting firm, including all records related to the methodology and criteria used to determine each firm's hourly award rates.

**REQUEST NO. 4**: For each fee requesting firm, identify and produce copies of the summaries of each firm's work, attached as "*Exhibit A*" to Transvaginal Mesh MDL Common Benefit Fee and Cost Committee Preliminary Written Recommendation, attached hereto as Exhibit "B."

**REQUEST NO. 5**: Identify and produce each and every document reflecting, recording, or otherwise defining the contents of each and every fund available for the payment of common

benefit attorneys' fees. This request includes but is not limited to a complete accounting of all moneys deposited into any fund from which attorneys' fees for common benefit work might be paid.

**REQUEST NO. 6:** Identify and produce copies of all documents disclosing the current amount of money received pursuant to the 5% assessments along with per firm itemizations of these payments.

**REQUEST NO. 7:** Identify and produce copies of each amended fee and expense request of each fee requesting firm following the initial submission of each firm's Affidavit provided to the FCC in connection with the allocation of cost awards and in compliance with the Fee Committee Protocol.

**REQUEST NO. 8:** Identify and produce copies of the Affidavits submitted by each fee requesting firm provided to the FCC in connection with the allocation of cost awards.

**REQUEST NO. 9**: Identify and produce any documents related to the criteria and methodology used to calculate the compensable state court time, identify which of the state court trials were compensated for common benefit time and identify how many hours were considered for the common benefit for each trial.

**REQUEST NO. 10**: Identify and produce any documents related to the criteria and methodology used to calculate the compensable MDL court trial time, identify which of the MDL trials were

compensated for common benefit time, and identify how many hours were considered for the common benefit for each MDL trial.

**REQUEST NO. 11**: Identify and produce any and all documents reflecting or recording the terms of any and all settlements reached with any Defendant in any Pelvic Mesh related litigation by the PSC, FCC, any of its members, or any participating firm, including third party litigation and settlements of personal injury cases tried against the Pelvic Mesh Defendants, and the amount of attorneys' fees earned.

**REQUEST NO. 12**: If one was used, identify and produce any documents related to the Point System Guide used to award fee allocations and explain the methodology and criteria used in the Guide.

**REQUEST NO. 13**: State whether any member of the FCC consulted with an ethicist as to any action taken, agreement entered into, or recommendation made with respect to the allocation of common benefit attorneys' fees, any agreement made or proposed to or by any claimant, and any disbursement of funds; and if so, identify the ethicist consulted, state the date(s) of each and every consultation, and identify and produce each and every document recording or relating to any opinion offered.

**REQUEST NO. 14**: Please provide any information and identify and provide any documents regarding any financial arrangements between and among the FCC member firms or affiliated firms, including arrangements in the Pelvic Mesh litigation and any and all other litigation

**REQUEST NO. 15:** Please provide the full documentation of the votes of each FCC member related to the allocation of fees.

**REQUEST NO. 16:** Please provide the full list of all non-FCC appointed attorneys who participated in the fee allocation process in any way and define their involvement.

**REQUEST NO. 17**: Please provide the transcripts of all the Fee Requesting Firms' presentations to the FCC.

**REQUEST NO. 18**: Identify each and every person participating in the preparation of each document produced in response to the preceding Requests and to the extent the participants differed in the preparation of each document, please list the participants separately.

**REQUEST NO. 19:** Please provide all communications between the FCC and fee requesting firms in reference to the above Requests.

Respectfully submitted,

**BOWLES RICE, LLP**

By: /s/ Charles M. Love
Charles M. Love, III (WVSB 2254)
Floyd E. Boone Jr. (WVSB 8784)
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100 (Tel.)
(304) 347-1746 (Fax)
fboone@bowlesrice.com
*Counsel for Kline & Specter, P.C.*

**KLINE & SPECTER, PC**

Shanin Specter, Esquire
Lee B. Balefsky, Esquire
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Counsel for Plaintiffs*

**MAZIE SLATER KATZ & FREEMAN, LLC**

/s/ Adam S. Slater, Esquire
Adam M. Slater, Esquire
103 Eisenhower Parkway
Roseland, NJ 07068
973-228-9898
*Counsel for Plaintiffs*

**FREESE & GOSS, PLLC**

/s/ Richard Freese, Esquire
Richard Freese, Esquire
1901 6th Ave North
Suite 3120
Birmingham, AL 35203
*Counsel for Plaintiffs*

**PAUL W. FLOWERS CO., LPA**

/s/ Paul W. Flowers, Esquire
Paul W. Flowers, Esquire
Louis E. Grube, Esquire
50 Public Square, Terminal Tower, Suite 1910
Cleveland, OH 44113
216-344-9393
*Counsel for Anderson Law Offices, LLC*

**LEWIS GLASSER LLC**

/s/ Webster J. Arceneaux, III
Webster J. Arceneaux, III (State Bar No. 155)
Richard L. Gottlieb (State Bar No. 1447)
Post Office Box 1746
Charleston, WV 25326
Phone: 304-345-2000
*Counsel for Anderson Law Offices, LLC*

**ANDERSON LAW OFFICES, LLC**

/s/ Benjamin H. Anderson, Esquire
Benjamin H. Anderson, Esquire
17138 Lorain Avenue, Suite 211
Cleveland, OH 44111
Phone: 216-589-0256
*Counsel for Plaintiffs*