IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |

**THIS DOCUMENT RELATES TO ALL CASES**

## RESPONSE IN OPPOSITION TO MOTION TO COMPEL DISCOVERY DIRECTED TO THE FEE AND COST COMMITTEE (FCC) IN CONNECTION WITH THE REQUEST FOR ALLOCATION OF AGGREGATE COMMON BENEFIT AND COSTS AWARD

This latest Motion to Compel filed by the "Moving Firms" is factually and legally meritless and should be denied.[1]

The overarching theme of this Motion can be summarized as follows: we think that our firm did not receive enough money in the FCC's preliminary recommended allocation and that the FCC firms received too much. Other than the "Factual Background" section, nearly the entirety

---

[1] Although captioned in five of the seven TVM MDLs coordinated before this Court, it appears that this motion was only filed in the Ethicon MDL (2327).

1

of the Motion to Compel is spent explaining why they believe the FCC firms' recommended allocations are excessive and why the Moving Firms' allocations are inadequate in their view. Thus, this Motion to Compel is not actually about "discovery," but rather its purpose is to air grievances by the Moving Firms with the FCC and its preliminary recommended allocation of common benefit fees.[2] It readily appears that the objecting firms' true intent is to substitute their own judgment for that of the FCC with respect to the value of their work in the allocation process.

This Motion to Compel is actually the third such motion filed by the Kline Specter firm. Its initial motion for discovery from the FCC was denied by the Court on March 7, 2018, and then a prior motion to compel was likewise denied on July 13, 2018. The fact that Kline Specter has now joined with two other law firms, and has added a few additional discovery requests, does not change the critical fact that there is no ground for discovery from the FCC here. In *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014), the Eighth Circuit considered and rejected an objection to an MDL common fund allocation based on a lack of discovery allowed by the MDL judge, observing as follows:

> Although the court did not appoint an external auditor or permit discovery, *cf. In re Diet Drugs,* 582 F.3d at 533–34, discovery in connection with fee motions is rarely permitted, *In re Prudential Ins. Co. Am. Sales Practice Litig.,* 148 F.3d 283, 338 (3d Cir.1998), and a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

*See also*, *Martinez v. Schock Transfer and Warehouse Co., Inc.*, 789 F.2d 848, 849-50 (10th Cir.1986) (trial court properly exercised discretion to preclude discovery in dispute regarding

---

[2] For example, the Moving Firms attach a document entitled "TVM Historical Analysis" prepared by the Motley Rice law firm, and inaccurately represents to the Court that this was an "internal FCC document." (Motion to Compel, Ex. L). This document was not prepared by, for or on behalf of the FCC. It is solely the product of the Motley Rice firm, and it was not considered by the FCC in its common benefit allocation process.

attorney's fees); *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, 2012 WL 12987026 (E.D.La.2012) (denying motion to compel discovery related to time keeping records in attorney's fee dispute based on legal precedent that attorney's fees should not generate a separate litigation); *Hamprecht v. Hamprecht*, 2012 WL 12905607, *1 (M.D.Fla.2012) (Denying discovery in fee dispute, noting "'[a]s the Supreme Court has explained, '[a] request for attorney's fees should not result in a second major litigation.' *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). When deciding a motion for attorney's fees, courts rarely reopen discovery, and evidentiary hearings are often unnecessary. See Fed.R.Civ.P. 54(d)(2) advisory committee's note; 2 Mary Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* § 25.01 (2007) ('[P]ost-judgment discovery into fee issues is rare.'). A determination of a fee award by a district court 'solely on the affidavits in the record' is 'perfectly proper.' *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988).").

In *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, C.A. No. 3:12-md-02385, Doc. 613 (Case Management Order No. 89 - Denying Motion to Stay and Prohibiting Discovery Relating to Common Benefit Fee Determination) (S.D.Ill. Jan. 8, 2015) (copy attached as **Exhibit 1**), the Hon. David R. Herndon, an experienced MDL Judge, similarly rejected a firm's request for discovery regarding an appointed committee's common benefit fee allocation. Instructively, Judge Herndon stated there "[t]he Court finds that it has imposed appropriate guidelines and ground rules with regard to the common benefit fee determination. [The law firm seeking discovery] has not presented the Court with any reason to doubt the methodology that has been employed, conclude that informal or formal discovery is genuinely needed, or doubt the billing information that has been provided to date. Accordingly, the Court sees no reason to depart from the principle that

discovery in connection with fee motions should rarely be permitted." The same is true in this instance.

