IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| ------------------------------------------------------- | |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| ------------------------------------------------------- | |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| ------------------------------------------------------- | |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| ------------------------------------------------------- | |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| ------------------------------------------------------- | |
| THIS DOCUMENT RELATES TO ALL CASES | |

**REPLY TO RESPONSE IN OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ADDITIONAL DISCOVERY DIRECTED AT THE FEE AND COST COMMITTEE IN CONNECTION WITH THE REQUEST FOR ALLOCATION OF AGGREGATE COMMON BENEFIT AND COST AWARD**

Pursuant to the Federal Rules of Civil Procedure, Kline & Specter, P.C. ("Kline & Specter"); Mazie Slater Katz & Freeman ("Mazie Slater"); and Anderson Law Offices ("ALO") (hereinafter "Moving Firms") hereby submit this Reply to the Fee and Cost Committee's Response to Moving Firms' Motion to Compel Discovery.

1

The FCC claims that "[t]he facts and information considered by the FCC have been provided and explained in detail." *See* FCC Response at p. 4. That is not correct. The FCC is refusing to produce that information, including all submissions and responses to and from all of the participating law firms. In this context, where a capped fund is being allocated among law firms, the source documentation is necessary for an intelligent assessment of the fairness of the FCC's position. Similarly, although the FCC states that the Moving Firms were offered the opportunity to justify disallowed time, the Moving Firms simply could not do so where the FCC failed to specify the basis for disallowance of each entry and expense. The color-coded spreadsheets specifying the reason for disallowance would provide that information.

It is particularly troubling that the FCC has represented that: "Each firm also has received information about each of the other firms' submitted time considered for common benefit (number of hours and amount of expenses recognized by the FCC as common benefit for every applicant firm)." *See* FCC Response at p. 4. This is misleading. The FCC has <u>refused</u> to permit any inspection of the total common benefit time that was submitted up to December 31, 2016 by the participating firms, including its own members. Only the amounts approved have been disclosed. The undersigned firms strongly suspect that a review of the original data will confirm that the FCC members disallowed little, if any, of their own time submissions. All that is known presently is that most of the non-FCC firms have suffered drastic cuts ranging between 20 to 70 percent. The participating firms' time submissions and the treatment of those submissions are significant in determining a fair and equitable common benefit distribution, and the notion that the FCC can conceal this critical data while complying with rudimentary principles of due process is unreasonable.

2

The Motion to Compel Production identified a number of specific examples of concerns with the FCC's recommendations supporting the need for discovery, few of which have even been mentioned in the Response in Opposition.  For instance, the TVM Historical Analysis that was prepared by FCC Member Motley Rice contains several break-downs of the time entries that had been submitted through August 24, 2016.  *See*, Motion to Compel Production, Exhibit L.  No explanation has been offered for how, according to this report, the Blasingame Firm generated 7,525 hours and incurred $2,687,171 in expenses in the Ethicon litigation in which it played no significant role.  *See* Motion to Compel Production, at p. 11.  Nor has the FCC attempted to justify the Riley Burnett Firm's remarkable generation of 8,827.55 approved hours over the final four months that submissions were allowed by the District Court.  *Id.*, p.12.  Not even 5 lawyers devoting 12 hours every day to the common benefit, seven days a week, between August 24 and December 31 could produce such a total.

Instead of confronting these disturbing discrepancies, the FCC claims that the "TVM Historical Analysis" was not relied upon by the FCC.  *See* FCC Response p. 2, Fn. 2.  This amplifies the question:  what was relied upon?  Let us see it, please.  This and other issues, including the shocking imbalance in participating firms' hourly rates, presumptively establishes the need for discovery. *See* FCC Response, p. 4, Fn. 3.

This case is apparently very different from *In re Pradaxa*, where the Court saw "no reason to doubt the methodology" utilized by that fee committee – gross imbalances as here create presumptive doubt as to methodology, and demonstrate the need for transparency. *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, C.A. No. 3:12-md-02385, Doc. 613 (Case

3

Management Order No. 89 - Denying Motion to Stay and Prohibiting Discovery Relating to Common Benefit Fee Determination) (S.D.Ill. Jan. 8, 2015). Additionally, albeit flawed, the Fee Allocation Committee in *In re Vioxx* provided the detailed point system used in determining the fee allocations in that litigation. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657. Here, the FCC does not assert that it followed an objective, verifiable methodology. This heightens the need for full disclosure of the information that underlies the overall allocation. All firms' awards must be evaluated with reference to the overall allocation, and that can only be achieved with knowledge of the factual information available and/or relied upon. At a minimum, the Moving Firms should be provided the source documents the FCC had available to it, including the documented allowances and disallowances across the board.

