# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| In Re: C.R.BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2187 |
| In Re: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2325 |
| In Re: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2326 |
| In Re: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITIY LITIGATION | MDL No. 2327 |
| In Re: COLOPLAST, PELVIC REPAIR SYSTEM PRODUCTS LIABILITIY LITIGATION | MDL No. 2387 |
| In Re: COOK MEDICAL, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITIY LITIGATION | MDL No. 2440 |
| In Re: NEOMEDIC PELVIC REPAIR SYSTEM PRODUCTS LIABILITIY LITIGATION | MDL No. 2511 |

This Document Relates to All Actions

**FREESE & GOSS AND MATTHEWS & ASSOCIATES' REPLY IN SUPPORT OF THE COMMON BENEFIT FEE AND COST COMMITTEE'S PETITION FOR AN AWARD OF COMMON BENEFIT ATTORNEYS FEES AND EXPENSES**

COME NOW Freese & Goss PLLC ("F&G") and Matthews and Associates ("M&A")(collectively "FG/MA") and file this reply in support of the Common Benefit Fee and Cost Committee's ("FCC") petition for an award of common benefit fees and expenses. FG/MA would respectfully show the Court that they support the fee petition of the FCC (and rebut objections to the FCC's fee petition) for the following reasons:

## I.

FG/MA occupy a unique place among firms involved in the Pelvic Repair Systems Product Liability Litigation (the "Litigation"). FG/MA's inventory of pelvic mesh cases (with approximately 13,000 women represented by the firms) is among the largest of any firms in the country. Indeed, FG/MA believe they have tried more pelvic mesh cases than any other firm – including the very first trials of cases involving the TVT, the TVT-O and the TVT-Abrevo. FG/MA were the first firms (or among the first firms) to negotiate mass settlements with pelvic mesh manufacturers AMS, Bard, Boston Scientific, Coloplast and Covidien. And FG/MA expect to pay over $20 million in common benefit fee assessments.

Commonly, firms with FG/MA's level of involvement in a particular litigation are represented on the MDL Executive Committee and/or the Fee Committee.[1] FG/MA are represented on neither. Thus, FG/MA are uniquely positioned to (1) offer insight on factors that impact the propriety of the FCC's fee request and (2) to share their experience with the FCC's fee protocol as an applicant for common benefit compensation.

---

[1] F&G partner, Tim Goss, and M&A partner, David Matthews, are among the 61 attorneys appointed to the Plaintiffs' Steering Committee to work under the leadership of the Executive Committee.

## II.

Collectively, FG/MA have participated in over 40 MDLs. In FG/MA's experience, the Pelvic Repair Systems MDL has been the most efficient, most well-run, and most successful MDL in which the two firms' have been involved. Thus, even from their perspective as payors of substantial common benefit assessments, FG/MA believe that the 5% award requested by the FCC is a reasonable fee for the work done by the PSC.

First, the FCC's fee request is reasonable given the tremendous amount of common benefit work performed by plaintiffs' attorneys within the Litigation. FG/MA know as well as anyone how much effort is required to develop and try cases against multiple manufacturers, involving multiple products, and applying the varying laws of multiple states. Indeed, for a period of six years, FG/MA devoted their practice primarily to the Litigation. During that time, FG/MA dedicated over 45,000 hours to the Litigation. It is reasonable to expect that other firms on the front lines of the Litigation worked similar hours.

It is also significant that many of the firms performing common benefit work persevered in doing so (often to the exclusion of other opportunities) for a prolonged period of time. Indeed, the Litigation (which began in 2010) is completing its eighth year and will continue to be litigated into the future. Thus, the efforts of attorneys in this litigation are comparable in duration to (or in excess of) those in other super-mega-fund cases where awards were issues. *E.g. In re Diet Drugs Prods. Liab. Litig.,* 553 F. Supp. 2d 442, 478 (E.D. Pa. 2008)(7 year duration); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,* 268 F.Supp.2d 907, 915-18 (N.D.Ohio 2002)(2 year duration); *Deloach v. Philip Morris Cos.,* No. 1:00CV01235, 2003 WL 23094907 (M.D.N.C. Dec. 19, 2003)(3 year duration); *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319 (S.D.N.Y.

2005)(3 year duration). The sustained and substantial commitment made by firms like FG/MA to the Litigation support the requested fee award.

Second, the high quality of the common benefit work performed in the Litigation supports the FCC's requested fee. In their roles as steering committee members, F&G partner, Tim Goss, and M&A partner, David Matthews, both performed and reviewed common benefit work produced in this litigation. Such common benefit work – including the analyzing and cataloging of documents, the production of exhibits, the taking and defending of depositions, the finding and development of expert witnesses from multiple fields of discipline, the research and briefing of motions on a variety of legal issues, the preparation and participation in hearings, the preparation and trial of cases, and the settlement negotiations with various defendants – was of consistently high quality.

Third, the FCC's requested fee is reasonable (even modest) given the PSC's outstanding success in enabling settlements and judgments currently exceeding $7,000,000,000. While the Litigation did not produce a single "global" settlement, it did produce a functional equivalent: a collection of settlements that have resolved the claims of tens of thousands of women. While these settlements may have been negotiated independently, they culminated from the work of the PSC who advanced the entire Litigation to the point where settlements were possible.

