IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL NO. 2511 |
| THIS DOCUMENT RELATES TO ALL CASES | |

**Andrus Wagstaff, PC's Response to the "Common Benefit Fee and Cost Committee's Petition For An Award of Common Benefit Attorneys' Fees and Expenses, and Memorandum in Support"**

On November 12, 2018, the Common Benefit Fee and Cost Committee ("FCC") filed its "Common Benefit Fee and Cost Committee's Petition For An Award of Common Benefit Attorneys' Fees and Expenses, and Memorandum in Support" (hereinafter, "FCC 5% Petition" or "Petition"). Comes Now Andrus Wagstaff, PC, and responds as follows:

1

I.      **Introduction**

On November 12, 2018, the FCC filed its "Common Benefit Fee and Cost Committee's Petition For An Award of Common Benefit Attorneys' Fees and Expenses, and Memorandum in Support." In that Petition, the FCC requests the Court affirm its initial 5% holdback as set forth in MDL 2326 Pretrial Order No.52[1], Paragraph 3a. *See*, MDL 2326, ECF Docket No. 508. While Andrus Wagstaff does not object to a 5% holdback, it is unclear what other action the FCC is requesting the Court to Order. Therefore, in an abundance of caution, AW files this Response.

II.     **The Court Should Not Allow the FCC to Divert Client Monies For Common Benefit Fees.**

MDL 2326 Pretrial Orders Nos. 17 and 52 establish a common benefit fund to compensate and reimburse attorneys for services performed and expenses incurred for the common benefit of MDL Plaintiffs. *See*, PTO 17 (MDL 2326 ECF Docket No. 212) and PTO 52 (MDL 2326 ECF Docket No. 508). In doing so, the Court ordered "a total assessment for payment of attorneys' fees and approved common-benefit and MDL expenses of five percent (5%) of the Gross Monetary Recovery" for all covered claims. *See*, PTO 52, para 3a. Although subsequent Orders instructed *how* the 5% should be paid into the common benefit fund, neither PTO 17, PTO 52, or any other Order instructed or provided any guidance on *who* should pay the 5% (primary case counsel or plaintiff/claimant). Therefore, every law firm was left to its own decision on how to split the 5% holdback with its clients.

---

[1] Throughout this Response, Andrus Wagstaff references Pretrial Orders from MDL 2326: *In Re Boston Scientific*. However, for each Pretrial Order referenced, this Court entered a substantially identical Order in each TVM MDL.

2

The following two examples illustrate eight (8) possible ways that the 5% holdback could be split between primary case counsel and plaintiff/claimant. There are several more options[2].

**Example A**: $100,000 Gross Monetary Recovery, 40% Contingency Fee Agreement.

|  | 5-0 Split | 4-1 Split | 3-2 Split | "Off the Top" |
|---|---|---|---|---|
| **Primary Attorney Pays** | $5,000 | $4,000 | $3,000 | $2,000 |
| **Plaintiff/Claimant Pays** | $0.00 | $1,000 | $2,000 | $3,000 |

**Example B:** $50,000 Gross Monetary Recovery, 25% Contingency Fee Agreement.

|  | 5-0 Split | 4-1 Split | 3-2 Split | "Off the Top" |
|---|---|---|---|---|
| **Primary Attorney Pays** | $5,000 | $4,000 | $3,000 | $1,250 |
| **Plaintiff/Claimant Pays** | $0.00 | $1.00 | $2,000 | $3,750 |

There are two different, and equally important, factors with respect to the common benefit fund: (1) Input - *who* paid the money into the common benefit fund (meaning, collectively, how much of the common benefit fund was paid by primary case counsels' fees and how much was paid by plaintiffs'/claimants' recovery); and (2) Output - how is the money being allocated between common benefit fees and common benefit expenses.

As a matter of law and equity, the money paid into the common benefit fund by plaintiffs/claimants can only be allocated for common benefit *expenses*, and not for common benefit *fees*. If the amount of money contributed to the common benefit fund by the plaintiffs/claimants exceeds the total amount of common benefit expenses incurred, then the plaintiffs/claimants should get a pro rata refund, which pro rata "refund" mutes any inequity among plaintiffs with different splits. Indeed, as recently cited by the Honorable Judge Eldon E. Fallon "… in MDLs the beneficiary [of common benefit work] is the primary attorney (the attorney who has the representation agreement with the claimant). For this reason, in MDLs, ***the common***

---

[2] In this response, Andrus Wagstaff takes no position on the correct or best split to pay the 5% holdback.

