**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2187** |
| **IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2325** |
| **IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2326** |
| **IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2327** |
| **IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2387** |
| **IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2440** |
| **IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION** | **MDL No. 2511** |

**THIS DOCUMENT RELATES TO ALL CASES**

**COMMON BENEFIT FEE AND COST COMMITTEE'S REPLY TO
ANDRUS WAGSTAFF'S RESPONSE TO ITS PETITION FOR AN AWARD OF
<u>COMMON BENEFIT ATTORNEYS' FEES AND EXPENSES</u>**

**I.      INTRODUCTION.**

The law firm Andrus Wagstaff ("AW") has filed its "Response" to the FCC's Petition for

an Award of Common Benefit Attorney's Fees and Expenses.  This late-filed Response is

revealed as little more than an ill-founded attack on the Court's 2013 agreed order creating a set-

aside for compensation of common benefit expenses and fees.[1]  If the order creating the set-aside were truly problematic as AW alleges here, AW certainly should have come forward before now after five years and long after tens of thousands of cases have been resolved in this Court subject to the set-aside.  Courts in multi-plaintiff litigation throughout the country, including cases in which AW has served in plaintiffs' leadership, have handled this issue no different this Court has here: a stated percentage set-aside of the gross recovery of all claims, paid by Defendants, for reimbursement of both expenses incurred and work performed for the common benefit of all plaintiffs.

The "Agreed Order Establishing MDL…Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit" (e.g., PTO #52 in MDL 2326) was entered on August 16, 2013 (hereinafter, the "Holdback Order").

In its late-filed Response, AW states "[w]hile Andrus Wagstaff does not object to a 5% holdback, it is unclear what other action the FCC is requesting the Court to Order." (AW Response, p. 2).  This feigned ignorance flies in the face of the FCC's Petition. The action requested of the Court in the FCC's Petition for an Award of Common Benefit Fees and Expenses ("FCC Petition") is abundantly clear: an order awarding the 5% holdback entered over five years ago for compensation of common benefit fees and reimbursement of common benefit expenses pursuant to a future order of the Court.

AW also professes a lack of knowledge regarding the common benefit fund's "input," which it defines as "*who* paid the money into the common benefit fund…."  However, the

---

[1] Part III of AW's Response addresses the FCC's recommended allocation of attorney's fees and AW's views regarding its own allocation in comparison to others. The question of allocation of fees is not presently before the Court, and therefore, the FCC will not address those arguments here except to note that it reveals AW's true aim here: increasing its allocation.

Holdback Order, which AW itself approved, signed and joined in submitting to the Court over five years ago, unambiguously provides that the Defendants are responsible for payment of all of the money into the common benefit fund.

AW's Response here amounts to an objection to the terms of the Holdback Order entered by this Court more than five years ago. AW complains that the Court's Holdback Order did not "instruct[] or provide[] any guidance on who should pay the 5% (primary case counsel or plaintiff/claimant). Therefore, every law firm was left to its own decision on how to split the 5% holdback with its clients." (AW Response, p. 2). AW's Response contends that different firms handled the Court-ordered set-aside differently in their settlement statements with their individual clients. AW states that "[a]ny attempt to use monies contributed by the plaintiffs'/claimants' recoveries to pay common benefit fees would constitute a wrongful diversion of client money and should not be sanctioned by the Court." (*Id.*, p. 4).[2]

Aside from AW's argument being untimely and barred by waiver and estoppel, the factual and legal premises of the argument are simply wrong. The Holdback Order, much like similar orders entered in other MDLs and multi-plaintiff cases, did not distinguish between fees and expenses and the 5% set-aside was paid by the MDL Defendants directly into the fund. Moreover, the common benefit doctrine provides that attorneys who perform work for the benefit of all plaintiffs are entitled to compensation from the recoveries that resulted from their work.

## II. ARGUMENT AND AUTHORITY

---

[2] AW's Response includes two Examples (Example A and Example B located on Page 3). AW's Example B incorrectly states that it is based upon an analysis of the amounts to be paid for a case with a Gross Monetary Recovery of $50,000.00. In actuality, the numbers used in AW's Example B are based upon a Gross Monetary Value of $100,000.00. Additionally, AW's Example B identified in the second column (the "4-1" column) that the hypothetical plaintiff would be expected to pay $1.00. Under the assumptions made in AW's Example B, however, the correct amount paid by the hypothetical plaintiff would actually be $1,000.00.

