# Exhibit "2"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS
LIABILITY LITIGATION – MDL 1928

THIS DOCUMENT RELATES TO ALL ACTIONS

## MOTION FOR PAYMENT OF COMMON BENEFIT ATTORNEYS' FEES FROM THE TRASYLOL COMMON BENEFIT FUND PURSUANT TO PRETRIAL ORDER NO. 8

1. PreTrial Order No. 8 relating to Common Benefit Fund/Time and Expense Reimbursement provides in subparagraph A that "a Common Benefit Fund for expenses will be established to receive and disburse funds as provided in this Order. Pretrial Order No.8 also states as follows:

> **A. 3. Disbursements from Common Benefit Fund**
> (a) Upon subsequent order of the Court, payments may be made from the Common Benefit Fund to attorneys who provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client(s), including services provided and expenses incurred in preparation and trial of the bellwether cases. Attorneys eligible thereto are limited to Plaintiffs' Lead Counsel, members of the Plaintiffs' Executive Committee, members of the PSC, Plaintiffs' Federal Liaison Counsel, members of subcommittees established by the PSC who are called upon to assist in performing PSC responsibilities (e.g., discovery and science committees), Plaintiffs' State Liaison Counsel, and other attorneys performing PSC-approved responsibilities in MDL or state court actions.
>
> ...
>
> (f) If the Common Benefit Fund is insufficient to pay all court approved costs and fees, then disbursements shall be made for shared costs first. From any funds that remain after shared costs are paid, common benefit counsel fees without multiplier shall be paid second. From any funds that remain after shared costs and common benefit counsel fees are paid, held costs shall be paid third. From any remaining funds after the above is paid, counsel fees generated by operation of a multiplier shall be paid.
>
> **B. 1. Plaintiffs' Counsel Time and Expense Submissions**

Reimbursement for costs and/or fees for services of all plaintiffs' counsel performing functions in accordance with this Order will be set at a time and in a manner established by the Court, after due notice to all counsel. The Court shall receive and consider recommendations from Plaintiffs' Co-Lead Counsel concerning distribution of the Common Benefit Fund. The following standards and procedures are to be utilized by any counsel who seeks fee and/or expense reimbursement.

(a) Time Reporting

(1) Only time spent on matters common to all claimants in the MDL and that has been authorized by the PSC ("common benefit work"), including common benefit time spent on the bellwether cases, will be considered in determining fees. No time spent on developing or processing individual issues in any case for an individual client will be considered or should be submitted, except as set forth in A.3.a. above.

(2) Time submissions shall be kept in accordance with the guidelines set out herein and on the forms provided as Exhibits "B" & "C". Time submissions shall be made by August 31, 2008 and every quarter thereafter. Time submissions should be submitted to Plaintiffs' Co-Lead Counsel, Jim Ronca.

(3) All counsel shall keep a daily record of their time spent in connection with common benefit work on this litigation, indicating with specificity the hours stated in quarter hour increments, location and particular activity (e.g., "conducted deposition of John Doe"). Time entries that are not sufficiently detailed may not be considered for common benefit payments.

2. The Common Benefit Fund was originally established through contributions by members of the Plaintiffs' Steering Committee amounting to $2,670,000.00. Subsequently, through an assessment of settlements in this action pursuant to section A(1) of that order, 6% of settlement funds were set aside " for the payment of attorneys' fees and expenses as set forth in this order or any subsequent order of the court." Pursuant to a subsequent order of this court dated December 10, 2010, the original contribution of the Plaintiff Steering Committee members was reimbursed.

3. The Common Benefit Fund has continued to accumulate funds which been retained in an escrow account established by an certified public accountant, Alan Winikur,

pursuant to an order of this court dated April, 16, 2010. As of August 31, 2011, the Common Benefit Fund had a balance of $7,275,074.62. See account ledger attached as Exhibit A.

4. On June 22, 2010, this Court entered an order allowing for the payment of certain expenses from the fund created by the Court appointed accountant and funded by the assessment.

5. Since that time, a portion of all Common Benefit "shared" expenses as defined above have been paid by the court appointed accountant from the Common Benefit Fund.

