IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL NO. 2511 |

THIS DOCUMENT RELATES TO ALL CASES

**KLINE & SPECTER, P.C.'S PROPOSED SURREPLY TO THE COMMON BENEFIT FEE AND COST COMMITTEE'S REPLY IN SUPPORT OF ITS PETITION FOR AN AWARD
OF COMMON BENEFIT ATTORNEYS' FEES AND EXPENSES**

# EXHIBIT A

## I. INTRODUCTION

The FCC filed a 25 page Reply in support of its Petition for an Award of Common Benefit Attorneys' Fees and Expenses ("FCC's Reply") which raises new and incorrect arguments requiring this response.[1]

## II. ARGUMENT

### 1. The 5% common benefit fee assessment is too high given the disparity between settlement amounts and average trial verdicts.

The FCC requests 5% of all recoveries totaling $550 million[2], though their results were poor. Tellingly, the FCC doesn't contest Kline & Specter's central factual assertions:

- The settlements average about $40,000 per case while the trial verdicts average $9.8 million;
- the lead counsel took way too many cases, couldn't discover or try them and were therefore forced to accept inadequate settlements;
- these inadequate settlements shortchanged the injured woman and made it difficult for other attorneys to fairly settle their cases;
- based on these facts, a common benefit fee of 2.5%, which equates to $180 million now and is anticipated to grow to $275 million, is more appropriate.

While they don't contest Kline & Specter's numbers outlined above, nowhere in their initial petition or in their response does the FCC reveal to the Court the precise number of cases settled or the per case settlement average. Plainly, no intelligent assessment can be made of the results obtained without first knowing the results obtained.[3]

---

[1] The FCC states that Kline & Specter was the only objector to the 5% assessment. The reason is obvious. Nearly all firms have settled their cases. If they were to object on the basis that the results don't justify the requested fee, they would be suggesting that they ill-served their clients. Few lawyers are willing to raise their heads above that particular trench line.

[2] The current value of the settlements is roughly $7.25 billion, and the total amount of settlements is expected to reach approximately $11 billion. This would make the total expected amount of the common benefit fund to reach $550 million. The current amount of the fund is approximately $360 million.

[3] Freese Goss filed a brief in support of the 5% assessment. Kline & Specter has great respect for Richard Freese, Esq. and Calle Mendenhahl, Esq. Kline & Specter had the benefit of these brilliant and tireless partners in the successful *Carlino v. Ethicon* trial, which was the first verdict against Ethicon's still marketed, "gold standard" TVT. However, as is evident from their filing, they settled their inventory for a per-case average of $31,000. Their trial successes predicted better settlement results, but they had too many cases to discover them.

2. **The FCC tries to change the subject by inaccurately critiquing Kline & Specter.**

The FCC's mistreatment of lawyers who litigated in both state court and the MDL, such as Kline & Specter, is relevant because it is the product of the FCC's attempt to grab 2/3rd of an inflated pot of common benefit fees for themselves. The FCC instead argues that Kline & Specter is objecting in order to get more money from the FCC. That's wrong. To remove any potential doubt, Kline & Specter pledges that even if the FCC were to recognize more or all of Kline & Specter's time, Kline & Specter would not withdraw its objection to the proposed 5% fee assessment. The 5% proposed common benefit fee is wrong because it is simply too much money given the settlement results for the injured woman, not because of how the FCC proposes to treat Kline & Specter.[4]

The FCC's brief is a broadside against Kline & Specter. But to the contrary, Kline & Specter's performance demonstrates that leadership's approximate $40,000 per case settlement average is shockingly low. Kline & Specter has settled roughly 1500 cases with a per case settlement average of approximately $75,000. That's about double the overall average. Removing Kline & Specter's AMS settlements, which occurred due to AMS's then perceived precarious financial condition, Kline & Specter's per case average is $120,000, about triple the average. Kline & Specter's current five (5) verdicts total $110,000,000, potentially increasing Kline & Specter's per case average to $155,000, even including the AMS settlement. Excluding the AMS settlements, and including the verdicts, Kline & Specter's per case average rises to $315,000. Surely, the FCC doesn't contend that these results could only have been achieved by Kline & Specter.

