IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL NO. 2511 |

THIS DOCUMENT RELATES TO ALL CASES

**MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ADDITIONAL
DISCOVERY DIRECTED AT THE FEE AND COST COMMITTEE
IN CONNECTION WITH THE REQUEST FOR ALLOCATION
OF AGGREGATE COMMON BENEFIT AND COST AWARD**

1

Pursuant to the Federal Rules of Civil Procedure, Kline & Specter, P.C. ("Kline & Specter") respectfully moves this Court for an Order compelling compliance with the Combined Fourth Requests for Production of Documents and Interrogatories served on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the Request for Allocation of Aggregate Common Benefit and Costs Award, and in support thereof states as follows:

## I. FACTUAL BACKGROUND

1. In accordance with the Pretrial Orders of this Court, the Fee Committee Protocol, and the parameters further established by the FCC, Kline & Specter submitted its Common Benefit Fee hours and expenses.

2. As required by the Fee Committee Protocol, the Kline & Specter provided the FCC with the firm's total revised time and an accompanying affidavit stating that the firm had audited the time and expenses and that the revised time and expenses submitted were for the common benefit.

3. Kline & Specter thereafter received a letter from the FCC which stated that after an initial review, the FCC disallowed hours submitted by the firms. In doing so, the FCC provided blanket and unspecified reasons for the disallowances.

4. The FCC and the Fee Committee protocol further stated that any comments to be included provided by Kline & Specter in response to these disallowed entries, final expense submissions, and an accompanying affidavit were to be completed and submitted within thirty (30) days of receipt of the FCC's February 16, 2018 letter.

5. On February 27, 2018, Kline & Specter sent a letter to Henry Garrard, Esquire, Chairperson of the FCC. In the letter, Kline & Specter asked if the FCC would voluntarily produce the documents and information related to Requests at issue in this Motion. Kline & Specter asked that the FCC respond within five days as to if they would comply with the Requests. Mr. Garrard declined to respond.

6. On March 6, 2018, Kline & Specter (through its attorneys Bowles Rice LLP) filed a Motion with this Court requesting information related to the FCC's allowance and disallowance of Kline & Specter's submitted hours as being for the common benefit. This Motion was denied by Order of the Court dated March 7, 2018.

7. On May 25, 2018, following the submission of its Affidavit, Kline & Specter served Combined Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the Request for Allocation of Aggregate Common Benefit and Costs Award. These requests were objected to by the FCC and no documents or information were produced.

8. Thereafter, Kline & Specter presented arguments in person before the FCC in support of their Affidavits requesting recognition of the disallowed hours and expenses as for the common benefit, and other relevant factors.

9. On July 12, 2018, Kline & Specter filed a Motion to Compel Production of Documents and Additional Discovery Directed at the Fee and Cost Committee in Connection with the Request for Allocation of Aggregate Common Benefit and Cost Award related to the

3

May 25, 2018 Discovery Requests. This Court denied the Motion, specifically stating that the matter <u>was not yet ripe</u>.

10. Thereafter, Kline & Specter received the FCC's "Transvaginal Mesh MDL Common Benefit Fee and Cost Committee Preliminary Written Recommendation." This letter wrongly proposes to disallow thousands of hours and substantial expenses for the Moving Firms and undervalues a significant portion of the hours that were allowed.

11. Kline & Specter filed their objections to the preliminary recommendations; however, these were limited to a mere 10 pages, and were written without access to the key documents and information relied on by the FCC. Despite these limitations, which need to be remedied, Kline & Specter relied on the available information and objected to the preliminary recommendations, as well as the complete lack of transparency in the allocation process to date, and the disproportionate proposed allocation by the FCC.

12. On September 24, 2018, following the receipt of the FCC's recommendation letter, Kline & Specter, along with several other Moving Firms, served a Combined Third Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") In Connection with the Request for Allocation of Aggregate Common Benefit and Costs Award.

13. These Combined Third Requests and Interrogatories seek information in the possession, custody, or control of the FCC and its members relating to the proposed allocation and distribution of funds among the participating firms in the Pelvic Mesh MDLs as reflected in documents following the FCC's September 13, 2018 Recommendation Letter.

14. On October 24, 2018, the FCC responded to the Combined Third Requests, objecting to each and every request. The FCC said that the requested discovery is barred by res judicata, collateral estoppel, stare decisis and the law of the case. The FCC further said that there is no legal authority that would purport to allow counsel for certain plaintiffs in this MDL proceeding to seek discovery from other plaintiffs' counsel by way of interrogatory or request for production of documents. The Court has not yet ruled on this Motion.

15. On November 26, 2018, Kline & Specter served a Combined Fourth Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") In Connection with the Request for Allocation of Aggregate Common Benefit and Costs Award. *See* Combined Fourth Requests, attached hereto as Exhibit "A".

