IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| ------------------------------------------------------ | |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| ------------------------------------------------------ | |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| ------------------------------------------------------ | |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| ------------------------------------------------------ | |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| ------------------------------------------------------ | |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| ------------------------------------------------------ | |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL NO. 2511 |
| ------------------------------------------------------ | |

THIS DOCUMENT RELATES TO ALL CASES

## **MOTION FOR APPOINTMENT OF A SPECIAL MASTER**

Pursuant to the Federal Rules of Civil Procedure, Kline & Specter, P.C. ("Kline & Specter") respectfully moves this Court for an Order for Appointment of a Special Master, and in support thereof states as follows:

1

## I.      FACTUAL BACKGROUND

In January 2016, this Court appointed a Fee and Cost Committee ("FCC") to receive

applications for common benefit fees. *See* Pre-Trial Order 211[1], dated January 15, 2016, attached

hereto as Exhibit "A." The Court established guidelines for assessing each applicant's contribution

and stated that the FCC will be guided by governing fee jurisprudence in determining the

reasonableness of the allocation, including the factors enumerated in *Barber v. Kimbrell's*, Inc.,

577 F.2d 216, 226 (4th Cir. 1978). [2]

In June 2017, this Court entered Pre-trial Order # 262 which established the protocol for

review of common benefit time submitted and the process for application for fees and expenses.

In doing so, this Court defined the role of an External Review Specialist/Special Master as a third

party, neutral reviewer of common benefit time as follow:

> The Special Master or other external review specialist, if any, will consider
> any objections to the FCC's final written recommendation. Objections shall
> be made in writing to the Special Master or other external review specialist,
> if any, shall be limited to ten (10) pages, and shall be submitted within
> fourteen (14) days of the objecting Firm's receipt of the FCC's final written
> recommendation.
>
> The Special Master or other external review specialist, if any, shall take into
> consideration the FCC's final written recommendation, and any objections
> thereto, and based thereon, shall issue the Special Master's or other external
> review specialist's, if any, recommended allocation to the Court for its
> consideration.
>
> Upon receipt of the Special Master's or other external review specialist's,
> if any, recommended allocation, the Court will determine the process for

---

[1] This Court entered idenital Pre-trial Orders referenced in this Motion across all 7 Pelvic Mesh MDLs.  In this interest of brevity, this Motion references the Orders entered in the Ethicon, Inc. MDL, 2:12-md-02327.

[2] The *Barber* factors include (1) the time and labor required; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services; (4) the attorney's opportunity costs in pressing the litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) the size of the fee awards in similar cases.
*Id.*

consideration of any objections to the Special Master's or external review specialist's recommended allocation.

*See* PTO #262, at pp. 10-11, attached as Exhibit "B."

On October 4, 2017, the FCC filed a Motion with this Court to appoint retired Circuit Judge Daniel J. Stack "as external review specialist for the purposes of assisting the FCC in its duties of evaluating the time and expenses submitted for consideration in this MDL, and to aid the FCC in any way appropriate in performing the work of the FCC and in furtherance of the directives and mandates of Pretrial Order No. 262." *See* FCC Motion to Appoint the Hon. Daniel J. Stack as External Review Specialist", attached as Exhibit "C." While Judge Stack is called an external review specialist, here this term is used interchangeably with the term "special master" by this Court. Judge Stack's role has oscillated among special master, mediator, arbitrator, and advocate.

As stated in more detail below, Judge Stack has an inherent conflict in the common benefit fee allocation disputes between participating firms and the FCC because he has (1) admittedly participated in the creation of the FCC's allocation recommendations; (2) signed the recommendations; (3) contradictorily says he has no opinion of the reasonableness of the recommendations; and (4) has spent the last several months trying to mediate a deal between the FCC and objecting firms. Thus, he clearly cannot impartially resolve a dispute between the FCC and a non-FCC participating firm. Therefore, the FCC's Final Written Recommendation should be referred to a neutral third party for factual assessment and review, to ensure fair and adequate compensation to the eligible firms.

## II.    ARGUMENT

### A.    Judge Stack's Role Has Not Conformed with the Rules for Special Masters.

The rule governing the use of special masters in federal court is Federal Rule of Civil Procedure 53.   Fed. R. Civ. P. 53.   Fed. R. Civ. P. 53(a)(2) specifically addresses the disqualification of special masters:

> **Rule 53 Masters**:
> (a)(2) Disqualification. A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification.

Federal Rule of Civil Procedure 53(a)(2) provides that Section 455 of the United States Code applies to special masters. *See* Fed. R. Civ. P. 53(a)(2) (stating that special masters are subject to the same statutory rules that govern the disqualification of federal judges).   The United States Code provides that any judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b) enumerates additional circumstances in which a judge "shall also disqualify himself"—for example, if "he has a personal bias or prejudice concerning a party, or **personal knowledge of disputed evidentiary facts concerning the proceeding**;" or has an "interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b) (emphasis added).

Section 455(a) requires disqualification when there is "an appearance of partiality, even though actual partiality has not been shown." *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003). Indeed, "what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). This "appearance" or partiality is judged from the perspective of a "reasonable person," so disqualification is required if a

"reasonable person, knowing all the circumstances" would have questioned the judicial officer's partiality. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860-61 (1988).

