IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2440 |
| IN RE: NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL No. 2511 |

*THIS DOCUMENT RELATES TO ALL CASES*

**COMMON BENEFIT FEE AND COST COMMITTEE'S
RESPONSE IN OPPOSITION TO MOTION FOR APPOINTMENT
OF A SPECIAL MASTER BY KLINE & SPECTER, P.C.**

1

**BACKGROUND**

Kline & Specter, P.C. ("K&S") spent more time and effort in this MDL attacking and attempting to thwart the common benefit allocation process than it ever did working in the MDL for the common benefit of the MDL plaintiffs.[1]  K&S thus continues to ignore the admonition of the U.S. Supreme Court and many others by single-handedly perpetuating a second litigation over its request for common benefit fees.[2]  Having done little or nothing in this MDL to advance the interests of all MDL plaintiffs, the entirety of K&S's efforts before this Court have instead been devoted to undermining the common benefit process in an effort to extract more money from the Common Benefit Fee and Cost Committee ("FCC").

K&S served a number of ill-founded discovery requests followed by motions to compel, each of which has been denied by the Court.  K&S filed a misguided objection to the FCC's Petition for an Award of Common Benefit Attorney's Fees and Expenses and appears to have enlisted one of its co-counsel firms to file a largely duplicative objection, albeit months beyond the filing deadline.  This is not to mention K&S's prior Fourth Circuit mandamus action against this Court and its attempt to avoid the common benefit assessment on certain of its cases.

While captioned as a Motion to appoint a Special Master, the entirety of the motion is aimed at disparaging the Hon. Daniel Stack, Ret. (hereinafter "Stack"), the External Review Specialist appointed by the Court to assist the FCC in its duties under the FCC Protocol, to meet with applicant firms and address objections to the FCC's recommendation, and to make his own

---

[1] Nearly the entirety of K&S's work submitted for consideration as common benefit was performed in or for the Philadelphia state court venue in its own individual cases and was founded largely upon the work product of others, including those performing common benefit work in the MDL.

[2] *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."); *Id.* at 442 (Brennan, J., concurring in part, dissenting in part) (attorneys' fee disputes are "one of the least socially productive types of litigation imaginable.").

2

written recommendation to the Court. As have its prior efforts, K&S's latest salvo in its on-going effort to increase its own common benefit allocation by attacking those involved in the process is baseless and should be rejected.

## ARGUMENT AND CITATION OF AUTHORITY

**K&S's "Motion for Appointment of a Special Master" seeking to disqualify the Court-appointed External Review Specialist is merely the latest in a series of unfounded efforts to attack the common benefit allocation process and those involved in a transparent and self-serving attempt to extract more common benefit money for itself.**

No different than its multiple groundless motions to compel discovery and its ill-founded objection to the FCC's Petition for an Award of Common Benefit Fees and Expenses, this Motion has but one purpose: to further K&S's quest to extract an additional award of attorney's fees from the allocation of common benefit funds. Apparently, in K&S's view, if K&S does not get what it wants then the process must necessarily be unfair, and the individuals involved in the process must be somehow biased or partial. K&S has been treated the same pursuant to the same protocol and process as every one of the other 93 applicant firms seeking compensation for work allegedly performed for the common benefit. The "unfairness" in K&S's view is simply that K&S did not get as much money in the FCC's recommended allocation as it believes it should have. K&S's self-interest is not a valid ground for disqualification. In the context of a motion to disqualify counsel, the Fifth Circuit admonished that courts should not allow such motions "to be manipulated for strategic advantage on the account of an impropriety which exists only in the minds of imaginative lawyers." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 819 (5th Cir. 1976). This motion embodies just that sort of strategic manipulation by alleging some impropriety on the part of the Court-appointed External Review Specialist which just does not exist.

