# EXHIBIT P

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2187 |
| IN RE: AMERICAN MED. SYS., INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO.2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2387 |
| THIS DOCUMENT RELATES TO ALL CASES | |

### KLINE & SPECTER P.C.'S MOTION FOR DISCOVERY RELATING TO THE FEE AND COST COMMITTEE'S INITIAL REVIEW OF COMMON BENEFIT FUND FEE SUBMISSIONS AND AN EXTENSION OF TIME TO RESPOND TO THE FEE AND COST COMMITTEE'S REVIEW OF KLINE & SPECTER P.C.'S COMMON BENEFIT FEE SUBMISSION

Kline & Specter P.C. ("Kline & Specter"), by and through its counsel, Charles M. Love, III and Floyd E. Boone Jr., respectfully move for an order:

1. Directing the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee (hereinafter "Fee and Cost Committee" or "FCC") to provide specific, written reasons with respect to each instance in which the FCC disallowed common benefit work performed by Kline & Specter within 10 days.

1

2. Granting Kline & Specter an additional 30 days from the date of production of the documents and information sought herein to submit a response and supporting affidavit in accordance with the Fee Benefit Protocol.

3. Directing the FCC to produce all documents relating to:

   a. The common benefit fund fees and expenses requested by each firm;

   b. The FCC's response to each firm's fee and expense request;

   c. The amount of money received pursuant to the five percent assessments, along with a per firm itemization of these payments;

   d. Any fee sharing agreements between or among the members of the FCC;

   e. Communications among FCC members and all documents relating to the FCC's consideration of the fee and expense requests; and

   f. Communications between the FCC and all firms requesting common benefit fees and expenses.

### I.      BACKGROUND

The following facts are pertinent to the relief requested by this Motion:

1. The Court's Pretrial Order governing the "Fee Committee Protocol" establishes the processes for applying for common benefit fees and expenses and the review of such applications with respect to Pelvic Mesh MDL Nos. 2187, 2325, 2326, 2387, 2440, and 2511. *See, e.g.,* PTO Nos. 262, 244, 257, 133, and 166.

2. In accordance with the Fee Committee Protocol and the parameters established by the FCC, Kline & Specter regularly submitted its Common Benefit fee hours from the beginning of this litigation through December 31, 2016.

3. As required by the Fee Committee Protocol, on September 26, 2017, Lee B. Balefsky, Esquire, a senior partner at Kline & Specter and a member of the Plaintiffs' MDL Steering Committee, provided the FCC with Kline & Specter's total revised time and a

2

supporting affidavit.  Kline & Specter's submission stated that the firm had audited the time and expenses being submitted and that the time and expenses submitted were for the common benefit.  Time submitted by Kline & Specter totaled 32,270.19 hours.  *See* September 26, 2017 Affidavit of Lee B. Balefsky, attached as Exhibit "A."

4.      On February 16, 2018, Kline & Specter received a letter from the FCC.  *See* February 16, 2018 FCC Letter, attached as Exhibit "B."  The FCC letter stated that after an initial review, the FCC had reduced the number of hours submitted by 16,090.70.  The FCC asserted that these hours were not for the common benefit of the plaintiffs and claimants.  The only grounds for the disallowance were the following general, blanket, and unspecified reasons:

1. Clerical time

2. Work for the benefit of an individual case and not for the common benefit of the MDLs

3. Time outside the compensable time period as provided to you with this letter

4. Time that was not approved by leadership

5. Observing trials and depositions without meaningful participation.

*Id*. at 2.

5.      The FCC also said that an additional 10,976.54 hours should be disallowed for the following blanket and unspecific reasons:

1. Your firm had instances of multiple time keepers billing for the same activity on the same day;

2. Your firm had instances of time being billed in excess of fifteen (15) hours in a single day; and

3. Your firm failed to adequately code or provide sufficient detail to determine whether the time entry was compensable.

*Id*.

3

6.      Collectively, these reductions would disallow approximately 85% of the hours submitted by Kline & Specter.

7.      The FCC's letter of February 16, 2018 attached two spreadsheets identifying the 5,488 entries that the FCC proposed to disallow from Kline & Specter's submission.

8.      The only explanations for the FCC's proposed disallowances are the blanket and generic reasons identified above.  Moreover, the spreadsheets identified above included a column entitled "Comments from Requesting Firm."  The FCC directed Kline & Specter to insert the reasons why the disallowed entries were for the common benefit under the new "Comments from Requesting Firm" column.  *See* Exhibit B at 2.  The FCC's blanket and generic explanations for the disallowances, however, make it impossible for Kline & Specter to provide a specific response to each disallowance.

9.      The FCC and the Fee Committee Protocol require that Kline & Specter's response to the FCC's disallowances be submitted within 30 days of its receipt of the FCC's letter of February 16, 2018.  *See* Exhibit B.  Thus, Kline & Specter would be required to respond to 5,488 disallowed entries, provide final expense submissions, and submit a supporting affidavit within less than two weeks.

10.     On February 27, 2018, Kline & Specter sent a letter to Henry Garrard, Esquire, Chairperson of the FCC.  *See* February 27, 2018 Letter to Henry Garrard, attached hereto as Exhibit "C."  In the letter, Kline & Specter asked the FCC to voluntarily produce the documents requested above.

11.     Although Mr. Garrard failed to respond, a response was received from Daniel J. Stack, External Review Specialist to the FCC.  *See* March 5, 2018 Letter to Lee B. Balefsky, attached hereto as Exhibit "D."  Mr. Stack, speaking for the FCC, refused to provide the

4

documents and information requested by Kline & Specter. Moreover, Mr. Stack's letter attacked Kline & Specter and questioned the firm's motives for seeking basic information that would allow it to justify why Kline & Specter should be fully compensated for all of the hours it has submitted to the FCC. *See id.* ("Your letter further insinuates that there are side agreements amongst members of the FCC and can be read as an effort to intimidate the FCC. Such allegations and attempts are false and intolerable. There are neither agreements nor side agreements among the members of the FCC."). On the other hand, Mr. Stack, speaking for the FCC, agreed to provide Kline & Specter with an extension of time to provide its response to the FCC's letter of February 16, 2018.

## II.    ARGUMENT

Kline & Specter has submitted 32,094.70 hours of common benefit time to the Pelvic Mesh MDL Common Benefit Funds. Since the establishment of the Pelvic Mesh MDLs, lawyers and paralegals employed by Kline & Specter have taken innumerable actions that have provided common benefits and materially advanced the interests of every plaintiff and claimant in the Pelvic Mesh MDLs. Indeed, Kline & Specter tried six pelvic mesh cases to jury verdicts. In five of those cases, the plaintiffs prevailed. Collectively, juries awarded Kline & Specter's clients $110 million in damages.

Kline & Specter's contributions were expressly and adequately described in the submissions it made to the FCC. Nevertheless, the FCC proposes to disallow approximately 85 percent of Kline & Specter's common benefit time and refuses to provide Kline & Specter with the information that would allow it to justify the adequacy and reasonableness of its submitted time. Kline & Specter reiterates the accuracy and appropriateness of the expenses and time

5

submitted to the FCC and asks this Court to order the FCC to provide Kline & Specter with the information it needs to demonstrate the accuracy and appropriateness of its submissions.

The relief Kline & Specter seeks is also necessary to ensure that the FCC functions in accordance with the most "basic judicial standards of transparency and fairness." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008) ("*High Sulfur*"). Relatedly, access to the information Kline & Specter seeks is also necessary, ultimately, to enable this Court to fulfill its responsibilities. *See id.* ("But the appointment of a committee does not relieve a district court of its responsibility to closely scrutinize the attorneys' fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards."). Indeed, the information being sought by this Motion is indispensable to this Court's ultimate duty to ensure that fee allocations are appropriate. *See id.* at 229 ("the court questioned members of the Fee Committee about the allocation and order. No sworn testimony was taken, no depositions were offered, and no affidavits were filed attesting to the accuracy or fairness of the proposed fee allocation. Further, because the hearing was ex parte, other plaintiffs' attorneys, including Appellants, were not present to confirm or challenge the Fee Committee's statements about their contributions to the case.").

