# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO, 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL NO. 2511 |

THIS DOCUMENT RELATES TO ALL CASES

**BERNSTEIN LIEBHARD LLP'S OBJECTION TO THE ATTORNEY FEE ALLOCATION FILED PURSUANT TO PTO # 332**

00523279;V1   Originally filed on March 26, 2019. See Document 7926 – Case 2:12-md-02326

## INTRODUCTION

Bernstein Liebhard LLP ("BL") objects to the unfair fee allocated for BL's work. Prior to the Ethicon MDL's existence, BL was already part of the NJ trial team for *Gross v. Ethicon* (the first Ethicon case to succeed at trial). After much of the *Gross* case work had been performed, the MDL Leadership asked BL and the other NJ firms to help the MDL plaintiffs. Pursuant to a written agreement, the NJ firms agreed to share their expertise, and the MDL agreed their work "would be fairly compensated" because it was "valuable" to the MDL. As a safeguard to ensure the fee would be fair, the MDL agreed to use its "best efforts" to include a NJ firm on the FCC to oversee the fee allocation process. But the MDL made no effort to appoint a NJ firm to the FCC and even ignored an express request to do so. This breach now causes the situation BL intended to prevent: a fee that is extremely unfair relative to other firms that performed similar work for the MDL, and an allocation made without insight into the value of BL's work that was substantially performed in New Jersey.

The red flag confirming BL's underpayment is that a lodestar cross-check of the fees awarded evidences an unreasonably low blended hourly rate for BL's time relative to firms that performed comparable work. The overwhelming majority of BL's submitted hours were for high-level partner work done by a single, dedicated partner in connection with TVM trials. It is BL's strong belief that other firms with even higher blended rates expended more time on lower-level tasks. Their higher blended rates, even after averaging-down the thousands of hours of low-level time, shows that the MDL will compensate other similar high-level partner time at multiples above the BL partner's rate.

In addition to the low average hourly rate, the FCC indiscriminately cut BL's overall hours by 455.5 hours. The FCC and Judge Stack (Ret.) disregarded the fact that these hours had

value and that the MDL and the NJ firms agreed previously that many of these hours were valuable and would be fairly compensated.

Accordingly, BL requests an increased fee, equivalent to the average hourly FCC partner rate, multiplied by BL's 4,407 billable hours. This calculation can be performed once BL receives the documents requested by the Court in PTO # 332. Even absent the documents, BL is entitled to at least the weighted average blended hourly rate of the FCC firms (including the hours attributable to associates and non-attorneys), which BL calculates at $730.43 per hour multiplied by BL's 4,407 billable hours for a minimum fee award of $3,219,005.

## STATEMENT OF FACTS

**I.    WORK FROM *GROSS V. ETHICON* WAS VALUABLE TO THE MDL**

*Gross v. Ethicon* pre-dated any Ethicon trial in the MDL by more than one and one-half years. After developing discovery, expert reports, and devising a trial strategy, the *Gross* case became the first successful trial against Ethicon in connection with the TVM defects. The NJ firm of Mazie Slater Katz & Freeman, LLC was chief trial counsel and BL was an essential part of the trial team. The six week trial before the State Court in New Jersey resulted in a jury award of $3.35 million for compensatory damages, plus $7.76 million in punitive damages ($11.1 million total). Importantly, the *Gross* case was the first favorable result in a failure to warn case concerning Ethicon's GYNECARE PROLIFT product.

The MDL recognized that the work done in the *Gross* case was valuable to the MDL and requested that that the NJ firms working on the *Gross* case, which included BL, share their work with the MDL. This work benefitted the federal litigation, in that it was discovery and trial preparation that could be used in connection with MDL discovery and trials. The work on the *Gross* case also gave the MDL leadership and trial attorneys a roadmap as to how to prevail in future trials—which was the very reason why the NJ firms and the MDL entered into an

agreement to share resources. The MDL also gained the knowledge and unique expertise of the partners who worked on the *Gross* case, which included BL's partner Jeffrey Grand.

