# Exhibit "1"

FILED
MAR 22 2016
BRIAN R. MARTINOTTI
J.S.C.

| | |
|---|---|
| IN RE: PELVIC MESH/GYNECARE LITIGATION | SUPERIOR COURT OF NEW JERSEY, BERGEN COUNTY, LAW DIVISION CASE NO. 291   BER-L-11575-14 MCL MASTER CASE NO. L-6341-10-CT |
| | CIVIL ACTION |
| APPLIES TO ALL CASES | CASE MANAGEMENT ORDER # 26 |

This Matter having come before the Court pursuant to the Court's direction at the December 2, 2015 status conference, Plaintiffs have submitted this Order to the Court to establish guidelines to apply to assessments against settlements and verdicts obtained from the date of this Order going forward, and applications to this Court by attorneys for payment of common benefit fees or expenses, from the assessments. These guidelines are not meant to be exhaustive, and the Court may issue additional procedures, limitations, and guidelines in the future, if appropriate. Therefore, for the foregoing reasons, and in recognition of the need for a mechanism to assess cases and reimburse Plaintiffs' counsel, as appropriate, for common benefit time and expenses, and for good cause shown;

IT IS on this 22 day of March, 2016, Ordered:

### 1. Appointment of Common Benefit Liaison Counsel

The Court hereby appoints Adam M. Slater as common benefit liaison counsel, recognizing that Mr. Slater has guided this litigation from its inception, and has the most detailed knowledge of the work performed, expenses paid, interaction and involvement with related litigation around the country, including the MDL venued in the Southern District of West Virginia, and the value of that work in advancing the litigation on behalf of all plaintiffs. The Court recognizes that

significant, valuable work has been performed and expenses advanced, by certain Participating Counsel, as defined herein, and that this work and these expenses have been advanced and paid for the common benefit of all claims in this litigation.

By way of example, and not by way of limitation, this work and advanced expenses includes: the initiation of the NJ Litigation in early 2008, prior to the first FDA Notification on October 20, 2008, including but not limited to the matter of *Lombardi v. Ethicon, et. al.* in which in excess of 100,000 pages of significant documents were initially obtained and analyzed and numerous key depositions were noticed; developing and negotiating master pleadings and master document requests, that have been utilized as templates in the MDL; taking extensive discovery, including the review and analysis of millions of pages of documents obtained through the New Jersey litigation, extensive databases, instructional videos, and related materials, and the depositions of dozens of relevant witnesses, including the identification of and depositions of key corporate designees and witnesses; litigating and arguing numerous significant motions and informal applications, including but not limited to applications to compel depositions and the production of documents and information, including a motion that resulted in an Order compelling the depositions of Johnson & Johnson's most senior executives, a motion successfully challenging Ethicon's over-designation of "confidential documents," a motion and appeal successfully challenging defendants' attempts to consult and retain treating urogynecologists, gynecologists, and urologists as defense experts without significant necessary protections and limitations, reviewed and challenged the propriety of redaction logs and privilege logs; a motion and appellate practice in New Jersey and Massachusetts, resulting in the depositions of the editors of the New England Journal of Medicine with regard to a key article regarding the Prolift device, developing trial theories and themes; retaining and developing common experts, and working with them in preparing their expert reports, as well as the related negotiation

and establishment of protocols for, and the conduct of, review of pathology samples, and material science testing; researching and analyzing common legal issues; analyzing and summarizing dozens of depositions; conducting discovery in connection with and preparation of and for bellwether trials, the first of which, *Gross v. Ethicon, et al.,* commenced in January, 2013 with the argument of *in limine* motions and resulting in a favorable verdict to Plaintiffs; preparing bellwether trials; and assisting the prosecution of cases outside of New Jersey, including in the MDL.

## 2. Administration

The recovery of common benefit time and cost reimbursements will be allowed and is essential. This will be for "participating counsel" as defined herein. Participating counsel shall only be eligible to receive common benefit attorneys' fees and cost reimbursement if the time expended, costs incurred, and activity in question were/are (a) for the common benefit, (b) appropriately authorized (as defined herein), and (c) approved by this Court.

"Participating Counsel" are counsel who desire to be considered for common benefit compensation and as a condition thereof agree by virtue of their submission of an application for payment of common benefit compensation, to the terms and conditions herein and acknowledge that the Court will have final authority regarding the award of fees, and the allocation of those fees and awards for cost reimbursements in this matter. Participating Counsel have (or will have) agreed to and therefore will be bound by the Court's determination on common benefit attorney fee awards, attorney fee allocations, and expense awards. The Court recognizes that there are already common benefit orders filed in the MDL which apply to many of the law firms with cases in the New Jersey litigation. Although this Court has the authority to direct assessment against cases handled by law firms who are also involved in and subject to the common benefit orders

entered in the MDL, the moving party here only seeks to have this Order assess cases handled by law firms who are not or do not become subject to the MDL common benefit orders (the "Assessed Law Firms"), and thus the assessments provided for in this Order shall only apply to cases handled by law firms who are not, or do not become, subject to the MDL common benefit orders (hereafter the "Assessed Cases.").[1] It is intended by this Order that there not be a "double assessment" on any case.

