IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| --------------------------------------------------------- | |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| --------------------------------------------------------- | |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| --------------------------------------------------------- | |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| --------------------------------------------------------- | |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| --------------------------------------------------------- | |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| --------------------------------------------------------- | |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL NO. 2511 |
| --------------------------------------------------------- | |

**KLINE & SPECTER'S REPLY TO THE FCC'S OMNIBUS RESPONSE
TO THE OBJECTION OF KLINE & SPECTER, P.C. TO THE
RECOMMENDED ALLOCATIONS OF FORMER JUDGE STACK**

## I.      INTRODUCTION[1]

The FCC's response should heighten a sense of alarm about the FCC's conduct in this litigation.  Initially, the response is replete with inaccuracies and false statements.[2]  Even more striking is the lack of denial of the K&S's assertions in its objection. For example, the FCC does not question K&S's billing records or timekeeping. The FCC does not deny that all of K&S's state court and MDL work was authorized.  The FCC does not oppose K&S's assertion that both this Court and the FCC assured K&S that its state court time would be compensated. It does not contradict the assertion that FCC trials were valued more than other trials, for no good reason. The FCC does not deny K&S's success in the courtroom – with six verdicts totaling over $146 million – and never questions that K&S was repeatedly extolled by the FCC for its excellent work in this litigation.

In addition, the FCC does not dispute K&S's assertion that former judge Stack ("Mr. Stack") relied on the opinions and work product of the FCC and failed to use the *Johnson* factors. It does not dispute that there has been no global settlement and instead that the resolution of cases has been piecemeal—involving individual, puny settlements by the same firms that lay claim to the bulk of the fees. It never challenges K&S's argument that Mr. Stack's recommendation for the allocation of the future fund to be appropriated at the same rate as the current distributions is fundamentally unfair. Perhaps the most tellingly, neither the FCC nor Mr. Stack deny that Mr. Stack told K&S that K&S was being undercompensated.  There cannot be any clearer admission

---

[1] Kline & Specter, P.C. (hereinafter "K&S") submits this Reply to the Common Benefit Fee and Cost Committee's Omnibus Response to the Objections of Former Judge Stack ("FCC Response") pursuant to S.D.W.V. local rule 7.1(a)(7) which provides for a right of reply.

[2] The FCC states that there are four objectors.  In fact, 24 out of 94 firms objected to the preliminary recommendations. The FCC transferred a relatively small amount of money from the 8 FCC member firms to 17 objectors.  This still left FCC member firms with 60% of the money.

supporting the increase of K&S's common benefit allocation than the admission by Mr. Stack himself that the work of K&S has been undervalued by the FCC.

While it is Mr. Stack's recommendation to which K&S has objected, it is the FCC that is responding. Why? If Mr. Stack thinks there is something to be said about K&S's objection to his recommendations, obviously he should be the one saying so.  Instead, the FCC has answered on Mr. Stack's behalf, again improperly mixing together the roles of Mr. Stack and the FCC.

It is also particularly disturbing that the FCC has been informed by Mazie Slater and K&S of evidence of fraudulent billing and improper influence on Mr. Stack, yet neither the FCC nor Mr. Stack has substantively replied or investigated those concerns.  *See* K&S's Objection to the Recommendation of Mr. Stack, at pp 23-24; Mazie Slater Objection's to the Recommendation of Mr. Stack, at p. 6. K&S further replies to the FCC's response as set forth below.

## II     ARGUMENT

**1.**     **State Court Work.** Thousands of hours of K&S's vital common benefit work continue to go unrecognized. The FCC notes that only two of K&S's cases were tried before the arbitrary December 2016 cut-off date: *Hammons v. Ethicon*, and *Carlino v. Ethicon*. The $13.5 million verdict in *Carlino* – the first against Ethicon's still marketed TVT – was affirmed by the Pennsylvania Superior Court on April 11, 2019. This opinion is important for future pelvic mesh trials with key rulings as to the statute of limitations, FDA, failure to warn and punitive damages. *See Carlino v. Ethicon*, 2019 Pa. Super. 114.

The FCC incorrectly claims that K&S did not explain why their state court work should be recognized as for the common benefit.  *See* FCC Response, at p. 7. K&S has explained how its work in state court and in the MDL has helped develop successful trial strategies, bolster trial

packages, bring about key rulings, weaken Ethicon's ability to defend these cases, win verdicts and drive Ethicon to settle.  *See* K&S Objection to the Recommendation of Mr. Stack.

