# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| IN RE: COOK MEDICAL, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE: NEOMEDIC PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2511 |

***THIS DOCUMENT RELATES TO ALL CASES***

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

**ANDERSON LAW OFFICES' REPLY IN SUPPORT OF OBJECTIONS**

**I.   INTRODUCTION**

The 74-page Common Benefit Fee and Cost Committee's Omnibus Response ("FCC Omnibus Response") filed April 8, 2019, furnishes the first significant explanation by the Fee and Cost Committee ("FCC") for why nearly one-third of the time entries submitted by Anderson Law Offices ("ALO") were rejected. Despite the "laborious and painstaking" process that was supposedly conducted over the course of more than one year, all the FCC ever provided specific to the firm previously was a single cryptic paragraph, which contained few of the criticisms that are now leveled. It is, of course, impossible to fully and persuasively respond to dozens of pages of new arguments in just a ten-page Reply. ALO will nevertheless attempt to do so in accordance with this Court's directives.

**II.   THE INAPPROPRIATENESS OF THE *IN CAMERA* REVIEW**

Notably, the FCC has not lodged a meaningful objection to ALO's request for an opportunity to review the materials that this Court intends to examine *in camera* and supplement these objections as necessary. *Anderson Law Offices' Objections to Common Benefit Fee Allocation and Reimbursement of Cost Recommendations filed March 26, 2019 ("ALO's Objections"), pp. 6-8, 25*. The FCC argues only that the District Court can prohibit formal discovery in connection with fee allocation disputes, without ever identifying any reasons why ALO should be precluded from reviewing the data and information upon which the recommendations are based. *FCC Omnibus Response, 23-25*. The earlier assertions that some sort of legal privilege was in play have now been abandoned. In contrast to the authorities that the FCC is now citing, ALO is not requesting any deposition of committee members or disclosure of confidential deliberations. The firm seeks only that which could not possibly be objectionable, which is an opportunity to evaluate the evidentiary support that has been offered for the FCC's proposal to allot two-thirds of the common benefit fund to themselves.

The FCC's strategy is readily apparent. Over and over this Court has been advised

Paul W. Flowers Co., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

1

that the "burden" of proof now rests upon the objecting firms. *FCC Omnibus Response, pp. 5, 6, 9, 21, 34, 50, 54, 63, 69*. Yet, ALO is being denied the very evidence that is needed to satisfy these demands. The representation that "abundant information" has been furnished is simply false. *Id., p. 23*. All that the FCC has been willing to disclose with regard to themselves are the totals of their time submissions, approved time, and approved expenses. None of their time and expense entries have been divulged to ALO.

From this scant data, however, simple mathematics reveals that the FCC now stands to recover 66.854% of the total common benefit fund with an average hourly rate of $738.02. *ALO's Objections, Exhibit 2*. The astounding two-thirds recovery figure has never been significantly altered despite all the purported adjustments by the FCC and External Review Specialist in response to the objections that have been raised. The average hourly rate for the non-member firms has also remained close to $268.42. *Id*. This mathematically indisputable discrepancy should be sufficient, without more, to justify the disclosure of all the data and information that was submitted by all the participating firms as directed in the PTOs.

As is undoubtedly appreciated, the FCC members' own time and expense entries would be invaluable for demonstrating that none of the new criticisms against ALO's own submissions possess merit. For instance, there is every reason to believe that the FCC members have approved their own work in "state court" actions as well as substantial time for paralegal services, while rejecting ALO's indistinguishable entries. And while Benjamin Anderson, Esq. ("Attorney Anderson") is now being berated for submitting more than 3000 hours in a single year, there are undoubtedly FCC members who did the same. *FCC Omnibus Response, p. 39*. Likewise, a review of their own time submissions will also confirm in all likelihood that they too have claimed to have furnished more that 15 hours of common benefit time in a single day, particularly for necessary overseas travel and marathon deposition sessions. *Id., p. 39*. The effort to belittle ALO's contributions as a "single lawyer" firm has been supported with a chart representing that certain FCC

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

members had between 34 and 89 lawyers and paralegals actively working toward the common benefit. These unsubstantiated representations are implausible, and the FCC's submissions will show in all probability that most FCC firms assigned just four or less experienced lawyers to TVM who actually contributed significant and valid *common benefit* hours. None of the FCC's denunciations should be taken seriously by this Court so long as they alone enjoy unfettered access to all of the participating firms' time and expense submissions.

