## IN THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2187 |
| | |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2325 |
| | |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2326 |
| | |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2327 |
| | |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2387 |
| | |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2440 |
| | |
| IN RE: NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL No. 2511 |

*THIS DOCUMENT RELATES TO ALL CASES*
_____

### COMMON BENEFIT FEE AND COST COMMITTEE'S RESPONSE TO ANDERSON LAW OFFICE'S MOTION TO SCHEDULE HEARING

The Court's consideration of the recommendations of the Fee and Cost Committee ("FCC") and the Court appointed External Review Specialist is now ripe, the opportunity for briefing having closed. One objector seeks for the Court to conduct a hearing for the purpose of

further argument and submission of additional evidence.  Anderson Law Offices ("Anderson")

urges that the Court should hold a hearing on the four objections, citing to the Fifth Circuit's 2008

opinion in *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 231 (5th Cir.

2008), which held that when the court exercised its discretion and held a hearing, firms seeking an

award of fees were entitled to "notice and an opportunity to be heard."  Anderson also cited to and

relied extensively upon *High Sulfur* in support of its objection to the External Review Specialist's

recommended allocation. (Anderson Objection to Common Benefit Fee Allocation and

Reimbursement of Costs Recommendation, 1, 4-7). Anderson conspicuously disregards that the

Fifth Circuit in *High Sulfur* stated that the class action Rule 23 "permits but does not require a

district court to hold a hearing on a motion for attorneys' fees in a class action," and further

observed that holding a hearing on attorneys' fees is "discretionary." 517 F.3d at 231.  Moreover,

after remand, the Fifth Circuit addressed a subsequent appeal by an objector to the MDL court's

fee allocation in *High Sulfur*, rejecting the objecting firm's argument that the MDL court erred by

not holding an evidentiary hearing on the question of fees.  *In re High Sulfur Content Gasoline

Prods. Liab. Litig.*, 384 Fed.Appx. 299, 301 (5th Cir.2010).   In that opinion, the Fifth Circuit

pointed out again that "[a] district court is not required to hold a hearing on a motion for attorneys'

fees in a class action." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 384 Fed.Appx. 299,

301 (5th Cir.2010).

In *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56

F.3d 295 (1st Cir. 1995), the First Circuit likewise rejected the argument that the MDL court abused

its discretion by failing to conduct a hearing regarding allocation of common benefit attorneys'

fees.  The First Circuit stated "[w]e need not tarry over the supposed error in refusing to hold an

evidentiary hearing. A district court is not obliged to convene an evidentiary hearing as a means

of resolving every attorneys' fee dispute." *Id.* at 301-302.  Instead, the First Circuit observed that

the MDL court properly denied an evidentiary hearing where the court had allowed for written

submissions and had extensive experience handling the litigation, stating:

> The controlling legal principle, then, is that parties to a fee dispute do not have the right to an evidentiary hearing on demand. When the written record affords an adequate basis for a reasoned determination of the fee dispute, the court in its discretion may forgo an evidentiary hearing. Here, it is pellucid that the litigants' extensive written submissions comprised an effective substitute for such a hearing—particularly since the judge had lived with the litigation from the start and had an encyclopedic knowledge of it. Under these circumstances, the court did not err in refusing to hold yet another hearing.

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d at 303

(citing cases).

Here, Anderson and every other applicant firm had ample opportunity to object and to be

heard.  Anderson received notice of the Court's Fee Committee Protocol, which explained in detail

the process and deadlines for submission of the materials that would be considered in allocating

fees among applicant firms as well as the criteria to be applied.  Anderson initially submitted

biographies for the one attorney and two paralegals for whom common benefit compensation was

sought when it submitted its allegedly self-audited time in 2017.  Following the FCC's review,

Anderson received the FCC's written initial review of the firm's time, which identified time that

was questioned by the FCC or identified as not common benefit.  Anderson had the opportunity to

respond in writing regarding each questioned or disallowed time entry, as well as to present in

writing the firm's position regarding its contribution to the litigation by Affidavit. Anderson

responded by delivering its Affidavit setting forth its position regarding the time entries identified

by the FCC in its review of Anderson's time submission. Anderson's Affidavit submitted April 9,

