PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| IN RE: COOK MEDICAL, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE: NEOMEDIC PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2511 |

***THIS DOCUMENT RELATES TO ALL CASES***

**ANDERSON LAW OFFICES' REPLY IN SUPPORT OF
MOTION TO SCHEDULE HEARING**

**I.  INTRODUCTION**

As permitted by Loc. R. Civ. P. 7.1(a)(7), Anderson Law Offices ("ALO") submits this Reply in Support of the Motion to Schedule Hearing that was filed on April 22, 2019 ("ALO's Hng. Motion").  One would have thought that the Fee and Cost Committee ("FCC") would have welcomed the opportunity to confront the objections that have been raised in open Court and to attempt to establish that the eight member firms are legitimately entitled to two-thirds of the total common benefit recovery.  But a lengthy response has been filed instead urging this Court to proceed immediately to judgment.  A number of inaccuracies have been asserted, which require a brief response.  And the FCC's analysis of the applicable case law remains well off the mark, which must also be addressed.

**II.  THE MISLEADING CLAIM OF WAIVER**

The FCC seems to be insinuating that ALO somehow admitted that the requirements for procedural due process would be satisfied if leave was granted to submit a reply.  *Common Benefit Fee and Cost Committee's Response to Anderson Law Office's Motion to Schedule Hearing dated April 26, 2019 ("FCC's Hng. Response"), pp. 5, 10-11*.  But it has evidently been overlooked that a <u>twenty-page</u> Reply had been requested, which was never opposed.  *Anderson Law Office's Motion for Leave to File Twenty Page Reply dated April 10, 2019, pp. 1-3*.  This Court only granted leave for half of that length.  *Doc#:7840, Order dated April 12, 2019*.  As ALO observed in the opening paragraph of the ensuing filing: "It is, of course, impossible to fully and persuasively respond to dozens of pages of new arguments in just a 10-page Reply."  *Anderson Law Offices' Reply in Support of Objections dated April 15, 2019, p. 1*.  The firm remains hopeful that the brief response that was submitted in accordance with the restrictions imposed is still sufficient

Paul W. Flowers Co., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

to alert this Court to the serious concerns raised by the FCC's evident self-dealing, which should be carefully scrutinized in further proceedings.

**III.    THE NECESSITY OF A HEARING TO ADDRESS NEW CHARGES**

There is simply no truth to the FCCs assurances that Attorney Benjamin Anderson ("Anderson") "and every other applicant firm had ample opportunity to object and to be heard." *FCC's Hng. Response, p. 3*.  Until only recently, the FCC had never accused ALO of submitting excessive time entries, claiming credit for work performed by others, or devoting unnecessary effort to "state court" litigation.  Those charges appeared for the first time in the 74-page Omnibus Response to the Objections to the Recommended Allocations that was submitted less than a month ago on April 8, 2019 ("FCC's Omnibus Response").  Prior to that, the only criticism that was ever raised by the FCC specific to ALO was that "the work was often done in an inefficient manner."  *ALO's Hng. Mtn, Exhibits 2 and 3*.

The External Review Specialist ("ERS") evidently did not agree with this hopelessly vague assessment, as he expressed only that he "remain[ed] concerned regarding the hours submitted by this firm."  *Id., Exhibit 4*.  He still recommended a slight increase in ALO's common benefit allocation.  *Id*.

It is indeed correct that Attorney Anderson was afforded the opportunity to appear before the FCC on July 17, 2018, and legitimate questions were asked about the extraordinarily high level of work he claimed to have conducted in 2012 and 2013.  *FCC's Hng. Response, pp. 7-8*.  The members were apparently unaware, or did not fully appreciate, that he had completely committed his law practice to the TVM effort, and he was often required to work marathon sessions while meeting with experts overseas, preparing for and conducting depositions, and participating in bellwether trials.  He clarified that he had not spent "three hundred and sixty-five days working every day for almost ten hours a day" as the FCC now asserts. *FCC's Hng. Response, p. 8,* quoting *07-17-2018 Transcript pp. 33-34*.  As detailed in the forensic accounting report of Peter W.

