UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327<br>MDL No. 2327<br><br>JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |
| THIS DOCUMENT RELATES ONLY TO:<br><br>WAVE 10 CASE LISTED ON EXHIBIT A | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE GENERAL OPINIONS AND TESTIMONY OF WILLIAM PORTER, M.D.[1]**

**I.      PRELIMINARY STATEMENT REGARDING SCOPE OF MOTION**

Dr. Porter issued one report in Wave 10. *See* Exh. B, Rule 26 Expert Report of William Porter, M.D., *Melynda Fitt v. Ethicon, Inc.*, Civ. A. No. 2:14-CV-11545 ("Porter Report"). For the most part, the report is aimed at issues of specific causation. *See id.* at 2 ("The focus of my evaluation is the role that the Prolift Mesh played in causing injury to Ms. Fitt."). Despite the specific causation emphasis, Dr. Porter attempts to weave into his specific causation report several general causation opinions. *See, e.g., id*. at 2, 8-10. This Motion addresses <u>only</u> Dr. Porter's general opinion testimony.[2]

---

[1] The specific case to which this memorandum relates is listed in Exh. A.

[2] Ethicon is filing a separate motion to exclude Dr. Porter's specific causation opinions in the individual docket in *Fitt v. Ethicon, Inc. et al. See* Civ. A. No. 2:14-cv-11545.

1

## II. INTRODUCTION AND SUMMARY

Dr. Porter sets forth five general opinions in his report:

1. "The most common mesh-related complications are pelvic pain, scarring in the vagina and pelvic floor, pain into the legs and thighs, dyspareunia, chronic inflammation of tissue, chronic vaginal discharge or bleeding, scar bands or scar plates in the vagina, vaginal shortening or stenosis, erosion of mesh into tissues or organs, and nerve entrapment." Porter Report at 2; *see also id*. at 8-9.

2. "As the vagina is a cleaned contaminated area, there is no way to completely eliminate bacteria from the surgical site. Implantation though this dirty field could allow bacteria to attach. These bacteria then can attach to the mesh and secrete a biofilm or a polysaccharide slime excreted by the bacteria. This slime could prevent the host defensive mechanism from clearing the infection. (Edmiston). This tissue response can contribute to the cause of vaginal pain, pelvic pain and chronic inflammation. This chronic inflammation/infection could be a source of pain. In addition, this chronic inflammation/infection could be a source of any future erosion, vaginal discharge and possible UTI's." *Id.* at 9.

3. "Dr. Daniel Elliott in his general expert report suggested the mesh creates a foreign body reaction and a chronic inflammatory response that can lead to chronic pain in the patient. The body's foreign body response to the mesh can cause a severe and chronic inflammatory reaction leading to excessive scarring in and around the mesh." *Id.*

4. "Dr. Bruce Rosenzweig of the general expert witness group suggests that mesh degrades over time and causes a chronic foreign body reaction, fibrotic bridging, mesh contracture/shrinkage, fraying, particle loss, roping and curling of the mesh contributing to pain. Similar opinions and information have been stated and discussed in the expert reports of Dr. Uwe Klinge and Dr. Paul J. Michaels, and I rely, at least in part, on these reports in reaching the conclusions made herein." *Id.*

5. "Ethicon's Daniel Burkley, a Principal Scientist has testified that polypropylene mesh in human beings is subject to some degree of surface degradation[.]" *Id.*

Each of Dr. Porter's five general opinions is inadmissible.

*First,* Dr. Porter's opinions are largely restatements of hearsay (Opinions 2, 3, 4, and 5), or what is referred to in evidence class as "totem pole" hearsay. He provides no independent analysis and merely seeks to recite information from an isolated study or repeat the statements of others. Hearsay statements of this nature are not admissible.

*Second,* Ethicon concurrently is moving to exclude the general opinions of Dr. Elliott, Dr. Rosenzweig, and Dr. Klinge. To the extent that Dr. Porter is attempting to adopt their

2

general opinions as his own, Dr. Porter's adoption of the general opinions in those reports is inadmissible for the same reasons stated in Ethicon's motions to exclude Dr. Elliott's, Dr. Rosenzweig's, and Dr. Klinge's general opinions.

***Third,*** opinions 1 and 2 of Dr. Porter's general opinions are unsupported by "facts and data" as Federal Rule 26(a)(2)(A)-(B)(i)-(iii) requires. Rule 26 requires that an expert report contain a statement of the basis for his opinions and the underlying "facts and data." Dr. Porter's failure to do so renders his opinions inadmissible.

***Fourth,*** Dr. Porter lacks the requisite qualifications under Federal Rule 702 to discuss biocompatibility, materials, or polymers.

## III. LEGAL STANDARD

Defendants incorporate by reference the standard for *Daubert* motions as explained by the United States Court of Appeals for the Fourth Circuit in *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No II) MDL 2502,* 892 F.3d 624, 631-32 (4th Cir. 2018).

## IV. ARGUMENT AND AUTHORITIES

### A. Dr. Porter's General Opinions are Inadmissible Hearsay.

Several of Dr. Porter's general opinions improperly attempt to bring inadmissible hearsay into the Courtroom. Opinions 2, 3, 4, and 5 (as outlined above) are mere recitations of scientific literature, opinions of other plaintiff-experts, and statements of an Ethicon employee. These recitations are not expert opinions.

