Paul W. Flowers Co., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| IN RE: COOK MEDICAL, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE: NEOMEDIC PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2511 |

***THIS DOCUMENT RELATES TO ALL CASES***

**ANDERSON LAW OFFICES' MOTION FOR STAY OF EXECUTION OF JUDGMENT**

Anderson Law Offices ("ALO") requests that this Court enter an order staying execution of the order filed July 29, 2019, authorizing disbursement of funds from the Common Benefit Fund. ("Disbursement Order") *MDL No. 2187, PTO#:308, Doc#:7367; MDL No. 2325, PTO#:283, Doc#:7444; MDL No. 2326, PTO#:212, Doc#:8226; MDL No. 2327, PTO#:342, Doc#:8453; MDL No. 2387, PTO#:161, Doc#:2576; MDL No. 2440, PTO#:89, Doc#:737; MDL No. 2511, PTO#:42, Doc#:244.* In the interest of justice, the *status quo* should be maintained pending appeal to the United States Court of Appeals for the Fourth Circuit. Furthermore, this Court should not require a supersedeas bond because the non-movants suffer no risk of irreparable harm by waiting for disbursement of funds that will remain safely deposited in the interest-bearing Common Benefit Fund.

**STANDARDS**

The Federal Rules of Civil Procedure speak only to the mandatory stay of execution to which an appellant is entitled upon filing of a supersedeas bond. *Fed.R.Civ.P. 62(b).* Yet a United States District Court retains inherent discretionary power to stay one of its judgments without such security pending appeal. *Federal Prescription Serv., Inc. v. American Pharm. Ass'n*, 636 F.2d 755, 757-760 (D.C. Cir. 1980); *Arban v. West Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003); *United States v. O'Shea*, No. 5:12–cv–04075, 2015 WL 1822848, at *1 (S.D.W.V. April 21, 2015). "Although the posting of a bond is the 'usual rule,' * * * the court need not require a bond if it would be unnecessary to protect the interest of the appellee." *Exxon Corp. v. Esso Workers' Union, Inc.*, 963 F. Supp. 58, 60 (B. Mass. 1997) (Citation omitted). Likewise, a stay of execution may still be granted when arranging for a bond would be impractical as a result of the size of the monetary judgment. *Trans World Airlines, Inc. v. Hughes*, 314 F. Supp. 94, 98 (S.D.N.Y. 1970).

The United States Court of Appeals for the Fourth Circuit "has not adopted any particular standard to guide the district court's exercise of discretion in granting unsecured stays." *Southeast Booksellers Assn. v. McMaster*, 233 F.R.D. 456, 458 (D.S.C.

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

2

2006). But that Court has considered whether a stay should be granted by analyzing several familiar factors:

> Briefly stated, a party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay.

*Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970); *see also Nken v. Holder*, 556 U.S. 418, 433-434, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) ("The first two factors of the traditional standard are the most critical."). When considering whether to grant an unsecured stay, Courts in this Circuit have generally applied the same standard with an eye toward preserving the status quo and protecting the non-moving parties. *E.g., O'Shea*, 2015 WL 1822848, at *2; *Kirby v. Gen. Elec. Co.*, 210 F.R.D. 180, 195 (W.D.N.C. 2000); *see also Ohio Valley Envtl. Coal. v. United States Army Corps of Eng'rs.*, No. 3:08-0979, 2010 WL 11565166, at *1 (S.D.W.V. May 4, 2010) (applying factors from *Long*). Although a Court may fashion an alternative to a supersedeas bond, the Court should only seek to " 'make the judgment creditor as well off during the appeal as it would be if it could execute at once, but no better off.' " *Alexander v. Chesapeake, Potomac, and Tidewater Books, Inc.*, 190 F.R.D. 190, 193 (E.D.Va. 1999), quoting *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 800 (7th Cir. 1986) (Easterbrook, J., concurring).

