**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2187** |
| _____ | |
| **IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2325** |
| _____ | |
| **IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2326** |
| _____ | |
| **IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2327** |
| _____ | |
| **IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2387** |
| _____ | |
| **IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2440** |
| _____ | |
| **IN RE: NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION** | **MDL No. 2511** |
| _____ | |

*THIS DOCUMENT RELATES TO ALL CASES*
_____

**<u>COMMON BENEFIT FEE AND COST COMMITTEE'S
RESPONSE IN OPPOSITION TO ANDERSON LAW OFFICES'
MOTION FOR STAY OF EXECUTION OF JUDGMENT</u>**

This Motion to Stay is the latest in a series of unfounded efforts by Anderson Law Offices

("Anderson") and a small group of fellow objectors to frustrate and forestall the common benefit

allocation process because they disagree with the amount of fees and expenses they are to receive.

Anderson seeks to avoid the requirement of a bond or other security so as to appeal this Court's allocation decision with impunity even though it expressly waived its right to appeal the Court's decision on allocation years ago. The Fourth Circuit has already considered the appeal waiver at issue and held that Anderson's fellow objector knowingly and voluntarily waived any right to appeal any award of fees or expenses based upon the same waiver that applies to Anderson. Anderson's arguments to overcome this fatal shortcoming, and thus to this Motion to Stay, are meritless on their face. Moreover, separate and apart from its express waiver of appeal, Anderson's purported grounds for appeal – that the allocation should have utilized the lodestar method and that discovery should have been allowed of other applicants' time and expense submissions – have no possibility of success on the merits as this Court has already recognized when it rejected those arguments as being "entirely without merit." The Court's analysis was well-founded, as the common benefit jurisprudence provides ample support for the Court's methodology.

## ANDERSON'S REQUEST FOR A STAY PENDING AN ANTICIPATED APPEAL WITHOUT BOND OR OTHER SECURITY SHOULD BE DENIED.

Anderson seeks a stay without providing a supersedeas bond or other security. See *Holland v. Law*, 35 F. Supp. 2d 505, 506 (S.D.W.V. 1999) ("Defendant's motion for stay is fatally flawed as she has not proposed a plan to provide security by way of supersedeas bond that adequately protects the interest of the plaintiffs."). As stated in *Holland v. Law*, *supra* at 506, the power of the court to waive the supersedeas bond requirement should only be exercised in "'extraordinary circumstances,' and only where alternative means of securing the judgment creditor's interest are available." Anderson's anticipated appeal, which it knowingly and expressly waived and which lacks merit in any event, is certainly not the sort of "extraordinary circumstances" that would justify a stay in lieu of full supersedeas bond or security.

Specifically, in order to obtain a stay without the full supersedeas bond or other security, the Court considers:

    (1)    whether the stay applicant has made a strong showing that it is likely to succeed on the merits;

    (2)    whether the applicant will be irreparably injured absent a stay;

    (3)    whether issuance of the stay will substantially injure the other parties interested in the proceedings; and

    (4)    where the public interest lies.

*Barranco v. 3D Systems Corp.*, 2017 WL 3174948, *1 (W.D.N.C. 2017). As acknowledged by Anderson in its Motion, the Supreme Court in *Nken v. Holder*, 556 U.S. 418, 433-434 (2009), observed that "[t]he first two factors of the traditional standard are the most critical."

    **A.**    **Anderson has not made and cannot make a "strong showing that it is likely to succeed on the merits" of its anticipated appeal of this Court's Allocation Order.**

        1.    <u>Anderson's suggestion that a "mere possibility" of success on appeal would suffice to obtain a stay pending appeal is a misstatement of the law and Anderson has at least implicitly conceded that it cannot meet its burden of proof to obtain a stay by conceding that it does not expect this Court to agree that its appeal will be successful.</u>

At the outset of its likelihood of success argument, Anderson candidly concedes that its Motion to Stay cannot be granted. It is Anderson's legal burden to make a strong showing of the likelihood of success on the merits. However, Anderson's Motion states that it "does not expect this Court to agree that an appeal will likely succeed . . . ." Mot. for Stay at 4. Thus, Anderson has effectively told the Court that it does not believe that the Court will find it has met its burden of making a strong showing that it is likely to succeed on appeal. As held in *Ohio Valley Environmental Coalition, Inc. v. U.S. Army Corps of Engineers*, 890 F. Supp. 2d 688, 693 (S.D. W. Va. 2012), such a failure to make a strong showing of the likelihood of success on appeal is

itself fatal to a motion to stay pending appeal – even where the other factors may support a stay. *Accord Muffley v. Massey Energy Co.*, 2008 WL 11377765, *2 (S.D.W.Va. 2008) (Fourth Circuit requires that party moving for a stay must meet each of the four independent factors of test); *Citifinancial, Inc. v. Lightner*, 2007 WL 3088087, *4 (N.D.W.Va. 2007) (observing that in Fourth Circuit, the test for grant of stay pending appeal involves four separate criteria, "all of which must be met before a court may grant a stay…" and failure on one factor precludes grant of a stay); *Mylan Pharmaceuticals, Inc. v. United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 8-957*, 2008 WL 11452531 (N.D.W.Va. 2008) (under Fourth Circuit law, "where the first factor [strong showing of likelihood of success on the merits] is not met, the remaining factors need not be considered and the underlying judgment should not be stayed."). By his own admission, Anderson cannot strongly show a likelihood of success on the merits. This Motion to Stay must be denied.

