**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2187** |
| _____ | |
| **IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2325** |
| _____ | |
| **IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2326** |
| _____ | |
| **IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2327** |
| _____ | |
| **IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2387** |
| _____ | |
| **IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2440** |
| _____ | |
| **IN RE: NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION** | **MDL No. 2511** |
| _____ | |

*THIS DOCUMENT RELATES TO ALL CASES*
_____

**COMMON BENEFIT FEE AND COST COMMITTEE'S
RESPONSE IN OPPOSITION TO ANDERSON LAW OFFICES'
MOTION TO PARTIALLY ALTER, AMEND, OR RECONSIDER JUDGMENT**

COMES NOW, the Common Benefit Fee and Cost Committee ("FCC"), and files this its

response in opposition to the motion to alter, amend, or reconsider judgment filed by Anderson

Law Offices ("Anderson").

## I.     INTRODUCTION AND FACTS.

Anderson's motion is replete with misstatements of fact and demonstrates a fundamental misunderstanding of common benefit jurisprudence and the application of that jurisprudence to the facts of these interrelated multidistrict cases. Anderson cites no intervening change in controlling law. Anderson points to no new evidence beyond that already in the record. Anderson identifies no clear error of law. While unclear from the motion itself, Anderson appears to be requesting the judgment of the Court be altered to prevent a purported "manifest injustice." The manifest injustice, in the eyes of Anderson, is that it did not receive a large enough share of the common benefit attorneys' fees, or, alternatively, being held to its waiver of appellate rights—to which it agreed more than six years ago without objection—is a "manifest injustice." Because this transparent attempt fails to satisfy the standard necessary to alter, amend, or reconsider the judgment entered on July 25, 2019, the FCC respectfully requests the Court deny the motion.

## II.    ANDERSON CANNOT ESTABLISH ANY OF THE THREE GROUNDS ON WHICH A PARTY CAN USE RULE 59(E) TO CHALLENGE A JUDGMENT.

"In general, 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Bowers v. Perry*, No. 2:14-CV-27242, 2016 WL 3365484, at *1 (S.D.W. Va. June 16, 2016), *aff'd*, 670 F. App'x 778 (4th Cir. 2016), (citing *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)); *see also In re: Ethicon, Inc.*, No. 2:12-CV-02700, 2016 WL 3049501, at *1 (S.D. W. Va. May 27, 2016), *aff'd sub nom. Stevenson v. Ethicon, Inc.*, 670 F. App'x 174 (4th Cir. 2016). Rule 59(e) "is intended to spare the parties and the appellate courts the costs and burdens of unnecessary appellate proceedings." *In re: Ethicon, Inc.*, 2016 WL 3049501, at *1.

According to the Fourth Circuit and this Court, there are only three instances in which a court may amend a judgment under Rule 59(e):

> (1) to accommodate an intervening change in controlling law;
>
> (2) to account for new evidence not available at trial; or
>
> (3) to correct a clear error of law or prevent manifest injustice.

*Bowers*, at *1 (quoting *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997)); *In re Am. Med. Sys., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:14-CV-28603, 2017 WL 2350230, at *2 (S.D. W. Va. May 30, 2017), *aff'd sub nom. Apuzzi v. Am. Med. Sys., Inc.*, 699 F. App'x 284 (4th Cir. 2017).

These three grounds on which a party can challenge a judgment "leave no room for rehashing arguments made prior to the judgment or which could have been made prior to the judgment." *Bowers*, at *1; *see also Pac. Ins. Co.*, 148 F.3d at 403 ("Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the parties had the ability to address in the first instance."); *id.* ("The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."). Finally, "a Rule 59(e) motion is not supported by 'mere disagreement' with the court's judgment." *Bowers*, at *1 (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)).

