**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABLITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| IN RE: COOK MEDICAL, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE: NEOMEDIC PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2511 |

*THIS DOCUMENT RELATES TO ALL CASES*

**MOTION FOR APPROVAL OF QUALIFIED SETTLEMENT FUND**

Wexler Wallace, LLP ("Wexler Wallace"), as counsel for certain plaintiffs in this MDL No. 2327, along with MDL Nos. 2187, 2325, 2326, 2387, 2440, and 2511 ("the Pelvic Mesh MDLs"), hereby moves the Court for entry of an Order to aid in the efficient processing and administration of one or more anticipated settlements of Pelvic Mesh claims that are the subject of these MDLs between clients of Wexler Wallace and defendants and their related entities (see Attachment 1, attached), as well as to hold monies relating to such settlements and or verdicts for appropriate disbursement. In support of this Motion, Wexler Wallace states as follows:

1.  This motion seeks an order: (i) approving the establishment of the Wexler Wallace LLP TVM Client Settlement Fund (the "Fund"); (ii) appointing an administrator of the Fund; (iii)

retaining continuing jurisdiction and supervision over the Fund; (iv) allowing the Fund to receive payments directly or indirectly through a duly appointed settlement fund, claims administrator, accounting firm, defendant(s), insurance company, court of law, attorney IOLTA account, and/or any other person or entity listed in Attachment 1 whose purpose is to settle any claims or pay any verdicts arising out of the matters that are the subject of the Fund; and (v) determining that the Fund, including any subaccounts thereof ("Accounts"), together constitute a single "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code of 1986, as amended ("Code") and Treasury Regulations sections 1.468B-1, *et. seq.* ("Regulations").

2.   Wexler Wallace anticipates receiving funds relating to its clients settlements of claims against defendants and related parties listed in Attachment 1, or otherwise through verdicts or Court orders, at a time when an exact allocation among and distribution to plaintiffs and any entities asserting a claim of subrogation or reimbursement cannot be finalized. Hence, the Court is being asked to establish the Fund pursuant to an order as a vehicle to hold the funds to be used to resolve or satisfy these claims upon the appropriate allocation of monies deposited into the Fund. The establishment of the Fund as a "qualified settlement fund" under the Code and Regulations, subject to the Court's continuing jurisdiction, is vital to the satisfaction of these objectives of the parties' settlement.

3.   Upon performing all duties required under applicable settlement agreements or as otherwise ordered by the Court,  defendants and/or others under applicable settlement agreements or pursuant to Court order shall pay the requisite sums into the Fund (the "Total Proceeds"). The Total Proceeds deposited in the Wexler Wallace LLP TVM Client Settlement Fund shall be initially paid by defendants and/or defendants' insurance carrier(s) and transmitted into the Fund as provided by the settlement agreement(s), Court order, and otherwise as described in paragraph

1(iv) of this motion.  Such payments and the earnings thereon will be held by the Fund until disbursed by the Fund Administrator in accordance with the terms of the settlement agreement(s) and the Escrow Agreement.

4.   The Wexler Wallace LLP TVM Client Settlement Fund shall be a Qualified Settlement Fund within the meaning of section 468B of the Internal Revenue Code of 1986, as amended and Treasury Regulation sections 1.468B-1 *et seq.,* and shall be administered in accordance with the requirements of those treasury regulations. The Fund will qualify as a "qualified settlement fund" under section 468B of the Code and sections 1.468B-1, *et seq.* of the regulations, because: (1) the Fund is being established subject to approval of the Court; (2) the Fund will be subject to the continuing jurisdiction and supervision of the Court; (3) the Fund is being established to resolve or satisfy claims of alleged tort or violation of law arising out of implantation, use and/or removal or revision, in whole or in part, of one or more Pelvic Mesh Products; and (4) the Fund assets will be segregated from the general assets of any and all defendants and their insurers and deposited therein.

5.   This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a Qualified Settlement Fund "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

6.   Plaintiffs request that the Court approve the engagement of Wahlstrom & Associates as the Qualified Settlement Fund Administrator ("Fund Administrator") to administer the Fund (as a "qualified settlement fund") within the meaning of section 1.468B-2(k)(3) of the Regulations. Wahlstrom & Associates possesses extensive experience administering Qualified Settlement

Funds.  Wahlstrom & Associates' address is as follows:  7585 East Redfield Road, Suite 103, Scottsdale, AZ 85260.  Wahlstrom & Associates submits personally to the jurisdiction of this Court.  Upon the dissolution or bankruptcy of Wahlstrom & Associates, its appointment as Fund Administrator shall terminate and the plaintiffs and defendants will seek Court approval of their nominated successor Fund Administrator.

