IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2325 |
| IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2327 |
| IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL NO. 2511 |

THIS DOCUMENT RELATES TO ALL CASES

## **MOTION TO SET AN END DATE FOR COMMON BENEFIT ASSESSMENTS**

### I. INTRODUCTION

Kline & Specter represents approximately 3,000 individuals who have filed lawsuits seeking recovery for personal injuries caused by pelvic mesh implants. Many of those individuals filed lawsuits coordinated in the instant MDL proceedings. Other individuals filed suit in various state courts around the country.

On January 30, 2019, this Court entered an order granting the Fee and Cost Committee's request for an aggregate 5% common benefit fee. At the time of the order, the defendants had paid approximately $7.25 billion in settlements and judgments with respect to tens of thousands of cases, but not all of the pelvic mesh cases that had been filed. To date, tens of thousands of cases in these MDLs have resolved, which has resulted in $366,102,875.06 in payments into the common benefit fund by defendants. Based on the number of cases that have been resolved pursuant to settlements but not yet processed or that remain in the MDLs, it is anticipated if the fee assessments are to continue, the common benefit fund could ultimately equal or exceed $550,000,000.00. *See* PTO 327 (MDL No. 2327), at p. 12.

While thousands of cases remain unresolved, by June 21, 2018, this Court has entered orders in each of the pelvic MDLs stopping the transfer of any additional cases to the MDLs, constructively ending the MDLS. *See* e.g., PTO No. 304 p. 1. As of this writing, not one of the seven MDLS is accepting cases. Cases are now being transferred back to their originating district courts. Because these cases are now being worked up individually and because discovery is occurring outside the MDL, clients are no longer receiving any "common benefit." Therefore, any common benefit fee assessments of settlements made or verdicts paid after June 21, 2018 should end.

As of this writing, the question of how to deal with future common benefit fee assessments remains unresolved. For the reasons stated below, Kline & Specter proposes that this Court set June 21, 2018 as the cut-off date for any common benefit fee assessments of settlements made or verdict awards paid.

II.     ARGUMENT

    A. This Court's Role in the Litigation is Limited to the Pretrial Context.

An award of attorney fees is committed to the sound discretion of the district court. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). "[T]he district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 730 (3d Cir. 2001) (quoting *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 (9th Cir. 1999)).

Multidistrict litigation is aimed at efficient and coordinated pretrial litigation. The 1968 Multidistrict Litigation Act (the "MDL Act") created the Panel on Multidistrict Litigation (the "Panel") to transfer multiple cases with "common questions of fact" to a single federal judge for coordinated or consolidated pretrial proceedings. 28 U.S.C. § 1407(a) (2012). Transfer is authorized if the Panel determines that "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* The transferee court has broad authority to dispose of all motions and issues that arise in the pretrial context, including all discovery matters and dispositive motions such as those for dismissal and summary judgment. The Act provides that: "Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." *Id.*

No statutory guidelines are provided for determining the date of conclusion of the proceedings and therefore, the conclusion of fee assessments. However, the pelvic mesh litigation is winding down, and this Court and counsel have essentially completed its finite role in this litigation. Individual cases are now being tried. Because the role of this Court and the common

benefit work in this litigation has been completed, it is necessary to end the common benefit fee assessments.

### B. It is Fundamentally Unfair to Plaintiffs to Continue with the 5% Fee Assessments.

Most importantly, the people impacted by the 5% fee assessment are not the lawyers, but the clients, women who have been severely and permanently injured by the pelvic mesh products. This is because the money being directed into the common benefit fee fund comes off the top of any judgment or settlement—not from attorneys' fees. This is therefore largely the plaintiffs' money, not the lawyers'. While a district court may appoint a committee to recommend allocation of a fee assessment and an aggregate fee award, "the appointment of a committee does not relieve a district court of its responsibility to closely scrutinize the attorneys' fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards." *In re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 227 (5th Cir. 2008). This Court is the protector of the interests of the claimants and must determine the reasonableness of the continued fee assessments. *In re Agent Orange Product Liability Litigation*, 818 F.2d 216, 223 (2d Cir. 1987).

This Court also should be concerned about public confidence, both as to how the injured women have been treated and how attorneys have been treating each other. *See* Mathew Goldstein, "*As Pelvic Mesh Settlements Near $8 Billion, Women Question Lawyers' Fees*", New York Times, Feb. 1, 2019. https://www.nytimes.com/2019/02/01/business/pelvic-mesh-settlements-lawyers.html. The importance of preserving and enhancing public confidence in judicial proceedings further militates in favor of revising the Court's approach to the continued fee assessments.

