## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| **IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2187** |
| | |
| **IN RE: AMERICAN MEDICAL SYSTEMS, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2325** |
| | |
| **IN RE: BOSTON SCIENTIFIC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2326** |
| | |
| **IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2327** |
| | |
| **IN RE: COLOPLAST PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2387** |
| | |
| **IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **MDL No. 2440** |
| | |
| **IN RE: NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION** | **MDL No. 2511** |

***THIS DOCUMENT RELATES TO ALL CASES***

## <u>COMMON BENEFIT FEE AND COST COMMITTEE'S</u>
## <u>RESPONSE IN OPPOSITION TO KLINE & SPECTOR'S MOTION TO SET AN END</u>
## <u>DATE FOR COMMON BENEFIT ASSESSMENTS</u>

COMES NOW, the Common Benefit Fee and Cost Committee ("FCC"), and files this its

Response in Opposition to Kline & Spector's ("K&S") Motion to Set an End Date for Common

Benefit Assessments.

## BACKGROUND AND INTRODUCTION

The latest motion by objector Kline & Specter ("K&S") is merely a rehash of the same arguments K&S has repeated in numerous prior pleadings throughout the common benefit process. Each of these baseless arguments has been addressed by the FCC, and considered and rejected by this Court in denying each of K&S's several prior motions. This motion asks the Court to impose an "end date" for assessments to the MDL common benefit fund – with the "end date" being over a year in the past.  As the basis for its requested relief, K&S rehashes the same arguments it has repeated throughout this process: (1) K&S achieved state court trial success, purportedly without MDL assistance; (2) K&S's clients are being required to pay the 5% assessment; and (3) there is no global settlement. The FCC shows the fallacy of each argument below and requests that the motion be denied.

K&S's motion disregards that the Court has already considered and ruled on the duration of common benefit assessments.  In entering its Common Benefit Award, the Court anticipated and approved the payment of common benefit funds into the future based upon future assessments. Requesting the Court to establish an assessment cut-off date over a year in the past seeks to challenge the court's January 30, 2019 Common Benefit Award, which granted an aggregate fee award in the amount of 5% of all cases.  The Common Benefit Award was expressly based on all assessments paid into the fund through that date, as well as a reasonable estimate of the total future payment of common benefit assessments. Common Benefit Award at 11 ("Because not all of the recoveries have been paid by the defendants, these MDL funds are pay-as-you-go, meaning **the**

payments into the MDL common benefit funds will continue after this court's order is entered.") (emphasis added).[1]

K&S objected to the entry of the Common Benefit Award, asserting each of the arguments it raises here. Each argument was considered and rejected by this Court as "frivolous." Common Benefit Award at 2, 21-27.  Undeterred, K&S now presses its same frivolous arguments—despite them having been already rejected by this Court—in the vain hopes of a different outcome.

## ARGUMENT

Setting aside the fact that each of K&S's arguments have already been rejected by this Court, K&S's motion demonstrates a fundamental misunderstanding of the common benefit doctrine.  K&S's motion is founded upon its claim that the common benefit work for which the MDL was created was completed before its proposed June 2018 "end date." *See,* Motion to Set End Date at 6.  First, this assertion is demonstrably false. K&S is well aware that common benefit work has remained on-going in the MDLs because, as its Motion discusses, there are cases remaining in the TVM trial waves, and all MDL cases are now in these trial work-up waves.  All of the tens of thousands of MDL "wave" cases have been coordinated and overseen by MDL leadership and each of these "wave" plaintiffs has named general experts from a variety of scientific and medical fields that were identified and developed by the MDL leadership.  MDL leadership handled all of the common work in these waves, from development of the liability case against multiple devices to drafting and handling of the extensive general motions practice that affects all of the "wave" plaintiffs.  MDL leadership provided and continues to provide attorneys

---

[1] The court's Allocation Order ordered distribution of "all of the common benefit money on hand as of July 25, 2019, after subtracting . . . expenses and assessments . . .," and established the procedure for disbursement "**[f]or all future common benefit money received after July 25, 2019. . . .**" Allocation Order at 1-2 (emphasis added).

