1           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
2                    AT HUNTINGTON

3              TRANSCRIPT OF PROCEEDINGS

4


5    --------------------------------------x

6
     IN RE:  ETHICON, INC., PELVIC REPAIR      MDL NO.
7    SYSTEM PRODUCTS LIABILITY LITIGATION     2:12-MD-2327

8    --------------------------------------x

9    THIS DOCUMENT RELATES TO:

10   MEDENNA K. DORGAN vs.                    CASE NO.
     ETHICON, INC., ET AL.                    2:12-cv-03159
11

12   TASHA MOBLEY vs.                         CASE NO.
     ETHICON, INC., ET AL.,                   2:15-cv-14159
13

14   --------------------------------------x

15              TELEPHONIC MOTIONS HEARING

16                 September 19, 2019

17


18       **BEFORE THE HONORABLE CHERYL A. EIFERT**
             **UNITED STATES MAGISTRATE JUDGE**
19

20


21


22   Court Reporter:           Lisa A. Cook
                               RPR-RMR-CRR-FCRR
23                             (304)347-3198
                               lisa_cook@wvsd.uscourts.gov
24

25   Proceedings recorded by mechanical stenography; transcript
     produced by computer.

1    **APPEARANCES (Telephonically):**

2

3    **COUNSEL FOR PLAINTIFFS:**

4

5    **MR. JEFFREY M. KUNTZ**
     Wagstaff & Cartmell
6    4740 Grand Avenue
     Suite 300
7    Kansas City, MO  64112

8

9    **MS. D. RENEE BAGGETT**
     Aylstock Witkin Kreis & Overholtz
10   17 East Main Street
     Suite 200
11   Pensacola, FL  32502

12

13   **COUNSEL FOR DEFENDANT:**

14

15   **MS. ANITA MODAK-TRURAN**
     Butler Snow O'Mara Stevens & Cannada
16   P.O. Box 6010
     Ridgeland, MS  39158-6010

17

18   **MR. JOSEPH ASARO**
     Riker Danzig Scherer Hyland & Perretti
19   Headquarters Plaza
     One Speedwell Avenue
20   Morristown, NJ  07962-1981

21

22

23

24

25

1                    P R O C E E D I N G S

2          JUDICIAL ASSISTANT:  Hello, everyone.  This is

3    Laura, Judge Eifert's Judicial Assistant.

4          I would first like to confirm our court reporter today,

5    Lisa Cook, is on the line.

6          COURT REPORTER:  Hi, Laura.  Yes, I'm here.

7          JUDICIAL ASSISTANT:  Hi.  Thank you, Lisa.

8          We are here in the case of *Dorgan* vs. *Ethicon*,

9    2:12-cv-3159, and *Mobley* vs. *Ethicon*, 2:15-cv-14159.

10         This is a counsel-requested telephone conference

11   regarding depositions of sales representatives and other

12   Ethicon former and current employees.

13         All right.  May I have plaintiffs' counsel, please?

14         MR. KUNTZ:  Jeff Kuntz on behalf of plaintiffs.

15         JUDICIAL ASSISTANT:  Thank you.

16         MS. BAGGETT:  Renee Baggett also on behalf of

17   plaintiffs.

18         JUDICIAL ASSISTANT:  Thank you.

19         May I have counsel for Ethicon, please?

20         MS. MODAK-TRURAN:  Anita Modak-Truran on behalf of

21   Ethicon.

22         JUDICIAL ASSISTANT:  All right.  Thank you.

23         And I just heard someone ring in, if you wouldn't mind

24   to identify yourself.

25         MR. ASARO:  Yes.  This is Joe Asaro on behalf of

1    Ethicon.

2            JUDICIAL ASSISTANT:  All right.  Thank you.

3        All right.  If that's everyone, please hold one moment

4    for Judge Eifert.  And I'll just remind you to please

5    identify yourself when speaking.

6        (Pause)

7            THE COURT:  Good afternoon.

8            MS. MODAK-TRURAN:  Good afternoon, Your Honor.

9            MR. KUNTZ:  Good afternoon, Your Honor.

10           THE COURT:  How are you all?  I appreciate you

11   getting together here so quickly so we could get this

12   resolved.

13       It looks to me as though there's no dispute anymore

14   over the number of sales reps that can be deposed in each

15   case.  Is that right?

