```
 1                IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                          AT HUNTINGTON

 3                    TRANSCRIPT OF PROCEEDINGS

 4   ----------------------------------------x

 5   IN RE:  ETHICON, INC., PELVIC REPAIR      MDL NO.
     SYSTEM PRODUCTS LIABILITY LITIGATION      2:12-MD-2327
 6
     ----------------------------------------x
 7   THIS DOCUMENT RELATES TO:

 8   EDIANY CARBON and                         CASE NO.
     ALBERT CARBON vs.                         2:12-cv-04269
 9   ETHICON, INC., ET AL.,

10


11   TINA BURRIS vs.                           CASE NO.
     ETHICON, INC., ET AL.,                    2:14-cv-24320
12


13   DAWNA MALLOW vs.                          CASE NO.
     ETHICON, INC., ET AL.,                    2:16-cv-08013
14

15   ----------------------------------------x

16                   TELEPHONIC MOTIONS HEARING

17                      November 7, 2019

18

19          BEFORE THE HONORABLE CHERYL A. EIFERT
                UNITED STATES MAGISTRATE JUDGE
20


21


22   Court Reporter:              Lisa A. Cook
                                  RPR-RMR-CRR-FCRR
23                                (304)347-3198
                                  lisa_cook@wvsd.uscourts.gov
24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer.
```

1  **APPEARANCES (Telephonically):**

2

3  **COUNSEL FOR PLAINTIFFS:**

4

5  **MR. ANDREW NORDEN**
   Osborne & Francis
6  Suite 271
   433 Plaza Real Blvd.
7  Boca Raton, FL  33432

8

9  **MS. LAURA J. BAUGHMAN**
   Martin Baughman
10 Suite 1230
   3710 Rawlins Street
11 Dallas, TX  75219

12

13 **COUNSEL FOR DEFENDANT:**

14

15 **MS. ANITA MODAK-TRURAN**
   Butler Snow
16 Suite 1600
   150 Third Avenue South
17 Nashville, TN  37201

18

19

20

21

22

23

24

25

PROCEEDINGS

JUDICIAL ASSISTANT: This is Laura, Judge Eifert's Judicial Assistant.

And I'd first like to confirm our court reporter today, Lisa Cook, is on the line.

COURT REPORTER: Hi, Laura. Yes, I'm here.

JUDICIAL ASSISTANT: Hi. Thank you, Lisa.

We are here for a motion hearing, hearings, rather, on three cases, the first one being *Carbon* vs. *Ethicon*, Case Number 2:12-cv-4269. This is regarding Plaintiff's Motion to Quash Notice of Taking Deposition Duces Tecum or, In The Alternative, Motion for Protective Order. And that's Document Number 89.

We are also here in the matter of *Burris* vs. *Ethicon*, Case Number 2:14-cv-24320. This is concerning Plaintiff's Motion to Quash Subpoena and Motion for Protective Order, Document 31; Defendant's Motion to Compel, Document 32; and Defendant's Motion for Protective Order, Document Number 33.

And, finally, we are here in the matter of *Mallow* vs. *Ethicon* -- that's Case Number 2:16-cv-8013 -- regarding Defendant's Motion to Compel. And that is Document Number 47.

So may I first have plaintiff's counsel in the Carbon case?

MR. NORDEN: This is Andrew Norden on behalf of

```
 1    the plaintiff, Ediany Carbon, from Osborne & Francis.
 2              JUDICIAL ASSISTANT:  Carbon.  Thank you.
 3         May I have plaintiff's counsel for Burris and Mallow?
 4              MS. BAUGHMAN:  This is Laura Baughman with the law
 5    firm of Martin Baughman in both matters.
 6              JUDICIAL ASSISTANT:  Thank you.
 7         And may I have counsel for Ethicon, please?
 8              MS. MODAK-TRURAN:  Good morning, Laura.  This is
 9    Anita Modak-Truran on behalf of Ethicon and Johnson &
10    Johnson.
11              JUDICIAL ASSISTANT: All right.  Thank you.  And
12    if you will all hold one moment for Judge Eifert.  I'll just
13    remind you to please identify yourself when speaking.
14         (Pause)
15              THE COURT:  Good morning.
16              MS. MODAK-TRURAN:  Good morning, Your Honor.
17              THE COURT:  All right.  I appreciate you all being
18    present at the same time because it looks like the motions I
19    have in front of me really are all very similar and kind of
20    address the same issue.  So I thought it would make sense to
21    just have everybody on the phone at one time.
22         Now, before I get started on the substance, let me ask
23    you, Mr. Norden, on behalf of your client, Carbon, is there
24    anything at issue other than what information Dr. Galloway
25    would need to produce related to his participation as an
```

1  expert in other cases?

