IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2440 |
| IN RE: NEOMEDIC PELVIC REPAIR SYSTEMS PRODUCTS LIABIILITY LITIGATION | MDL No. 2511 |
| IN RE: BOSTON SCIENTIFICCORP., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2327 |
| IN RE: COLOPLAST CORP., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2387 |

*This Document Relates to All Cases*

**OBJECTION OF KLINE & SPECTER, P.C. TO THE
COURT APPOINTED EXTERNAL REVIEW
SPECIALSIST'S RECOMMENED ALLOCATION OF
COMMON BENEFIT FEES AND EXPENSES**

**I. INTRODUCTION**

Kline & Specter, P.C. ("Kline & Specter") objects to the Recommended Allocation of Common Benefit Fees and Reimbursement of Shared Expenses and Held Costs of the Court-appointed external review specialist which allocates approximately $900,000 of the common benefit fee (3% of the total) to Kline & Specter. This percentage allocation is nearly three times the percentage set forth in the FCC's 2018 Recommendation. This near tripling of allocation percentage is tacit acknowledgement by the FCC that they undervalued the work done by Kline & Specter in the initial review of common benefit work, where Kline & Specter was only granted a percentage of 1.07% of the distributed funds.

Further, the External Review Specialist completely ignored Kline & Specter's objection to the 5% levy sanctioned by the Court on awards won by participant firms in state cases with non-MDL plaintiffs. In both the 2019 Allocation and the allocation in dispute, the FCC saw fit to deny the majority of hours Kline & Specter worked on state cases while simultaneously, and without

1

jurisdiction over state court plaintiffs or their property, placing a 5% tax on any award won by Kline & Specter in those same state cases. These sort of 'extra-jurisdictional' taxes have been levied by other MDL courts and, subsequently, rejected on appeal. A district court lacks the authority to apply holdbacks to a dispute outside the MDL merely because the plaintiff in that dispute happened to hire a lawyer who represents a plaintiff within the MDL. "[T]he court is exercising authority over disputes that are not before it and over property that is not before it, without any clear limit on the court's reach." *In Re: Roundup Products Liability Litigation* 2021 WL 3161590 (N.D.Cal. 2021). Kline & Specter's state court plaintiffs were never a part of the MDL, their cases were not remands, and, therefore, the Court had no authority to levy a tax on a cases not within its jurisdiction.

Considering the MDL taxed awards for cases where it also denied the value of the work that went into achieving those awards, Kline & Specter is still in the dark as to how the External Review specialist made this, or any, determination regarding the awarding of fees for common benefit work. Additionally, the outsized sums FCC members paid their own firms represent the fruits of the direct conflict of interest that exists where the FCC members determine their own awards. The FCC has no logical rationale for why it undervalues the contributions of a firm that has likely paid as much or more money in common benefit than perhaps any other firm, has obtained more verdicts than any other firm, and in turn, has raised the value for all Plaintiffs in this litigation. Lastly, the FCC utilized a non-authorized factor, their appraisal of each firm's self-audited submission, to reduce applicant firm awards. This 'appraisal' is not a factor delineated in a Court-ordered Protocol nor is it a factor spelled out in *Barber*. For all the reasons set forth below and in the previously entered September 28, 2018 Objection and the March 24, 2022 Objection, the FCC's Recommendations should be denied, and an accounting of the FCC's determinations should be performed by a neutral third party. *See* September 28, 2018 Objection to Final Recommendation attached hereto as Exhibit "A."

**Background**

Throughout the fee allocation process, Kline & Specter has pushed for a fair, transparent, and accurate fee allocation to ensure that all eligible firms receive proper compensation for their contributions.

On March 4, 2022, Kline & Specter received the FCC's Preliminary Written Recommendation regarding allocation of fees and expenses from the funds withheld pursuant to

prior Orders of the Court. *See* March 4, 2022 Preliminary Recommendation, attached hereto as Exhibit "B." The FCC recommended that Kline & Specter receive 3% of the withheld funds and no reimbursement for expenses. Based on the FCC's belief that $30,000,000 will be available for payment of common benefit contributions, Kline & Specter's award would be approximately $900,000.

