EXHIBIT C

## OBJECTION OF KLINE & SPECTER, P.C. TO THE TRANSVAGINAL MESH MDL COMMON BENEFIT FEE AND COSTS COMMITTEE'S 2022 PRELIMINARY WRITTEN RECOMMENDATION

**INTRODUCTION**

Kline & Specter, P.C. ("Kline & Specter") objects to the 2022 Preliminary Written Recommendation of the Fee and Cost Committee ("FCC") which allocates approximately $900,000 of the common benefit fee (3% of the total) to Kline & Specter. Notably, this percentage allocation is nearly three times the percentage set forth in the FCC's 2018 Recommendation.[1] The near tripling of allocation percentage to Kline & Specter in this Preliminary Written Recommendation is tacit acknowledgement by the FCC that they undervalued the work done by Kline & Specter in the initial review of common benefit work, where Kline & Specter was only granted a percentage of 1.07% of the distributed funds. Despite this increase, Kline & Specter is still in the dark as to how the FCC made this, or any, determination regarding the awarding of fees for common benefit work. This doubt warrants an independent accounting of the FCC's procedures. Additionally, the outsized sums FCC members paid their own firms represent the fruits of the direct conflict of interest that exists where the FCC members determine their own awards. The FCC has no logical rationale for why it undervalues the contributions of a firm that has likely paid as much or more money in common benefit than almost any other firm, has obtained more verdicts than any other firm, and in turn, has raised the value for all Plaintiffs in this litigation. For all the reasons set forth below and in the previously entered September 24, 2018 Objection, the FCC's Recommendations should be denied, and an accounting of the FCC's determinations should be performed by a neutral third party.

**Background**

Throughout the fee allocation process, Kline & Specter has pushed for a fair, transparent, and accurate fee allocation to ensure that all eligible firms receive proper compensation for their contributions. On April 9, 2018, Kline & Specter submitted its Affidavit in Connection with the Request for Allocation of Aggregate Common Benefit Fee and Costs Award which provided a thorough explanation of Kline & Specter's involvement in and contribution to the transvaginal

---

[1] Kline & Specter objected to the 2018 Recommendation and explained in great detail the unreasonableness of the FCC's allocation given the extensive common benefit worked performed by the Kline & Specter attorneys. *See* September 24, 2018 Objection to the FCC's Preliminary Written Recommendation ("September 24, 2018 Objection") attached hereto as Exhibit "A."

1

mesh litigation.  *See* April 9, 2018 Affidavit attached hereto as Exhibit "B."  On June 12, 2018, Kline & Specter appeared before the FCC to outline the firm's extensive common benefit work.  Despite these submissions, on September 13, 2018, the FCC provided its Preliminary Written Recommendation which excluded over 70% of Kline & Specter's hours and allocated only $3,745,000 to the firm.  *See* FCC September 13, 2018 Recommendation Letter, attached hereto as Exhibit "C."  Kline & Specter then submitted its September 24, 2018 Objection.  *See* Exhibit "A."  On November 20, 2018, the FCC submitted its Final Written Recommendation, which increased the awards for several objecting firms.  *See* FCC November 20, 2018 Recommendation Letter, attached hereto as Exhibit "D."  However, Kline & Specter's objections were ignored, and its recommended fee allocation - $3,745,000 for 9,402.19 hours of approved time – remained the same.

On March 25, 2021, Kline & Specter submitted its Affidavit in Connection with the Request for Allocation of Aggregate Common Benefit Fee and Costs Award which provided a thorough explanation of Kline & Specter's involvement in and contribution to the transvaginal mesh litigation from the time period from December 22, 2016 to December 30, 2020. *See* March 25, 2021 Affidavit attached hereto as Exhibit "E."  On July 26, 2021, the FCC submitted its initial review of Kline & Specter's March 2021 fee request.  *See* FCC July 26, 2021 Initial Review of Fee Submission Letter attached hereto as Exhibit "F."  The FCC excluded all hours, over 24,000, submitted by Kline & Specter, along with awarding the firm zero dollars in expenses. *Id.* On September 24, 2021, Kline & Specter submitted its objection to the FCC's initial determination, providing documentary evidence of the common benefit work done by the firm.  *See* September 24, 2021 Affidavit attached hereto as Exhibit "G."   On November 12, 2021, the FCC  determined, in the face of documentary evidence, that Kline & Specter did perform common benefit work, awarding the firm a total of 51.6 additional hours.  *See* November 12, 2021 FCC letter attached hereto as Exhibit "H."  On February 17, 2022, Kline & Specter lodged a complaint to the FCC that Kline & Specter contributions were being significantly undervalued and made a request for a transparent and specific accounting of settlement amounts and common benefit payments and expenses to date.  See February 17, 2022 e-mail from Tobi Millrood to Joe Rice, attached hereto as Exhibit "I."

