**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABIILITY LITIGATION | MDL No. 2325 |
| IN RE: BOSTON SCIENTIFIC CORP., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2327 |
| IN RE: COLOPLAST CORP., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2440 |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL No. 2511 |

*This Document Relates To All Cases*

**COMMON BENEFIT FEE AND COST COMMITTEE'S
RESPONSE IN OPPOSITION TO OBJECTION TO THE COURT-APPOINTED
EXTERNAL REVIEW SPECIALIST'S RECOMMENDED ALLOCATION OF COMMON
BENEFIT FEES AND EXPENSES BY KLINE & SPECTER, P.C.**

**Background**

Of the thirty-seven firms who submitted time for common benefit consideration, two firms objected to the FCC's recommended allocation.  The External Review Specialist considered and

addressed these firms' objections in making his Recommended Allocation.  Only one firm remains as an objector: Kline & Specter ("KS").  From the outset, it should be noted that KS's objections are aimed at decisions made or orders entered years ago, including matters that were the subject of KS's prior appeal to the Fourth Circuit, which was dismissed and its petition for rehearing denied. The only issue presently before the Court is the allocation of 30% of the common benefit funds received since July 25, 2019, and KS's unfounded attempt to relitigate the 5% aggregate fee and expense award or to renew its objections to the prior first round allocation should be denied on its face.

While unanimity was certainly the desire of the FCC and the External Review Specialist, the fact that only one firm has any objection to the recommended allocation stands as testament to the fairness and transparency of the allocation process and refutes KS's lone protests to the contrary.  In *In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litig.*, 555 F.Supp.2d 661, 668 (E.D.La.2007), the MDL court rejected an objecting firm's contention that the court-appointed fee committee had acted improperly with respect to its recommended allocation, noting "[o]n the contrary, that the vast majority of counsel seeking either a common benefit or individual claimant award have accepted the committee's determination is telling of the fairness of the committee's approach." *See also*, *In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 774 (E.D. La. 2011) ("The Court interprets this ongoing development of the FAC's and the Special Master's recommended allocations as an indication that the allocation process was working properly. The effectiveness of this [allocation] process in this case is supported by the fact that only 4 out of the 108 common benefit fee applicants continue to maintain their objections.").

The identity of the sole remaining objector comes as no surprise given KS's dogged efforts to undermine the common benefit process, which from its oft-cited law review article cited again in

its objection, appears to be the firm's habit.  KS opposed the FCC's motion requesting the 5% aggregate common benefit fee and expense award. (Case 2:10-md-2187, Doc. 6841 (11/26/18 KS motion opposing 5% aggregate fee award)). When that gambit proved unsuccessful, KS later moved to set an "end date" for common benefit assessments.  That motion was likewise denied. (Case 2:10-md-2187, Doc. 7559 (11/6/19 order denying KS motion to set an end date for common benefit assessments)).  KS filed multiple, repetitive motions seeking to compel discovery from the FCC, each of which were denied.[1]  KS moved to disqualify the Court-appointed External Review Specialist and appoint a special master, but that motion, too, was rejected. (Case 2:10-md-2187, Doc. 7024 (2/26/19 order denying KS motion to appoint special master)).  After objecting to the first round written recommendation of the FCC, KS also opposed the recommended allocation of the External Review Specialist.  This Court rejected all objections in making its first round allocation. (Case 2:10-md-2187, Doc. 7367 (7/25/19 Allocation Order)). After the first round allocation, KS then sought to appeal the 5% aggregate award to the Fourth Circuit. (USCA4 Appeal No. 19-1224).  KS's appeal was dismissed and its motion for rehearing was denied by the Fourth Circuit with no member of the panel requesting a poll.[2]  Now, KS objects to the second round allocation and asserts largely the same self-serving objections it has lodged throughout the common benefit award and allocation process.  KS's rehashed or recast arguments remain meritless.

## Argument and Citation of Authority

---

[1] Case 2:10-md-2187, Doc. 5294 (3/7/18 order denying KS motion for discovery from FCC); Case 2:12-md-2327, Doc. 6189 (7/13/18 order denying KS motion to compel discovery from FCC); Case 2:12-md-2327, Doc. 7225 (11/21/18 order denying KS motion to compel discovery from FCC); Case 2:10-md-2187, Doc. 7043 (3/8/19 order denying KS motion to compel discovery from FCC).

[2] Two other firms that objected to the first round allocation also had their appeals dismissed, and those two firms filed Petitions for Certiorari with the U.S. Supreme Court.  Both Petitions for Certiorari were denied. Neither of those firms objected to the second round allocation.

