Exhibit 2

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

No. 19-1224L

---

IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION

---

KLINE & SPECTER, P.C.

Appellant

v.

COMMON BENEFIT FEE AND COST COMMITTEE,

Appellee.

---

APPELLANT'S RESPONSE TO THE MOTION TO DISMISS

---

On appeal from an Order of the United States District Court for the Southern District of
West Virginia, entered January 30, 2019, in Docket No. 2:12-md-02327

---

Shanin Specter, Esquire
Lee B. Balefsky, Esquire
Charles L. Becker, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000

Charles M. Love, III, Esquire
Floyd E. Boone, Esquire
BOWLES RICE, LLP
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100

*Counsel for Appellant*
*Kline & Specter, P.C.*

# I.    STATEMENT OF THE CASE

**A.    Over 100,000 women have filed lawsuits alleging injury caused by pelvic mesh devices.  Most of these cases have been managed by Judge Goodwin through a series of multidistrict litigation programs.**

Pelvic organ prolapse and stress urinary incontinence are common conditions associated with aging and childbirth.  Beginning in the mid-1990s, seven medical device manufacturers sold plastic mesh medical devices marketed for these conditions.  While the devices vary in some respects, they consistently involve plastic mesh that is permanently implanted into a woman's pelvis by way of insertion through the vagina and then through incisions in the vaginal wall.

Unfortunately, many of the women implanted with the plastic mesh devices developed significant and permanent injuries.  Their injuries include aggravated urinary symptoms, such as frequency, urge incontinence, urinary retention, and nocturia; injury to their pelvic organs from the adhesion and erosion of the mesh to the urethra, bladder, and exterior vaginal wall; tissue degradation and scarring on pelvic organs; deformation of the vagina; acute and chronic pelvic and leg pain; dyspareunia (chronic pain with intercourse); and sexual disfunction.  In most cases, the plastic mesh cannot be completely removed.  These conditions are usually irreversible.  By 2019, more than 100,000 women had filed suit in federal and state courts claiming that they were injured by the seven defendants' plastic mesh products.

In 2010, the Judicial Panel on Multidistrict Litigation transferred a group of cases filed by women concerning C.R. Bard's Avaulta device (for prolapse repair) to the U.S.

District Court in the Southern District of West Virginia.  *In re Avaulta Pelvic Support Sys. Prods. Liab.*, 746 F.Supp.2d 1362, MDL No. 2187 (J.P.M.L. 2010).  Over the next four years, the Judicial Panel on Multidistrict Litigation created six other multidistrict litigation programs and transferred cases to the U.S. District Court for the Southern District of West Virginia.  The Panel appointed Judge Joseph Goodwin to oversee all seven MDL programs.  The programs are:

1. *In re: C.R. Bard, Pelvic Repair System Products Liability Litigation*, No. 19-1225 (2:10-md-02187);

2. *In re: American Medical Systems, Inc., Pelvic Repair System Products Liability* Litigation, No. 19-1227 (2:12-md-02325);

3. *In re: Boston Scientific Corp., Pelvic Repair System Products Liability* Litigation, No. 19-1226 (2:12-md-02326);

4. *In re: Ethicon, Inc., Pelvic Repair System Products Liability* Litigation, No. 19-1224 (L) (2:12-md-02327);

5. *In re: Coloplast Corp., Pelvic Support Systems Products Liability* Litigation, No. 19-1229 (2:12-md-02387)

6. *In re: Cook Medical, Inc., Pelvic Repair System Products Liability Litigation*, No. 19-1230 (2:13-md-02440);

7. *In re: Neomedic Pelvic Repair System Products Liability Litigation*, No. 19-1228 (2:14-md-02511)

**B.   Judge Goodwin represented that work spent on state-court matters would be eligible for common benefit fee compensation.**

In April 2012, Judge Goodwin entered pre-trial Order No. 4 that created a Plaintiffs' Steering Committee intended to coordinate the litigation on the plaintiffs' side of the case (the "Steering Committee").  *See, e.g., In re Ethicon, Inc., Pelvic Repair Sys.*

2

*Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S. D. W. Va. April 17, 2012); ECF
No. 120 (attached as Exhibit "A").[1]  Judge Goodwin appointed attorneys from 61 law
firms representing plaintiffs across the country, including Mr. Lee Balefsky of Appellant
Kline & Specter, P.C.  The Steering Committee was charged with developing legal
strategies, complex discovery, and case development on the plaintiffs' behalf.

