Exhibit 5

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

No. 19-1224L

---

IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION

---

KLINE & SPECTER, P.C.,

Appellant,

v.

COMMON BENEFIT FEE AND COST COMMITTEE,

Appellee.

---

## PETITION FOR PANEL REHEARING
## OR REHEARING EN BANC

---

On appeal from an Order of the United States District Court for the Southern District of West Virginia, entered January 30, 2019, in Docket No. 2:12-md-02327

| | |
|---|---|
| Shanin Specter, Esquire | Charles M. Love, III, Esquire |
| Lee B. Balefsky, Esquire | Floyd E. Boone, Esquire |
| Charles L. Becker, Esquire | **Bowles Rice, LLP** |
| **Kline & Specter, P.C.** | 600 Quarrier Street |
| 1525 Locust Street | Charleston, WV 25301 |
| Philadelphia, PA 19102 | (304) 347-1100 |
| (215) 772-1000 | |
| | *Counsel for Appellant* |
| | *Kline & Specter, P.C.* |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

I.       INTRODUCTION .................................................................................1

II.     STATEMENT OF THE CASE.............................................................1

          A.      Many women have filed lawsuits alleging injury caused by pelvic mesh devices, prompting the creation of MDL proceedings ...................1

          B.      At the outset of the MDL litigation, Judge Goodwin required certain counsel to waive appellate rights concerning their common-benefit fees. ........................................................................2

          C.      Judge Goodwin ordered an aggregate common-benefit fee funded by a 5% assessment on each plaintiff's individual recovery. Kline & Specter challenged the award as excessive ...............................................6

II.     REASONS THE PETITION SHOULD BE GRANTED ...............................8

III.    CONCLUSION.......................................................................................11

COMBINED CERTIFICATIONS

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

**CASES:**

*Boddie v. Connecticut*,
401 U.S. 371 (1971) .................................................................................................. 10

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) .................................................................................................. 10

**MISCELLANEOUS**:

Elizabeth Chamblee Burch and Margaret Williams, *Repeat Players in Multidistrict Litigation: The Social Network*, 102 Cornell L. Rev. 1445 (Sept. 2017) ............................ 10

## I.   INTRODUCTION

This appeal arises from multi-district litigation coordinating claims by tens of thousands of women who suffered injury when they were implanted with pelvic-mesh medical devices. The MDL judge entered an order imposing a 5% holdback on the recovery of individual plaintiffs to form an aggregate common-benefit fee fund now containing more than $366 million. Kline & Specter appealed the aggregate award as unreasonably generous given the poor outcome of the litigation for individual plaintiffs. This Court dismissed the appeal on waiver grounds.

In counsel's judgment, the Panel dismissed the appeal under the misapprehension that Kline & Specter had appealed an order determining common benefit fees awardable to Kline & Specter itself. As the Panel's Order provided: "We have reviewed the parties' submissions and agree that K&S knowingly and voluntarily agreed to be bound by the district court's attorneys' fees and expenses determinations and, thus, it has waived its right to appeal its attorneys' fees and expenses award." *See* Order dated June 14, 2019 (attached as Exhibit "A"). Yet Kline & Specter has not appealed its individual award. Indeed, the trial court has not even issued individual awards at this time. The issue is not ripe. The undersigned respectfully request that panel rehearing be granted given the mistaken basis for dismissal.

Shockingly, the Panel's Order also abrogates the appellate rights of thousands of pelvic-mesh plaintiffs concerning a district court order that directly impacts their financial recovery. It does so in reliance on another district court order that at most

compels waiver of the appellate rights of certain law firms. That order does not even mention the pelvic-mesh plaintiffs, let alone bind them to a waiver of appellate rights. This abrogation of appellate rights implicates basic due process principles It will promote abuse in mass tort litigation. Accordingly, the undersigned express a belief, based on their reasoned professional judgment, that the appealability of the underlying order involves a question of exceptional importance that further justifies panel rehearing and/or rehearing *en banc*. These points are further set forth below.

## II. STATEMENT OF THE CASE

### A. Many women have filed lawsuits alleging injury caused by pelvic mesh devices, prompting the creation of MDL proceedings.

Pelvic organ prolapse and stress urinary incontinence are common conditions associated with aging and childbirth. Beginning in the mid-1990s, seven medical device manufacturers sold medical devices for these conditions. The devices consist of plastic mesh that is implanted into a woman's pelvis by insertion through the vagina and incisions in the vaginal wall. Unfortunately, the plastic mesh caused numerous permanent injuries, including injury to pelvic organs, tissue degradation and scarring, deformation of the vagina, aggravated urinary symptoms, pelvic pain and leg pain; dyspareunia (pain with intercourse), and sexual dysfunction. In most cases, the plastic mesh cannot be completely removed. Over 100,000 women have filed suit in federal and state courts claiming injury from pelvic mesh.