Here, the Court provided detailed guidance and established rules and criteria in its common benefit orders that have governed the FCC's common benefit allocation process from the outset. The facts and information considered by the FCC have been provided and explained in detail to every firm that applied for common benefit, including the Moving Firms here. Every applicant firm (including each of these Moving Firms) has been provided substantial information about how their work was evaluated, including written explanations regarding the applicant firm's submitted time considered – or not considered – as common benefit, and an opportunity to respond in writing and in-person. Each firm also has received information about each of the other applicant firms' submitted time considered for common benefit (number of hours and amount of expenses recognized by the FCC as common benefit for every applicant firm). Importantly, the same process and criteria were applied to every firm that applied for common benefit consideration.

The Moving Firms' contention that they have not received adequate information regarding how their submitted time was reviewed and evaluated by the FCC, or why certain of their time was disallowed or questioned, is simply contrary to fact. (*See*, Motion to Compel, p. 7).[3] The

---

[3] The Moving Firms' request for transcripts of FCC hearings is likewise unfounded: two of the three Moving Firms have requested and received the transcript of their FCC hearings. The FCC firms do not have "financial arrangements" with regard to the payment of funds associated with common benefit awards. The FCC did not purport to calculate any "specific hourly" or "lodestar rate" for any firm. The criteria and methodology followed by the FCC are set forth in detail in the Court's Common Benefit Orders entered in these related MDLs. Moreover, the FCC's recommended allocation (which has not been finalized) will merely be a recommendation to the External Review Specialist, who in turn will make his own recommendation to the Court. The Court will conduct its own analysis and the Court will make the decision regarding common benefit allocation. This series of discovery disputes over information that is (a) not existent, (b) already available to these firms and/or (c) goes solely to the FCC's confidential deliberative process for its recommendation as to which the External Review Specialist and the Court will exercise their own independent judgment is exactly the sort of "second major litigation" that Courts have decried in rejecting fee-related discovery.

Moving Firms were treated no differently than any other firm that submitted time for consideration by the FCC. On February 16, 2018, the FCC provided its Initial Review to each of the applicant firms, including the Moving Firms. Each firm received a letter detailing the review process utilized by the FCC, an Exhibit A which identified those time entries where the FCC found that there was no compensable basis for the time, an Exhibit B which identified those time entries requiring more information from the applicant firm, an Exhibit C setting forth a range of dates for each MDL in which the FCC determined time for consideration should occur based on the time period in which significant volumes of cases were resolved thereby signaling the culmination of common benefit work, and an Exhibit D setting forth categories of expenses which applicant firms were to remove from their submission. The letter to each firm instructed how and when to respond and also provided the reasons why time was placed on Exhibits A and B for that firm. Each letter was unique and tailored to the specific firm providing only those reasons that were applicable to the particular firm's time. Firms were required to provide an affidavit in the format provided in the Protocol signed by a senior firm member setting forth the reasons, grounds and explanation for the Firm's entitlement to common benefit fees under the factors outlined in the FCC Order and in the FCC Protocol. The affidavits provided by the Moving Firms were voluminous.[4] Firms were also given the opportunity to provide a response for each time entry that the firm believed was placed on Exhibit A or B in error, and to provide revised expenses in accordance with the instructions given. For any firm that did not provide a complete response, the FCC sent letters on April 18, 2018, requesting that the applicant firm complete its response.

---

[4] Kline Specter's 25-page affidavit contained 17 exhibits of 82 pages. The Mazie Slater affidavit was 25 pages and included 204 exhibits or sub-exhibits totaling 2,227 pages. The Anderson Firm's 25-page affidavit included 34 exhibits totaling 7,754 pages.

After receipt of the affidavits and responsive materials from the applicant firms, the FCC again reviewed each time entry for which the applicant firm sought reimbursement, as well as their submitted affidavits. In light of the information received from the applicant firms, the FCC met to discuss and decide whether time submissions placed on Exhibits A and B delivered to the firms should be considered as compensable.

On May 18, 2018, the FCC delivered to each applicant firm the results of the FCC's evaluation of the firm's affidavit and materials in response to the Initial Review. At that time, the FCC notified each firm of the hours and expenses that the FCC found to be eligible for consideration as common benefit. In accordance with Section D of the Protocol, each firm was given notice of the opportunity to be heard by the FCC. The letter provided to each firm was accompanied by a revised version of Exhibits A and B reflecting the FCC's decision to allow or disallow each entry based upon the information provided by the applicant firm in its final submission of time, expense and its affidavit. The letter provided instructions on how to request an opportunity to be heard by the FCC. Of the ninety firms whose time was reviewed, twenty-seven elected to be heard by the FCC. Each of the Moving Firms here requested the opportunity to appear and to be heard by the FCC.