The need for transparency is underscored by the FCC's recommendations themselves. The FCC has not denied that the 28 highest proposed payouts (including all of the FCC member firms' shares) are all round numbers, which would have been statistically impossible if traditional loadstar/multiplier calculations had been performed. *See* Motion to Compel Production, p. 10. And the fact that they intend to pay themselves almost exactly two-thirds of the available common benefit fees strongly indicates that objective mathematics played little (if any) role in their deliberations. *Id.*

The FCC misstates the problems in *In Re Vioxx*. The issue in Vioxx was much more than the secret payment. The predominant issue was the self-dealing by the fee allocation committee. *See* Charles L. Becker, Shanin Specter, & Thomas R. Kline, *How Not to Manage a Common Benefit Fund: Allocating Attorney's Fees in Vioxx Litigation*, 9 Drex. L. Rev. 1 (Fall 2016), pp. 19-22. This was addressed by the appointment of a special master unconnected with

4

process.  That remedy is not available here, where Judge Stack has already participated with the FCC throughout and stated in writing his agreement with the recommendations of the fee compensation committee,

The need for transparency in MDL fee disputes is well established.  *In re High Sulfur Content Gasoline Products Liability Litigation* the Fifth Circuit determined that the District Court abused its discretion by determining a fee allocation in an *ex parte* hearing, accepting lead counsel's proposed order sealing the individual awards, and limiting its own review of objections to the allocation. *In re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220, (5th Cir.2008).   The Court stated:

> On a broad public level, fee disputes, like other litigation with millions at stake, ought to be litigated openly. Attorneys' fees, after all, are not state secrets that will jeopardize national security if they are released to the public. As the Third Circuit has noted, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *United States v. Cianfrani*, 573 F.2d 835, 851 (3d Cir.1978). From the perspective of class welfare, publicizing the process leading to attorneys' fee allocation may discourage favoritism and unsavory dealings among attorneys even as it enables the court better to conduct oversight of the fees. If the attorneys are inclined to squabble over the generous fee award, they are well positioned to comment—publicly—on each other's relative contribution to the litigation.

*Id*. at 223-25.

Discovery is appropriate in such fee disputes. (*See In re Vioxx Products Liability Litigation,* 760 F.Supp.2d 640 (5th Cir. 2010).; *Turner v. Murphy Oil USA, Inc.* 582 F.Supp.2d 797 (E.D. La. 2008).) The FCC misguidedly cites to *In re Diet Drugs* for the proposition that allowing discovery would lead to unwanted additional litigation and insinuate that discovery was not permitted in that litigation.   *See* FCC Response pp. 9-10, Fn. 7. *In re Diet Drugs*,

(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., 2003 WL 21641958, *10-*11 (E.D.Pa. 2003). To the contrary, throughout that litigation, the Court authorized discovery related to the allocation of fee awards including the deposition of the Plaintiffs Management Counsel's lead counsel. *See In re Diet Drugs*, 582 F.3d 524, 526-526 (3rd Cir. 2009).

The members of the FCC are serving as fiduciaries for other counsel and for all of the claimants. *See* Charles Silver, The Responsibilities of Lead Lawyers and Judges in Multidistrict Litigations, 79 Fordham L. Rev. 1985 (April 2011); Charles Silver & Geoffrey P. Miller, The Quasi-Class Action Method of Managing Multi-District Litigations, 63 Vand. L. Rev. 107 (2010). *See also*, *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008). The FCC does not provide any reason why providing the information would be detrimental or burdensome. If there has been fair dealing, why does the FCC refuse to provide the information? To the contrary, the requested information is necessary and should be provided.

Respectfully submitted,

**BOWLES RICE, LLP**

By:   _/s/ Floyd E. Boone Jr.___
Charles M. Love, III (WVSB 2254)
Floyd E. Boone Jr. (WVSB 8784)
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100 (Tel.)
(304) 347-1746 (Fax)
fboone@bowlesrice.com
*Counsel for Kline & Specter, P.C.*

6

KLINE & SPECTER, PC

*Lee B Balefsky*

Shanin Specter, Esquire
Lee B. Balefsky, Esquire
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Counsel for Plaintiffs*


**MAZIE SLATER KATZ
& FREEMAN, LLC**

   /s/ Adam S. Slater, Esquire
Adam M. Slater, Esquire
103 Eisenhower Parkway
Roseland, NJ  07068
973-228-9898
*Counsel for Plaintiffs*


**PAUL W. FLOWERS CO., LPA**

   /s/ Paul W. Flowers, Esquire
Paul W. Flowers, Esquire
Louis E. Grube, Esquire
50 Public Square, Terminal Tower, Suite 1910
Cleveland, OH 44113
216-344-9393
*Counsel for Anderson Law Offices, LLC*


**LEWIS GLASSER LLC**

   /s/ Webster J. Arceneaux, III
Webster J. Arceneaux, III (State Bar No. 155)
Richard L. Gottlieb (State Bar No. 1447)
Post Office Box 1746
Charleston, WV 25326
Phone: 304-345-2000
*Counsel for Anderson Law Offices, LLC*

7

**ANDERSON LAW OFFICES, LLC**

 /s/ Benjamin H. Anderson, Esquire 
Benjamin H. Anderson, Esquire
17138 Lorain Avenue, Suite 211
Cleveland, OH 44111
Phone: 216-589-0256
*Counsel for Plaintiffs*

November 9, 2018

8