The fee award requested in this Litigation is well within the range of fee awards that have been approved in analogous cases involving large settlements. *E.g., Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942 (E.D. Tex. 2000)(15% award on $1.1 billion fund); *In re Tyco Int'l, Ltd.,* 535 F. Supp. 2d 249 (D. N.H. 2007)(14.5% award on $3.2 billion fund); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465 (S.D.N.Y. 1998)(14% award on $1.027 billion fund); *In re Royal Ahold N.V. Sec. & ERISA Litig.,* 461 F. Supp. 2d 383 (D. Md. 2006)(12% award

on $1.1 billion fund); In re Actos (Pioglitazone) Prods. Liab. Litig., 2017 WL 3033134 (W.D.La. 2017)(8.6% award on $2.4 billion settlement); *In re Diet Drugs Prods. Liab. Litig.,* 553 F. Supp. 2d 442 (E.D. Pa. 2008)(6.75% award on 6.44 billion fund); *In re Vioxx Products Liab. Litig.,* 760 F. Supp. 2d 640 (E.D. La. 20 10)(6.5% award on $4.85 billion fund); *In re Visa Check/ Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503 (E.D.N.Y. 2003)(6.5% award on $3.383 billion fund); *In re Avandia Marketing Sales Practices and Prods Liab. Litig,* 2006 WL 6923367 (E.D.Pa, 2012)(6.25% award on "super-mega-fund" settlement); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.,* MDL 1500, 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006)(5.9% award on $2.65 billion fund); *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319 (S.D.N.Y. 2005)(5.5% award on $6.133 billion fund); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig*., 268 F. Supp. 2d 907 (N.D. Ohio 2003)(4.8% award on $1.045 billion fund).

Fourth, having tried six cases and having received jury verdicts totaling over $93 million, FG/MA can appreciate the notion that higher per-plaintiff recoveries are possible through trial than via settlement. But the merit of the settlements secured in this Litigation should not be discounted because settling plaintiffs received less than *successful* trial plaintiffs. Even setting aside the practical impossibility of getting every plaintiff's case individually tried in their lifetimes, per-plaintiff settlements reflect the tremendous variance in possible outcomes.

FG/MA experienced this volatility in outcomes first hand. In March of 2014, FG/MA tried a TVT-O case in Dallas County Texas. That case resulted in a $1,200,000 verdict for the plaintiff but was reversed by the Dallas Court of Appeals. In September of 2014, FG/MA tried another case in Dallas County, Texas. That Obtryx Transobturator Sling case resulted in a $73,465,000 verdict for the plaintiff (subsequently remitted to $34,600,000). One year later, in September of 2015, FG/MA returned to the same Dallas County court to try a third case, Prosima case. The jury

5

in the third case returned a verdict for the defendant. FG/MA considered each of these cases equally strong – but the outcomes were wildly divergent. Similar variances resulted throughout the litigation. To the best of FG/MA's knowledge, verdicts for the plaintiff have been returned in 23 pelvic mesh trials. But nearly a third (8 of 31) of tried cases have resulted in verdicts for the Defendant. Thus, the settlement values in this Litigation are a reasonable reflection of both the obstacles and the successes litigants encountered.

## II.

The diligence demonstrated by the PSC in the prosecution of the Litigation carried forward to the FCC's process for fee allocation. In FG/MA's experience, the FCC's process for arriving at fee and cost awards, while time-consuming at points, provided FG/MA with a fair opportunity to present relevant information to the FCC, receive feedback from the FCC regarding fee and cost submissions, and to pursue a fair time and expense allocation .

At the end of the day, FG/MA's participation in the fee allocation process resulted in a slight increase in the firms' fee awards. FG/MA did not receive compensation for all the hours and costs they submitted for common benefit consideration. But, ultimately, FG/MA believe that they had a fair opportunity to explain their contributions, to present objections, to seek a higher award and that their arguments were appropriately considered by the FCC.[2]

Dated: December 3, 2018.

Respectfully submitted,

/s/*Tim K. Goss*
Tim K. Goss
tim@freeseandgoss.com
3500 Maple Avenue, Suite 1100

---

[2] FG/MA are not commenting on the awards of others as they were not involved in reviewing their submissions to the FCC.

                        Dallas, Texas 75219
                        Telephone: (214) 761-6688

                        Richard A. Freese
                        rich@freeseandgoss.com
                        FREESE & GOSS, PLLC.
                        1901 6th Avenue North, Suite 3120
                        Birmingham, Alabama 35203
                        Telephone: (205) 871-4144
                        Facsimile: (205) 871-4104

                        David P. Matthews
                        dmatthews@thematthewslawfirm.com
                        MATTHEWS AND ASSOCIATES
                        2509 Sackett St.
                        Houston, TX 77098
                        Phone: 713.522.5250
                        Fascimile: 713.535.7184

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 3, 2018, a true and correct copy of the foregoing Reply In Support of the Common Benefit Fee and Cost Committee's ("FCC") Petition for an Award of Common Benefit Fees and Expenses was served via electronic mail with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF counsel of record.

                        /s/*Tim K. Goss*
                        Tim K. Goss