***benefit fee is extracted from the fee of the primary attorney and not the claimant***, as is the case with class actions. Thus in MDLs, ***the claimant does not pay the common benefit fee; the primary attorney who is the beneficiary of the common benefit work pays it***." *Common Benefit Fees in Multidistrict Litigation*, Hon. Eldon E. Fallon, Louisiana Law Review, V. 74, No. 2, 376 (2014), attached as **Exhibit 1** (citing, *e.g., In re* Vioxx Prods. Laib. Litig., 760 F. Supp. 2d 640, 658 (E.D. La. 2010) (ordering the common benefit fee of 6.5 % to be extracted from the 32% fee of the primary counsel; *see also, Smiley v. Sincoff*, 958 F. 2d 498, 500 (2d Cir. 1992) (affirming order providing that "any committee fee was to be paid by all attorneys on behalf of their clients. Plaintiffs were not to pay fees to the committee out of their own recoveries."); *In re* Zyprexa Prods. Liab. Litig., 467 F. Supp. 2d 256, 266-267 (E.D.N.Y 2006). And, this makes sense. Every plaintiff/claimant subject to the common benefit orders contracted with their primary case counsel to pay a particular percentage of their recovery toward attorney fees, typically 25-40% contingency fees. Some states even have legal caps on attorney fees. As a result, the common benefit fees can only be paid by the primary lawyer's fees, not by the plaintiff/claimant's recovery.

Here, because there was no uniformity between law firms on the split input into the common benefit fund and because there was one fund for everything, the FCC must do an accounting of the common benefit fund to trace how much money was contributed by primary case counsel and how much was contributed by plaintiffs'/claimants' recoveries. Any attempt to use monies contributed by the plaintiffs'/claimants' recoveries to pay common benefit fees would constitute a wrongful diversion of client money and should not be sanctioned by the Court. Therefore, to the extent the FCC is asking the Court to sanction wrongful diversion of client monies to pay common benefit fees, Andrus Wagstaff and its clients object. Any FCC member who

knowingly attempts to divert client monies in this manner should be removed from the FCC. Attached as **Exhibit 2** is a Proposed Order.

### III. Andrus Wagstaff, PC and Its Clients Have Not Waived Their Right to Object to the Common Benefit Fee Petition Or Any Recommended Award.

The Court established the FCC to effectuate "the fair and equitable sharing among plaintiffs' counsel for the Common Benefit Fund…". MDL 2326, PTO 136, Page 2. That did not happen. One striking example, undersigned counsel was a member of the 8-person Executive Committee and Co-Lead counsel of MDL 2326: *In Re:* Boston Scientific with Mr. Clayton Clark of Clark Love Huston, GP ("CLH"). Mr. Clark is a member of the FCC and has recommended his law firm be awarded an initial payment of $45,500,000 ($963/hour) while recommending Andrus Wagstaff (his non-FCC Co-Lead) be awarded an initial payment of $8,715,000 ($294/hour). No member of the FCC, besides Mr. Clark, played a significant role in the BSC TVM MDL. Even so, unnervingly, before recommending such a staggering and disparate award to CLH for its BSC work, not one FCC member ever asked Ms. Wagstaff — the co-lead of the BSC MDL — about the value of CLH's hours in the BSC litigation.

Further, after the FCC had decided its preliminary recommendations, on two separate occasions, two different FCC members told Ms. Wagstaff that Andrus Wagstaff was not treated fairly in the process and instructed undersigned counsel to file an objection so that AW's recommended award would be raised in the Final Written Recommendation. Ms. Wagstaff was further told that the FCC had inflated its own awards because the satisfaction of any appeals "could only come from the awards recommended to FCC law firms." Despite an acknowledgment by FCC members that Andrus Wagstaff was not treated fairly, the FCC did not raise AW's award because AW refused to withdraw its objection as set forth above. To date, this has not been a fair and equitable process and any effort to block an appeal is unjustified and should not be entertained

by this Court. Further, to the extent the FCC attempts to divert monies paid by Andrus Wagstaff clients to the common benefit fund, Andrus Wagstaff and its clients have not waived their appeal.

## IV.     Conclusion

Andrus Wagstaff and its clients respectfully request the Court enter an Order prohibiting the diversion of client monies to pay common benefit fees and preserving their appeal after the FCC process has concluded. Attached as **Exhibit 2** is a Proposed Order.

Dated: December 3, 2018.                        Respectfully Submitted.


ANDRUS WAGSTAFF, PC

 /s/ Aimee H. Wagstaff_____
Aimee H. Wagstaff
Aimee.wagstaff@AndrusWagstaff.com
7171 W. Alaska Drive
Lakewood, Colorado 80226
P: 303-376-6360

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

By:    /s/ Aimee H. Wagstaff_____
Aimee H. Wagstaff
7171 W. Alaska Drive
Lakewood, Colorado 80226
P: 303-376-6360
Aimee.wagstaff@AndrusWagstaff.com