**A.    AW is barred by waiver and estoppel from objecting to the Holdback Order because AW approved, signed and submitted the Holdback Order, and has never objected during the five years in which the Holdback Order has been in effect under which tens of thousands of cases have been resolved.**

As set forth above, AW's argument here is founded entirely upon its complaint that the Holdback Order did not provide instruction or guidance to MDL Plaintiffs' counsel regarding how the 5% set-aside paid by Defendants should be reflected as between client and attorney in individual settlement statements, which AW claims led to some firms handling this matter differently.  It is instructive to consider that this issue did not arise until AW took issue with its proposed allocation of common benefit expenses, which is not yet before the Court but is nonetheless made a part of AW's Response.  AW's long past-due argument is a thinly-disguised, groundless attack on its proposed allocation.

The Holdback Order, entered on August 16, 2013, was approved and submitted by the Plaintiffs' Coordinating Co-Leads, Plaintiffs' Executive Committee and Liaison Counsel after consulting and obtaining approval from the Plaintiffs' Steering Committee. The January 15, 2016 "Order Establishing Criteria for Applications to MDL…Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit and Appointment of Common Benefit Fee and Cost Committee" (PTO #136 in MDL 2326) expressly incorporates by reference the Holdback Order. Likewise, the June 23, 2017 "Fee Committee Protocol" (PTO #166 in MDL 2326) references the Holdback Order and also attached a copy of the Holdback Order.

AW's present contention that the Holdback Order entered more than five years ago was somehow problematic rings hollow. Not only has AW never objected to the Holdback Order during the five years it has been in effect—during which time nearly $365 million has been paid into the

fund—AW partner Aimee Wagstaff personally approved, signed and submitted the Holdback Order in her capacity as an MDL Co-Lead and member of the Plaintiffs' Executive Committee. AW's failure to object to the Holdback Order at any time during the five years it has been in effect precludes any argument here regarding the terms of the order. *See In re General Motors LLC Ignition Switch Litig.*, Civil Action No. 14-md-2543, 2016 WL 1441804, at *6 (S.D.N.Y. 2016) ("Orderly litigation depends on lawyers raising issues and problems in a timely fashion; a failure to do so not only prevents a court from nipping problems in the bud, but also casts doubt on whether the alleged problems were in fact so problematic."); *In re Factor VIII or IX Concen. Blood Prod. Litig.*, 159 F.3d 1016, 1020 (7th Cir. 1998) (finding attorneys had waived their right to seek additional fees where, "[h]aving participated in the settlement proceeding and having failed to make timely objection to it, they are barred by the principles of waiver and equitable estoppel from challenging the settlement after it has become final and the defendants have paid and the class members have received hundreds of millions of dollars.") (citation omitted).

*In re Genetically Modified Rice Litig.*, 764 F.3d 864, 870-71 (8th Cir. 2014) is instructive here. In *Genetically Modified Rice*, the Eighth Circuit affirmed the MDL court's finding that an objecting firm waived its right to challenge the application of the MDL common benefit set-aside to its clients' settlements. Although the firm in that MDL had previously objected to the court's establishment of the common benefit fund and the requirement that the firm contribute to the fund, the firm nonetheless chose to submit claims pursuant to the settlement agreement which provided that all payments were subject to the common benefit set-aside. By submitting claims under the settlement agreement which provided that a percentage of all payments to clients would be allocated to the common benefit fund, the Eighth Circuit held that the firm had waived its challenge

to the fund and to the order that the firm and its clients must contribute to the fund. This reasoning applies even more strongly to AW in the present circumstances.

AW has settled hundreds of cases subject to the Holdback Order since the Holdback Order was entered. Unlike the firm in *Genetically Modified Rice*, however, AW has never objected to the creation of the common benefit fund, the terms of the Holdback Order, or the application of the common benefit set-aside to its cases (or any other cases). Despite its role as an MDL Co-Lead and member of the Executive Committee, not once in five years did AW ever claim to the Court that it did not understand how to interpret or apply the Holdback Order in any of the hundreds of cases it has settled in this Court.