6. Currently the Common Benefit account has an large excess of funds beyond what is needed to assure that continuing common benefit shared costs can be paid as they are incurred. Compared to the size of the funds, monthly costs are minimal relating mostly to costs of maintaining the electronic document repository, which costs less than $10,000.00 per month. Even if this were doubled, if $1 million were kept in the Fund, the costs would be covered through 2016. On the other hand, all of the important common benefit attorney work has essentially been completed. As of this date, all relevant documents (amounting to over 23 million pages) have been reviewed and coded. Approximately 60 depositions have been taken of common witnesses and there are realistically no other common benefit depositions to be taken. All of plaintiffs' 9 generic experts have provided reports and have been deposed. All 8 bellwether cases have been resolved. No trials are presently scheduled. There is only one case on the MDL docket with a November 2012 trial ready date but that case is subject to a pending motion for summary judgment, so the pretrial dated are stayed pursuant to Pre-Trial Order 35 and will be recalculated in the event summary judgment is denied. In fact, all substantial common benefit attorney work concluded almost a year ago.

7. Because the vast majority of generic costs have already been expended and because, as additional settlements are funded, additional substantial funds will be deposited in

the common benefit account, there are clearly sufficient funds to reimburse those who contributed to the common benefit of all plaintiffs from the excess unneeded amount.

8. As stated above, PTO 8 provides in paragraph 3(a):

> Upon subsequent order of the Court, payments may be made from the Common Benefit Fund to attorneys who provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client(s), including services provided and expenses incurred in preparation and trial of the bellwether cases.

9. The members of the PSC and others have performed substantial services for the common benefit of all plaintiffs including but not limited to the following:

   a. Creating a searchable electronic document storage platform for 23 million pages of documents;

   b. Reviewing the 23 million pages of documents and providing subjective coding of those documents. Even if reviewers could diligently review 500 pages per hour, it would take 46,000 attorney hours to complete a primary review of these documents. All reviewers needed training so they both knew what to look for and to understand and effectively operate the search equipment on the data platform;

   c. all documents subjectively marked "relevant" or "hot" required secondary review by more experienced litigation attorneys. The "relevant" or "hot" documents numbered in the hundreds of thousands of pages and secondary review surely took thousands of hours;

   d. Plaintiffs' Steering Committee designed dozens of interrogatories, requests for production and request for admissions, negotiated objections with the

defendants and reviewed and worked with the answers. This discovery took place in several waves;

  e. Through interrogatories, requests for production and 30(b)(6) depositions, the PSC established the identity of dozens of document custodians and witnesses;

  f. The PSC took 66 depositions of potential generic witnesses, including employees of defendants in Germany (whose depositions were taken in Amsterdam), third party witnesses, and experts. Many of these depositions lasted 3 days and involved review of thousands of documents by the actual questioners and days of preparation;

  g. The PSC retained 9 experts in different disciplines, supplying documents and deposition transcripts to those experts, meeting with the experts to inform them about the case, reviewing expert reports, preparing those experts for depositions and defending those depositions;

  h. The PSC preparing responses to *Daubert* challenges, preparing briefs and argument in response to those challenges, and in one case, preparing for and conducting a *Daubert* hearing;

  i. The PSC reviewed all the deposition transcripts numbering in the tens of thousands of pages and selecting the portions of the depositions likely to be usable as proof at trial, making deposition designations and video clips of the testimony;

j. The PSC and others reviewed all relevant documents, particularly the deposition exhibits, and reducing the number of documents to exhibits usable at trial;

k. The PSC and others conducted pre-trial preparation of bellwether trials including preparation of case specific experts and defending the depositions of those experts, deposing case specific defense experts, and deposing case specific witnesses such as sales representatives and treating doctors;

l. The PSC prepared a CD of relevant documents, deposition "cuts" and other information so any plaintiff's attorney with a filed case would have access to the common benefit work;

m. The PSC created a platform for the storage of the depositions and depositions;

n. The PSC attending to all the necessary procedural details including negotiating and arguing for the creation of pretrial orders ("PTO's") which controlled the discovery and bellwether trial process and attending status conference with the court on numerous occasions; and

o. The PSC also took responsibility for preparing, filing, briefing and arguing numerous motions including discovery motions and dispositive motions.

10. In accordance with PTO 8, Plaintiffs' Counsel who expended time and effort for the common benefit of all plaintiffs have submitted detail to plaintiffs' co-lead counsel, James Ronca, who has retained these and has sent a copy of the accumulated records to the court appointed accountant for the fund, Alan Winikur. To date, various Plaintiffs' Counsel including members of the PSC and their law firms have reported over 80,000 hours of attorney time. All

of the claims for hours submitted to lead counsel to date have been accumulated, reviewed and listed on a spreadsheet by quarter. See Exhibit B. The spreadsheet shows hours beginning in the first quarter of 2008 and continuing until the end of 2011. Other than administrative work by the undersigned, little, if any Common Benefit work has occurred in 2012. The total hours reported per law firm are indicated in Column O. The spreadsheet attached as Exhibit B also sets forth the reported hours as a fraction of the total hours (Column P) and as a percentage of the total hours reported (Column Q). All of the information has been supplied to the court appointed accountant.