---

[4] In its Reply, the FCC incorrectly states Kline & Specter's effective hourly rate, because they only count the time credited and not the time worked.

When put to the test of a massive wave discovery order, some firms, like Kline & Specter, didn't rush to settle their cases cheaply. Instead, Kline & Specter utilized more than 50 attorneys to discover 900 wave cases; obtained 600 case specific expert reports; and took 1200 depositions - all over a time period of approximately 6 months – at a cost of over $8 million out of pocket and climbing. Rather than meet the waves head-on, the FCC flopped under them and settled for whatever the defendants were willing to pay.

In its Reply, the FCC states that Kline & Specter' Response fails to discuss "several cases [that] were also lost outright, resulting in verdicts or directed verdicts for the defendants." *See* FCC Reply at p. 12. That's wrong, too. As Kline & Specter stated in its Response to the FCC's Petition For an Award of Common Benefit, the $9.8 million per case average verdict includes seven defense verdicts. *See* Kline & Specter Response to FCC Petition at p. 8. Kline & Specter has tried nine cases (with another currently on trial) - more than any firm in the country. Their record is: five wins, two losses and two hung juries, right in line with the other trial results in this litigation. Moreover, the FCC does not question the accuracy of the TVM Trial Awards Chart which includes defense verdicts and hung juries. *See* Exhibit "E" to Kline & Specter's Response to FCC Petition.

The FCC incorrectly states that past success does not predict future success. *See* FCC Reply at p. 13. Experienced trial lawyers know exactly the opposite. Past success *is* predictive of future success. While there is never a guarantee, a track record is predictive of future achievement. That's why the leadership results of low settlements in the face of high verdicts is so bad.

The FCC contends that Kline & Specter was able to "dictate that the best cases" were set for trial in the Philadelphia Court of Common Pleas. *See* FCC Reply at p. 12. Wrong again. The cases tried in the PCCP were listed in "FIFO order" – the cases were listed for trial in the order that they were filed on the docket – first in, first out. Leadership had some of these cases, so they

know better. To suggest that this selection process somehow gave Kline & Specter an advantage over other plaintiffs' lawyers in other jurisdictions is obviously wrong. Anyway, Philadelphia County was available to leadership too, and leadership filed cases in Philadelphia County.

The FCC also overstates the role of common benefit work in Kline & Specter's trial victories. Some of the common benefit work in the Ethicon litigation was good and Kline & Specter has always said so. But stretching all the way back to Kline & Specter's first trial – *Hammons* in 2015 – plaintiffs' counsel called a live Ethicon witness rather than relying exclusively on MDL deposition cuts.[5] Kline & Specter has had to independently review the original document discovery. That's resulted in Kline & Specter's utilization of few MDL deposition cuts and documents utilized the MDL. In the current trial, *Emmet v. Ethicon*, only about 30% of the documents Kline & Specter has utilized at trial were utilized by the MDL in deposition or trial. The other 70% are documents Kline & Specter has freshly accessed, evaluated, selected and introduced at trial. MDL depositions have been pared and sparsely utilized in Kline & Specter's trials. Even inculpatory deposition answers sometimes can't be used, as many objections were sustained due to defects in questioning, making some MDL work product thought to be good but actually unusable.

Regrettably, the FCC inflates their performance and deflates the performance of Kline & Specter. The FCC suggests that no one could do better than they've done but facts show otherwise.

3. **Kline & Specter did not waive its right to challenge the 5% assessment by agreeing to the holdback order.**

Kline & Specter had no objection to the holdback order when entered and has no objection to it now. Kline & Specter objects to the proposed 5% common benefit fee. Kline & Specter did not waive that objection by not objecting to the holdback order when it was entered. These are

---

[5] Ironically, the FCC proposes to disallow all of Kline & Specter's time in this case.

5

separate orders. A holdback order is exactly that – a reserve anticipating a later determination. The FCC could have asked for the holdback to be awarded of something less or even something more.[6][7]

### 4. The FCC wrongly seeks to apply a 5% common benefit fee should apply to Coloplast and Covidien settlements where no common benefit work was done.