16. This Fourth Combined Requests relates to the following: 1) the total number of cases settled by TVM manufacturer; 2) the per-case average settlement amount by manufacturer; 3) the total number of cases settled for all Pelvic Mesh Litigations; 4) the per-case average settlement amount of all Pelvic Mesh Litigations; 5) the lodestar amounts for each fee-requesting firm; 6) the claimed and allowed blended hourly rate for each fee-requesting firm; 7) the claimed and allowed hours for each fee-requesting firm; 8) each fee-requesting firms' settlement amounts with respect to each defendant; and 9) the information and documentation regarding the eleven firms no longer objecting to the September 13, 2018 fee allocation recommendation.

17. On December 21, 2018, FCC responded to the Combined Fourth Requests, and once again objected to each and every request. The FCC said that the requested discovery is barred by res judicata, collateral estoppel, stare decisis and the law of the case. The FCC said that terms and scope of any settlements are confidential as between Plaintiffs and Defendants who were parties to such agreements, and the FCC does not have the information sought. Additionally, the FCC claimed that the information sought was confidential.

18. To date, the requested documents and materials have not been produced. Kline & Specter now files this instant Motion to Compel Discovery.

## II.  LEGAL ARGUMENT

The information Requested in Kline & Specter's Combined Fourth Requests for Production of Documents, Things, and Interrogatories (Exhibit "A") served on the FCC is not duplicative of past requests as it seeks new information following the FCC's Final Fee Recommendations. The information sought includes the following: 1) the total number of cases settled by TVM manufacturer; 2) the per-case average settlement amount by manufacturer; 3) the total number of cases settled for all Pelvic Mesh litigations; 4) the per-case average settlement amount of all Pelvic Mesh litigations; 5) the lodestar amounts for each fee-requesting firm; 6) the claimed and allowed blended hourly rate for each fee-requesting firm; 7) the claimed and allowed hours for each fee-requesting firm; 8) each fee-requesting firms' settlement amounts with respect to each defendant; and 9) the information and documentation regarding the eleven firms no longer objecting to the September 13, 2018 fee allocation recommendation. *See* Exhibit "A." Because the information and documents sought are not duplicative of any previous

requests, the requests are not barred by res judicata, collateral estoppel, stare decisis, and/or the law of case doctrine, if those doctrines could potentially apply to ongoing interlocutory discovery requests, which they do not. Keeping the requested information confidential is inappropriate. Doing so does not lend itself to a fair and open process essential to a transparent distribution of funds which in turn avoids future litigation.

Kline & Specter, and other Moving Firms, have repeatedly been denied discovery requests seeking the requested information. The information sought by Kline & Specter directly relates to the blatant discrepancy between the fees and expenses preliminarily awarded to the FCC Member Firms and all other firms involved in this litigation, as this information gap is severely prejudicing Kline & Specter and others from objecting and engaging with the FCC on a level playing field. In this context, it is important to recognize that even to the extent the deliberative process was intended to be confidential, the source documents relied on should not be confidential, and the unbalanced preliminary recommendations require full disclosure.

1. **The information requested regarding settlements is crucial to the fairness and transparency of the fee allocation process and the fairness of the 5% fee assessment.**[1]

The FCC requests 5% of all recoveries totaling $550 million[2], though their results were poor. Kline & Specter's uncontested central factual assertions are that:

---

[1] It should be noted that Kline & Specter had no objection to the holdback order when entered and has no objection to it now. Kline & Specter objects to the proposed 5% common benefit fee. Kline & Specter did not waive that objection by not objecting to the holdback order when it was entered. These are separate orders. A holdback order is exactly that – a reserve anticipating a later determination. The FCC could have asked for the holdback to be awarded of something less or even something more.

[2] The current value of the settlements is roughly $7.25 billion, and the total amount of settlements is expected to reach approximately $11 billion. This would make the total expected amount of the common benefit fund to reach $550 million. The current amount of the fund is approximately $360 million.

7

- settlements average about $40,000 per case while trial verdicts average $9.8 million, even including defense verdicts;
- lead counsel took way too many cases, couldn't discover or try them and were therefore forced to accept inadequate settlements;
- these inadequate settlements shortchanged the injured woman and made it difficult for other attorneys to fairly settle their cases;
- based on these facts, a common benefit fee of 2.5%, which equates to $180 million now and is anticipated to grow to $275 million, is more appropriate.

Nowhere in their initial petitions, recommendations, or pleadings does the FCC reveal the precise number of cases settled or the per case settlement average. Plainly, no intelligent assessment can be made of the results obtained without first knowing the results obtained. The FCC obviously has this information, as they've collected a 5% fee assessment on all settlements.