Special Masters are subject to several codes of conduct and limits on their authority. Courts have held that special masters must be held to the same standards of disqualification as judges and relied on the American Bar Association Code of Judicial Conduct for United States Judges which was adopted in April 1973 by the Judicial Conference of the United States ("Judicial Code"). *See* Judicial Code, Introduction; *see also, Jenkins v. Sterlacci*, 849 F.2d 627, 630–32 (D.C. Cir. 1988); *see also, United States v. Apple Inc.*, 787 F.3d 131 (2d Cir. 2015) (noting that the "ethical limitations" of the Judicial code applied to monitor appointed pursuant to Rule 53). The Judicial Code directs a judge to "disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Code of Judicial Conduct for United States Judges, Canon 3(C)(1). The "Compliance" portion of the Code states that "[a]nyone, whether or not a lawyer, who is an officer of a judicial system performing judicial functions, including an officer such as a bankruptcy judge, special master, court commissioner, or magistrate, is a judge for the purpose of this Code." *Id.* at 58; *see also Belfiore v. New York Times Co.*, 826 F.2d 177, 185 (2d Cir. 1987) (citing the Code of Judicial Conduct for United States Judges, 69 F.R.D. 273, 286 (1975), for proposition that the Code is applicable to Special Masters).

## B.     District Courts Have the Authority to Appoint and Remove Special Masters.

District courts have the "inherent authority" to manage the appointment of special masters and mediators, *United States v. Apple Inc.*, 992 F. Supp. 2d 263, 281 (S.D.N.Y. 2014), aff'd, 787 F.3d 131 (2d Cir. 2015), and therefore the inherent authority to remove a special master. *Cf. Burnap v. United States*, 252 U.S. 512, 515 (1920) ("The power to remove is, in the absence of statutory provision to the contrary, an incident of the power to appoint.").

The scope of authority of a special master is limited not only by the order of appointment, but also by the power of the court itself. *See Webster Eisenlohr, Inc. v. Kalodner*, 145 F.2d 316, 319 (3d Cir. 1944). That is, a special master's authority is limited to "operat[ing] as an arm of the court," and he "has no wider scope of activity than the court itself. If the court is limited in its judicial duties, . . . the master's function can go no further than to aid in the court's discharge of its duties." *Id.*; *see also Cobell v. Norton*, 334 F.3d 1128, 1142 (D.C. Cir. 2003) (noting that absent express consent by all parties to the contrary, "the district court must confine itself (and its agents) to its accustomed judicial role"). The court must exercise this authority consistent with its duty to ensure the impartiality of the Special Master and the ongoing settlement discussions, and to avoid the appearance of impropriety.

## C.      Judge Stack Does Not Have the Appearance or Reality of Impartiality.

Judge Stack has well surpassed the threshold of creating an appearance of partiality.  Judge Stack has performed a substantive role in this litigation.  Judge Stack signed the Preliminary Recommendations by the FCC.  This obviously means he agreed with them.  Thus, he's taken a position on the appropriate compensation for all firms.  Since then, he's been in the contradictory position of trying to settle objections, which requires reallocating money among firms, thus undercutting his recommendations.  Soon, Judge Stack is to make final recommendations to this Court which again will be at odds with his prior recommendations.  He's been advisor, adjudicator, meditator, and advocate.  These roles are inconsistent.   Perhaps that's why Judge Stack freely admits he "probably should not have" signed the Preliminary Recommendations.  *See* Affidavit of Lee B. Balefsky regarding a January 3, 2019 phone conversation between Judge Stack and Kline & Specter attorneys Shanin Specter and Lee B. Balefsky, attached as Exhibit "D"; *see also,* FCC Preliminary Recommendations, attached hereto as Exhibit "E."  Judge Stack sat in on the FCC

6

meetings regarding these recommendations. While he stated that he has "no opinion on the appropriateness of the fees," he gave his input and participated in the committee deliberations. *See* Exhibit "D." Judge Stack admits that he "didn't feel comfortable signing" the preliminary recommendations. *Id.* He's right. But that can't be undone.

Judge Stack's "**personal knowledge of disputed evidentiary facts concerning the proceeding**" also requires that this Court appoint a new special master. *See* 28 U.S.C. § 455(b). By participating in the FCC recommendation deliberations, Judge Stack, ex parte, gained personal knowledge of facts and opinions of FCC members regarding non-FCC member firms common benefit contributions and work product. His actions, and the actions of the FCC, regarding his involvement have tainted the process and are at odds with his assigned role. Kline & Specter (as well as other non-FCC participating firms) are objecting to the recommendations of the FCC. Because there is a conflict between non-FCC member firms and FCC member firms, Judge Stack's official role with the FCC and personal knowledge of the proceedings are grounds for disqualification.

A fair tribunal is a basic requirement of due process. Fairness requires an absence of bias. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). "[T]he inquiry must be not only whether there was actual bias on [the judge's] part, but also whether there was 'such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964). For these reasons as well, a new special master is required.

## III. CONCLUSION

For the reasons stated above, Kline & Specter requests that the Court appoint a new special master to make findings of fact regarding any final fee recommendations.[3]

Dated: February 14, 2019                              Respectfully submitted,

KLINE & SPECTER, PC

Shanin Specter, Esquire
Lee B. Balefsky, Esquire
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Counsel for Plaintiffs*

BOWLES RICE, LLP

By:    /s/ Floyd E. Boone Jr.
Charles M. Love, III (WVSB 2254)
Floyd E. Boone Jr. (WVSB 8784)
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100 (Tel.)
(304) 347-1746 (Fax)
fboone@bowlesrice.com
*Counsel for Kline & Specter, P.C.*

---

[3] Kline & Specter has no objection to Judge Stack retaining his mediative role.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL NO. 2511 |

THIS DOCUMENT RELATES TO ALL CASES

## CERTIFICATE OF SERVICE

I, Lee B. Balefsky, certify that on February 14, 2019, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to CM/ECF participants registered to receive service in this MDL.

Lee B. Balefsky, Esq.