Stack was not appointed as a "Master" pursuant to Fed. R. Civ. P. 53.[3] Notwithstanding, Stack has no relationship to any party or attorney that would require disqualification of a judge pursuant to 28 U.S.C. § 455. K&S's primary challenge alleges that Stack is not "impartial" because he signed the FCC's Preliminary Recommendation. However, as he explained *in person* to K&S, Stack did not participate in the FCC's recommended allocation. *See*, Declaration of Stack ¶ 15, attached hereto as **Exhibit 1**. K&S's statement in its Motion that "Stack "admittedly participated in the creation of the FCC's allocation recommendations" is knowingly false.[4] Upon his appointment as External Review Specialist, Stack attended nearly all of the FCC meetings and offered his assistance based upon his prior experience with the allocation of common benefit awards in mass litigation. *Id.* at ¶ 3, 4, 5.[5] Stack observed and provided assistance in the process of the evaluation of time and expense submissions by the FCC. *Id.* at ¶ 6. Stack did not participate in the FCC's decision to approve or deny certain hours of time, nor did Stack participate in the FCC's decision to find certain out-of-pocket expenses reimbursable. *Id.* at ¶ 7. Stack did not have or exercise a vote regarding the FCC's recommended allocations. *Id.* at ¶ 8. Rather, Stack was present and heard the evaluation by the FCC of each firm seeking compensation. *Id.* at ¶ 9. When the FCC met to make specific monetary allocations for each firm seeking compensation, Stack merely observed the activities of the FCC. *Id.* at ¶ 10. Stack signed not only the Preliminary

---

[3] Stack was not appointed as a Special Master under Fed. R. Civ. P. 53 thus any reliance by K&S upon case law based thereon is misplaced.

[4] Instructively, the Affidavit filed in support of the K&S Motion does not claim that Stack "participated in the creation of the FCC's allocation recommendations." Instead, the Affidavit states that Stack allegedly told the Affiant that he "sat in on the FCC meetings regarding the recommendations." (Balefsky Affid., ¶ 4.a.). It is non-sensical to demand Stack comply with the Court's charge for him without participating in the process.

[5] Appointed by Court Order entered October 13, 2017: Bard MDL 2187 Doc. No. 4663, AMS MDL 2325 Doc. No 5112, BSC MDL 2326 Doc No. 4422, Ethicon MDL 2327 Doc. No. 4783, Cook MDL 2440 Doc. No. 592, Coloplast MDL 2387 Doc. No. 1572, Neomedic MDL 2511 Doc. No. 177.

Written Recommendation, but also letters that were directed to each of the applicant firms – the letter identifying the FCC's initial review and the letter identifying the FCC's response to materials submitted by firms after the initial review. *Id.* at ¶ 11. However, Stack's signing of these documents does not indicate his endorsement of the FCC's findings or conclusions, but rather attests to the FCC's compliance with the Court's Protocol. *Id.* at ¶ 12-13. As indicated in the Protocol, Stack attested to the FCC's compliance with the Court's instructions because that was "in furtherance of the directives and mandates of [the Protocol]." *Id.* at ¶ 14.

In meeting and communicating with K&S to attempt to resolve their objection to the FCC's Final Written Recommendation, Stack told K&S that he had no role in the decision of the FCC regarding the amount of funds allocated to each applicant firm. *Id.* at ¶ 15. K&S did not accept Stack's explanation that he had no involvement in the decision regarding the amount allocated to each firm because he had signed the FCC's Preliminary Written Recommendation. *Id.* at ¶ 16. Stack responded that, in retrospect, it would have been easier had he not signed the FCC's Preliminary Written Recommendation without explanation of his role in the FCC's process because then no explanation of his role would be necessary. *Id.* at ¶ 17. However, as he made clear to K&S during their meeting, Stack's only involvement was in observing the process of the FCC. *Id.* at ¶ 15.