In addition, the relief sought by this Motion, including making the discovery sought available to every firm that has submitted fee applications, is in the public interest. Various plaintiffs' lawyers have an interest in discussing the FCC's fee allocations among themselves and with their clients. *See High Sulfur*, 517 F.3d at 229 ("These actions not only kept the public in the dark about each plaintiffs' attorneys' award but also prevented counsel from communicating with each other and with their own clients on the subject. The lack of transparency about the individual fee awards supports a perception that many of these attorneys

6

were more interested in accommodating themselves than the people they represent."). Making

the discovery sought through this Motion available to every plaintiffs' lawyer involved in this

process is also in the broader public interest. As noted by the Fifth Circuit in *High Sulfur*:

> On a broad public level, fee disputes, like other litigation with millions at stake, ought to be litigated openly. Attorneys' fees, after all, are not state secrets that will jeopardize national security if they are released to the public. As the Third Circuit has noted, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *United States v. Cianfrani,* 573 F.2d 835, 851 (3d Cir. 1978). From the perspective of class welfare, publicizing the process leading to attorneys' fee allocation may discourage favoritism and unsavory dealings among attorneys even as it enables the court better to conduct oversight of the fees. If the attorneys are inclined to squabble over the generous fee award, they are well positioned to comment—publicly—on each other's relative contribution to the litigation.

*Id.* at 230 (brackets in original).

Finally, the members of the FCC are effectively fiduciaries for every plaintiffs'

law firm that has submitted fee applications. Moreover, the members of the FCC are considering

fee applications they or members of their firms have submitted to the FCC. Kline & Specter, and

every other law firm submitting fee applications that is not represented on the FCC, should be

able to compare the FCC's treatment of their fee applications with the FCC's treatment of its

own fee applications. Requiring the FCC to reveal its treatment of every fee application

submitted to it, including those submitted by the members of the FCC, is vital to upholding the

"basic judicial standards of transparency and fairness." *High Sulfur*, 517 F.3d at 227. Allowing

the FCC to make its fee determinations in absolute secrecy is antithetical to the most "basic

judicial standards of transparency and fairness" and is not in the public interest.

In sum, this Court should grant the relief requested by this Motion to enable Kline & Specter to protect its interests and those of similarly situated plaintiffs' firms, to allow this Court to review the various fee allocations at the appropriate time, and to further the public interest in transparency and fairness.

### A. The Court Should Require the FCC to Provide Specific Reasons for Time Entry Rejections.

There are 5,488 entries that the FCC proposed to disallow from Kline & Specter's submission. The FCC has only provided blanket, non-specific disallowances of the firm's time, making a specific response to each fee entry impossible. This is fundamentally unfair. It is a basic and fundamental tenet of justice that a party receive adequate notice of the nature of a claim or defense. The FCC's lack of specificity prevents Kline & Specter from meaningfully protecting its interests. To provide such general and blanket disallowances of thousands of entries turns this endeavor into little more than a guessing game. Without specifically stating why an entry was disallowed, a precise review of the thousands of entries deemed unqualified by the FCC is impossible. Thus, this Court should require the FCC to identify the specific reasons for each of the proposed disallowed entries so that Kline & Specter can respond in an informed, appropriate, and meaningful manner.

### B. The Court Should Allow Additional Time to Respond to the FCC.

Kline & Specter requests that this Court extend the time limit for responsive filing and the affidavit that will accompany it until 30 days after the above documents are produced.

### C. The Court Should Allow Written Discovery on the Matter of Common Benefit Fee Distribution.

Finally, to allow for a fair and transparent process, Kline & Specter requests that this Court grant the following discovery on the matter of Common Fee Benefit Distribution:

1) Production of each fee and expense request of each firm;

2) The FCC's response to each request;

3) Disclosure of the amount of money received pursuant to the 5% assessments along with a per firm itemization of these payments;

4) All documents and emails relating to any fee sharing agreements between or among the members of the FCC;

5) All communications among FCC members and all documents relating to FCC consideration of the fee and expense reports;

6) All communications between the FCC and fee requesting firms.

At this juncture in the litigation, discovery is critical. The drastic number of hours disallowed by the FCC warrants further inquiry. Only further discovery will reveal the legitimate explanation for what has transpired. The process for determination of appropriate common benefit compensation is a sensitive issue fraught with the potential for abuse, especially because the FCC members are recipients of FCC awards. *See, e.g.,* Charles L. Becker, Shanin Specter, & Thomas R. Kline, *How Not to Manage a Common Benefit Fund: Allocating Attorney's Fees in Vioxx Litigation*, 9 Drex. L. Rev. 1 (Fall 2016).

### III. CONCLUSION

Wherefore, for the reasons stated above, Kline & Specter P.C., respectfully moves this Court to enter the attached Order directing the production of requested documents, extending

9

the time for Kline & Specter to respond to the FCC's letter of February 16, 2018, and granting

discovery in connection with the FCC's initial review of Kline & Specter's Fee Submission.


Dated:  March 6, 2018                                        Respectfully submitted,

                                                            /s/ Charles M. Love, III
                                                            Charles M. Love, III (WVSB 2254)
                                                            Floyd E. Boone Jr. (WVSB 8784)
                                                            BOWLES RICE LLP
                                                            600 Quarrier Street
                                                            Charleston, WV  25301
                                                            (304) 347-1100
                                                            (304) 347-1746 (fax)
                                                            fboone@bowlesrice.com
                                                            *Counsel for Kline & Specter P.C.*

9877871.2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2187 |
| IN RE: AMERICAN MED. SYS., INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO.2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PROD. LIAB. LITIG. | MDL. NO. 2387 |
| THIS DOCUMENT RELATES TO ALL CASES | |

### Certificate of Service

I hereby certify that on March 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

/s/ Charles M. Love, III
Charles M. Love, III (WVSB 2254)
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia 25301
(304) 347-1100

11

9877871.2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| ------------------------------------------------------- | |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| ------------------------------------------------------- | |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| ------------------------------------------------------- | |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| ------------------------------------------------------- | |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| ------------------------------------------------------- | |
| THIS DOCUMENT RELATES TO ALL CASES | |

## **ORDER**

AND NOW, this _____ day of _____, 2018, upon consideration of the

Motion of Kline & Specter, P.C. and any response thereto, it is hereby ORDERED and DECREED

that Kline & Specter's Motion to Compel Discovery has been GRANTED and, Defendants are to

produce the documents, things, and answers requested by Kline & Specter in its Requests for

Production of Documents, Things, and Interrogatories.

BY THE COURT:

_____

Joseph R. Goodwin, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC<br>REPAIR SYSTEM PRODUCTS LIABILITY<br>LITIGATION<br>--------------------------------------------------------- | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC<br>REPAIR SYSTEM PRODUCTS LIABILITY<br>LITIGATION<br>--------------------------------------------------------- | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC<br>REPAIR SYSTEM PRODUCTS LIABILITY<br>LITIGATION<br>--------------------------------------------------------- | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC<br>REPAIR SYSTEM PRODUCTS LIABILITY<br>LITIGATION<br>--------------------------------------------------------- | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC<br>REPAIR SYSTEM PRODUCTS LIABILITY<br>LITIGATION<br>--------------------------------------------------------- | MDL NO. 2387 |
| THIS DOCUMENT RELATES TO ALL CASES | |

## MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ADDITIONAL DISCOVERY DIRECTED AT THE FEE AND COST COMMITTEE IN CONNECTION WITH THE REQUEST FOR ALLOCATION OF AGGREGATE COMMON BENEFIT AND COST AWARD

Pursuant to the Federal Rules of Civil Procedure, Kline & Specter, P.C. ("Kline & Specter"), through its attorneys Bowles Rice LLP, respectfully moves this Court for an Order compelling the Production of Documents, Things, and Answers to Interrogatories served on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the Request for Allocation of Aggregate Common Benefit and Costs Award, and in support thereof states as follows:

1

## I.   FACTUAL BACKGROUND

1.  In accordance with the Pretrial Orders of this Court, the Fee Committee Protocol, and the parameters further established by the FCC, Kline & Specter regularly submitted its Common Benefit Fee hours beginning with the onset of this litigation through December 31, 2016.

2.  As required by the Fee Committee Protocol, on September 26, 2017, Lee B. Balefsky, Esquire, a senior partner at Kline & Specter and member of the Plaintiffs' Steering Committee, provided the FCC with the firm's total revised time and an accompanying affidavit stating that the firm has audited the time and expenses and that the revised time and expenses submitted were for the common benefit. Time submitted by Kline & Specter totaled 32,270.19 hours.