II.    **PARTNER JEFFREY GRAND'S HIGH-LEVEL WORK ON THE *GROSS* CASE AND FOR THE MDL SUPPORTS A HIGHER FEE**

Mr. Grand played a significant role in both the state and federal litigation against the Ethicon/Johnson & Johnson defendants. As co-liaison in the NJ multi-county litigation (MCL) and a member of the *Gross* trial team, Mr. Grand:

- Negotiated case management orders;

- Participated in the drafting and argument of discovery requests and briefing;

- Negotiated changes to search terms, database productions, ESI production format, plaintiff and defense fact sheets;

- Primary or secondary examiner for numerous Ethicon employee and expert depositions including: Henderson, Mittenthal, Parisi, Lisa, Meek, Bonet, Hoffman, Robinson, Yale, Smith, Miller, Beath, Brown, Gauld, Schneider, Murphy, Lucente, and Ulatowski;

- Assisted in preparation of expert reports and/or testimony for plaintiffs (Peggy Pence and Anne Weber);

- Worked up NJ Bellwether trial candidates, *Collins and McDonough*, including client and treating physician depositions;

- Participated in focus groups for the first NJ trial;

- Prepared deposition cuts for trial (*Gross* trial);

- Drafted and argued pre-trial motions including but not limited to motions to exclude both plaintiff and defense experts, and motions in limine (*Gross* trial);

- Argued evidentiary objections at trial in connection with exhibits and deposition testimony (*Gross* trial);

- Reviewed jury questionnaires in preparation for jury selection (*Gross* trial);

- Assisted in the drafting and argument of proposed jury instructions (*Gross* trial); and

- Provided support to lead counsel at trial.

Mr. Grand also provided support to three MDL trials, *Huskey v. Ethicon* ($3.27 million verdict for compensatory damages), *Lewis v. Ethicon* (favorable settlement after a two week trial in January 2015), and *Bellew v. Ethicon* (favorable settlement after a four day trial).

With respect to *Huskey* and *Lewis*, Mr. Grand's high-level partner work included:

- Deposition cuts, counters, and objections, including but not limited to O'Bryan, Kanerviko, and Lisa;

- Exhibit list preparation; and

- Prepared plaintiff's anticipated expert, Cheryl Blume (Dr. Blume was ultimately not used at trial).

With respect to the *Bellew* case, Mr. Grand, was a member of the trial team and contributed to the trial in several ways, including:

- Prepared numerous witness deposition cuts, counters, and objections, and argued disputed testimony before Judge Eiffert;

- Drafted opposition papers for Daubert and summary judgment motions, as well as motions pertaining to statute of limitations, fraudulent concealment, product withdrawal, and doctrine of completeness;

- Contributed to drafting of omnibus motion in limine;

- Participated in drafting of jury instructions;

- Participated in jury selection; and

- Provided support to lead counsel at trial.

Additionally, as a member of the PSC and at the direction of either Bryan Aylstock, Renee Baggett, or Tom Cartmell of the MDL, Mr. Grand was involved in special discovery projects on behalf of the MDL, including:

- Negotiating the Advamet document production;

- Negotiations with Skadden Arps regarding additional search terms and database productions; and

- Development of a spoliation claim against Ethicon.

Mr. Grand's work is exactly the type of work that must be highly-valued and highly-compensated by the FCC in order for their process to have any validity.  BL committed Mr. Grand to this litigation and he worked hard for the benefit of the MDL.  In BL's submission to the FCC, the overwhelming majority of BL's hours were billed by Mr. Grand in connection with performing high-level tasks.  BL's last submission of compensable hours (after internal cuts and self-audit of its time) was for 4,407 hours of time.  Mr. Grand's high-level work accounted for 3,563 of the 4,407 hours submitted by BL or approximately 81%.  Mr. Grand's time now equates to approximately 80% of the 3,951.5 accepted hours.