Common benefit liaison counsel is and will be expected to interact with the MDL leadership and fee compensation committee, regarding common benefit allocation and obligations.

"Authorized Common Benefit Work" includes assignments made by common benefit liaison counsel, including through the Gynecare Work Group formed at the outset of this litigation, and through which most, if not all of the compensable time and expenses has been expended, and the work up of bellwether cases. No time spent on developing or processing purely individual issues in any case for an individual client (claimant) will be considered or should be submitted, nor will time spent on any unauthorized work.

Within forty-five days (45) of entry of this Order, common benefit liaison counsel shall submit a proposed order detailing the guidelines and procedures for the submission and compensability of common benefit time and expenses by Participating Counsel. Thereafter, common benefit liaison counsel shall appoint a committee of no more than five attorneys, inclusive of common benefit liaison counsel, who are knowledgeable with regard to the work performed and expenses advanced in this litigation, to review and evaluate submissions by participating counsel,

---

[1] The Court recognizes that there is an Agreement in place between the New Jersey litigation and the MDL, whereby law firms with no cases in the MDL are permitted to subject their New Jersey cases to the MDL common benefit orders, in order to seek reimbursement/payment for common benefit work and expenses. Any such law firm that elects to subject itself to the MDL common benefit orders or is otherwise subject to the MDL common benefit orders pursuant to their terms shall not be subject to assessment of its cases in New Jersey pursuant to this Order, for the reasons set forth herein.

and to assist in the submission of recommendations to the Court. The composition of the committee shall be subject to approval by Court order.

### 3. Assessments

A total assessment for payment of attorneys' fees and approved common-benefit expenses of five percent (5%) of the Gross Monetary Recovery shall apply to the Assessed Cases, resulting in a verdict and/or resolved from this date forward, now or hereafter subject to the jurisdiction of this Court, or as to which the Assessed Law Firms had access to common benefit work product, regardless of the venue. This includes one percent (1%) to be deducted from the plaintiff's recovery, and four percent (4%) to be deducted from the net attorneys fees. The Gross Monetary Recovery shall include:

a) all sums to be paid in settlement or judgment of the claim;

b) exclude court costs that are to be paid by any defendant;

c) exclude any payments made directly by any defendant on a formal intervention asserted directly against the defendant by third-parties, such as physicians, hospitals, and other health-care providers on Court recognized valid subrogation claims related to treatment of plaintiff; and

d) include the present value of any fixed and certain payments to be made in the future. Nothing in this Order is intended to increase the attorneys' fee paid by a client, nor to in any way impair the attorney/client relationship or any contingency fee contract.

### 4. Establishment of and Payments into the Fund

Within forty-five (45) days of entry of this Order, common benefit liaison counsel shall establish a fund into which assessments shall be paid and the Court shall appoint a Certified Public Accountant to administer the fund.

Within forty-five (45) days of entry of this Order, common benefit liaison counsel shall provide to Defendant's counsel, the Court, and the PSC in the MDL a list of all "Assessed Law Firms" subject to this Order and which, by definition, are not subject to the MDL Common Benefit Orders. Defendants may rely on such list as conclusive as to the identities of the Assessed Law Firms, and any changes to such list must be promptly provided to Defendant's counsel.

Information regarding the amount of an assessment to be paid into the fund pursuant to this Order will be provided only to the individual Assessed Law Firm holding the Assessed Claim(s), to the court-appointed Certified Public Accountant charged with overseeing the fund, and the Court, and shall otherwise remain confidential and shall not be disclosed to any other counsel or persons unless ordered by the Court. In connection with the allocation and distribution of common benefit payments at the conclusion of the litigation, Plaintiffs reserve the right to petition the Court for an order directing the disclosure of the individual amounts paid into the fund. Defendants reserve the right to oppose such relief to the extent such disclosure violates the confidentiality provisions of any settlement agreement.

Upon payment of any assessment into the fund pursuant to this Order, Defendants shall be released from any and all responsibility to any person, attorney or claimant with respect to the assessment paid into the fund. Any person, attorney, or claimants allegedly aggrieved by an assessment paid pursuant to this Order shall seek recourse only as against the fund and not against the Defendants.

Defendants are directed to withhold the assessment from the amounts paid on an Assessed Case and to pay such assessment into the fund as a credit against the settlement or judgment. If an assessment is not withheld and paid pursuant to the terms of this order, the Defendants as well as the Assessed Law Firm and the plaintiff(s) represented by such Assessed Law Firm are jointly

responsible for payment of the assessment into the fund.

FURTHER ORDERED that a true copy of this Order be served on all plaintiffs' counsel by posting this Order on Lexis/Nexis, within ten (10) days hereof. In addition, a copy of this Order shall be posted on the Court's website.

_____
HON. BRIAN R. MARTINOTTI, J.S.C.