    **2.**    **The One Verdict Per Product Postulate.** The work in *Hammons v. Ethicon* was not credited despite being the first design defect verdict against Ethicon's Prolift.[3]  It was not until February 27, 2018, after years of litigation, that the FCC and Mr. Stack announced a "one verdict per-product" postulate stating that "[o]nce a favorable result was reached with regard to a particular TVM product, no further state court time was considered by the FCC as being for the common benefit." *See* February 27, 2018, Letter from former Judge Stack attached as Exhibit "A."

    In Exhibit "A" to the FCC's Preliminary Recommendations regarding K&S's common benefit time, the FCC used this postulate as an excuse for not recognizing a huge amount of K&S's state court time, including over 4000 *Hammons* hours. This is in direct conflict with previous court orders, FCC assurances, and established mass tort practice where successful litigation on multiple fronts is encouraged and valued. This about-face upended a basic premise upon which K&S became actively involved in pelvic mesh litigation.

    **3.**    **The Value of Litigating in the Philadelphia Court of Common Pleas.**  The FCC states that working to keep cases in the Philadelphia Court of Common Pleas is "detrimental." *See* FCC Response, at p. 50.  That is illogical and contradictory.  Even Mr. Stack admitted that "state court trials put pressure on defendants to settle." *See* K&S's June 12, 2018 FCC hearing transcript, p. 29:19-20 attached as Exhibit "B." The Philadelphia suits were in keeping with the basic approach to mass tort litigation to make defendants defend on multiple fronts.  It is also contrary to the FCC's members' praise of K&S for exactly those efforts, cited extensively in K&S's

---

[3]  The FCC incorrectly states that while asserting the importance of the *Hammons* verdict, K&S "urges that the value of the *Gross* trial should be diminished in light of the fact that the design defect claim was not successful there." *See* FCC Response, at p. 29.  This is false.  While K&S had very little to do with the *Gross* trial (working less than 50 hours of common benefit time on *Gross*), K&S believes that the work on both trials was for the common benefit.

objection.  *See e.g.*, December 19, 2013 email from Lee Balefsky to FCC members attached as Exhibit "C."

The conduct the FCC calls a "common detriment" is simply zealous advocacy, well within the bounds of K&S's ethical duties to its clients.  If anyone is to be socked with the label of common detriment, it is the FCC for taking on too many cases and settling them for measly amounts to the common detriment of tens of thousands of women.

4.  **Successfully Co-Trying Cases.** The FCC argues that multiple firms somehow do not deserve credit for the *Hammons* trial. *See* FCC Response, at pp. 29-30. In fact, multiple firms should receive credit for this important work. Mazie Slater correctly claims that they co-tried *Hammons* with K&S and K&S correctly claims that they co-tried *Hammons* with Mazie Slater. These hours should be recognized for both firms.

5.  **Federal v. State Court Time.** The FCC states that they "logistically" handled 100,000 cases. *See* FCC Response, at p. 14. That is misleading.  These cases were managed by the individual firms, not the FCC.  While the FCC trumpets the results of its member firms' trials, the state court trials by K&S brought bigger verdicts and more pressure on the defendants.   The FCC has put forth no evidence that cases it tried were any more beneficial than the cases tried by K&S. Obviously, a favorable verdict is for the common benefit no matter where it occurs.

6.  **Development of Experts.**  The FCC claims that K&S did not develop experts. *See* FCC Response, at p. 32. As K&S has said, the firm <u>helped</u> in the development of experts. Development of experts is a collective and ongoing process.  K&S has developed more than 40 experts, nearly as many as the FCC.  Many are fresh to the litigation. *See* K&S's list of Developed Experts attached as Exhibit "D."   The continued development of existing experts and new

4

development of fresh experts is clearly beneficial to all plaintiffs.  K&S's experts and their work product is available to all plaintiffs' counsel.

7.     **Work Product.** The FCC states that K&S has been more of a consumer than a provider of MDL work product. *See* FCC Response, at p. 46. This is untrue on both ends.  In *Emmet v. Ethicon*, a recent K&S plaintiffs' verdict, only 30% of liability documents came from the MDL. K&S's work product is open to all and has been consumed by many.