      The violation of fundamental notions of fair play and due process is particularly evident now that the FCC members are claiming that they played a far greater common benefit role than appears to be realistic. For example, this Court has been assured that the FCC members "were collectively responsible for 299,639.34 recognized common benefit hours" and "had an interest in and/or are responsible for securing the resolution of greater than 75% of cases filed in the MDL." *FCC Omnibus Response, p. 13.* And they allegedly devoted thousands of hours to coordinating the "waves" that had been released by the Court. *Id., p. 38.* There is no way of confirming, of course, whether this purported work really was justified when their individual entries are known only to themselves. Indeed, the objectors have been repeatedly castigated for having "ignored" all of the FCC members' alleged efforts. *Id., pp. 13-15.* But how can ALO be expected to blindly accept that these eight firms really are deserving of two-thirds of the fund when they refuse to permit any review of the data that supposedly substantiates their claims?

      The FCC relies upon *In re Vioxx Prod. Liab. Litig.*, 802 F. Supp. 2d 740, 774 (E.D. La. 2011), as support for the proposition that a small number of objectors may serve as adequate indicia of fairness of a process. *FCC Omnibus Response, pp. 4-5; PageID#: 190028-190029.* <u>Not so.</u> In *Vioxx*, it was fair procedures that guaranteed fundamental fairness in the allocation of common benefit fees. *Vioxx Prods.*, 802 F. Supp. 2d at 744 ("In this case, the lengthy fee allocation procedure has provided an opportunity for common benefit fee applicants to review the [fee committee's] recommendation and the

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

Special Master's recommendation as they pertain to all applicants, and to comment on those recommendations."); *see also Id.* at 772 ("The takeaway from *High Sulfur* is that in allocating a fund of attorneys' fees, the Court must conform to 'traditional judicial standards of transparency, impartiality, procedural fairness, and ultimate judicial oversight.' 517 F.3d at 234. That requires creating a sufficient record, making sufficient factual findings, considering the time worked and the *Johnson* factors, providing an opportunity to be heard to all the applicants, and exercising independent judgment in allocating those fees rather than simply rubber-stamping a committee recommendation.").

Vitally, the <u>eighteen firms</u> in *Vioxx* that initially objected to the fee committee's final proposed recommendation were provided access to "extensive meetings with the Court-appointed CPA and access to submitted time records." *Vioxx Prods.*, 802 F. Supp. 2d at 768. A representative of the *Vioxx* fee committee sat for "a nine-hour deposition" for the benefit of the objectors prior to a week-long hearing at which "[o]bjectors testified and submitted evidence regarding their contribution to the common benefit in support of their requested allocation." *Id.* Only after these vital procedural guarantees of fairness were undertaken, and after <u>informed negotiation with the fee committee</u>, did the objectors whittle themselves down to four. *Id.* The lesson of *Vioxx* at this juncture is that sunlight is the best disinfectant; it is entirely possible that more forthcoming disclosures by the FCC may have resulted in zero objectors at this phase.

The FCC similarly cites to *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching Grades 7-12 Litig.*, 555 F. Supp. 2d 661, 668 (E.D. La. 2007), for the proposition that the assent by 90 of 94 firms to the recommended allocation "stands as testament to the fairness and transparency of the allocation process and refutes these remaining objectors' protests to the contrary." *FCC Omnibus Response, p. 4; PageID#: 190028*. The *Praxis Principles* common benefit order is not helpful on this point because the fundamental fairness of the common benefit fund allocation procedures was not at

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

issue. An objector had argued instead that their time had been accepted as being for the common benefit, and the fee committee should thus be "estopped from treating it differently." *Praxis Principles*, 555 F. Supp. 2d at 666. The Court remarked that the almost-unanimous acceptance of the fee committee's allocation was "telling of the fairness of the committee's approach" only in the context of an analysis of judicial estoppel, which turned in part on whether the fee committee stood to benefit unfairly from having asserted inconsistent positions. *Id*. at 666-668. Importantly, the objector had "presented no evidence that indicates that the [Fee Committee] members acted improperly." *Id*. at 668. And even though fairness of the process was not a litigated issue, the Court still remarked that it was necessary to remain "sensitive to the possibility" that the fee committee's authority to make their own award "could encourage self-dealing or a lack of impartiality." *Id*. *Praxis Principles* is simply an unhelpful authority, except to the extent that District Judge Vance counseled attention to the concern for self-dealing.