2018 consisted of numerous appendices totaling 7,779 pages.  Thereafter, on May 18, 2018, the

FCC provided its written final review of the firm's time and expense submission, which included

an increase of 7,405.65 hours recognized as for common benefit that had previously been disallowed or questioned. This final review letter instructed that "In accordance with the Fee Committee Protocol, if you wish to be heard by the FCC on the number of hours and the amount of expense to be considered by the FCC you must notify the FCC on or before Thursday May 24, 2018….Upon timely notice to the FCC, you will be contacted regarding the timing of your meeting with the FCC." Anderson notified the FCC of its desire to be heard, and Anderson appeared in person before the FCC on July 17, 2018. A copy of the 60-page transcript of Anderson's hearing before the FCC was provided to the Court and to Anderson.

The FCC issued its Preliminary Written Recommendation on September 13, 2018. In accordance with the Fee Committee Protocol, Anderson had the opportunity to and did object in writing to the Preliminary Written Recommendation on September 28, 2018. Anderson's objection to the Preliminary Written Recommendation including appendices totaled 87 pages. On November 20, 2018, the FCC issued its Final Written Recommendation, and notified all applicant firms that "[i]n accordance with the Fee Committee Protocol, if you wish to object to the Final Written Recommendation, you must notify the External Review Specialist, The Honorable Dan Stack…with a copy to the FCC Chairperson…. Upon timely notice to the FCC, your objection will be considered by the External Review Specialist prior to the External Review Specialist's delivery of his recommended allocation to the Court." As allowed by the Fee Committee Protocol, Anderson served its 122-page objection to the Final Written Recommendation on December 4, 2018. On January 11, 2019, Anderson and his legal counsel met with the External Review Specialist in St. Louis, Missouri for approximately two hours. The External Review Specialist submitted his recommended allocation to the Court in accordance with the Fee Committee Protocol

on March 11, 2019, which included a recommended increase of Anderson's allocation in addition to the amount the FCC recommended.

On March 27, 2019, Anderson filed a 27-page objection to the External Review Specialist's Recommendation, with an additional 162 pages of exhibits.  The FCC filed its Response to Anderson's and the other objections on April 8, 2019.  On April 10, 2019, Anderson filed a Motion for Leave to File Reply, wherein the firm made many of the same assertions it makes here about the FCC's Response.  Indeed, when it moved for Leave to File a Reply to the FCC's Response to its Objection, Anderson urged that the opportunity to file a Reply would "ensure that ALO is afforded its fundamental constitutional right for an opportunity to be heard…." (Anderson Motion for Leave to File Reply, p. 4).  The Court granted Anderson's request for a Reply, allowing a 10-page Reply.  Anderson filed its 10-page Reply on April 16, 2019.  Anderson has had the opportunity to be heard many times over.

Anderson urges that a hearing should be allowed "during which additional argumentation and evidence can be presented." (Anderson Motion for Hearing, p. 2).  Given that Anderson has been heard in person by both the FCC and the External Review Specialist and has presented more than 8,000 pages of argument and evidence, including multiple affidavits and voluminous exhibits, Anderson cannot reasonably contend that it needs yet another opportunity to make its point.  As outlined above, Anderson has had multiple opportunities to be heard and to make any argument or to raise any issue it deemed appropriate.  All of Anderson's voluminous written submissions and Anderson's oral presentation to the FCC are before the Court for its consideration.

Further, Anderson's allegation that the FCC's Response to its Objection presented "new" arguments regarding Anderson's contributions is unsupported. Anderson's motion for hearing

identifies four "new" arguments which it claims that the FCC first raised with respect to its time submissions in the FCC's Omnibus Response to Anderson's objection.