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

3

Brown, CPA, of PricewaterhouseCoopers ("PWC Report"), which the FCC has never criticized, the bulk of the common benefit hours generated during those periods were clustered around significant trial and deposition dates as well as work aiding the creation of vital expert reports. *Affidavit of Benjamin H. Anderson dated April 9, 2018, Appendix U, pp. 6-9.* FCC members are also undoubtedly claiming to have worked long stretches of 15 hours or more a day, but that cannot be verified until their time entries are disclosed.

As also confirmed in the same transcript, none of the FCC members appeared to express any meaningful concern with the well-reasoned responses that Attorney Anderson furnished to these inquiries. Nor were any significant discrepancies or inaccuracies in ALO's time and expense entries identified during this session. And while the FCC has also accurately represented that Attorney Anderson and his legal counsel were able to meet with the External Review Specialist several months later on January 11, 2019, no criticisms of any kind were raised at all during that session. To the contrary, the ERS was generally complimentary of ALO's efforts and expressed regret that there was nothing he believed he could do to alter the FCC's intractable position.

It was not until ALO raised its objections in this Court that the FCC fumed: "Anderson's submissions are either reflective of an egregiously ineffective and inefficient use of time, or else they are exaggerated – pure and simple." *FCC's Omnibus Response, p. 39.* And for the first time, it was asserted that the comprehensive review and report that had been prepared by G. Nicholas Casey, Jr., and supplied to the FCC approximately a year earlier was "false and misleading." *Id., p. 43.* A hearing is now necessary in order to permit ALO to effectively confront these and other recent charges.

Such a proceeding is particularly appropriate given that the FCC has not offered any specific opposition to ALO's request for a period of "at least 90 days during which to examine the materials that this Court intends to review in camera as specified in PTO#:332 and an opportunity to supplement these objections as necessary." *Anderson Law Offices' Objections to Common Benefit Fee Allocation and Reimbursement of Cost*

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

4

*Recommendations dated March 26, 2019 ("ALO's Obj."), pp. 25.* No discernable claims of privilege or privacy are still being asserted in response to ALO's objections, which is understable given that they were always far-fetched. If this unopposed request is granted and the FCC members' own time and expense entries are finally allowed to be reviewed, ALO will undoubtedly be able to demonstrate during the hearing that many of those attorneys were approved for common benefit time for multiple days in excess of 15 hours and for more than 3,000 hours in a single year. There would be no discernable reason for insisting that this data remain concealed if the FCC was indeed applying the same standards to member and non-member firms alike.

ALO anticipates that at the conclusion of the hearing that has been requested (if permitted), no doubt will remain that the FCC is now retaliating against those who feel compelled to question how just 8 of 94 participating firms could be entitled to 66% of the common benefit recovery. This conclusion appears to be unavoidable given the FCC's recent declaration that the objections to its recommendations "**may well warrant a reduction in the objectors' allocations recommended by the FCC and the External Review Specialist.**" (Emphasis sic.) *FCC's Omnibus Response, p. 33.*

The need for a hearing grows even more apparent when one considers those issues that the FCC is sidestepping. Despite dozens of pages of recent filings, the FCC has refused to furnish any meaningful explanation for how its 8 member firms could be entitled to an <u>average</u> hourly rate of $738.02 when the average for non-members is a paltry $268.42. *ALO's Objections, Exhibit 2.* This glaring disparity is particularly troubling now that the FCC has disclosed that at least five of its members were relying heavily upon paralegals, which undoubtedly accounts for a considerable portion of the common benefit time they have approved for themselves. *FCC's Omnibus Response, p. 38.* For example, the Blasingame firm's "commitment" to the TVM litigation included <u>more</u> paralegals (19) than attorneys (15). *Id.* Yet this firm's average hourly rate, which includes both attorneys and paralegals, is a whopping $847.47. *ALO's Obj., Exhibit 2.*

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

And Clark, Love & Hutson's "commitment" of slightly more attorneys (19) to paralegals (17) generated an even higher hourly rate of $913.39. *Id*. These breathtaking figures are impossible to justify, and the FCC has made no attempt to do so.