At its core, expert opinion must be the result of a qualified expert applying his "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a) ("A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ."). Where a proffered expert does

3

not apply his specialized knowledge to arrive at an opinion, the opinion does not constitute expert opinion testimony under Rule 702 and should not be admitted. And while an expert may rely upon data cited by other experts under Federal Rule of Evidence 703, "[e]xpert testimony which 'merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness' is properly excluded." *In re C.R. Bard, Inc.,* 948 F. Supp. 2d 589, 608 (S.D.W. Va. 2013), *on reconsideration in part* (June 14, 2013); *see also Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. 2009) ("While it is true that an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts, . . . , such expert must make some findings and not merely regurgitate another expert's opinion").

Dr. Porter's Opinions 2, 3, 4, and 5 are not "opinions" at all. They are statements of others that he has adopted as his own. No specialized knowledge was required to collect this information or was involved in arriving at these "opinions." Further, it would be impossible to examine him about the factual basis for these opinions or the methodology, if any, used in reaching these parroted opinions because they are not the result of his own work or, for that matter, his own opinions. Accordingly, Opinions 2, 3, 4, and 5 do not constitute expert opinion testimony within the meaning of Federal Rule 702 and, thus, should be excluded.

   **B.** **Because Dr. Elliott's, Dr. Rosenzweig's, and Dr. Klinge's General Opinions Are Inadmissible, So Too Is Dr. Porter's Attempt to Incorporate Their Opinions by Reference.**

Concurrently, Ethicon is filing motions to exclude the general opinions of Dr. Elliott, Dr. Rosenzweig, and Dr. Klinge. For the reasons stated in those motions and supporting memorandum, their general opinions are inadmissible.

Dr. Porter's mere reference to the erroneous general opinions of Dr. Elliott, Dr. Rosenzweig, and Dr. Klinge cannot resurrect them and cause them to become admissible

through Dr. Porter. *See In re C.R. Bard, Inc.*, 948 F. Supp. 2d at 605 (where general causation opinions that form the basis of other opinions are excluded as unreliable, any opinions relying upon the excluded opinions are inadmissible). If the Court deems that Dr. Elliott's, Dr. Rosenzweig's, and Dr. Klinge's opinions are inadmissible, then Dr. Porter may not rely upon those general reports in connection with forming his own opinions, and Dr. Porter is likewise precluded from parroting their opinions before the jury under the guise of relying upon these materials that are inadmissible under Federal Rule 702.

      C.    **Dr. Porter's Unsupported Opinions Fail to Satisfy Rule 26 and Are Unreliable and Inadmissible.**

Dr. Porter failed to identify any basis for at least two of his general opinions. Specifically, Dr. Porter does not identify any support for his opinion regarding the "most common mesh-related complications" (Opinion 1) and his opinion about chronic inflammation (Opinion 2).

As this Court has recognized, under Federal Rule of Civil Procedure 26(a)(2)(B), an expert's report "must contain, among other things, 'a complete statement of all opinions the witness will express and the basis and reasons for them[.]'" *Lewis v. Ethicon, Inc.*, No. 2:12-cv-4301, 2014 WL 186872, at *9 (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)). Further, "[i]f a party fails to provide information ... as required by Rule 26(a) ... , the party is not allowed to use that information or witness to supply evidence. . . at a trial." *Id.* (internal quotation marks omitted).

Dr. Porter's failure to identify any basis for his general opinions renders them inadmissible pursuant to Rule 26 as established by this Court's prior rulings. *See Wilkerson v. Boston Sci. Corp.*, 2015 WL 2087048, at *11 (S.D.W. Va. May 5, 2015) (excluding general expert opinion testimony of urogynecologist where expert relied only on personal observations).

D. **Dr. Porter Lacks the Qualifications to Opine on Biocompatibility, Materials, or Design.**

The Court should preclude Dr. Porter from rendering opinions on biomaterials, polypropylene degradation, chronic foreign body reaction, adequate pore size, adequate weight of polypropylene, and biocompatibility of polypropylene. The opinions of Dr. Elliott, Dr. Rosenzweig, Dr. Klinge, and Mr. Burkley, which Dr. Porter attempts to adopt by reference, touch upon all of these topics. Yet, as his curriculum vitae plainly discloses, Dr. Porter is not a biomaterials expert. *See* Curriculum Vitae of William Porter, M.D. ("Porter C.V."), attached as Appendix 1 to Exh. B. Again, his attempt to parrot the opinions of other experts in order to formulate his own so-called opinion is improper. *E.g., Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002)(" A scientist . . . is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science.").

Indeed, Dr. Porter is not qualified by education, training or experience to opine on biomaterials science issues, including, without limitation, polypropylene mesh degradation, collapse, and porosity. He does not have an engineering degree in materials science. *See* Porter C.V. He does not have a demonstrated background in polymer chemistry or biochemical or biomechanical engineering. *See id.* Nothing else in Dr. Porter's experience as a surgeon would inform his opinion that Prolift Mesh, a biomaterial, degrades in the human body. *See Edwards v. Ethicon, Inc.*, 2014 WL 3361923, at *17 (S.D.W. Va. July 8, 2014) (excluding testimony from urogynecologist on degradation and shrinkage because expert was unqualified "in light of his lack of experience with mesh degradation or shrinkage").

Accordingly, Dr. Porter lacks the qualifications necessary to offer such general opinions.

## V. CONCLUSION

For these reasons, the Court should exclude Dr. Porter's general opinions. Defendants pray for all other relief to which they are entitled.

*/s/ William M. Gage*
William M. Gage (MS Bar #8691)
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
(601) 985-4561
william.gage@butlersnow.com

*/s/ Susan M. Robinson*
Susan M. Robinson (W. Va. Bar #5169)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 24338
(304) 414-1800
srobinson@tcspllc.com

Counsel for Defendants
Ethicon, Inc., Ethicon, LLC, and Johnson & Johnson

**CERTIFICATE OF SERVICE**

      I certify that on this day I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

                                              */s/ William M. Gage*