**ANALYSIS**

**I.     The Appropriateness of a Stay Without Bond**

As will be developed in the remainder of this Motion, "extraordinary circumstances" are presented that justify a stay without bond until the appellate process has been completed. *Holland v. Law*, 35 F. Supp. 2d 505, 506 (S.D.W.V. 1999) "The purpose of requiring the posting of a supersedeas bond is 'to preserve the status quo during the pendency of an appeal, [protecting the winning party] from the possibility of loss resulting from the delay in execution.' " *HCD Contractors v. Ruse Assocs.*, 168 F.R.D.

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

3

508, 512 (E.D. Pa. 1995), quoting *Schreiber v. Kellogg*, 839 F. Supp. 1157, 1159 (E.D. Pa. 1993); *see also Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223, 254 (N.D.N.Y. 2002). The concerns that typically justify such security simply do not exist in a case such as this, where no judgment at all has been imposed against the appealing party (*i.e.,* ALO*)* and the funds in dispute will continue to remain safely preserved in an interest bearing account managed by accounting firm Smith Cochran & Hicks, free from any threats of waste or dissipation. *Disbursement Order, p. 2*. The only way the *status quo* can be maintained is by ensuring that none of those funds are released until a final disbursement order is issued that has withstood the rigors of appellate review.

None of the parties possess any interests or potential recoveries *beyond* those protected assets. This is precisely the sort of "alternative means of securing the judgment creditor's interest" that justifies a stay of execution pending appeal without a supersedeas bond. *Holland*, 35 F. Supp. 2d at 506, quoting *Grand Entertainment Group, Ltd.*, 1992 WL 114953, at *1-2. As long as the funds in dispute remain safely preserved while generating interest, the judgment creditors (*i.e.,* the participating law firms) will be "as well off during the appeal as [they] would be if [they] could execute at once, but no better off.' " *Alexander*, 190 F.R.D. at 193, quoting *Olympia Equip. Leasing Co.*, 786 F.2d at 800 (Easterbrook, J., concurring). If ALO is ordered to post a supersedeas bond, on the other hand, the interests of the parties will be secured by *more funds than they are collectively entitled to*, and in that sense the bond would be bald surplusage.

Although these realities alone should be sufficient to justify a stay of execution without bond, the same result is warranted even when the traditional factors are examined. *Long,* 432 F.2d at 979. They will now be addressed in turn.

**II.      Application of the *Long* Factors**

    **A.      <u>Success on the Merits</u>**

        1.      The "Possibility of Success" Test

While ALO does not expect this Court to agree than an appeal will likely succeed,

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

4

that is not actually the test that should be applied at this juncture. Instead, the mere "possibility" of success on the merits can be sufficient. *Nken*, 556 U.S. at 434-435, 129 S. Ct. 1749, 173 L. Ed. 2d 550. Although there is a "a minimum threshold for likelihood of success," the bar "is a low one[.]" *Sofinet v. Immigration and Naturalization Serv.*, 188 F.3d 703, 707 (7th Cir. 1999). "The likelihood-of-success standard does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal." *Goldstein v. Miller*, 488 F. Supp. 156, 172 (D. Md. 1980). Rather, as explained by the United States Court of Appeals for the District of Columbia Circuit:

> Prior recourse to the initial decisionmaker would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision. What is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained.

*Washington Metro. Area Transit Comm. v. Holiday Tours, Inc.*, 559 F.2d 841, 845 (D.C.Cir. 1977); *Ohio Valley Envtl. Coal.*, 2010 WL 11565166, at *2-3.

ALO has raised a number of objections to the procedures followed by the Fee and Cost Committee ("FCC") and External Review Specialist ("ERS"). As well, ALO objected to the substance of the recommended allocations of the FCC and ERS, but the deficient procedures hamstrung ALO's ability to object in greater detail. At this juncture, neither ALO, nor the FCC, nor any other participating firm has been able to identify any on-point authority holding that precisely the same procedures utilized by the FCC satisfy the constitutional guarantees of due process as well as fundamental principles of fair play.