In considering whether the stay applicant has made a strong showing that it is likely to succeed on the merits, it is not enough that the chance of success on the merits be better than negligible. *U.S. v. Broncheau*, 759 F. Supp. 2d 694, 696 (E.D.N.C.2010). *See also Ohio Valley Environmental Coalition, Inc. v. U.S. Army Corps of Engineers*, 890 F. Supp. 2d 688, 691 (S.D.W.Va. 2012) ("Requiring a showing of likelihood to prevail on appeal is a higher burden than requiring that only serious questions concerning the merits be raised."); *Ohio Valley Environmental Coalition, Inc. v. Pruitt*, 2017 WL 1712527, *3 (S.D.W.Va. 2017) ("It is important to remember that the non-moving party has already prevailed on the merits and a court has determined that it is entitled to the relief ordered. Applicants for a stay should not be able to unduly delay 'the orderly and expeditious disposition of cases' without an extraordinary showing.").

In espousing a non-existent "mere possibility" standard, Anderson misrepresents the Supreme Court's holding in *Nken v. Holder*, 556 U.S. 418 (2009). Anderson inaccurately cites the Supreme Court's decision in *Nken* for the proposition that "the mere 'possibility' of success on the merits can be sufficient." Mot. for Stay at 4-5. That is precisely the opposite of what the Supreme Court stated in *Nken*. Specifically, the Supreme Court instructed that in exercising its discretion, a court considering a motion to stay pending appeal must consider "whether the stay applicant has made a **strong showing that he is likely to succeed on the merits**," explaining that "[i]t is not enough that the chance of success on the merits be 'better than negligible'" and noting that "[e]ven petitioner acknowledges that '**[m]ore than a mere possibility of relief is required**.'" 566 U.S. at 434-35 (emphasis added). Indeed, Judge Chambers of this Court cited to *Nken*, in a decision that is relied upon in Anderson's brief, for the proposition that "**more than a mere possibility of relief is required**" in order to obtain a stay pending appeal. *Ohio Valley Environmental Coalition, Inc. v. U.S. Army Corps of Engineers*, 2010 WL 11565166, *3 (S.D. W. Va. 2010) (quoting *Nken*); *Accord Ohio Valley Environmental Coalition, Inc. v. Pruitt*, 2017 WL 1712527 at *3 (S.D.W.Va. 2017).   Anderson's blatantly inaccurate assertion that the Supreme Court stated that a "mere possibility of success" can satisfy a movant's burden in seeking to stay a judgment – when the Supreme Court said the opposite – embodies the lack of merit of this motion generally.

    2. <u>Anderson knowingly and expressly waived any right to appeal the Court's Allocation Order.</u>

Anderson states that it intends to appeal the Court's Allocation Order of July 25, 2019, which allocates common benefit attorneys' fees and expenses. Mot. for Stay at 8 ("No ruling was issued with regard to the specific allocations amongst the participating firms. That decision was not issued until just recently on July 25, 2019. . . . **That is a final order that ALO now intends to challenge on appeal.**") (emphasis added). Not only did the Court consider and reject

- 5 -

Anderson's objection to the allocation process and result as "entirely without merit,"[1] Anderson knowingly, voluntarily and expressly waived its right to appeal any decision by the Court on allocation of common benefit attorney's fees and expenses more than six years ago.

This Court's "Agreed Order Regarding Management of Timekeeping, Cost Reimbursement and Related Common Benefit Issues," entered October 4, 2012 in four of the related pelvic mesh MDLs and subsequently in the other three related MDLs (hereinafter, the "Management Order"), set forth the procedures, guidelines and limitations for law firms' applications for common benefit fees and expenses.[2] The Management Order provides in pertinent part as follows:

> "Participating counsel" are counsel who subsequently desire to be considered for common benefit compensation and **as a condition thereof** agree to the terms and conditions herein and acknowledge that **the court will have final, non-appealable authority regarding the award of fees, the allocation of those fees and awards for cost reimbursements in this matter.** Participating counsel have (or will have) agreed to and therefore **will be bound by the court's determination on common benefit attorney fee awards, attorney fee allocations, and expense awards, and the Participating Counsel knowingly and expressly waive any right to appeal those decisions or the ability to assert the lack of enforceability of this Agreed Order or to otherwise challenge its adequacy.**[3]

---

[1] "The four remaining objectors focus upon the structure and results of the allocation process which they agreed to several years ago. The objectors have had many opportunities to object, including to the FCC, the External Review Specialist, and me. Having considered each of their objections, I find that they are entirely without merit. All of the remaining objections [ECF Nos. 7150, 7153, 7156, 7171] are **DENIED**." Allocation Order at 5.