### III.   ANDERSON'S MOTION MERELY REHASHES OLD ARGUMENTS ALREADY REJECTED BY THIS COURT AND BY THE FOURTH CIRCUIT.

Anderson's motion is an eight-page recitation of reasons Anderson believes its knowing and voluntary waiver of its appellate rights should not count. While giving lip service to the reality that Rule 59(e) "does not afford an opportunity to simply reargue previously expressed positions" (Anderson Mot. at 2), Anderson then proceeds to spend the remainder of its motion rearguing "previously expressed positions" already considered and rejected by the Court. By way of example, pages three through six of Anderson's motion are devoted to arguing that a straight lodestar approach—multiplying the number of hours by an hourly rate—is the only appropriate measure of common benefit value. Anderson Mot. at 3 – 6. By "switching" to the percentage-of-the-fund approach, Anderson argues it was blindsided by the Court:

> Had Attorney Anderson understood that fees could be allocated on a percentage basis without any billing rates being considered when PTO #18 was adopted, he would have lodged a strong objection. **He certainly did so as soon as the FCC disclosed its intention to forego the traditional time expended and hourly rate analysis.** ***See Anderson Law Office's Objections to the Final Recommendations of the Common Benefit Fee and Cost Committee dated December 4, 2018, pp. 4-8.***

Anderson Mot. at 6 (emphasis added) (italics in original). In other words, Anderson expressly admits that it has previously raised this precise argument, even pointing the Court to the page numbers of its prior filing that contained the duplicative argument.

Any contention by Anderson that he was somehow unaware that multiplying hours by an hourly rate would not serve as the basis for the FCC's allocation under the Court-ordered common benefit allocation process is specious. The Court expressly instructed the FCC and advised all Participating Counsel in its January 15, 2016 Order setting forth the common benefit allocation criteria that "the over-arching guideline that the FCC must consider is the contribution of each common benefit attorney to the outcome of the litigation." (Case 2:12-md-02327, PTO 211 "Order

Establishing Criteria for Applications to MDL…Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration…." (the FCC Order), ¶ B).  The Court further directed that while the hours submitted should be taken into consideration, "the Court is primarily concerned with substantive contributions and not simply the total number of hours." (FCC Order, ¶ B.3.).  In addition, the Court instructed that "[a]ttention shall be paid to the quality of the work performed separate and apart from the length of time required to perform it," and instructed that inefficiency should not be incentivized. (FCC Order, ¶ B.2.).  The "hours x rate" analysis that Anderson has urged would have directly contravened the Court's explicit instruction to not allocate the fees in such manner.  For Anderson to complain more than 3 ½ years after-the-fact that it somehow believed that the allocation would be made by simply multiplying the number of hours by an hourly rate is meritless.

Anderson's arguments regarding the Court-ordered allocation process – including its argument about the lodestar methodology – were made to this Court in Anderson's Objection and several related filings (*See* Case 2:12-md-02327 (Ethicon MDL), Docs. 7717 filed March 26, 2019, 7766 filed April 2, 2019, 7829 filed April 10, 2019, 7844 filed April 15, 2019) and repeated in Anderson's subsequent Motion for Hearing and related briefing. *Id.*, Docs. 7896 filed April 22, 2019, 7959 filed May 2, 2019).[1]  The External Review Specialist and the FCC have both addressed this same groundless argument at length in several prior pleadings filed with the Court, including the External Review Specialist's Recommended Allocation, the FCC's Final Written Recommendation, and again in the FCC's Omnibus Response to the Objections to the

---

[1] These same arguments were also asserted by Anderson in its prior motion to compel discovery from the FCC (Case 2:12-md-02327, Doc. 7174 filed October 31, 2018 and 7198 filed November 9, 2018), as well as in its Objections to the FCC's preliminary and final recommendations, both of which were provided to the Court in response to the Court's Order Scheduling Objections Pursuant to Fee and Cost Protocol.