7.  Until such time that the plaintiffs are entitled to receive compensation, no settlement or verdict monies shall be set apart for a plaintiff, or otherwise made available so that he or she may draw upon or otherwise control said monies.

8.  The Fund, by and through the Fund Administrator, shall only make payments to the plaintiffs, entities asserting a statutory claim of subrogation, and others with a claim to monies held in the Fund according to the terms of the applicable settlement agreement(s) or Court order.

9.  The Fund, by and through the Fund Administrator, may purchase and assign any structured settlements and/or structured attorneys' fees created under any release agreements. Any structured settlement annuity contract shall be issued by a life insurance company that is rated A+ or better by A.M. Best Company.[1]

10. The claims made against defendants are made on account of physical bodily injury and arise out of alleged liability in tort or violation of law.  The plaintiffs shall agree in writing to a

---

[1] Structured Settlement Payments are assigned to a qualified assignee by entering into qualified assignments of such structured settlement payments within the meaning of Section 130(c) of the Internal Revenue Code.  The qualified assignee shall, respecting each person who is to receive periodic payments under a settlement agreement, purchase one or more qualified funding assets within the meaning of Section 130(d) of the Internal Revenue Code to fund any structured settlement payments assigned to the qualified assignee. Payments are assigned to a qualified assignee by entering into qualified assignments of such structured settlement payments within the meaning of Section 130(c) of the Internal Revenue Code.  The qualified assignee shall, respecting each person who is to receive periodic payments under a settlement agreement, purchase one or more qualified funding assets within the meaning of Section 130(d) of the Internal Revenue Code to fund any structured settlement payments assigned to the qualified assignee.

discharge of the Fund and the Fund Administrator's liabilities in the making of any structured settlement payments, also known as periodic payments, by executing, along with the Fund Administrator, any necessary documents required or related to the discharge of those liabilities.

11. The Total Proceeds are the sole property of the Fund.  No portion of the Total Proceeds shall be made available to plaintiffs, their representatives, or anyone else with a claim to monies held in the Fund in any fashion, except as specifically set forth in the settlement agreement(s) or Court order. Until such time as monies are distributed, the plaintiffs shall not possess any rights to demand or receive any portion of the Total Proceeds or the escrowed funds or to mortgage, pledge, or encumber the same in any manner. To the extent possible, this Motion shall be construed to prevent plaintiffs from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the Fund.

12. The Fund Administrator shall be indemnified and held harmless by plaintiffs from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Fund.  Should the Fund Administrator be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Fund, by reason of the Fund Administrator having served in any capacity on behalf of the Fund, the Fund Administrator shall be indemnified and held harmless by the plaintiffs against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Fund Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the Fund

Administrator was grossly negligent or acted with willful misconduct in connection with the administration of this Fund.

13. Wexler Wallace shall be indemnified and held harmless by the Fund Administrator from any claims which arise from the gross negligence or willful misconduct of the Fund Administrator as determined by this Court.  Should Wexler Wallace be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, by reason of the Fund Administrator's gross negligence or willful misconduct, Wexler Wallace shall be indemnified and held harmless by the Fund Administrator against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by Wexler Wallace in connection with or resulting from such actual or threatened action, suit or proceeding.

14. The plaintiffs request that no bond be required, provided that all monies received by the Fund, which includes all principal and interest earned thereon, shall be deposited in an investment agency account held in custody at Signature Bank for the benefit of and titled in the legal name of the Fund and invested in instruments/securities comprised of (a) United States Agency, Government Sponsored Enterprises or Treasury securities or obligations (or a mutual fund invested solely in such instruments) (b) cash equivalent securities including SEC registered money market funds and collateralized money market accounts; and (c) non-interest bearing corporate accounts subject to unlimited Federal Depository Insurance Corporation guarantees under recent banking and security regulations, including but not limited to amendments to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203 (which provides temporary unlimited deposit insurance coverage for noninterest bearing accounts at FDIC-insured depository institutions), but only for so long as there is unlimited FDIC insurance covering the settlement