Kline & Specter has tried more pelvic mesh cases than any other firm in the country. The majority of these trials resulted in substantial verdicts for injured plaintiffs and have produced verdicts in the plaintiffs' favor of $12.5 million, $13.5 million, $20 million, $2.16 million, $57.1 million, $41 million, $120 million, $80.025 million, and $500,000—a total of $346,785,000 million across 8 verdicts.[1] Of this total, $320,285,000 in awards came after the December 21, 2016 cut-off date to submit common benefit time, and $241,525,000 resulted from verdicts after the proposed June 21, 2018 cut-off date. These numbers do not reflect the amount of settlements Kline & Specter has achieved for its clients without any negotiation assistance from the Plaintiffs' Steering Committee. In achieving this commendable track record, Kline & Specter has mostly utilized its own work product and created and honed its own trial packages. The Plaintiffs in these

---

[1] *Hammons v. Ethicon, Inc.* resulted in a plaintiffs' verdict in December 2015. The jury awarded $5.5 million in compensatory damages and $7 million in punitive damages. This verdict has been affirmed in the Pennsylvania appellate courts and awaits Pennsylvania Supreme Court review.
    *Carlino v. Ethicon, Inc.* resulted in a plaintiffs' verdict in February 2016. The jury awarded $3.5 million in compensatory damages and $10 million in punitive damages. This verdict has been affirmed in the Pennsylvania appellate courts and is on appeal to the Pennsylvania Supreme Court.
    *Engleman v. Ethicon, Inc.* resulted in a plaintiffs' verdict in April 2017. The jury awarded $2.5 million in compensatory damages and $17.5 million in punitive damages. The case is on appeal.
    *Beltz v. Ethicon, Inc.* resulted in a plaintiffs' verdict in June 2017. The jury awarded $2.16 million in compensatory damages. This verdict has been affirmed in the Pennsylvania appellate courts and is on appeal to the Pennsylvania Supreme Court.
    *Ebaugh v. Ethicon, Inc.* resulted in a plaintiff's verdict in September 2017. The jury awarded $7.1 million in compensatory damages and $50 million in punitive damages. The case is on appeal.
    *Emmet v. Ethicon, Inc.* resulted in a plaintiffs' verdict in January 2019. The jury awarded $16 million in compensatory damages and $25 million in punitive damages. The case is on appeal.
    *McFarland v. Ethicon, Inc.* resulted in a plaintiffs' verdict in April 2019. The jury awarded $20 million in compensatory damages and $100 million in punitive damages. The case is on appeal.
    *Mesigian v. Ethicon, Inc.* resulted in a plaintiffs' verdict in May 2019. The jury awarded $30.025 million in compensatory damages and $50 million in punitive damages. The case is on appeal.
    *Dunfee v. Ethicon, Inc.* resulted in a plaintiffs' verdict in June 2019. The jury awarded $500,000 in compensatory damages. The case is on appeal.

cases should not be taxed for work done by others that has long since been supplemented by its chosen counsel.[2]

### C. There Will Be No Global Settlement in the Pelvic Mesh Litigation

District courts should "reject a fee allocation that does not accurately reflect the amount of work performed by the various attorneys." *In re FPI/Agretech Securities Litigation ("FPI")*, 105 F.3d 469, 472. (9th Cir. 1997). This includes the assessment of fees from client awards where little to no common benefit work product was utilized.

It is clear that there has not been and will not be a global settlement in the pelvic mesh litigation. Because there will be no global settlement, there will be no clearly defined end to the pelvic mesh litigation or common benefit fee assessments. Thousands of cases still remain unresolved, and litigation remains for thousands of plaintiffs who have completed discovery through the MDL "Waves." Where no global settlement occurred, and the MDL cases have been and continue to be resolved through individual firms' private negotiations, the continuation of a common benefit fee assessment of five percent of the overall settlement value is wrong.

The completion of MDL pretrial preparation occurs when all the necessary discovery and motions have been completed and the cases are ready to hand over to the transferor courts. That time is now. This Court has presided over discovery, decided motions, and conducted bellwether trials. Now, each case entails case-specific work-up for litigation. The pelvic mesh litigation has reached that impasse. As of June 12, 2018, the seven pelvic mesh MDLs are no longer accepting transferred cases. Pretrial proceedings are largely complete. All cases from the inactive docket

---

[2] Kline & Specter verdicts were no doubt responsible for their relatively tiny common benefit fee award: $3.745 million, representing an $115 hourly rate, way below nearly if not every firm. The FCC obviously believed Kline & Specter would be otherwise compensated for its work.

have been docketed into "final waves" and are being remanded for trial in their originating courts. It is now time to end common benefit fee assessments.

### III.   CONCLUSION

For the reasons stated above, Kline & Specter proposes that this Court set June 21, 2018 as the cut-off date for any common benefit fee assessment on pelvic mesh settlements or verdicts.[3]

Dated: August 19, 2019

Respectfully submitted,

**KLINE & SPECTER, PC**

Shanin Specter, Esquire
Lee B. Balefsky, Esquire
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Counsel for Plaintiffs*

**BOWLES RICE, LLP**

By:   /s/ Floyd E. Boone Jr.
Charles M. Love, III (WVSB 2254)
Floyd E. Boone Jr. (WVSB 8784)
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100 (Tel.)
(304) 347-1746 (Fax)
fboone@bowlesrice.com
*Counsel for Kline & Specter, P.C.*

---

[3] If the Court rejects the proposed June 21, 2018 date, the Court should choose some other appropriate date.