access to the voluminous common discovery as well as liability packages, "hot document" collections, corporate depositions, trial-ready deposition "cuts" and trial transcripts. MDL leadership consistently educated and assisted individual case counsel in the development and preparation of their wave cases, including providing sample discovery and discovery responses, sample depositions for doctors and plaintiffs, sample evidentiary and dispositive motion responses, as well as outlines for preparation of case-specific depositions. MDL leadership also provided substantial guidance and assistance with resolution of cases for many of the firms with cases in the MDL and will continue to do so.

This same assistance, guidance and work product has been provided by MDL leadership to lawyers with cases pending outside of the MDL. Indeed, K&S itself has consistently requested assistance and work product from the MDL lawyers who did that work or who are doing the work for use in their state court TVM cases. By way of example, and as discussed in more detail *infra*, K&S's success in its Ethicon state court trials stands as a testament to the tremendous ongoing value of the MDL common benefit work product. In its individual state court Ethicon trials, K&S utilized MDL-identified and developed general experts, depositions taken by MDL leadership, and other significant work product created by the MDL leadership. In addition to having access to the common MDL discovery via shared drives and vendor platforms, K&S has regularly requested MDL work product for use in its cases across the related MDLs. For example, in 2019, K&S requested AMS MDL work product for use in preparation of K&S's AMS cases filed in the Delaware state court. AMS MDL leadership delivered deposition transcripts, expert reports, deposition "cuts", copies of motions and orders, and select AMS documents. Likewise in 2019, K&S sought work product from the leadership of the Coloplast MDL and was supplied with the materials requested for use in their state court litigation. A composite of examples of

communications between MDL leadership and K&S, with redactions of confidential information, are attached hereto **Exhibit 1**.   As has been pointed out throughout this process, and despite its protestations to the contrary, K&S has been consumer of common benefit and not a producer of it.

Second, the fact that much of the MDL common benefit work has been completed does not support an "end date" for common benefit assessments.  The very purpose of the common benefit doctrine is to prevent firms, such as K&S, from taking the common benefit work of others for their own benefit without any consideration for the common benefit firms' time and expense in doing the work in the first instance. K&S—and every other firm subject to the August 26, 2013 Holdback Order—implicitly understood this: each agreed that every case in which the firm has a financial interest, *including unfiled cases and future cases*, would be subject to the 5% holdback.[2]  Even if all of the MDL common benefit work was completed as of June 2018, which is not the case, that would not justify terminating the assessment against cases resolved after that date.  The common benefit doctrine is based upon the inherent authority of a court supervising multi-plaintiff litigation to "intervene to prevent or minimize an incipient free-rider problem" and may use "measures reasonably calculated to avoid unjust enrichment of persons who benefit from a lawsuit without shouldering its costs." *In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir.1992).

---

[2] Paragraph 1 of the Court's Holdback Order provides that all "Participating Counsel" – including K&S here – "agree to pay the [5%] assessment amount…on all filed and unfiled cases or claims in state or federal court in which they share a fee interest."  The Holdback Order expressly applies to "[a]ll mesh injury claims now…or hereafter subject to the jurisdiction of [the MDL Court]." (*Id.*, ¶ 2.a.).  The Holdback Order further states that "[t]he [5%] Assessment represents a hold-back…and shall not be altered in any way unless this Court, upon good cause shown, amends this Agreed Order." (*Id.*, ¶ 3.g.).  The Holdback Order was approved and submitted after consulting and obtaining approval from the Plaintiffs' Steering Committee of which K&S is a member.