16           MR. KUNTZ:  That's correct, Your Honor.  This is

17   Jeff Kuntz for plaintiffs.  That's correct, Your Honor.

18           THE COURT:  All right.  So really the only thing

19   we're left with -- and I know there was an issue about two

20   depositions that were scheduled.  But the dates for those

21   have already passed, so I assume that that was somehow

22   resolved.  Is that correct?

23           MS. MODAK-TRURAN:  Your Honor, this is Anita

24   Modak-Truran.  And, yes, that's correct.

25           THE COURT:  All right.  So all we are left to

1  discuss today, then, would be depositions of the division

2  managers or regional business directors.  Is that right?

3          MS. MODAK-TRURAN:  Yes, Your Honor.  This is Anita

4  Modak-Truran.  That is correct.

5          THE COURT:  All right.  Who wants to speak on

6  behalf of the plaintiff?

7          MR. KUNTZ:  This is Jeff Kuntz.  I'll speak on

8  behalf of the plaintiff.

9      Your Honor, if we could move back to the sales reps

10 real quick for one second which is kind of one side issue.

11     I agree we're limited to one, but we, we now have this

12 issue where, where we've requested sales reps dates and then

13 we get, as you can see in some of the papers, the response

14 from Ethicon of, "Well, we don't know if we represent them.

15 We'll let you know."  And then we -- you know, we're running

16 out of time here.

17     So we subpoena them and then they say, "Oh, now we do

18 represent them or maybe we don't and we'll have to get a new

19 date."

20     And I just don't want to have to come back to you or --

21 you know, some of these dates, when we get a valid subpoena

22 on these people, we're going to have to keep them regardless

23 of whether the sales rep may or may not be able to do it

24 that day because we're running out of time.

25     We've had to track some of them down because Ethicon

1    doesn't have control over them.  And I just kind of want to

2    put that out there before, you know, having to request

3    another phone call 10 days from now over somebody we've got

4    a valid subpoena on that we have to keep that date if that

5    makes sense.

6              THE COURT:  Yes.

7         Do you have anything you want to say in response to

8    that, Ms. Modak-Truran?

9              MS. MODAK-TRURAN:  I do.

10        Your Honor, this is a very challenging process with the

11   number of requests that we've had.  And just to give you

12   some background, we're about seven years or so since the

13   first wave.  Seventy-five percent of the sales force is no

14   longer with the company.  Twenty-five percent is with

15   Ethicon or a division of J&J.

16        For those that are within the company, we are able to

17   secure dates.  Where there's a challenge, as Mr. Kuntz was

18   talking about, is what happens if they are no longer with

19   the company.

20        So what we do, as soon as plaintiffs' counsel -- and

21   Joe Asaro is on the line and he personally takes care of

22   this.  What he does is we try to reach out and try to find

23   the person.  We try to get that no-longer-an-employee to see

24   if they will agree to appear without a subpoena.  Sometimes

25   they do.  Sometimes they don't.  We try to provide dates to

1    the plaintiffs' counsel that will work for everyone.

2         We've had situations where, you know, a sales rep is no

3    longer with the company who's agreed to appear and won't

4    provide us dates.  And in that case, Mr. Asaro will tell

5    plaintiffs' counsel that.

6         So we have made a lot of progress.  I'm going to let

7    Joe give you a little bit more detail on what he's done.  To

8    date, we've taken -- there have been seven sales reps taken

9    in the Wagstaff cases.  There are 11 scheduled.

10        There's one sales rep, Ona Bernal, that they would like

11   to take who unfortunately has a condition where he's not

12   testified because of his mental status.

13        And then we have another one where the sales rep agreed

14   to attend a deposition -- a former sales rep agreed to

15   attend a deposition but has not given Mr. Asaro dates.

16        We do work -- I'll let Mr. Asaro follow up on this.

17             MR. ASARO:  Hi.  Yeah, this is Joe Asaro.

18        The only thing I would add is, you know, I think

19   that -- I was actually surprised by Mr. Kuntz's letter to

20   hear that he thought there had been any issues with

21   scheduling the depositions as far as I was concerned because

22   the plaintiffs had requested sales reps and we had gotten

23   them dates.

24        We -- you know, I haven't worked directly with

25   Mr. Kuntz.  I've worked with 12 or 14 other lawyers at his

1    firm and we haven't had any problems as far as I know.