2        MR. NORDEN: No, there is not, Your Honor.

3        THE COURT: And then is it Ms. Baum [sic]?

4        MS. BAUGHMAN: Baughman.

5        THE COURT: Baughman. Ms. Baughman, is there

6  anything in your motions that -- any issues other than the

7  disclosure by these experts of their participation in other

8  pelvic mesh cases?

9        MS. BAUGHMAN: My understanding is the only, the

10 only documents that Ethicon is seeking to compel are bills

11 in cases and other matters in which I do not represent the

12 plaintiff.

13       THE COURT: Right. In other -- other

14 participation --

15       MS. BAUGHMAN: Other mesh cases for plaintiffs for

16 whom my firm is not counsel.

17       THE COURT: Right, all right. So it sounds

18 like --

19       MR. NORDEN: Your Honor, --

20       THE COURT: Who is this?

21       MR. NORDEN: I apologize. This is Andrew Norden.

22 If I could just interject, in response to the question

23 that you posed to me, our motion did encompass more than

24 just payment information. But based upon the response that

25 we received from defendant and their papers, it appears that

1  the only thing we need to address that they are still
2  seeking relates to payment information for cases outside of
3  our particular matter.  So I just wanted to kind of add that
4  clarification.
5              THE COURT:  Right.  That's why I asked the
6  question at the outset because I, I could see where the
7  motions were a little bit broader.  But it appeared to me
8  that the only issue really left for both sets of plaintiffs
9  would be this issue of, of what information -- documentary
10 information your experts would need to provide to Ethicon
11 related to the expert's participation in other mesh cases.
12       So I think that's the only issue we have this morning.
13 Is that right?
14             MS. MODAK-TRURAN:  Yes, Your Honor.  This is Anita
15 Modak-Truran.
16             THE COURT:  All right.  Mr. Norden, I'll --
17             MR. NORDEN:  This is Andrew --
18             THE COURT:  Mr. Norden, I'll let you go ahead and
19 go first.  And you can, you can add anything you want to add
20 as to your argument regarding why your expert should not
21 have to disclose any additional documentary information.
22             MR. NORDEN:  Sure.  Thank you for the opportunity.
23 This is Andrew Norden.
24       So I, I've reviewed some of the cases that were sent
25 over by defense counsel.  And I've also reviewed an opinion,

1     *Salinero*, that was out of the Southern District of Florida.
2         And I think that after looking at the case law, I think
3     what is currently in Dr. Galloway's possession that he is
4     able to produce, to the extent that he has received or,
5     excuse me, generated invoices that relate specifically to
6     cases in which he had either provided testimony by way of a
7     Rule 26 report or actually been deposed and/or testified at
8     trial, to the extent that those invoices do not contain any
9     attorney/client or, excuse me, attorney work product
10     information that would otherwise divulge things that the
11     defendant should not be entitled to for on-going litigation,
12     he should be required to produce to the extent that he has
13     it and it is available to be reproduced.
14         The payment records, I acknowledge that to the extent
15     that he has that and it can be produced that the case law
16     suggests that should occur.
17         However, to the extent that the requests that have been
18     generated by defendant in Numbers 32 and 33 call for
19     anything else such as correspondence and calendar entries
20     and so forth and notes, I don't see necessarily where the
21     case law supports the production of those types of
22     materials.
23           THE COURT: All right. Thank you.
24         Let me ask you, Ms. Baughman, do you have anything
25     additional you would like to say?

1		MS. BAUGHMAN: Yes, Your Honor.

2	We have produced in each case the bills for that case.

3	Bills for other work done in other matters are not

4	case-specific. It's my understanding that there's a

5	pre-trial order that limits discovery in the wave cases to

6	case-specific matters.

7	So for the case at issue, we've produced the bills.

8	But my firm, frankly, has only used this expert, Dr.

9	Ostergard, less than a handful of times. We don't have in

10	our possession the other bills, and we don't think it's

11	relevant in this case.

12	And we also think those bills are bills for other

13	matters by other firms and other plaintiffs and it's not

14	appropriate to ask Dr. Ostergard to produce those,

15	especially in the context of the wave litigation in which

16	there is an order from the Court limiting discovery.

17		THE COURT: All right. Let me hear --

18		MS. BAUGHMAN: It's not relevant and it's -- it's

19	not relevant. It's overly burdensome and it's not in my

20	firm's possession and not in my client's possession.