On March 18, 2022, Kline & Specter submitted its objection to the FCC's Preliminary Recommendation. *See* March 18, 2022 Objection to the FCC Preliminary Recommendation, attached hereto as Exhibit "C." On May 18, 2022, the FCC issued its Final Written Recommendation, again ignoring Kline & Specter's objections. Its recommended fee allocation of 3% of the common benefit funds remained the same. *See* May 18, 2022 Final Written Recommendation, attached hereto as Exhibit "D." On July 12, 2022, the External Review Specialist issued their Final Recommendation, essentially rubberstamping the FCC determination.

**Summary**

The External Review Specialist's proposed common benefit fee allocation should be denied. The incongruous fee allocations awarded to Kline & Specter in 2018 versus 2022 demonstrate a clear lack of methodology employed by the FCC. For example, in 2018, the FCC recognized 9,402.19 hours performed by Kline & Specter and recommended a fee allocation of 1.07% of the funds available for distribution. *See* 2018 FCC Final Written Recommendation, attached hereto as Exhibit "E." This represented the time period where Kline & Specter played a critical role in the transvaginal mesh litigation, work that resulted in seven trial verdicts, raising the tide that allowed significant settlements to the common benefit of all claimants. During period at issue, Kline & Specter produced another $200,000,000-plus in five more trial verdicts. Nevertheless, in the face of this indisputable benefit to all Plaintiffs in the transvaginal mesh litigation, the FCC after initially denying all Kline & Specter submitted hours, ultimately awarded 3.0% of the funds for distribution. The 2018 and 2022 awards simply cannot be reconciled using a methodology that also remains consistent with previous Court rulings on the methodology required when making fee allocations in an MDL.

The question is simple: since Kline & Specter is proposed to be awarded 3% of the available funds in 2022 for work the FCC initially determined had no common benefit, why was the firm only awarded 1.07% of the available funds in 2018 for the more than 9000 hours of work recognized by the FCC? The answer, due the FCC's incongruous determinations, is a guessing game. At the very least, based on the 2022 determination, the work represented in the 2018

determination should result in an award much higher than 1.07% initially allotted to the firm. **This is a significant difference**. Had Kline & Specter been awarded 3% in 2018, their award would have increased by more than $8,500,000.

Additionally, Kline & Specter objects to the unauthorized assessment of a 5% levy on awards won in state cases. These jurisdictions are beyond the authority of the MDL Court, the FCC, or the external review specialist. "Neither the common fund doctrine nor the district court's inherent power to control its docket justifies an order affecting the recovery of a nonparty merely because they happened to hire a lawyer with a client in the MDL." *In Re: Roundup Products Liability Litigation* 2021 WL 3161590 (N.D.Cal. 2021). Here, the FCC and External Review Specialist have simultaneously denied the common benefit value of Kline & Specter's work in state cases while happily collecting a fee on cases that were never a part of the MDL. The 5% levy on cases outside the MDL is not authorized and resulted in a significant reduction of Kline & Specter's fees. The state courts cases won by Kline & Specter resulted in $326 million dollars in verdicts against Ethicon, of which the FCC has levied an unauthorized tax of $16,339,250. Kline & Specter requests a return of the unauthorized 5% levy.

## II. ARGUMENT

### A. The FCC's Incongruous Allocations Give Reason to Doubt Their Methodology and Require an Accounting by a Neutral Third Party.

A firm seeking discovery related to common benefit fee allocation must provide "a reason to doubt the methodology that has been employed, conclude that informal or formal discovery is genuinely needed, or doubt the billing information that has been provided to date." *In re CR Bard Inc. Pelvic Repair Systems Products Liability Litigation*, 2019 WL 4458579, 03/12/2019, (S.D.W.V) quoting *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, C.A. No. 3:12-md-02385, Doc. 613 (S.D. Ill. Jan. 8, 2015). The stark contrast between the work recognized in 2018 (~9000 hours) and 2021 (51.6 hours) compared with the respective fee percentages awarded, 2018 (1.07%) and 2022 (3%), is reason to doubt the methodology, if one even exists, employed by the FCC in reaching those awards.