On March 4, 2022, Kline & Specter received the FCC's Preliminary Written Recommendation regarding allocation of fees and expenses from the funds withheld pursuant to

prior Orders of the Court. *See* March 4, 2022 Preliminary Recommendation, attached hereto as Exhibit "J." The FCC recommended that Kline & Specter receive 3% of the withheld funds and no reimbursement for expenses. Based on the FCC's belief that $30,000,000 will be available for payment of common benefit contributions, Kline & Specter's award would be approximately $900,000.

**Summary**

The FCC's proposed common benefit fee allocation should be denied. The incongruous fee allocations awarded to Kline & Specter in 2018 and 2022, demonstrate a clear lack of methodology employed by the FCC. This evident lack of methodology warrants an accounting of the FCC's determinations, not only those awarded to Kline & Specter, but to all participating firms. Without an accounting, there can be no justification for the FCC's inconsistent and illogical fee allocations. For example, in 2018, the FCC recognized 9,402.19 hours performed by Kline & Specter and recommended a fee allocation of 1.07% of the funds available for distribution. *See* Exhibit D. This represented the time period where Kline & Specter played a critical role in the transvaginal mesh litigation, work that resulted in seven Kline & Specter trial verdicts, rising the tide that allowed significant settlements to the common benefit of all claimants. Kline & Specter continued its significant contributions for the entirety of the litigation for the relevant period beginning December 22, 2016. During this time, Kline & Specter produced another $200,000,000-plus in five more trial verdicts. Nevertheless, in the face of this indisputable benefit to all Plaintiffs in the transvaginal mesh litigation, the FCC initially denied all Kline & Specter submitted hours, yet ultimately awarded 3.0% of the funds for distribution. The 2018 and 2022 awards simply cannot be reconciled using a methodology that also remains consistent with previous Court rulings on the methodology required when making fee allocations in an MDL.

The question is simple: If Kline & Specter was awarded 3% of the available funds in 2022 for work the FCC initially determined had no approved common benefit, why was the firm only awarded 1.07% of the available funds in 2018 for the more than 9000 hours of work recognized by the FCC? The answer, due the FCC's incongruous determinations, is a guessing game. A full and fair accounting of the FCC's determinations is required to prevent further injustice to Kline & Specter and all other firms not represented on the FCC. At the very least, based on the 2022 determination, the work represented in the 2018 determination should result in an award much

higher than 1.07% initially allotted to the firm. **This is a significant difference**. Had Kline & Specter been awarded 3% in 2018, their award would have increased by more than $8,500,000.

Additionally, Kline & Specter objects to the "direct conflict of interest" of the FCC presiding over the common benefit fee allocations, as suggested by the outsized percentage of funds directed to those firms on the Committee.[2] Throughout its initial 2018 Final Recommendation, the FCC made vague statements regarding utilizing the "collective personal knowledge and experience of its members in this litigation" to "reflect on" the subjective value of the work submitted for consideration. Yet, that recommendation was replete with examples of questionable allocations, especially its recommendation that its 8 members receive awards totaling $229,849,392.50, an average of $28,731,174, which is approximately 2/3 of the total fee allowed. The composition of the FCC remains the same and the conflict has not disappeared.

"Although the proposed allocation "may ultimately be fair, careful attention must be paid to the procedures by which the allocation is set." If a district court "chooses to rely on the recommendations of a committee of interested attorneys, it then becomes necessary to scrutinize more closely those recommendations." *In re Diet Drugs Products Liab. Litig.*, 401 F.3d 143, 173 (3d Cir.2005). The FCC's Final Written Recommendations should be referred to a neutral third party for a new allocation based on an objective methodology, to ensure fair and adequate compensation to the eligible firms. Given the fixed nature of the common benefit fund, one firm's loss is another firm's gain. As discussed *supra*, the FCC recommended that its 8 member firms receive $230,000,000 in common benefit fees. *See* Excel Spreadsheet Prepared by Kline & Specter, attached as Exhibit "K". This direct conflict of interest held by FCC members and the resultant inequality its recommended allocations provides the backdrop against which Kline & Specter objects.