(A)     KS's attempted objection to the 5% aggregate common benefit fee and expense award is years too late and is foreclosed by its prior appeal of the 5% award, which was dismissed and its motion for rehearing denied by the Fourth Circuit.

KS states that it "objects to the unauthorized assessment of a 5% levy on awards won in state court cases…. The 5% levy on cases outside the MDL is not authorized and resulted in a significant reduction in Kline & Specter's fees." (KS Objection at 4).  The list of fatal flaws with this afterthought argument is long.[3]

The orders of this Court establishing the 5% common benefit assessment and later awarding the 5% aggregate fee were entered years ago and thus the time for asserting any challenge to those orders expired long ago.   The "Agreed Order Establishing MDL…Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit," which established the 5% assessment, was entered on August 16, 2013 (hereinafter, the "Holdback Order").  Paragraph 1 of the Holdback Order provides that all "Participating Counsel" – which includes "all members of the PSC" *including KS here* – "agree to

---

[3] Although KS's objection to the 5% aggregate award comes three years after its appeal of the same 5% award was dismissed by the Fourth Circuit, and is thus frivolous on its face, its reliance on a California district court in the *Roundup* MDL is nonetheless misplaced.  The *Roundup* court expressly declined to decide the question of whether an MDL court can require a holdback from a nonparty's recovery as a result of a lawyer entering a participation agreement.  The Third Circuit did answer this question in *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, 617 Fed.App'x 136 (3rd Cir.2015), affirming the MDL court's rejection of a law firm's attempt to avoid the MDL assessment on its state court cases based on the firm's MDL participation agreement.  As set forth in this response, not only did KS agree to the Holdback Order which required the assessment, it was itself a member of the PSC in which capacity it reviewed and approved the Holdback Order that it and other firms were required to enter.  Moreover, as discussed below, KS has *admittedly* used MDL common benefit work product in pursuing claims in state court and indeed, KS has sought and received compensation from the MDL common benefit fund for work performed in its state court cases – and continues to do so.  This afterthought challenge to the 5% award here is not only years too late and foreclosed by its prior unsuccessful appeal, but also factually and legally groundless. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F.Supp.3d 170, 185-192 (S.D.N.Y. 2020) (citing numerous MDL and appellate cases holding that MDL courts have authority to assess cases outside of the MDL where counsel has agreed to MDL assessment and where counsel has utilized MDL common benefit work product).

pay the [5%] assessment amount … **on all filed and unfiled cases or claims in state or federal court in which they share a fee interest**."[4]  The Holdback Order was approved and submitted by the Plaintiffs' Coordinating Co-Leads, Plaintiffs' Executive Committee and Liaison Counsel after consulting and obtaining approval from the Plaintiffs' Steering Committee – *of which KS is a member*.

KS's after-the-fact contention that the Holdback Order entered nine years ago should not apply to its state court cases is specious.  While KS never challenged the assessment to which it agreed, KS did seek to challenge the 5% aggregate common benefit fee and expense award in this Court – and again in the Fourth Circuit – and its challenges were soundly rejected by this Court and its appeal was dismissed by the Court of Appeals *over three years ago*.  KS cannot assert newfound arguments that it could have but failed to raise years ago when it instead approved and agreed to the Holdback Order and more than three years ago when its challenges to the 5% aggregate award were rejected by this Court and then dismissed by the Fourth Circuit with its petition for rehearing denied.

First, as noted above, KS not only failed to oppose or object to the Holdback Order which set forth the 5% assessment of all cases, but KS actually approved and agreed to the Holdback Order as a member of the Plaintiffs' Steering Committee – more than nine years ago.  Having approved the Holdback Order prior to its entry nine years ago, KS cannot credibly seek to raise a challenge to the scope of the Holdback Order now.

---

[4] The Attorney Participation Agreement agreed to by KS states that "[t]his Agreement applies to each and every claim, case or action arising from the use of Mesh Products in which the Participating Counsel has a financial interest, whether the claim, case or action is currently filed in state or federal court, or is unfiled, or is on a tolling agreement (hereinafter collectively the 'Covered Claims')." (Holdback Order, Ex. A).  KS has repeatedly acknowledged that it is bound by the Participation Agreement. *See, e.g.,* 2:12-md-02387, Doc. 1006, p. 4 ("Entered by this Court on August 26, 2013, **Kline & Specter, along with all other participating firms, joined the Coloplast MDL Attorney Participation Agreement (the 'APA') automatically as members of the PSC**.") (Emphasis added).