Although pelvic mesh litigation was just getting started, the Steering Committee
created a framework for paying fees based on case resolutions to attorneys who
performed common-benefit work and for reimbursing expenses incurred for the
common benefit.  In October 2012, Judge Goodwin entered PTO No. 18 to
memorialize the Steering Committee's preliminary agreed-upon framework.  *See, e.g., In
re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S. D.
W. Va. Oct. 4, 2012); ECF No. 282 (attached as Exhibit "B").  The Order provided
that any member of the Steering Committee was deemed to be a "Participating
Counsel."   In turn, the Order provided that any Participating Counsel who
subsequently sought to be considered for common-benefit compensation was deemed
to have agreed that the Court had "final, nonappealable authority" concerning the
award and allocation of common-benefit fees.  The Order further provided that such
Participating Counsel waived their right to appeal any decision concerning common-
benefit fees.  The Order stated in relevant part as follows:

---

[1] The Court entered identical Orders in all seven multidistrict litigation programs.

For [Steering Committee] counsel appointed by the court or acting under the direction of the leadership of the [Steering Committee], the recovery of common benefit time and cost reimbursements will be allowed and is essential. This will be for "participating counsel" as defined herein. Furthermore, participating counsel shall only be eligible to receive common benefit attorneys' fees and cost reimbursement if the time expended, costs incurred and activity in question were (a) for the common benefit, (b) appropriately authorized (as defined herein specifically in section 3), (c) timely submitted, and (d) approved by this court. This Order sets forth the guidelines regarding the submission and compensability of common benefit time and expenses.

*     *     *     *

"Participating Counsel" are counsel who subsequently desire to be considered for common benefit compensation and as a condition thereof agree to the terms and conditions herein and acknowledge that the court will have final, non-appealable authority regarding the award of fees, the allocation of those fees and awards for cost reimbursements in this matter. Participating Counsel have (or will have) agreed to and therefore will be bound by the court's determination on common benefit attorney fee awards, attorney fee allocations, and expense awards, and the Participating Counsel knowingly and expressly waive any right to appeal those decisions or the ability to assert the lack of enforceability of this Agreed Order or to otherwise challenge its adequacy. Nothing in this Agreed Order shall be construed to prohibit an agreement between the [Steering Committee] and state court litigants who may later seek a common benefit allocation.

*Id.*

Crucially, for Kline & Specter, this Order made clear that time spent on state-court matters "will be compensable time" for common-benefit purposes. The Order was explicit on this point:

D.    Common Benefit Work:

1. Examples of authorized and unauthorized common benefit work include but are not limited to:

*     *     *     *

k. Bellwether Trials. While the work-up of individual cases is not considered common benefit, in the event that a case is selected as part of an approved early preference or bellwether trial process in the MDL or participating state court proceedings, the time and expenses in trying the case (including work performed as part of the approved bellwether process) may be considered for common benefit to the extent it complies with other provisions of this Agreed Order or Participation Agreement.

l. Pre-Litigation Hours Materially Advanced. The court will have the authority and discretion to permit the accounting of prelitigation hours materially advanced for common benefit.

m. State Court and Bard MDL common benefit hours. The court contemplates that work done for the common benefit through the Bard MDL, in federal litigation prior to the formation of this MDL or through state court proceedings in New Jersey, Delaware, Massachusetts, Minnesota, West Virginia and elsewhere will be compensable time, and can be submitted so long as it has been approved and agreed to by the co-lead of the applicable MDL and/or the Coordinating Co-lead counsel.