In 2010, the Judicial Panel on Multidistrict Litigation transferred pelvic mesh cases to the U.S. District Court for the Southern District of West Virginia. *In re Avaulta Pelvic Support Sys. Prods. Liab.*, 746 F.Supp.2d 1362, MDL No. 2187 (J.P.M.L. 2010). The Panel created six other programs and transferred additional cases to the same court. The Panel appointed Judge Joseph Goodwin to oversee all seven MDL programs.

**B.     At the outset of the MDL litigation, Judge Goodwin required certain counsel to waive appellate rights concerning their common-benefit fees.**

In April 2012, Judge Goodwin entered Pre-Trial Order No. 4 to create a Plaintiffs' Steering Committee intended to coordinate the litigation (the "Steering Committee"). *See In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S.D. W. Va. April 17, 2012) (attached as Exhibit "B").[1] Judge Goodwin appointed attorneys from numerous law firms representing plaintiffs across the country, including Lee Balefsky of Kline & Specter, P.C. The Steering Committee was charged with developing legal strategies, complex discovery, and case development on the plaintiffs' behalf.

Although the litigation had barely begun, the Steering Committee undertook to create a framework based on anticipated case resolutions for paying common-benefit fees to attorneys who performed common-benefit work. In October 2012, Judge Goodwin entered Pre-Trial Order No. 18 to memorialize the Steering Committee's

---

[1] The Court entered identical Orders in all seven multidistrict litigation programs.

3

framework. *See In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S.D. W. Va. Oct. 4, 2012) (attached as Exhibit "C"). This Order took the unusual step of including language that waived certain appellate rights regarding future decisions of the trial court. It did so by deeming any member of the Steering Committee as a "Participating Counsel." *Id.* In turn, any Participating Counsel who sought common-benefit compensation was deemed to have agreed that the Court had "final, nonappealable authority" concerning common-benefit fees. *Id.* Participating Counsel specifically waived their right to appeal any decision concerning the award of common-benefit fees. *Id.* The key language was as follows:

> "Participating Counsel" are counsel who subsequently desire to be considered for common benefit compensation and as a condition thereof agree to the terms and conditions herein and acknowledge that the court will have final, non-appealable authority regarding the award of fees, the allocation of those fees and awards for cost reimbursements in this matter. Participating Counsel have (or will have) agreed to and therefore will be bound by the court's determination on common benefit attorney fee awards, attorney fee allocations, and expense awards, and the Participating Counsel knowingly and expressly waive any right to appeal those decisions or the ability to assert the lack of enforceability of this Agreed Order or to otherwise challenge its adequacy. Nothing in this Agreed Order shall be construed to prohibit an agreement between the [Steering Committee] and state court litigants who may later seek a common benefit allocation.

*Id.* Of note, PTO 18 also stated that time spent on state-court matters would be compensable for common-benefit purposes: "The court contemplates that work done for the common benefit . . . through state court proceedings in New Jersey, Delaware, Massachusetts, Minnesota, West Virginia and elsewhere will be compensable time, and

4

can be submitted so long as it has been approved and agreed to by the co-lead of the applicable MDL and/or the Coordinating Co-lead counsel." *Id.*

In August 2013, Judge Goodwin entered PTO 62, which created a fund that eventually would be used to compensate attorneys for services performed for the common benefit. *See In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S.D. W. Va. Aug. 26, 2013) (attached as Exhibit "D"). To create a revenue stream for the fund, the Order imposed a 5% assessment on any recovery realized by any plaintiff represented by a Participating Counsel. This amount would be withheld from individual plaintiff recoveries and directed into the fund. Judge Goodwin would later determine the actual amount of the aggregate common-benefit fee. That amount might be less than the 5% holdback, but the money would be there in the first instance. *Id.*

Kline & Specter has been involved in pelvic mesh litigation since the outset. It represents approximately 3,000 women who have filed lawsuits seeking recovery for injuries caused by pelvic mesh implants. Many filed lawsuits coordinated in the instant MDL proceedings. Others filed in state courts. As noted above, Kline & Specter is a Participating Counsel because Lee Balefsky is a member of the Steering Committee. Many of Kline & Specter's clients have resolved their cases and thereby contributed millions to the common benefit fund pursuant to PTO 62.

Unfortunately, the Steering Committee's leadership was unable to achieve a global settlement of pelvic mesh cases. Because they were unable to achieve a global

5

settlement, thousands of cases remain unresolved in state and federal courts. Trials remain a real possibility for plaintiffs who have completed discovery through MDL "waves." Further, the paltry settlements are wholly inadequate given the per-case settlement average of approximately $40,000 and the seriousness and permanence of the injuries suffered by the plaintiffs. For perspective, consider that 35 mesh cases have been tried to plaintiffs' verdicts resulting in $545.6 million—an average plaintiffs' verdict of $15.6 million.