The FCC conducted in-person meetings with representatives of each firm who made a request in Charleston, West Virginia on June 12, 13, 14 and 15, 2018, and in Atlanta, Georgia on July 17, 18 and 19, 2018. Each of the Moving Firms appeared before the FCC at these in-person meetings. In accordance with Section C. of the FCC Order, each firm was permitted to "present the reasons, grounds, and explanation for their entitlement to common benefit," and was generally allowed to be heard by and to discuss with the FCC any matter of its choosing during these in-person meetings. The FCC received and considered all of the oral presentations of all applicant

firms who availed themselves of this opportunity, including these Moving Firms. Based on the firms' presentations, the FCC reviewed, and where appropriate, revised the hours or expenses considered for common benefit. At the conclusion of the in-person meetings, the FCC finalized the number of hours and amount of expenses for its preliminary recommendation.

As the Court-Ordered Common Benefit Protocols reflect, applicant firms were given several opportunities to receive feedback from the FCC about the review and allocation process, both in writing and in-person. All applicant firms were allowed to make a presentation and/or provide a written submission to the FCC which they felt would establish the value of their work and/or their contribution to the common benefit of this MDL. (*See, e.g.*, FCC Protocol, Section C (each applicant firm must submit affidavit that "shall forth the reasons, grounds and explanation for the firm's entitlement to common benefit fees."); FCC Order, Section C ("It is the responsibility of the FCC to conduct meetings, at the appropriate time, during which any counsel who has submitted an application for common benefit compensation may, at his or her discretion, separately appear and present the reasons, grounds, and explanation for their entitlement to common benefit fees."). Again, each of the Moving Firms here submitted written submissions and each has appeared in-person before the FCC to present their positions with respect to their submitted time, their contribution to the common benefit, the FCC's review process, and any other subject they deemed appropriate.

Likewise, pursuant to Court's Protocol, the FCC provided ample opportunity for applicant firms to provide substantive feedback and input regarding the process – again, both in-person and in writing – including any input regarding the relative contributions or benefit provided by any applicant firm. Not only has every applicant firm had multiple opportunities to both provide and receive information and feedback to and from the FCC, the Court's Protocol provides additional

opportunities to present objections to the FCC's proposed allocation to the Court-appointed External Review Specialist and to the Court. Any complaint about an alleged lack of information or "transparency" here is unfounded.

The Moving Firms cannot reasonably claim to lack sufficient information to object to the FCC's preliminary recommended allocation – they have already done so, in writing.[5] Their arguments here are the same as those expressed in their objections filed with respect to the FCC's Preliminary Written Recommendation. As their arguments reflect, the Moving Firms' issue is not a lack of documentation but rather a disagreement with the FCC's preliminary recommendation for allocation with respect to themselves. As their Motion makes plain, the Moving Firms believe that their work was more valuable, and the FCC firms' work less valuable, than the FCC's preliminary recommended allocation reflects. This purported "discovery" motion is plainly revealed as little more than a vehicle to criticize the FCC and its recommended allocation, and to espouse their own perceived self-worth.

The Moving Firms' attack on the Hon. Eldon Fallon of the U.S. District Court for the Eastern District of Louisiana and the fee committee from the *Vioxx* litigation only serves to underscore the invalidity of their Motion here. The Moving Firms, relying largely on a law review article drafted by Kline Specter entitled "*How Not To Manage a Common Benefit Fund*," devote three pages to excoriating the *Vioxx* MDL common benefit allocation, urging that the process there was "undisciplined and jurisprudentially unmoored," "operated to favor the interests of those who designed it," and "promoted objection and litigation." (Motion to Compel, pp. 14-16). The Moving Firms offer their blunt critique of the *Vioxx* common benefit allocation, calling it "a substantive,

---

[5] Much like their affidavits served on the FCC in support of their common benefit requests, their objections to the preliminary allocation recommendation were voluminous. Anderson Law Offices submitted their 10-page objection accompanied by a 77-page "appendix"; Mazie Slater's 10-page objection includes 166 pages of exhibits; and, Kline Specter's 10-page objection included 153 pages of exhibits.

8

procedural, and practical failure and also an embarrassment to the bench and the bar." (*Id.*, p. 16). Unbelievably however, on the next page of their Motion, the Moving Firms point to the fact that Judge Fallon allowed some discovery in the *Vioxx* MDL as the sole support for their contention that their requested discovery should be allowed here.[6] The logical incongruence of their argument is obvious.