Not only did AW fail to object to the Holdback Order for more than five years during which hundreds of its own clients' payments (and payments to tens of thousands of other firms' clients) were subject to the MDL common benefit set-aside, AW was itself a signatory to the Holdback Order and participated in its submission to the Court for approval – in 2013.[3] Indeed, AW itself has submitted common benefit expenses – and is presently seeking reimbursement of "held costs" – pursuant to the terms of the Holdback Order. The FCC has recommended that AW receive $505,275.50 in payment for held costs plus the return of its $350,000.00 assessment paid, which was used in the prosecution of the MDLs. Having endorsed, signed and joined in the filing of the very order it now seeks to challenge five years after-the-fact, having settled hundreds of cases

---

[3] Without disclosing the terms or conditions of any firm's confidential Master Settlement Agreement entered with any defendant, it is instructive to consider here that the MSAs invariably included a provision that 5% would be withheld from every payment made under the agreement and paid into the MDL common benefit fund (typically referencing the Holdback Order directly). Thus, AW not only supported, signed and submitted the Holdback Order, it also agreed with the defendants in hundreds or thousands of cases that 5% would be withheld from any settlement payments in accordance with the Holdback Order.

subject to the Holdback Order, and having submitted expenses for reimbursement pursuant to the Holdback Order, AW's present argument is clearly barred by waiver and estoppel.

If AW truly believed that any term or condition of the Holdback Order was unclear or otherwise problematic over the past five years during which it has settled thousands of claims subject to the order, it certainly should have raised it before now.  As noted in *In re General Motors LLC Ignition Switch Litig.*, *supra* at *6, the fact that AW waited over five years to raise any question as to the Holdback Order not only prevented the Court from considering this allegation of an issue, "but also casts doubt on whether the alleged problems were in fact so problematic." The FCC submits respectfully that the reason AW has never raised this issue with the Holdback Order that it signed and submitted five years ago is because there is not and never was a problem. It is only now, dissatisfied with its proposed allocation from the FCC, that AW has chosen to raise this "issue" with the Court.  It has waived its argument and should be estopped from raising it now.

**B.    AW's contention that any money has been or will be "diverted" from clients to pay attorney's fees is baseless.**

Aside from the fact that AW has waived and should be estopped from raising any after-the-fact objection to the Holdback Order that it signed and joined in its submission to the Court over five years ago, its belated challenge has no legal merit. Any contention that money was somehow "diverted" from clients to pay common benefit attorneys' fees is simply wrong. As AW's Response acknowledges, the Holdback Order does not specify a percentage of the common benefit fund for expenses versus attorneys' fees. Likewise, the Court's Holdback Order neither requires nor forbids payment of attorneys' fees by any client. The Court's Order provides that the 5% assessment includes both expenses incurred and attorneys' fees for services performed for MDL administration and for common benefit. The Holdback Order also directs Defendants to withhold

the assessment from amounts paid on any "Covered Claim" and to pay the assessment directly into the common benefit fund as a credit against the settlement or judgment.

While AW points out that some courts have instructed that common benefit fees should be deducted from plaintiffs' individual counsel attorneys' fees, there is no legal authority that holds that services performed for the common benefit of all similarly-situated claimants in an MDL *cannot* be reimbursed by the plaintiffs who actually received the benefit of such work.[4]   As discussed more fully below, many courts have handled common benefit assessments and/or awards in precisely the same manner as the Court did here.   Moreover, the common benefit doctrine is founded upon the very premise that a court supervising multi-plaintiff litigation is allowed in equity to "intervene to prevent or minimize an incipient free-rider problem" and may use "measures reasonably calculated to avoid unjust enrichment of persons who benefit from a lawsuit without shouldering its costs." *In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir.1992).

In *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113 (2nd Cir.2010),[5] the Second Circuit considered an objection by an attorney for an individual settling plaintiff to the application of the MDL set-aside to his client's case. In rejecting the attorney's argument regarding applicability of

---

[4] AW's Response cites to and attaches a law review article from the Hon. Eldon Fallon, in which Judge Fallon expresses his view that the true "free riders" in the MDL setting are the individual case attorneys rather than the plaintiffs, and therefore that it is more appropriate for payment of common benefit fees to come from individual counsel's fees.  The FCC agrees that the common benefit doctrine is intended to address the "free rider" problem and that individual case attorneys share in the benefits of common benefit counsel's work and thus should contribute to the common benefit assessment.  As AW's Response acknowledges, MDL individual plaintiffs' counsel have reduced their fees.  That said, the common benefit doctrine derives from the fact that *both* the plaintiff and their individual lawyer (where the plaintiff is represented) receive the benefit of the work done on behalf of all claimants.  While some courts have delineated between fees and expenses in their common benefit orders, several courts have handled it just as this Court did in the agreed Holdback Order.