11. Under the law of the Eleventh Circuit and by agreement of the parties, common benefit attorneys fees were not to be determined simply by hours reported. Rather, in approving fees, Courts must also evaluate the reasonableness and quality of the work performed. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348 (11th Cir. 2010) *citing with approval Johnson v. Georgia Highway Express, Inc.* 488 F. 2d 714 (5th Cir. 1974). The *Johnson* Court enumerated 12 factors to be considered when determining the reasonableness and quality of the work performed and apply those factors to the total number of hours for which fees are requested, known as the "lodestar".[1] In fact, in CMO 8, section 3(c), this Court approved the following language which

---

[1] The *Johnson* factors are:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;

anticipated the use of a lodestar with a multiplier depending on the type and quality of the work performed:

>   (c)  Payments will not exceed the fair value of the services performed, **plus any court approved multiplier,** or the reasonable amount of the expenses incurred and, depending upon the amount of the Common Benefit Fund, may be limited to part of the value of such services and expenses. [emphasis added]

In this case, the lawyers involved in the common benefit work have agreed and this Court has approved a hierarchy of value to be placed on services performed for common benefit in this litigation. In paragraph 19 of the PSC's prior motion for partial payment of common benefit fees, the PSC proposed a hierarchy of value which was attached as Exhibit B to that motion. No objections were filed and the Court signed an Order dated January 2, 2012, approving the partial award of common benefit fees. Said Order is attached as Exhibit C. The value hierarchy is attached to this motion as Exhibit D.

12.  Preparing for and questioning in generic depositions is among the highest value common benefit work done by members of the PSC and others according to the value hierarchy and any reasonable interpretation of the *Johnson* factors. Therefore, on the spreadsheet attached as Exhibit B, lead counsel has indicated in Column R the number of depositions attended, in column S the number of deposition days attended, and in column T the number of days spent performing actual questioning of witnesses. In addition, working with experts in preparation of highly technical reports, preparation of *Daubert* briefs and other high level activity is noted in Column Y of the spreadsheet.

---

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

13. To date, the Common Benefit Fund has had total revenues of $13,193,232.17 from the assessment. This amount represents settlements totaling at least $219,887,202.83.

14. The Plaintiffs' Steering Committee has already been reimbursed $2,670,000 for their original out of pocket contribution. See this Court's order of December 14, 2010, attached as Exhibit E. Adding the "held" costs claimed to date, plus other expenses incurred[2] the total amount of costs expended for common benefit to date is $4,276,202.50 which represents 1.9% of the total recovery.

15. In addition, Defendants estimate that there are approximately 300 cases settled that are not yet funded which will cause substantial additional funds to be paid into the Fund. As a result, the total amount of common benefit expenses will be about 1.5% of the total recovery; a highly efficient result considering that over 2200 cases were filed in the MDL and generic costs, as claimed to date, have been less than $2000 per case.

16. The Plaintiffs' Steering Committee has already made a motion for partial repayment of "held" costs totaling $585,272.25 which was approved by the court on December 7, 2011. See Exhibit F attached.

17. Contrary to what was stated in the PSC's earlier motion for partial payment of fees, PTO 8 does not require a full audit by the court appointed accountant. Rather, section 3(d) of PTO 8 says in relevant part:

> (d) No amounts will be disbursed without review and approval by the Court or such other mechanism as the Court may deem just and proper under the circumstances.

---

[2] Bank service charges ($231.39), Document Database costs after CB fund established ($66,246.06), Expert depositions ($527,742.73), Office supplies ($77.30), Professional fees accountant ($44967.05), State tax expense ($356.00)

18. Plaintiffs' co-lead counsel has reviewed the hours submitted pursuant to section B(2)(e)(1) of PTO 8 which states:

> Plaintiffs' Personal Injury Co-Lead Counsel shall establish forms and procedures to implement and carry out any time and expense submissions required by the Court and for reimbursement from the PSC Fund for Shared Costs.

19. After review, virtually all of the hourly claims appear to have been incurred for the benefit of all plaintiffs in general as described in section B(2)(b)(2).