The FCC's contends that the Coloplast and Covidien litigations must be examined with relation to the "pelvic mesh litigation generally." *See* FCC Reply at p. 18. This is unfair to women who were implanted with Coloplast and Covidien products, where no significant work specific to those products was performed in the MDL. One might hypothesize in a complex MDL where it is not possible to separate claims in various cases, that the work and fee could be appropriately mushed together in a sense of rough justice. But here, it is easy to distinguish the MDLs. And since the 5% proposed fee from Coloplast and Covidien is a small fraction of the total fund, it isn't expensive to the common benefit lawyers to do the right thing and not tax these cases.[8]

### 5. The FCC misstates the proper process for the disposition of large number of cases.

In its Reply, the FCC suggests that they couldn't try their cases and neither can Kline & Specter. *See* FCC Reply at p. 7. This argument is wrong, overly simplistic, defeatist and not reflective of the role of a lawyer.

---

[6] MDL participating counsel Andrus Wagstaff, P.C. filed a Response to the FCC's Petition taking issue with "who" should pay proposed 5% fee assessment. The firm states that "[a]ny attempt to use monies contributed by the plaintiffs/claimants recoveries to pay common benefit fees would constitute a wrongful diversion of client money." *See* Wagstaff Response, at p. 4. This argument contradicts the current structure of the fee assessment, which comes off the top of settlements before distinguishing the clients' share, the attorneys' fees and the costs. If the Court wants to accomplish the substance of Andrus Wagstaff's suggestions, the Court should do what Kline & Specter suggests and cut the proposed 5% fee assessment by half. That at least would preserve the current distribution structure.

[7] One currently unresolved issue is when the proposed 5% common benefit fee will come to an end. Will this apply to all future filed cases? Will it apply for a year? Five years? Defendants are still manufacturing these defective mesh products. Discovery will continue – just what Kline & Specter is doing now in state and in federal court. Plaintiffs' counsel and plaintiffs should know when the common benefit "tax" will end.

[8] The FCC correctly notes that there is a particular state court settlement (*Jones v. Coloplast*) involving Coloplast which Kline & Specter individually sought to exempt from assessment. The Court deferred resolution of the issue and Kline & Specter reiterates its request for relief here.

6

The MDL is coming to a close, as does every MDL. Cases will be returning to their home districts for trial. State court settlements and trials have been occurring all over the country. Dozens of cases have been tried, most very successfully. Law firms who try cases, such as Kline & Specter, have settled cases fairly, because the defendants know that without settlements, they'll have to pay large verdicts.

It is a basic responsibility of an attorney to discover and try their cases if they can't be settled fairly. Inadequate settlements of good cases against solvent defendants isn't supposed to be an option. But a firm with 5000-10,000 cases or more, such as FCC members, could not follow this model unless they hired dozens of additional lawyers and/or associated with other firms. They didn't and settled instead, for cheap, which they don't deny.

Having capitulated for peanuts, leadership now seeks from this Court over half a billion dollars – on top of billions in private fee agreements – in preference to undercompensated and badly injured women. This cannot stand.

Under their fee agreements with their clients, the plaintiffs' lawyers in this litigation are likely making over $4 billion, as 40% of ($11 billion times .95) equals $4.18 billion. On top of that, $180 million, growing to $275 million, for a common benefit fee, which is one-half of the 50/0 requested common benefit fee, is enough.

WHEREFORE, for all the reasons described above, and the reasons stated in Kline & Specter Response to the FCC's Petition For an Award of Common Benefit, Kline & Specter respectfully requests that the five percent common benefit fee be halved, this half returned to the plaintiffs and their firms.

Respectfully Submitted,

Dated: December 7, 2018

**KLINE & SPECTER, PC**

By: /s/ Shanin Specter
Shanin Specter, Esquire
Lee B. Balefsky, Esquire
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Counsel for Objectors*


**BOWLES RICE, LLP**

By: /s/ Floyd E. Boone Jr.
Charles M. Love, III (WVSB 2254)
Floyd E. Boone Jr. (WVSB 8784)
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100 (Tel.)
(304) 347-1746 (Fax)
fboone@bowlesrice.com
*Counsel for Kline & Specter, P.C.*