Kline & Specter's performance demonstrates that leadership's approximate $40,000 per case settlement average is shockingly low. Kline & Specter has settled roughly 1500 cases with a per case settlement average of approximately $75,000. That's about double the overall average. Removing Kline & Specter's AMS settlements, which occurred due to AMS's then perceived precarious financial condition, Kline & Specter's per case average is $120,000, about triple the average. Kline & Specter's current five (5) verdicts total $110,000,000, potentially increasing Kline & Specter's per case average to $155,000, even including the AMS settlements. Excluding the AMS settlements, and including the verdicts, Kline & Specter's per case average rises to $315,000. Surely, the FCC doesn't contend that these results could only have been achieved by Kline & Specter.

8

## 2. Information regarding participating firms' loadstar amounts is needed to determine if an equitable distribution of the Common Benefit Fund has been recommended by the FCC.

Kline & Specter believes that the amounts awarded to non-FCC member firms versus FCC member firms is unbalanced. The FCC has continuously claimed that Kline & Specter was merely a recipient of MDL work and used this work for our trials without creating any common benefit work product. This is untrue. Some of the common benefit work in the Ethicon litigation was good and Kline & Specter has always said so. But stretching all the way back to Kline & Specter's first trial – *Hammons* in 2015 – plaintiffs' counsel called a live Ethicon witness rather than relying exclusively on MDL deposition cuts.[3] Kline & Specter has had to independently review the original document discovery. That's resulted in Kline & Specter's utilization of few MDL deposition cuts and documents utilized the MDL. In the current trial, *Emmet v. Ethicon*, only about 30% of the documents Kline & Specter has utilized at trial were utilized by the MDL in deposition or trial. The other 70% are documents Kline & Specter has freshly accessed, evaluated, selected and introduced at trial. MDL depositions have been pared and sparsely utilized in Kline & Specter's trials. Even inculpatory deposition answers sometimes can't be used, as many objections were sustained due to defects in questioning, making some MDL work product thought to be good but actually unusable.

Regrettably, the FCC inflates their performance and deflates the performance of Kline & Specter. The FCC suggests that no one could do better than they've done but facts show otherwise. In order to further evaluate this proclamation, discovery is essential.

---

[3] Ironically, the FCC proposes to disallow all of Kline & Specter's time in this case.

3. **Information regarding the Coloplast and Covidien settlement amounts in essential for transparency and fairness of the the clients involved in those litigations.**

It is unfair to women who were implanted with Coloplast and Covidien products, where no significant work specific to those products was performed in the MDL, to include Coloplast and Covidien settlements in the Common Benefit Fund. One might hypothesize in a complex MDL where it is not possible to separate claims in various cases, that the work and fee could be appropriately mushed together in a sense of rough justice. But here, it is easy to distinguish the MDLs. And since the 5% proposed fee from Coloplast and Covidien is a small fraction of the total fund, it isn't expensive to the common benefit lawyers to do the right thing and not tax these cases. However, further information is needed and discovery is essential to determine the amounts of settlements.

### III. CONCLUSION

The MDL is coming to a close, as does every MDL. Cases will be returning to their home districts for trial. State court settlements and trials have been occurring all over the country. Dozens of cases have been tried, most very successfully. Law firms who try cases, such as Kline & Specter, have settled cases fairly, because the defendants know that without settlements, they'll have to pay large verdicts.

It is a basic responsibility of an attorney to discover and try their cases if they can't be settled fairly. Inadequate settlements of good cases against solvent defendants isn't supposed to be an option. But a firm with 5000-10,000 cases or more, such as FCC members, could not follow this model unless they hired dozens of additional lawyers and/or associated with other firms. They didn't and settled instead, for cheap, which they don't deny.

Having capitulated for peanuts, leadership now seeks from this Court over half a billion dollars – on top of billions in private fee agreements – in preference to undercompensated and badly injured women.

Under their fee agreements with their clients, the plaintiffs' lawyers in this litigation are likely making over $4 billion, as 40% of ($11 billion times .95) equals $4.18 billion. On top of that, $180 million, growing to $275 million, for a common benefit fee, which is one-half of the requested common benefit fee, is enough. Whatever is awarded, a transparent process must occur regarding the allocation of that money.

For all the reasons described above, Kline & Specter respectfully requests that this Court compel the product of the requested information and documents in its Combined Fourth Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") In Connection with the Request for Allocation of Aggregate Common Benefit and Costs Award.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |

THIS DOCUMENT RELATES TO ALL CASES

## Certificate of Service

I hereby certify that on January 16, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

Lee B. Balefsky, Esquire

13

Respectfully submitted,

**KLINE & SPECTER, PC**

/s/ Shanin Specter

Shanin Specter, Esquire
Lee B. Balefsky, Esquire
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Counsel for Plaintiffs*


**BOWLES RICE, LLP**

By:   /s/ Floyd E. Boone Jr.
Charles M. Love, III (WVSB 2254)
Floyd E. Boone Jr. (WVSB 8784)
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100 (Tel.)
(304) 347-1746 (Fax)
fboone@bowlesrice.com
*Counsel for Kline & Specter, P.C.*