K&S's complaint that Stack "sat in on the FCC meetings regarding the [FCC's] recommendations" and "gave his input and participated in the committee deliberations" ignores the role to which Stack was appointed by the Court. Stack was expressly directed by the Court in the Appointment Order to "assist[] the FCC in its duties of evaluating the time and expenses submitted for consideration in this MDL, and to aid the FCC in any way appropriate in performing the work of the FCC and in furtherance of the directives and mandates" of the FCC Protocol.

5

Likewise, K&S's complaint that Stack "has spent the last several months trying to mediate a deal between the FCC and objecting firms" disregards that Stack was directed by the Appointment Order to "exercise the duties set forth in [the Protocol], including meeting with firms submitting requests for fees or expenses to the FCC, attempting to resolve objections, if any, and submitting to this Court a written recommendation as to a fair allocation of the Common Benefit Fund." In other words, K&S is attacking Stack for performing the job that he was assigned by this Court to do.[6]

K&S's allegation that Stack lacks impartiality because he has "personal knowledge of disputed evidentiary facts concerning the proceeding" is frivolous. Stack has necessarily spent considerable time since his appointment becoming familiar with the facts relevant to the common benefit allocation process in order to be able to perform his duties assigned by the Court (assisting the FCC in reviewing time and expenses and under the Protocol, attempting to resolve objections to the FCC's recommendation, and making his own recommendation). Indeed, as K&S is fully aware, part of that process has involved Stack's meetings and communications with K&S and other objectors to hear and consider the grounds and bases for their objections (for example, K&S appeared before the FCC on June 12, 2018 to address the FCC's analysis and consideration of its time and expense submissions, and Stack attended K&S's presentation along with the FCC).

---

[6] Not only is this criticism factually and legally invalid, it is also untimely: Stack was assigned by the Court to assist and aid the FCC in performing its work under the FCC Protocol more than 16 months before this motion was filed. If K&S believed that performing any of the specific tasks assigned by the Court somehow created a conflict, it certainly should not have waited 16 months to raise such an issue. *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 448 (2nd Cir. 2005) ("[R]ecusal motions must be brought " 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' "… Judge Covello referred Omega Engineering's motion to enforce the Settlement Agreement to the magistrate judge on July 15, 2003, but OSA waited until the middle of the evidentiary hearing on February 18, 2004—seven months later—to move for recusal. This delay was excessive. *See, e.g., United States v. Durrani,* 835 F.2d 410, 427 (2d Cir.1987) (finding a delay of four months untimely); *Apple,* 829 F.2d at 334 (finding a delay of two months untimely).").

However, facts learned by Stack during the course of performing his court-appointed duties is not "personal knowledge." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1255-56 (7th Cir.1993) ("'Personal' knowledge of evidentiary facts means 'extrajudicial.' [*United States v. Balistrieri,*779 F.2d 1191, 1202 (7th Cir.1985), *cert. denied sub nom. DiSalvo v. United States,* 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986)]. Facts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification. *United States v. Patrick,* 542 F.2d 381, 390 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977)."); *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 447-48 (2nd Cir. 2005) ("Knowledge gained from the judge's discharge of his judicial function is not a ground for disqualification under 28 U.S.C. § 455(b)(1). *Katsaros v. Cody,* 744 F.2d 270, 283 (2d Cir.1984). Here, the magistrate judge's knowledge of the Settlement Agreement arose solely from his judicial duty to oversee the settlement conference. He was not involved in the actual negotiations, but simply observed them and provided facilities to support the settlement. Since his knowledge was not extrajudicial, it was not an abuse of his discretion to decline to recuse himself.").

Finally, K&S's Motion fails on the ground that Stack is not making any decision that purports to be binding in any way on any applicant firm or the Court. As the FCC Protocol makes plain, and in accordance with applicable legal authority, any decision regarding the allocation of common benefit fees and expenses will ultimately be made by the Court – and by the Court alone.[7]

---

[7] Indeed, as the letter to K&S that serves as the primary basis for its challenge to Stack asserted here plainly states: "The amounts discussed herein are the FCC's preliminary recommendation and are subject to change prior to the submission of the FCC's final written recommendation to the external review specialist, The Honorable Dan Stack. **Please note that all amounts are proposed and are subject to the consideration and final decision of the MDL Court**." (Emphasis added).