3.  On February 16, 2018, Kline & Specter received a letter from the FCC which stated that after an initial review, the FCC reduced the number of hours submitted by Kline & Specter by 27,067.24.  In doing so, the FCC provided blanket and unspecified reasons for the disallowances.

4.  Attached to the February 16, 2018 letter from the FCC, were two spreadsheets containing 5,488 entries that the FCC proposed to disallow from Kline & Specter's submission.

5.  The FCC and the Fee Committee protocol further required that any comments to be included in the spreadsheets (including a comment for all 5488 disallowed entries), final expense submissions, and an accompanying affidavit were to be completed and submitted within thirty (30) days of receipt of the FCC's February 16, 2018 letter.

6.  On February 27, 2018, Kline & Specter sent a letter to Henry Garrard, Esquire, Chairperson of the FCC.  *See* February 27, 2018 Letter to Henry Garrard, attached hereto as Exhibit

"A." In the letter, Kline & Specter asked if the FCC would voluntarily produce the documents and information at issue in this Motion. Mr. Garrard declined to do so.

7. On March 6, 2018, Kline & Specter (through its attorneys Bowels Rice LLP) filed a Motion with this Court requesting information related to the FCC's distribution of funds as had been awarded at that present time. *See* Kline & Specter Motion for Discovery, attached as Exhibit "B." This Motion was denied by Order of the Court dated March 7, 2018.

8. Following the submission of Kline & Specter's Affidavit on February 9, 2018 requesting reconsideration of submitted time, the FCC approved an additional 4199.24 hours as being for the common benefit of all Plaintiffs.

9. On May 25, 2018, following the submission of its Affidavit and the additional hours awarded by the FCC, Kline & Specter served Combined Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the Request for Allocation of Aggregate Common Benefit and Costs Award. *See* Discovery Requests, attached as Exhibit "C."

10. These Requests and Interrogates were intended to ascertain information in the possession of the FCC individually, and contained in records and documents in the FCC's custody or control relating to the distribution of funds among the participating firms in the Pelvic Mesh MDLS as reflected in documents following the Affidavits submitted by all firms.

11. On June 25, 2018, the FCC served its Objections and Responses to Kline & Specter's and averred the following:

    a. That the FCC is neither a plaintiff nor a party to this litigation.

b.  That the present discovery was previously the subject of a motion by Kline & Specter titled "Motion for Discovery Relating to the Fee and Cost Committee's Initial Review of Common Benefit Fund Fee Submissions." *See* Exhibit "B." And that this Motion was denied by Order of the Court dated March 7, 2018.

c.  That therefore, this requested discovery is barred by res judicata, collateral estoppel, stare decisis, and the law of case doctrine.

d.  That the information requested is confidential.

12. Kline & Specter now files this instant Motion to Compel Discovery.

## II.    LEGAL ARGUMENT

### A.    The information requested in Kline & Specter's Combined Requests for Production of Documents, Things, and Interrogatories is not duplicative of previous requests.

The information Requested in Kline & Specter's Combined Requests for Production of Documents, Things, and Interrogatories (Exhibit "C") served on the FCC is not duplicative of the information requested in Kline & Specter's Motion for Discovery (Exhibit "B") and therefore, not barred by res judicata, collateral estoppel, stare decisis, and/or the law of case doctrine. The information in the Requests for Production relates to the hours and fees awarded following the submission of each firm's Affidavit. Following the production of Affidavits from each participating firm, the hour allotment changed significantly.

### B.    The information requested in Kline & Specter's Combined Requests for Production of Documents, Things, and Interrogatories is not confidential.

The information requested in Kline & Specter's Combined Requests for Production of Documents, Things, and Interrogatories is not confidential. While the FCC states as much in its objections to the requests, it does not cite to any actual Court Order stating that the FCC's discussions and deliberations are confidential. Furthermore, Kline & Specter is requesting the

4

information related to the actual cost awards allocated to Kline & Specter and each participating firm, which is the actual deliberations of the FCC.

### C. Discovery is critical to the fundamental fairness and judicial transparency of this process.

As discussed above, throughout the process of assessing common benefit time, the FCC allowed firms such as Kline & Specter to challenge the reduction of hours made by the FCC to explain why these hours should be considered for common benefit. However, the FCC has made this task impossible. The FCC has provided blanket, non-specific disallowances of this firm's time, making a specific response to each fee entry a futile guessing game. This is fundamentally unfair. It's a basic tenet of justice that a party receive notice of the nature of a claim or defense. The lack of specificity of the reason for proposed disallowance prevents us from meaningfully responding.

At this juncture in the litigation, it is apparent that discovery is more critical than ever. Only further discovery will reveal the legitimate explanation for what has transpired related to the future proposed distribution of funds. This process of determination of appropriate common benefit compensation is a most sensitive issue and fraught with potential for abuse, especially because the FCC members and their close associates will be recipients of FCC awards. In 2017, Elizabeth Chamblee Burch, articulated this tendency for a flawed, conflicted process in her article *Monopolies in Multidistrict Litigation*:

> [P]laintiffs' leadership across multidistrict proceedings can act like oligopolies and cartels. Cartels punish defectors by imposing costs on them and denying them access. When attorneys become lead lawyers, they have the power to control access and inflict costs, too: they distribute common-benefit work to allies, use settlements to restrict attorney advertising and reduce attorney demand, suggest common-benefit fee allocations, and report uncooperative behavior to the judge—carrots and sticks, in other words, that impair rivals' financial and leadership opportunities.

*****

> Attorneys work together frequently. As such, they form a close-knit group (though not necessarily one predicated on friendship) that may develop and enforce norms to maximize members' collective welfare in current, concurrent, and future litigation.

*****

> Because information flows easily through the network, it increases the opportunities for both tacit and explicit collusion and enables leaders to credibly punish and reward others for following or disregarding norms.

*See* Elizabeth Chamblee Burch, *Monopolies in Multidistrict Litigation,* 70 Vand. L. Rev. 67 (2017), pp. 122-123, attached as Exhibit "D."

Kline & Specter also proposes making the information sought available to every firm that has submitted fee applications. Burch stated as follows, "[g]iven the information barriers that prevent judges and clients from monitoring leadership, however, regulation should incentivize and leverage other plaintiffs' attorneys to function as checks and balances." *Id.* p. 135.

Making this information available to every plaintiffs' lawyer involved in this process is in everyone's best interest – every attorney and every client. Fee disputes, like other litigation with millions at stake, ought to be litigated openly and transparently. Attorneys are inclined to argue over these generous fee awards and should be well positioned to comment—publicly and openly— on each other's relative contribution to the litigation.

Burch stated the need for judicial administration of the fund succinctly when she wrote, "[j]udges have the power to appoint leaders and the power of the purse. Common-benefit funds are judicially created and should likewise be judicially administered—not circumvented through settlement's backdoor or shielded by sealed fee petitions." *Id.*; *see also,* Charles L. Becker, Shanin Specter, & Thomas R. Kline, *How Not to Manage a Common Benefit Fund: Allocating Attorney's Fees in Vioxx Litigation*, 9 Drex. L. Rev. 1 (Fall 2016), attached as Exhibit "E."

## III.   CONCLUSION

Wherefore, Kline & Specter respectfully requests that this Court enter an order compelling the documents and information requested in Kline & Specter's Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the Request for Allocation of Aggregate Common Benefit and Costs Award.

Respectfully submitted,

By:   s/ Floyd Boone

Charles M. Love, III, Esquire (WVSB 2254)
Floyd Boone, Esquire (WVSB 8784)
**Bowles Rice LLP**
**600 Quarrier Street,**
**Charleston, WV 25301**
*Counsel for Kline & Specter, P.C.*

**KLINE & SPECTER, PC**

Shanin Specter, Esquire (PA 40928)
Lee B. Balefsky, Esquire (PA 25321)
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Counsel for Plaintiffs*

Dated:  July 12, 2018

7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC<br>REPAIR SYSTEM PRODUCTS LIABILITY<br>LITIGATION<br>------------------------------------------------------------ | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC.,<br>PELVIC<br>REPAIR SYSTEM PRODUCTS LIABILITY<br>LITIGATION<br>------------------------------------------------------------ | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC<br>REPAIR SYSTEM PRODUCTS LIABILITY<br>LITIGATION<br>------------------------------------------------------------ | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC<br>REPAIR SYSTEM PRODUCTS LIABILITY<br>LITIGATION<br>------------------------------------------------------------ | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC<br>REPAIR SYSTEM PRODUCTS LIABILITY<br>LITIGATION<br>------------------------------------------------------------ | MDL NO. 2387 |

**THIS DOCUMENT RELATES TO ALL CASES**

## CERTIFICATE OF SERVICE

I, Lee B. Balefsky, hereby certify that on July 12, 2018, I electronically filed the foregoing

Motion to Compel with the Clerk of Court using the CM/ECF system which will  provide

notification of such filing to the CM/ECF participants registered to receive service in this member case.