## III.   THE MDL AGREED TO ALLOW BL'S PARTICIPATION IN THE MDL FEE ALLOCATION PROCESS

As part of the MDL's effort to obtain the valuable knowledge and resources developed by the *Gross* case team and the NJ multi-county litigation (MCL), the MDL entered an agreement to acquire the resources of the MCL.  On or about August 28, 2012, Mr. Grand, as a representative of, and as co-liaison counsel in, the consolidated *In re: Pelvic Mesh/Gynecare Litigation*, Master Case No. 6341-10, then pending in the Superior Court of New Jersey, Atlantic County, was a signatory to an agreement ("Agreement") with MDL Leadership executed by Renee Baggett, Esq. and Thomas P. Cartmell, Esq. on behalf of the MDL.  A copy of the Agreement is attached hereto as **Exhibit A**.

The Agreement recognized, *inter alia*, that "[d]ue to the advanced stage of the NJ Litigation, as compared to the MDL Ethicon Litigation, and the value of work and work product generated in and in connection with the NJ Litigation, the MDL Leadership sees a need to and thus desires to share in the benefits of the aforesaid work and resulting work product." (Ex. A at ¶ 7).

> [The] good and valuable common-benefit work [ ] has been and will continue to be developed in and in connection with the NJ Litigation, …[and] expenditures of time, effort and money made to date for the common benefit by attorneys in and in connection with the NJ Litigation, are hereby recognized as valuable work and work product created for the benefit of the MDL, which shall be fairly compensated if application is made to the MDL, and the MDL Leadership agree to use their best efforts to ensure that the MDL Court fairly compensates the aforesaid common-benefit work performed in and in connection with the NJ Litigation, to the extent application is made. (Ex. A at ¶¶ 7, 8)

The Agreement also provided BL access to information and participation in fee allocation decisions. The Agreement stated that "in the event an MDL fee committee is established, the MDL leadership agrees to recommend to the District Court, and give their best efforts to ensure, that the Fee Committee include representation from the NJ Litigation." (Ex. A at ¶ 8) Despite the MDL leadership's contractual obligation to use their best efforts to appoint a NJ firm to the FCC, the MDL took no efforts to include representation from the NJ Litigation on the FCC. In fact, the MDL refused to include a NJ firm even after being reminded of their obligation. The NJ firms never served on the FCC. Now, the two NJ Firms that expended the most effort for the MDL plaintiffs object to the Fee Allocation.

## IV.    THE MDL'S FEES AND HOURS ALLOCATED TO BL

After receiving the FCC's proposed allocation, BL met with Judge Stack and discussed the problems with the BL's fee award in person and telephonically. Nevertheless, Judge Stack's Recommended Allocation of Common Benefit Fees and the Reimbursement of Shared Expenses and Held Costs by the Court Appointed External Review Specialist (the "Recommended Allocation") set the value of BL's hours at a blended rate of $352.36 per hour and did not increase the compensable hours to 4,407 from 3,951.50. Attached as **Exhibit B** is a spreadsheet of the MDL fees, hours, and a blended rate for each FCC firm and BL based on the Recommended Allocation. Exhibit B shows that BL received a blended hourly rate below those on the FCC.

On March 19, 2019, BL sent a document request to the FCC seeking the documents ordered in PTO # 332 to assist with this objection. The MDL rejected the request citing the *in camera*, *ex parte* review by the Court.

## ARGUMENT

I. **THE FCC DID NOT FAIRLY VALUE BL'S CONTRIBUTION TO THE MDL**

    A. **A Lodestar Cross-Check Shows BL Was Treated Unfairly**

A lodestar cross-check of Recommended Allocation's intended fee awards shows that the MDL plans to unfairly compensate BL. Courts recognize that the lodestar cross-check is a helpful gauge to check the fairness of fees awarded in common fund cases. *See In re Royal Ahold NV Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006); *see also, Jones v. Dominion Res. Servs,* 601 F. Supp. 2d 756, 759-60 (S.D.W.V. 2009). The MDL also agrees that a lodestar cross-check can show unfairness and the Court used the method in support of awarding the overall MDL fee. *See In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2327, 2019 WL 385423, at *10 (S.D.W. Va. Jan. 30, 2019) (using the MDL's lodestar as a "broad cross check on the reasonableness of the fee…."). 