8.     **Risk.** The FCC argues that its member firms are the only ones in this litigation who have taken on risk.  *See* FCC Response, at pp. 14-15.  K&S has taken far more risk than most – if not all – firms involved in this litigation.  K&S has tried 13 cases, far more than any firm. That is more than one third of all mesh trials tried in this litigation.  K&S's trial record includes six victories, two losses, two hung juries, and three cases currently on trial.[4] *See* Trial Awards Chart attached as Exhibit "E." While K&S has tried more than 33% of the cases, with all the risk associated with trial, the FCC proposes K&S receive only 1.07% of the common benefit fund. This is a shocking disparity.

K&S has utilized more than 50 K&S and contract attorneys to discover 900 Wave cases; develop 40 additional experts; obtain and serve 600 expert reports; and take 1200 depositions with an out of pocket cost of $8 million and climbing. Who else has done that?  K&S agrees that the firms that take on the most responsibility and take on the most risk should be the most rewarded. That is exactly what K&S has done.

9.     **Per-case Settlement Average – still undisclosed.** It is jaw dropping that at the end stage of this MDL, the FCC still won't disclose the exact per-case average settlement.  No doubt that is because that number is embarrassingly puny, speaking to the poor performance of the FCC,

---

[4]  The FCC misstates K&S's trial record. *See* FCC Response, at p. 52.

who admit to having had a hand in settling 75% of the cases. *See* FCC Response, at p. 13. The FCC does not deny that it took too many cases, couldn't discover them and could not try them. It benefited from the work of K&S and others whose trial victories motivated the defendants to settle. Then they settled for so little that they refuse to admit the exact amount—except that they have admitted that they knuckled under in one-on-one conversation. Nothing was more injurious to the common benefit than feeble settlements for tens of thousands of badly injured women.

**10.** **FCC's Comparison with Lead Counsel in Other MDLs.** The FCC's comparison of the treatment of its member firms with the treatment of lead counsel in other MDLs is also misplaced. *See* FCC Response, at p. 16. The average award to the lead counsel in the cases cited in the FCC's response is 47% - far below the 60% the FCC seeks for itself. *See* FCC Response, at p. 16. Furthermore, each litigation cited is easily distinguishable from the pelvic mesh litigation. Unlike here, these MDLs involved global settlements, quick resolutions, smaller funds, bankruptcy, and/or a lack of self-dealing where the top firms did not make allocation recommendations.[5] The pelvic mesh litigation involved far more trials than the others.

---

[5] 1) *In re Copley Pharmaceutical, Inc., "Albuterol" Prods. Liab. Litig.*, 50 F.Supp.2d 1141 (D.Wyo.1999): global class action settlement after a 42 day trial.

2) *In re Vioxx Prods. Liab. Litig.*, 802 F.Supp.2d 740 (E.D.La.2011): global settlement.

3) *In re Prempro Prods. Liab. Litig.*, 2014 WL 3809101 (E.D. Ark. 2014): global settlement.

4) *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, Case 1:13-md-02419: bankruptcy settlement.

5) *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, Case 1:13-md-2428: only $15,970,491.01 in fund. Two top firms receiving 28% of fund – but these two firms did not make allocation recommendations.

6) *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, Case 2:09-md-2047: only $11,313,368 in fund and only 27 firms received common benefit awards; alsoa global class action settlement.

7) *In re: Yasmin and Yas (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, Case 3:09-md-02100: two Yasmin/Yaz settlements set the overall walkaway percentage at 90% of all eligible gallbladder claimants and 97.5% of all arterial-thromboembolic-event claimants.

8) *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2017 WL 3033134 (W.D. La. 2017): two firms out of 31 applicants allocated 43.65% of common benefit award – but these two firms did not make allocation recommendations.

9) *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, on Apr. 20, 2010, Case 2:10-md-2179: global class action settlement.

Regrettably, the TVM litigation is another example of internal conflicts of interest and self-dealing problems that have sometimes sullied mass tort litigation. *See* Elizabeth Chamblee Burch, *Monopolies in Multidistrict Litigation,* 70 Vand. L. Rev. 67 (2017); Charles L. Becker, Shanin Specter, & Thomas R. Kline, *How Not to Manage a Common Benefit Fund: Allocating Attorney's Fees in Vioxx Litigation*, 9 Drex. L. Rev. 1 (Fall 2016).