It is certainly significant that the FCC has furnished no response at all to the earlier identifications of numerous discrepancies that were revealed by the disclosure of Certified Public Account John Jenkins' data through August 24, 2016, which had been attached to the Motley Rice TVM Historical Analysis. *ALO's Objections, p. 10*. No explanation has been offered for how FCC member Riley Burnett could have possibly generated 8,828.27 hours within just a four-month period during which no discernable common benefit efforts were needed. *Id., p. 11*. And no one is disputing that FCC member Blasingame, Birch, Garrard & Ashley played no significant role in the Ethicon MDL, but yet has submitted 7,525 hours in time and $2,687,171.03 in held costs in connection with this litigation. *Id., p. 10*. This is hardly "the sort of caustic rhetoric" that has offended the FCC. *FCC Omnibus Response, p. 2*. Other FCC firms somehow added thousands of hours during those four months, with no explanation. These are cold, hard, mathematical facts.

In a footnote, the FCC seems to be suggesting that because Attorney Fee Expert Nicholas Casey ("Casey") has prepared a report confirming that ALO's submitted time

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

and expenses were reasonable and appropriate given the enormity of the firm's undertakings, the process really has been transparent. *FCC Omnibus Response, p. 5, fn. 2*. But Casey's expert analysis had specifically cautioned: "It is not possible to succinctly analyze [the FCC's] position because the Committee has provided no criteria upon which the meritorious actions for the common benefit are measured nor has it disclosed how it measured the efforts of other law firms seeking common benefit contributions." *ALO's Objections, Exhibit 1, p. 7*. The records and materials that ALO was able to furnish to the local specialist—all of which has been voluntarily produced to the FCC—still allowed him to conclude that the firm's submissions were fully justified under the circumstances. *Id., pp. 2-10*. Disclosure of the FCC member's own time and expense entries would undoubtedly furnish further support for this sensible conclusion by confirming that they engaged in precisely the same so-called "excesses" and "inefficiencies" that are now being cited to substantially diminish ALO's recovery.

The FCC has struggled mightily to discredit Casey. They have seized upon the expert's completely correct observation: "In the bellwether trial, *Huskey*, Dr. Rosenzweig testified and the work of Dr. Klinge and Dr. Jordi played important roles." *FCC's Omnibus Response, p. 43*. Each of these medical experts have confirmed in writing that Anderson had been responsible for their entry into the TVM litigation, and the point Casey was plainly making was that ALO's efforts were having a substantial impact even in bellwether trials that were being handled by other firms. *ALO's Objections, Exhibit 1, p. 6; see also Exhibit 6* (letters from each of the TVM experts in support of ALO). But the FCC has twisted this factually accurate statement into an "insinuation" that is purportedly "false and misleading" that "Anderson played a role in and deserves credit for *Huskey*." *FCC's Omnibus Recommendations, p. 43*. It is, however, the FCC's contrived "insinuation" that is actually false and misleading. Casey's report never remotely suggests that Anderson was one of the attorneys who tried *Huskey,* although he certainly deserves credit for recruiting and developing Dr. Rosenzweig, who the Wagstaff & Cartmell lawyers decided

to utilize as a critical expert during the proceeding. *Affidavit of Benjamin A. Anderson ("ALO Aff.") filed April 9, 2018, appendix GG, pp. 7559-7560.* And both Dr. Klinge and Dr. Jordi did indeed play significant roles in *Huskey* even though both were unavailable to testify. *Id.*

### III. THE PROHIBITED DISCOUNTING OF STATE COURT WORK

Perhaps unwittingly, the FCC has confirmed that one of the motivations for discounting ALO's time submissions and approving an average hourly rate of just $324.63 was a perverse disdain for the early work in state court proceedings that had pioneered the most successful TVM litigation strategies. It is certainly no accident that the Response emphasizes the objectors' "state court" work with peculiar repetitiveness, and in a context that reflects a firm belief that these initial efforts are somehow less commendable than that which was performed in federal court. *FCCs Omnibus Response, pp. 7, 8-10, 28-30, 35-36, 43-64, 68-72.*[1] The FCC is also touting *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 617 F. App'x 136 (3d Cir. 2015), *In re Genetically Modified Rice Litig.*, 764 F.3d 864 (8th Cir. 2014), and *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994), as supporting the rejection of claims for common benefit work performed merely in state courts. *FCC Omnibus Response, pp. 8-9.*

But the obvious distinction with these authorities, which the FCC has plainly forgotten, is that this Court has <u>ordered</u> that no distinctions are to be drawn between the parallel federal and state proceedings. *PTO#18, Section D(1)(m), pp. 11-12, PageID#: 3892-93; PTO#211, Section B(5), pp. 6-7, PageID# 23551-52; PTO#262, Section B, pp. 5-6, PageID#: 141781-82.* The occasional lip service that has been paid by the FCC to these directives means nothing, as the only conceivable explanation for the continual reemphasis of the objectors' state court efforts is a firm conviction that only federal

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

---

[1] It is unfathomable that the two Ethicon Co-Leads, Cartmell and Baggett, who are also FCC members had not only requested and approved ALO's work, but had never questioned, challenged or voiced concerns in seven years about the firm's regular time submissions.