Taking each of Anderson's allegations in turn, Anderson first argues that it was previously unaware that the FCC may contend that objectors bear the burden of demonstrating the common benefit of its activities in this litigation. (Anderson Motion for Hearing, p. 5). Initially, this is not the FCC's argument. This is the law. Furthermore, the Court notified all applicant firms that the burden of showing the value of common benefit associated with each firm's work rests upon the applicant. The Court's Fee Committee Protocol requires that the applicant demonstrate the common benefit of its work, stating "each Firm shall review and audit same to ensure that it is true and accurate, properly coded **and that it was for common benefit**." (Fee Protocol § A). The FCC in its initial review letter sent to Anderson on February 16, 2018, informed Anderson (and all applicant firms) through the use of two exhibits that there were specific time entries where the FCC could not identify any common benefit purpose and specific time entries where the FCC sought further information in order to determine whether there was common benefit. In delivering these exhibits, the FCC requested that

> [i]f you have an issue with these reductions by the FCC, then include in your final Affidavit reasons explaining why you should receive reimbursement from the common benefit fund for those items described above. In providing your explanation, you should address why the time deemed by the FCC not to be for the joint and common benefit of plaintiffs and claimants whose claims have been treated by this Court as part of these proceedings should nevertheless be compensated.

Additionally, the letter from the FCC states that Anderson's affidavit "shall set forth the reasons, grounds and explanation for the Firm's entitlement to common benefit fees." Anderson's affidavit in response to the FCC's Initial Review indicates its understanding of the need to provide information in support of its time submission, with Anderson submitting a total of 7,779 pages in

materials. Next, the FCC provided Anderson a letter dated May 18, 2018 which detailed the FCC's

acceptance or rejection of the further explanation provided for each time entry.  The letter indicated

that "[i]n accordance with the Fee Committee Protocol, if you wish to be heard by the FCC on the

number of hours…to be considered by the FCC you must notify the FCC…" Again, Anderson

availed itself of the opportunity to support its time entries by appearing before the FCC on July

17, 2018.  Finally, the External Review Specialist made clear in his Recommended Allocation that

"it is not the FCC's or my obligation to demonstrate why any particular time submission was not

considered for the common benefit. To the contrary, it is the burden of the applicant firm who

claims entitlement to common benefit to prove its compliance with the Court's Common Benefit

Orders as well as to prove how and the extent to which its work benefited the litigation."

(Recommended Allocation pp. 14-15). Anderson's claim to be unaware that it bore the burden of

proving its entitlement to common benefit fees until it received the FCC's Omnibus Response is

unfounded.

Second, Anderson claims that it was unaware that the FCC had identified certain of its time

entries as excessive or unrealistic in light of the firm's size or number of persons submitting time.

(Anderson Motion for Hearing, p. 3-4). At its earliest communication in delivering its Initial

Review on February 16, 2018, the FCC identified, among other areas, that time entries submitted

by Anderson were questioned because of (1) instances of multiple time keepers billing for the same

activity on the same day, (2) instances of time being billed in excess of fifteen (15) hours in a

single day, (3) excess hours preparing expert reports, and (4) failure to adequately code or provide

sufficient detail to determine whether the time entry was compensable. As stated above, Anderson

responded to this with its voluminous affidavit and accompanying exhibits, which included the

firm's proffered rebuttal to the identified excessive hours and duplicative billing issues.  The issues

associated with time keeping were again discussed in Anderson's in-person meeting with the FCC. With regard to the number of hours worked, the FCC asked of Anderson, "[w]hen the Committee has looked at your time in 2012, you personally had thirty-six hundred hours, which apparently was about three hundred and sixty-five days working every day for almost ten hours a day. And in 2013 you had thirty-four hundred and some odd hours; the same scenario. The Committee has a concern as to whether any human being can work [productively] that many straight days with that many hours. And we would like you to address that, if you would." (07-17-2018 Transcript p. 33, l. 22 – p. 34, l. 7). In response Anderson discussed its evaluation of its paralegals and attorney submitting time and the reliability of its timekeeping records. As acknowledged by Anderson, the FCC then provided its Preliminary Written Recommendation on September 13, 2018, which included specific reference to items now raised as novel in Anderson's motion for hearing. The FCC stated, in part, "[a]ll of the firm's work was performed by one attorney and two paralegals, with more than 40% of the total approved time coming from paralegal hours. The firm's work ultimately resulted in targeted areas in expert witnesses, although the Fee Committee takes note that the work was often done in an inefficient manner." Anderson devoted approximately two pages of its ten-page objection to the Preliminary Written Recommendation to a substantive response to the FCC's contention, including identification of Ben Anderson as the co-lead of the science committee and its development of experts in the litigation. The remainder of its objection was directed toward attacks upon the FCC. The FCC issued its Final Written Recommendation on November 20, 2018. Anderson repeated its limited substantive response when making its objection to the FCC's Final Written Recommendation devoting relatively little of its ten-page brief to addressing the firm's contribution to the common benefit of the litigation. Instead, Anderson focused its brief on attacks directed at the FCC. The External Review Specialist made his