Regardless of whether excessive hours had been submitted by any of the objecting firms, a reasonable expectation is that those who are providing the same intensity and quality of common benefit work will be compensated at roughly the same hourly rate. By any measure, Attorney Anderson was at the forefront of the TVM litigation and his development of critical scientific principles and recruitment of eminently qualified experts has been unsurpassed. He had never denied that he employed two paralegals who (like him) were dedicated full-time to the TVM litigation for approximately seven years. Yet despite that, there can be no plausible explanation for his firm's average hourly rate of just $342.64. *ALO's Obj., Exhibit 2*. The FCC's purely subjective "percentage of the fund" allocations thus fail this critical loadstar cross-check and should be rejected. *In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 306 (3$^d$ Cir.2005) ("The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award."); *see also Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2$^d$ Cir.2000).

Instead of confronting the legitimate concerns that have been raised in ALO's objections, the FCC has complained bitterly instead about supposed "attacks" upon the integrity of its members. *FCC's Response, pp. 8-9, 11*. But the thinly-veiled plea for sympathy is simply a diversion. The unacceptably wide divergence between the hourly rates that the eight members approved for themselves, which is nearly three times that which has been allocated for the non-members, is an indisputable mathematical fact. *ALO's Obj., Exhibit 2*. The FCC's silence on this fundamental point speaks volumes.

And the FCC has been equally silent with regard to the implications of the partially complete data that was attached to the Motley Rice TVM Historical Analysis that has been

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

6

disclosed. *ALO's Obj., p. 10*. It remains a mystery how one FCC member that held no significant role in the Ethicon MDL could generate several thousand hours of time and over $2.5 million in held cost in that litigation. *Id*. And of even greater concern, it has been conceded that another FCC member was approved for an additional 8,827.55 hours in the final four months remaining before the court's cut-off date when no meaningful common benefit work could have been performed. *Id., p. 11*. By all appearances, conducting a hearing is the only way that the FCC can ever be required to respond to these glaring discrepancies in the one-sided fee allocation recommendations presently before this Court.

**IV.     THE FCC'S FAULTY LEGAL ANALYSIS**

Unconcerned with the actual due process principles that are a stake, the FCC persists in quoting snippets from judicial opinions that have been taken out of context. *FCC's Hng. Response, pp. 2-3*. They have yet to cite a single decision holding, however, that a common benefit award may be approved while the committee members who stand to gain the most keep their own time and expense entries concealed from review by the non-members who are also entitled to a portion of the fund. *E.g., In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 303 (1st Cir.1995) ("The district court did not shut off all discovery, * * * the court ensured that the [non-PSC members] had access to all the data reasonably necessary to formulate their objections, including all the PSC members' time-and-expense submissions, summaries thereof, detailed accounts of the procedures used by the PSC to gather, review, and audit time records, and the working papers, correspondence, and documentation generated by the PSC's accountants during the compilation process. With this banquet of information spread before them, appellants then partook of the court's liberality in allowing them to formulate extensive written submissions."); *Compare Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, E.D.La. No. 06-7185-HGB-SS, 2012 WL 12987026 (June 4, 2012), *with Id.*, E.D.La. No. 06-7185-HGB-SS, 2009 WL 10679718, *1

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

7

(Sept. 10, 2009) ("[Plaintiff] has produced detailed time entries in support of its request for reimbursement of attorney's fees invoiced by [counsel]. The motion to compel is dismissed in part as moot."). This Court should decline the invitation to be the first to establish such a disturbing precedent, which cannot be reconciled with even the most rudimentary concepts of due process and fair play. Indeed, it is precisely because this Court does not presently possess "an adequate basis for a reasoned determination of the fee dispute" in the "written record" that a hearing is indispensable. *Id.*