ALO has vigorously litigated whether the procedures utilized by the FCC, the ERS, and this Court have comported with these basic liberty interests. It is commonly refrained that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). But it cannot be forgotten that the "flexibility" of due process "is in its scope

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

5

once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Id.* For that reason, the standard by which courts adjudge the mandates of the due process clause requires an assessment of not only the "risk of an erroneous deprivation" of "the private interest that will be affected by the official action * * * through the procedures used," but <u>also</u> "the probable value, if any, of additional or substitute procedural safeguards" in this instance. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

ALO has not merely opposed a fee shifting award in a typical lawsuit as was the case in at least one of the decisions the FCC has so far offered to this Court. *Common Benefit Fee and Cost Committee's Omnibus Response filed April 8, 2019 ("FCC Omnibus Resp."), pp. 25*, citing *Martinez v. Schock Transfer and Warehouse Co., Inc.*, 789 F.2d 848, 849-50 (10th Cir. 1986). Rather, ALO has sought an interest in a finite fund that is proportional to the claims of other interested firms, has objected to the procedures utilized by the self-interested FCC and the conflicted ERS, and has done its best to identify the disparities in the allocations while being denied information that is necessary to compare the relative value of the participating firms. It is precisely this disconnect between the information that ALO would need in order to compare the work of all of the participating firms and the scant information that the FCC and ERS have provided that calls the validity of the proceedings into question.

These proceedings have created a higher-than-usual risk of erroneous deprivation of the proper value of ALO's proportional interest in the Common Benefit Fund because they have been conducted based upon a secret record. The proposed procedural safeguards—disclosure of the materials utilized by the FCC and ERS, a short period for review, and a hearing—would be valuable as a check against favoritism and self-dealing. These are not trifling concerns especially because the competing firms are interested in a fund worth hundreds of millions of dollars. And there is certainly more than a mere "possibility" that the United States Court of Appeals for the Fourth Circuit will agree.

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

Although ALO respectfully disagrees with the decision of this court, the fact that the constitutional sufficiency of the FCC's procedures is an "admittedly difficult legal question" establishes enough of a chance that ALO will prevail on the merits to warrant a stay to preserve the *status quo*. *Holiday Tours, Inc.*, 559 F.2d at 844.

### 2. The Purported Waiver of Appeal Rights

ALO is mindful that PTO#18 limited the Common Benefit Recovery to only those law firms that were willing to waive certain appeal rights through the following definition of "Participating Counsel:"

> "Participating Counsel" are counsel who subsequently desire to be considered for common benefit compensation and as a condition thereof agree to the terms and conditions herein and acknowledge that the court will have final, non-appealable authority regarding the award of fees, the allocation of those fees and awards for cost reimbursements in this matter. Participating Counsel have (or will have) agreed to therefore will be bound by the court's determination on common benefit attorney fee awards, attorney fee allocations, and expense awards, and the Participating Counsel knowingly and expressly waive any right to appeal those decisions or the ability to assert the lack of enforceability of this Agreed Order or to otherwise challenge it adequacy.

*Id., pp. 5-6; PageID#:3886*-87. Notably, Attorney Anderson was not one of the sixteen attorneys signing-off on this directive. *Id., pp. 15-18; PageID#:3896-99*. ALO had little choice but to acquiesce, as the firm had already been devoted to the TVM common benefit effort since approximately May 2011. A substantial portion of this work had been spent recruiting experts, conducting discovery, and preparing for the landmark bellwether trial in New Jersey in *Gross v. Ethicon*, which produced a verdict of $11.11 million in February 2013. None of the firms that were already heavily invested in the TVM effort were afforded the option of receiving compensation for the common benefit work that had already been performed while retaining their full right to appellate review.

The appeal that ALO intends to pursue of this court's recent order will differ markedly from that which was filed earlier on February 28, 2019, by participating firm

Kline & Spector. Immediate review was being sought at that time only of this court's order, PTO#:327, of January 30, 2019, <u>generally</u> granting a routine request by the FCC to allot five percent of the settlement and judgment obtained for attorney fees and expenses. No ruling was issued with regard to the specific allocations amongst the participating firms. That decision was not issued until just recently on July 25, 2019. *Disbursement Order*. That is a final order that ALO now intends to challenge on appeal.