[2] The Management Order was entered in each of the individual MDLs.  Respondent has provided the Ethicon MDL Order for reference: Ethicon MDL 2327 PTO # 18.

[3] Anderson's after-the-fact allegation that it "had little choice but to acquiesce" to this appellate waiver several years ago, and that it "received nothing in exchange" for the waiver, is incredulous. The plain language of the Management Order precludes such a manufactured challenge, stating "Participating Counsel knowingly and expressly waive any right to . . . assert the lack of enforceability of this Agreed Order or to otherwise challenge its adequacy."  What Anderson received in exchange for his knowing and express waiver was the ability to have his time and expenses considered for potential common benefit compensation that could be distributed without the unnecessary delay from an invalid appeal by a disgruntled fellow applicant.

Anderson acknowledges in its Motion for Stay that it is a "Participating Counsel under the Management Order. Mot. for Stay at 7 ("ALO is mindful that PTO#18 limited the Common Benefit Recovery to only those law firms that were willing to waive certain appeal rights through the following definition of 'Participating Counsel'").[4] Neither Anderson nor any other party or law firm asserted any timely objection or challenge to the Management Order or to any of its terms or provisions. In addition, the Management Order was expressly incorporated by reference in each of the three subsequent common benefit orders entered by the Court.[5] Neither Anderson nor any other law firm or party filed any timely objection to any of these subsequent common benefit orders, each of which expressly incorporate the Management Order – and its unambiguous appeal waiver – by reference. Anderson's recent filing of a separate "Motion to Amend Judgment" in an ill-founded attempt to sidestep the Management Order's appeal waiver that it knowingly and voluntarily agreed to years ago is nothing less than an acknowledgment of the dispositive effect of the waiver on its anticipated appeal. Anderson's years-too-late indirect challenge to the Management Order is foreclosed by the plain language of the order itself, which states "Participating Counsel knowingly and expressly waive any right to . . . assert the lack of enforceability of this Agreed Order or to otherwise challenge its adequacy." Anderson's after-the-

---

[4] Moreover, Anderson is a member of the court-appointed Plaintiffs' Steering Committee which the Management Order expressly states was consulted and approved the Management Order before its submission to and entry by this Court more than six years ago. (Management Order, ¶ 3). As this Court recognized, "[e]very member of the PSC approved this Management Order, and the Management Order was entered in the seven MDLs." (Common Benefit Award, p. 7). Furthermore, contrary to the misrepresentation in this Motion to Stay, Anderson – as Co-Lead Counsel for the Cook MDL – signed and submitted the agreed Management Order which the Court adopted. (Cook MDL 2440 PTO # 11 [Doc. No. 43]).

[5] See Ethicon MDL 2327 PTO 62, PTO 211, and PTO 262.

fact argument that the appeal waiver should not be enforced – simply because it is not receiving an amount of money it believes it should – rings particularly hollow.

In its aggregate Common Benefit Award entered January 30, 2019 in each MDL, this Court reiterated that "[t]he Management Order explicitly stated that counsel seeking consideration for common benefit compensation must acknowledge this court's 'final, non-appealable authority regarding the award of fees' and that the parties 'agreed to and therefore will be bound by the court's determination . . . [and] knowingly and expressly waive any right to appeal those decisions or the ability to assert the lack of enforceability of this Management Order or to otherwise challenge its adequacy.'" Common Benefit Award at 7. The Court further recognized that "the Agreed Order provides that the decision by this court would be final and non-reviewable." *Id.* at 22.

In granting the FCC's Motion to Dismiss an appeal filed by fellow objector Kline & Specter to the Court's Common Benefit Award, the Fourth Circuit held as follows:

> We have reviewed the parties' submissions and agree that K&S knowingly and voluntarily agreed to be bound by the district court's attorneys' fees and expenses determinations and, thus, it has waived its right to appeal its attorneys' fees and expenses award. Accordingly, we grant the FCC's motions to dismiss these appeals.

With respect to the waiver of appeal by "Participating Counsel," Anderson's situation is indistinguishable from that of Kline & Specter. Like Kline & Specter, Anderson knowingly and voluntarily waived its right to appeal and thus the likelihood of success on appeal is non-existent. *See*, *Rose v. Logan*, 2014 WL 3616380, *3 (D.Md.2014) ("this Court found that Appellant did not have standing to bring an appeal, and thus, Appellant will likely not succeed on the merits of an appeal in the Fourth Circuit based on this threshold question…. As such, the Appellant has proffered no argument that shows his likelihood of success on the merits of his appeal so as to justify this Court granting his Motion to Stay.").

Anderson's argument that even if it were found to have waived its right to appeal the amount of its allocation, it should not be deemed to have waived its ability to appeal the fairness of the allocation procedure, is semantic and meaningless. Very simply, the subject of Anderson's planned appeal is this Court's Allocation Order, which allocates common benefit attorneys' fees and expenses. As this Court has recognized and as the Fourth Circuit has already held in this litigation, "Participating Counsel" such as Anderson agreed to be bound by this Court's determination on fee awards, fee allocations and expense awards, and knowingly and expressly waived any right to appeal those decisions.  Anderson effectively concedes in its Motion that its anticipated appeal has no chance of success by acknowledging that the Court will not find its appeal likely to succeed and instead arguing for a standard that is controverted in the very legal authority to which it cites. Accordingly, Anderson's Motion for Stay should be denied.