Recommendations of the External Review Specialist. *See* FCC Final Written Recommendation at 36-40; *see also* March 12, 2019 External Review Specialist's Recommended Allocation at 18-19, 22-23; and April 8, 2019 Omnibus Response to Objections to External Review Specialist's Recommendation, Section IV, at 17-20.  The Court's Allocation Order recounts the Court-directed methodology for allocation that required an individualized analysis guided by subjective factors focused principally on the extent to which the work contributed to the overall resolution of the litigation with great weight to the quality and impact of the applicant's efforts.  Allocation Order at 3.  The Allocation Order further describes the role of the time and expense review, which the Court accurately describes as "exhaustive." *Id.* at 3-4.  The Court stated in its Allocation Order that the allocation process employed by the FCC and the Court-appointed External Review Specialist followed the Court's procedural orders and, again, found each of Anderson's objections – which included this argument regarding the lodestar method that has been thoroughly addressed by both the External Review Specialist and the FCC – to be completely meritless.

This motion should be denied on the ground that it merely "rehash[es] arguments made prior to the judgment." *Bowers*, 2016 WL 3365484, at *1 (citing *Pac. Ins. Co.*, 148 F.3d at 403). *See also*, *Brian v. Murphy*, 246 F.Supp.2d 1256, 1259 (N.D.Ga.2003) ("Parties may not use a motion for reconsideration as an opportunity to show the court how it 'could have done it better.' . . . Similarly, motions for reconsideration may not be used to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind.").  Very simply, as stated in *Mt. Hawley Ins. Co. v. Felman Production, Inc.*, 2010 WL 1404107, at *2 (S.D.W.Va. 2010), "it is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through— rightly or wrongly."

## IV.     ANDERSON'S METHODOLOGY ARGUMENT ALSO FAILS ON THE MERITS.

Setting aside that Anderson has waived its appellate rights and that its sole argument for reconsideration is merely a rehashing or repackaging of an old argument already considered, which in itself warrants denial of this motion, Anderson's argument fails on the merits. The FCC and External Review Specialist have already shown, and the Court has already held, that Anderson's objections are "entirely without merit." As noted above, Anderson argues that the Court, for the first time, "endorsed the subjective percentage allocation approach" in its Allocation Order on July 25. Anderson Mot. at 2. As a result of this allegedly "unexpected[]" position on the part of the Court, Anderson argues "it is no longer fair and just for any waiver of appeal rights to be enforced." Anderson Mot. at 2. Anderson thus argues that Participating Counsel's appellate rights knowingly and expressly waived years earlier should be restored because "it would have been impossible for anyone to foresee . . . that this Court would be approving the switch from one methodology to another." *Id.* As noted above, Anderson made this same argument throughout the common benefit process and had multiple opportunities to object and to be heard on this ground, including by this Court. Anderson's argument that it now attempts to assert as a basis for disregarding its appellate waiver agreed upon years ago was addressed in detail.  The FCC's Omnibus Response stated:

> Pursuant to the Court's instruction, and consistent with precedent, the FCC considered the hours submitted that were deemed to be for the common benefit as part of its Court-mandated effort to assess the nature and value of each firm's substantive contribution. *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir.1995) ("While the time logged is still relevant to the court's inquiry – even under the [percentage of fund] method, time records tend to illuminate the attorney's role in the creation of the fund, and, thus, inform the court's inquiry into the reasonableness of a particular percentage…."); *In re Copley Pharmaceutical, Inc., "Albuterol" Prods. Liab. Litig.*, 50 F.Supp.2d 1141, 1154 (D.Wyo.1999) ("[C]ontrary to [the objector's] wishes, this Court will not solely employ hard, 'objective' criteria to make the fee allocation. As previously discussed, it is this Court's duty to weigh both the quantity and quality of work done. Addressing the quality of a given attorney's effort necessarily requires an element of subjectivity.").  Because subjective factors, such