6

funds.  The Fund shall be held at Signature Bank ("Bank"), a financial institution doing business in Chicago, Illinois according to the above terms and conditions, and said financial institution shall be responsible for any and all investment related decisions, following the instructions of the Fund Administrator and/or its investment advisor pursuant to these terms and conditions, such that the following investment policy is implemented; (1) safety of principal, (2) zero bank balance exposure; and the use of zero sweep disbursement accounts to ensure funds remain in custodial or fully insured accounts to avoid an impermissible risk of loss should the financial institution holding the funds fail.  Notwithstanding the foregoing, the Bank shall not be allowed to distribute any income or principal from the Fund except upon instructions of the Fund Administrator, or, if requested, upon the order of this Court upon the joint motion of the parties.  The Fund Administrator retains the right to remove the Bank with or without cause, in its sole and absolute discretion.  The Fund Administrator may designate a replacement bank upon the written consent of the plaintiffs.  In the event of such replacement, the terms and conditions of this paragraph, including without limitation, those addressing bond requirements, investments, and distributions from the Fund, shall apply to any such replacement bank.

15. The Fund Administrator shall be authorized to distribute all attorney fees and litigation expenses to counsel for plaintiffs, consistent with existing contingency fee contracts and to the extent required or permitted by law or Court order.

16. All taxes on the income of the Fund and expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, the expenses of tax attorneys and accountants) shall be paid out of the Fund, shall be considered to be a cost of administration of the settlements, and shall be paid as instructed by the Fund Administrator.

17. All expenses incurred in the settlement of claims shall be allocated among the settling plaintiffs on a pro rata basis including any fees of the Fund Administrator and/or accounting fees and shall not be the responsibility of the settling defendants. The fee of the Fund Administrator shall be according to the Fund Administrator's published fee schedule.

18. Upon request, the Fund Administrator will prepare and deliver Fund Statements ("Statements") to counsel for the plaintiffs and/or this Court.  The Statements shall include a statement of receipts, investment earnings, and disbursements.  The Fund Administrator shall provide the Statements no later than ten (10) business days following a request therefore.

19. The Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document believed by the Fund Administrator to be genuine and sufficient, and upon any other evidence believed by the Fund Administrator, in its reasonable judgment, to be genuine and sufficient, which may be provided to the Fund Administrator by plaintiffs' counsel.

20. Upon completion of all Fund Agreements and final distribution of all monies to be paid into the Fund, the Fund Administrator shall take appropriate steps to wind down the Fund and thereafter be discharged from any further responsibility with respect to the Fund.

21. The Fund Administrator will obtain a Federal Taxpayer Identification Number for the Wexler Wallace LLP TVM Client Settlement Fund upon the execution of an order by the court establishing the Fund.

<u>CONCLUSION</u>

For the reasons state above, Wexler Wallace LLP respectfully requests that the Court approve establishment of the Fund as a qualified settlement fund, and enter an Order in the form submitted herewith.

Dated: August 2, 2019

Respectfully submitted,

/s/ Edward A. Wallace
Edward A. Wallace
WEXLER WALLACE
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
312-346-2222
312-346-0022 FAX
eaw@wexlerwallace.com

*Attorney for Plaintiffs*

**ATTACHMENT 1**

**TO THE MOTION FOR APPROVAL OF QUALIFIED SETTLEMENT FUND (WEXLER WALLACE LLP)**

The following persons or entities constitute Transferors of the Wexler Wallace LLP TVM Client Settlement Fund (the "Fund")  at the time of filing and this list may be amended as necessary to include other defendants or transferors yet to be disclosed:

- Any and all defendants in MDL Nos. 2327, 2187, 2325, 2326, 2387, 2440, and 2511 ("the Pelvic Mesh MDLs"), including but not limited to: Ethicon, Inc.; Ethicon, LLC; Johnson & Johnson; C.R. Bard, Inc.; American Medical Systems, Inc.; American Medical Systems Holdings, Inc.; Endo Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Boston Scientific Corporation; Mentor Worldwide LLC; Coloplast A/S; Coloplast Corp.; Coloplast Manufacturing US, LLC; Porges S.A.; and Sofradim Production SAS;

- Any other related party in the Pelvic Mesh MDLs;

- Any insurance company or accounting firm of one of the defendants or related parties in the Pelvic Mesh MDLs;

- Law firms which might pay into the Fund under fee agreements or MDL direction;

- The Court or any other court overseeing an action relating to Pelvic Mesh Products, or the distribution of funds derived therefrom;

- The Common Benefit Fee and Cost Committee, or any similar Court appointed person or entity in the Pelvic Mesh MDLs; and

- The co-lead counsel,  plaintiff steering committees, or executive committees in the Pelvic Mesh MDLs.