Those who receive the benefits of common work are not entitled to a free ride, irrespective of when that common work was performed. Indeed, the fact that K&S continues to rely upon work completed by MDL common benefit counsel years ago in development and trial of cases in other venues demonstrates the long-term value of that work. Further, the "common benefit" nature of MDL common benefit work is not dependent on when the work was performed relative to a particular case or whether such work remains on-going when a case is resolved, but instead is based upon whether that work provided a benefit to the Plaintiffs generally.  For example, in *In re Genetically Modified Rice Litig.*, 2010 WL 716190, \*5-\*6 (E.D.Mo.2010), a group of attorneys objected to an MDL common benefit award claiming that their clients had not received substantial benefit from the MDL leadership's work.  Rejecting their argument as "simply incorrect," the MDL court observed that "[s]ubstantial benefit should be determined with respect to the plaintiffs as a whole, not with respect to individual plaintiffs. . . . All of the producer plaintiffs (including those whose cases are in state court) and all of the non-producer plaintiffs have benefitted substantially, and will continue to do so, from the work performed by plaintiffs' leadership counsel." *Id.*

Similarly, in *In re Vioxx Prods. Liab. Litig.*, 2012 WL 1448135, \*4 (E.D. La. 2012), Judge Fallon recognized:

> The benefit created by common labor and compensated by joint assessments is sometimes intangible and difficult to quantify in individual cases. Nonetheless, the work done by common benefit attorneys does have a significant and meaningful effect on all cases pending in the MDL. The Court is not aware of any authority recommending or authorizing that common benefit assessments in complex multidistrict litigation subject to case-by-case review for whether any particular claimant has actually benefitted from common benefit work and whether any particular plaintiff should be required to contribute. Such a proposition seems to be unworkable and is likely inconsistent with the nature of common benefit contributions.

Every TVM plaintiff subject to this Court's common benefit assessment, whether their case has already settled or is yet-to-be-filed, has benefited or will benefit from the extensive work of the hundreds of attorneys who performed common benefit work over many years.[3]  K&S's contention that "cases are now being worked up individually" and "each case entails case-specific work-up for litigation" does nothing to diminish the fact that all of these cases have received the benefit of the common work done on their behalf in the MDL.  K&S points to "thousands of plaintiffs who have completed discovery through the MDL 'Waves,'" and cases that "have been docketed into 'final waves'" in the MDL.  As noted above, the enormous common benefit work associated with these massive waves of cases has been handled by MDL leadership.  During its appearance before the FCC, the FCC Chairman asked K&S whether the firm had developed *any* general experts for the litigation, and K&S admitted that it had not, but instead said that it worked with experts developed by MDL leadership.  K&S's response illustrates the fallacy of its position: "I don't believe so beyond what Lee had said to you.  **We certainly did not do everything that was litigation . . . and <u>we didn't do most things</u>**.  <u>**Other people did most things**</u> but we did largely in this litigation what we were asked to do by leadership, and if we had been asked to develop experts, we would have done that." K&S 6/12/18 FCC hearing transcript at 24:13-25:14.  K&S's frank admission precludes any argument that those – like K&S – who have enjoyed and who continue to enjoy the benefits of the work of the "other people [who] did most things" should not pay the same assessment as everyone else.

---

[3] The Court's Holdback Order states that "Participating Counsel agree to pay the assessment amount provided in section 3 of this Agreed Order on all filed and unfiled cases or claims in state or federal court in which they share a fee interest." Participating Counsel is defined to include all members of the Plaintiffs' Steering Committee, which includes K&S.