2         Maybe there were one or two where there were issues

3    that Anita just mentioned.  But for the most part, we were

4    able to get them scheduled.

5         You know, we track down the sales rep.  We ask them if

6    they want to be -- if they're willing to appear without a

7    deposition -- I mean without a subpoena.  Frankly, I'm

8    shocked that any of them agree to that, but, but they do.

9         And in those cases, we were able to quickly schedule

10   dates for their depositions with no issues at all.  And for

11   those that say, "No, I'll only appear if they serve me with

12   a subpoena," then, then we give the information to the

13   plaintiffs and that's what they do.

14        And in that case, once they get served, the sales reps

15   typically call us and say, "Okay, now I've been served.  I'd

16   like you to represent us -- represent me in this deposition.

17   And the date that's on this notice doesn't work for me.

18   What can we do?"

19        And, so, obviously we reach out to plaintiffs and we

20   try and come out -- come up with a date that works for

21   everybody.  I don't really -- I don't know that there's

22   anything that about process that could go anymore smoothly

23   than it has.

24             MR. KUNTZ:  Well, this is Jeff Kuntz.  We -- this

25   is Jeff Kuntz.

1      We still have 14 unscheduled.  Some of those people are

2   under subpoenas.  And then it's, "Well, we'll get back.

3   They can't do those dates."

4      And I guess what I'm saying is, look, we're not living

5   in a perfect world.  I get it's hard.  But Judge Goodwin has

6   put tight deadlines on us and there's just going to be

7   instances where we're going to subpoena people because we

8   don't give dates or you don't know whether you represent

9   them.

10      And I'm just putting that out in front of you, Judge

11   Eifert, to say they're -- you know, a valid subpoena is a

12   valid subpoena.  We've worked well, both sides, for seven

13   years, but we're just kind of in this imperfect situation.

14      And I don't want to be back here where we're saying we

15   have to do that date because we're out of time and, sorry,

16   defendant lawyers' schedule, sorry, sales reps' schedule,

17   but you're under a valid subpoena and we've got to stick to

18   it.

19      That's just my concern because we're, we're running out

20   of time and we have 14 left to schedule.

21          THE COURT:  Right.  Well, you know, let me say

22   what's always my -- my view on this has always been this.  I

23   think the first step is for the lawyers to try to work

24   together, get convenient dates.

25      But if the lawyer who wants the deposition has waited

1   for a week or so and not gotten any dates and feels it

2   necessary to issue a subpoena and have it served on the

3   witness, then that's what the attorney has to do.

4       And then if -- I mean, there can still be discussions

5   after that to see if there's a way to accommodate the

6   witness.  But if the witness is under a subpoena and there

7   isn't some extraordinary circumstance that prevents the

8   witness from being there, the witness needs to be there.

9       So I guess in a roundabout way what I'm saying is you

10  should try to work together.  But it's still -- the attorney

11  representing the client who wants the deposition still has a

12  primary responsibility to that client to get the deposition

13  completed in time.

14      If that means they have to issue a subpoena, then

15  that's the way it has to be.  And there's just no way around

16  that.  You know, I, I encourage you to work together, but I

17  understand what Mr. Kuntz is saying.  And I think he has to

18  do what he feels is in the best interest of his client.

19      So I'm just going to leave it at that.  I, I don't want

20  that subpoena to be used as a sword.  But, at the same time,

21  it's a tool that's available and sometimes it has to be

22  used.  And there's just no way around that.

23      So I just encourage you to work together but, you know,

24  you have to do -- at the end of the day, Mr. Kuntz, you have

25  to do what you feel you need to do.

1    MR. KUNTZ:  Right.  And I appreciate that and we

2    will get on the phone and try and reconcile these lists and

3    see where we're at, and we won't use it unless we have to.

4    So I appreciate it.  That helps.

5    THE COURT:  Okay.  So let's talk now about the

6    division managers and the regional business directors.  Who

7    wants to speak on that on behalf of the plaintiff?

8    MR. KUNTZ:  I will, Your Honor.  This is Jeff

9    Kuntz again.

10    THE COURT:  Okay.  Go ahead.

11    MR. KUNTZ:  Your Honor, these are -- you know, I

12    know Ethicon has tried to couch them as, as true, you know,

13    corporate witnesses and, and tie it to that discovery that

14    we did years and years ago in the MDL with scientists and

15    doctors and engineers, but they really are -- I mean,

16    they're case specific type witnesses that have a lot of

17    knowledge and contact with the treating physicians who have

18    put these products, you know, into these, into these ladies.