21		THE COURT: All right.

22	Ms. Modak-Truran, what would you like to add?

23		MS. MODAK-TRURAN: Your Honor, I'll just briefly

24	add, because I know you're very aware of the case law, first

25	of all, a subpoena is an appropriate means of obtaining the

1  information from the opposing party concerning their expert.
2       And as you know, Your Honor, these two experts, they're
3  experts for plaintiffs against all the manufacturers.  So
4  they have -- a substantial amount of income is generated
5  from their work as an expert.
6       As to Ms. Baughman's position that the information is
7  not relevant, that's just not the case.  Information on bias
8  and prejudice goes to impeachment.  Bias -- discovery is
9  very broad on bias.
10      We, the defendants, have provided this information
11 about our experts, not -- their fee information is not just
12 limited to the case at hand.  It is to all of their
13 information.  So it's certainly not overly burdensome.
14      And then just to add, this issue has been addressed at
15 least directly with the same exact discovery responses in
16 *Salinero* vs. *Johnson & Johnson*.  And yesterday I circulated
17 a copy to everybody.
18      And, Your Honor, we would request that you deny the
19 motions for protective order, grant our motions to compel,
20 and require the plaintiffs in these three matters to produce
21 the invoices, payment information, and records reflecting
22 any additional compensation for work performed by the
23 respective experts that they've retained in the past five
24 years in mesh cases.
25           THE COURT:  All right.  Let me tell you that I

1   have read all of the cases and I had read cases prior to
2   receiving what Ms. Modak-Truran gave to me this morning.
3       And I think that Mr. Norden really hits the nail on the
4   head. I agree with him completely. I think there is --
5   obviously, these records are relevant because they do go to
6   the credibility of the expert witness.
7       And regardless of how limited discovery may be on
8   substantive issues, you're always able to do discovery on
9   credibility, bias, and those sorts of, those sorts of
10  matters that would affect the weight of the testimony given
11  by a witness.
12      So I do find this to be relevant. I don't think
13  there's any question about that.
14      However, I do think that the way the subpoena was
15  worded, it's overly broad. And a lot of that information
16  isn't going to shed any additional light on what it is
17  you're trying to get at.
18      So I think Mr. Norden was correct. You are entitled --
19  Ethicon is entitled to payment invoices, payment records
20  which would include invoices. And to the extent that there
21  is confirmation of amounts received, those are things that
22  Ethicon should receive.
23      I don't think that Ethicon needs to receive a bunch of
24  correspondence and extraneous documents. I think the main
25  things would be the invoices and any payment records.

             The invoices ought to show who the -- which attorney
the expert was retained by, who the party is that the expert
is testifying on behalf of, and how much was billed and how
much was received.

             As far as the individual -- I don't know if the experts
actually did by date -- if they put actual entries in of
what their activities were.  Some do.  Some don't.  I don't
think that's really that important.  And to the extent there
would be anything that might be an attorney work product
issue, I think that could all be redacted.

             So I don't have, I don't have a problem with that
because I don't think it matters what the expert actually
did.  What matters is how much money the expert's making in
these mesh cases.

             I do think it's relevant for all mesh cases how much
money each expert is making because these have all sort of
been handled similarly.  They are all pending at about the
same time.  And they really overall involve the same issues.

             So what I'm going to do is order this.  I'm going to
order the experts to provide their invoices for any pelvic
mesh case in which they acted as an expert who generated a
report or who appeared to testify in either deposition or at
trial for the last five years.

             They can redact specific activities that they feel
might violate attorney work product.  But the invoices ought

1   to show dates, amounts billed, who the attorney was, who the
2   party was, and those, you know, that sort of fundamental
3   information.
4       In addition, the experts will have to produce any
5   documents showing that they -- what amounts they were
6   actually paid to the extent that's available.  For example,
7   on an invoice sometimes they'll just put -- they'll write
8   "paid" down so that you know that entire amount had been
9   paid, so something that would show the amount of money that
10  they've made in the pelvic mesh cases and who they have
11  worked for.
12      I'm not going to require them to produce correspondence
13  and other tangential information.  It's mainly got to do
14  with the amounts and who they testified for.
15      Does that make sense?
16          MR. NORDEN:  Yes, Your Honor.
17          MS. BAUGHMAN:  Your Honor, this is Laura Baughman.
18  I just have a few questions.
19      I assume this is going to the expert, not to the law
20  firm.  Correct?  You're asking what's in the expert's
21  possession.
22          THE COURT:  Yes.  It's all about the expert
23  because the subpoenas were to the experts.
24          MS. BAUGHMAN:  Right.  And to the extent the
25  expert doesn't have this documentation in his possession,

1  then we don't have to produce it.  Correct?