### i. The 2018 Determination of 1.07% for 9,000 Hours and Foundational Trial Victories.

The FCC's 2018 Determination, which only allocated 1.07% of the available funds to Kline & Specter, acknowledged that the firm was successful in its work in the Philadelphia Court

of Common Pleas (PCCP) and performed excellent work in representing their individual clients in state court in Pennsylvania and that "[t]he Mass Tort Program in Philadelphia was an additional pressure point in the Ethicon litigation." *See* Exhibit E at p. 58. During this time period, attorneys from Kline & Specter successfully obtained verdicts in two cases, *Hammons* and *Carlino*, that would lay the foundation for many plaintiffs' counsel in future Prolift and TVT cases. Despite this, over 4,000 of Kline & Specter hours submitted for the *Hammons v. Ethicon* case tried in the PCCP were disallowed. Kline & Specter's work in their PCCP trial cases benefited all MDL Plaintiffs, but the *Hammons* case is the most blatant disallowance of hours. *Hammons* was tried in December 2015, *before* Ethicon settled the majority of cases. Counter to their own assuranceso Kline & Specter and multiple Court orders, the FCC refused to recognize state court trial work that significantly contributed to the common benefit of all pelvic mesh claimants.

   ii. **The 2022 Determination of 3% for 51 Hours and Multiple Trial Victories.**

Contrast the 2018 FCC's allocation of 9,000 hours and 1.07% of the available funds with the determinations made in 2021 and 2022, which resulted in awards for Kline & Specter so inconsistent with the 2018 recommendation that no conceivable methodology could explain them. *See* Exhibit A. On March 25, 2021, Kline & Specter submitted 24,678.77 hours of common benefit work to the FCC for the time period from December 22, 2016 through December 30, 2020. This review, however, resulted in the FCC recognizing **zero hours** of work performed by Kline & Specter. After Kline & Specter objected to this result, the FCC responded by recognizing a paltry 51.6 hours of Kline & Specter's common benefit work. *See* 2021 Final Written Determination attached hereto as Exhibit 'F." Nevertheless, the same FCC from 2018, using the same basis for evaluating approved time as 2018, saw fit to award Kline & Specter 3% of the available funds for the 2016-2020 time period. It is hard to conjure a methodology which both denies the value of Kline & Specter's work yet nearly triples the percentage of their award when compared to a time period where the FCC recognized thousands of more hours of Kline & Specter's work. (*See* chart below)

|  | 2018 | 2022 |
|---|---|---|
| FCC Evaluation Standard | *See* Exhibit E at p. 2 | Identically worded standard outlined in Exhibit D at p. 2 |
| Hours awarded to Kline & Specter | 9,402.19 (FCC accepted ~29% submitted hours) | 51.6 (FCC accepted ~1% submitted hours) |
| Percentage allocated to Kline & Specter | 1.07% | 3% |

iii. **The FCC's Failure to Recognize State Court Work Breaches Multiple Court Orders and Their Own Assurances to Kline & Specter.**

From the outset of this litigation, Kline & Specter relied on assurances from both the FCC and the Court that its work in state court would be recognized and compensated. PTO No. 18 and PTO No. 262 both recognize that state court common benefit work should be considered. In a February 11, 2016 email from Kline & Specter partner and PSC member, Lee B. Balefsky to FCC Chairperson, Henry G. Garrard, III, Mr. Balefsky confirmed the following:

> Henry, thank you for hosting the meeting yesterday in Atlanta. One of our major concerns is the compensation for state court litigation common benefit work. This will confirm that you agreed that such work will be compensated and included in the process. We look forward to working with the committee.

*See* February 11, 2016 email, attached hereto as Exhibit "G"; *see also* PTO No. 18, where Judge Goodwin stated:

> Common benefit work performed in state court litigation — whether the proceedings are consolidated or not — should be considered to the extent it contributed to the outcome of the litigation and benefitted the MDL. The Court recognizes, particularly to the extent there are agreements between state court attorneys and MDL leadership, that state court attorneys may make an application for common benefit fees and expenses to be fully considered by the FCC.

Additionally, PTO No. 262 (the Fee Committee Protocol) recognized that state court work would be considered. *See* PTO 262, at p. 5.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), requires that the district courts are to consider and make detailed findings with regard to twelve factors relevant to the determination of reasonable attorneys' fees. Any award must be accompanied by detailed findings of fact with regard to:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at p. 226, Fn. 28.

The *Barber* factors illuminate the unreasonableness of the FCC's recommended allocations. As explained above, Kline & Specter expected at the outset of the litigation that state

court work would be recognized as part of the common benefit. *See* factors 4, 6. This, apparently, was not the case, and the Kline & Specter ultimately expended thousands of hours pursuing state court trial verdicts that would be ignored by the FCC.