**II. ARGUMENT**

    **A. The FCC's Incongruous Allocations Give Reason to Doubt Their Methodology and Require an Accounting by a Neutral Third Party.**

---

[2] *In re High Sulfur Content Gasoline Products Liability Litigation*, United States Court of Appeals, Fifth Circuit. February 4, 2008, 517 F.3d 220. The Court held a 'direct conflict' existed for members of the Fee Committee because "they were suggesting to the District Court how to proceed on matters near and dear—dividing a limited fund among themselves and other firms. Such a direct conflict of interest strongly suggests that affording substantial deference is inappropriate." *Id.*

"A firm seeking discovery related to common benefit fee allocation must provide "a reason to doubt the methodology that has been employed, conclude that informal or formal discovery is genuinely needed, or doubt the billing information that has been provided to date." *In re CR Bard Inc. Pelvic Repair Systems Products Liability Litigation*, 2019 WL 4458579, 03/12/2019, (S.D.W.V) quoting *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, C.A. No. 3:12-md-02385, Doc. 613 (Case Management Order No. 89 – Denying Motion to Stay and Prohibiting Discovery Relating to Common Benefit Fee Determination) (S.D. Ill. Jan. 8, 2015). The stark contrast alone, between the work recognized in 2018 (~9000 hours) and 2021 (51.6 hours) compared with the respective fee percentages awarded, 2018 (1.07%) and 2022 (3%), is reason to doubt the methodology, if one even exists, employed by the FCC in reaching those awards.

    **i. The 2018 Determination of 1.07% for 9,000 Hours and Foundational Trial Victories.**

The 2018 Recommendation of the FCC provides relevant backdrop for the instant Recommendation. In its April 19, 2018 submission, Kline & Specter attorneys detailed over 32,000 hours of common benefit work in the transvaginal mesh litigation in order to serve the hundreds of thousands of women who have been injured by the defective pelvic mesh devices. *See* Exhibit B. Kline & Specter attorneys engaged in all aspects of pre-trial litigation, including document discovery, identification and preparation of experts, development of legal and factual theories, the taking of depositions, motion practice, the coordination of state and federal proceedings, and contributions to the trial packages. *Id.* Furthermore, during this time period, attorneys from Kline & Specter successfully obtained verdicts in two cases, *Hammons* and *Carlino*, that would lay the foundation for many plaintiffs' counsel in future Prolift and TVT cases[3]. Yet Kline & Specter's work was not recognized for the common benefit where such recognition was warranted.

The FCC's 2018 Determination, which only allocated 1.07% of the available funds to Kline & Specter, acknowledged that the firm was successful in its work in the Philadelphia Court of Common Pleas (PCCP) and performed excellent work in representing their individual clients in

---

  a.   *Hammons v. Ethicon*, No. 130503913, Pa. Comm. Pls., Philadelphia Co. (2015): $12,500,000 verdict. ($5.5 million in compensatory damages, $7 million in punitive damages.) Prolift.
  b.   *Carlino v. Ethicon*, Case No. 130603470. Pa. Comm. Pls., Philadelphia Co. (2016). $13.5 million verdict. ($3.25 million in compensatory damages for Mrs. Carlino, $250,000 to Mr. Carlino for loss of consortium, and $10 million in punitive damages.) TVT.

state court in Pennsylvania and that "[t]he Mass Tort Program in Philadelphia was an additional pressure point in the Ethicon litigation." *See* Exhibit D at p. 58. Despite this, over 4,000 of Kline & Specter hours submitted for the *Hammons v. Ethicon* case tried in the PCCP were disallowed. Kline & Specter's work in their PCCP trial cases benefited all MDL Plaintiffs, but the *Hammons* case is the most blatant disallowance of hours. *Hammons* was tried in December 2015, *before* Ethicon settled the majority of cases. While the *Hammons* case was the second trial involving the Prolift, it was the first and only case where the jury found for the Plaintiff on the defective design claim that lies at the heart of every case in the MDL. Counter to their own assurances to Kline & Specter and multiple Court orders, the FCC refused to recognize state court trial work that significantly contributed to the common benefit of all pelvic mesh claimants.

    ii. **The 2022 Determination of 3% for 51 Hours and Multiple Trial Victories.**

Contrast the 2018 FCC's allocation of 9,000 hours and 1.07% of the available funds with the determinations made in 2021 and 2022, which resulted in awards for Kline & Specter so inconsistent with the 2018 recommendation that no conceivable methodology could explain them. On March 25, 2021, Kline & Specter submitted 24,678.77 hours of common benefit work to the FCC for the time period from December 22, 2016 through December 30, 2020. This review, however, resulted in the FCC recognizing **zero hours** of work performed by Kline & Specter.[4] After Kline & Specter objected to this result, the FCC responded by recognizing a paltry 51.6 hours of Kline & Specter's common benefit work. *See* Exhibit A and Exhibit H. Nevertheless, the same FCC from 2018, using the same basis for evaluating approved time as 2018, saw fit to award Kline & Specter 3% of the available funds for the 2016-2020 time period.