On October 26, 2018, KS opposed the FCC's motion seeking a 5% aggregate fee and expense award in this Court on a number of different grounds. (Case 2:10-md-2187, Doc. 6841). The FCC responded to KS's objections to the 5% aggregate award on December 3, 2018. (Case 2:10-md-2187, Doc. 6847). The Court considered and rejected each of KS's objections to the 5% award in its January 30, 2019 Memorandum Opinion and Order (Re Petition for an Award of Common Benefit Attorney's Fees and Expenses). (Case 2:10-md-2187, Doc. 6986).

After its efforts to oppose the 5% award failed in this Court, KS then sought to appeal the 5% aggregate award to the Fourth Circuit. KS's filings in the Court of Appeals acknowledged that the 5% fee and expense award applied to every one of the firm's cases, whether filed in federal or state court. In its Docketing Statement for its appeal to the Fourth Circuit, KS noted that this Court's "order [establishing the MDL common benefit fund] required defendants to hold back 5% of all amounts paid to resolve any covered claim-which included all claims in which any member of the Plaintiffs' Steering Committee had a financial interest **whether pending in state or federal court**." (USCA4 Appeal No. 19-1224, Doc. 8 (copy attached as **Exhibit 1**) at 8) (Emphasis added). KS further stated that it had cases filed in both the MDL as well as in various state courts, and that "[b]ecause Kline & Specter's Lee Balefsky is a member of the Plaintiffs' Steering Committee, **all of the firm's clients would be obliged to pay a common benefit fee as directed by the Court**." (*Id.* at 10 (Emphasis added); *See also*, USCA4 Appeal No. 19-1224, Doc. 18 (copy attached as **Exhibit 2**) at 10 ("…Kline & Specter's Lee Balefsky is a member of the Plaintiffs' Steering Committee. As a result, **Kline & Specter is a Participating Counsel and is subject to the 5% withholding**.") (Emphasis added).

In its Docketing Statement filed with the Fourth Circuit, KS stated that its appeal of the 5% aggregate award was grounded on its contention that this Court's order granting the 5% aggregate common benefit fee and expense award was a final, appealable order, stating:

> On January 30, 2019, Judge Goodwin entered an order granting the Fee and Cost Committee's requ[est] for an aggregate 5% common-benefit fee…. While the amount of the fee fund may grow based on future settlements, **the court's order is final for appellate purposes** because it established a fixed percentage that each affected plaintiff must pay toward the common-benefit fee. *See In re Rite Aid Corp. Securities Litig.,* 396 F.3d 294, 298-99 (3d Cir. 2005) (an order determining aggregate common-benefit fees is final for purposes of appellate review); *In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 727 (3d Cir. 2001) (same).  Kline & Specter thus appeals under 28 U.S.C. § 1291.

(USCA4 Appeal No. 19-1224, Doc. 8 (**Exhibit 1**) at 10-11) (Emphasis added).

Instructively, KS framed the "Issue Presented" by its appeal as follows:

The instant appeals raise the following question for the Court's consideration:

> 1. Did the district court abuse its discretion in entering **an order granting the Fee and Cost Committee's petition for an aggregate common-benefit award, and ordering that 5% of each plaintiffs' recovery-currently $366 million in the aggregate-be held back from plaintiff recoveries and used to pay common-benefit attorneys' fees and reimbursement of expenses**, especially given the poor result that was achieved for the clients, the lack of global settlement, and the failure to use lodestar calculation to cross-check and help determine the overall common benefit fee?

(USCA4 Appeal No. 19-1224, Doc. 8 (**Exhibit 1**) at 13) (Emphasis added).

The FCC moved to dismiss KS's appeal, pointing out that KS was itself a party to the Management Order establishing the 5% common benefit assessment and that KS had expressly and unambiguously waived its right to appeal any such award of common benefit fees by this Court. (USCA4 Appeal No. 19-2224, Doc. 15 (copy attached as **Exhibit 3**)).  The Fourth Circuit dismissed KS's appeal. (USCA4 Appeal No. 19-2224, Doc. 21 (copy attached as **Exhibit 4**)).  In seeking rehearing of the Fourth Circuit's dismissal, KS sought to "clarify" that it was appealing this

Court's aggregate 5% fee and expense award, not the allocation of common benefit fees and expenses, which it argued the Fourth Circuit panel had mistakenly believed. (USCA4 Appeal No. 19-1224, Doc. 23-1 (copy attached as **Exhibit 5**)).  KS explained, "**Kline & Specter appealed the aggregate award** as unreasonably generous given the poor outcome of the litigation for individual plaintiffs." (USCA4 Appeal No. 19-1224, Doc. 23-1 (**Exhibit 5**) at 4) (Emphasis added).  KS further urged as follows:

> [T]he panel dismissed the case based on a factual misstatement of the issue presented for appeal. **The appeal arose from Judge Goodwin's order creating an aggregate common-benefit fund**. The order <u>only</u> creates the aggregate fund. It has nothing to do with any individual allocation that Kline & Specter may eventually receive from the aggregate fund…. The Court should not dismiss this appeal based on a mistake about the issues presented.