*Id.*

In August 2013, Judge Goodwin entered PTO No. 62 that established a fund to compensate and reimburse attorneys for services performed and expenses incurred for common benefit. *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S.D. W. Va. Oct. 4, 2012), ECF No. 747 (attached as Exhibit "C"). The Order provided that Participating Counsel were entitled to receive work-product created by other Participating Counsel. In exchange, the Order imposed a 5% assessment on any recovery realized by any plaintiff represented by a Participating Counsel. This amount would be withheld from any individual plaintiff's recovery and directed into a fund for payment of attorneys' fees and approved common-benefit and MDL expenses. *Id.*

Significantly, the August 2013 Order made clear that the counsel eligible to make application for reimbursement from the common-benefit fee fund included not only members of the Steering Committee, but also attorneys performing common-benefit work in connection with state-court actions.  The Order specifically contemplated that such time would be eligible for compensation based on the experience, talent and contribution of the counsel, along with other such facts as the time and effort expended and the value of the work performed.

    a.  From time to time the Executive Committee may make application for disbursements for the MDL 2327 Fund for common benefit work and expenses. Upon a proper showing and Order of the Court, payments may be made from the MDL 2327 Fund to attorneys who have provided services or incurred expenses for the joint and common benefit of plaintiffs and claimants whose claims have been treated by this Court as a part of these proceedings in addition to their own client or clients. Such "Eligible Counsel" include:

        i.    Plaintiffs' Liaison Counsel and members of the PSC;

        ii.    Attorneys who have signed the MDL 2327 Attorney Participation Agreement; and

        iii.    Other attorneys performing similar responsibilities in state court actions, provided that all cases in which any putative common-benefit attorneys have a financial interest are subject to this Agreed Order.

    b.  In apportioning any fee award to Eligible Counsel, appropriate consideration will be given to the experience, talent, and contribution made by Eligible Counsel, and to the time and effort expended by each as well as to the type, necessity, and value of the particular legal services rendered.

*Id.*

On January 15, 2016, Judge Goodwin entered PTO No. 211 an "Order Establishing Criteria for Applications to MDL Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit and Appointment of Common Benefit Fee and Cost Committee." *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S. D. W. Va. Oct. 4, 2012); ECF No. 1845 (attached as Exhibit "D"). This Order established the process for reviewing and managing common benefit fees and expenses. The Order appointed a Fee and Cost Committee, a nine-person committee responsible for recommending Judge Goodwin the allocation of awards of attorneys' fees and costs to be made from the common benefit fee fund. *Id.*

At no point to this date was there any suggestion that state-court work would not be eligible for compensation from the common-benefit fee fund. The leadership of the Steering Committee made clear that state-court time was eligible for compensation. This is reflected in a February 11, 2016 email from Kline & Specter attorney and Steering Committee member Lee Balefsky partner to the chair of the Fee and Cost Committee, Henry G. Garrard, III. Mr. Balefsky confirmed Mr. Garrard's agreement that state time would be considered for compensation in the common-benefit fund process:

> Henry, thank you for hosting the meeting yesterday in Atlanta. One of our major concerns is the compensation for state court litigation common benefit work. This will confirm that you agreed that such work will be compensated and included in the process. We look forward to working with the committee.

*See* Email dated February 11, 2016 (attached as Exhibit "E"). No reply disputing this arrangement was sent or received.