**C.    Judge Goodwin ordered an aggregate common-benefit fee funded by a 5% assessment on each plaintiff's individual recovery. Kline & Specter challenged the award as excessive.**

In January 2016, Judge Goodwin created a nine-person Fee and Cost Committee responsible for recommending the allocation of awards of attorneys' fees and costs to be made from the common benefit fee fund. *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2:10-md-02327 (S.D. W. Va. Jan. 15, 2016) (attached as Exhibit "E"). Despite the lack of global settlement and the poor outcome in individual settlements, in November 2018, the Fee and Cost Committee filed a Petition for an Award of Common Benefit Attorneys' Fees and Expenses (attached as Exhibit "F"). The petition sought an aggregate common-benefit fee equaling 5% of all individual awards. The Committee also sought distribution of all money that had been received by the common benefit fee fund.

Kline & Specter filed an objection to the recommended aggregate award based on a 5% holdback (attached as Exhibit "G"). This objection did <u>not</u> seek an individual

6

fee for Kline & Specter. It argued only that a 5% aggregate fee was unreasonably generous given the poor outcome of this litigation for individual plaintiffs. Kline & Specter noted that the Steering Committee had failed to generate a global settlement and many cases remained pending in courts throughout the country. It noted that the average settlement for pelvic mesh cases was about $40,000 even though plaintiffs' verdicts exceeded over $43 million on average. It highlighted the failure of the Fee and Cost Committee to ground its request in a valid methodology.

On January 30, 2019, Judge Goodwin ordered that an aggregate common-benefit fee be paid based on holding back 5% of every pelvic mesh plaintiffs' recovery. *See* Order, dated January 30, 2019 (attached as Exhibit "H"). Based on settlements thus far, the fund contains approximately $366 million. That fund is predicted to exceed $550 million before all cases resolve. Significantly, Judge Goodwin has not issued any ruling concerning the distribution of the aggregate fee to individual law firms. The January 30 Order related only to the aggregate common-benefit fee.

On February 28, 2019, Kline & Specter appealed the aggregate fee order in each of the MDL dockets. The Fee and Cost Committee moved to dismiss the appeal. On June 14, 2019, a three-judge panel granted that motion, reasoning that "K&S knowingly and voluntarily agreed to be bound by the district court's attorneys' fee and expenses determinations and, thus, it has waived its right to

7

appeal its attorneys' fee and expenses award."[2]  *See* Order dated June 14, 2019 (Exhibit A). This petition ensues.

## II.    REASONS THE PETITION SHOULD BE GRANTED

The petition should be granted for three reasons. First, the panel dismissed the case based on a factual misstatement of the issue presented for appeal. The appeal arose from Judge Goodwin's order creating an aggregate common-benefit fund. The order <u>only</u> creates the aggregate fund. It has nothing to do with any individual allocation that Kline & Specter may eventually receive from the aggregate fund. Unfortunately, the panel dismissed the appeal on grounds that K&S "has waived its right to appeal its attorneys' fee and expenses award." But individual allocation is not contested in this appeal. Indeed, the district court has not yet entered an order awarding common-benefit fees to individual law firms. The Court should not dismiss this appeal based on a mistake about the issues presented.

Second, the Panel found that the appellate rights of thousands of women represented by Kline & Specter have been abrogated by an order that does not bind or even contemplate those women. At most, PTO bars appeals by a participating firm from an order awarding an individual common-benefit fee allocation. But it does not

---

[2] Kline & Specter's waiver was neither knowing nor voluntarily. It was not knowing because the firm could not know that the MDL leadership and Judge Goodwin would reverse their threshold commitment that state-time was eligible for common-benefit compensation—a commitment upon which Kline & Specter based its involvement in the litigation. It was not voluntary because as a practical matter there was no alternative but to accept the discovery produced in the MDL.

8

bar appeals concerning the aggregate common benefit fee award and the amount that individual clients will be assessed to fund that aggregate award. This is apparent from PTO 62, which focuses on the identity of "Participating Counsel" and concerns the appellate rights of "Participating Counsel" alone:

> "Participating Counsel" are counsel who subsequently desire to be considered for common benefit compensation and as a condition thereof agree to the terms and conditions herein and acknowledge that the court will have final, non-appealable authority regarding the award of fees, the allocation of those fees and awards for cost reimbursements in this matter. Participating Counsel have (or will have) agreed to and therefore will be bound by the court's determination on common benefit attorney fee awards, attorney fee allocations, and expense awards, and the Participating Counsel knowingly and expressly waive any right to appeal those decisions or the ability to assert the lack of enforceability of this Agreed Order or to otherwise challenge its adequacy. Nothing in this Agreed Order shall be construed to prohibit an agreement between the [Steering Committee] and state court litigants who may later seek a common benefit allocation.