Denouncing the *Vioxx* MDL allocation process – as well as the judge and attorneys involved there – only serves to demonstrate that these Moving Firms are not and have never been interested in discovery. Although they point out that some discovery was allowed in the *Vioxx* MDL, the Moving Firms simultaneously urge the Court to reject the *Vioxx* allocation process as an "embarrassment" to all judges and lawyers and an "undisciplined and jurisprudentially unmoored…failure" in every aspect, including procedurally. This Motion establishes that discovery does not and will not address the Moving Firms' disagreement with the FCC's preliminary recommended allocation as to themselves. The Moving Firms' have already filed their voluminous objections to the FCC's preliminary written recommendation, and their objections make the same arguments raised here in this Motion: they did not get enough money, and the FCC got too much. This is not a valid basis for an objection, and certainly does not support the request for discovery sought here.[7]

---

[6] According to the Kline Specter law review article upon which the Moving Firms place significant reliance, the discovery allowed by Judge Fallon in *Vioxx* appears to have related primarily to an unauthorized distribution of $18.5 million to resolve objections to the common benefit fund. (Kline Specter law review article attached as Ex. M to Motion to Compel, pp. 30-41).

[7] In *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 2003 WL 21641958, *10-*11 (E.D.Pa. 2003), much like the Moving Firms here, a group of objecting firms argued that the fee committee's recommended allocation vastly understated their relative contribution to the outcome of the MDL, accused the committee of self-dealing and misrepresentation, and urged that the committee improperly "free rode" and took credit for work performed by the objectors. In rejecting the objectors' attempt to create a second litigation over the fee allocation, the court observed as follows: "With so much money at stake and so much time invested by skilled attorneys on valuable common benefit work,

This Motion to Compel is without merit and should be denied.

This 5th day of November, 2018.

By: */s/ Henry G. Garrard, III*
Henry G. Garrard, III
hgarrard@bbga.com
Chairman of the Fee &
Compensation Committee

BLASINGAME, BURCH, GARRARD & ASHLEY
P.O. Box 832
Athens, GA 30603
706-354-4000

*/s/ Renee Baggett*
Renee Baggett
RBaggett@awkolaw.com
Member of FCC

AYLSTOCK, WITKIN, KREIS & OVERHOLTZ
17 East Main Street, Suite 200
Pensacola, FL 32502

*/s/ Riley L. Burnett, Jr.*
Riley L. Burnett, Jr.
rburnett@rburnettlaw.com
Member of FCC

BURNETT LAW FIRM
55 Waugh Drive, Suite 803
Houston, TX 77007

*/s/ Thomas P. Cartmell*
Thomas P. Cartmell
tcartmell@wcllp.com
Member of FCC

WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112

*/s/ Clayton A. Clark*
Clayton A. Clark
CClark@triallawfirm.com
Member of FCC

CLARK, LOVE & HUTSON, G.P.
440 Louisiana Street, Suite 1600
Houston, TX 77002

---

it is not surprising that disputes exist concerning the proper method and dollar amount of the individual allocations. We emphasize, however, that the allocation of fees is not an exact science." *Id.*

10

|  |  |
|---|---|
|  | */s/ Yvonne M. Flaherty* <br> Yvonne M. Flaherty <br> ymflaherty@locklaw.com <br> Member of FCC |
| LOCKRIDGE GRINDAL NAUEN P.L.L.P. <br> 100 Washington Avenue S., Suite 2200 <br> Minneapolis MN 55401 |  |
|  | */s/ Carl N. Frankovitch* <br> Carl N. Frankovitch <br> carl@facslaw.com <br> Member of FCC |
| FRANKOVITCH, ANETAKIS <br>  COLANTONIO & SIMON <br> 337 Penco Road <br> Weirton, WV 26062 |  |
|  | */s/ William H. McKee, Jr* <br> William H. McKee, Jr <br> bmckee@suddenlink.net <br> Member of FCC |
| 1804 Louden Heights Road <br> Charleston, WV 25314 |  |
|  | */s/ Joseph F. Rice* <br> Joseph F. Rice <br> jrice@motleyrice.com <br> Member of FCC |
| MOTLEY RICE LLC <br> 28 Bridgeside Blvd. <br> Mt. Pleasant, SC 29464 |  |

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2018, I electronically filed the **RESPONSE IN OPPOSITION TO MOTION TO COMPEL DISCOVERY DIRECTED TO THE FEE AND COST COMMITTEE (FCC) IN CONNECTION WITH THE REQUEST FOR ALLOCATION OF AGGREGATE COMMON BENEFIT AND COSTS AWARD** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

By: */s/ Henry G. Garrard, III*
Henry G. Garrard, III
hgarrard@bbga.com
Chairman of the Fee &
Compensation Committee

BLASINGAME, BURCH, GARRARD & ASHLEY
P.O. Box 832
Athens, GA  30603
706-354-4000