[5] In its Response, AW cites to one of the several MDL court opinions from the *Zyprexa* MDL.  However, as discussed below, the *Zyprexa* opinion cited by AW supports the propriety of the Holdback Order entered by this Court.

the set-aside to his case, the Second Circuit in *Zyprexa*, *supra* at 129-130, addressed the applicability of common benefit assessments in the context of an MDL where cases settle individually, observing instructively as follows:

> The situation is somewhat different with respect to MDLs consisting of individual cases prosecuted by individual plaintiffs, sometimes numbering in the thousands, and other litigation involving large numbers of separately represented claimants. Unlike most class actions, recoveries by individual plaintiffs or groups of plaintiffs in such matters may occur at different times, and individual plaintiffs or groups of plaintiffs, unlike most individual class members, usually are represented by individual counsel. Nevertheless, there are substantial similarities to class actions as well. As an initial matter, the efficient handling of such cases demands a similar approach to case management. District courts typically appoint a lead counsel or plaintiffs' steering committee to coordinate and conduct pretrial proceedings on behalf of all plaintiffs in order to avoid what otherwise might well become chaotic. Moreover, **while individual plaintiffs are separately represented, they typically benefit also—often predominantly—from the work of the lead counsel or committee**.
>
> The same equitable considerations that warrant payment of class counsel out of common funds generated by their efforts apply in these circumstances as well. **The desirability—indeed, the compelling need—to have pretrial proceedings managed or at least coordinated by lead counsel or a steering or executive committee demands the existence of a source of compensation for their efforts on behalf of all. <u>The logical, and a most equitable, source of that compensation is recoveries of individual plaintiffs who benefit from that work.</u> Indeed, <u>foreclosing those recoveries as a source of funding for the common benefit work would enrich the non-contributing individual plaintiffs unjustly at the expense of either or both of the lead counsel and any contributing individual plaintiffs.</u>** The district court thus acted within the scope of its discretion when it established an account to compensate counsel for common benefit work funded by a set aside of future *Zyprexa* MDL recoveries.

*See also*, *In re Lidoderm Antitrust Litig.*, 2017 WL 3478810, *1 (N.D.Cal.2017) (citing to mass tort cases and noting common benefit set-asides are "entered to provide for **the fair and equitable sharing among plaintiffs** of the cost of special services performed and expenses incurred by attorneys acting for MDL administration and common benefit of all plaintiffs in this complex litigation."); *In re Genetically Modified Rice Litig.*, 835 F.3d 822, 828 (8th Cir.2016) ("No party challenges the propriety of the Common Benefit Order or the 'well established' authority of a

district court to compensate leadership lawyers by ordering funds to be set aside **from recoveries obtained by other plaintiffs** in multidistrict litigation."); *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 2011 WL 611883 (N.D.Ind.2011) (observing that "the common fund doctrine…provides that **plaintiffs and their counsel** contribute to lead counsel's compensation in exchange for the benefit of lead counsel's work."); *In re St. Jude Medical, Inc. Silzone Heart Valves Prods. Liab. Litig.*, 2002 WL 1774232, *1 (D.Minn.2002) ("this order is entered to provide for **the fair and equitable sharing among plaintiffs** of the cost of special services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation."); *In re Sulzer Hip Prosthesis and Knee Prosthesis Liab. Litig.*, 268 F.Supp.2d 907, 921 (N.D.Ohio 2003) ("Fee shifting is justified in common benefit cases…because **to allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich others unjustly** at the plaintiff's expense.") (internal cits. omitted); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 2009 WL 6042809, *1 (W.D.Wa. 2009) ("Certain lawyers representing plaintiffs in this litigation were authorized to undertake work for the benefit of all MDL 1407 plaintiffs…. Counsel undertaking this work did so with the understanding that at the conclusion of MDL 1407, they would be reimbursed **out of an account funded with a percentage of verdicts and settlements in cases associated with MDL 1407**.").