20. Pursuant to PTO 8,

Reimbursement for costs and/or fees for services of all plaintiffs' counsel performing functions in accordance with this Order will be set at a time and in a manner established by the Court, after due notice to all counsel. **The Court shall receive and consider recommendations from Plaintiffs' Co-Lead Counsel concerning distribution of the Common Benefit Fund.** [emphasis added]

21. Upon review of the number of legitimate hours reported and the total amount of funds available and likely in the future to be available, it is highly unlikely that <u>average</u> fees per hour expended will exceed $161.00. This calculation is based upon the following. There is $7,423,153.00 in the common benefit fund as of October 5, 2012. Of that approximately $1,000,000.00 should be set aside for payment of the remaining held costs, remaining shared costs and the remaining fee claimants who have submitted less than 150 hours of common benefit work. A listing of these firms is attached as Exhibit G. This leaves a net of approximately $6,400,000.00. There are approximately 300 settled cases which are not yet funded and approximately 50 additional cases in the MDL that are likely to be resolved, either through settlement or dismissals. Working backwards form revenue to date, PSC Co-lead counsel estimate that these settlements will result in approximately $4,725,000.00 of additional funds which will be added to the Common Benefit Fund.. In addition, this Court approved a prior partial payment of attorneys' fees in the total amount of $2,350,000.00. Thus the estimated maximum fund available for payment of common benefit fees will be approximately

$13,475,000.00. This number divided by the number of hours reported yields an average hourly rate of $162.00 per hour before consideration of the value hierarchy or any *Johnson* factors that might be considered to raise or lower the hourly rate. In reality, Co-Lead Counsel expect that the common benefit fee fund, including the previous partial payment will actually be in the range of $11 million to $13.5 million, which would generate an average hourly fee range of $132 to $162 per hour.

22. Pursuant to PTO 8, Co-lead counsel formulated a plan for the distribution of the funds available for attorneys fees on a percentage basis and sent a copy of this proposal to the PSC and to any other law firm or attorney who made a claim for common benefit time in excess of 150 hours.

23. Co-lead counsel are recommending a percentage distribution because

a. it enables Co-lead counsel and the court appointed accountant to distribute the funds without repeatedly approaching the court with motions as the remaining cases are either funded or settled which may take an additional year or two:

b. it enables the attorneys who have performed the work to be compensated promptly. Much of the work was performed in 2008 and 2009 and other than a small partial payment, the law firms who performed the work have not yet been compensated.

c. Provided a cap is placed on the amount of any fees distributed without further order of court, the average hourly fee awarded would not exceed approximately $161 per hour, which is extremely low for the level and sophistication of the work done. In fact, the average hourly rate would be less than the median associate for South Florida ($200) according to an article in

Law.com.

http://www.lawjobs.com/newsandviews/LawArticle.jsp?id=1202434518144&slreturn=20120818170910

See also South Florida lawyer billing survey 2009 attached as Exhibit H. In other mass tort litigation, courts have approved much higher hourly attorneys fee awards for similar work. In the *Vioxx MDL* the court approved a basic average attorney rate of $443.00 per hour as the starting point for analysis, before any multiplier was applied. See Exhibit I attached. In the *Guidant MDL* the court awarded an average attorney rate of $379.40 per hour and an average paralegal rate of $127.49 per hour. *In re Guidant*, 2008 WL 682174, at *15 (D. Minn. Mar. 7, 2008). In this case, with a cap of $13 million, without further court review, the average attorney rate will be approximately half of the rate awarded in *Guidant* before any multiplier. Co-lead counsel believe the claims for common benefit attorneys fees under these circumstances is eminently reasonable. In fact, all of the attorneys and law firms listed gave up other work which would have been more financially rewarding to pursue this case to the benefit of all plaintiffs who achieved settlements. (See *Johnson* factor 4 in footnote 1 above).

24. Consistent with the above, Plaintiffs Co-lead Counsel have:
   a. reviewed all common benefit work done to date,
   b. reviewed the hours submitted by all law firms making common benefit fee claims,
   c. prepared the spreadsheet attached as Exhibit B and circulated it to all firms who submitted claims for common benefit work that exceeded 150 hours.
   d. Held a conference call on September 15, 2012 to which all counsel making common benefit fee claims were invited.

  e. Either orally or my e mail answered all questions regarding common benefit fee calculations

  f. Provided copies of fees requested to any of the law firms who had questions about common benefit fees.