The Court has requested and will receive the recommendations of both the FCC and of Stack, along with any objections to those recommendations. The Court does not owe deference to the FCC or to Stack and will make its own independent decision regarding allocation upon consideration of all of the facts and information and the Court's own intimate knowledge of and familiarity with this litigation – as well as any objections filed to Stack's recommendations. Any perceived or alleged lack of impartiality on the part of Stack can be argued to the Court when Stack makes his recommendation, and it will be considered by the Court. K&S's self-interested perception, however, is not a proper ground for disqualification.

## CONCLUSION

K&S's Motion for Appointment of a Special Master, which seeks to disqualify the Court-appointed External Review Specialist for doing nothing more than what he was appointed by the Court to do, is groundless and should be denied. K&S's attack on those appointed by the Court to facilitate the common benefit allocation process disregards that the Court will ultimately decide the allocation of common benefit attorneys' fees and expenses. The Court is not bound by any recommendation and will undoubtedly give due consideration to any objection. This latest attempt by K&S to delay and frustrate the common benefit allocation process and criticize those involved to extract more money for itself fares no better than its prior efforts.

This 25th day of February, 2019.

        Respectfully submitted,

        THE COMMON BENEFIT FEE AND COST
        COMMITTEE

        By: ***/s/ Henry G. Garrard, III***
              Henry G. Garrard, III
              hgarrard@bbga.com
              Chairman of the Fee &
              Compensation Committee

BLASINGAME, BURCH, GARRARD & ASHLEY
P.O. Box 832
Athens, GA 30603
706-354-4000

/s/ Renee Baggett
Renee Baggett
RBaggett@awkolaw.com

AYLSTOCK, WITKIN, KREIS & OVERHOLTZ
17 East Main Street, Suite 200
Pensacola, FL 32502
850-202-1010

/s/ Riley L. Burnett, Jr.
Riley L. Burnett, Jr.
rburnett@rburnettlaw.com

BURNETT LAW FIRM
3737 Buffalo Speedway, Suite 1850
Houston, TX 77098
832-413-4410

/s/ Thomas P. Cartmell
Thomas P. Cartmell
tcartmell@wcllp.com

WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100

/s/ Clayton A. Clark
Clayton A. Clark
CClark@triallawfirm.com

CLARK, LOVE & HUTSON, G.P.
440 Louisiana Street, Suite 1600
Houston, TX 77002
713-757-1400

/s/ Yvonne M. Flaherty
Yvonne M. Flaherty
ymflaherty@locklaw.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S., Suite 2200
Minneapolis MN 55401
612-339-6900

/s/ Carl N. Frankovitch
Carl N. Frankovitch
carl@facslaw.com

FRANKOVITCH, ANETAKIS, SIMON,
DECAPIO & PEARL, LLP
337 Penco Road
Weirton, WV 26062
304-723-4400

                        ***/s/ Joseph F. Rice***
                        Joseph F. Rice
                        jrice@motleyrice.com

MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
843-216-9000

                        ***/s/ William H. McKee, Jr***
                        William H. McKee, Jr
                        bmckee@suddenlink.net

3041 Knotty Pine Dr.
Pensacola, FL 32505
304-546-2347

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2019, I electronically filed the **COMMON BENEFIT FEE AND COST COMMITTEE'S RESPONSE IN OPPOSITION TO MOTION FOR APPOINTMENT OF A SPECIAL MASTER BY KLINE & SPECTER, P.C.** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

By: ***/s/ Henry G. Garrard, III***
Henry G. Garrard, III
hgarrard@bbga.com
Chairman of the Fee &
Compensation Committee

BLASINGAME, BURCH, GARRARD & ASHLEY
P.O. Box 832
Athens, GA 30603
706-354-4000