**KLINE & SPECTER, PC**

Dated: July 12, 2018          BY: _____
                              LEE B. BALEFSKY, ESQUIRE
                              *Attorney for Plaintiff*

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| ------------------------------------------------------- | |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| ------------------------------------------------------- | |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| ------------------------------------------------------- | |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| ------------------------------------------------------- | |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| ------------------------------------------------------- | |
| THIS DOCUMENT RELATES TO ALL CASES | |

**MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ADDITIONAL
DISCOVERY DIRECTED AT THE FEE AND COST COMMITTEE
IN CONNECTION WITH THE REQUEST FOR ALLOCATION
OF AGGREGATE COMMON BENEFIT AND COST AWARD**

Pursuant to the Federal Rules of Civil Procedure, Kline & Specter, P.C. ("Kline & Specter"); Mazie Slater Katz & Freeman ("Mazie Slater"); and Anderson Law Offices ("ALO") (hereinafter "Moving Firms") respectfully move this Court for an Order compelling compliance with the Combined Third Requests for Production of Documents, Things, and Answers to

1

Interrogatories served on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the Request for Allocation of Aggregate Common Benefit and Costs Award, and in support thereof states as follows:

## PRELIMINARY STATEMENT

The eight law firms on the FCC have ignored the Court's directive "for the fair and equitable sharing among plaintiffs' counsel of the Common Benefit Fund," and have brazenly issued a preliminary recommendation awarding themselves $249 million of the $374 million to be distributed, or a staggering **2/3 of the fund**.[1] This is an average award of $31 million per FCC firm, including expenses.    On their face, these numbers taken together with the scant information currently available, indicate that the most heavily weighted achievement in the FCC's calculus was not the trial victories, key depositions, or the other critical work that was supposed to drive the allocation, but rather appointment to the FCC.

The FCC has insulated its actions to date by rejecting all requests for production of important documents necessary for the Moving Firms, and others, to fairly address the FCC's decisions, including its preliminary recommendations. This documentation would give the underlying basis for the FCC's allocation, and disclose potentially problematic factors such as financial relationships between FCC members, if any. The lack of transparency and deprivation of due process to date has enabled the FCC to issue preliminary recommendations that defy any definition of objective reasonableness.

---

[1] This motion is not a substitute for substantive objection to the FCC's recommendations, as the process is ongoing and it is hoped that this motion will help to fix the process before final recommendations are issued.  However, it is clear at this stage that the purpose of the common benefit process, to compensate the law firms commensurate with the benefit they conferred for the most important constituents, the injured women and their families, has not been respected.

## I.   FACTUAL BACKGROUND

1. In accordance with the Pretrial Orders of this Court, the Fee Committee Protocol, and the parameters further established by the FCC, the Moving Firms submitted their Common Benefit Fee hours and expenses.

2. As required by the Fee Committee Protocol, the Moving Firms provided the FCC with the firms' total revised time and an accompanying affidavit stating that the firms had audited the time and expenses and that the revised time and expenses submitted were for the common benefit.

3. The Moving Firms thereafter received a letter from the FCC which stated that after an initial review, the FCC disallowed hours submitted by the firms. In doing so, the FCC provided blanket and unspecified reasons for the disallowances.

4. The FCC and the Fee Committee protocol further stated that any comments to be included provided by the Moving Firms in response to these disallowed entries, final expense submissions, and an accompanying affidavit were to be completed and submitted within thirty (30) days of receipt of the FCC's February 16, 2018 letter.

5. On February 27, 2018, Kline & Specter sent a letter to Henry Garrard, Esquire, Chairperson of the FCC. *See* February 27, 2018 Letter to Henry Garrard, attached hereto as Exhibit "A." In the letter, Kline & Specter asked if the FCC would voluntarily produce the documents and information related to Requests at issue in this Motion. Kline & Specter asked that the FCC respond within five days as to if they would comply with the Requests. Mr. Garrard declined to respond.

3

6. On March 6, 2018, Kline & Specter (through its attorneys Bowles Rice LLP) filed a Motion with this Court requesting information related to the FCC's allowance and disallowance of Kline & Specter's submitted hours as being for the common benefit. *See* Kline & Specter Motion for Discovery, attached as Exhibit "B." This Motion was denied by Order of the Court dated March 7, 2018.

7. On May 25, 2018, following the submission of its Affidavit, Kline & Specter served Combined Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the Request for Allocation of Aggregate Common Benefit and Costs Award. *See* Discovery Requests, attached as Exhibit "C." These requests were objected to by the FCC and no documents or information were produced.

8. Thereafter, the Moving Firms presented arguments in front of the FCC in support of their Affidavits requesting recognition of the disallowed hours and expenses as for the common benefit, and other relevant factors.

9. On July 12, 2018, Kline & Specter filed a Motion to Compel Production of Documents and Additional Discovery Directed at the Fee and Cost Committee in Connection with the Request for Allocation of Aggregate Common Benefit and Cost Award related to the May 25, 2018 Discovery Requests. This Court denied the Motion, specifically stating that the matter was not yet ripe. *See* this Court's July 13, 2018 Order, attached hereto as Exhibit "D."

10. Thereafter, the Moving Firms received the FCC's "Transvaginal Mesh MDL Common Benefit Fee and Cost Committee Preliminary Written Recommendation."     *See*

September 13, 2018 Recommendation Letter, attached hereto as Exhibit "E." This letter wrongly proposes to disallow thousands of hours and substantial expenses for the Moving Firms, and undervalues a significant portion of the hours that were allowed.

11. On September 24, 2018, following the receipt of the FCC's recommendation letter, the Moving Firms served their Combined Third Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") In Connection with the Request for Allocation of Aggregate Common Benefit and Costs Award. *See* Discovery Requests, attached as Exhibit "F."

12. These Combined Third Requests and Interrogatories seek information in the possession, custody, or control of the FCC and its members relating to the proposed allocation and distribution of funds among the participating firms in the Pelvic Mesh MDLs as reflected in documents following the FCC's September 13, 2018 Recommendation Letter.

13. On October 24, 2018, the FCC responded to the Combined Third Requests, objecting to each and every request.  The FCC asserted that the requested discovery is conclusively barred and precluded by res judicata, collateral estoppel, stare decisis and the law of the case doctrine.  The FCC further asserted that there is no legal authority that would purport to allow counsel for certain plaintiffs in this MDL proceeding to seek discovery from other plaintiffs' counsel by way of interrogatory or request for production of documents. *See* FCC Response to Moving Firms' Combined Third Requests, attached hereto as Exhibit "G."

14. The Moving Firms filed their objections to the preliminary recommendations; however, these were limited to a mere 10 pages, and were written without access to the key

documents and information relied on by the FCC.  Despite these limitations, which need to be remedied, the Moving Firms relied on the available information and objected to the preliminary recommendations, as well as the complete lack of transparency in the allocation process to date, and the disproportionate proposed allocation by the FCC.

15. On September 27, 2018, counsel for ALO sent an informal discovery request to the FCC seeking an opportunity to review the records and data supporting the fee allocations. This request was rejected in its entirety the next day by the FCC's External Review Specialist.  *See* ALO Discovery Request to FCC, attached hereto as Exhibit "H."

16. To date, the requested documents and materials have not been produced.  Moving Firms now file this instant Motion to Compel Discovery.

## II.    LEGAL ARGUMENT

The information Requested in Moving Firms' Combined Third Requests for Production of Documents, Things, and Interrogatories (Exhibit "F") served on the FCC is not duplicative of prior discovery requests as it relates to the hours and fees recommended following the FCC's September 13, 2018 Recommendation Letter and therefore, could not be barred by res judicata, collateral estoppel, stare decisis, and/or the law of case doctrine, if those doctrines could potentially apply to ongoing interlocutory discovery requests, which they do not. Furthermore, as discussed throughout this Motion, keeping the requested information confidential is inappropriate.  Doing so does not lend itself to a fair and open process essential to a transparent distribution of funds which in turn avoids future litigation.