Using the Recommended Allocation data, the fee allocation for BL is $1,392,331.25. The Recommended Allocation only accepted 3,951.5 hours of BL's time as compensable from the MDL.[1] A simple lodestar cross-check of this data shows that the MDL plans to compensate BL at a blended rate of $352.36 per hour.[2]

---

[1] As discussed at Section B *infra*, BL objects to its hours being cut by 455.5 hours. BL's last submission of compensable hours (after internal cuts and self-audit of its time) was for 4,407 hours, for which Mr. Grand's high-level work is approximately 81% of that time.

[2] In order to facilitate the discussion, BL calculated the blended rate based on the Recommended Allocation data by using the percentages of the overall fee awarded to BL to calculate the proposed fee and dividing the proposed fee by the hours accepted by the MDL. However, BL

Reviewing the blended rates awarded in the MDL shows that BL's fee is patently unfair. The Recommended Allocation has no breakdown of the compensable hours or fee amounts based on the level of timekeeper (partner, associate, paralegal) for any of the 89 firms submitting time—meaning that the "blended rate" is instructive, but incomplete as to how one firm or lawyer is being treated relative to others. Is a partner's time as valuable as a paralegal or low-level document reviewing attorney? Of course not—but the Recommended Allocation gives no information to discern how comparable timekeepers or work is to be compensated. Firms like Blasingam Burch, from which the MDL accepted 63,719.30 compensable hours, equating to an $847.48 blended hourly rate, must be receiving hourly partner rates well above $847.48 per hour. Even the weighted average blended rate for the FCC firms at $730.43 per hour is higher than BL's rate, and the FCC firms suffer from the same issue as Blasingam Burch.[3] In fact, even firms receiving lower blended hourly rates than BL are still being compensated at higher rates than BL because their hours likely contain more lower-level work, whereas BL's time is concentrated at the highest-level work. The math shows there is no question that BL should be paid more on any rational basis.[4]

But other factors also support a finding that BL should receive a higher fee. For example, BL faced a higher level of risk of non-payment for its work than other firms who were already

---

objects to its hours being cut and notes that the blended lodestar rate is $315.94 per hour based on BL's 4,407 hours submitted to the FCC.

[3] **Exhibit C** is a spreadsheet of the FCC firms' hours, fee, and a calculated weighted average blended rate based on the Recommended Allocation.

[4] The Recommended Allocation's claim that the FCC did not use lodestar rates to calculate the fee allocations is misleading. *Id.* at 36-37. The FCC required firms to track and submit compensable hours to calculate fees and the protocol did not allow flat rates to be paid per task. What the FCC seems to have done is that while it would not accept BL's billing rate for Mr. Grand of over $900 per hour, it effectively created its own billable rate for Mr. Grand based on hours submitted by BL.

fully compensated by favorable judgments/settlements in cases they tried. While BL received no fees to date for the successful results it helped secure in trials where it was part of the trial team, other MDL firms submitted hours that they have already been paid for in connection with representing individual clients at trial. The result will be two fees for the same work: one already paid by the client and now another from the MDL. Therefore, a successful individual litigation eliminated the risk of non-payment from the MDL. Those firms played with the house's money for the rest of the MDL. BL had no such protection from an unfair FCC and should be compensated at a higher rate for the higher risk it faced as it continued to commit resources for the good of the MDL plaintiffs.

Therefore, in order to fairly compensate BL for its high-level work, the Court should increase BL's fee, equivalent to the average hourly FCC partner rate multiplied by BL's 4,407 billable hours.

### B. The Billable Hours BL Submitted Are Compensable

The Court should allow compensation for BL's 4,407 billable hours submitted to the FCC. After BL self-audited its hours, the FCC only permitted 3,951.50 of BL's hours from BL's 4,407 submission. The rejected 455.5 hours, however, benefitted the MDL and were for work performed by BL and Mr. Grand.[5] There are a number of areas where this disallowance was particularly egregious, given the importance of the work being performed, and its contribution to the overall success of the litigation, specifically:

- September 24, 2012 through September 28, 2012 - 37.00 hours related to mock trial/focus groups in preparation for the trial of *Gross v. Ethicon*;

---

[5] Surprisingly, the MDL rejected 152.5 hours of BL's 455.5 rejected hours even though these hours pre-dated the Agreement deeming them valuable to the MDL.