11.    **Vioxx Litigation Comparison.** The FCC cites Judge Fallon and the Vioxx litigation extensively.   In Vioxx, K&S's common benefit lodestar was $12,080,690, pretty close to their TVM common benefit lodestar of $16,386,106. K&S was not a favored insider in the Vioxx litigation either.   K&S received no MDL trial assignments, though they were tasked with the tough job of developing the causation case.   K&S's recommended common benefit fee in Vioxx was $4,000,000, pretty close to their recommended common benefit fee in TVM of $3,745,000.  The night before the Vioxx common benefit hearing, the fee committee agreed to pay K&S $15,000,000, which was approved by Judge Fallon.  If the Vioxx litigation is a benchmark, K&S deserves far more than has been recommended here.

12.    **Hourly Rates and Lodestars.** There is nothing reasonable about the 8 FCC member-firms receiving an average of $730/hour while K&S is proposed to be allocated $115/hour, as per its submitted hours.  The FCC member firm's hourly rate is nearly 6.5 times the multiplier applied to K&S's proposed $115 hourly rate and nearly twice the $400 hourly rate applied to K&S hours after the FCC's staggering reduction of those hours on the bogus basis that state court time doesn't count.  K&S performed 32,270.19 hours of common benefit work in the pelvic mesh litigation up to the December 2016 cut off, for a lodestar of $16,386,106. The proposed award of $3.745 million is less than 25% of K&S's lodestar and way less than the lodestar divider

even when compared to the other objecting firms. K&S should receive a multiple of its lodestar like other "leaders," not a fraction.

It is true, as the FCC says, that the percentage of the fund fee can be an appropriate measure for a common benefit fee. But that approach requires a lodestar cross-check, which was not done here. *See In re Royal Ahold N.V. Securities & ERISA Litigation*, 461 F.Supp.2d 383, 385 (D.Md.2006). This Court should consider both the percentage of the fund method and a lodestar crosscheck.

13.    **Importance of Hours.** The FCC oscillates when it comes to the importance of total firm hours. It states that the process is more about substantive contributions and "not simply the total amount of hours." *See* FCC Response, at p. 17. The also FCC brags that its member-firms "were collectively responsible for 299,639.34 recognized common benefit hours" when attempting to justify the FCC member firms' proposed fee awards. *See* FCC Response, at p. 13. Contrarily, Mr. Stack totally disregarded the number of hours approved by the FCC in his recommendation.

14.    **Future Allocation of Funds.** Mr. Stack's recommendation that any future funds be distributed by a 70/30 ratio (where 70% of future funds would be distributed using current allocation percentages and 30% would be subject to distribution per a court order) would rob K&S of fair compensation for enormous common benefit work. It is unquestionable that K&S has done more work for the common benefit since 2016 than any other firm involved in this litigation and has a lodestar of $14,823,943 since the December 2016 cutoff date for the current allocation. This includes active discovery with Ethicon, Boston Scientific, American Medical Systems, Covidian, Bard and Coloplast, and 11 trials since December 2016, work which continues to this writing.[6]

---

[6] **Lana Keeton.** The FCC preposterously claims that K&S is "coordinating directly with the non-attorney objector, Ms. Lana C. Keeton, no doubt encouraging her false and defamatory statements against the FCC, its members and others." *See* FCC Response, at p. 48. This is ludicrous. No one at K&S has ever spoken to or coordinated with Lana Keeton in any way. K&S agrees that she has defamed TVM plaintiffs' counsel. Ms. Keeton, unsolicited, sends lots

## III.   CONCLUSION

For the reasons stated above, K&S respectfully requests that Mr. Stack's recommendations be rejected and new allocations be issued, accurately reflecting appropriate compensation for the common benefit work performed by K&S.

Respectfully submitted,

KLINE & SPECTER, PC

Shanin Specter, Esquire
Lee B. Balefsky, Esquire
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Counsel for Plaintiffs*

Dated: April 15, 2019

BOWLES RICE, LLP

By:   /s/ Floyd E. Boone Jr.
Charles M. Love, III (WVSB 2254)
Floyd E. Boone Jr. (WVSB 8784)
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100 (Tel.)
(304) 347-1746 (Fax)
fboone@bowlesrice.com
*Counsel for K&S, P.C.*

---

of stuff to lots of people, including the letter of Mr. Stack that so upset the FCC. As stated in their objection, K&S attached Ms. Keeton's letter from Mr. Stack simply to show that Mr. Stack continues to call himself "special master." The FCC runs away from title of "special master," doubtlessly because that is a specific term used in the Federal Rules of Civil Procedure with specific obligations that have been wholesale violated here. See Fed. R. Civ. P. 53(a)(2).