7

litigation is worthy of common benefit consideration. And because the FCC is discounting this work in violation of this Court's orders, it hardly matters that there "remain just four objectors." *FCC Omnibus Response, p. 4.* In contrast to ALO, <u>none</u> of the other 91 applicants devoted themselves as fully to the state court proceedings—underway well before the federal MDL was formed—and then continued its work in both the state courts as well as the MDL before this Honorable Court. The FCC never would have been able to justify a claim to two-thirds of the fund if the PTOs had been followed and full credit was afforded to the state court time submissions. Certainly, a review of the FCC members' time sheets will reveal whether they approved their own such state court hours.

### IV. ALO'S CONSIDERABLE COMMON BENEFIT CONTRIBUTIONS

According to the FCC, "the objectors do little to explain how and why the work they claim to have performed that the FCC questioned or did not recognize should be considered for the common benefit of the MDL plaintiffs, or why the FCC's valuation of their contributions to the MDL is allegedly wrong." *FCC's Omnibus Response, p. 7.* It is more apparent than ever that the FCC has not actually been bothering to review ALO's evidentiary submissions. The reasonableness and necessity of the 17,242.65 hours that were rejected were not only verified in Casey's compelling report, but also in the 25-page affidavit and extensive exhibits that were submitted on April 9, 2018. And as the FCC has been well aware, all of ALO's common benefit efforts had been approved <u>in advance</u> by the National Co-Leads in accordance with PTO#: 18. These submissions confirmed the following highlights from ALO's efforts. There is no ample room in this 10-page brief to more fully described the amount of *approved* common benefit work that ALO performed:

- 2011 – 2018: for seven years, Attorney Anderson abandoned all of ALO's other law firm docket and devoted 100% of the firm's time and resources to mesh, long before most firms became involved or were willing to take such a risk on this uncertain litigation. Anderson and his team litigated <u>no other cases</u>, working full time on the mesh litigation during those seven years and risked over a million dollars on expenses and assessments.
- Anderson traveled across the United States and Europe to retain and meet with a cadre of experts, retaining critical ones along the way: three in Germany (Klinge, Muehl, Mang) and multiple urogynecologists in the U.S. (Elliott, Rosenzweig).

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

- Anderson worked with experts to develop the *first* studies regarding mesh porosity testing for any meshes in TVM literature leading to *two scientific mesh-testing articles published in the global literature on effective porosity, standardized testing and safe alternative design for both POP and SUI meshes*; and to write the *first* Ethicon science expert reports in various expert areas, including biomaterial science, pathology, biomechanics of the pelvis, tissue response and mesh surgery (Dr. Klinge's reports), mesh design/porosity testing/stretch testing (Dr. Muehl's reports), particle loss under stress (Dr. Mang's report), urogynecology (Drs. Elliott and Rosenzweig reports), and degradation and chemical response in the body (Dr. Jordi's reports).
- Anderson was chosen by his TVM colleagues to not only be the sole lecturer at the Ethicon Science Day presentation to Judge Goodwin, Judge Stanley, and a packed courtroom during the early stages of the formation of the MDL, he was also asked by Fidelma Fitzpatrick and Amy Eskin to assist them with their AMS Science Day Presentation and to help Shelly Hutson with her BSC Science Day Presentation.
- Anderson and his firm were requested and approved by Ethicon MDL leadership to take, defend or provide custodial document review and deposition preparation for 108 days of depositions. Early in the mesh litigation, Anderson took key Ethicon science and causation depositions (e.g., Zaddem, Burkley, Barbolt, Holste, Vailhe) and Ethicon material science expert depositions (e.g., Williams). Anderson taught mesh science to Dan Thornburgh and other attorneys to prep them to conduct German depositions (Batke, Hellhammer, Spychaj), and key U.S. depositions (continuation of Holste and Barbolt, Kammerer, etc.) and key medical/scientific expert depositions (Jordi, Thames, Villarraga, MacLean, etc.), and he wrote the cross-examination of Ethicon materials expert Shelby Thames and other Ethicon expert witnesses for trial. *ALO Aff., appendix E and G.*
- Anderson's work with the experts in Germany was extensive. *ALO Aff. appendix T.* Strikingly, much of that work was attended by members of the FCC firms.
- Anderson and his paralegals worked for 18 months with Ethicon attorneys, Ethicon pathology and materials experts, Steelgate Mesh Repository Center, and Judge Eifert to develop the Ethicon Mesh Pathology Protocol (PTO#:190) that was utilized by the parties and hundreds of mesh attorneys for the procedures for handling all of the Ethicon mesh that was surgically removed from mesh patients in hospitals around the country.
- Anderson defended plaintiff experts in dozens of Ethicon Waves 1-8 cases, and helped dozens of firms around the country handle their Waves 1-8 cases.
- Anderson drafted, edited and/or provided substantial support for over 30 dispositive/*Daubert* motions. *ALO Aff., appendix I.*[2]