Recommended Allocation on March 11, 2019. As identified by Anderson, the External Review Specialist expressed concern regarding the time submission. This concern is for the reasons previously provided to Anderson and as identified above. When objecting to the recommended allocation, Anderson devotes approximately six pages of twenty-six total pages to a discussion of its work in the litigation and the common benefit resulting therefrom with the remainder devoted to attacks upon the FCC and the External Review Specialist. Anderson was aware of the FCC's concerns about excessive or unrealistic time submissions in light of the firm's size, position or number of persons submitting time prior to the filing of the FCC's Omnibus Response.

Third, Anderson alleges that it was unaware that certain of its work for which it sought recognition as common benefit was also claimed by other applicant firms. (Anderson Motion for Hearing, p. 4). This is not an argument but is instead an irrefutable fact: multiple firms are seeking common benefit compensation for the same activity. Moreover, this issue was specifically discussed when Anderson appeared before the FCC in-person on July 17, 2018. The FCC specifically asked Anderson to discuss its role in the trial of the *Gross* case in light of receipt of time submissions from multiple firms. "Ben, how many law firms were involved in the Gross trial? We seem to hear from a lot of people that they take credit for the Gross trial." (07-17-2018 Transcript p. 24, l. 9-12). Anderson then discussed its role at length during its presentation. The FCC went further, asking about Anderson's participation in the trial of cases including *Lewis*, *Batiste*, and *Bellew*. Further, the FCC's Final Written Recommendation specifically identified that several objectors claimed to have acted within the same cases and in preparing the same experts. This information was also set forth by the External Review Specialist who found that,

> [b]ased upon my review of the objections and my meetings and discussions with the objecting firms, it is apparent that some of the objecting firms are seeking credit for much of the same work. For example, three of the objecting firms claim that they deserve more credit than others for the development or the success of the

> Ethicon litigation. Some of these objecting firms worked on the same trials together and some claim to have developed some of the same experts and the same litigation theories and strategy.

(Recommended Allocation p. 17). Again, Anderson's claim that it first learned of multiple firms claiming to have performed common benefit work in the same cases or with respect to the same experts from the FCC's Omnibus Response is inaccurate.

Fourth, Anderson claims that it was unaware that it would be penalized for having submitted limited hours in the Cook MDL until it received the FCC's Omnibus Response. (Anderson Motion for Hearing, p. 3). As an initial matter, the FCC did not penalize Anderson for the submission of limited hours. As with every other applicant firm, the FCC evaluated the work performed by Anderson – in the Cook MDL and otherwise – consistent with the Fee Committee Protocol and the overarching instruction to "evaluat[e] what work and expenses furthered the common benefit of the litigation." (Fee Committee Protocol, p. 10). The FCC merely pointed to the disparity between Anderson's time submitted with respect to the Cook MDL, in which Anderson was Co-Lead, relative to the firm's time submitted in the Ethicon litigation, where Anderson held no leadership position and in which dozens of firms have claimed significant common benefit compensation, including for some of the same activities and work for which Anderson seeks credit. Anderson submitted a total of 2,153.75 hours in the Cook MDL (less than 6.5% of its total time submitted), and the FCC recognized 1,630.55 hours in the Cook MDL (less than 7.5% of its total recognized time).