Even a cursory review of the authorities that the FCC is citing confirms that they have been seriously misconstrued. *FCC's Hng. Response, pp. 2-3*. For example, this Court has been assured that Attorney Anderson "conspicuously disregards that the Fifth Circuit in *High Sulfur* stated that the class action Rule 23 'permits but does not require a district court to hold a hearing on a motion for attorneys' fees in a class action,' and further observed that holding a hearing on attorneys' fees is 'discretionary.' 517 F.3d at 231." *FCC's Hng. Response, p. 2*. The full quote from *High Sulfur*, which the FCC "conspicuously disregards" is actually:

> [T]he court violated Rule 23(h), which permits but does not require a district court to hold a hearing on a motion for attorneys' fees in a class action. *See* Fed.R.Civ.P. 23(h). If a court chooses to hold a "fee-determination hearing, the hearing format itself ha[s] to be fair. In other words, when a judge constructs a process for setting fees, the process must contain at least the procedural minima" of due process: notice and an opportunity to be heard. (Citations omitted.)

*In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 231 (5th Cir. 2008), quoting *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 614 (1st Cir.1992). The *ex parte* proceeding that the Fifth Circuit proceeded to reject is indistinguishable from an *in camera* review where non-members are not permitted to review all the materials that the committee members have submitted to justify their recovery of most of the common benefit fund. *Id.* at 231. The Court continued to reason:

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

8

> [The Committee members] also contend that the court's post-allocation procedures for hearing or reconsidering objections to fee awards provided [the non-member attorneys] an adequate opportunity to be heard. They did not. Because the court sealed the fee allocation list and placed a gag order on plaintiffs' attorneys, [the attorneys] could not compare their awards to those of other attorneys. They were not furnished with the hours and rates that other attorneys submitted or informed of the Fee Committee's process, yet such information was essential to enable them to challenge how the Fee Committee valued their work. *See In re Vitamins Antitrust Litig.*, 398 F.Supp.2d 209, 234 (D.D.C.2005) (lead counsel responsible for fee allocation must "apply a universally fair standard of allocation to all participants, including itself"). One cannot even compare apples to oranges without knowing what the oranges are. (Footnote omitted.)

*Id.* at 232. The sensible due process standards identified in *High Sulfur* cannot possibly be satisfied if objecting firms are not allowed to review <u>all</u> the data and information that the Court intends to consider and furnish a final response.

## CONCLUSION

For the foregoing reasons, this Court should allow ALO an opportunity to review all the materials that the FCC has submitted for the *in camera* inspection and schedule a hearing to permit additional evidence and arguments to be presented in further support of the firm's objections.

Respectfully Submitted,

*s/Richard L. Gottlieb*
Richard L. Gottlieb, Esq. (WV# 1447)
Webster J. Arceneaux, III, Esq. (WV# 155)
**LEWIS GLASSER PLLC**
300 Summers Street, Suite 700
Charleston, West Virginia 25301
(304) 345-2000
rgottlieb@lewisglasser.com
wjarceneaux@lewisglasser.com

*s/Paul W. Flowers*
Paul W. Flowers, Esq. (Ohio #0046625)
Louis E. Grube, Esq. (Ohio #0091337)
**PAUL W. FLOWERS CO., L.P.A.**
50 Public Square, Suite 1910
Cleveland, Ohio 44113
(216) 344-9393
pwf@pwfco.com
leg@pwfco.com

*Attorneys for Anderson Law Offices*

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

## **CERTIFICATE OF SERVICE**

  I hereby certify that on May 2, 2019, the foregoing **Reply** was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's system.

                *s/Paul W. Flowers*
                Paul W. Flowers, Esq. (#0046625)
                **PAUL W. FLOWERS, CO., L.P.A.**

                *Attorney for Anderson Law Offices*

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395