Because the appeals will be brought by different parties based on different orders and raising different justifications for reversal, the dismissal by the United States Court of Appeals for the Fourth Circuit of the Kline & Spector proceedings will have no legal or logical impact upon those that will be brought by ALO. *Order dated June 14, 2019, 4th Cir. Case No. 19-1224*. After explaining the short procedural course of another appeal, the panel summarily concluded "that K&S knowingly and voluntarily agreed to be bound by the district court's attorneys' fees and expenses determinations and, thus, it has waived its right to appeal its attorneys' fees and expenses award." *Id., pp. 4-5*. As confirmed by the K&S response to the Motion to Dismiss that is included in the attached appendix, the firm was <u>not</u> questioning the procedure adopted by the District Court which prohibited ALO and the other non-FCC member firms from reviewing all the time and expense submissions, which were examined *in camera*. *Apx. 0001-23*. That decision, PTO#:332, was not issued until March 12, 2019.

Appellate waiver agreements are governed by contract law principles. *Goodsell v. Shea*, 651 F.2d 765, 767-768 (C.C.P.A. 1981) (considering whether an agreement to waive appeal showed "a clear mutual intent not to appeal"); *Averitt v. Southland Motor Inn of Oklahoma*, 720 F.2d 1178, 1180-1181 (10th Cir. 1983) (limiting appellate waiver to its stated scope); *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000) (Court must apply contract principles to determine whether a criminal plea agreement waived the right to appeal on the grounds claimed by defendant-appellant); *United States v. Quintero*, 618 F.3d 746, 751 (7th Cir. 2010) (A plea agreement that includes an appellate

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

waiver term "is a contract and is therefore governed by ordinary contract law principles."). These agreements are enforceable if they are supported by consideration. *In re Lupron Mktg. and Sales Practices Litig.*, 677 F.3d 21, 31 (1st Cir. 2012); *Gramling v. Food Mach. & Chem. Corp.*, 151 F. Supp. 853, 856 (W.D.S.C. 1957); *United States v. Reap*, 391 F. App'x 99, 101-102 (2d Cir. 2010); *United States v. Lutchman*, 910 F.3d 33, 37 (2d Cir. 2018) (appellate waiver not enforceable for lack of consideration). Breach of the agreement is a valid basis for releasing a party from an appellate waiver agreement. *United States v. Gonzalez*, 16 F.3d 985, 988-990 (9th Cir. 1993); *see also United States v. Bowe*, 257 F.3d 336, 342 (4th Cir. 2001) ("We agree with our sister circuits that a party's waiver of the right to seek appellate review is not enforceable where the opposing party breaches a plea agreement."). And at least in the criminal context, a valid waiver of an appeal in a plea agreement cannot foreclose an appeal on the issue of whether the government breached the plea agreement. *United States v. Landells*, 628 F. App'x 177, 178 (4th Cir. 2015); *United States v. Dawson*, 587 F.3d 640, 644 (4th Cir. 2009), fn. 4.

In accordance with these precedents, ALO will be legitimately entitled to seek appellate review of certain significant aspects of this Court's disbursement order. In contrast to the authorities that the FCC will undoubtedly be citing in opposition to this Motion, there was nothing "negotiated" or "agreed" about PTO#:18's definition of "Participating Counsel" with respect to ALO. *PageID#:3886-87*. Unlike the civil settlement and criminal plea agreements at issue in those decisions, ALO had no choice but to abide by the Court's directives and remain hopeful that no appeal would be necessary. ALO received nothing in exchange for the putative waiver, and would have recovered nothing for the considerable common benefit work that had already been performed over the prior 18 months.