3. <u>Even assuming solely for argument purposes that Anderson had not knowingly and expressly waived its right to appeal, which it clearly did, Anderson still could not satisfy its burden of making a "strong showing that it will likely succeed on the merits" by raising the same arguments this Court has already considered and rejected as being "entirely without merit."</u>

As discussed above, Anderson waived its ability to appeal the Allocation Order. The Fourth Circuit has already addressed this question in this MDL under circumstances that are not distinguishable. However, even assuming *arguendo* that Anderson had not expressly waived its right to appeal any allocation decision knowingly and voluntarily more than six years ago, its anticipated appeal still has no likelihood of success on the merits.

According to its Motion for Stay, Anderson's appeal intends to generally challenge the fairness and sufficiency of the common benefit allocation process established by this Court, which the Court-appointed FCC and External Review Specialist followed to the letter. Mot. for Stay at 12 (urging that appeal waiver should not be construed to preclude "proper challenges to the process

adopted and employed by the court."). As the Court stated in its Allocation Order, the Court's common benefit orders establishing the allocation procedure were "designed for transparency and equitable distribution of common benefit monies" and were intended to "assur[e] procedural fairness," and "[t]he procedural guidance to claimants assured fairness" by providing multiple opportunities to object and to be heard. Allocation Order at 2-3. Moreover, each of Anderson's arguments regarding the Court-ordered allocation process were made to this Court in Anderson's Objection and several related filings (*See* Case 2:12-md-02327 (Ethicon MDL), Docs. 7717, 7766, 7829, 7844) and repeated in Anderson's subsequent Motion for Hearing and related briefing. *Id.*, Docs. 7896, 7959).[6] *See Ohio Valley Environmental Coalition, Inc. v. U.S. Army Corps of Engineers*, 890 F. Supp. 2d at 691 (noting that standard for granting stay pending appeal is necessarily more demanding than that for granting a preliminary injunction because "at the stay-pending-appeal stage, the merits of the underlying case have already been decided upon by a court."). Upon considering the very arguments that Anderson indicates that it intends to raise in its planned appeal, the Court found that Anderson's arguments are "entirely without merit." Allocation Order at 5. In denying the defendants' motion to stay in *Motorola Credit Corp. v. Uzan*, 275 F. Supp. 2d 519, 520 (S.D.N.Y. 2003), the court observed that

> while recognizing this high standard ['whether the stay applicant has made a strong showing that he is likely to succeed on the merits'], defendants, in their motion papers, do little more than recite in conclusory fashion numerous points on which the Court has ruled against them . . . . Mere conclusions, however, . . . do not constitute any kind of showing, let alone the requisite 'strong showing.' Accordingly, defendants have not even met the first requirement of a stay pending appeal.

---

[6] These same arguments were also asserted by Anderson in its prior motion to compel discovery from the FCC (Case 2:12-md-02327, Doc. 7174 and 7198), as well as in its Objections to the FCC's preliminary and final recommendations, both of which were provided to the Court in response to the Court's Order Scheduling Objections Pursuant to Fee and Cost Protocol.

Here, Anderson has not even attempted to make any showing that it will prevail on appeal, but instead merely states without elaboration that it intends to raise the same groundless issues this Court has already considered and rejected. Indeed, Anderson has implicitly acknowledged the futility of this motion by admitting that it "does not expect this Court to agree that an appeal will likely succeed." Mot. for Stay at 4. That candid concession is undeniably true with respect to the very arguments that this Court has already rejected as "entirely without merit." It precludes the grant of a stay here.

Moreover, Anderson's fellow objector Kline & Specter made similar arguments that were rejected by the Fourth Circuit. Similar to Anderson's argument here about the FCC's alleged deviation from common benefit orders that it says gave rise to an expectation that allocation would be made based on the "lodestar," Mot. for Stay at 10, Kline & Specter argued in the Fourth Circuit that this same appellate waiver should not be upheld because the FCC disregarded the common benefit orders that it argued gave rise to an expectation that all state court time would be compensable. App'x to Mot. for Stay (Kline & Specter 4th Cir. Response to Mot. to Dismiss Appeal), pp. 20-21. Kline & Specter also argued that enforcement of the waiver would violate due process, and that "the 'waiver' language relied upon by Appellee represents an unconscionable and unprecedented effort to abrogate the authority and jurisdiction of this Court and the Supreme Court" and that "[i]t is especially wrong to abrogate the right of appeal in the mass tort context, which is an area of litigation fraught with conflict among many parties and their counsel and with the potential for abuse." *Id.* at 16-20. Each of these arguments asserted regarding the process and fairness of the waiver were rejected, the appeal was dismissed and the subsequent petition for reconsideration or rehearing *en banc* was denied. Anderson's arguments are no different and will

most assuredly suffer a similar fate (a fact acknowledged by Anderson's filing of an invalid "Motion to Amend" seeking to avoid the waiver it agreed to years ago).