as the nature of the work performed, the skill and experience of the counsel doing it, and the results achieved are relevant considerations, "some subjectivity is unavoidable in allotting common benefit fees." *Vioxx*, 802 F. Supp. 2d at 774. Indeed, in its appearance before the FCC, objector Mazie Slater candidly acknowledged that allocation by simply comparing the number of hours submitted is not feasible, and subjectivity is inevitable in the allocation process. (Mazie Slater FCC Transcript, 96:6-10 ("And in terms of the subjective analysis -- which I think is where you guys are going to ultimately have to end up -- because it's real hard to say based on just hours how you are going to split up all of this money.").  As Judge Fallon explained in *Vioxx*, "in the real and imperfect world of litigation it is an accepted fact that not all work hours are entitled to the same compensation rate. The nature of the work, the skill and experience of the party doing the work, and the result achieved all factor into the appropriate allocation. How these factors are weighed injects an unavoidable amount of subjectivity in the analysis.  **The best that can be done to assure the validity of the analysis is to base the subjectivity quotient on sufficient facts and experience, and to invite input from those affected**." *Vioxx*, 802 F. Supp. 2d at 774 (Emphasis added).  The FCC applied such an analysis here.

 One of the objectors urges that an allocation cannot be made based on a percentage of the aggregate award reflecting the value of the firm's contribution. (*See* Anderson Objection, § III). Such contention is unfounded. The percentage of fund methodology has been applied in several other MDL common benefit allocations, including one of the largest fee allocations in product liability MDL history in the *Diet Drug* litigation. *In re Diet Drugs Prods. Liab. Litig.*, 2003 WL 21641958, *10-*11 (E.D. Pa. 2003).  The MDL court in *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2013 WL 1867117, *4-*15 (E.D. La. 2013) approved the common benefit fee allocation proposed by the steering committee and the court-appointed special master, which awarded a stated percentage of available common benefit fees to each of the firms applying for common benefit. Similarly, in *In re Prempro Prods. Liab. Litig.*, 2014 WL 3809101, *1-*2 (E.D. Ark. 2014), the MDL court adopted a percentage-based common benefit allocation as recommended by fee committee and proposed by the special master (*See* Case 4:03-cv-1507, Doc. 3288-1 (July 14, 2014 recommended allocation based on percentage of aggregate fund)). More recently, in *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, MDL 2428 ("*Granuflo*"), the court-appointed fee committee recommended an allocation to each applicant firm of a percentage of the total fee award based on the committee's experience and the facts submitted and after receiving input from the interested firms. *Granuflo*, 1:13-md-2428, Doc. 1983 (Memorandum in Support of Plaintiff Leadership's Petition for Award and Allocation of Common Benefit Fees) (D.Mass. Dec. 12, 2017).  Like the FCC here, the fee committee in *Granuflo* emphasized in its allocation petition that it did not undertake to apply "an unyielding mathematical formula," which it noted could not properly account for the subjective differences that must be considered in making such an award, such as the differing skills and contributions of the attorneys and varying nature and complexity of the tasks involved. *Id.*, p. 22. The MDL court approved the

committee's recommendation. *Granuflo*, 2018 WL 2163627 (D.Mass.2018). *See also*, *In re Trasylol Prods. Liab. Litig.*, Case 1:08-md-01928, Doc. 13390 (S.D. Fla. Oct. 11, 2012) ("Motion for Payment of Common Benefit Attorneys' Fees From the Trasylol Common Benefit Fund….") (allocation based on percentage of fund); *Id.*, Doc. 13419 (S.D.Fla. Nov. 11, 2012) (Order granting Allocation Motion); *In re Copley Pharmaceutical*, 50 F.Supp.2d 1141, 1151-57 (assessing allocations to leadership and objectors in terms of percentage of aggregate award).

FCC's Omnibus Response to the Objections to the Recommended Allocations of the External Review Specialist, Case No. 12-md-02327, *In re: Ethicon*, Doc. 7816 at 17-20. There is ample authority to support the use of a percentage of the fund approach to allocating attorneys' fees that is reflective of the applicant firms' substantive contributions to the litigation.

Anderson's contention that its hours were disregarded or that its allocation does not reflect the relative value of its contribution is contrary to fact. The FCC recognized a total of 22,209.68 hours for Anderson, the tenth largest number of hours recognized. Based on the FCC's review of the time and expense records, the Fee Affidavit, the firm's in-person presentation to the Fee Committee, the firm's objections to both the FCC's preliminary and final recommendations, in-person meetings with the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs, the External Review Specialist recommended an increase in Anderson's allocation for a recommended total allocation that was the tenth largest recommended allocation percentage.