In *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, 617 Fed.App'x 136 (3d Cir. 2015), the Third Circuit affirmed the MDL court's rejection of a law firm's attempt to avoid the 7% MDL assessment on its state court cases. The Third Circuit noted that in addition to its own work product, the firm used MDL work product and expert reports to oppose summary judgment motions in state court and it indicated its intent to use a number of MDL materials in a state court trial planned before its cases settled. *Id.* at 139. In *In re Diet Drugs,* 582 F.3d 524, 547-48 (3d Cir. 2009), the Third Circuit rejected arguments by multiple law firms on appeal who claimed that their "opt out" clients who did not participate in the MDL class action settlement did not receive any substantial benefit from the MDL work that preceded the settlement. Much like K&S here, one of the objecting attorneys insisted that he had not used any of the MDL work product and that he had to discover and develop his individual state court cases on his own well after the common benefit work was concluded. *Id.* The Third Circuit in *Diet Drugs* affirmed the MDL court's conclusion that even if the objecting attorneys had not used the MDL's common discovery, "the mere availability of the discovery . . . substantially influenced [the defendant's] evaluation of *every* plaintiff's case." *Id.* at 548 (emphasis in original). The Third Circuit further found that the MDL leadership had benefited every claimant in the litigation by helping to administer the MDL by tracking individual cases, distributing court orders, and serving as a repository of information concerning the litigation, and that leadership "obtained a number of favorable discovery and evidentiary rulings that applied on a litigation-wide basis, and it enforced a uniform procedure for the production of documents, deposition testimony, and expert disclosures that governed every MDL case against [the defendant]." *Id.* The Third Circuit also stated "[w]e think it beyond reasonable denial that the [objectors'] claimants benefitted from [the defendant's] loss of bargaining power due to the [MDL's] efforts," observing that the defendant had to defend

- 8 -

itself knowing that every plaintiff had access to the MDL's discovery and work product and the defendant was heavily invested in settlement based on the MDL's efforts. *Id.* Thus, the Third Circuit concluded, "those plaintiffs stood a better chance of recovery from [the defendant] than they would have absent the [MDL's] efforts." *Id.* The same is true here.

Repeating itself from prior pleadings in this Court, K&S describes "its" success in a handful of Ethicon trials in the Philadelphia Court of Common Pleas where verdicts were achieved. As the FCC has pointed out before, however, K&S's trials were founded, at least in part, upon the common benefit work of others in the MDL and given to K&S as common benefit work product. K&S's first trial was tried in 2015, after years of exhaustive discovery and expert development by multiple MDL firms and several trials in the MDL (and various state court venues). By the time K&S tried its first case, it had a detailed trial package prepared largely through tens of thousands of hours of work by dozens of lawyers in the MDL and elsewhere. K&S had the extensive document discovery and corporate depositions that were taken by MDL leadership and others. K&S also had the relevant corporate deposition designations and "cuts," along with the applicable documentary exhibits, prior to trying its first case. K&S also had access to and took full advantage of the biomaterials, pathology and medical experts identified and developed by MDL leadership and others.[4] In addition, K&S had the benefit of prior pelvic mesh trials, as well as years' worth of illustrative motions and responses and MDL and appellate rulings related to the critical legal and evidentiary issues and expert challenges relevant to these cases. Further, while omitted from the many iterations of its argument, K&S involved lawyers active in the MDL leadership to help prepare its cases for trial and to actually assist in trying some of those cases. K&S has been one

---

[4] K&S relied on the MDL leadership and others to identify and cultivate the experts that the firm used in its trials. K&S admitted before the FCC it identified and developed no new general experts.

of the primary consumers – rather than contributors – to the common benefit and K&S's state court trial success are a testament to the substantial and on-going benefits of the work done in the MDL.

While each of K&S's arguments have previously been addressed and considered more than once, its repeated assertion that its clients – not it – are bearing the cost of the 5% assessment warrants further comment.  As it has before, K&S says again that "the people impacted by the 5% fee assessment are not the lawyers, but the clients" claiming that "the money being directed into the common benefit fee fund comes off the top of any judgment or settlement – not from attorneys' fees." Motion for End Date at 4.  The impact of the 5% assessment is entirely within K&S's control.  First, as discussed above, common benefit assessments are intended to equitably share the costs among all plaintiffs of the services performed and expenses incurred by plaintiffs' leadership on behalf of all plaintiffs who would otherwise be unjustly enriched.[5]  Moreover, contrary to K&S's suggestion and its claimed practice, the 5% holdback has been funded primarily by a reduction in attorneys' fees by individual case-handling attorneys.[6]  If K&S is truly reducing its clients' recoveries – instead of reducing its attorney's fees – to pay the 5% assessment, that is an issue between K&S and those clients.  However, K&S's professed concern over its clients' reduced recoveries is flatly belied by the fact that *it chose* to reduce their recoveries, rather than