19    They market to those physicians.  They give information

20    to those physicians.  And we think we're entitled to, to

21    take one of their depositions.  Again, the defendant fact

22    sheets list several of them.

23    You know, there was some insinuation that this is just

24    harassment or done for other purposes.  We're not asking for

25    five in each case.  I mean, it's -- you know, if we wanted

1   to, you know, create harassment issues, we'd ask for all

2   their depositions.  We're talking about one person.

3          And, again, understand that these depositions take a

4   lot of time and money on our part.  I mean, to go out, get

5   this witness, send a lawyer there, set up a videographer, I

6   mean, we're spending, you know, at least $5,000 a

7   deposition.  So we're not just doing this to do it.  They

8   have knowledge.

9          Interestingly -- and I don't have the transcript yet,

10  but I will send it when I get it.  The very first sales rep

11  depo that we did in Wave 12 in the *Debra Moe* case, the sales

12  rep deferred to the divisional manager at least six times in

13  her deposition and said she couldn't answer questions about

14  documents that her name was on; that we would have to ask

15  the division manager.

16         And there's situations like, like that.  It's kind of

17  one of these things we don't know what we don't know until

18  we don't know it.  And I think we're entitled to take these

19  people's depositions and figure out the contact they had

20  with the doctors.

21         They market to key opinion leaders.  They market to the

22  implanters.  One of the big failure-to-warn defenses by

23  Ethicon in this case is -- it changed in 2015 when the

24  Canadian regulatory authorities made them update their

25  label.  It used to be, oh, our IFUs contain everything that

1    they need.  The exacts words aren't in there, but it's in

2    there to -- now everybody knew all this stuff.  We didn't

3    have to put it in there.  Everybody knew it.

4        And I think we're entitled to ask the division managers

5    what risks and complications they knew about the products,

6    what were they telling doctors, what was going on at the

7    time.  And these are people that have very relevant, case

8    specific information.

9        And as I've said in the papers, there's no limit -- the

10   PTO is silent on it.  There's no limit on family member

11   depositions they can take on our side of things.  In fact,

12   in three or four cases already we've gotten requests for

13   four or five additional family member depositions beyond,

14   beyond the plaintiff and her husband.

15       And, you know, we're asking to take two case specific

16   depos on their end, the sales rep and the divisional

17   regional manager.  And I -- you know, I don't think that is

18   burdensome.  I don't think it's outrageous on our part.

19       And the last thing I'll say is, you know, this.  You

20   didn't do it in the past, so you shouldn't be allowed to do

21   it now.  Well, the context of this litigation has changed.

22   The cases in these waves have changed.

23       These are ladies who are pretty adamant -- you know,

24   look, some of these cases are better than others.  But

25   they're adamant about not taking their amount.

1    And, so, the likelihood of these cases, you know,

2    moving down the line and getting tried is a lot higher, you

3    know, than any other, you know, previous waves where, you

4    know, frankly, we're thinking these are probably all going

5    to settle, so do I want to spend the time and money doing

6    all sales reps.  I, I didn't back then.  You know, it's a

7    strategy.  But now we're staring at cases of a very high

8    probability of these getting remanded and trial set.

9        So that's all I have on the issue.

10           THE COURT:  All right.

11       Who wants to speak then on behalf of the defendant?

12       Ms. Modak-Truran?

13           MS. MODAK-TRURAN:  Yes, Your Honor.  I will speak

14   on behalf of the defendant.

15           THE COURT:  All right.

16           MS. MODAK-TRURAN:  I think where there is a

17   disconnect with plaintiffs' position and our position

18   concerning regional business directors and division managers

19   is whether or not they're actually case specific.

20       So the role -- and we've put this in our letter

21   response.  The role of the division manager is to manage and

22   supervise sales reps.  They do not detail products to

23   implanters.  And that's why we've never objected to,

24   obviously, sales rep depositions because that is the person

25   who goes directly to an implanter.

1       One step further removed from a division manager is the

2   regional business director who is the supervisor of division

3   managers.  And, so, a regional business director has no

4   contact with the implanters.  It's not part of their job.