2  THE COURT:  That's true, but let me say this.  Let
3  me say this.  You know, they're required to produce this
4  information in each individual case in Federal Court that
5  they have appeared as an expert.  So I would be very
6  skeptical to learn that they don't have this information.
7  So let me just say that.

8  I know that some -- you know, in various state cases
9  maybe the requirements are not the same.  But I would think
10 that they would have complied with the federal rule in any
11 federal cases they've appeared in.  So it ought to be -- it
12 ought to exist in all those cases.

13 MS. MODAK-TRURAN:  Your Honor, may I chime in
14 here?  This is Anita Modak-Truran.

15 THE COURT:  Yes.

16 MS. MODAK-TRURAN:  Your Honor, so the issue is
17 possession or control.  And all of -- as you said, all of
18 these witnesses have accountants.  In fact, Dr. Galloway
19 said he had an accountant.  And he should have been
20 submitting to his accountant a 1099 Form for the work.

21 So if, if Dr. Galloway or Dr. Ostergard doesn't have
22 it, their accountants will have that information.

23 THE COURT:  Somebody should have it I would think
24 because as you're pointing out, I mean, these -- any one of
25 these experts could be audited by the IRS.  And, so, I would

1   think they would have kept their financial information.  So
2   I'd be really skeptical to find out that somebody is saying
3   they don't have this relevant information.
4        And to the extent that they don't have it, then at a
5   very minimum they need to provide information to Ethicon as
6   to what the name of the case was that they appeared in and
7   on whose behalf they appeared and the name of the attorney
8   or the law firm that they dealt with because that way, we'll
9   have some record of where we can look.
10        And, you know, they can always get copies.  The expert
11  can always get a copy --
12        For example, if you, Ms. Baughman, have the invoice but
13  the doctor can't find it anymore, well, the doctor can
14  always ask you for a copy of it as he or she could ask any
15  other law firm with whom they've worked.  So -- but, yeah, I
16  mean, obviously if it doesn't exist anymore, then the doctor
17  can't produce it.
18             MS. BAUGHMAN:  And this is going back five years.
19  Is that correct?
20             THE COURT:  Five years, yes.
21             MS. BAUGHMAN:  Okay.  And, obviously, we'll treat
22  it -- serve the same subpoenas on defendant's experts for
23  the same information.
24             THE COURT:  Obviously.  And if there's any
25  argument about it, then you already know what my ruling

```
 1  would be.
 2        Is there anything else we need to do today?
 3              MS. BAUGHMAN:  What is the time for -- we need to
 4  know the time frame for compliance.
 5              THE COURT:  That's a good question.
 6              MS. BAUGHMAN:  It requires a significant amount of
 7  work.
 8              THE COURT:  Right.  That's a good question.  What
 9  sounds like a reasonable time frame?
10              MS. BAUGHMAN:  I haven't talked to the doctor, but
11  I would think at least 30 days.
12              THE COURT:  And how does that figure in with the,
13  with the pace of your case?
14              MS. MODAK-TRURAN:  Your Honor, I think 30 days is
15  fine.  Discovery just closed in Wave 12 --
16              THE COURT:  Okay.
17              MS. MODAK-TRURAN:  -- and we're not going to need
18  that information.  We've already filed our Daubert motions
19  and everything else.
20              THE COURT:  It would be more for trial?
21              MS. MODAK-TRURAN:  That's right, Your Honor.
22              THE COURT:  Okay.  Well, then, 30 days I think is
23  sufficient time.  Obviously, that's, that's a good bit of
24  time.  And, you know, they don't have to wait 30 days.  If
25  they have it all put together already and all they need to
```

1  do is just copy the documents, then they should do that and
2  get it to Ethicon as soon as possible. But 30 days would be
3  the outside time frame.
4      All right. If there is nothing else, I want to thank
5  Lisa for taking it down here today for us and this matter is
6  in recess.
7          MS. BAUGHMAN: Thank you, Your Honor.
8          MS. MODAK-TRURAN: Thank you, Your Honor.
9      Lisa, we'd like to order a transcript.
10         COURT REPORTER: Yes. I'll get that right to you.
11 Thank you.
12         THE COURT: Thank you, everyone.
13     (Proceedings concluded at 10:19 a.m.)

```
1          I, Lisa A. Cook, Official Reporter of the United
2    States District Court for the Southern District of West
3    Virginia, do hereby certify that the foregoing is a true and
4    correct transcript, to the best of my ability, from the
5    record of proceedings in the above-entitled matter.
6
7
8          s\Lisa A. Cook                    November 8, 2019
9              Reporter                              Date
10
```