### B. The FCC is Conflicted and Cannot Fairly Assess Common Benefit Contributions

Kline & Specter objects to the FCC awarding themselves a disproportionate amount of the allotted fees due to the direct conflict of interest which exists where the FCC members oversee their own awards. "They make recommendations on their own fees and thus have a financial interest in the outcome. "How much deference is due the fox who recommends how to divvy up the chickens?" *In re High Sulfur Content Gasoline Products Liability Litigation*, United States Court of Appeals, Fifth Circuit. February 4, 2008517 F.3d 220, 229 quoting J. Rambo in *In re Diet Drugs Products Liab. Litig.,* 401 F.3d 143, 173 (3d Cir.2005).

The FCC's failure to spell out the objective methodology utilized in its allocation process is made even more untenable considering the Committee awarded its member 2/3 of the available funds in the 2018 determination. The FCC recommended its 8 members receive awards totaling $229,849,392.50, an average of $28,731,174, which is approximately 2/3 of the total fee allowed. As of this writing, the FCC has refused to disclose the number of hours submitted by each firm, the process in which it assessed the reductions for each fee submitting firm, and the methodology for doing so. This refusal highlights the observation made in *In re High Sulfur* that "[t]he lack of transparency about the individual fee awards supports a perception that many of these attorneys were more interested in accommodating themselves than the people they represent." *Id*. at 229. As the Court also concluded, without full transparency about a fee committee's process, attorneys cannot "compare their awards to those of other attorneys..... One cannot compare apples to oranges without knowing what the oranges are." *Id*. at 232.

### C. The FCC Reduced Applicant Firm Awards on a Non-Authorized Basis

In the Final Written Recommendation, the FCC admitted that it reduced awards for applicant firms based on its own appraisal of an applicant firm's self-audited time entries. *See* Exhibit D at p. 9. This 'appraisal' of an applicant firm's self-auditing is not listed in the fifteen items enumerated in Section B of the Protocol to be used for evaluating applicant firm work, nor can it be found among the factors enumerated in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). As a result, any reduction of hours/percentages awarded to Kline & Specter, based on a arbitrarily determined lack of self-auditing, is improper and a recalibration of fees and costs for

Kline & Specter should be made in accordance with the Court's prior common benefit Orders, and the Protocols contained therein.

From the outset of this litigation, Kline & Specter relied on assurances from both the FCC and the Court that its work in state court would be recognized and compensated. It was on this basis that Kline & Specter objected to the FCC's rejection of those state-case related hours. *See* Exhibit A at pp. 7-8. In accordance with its objection, Kline & Specter re-submitted hours worked on the state court cases it was assured would be compensable.

The FCC was bound by Court-ordered Protocols and the *Barber* factors when allocating common benefit funds for disbursement. Its admitted failure to adhere to the prescribed factors requires accounting of the FCC's determinations be performed by a neutral third party in accordance with the governing Court-ordered Protocols and the *Barber* factors.

### D. Only Further Discovery Can Prevent the Injustices Seen in Many MDLs

At this juncture in the litigation, it is apparent only further discovery will reveal the truth and purported justification for the proposed fee allocations. Additionally, there are several aspects of the fee arrangement and the FCC recommendation that violate basic principles of due process.

#### i. Common benefit fees are not authorized as to state court cases

District Courts are not empowered, under either the common fund doctrine or the Court's inherent authority, to require a portion of state court case settlement proceeds to be placed in a common benefit fund. Even if common benefit work performed in the MDL paved the way for non-MDL plaintiffs to receive settlements, the Court's authority over non-MDL plaintiffs' recoveries cannot be created because their attorney had another case within MDL. There are no policy concerns arising from MDL attorneys who also represented non-MDL plaintiffs having access to common benefit work. *In Re: Roundup Products Liability Litigation* 2021 WL 3161590 (N.D.Cal. 2021*); see also*, *In re Genetically Modified Rice Litigation*, 764 F.3d 864 (8th Cir. 2014), cert. denied, 135 S. Ct. 1455 (2015).

An MDL court does not have authority, by statute or common fund doctrine, to assess a levy on cases not before the court.

> But state-court cases, related or not, are not before the district court. The state-court plaintiffs at issue neither agreed to be part of the federal MDL nor participated in the MDL Settlement Agreement. Even if the state plaintiffs' attorneys participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court plaintiffs and [the defendant]. Id. at 874. The Court acknowledged the possibility that the lawyers for the state court plaintiffs had benefitted from lead MDL counsel's work but noted that "equity is insufficient to overcome limitations on federal jurisdiction."