In its March 2022 Preliminary Recommendation, the FCC stated "[t]he number of hours under consideration as common benefit was only one part of the evaluation process in regard to the FCC's Preliminary Written Recommendation. Based on the requirements of the Fee Committee Protocol, the FCC evaluated each firm using the same criteria and exercised its discretion in evaluating the degree to which the work and expense incurred by each firm furthered the common

---

[4] This drastic reduction in hours recognized between the 2018 and 2021 determinations (28% hours submitted v. 0%) comes after Kline & Specter had already objected to the initial determination and filed motions to compel production of documents related to the FCC's determination. The FCC complained, falsely, "Kline & Specter's efforts often conflicted with the cooperative efforts of the MDL and the firm mandumused the Court on multiple occasions." *See* Ex. C at 58. Within that context, the FCC's decision to award zero hours in the 2021 determination appears to be punishment for Kline & Specter's temerity in *once* mandumusing the FCC in an attempt to increase the rate of case resolution for the common benefit of all Boston Scientific claimants in the MDL.

benefit of the litigation." The FCC previously refused to recognize much of the work done by Kline & Specter as being for the common benefit and in 2021 denied over 99% of the hours submitted by the firm. It is hard to conjure a methodology which both denies the value of Kline & Specter's work yet nearly triples the percentage of their award when compared to a time period where the FCC recognized thousands of more hours of Kline & Specter's work. (See chart below)

|  | 2018 | 2022 |
|---|---|---|
| FCC Evaluation Standard | The number of hours under consideration as common benefit was only one part of the evaluation process in regard to the FCC's Preliminary Written Recommendation. Based on the requirements of the Fee Committee Protocol, the FCC evaluated each firm using the same criteria and exercised its discretion in evaluating the degree to which the work and expense incurred by each firm furthered the common benefit of the litigation. | The number of hours under consideration as common benefit was only one part of the evaluation process in regard to the FCC's Preliminary Written Recommendation. Based on the requirements of the Fee Committee Protocol, the FCC evaluated each firm using the same criteria and exercised its discretion in evaluating the degree to which the work and expense incurred by each firm furthered the common benefit of the litigation. |
| Hours awarded to Kline & Specter | 9,402.19 (FCC accepted ~29% submitted hours) | 51.6 (FCC accepted ~1% submitted hours) |
| Percentage allocated to Kline & Specter | 1.07% | 3% |

      iii. **The FCC's Failure to Recognize State Court Work Breaches Multiple Court Orders and Their Own Assurances to Kline & Specter.**

From the outset of this litigation, Kline & Specter relied on assurances from both the FCC and the Court that its work in state court would be recognized and compensated. PTO No. 18 and PTO No. 262 both recognize that state court common benefit work should be considered. In a February 11, 2016 email from Kline & Specter partner and PSC member, Lee B. Balefsky to FCC Chairperson, Henry G. Garrard, III, Mr. Balefsky confirmed the following:

> Henry, thank you for hosting the meeting yesterday in Atlanta. One of our major concerns is the compensation for state court litigation common benefit work. This will confirm that you agreed that such work will be compensated and included in the process. We look forward to working with the committee.

*See* February 11, 2016 email, attached hereto as Exhibit "K." No reply disputing this arrangement was sent or received. The statement by the FCC that only the first product trials would be recognized is an improper, after-the-fact attempt to change the agreement. *See* 2018 Final Recommendation at p. 24.

Not only did the FCC ensure that state court work would be compensated but so did this Court. In PTO No. 18, Judge Goodwin stated:

> Common benefit work performed in state court litigation — whether the proceedings are consolidated or not — should be considered to the extent it contributed to the outcome of the litigation and benefitted the MDL. The Court recognizes, particularly to the extent there are agreements between state court attorneys and MDL leadership, that state court attorneys may make an application for common benefit fees and expenses to be fully considered by the FCC. In order for an attorney's work in state court litigation to be considered for payment from the Common Benefit Fund, settlements from the requesting attorneys must include the five percent assessment.