(*Id.* at 11) (Emphasis added).

Upon consideration of KS's purported "clarification" that the sole focus of its appeal was the 5% aggregate fee and expense award, the Fourth Circuit denied its petition for rehearing, noting that "[n]o judge requested a poll under Fed. R. App. P. 35 on the petition for rehearing en banc." (USCA4 Appeal No. 19-1224, Doc. 25 (copy attached as **Exhibit 6**) at 5).

In sum, KS was not only unsuccessful in its challenge to the 5% aggregate common benefit fee and expense award in this Court, but its appeal of the 5% aggregate fee and expense award was dismissed by the Fourth Circuit – *more than three years ago*.  KS's after-the-fact attempt to raise new challenges that it failed to raise previously to an Order it unsuccessfully opposed (and then challenged by way of an appeal that was dismissed) three years earlier is frivolous on its face.

While no further response on this particular issue is necessary, it is at least instructive to note that KS has not only sought reimbursement from the MDL common benefit fund for its work in state court cases, it has received and accepted compensation from the MDL common benefit

fund for its state court case work and it continues to seek such compensation here. It is beyond disingenuous for KS to assert that its state court cases should be exempt from this Court's aggregate common benefit fee and expense award, while simultaneously seeking (and accepting) compensation from the MDL fund – for work performed in those very same state court cases. KS's circular arguments are self-defeating and its objection should be overruled.

(B) KS's argument that its second round allocation somehow demonstrates that its first round allocation is too low is merely a backdoor attempt to reargue its first round allocation years after-the-fact.

Each of KS's "substantive" challenges to the External Review Specialist's Recommended Allocation have previously been raised and rejected by this Court in connection with the prior first round allocation. Tellingly, KS devotes much of its present challenge to the second round allocation to its contention that this latest allocation somehow shows that its first round allocation was too low. KS's argument seems to be that it is now being overcompensated during this second round when it compares this recommended allocation to its prior first round allocation, which is absurd, at best. (*See*, *e.g.*, KS Objection at 1 ("This [second round] percentage allocation is nearly three times the percentage set forth in the FCC's 2018 recommendation. This near tripling of allocation percentage is tacit acknowledgment by the FCC that they undervalued the work done by Kline & Specter in the initial review of common benefit work….")). In other words, KS wants to relitigate the first round allocation, which was made three years ago. While it is curious why a firm would want to argue that it is being overpaid for its work, it is nonetheless clear that KS cannot now seek to question or challenge the first round allocation made three years ago, which is clearly what it is trying to do in this objection.

(C) KS's rehashed argument that the FCC failed to recognize state court case work remains baseless.

KS's next argument – that the FCC allegedly failed to recognize work performed in state court cases – has been argued, considered and addressed. (*See, e.g.*, Case 2:12-md-2326, Doc. 7924-3 at 4 ("From the onset of this litigation, **Kline & Specter relied on assurances from both the FCC and the Court that its work in state court would be recognized and compensated**.") (Emphasis added); Case 2:10-md-2187, Doc. 6841 at 3 (11/26/18 KS motion opposing 5% aggregate fee award) ("On September 13, 2018, the FCC made its initial recommendation for common benefit fee allocation, and **Kline & Specter objected as most of its hours submitted for the state litigation were not considered** and the FCC-member firms were significantly overcompensated…. **Despite assurances to the contrary by this Court and the FCC, the FCC has refused to recognize thousands of hours of state court litigation common benefit time.**") (Emphasis added). Indeed, KS made this same argument in its appeal to the Fourth Circuit where it challenged the 5% aggregate award. USCA4 Appeal No. 19-1224, Doc. 18 (**Exhibit 2**) at 10 ("**The Fee and Cost Committee went back on its word concerning the compensability of state-court time.**") (Emphasis added)). It plainly appears that KS is merely rehashing the same argument about its state court work performed prior to the December 2016 first round cut-off, which arguments were considered and rejected – by this Court and by the Fourth Circuit.