The eligibility of state court time for common-benefit compensation was underscored in PTO 262 entered by Judge Goodwin on June 23, 2017. *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S. D. W. Va. Oct. 4, 2012); ECF No. 4044 (attached as Exhibit "F"). This Order established the procedure and provides further guidance for the Fee and Cost Committee's review of time and expenses submitted by counsel seeking common benefit reimbursement. The Order also specifically recognized that state court work would be considered for compensation:

> Common benefit work performed in state court litigation - whether the proceedings are consolidated or not - should be considered to the extent it contributed to the outcome of the litigation and benefitted the MDL. The Court recognizes, particularly to the extent there are agreements between state court attorneys and MDL leadership, that state court attorneys may make an application for common benefit fees and expenses to be fully considered by the FCC. In order for an attorney's work in state court litigation to be considered for payment from the Common Benefit Fund, settlements from the requesting attorneys must include the five percent assessment.

*Id.* at p. 5.

**C.    Kline & Specter contributed significantly to mesh litigation, including achieving multiple verdicts in state-court trials.**

Kline & Specter represents approximately 3,000 individuals who have filed lawsuits seeking recovery for personal injuries caused by pelvic mesh implants. Many

of those individuals filed lawsuits coordinated in the instant MDL proceedings. Other individuals filed suit in various state courts around the country. As noted above, Kline & Specter's Lee Balefsky is a member of the Plaintiffs' Steering Committee. As a result, Kline & Specter is a Participating Counsel and is subject to the 5% withholding.

In representing its clients, Kline & Specter has invested thousands of hours of time and spent significant sums to support plaintiffs in pelvic mesh litigation. Relying by the representation that state court time would be compensable, Kline & Specter threw itself into litigating cases in state court and achieved considerable success there. Beginning in 2015, Kline & Specter has tried multiple pelvic mesh cases in the Philadelphia County Court of Common Pleas. These trials have produced verdicts in the plaintiffs' favor of $12.5 million, $13.5 million, $20 million, $2.16 million, $57.1 million, and $41 million—a total of $146.26 million across six verdicts.[2] Beyond the

---

[2]    *Hammons v. Ethicon, Inc.* resulted in a plaintiffs' verdict in December 2015. The jury awarded $5.5 million in compensatory damages and $7 million in punitive damages. This verdict was affirmed by the Pennsylvania Superior Court. On April 10, 2019, the Pennsylvania Supreme Court rejected all appellate issues except as to personal jurisdiction.

   *Carlino v. Ethicon, Inc.* resulted in a plaintiffs' verdict in February 2016. The jury awarded $3.5 million in compensatory damages and $10 million in punitive damages. The Pennsylvania Superior Court affirmed this verdict on April 11, 2019.

   *Engleman v. Ethicon, Inc.* resulted in a plaintiffs' verdict in April 2017. The jury awarded $2.5 million in compensatory damages and $17.5 million in punitive damages. The case is on appeal.

Continued on following page

sheer enormity of the verdicts, Kline & Specter's success in Philadelphia County has been essential to mesh litigation by developing successful trial strategies, bolstering trial packages, bringing about key rulings, weakening Ethicon's ability to defend these cases, and driving Ethicon to settle cases. Kline & Specter and its clients have contributed many millions of dollars to the common benefit fee fund.

**D.  The Fee and Cost Committee went back on its word concerning the compensability of state-court time.**

Years of litigation proceeded under the assumption that state-time would be eligible for common-benefit compensation. As noted above, Kline & Specter invested thousands of hours developing and successfully trying multiple cases. Unfortunately, in February 2018, the Fee and Cost Committee and its "external review specialist," a former judge named Daniel J. Stack, issued a supposed "rule" stating that "[o]nce a favorable result was reached with regard to a particular TVM product, no further state

---

*Beltz v. Ethicon, Inc.* resulted in a plaintiffs' verdict in June 2017. The jury awarded $2.16 million in compensatory damages. This verdict has been affirmed in the Pennsylvania appellate courts

*Ebaugh v. Ethicon, Inc.* resulted in a plaintiff's verdict in September 2017. The jury awarded $7.1 million in compensatory damages and $50 million in punitive damages. The case is on appeal.