PTO 18 (Exhibit C). Nothing in this Order even mentions individual plaintiffs, let alone abrogates their appellate rights. The Panel was mistaken on this issue as well.

Third, a matter of exceptional importance has been created given the unprecedented nature of the panel's decision blessing waiver on such flimsy grounds. The aggregate fee order reduces the financial recovery of every women who have filed and resolved a pelvic-mesh case. This is because money directed into the common benefit fee fund comes from the client's portion of the award. That money is not paid from the attorneys' fee portion of the award. The plaintiff herself pays the assessment. Yet according to the order dismissing this appeal, the women represented by Kline & Specter have <u>no</u> appellate right to challenge the holdback amount—not even those who

9

filed suit after PTO 18 was entered. These appellate rights are abrogated on the basis of a purported waiver in PTO 18 that at most impacts the Participating Counsel as relates to individual fee allocation.

The implications are dramatic. As a starting point, the abrogation of the appellate rights of persons who were not represented when PTO 18 was entered and whose rights are not discussed in the Order surely implicates the Due Process rights of "reasonable notice and opportunity to be heard." *See Boddie v. Connecticut*, 401 U.S. 371, 378 (1971); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950) (due process requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). Kline & Specter's clients have a basic right to complain about how their recoveries have been overly-reduced to unfairly subsidize the Steering Committee's mediocre results.

In addition to the Due Process implications of abrogating appellate right, it is especially wrong to abrogate the appellate rights in the mass tort context—an area of litigation fraught with conflict among many parties and their counsel and with the potential for abuse. *See* Elizabeth Chamblee Burch and Margaret Williams, *Repeat Players in Multidistrict Litigation: The Social Network*, 102 Cornell L. Rev. 1445 (Sept. 2017) (discussing the lack of rules and oversight that allow mass tort settlements to be ripe for self-enriching behavior by insider law firms). The Panel's decision invites future lead plaintiffs' counsel to pursue abrogation orders in other MDL proceedings, encouraging further abuse of the rights of other plaintiffs and their counsel. The risk

10

for mischief and systematic abuse necessitates the corrective hand of our appellate system—at least the *opportunity* for the appellate system to provide correction. Otherwise the mass-tort system is ripe for abuse, licensed and emboldened by the knowledge that no appeal may be heard—not by this Court, or any Court, no matter how serious the breach of law or fiduciary duty. If the Court ratifies PTO 18 as valid basis for quashing that appeal, it will only invite more expansive reliance of waiver at the outset mass-tort litigation. Rehearing should be granted for this reason as well.

Rehearing *en banc* should be granted for an additional reason. The waiver language of PTO 18 invites counsel to disregard their clients' interests when they have a selfish interest of pursuing a common benefit fee. Clients whose recoveries are being diminished by an excessive common benefit fee should have the loyalty of their counsel in pursuing that issue. Anything less is an unacceptable conflict. It should not have been created at the outset of the litigation. It should not be honored now. For this reason as well, the Court should grant rehearing *en banc* to consider the implications of enforcing an order that abrogates the appellate rights of thousands of individuals on a matter that directly impacts them.

### III.  CONCLUSION

The Court should vacate the dismissal order and grant panel rehearing or rehearing *en banc* on the issue of appealability.

11

                    Respectfully submitted,

          By:     /s/ Charles L. Becker
                Shanin Specter, Esquire
                Lee B. Balefsky, Esquire
                Charles L. Becker, Esquire
                **Kline & Specter, P.C.**
                1525 Locust Street, 19th Floor
                Philadelphia, PA  19102
                (215) 772-1000

                Charles M. Love, III, Esquire
                Floyd E. Boone, Esquire
                **Bowles Rice, LLP**
                600 Quarrier Street
                Charleston, WV 25301
                (304) 347-1100

Dated:  June 27, 2019

## COMBINED CERTIFICATIONS

*Word limit.* This petition includes 2,893 words as calculated with the word-counting feature of Microsoft Word based on the parts of the petition specified in Fed. R. App. P. 32.

*Typeface and typestyle.* This brief complies with the typeface and typestyle requirements of Fed. R. App. P. 32. It has been prepared with Microsoft Word using 14-point Garamond font, which is a proportionally-spaced typeface.

                                                                            /s/ Charles L. Becker
                                                                            Charles L. Becker, Esq.

Dated: June 27, 2019

# CERTIFICATE OF SERVICE

On this day, I served the foregoing brief on the following counsel through the Court's electronic filing system and email:

Benjamin L. Bailey, Esquire
Raymond S. Franks II, Esquire
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
*Counsel for the Appellee Fee and Cost Committee*

    /s/ Charles L. Becker
Charles L. Becker, Esq.

Dated: June 27, 2019