In several other MDLs and multi-plaintiff actions, courts have entered orders setting aside a stated percentage of each plaintiff's total recovery for both common benefit expenses and attorneys' fees, no different than the Holdback Order submitted in this Court by leadership, including AW, more than five years ago and requested by the FCC to be awarded here.  In *In re St. Jude Medical, Inc. Silzone Heart Valves Prods. Liab. Litig.*, 2002 WL 1774232 (D.Minn.2002), for example, the court ordered a set-aside in the amount of 6% to be withheld from all payments

to cover both common benefit fees and expenses.  In the *Prempro* (hormone replacement therapy drug) MDL, the court also entered a common benefit order no different from that here, with a stated percentage of the gross recovery in every MDL and state court case set aside by the defendant for payment of both attorney's fees and expenses. *In re Prempro Prods. Liab. Litig.*, Case Case 4:03-cv-01507-BRW Doc. 570 (E.D.Ark. Mar. 30, 2005) (Prac. & Proc. Ord. No. 6 – Establishment of Plaintiffs' Personal Injury Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for Common Benefit) (copy attached as **Exhibit 1**)).  Similarly, in *Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 2009 WL 6042809 (W.D.Wa.2009), the MDL court issued its "Order Granting Common Benefit Fee Committee's Petition and Directing Payment of Fees Earned by Attorneys Performing Common Benefit Work" following the recommendation of the court-appointed fee committee. No different from the FCC Petition here, the common benefit order in *PPA* granted a single combined award for both fees and expenses for common benefit work done in the MDL.  In *In re Trasylol Prods. Liab. Litig.*, Case 1:08-md-01928, Doc. 13390 (S.D. Fla. Oct. 11, 2012) ("Motion for Payment of Common Benefit Attorneys' Fees From the Trasylol Common Benefit Fund…") (copy attached as **Exhibit 2**), much like the FCC Petition here, the MDL leadership sought reimbursement for both fees and expenses from a Court-ordered set-aside in the amount of 6% of the gross of all settlements and judgments.  The *Trasylol* motion was granted and fees and expenses ordered reimbursed as requested. *Id.*, Doc. 13419 (S.D.Fla. Nov. 11, 2012) (copy attached as **Exhibit 3**). Likewise, in *In re Lidoderm Antitrust Litig.*, 2017 WL 3478810, *3-*4 (N.D.Cal.2017), the court ordered defendants to pay 10% of any settlement or judgment for compensation of common benefit fees and expenses into a singular fund (the "fee and expense account"), which "shall be available,

at the Court's discretion, to pay attorneys' fees and expenses incurred by…Class Counsel or other counsel for their common benefit work, subject to a showing of entitlement to such payment."

AW cites one of the several MDL court opinions from *Zyprexa* in support of its Response. (AW Response, p. 4).   What AW's Response disregards – even though explained in the very opinion to which it cites – is that the *Zyprexa* MDL actually involved two different PSCs and two different common benefit funds over time.  As discussed in *In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 263 (E.D.N.Y.2006), which is cited on page 4 of AW's Response, the initial common benefit fund for "PSC I" was funded by a percentage set-aside of the gross settlement amount and was used to reimburse both common benefit fees and expenses.  Thus, the PSC I set-aside in *Zyprexa* is not materially different from the fee and expense set-aside established by this Court in the agreed 2013 Holdback Order and sought to be awarded by the FCC here.  The fact that common benefit reimbursement was handled differently for PSC I (percentage set-aside of gross recovery) than with PSC II (one-half of set-aside from plaintiff's recovery and one-half from individual counsel's fee) – by the same Court in the same MDL – only demonstrates that either approach is appropriate.

The invalidity of AW's position here is further underscored by consideration of its own involvement in other similar MDLs where AW itself has requested and obtained common benefit awards not reasonably distinguishable from that sought in the FCC Petition.  In *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, 2012 WL 6923367 (E.D.Pa.2012), where AW founding partner Vance Andrus served as a member of the MDL plaintiffs' steering committee and the court-appointed fee committee, the fee committee sought and obtained an award of 6.25% that included both attorneys' fees and expenses with $10.05 million (or 0.75%) held in reserve to cover anticipated future fees and expenses. Interestingly, in *Avandia*, the MDL court had

previously established an assessment order that, unlike here, distinguished between fees and expenses and established two separate funds – one for fees (4%) and another for expenses (3%). When the court in *Avandia* entered its aggregate fee and expense order, however, the singular award included both fees and expenses. Here, as AW acknowledges, the Holdback Order provides a singular fund for both fees and expenses; there is no separate expense fund.  The fact that the Court entered a singular award for both common benefit fees and expenses in *Avandia* where AW served in leadership and on the fee committee flatly disproves its present contention here.