25. Plaintiffs' co-lead counsel proposes that attorneys fees be awarded as a percentage of net funds calculated below, as follows:

  a. Plaintiffs Steering Committee:

   1. Anapol Schwartz (Ronca) Co-Lead – 9.5%
   2. Clark Dean and Burnett (Love) Co-lead – 7%[3]
   3. Babbitt Johnson (Osborne) Liaison – 7.5%
   4. Ury Moskow (Moskow) State Liaison – 7.5%
   5. Doug Monsour – 6.75%
   6. Alystock Kreis (Overholtz) – 6.25%
   7. Carey and Danis (Carey) – 6.5%
   8. Cory Watson (Turner) – 4%
   9. Fleming and Associates (Fleming) – 7.5%[4]
   10. Levin Papantonio (Barr) – 4%
   11. Matthews and Associates (Matthews) – 6%
   12. Simmons Browder (Miceli) – 5.25%
   13. Napoli Bern (Bern) – 3%
   14. Motley Rice (Thompson) – 1%
   15. Branstetter Stranch (Stranch) - 5%[5]

---

[3] When this litigation started, Scott Love was a partner at Fleming and Associates. In early 2009, Mr. Love moved to Clark Dean and Burnett. This percentage only reflects Mr. Love's time at Clark Dean and Burnett.

[4] When Scott Love left Fleming and Associates, George Fleming was appointed to the PSC. The percentage for Fleming and Associates reflects Scott Love's time while with that firm.

    16. Whatley Drake (Whatley) – 1.5%[6]

  b. Firms not on Plaintiffs' Steering Committee who did substantial work (over 500 hours) at the direction of the PSC on document review, depositions, on *Daubert* motions and briefs and preparing bellwether cases for trial:

    1. Freese and Goss – 5%

    2. Gallagher Law Firm – 2%

    3. Wagstaff and Cartmell (T.J. Preuss) – 1.5%

    4. Jerry Taylor – 0.75%

    5. Finkelstein Thompson – 0.25%

    6. Bailey and Glasser – 2%

  c. There are law firms with very small common benefit claims, who did not contribute in the same magnitude to the firms listed above. None of these firms claimed more than 138 hours total work. The total of all 7 claimants is 337.6 hours. At the highest average hourly fee, the total of these claims would only be $54,000, which is well within the $1 million reserve Co-lead counsel propose to leave in the fund. In addition, 0.25% has not been awarded which could be used for these claimants should their claims prove valid. Co-lead counsel has questions about whether any of this work was common benefit and authorized by the PSC. The interests of these claimants are well protected by the limitations Co-lead Counsel propose to place on the distribution.

---

[5] Branstetter Stranch was added to the PSC as class counsel but also provided valuable services related ot docment review and depositios especially in the German language.

[6] By agreement, class counsel share was downgraded because the class actions did not financially contribute to the fund.

26. Because of the limited funds available, and the low average hourly fee, there is no chance that the Common Benefit Fund will overpay anyone who has made a claim for common benefit attorneys' fees:

27. Plaintiffs' co-lead counsel and the members of the PSC believe that the claims have been made in good faith.

28. The payment of the listed percentages in common benefit attorneys fees will not in any way negatively affect the solvency of the Common Benefit as Co-lead counsel propose that $1 million remain in the fund to pay future expenses, past held costs not yet reimbursed and any other counsel fee claims.

29. To allow full payment to the listed attorneys and their law firms, Co-lead counsel propose that the percentages listed in paragraph 25 be paid from the existing funds on the date of approval by the Court, and also any time the fund equals or exceeds $500,000.00 in excess of the $1 million reserve, without further leave of court until such time as the total distribution of fees equals $13 million, at which time, further review by the court would be necessary.. (For example, when the Fund reaches $1.5 million, the court appointed accountant may pay fees from the $500,000 excess over $1 million but not out of the $1 million reserve.)

30. For purposes of law firm accounting for the end of the year, it is important to resolve this and make payments before November 1, 2012. As stated above, approximately 88% of the common benefit work was done in 2008 and 2009, most of it performed over 3 years ago.