In the Vioxx litigation, discussed below, FCC member Joseph Rice, Esq. of Motley Rice **objected** to the fee committee's proposed allocation, condemning what he described as: "**self-**

6

dealing and double dipping" and "self-enriching and lacking evenhandedness for those applicants not on the Committee," and unacceptable "disparate treatment" as between the FCC and non-FCC firms." *See* Motley Rice Brief in Opposition to Proposed Allocation in Vioxx, attached hereto as Exhibit "I.", at 1-2. With Mr. Rice now in power, the FCC is inexplicably repeating the sins Mr. Rice so vehemently criticized in the Vioxx litigation. The Moving Firms seek to compel necessary discovery and initiate a process to achieve the transparency and fair allocation this Court mandated in the series of Orders and communications creating this process.

Moving Firms are entitled to the requested information regarding the proposed distribution of funds among the participating firms in the Pelvic Mesh MDLs. The outright refusal by the FCC to provide this information perpetuates the indefensible information gap that limited the ability of the Moving Firms to submit fully informed responses to the disallowance of time and expenses, and fully informed objections to the preliminary recommendations, and this unfairness will only be compounded as this process advances to final recommendations to the Court.

Throughout the process of assessing common benefit time, the FCC purported to allow the Moving Firms to challenge the reduction of hours made by the FCC and to explain why these hours should be considered as for the common benefit. However, the FCC made this task virtually impossible. The FCC provided blanket, non-specific disallowances of the Moving Firms' time, making a specific response to each fee entry a futile guessing game. Then the FCC criticized the Moving Firms' responses as failing to adequately address the ambiguous disallowances. This is fundamentally unfair. A basic tenet of justice is that a party receive

7

notice of the nature of a claim or defense. The lack of specificity of the reason for proposed disallowance prevented the Moving Firms from meaningfully responding and challenging the substantial reductions to their shares of the common benefit fund that has been proposed. Moreover, the refusal to disclose all firms' submissions and the allowances and disallowances of each precludes a fair analysis – for example, were FCC firms credited for work that was disallowed to the Moving Firms?

It is clear that the Moving Firms must be given an opportunity to obtain the materials requested. The process of determination of appropriate common benefit compensation is a most sensitive issue and fraught with potential for abuse, especially because the FCC members and their close associates will be recipients of FCC awards – as Mr. Rice himself recognized in Vioxx. The lack of transparency heightens these risks. In 2017, Elizabeth Chamblee Burch, articulated this tendency for a flawed, conflicted process in her article *Monopolies in Multidistrict Litigation*:

> [P]laintiffs' leadership across multidistrict proceedings can act like oligopolies and cartels. Cartels punish defectors by imposing costs on them and denying them access. When attorneys become lead lawyers, they have the power to control access and inflict costs, too: they distribute common-benefit work to allies, use settlements to restrict attorney advertising and reduce attorney demand, suggest common-benefit fee allocations, and report uncooperative behavior to the judge—carrots and sticks, in other words, that impair rivals' financial and leadership opportunities.
>
> *****
>
> Attorneys work together frequently. As such, they form a close-knit group (though not necessarily one predicated on friendship) that may develop and enforce norms to maximize members' collective welfare in current, concurrent, and future litigation.

*****

> Because information flows easily through the network, it increases the
> opportunities for both tacit and explicit collusion and enables leaders to
> credibly punish and reward others for following or disregarding norms.

*See* Elizabeth Chamblee Burch, *Monopolies in Multidistrict Litigation,* 70 Vand. L. Rev. 67

(2017), pp. 122-123, attached as Exhibit "J."  Only through discovery will the parties have equal

access to the foundational documents at the core of the process and learn the actual reasoning

behind the proposed distribution of funds, which appears to heavily favor the FCC members and

their allied law firms.

   The Moving Firms also propose making the information sought available to every firm

that has submitted fee applications.  Burch stated as follows, "[g]iven the information barriers

that prevent judges and clients from monitoring leadership, however, regulation should

incentivize and leverage other plaintiffs' attorneys to function as checks and balances." *Id.* p.

135. The FCC, if it were fairly discharging its responsibilities, would embrace transparency.

Making this information available to every firm involved in this process is in everyone's best

interest – every attorney and every client.  Fee disputes, like other litigation (especially with

millions of dollars at stake), ought to be litigated openly and transparently.  Attorneys inclined to

question these unexplained fee awards should be well positioned to comment—publicly and

openly—on each other's relative contribution to the litigation.

   The FCC appears to have chosen to award only a fraction of the Moving Firms' hours

and lodestar, and no multiplier enhancement. At the same time, it suggests that its own members

be grossly over-compensated. 93 firms submitted fee applications. Based on the available

information, the FCC recommended that its eight member-firms receive awards with an

estimated average fee award of **$28,739,750** and an estimated average hourly rate of **$739.75** – well over the average hourly rate applied to the Moving Firms' hours. In comparison, Moving Firms were awarded an average hourly rate on approved hours of $347. Of their total submitted hours, Kline & Specter received an hourly rate of $116; Mazie Slater received an hourly rate of $202; and ALO received an hourly rate of $217. *See* Exhibit B from FCC Preliminary Recommendations, attached hereto as Exhibit "K." Furthermore, the total fees proposed to be awarded to the eight FCC member firms is $229,915,000. This is almost exactly 2/3 of the $344,000,000 total fee award available at this time across the entire litigation. Thus, the eight FCC member firms would receive over 2/3 of total fees while the FCC divide the remaining 1/3 of the allocated fees to the remaining 85 non- member firms. Given the massive imbalance, and the fact that all of the largest awards are remarkably round numbers, including all of the FCC member firms' allotments, there are strong reasons to suspect that the FCC has arbitrarily determined the shares.

In its September 13, 2018 letter, the FCC states that there were over 900,000 hours submitted to the FCC for review. *See* Exhibit "E." Adding up the total amounts of allocated fees in Exhibit B to the September 13th letter, the total number of hours recommended as allowed for all fee requesting firms is 679,149. Moving Firms Kline & Specter, Mazie Slater, and ALO submitted over 88,000 hours as for the common benefit and yet only 51,093 hours were approved. Thus, the FCC allowed over 75% of all time submitted across all firms but approved less than 58% of the Moving Firms' time: Kline & Specter was approved for 29% of its submitted time; Mazie Slater was approved for 65% of its submitted time; and ALO was approved for 66% of its submitted time. There is no way of confirming to what extent the FCC

10

member firms' hours were reduced – or, for that matter, the extent of hour reduction for firms other than the Moving Firms.

The limited information available to the Moving Firms, including the FCC's internal "TVM Historical Analysis," (Exhibit "L", attached hereto) demonstrates the need for full production of the requested documents – for example the key source documents including the submissions by each firm, and the transcripts of each firm's meeting with the FCC. This internal FCC document is replete with inaccurate and biased statements, and a comparison of the data within this document to the FCC's preliminary recommendations evidences uneven and manipulated treatment of the FCC firms to the detriment of the rest, including the Moving Firms. For example, FCC Chairman Henry Garrard's law firm, the Blasingame firm, was credited for 63,719 hours and $9,545,824 in expenses, plus $350,000 in assessments. According to the TVM Historical Analysis, the Blasingame firm had 64,613 hours with $9,623,801 in expenses as of August 24, 2016. Thus, the FCC Chairman's law firm was awarded nearly 100% of both, and the gross figures, excessive and in need of explanation on their face, raise serious questions that can only be answered by reviewing the firm's time and expense submissions. And this is the tip of the iceberg. For example, the Blasingame firm somehow recorded 7,525 hours and $2,687,171 in expenses on the Ethicon litigation although it was noticeably absent from that litigation, which was led in New Jersey beginning long before the MDL was formed. It is widely believed that the Blasingame firm and others re-reviewed massive numbers of Ethicon documents that had already been reviewed, finding nothing of import that was not already known, and created expert reports in reliance on the templates already available, then fully credited and enhanced this time with multipliers.