- November 26, 2012 through December 15, 2012 - 23.00 hours related to preparation of pretrial orders and opposition to motions in limine in *Gross v. Ethicon*;

- November 4, 2012 through January 8, 2013 - 24.75 hours related to the trial of *Budke v. Ethicon*; and

- May 8, 2014 through June 20, 2014 - 111.25 hours related to the preparation for, and taking of, the depositions of defense experts Miles Murphy, M.D. and Vincent Lucente, M.D., which demonstrated that the experts withheld data and ultimately prevented Defendants from using Dr. Murphy as a testifying expert.

Most of the remainder of the hours barred by the FCC relate to Mr. Grand's Court appearances in the NJ litigation, as well as NJ bellwether work, depositions, motion practice and in a liaison role with the MDL, which the FCC inexplicably fails to recognize as compensable as common benefit time. *Compare with In re Vioxx Prod. Liab. Litig.,* 802 F. Supp. 2d 740, 772 (E.D. La. 2011) (citing similar work as work that should be compensated at high rates). One must wonder if similar time was discounted for MDL work, but of course, since the FCC refused to turn over any of its documents, it is impossible for BL to know for sure. Nevertheless, the FCC has not provided any acceptable reason for cutting any of these hours.

Accordingly, BL's fee should be increased to reflect the high-level work performed and to include the 455.5 hours that were cut by the FCC, for a total allowance of 4,407 billable hours.

## II. ALTERNATIVELY, BL REQUESTS DISCOVERY TO ENSURE THERE IS COMPARABLE COMPENSATION FOR COMPARABLE WORK

Fee allocation procedures must be consistent with "well-established class action principles and basic judicial standards of transparency and fairness." *In re High Sulfur Content Gasoline Prod. Liab. Litig.,* 517 F.3d 220, 227 (5th Cir. 2008).

The need for this objection could have been avoided if the MDL honored the Agreement and appointed a NJ firm to the FCC. It did not. BL had no real-time access to the FCC deliberations or documents reviewed, though that access was bargained for in exchange

sharing its TVM trial knowledge with the MDL. Now BL is required to unscramble the eggs in order to protect its interests. Accordingly, if the Court does not award BL a fee equal to the average hourly FCC partner rate multiplied by BL's 4,407 billable hours, BL requests the FCC's deliberation documents as listed in PTO # 332 at paragraph 3.

This information will be required to more fully present this objection. In fact, the failure to provide similar information has been held to violate an objector's due process rights. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 544 (9th Cir. 2016) (holding that the district court's use of *ex parte, in camera* submissions to support its fee order violated due process rights); *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614, 623 (9th Cir. 1993) (stating that an adversary was entitled to time records to evaluate a fee award); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986) (requiring disclosure of timesheets for an opportunity to challenge the reasonableness of a fee).

Accordingly, in the alternative, BL requests the same discovery provided to the Court by PTO # 332, and BL will agree to a protective order if one is deemed necessary.

## CONCLUSION

For the reasons set forth above, BL respectfully requests an increased fee, equivalent to the weighted average blended hourly FCC partner rate multiplied by BL's 4,407 billable hours for a minimum fee award of $3,219,005. In the alternative, BL seeks the documents requested by the Court in PTO # 332 in order to more fully brief this objection and to modify its requested allocation.

Dated: March 26, 2019

                                                                                    Respectfully submitted,

                                                                                    /s/ Michael B. Hissam
                                                                                    Michael B. Hissam (WVSB #11526)

**HISSAM FORMAN DONOVAN RITCHIE PLLC**
P.O. Box 3983
Charleston, WV 25339
www.HFDRlaw.com
(681) 265-3802 office
(304) 982-8056 fax
mhissam@hfdrlaw.com

*Counsel for Objector Bernstein Liebhard LLP*

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Sandy A. Liebhard
10 East 40th Street
New York, NY 10016
Tel: (212) 779-1414
Fax: (212) 779-3218
Bernstein@bernlieb.com
Liebhard@bernlieb.com