Trials
- Put primary Ethicon material science expert, Klinge, on *de bene esse* to be used in all Ethicon trials around the country for Prolift and TVT product line cases (it has been used in, at a minimum, *Bellew*, *Hammons*, *Carlino*, *Beltz* and *Kaiser* cases)
- Trial counsel at four Ethicon trials and one Bard trial
- Obtained punitive damages in both Ethicon trials in which he was involved that went to verdict
- Tried first Ethicon trial in the country (*Gross*)
- Tried first Prolift case in the country (*Gross*)
- Tried first TVT case in the MDL and in the country (*Lewis*)
- Tried first Prolift case in the MDL (*Bellew*)

---

[2] Further details regarding Anderson's extensive common benefit contributions were detailed in the Ethicon Common Benefit Outline/Chronology, that was prepared by the Ethicon Co-Leads and FCC members Cartmell and Baggett. *ALO Aff., appendix V.*

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

- Tried first Prolift death case in the country (*Budke*)
- Tried first TVT-Secur case in the country (*Engleman*)
- As lead trial counsel, obtained then-largest Ethicon verdict in the country (*Engleman* - $20MM with $17.5MM in punitive damages).

Even a cursory review of the affidavit and supporting materials further confirms that there is no merit to the FCC's recent efforts to manufacture a conflict between the objecting firms. *FCC's Omnibus Response, pp. 27-33.* Attorney Anderson never claimed to have served as the sole trial counsel in any of the proceedings that were cited, but has always acknowledged instead that a coordinated effort was necessitated by the well-funded and aggressive defense. The FCC has taken his "free for all" remark with regard to the highly successful *Gross* proceedings in New Jersey out of context, which had been offered as part of the explanation how the first trial against Ethicon "was as big a team effort as you could possibly imagine." *Transcript of Proceedings of July 17, 2018, p.*28. And while other firms engaged in case-specific preparations with the experts that Anderson had initially retained, the letters that these physicians and specialists have submitted established beyond dispute that they would not have been available to anyone but for ALO's initial recruiting and development efforts. *ALO's Objections, Exhibit 6.*

## **CONCLUSION**

For the foregoing reasons, this Court should sustain ALO's objections and permit a legitimately impartial and objective allocation of the common benefit fund amongst the participating firms that is consistent with due process and fundamental fairness.

Respectfully Submitted,

*s/Richard L. Gottlieb*  
Richard L. Gottlieb, Esq. (WV# 1447)  
Webster J. Arceneaux, III, Esq. (WV# 155)  
**LEWIS GLASSER PLLC**  
300 Summers Street, Suite 700  
Charleston, West Virginia 25301  
(304) 345-2000  
rgottlieb@lewisglasser.com  
wjarceneaux@lewisglasser.com

*s/Paul W. Flowers*  
Paul W. Flowers, Esq. (Ohio #0046625)  
Louis E. Grube, Esq. (Ohio #0091337)  
**PAUL W. FLOWERS CO., L.P.A.**  
50 Public Square, Suite 1910  
Cleveland, Ohio  44113  
(216) 344-9393  
pwf@pwfco.com  
leg@pwfco.com

*Attorneys for Anderson Law Offices*

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2019, the foregoing **Reply** was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*s/Paul W. Flowers*
Paul W. Flowers, Esq. (#0046625)
**PAUL W. FLOWERS, CO., L.P.A.**

*Attorney for Anderson Law Offices*

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395