Finally, any contention in this Motion for Hearing that the FCC's Response to its Objection raised any "new" issue to which it believes a chance to reply would be warranted is further belied by the fact that Anderson requested and was granted the opportunity to file a Reply to the FCC's Response. In moving for leave to file a Reply, Anderson argued that "[i]t was impossible for ALO

to foresee these imaginative rationalizations when the Objections were previously drafted. A Reply will be the only opportunity to contest the arguments now offered by the FCC for the very first time and to preserve certain issues if an appeal is necessary." (Anderson Motion for Leave to File Reply, p. 3).  Rather than addressing any of the issues or arguments raised in the FCC's Response, however, Anderson used its Reply primarily to further complain about the process and to criticize and attack the FCC and External Review Specialist.  If Anderson believed there were any "new" arguments made in the FCC's Response that it felt needed to be addressed, it was granted the opportunity - at its own request - to do so in a Reply.  Again, Anderson asked this Court to be allowed to file a Reply "[i]n order to ensure that ALO is afforded its fundamental constitutional right for an opportunity to be heard…", specifically with respect to the alleged "new" arguments in the FCC's Response. (Anderson Motion for Leave to File Reply, p. 4).  It is disingenuous for Anderson to request a hearing to address issues that it failed to address in its Reply, particularly when the Reply was specifically requested to have the "opportunity to be heard" with respect to the issues that it failed to address. Moreover, as discussed above, there is no legal requirement for an evidentiary hearing, and the case law upon which Anderson premises its request for a hearing actually holds the opposite: "[a] district court is not required to hold a hearing on a motion for attorneys' fees in a class action." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 384 Fed.Appx. at 301. *See also In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295. Anderson's request ignores the many opportunities to be heard that Anderson has already availed itself of. For all of the foregoing reasons, the FCC respectfully requests that Anderson's motion for hearing be denied.

Dated: April 26, 2019

Respectfully submitted,

THE COMMON BENEFIT FEE AND COST
COMMITTEE

By:    **/s/ Henry G. Garrard, III**
        Henry G. Garrard, III
        hgarrard@bbga.com

BLASINGAME, BURCH, GARRARD & ASHLEY
P.O. Box 832
Athens, GA  30603
706-354-4000

        **/s/ Renee Baggett**
        Renee Baggett
        RBaggett@awkolaw.com

AYLSTOCK, WITKIN, KREIS & OVERHOLTZ
17 East Main Street, Suite 200
Pensacola, FL 32502
850-202-1010

        **/s/ Riley L. Burnett, Jr.**
        Riley L. Burnett, Jr**.**
        rburnett@rburnettlaw.com

BURNETT LAW FIRM
3737 Buffalo Speedway, Suite 1850
Houston, TX 77098
832-413-4410

        **/s/ Thomas P. Cartmell**
        Thomas P. Cartmell
        tcartmell@wcllp.com

WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100

        **/s/ Clayton A. Clark**
        Clayton A. Clark
        CClark@triallawfirm.com

CLARK, LOVE & HUTSON, G.P.
440 Louisiana Street, Suite 1600
Houston, TX 77002
713-757-1400

*/s/ Yvonne M. Flaherty*
Yvonne M. Flaherty
ymflaherty@locklaw.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S., Suite 2200
Minneapolis MN 55401
612-339-6900

*/s/ Carl N. Frankovitch*
Carl N. Frankovitch
carl@facslaw.com

FRANKOVITCH, ANETAKIS, SIMON,
DECAPIO & PEARL, LLP
337 Penco Road
Weirton, WV 26062
304-723-4400

*/s/ Joseph F. Rice*
Joseph F. Rice
jrice@motleyrice.com

MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
843-216-9000

*/s/ William H. McKee, Jr*
William H. McKee, Jr
billmckee17@gmail.com

3041 Knotty Pine Dr.
Pensacola, FL 32505
304-546-2347

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2019, a true and correct copy of the foregoing Common Benefit Fee and Cost Committee's Response to Anderson Law Office's Motion to Schedule Hearing was served via electronic filing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF counsel of record.

/s/ Henry G. Garrard, III
Henry G. Garrard, III
Chairman
The Common Benefit Fee and Cost Committee

14