But even assuming that PTO 18 is contractually binding upon ALO, any waiver must be strictly construed. *United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001). Properly viewed, Participating Counsel has only purportedly agreed under PTO#:18 that

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

this Court will possess "final, non-appealable authority regarding the award of fees, the allocation of those fees and awards for costs reimbursements in this matter." *PageID#:3886-87*. The directive repeats this language in a slightly different form and concludes that: "The Participating Counsel knowingly and expressly waive any right to appeal those decisions or the ability to assert the lack of enforceability of this Agreed Order or to otherwise challenge its adequacy." *Id*. The waiver is thus confined to the actual <u>amounts</u> of the awards and disbursements accepted by the Court, and does not reach the <u>procedure</u> employed to render the allocations. ALO anticipates that its appeal will be focused precisely upon these questions of whether the remainder of PTO#:18 and the other applicable orders were satisfied when the FCC and ERS abandoned the objective loadstar -multiplier fee calculation process and adopted instead a purely subjective percentage-of-the-funds approach that richly rewarded its own members and a few favored firms.

It should go without saying that only a knowing and voluntary waiver of the constitutional right to due process will be enforced by the courts. *Walls v. Central Contra Costa Transit Auth.*, 653 F.3d 963, 969-970 (9th Cir. 2011); *Morrison v. Warren*, 375 F.3d 468, 474 (6th Cir. 2004); *Rivera v. Marcus*, 696 F.2d 1016, 1026 (2d Cir. 1982); *Turner v. Blackburn*, 389 F. Supp. 1250, 1260 (W.D.N.C. 1975). There is no language in PTO#:18, nor in any other applicable court order, even remotely suggesting that appeal rights were being forfeited with respect to due process violations. The readily apparent intention was that the amount and allocation of the "award of fees" could not be appealed—no one was waiving or abandoning their basic rights to a full and fair judicial process.

Here, ALO intends to argue *inter alia* to the Fourth Circuit that a manifestly unfair playing field was created when the FCC members failed to disclose their own time and expense entries, which were then reviewed by this Court in an *in camera* proceeding. No attempt has been made to explain how such data could possibly be private or privileged. The FCC was thus allowed to ridicule ALO and the other objecting firms for their

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

10

purportedly excessive submissions, while successfully precluding any such criticisms of themselves. Such behind-closed-doors decision-making was specifically disapproved in *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 232 (5th Cir. 2008), where the Fifth Circuit reasoned:

> [The Committee members] also contend that the court's post-allocation procedures for hearing or reconsidering objections to fee awards provided [the non-member attorneys] an adequate opportunity to be heard. They did not. Because the court sealed the fee allocation list and placed a gag order on plaintiffs' attorneys, [the attorneys] could not compare their awards to those of other attorneys. They were not furnished with the hours and rates that other attorneys submitted or informed of the Fee Committee's process, yet such information was essential to enable them to challenge how the Fee Committee valued their work. *See In re Vitamins Antitrust Litig.*, 398 F.Supp.2d 209, 234 (D.D.C.2005) (lead counsel responsible for fee allocation must "apply a universally fair standard of allocation to all participants, including itself"). One cannot even compare apples to oranges without knowing what the oranges are. (Footnote omitted.)

*Id.* at 232. Consistent with *High Sulfur* and the consensus of due process precedents, a meaningful "possibility of success" exists upon ALO's due process challenges notwithstanding PTO#:18.

This court's take-it-or-leave-it appeal-waiver order, PTO#:18, is unique in Federal Jurisdiction in several significant respects, which will distinguish this action from the authorities that the FCC will undoubtedly be touting in opposition to this Motion. Most will concern only settlement in arbitration agreements that were entered at arms-length by parties that both received valuable consideration for the waiver of appeal rights. *Mactec, Inc. v. Gorlik,* 427 F.3d 821 (10th Cir. 2005) (arbitration agreement); *In re Lybrager*, 793 F.2d 136 (6th Cir. 1986) (settlement agreement); *Brown v. Gillette Co.*, 723 F.2d 192 (1st Cir. 1983) (settlement agreement); *Goodfell v. Shea*, 651 F.2d 765 (C.C.P.A 1981) (stipulation effectively dismissing appeal preemptively); *Slattery v. Ancient Order of Hibernians in America, Inc.*, No. 97-7173, 1998 WL 135601 (B.C. App. 1998). While the court in *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 531 (1st Cir. 1993) did remark in

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

11

passing that litigants are free to agree not to pursue specific issues on appeal, the case was decided on other grounds. And while the FCC has relied upon *1651 North Collins Corp. v. Lab. Corp. of America*, 529 F. App'x 628 (6th Cir. 2013), to support its view on the enforceability of appellate waivers, the unanimous panel actually concluded that the parties' agreement was not sufficiently explicit to accomplish such an objective. *Id.* at 632.