### a. Lack of discovery of other firms' submissions

Just as it urged repeatedly – and unsuccessfully – in its Motion to Compel Discovery from the FCC, its Objection to the External Review Specialist's recommendation, its later Motion for Hearing, as well in as other submissions that this Court has been provided for review, Anderson indicates that it plans to complain on appeal about its inability to review the time and expense submissions of other applicant firms, citing to *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008). Mot. for Stay at 6, 10-11. However, as the FCC has already shown in response to the same argument, neither *High Sulfur* – nor any other case – holds or even suggests that a firm objecting to a common benefit attorney's fee allocation in an MDL or class action context should have access to every other applicant firm's billing or expense records.[7] The Court consistently denied requests for discovery of this sort of information throughout the common benefit review process. (Case 2:12-md-02327, Doc. 5343; Doc. 6189; Doc. 7225; Doc. 7625).

*High Sulfur*, which involved a completely closed process where no one outside of the fee committee and the judge had *any* information about the allocation beyond the amount they were suggested to receive, stands for the proposition that a fee applicant should have sufficient information to be able to compare their award to that proposed for all other applicants. Here, unlike in *High Sulfur* where the non-committee member applicants had no information about what any

---

[7] To the contrary, courts have denied requests by fee applicant firms for other firms' billing records specifically because an attorney's fee allocation should not devolve into a separate litigation. In affirming the MDL court's denial of discovery of other firms' billing records, for example, the Eighth Circuit stated in *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir.2014), that "[a]lthough the court did not appoint an external auditor or permit discovery, *cf. In re Diet Drugs,* 582 F.3d at 533–34, discovery in connection with fee motions is rarely permitted, *In re Prudential Ins. Co. Am. Sales Practice Litig.,* 148 F.3d 283, 338 (3d Cir. 1998), and a 'request for attorney's fees should not result in a second major litigation.' *Hensley v. Eckerhart,* 461 U.S. 424 . . . (1983)."

other applicant submitted or what they were recommended to receive, every one of the 94 applicant firms was provided abundant information about every other applicant's submission and their recommended allocation. Every applicant – including Anderson – was provided the total number of hours and amount of expenses submitted overall and by each applicant firm, an explanation of the laborious process undertaken by the FCC for reviewing every firm's submission, and the results of this months-long process, including the total number of hours and expenses recognized by the FCC as for the common benefit by firm and each firm's recommended allocation. Every applicant firm was provided information about their own time and why their submitted time or expense was questioned or was not considered for the common benefit. Every applicant has also had multiple opportunities to object and to be heard and to provide feedback and to receive feedback from the FCC – both in-person and in writing. Anderson appeared before the FCC and had the opportunity to address any issue it deemed appropriate. Anderson received the transcript of its appearance before the FCC. Anderson also met with the External Review Specialist after its objections to the FCC's Final Written Recommendation were served. The FCC's Final Written Recommendation, the Declaration of the FCC's Chairman, and the External Review Specialist's Recommendation are all filed of record. Importantly, the same process and criteria were applied to every firm that applied for common benefit consideration. This Court reiterated that the Court-ordered common benefit allocation protocol was intended to provide transparency and procedural fairness, and that the FCC and External Review Specialist followed the Court's protocol. Allocation Order at 2-5. Anderson exercised its right to object to the Court. The Court issued its Allocation Order and found each of Anderson's arguments, including this argument about discovery of other firms' submissions, to be "entirely without merit." Anderson has no right to appeal, but even if it did, this argument also has no likelihood of success on the merits. This Motion to Stay cannot be granted.

### b.      Lodestar vs. percentage method

Anderson's Motion to Stay also briefly states that it anticipates that its appeal "will be focused precisely upon" the question of whether the FCC and External Review Specialist violated the Court's common benefit orders by utilizing the percentage-of-fund allocation method rather than the lodestar method. Mot. for Stay at 10.[8] The External Review Specialist and the FCC have both addressed this same groundless argument at length in prior pleadings filed with the Court, including the External Review Specialist's Recommendation and the FCC's Final Written Recommendation and its Omnibus Response to the Objections to the Recommendations of the External Review Specialist. *See* FCC Final Written Recommendation at 36-40; *see also* March 12, 2019 External Review Specialist's Recommended Allocation at 18-19, 22-23; April 8, 2019 Omnibus Response to Objections to External Review Specialist's Recommendation, Section IV, at 17-20. The Court's Allocation Order also recounts the Court-directed methodology for the allocation that required an individualized analysis guided by subjective factors focused principally on the extent to which the work contributed to the overall resolution of the litigation with great weight to the quality and impact of the applicant's efforts. Allocation Order at 3. The Allocation Order further describes the role of the time and expense review, which the Court accurately describes as "exhaustive." *Id.* at 3-4. The Court stated in its Allocation Order that the allocation process employed by the FCC and the Court-appointed External Review Specialist followed the Court's procedural orders and, again, found each of Anderson's objections – which included this argument regarding the lodestar method that have been thoroughly addressed by both the External Review Specialist and the FCC – to be completely meritless. Even if Anderson's ability to appeal

---

[8] This same unfounded argument serves as the proffered basis for Anderson's recently filed "Motion to Partially Alter, Amend or Reconsider Judgment" attempting to avoid the appellate waiver that undeniably dooms Anderson's anticipated appeal.

had not been expressly waived years ago, this entirely meritless argument would have no chance of success on appeal.