Anderson urges that at the time it knowingly and expressly agreed to the appellate waiver in the Management Order, it expected that the allocation process would be made by multiplying the number of hours by rate ("lodestar") based upon its interpretation of the Court's Management Order. Anderson Mot. at 2; *See also*, *Id.* at 6 ("Had Attorney Anderson understood that fees could be allocated on a percentage basis without any billing rates being considered when PTO #18 was adopted, he would have lodged a strong objection."). Anderson's purported expectations were

objectively unreasonable. The common benefit precedent set forth in detail *supra* at 7-8 unequivocally demonstrates the propriety of the Court-ordered, FCC-executed methodology. Regardless, Anderson's fellow objector Kline & Specter made similar arguments in the Fourth Circuit. Similar to Anderson's argument here about the FCC's alleged deviation from common benefit orders that it says gave rise to an expectation that allocation would be made utilizing a "lodestar," Kline & Specter argued in the Fourth Circuit that this same appellate waiver should not be upheld because the FCC allegedly disregarded the common benefit orders that it argued gave rise to an expectation that all state court time would be compensable. App'x to Anderson Mot. for Stay (Kline & Specter 4th Cir. Response to Mot. to Dismiss Appeal) at 20-21. This argument that the FCC's alleged deviation from common benefit orders was grounds to ignore the unambiguous appeal waiver was rejected by the Fourth Circuit, the appeal was dismissed, and the subsequent petition for reconsideration or rehearing *en banc* was denied. Anderson's argument that the appeal waiver should be disregarded because it believed the allocation would be made based on a lodestar analysis is indistinguishable and will suffer a similar fate in the Fourth Circuit. It has no merit.

Anderson also continues to take issue with the allocations to the member law firms of the FCC. This, too, is an argument that has been repeated throughout Anderson's prior filings throughout the common benefit process. Anderson had ample opportunity to object and to be heard on this argument. This argument, too, was rejected by the Court as "entirely without merit." As the Court stated in its Allocation Order,

> The FCC, tasked with making fee award recommendations for common benefit work, included lawyers in law firms representing or substantially responsible for the resolution of approximately 75% of the more than 100,00 cases filed in the seven MDLs assigned to me. Members of the FCC were major contributors to, and claimants of, the monies contributed to the common benefit fund. Their diverse and competing interests offered a large measure of mutually assured fairness to the process. The lawyers appointed to the FCC were known to me to be the most active in the broadest range of cases across the seven MDLs. That is, the composition of

the MDL of the FCC significantly contributed to a process that was structurally designed for transparency and equitable distribution of common benefit fund monies. . . .

Allocation Order at 2-3.

## V.  ANDERSON ACKNOWLEDGES IT WAIVED ITS APPELLATE RIGHTS BUT SEEKS A DO-OVER TO PREVENT THE ALLEGED "MANIFEST INJUSTICE" OF HAVING NOT RECEIVED THE AMOUNT OF MONEY IT BELIEVES IT DESERVES.

Anderson expressly acknowledges it knowingly and voluntarily "'waive[d] any right to appeal those decisions' allocating the [common benefit] award" as the "Court had directed that any attorney who wanted to be reimbursed as 'Participating Counsel' for work that had been, and would be, performed for the common benefit of all was required." Anderson Mot. at 2.  Neither Anderson nor any other party or law firm asserted any timely objection or challenge to the Management Order or to any of its terms or provisions. In addition, the Management Order was expressly incorporated by reference in each of the three subsequent common benefit orders entered by the Court.[2]  Neither Anderson nor any other law firm or party filed any timely objection to any of these subsequent common benefit orders, each of which expressly incorporate the Management Order – and its unambiguous appeal waiver – by reference.