---

[5] *See, e.g.*, *In re Genetically Modified Rice Litig.*, 835 F.3d 822, 828 (8th Cir. 2016) ("No party challenges the propriety of the Common Benefit Order or the 'well established' authority of a district court to compensate leadership lawyers by ordering funds to be set aside from recoveries obtained by other plaintiffs in multidistrict litigation."); *In re Sulzer Hip Prosthesis and Knee Prosthesis Liab. Litig.*, 268 F.Supp.2d 907, 921 (N.D. Ohio 2003) ("Fee shifting is justified in common benefit cases…because to allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich others unjustly at the plaintiff's expense.").

[6] Many firms paid 4 percent of the 5 percent holdback by reducing their attorneys' fees by 4 percentage points (*e.g.*, a 40% fee was reduced to 36%), with 1 percentage point paid from the client's recovery.

- 10 -

reducing its own fees. In other words, K&S has created the very problem it now complains of by choosing to pass along the full cost of the MDL assessment to its clients.

Finally, K&S re-raises its argument that the fact of individual settlements instead of a global one in the MDLs somehow obviates the necessity or propriety of a common benefit assessment. As the Court has already aptly found in addressing this issue, K&S's argument "ignores the purpose of the common benefit fund." Common Benefit Award at 23. The Court went on to explain that:

> [t]he efforts of plaintiffs' leadership on behalf of the common benefit are in constructing a theory of liability, developing cross-cutting expert testimony that is applicable to general theories of liability in these MDLs, securing pretrial rulings for all plaintiffs, and reducing the bargaining power each defense counsel has in negotiating settlements with individual plaintiffs. **This allowed individual counsel to try cases where they felt confident a jury would favorably view their case, or negotiate a settlement for one, or a group of, clients based on the defendants' weakened position. Far from failing to provide a common benefit in the form of a global settlement, the plaintiffs' leadership facilitated the settlement of tens of thousands of cases through its persistent efforts to weaken the defendants' factual and legal standing compared to individual women across the country.** Plaintiffs' leadership also provided the MDL plaintiffs with all the work-product they created and educated individual plaintiff attorneys on how to prosecute a pelvic mesh case. **These are global benefits.** The purpose of the fund is to compensate for the coordination, management, and performance of mutually beneficial work on behalf of all the plaintiffs. As the court addressed . . ., common benefit counsel have effectively coordinated and developed a prosecution strategy, defended motions, and deposed key defense witness[es], including experts for plaintiffs and defendants. **That work has benefitted all the plaintiffs who are subject to the 5% holdback.** The compensation is awarding the efforts of attorneys who worked on global issues affecting the plaintiffs.

Common Benefit Award at 23-24 (emphasis added). The substantial common benefit efforts, in both time and expense, of Participating Counsel in these pelvic mesh MDLs continues to benefit individually-settling plaintiffs and will continue to do so into the future. Arguing an individual settlement model defeats the propriety of an MDL assessment ignores the actual benefit passed along to all claimants and a continued assessment is both appropriate and reasonable. This

- 11 -

fact has been held to be true in other cases where a global settlement was not reached. In *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113 (2d Cir. 2010), for example, the Second Circuit considered an objection by an attorney for an individual settling plaintiff to the application of the MDL set-aside to his client's case. In rejecting the attorney's argument, the Second Circuit addressed the applicability of common benefit assessments in the context of an MDL where cases are worked up and settle individually, observing instructively as follows:

> The situation is somewhat different with respect to MDLs consisting of individual cases prosecuted by individual plaintiffs, sometimes numbering in the thousands, and other litigation involving large numbers of separately represented claimants. Unlike most class actions, recoveries by individual plaintiffs or groups of plaintiffs in such matters may occur at different times, and individual plaintiffs or groups of plaintiffs, unlike most individual class members, usually are represented by individual counsel. Nevertheless, there are substantial similarities to class actions as well. As an initial matter, the efficient handling of such cases demands a similar approach to case management. District courts typically appoint a lead counsel or plaintiffs' steering committee to coordinate and conduct pretrial proceedings on behalf of all plaintiffs in order to avoid what otherwise might well become chaotic. Moreover, while individual plaintiffs are separately represented, they typically benefit also—often predominantly—from the work of the lead counsel or committee.
>
> The same equitable considerations that warrant payment of class counsel out of common funds generated by their efforts apply in these circumstances as well. The desirability—indeed, the compelling need—to have pretrial proceedings managed or at least coordinated by lead counsel or a steering or executive committee demands the existence of a source of compensation for their efforts on behalf of all. The logical, and a most equitable, source of that compensation is recoveries of individual plaintiffs who benefit from that work. Indeed, foreclosing those recoveries as a source of funding for the common benefit work would enrich the non-contributing individual plaintiffs unjustly at the expense of either or both of the lead counsel and any contributing individual plaintiffs.

## **CONCLUSION**

This Court has considered and rejected each of K&S's arguments. K&S rehashes its arguments in requesting different relief, but the arguments remain factually and legally meritless.

Like each of its prior unfounded motions based on these same groundless arguments, K&S's Motion to Set an End Date for Common Benefit Assessments should be denied.

Dated: September 3, 2019

Respectfully submitted,

THE COMMON BENEFIT FEE AND
COST COMMITTEE

*/s/ Henry Garrard*
Henry G. Garrard, III
Blasingame, Burch, Garrard & Ashley, PC
440 College Ave., Ste. 320
Athens, GA 30601
706-354-4000
706-549-3545 (fax)
hgarrard@bbga.com

*/s/ Renee Baggett*
Renee Baggett
Aylstock Witkin Kreis & Overholtz
Suite 200
17 East Main Street
Pensacola, FL 32502
850-202-1010
805-916-7449 (fax)
RBaggett@awkolaw.com

*/s/ Riley L. Burnett, Jr.*
Riley L. Burnett, Jr.
Burnett Law Firm
3737 Buffalo Speedway, Suite 1850
Houston, TX 77098
832-413-4410
832-900-2120 (fax)
rburnett@rburnettlaw.com

*/s/ Thomas P. Cartmell*
Thomas P. Cartmell
Wagstaff & Cartmell, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100
816-531-2372 (fax)

tcartmell@wagstaffcartmell.com

*/s/ Clayton A. Clark*
Clayton A. Clark
Clark, Love & Hutson, GP
440 Louisiana St., Ste. 1600
Houston, TX 77002
713-757-1400
713-759-1217 (fax)
cclark@triallawfirm.com

*/s/ Yvonne Flaherty*
Yvonne Flaherty
Lockridge Grindal Nauen
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
612-339-6900
612-339-0981 (fax)
ymflaherty@locklaw.com

*/s/ Carl N. Frankovitch*
Carl N. Frankovitch
Frankovitch, Anetakis, Colantonio & Simon
337 Penco Road
Weirton, WV 26062
304-723-4400
304-723-5892 (fax)
carln@facslaw.com

*/s/ Joseph F. Rice*
Joseph F. Rice
Motley Rice, LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9000
843-216-9450 (fax)
jrice@motleyrice.com

*/s/ William H. McKee, Jr.*
William H. McKee, Jr.
3041 Knotty Pine Drive
Pensacola, FL 32505
304-546-2347
bmckee@suddenlink.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 3, 2019, a true and correct copy of the foregoing

**COMMON BENEFIT FEE AND COST COMMITTEE'S RESPONSE IN OPPOSITION**

**TO KLINE & SPECTOR'S MOTION TO SET AN END DATE FOR COMMON BENEFIT**

**ASSESSMENTS** was served *via* electronic mail with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to the CM/ECF counsel of record.


*/s/ Henry G. Garrard, III*
Henry G. Garrard, III
Chairman
The Common Benefit Fee and Cost Committee

15