5       I will say that what Mr. Kuntz is asking for, the

6   information about, you know, what type of marketing, was

7   there professional education, those people have been

8   produced for deposition.

9       And Mr. Farrell and I went through to see what we have.

10  And we've had 15 company witnesses that have been deposed on

11  sales and marketing, sales training, sales learning

12  administration, marketing alone, professional ed, and

13  professional education course and design.  And just for the

14  record, those witnesses are:

15      Dharini Amin, Laura Angeline, Giselle Binet, Allison

16  London Brown, Lynn Hall, Matt Henderson, Stacey Hoffman,

17  Scott Jones, Erika Lane, Brian Luscombe, Jonathan Meek, Paul

18  Parisi, Bart Pattyson, Rhonda Peele, Price St. Hilaire.

19      These witnesses collectively gave over 41 days of

20  deposition testimony, which is over 280 hours, on these

21  various topics of professional education, sales training,

22  and marketing.

23      The division managers and regional business directors

24  don't do that.  They're not related to case specific.  And

25  what we've told Mr. Kuntz is if they can show us that there

1   is a case specific connection, then we will certainly

2   consider that request.  And let me give you one example.

3       In the list of division managers and regional business

4   directors that they want to depose, they identified Marcus

5   Oldelehr.  This is in the *Fromm-Foster* case.  And

6   Mr. Oldelehr is a district manager.

7       And at the deposition of the implanter, the implanter

8   said that he had conversations with Mr. Oldelehr.  We're not

9   sure if that was in the context of him being a sales rep or

10  of him being a district manager.  But that deposition is

11  scheduled because we did see a case -- they were able to

12  show us a case specific connection.

13      But, Your Honor, to allow plaintiffs to take --

14  remember, most of these people are no longer with the

15  company.  To allow them to take these business directors --

16  regional business directors and division managers without a

17  case specific component, I'm not sure how it's relevant.  I,

18  I don't see the relevance.

19      And it is incredibly burdensome on third parties who

20  many of them are no longer with the company.  And I don't

21  think that plaintiffs' counsel established good cause to

22  take those depositions.

23          THE COURT:  All right.  Let me say this on this

24  topic.

25      I went back and I did look at Pre-Trial Order Number 33

1   which was the order that sort of got these case specific

2   depositions started.

3          And it's clear from that order that Judge Goodwin was

4   not allowing the plaintiffs to take depositions of division

5   managers and regional business directors.  He, he felt that

6   the plaintiffs could take depositions of sales reps, but he

7   didn't go higher up in the chain of hierarchy for the case

8   specific depositions.

9          Now, it's also true at that point only one additional

10  fact witness was allowed to be deposed in addition to the

11  plaintiffs.  So, obviously, there's been a shift with that

12  since now family and friends can be deposed.

13         But even still, I think the point of it was that we

14  don't want a lot of cumulative depositions.  And the real

15  overarching issue should have already been fully deposed --

16  fully explored and discovered and the witnesses fully

17  deposed.

18         So I'm not seeing any need to say from a blanket

19  standpoint that there should be depositions of all these

20  division managers and regional business directors.  I feel

21  that they would not be as case specific as the plaintiff is

22  representing them to be in each case.

23         Now, there may be a case here or there such as the one

24  that Ms. Modak-Truran just mentioned where there has been

25  testimony that does make a division manager or district

1    manager important to the case.

2         And, so, I think the defendants are being entirely

3    reasonable to say if you can show me something about that

4    witness in this particular case that makes that witness's

5    testimony not cumulative, then we're certainly willing to

6    consider making that person available and doing what we need

7    to do to get that person.

8         And I think that's really what the intent of all of

9    these orders have been is it's not -- we're not at the point

10   in any of these litigations where we're broadening the scope

11   of discovery.  What we're doing is severely restricting the

12   scope of discovery because we're at the tail end of these

13   now and these need to be finished and they need to move on.

14        So what I'm going to say about that is if, Mr. Kuntz,

15   you've got testimony or you've got some reason why you think

16   in a particular case a division manager or a regional

17   business director would have relevant, noncumulative

18   testimony, then I think you should make the request to

19   Ms. Modak-Truran to get that person -- have that person

20   available.  And, you know, if she refuses to do it and you

21   feel that you need to bring that to me, then bring it to me

22   on a case by case basis.