*In re Genetically Modified Rice Litigation*, 764 F.3d 864 (8th Cir. 2014), cert. denied, 135 S. Ct. 1455 (2015).

Here, the FCC has levied an unauthorized 5% tax on awards won in state cases that were never a part of an MDL, therefore, outside the jurisdiction of the MDL Court and the FCC. The MDL Court did not have the authority to tax awards resulting from state-court plaintiffs and Defendant. Further, it is beyond dispute that the $326 million in jury awards obtained by Kline & Specter in their Ethicon state court cases dwarfs the verdicts obtained in the Ethicon MDL. *See* chart below. The FCC's overreach deprived these Kline & Specter's state-court plaintiffs the full benefit of their verdicts. The unauthorized 5% levies placed on state-court awards should be returned to Kline & Specter for proper distribution to their state-court clients.

| **Verdicts Obtained by Kline & Specter in Ethicon State Cases** | **Verdicts obtained by FCC counsel in Ethicon MDL cases** |
|---|---|
| Hammons v. Ethicon  - $12.5 million<br>Carlino v. Ethicon - $13.5 million<br>Engleman v. Ethicon - $15 million<br>Beltz v. Ethicon - $2.16 million<br>Ebaugh v. Ethicon – $42.6 million<br>Emmet v. Ethicon  - $41 million<br>McFarland v. Ethicon - $120 million<br>Mesigian v. Ethicon – 80.025 million | Huskey v. Ethicon - $3.27 million |

> ii. **The FCC's unequal fee allocations lay bare the fundamental flaw endemic to all MDL common benefit funds distribution**

This fee allocation process is highly sensitive and fraught with potential for abuse, especially because the FCC members and their close associates will be recipients of FCC awards. In 2017, Professor Elizabeth Chamblee Burch, articulated this tendency for a flawed, conflicted process in her article Monopolies in Multidistrict Litigation:

> "[P]laintiffs' leadership across multidistrict proceedings can act like oligopolies and cartels. Cartels punish defectors by imposing costs on them and denying them access. When attorneys become lead lawyers, they have the power to control access and inflict costs, too: they distribute common-benefit work to allies, use settlements to restrict attorney advertising and reduce attorney demand, suggest common-benefit fee allocations, and report uncooperative behavior to the judge— carrots and sticks, in other words, that impair rivals' financial and leadership opportunities.
> Because information flows easily through the network, it increases the opportunities for both tacit and explicit collusion and enables leaders to credibly punish and reward others for following or disregarding norms."

*See* Elizabeth Chamblee Burch, *Monopolies in Multidistrict Litigation,* 70 Vand. L. Rev.

67 (2017), pp. 122-123, attached as Exhibit "H."; *see also*, Charles L. Becker, Shanin Specter, & Thomas R. Kline, *How Not to Manage a Common Benefit Fund: Allocating Attorney's Fees in Vioxx Litigation*, 9 Drex. L. Rev. 1 (Fall 2016), attached as Exhibit "I."

That External Special Master, The Honorable Daniel J. Stack, Ret., assigned to oversee the fairness of the fee-allocation process was himself a member of the FCC is just one example where norms were disregarded to the benefit of FCC leadership. As an FCC member, Judge Stack was involved in the initial determinations and, subsequently, approved them in writing. Having Judge Stack also then be the final arbiter at the end of the review process is a clear violation of due process. It is fundamental that no one should judge their own conduct.

The only way to ensure that insidious conduct like that described in Professor Burch's article will not happen here is to permit discovery. Decreasing a participating firm's allocation based on an unauthorized and amorphous standard is exactly the type of behavior one would expect to see where the Fee Committee is conflicted.

### III.  CONCLUSION

For the reasons stated above, Kline & Specter objects to the fee allocations set forth in the FCC's May 18, 2022 Final Written Recommendation and seeks a reevaluation at this time. Furthermore, Kline & Specter requests that the Final Written Recommendation should be referred to a neutral third party for a new allocation based on an objective methodology, such as a lodestar calculation, to ensure fair and adequate compensation to the eligible firms.

Respectfully Submitted,

**KLINE & SPECTER, P.C.**

By: _____
Shanin Specter, Esquire/40928
Tobias L. Millrood, Esquire/77764
Lee B. Balefsky/25321
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Dated: July 27, 2022                         (215) 772-1000