Additionally, PTO No. 262 (the Fee Committee Protocol) recognized that state court work would be considered. *See* PTO 262, at p. 5.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (1974), requires that the district courts are to consider and make detailed findings with regard to twelve factors relevant to the determination of reasonable attorneys' fees. Any award must be accompanied by detailed findings of fact with regard to:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc., 577 F.2d 216* (4th Cir. 1978) at p. 226, Fn. 28, citing *Johnson v. Georgia Highway Express, Inc.*

The *Johnson* factors illuminate the unreasonableness of the FCC's recommended allocations. As explained above, Kline & Specter expected at the outset of the litigation that state court work would be recognized as part of the common benefit. *See* factors 4, 6. This, apparently, was not the case, and the Kline & Specter ultimately expended thousands of hours pursuing state

court trial verdicts that would be ignored by the FCC.[5] The amount in controversy and the results obtained also indicate that Kline & Specter's work was not properly recognized.

### B. The FCC is Conflicted and Cannot Fairly Assess Common Benefit Contributions

Kline & Specter objects to the FCC awarding themselves a disproportionate amount of the allotted fees due to the direct conflict of interest which exists where the FCC members oversee their own awards. "They make recommendations on their own fees and thus have a financial interest in the outcome. "How much deference is due the fox who recommends how to divvy up the chickens?" *In re High Sulfur Content Gasoline Products Liability Litigation*, United States Court of Appeals, Fifth Circuit. February 4, 2008 517 F.3d 220, 229 quoting J. Rambo in *In re Diet Drugs Products Liab. Litig.,* 401 F.3d 143, 173 (3d Cir.2005).

The FCC's failure to spell out the objective methodology utilized in its allocation process is made even more untenable considering the Committee awarded its member 2/3 of the available funds in the 2018 determination. The FCC recommended its 8 members receive awards totaling $229,849,392.50, an average of $28,731,174, which is approximately 2/3 of the total fee allowed. As of this writing, the FCC has refused to disclose the number of hours submitted by each firm, the process in which it assessed the reductions for each fee submitting firm, and the methodology for doing so. This refusal highlights the observation made in *In re High Sulfur* that "[t]he lack of transparency about the individual fee awards supports a perception that many of these attorneys were more interested in accommodating themselves than the people they represent." *Id*. at 229. As the Court also concluded, without full transparency about a fee committee's process, attorneys cannot "compare their awards to those of other attorneys .... One cannot compare apples to oranges without knowing what the oranges are." *Id*. at 232.

The FCC previously claimed that its analysis did not focus "solely on whether or not the firm had a member who was appointed to a leadership position, or whether any of the firm's members contributed value to the litigation, but instead necessarily focused on the value contributed to the litigation *by the firm as a whole*." *See* 2018 Final Recommendation at p. 32. The

---

[5] During the Dec. 21, 2016-Dec. 20, 2020 time period under review, Kline & Specter won additional verdicts in PCCP with awards totaling over $319 million dollars in *Englemann v. Ethicon, Beltz v. Ethicon, Ebaugh v. Ethicon, Emmet v. Ethicon, McFarland v. Ethicon, and Mesigian v.Ethicon*. Ignoring the pressure these verdicts put on Ethicon to modify its litigation position, the FCC, in their 2021 Determinations, recognized **zero hours** associated with these cases as being done for the common benefit of all MDL plaintiffs. *See* Exhibits F and H. And yet, the FCC somehow still saw fit to award Kline & Specter a 3% allocation of the available funds for this time period.

9

distributions show otherwise. The FCC clearly valued the work in bellwether cases and those tried in the MDL more so than those tried in state court though state court cases were at least as beneficial to the plaintiffs' common benefit. The state court litigation demonstrated to the defendants that they were vulnerable to attack on several fronts where the plaintiffs could get quicker trial listings and enormous verdicts. Kline & Specter's work on state court trials was just as valuable as those spent on the MDL trials. Despite the FCC's reiterations of the importance of trying cases, a significant number of firms were awarded high allocations where they did not try one case.

### CONCLUSION

For the reasons stated above, Kline & Specter objects to the fee allocations set forth in the FCC's March 4, 2022 Preliminary Written Recommendation and seeks a reevaluation at this time. Furthermore, Kline & Specter requests that the Final Written Recommendation should be referred to a neutral third party for a new allocation based on an objective methodology, such as a lodestar calculation, to ensure fair and adequate compensation to the eligible firms.

Respectfully Submitted,

**KLINE & SPECTER, P.C.**

Shanin Specter, Esquire/40928
Lee B. Balefsky/25321
Tobias L. Millrood, Esquire/77764
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000
*Attorneys for Plaintiff*

Dated: March 18, 2022