In *In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litig.*, 555 F.Supp.2d 661, 666 (E.D.La.2007), the MDL judge rejected a firm's objection to a proposed common benefit allocation, observing "[s]ignificantly,…[the firm] does not explain *how* or *why* this work was for the common benefit." (Emphasis in original).  The court there stated "[w]ith respect to the character of the work that [the firm] alleges it performed for the common benefit, [the firm] does not explain why the Court should consider this work as being for the common benefit.  It makes no effort to distinguish between work performed on behalf of its individual clients and work

completed for the common benefit.  Nor does it explain why the [fee committee's] evaluation that it performed only 19.5 hours of common benefit work is incorrect." *Id.*, p. 668.  The court then explained that

> [i]n reviewing [the objecting firm's] arguments and its submitted records, the Court is aware of the complexity of coordinating the work of multiple counsel in multidistrict litigation and that counsel may disagree on what work is for the common benefit.  **But asserting that work is for the common benefit does not make it so**. [The objecting firm] has not provided any explanation of why its work that appears by the firm's description to be on behalf of their individual client was for the common benefit.

*Id.* at 670 (Emphasis added).

KS has admitted that other firms – not KS – did most of the common benefit work.  During its appearance before the FCC in connection with the first round allocation, the FCC Chairman specifically asked KS whether the firm had developed *any* general experts for the litigation, and KS admitted that it had not, but instead said that it worked with experts developed by MDL leadership. KS's response is particularly enlightening: "I don't believe so beyond what Lee had said to you.  **We certainly did not do everything that was litigation…and <u>we didn't do most things</u>.  <u>Other people did most things</u>** but we did largely in this litigation what we were asked to do by leadership, and if we had been asked to develop experts, we would have done that. (KS 6/12/18 FCC hearing transcript (copy attached as **Exhibit 7**), 24:13-25:14).  In other words, KS admitted that it had not actually developed any experts, but it would have if it had been asked.  KS also admitted the most single important fact bearing on the nature of its contribution to the common benefit – ***it did not do most things; other people did most things***.  Rather than contributing to the common benefit, KS was the recipient and beneficiary of the common work done by many dedicated attorneys in the MDL over years that allowed it to be in a position to take its cases to trial in its chosen state court venue.  For example, when asked by the FCC Chairman what assistance KS relied on from the MDL leadership

in preparing for its state court trials, KS acknowledged that it relied on the MDL's Ethicon work product for both Prolift and TVT and stated that "a lot of it was very good." (**Exhibit 7** at 20:18-21:18). (*See also*, Case 2:12-md-2326, Doc. 7924-3 at 3 ("Kline & Specter did not just 'use' materials from the MDL but, rather, accessed the raw materials available to them and every other participating firm and honed them into viable, successful trial packages.")).

In *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, 617 Fed.App'x 136 (3rd Cir.2015), the Third Circuit affirmed the MDL court's rejection of a law firm's attempt to avoid the MDL assessment on its state court cases. This law firm also claimed that the district court should have awarded it common benefit fees for its state court case work. Instructively, the Third Circuit observed that "[a]lthough [the law firm] says it spent fourteen million dollars litigating its [state court] cases, it did not offer evidence that its efforts were for the common benefit as opposed to solely on behalf of its clients," and therefore "[w]e cannot say the District Court abused its discretion in failing to consider or grant a credit for the common benefit [the firm] provided when no evidence exists in the record that [it] actually provided a common benefit." *Id.* at 144. The Third Circuit also noted that the firm used MDL work product and expert reports to oppose summary judgment motions in state court and it indicated its intent to use a number of MDL materials in a state court trial planned before its cases settled. *Id.* at 139.

Likewise, in *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir.1994), the Ninth Circuit affirmed the district court's denial of a request for common benefit recovery by a group of law firms who handled a related state court case. While conceding the "incidental" nature of the benefits from the parallel state court action to the MDL plaintiffs, the Ninth Circuit affirmed the district court's finding that the work was not entitled to common benefit reimbursement because there was no proof of any direct benefit enjoyed by the MDL plaintiffs. The Ninth Circuit affirmed. *See*

*also*, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liab. Litig.*, 268 F.Supp.2d 907, 924 (N.D.Ohio 2003) ("Fees that were charged for counsel's efforts taken primarily for the benefit of a given individual plaintiff, or even a smaller group of plaintiffs, and not the entire class of plaintiffs as a whole, did not quality for reimbursement, as they did not provide a true 'Common Benefit.'").