*Emmet v. Ethicon, Inc.* resulted in a plaintiffs' verdict in January 2019. The jury awarded $16 million in compensatory damages and $25 million in punitive damages. The case is on appeal.

court time was considered by the Fee and Cost Committee as being for the common benefit." *See* Letter Mr. Stack dated February 27, 2018 (attached as Exhibit "G").

This was not the deal upon which the litigation had been grounded. It was a material alteration of that deal. Yet in their preliminary recommendations concerning common-benefit time, the Fee and Cost Committee used this "rule" as an excuse for not recognizing a substantial amount of Kline & Specter's state court time. The Committee reasoned that "[i]n the Philadelphia Mass Tort Program in Pennsylvania State Court, the firm assisted in obtaining several successful verdicts against Ethicon, although most of those verdicts came on products where Plaintiffs' verdicts were already obtained either in the MDL or in prior state courts." *See* Exhibit "A" to the September 13, 2018, Transvaginal Mesh MDL Common Benefit Fee and Cost Committee Preliminary Written Recommendation (attached as Exhibit "H"). This "rule" eliminated thousands of hours of important work performed by Kline & Specter in direct contravention to previous court orders, assurances by the Fee and Cost Committee, and established mass tort strategy where litigation on multiple fronts is encouraged. *See In re Vioxx*, 802 F. Supp. 2d 740, 764, 769, 771, 774 (E.D. La. 2011). (emphasizing the importance of state court discovery and trials in that analogous litigation, the value of repeated trials on a single product, and the value of close consultation with state court judges on common benefit allocation). This about-face upended a basic premise upon which Kline & Specter became actively involved in pelvic mesh litigation.

**E. Judge Goodwin orders a 5% common benefit fee even though no global settlement was reached and the results for plaintiffs have generally been poor.**

As of this writing, many pelvic mesh cases before Judge Goodwin have settled—but by no means all of them. Thousands of cases remain unresolved, both in the MDL and in state-courts around the country. Trials remain a real possibility for plaintiffs who have completed discovery through MDL "waves." Further, those settlements that have occurred are wholly inadequate given the per case settlement average of approximately $40,000, the seriousness and permanence of the injuries suffered by the plaintiffs, and the average trial award of over $10 million.

Notwithstanding the lack of global settlement, on November 12, 2018, the Fee and Cost Committee filed a Petition for an Award of Common Benefit Attorneys' Fees and Expenses. It sought a final order that 5% of all individual awards be held back to form a common-benefit fund that would be allocated to counsel who performed common benefit work for fees and reimbursement of expenses. *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S. D. W. Va. Oct. 4, 2012); ECF No. 7200 (attached as Exhibit "I"). In effect, the Fee and Cost Committee sought distribution of all money that had been received by the common benefit fee fund (approximately $366 million and growing) even though this large amount exists simply because of the large number of cases filed.

On November 26, 2018, Kline & Specter objected to the recommended hold back of 5% as too high and unreasonably generous given the relatively poor outcome

12

of this litigation for individual plaintiffs. *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S. D. W. Va. Oct. 4, 2012); ECF No. 7242, (attached as Exhibit "J"). Kline & Specter noted that the defendants had paid approximately $7.25 billion in settlements and judgments with respect to tens of thousands of cases; but the Steering Committee had failed to generate a global settlement and many cases remained pending in the MDL and courts throughout the country. Kline & Specter noted that the average settlement for pelvic mesh cases was about $40,000 even though trial results showed that the cases had significantly greater value—an average exceeding $24 million. As noted above, Kline & Specter had tried pelvic mesh cases in the Philadelphia County Court of Common Pleas to results of $12.5 million, $13.5 million, $20 million, $2.5 million, $57.1 million, and $41 million— a total of $146.26 million. Kline & Specter also highlighted the failure of the Fee and Cost Committee to ground their request in a valid methodology, and the Committee's refusal to recognized state-court time.