More recently, in the *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.* MDL in the District of Massachusetts, current AW partner Kim Dougherty[6] was a member of the plaintiffs' steering committee and the fee committee, which requested and obtained a common benefit award of 8% that included both common benefit fees and expenses, with expenses to be reimbursed before the remaining amount in the fund is allocated as attorneys' fees. *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 2014 WL 3974077 (D.Mass. 2014) (MDL Order No. 8 Establishing Assessment for Common Benefit Fund); *See also*, Case 1:13-md-02419, Doc. 3105-1 (Sept. 27, 2016 "Plaintiffs' Steering Committee's Memorandum in Support of Motion for Distribution of Common Benefit Fees and Expenses"), copy attached hereto as **Exhibit 4**)). Like the *Avandia* order obtained by AW, the *NECC* common benefit order is not distinguishable from the Holdback Order entered here in 2013 and the award requested in *NECC* is nearly identical to that sought by the FCC Petition here: a combined award of a stated percentage for both common benefit fees and expenses (the same percentage as the set-aside), with expenses to be reimbursed first and the remaining amount allocated to attorneys' fees. Given that AW's lawyers have served in leadership and on the fee committee in MDLs where the fee committees

---

[6] At the time of the *NECC* MDL disbursement, attorney Dougherty was with another law firm.

requested – and the courts ordered – combined aggregate fee and expense awards just like that requested here, their present argument is plainly unfounded.

In a recent appellate decision involving an MDL common benefit assessment, the defendant in the *Genetically Modified Rice* MDL argued that the Court lacked authority to enter a "fee-shifting" award that would require it to pay the plaintiffs' counsel's attorney's fees. The Eighth Circuit rejected such argument on the basis that "[t]he district court…did not order [the defendant] to pay attorney fees. It ordered [the defendant] to comply with the Common Benefit Order and 'cause to be deposited' a portion of the settlement into the fund." 835 F.3d 822 at 832. Here, likewise, this Court has never ordered any plaintiff to pay any attorney's fees (or even expenses, for that matter).  Just like in *Genetically Modified Rice*, this Court entered an Order that the Defendants must deposit a portion of every settlement and judgment into the common benefit fund for reimbursement of attorneys' fees and expenses.

While AW's Response refers to the prospect of the FCC's "diversion" of client funds, the FCC wishes to point out that it had no control over or involvement in whether or how any given attorney or law firm may have chosen to apportion the 5% assessment vis-à-vis their client in any of their cases. Indeed, the FCC was not appointed until January 2016 – some 2 ½ years after the Holdback Order was approved, signed and filed – and well after many of the MDL settlements had been finalized. The FCC's only role is to make a recommendation to the Court regarding the reimbursement of common benefit expenses and the allocation of attorneys' fees for common benefit work.  Any contention that the FCC could have had any role in any lawyer's or law firm's handling of the 5% assessment in their settlements of their clients' cases is misguided and wrong.

**C.      AW knowingly filed its Response to the FCC Petition late, and thus this Response is not entitled to consideration here.**

Aside from a lack of legal merit and being barred by AW's inaction for the five years since it submitted the Holdback Order, AW's Response is untimely and should not be considered by the Court.  The FCC Petition was filed on November 12, 2018. In its Order granting the FCC's motion to exceed the page limit in the FCC Petition, the Court stated:

> As to the FCC Petition, the court **ORDERS** that any response to the FCC Petition must be filed on or before **November 26, 2018.** Any reply must be filed on or before **December 3, 2018.** The court reminds the parties that the FCC Petition has been filed in all seven MDLs assigned to me, and any responses and the reply should also be filed in all seven MDLs.

On November 16, 2018, AW filed its "Notice of Intent to File Opposition" to the FCC Petition, and therein stated that AW intended to oppose the FCC Petition, had retained outside counsel to prepared its opposition to the Petition, and was being filed to provide notice "so that the Court will not simply grant the Petition based on the assumption that it is unopposed."

In written correspondence to AW on November 19, 2018, the FCC instructed that "[t]o the extent you feel that an objection to the pending Petition seeking the award of the five percent (5%) for fees and expenses would be appropriate, you should file your objection within the deadline established by the Court."