31. The court appointed accountant, Alan Winikur, has no objection to the proposed fee distribution and agrees with the concept. An affidavit provided by Mr. Winikur is attached wherein he verifies:

    a. I am a certified public accountant with experience in handling the common benefit accounts in several mass tort litigations including Avandia.

    b. I was appointed the CPA by the above Court on April 16, 2010 for receiving, disbursing and accounting for assessment funds received in the above litigation pursuant to Pre-Trial Order 8.

    c. I have reviewed the Plaintiff's Steering Committee's Motion for Payment of Common Benefit Fees from the Trasyol Common Benefit Fund Pursuant to Pre-Trial Order No.8.

    d. I certify that the dollar amounts referenced with respect to the common benefit fund are accurate.

    e. I certify that the calculations made in the motion are accurate.

    f. From my experience in other litigations, it is my opinion that the hourly rates awarded under the proposed distribution are not only reasonable but low compared to other litigations and my general experience regarding attorneys fees. In other litigations the average fee or lodestar calculation generally exceeds $300 per hour. Fees received in this litigation under the plan proposed in the motion are substantially less no matter how calculated.

    g. In my opinion, none of the law firms awarded a percentage of the common benefit fund under this percentage arrangement will be overpaid, in fact, most if not all firms will be underpaid for the work provided.

    h. The $1 million reserve fund is more than adequate to pay for ongoing common benefit expenses of this litigation, pay the remaining claims for "held" costs" and pay any claims by firms with less than 150 claimed hours

32. The defendants have reviewed this motion and have no objections.

33. This motion and proposed order has been reviewed affirmatively agreed to by all 21 law firms listed in paragraph 25. To the best of Co-lead counsel's knowledge, no one has any objection to this motion and the interests of all claimants have either been met by agreement or preserved through the retention of funds. .

WHEREFORE, the Plaintiffs' Steering Committee respectfully requests the Court to order:

1. Approving the payment of attorney's fees from the common benefit fund as described in paragraph 25 above to the extent that the fund exceeds $1 million,

2. Requiring the Court-appointed accountant to keep a reserve of $1 million for future common benefit expenses, the remaining claims for "held" costs and any further attorney fee claims by law firms not awarded common benefit fees under this order.

3. Directing the Court-appointed accountant to provide rolling distributions of counsel fees to the firms listed in paragraph 25, each time the amount of the Common Benefit Fund exceeds the $1 million reserve by at least $500,000.

4. Directing the court appointed accountant to distribute fees to the firms listed in paragraph 25, only up to a total of $13 million. Once that amount has been distributed, no other fee distributions should be made without further order of Court.

Respectfully submitted,

**ANAPOL SCHWARTZ**

Date: October 10, 2012

By: /s/ *James R. Ronca*
James R. Ronca, Esquire
Supreme Ct. I.D. #25631
1710 Spruce Street
Philadelphia, PA 19103
(215) 735-1130
fax (215) 875-7758
jronca@anapolschwartz.com
*Co-Lead Counsel for Plaintiffs*

**CLARK, LOVE, HUTSON, G.P.**

By: /s/ *Scott Love*
Scott Love, Esquire
440 Louisiana St., Ste. 1600
Houston, TX 77002
(713) 757.1400
fax (713) 425-5315
SLove@TrialLawFirm.com
*Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL – 1928

**Affidavit of Alan Winikur, CPA,
Court Appointed Accountant for the Common Benefit Fund
in the Trasylol MDL**

a. I am a certified public accountant with experience in handling the common benefit accounts in several mass tort litigations including Avandia.

b. I was appointed the CPA by the above Court on April 16, 2010 for receiving, disbursing and accounting for assessment funds received in the above litigation pursuant to Pre-Trial Order 8.

c. I have reviewed the Plaintiff's Steering Committee's Motion for Payment of Common Benefit Fees from the Trasyol Common Benefit Fund Pursuant to Pre-Trial Order No. 8.

d. I certify that the dollar amounts referenced with respect to the common benefit fund are accurate.

e. I certify that the calculations made in the motion are accurate.

f. From my experience in other litigations, it is my opinion that the hourly rates awarded under the proposed distribution are not only reasonable but low compared to other litigations and my general experience regarding attorneys fees. In other litigations the average fee or lodestar calculation generally exceeds $300 per hour. Fees received in this litigation under the plan proposed in the motion are substantially less no matter how calculated.

g. In my opinion, none of the law firms awarded a percentage of the common benefit fund under this percentage arrangement will be overpaid, in fact, most if not all firms will be underpaid for the work provided.

h. The $1 million reserve fund is more than adequate to pay for ongoing common benefit expenses of this litigation, pay the remaining claims for "held costs" and pay any claims by firms with less than 150 claimed hours.

Dated: 10/10/12

_____
Alan B. Winikur, CPA

Sworn to and subscribed before me this 10th day of Oct., 2012.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHERYL A. KOZAK, Notary Public
City of Philadelphia, Phila. County
My Commission Expires May 16, 2013