11

The favorable treatment of FCC member Riley Burnett's law firm provides another troubling example illustrating the need for full transparency. The TVM Historical Analysis shows a mere 1,662.80 hours and $10,941.33 in expenses, most of which were in the Coloplast MDL where no true discovery took place. Yet, the final calculation increased the hours to 10,490.35 hours, with the same meager expense amount. Where did another 8827.55 hours come from? Moreover, to our knowledge Mr. Burnett took no significant depositions, tried no cases, led no litigations, took almost no financial risk, and contributed nothing of common benefit. Yet, he was awarded fees of $5,075,000, almost as much as Mazie Slater, the law firm that started and has played a lead role in the Ethicon litigation from day one in 2008, with an hourly rate of $483.78 based on the disclosed number of hours – 1.6 times the hourly rate for Mazie Slater on the hours allowed. At 1662.8 hours, the hourly rate jumps to $3052.08. The purpose of these examples is not to litigate the preliminary recommendations, but rather to demonstrate the need for the requested discovery. Only full transparency will enable a fair opportunity to object, and to engage in meaningful steps towards applying verifiable criteria and fixing this process at this stage.

Up to this point, the Moving Firms have been denied discovery requests seeking the requested information. The information sought by the Moving Firms directly relates to the blatant discrepancy between the fees and expenses preliminarily awarded to the FCC Member Firms, the Moving Firms, and all other firms involved in this litigation, as this information gap is severely prejudicing the Moving Firms and others from objecting and engaging with the FCC on a level playing field. In this context, it is important to recognize that even to the extent the

12

deliberative process was intended to be confidential, the source documents relied on should not be confidential, and the unbalanced preliminary recommendations require full disclosure.

The following is the crux of the crucial information (and subsequent related documents) requested. These requests are narrowly focused and relate directly to the FCC's preliminary recommendation of the common benefit fee and expense distribution as requested by Moving Firms:

- the full and complete reason for each entry considered compensable as for the common benefit and explain in detail the methodology employed for each allowance, the factual basis for each allowance, and the person(s) participating in determining each allowance. It is the Moving Firms' understanding that color coded spreadsheets were created during this process, specifying this information, as well as the cases in which the time was submitted yet those spreadsheets have been withheld despite numerous requests.
- the complete submissions and responses to and from all firms and the FCC in the course of this process.
- the transcripts of each firm's presentation to the FCC.
- the methodology employed for each denial, the factual basis for each denial, and the person(s) participating in determining each denial.
- information and documents regarding any financial arrangements between and among the FCC member firms, or affiliated firms - in the mesh MDL and other litigation.
- the specific hourly and lodestar rates awarded to each fee requesting firm and the specific reasons for the discrepancies in firm hourly and lodestar rates including the methodology used to determine each firm's hourly and lodestar rate, and multipliers.

- the specific methodology used to calculate each fee requesting firm's common benefit allocation, hourly rates, and lodestar, and the criteria and methodology used to calculate the fee allocation.
- the criteria and methodology used to calculate the compensable state court time, identify which of the state court trials were compensated for common benefit time, identify the participating firms in each trial, and identify how many hours were considered for the common benefit for each trial.
- the criteria and methodology used to calculate the compensable MDL court trial time, identify which of the MDL trials were compensated for common benefit time, identify the participating firms in each trial, and identify how many hours were considered for the common benefit for each MDL trial.

*See* Exhibit "F."

These Requests focus on the foundational documentation, the methodology of compensation, criteria for compensation, distribution of fees, and the reasons for discrepancy between the FCC Member Firms and the other firms involved in this litigation. The FCC has provided no information regarding these inquiries. This information is essential for a fair and transparent process and to avoid future litigation regarding these matters.

Lessons learned from a similar fee dispute in the *Vioxx* litigation illustrate the need for a fair and transparent process to avoid the complexities of inevitable litigation should this information be withheld. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657. The *Vioxx* personal injury litigation resulted in a $4.85 billion settlement, of which over $315 million was allocated to pay attorneys for their common benefit work. Similar to the current issues in the Pelvic Mesh Litigation, significant problems plagued the management and distribution of this

14

common benefit fund. Those problems arose because that fee committee proposed fee allocations through a seemingly arbitrary approach that favored those insiders and sought to purchase peace through covert negotiation. *See* Charles L. Becker, Shanin Specter, & Thomas R. Kline, *How Not to Manage a Common Benefit Fund: Allocating Attorney's Fees in Vioxx Litigation*, 9 Drex. L. Rev. 1 (Fall 2016), p. 2, attached as Exhibit "M."

In October 2010, New Orleans Federal District Court Judge Eldon Fallon set aside 6.5 percent of the fund — $315.3 million — for attorney fees. He also appointed nine firms to allocate the fees among the 109 plaintiffs law firms involved in the New Orleans multidistrict *Vioxx* litigation. On Jan. 20, the committee filed its fee allocation recommendations. The proposal granted the fee committee's own members a huge proportion of the fees in the common benefit fund: $230 million, or about 70 percent of the total pool. The two biggest winners (fee committee member firms) each received $40.9 million and $32.5 million under the proposed allocation. Multiple firms who had performed important common benefit work filed objections. The objections accused the fee committee of ignoring lodestar calculations and granting its own members fees based on outsized hourly rates, while leaving much less for other lawyers who committed thousands of hours to the *Vioxx* litigation. Much as here, they likewise recommended that other firms that performed significant common benefit work receive relatively little compared to their effort and contributions. *Id.* at p. 15

Member Firms objected. One of the objections was by Motley Rice, signed by Joseph Rice, Esq., as set forth above. These objections were eventually resolved when many firms agreed to accept larger sums of common benefit money and the fee committee firms agreed to accept less. In the end, the fee committee declined to permit its allocations to receive judicial

scrutiny by settling all the objections. The critical observations that followed the objections and allocations include how the fee allocation system was undisciplined and jurisprudentially unmoored, how it operated to favor the interests of those who designed it, and how it promoted objection and litigation, the very opposite of what a fee-allocation system should do. *Id.* at p. 19. The Pelvic Mesh FCC appears to be utilizing an even more deeply flawed process, paying lip service but tethered to no objective criteria.

In the end, the system used to calculate the allocation of funds in *Vioxx* was a substantive, procedural, and practical failure and also an embarrassment to the bench and the bar. This Court should ensure that the same failures are avoided in the Pelvic Mesh Litigation. The *Vioxx* approach produced a justifiable storm of objections that required considerable time and effort to resolve. Little credit could be given to the fee committee's purported objectivity after it recommended that its members receive 73 percent of all fees for 42.6 percent of the hourly work. As Judge Thomas L. Ambro observed in *In re Diet Drugs Products Liability Litigation*, "[t]hey make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?" *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 172 (3d Cir. 2005) (Ambro, J., concurring).

The failed process in *Vioxx* is analogous to the current failures of the fee allocation process in the Pelvic Mesh Litigation. In *Vioxx,* as in this present case, there was a lack of transparency in the process and an egregiously inequitable recommended allocation of funds favoring the Committee Member firms in charge of determining those apportionments. Discovery is necessary.

16

The allowance of discovery in these types of fee disputes is obviously not without precedence. Judge Eldon Fallon of the Eastern District of Louisiana oversaw the coordinated discovery and pretrial matters in the *Vioxx* litigation and allowed for discovery following participating firms' objections subsequent to his decision to award a common benefit fee of 8% of the $4.85 billion settlement.

Judge Fallon also allowed for discovery in *Turner v. Murphy Oil USA, Inc.* 582 F.Supp.2d 797 (E.D. La. 2008). In *Turner*, homeowners and business owners sued an oil refinery operator for damages from an oil spill that resulted when an above-ground tank ruptured during the flooding following Hurricane Katrina. The case was certified as a class action and settled for approximately $330.1 million. Judge Fallon approved an award for attorneys' fees and costs of approximately $33.7 million and appointed a special master to recommend allocation of the award to the various plaintiffs' attorneys. Similar to the situation here, firms submitted affidavits setting forth their common benefit work. *Id.* at 803. After the service of the affidavits, all counsel had five days to serve written discovery. *Id.*

## III.   CONCLUSION

Wherefore, Moving Firms respectfully request that this Court enter an order compelling the production of documents and information requested in the Moving Firms' Combined Third Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the Request for Allocation of Aggregate Common Benefit and Costs Award.