As in *1651 North Collins Corp.*, PTO#:18 cannot reasonably be construed to effectuate a waiver of ALO's right to seek appellate review over whether this Court dutifully complied with its own orders and abided by the basic guarantees of constitutional due process during the course of the fee allocation proceedings. No litigant would ever willingly enter a waiver of appellate rights if the result is that the litigation becomes a free-for-all without rules or limits. At most PTO#:18 can be interpreted only as prohibiting any judicial review of the fee allocations in and of themselves, but still allowing proper challenges to the process adopted and employed by the court.

### B. Inevitable Irreparable Injury

ALO stands to suffer irreparable harm if and only if the Common Benefit Fund is disbursed to the participating firms without any guarantees that the payments can be recouped if an appeal is wholly or partially successful. If the Disbursement Order is executed once the initial 30-day period imposed by Fed.R.Civ.P. 62(a) expires, more than $350,000,000.00 will be withdrawn from the Common Benefit Fund, cast to the wind, and subject to the disparate financial whims of greater than 90 law firms. And there is no obvious legal mechanism to claw these payments back should the United States Court of Appeals for the Fourth Circuit agree with ALO that the Disbursement Order was procedurally and substantively flawed. Put most bluntly, there is a serious and unacceptable risk that any disbursements will be gone for good.

To be sure, a purely procedural harm can be so significant as to become irreparable. *Ohio Valley Envtl. Coal.*, 2010 WL 11565166, at *4. Although financial loss

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

12

is not typically considered to qualify, Justice Antonin Scalia once observed:

> Normally the mere payment of money is not considered irreparable, *see Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), but that is because money can usually be recovered from the person to whom it is paid. If expenditures cannot be recouped, the resulting loss may be irreparable.

*Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304, 131 S. Ct. 1, 177 L. Ed. 2d 1040 (Scalia, Circuit Justice 2010); *see also Mori v. Boilermakers*, 454 U.S. 1301, 1303, 102 S. Ct. 1046, 70 L. Ed. 2d 370 (Rhenquist, Circuit Justice 1981) (remarking that escrowed funds would be difficult to recover if they were disbursed in an opinion announcing the decision to stay a mandate of the United States Court of Appeals for the Ninth Circuit).

The United States Court of Appeals for the Third Circuit once considered an appeal from a final award of attorneys' fees in a "landmark class action" that had been collected into a Federal MDL in the United States District Court for the Eastern District of Pennsylvania. *In re Diet Drugs*, 582 F.3d 524, 529-530 (3ᵈ Cir. 2009). Hundreds of millions of dollars were allocated in a master settlement to compensate attorneys, and a common benefit fund was created. *Id.* at 532. One firm challenged the allocation on the basis that it treated different classes of firms differently and it unfairly refunded common benefit assessments to some but not all firms. *Id.* at 548-549. When the Third Circuit considered whether ordering relief to the appellant was even feasible, it was observed:

> Months later, those refunds are not likely to be sitting in the bank accounts of the law firms that received them. It seems likely that taxes have been paid, referral counsel has been compensated, and, generally speaking, the refunds have, in all or in part, worked their way through the channels of commerce and, accordingly, would be difficult for the Court to reclaim.
>
> We also find it significant—and surprising—that [appellant], who has argued so vigorously that the allocation is unfair, never sought a stay of the refund distribution pending appeal. Had [appellant] moved for a stay, and had the Court granted his motion, the practical difficulties associated with administering the redistribution that he requests would be alleviated. When pressed on the matter during oral argument, [appellant] asserted that, in order to request a stay, he would

> have had to post a supersedeas bond—a bond that, given the enormous amount of money at issue in this case, he would not have been able to afford—so the Court probably would not have granted his request anyway. That defeatist stance is too convenient an excuse.
>
> * * *
>
> Here, the assessments and fees awarded pursuant to the Settlement Agreement were maintained in escrow accounts under the District Court's control. It is therefore quite possible, perhaps even likely, that the Court would have waived the bond requirement or required a substantially reduced bond in this case.