**B.     Anderson has not demonstrated irreparable injury from denial of its Motion for Stay.**

Anderson's inability to meet its burden of making a strong showing of the likelihood of success on the merits on appeal dooms its motion to stay irrespective of any of the other factors. While that factor alone is dispositive of the motion, upon analysis none of the other factors warrant a stay here either.

As an initial matter, Anderson misrepresents the nature of the stay contemplated in Rule 62(a), referencing it as an "initial 30-day period imposed by Fed.R.Civ.P. 62(a)." Mot. for Stay at 12. The obvious inference is that the stay is automatic and applies to this case. However, Anderson omits from its recitation a critical part of the rule:

> (a) Automatic Stay. Except as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, ***unless the court orders otherwise.***

FED. R. CIV. P. 62(a) (emphasis added). In its Allocation Order, the Court expressly ordered that "all expenses and MDL assessments . . . ***be dispersed to each firm***" and that, similarly, "all of the common benefit money on hand as of July 25, 2019, after subtracting the expenses and assessments mentioned above, ***be dispersed*** . . . ." Allocation Order at 5-6. In other words, the Allocation Order is not subject to an automatic stay of 30 days under Rule 62(a) because the "court order[ed] otherwise." That Anderson cannot demonstrate it will suffer irreparable injury from denial of its Motion to Stay further frustrates its purposes here.

Similar to the requisite showing for likelihood of success on appeal, the standard for demonstrating irreparable injury likewise requires more than "simply showing some 'possibility' of irreparable injury" because "the 'possibility' standard is too lenient." *Kay Co., LLC v. EQT*

- 15 -

*Production Co.*, 2017 WL 6403009, *1 (N.D.W.Va. 2017). Anderson's only claimed potential for harm is financial, but Anderson acknowledges in its Motion that "financial loss is not typically considered to qualify" as irreparable harm. Mot. for Stay at 12-13. *See also Joe v. Ozmint*, 2008 WL 5076858, at *9 (D.S.C. 2008) (finding that "[f]inancial loss is very rarely viewed by courts as irreparable harm"). Indeed, "[a]n injury is irreparable if it cannot be undone through monetary remedies." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) (citing *Interox Am. v. PPG, Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984)). "As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm." *Id.* (citation omitted). District courts in the Fourth Circuit have similarly held. In *First Hand Commc'ns, L.L.C. v. Schwalbach*, the court held that:

> It is well-settled that financial injuries do not adequately qualify as irreparable harm: Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. *Al-Abood v. El-Shamari*, 71 F.Supp.2d 511, 514 (E.D. Va. 1999) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

2006 WL 1875578, at *4 (E.D. Va. June 30, 2006).

In *In re Rose's Stores, Inc.*, 223 B.R. 487, 488 (E.D.N.C. 1998), the court denied a motion to stay pending appeal to a debtor tenant from the court's order reversing a bankruptcy court's judgment regarding the debtor's obligations under leases with its landlords, even though the debtor's landlords would be able to recover funds that had deposited in interest-bearing accounts, and despite the fact that other courts had issued opinions favorable to the debtor's position on appeal. The court held that the mere fact that there was non-binding authority in support of the debtor's appeal position was not enough to establish a likelihood of success on appeal, and the debtor presented no evidence that if it were successful, the landlords would not be able to satisfy

any judgment liens imposed against them to refund the money recovered from the interest-bearing accounts. *Id.* The court in *In re Rose's Stores* further stated that it was clear that issuing a stay would substantially injure the debtor's landlords because it would deprive them of the use of their own money during the pendency of the debtor's appeal. *Id.* This holding is particularly instructive here in light of the fact that there is no chance for success on appeal and the only outcome of a stay would be to deprive the interested firms the use of the money that they earned for their work performed years ago, and in many cases, the money that they put up to fund this litigation long ago when the likelihood of any recovery was in question.