Anderson now argues, much like Kline and Specter before it, that the appellate rights waiver should be disregarded because "it is no longer fair and just for any waiver of appeal rights to be enforced." Anderson Mot. at 2. Anderson waited until the results of the allocation were known and, taking umbrage at its allocated amount of the fees, contends that the waiver is now somehow "no longer fair and just."  In other words, the so-called "unfairness" is not in the waiver itself, but rather in the amount of money allocated to Anderson.  The obvious purpose of the

---

[2] See Ethicon MDL 2327 PTO 62, PTO 211, and PTO 262.

appellate waiver set forth in the Management Order was to avoid the potential for expensive and prolonged disputes with disgruntled or disappointed attorneys' fee applicants. In *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014), the Eighth Circuit recognized the well-established principle that a "request for attorney's fees should not result in a second major litigation." (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Based on this desire for finality and avoidance of a "second major litigation" over attorneys' fees, Anderson – and every other applicant firm seeking common benefit attorney's fees – "knowingly and expressly" agreed to waive any right to appeal in exchange for the opportunity to be considered for potential common benefit fee compensation. This knowing and express waiver of the right to appeal is not somehow obviated simply because Anderson did not get its way, or the outcome was not what it expected. Indeed, the appeal waiver was plainly intended to avoid the very sort of unnecessary delay and expense that this motion and Anderson's anticipated appeal embodies. Far from a "manifest injustice," appeal waivers such as that agreed upon by Anderson and memorialized by the District Court many years ago are not only a "common practice" enforced by "the great weight of authority," they are encouraged by courts in furtherance of the public policy of resolving disputes through negotiation and avoidance of protracted litigation. *Goodsell v. Shea,* 651 F.2d 765, 767 (C.C.P.A.1981). *See also, MACTEC, Inc. v. Gorelick,* 427 F.3d 821, 830 (10th Cir. 2005) ("courts routinely enforce agreements that waive the right to appellate review over district court decisions."). Indeed, as noted in *Ziyad Mini Market v. U.S.*, 302 F. Supp. 2d 124, 126 (W.D.N.Y. 2003), "even in criminal cases, in which courts are particularly careful to safeguard defendants' rights, knowing and voluntary waivers of the right to appeal as part of a plea agreement are 'regularly enforced.'" Anderson's attempt to circumvent

the appeal waiver that it agreed to years ago simply because it feels it is receiving less than deserved is groundless.

A similar argument was raised by Kline & Specter in its appeal of the Court's Memorandum Opinion and Order Re: Petition for an Award of Common Benefit Attorneys' Fees and Expenses ("Common Benefit Order"). The Fourth Circuit rejected this argument, dismissing the appeal and entering the following order:

> The FCC has moved to dismiss the appeals, asserting that K&S expressly waived its right to challenge on appeal the district court's determination on common benefit attorneys' fees awards, attorney fee allocations, and expense awards. We have reviewed the parties' submissions and agree that K&S knowingly and voluntarily agreed to be bound by the district court's attorneys' fees and expenses determinations and, thus, it has waived its right to appeal its attorneys' fees and expenses award. Accordingly, we grant the FCC's motions to dismiss these appeals.

*Kline & Specter, P.C. v. Common Benefit Fee and Cost Committee*, Case No. 19-1224 (2:12-md-02327), Order Dismissing Appeals at 4-5 (4th Cir. June 14, 2019).  Anderson, like Kline & Specter, explicitly acknowledges that it knowingly and voluntarily waived its appellate rights as "Participating Counsel" (Anderson Mot. at 2), although at the end of its brief it attempts to claw back the admission by arguing that its waiver was "involuntary" because it "had little choice but to comply, as the firm had already been devoted to the TVM common benefit effort" for a little over a year. The argument has no merit. Anderson had a rather obvious option, which is to object to the Pretrial Order at the time of its entry. It did not, nor did any other law firm. Now, seven years after its entry, Anderson raises for the first time the supposed "involuntary" nature of its waiver – but only after it became dissatisfied with the amount of its allocation. This argument is nonsensical. For all of the same reasons that Kline & Specter's appeal was dismissed and its petition for rehearing denied by the Fourth Circuit, Anderson's threatened appeal is likewise doomed. There is no "manifest injustice," and no basis presented for relief under Rule 59(e).