23        But I'm not going to -- and I don't think that the plan

24   of Judge Goodwin is to have you just take division managers'

25   depositions and regional business director depositions in

1   every one of these cases.  I think just the opposite is true

2   to be honest with you.

3       So that's what I would say is that I will find if, if

4   you want to depose one of these people and you have a good,

5   a good factual basis to do that, then you should be allowed

6   to do that.

7       On the flip side, if you don't have that, then I'm

8   going to -- should Ethicon make a motion for protective

9   order, I would grant that motion for protective order.

10      Does that make sense to everyone?

11          MR. KUNTZ:  Yes.

12          MS. MODAK-TRURAN:  Yes, Your Honor.

13          THE COURT:  Okay.  So I would again suggest that

14   you work with each other.  I think that your group has been

15   very, very collegial during the entire seven years that this

16   MDL has been going on and have had very few problems, very

17   few worries.  It seems like you do work most things out.

18   And when you do come to me, you have a legitimate reason for

19   that.

20      So I'm -- I feel confident that you'll be able to work

21   these issues out as they come up.

22      When is your discovery deadline by the way?

23          MR. KUNTZ:   October 25th.

24          MS. MODAK-TRURAN:  October 25th.

25          THE COURT:  Okay.  So I guess, Mr. Kuntz, you need

1    to get to work and really see if there's anyone you're aware

2    of right now in those two categories that you have a factual

3    basis for requesting that deposition and get those names.

4            MR. KUNTZ:  Right.  Yeah, I will.  I mean, like

5    I'm -- just while we have you, I mean, the one that I

6    brought up when I was talking earlier is, again, in the *Moe*

7    case.  And this is where the sales rep five times the

8    document she's on about bonuses she gets says, "I can't

9    answer that question.  You have to ask the division manager.

10   You have to ask the division manager."  I mean, that's one

11   where I think I would say we need to talk to them.

12           THE COURT:  Well, I --

13           MR. KUNTZ:  You know, I --

14           THE COURT:  I agree.  If you're taking depositions

15   and the witnesses are deferring to other people, then for

16   the limited scope of, of the questions that have been

17   deferred you ought to be able to depose them on who's going

18   to answer your question.  I really don't understand why a

19   sales rep would not be able to answer those questions.

20       So, Ms. Modak-Truran, I would suggest to you that you

21   perhaps, you know, talk to your witnesses and explain to

22   them that if they don't answer the questions and they defer

23   it to someone else, that means somebody else is going to

24   have to testify.

25       So they ought to really give it some thought and figure

1    out whether they can actually provide an answer or not.  I

2    don't want them to guess or anything but if, you know,

3    you're asking somebody how they got bonuses -- I mean, I --

4    from the time I was 14 and babysitting, I knew where my

5    money was coming from and why I was getting it.  So I find

6    it hard to believe that people don't understand, you know,

7    how they -- or why they would get a bonus.  And I'm just

8    using that as an example.

9        So, anyway, yes, I think in situations like that if

10   you've got, you've got issues or you've got questions on

11   issues that are important and these people can't answer

12   them, and it's not just because they can't remember, it's

13   because they don't know how something actually worked, then

14   I would say that would be the kind of situation where you

15   would have the right to at least take a limited deposition

16   of someone who can answer your questions.

17                MR. KUNTZ:  Okay.  Thank you.

18                THE COURT:  All right.  Thank you all.  I assume

19   there's nothing else.  Is that right?

20                MS. MODAK-TRURAN:  That's right, Your Honor.

21       And for Lisa we would like to order a copy of the

22   transcript.

23                COURT REPORTER:  Okay.  Thank you.

24                THE COURT:  And, Lisa, thank you.  I appreciate

25   it.

1          COURT REPORTER:  You're very welcome.

2          THE COURT:  Court is in recess.

3       (Proceedings concluded at 1:57 p.m.)

4                    *  *  *  *  *

5

6

7

8

9

10         I, Lisa A. Cook, Official Reporter of the United

11   States District Court for the Southern District of West

12   Virginia, do hereby certify that the foregoing is a true and

13   correct transcript, to the best of my ability, from the

14   record of proceedings in the above-entitled matter.

15

16

17       s\Lisa A. Cook                September 23, 2019

18         Reporter                         Date

19

20

21

22

23

24

25