Unlike in the cases described above, where allocation requests by lawyers in state court litigation were denied outright due to insufficient proof of MDL common benefit, KS has been recommended to receive substantial common benefit fees, both in the first round and again in this second round.

(D)   KS's allegation that the FCC is "conflicted" because the FCC firms are recommended to receive common benefit fees is the same argument made during the first round allocation.

KS's allegation that "[t]he FCC is conflicted and cannot fairly assess common benefit contributions" was already raised and rejected in the first round allocation.  In its first round allocation order, the Court recognized that "[m]embers of the FCC were major contributors to, and claimants of, the monies contributed to the common benefit fund. Their diverse and competing interests offered a large measure of mutually assured fairness to the process. The lawyers appointed to the FCC were known to me to be the most active in the broadest range of cases across the seven MDLs. That is, the composition of the FCC significantly contributed to a process that was structurally designed for transparency and equitable distribution of common benefit fund monies." (Case 2:10-md-2187, Doc. 7367 at 2 (Memorandum Opinion and Order (re Allocation Order)).  The Court further stated, "I would note that MDL leadership was also recommended for compensation and was treated the same as all of the non-FCC claimant firms." (*Id.* at 4).

Having managed and overseen this litigation and having observed much of the work claimed by the applicant firms as common benefit, the firms comprising the FCC have first-hand experience

13

and knowledge of the contributions of the applicant firms.  Especially after the review of the time and expense submissions and consideration of the correspondence, objections and affidavits and appearances of many of the applicant firms, the FCC is well-positioned to recommend a percentage of the award to firms based on the nature and extent of the firm's respective contributions.  As recognized in *In re Diet Drugs Prods. Liab. Litig.*, 2003 WL 21641958, *6 (E.D. Pa. 2003), a committee allocating attorneys' fees is "well suited" for that task where it is "comprised of respected attorneys with in-depth knowledge of the work performed throughout the course of . . . the litigation."; *Vioxx*, 802 F. Supp. 2d at 764 (J. Fallon) (observing that fee committee appointees were "heavily involved" in the litigation and thus "had firsthand knowledge of the nature and extent of the common benefit work which was done and who did it").  The court in *In re Initial Public Offering Securities Litig.*, 2011 WL 2732563, *10 (S.D.N.Y. 2011), rejected an argument that the committee's recommendation should be disregarded because the members recommended themselves to receive sizable fees, observing:

> Furthermore, [the objecting firm's] claim—that fee allocations proposed by appointed committees are not entitled to substantial deference due to conflicts of interest— makes no sense. Taking [the firm's] misguided rationale to its logical conclusion, all class counsel appointed to submit fee allocation proposals would have conflicts and thus no deference would ever be afforded to a committee's proposal.  [The firm's] argument obviates the entire purpose of court-appointed lead counsel (who have been repeatedly recognized as best suited to gauge the value of one another's contribution to the class) to allocate fees from an aggregate award. Moreover, the inherent threat of conflicts of interest by involving class counsel in proposing fee allocations is precisely why district courts must ensure the fee allocations awarded are reasonable.

As Judge Fallon lamented in his common benefit fee allocation decision in *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, Case 2:09-md-2047, Doc. 22089, p. 5 (E.D.La. Feb. 4, 2019) (J. Fallon) (Order and Reasons Allocating Common Benefit Fees), the sort of "self-dealing" allegations lodged by KS here have unfortunately become commonplace where firms are dissatisfied

with their recommended allocation, attacking those who made the recommendation in an effort to increase their own allocation.  Not dissimilar from KS here, a group of objecting firms in *In re Diet Drugs Prods. Liab. Litig.*, 2003 WL 21641958, *10-*11 (E.D. Pa. 2003), argued that the fee committee's recommended allocation vastly understated the objectors' relative contribution to the outcome of the MDL, accused the committee of self-dealing and misrepresentation, and urged that the committee improperly "free rode" and took credit for work actually performed by the objectors.  These *Diet Drug* objectors argued that they were primarily responsible for developing the liability and causation case against the defendant and for negotiating the overall settlement. *Id.*  In rejecting the objectors' request for a re-allocation (the group was recommended an allocation of 18% of the total, but sought 60% in their objection), the court noted that "[w]ith so much money at stake and so much time invested by skilled attorneys on valuable common benefit work, it is not surprising that disputes exist concerning the proper method and dollar amount of the individual allocations." *Id.* Specifically addressing the objection that the fee committee had awarded themselves a disproportionate share of the fee, the MDL court in *In re Diet Drugs*, *supra* at *8, instructively observed as follows:

> We note at the outset that the members of the Committee must necessarily be persons who participated in the litigation and who therefore are entitled to share in the award of fees. To allocate the award fairly and reasonably among all counsel, the Committee must include those who have played a significant role in the litigation such that they understand not only its complexities but also the different contributions of the various counsel.