On January 30, 2019, Judge Goodwin granted the Fee and Cost Committee petition and ordered that 5% be held back from every pelvic mesh plaintiffs' recovery, creating a common-benefit fund of $366,102,875.06 at this juncture. That fund is expected to grow as more cases resolve and 5% would be held back from those recoveries as well. At the current rate, the fund is predicted to exceed $550 million before all cases resolve. *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S. D. W. Va. Oct. 4, 2012); ECF No. 7519, (attached as Exhibit

"K"). This Order was cross-filed in each of the 7 MDL dockets concerning pelvic mesh.[3]

On February 28, 2019, Kline & Specter appealed the order in each of the MDL dockets. This Court *sua sponte* consolidated cases under the above-referenced lead docket. On April 2, 2019, the Fee and Cost Committee moved to dismiss the appeals on the ground that Kline & Specter had waived its right to an appeal. This response ensues.

---

[3] The orders and dockets are:

    1.      In C.R. Bard, Pelvic Repair System Products Liability Litigation, Docket No. 2:1O-md-02187, Pretrial Order #298 and Memorandum Opinion entered January 30, 2019, Docket Entry No. 6986 (granting the Common Benefit Fee and Cost Committee's Petition for an Award of Common Benefit Attorneys' Fees and Expenses.

    2.      In American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation, Docket No. 2:12-md-02325, Pretrial Order #273 and Memorandum Opinion entered January 30, 2019, Docket Entry No. 7122 (same).

    3.      In Boston Scientific, Corp., Pelvic Repair System Products Liability Litigation, Docket No. 2:12-md-02326, Pretrial Order #201 and Memorandum Opinion, entered January 30, 2019, Docket Entry No. 7758 (same).

    4.      In Ethicon, Inc., Pelvic Repair System Products Liability Litigation, Docket No. 2:12-md-02327, Pretrial Order #327 and Memorandum Opinion, entered January 30, 2019, Docket Entry No. 7519 (same).

    5.      In Coloplast, Pelvic Repair System Products Liability Litigation, Docket No. 2:1O-md-02187, Pretrial Order #148 and Memorandum Opinion, entered January 30, 2019, Docket Entry No. 2337 (same).

    6.      In Cook Medical, Pelvic Repair System Products Liability Litigation, Docket No. 2:13-md-02440, Pretrial Order #86 and Memorandum Opinion, entered January 30, 2019, Docket Entry No. 691 (same).

    7.      In Neomedic, Pelvic Repair System Products Liability Litigation, Docket No. 2:1O-md-02187, Pretrial Order #39 and Memorandum Opinion, entered January 30, 2019, Docket Entry No. 198 (same).

## II.    ARGUMENT

In its motion to dismiss, the Fee and Cost Committee highlights the portion of PTO No. 18 stating that Participating Counsel such as Kline & Specter have waived any right to appeal Judge Goodwin's determinations concerning the amount and allocation of common benefit fees and that Judge Goodwin is the final decision-maker with respect to those issues. This language should not be enforced for multiple reasons.

First, the persons financially impacted by the 5% order had no participation in forming the order—the plaintiffs themselves. The money being directed into the common benefit fee fund comes off the top of any judgment or settlement. Yet no client participated in the development of this order. Indeed, over 2,800 of Kline & Specter's clients were not even represented by counsel when Pre-Trial Order No. 18 was entered on October 4, 2012. The application of an Order barring appeal to persons who were not represented, had not filed suit, and whose cases were not part of the MDL when the Order was entered violates the due process rights of "reasonable notice and opportunity to be heard." *See Boddie v. Connecticut*, 401 U.S. 371, 378 (1971). An agreement not to appeal cannot apply to people who were not parties or signatories when the agreement was made. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). ((due process requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.").