As the Fourth Circuit reiterated in *Agnew v. United Leasing Corp.*, 680 Fed.App'x 149, 155 (4th Cir.2017), district courts will extend deadlines to allow untimely pleadings only upon a showing of "excusable neglect," which the Fourth Circuit instructs "**is not easily demonstrated, nor was it intended to be**." (*citing Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir.1996)). In the context of this historic MDL, this Court's docket management orders like the order setting a deadline for any objections to the FCC Petition are entitled to particular respect and deference. *See*, *In re Deepwater Horizon*, 2018 WL 5077646, *2 and *2 n. 2 (5th Cir.2018)

(noting the special deference afforded MDL judges in managing their dockets and quoting *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822 (D.C. Cir. 2009) ("District judges must have authority to manage their dockets, especially during massive litigation such as this [MDL], and we owe deference to their decisions whether and how to enforce the deadlines they impose.")).

Here, AW did not ask for an extension and has not even attempted to demonstrate excusable neglect for its untimely Response, and any after-the-fact attempt to do so would be futile. AW undeniably knew about the Court's deadline. AW hired separate counsel and filed a notice of intent to file a Response, and AW had multiple exchanges and correspondence with the FCC about the Response and its intent to file a Response. There is no excusable neglect here. AW was well aware but simply chose to ignore the Court's deadline. Its belated Response should be disregarded.

## III.   CONCLUSION.

AW's untimely challenge to the agreed Holdback Order to which it was a signatory and participated in its submission to the Court more than five years ago, and its failure to seek redress with the Court for any alleged deficiencies in the Holdback Order, mandate that its opportunistic objections at this juncture are barred by waiver and estoppel. More importantly, AW's legal argument is wrong and runs counter to the common fund doctrine and AW's own practice when in a role of authority on fee committees in other product liability MDLs.

Dated: December 7, 2018

Respectfully submitted,

THE COMMON BENEFIT FEE AND COST COMMITTEE

By:   ***/s/ Henry G. Garrard, III***
      Henry G. Garrard, III
      hgarrard@bbga.com
      Chairman of the Fee &
      Compensation Committee

BLASINGAME, BURCH, GARRARD & ASHLEY
P.O. Box 832
Athens, GA  30603
706-354-4000

*/s/ Renee Baggett*
Renee Baggett
RBaggett@awkolaw.com


AYLSTOCK, WITKIN, KREIS & OVERHOLTZ
17 East Main Street, Suite 200
Pensacola, FL 32502
850-202-1010

*/s/ Riley L. Burnett, Jr.*
Riley L. Burnett, Jr**.**
rburnett@rburnettlaw.com


BURNETT LAW FIRM
3737 Buffalo Speedway, Suite 1850
Houston, TX 77098

*/s/ Thomas P. Cartmell*
Thomas P. Cartmell
tcartmell@wcllp.com


WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100

*/s/ Clayton A. Clark*
Clayton A. Clark
CClark@triallawfirm.com


CLARK, LOVE & HUTSON, G.P.
440 Louisiana Street, Suite 1600
Houston, TX 77002
713-757-1400

*/s/ Yvonne M. Flaherty*
Yvonne M. Flaherty
ymflaherty@locklaw.com


LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S., Suite 2200
Minneapolis MN  55401
612-339-6900

*/s/ Carl N. Frankovitch*
Carl N. Frankovitch
carl@facslaw.com


FRANKOVITCH, ANETAKIS, COLANTONIO & SIMON
337 Penco Road
Weirton, WV 26062

304-723-4400

*/s/ Joseph F. Rice*
Joseph F. Rice
jrice@motleyrice.com

MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
843-216-9000

*/s/ William H. McKee, Jr*
William H. McKee, Jr
bmckee@suddenlink.net

1804 Louden Heights Road
Charleston, WV 25314
304-546-2347

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 7, 2018, I electronically filed the ***COMMON BENEFIT FEE AND COST COMMITTEE'S REPLY TO ANDRUS WAGSTAFF'S RESPONSE TO ITS PETITION FOR AN AWARD OF COMMON BENEFIT ATTORNEYS' FEES AND EXPENSES*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

By:　***/s/ Henry G. Garrard, III***
　　　Henry G. Garrard, III
　　　hgarrard@bbga.com
　　　Chairman of the Fee &
　　　Compensation Committee

BLASINGAME, BURCH, GARRARD & ASHLEY
P.O. Box 832
Athens, GA  30603
706-354-4000