Respectfully submitted,

**BOWLES RICE, LLP**

By:   /s/ Floyd E. Boone Jr.
Charles M. Love, III (WVSB 2254)
Floyd E. Boone Jr. (WVSB 8784)
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100 (Tel.)
(304) 347-1746 (Fax)
fboone@bowlesrice.com
*Counsel for Kline & Specter, P.C.*

**KLINE & SPECTER, PC**

Shanin Specter, Esquire
Lee B. Balefsky, Esquire
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Counsel for Plaintiffs*

**MAZIE SLATER KATZ**
**& FREEMAN, LLC**

  /s/ Adam S. Slater, Esquire
Adam M. Slater, Esquire
103 Eisenhower Parkway
Roseland, NJ 07068
973-228-9898
*Counsel for Plaintiffs*


**PAUL W. FLOWERS CO., LPA**

  /s/ Paul W. Flowers, Esquire
Paul W. Flowers, Esquire
Louis E. Grube, Esquire
50 Public Square, Terminal Tower, Suite 1910
Cleveland, OH 44113
216-344-9393
*Counsel for Anderson Law Offices, LLC*

**LEWIS GLASSER LLC**

  /s/ Webster J. Arceneaux, III
Webster J. Arceneaux, III (State Bar No. 155)
Richard L. Gottlieb (State Bar No. 1447)
Post Office Box 1746
Charleston, WV 25326
Phone: 304-345-2000
*Counsel for Anderson Law Offices, LLC*


**ANDERSON LAW OFFICES, LLC**

  /s/ Benjamin H. Anderson, Esquire
Benjamin H. Anderson, Esquire
17138 Lorain Avenue, Suite 211
Cleveland, OH 44111
Phone: 216-589-0256
*Counsel for Plaintiffs*

October 31, 2018

19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| ------------------------------------------------------- | |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| ------------------------------------------------------- | |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| ------------------------------------------------------- | |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| ------------------------------------------------------- | |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| ------------------------------------------------------- | |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| ------------------------------------------------------- | |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL NO. 2511 |
| ------------------------------------------------------- | |

THIS DOCUMENT RELATES TO ALL CASES

**MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ADDITIONAL
DISCOVERY DIRECTED AT THE FEE AND COST COMMITTEE
IN CONNECTION WITH THE REQUEST FOR ALLOCATION
OF AGGREGATE COMMON BENEFIT AND COST AWARD**

1

Pursuant to the Federal Rules of Civil Procedure, Kline & Specter, P.C. ("Kline & Specter") respectfully moves this Court for an Order compelling compliance with the Combined Fourth Requests for Production of Documents and Interrogatories served on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the Request for Allocation of Aggregate Common Benefit and Costs Award, and in support thereof states as follows:

## I.  FACTUAL BACKGROUND

1. In accordance with the Pretrial Orders of this Court, the Fee Committee Protocol, and the parameters further established by the FCC, Kline & Specter submitted its Common Benefit Fee hours and expenses.

2. As required by the Fee Committee Protocol, the Kline & Specter provided the FCC with the firm's total revised time and an accompanying affidavit stating that the firm had audited the time and expenses and that the revised time and expenses submitted were for the common benefit.

3. Kline & Specter thereafter received a letter from the FCC which stated that after an initial review, the FCC disallowed hours submitted by the firms. In doing so, the FCC provided blanket and unspecified reasons for the disallowances.

4. The FCC and the Fee Committee protocol further stated that any comments to be included provided by Kline & Specter in response to these disallowed entries, final expense submissions, and an accompanying affidavit were to be completed and submitted within thirty (30) days of receipt of the FCC's February 16, 2018 letter.

5.  On February 27, 2018, Kline & Specter sent a letter to Henry Garrard, Esquire, Chairperson of the FCC.  In the letter, Kline & Specter asked if the FCC would voluntarily produce the documents and information related to Requests at issue in this Motion.  Kline & Specter asked that the FCC respond within five days as to if they would comply with the Requests. Mr. Garrard declined to respond.

6.  On March 6, 2018, Kline & Specter (through its attorneys Bowles Rice LLP) filed a Motion with this Court requesting information related to the FCC's allowance and disallowance of Kline & Specter's submitted hours as being for the common benefit. This Motion was denied by Order of the Court dated March 7, 2018.

7.  On May 25, 2018, following the submission of its Affidavit, Kline & Specter served Combined Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") in connection with the Request for Allocation of Aggregate Common Benefit and Costs Award. These requests were objected to by the FCC and no documents or information were produced.

8.  Thereafter, Kline & Specter presented arguments in person before the FCC in support of their Affidavits requesting recognition of the disallowed hours and expenses as for the common benefit, and other relevant factors.

9.  On July 12, 2018, Kline & Specter filed a Motion to Compel Production of Documents and Additional Discovery Directed at the Fee and Cost Committee in Connection with the Request for Allocation of Aggregate Common Benefit and Cost Award related to the

3

May 25, 2018 Discovery Requests.  This Court denied the Motion, specifically stating that the matter <u>was not yet ripe</u>.

10. Thereafter, Kline & Specter received the FCC's "Transvaginal Mesh MDL Common Benefit Fee and Cost Committee Preliminary Written Recommendation." This letter wrongly proposes to disallow thousands of hours and substantial expenses for the Moving Firms and undervalues a significant portion of the hours that were allowed.

11. Kline & Specter filed their objections to the preliminary recommendations; however, these were limited to a mere 10 pages, and were written without access to the key documents and information relied on by the FCC.  Despite these limitations, which need to be remedied, Kline & Specter relied on the available information and objected to the preliminary recommendations, as well as the complete lack of transparency in the allocation process to date, and the disproportionate proposed allocation by the FCC.

12. On September 24, 2018, following the receipt of the FCC's recommendation letter, Kline & Specter, along with several other Moving Firms, served a Combined Third Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") In Connection with the Request for Allocation of Aggregate Common Benefit and Costs Award.

13. These Combined Third Requests and Interrogatories seek information in the possession, custody, or control of the FCC and its members relating to the proposed allocation and distribution of funds among the participating firms in the Pelvic Mesh MDLs as reflected in documents following the FCC's September 13, 2018 Recommendation Letter.

4

14. On October 24, 2018, the FCC responded to the Combined Third Requests, objecting to each and every request. The FCC said that the requested discovery is barred by res judicata, collateral estoppel, stare decisis and the law of the case. The FCC further said that there is no legal authority that would purport to allow counsel for certain plaintiffs in this MDL proceeding to seek discovery from other plaintiffs' counsel by way of interrogatory or request for production of documents. The Court has not yet ruled on this Motion.

15. On November 26, 2018, Kline & Specter served a Combined Fourth Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") In Connection with the Request for Allocation of Aggregate Common Benefit and Costs Award. *See* Combined Fourth Requests, attached hereto as Exhibit "A".

16. This Fourth Combined Requests relates to the following: 1) the total number of cases settled by TVM manufacturer; 2) the per-case average settlement amount by manufacturer; 3) the total number of cases settled for all Pelvic Mesh Litigations; 4) the per-case average settlement amount of all Pelvic Mesh Litigations; 5) the lodestar amounts for each fee-requesting firm; 6) the claimed and allowed blended hourly rate for each fee-requesting firm; 7) the claimed and allowed hours for each fee-requesting firm; 8) each fee-requesting firms' settlement amounts with respect to each defendant; and 9) the information and documentation regarding the eleven firms no longer objecting to the September 13, 2018 fee allocation recommendation.

17. On December 21, 2018, FCC responded to the Combined Fourth Requests, and once again objected to each and every request. The FCC said that the requested discovery is barred by res judicata, collateral estoppel, stare decisis and the law of the case. The FCC said that terms and scope of any settlements are confidential as between Plaintiffs and Defendants who were parties to such agreements, and the FCC does not have the information sought. Additionally, the FCC claimed that the information sought was confidential.

18. To date, the requested documents and materials have not been produced. Kline & Specter now files this instant Motion to Compel Discovery.