*Id.* at 551-552. *See also In re High Sulfur*, 517 F.3d at 231 ("[I]mmediate payments erect a serious obstacle to re-allocating fees, should the court later alter its award. The court, as its order acknowledges, would be placed in the difficult position of collecting pro rata sums from dozens of attorneys. Immediate payment essentially discouraged the court from trying to unscramble an unfair or erroneous initial allocation.").

The Common Benefit Fund is currently administered by a neutral third-party institution, and it is at no risk of any loss beyond payment of reasonable management fees so that the fund may be made productive. *Disbursement Order, p. 2.* If disbursed, the payments will not be secured in any manner. Most likely the money will be promptly spent. And if the funds are dissipated during the time that the Disbursement Order is appealed, it is unlikely that 1) there is a legal mechanism for recoupment of funds from dozens of participating firms, or that 2) future sums paid into the fund will be large enough to reconfigure disbursements to account for any changes that may be ordered by the Fourth Circuit. *In re Diet Drugs*, 582 F.3d at 551-552. For these reasons, the only risk of irreparable harm to any of the participating firms is presented by the possibility that disbursements of the Common Benefit Fund will be made free and clear of any legal responsibility to safeguard the payments.

### C. The Interests of Other Parties will Remain Secured by the Fund During a Reasonable and Justified Delay

The firms participating in these proceedings are in the best position to bear the

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

burden of maintaining the *status quo*. "[O]ther parties will not be substantially harmed by [a] stay" of the Disbursement Order because the Common Benefit Fund will be preserved. *Robinson*, 432 F.2d at 979. Indeed these firms have already been waiting for years for recovery from the Common Benefit Fund, which was established on August 26, 2013. *PTO#:62; Doc#:747*. Moreover, the Common Benefit Fund will compensate these firms over and above recoveries that have been acquired directly from their own clients.

District Judge Irene C. Berger once considered a motion for a stay of execution pending an appeal from a judgment in favor of the United States of America, and the Court issued an order that is instructive. *O'Shea*, 2015 WL 1822848. After a bench trial, the United States had successfully secured its interest in repayment of tax assessments against several parcels of real property. *Id.* at *1. The defendants sought a stay without posting a supersedeas bond. *Id.* Although the Court expressed doubt that the appeal would be successful, the motion for stay sought to place a hold on the "sale of the properties at stake," including "the Defendants' home and business," which "could not be readily reversed should the appellate court find in the Defendants' favor." *Id.* at *2. In analyzing the potential for harm to the interests of the United States, the Court observed:

> Although the United States contends that delay in putting the properties on the market will harm its interests because it may miss the prime property buying seasons of spring, summer, and fall, if such "delay" constitutes prejudice, at all, it is not sufficient prejudice to deny a stay. Further, the United States has not prosecuted this matter, involving tax assessments from more than a decade ago, with any display of urgency to this point, reducing the force of any argument regarding the cost of delay. The public has an interest in both timely enforcement of judgments and in preservation of rights pending final resolution of litigation.
>
> The United States' interests in this case, at least with respect to the real property, are largely protected by liens. <u>The Defendants cannot dispose of the real property.</u> Thus, there is little risk that a stay would interfere with the United States' ability to collect should the Court's judgment be affirmed on appeal. A stay would preserve the status quo without diminishing the United States' rights pending appeal. (Emphasis added.)