In *In re Deepwater Horizon*, the Fifth Circuit distinguished the *Scott* opinion relied upon by Anderson (*see* Mot. for Stay at 13), holding that "there has been no showing, unlike in *Phillip Morris USA Inc. v. Scott*, ---- U.S. ----, 131 S. Ct. 1, 4, 177 L.Ed.2d 1040 (2010) (Scalia, J., in chambers), upon which BP relies, that a 'substantial portion' of the fraudulent awards 'will be irrevocably expended.'" 793 F.3d 479, 492 (5th Cir. 2015). The same is true here. Anderson asserts that "future sums paid into the fund" will not be "large enough to reconfigure disbursements to account for any changes that may be ordered by the Fourth Circuit." Mot. for Stay at 14. Anderson's concession that it cannot appeal the amount of its award because it waived such right is undermined by its professed concern that funds may not be available to pay the additional amount it apparently believes it deserves. Given that the availability of money to pay Anderson is its primary concern, Anderson's appeal is necessarily aimed at the amount of its allocation, which only underscores the futility of its potential appeal. Moreover, Anderson completely disregards the fact that additional funds will continue to flow into the Common Benefit fund from the 5% assessments of gross settlements from July 25, 2019 going forward.

The primary legal authority asserted by Anderson that funds may be unavailable is its citation to the Third Circuit's opinion in *In re Diet Drugs*. Mot. for Stay at 13-14. Anderson relies heavily on the *dicta* of this case, which merely notes the hypothetical possibility that the district court "would have waived the bond or required a substantially reduced bond . . ." had any Motion to Stay been filed there (no such motion was filed there). Mot. for Stay at 14. First, this language emphasizes the fact that it is within the Court's discretion to require a supersedeas bond or other security for the full amount of the judgment in addition to post-judgment interest and costs *even where the Court finds that a stay would be legally warranted*, which is not the case here.  Second, Anderson overlooks the fact that the Third Circuit did not make any ruling on the issue of a bond or amount of the potential bond, holding that "we need not decide whether practical difficulties in administering a reallocation . . . foreclose us from remanding the matter. As noted above, we do not believe that the District Court's allocation, viewed in context, constitutes an abuse of discretion." *In re Diet Drugs*, 582 F.3d 524, 552 (3d Cir. 2009). This holding is particularly appropriate here where, as discussed at length above, Anderson seeks a stay pending appeal without posting any bond or security and it has expressly, knowingly, and voluntarily waived its right to challenge the Court's Allocation Order on appeal, with the Fourth Circuit previously dismissing an appeal by one of Anderson's fellow objectors based on the same waiver. Moreover, this Court has already found that each of Anderson's arguments that it intends to pursue on appeal to be "entirely without merit." The fact that there is no likelihood of success on appeal obviates any need to dwell on Anderson's theoretical argument about not receiving as much money as it believes it should. In summary, Anderson cannot demonstrate an irreparable injury for the very same reasons it cannot demonstrate a likelihood of success on the merits. Anderson has no right to

appeal, and in any event, its anticipated grounds for appeal are meritless. Accordingly, Anderson has failed to establish an irrevocable harm and is not entitled to a stay without a bond.

**C.      Other parties will be substantially harmed by the stay.**

As discussed at length in the FCC's Omnibus Response to Objections to the Recommendation of the External Review Specialist, only four of the 94 law firms recommended to receive allocations have asserted any objection to the allocation. Anderson argues that stopping payment to more than ninety other Participating Counsel will not result in those firms "risk[ing] any loss of time-value" of their awards. This must be true, Anderson argues, because "it is inconceivable that a fund worth hundreds of millions of dollars currently sits in zero-interest deposit accounts." Mot. for Stay at 16. This argument presupposes that the proper measure of the time value of money—the anticipated damages for the delay in distributing to Participating Counsel their allocations from the common benefit fund—is an account bearing nominal interest. Anderson is not merely asking attorneys to forego receipt of attorneys' fees they have earned for their work benefitting all claimants. Anderson goes further, arguing that the attorneys that funded this sprawling litigation from its inception almost a decade ago, and that have incurred held costs and paid assessments in the amount of over $47 million, should continue to wait for recoupment of those tens of millions of dollars in out-of-pocket expenses until Anderson is able to argue on appeal over the course of the next several months that it singularly deserves more money – even though it expressly and knowingly waived its right to appeal this very issue. Ninety out of ninety-four firms have indicated their agreement with the allocation as ordered by the Court. Anderson seeks to deprive each of them their rights while pursuing a patently frivolous appeal which has no possibility of success. These expenses and assessments were incurred over the course of the last nine years, funding the litigation of the seven pelvic mesh MDLs. The Court has already held that

- 19 -

"[l]eadership was required to spend tens of millions of dollars *without any guarantee of success*."[9] The commitment of capital to the extent required in these cases required Participating Counsel to forego other work, and in some instances required Participating Counsel to borrow funds at an interest rate that exceeds the nominal interest accruing in the fund currently. Now that recovery of significant out-of-pocket expense has been ordered to the common benefit Participating Counsel, Anderson argues that their recovery should be delayed solely to vindicate its own personal grievances with the amount of its allocation.