Anderson's motion provides the Court with no reasons, legal or otherwise, to alter its judgment as entered on July 25, 2019, in its Allocation Order. In fact, Anderson's requested relief—that the Court "alter" its judgement and release Anderson from its knowing and voluntary waiver so that Anderson can appeal—is fundamentally at odds with the purpose of Rule 59(e). As this Court has held, Rule 59(e) "is intended to spare the parties and the appellate courts the costs and burdens of unnecessary appellate proceedings." *In re: Ethicon, Inc.*, 2016 WL 3049501, at *1. Anderson is not arguing that the Court's many orders acknowledging the waiver were error; it is arguing that it should be released from its waiver so that it may pursue a questionable appeal and inflict on the parties "the costs and burdens of unnecessary appellate proceedings." This attempt is in contravention of the very purpose of the Rule. The motion should be denied.

## VI.   CONCLUSION.

For all of the foregoing reasons, the FCC respectfully requests the Court deny Anderson Law Offices' Motion to Alter, Amend, or Reconsider Judgment. Anderson raises no new arguments that it has not already raised, multiple times, instead choosing to rehash the same arguments already rejected by this Court and indistinguishable from the same arguments rejected by the Fourth Circuit in dismissing Anderson's fellow objector's appeal and denying rehearing. Anderson cites no intervening change in controlling law, raises no new evidence not already in the record, identifies no clear error of law, and fails to establish a manifest injustice. The Motion should be denied.

Dated: August 1, 2019

Respectfully submitted,

THE COMMON BENEFIT FEE AND COST COMMITTEE

*/s/ Henry Garrard*
Henry G. Garrard, III
Blasingame, Burch, Garrard & Ashley, PC
440 College Ave., Ste. 320
Athens, GA 30601
706-354-4000
706-549-3545 (fax)
hgarrard@bbga.com

*/s/ Renee Baggett*
Renee Baggett
Aylstock Witkin Kreis & Overholtz
Suite 200
17 East Main Street
Pensacola, FL 32502
850-202-1010
805-916-7449 (fax)
RBaggett@awkolaw.com

*/s/ Riley L. Burnett, Jr.*
Riley L. Burnett, Jr.
Burnett Law Firm
3737 Buffalo Speedway, Suite 1850
Houston, TX 77098
832-413-4410
832-900-2120 (fax)
rburnett@rburnettlaw.com

*/s/ Thomas P. Cartmell*
Thomas P. Cartmell
Wagstaff & Cartmell, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100
816-531-2372 (fax)
tcartmell@wagstaffcartmell.com

*/s/ Clayton A. Clark*
Clayton A. Clark
Clark, Love & Hutson, GP
440 Louisiana St., Ste. 1600
Houston, TX 77002

713-757-1400
713-759-1217 (fax)
cclark@triallawfirm.com

*/s/ Yvonne Flaherty*
Yvonne Flaherty
Lockridge Grindal Nauen
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
612-339-6900
612-339-0981 (fax)
ymflaherty@locklaw.com

*/s/ Carl N. Frankovitch*
Carl N. Frankovitch
Frankovitch, Anetakis, Colantonio & Simon
337 Penco Road
Weirton, WV 26062
304-723-4400
304-723-5892 (fax)
carln@facslaw.com

*/s/ Joseph F. Rice*
Motley Rice, LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9000
843-216-9450 (fax)
jrice@motleyrice.com

*/s/ William H. McKee, Jr.*
William H. McKee, Jr.
3041 Knotty Pine Drive
Pensacola, FL 32505
304-546-2347
bmckee@suddenlink.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2019, a true and correct copy of the foregoing Common Benefit Fee and Cost Committee's Response in Opposition to Anderson Law Offices' Motion to Partially Alter, Amend, or Reconsider Judgment was served *via* electronic mail with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF counsel of record.

<u>/s/ Henry G. Garrard, III</u>
Henry G. Garrard, III
Chairman
The Common Benefit Fee and Cost Committee