(E)    KS's contention that the FCC reduced its award because of its failure to self-audit its fee submissions is simply wrong.

KS's assertion that the FCC reduced KS's award "based on an arbitrarily determined lack of self-auditing" is factually meritless.  In accordance with the Court's common benefit protocol, all firms seeking second round common benefit compensation were requested to perform a self-audit

15

of time and expense submissions by the FCC and the External Review Specialist.  In his

Recommended Allocation, the External Review Specialist made it clear to KS that there was no

penalty or "reduction" based on this failure. (Case 2:10-md-2187, Doc. 7651 (7/12/22 External

Review Specialist Recommended Allocation) at 6 n. 5 ("Some firms diligently reviewed and

performed the self-audit in accordance with the Protocol while others did not. Despite allegations

by one objecting firm, Kline & Specter, I observed no evidence that any firm was 'punished' for

not performing a thorough self-audit. The impact of failing to perform a thorough self-audit arises

only when a firm attempts to compare its recommended allocation against its number of hours

submitted. There was no punitive aspect of the FCC's review of the time submissions.").  This

argument simply has no substance.

(F)     KS's cursory assertion that discovery from the FCC should be granted is the same argument
        this Court has repeatedly rejected.

        In a single sentence in Paragraph D. of its Objection, KS argues that "[a]t this juncture in

the litigation, it is apparent only further discovery will reveal the truth and purported justification

for the proposed fee allocations." (KS Objection at 9).  Perhaps the reason KS chose not to devote

attention to this "discovery is needed" argument is that, as noted above, it has previously sought

discovery from the FCC on multiple occasions, and at each turn, its efforts have been unsuccessful.

(Case 2:10-md-2187, Doc. 5294 (3/7/18 order denying KS motion for discovery from FCC); Case

2:12-md-2327, Doc. 6189 (7/13/18 order denying KS motion to compel discovery from FCC); Case

2:12-md-2327, Doc. 7225 (11/21/18 order denying KS motion to compel discovery from FCC);

Case 2:10-md-2187, Doc. 7043 (3/8/19 order denying KS motion to compel discovery from FCC)).

Indeed, KS made its repeated failed attempts to compel discovery from the FCC a ground for its

prior objection to the first round allocation, which again the Court considered and rejected in

overruling its prior objection. (Case 2:12-md-2326, Doc. 7924 (3/26/19 KS objection to Recommended Allocation) at 20-21 ("Kline & Specter has propounded discovery requests on the FCC for information related to the fee allocation process…. Kline & Specter followed each request with a Motion to Compel, individually denied in turn by this Court.")).  The mere fact that KS repeats the same failed argument yet again does not make it any less baseless here.

Much like KS here, a firm objecting to a common benefit allocation in *In re Genetically Modified Rice Litig.*, 2012 WL 6085141, *3 (E.D.Mo. 2012), moved to compel discovery of the individual billing records of all common benefit applicant firms.  The MDL court found that "an in-depth examination of individual time sheets is not necessary given the sworn declarations of plaintiffs' co-lead counsel regarding the procedures used in analyzing those time sheets." *Id.* at *3.  The MDL court there further noted that the objector provided no reason that the court may not rely on co-lead counsel's representations regarding the time sheets, and therefore denied the objector's motion to compel.  The Eighth Circuit affirmed the MDL Court's ruling denying discovery in *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir.2014), observing as follows:

> Although the court did not appoint an external auditor or permit discovery, *cf. In re Diet Drugs,* 582 F.3d at 533–34, discovery in connection with fee motions is rarely permitted, *In re Prudential Ins. Co. Am. Sales Practice Litig.,* 148 F.3d 283, 338 (3d Cir.1998), and a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

*See also*, *Martinez v. Schock Transfer and Warehouse Co., Inc.*, 789 F.2d 848, 849-50 (10th Cir.1986) (trial court properly exercised discretion to preclude discovery in dispute regarding attorney's fees); *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, 2012 WL 12987026 (E.D.La.2012) (denying motion to compel discovery related to time keeping records in attorney's fee dispute based on legal precedent that attorney's fees should not generate a separate litigation).  In

denying discovery in connection with an attorney's fee request, the court in *Hamprecht v. Hamprecht*,

2012 WL 12905607, *1 (M.D.Fla.2012), instructively observed as follows:

> As the Supreme Court has explained, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). When deciding a motion for attorney's fees, courts rarely reopen discovery, and evidentiary hearings are often unnecessary. See Fed.R.Civ.P. 54(d)(2) advisory committee's note; 2 Mary Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* § 25.01 (2007) ("[P]ost-judgment discovery into fee issues is rare."). A determination of a fee award by a district court "solely on the affidavits in the record" is "perfectly proper." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988).