Appellee cites numerous cases where a party to litigation has waived a right to appeal. None of them remotely touch on the circumstances present here, where an order entered at the outset of litigation is being invoked to deprive appellate and substantive rights of persons were not even litigants when the order was entered—who had no part in the discussions with the Steering Committee or the order itself. Appellee focuses initially on *Poliquin v. Garden Way, Inc.*, 989 F.2d 527 (1st Cir.1993), where a plaintiff agreed to a protective order concerning the confidentiality of documents. After the case resolved, the plaintiff filed a motion to determine whether he could publicize certain items. The defendant opposed the motion on substantive grounds and the district court denied the motion. On appeal, the defendant argued that the plaintiff had agreed to be "bound" by the underlying order and settlement, and hence waived his right to an appeal. The First Circuit rejected this argument because it was being raised for the first time on appeal. In reaching the merits, the First Circuit also noted that "appellate courts have discretion to resolve issues waived or abandoned at trial." *Id.* at 531. The facts of *Poliquin* are removed from this case. If *Poliquin* stands for anything, it is that this Court has the power and discretion to hear Kline & Specter's appeal on the merits.

Appellee also focuses on *Brown v. Gillette Co.*, 723 F.2d 192 (1st Cir. 1983), where the parties had reached a settlement agreement under which the district court was granted final and binding authority to award certain damages. The parties also agreed to waive any and all right of appeal related to the court's decision. The defendant was

unhappy with the district court's decision and appealed. The First Circuit dismissed the appeal on the ground that the defendant was bound by the waiver. The Court explained that "those who give up the advantage of a lawsuit in return for obligations contained in a negotiated decree, rely upon and have a right to expect a fairly literal interpretation of the bargain that was struck and approved by the court." *Id.* at 192-93. Here, the plaintiffs did not participate in the discussions that resulted in PTO No. 18. They did not agree to issuance of the Order. Thousands of Kline & Specter's clients were not even represented and had not filed suit when that Order was issued. Those people did not "give up" their procedural and substantive rights in exchange for a negotiated settlement. Yet Appellee proposes that those rights were denied from the outset. The facts in *Brown* highlight the equitable and legal distinctions that render this case entirely different. The result in *Brown* was correct. By contrast, Appellee's argument is unconscionable and wrong.

Appellee also focuses on *In re Lybarger*, 793 F.2d 136 (6th Cir. 1986). This was an age discrimination action where the parties entered into a settlement, memorialized in a consent decree, providing that the district court's decision concerning attorneys' fees would be final and not appealable. The plaintiff filed a supplemental motion for payment of attorneys' fee, which the district court denied. The Sixth Circuit dismissed the plaintiff's resulting appeal on the basis that the plaintiff had waived her right to appeal and assumed the risk of an unreasonable decision. *Id.* at 138-39. As with *Brown*, the contrasting facts of *Lybarger* underscore the unfairness inherent in depriving

plaintiffs of the right to challenge a judicial decision impacting (and decreasing) their monetary recoveries on the basis of an order entered at the outset of the litigation, without notice or an opportunity to be heard.

Taken as a whole, the numerous cases cited by Appellee involved multiple different issues. They involve settlements agreements, contract disputes, stipulations, and criminal plea agreements—all involving a party who made a knowing and voluntary decision to reach a binding agreement after litigating their substantive rights. *None* of them involve the scenario presented here. At best, those cases involve a party directly involved in the litigation who made a knowing and voluntary choice to waive an appellate right. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *See Johnson v. Zerbst*, 304 U.S 458, 464 (1938). That simply was not the case here—not for the thousands of Kline & Specter clients who came to be represented and filed suit after the October 2012 Order was entered. The contrasting facts of Appellee's cases only underscore the validity of this appeal.