## II.  LEGAL ARGUMENT

The information Requested in Kline & Specter's Combined Fourth Requests for Production of Documents, Things, and Interrogatories (Exhibit "A") served on the FCC is not duplicative of past requests as it seeks new information following the FCC's Final Fee Recommendations. The information sought includes the following: 1) the total number of cases settled by TVM manufacturer; 2) the per-case average settlement amount by manufacturer; 3) the total number of cases settled for all Pelvic Mesh litigations; 4) the per-case average settlement amount of all Pelvic Mesh litigations; 5) the lodestar amounts for each fee-requesting firm; 6) the claimed and allowed blended hourly rate for each fee-requesting firm; 7) the claimed and allowed hours for each fee-requesting firm; 8) each fee-requesting firms' settlement amounts with respect to each defendant; and 9) the information and documentation regarding the eleven firms no longer objecting to the September 13, 2018 fee allocation recommendation. *See* Exhibit "A." Because the information and documents sought are not duplicative of any previous

6

requests, the requests are not barred by res judicata, collateral estoppel, stare decisis, and/or the law of case doctrine, if those doctrines could potentially apply to ongoing interlocutory discovery requests, which they do not. Keeping the requested information confidential is inappropriate. Doing so does not lend itself to a fair and open process essential to a transparent distribution of funds which in turn avoids future litigation.

Kline & Specter, and other Moving Firms, have repeatedly been denied discovery requests seeking the requested information. The information sought by Kline & Specter directly relates to the blatant discrepancy between the fees and expenses preliminarily awarded to the FCC Member Firms and all other firms involved in this litigation, as this information gap is severely prejudicing Kline & Specter and others from objecting and engaging with the FCC on a level playing field.   In this context, it is important to recognize that even to the extent the deliberative process was intended to be confidential, the source documents relied on should not be confidential, and the unbalanced preliminary recommendations require full disclosure.

1. **The information requested regarding settlements is crucial to the fairness and transparency of the fee allocation process and the fairness of the 5% fee assessment.**[1]

The FCC requests 5% of all recoveries totaling $550 million[2], though their results were poor. Kline & Specter's uncontested central factual assertions are that:

---

[1] It should be noted that Kline & Specter had no objection to the holdback order when entered and has no objection to it now.  Kline & Specter objects to the proposed 5% common benefit fee. Kline & Specter did not waive that objection by not objecting to the holdback order when it was entered. These are separate orders.  A holdback order is exactly that – a reserve anticipating a later determination.  The FCC could have asked for the holdback to be awarded of something less or even something more.

[2] The current value of the settlements is roughly $7.25 billion, and the total amount of settlements is expected to reach approximately $11 billion.  This would make the total expected amount of the common benefit fund to reach $550 million.  The current amount of the fund is approximately $360 million.

- settlements average about $40,000 per case while trial verdicts average $9.8 million, even including defense verdicts;
- lead counsel took way too many cases, couldn't discover or try them and were therefore forced to accept inadequate settlements;
- these inadequate settlements shortchanged the injured woman and made it difficult for other attorneys to fairly settle their cases;
- based on these facts, a common benefit fee of 2.5%, which equates to $180 million now and is anticipated to grow to $275 million, is more appropriate.

Nowhere in their initial petitions, recommendations, or pleadings does the FCC reveal the precise number of cases settled or the per case settlement average. Plainly, no intelligent assessment can be made of the results obtained without first knowing the results obtained. The FCC obviously has this information, as they've collected a 5% fee assessment on all settlements.

Kline & Specter's performance demonstrates that leadership's approximate $40,000 per case settlement average is shockingly low. Kline & Specter has settled roughly 1500 cases with a per case settlement average of approximately $75,000. That's about double the overall average. Removing Kline & Specter's AMS settlements, which occurred due to AMS's then perceived precarious financial condition, Kline & Specter's per case average is $120,000, about triple the average. Kline & Specter's current five (5) verdicts total $110,000,000, potentially increasing Kline & Specter's per case average to $155,000, even including the AMS settlements. Excluding the AMS settlements, and including the verdicts, Kline & Specter's per case average rises to $315,000. Surely, the FCC doesn't contend that these results could only have been achieved by Kline & Specter.

8

**2. Information regarding participating firms' loadstar amounts is needed to determine if an equitable distribution of the Common Benefit Fund has been recommended by the FCC.**

Kline & Specter believes that the amounts awarded to non-FCC member firms versus FCC member firms is unbalanced. The FCC has continuously claimed that Kline & Specter was merely a recipient of MDL work and used this work for our trials without creating any common benefit work product. This is untrue. Some of the common benefit work in the Ethicon litigation was good and Kline & Specter has always said so. But stretching all the way back to Kline & Specter's first trial – *Hammons* in 2015 – plaintiffs' counsel called a live Ethicon witness rather than relying exclusively on MDL deposition cuts.[3] Kline & Specter has had to independently review the original document discovery. That's resulted in Kline & Specter's utilization of few MDL deposition cuts and documents utilized the MDL. In the current trial, *Emmet v. Ethicon*, only about 30% of the documents Kline & Specter has utilized at trial were utilized by the MDL in deposition or trial. The other 70% are documents Kline & Specter has freshly accessed, evaluated, selected and introduced at trial. MDL depositions have been pared and sparsely utilized in Kline & Specter's trials. Even inculpatory deposition answers sometimes can't be used, as many objections were sustained due to defects in questioning, making some MDL work product thought to be good but actually unusable.

Regrettably, the FCC inflates their performance and deflates the performance of Kline & Specter. The FCC suggests that no one could do better than they've done but facts show otherwise. In order to further evaluate this proclamation, discovery is essential.

---

[3] Ironically, the FCC proposes to disallow all of Kline & Specter's time in this case.

3. **Information regarding the Coloplast and Covidien settlement amounts in essential for transparency and fairness of the the clients involved in those litigations.**

It is unfair to women who were implanted with Coloplast and Covidien products, where no significant work specific to those products was performed in the MDL, to include Coloplast and Covidien settlements in the Common Benefit Fund. One might hypothesize in a complex MDL where it is not possible to separate claims in various cases, that the work and fee could be appropriately mushed together in a sense of rough justice. But here, it is easy to distinguish the MDLs. And since the 5% proposed fee from Coloplast and Covidien is a small fraction of the total fund, it isn't expensive to the common benefit lawyers to do the right thing and not tax these cases. However, further information is needed and discovery is essential to determine the amounts of settlements.

## III.   CONCLUSION

The MDL is coming to a close, as does every MDL. Cases will be returning to their home districts for trial. State court settlements and trials have been occurring all over the country. Dozens of cases have been tried, most very successfully. Law firms who try cases, such as Kline & Specter, have settled cases fairly, because the defendants know that without settlements, they'll have to pay large verdicts.

It is a basic responsibility of an attorney to discover and try their cases if they can't be settled fairly. Inadequate settlements of good cases against solvent defendants isn't supposed to be an option. But a firm with 5000-10,000 cases or more, such as FCC members, could not follow this model unless they hired dozens of additional lawyers and/or associated with other firms. They didn't and settled instead, for cheap, which they don't deny.

10

Having capitulated for peanuts, leadership now seeks from this Court over half a billion dollars – on top of billions in private fee agreements – in preference to undercompensated and badly injured women.

Under their fee agreements with their clients, the plaintiffs' lawyers in this litigation are likely making over $4 billion, as 40% of ($11 billion times .95) equals $4.18 billion.  On top of that, $180 million, growing to $275 million, for a common benefit fee, which is one-half of the requested common benefit fee, is enough.   Whatever is awarded, a transparent process must occur regarding the allocation of that money.

For all the reasons described above, Kline & Specter respectfully requests that this Court compel the product of the requested information and documents in its Combined Fourth Requests for Production of Documents, Things, and Interrogatories on the Transvaginal Mesh MDL Common Benefit Fee and Cost Committee ("FCC") In Connection with the Request for Allocation of Aggregate Common Benefit and Costs Award.

11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| -------------------------------------------------------- | |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| -------------------------------------------------------- | |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| -------------------------------------------------------- | |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| -------------------------------------------------------- | |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| -------------------------------------------------------- | |
| THIS DOCUMENT RELATES TO ALL CASES | |

## Certificate of Service

I hereby certify that on January 16, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

_____
Lee B. Balefsky, Esquire

13

Respectfully submitted,


**KLINE & SPECTER, PC**

Shanin Specter, Esquire
Lee B. Balefsky, Esquire
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Counsel for Plaintiffs*



**BOWLES RICE, LLP**

By:    /s/ Floyd E. Boone Jr.
Charles M. Love, III (WVSB 2254)
Floyd E. Boone Jr. (WVSB 8784)
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100 (Tel.)
(304) 347-1746 (Fax)
fboone@bowlesrice.com
*Counsel for Kline & Specter, P.C.*

12