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

15

*Id.*

Like in *O'Shea*, this is not a case where the interests of the parties will be harmed in any manner if a stay is issued—the sole consequence of a postponement of the disbursements will be a justified and predictable wait for the money. There is no reason to believe that the participating firms risk any loss of time-value of the Common Benefit Funds due to market fluctuations because it is inconceivable that a fund worth hundreds of millions of dollars currently sits in zero-interest deposit accounts. Accordingly, "there is little risk that a stay would interfere with the * * * ability to collect should the Court's judgment be affirmed on appeal." *O'Shea*, 2015 WL 1822848, at *2.

Viewed differently, it is well settled that no bond will be required when the appealing judgment-debtor possesses sufficient assets and resources to pay the amount owed if the final order is affirmed. *Frommert v. Conkright*, 639 F. Supp. 2d 305, 313-314 (W.D.N.Y. 2009); *Exxon Corp.*, 963 F. Supp. at 60; *Dutton v. Johnson Cnty. Bd. of Cnty. Comm'rs.*, 884 F. Supp. 431, 435 (B. Kan. 1995); *Sealover v. Canada*, 806 F. Supp. 59, 62 (M.D. Pa. 1992). While there is no judgment debtor in this instance, there is an interest-bearing fund that is being controlled by the court which will always be sufficient to satisfy the Common Benefit Fee Allocations that are ultimately approved. There is thus no practical difference between the case *sub judice* and those involving a fully collectible judgment debtor that seeks to exercise its right to appeal.

### D. The Public Interest

It should go without saying that the public's primary interest should be in ensuring that courts render fair and equitable decisions in accordance with controlling law, which can be accomplished with confidence only when litigants are afforded the opportunity to exhaust their rights to appellate review. Granting a stay without bond will preserve this fundamental societal objective. Any of the participating firms that legitimately believe that this court's disbursement order is unassailable should have no objections to allowing the review process to proceed to a conclusion, while the Common Benefit Funds remain

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

safely in a secure account generating interest.

ALO certainly appreciates that "[t]he public has an interest in both timely enforcement of judgments and in preservation of rights pending final resolution of litigation." *O'Shea*, 2015 WL 1822848, at *2. Under the present circumstances, the only one of these public interests that is at risk is the preservation of the participating firms' rights pending an appeal. And as explained in the prior passages, that basic right is only risked by dissipation of the fund. In that light, enforcement of this Court's Disbursement Order will still be "timely" after all appeals have been concluded. *Id.*

## **CONCLUSION**

For the foregoing reasons, this Court should enter an order staying execution of the order filed July 25, 2019, MDL No. 2187, PTO#:308, Doc#:7367; MDL No. 2325, PTO#:283, Doc#:7444; MDL No. 2326, PTO#:212, Doc#:8226; MDL No. 2327, PTO#:342, Doc#:8453; MDL No. 2387, PTO#:161, Doc#:2576; MDL No. 2440, PTO#:89, Doc#:737; MDL No. 2511, PTO#:42, Doc#:244, until all avenues of appeal have been exhausted. *Fed.R.Civ.P. 62*.

Respectfully Submitted,

*s/Richard L. Gottlieb*
Richard L. Gottlieb, Esq. (WV# 1447)
Webster J. Arceneaux, III, Esq. (WV# 155)
**LEWIS GLASSER PLLC**
300 Summers Street, Suite 700
Charleston, West Virginia 25301
(304) 345-2000
rgottlieb@lewisglasser.com
wjarceneaux@lewisglasser.com

*s/Paul W. Flowers*
Paul W. Flowers, Esq. (Ohio #0046625)
Louis E. Grube, Esq. (Ohio #0091337)
**PAUL W. FLOWERS CO., L.P.A.**
50 Public Square, Suite 1910
Cleveland, Ohio 44113
(216) 344-9393
pwf@pwfco.com
leg@pwfco.com

*Attorneys for Anderson Law Offices*

PAUL W. FLOWERS CO., LPA
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th of July, 2019, the foregoing **Motion** was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*s/Paul W. Flowers*
Paul W. Flowers, Esq. (#0046625)
**PAUL W. FLOWERS, CO., L.P.A.**

*Attorney for Anderson Law Offices*