Further, Anderson's reliance on *U.S. v. O'Shea* is misplaced. Mot. for Stay at 15-16. In that case, the court held that a waiver of the supersedeas bond was within the court's discretion where the sale of "the Defendants' home and business" was at stake, and which sale "could not be readily reversed should the appellate court find in the Defendant's favor." *Id.* at 15. Anderson's citation to O'Shea is misplaced because, in this case, the only issue is the potential for financial loss (albeit a non-existent potential) and not the disposition of real property, such as the forced sale of the home and business of a party. Anderson's home and business are not at issue in the Court's Allocation Order. To the contrary, Anderson has been ordered to receive significant money for its common benefit efforts under the Court's Allocation Order. The only "conflict" is that Anderson believes it should be entitled to more money and thus it seeks to delay the distribution of funds to the ninety out of ninety-four Participating Counsel while the Fourth Circuit considers its baseless appeal that it knowingly and voluntarily waived its right to pursue years ago.

> **D.** **The public has no interest in Anderson's self-serving ploy to delay disbursement of the allocation to pursue an appeal that it has waived its right to pursue.**

---

[9] Mem. Op. and Order Re: Pet. For an Award of Common Benefit Attorneys' Fees and Expenses, (emphasis added) Ethicon MDL 2327 PTO 327.

The only "public interest" which Anderson cites as allegedly supporting a grant of its Motion to Stay is the general interest in the opportunity to exhaust appellate rights. Anderson conspicuously disregards that it knowingly and voluntarily waived its right to pursue any appellate rights. The public not only has an interest in the timely execution of judgments, but appeal waivers such as that agreed upon by Anderson and memorialized by the District Court are not only a "common practice" enforced by "the great weight of authority," they are encouraged by courts in furtherance of the public policy of resolving disputes through negotiation and avoidance of protracted litigation – exactly the sort of protracted litigation that Anderson seeks to pursue. *Goodsell v. Shea,* 651 F.2d 765, 767 (C.C.P.A.1981). *See also MACTEC, Inc. v. Gorelick,* 427 F.3d 821, 830 (10th Cir. 2005) ("courts routinely enforce agreements that waive the right to appellate review over district court decisions."). As noted in *Ziyad Mini Market v. U.S.*, 302 F. Supp. 2d 124, 126 (W.D.N.Y. 2003), "even in criminal cases, in which courts are particularly careful to safeguard defendants' rights, knowing and voluntary waivers of the right to appeal as part of a plea agreement are 'regularly enforced.'" Any purported "public interest" in appellate rights would not be vindicated by allowing a party to sidestep the supersedeas bond or other security requirement to appeal without impunity, and certainly not where the party seeking to appeal gave up the right to appeal expressly and voluntarily years earlier and where the grounds for appeal have already been considered and determined to be "entirely without merit."

## CONCLUSION

Based on the foregoing argument and citation of authority, Anderson cannot possibly satisfy its burden of demonstrating that a stay in lieu of a supersedeas bond or other security could be granted under the applicable legal test. This Motion for Stay should therefore be denied.

Dated: July 31, 2019

Respectfully submitted,

THE COMMON BENEFIT FEE AND COST COMMITTEE

*/s/ Henry Garrard*
Henry G. Garrard, III
Blasingame, Burch, Garrard & Ashley, PC
440 College Ave., Ste. 320
Athens, GA 30601
706-354-4000
706-549-3545 (fax)
hgarrard@bbga.com

*/s/ Renee Baggett*
Renee Baggett
Aylstock Witkin Kreis & Overholtz
Suite 200
17 East Main Street
Pensacola, FL 32502
850-202-1010
805-916-7449 (fax)
RBaggett@awkolaw.com

*/s/ Riley L. Burnett, Jr.*
Riley L. Burnett, Jr.
Burnett Law Firm
3737 Buffalo Speedway, Suite 1850
Houston, TX 77098
832-413-4410
832-900-2120 (fax)
rburnett@rburnettlaw.com

*/s/ Thomas P. Cartmell*
Thomas P. Cartmell
Wagstaff & Cartmell, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100
816-531-2372 (fax)
tcartmell@wagstaffcartmell.com

*/s/ Clayton A. Clark*
Clayton A. Clark
Clark, Love & Hutson, GP
440 Louisiana St., Ste. 1600
Houston, TX 77002

713-757-1400
713-759-1217 (fax)
cclark@triallawfirm.com

*/s/ Yvonne Flaherty*
Yvonne Flaherty
Lockridge Grindal Nauen
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
612-339-6900
612-339-0981 (fax)
ymflaherty@locklaw.com

*/s/ Carl N. Frankovitch*
Carl N. Frankovitch
Frankovitch, Anetakis, Colantonio & Simon
337 Penco Road
Weirton, WV 26062
304-723-4400
304-723-5892 (fax)
carln@facslaw.com

*/s/ Joseph F. Rice*
Motley Rice, LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9000
843-216-9450 (fax)
jrice@motleyrice.com

*/s/ William H. McKee, Jr.*
William H. McKee, Jr.
3041 Knotty Pine Drive
Pensacola, FL 32505
304-546-2347
billmckee17@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2019, a true and correct copy of the foregoing Common Benefit Fee and Cost Committee's Response in Opposition to Anderson Law Offices' Motion for Stay of Execution of Judgment was served *via* electronic mail with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF counsel of record.

/s/ Henry G. Garrard, III
Henry G. Garrard, III
Chairman
The Common Benefit Fee and Cost Committee