As the Court noted in its first round Allocation Order, "[t]he procedural guidance to

claimants assured fairness by offering multiple opportunities for each claimant to refine their

claims, to object to preliminary conclusions, to advocate for changes, and to object to the

penultimate recommendation of the FCC. Finally, each firm was entitled to pursue their objections

by requesting a further evaluation from the External Review Specialist, Judge Stack, appointed by

me. Each firm was then afforded the opportunity to object to the External Review Specialist's final

recommendation by appealing to me." (Case 2:10-md-2187, Doc. 7367 at 3 (Memorandum Opinion

and Order (re Allocation Order)).  The facts and information considered by the FCC have been

provided and explained in detail to every firm that applied for common benefit, including KS here

– both in connection with the first round allocation and again in this second round.  Importantly, the

same process and criteria were applied to every firm that applied for common benefit consideration,

and, again, KS is the sole objector.  KS's cursory contention that discovery is necessary – the same

argument that has been rejected at least five times during this process – remains groundless.

## Conclusion

KS is merely attempting to rehash – or repurpose – arguments that have already been

considered and addressed, including arguments aimed at the 5% aggregate fee and expense award

that was the subject of its prior opposition in this Court and then its Fourth Circuit appeal, which was dismissed more than three years ago, with the Fourth Circuit denying KS's petition for rehearing.  KS's redundant objection to the second round allocation should be rejected.

      This 3rd day of August 2022.

                                                    Respectfully submitted,

                                                    THE COMMON BENEFIT FEE AND COST COMMITTEE

By:     ***/s/ Henry G. Garrard, III***
          Henry G. Garrard, III
          hgarrard@bbga.com
          Chairman of the Fee & Compensation Committee

BLASINGAME, BURCH, GARRARD
& ASHLEY, P.C.
P.O. Box 832
Athens, GA 30603
706-354-4000

                                    ***/s/ Renee Baggett***
                                    Renee Baggett
                                    RBaggett@awkolaw.com

AYLSTOCK, WITKIN, KREIS & OVERHOLTZ
17 East Main Street, Suite 200
Pensacola, FL 32502
850-202-1010

                                    ***/s/ Riley L. Burnett, Jr.***
                                    Riley L. Burnett, Jr.
                                    rburnett@rburnettlaw.com

BURNETT LAW FIRM
3737 Buffalo Speedway, Suite 1850
Houston, TX 77098
832-413-4410

                                    ***/s/ Thomas P. Cartmell***
                                    Thomas P. Cartmell
                                    tcartmell@wcllp.com

19

WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100

*/s/ Clayton A. Clark*
Clayton A. Clark
CClark@triallawfirm.com

CLARK, LOVE & HUTSON, G.P.
440 Louisiana Street, Suite 1600
Houston, TX 77002
713-757-1400

*/s/ Yvonne M. Flaherty*
Yvonne M. Flaherty
ymflaherty@locklaw.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
612-339-6900

*/s/ Carl N. Frankovitch*
Carl N. Frankovitch
carl@facslaw.com

FRANKOVITCH, ANETAKIS, SIMON,
DECAPIO & PEARL, LLP
337 Penco Road
Weirton, WV 26062
304-723-4400

*/s/ Joseph F. Rice*
Joseph F. Rice
jrice@motleyrice.com

MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
843-216-9000

*/s/ William H. McKee, Jr*
William H. McKee, Jr
bmckee@suddenlink.net

3041 Knotty Pine Dr.
Pensacola, FL 32505
304-546-2347

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 3, 2022, I electronically filed the **COMMON BENEFIT FEE AND COST COMMITTEE'S RESPONSE IN OPPOSITION TO OBJECTION TO THE COURT-APPOINTED EXTERNAL REVIEW SPECICIALIST'S RECOMMENDED ALLOCATION OF COMMON BENEFIT FEES AND EXPENSES BY KLINE & SPECTER, P.C.** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.


By:    */s/ Henry G. Garrard, III*

BLASINGAME, BURCH, GARRARD
& ASHLEY, P.C.
P.O. Box 832
Athens, GA 30603
706-354-4000

21