At bottom, the "waiver" language relied upon by Appellee represents an unconscionable and unprecedented effort to abrogate the authority and jurisdiction of this Court and the Supreme Court. It is especially wrong to abrogate the right of appeal in the mass tort context, which is an area of litigation fraught with conflict among many parties and their counsel and with the potential for abuse. See Elizabeth Chamblee Burch and Margaret Williams, *Repeat Players in Multidistrict Litigation: The Social Network*, 102 Cornell L. Rev. 1445 (Sept. 2017) (discussing the lack of rules and oversight that

allow mass tort settlements to be an area ripe for self-enriching behavior by insider law firms). These systematic problems necessitate the corrective hand of our appellate system—at least the *opportunity* for the appellate system to consider correction. For lead counsel to even suggest abrogation of a right of appeal in an early pre-trial order presages a serious potential for abuse licensed and emboldened by the knowledge that no appeal may be heard—not by this Court, or any Court, no matter how serious the breach of law or fiduciary duty. The motion should be denied on this ground alone.

Second, Kline & Specter would not have acceded to the language in PTO No. 18 if not for the representation that time spent litigating state-court cases would be eligible for common-benefit fees. Kline & Specter was told that state-court time would be compensable both by the Court and the Fee and Cost Committee. The firm relied on those representations when it did not object to the October 2012 Order. This was a contractual understanding. A basic principle of contract law is that mutual assent is required to effectuate a modification to an agreement. *See Keco Industries, Inc. v. ACF Industries, Inc.*, 316 F.2d. 513, 516 (4th Cir. 1963). There has been no mutual assent here. The contract has been violated.

As noted above, Judge Goodwin himself stated in PTO No. 18 that state court work would be compensated:

> The court contemplates that work done for the common benefit through the Bard MDL, in federal litigation prior to the formation of this MDL or through state court proceedings in New Jersey, Delaware, Massachusetts, Minnesota, West Virginia and elsewhere will be compensable time, and can be submitted so long as it has been

> approved and agreed to by the co-lead of the applicable MDL and/or
> the Coordinating Co-lead counsel.

*See* PTO No. 18 at pp. 11-12.  Judge Goodwin stated that state-court time would

be eligible for compensation in subsequent orders as well.  Mr. Garrard, the chair

of the Fee and Cost Committee, also committed that state-court time would be

eligible for compensation.  The message that state time would be compensated was

clear and consistent.  This changed in February 2018, when the Fee and Cost

Committee made an initial recommendation that excluded Kline and Specter state-court

time.  Despite multiple assurances including from Judge Goodwin, the Fee and Cost

Committee refused to consider thousands of hours expended by Kline & Specter

in state-court common benefit time.  It refused even though state-court trials have

been essential to the overall success of pelvic mesh litigation as they resulted in

substantial plaintiffs' verdicts and created comprehensive trial packages for the

benefit of all pelvic mesh plaintiffs.  It refused even as Kline & Specter's state-court

awards will be assessed a 5% fee, adding substantially to the common benefit fee

fund, without recognition of the common benefit those verdicts have provided.

This is violative of the rights of Kline & Specter's clients.

Finally, the waiver language should be disregarded because of the conflict it

creates between attorneys and clients.  The clients whose recoveries are being

diminished by an excessive common benefit fee should have the loyalty of their

counsel in pursuing that issue.  PTO No. 18 invites counsel to disregard their

20

clients' interests when they have a selfish interest of pursuing a common benefit fee. This is an unacceptable conflict. It should not have been created at the outset of the litigation. It should not be honored now.

### III.  CONCLUSION

The motion should be denied.

Respectfully submitted,

By:  ____/s/ Charles L. Becker_____
Shanin Specter, Esquire
Lee B. Balefsky, Esquire
Charles L. Becker, Esquire
**Kline & Specter, P.C.**
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
(215) 772-1000

Charles M. Love, III, Esquire
Floyd E. Boone, Esquire
**Bowles Rice, LLP**
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100.

Dated:  April 12, 2019

## CERTIFICATE OF SERVICE

On this day, I served the foregoing brief on the following counsel through the

Court's electronic filing system:

Benjamin L. Bailey, Esquire
Raymond S. Franks II, Esquire
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
*Counsel for the Appellee Fee and Cost Committee*


         /s/ Charles L. Becker
Charles L. Becker, Esq.


Dated:  April 12, 2019